```
            E699VALC

   1    UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
   2    ------------------------------x

   3    RIO TINTO PLC ,

   4                 Plaintiff,

   5           v.                            14 CV 3042 (RMB)

   6    Vale, S.A., ET AL.,

   7                 Defendants.

   8    ------------------------------x
                                             New York, N.Y.
   9                                         June 9, 2014
                                             9:23 a.m.
  10
        Before:
  11
                         HON. RICHARD M. BERMAN
  12
                                                 District Judge
  13
                              APPEARANCES
  14
        QUINN EMANUEL URQUHART & SULLIVAN LLP
  15         Attorneys for Plaintiff
        BY:  WILLIAM ANTHONY BURCK
  16            MICHAEL JOHN LYLE
                STEPHEN M. HAUSS
  17
        CLEARY GOTTLIEB
  18         Attorneys for Defendant Vale, S.A.
        BY:  JONATHAN I. BLACKMAN
  19            LEWIS J. LIMAN
                JOAQUIN P. TERCENO, III
  20
        MISHCON DE REYA NEW YORK, LLP
  21         Attorneys for Defendant BSG Resources Limited and Benjamin
        Steinmetz
  22    BY:  ROBERT GOLD
                VINCENT FILARDO
  23
        SULLIVAN & WORCESTER LLP (MA)
  24         Attorney for Defendant Mahmoud Thiam
        BY:  PAUL ELIOT SUMMIT
  25
```

E699VALC

1              (In open court; case called)

2              THE COURT: So, the point of today's conference is to

3     find out where you are and where we're going and in what kind

4     of reasonable timeframe. I did get an updated letter, I think

5     on Friday, indicating that one or two more people had been

6     served, but I don't exactly know where the heart of the case is

7     in terms of service, whether you have the principal defendants

8     or whether the people who are not served are likely to be

9     served and whether they are needed or necessary for the action,

10    etc.

11             MR. BURCK: Thank you, your Honor. William Burck for

12    plaintiff Rio Tinto.

13             Your Honor, to give you a brief update and where we

14    stand on service overall. There were eleven defendants named

15    in the lawsuit. We have served five of those at this point,

16    including Vale, Benjamin Steinmetz, and BSG Resources Limited,

17    all of whom have waived service. Vale did so approximately a

18    month ago. Beny Steinmetz and BSGR did so on -- informed us on

19    Friday and did so today.

20             Those are the key defendants, in our view. There are

21    others that we are in the process of attempting to serve. Two

22    additional ones that have been served are Mahmoud Thiam, who I

23    believe his attorney is here today. We served him via our

24    normal means. And I believe he's accepted service -- he's not

25    going to contest service at this point.

1        Michael Noy is another individual who we believe we
2   have served via mail overseas in the country in which he
3   resides and which accepts mail overseas. And we have received
4   confirmation that he has received it.
5        There are two entities that are also, we think,
6   critical to this. Neither of those entities have yet waived
7   service or accepted service. But they are both closely
8   affiliated with parties that have, in fact, waived service.
9   One is an entity. It's a holding company called BSG Resources
10  Guinea Limited which, as we understand, is 51 percent owned by
11  Vale and 49 percent owned by either BSGR or affiliates of BSGR.
12  We're informed today by counsel for Vale that they are not in a
13  position to waive service as to that entity at this point. And
14  there's another entity that's a hundred percent owned by the
15  Guinean entity I just mentioned that is again, through the
16  flow-through, 51 owned by Vale, 49 percent owned by Steinmetz
17  affiliates. But we assume that that entity also is not
18  accepting or waiving service at this point.
19       We believe and we will in due course, if we can't
20  serve them these entities by normal means, we would probably
21  come to the court to ask for some kind of alternative service
22  given that it's clear that these entities have notice, given
23  that they are owned by entities that, in fact, waive service at
24  this point.
25       THE COURT: The people who are not accepting service,

