# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

**By ECF**

July 9, 2014

Honorable Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: <u>*Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)</u>

Dear Judge Peck:

      We write on behalf of defendant Vale S.A. ("Vale") to join defendants Benjamin Steinmetz and BSG Resources Limited ("BSGR") (collectively with Vale and other defendants, "Defendants") in their request for a pre-motion conference regarding anticipated motions pursuant to Rule 26(c) for a protective order staying discovery until the Court resolves Defendants' anticipated dispositive motions (Dkt. No. 56).[1] Like other defendants, Vale intends to move to dismiss Rio Tinto's Complaint – in Vale's case, for failure to state a claim and on grounds of *forum non conveniens*.

      This is a complex, multi-party RICO case involving multiple foreign defendants. The action is brought by a United Kingdom company, Rio Tinto, against nine defendants alleging RICO violations (which are the sole basis for federal court jurisdiction) and common law claims in connection with Rio Tinto's loss of rights to a mining concession in Guinea. Rio Tinto's principal allegations are that defendant BSG Resources Limited ("BSGR"), which is headquartered in the Channel Islands and controlled by an Israeli citizen, defendant Benjamin Steinmetz, paid bribes to a Guinean citizen, defendant Mamadie Touré, who was the fourth wife of the former Guinean president, to acquire the mining concession rights. The other defendants include three individuals alleged to be agents or employees of BSGR (defendants Cilins, Lev Ran and Noy) who – along with Steinmetz and BSGR – are alleged to have been engaged in

---

[1] During the parties Rule 26(f) conference held on July 9, 2014, Plaintiff Rio Tinto stated that the conference would also fulfill the meet-and-confer requirement prior to filing such a motion.

bribery and corruption to gain rights to the mining concession, and a fourth individual (defendant Mahmoud Thiam), a former Guinean minister.  The complaint also names three alleged corporate affiliates of BSGR or the Beny Steinmetz Group that are headquartered in the Channel Islands, Guinea, or the British Virgin Islands (BSG Resources (Guinea) Limited; BSG Resources Guinée SARL, and BSGR Guinea Ltd BVI).  The Complaint admits that the Guinean government rescinded Rio Tinto's rights in the mining concession by December 2008 – more than 5 years before this action was brought – and at that same time awarded exploration licenses to the mines to one of the BSGR affiliates.

Vale, which acquired an interest in the concession from BSGR 18 months later in April 2010, is not alleged to have been involved in the bribery or even to have known about it.[2] The gravamen of the claim against Vale is rather the "[u]pon information and belief" allegation that Vale and BSGR met "in December 2008" (Compl. ¶¶ 9, 86) while Vale was negotiating with Rio Tinto for an interest in the Rio Tinto concession, and that Vale then formed an intent not to do a transaction with Rio Tinto but instead to give Rio Tinto's information to BSGR – a company with which Vale is not alleged to have had any prior relationship – in violation of a confidentiality agreement with Rio Tinto (which provides for jurisdiction only in England or Brazil) for BSGR to use to obtain the mining concession for itself – all in the space of approximately two weeks.  That false and indeed incredible claim is the linchpin for Plaintiff's case against Vale, and its multiple legal infirmities – which can be readily addressed on motion to dismiss – militate strongly in favor of a stay of discovery until dispositive motions are decided.

The Complaint alleges that Steinmetz, BSGR and two of the BSGR affiliates are subjects of a federal criminal investigation, Touré is a cooperating witness in that investigation, Cilins pleaded guilty to obstruction of justice, and the two other BSGR agents/employees (Noy, Lev Ran) were connected to the criminal conduct.  Vale is not alleged to be a subject or to be connected in any way to the conduct under investigation.  To the contrary, as Vale informed the Court at the initial pre-trial conference described below, before Rio Tinto commenced this action, Vale instituted an arbitration against BSGR in London, alleging BSGR made fraudulent misrepresentations to Vale regarding the absence of any bribery or other corrupt practices by BSGR in obtaining rights to the mining concession.

A.   The Court Should Stay Discovery Pending Resolution Of The Dispositive Motions

After Rio Tinto initially resisted doing so, the parties conducted a Rule 26(f) conference on Wednesday July 9, 2014, to discuss *inter alia* the timing and content of discovery and initial disclosures.  During that conference, Vale proposed that, following initial disclosures,

---

[2]  Plaintiff conclusorily alleges that Vale "knew or should have known" of the alleged bribery (Compl. ¶ 89), but such allegations are insufficient to plead actual knowledge. *See, e.g., Williams v. Bank Leumi Trust Co.*, No. 96 Civ. 6695 (LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997) (holding "disjunctive phrases" such as "knew or should have known" insufficient to plead actual knowledge); *see also In re Citigroup ERISA Litig.*, 662 F.3d 128, 144-45 (2d Cir. 2011) (holding "Plaintiffs . . . do not state a claim for relief based on alleged misstatements . . . because they have not adequately alleged that defendants made statements they *knew* to be false," where complaint contained only "naked assertion" that defendants "knew or should have known" statements were false (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

non-jurisdictional discovery be stayed pending resolution of their dispositive motions, and also proposed a discovery schedule that would see fact discovery completed in 12 months following resolution of dispositive motions, and expert discovery completed no more than 6 months later.[3] Rio Tinto has taken Vale's proposed discovery schedule, if and when discovery were to proceed, under advisement, but opposes a stay during the pendency of dispositive motions.

