# APPENDIX 1

E699VALC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RIO TINTO PLC ,

                 Plaintiff,

           v.                          14 CV 3042 (RMB)

Vale, S.A., ET AL.,

                 Defendants.

------------------------------x
                                       New York, N.Y.
                                       June 9, 2014
                                       9:23 a.m.

Before:

                    HON. RICHARD M. BERMAN

                                          District Judge

                         APPEARANCES

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Plaintiff
BY:  WILLIAM ANTHONY BURCK
         MICHAEL JOHN LYLE
         STEPHEN M. HAUSS

CLEARY GOTTLIEB
     Attorneys for Defendant Vale, S.A.
BY:  JONATHAN I. BLACKMAN
         LEWIS J. LIMAN
         JOAQUIN P. TERCENO, III

MISHCON DE REYA NEW YORK, LLP
     Attorneys for Defendant BSG Resources Limited and Benjamin
Steinmetz
BY:  ROBERT GOLD
         VINCENT FILARDO

SULLIVAN & WORCESTER LLP (MA)
     Attorney for Defendant Mahmoud Thiam
BY:  PAUL ELIOT SUMMIT

1            (In open court; case called)

2            THE COURT:  So, the point of today's conference is to

3    find out where you are and where we're going and in what kind

4    of reasonable timeframe.  I did get an updated letter, I think

5    on Friday, indicating that one or two more people had been

6    served, but I don't exactly know where the heart of the case is

7    in terms of service, whether you have the principal defendants

8    or whether the people who are not served are likely to be

9    served and whether they are needed or necessary for the action,

10   etc.

11           MR. BURCK:  Thank you, your Honor.  William Burck for

12   plaintiff Rio Tinto.

13           Your Honor, to give you a brief update and where we

14   stand on service overall.  There were eleven defendants named

15   in the lawsuit.  We have served five of those at this point,

16   including Vale, Benjamin Steinmetz, and BSG Resources Limited,

17   all of whom have waived service.  Vale did so approximately a

18   month ago.  Beny Steinmetz and BSGR did so on -- informed us on

19   Friday and did so today.

20           Those are the key defendants, in our view.  There are

21   others that we are in the process of attempting to serve.  Two

22   additional ones that have been served are Mahmoud Thiam, who I

23   believe his attorney is here today.  We served him via our

24   normal means.  And I believe he's accepted service -- he's not

25   going to contest service at this point.

1              Michael Noy is another individual who we believe we

2       have served via mail overseas in the country in which he

3       resides and which accepts mail overseas.  And we have received

4       confirmation that he has received it.

5              There are two entities that are also, we think,

6       critical to this.  Neither of those entities have yet waived

7       service or accepted service.  But they are both closely

8       affiliated with parties that have, in fact, waived service.

9       One is an entity.  It's a holding company called BSG Resources

10      Guinea Limited which, as we understand, is 51 percent owned by

11      Vale and 49 percent owned by either BSGR or affiliates of BSGR.

12      We're informed today by counsel for Vale that they are not in a

13      position to waive service as to that entity at this point.  And

14      there's another entity that's a hundred percent owned by the

15      Guinean entity I just mentioned that is again, through the

16      flow-through, 51 owned by Vale, 49 percent owned by Steinmetz

17      affiliates.  But we assume that that entity also is not

18      accepting or waiving service at this point.

19             We believe and we will in due course, if we can't

20      serve them these entities by normal means, we would probably

21      come to the court to ask for some kind of alternative service

22      given that it's clear that these entities have notice, given

23      that they are owned by entities that, in fact, waive service at

24      this point.

25             THE COURT:  The people who are not accepting service,

1   what do they want you to do?  What do they say you should do?

2           MR. BURCK:  Your Honor, they have not told us yet.

3   But we will be inquiring to the best of our ability to get that

4   information.

5           Just on the balance of defendants.  We have two who

6   are located in the United States, Frederic Cilins, who is in

7   prison, so we can readily serve him.  We have not focused on

8   the U.S. persons because of the 21-day requirement.  I'll get

9   to in a moment some dates we've been talking to defense about

10  for a motion to dismiss.  And another defendant by the name of

11  Mamadie Toure, who is also, as we understand, in the United

12  States and can be easily served.

13          All of these people we've identified lawyers who we

14  believe act for them, and contacted the lawyers.  But the

15  lawyers have not accepted service or waived service at this

16  point.

