## CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC | ONE LIBERTY PLAZA | ROME |
| PARIS | NEW YORK, NY 10006-1470 | MILAN |
| BRUSSELS | (212) 225-2000 | HONG KONG |
| LONDON | FACSIMILE (212) 225-3999 | BEIJING |
| FRANKFURT | WWW.CLEARYGOTTLIEB.COM | BUENOS AIRES |
| COLOGNE | | SÃO PAULO |
| MOSCOW | | ABU DHABI |
| | | SEOUL |

<u>By ECF</u>    July 15, 2014

Hon. Richard M. Berman, U.S.D.J.
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 12D
New York, NY 10007

Re: <u>Rio Tinto plc v. Vale S.A., et al.</u>, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Berman:

We write on behalf of defendant Vale S.A. ("Vale") to request a pre-motion conference on Vale's anticipated motion to dismiss the complaint. Vale intends to move to dismiss the complaint on grounds of *forum non conveniens*, for failure to state a claim, and because it is time-barred on its face.

*<u>Forum Non Conveniens.</u>* The gravamen of the claim against Vale (a Brazil company) is that over the course of weeks Vale obtained confidential information from Rio Tinto (a U.K. company) pursuant to a "Confidentiality Deed" and "Data Room Access Agreement" between the parties and then provided that information to BSGR (a Guernsey company with whom it had no prior relationship) for BSGR to use in obtaining a Guinean mining concession for itself. Vale acquired an interest in the concession from BSGR 18 months later in April 2010. The Confidentiality Deed and the Data Room Access Agreement are governed by an exclusive jurisdiction clause, providing broadly that "any proceeding arising out of or in connection with this Deed *shall* be brought" in the courts of England (Rio Tinto's home), or in Brazil (Vale's home) in certain circumstances. The Supreme Court recently unanimously reiterated that such a forum selection clause must be "given controlling weight in all but the most exceptional cases," and requires dismissal on the basis of *forum*

*non conveniens*. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579-80 (2013); *see also In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289 (RMB), 2011 WL 5928952, at *12 (S.D.N.Y. Nov. 29, 2011) (dismissing suit brought to take advantage of U.S. forum, including "to pursue claims under RICO," which "suggests forum shopping by foreign plaintiffs"), *aff'd sub nom. In re Herald*, 540 F. App'x 19 (2d Cir. 2013).[1] The Confidentiality Deed and Access Agreement are governed by English law and Vale's English law expert will opine that the forum selection clause vests the courts of England and Brazil with exclusive jurisdiction over the allegations in Rio Tinto's complaint.

<u>*Failure To State A Claim.*</u>  The complaint alleges that the RICO enterprise was formed in December 2008 (Compl. ¶ 86), that its "ultimate objective" was to wrest the Simandou concession from Rio Tinto (*id.* ¶ 147), and that the scheme "was successful" and "quickly proved effective" that same month when the Guinean government rescinded Rio Tinto's rights and assigned them to BSGR (*id.* ¶¶ 92, 150). As against Vale, Rio Tinto's claim is that Vale committed wire fraud by obtaining Rio Tinto's confidential information under false pretenses and provided that information to BSGR contrary to the terms of the Confidentiality Deed. (Compl. ¶ 7.) That claim has multiple defects.

The Second Circuit has reiterated that "'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Crawford v. Friedman*, No. 13-2514, slip op. at 24 (2d Cir. July 11, 2014) (citation omitted). Here, at most, Rio Tinto alleges "multiple acts of mail fraud in furtherance of a single episode of fraud" which when it "involve[es] one victim and relat[es] to one basic transaction cannot constitute the necessary pattern." *Id.*; *see Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2008) ("a serious, but discrete and relatively short-lived scheme to defraud a handful of victims . . . is insufficient to establish open-ended" or closed-ended continuity); *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at *16 (S.D.N.Y. Sept. 16, 2004) ("[M]ultiple acts in furtherance of a *single* extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or

---

[1] Litigation over certain of the events in the complaint has already been initiated in the U.K., including between Vale and BSGR.

more predicate acts."); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (Berman, J.) (dismissing where "[t]he Complaints plead four predicate acts of mail fraud, committed by one participant . . . against a limited number of victims . . . in furtherance of a single fraudulent scheme"). Moreover, breach of contract is not a RICO predicate act, 18 U.S.C. § 1961(1), and cannot be made one by the allegation that Vale "misrepresented" its intentions after entering into the contract. *See United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) ("[A] breach of contract does not amount to mail fraud"); *see also Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) (dismissal appropriate where alleged RICO acts "'amount merely to a breach of contract claim . . . , which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal'" (citation omitted)). There is also no RICO causation because the earliest predicate act Vale allegedly committed or agreed to commit occurred in January 2009 – one month after Rio Tinto lost its concession rights. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (no causation where injury could have been suffered "for any number of reasons unconnected to the asserted pattern" of unlawful conduct).[2]

*Statute Of Limitations.* The RICO statute of limitations is four years from the discovery of the alleged injury. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). Rio Tinto knew of its alleged injury – the loss of its Simandou concession – by December 9, 2008, and its claims are therefore time-barred.

Respectfully submitted,

Lewis J. Liman

cc: All Counsel of Record (by ECF)

---

[2] Rio Tinto cannot cure its defects by pleading conspiracy, which requires allegations of an "agreement by Defendants to engage in conduct of the type that would be sufficient to constitute a pattern of racketeering activity." *Crawford*, slip op. at 25. The conclusory "information and belief" allegation that Vale formed a conspiracy in December 2008 fails, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). *See also 4 K & D Corp. v. Concierge Auctions, LLC*, No. 13 Civ. 2527 (JGK), 2014 WL 904451, at *12 (S.D.N.Y. Mar. 10, 2014) (conclusory allegation of agreement wholly inadequate to plead the required "meeting of the minds").