```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RIO TINTO PLC,

                Plaintiff,

        v.                           14 CV 3042 (RMB)

VALE, S.A., et al,

                Defendants.

------------------------------x
                                            New York, N.Y.
                                            July 10, 2014
                                            2:30 p.m.

Before:

                    HON. ANDREW J. PECK,

                                         Magistrate Judge

                         APPEARANCES

QUINN EMANUEL
     Attorneys for Plaintiff
MICHAEL J. LYLE, ESQ.
ERIC C. LYTTLE, ESQ.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
     Attorneys for Defendant Vale
LEWIS J. LIMAN, ESQ.
JONATHAN I. BLACKMAN, ESQ.
JOAQUIN P. TERCENO, ESQ.

MISHCON de REYA
     Attorneys for Defendant BSG/Steinmetz
ELIZABETH ROTENBERG-SCHWARTZ, ESQ.
VINCENT FILARDO, ESQ.

SULLIVAN & WORCESTER
     Attorneys for Defendant Thiam
PAUL E. SUMMIT, ESQ.
```

1                    (Case called)

2                    (In open court)

3              THE COURT:  We're going to make the first part of this

4    very short.  Despite all the letters you sent about stays of

5    discovery, that ship sailed when you were in front of Judge

6    Berman, and at least as of now there is not going to be a stay.

7    I have a very strong ego, but reversing a district judge's

8    decision is not something I do too often and this is not one of

9    them.  If anyone desperately feels the need to say anything

10   further beyond what I've read in all the letters, feel free.

11   Whether the issue is open for renegotiation with Judge Berman

12   once he allows you to make your motion that's something you

13   will have to take up with him, but he has made that decision,

14   so my job is to get you to move forward with discovery.

15             Mr. Liman.

16             MR. LIMAN:  Your Honor, respectfully, we don't think

17   that Judge Berman has rendered a decision on this.  We think

18   the record is clear he has not.

19             THE COURT:  I'll interrupt you just to make it clear

20   that he thinks he has.  Not only having read the transcript of

21   his argument, but while I usually don't disclose internal

22   discussions, after getting some of your letters before

23   additional letters fluttered in, I called Judge Berman to

24   discuss the matter with him and he believes he has decided it.

25   So that you can make whatever argument you want to him, but he

1    has decided it, at least for now.

2             MR. LIMAN:  So, your Honor, just procedurally, am I
3    correct in understanding that we've got a ruling on this that
4    we can now take up to Judge Berman and ask him to reconsider
5    the issue?

6             THE COURT:  Absolutely.  Whether it's reviewing me for
7    abuse of discretion or reviewing him for reconsideration under
8    those rules or what rule applies, I leave it to all of you to
9    earn your keep by figuring that out and explaining it to him,
10   but as far as I'm concerned the request for a stay at this time
11   is denied.

12            MR. LIMAN:  And I take it I don't need to lay out the
13   arguments that I would make in front of you in order to raise
14   them up above, given the procedural status?

15            THE COURT:  You do not, although I would hope given
16   all the letters you and defendants' counsel have sent in you've
17   said everything there is to say.  But even if you haven't,
18   since I'm in no position to rule on it even if you orally
19   raised a new argument that you didn't raise in your letters,
20   take it to Judge Berman.

21            MR. LIMAN:  Thank you.

22            THE COURT:  All right.  With that, did you actually
23   get anything accomplished at yesterday's meet and confer or was
24   it all contingent on the argument that plaintiffs want to go
25   forward and defendants want a stay?

