CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C BUCHHEIT
JAMES M PEASLEE
ALAN L BELLER
THOMAS J MOLONEY
JONATHAN I BLACKMAN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S. LINCER
JAIME A EL KOURY
STEVEN G HOROWITZ
JAMES A DUNCAN
STEVEN M LOEB
CRAIG B BROD
MITCHELL A LOWENTHAL
EDWARD J ROSEN
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A GROLL
HOWARD S ZELBO
DAVID E BRODSKY
MICHAEL H LAZERWITZ
ARTHUR H KOHN
RICHARD J COOPER
JEFFREY S LEWIS
FILIP MOERMAN
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
ANDRES DE LA CRUZ
DAVID C LOPEZ

CARMEN A CORRALES
JAMES L BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL J VOLKOVITSCH
MICHAEL C DAYAN
CARMINE D BOCCUZZI JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
LEONARD C JACOBY
SANDRA L FLOW
FRANCISCO L CESTERO
FRANCESCA L ODELL
WILLIAM L MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER
JUAN G GIRALDEZ
DUANE McLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O'REILLY
DAVID AMAN
ADAM E FLEISHER
SEAN A ONEAL
GLENN P McGRORY
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU

ROGER A COOPER
AMY R SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A BAREFOOT
PAMELA L MARCOGLIESE
PAUL M TIGER
JONATHAN S KOLODNER
RESIDENT PARTNERS

SANDRA M ROCKS
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
DAVID H HERRINGTON
HEIDE H ILGENFRITZ
HUGH C CONROY, JR
KATHLEEN M EMBERGER
WALLACE L LARSON JR
JAMES D SMALL
AVRAM E LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K GRANNIS
GRANT M BINDER
MEYER H FEDIDA
CAROLINE F HAYDAY
JOHN V HARRISON
RESIDENT COUNSEL

LOUISE M PARENT
OF COUNSEL

August 11, 2014

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

I write jointly on behalf of all appearing parties to inform the Court that, with the exception of two outstanding issues regarding the proposed Protective Order, the parties have reached agreement on the terms of a proposed Protective Order and ESI Protocol (attached as Exhibits A and B, respectively). The first outstanding issue concerns Section VI(1) of the Protective Order, which sets forth the basic principles under which a Party may use Protected Material. The second issue concerns Section VI(3) of the Protective Order, which governs the disclosure of Protected Material designated as Highly Confidential. The proposed Protective Order (Exhibit A) contains alternative language proposed by Plaintiff and Defendants on each of these issues.

## A. Protective Order Section VI(I): Use In Other Proceedings

**Plaintiff's Position**. Plaintiff Rio Tinto has worked cooperatively and made numerous compromises with Defendants to arrive at a workable protective order for this case, however it cannot agree to a proposed protective order that would permit the use of its confidential and highly confidential information produced in this litigation in other proceedings to which it is not a party. In response to a statement from Your Honor at the July 29 hearing that discovery in this litigation would be relevant in other litigations, counsel for Defendant Vale responded: "With respect to the latter point, that the discovery will end up being usable somewhere else. We respectfully disagree." July 29, 2014 Hearing Transcript at page 10, lines

10-12. Vale took that position when it suited their request for a stay, but now they completely reverse course and want to be able to use information "derived from" confidential and highly confidential information in other litigations and foreign judicial proceedings, particularly Vale's ongoing arbitration with BSGR in London. Plaintiff Rio Tinto simply cannot give a blanket ex-ante agreement to have its confidential and highly confidential information produced in this litigation used in that arbitration, to which it is not a party and in which it has no way to ensure its information will be protected. For example, Rio Tinto does not even know all the parties to that arbitration, the identity of any experts, vendors, or third parties that will be used so that it could evaluate conflicts, the identity of the arbitrators, or even if there is a protective order in place in that arbitration. Nor does Defendants' "derived from" language solve the problem. First, it is standard less on its face (the Defendants' language is silent as to how one decides and enforces whether a piece of information is "derived from" another); and second, it is a clear attempt to evade the substance and spirit of the protections afforded under the protective order. Essentially Defendants want to be able to share information they "derive" from the document, even if they cannot actually show the document itself. Finally, Defendants' concerns about facing accusations in their separate arbitration that they are misusing information produced in this case are better addressed in an agreement between Defendants or in the protective order in that arbitration; not by the unbounded and standard-less approach they have proposed here.