1  what do they want you to do?  What do they say you should do?
2          MR. BURCK:  Your Honor, they have not told us yet.
3  But we will be inquiring to the best of our ability to get that
4  information.
5          Just on the balance of defendants.  We have two who
6  are located in the United States, Frederic Cilins, who is in
7  prison, so we can readily serve him.  We have not focused on
8  the U.S. persons because of the 21-day requirement.  I'll get
9  to in a moment some dates we've been talking to defense about
10 for a motion to dismiss.  And another defendant by the name of
11 Mamadie Toure, who is also, as we understand, in the United
12 States and can be easily served.
13         All of these people we've identified lawyers who we
14 believe act for them, and contacted the lawyers.  But the
15 lawyers have not accepted service or waived service at this
16 point.
17         But we do believe that we have got -- that with Vale,
18 Mr. Steinmetz and BSGR we have the core defendants for our
19 purposes.
20         THE COURT:  But for my purposes or one purpose you've
21 mentioned already motion practice, I don't really like to do
22 motion practice until everybody is under the tent, particularly
23 a motion to dismiss.  So, discovery, no problem.  It can start,
24 if you haven't already, you can start with discovery.  But I'm
25 really trying to get a sense of what's the end game here, the

1    end date -- hold on one second.
2             MR. BURCK:  Your Honor, we've discussed with Vale,
3    Mr. Steinmetz, BSGR and Mahmoud Thiam a date of September 15
4    for the motion to dismiss.  That would take account the 90
5    days.
6             THE COURT:  I don't know if you're hearing me.
7             MR. BURCK:  I'm sorry.  I was just giving you that
8    date so I could then back into.
9             THE COURT:  I understand.
10            MR. BURCK:  We think that date would make sense
11   because we believe that by -- certainly two other -- two U.S.
12   defendants we can serve well in advance and they would have
13   plenty of time.  We would give them the same date that we would
14   give the other defense, or we would agree to the same date,
15   subject to the Court's approval.  So that would be seven
16   defendants.  We have the two entities that are owned by Vale
17   and by BSGR.  Again, we will move, if they do not except
18   service or waive service, we will move for alternative service
19   in very short order.
20            Then we would have one entity that has been dissolved,
21   your Honor, which we just learned as part of our research.  And
22   then we have one defendant, one individual who is not central
23   to our case who we're not exactly sure where he's located.  We
24   know his family or some of his family is in South Africa.  So
25   we believe we would have everyone served well in advance of --

1  given sufficient time to have a date such as September 15 as a
2  date for a motion to dismiss.
3           THE COURT:  So what date do you think you -- what date
4  do you say you're going to have everybody either in, that is to
5  say served, or out, not part of the case?
6           MR. BURCK:  Your Honor we would -- we would estimate
7  that certainly by the end of July we would have everyone in or
8  out.  And that should give us sufficient time to allow those
9  who are in to file their answer.
10          THE COURT:  July 31.
11          MR. BURCK:  Yes, your Honor.
12          Your Honor, just to be clear we hope to be much sooner
13 than that, but just giving ourselves -- since a lot of those
14 folks are overseas.
15          THE COURT:  I got it.  I'm just looking at the
16 calendar.
17          I'm going to post a case management plan today which
18 indicates that service will be completed by July 31, 2014.  It
19 will also refer discovery disputes and issues to the magistrate
20 judge.
21          I'm not going to set any motion schedule today until
22 you advise me on or around or if you know before July 31 who is
23 in, who is out.  That part of the case is definitive.
24          And I'm going to set a tentative discovery schedule
25 which is obviously subject to, since there's so many parties

1    here, to good faith adjustment of November 28, 2014.

2             Is there any prospect at this early stage that this

3    case can be resolved consensually?

4             MR. BURCK:  Your Honor, as to some of the defendants

5    we believe so; but as to others, we don't have any indication

6    of that.

7             THE COURT:  So I'm also going to set a settlement

8    conference with principals for December 1 at 9:30.

9             Any other issues that we need to address today?

10            MR. BURCK:  Your Honor, just one final point on --

11   this is really to preserve judicial resources.  Given that two

12   of the entities are, as we mentioned, wholly owned by two of

13   the defendants that have waived service, we're at a bit of a

14   loss as to why those entities would not simply waive service

15   and not require us to come back to the court with a motion for

16   alternative service.

17            THE COURT:  Right.

18            MR. BURCK:  So that's just one point we'd like to

19   raise.

20            THE COURT:  Are these two here?  Are they represented?

21            MR. BURCK:  They are not here.  Again, the owners of

22   those entities are represented.