Given the breadth of the discovery sought by Rio Tinto, the burden of responding to this intensive international discovery, the fact that Rio Tinto will not be prejudiced by a stay, and the strength of Defendants' anticipated dispositive motions, this Court should issue a protective order pursuant to Rule 26(c)(1)(A) staying discovery pending resolution of those motions. *See, e.g., Anti-Monopoly, Inc. v. Hasbro, Inc.*, 94CIV.2120 (LMM)(AJP), 1996 WL 101277, at **3-4 (S.D.N.Y. Mar. 7, 1996) (Peck, M.J.) (granting stay after considering (1) "the breadth of the discovery sought and the burden of responding to it," (2) "whether the party opposing the stay would be unfairly prejudiced by a stay," and (3) "the strength of the dispositive motion"); *see also* Dkt. No. 54 at 3 (citing other case law supporting stay of discovery).

1. The discovery sought by Rio Tinto is breathtakingly broad. The discovery that Rio Tinto has already, in violation of Rule 26(f), served upon Vale includes requests for 50 categories of documents, all located abroad and many in foreign languages, covering an almost 10-year period and (according to the Complaint) as many as 60 custodians. (*See* Ex. A, Pl.'s First Set of Doc. Requests to Vale S.A., dated June 30, 2014.) This discovery also includes burdensome interrogatories effectively seeking the identity of every person with whom Vale ever communicated about the mining project over this almost decade long period. (*See* Ex. B., Pl.'s First Set of Interrog. to Vale S.A., dated June 30, 2014.) If discovery is permitted to proceed, Vale will be required to serve discovery requests of similar breadth.

Responding to these far-reaching discovery requests would be hugely burdensome. No responsive information of Vale is in the United States; to the contrary, Vale's potential custodians are located in Brazil and multiple other locations around the world. Discovery of the other defendants, all but one of which are foreign nationals, will also span several other jurisdictions – including, *inter alia*, the United Kingdom, Guernsey, Switzerland, France, Guinea, and South Africa. A significant portion of any documents collected by Vale will be in Portuguese (which is used by most Vale employees when communicating internally) or French (when communicating with the Guinean Government), thereby requiring onerous and expensive translations. In short, the burden and cost of complying with broad discovery requests spanning many jurisdictions and involving multiple foreign languages will be enormous.

2. Rio Tinto will not be prejudiced by a stay pending a decision on the dispositive motions, which, under the parties' proposed schedule, will be fully briefed on December 12, 2014. (*See* Dkt. No. 48.) This is not a case in which discovery is time-sensitive – *e.g.*, a case in which a plaintiff seeks a preliminary injunction because it faces an immediate threat of irreparable harm. Rio Tinto admittedly has known since December 2008 that it lost its mining concession to BSGR and since June 2010 that Vale purchased an interest from BSGR in that

---

[3] Vale offered to make its initial disclosures on July 23, 2014, 14-days after the Rule 26(f) conference, in accordance with the Rules, without prejudice to its rights to move for a stay of any other discovery. Rio Tinto agreed to this solution.

3

venture. All relief sought by Rio Tinto will remain fully available if dispositive motions are denied, and Vale has taken comprehensive steps to preserve potentially responsive documents.

3. Vale's intended motions to dismiss on *forum non conveniens* grounds and for failure to state a claim under Rule 12(b)(6) have significant merit.

*Forum Non Conveniens.* Rio Tinto's only claim against Vale in substance is that it misused information it obtained during negotiations with Rio Tinto in alleged breach of a confidentiality agreement. (*See, e.g.,* Compl. ¶¶ 2, 7, 54-75.) That confidentiality agreement is governed by an exclusive jurisdiction clause, providing that any litigation be brought in English or Brazilian courts. Such a forum selection clause should be "given controlling weight in all but the most exceptional cases," *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013), and is enforceable under *Atl. Marine* through the doctrine of *forum non conveniens, id.* at 580.

*Statute of Limitations.* All of Rio Tinto's RICO claims against all Defendants are subject to a four-year statute of limitations that runs from the discovery of the alleged injury. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). Because Rio Tinto's alleged injury – the loss of its Simandou concession – occurred by December 9, 2008 and it knew of the injury at that time (Compl. ¶ 92), its RICO claims expired four years later on December 9, 2012, more than sixteen months before it brought suit on April 30, 2014.

*Failure to State a Claim.* Among other grounds, with respect to Vale, Rio Tinto's complaint typifies the kind of "frivolous RICO allegations" that a court "should strive to flush out . . . at an early stage of the litigation." *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 213 (S.D.N.Y. 2000) (Berman, J.) (citations and quotation omitted). The complaint pleads no more against Vale than a "garden variety . . . breach of contract case[] that [Rio Tinto] has attempted to transform into a vehicle for treble damages by resort to . . . the litigation equivalent of a thermonuclear device—a civil RICO suit." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (citation and quotation omitted). Its pleading of the alleged RICO enterprise, directed at a single victim and, by its own allegations, involving alleged misconduct by Vale over less than a two week period, also blatantly fails to satisfy the elements of an actionable RICO claim, as does its pleading of the predicate acts attributable to Vale.

C.   At A Minimum, The Court Should Hold Discovery In Abeyance Pending Its Decision On Defendants' Motions For Protective Order

At a minimum, the Court should hold discovery in abeyance pending resolution of the Defendant's motions for a protective order. Vale proposes that the Defendants' motions to stay discovery should be briefed on the following schedule: (1) Defendants' motions due July 24, 2014; (2) Rio Tinto's opposition due August 7, 2014; and (3) Defendants' replies due August 14, 2014. Such an expedited briefing schedule would eliminate any prejudice Rio Tinto might face while the Court decides the stay motion, especially as Vale does not object to making initial disclosures in the interim.

For all the foregoing reasons, Vale respectfully requests that the Court (i) grant Defendants' request for a pre-motion conference seeking leave to move to stay all discovery, and (ii) order that all discovery purportedly served to date is held in abeyance pending resolution of Defendants' motions to stay discovery.

Respectfully submitted,

Lewis J. Liman