17          But we do believe that we have got -- that with Vale,

18  Mr. Steinmetz and BSGR we have the core defendants for our

19  purposes.

20          THE COURT:  But for my purposes or one purpose you've

21  mentioned already motion practice, I don't really like to do

22  motion practice until everybody is under the tent, particularly

23  a motion to dismiss.  So, discovery, no problem.  It can start,

24  if you haven't already, you can start with discovery.  But I'm

25  really trying to get a sense of what's the end game here, the

1   end date -- hold on one second.

2          MR. BURCK:  Your Honor, we've discussed with Vale,

3   Mr. Steinmetz, BSGR and Mahmoud Thiam a date of September 15

4   for the motion to dismiss.  That would take account the 90

5   days.

6          THE COURT:  I don't know if you're hearing me.

7          MR. BURCK:  I'm sorry.  I was just giving you that

8   date so I could then back into.

9          THE COURT:  I understand.

10          MR. BURCK:  We think that date would make sense

11   because we believe that by -- certainly two other -- two U.S.

12   defendants we can serve well in advance and they would have

13   plenty of time.  We would give them the same date that we would

14   give the other defense, or we would agree to the same date,

15   subject to the Court's approval.  So that would be seven

16   defendants.  We have the two entities that are owned by Vale

17   and by BSGR.  Again, we will move, if they do not except

18   service or waive service, we will move for alternative service

19   in very short order.

20          Then we would have one entity that has been dissolved,

21   your Honor, which we just learned as part of our research.  And

22   then we have one defendant, one individual who is not central

23   to our case who we're not exactly sure where he's located.  We

24   know his family or some of his family is in South Africa.  So

25   we believe we would have everyone served well in advance of --

1   given sufficient time to have a date such as September 15 as a

2   date for a motion to dismiss.

3            THE COURT:  So what date do you think you -- what date

4   do you say you're going to have everybody either in, that is to

5   say served, or out, not part of the case?

6            MR. BURCK:  Your Honor we would -- we would estimate

7   that certainly by the end of July we would have everyone in or

8   out.  And that should give us sufficient time to allow those

9   who are in to file their answer.

10            THE COURT:  July 31.

11            MR. BURCK:  Yes, your Honor.

12            Your Honor, just to be clear we hope to be much sooner

13   than that, but just giving ourselves -- since a lot of those

14   folks are overseas.

15            THE COURT:  I got it.  I'm just looking at the

16   calendar.

17            I'm going to post a case management plan today which

18   indicates that service will be completed by July 31, 2014.  It

19   will also refer discovery disputes and issues to the magistrate

20   judge.

21            I'm not going to set any motion schedule today until

22   you advise me on or around or if you know before July 31 who is

23   in, who is out.  That part of the case is definitive.

24            And I'm going to set a tentative discovery schedule

25   which is obviously subject to, since there's so many parties

E699VALC

1        here, to good faith adjustment of November 28, 2014.

2                Is there any prospect at this early stage that this

3        case can be resolved consensually?

4                MR. BURCK:  Your Honor, as to some of the defendants

5        we believe so; but as to others, we don't have any indication

6        of that.

7                THE COURT:  So I'm also going to set a settlement

8        conference with principals for December 1 at 9:30.

9                Any other issues that we need to address today?

10               MR. BURCK:  Your Honor, just one final point on --

11       this is really to preserve judicial resources.  Given that two

12       of the entities are, as we mentioned, wholly owned by two of

13       the defendants that have waived service, we're at a bit of a

14       loss as to why those entities would not simply waive service

15       and not require us to come back to the court with a motion for

16       alternative service.

17               THE COURT:  Right.

18               MR. BURCK:  So that's just one point we'd like to

19       raise.

20               THE COURT:  Are these two here?  Are they represented?

21               MR. BURCK:  They are not here.  Again, the owners of

22       those entities are represented.

23               THE COURT:  Does anybody want to speak to that issue?

24               MR. BLACKMAN:  Yes, your Honor.  Jonathan Blackman

25       from Cleary Gottlieb.  We represent Vale, which is one of the

1      corporate defendants.  Vale does, as counsel said, own

2      51 percent of an entity called BBG; the other 49 percent of

3      which is owned by the defendant BSGR, who is represented here.