1           MR. LIMAN:  Your Honor, I think we actually did
2  accomplish quite a bit.
3           THE COURT:  Good.
4           MR. LIMAN:  We discussed discovery schedule, we
5  discussed motion schedule, we discussed initial disclosures and
6  the like.
7           THE COURT:  All right.  So is there a stipulation or
8  any documentation of it at this point or --
9           MR. LIMAN:  There's not.  I think where we left things
10 was that a lot of the agreements and the discussions were
11 contingent upon what the Court would do with respect to the
12 stay and we agreed that we would speak afterwards and try to
13 iron out some of the issues between the parties.  But to state
14 with a broad brush, and maybe we can reduce it to writing, I
15 believe that the parties are all agreed that from the start of
16 discovery there would be a period of twelve months for
17 discovery, document production, all of this subject to your
18 Honor's approval -- document production and depositions.  One
19 reason that justifies that, your Honor, is that many of the
20 documents in this case are, probably all of them, reside
21 outside of the United States and in the case of the defendants
22 most of those documents are not in English.  These documents
23 are in Portuguese and French, the documents are in Brazil, in
24 London.
25          But broad brush strokes we're still in discussion

1    about when those depositions would start in that 12-month
2    period and proposed a schedule to the plaintiffs.  Plaintiff
3    said they would get back to us.  We had a brief conversation
4    before the Court came in this morning where we're not in
5    agreement as to when depositions would start but we agreed to
6    discuss further and understand each other's position.
7             THE COURT:  All right.  Go ahead.
8             MR. LIMAN:  We discussed initial disclosures with
9    respect to Vale.  The parties are in agreement that Vale will
10   serve its initial disclosures on July 25, two weeks from
11   yesterday's Rule 26(f) conference.
12            THE COURT:  As to everyone else?
13            MR. LIMAN:  I'll let them speak to themselves.  They
14   had position contingent on motions.  Our position was not
15   contingent on whether there was a stay of discovery.
16            We discussed your Honor's 502(d) order.  On behalf of
17   Vale, we've discussed them with our clients and we're prepared
18   to have your Honor enter that 502(d) order.
19            THE COURT:  Does any party want to take the unenviable
20   position of saying there shouldn't be a 502(d) order?  Seeing
21   head shaking in the negative, I will enter one today or
22   tomorrow.
23            MR. LIMAN:  The parties discussed a deposition
24   protocol and we will be sharing drafts of the deposition
25   protocol.  Given the posture of this case before Rio Tinto

1  brought its lawsuit, the two corporate defendants were suing

2  each other, there's obviously going to be a need for a

3  deposition protocol.  We also discussed having a

4  confidentiality agreement in place.  We discussed general terms

5  with respect to that confidentiality agreement and we will be

6  sharing drafts with respect to that.

7          THE COURT:  Are we talking just on the confidentiality

8  agreement so we don't spend forever on should it be where for

9  or whereas, single-tier confidential or dual-tier confidential

10 and attorneys eyes only?

11         MR. LIMAN:  The latter, dual-tier attorneys eyes only.

12 Rio Tinto has made a proposal to limiting the attorneys eyes

13 only to specified attorneys and we need to understand that

14 proposal and think about it further at this point.

15         THE COURT:  I assume -- well, I don't assume,

16 confidential only used in this litigation or is it going to be

17 this litigation and the other litigations between the parties

18 or have you been talking about that?

19         MR. LIMAN:  We haven't discussed that.

20         THE COURT:  Don't spend a lot of time on the

21 confidentiality order.  Get it to me hopefully in agreed form

22 or, if not, counter agreed as to certain paragraphs and let's

23 get it done.  Okay, what else?

24         MR. LIMAN:  With respect to limits on discovery, we

25 all agreed there would need to be an enlargement of the number

1    of depositions.  No party was prepared to discuss how many

2    depositions need to be taken.  Your Honor knows some of the

3    parties haven't even appeared in this case and initial

4    disclosures haven't been served.

5             With respect to interrogatories we agreed that the

6    number of interrogatories did not need to be enlarged.  That's

7    subject, obviously, to any party making an application to your

8    Honor.

9             THE COURT:  I think most people view interrogatories

10   as useless, so use them appropriately, shall we say.