      **Defendants' Position**. Defendants' proposed language is essential to the proper functioning of, and compliance with, the Protective Order. Certain of the Defendants are engaged in related litigation and arbitration concerning the subject matter of this lawsuit including the issuance and subsequent revocation by the Government of Guinea of iron ore mining licenses in the Simandou Mountains in Guinea. As the Court is aware, these matters include an arbitration initiated in the United Kingdom, before this action was commenced, by Vale against BSGR concerning issues similar to those being litigated here. In these related actions, the parties have the right to make certain discovery requests, and witnesses are permitted to provide testimony. As an initial matter, if the Protective Order were read to prohibit the parties from using information derived from Protected Materials in connection with such related litigation, it would impose an obligation on the parties and their counsel that would be impossible to uphold and fulfill. "It is well established that the Federal Rules of Civil Procedure[] create no automatic prohibition against using discovery obtained in one litigation in another litigation." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 75-77 (S.D.N.Y. 2010). Yet, under Plaintiff's proposed interpretation a party would not only be prohibited from using Protected Material in a related litigation, but could not use that confidential information to inform its judgment regarding the scope of its discovery; for example, regarding what questions to ask a witness and what categories of documents to request from a party. That burden would be impossible to uphold and fulfill. A party or attorney exposed to confidential information in this case cannot selectively segregate or disremember it before formulating a request or providing testimony in another litigation or arbitration. Simply put, once information is learned, it cannot be unlearned. A party cannot be expected to analyze every request to determine whether it would have made that identical request had it not received the Protected Material. Moreover, Plaintiff's proposal would allow a party who provided unfavorable testimony or was subject to challenging discovery requests in another proceeding to assert in this Court that such request or testimony was made on the basis of information acquired through the review of Protected Material in this action. This would then burden the other party -- in this Court and not elsewhere -- to show that the propounded request or proffered testimony was based upon

2

independently obtained information. This burden would be compounded and exacerbated because a violation of the Protective Order would be punishable by contempt -- even perhaps years after this litigation ended. In contrast, the Defendants' proposed language serves three essential offices: it (i) ensures that the obligation imposed by the Order is one that can be upheld; (ii) protects against the commencement of satellite litigation in this Court concerning discovery disputes truly belonging in the forums in which the actions are ongoing; and (iii) ensures that no party to any other action can use this Order for strategic purposes far afield from its intended purpose.

### B.  Protective Order Section VI(3): Disclosure To Non-Party Witnesses

**Plaintiff's Position**. Defendants proposal to allow for highly confidential and extremely sensitive material to be disclosed to non-party witnesses would effectively destroy the protections afforded by such a designation. The purpose of this designation is to limit the disclosure of extremely sensitive confidential information to a discrete and defined group of people. Non-Party witnesses is simply too broad and undefined a category, and could include any number of witness, including consultants and former employees now employed by competitors of Rio Tinto. This is of particular concern where, as here, such competitors may currently be bidding for the mining rights to Simandou Blocks 1 and 2, which are currently out for tender.

**Defendants' Position**. Plaintiff's Proposed Language for Section VI(3) would significantly handicap Defendants in defending the litigation and would present unnecessary obstacles for all parties. Defendants anticipate that they will need to show documents marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to certain non-party witnesses in order to properly defend the Litigation, including in preparation for taking and defending depositions. For example, and not by way of limitation, Defendants believe it may be critical to establish whether a former employee had knowledge of certain information during their employ with one of the corporate defendants. However, where such information has been designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," Plaintiff's Proposed Language for Section VI(3) would not permit such disclosure to a former employee or any other non-party witness.   That provision is too restrictive: given the time period covered by this lawsuit, there are numerous former employees and non-party witnesses to whom disclosure may be required. Although Plaintiff's Proposed Language for Section VI(3) includes a carve-out for "the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information" (*see* Section VI(2)(h)), it would not address the difficulty posed above. The parties would still be barred from disclosing material designated "HIGHLY CONFIDENTIAL" to a non-party to determine whether the individual even had knowledge of such information in the first place. Notably, the Protective Order already has two key protections in place to prevent non-party witnesses from using or disclosing Protected Materials. First, non-party witnesses are required to sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), which narrowly limits the use of such information to this Litigation and prevents disclosure of such information to any other person. That provision is enforceable. Second, Defendants have appropriately added additional limiting language to Section VI(2)(i), requiring that any such disclosure to a Non-Party witness be "reasonably necessary for the purposes of prosecuting, defending or attempting to settle this Litigation." Therefore, non-party

3

witnesses are unquestionably bound by the Protective Order to preserve the confidentiality of any so designated information.  Accordingly, Defendants' Proposed Language for Section VI(3) of the Protective Order strikes the appropriate balance between ensuring that any highly confidential information is suitably protected, while avoiding the imposition of needless burdens that curtail the Defendants' rights to vigorously defend themselves in this litigation and the creation of unnecessary difficulties for all parties.

Accordingly, the parties ask that the Court (1) enter the jointly proposed ESI Protocol, and (2) make its rulings with respect to the two outstanding issues in the proposed Protective Order, as outlined above.

Respectfully submitted,

Lewis J. Liman

cc: All Counsel of Record (by email)

4