23            THE COURT:  Does anybody want to speak to that issue?

24            MR. BLACKMAN:  Yes, your Honor.  Jonathan Blackman

25   from Cleary Gottlieb.  We represent Vale, which is one of the

1   corporate defendants.  Vale does, as counsel said, own
2   51 percent of an entity called BBG; the other 49 percent of
3   which is owned by the defendant BSGR, who is represented here.
4          The problem is that Vale and BSGR -- although you
5   wouldn't know it from the complaint -- are actually at
6   considerable loggerheads.  Before this lawsuit was brought and
7   before anyone knew it would be brought, we brought an
8   arbitration claim against them for $1.2 billion in London.  And
9   it's LCIA arbitration.  And the LCIA has quite strict
10  confidentiality rules.  And so beyond the statement I've just
11  made, I'm not going to go further expect to say that it
12  involves some of the issues alleged in this complaint, but sort
13  of a 180-degrees around.  Because if you read this complaint,
14  you would think that my client, Vale, and BSGR are
15  coconspirators in a RICO enterprise involving an alleged
16  bribery in Guinea.  In fact, our arbitration claim is that they
17  misrepresented to us through reps, warranties, personal
18  certifications and the like that they had engaged in no such
19  activity, the standard FCPA diligence.  That's why Vale entered
20  into the joint venture.  And when the government of Guinea
21  years later uncovered these activities --
22          THE COURT:  Yes.
23          MR. BLACKMAN:  So anyway the point is we brought a
24  claim against them.  We're not on very good terms.  And
25  therefore the issue of what to do with these joint ventures is

1      not something that we can press a button and solve.

2              THE COURT:  You nevertheless own 51 percent of it.

3              MR. BLACKMAN:  We do own 51 percent.

4              THE COURT:  So that's a factor that we'll hold aside
5      for a moment but we may come back to that factor.

6              So who are their regular outside counsel?

7              MR. BLACKMAN:  My understanding is that we certainly
8      will not be representing them.  The Guernsey entity is in the
9      process of retaining counsel.  I don't know what the status is
10     of the Guinea and subsidiary of that entity.  And when counsel
11     for those entities is retained, then counsel will no doubt
12     appear and give the Court the position on service.  But we're
13     not in a position.

14             THE COURT:  Do they have an in-house counsel?

15             MR. BLACKMAN:  No.

16             So that's the situation of the joint venture.  And
17     that's why it's not just a straightforward matter to say agree
18     to service on behalf of the entity.

19             THE COURT:  Was there another entity?

20             MR. BURCK:  Your Honor, counsel has mentioned both
21     entities.  There's a holding company which is the Guernsey
22     entity and there's the Guinea company which is the subsidiary.

23             Regardless of the merits of the position of the
24     lawsuit, our point is simply that clearly notice has been
25     provided to these entities and, again, we don't want -- we

Case 1:14-cv-03042-RMB-AJP   Document 38   Filed 06/16/14   Page 10 of 11    10
E699VALC

1   will, of course, move before the court, if we have to, for
2   alternative service.  But we obviously don't want to waste the
3   Court's time.
4           THE COURT:  So this is something you might be able to
5   resolve when counsel is appointed for these entities.  And so
6   you probably should stay in close touch with respect to that
7   matter.
8           MR. BURCK:  Yes, your Honor, we will do that.
9           THE COURT:  So I would hope to avoid litigation on
10  service as well but we'll see.
11          MR. BURCK:  Thank you, your Honor.
12          THE COURT:  Any other issues that we --
13          MR. BLACKMAN:  One other issue on the motion to
14  dismiss, when we get to them.
15          THE COURT:  Yes.
16          MR. BLACKMAN:  I know your Honor's preference, as
17  reflected in your rules, is to have joint motions to dismiss.
18          THE COURT:  Yes.
19          MR. BLACKMAN:  Given the circumstance that I've just
20  set out, I think it would be quite difficult to have a joint
21  motion.  We'd obviously hope as just lawyers to coordinate
22  briefing because there are some common issues about failure to
23  state a claim and the like, but there are also radically
24  different issues and I just don't think it would be practical.
25          THE COURT:  I don't want to forejudge that because

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  that's often the case but it's even more often the case that
2  the common issues dominate over the different issues.  So
3  there's always a mechanism, and counsel can help in putting
4  this together to make sure that everybody's individual position
5  and point is made but, nevertheless, we can often combine them
6  in one motion.  But we're not there yet because I want to
7  resolve this issue of who's in, who's out before we have motion
8  practice.  But I'm not persuaded that we can't do joint motion.
9  We'll see when we get to it.
10          I'll look to you to let me know on or about July 31
11  where things stand in terms of service and then we can think
12  more about motion practice.
13          MR. BURCK:  Yes, your Honor.
14          THE COURT:  Any other issues?  No.  Great to see you
15  all.  Thanks very much.
16          This will be posted today on ECF, the case management
17  plan.
18          (Adjourned)