4               The problem is that Vale and BSGR -- although you

5      wouldn't know it from the complaint -- are actually at

6      considerable loggerheads.  Before this lawsuit was brought and

7      before anyone knew it would be brought, we brought an

8      arbitration claim against them for $1.2 billion in London.  And

9      it's LCIA arbitration.  And the LCIA has quite strict

10     confidentiality rules.  And so beyond the statement I've just

11     made, I'm not going to go further expect to say that it

12     involves some of the issues alleged in this complaint, but sort

13     of a 180-degrees around.  Because if you read this complaint,

14     you would think that my client, Vale, and BSGR are

15     coconspirators in a RICO enterprise involving an alleged

16     bribery in Guinea.  In fact, our arbitration claim is that they

17     misrepresented to us through reps, warranties, personal

18     certifications and the like that they had engaged in no such

19     activity, the standard FCPA diligence.  That's why Vale entered

20     into the joint venture.  And when the government of Guinea

21     years later uncovered these activities --

22               THE COURT:  Yes.

23               MR. BLACKMAN:  So anyway the point is we brought a

24     claim against them.  We're not on very good terms.  And

25     therefore the issue of what to do with these joint ventures is

E699VALC

1    not something that we can press a button and solve.

2              THE COURT:  You nevertheless own 51 percent of it.

3              MR. BLACKMAN:  We do own 51 percent.

4              THE COURT:  So that's a factor that we'll hold aside

5    for a moment but we may come back to that factor.

6              So who are their regular outside counsel?

7              MR. BLACKMAN:  My understanding is that we certainly

8    will not be representing them.  The Guernsey entity is in the

9    process of retaining counsel.  I don't know what the status is

10   of the Guinea and subsidiary of that entity.  And when counsel

11   for those entities is retained, then counsel will no doubt

12   appear and give the Court the position on service.  But we're

13   not in a position.

14             THE COURT:  Do they have an in-house counsel?

15             MR. BLACKMAN:  No.

16             So that's the situation of the joint venture.  And

17   that's why it's not just a straightforward matter to say agree

18   to service on behalf of the entity.

19             THE COURT:  Was there another entity?

20             MR. BURCK:  Your Honor, counsel has mentioned both

21   entities.  There's a holding company which is the Guernsey

22   entity and there's the Guinea company which is the subsidiary.

23             Regardless of the merits of the position of the

24   lawsuit, our point is simply that clearly notice has been

25   provided to these entities and, again, we don't want -- we

E699VALC

1   will, of course, move before the court, if we have to, for

2   alternative service.  But we obviously don't want to waste the

3   Court's time.

4          THE COURT:  So this is something you might be able to

5   resolve when counsel is appointed for these entities.  And so

6   you probably should stay in close touch with respect to that

7   matter.

8          MR. BURCK:  Yes, your Honor, we will do that.

9          THE COURT:  So I would hope to avoid litigation on

10  service as well but we'll see.

11         MR. BURCK:  Thank you, your Honor.

12         THE COURT:  Any other issues that we --

13         MR. BLACKMAN:  One other issue on the motion to

14  dismiss, when we get to them.

15         THE COURT:  Yes.

16         MR. BLACKMAN:  I know your Honor's preference, as

17  reflected in your rules, is to have joint motions to dismiss.

18         THE COURT:  Yes.

19         MR. BLACKMAN:  Given the circumstance that I've just

20  set out, I think it would be quite difficult to have a joint

21  motion.  We'd obviously hope as just lawyers to coordinate

22  briefing because there are some common issues about failure to

23  state a claim and the like, but there are also radically

24  different issues and I just don't think it would be practical.

25         THE COURT:  I don't want to forejudge that because

E699VALC

1    that's often the case but it's even more often the case that

2    the common issues dominate over the different issues.  So

3    there's always a mechanism, and counsel can help in putting

4    this together to make sure that everybody's individual position

5    and point is made but, nevertheless, we can often combine them

6    in one motion.  But we're not there yet because I want to

7    resolve this issue of who's in, who's out before we have motion

8    practice.  But I'm not persuaded that we can't do joint motion.

9    We'll see when we get to it.

10             I'll look to you to let me know on or about July 31

11   where things stand in terms of service and then we can think

12   more about motion practice.

13             MR. BURCK:  Yes, your Honor.

14             THE COURT:  Any other issues?  No.  Great to see you

15   all.  Thanks very much.

16             This will be posted today on ECF, the case management

17   plan.

18             (Adjourned)

19

20

21

22

23

24

25