11            What else?

12            MR. LIMAN:  On the issue of ESI, we have, some of us

13   have exchanged thoughts with respect to ESI.  Plaintiffs have

14   shared protocol with all of the defendants.  We have at Vale

15   given some comments to the plaintiffs.  The other defendants

16   are considering that.  In fairness, we just got that yesterday

17   or the day before, and my understanding is Rio Tinto is

18   discussing with their E-discovery people our suggestions.

19            On the issue of privilege log, that needs to be worked

20   out, but we did have discussion in general about the concept of

21   having documents logged by category, that redacted documents

22   need not be logged and that communications with outside counsel

23   for the litigation post-complaint need not be logged.

24            We've made decisional suggestions to Rio Tinto.  I

25   believe those are still being discussed between the parties.

1   We're also discussing the topic of when privilege logs need to
2   be served.  Obviously, it's our position that privilege logs
3   should be served at some point after the production of
4   documents that were not deemed to have waived anything by
5   failing to serve a privilege log with the production.
6            All parties agreed to electronic service of documents.
7   And we have a motion schedule before Judge Berman which
8   provides that motions are due September 30, 2014, opposition
9   due November 14, 2014 and replies due December 12, 2014.  We
10  don't know, your Honor, and I think it would be useful to know,
11  whether the plaintiff intends to amend their complaint.  We've
12  now identified some of the flaws with respect to that
13  complaint.
14           THE COURT:  I will make this one comment and I think
15  this will apply to Judge Berman as well.  Once you all tell us,
16  and I guess the boss is going to be Judge Berman, that the
17  motion to dismiss is ready for the Court to rule on, that's
18  when the complaint should be in a put up or shut up position.
19  So whether you want to amend now, and I think there's already
20  been letters about amending to drop certain parties who either
21  don't exist or can't be sued, to satisfy Judge Berman's comment
22  of let's get everybody in, get one motion scheduled, if you
23  want to amend now obviously do so.  But if you need to amend
24  after you see the parties' motion to dismiss brief, immediately
25  tell the Court, amend at that point and then there will be a

1   change to the schedule.  But once the motion is fully briefed,
2   that's going to be it.  We're not going to deal with the
3   complaint as it stands and a motion to dismiss that's granted
4   in part and then you say, well, I can fix that.
5           MR. LIMAN:  Your Honor, I actually think that Judge
6   Berman's rules are a little bit different.  It may be a little
7   bit more restrictive.  What they provide is once we identify to
8   the plaintiffs through a premotion letter the defects in the
9   complaint, if they elect not to amend then any substance
10  decision is with prejudice.  We plan to put in a letter soon.
11          THE COURT:  Judge Berman's rules apply on that.
12          MR. LIMAN:  If you give me a moment to confer, I
13  believe I've covered most of the principal topics.
14          (Pause)
15          MR. LIMAN:  Your Honor, one other subject.  I
16  mentioned the schedule of twelve months with respect to fact
17  discovery.  We also had discussion with respect to expert
18  discovery and our proposal would be for a period of several
19  months.
20          THE COURT:  Hold off on that.  I think we need to --
21  everybody including Judge Berman recognizes that November of
22  this year is not likely to bring an end to discovery, but I'd
23  like to get you all agreed and moving as quickly as possible on
24  the document and ESI and related issues.  We can worry about
25  where experts fit in and exactly how long you need for that and

all of that at a later point.  I have a feeling I may be seeing you all a lot, although I certainly hope that you will be, once the basic ground rules are set you will all cooperate and go forward.

MR. LIMAN:  Your Honor, I would say, and this is with respect to the issue of the stay of discovery, when we appeared in front of you just we did not identify some of the grounds.  In fact we didn't identify any of the grounds.

THE COURT:  If he changes his mind he knows where to find you.

MR. LIMAN:  If your Honor will indulge me for just one moment because I think it does affect the timing.

With respect to Vale, I think the Supreme Court has been very clear that when there is a forum selection clause that forum selection clause governs and there is in this case a forum selection clause.  We will raise that in front of Judge Berman.

THE COURT:  And I do note that as a heads up to plaintiffs' counsel that in your most recent letter, the July 10 letter, on page 2 you say Rio Tinto has not alleged a breach of the confidentiality agreement for Vale.  Then on page 3 under failure to state a claim you mention the detailed, complicated scheme, bribery, fraud, concealment, exploitation of confidential information, etc.  That may be inconsistent.  In any event, whether your motion is an absolute winner on the

1   defense side, an absolute loser or something in between, you'll
2   make your application to Judge Berman if you decide to do that,
3   and you will decide and redecide, etc.  The sooner, I suspect,
4   since he gets the same ECF notifications that I do, that he has
5   read them and hasn't changed his mind, but in any event the
6   sooner you get a premotion letter to him on this issue or
7   objections to the extent that's the route you need to go to get
8   it before him since I've ruled consistently with what he has
9   done but against you, do what you got to do.
10            In the meantime, let me hear very briefly, and
11  unfortunately I have a 3:00 emergency settlement conference
12  that I've squeezed in today since they're going to trial in two
13  weeks or less if they don't settle, so I don't have as much
14  time as I otherwise would give you, let me briefly hear from
15  plaintiffs and any of the co-defendants.  But what I'm going to
16  wind up doing is getting you to come back in the
17  not-too-distant future, hopefully maybe next week, with more
18  teeth on the bones of what you've told me you've got partially
19  agreed and discussed, etc.
20            Mr. Lyle?
21            MR. LYLE:  Good afternoon, your Honor.  Michael Lyle
22  from Quinn Emanuel on behalf of Rio Tinto.  Mr. Liman has
23  explained with broad brush strokes the sum and substance of
24  what we agreed to do yesterday.  A couple of areas that we may
25  have to come back to, your Honor, and what you mentioned in

1    terms of a hearing next week makes sense.  We take the position
2    that the written discovery that we've already propounded is due
3    under Judge Berman's current posture on August 4th, and we've
4    had objection from the defendants on the grounds that discovery
5    wasn't going to proceed, so we'd like those answers to be due
6    on the 4th.
7              THE COURT:  They're clearly not going to be ready on
8    the 4th.  We could do one of two things:  Following the
9    approach of the proposed what will become the 2015 amendment to
10   the Federal Rules, deem the requests served yesterday on the
11   meet and confer date.  We can also say some things the
12   defendant will be able to produce more quickly than others and
13   why don't you all talk about that as well as what is
14   objectionable and I would like on all discovery requests in
15   order to avoid the 30 days taken up merely to serve objections
16   to almost everything or whatever the objections are, that as
17   soon as you are able you talk about objections and limitations
18   and priorities and all of that.
19             I'm not going to rule on that per se, but I want you
20   all to talk, I want cooperation here and when I see you next
21   week hopefully you'll all be in a better position for the
22   defendants to say they can give you their objections by X date
23   and their production, what they're willing to produce by Y date
24   or the start of the rolling basis or the end of the rolling
25   basis, etc.

MR. LYLE:  Thank you, your Honor.  The other area that we think might be useful for the Court to assist us, and it has to do with the deposition issues --

THE COURT:  Depositions are so likely to be so far away if you're talking about agreeing on a one-year discovery schedule that I don't know that it pays to spend much time on it now.  My general rule is no.  There will be one deposition of a person, so unless you think that there is some urgency to depose Sherlock Holmes right away before you have any documents and not depose him later, that might be an argument you could make, but other than that I think before you get documents the odds of us needing to spend too much time on deposition dates or protocols now is probably too far away.

MR. LYLE:  Thank you, your Honor.  That's helpful to us in framing our discussion.  We were thinking there might be 30(b)(6) components we would need you to help us in targeting additional discovery, but we'll take it up with defense counsel and get back to you.

THE COURT:  That's usually a useless exercise in cooperation among counsel to get that information more quickly but obviously if it's that sort of a deposition merely to figure out where the documents are, talk about it, but generally that and the related request of we want an IT person from an opposing party to figure out their computer system generally gets you much less useful information than informal

1  discussions on the same topic.
2          MR. LYLE:  Understood.  Thank you.
3          THE COURT:  But if you need to make such an
4  application, go ahead.
5          MR. LYLE:  Understood.  Thank you, your Honor.
6          THE COURT:  Any other defendants want to say anything
7  other than "me, too" or "Mr. Liman is right"?  I won't hold it
8  against you if you don't say anything.  I may hold it against
9  you if you do, but you take your chances.
10         Okay, having appropriately gotten you to not make any
11 further comment how are you all for availability next Friday
12 the 18th, bright and early?
13         MR. LIMAN:  Your Honor, I'm in meetings in London next
14 week.  I told my partner Mr. Blackman --
15         THE COURT:  How many are here from Cleary Gottlieb?
16         MR. BLACKMAN:  We have two, your Honor.  The partners
17 have to be here.
18         MR. LIMAN:  We do have a summer associate here.
19         THE COURT:  I won't say they don't count but they're
20 not likely to represent your client.
21         Here's the problem:  I'm out next week and I really
22 don't want to let it go until after the 28th.  Is there no
23 senior person or partner or senior associate from Cleary that's
24 available to have or have the co-defendant take the lead?
25         MR. LIMAN:  Your Honor, co-defendant just whispered to

1     me.  I think there's a substantial chance we could get these
2     resolved, any issues that divide us --
3             THE COURT:  I am certainly hopeful of that and there's
4     nothing like a conference date to encourage people to return
5     phone calls.  Not that you don't seem to know how to get
6     letters on the system very quickly, but my concern is that if
7     we don't do it next week because of your unavailability and I'm
8     unavailable the following week and we don't have agreement,
9     particularly on things that need to happen soonest, which is
10    the mandatory 26(a) disclosures by the other defendants and the
11    plaintiff and the starting of discussions about responding to
12    the outstanding plaintiff discovery requests, then we've really
13    lost the entire month of July with nothing happening.
14            MR. LIMAN:  My sense from the murmurings is that on
15    the 26(a)(1) initial disclosures we may be able to secure
16    agreement today that all of the defendants will serve their
17    26(a)(1) disclosures two weeks from yesterday, the same
18    schedule that's been agreed on with Vale.
19            THE COURT:  Any reason I shouldn't say "so ordered"
20    and thereby save you a conference?  I assume plaintiff is
21    prepared to go forward on that date as well?
22            MR. LYLE:  Yes, your Honor.
23            THE COURT: Good.  All right, so that's the date,
24    July 23.  All right.  And I want you from London or however you
25    do it to be in discussions about the other aspects,

1   particularly I would assume the ESI protocol, because that will
2   have a major impact on what you produce on paper which is the
3   outcome.  Let's get you in, how does Tuesday July 29 work for
4   everybody?  I'm perfectly happy, if you read my rules as I'm
5   sure everybody has, Mr. Liman, you've been on a big case in
6   front of me, there are no issues because you will get things
7   resolved, I am happy to look down the road and pick down
8   whatever we have scheduled.  I'm very happy to get people in
9   there quickly if there's a sudden dispute or we don't have a
10  conference scheduled at all or it's not scheduled for a long,
11  long time.  Twenty-ninth at 2:00?  All right, July 29 at
12  2:00 p.m. it is.
13           The Court's ruling is the transcript, I'm going to
14  require the sides to split the transcript 50-50 across the V
15  and I assume defendants can take turns or figure out how
16  they're allocating their half of the transcript cost, and for
17  this time and so that I don't have to say it in the future, any
18  time I make rulings and there's a court reporter the court's
19  ruling is on the transcript it's rare for me to write on
20  discovery matters and therefore your 14 days to file objections
21  is always triggered from the time of the conference, not from
22  when you buy the transcript, which might be much, much earlier.
23  Okay.  Thank you all, if you can quickly make your way out so I
24  can get the settlement conference.
25           (Adjourned)