# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC        ONE LIBERTY PLAZA        ROME

PARIS        NEW YORK, NY 10006-1470        MILAN

BRUSSELS        (212) 225-2000        HONG KONG

LONDON        FACSIMILE (212) 225-3999        BEIJING

FRANKFURT        WWW.CLEARYGOTTLIEB.COM        BUENOS AIRES

COLOGNE        SÃO PAULO

MOSCOW        ABU DHABI

       SEOUL

**By ECF**                         September 3, 2014

Hon. Richard M. Berman
United States District Court
For the Southern District of New York
500 Pearl Street, Courtroom 12D
New York, NY 10007

Re: _Rio Tinto plc v. Vale S.A., et al._, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Berman:

       This letter is respectfully submitted on behalf of all appearing defendants ("Defendants") in support of their joint motion to dismiss the Amended Complaint[1] of Rio Tinto plc ("Rio Tinto" or "Plaintiff") (Dkt. No. 83, the "Amended Complaint"), pursuant to the doctrine of _forum non conveniens_, in favor of suit in England, where all Defendants are subject to or consent to the jurisdiction of English courts (the "Motion").[2] Two independently sufficient grounds support dismissal: (1) Rio Tinto's claims against Vale are governed by a forum selection clause that requires them to be brought in England, and (2) Rio Tinto's claims against _all_ Defendants should be dismissed based on traditional _forum non conveniens_ grounds.

---

[1] Defendants cite Rio Tinto's original Complaint (Dkt. No. 1) and where appropriate its Amended Complaint (Dkt. No. 83), as specified.

[2] Pursuant to Your Honor's direction, Defendants submit this Motion jointly, noting that some of the Defendants have different positions with respect to, _inter alia_, the merits of Rio Tinto's allegations. As the Court directed at the July 28, 2014 pre-motion conference, this Motion is made separately from the defendants' anticipated motions to dismiss under Fed. R. Civ. P. 12(b).

Hon. Richard M. Berman, p. 2                                September 3, 2014

## ARGUMENT

**A.    THE CONFIDENTIALITY DEED'S EXCLUSIVE JURISDICTION CLAUSE REQUIRES DISMISSAL OF RIO TINTO'S CLAIMS AGAINST VALE**

Rio Tinto is a United Kingdom corporation with its principal place of business in London.  (Am. Compl. ¶ 18).  Vale is a Brazilian corporation with its principal place of business in Brazil.  (*Id.* ¶ 19).  On September 2, 2008, the two signed a Confidentiality Deed ("Deed") in connection with Vale's consideration of whether to purchase a material or substantial interest in Rio Tinto's shares, assets, or business.  (Ex. A, Confidentiality Deed, at 4).  The Deed provided in pertinent part that (i) neither party would "make any use of the Confidential Information or any part of it except" to "conduct an assessment of whether or not the parties would pursue" the transactions under discussion (Compl. ¶ 55) and (ii) required both parties to hold the other's confidential information "in strict confidence" (*id.*).  The Deed also provided broadly that any disputes arising out of or in connection with the Deed would be resolved in the courts of England, Rio Tinto's home, with the limited exception that in certain circumstances (not present here) Rio Tinto could seek injunctive relief in Brazil, Vale's home.  Specifically, Clause 20 of the Confidentiality Deed ("Clause 20") provides:

> **20. Governing law and jurisdiction**
>
> (a)    This Deed shall be governed by and construed in accordance with English law.
>
> (b)    Each of the parties agrees that the courts of England are to have non-exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Deed and that accordingly any proceedings arising out of or in connection with this Deed shall be brought in such courts.  In connection with any disputes which may arise out of or in connection with this Deed, each of the parties irrevocably submits to the jurisdiction of such courts and waives any objection to proceedings in any such court on the ground of venue or on the ground that proceedings have been brought in an inconvenient forum.
>
> (c)    Notwithstanding the provisions of sub-Clause (b) of this Clause 20, the parties recognise that the Brazilian courts may be the appropriate forum for the

> enforcement of some of the provisions of this Deed (including in relation to the obligations set out in sub-Clause 5 (Share Acquisitions)), not least where injunctions are required.  Where this is the case, each of the parties agrees irrevocably and unconditionally to submit to the non-exclusive jurisdiction of the Central Courts (*Foro Central*) of the City of Rio de Janeiro, State of Rio de Janeiro, Brazil.

(Ex. A, Confidentiality Deed, cl. 20).

As negotiations proceeded subject to the Deed, they ultimately focused on three Rio Tinto assets in Canada, South America, and Africa, eventually expanding to include Rio Tinto's Simandou concession in Guinea.  (Compl. ¶ 54).  In November 2008, Rio Tinto first provided information to Vale about the Simandou concession that Rio Tinto alleges was confidential.  (Am. Compl. ¶¶ 56-59, 63).  It provided such information, as it provided information about its other assets, through a Data Room, whose access was governed by a Data Room Access Agreement (*id.* ¶ 64), also known as the VDR Access Protocol, that incorporated the Deed (and its forum selection clause) by reference.  (Ex. B, VDR Access Protocol).  Those negotiations never came to fruition as regards Simandou.  (Am. Compl. ¶ 104).  More than a year later, Vale entered into a transaction with BSGR to operate a joint venture with respect to Simandou.  Rio Tinto's six causes of action against Vale are all premised on the claim that Vale "misappropriated" information Rio Tinto provided it by using it in connection with the BSGR transaction rather than for the abortive Rio Tinto transaction (*see id.* ¶ 89), and conclusorily contends that Vale was never interested in a transaction with Rio Tinto (*id.* ¶¶ 54-55).

That claim plainly arises from and is in connection with the Deed and therefore Clause 20 requires dismissal of the Amended Complaint as against Vale.  The Supreme Court has recently confirmed that a forum selection clause, such as the exclusive jurisdiction clause in the Deed, must be "given controlling weight in all but the most exceptional cases," *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (citations omitted), and

this is not such an exceptional case.  The clause was "reasonably communicated to the party

resisting enforcement," is mandatory (in that it "require[s]" the parties to sue in the designated

forum rather than simply "permit[s]" them to do so), and applies to the "claims and parties

involved in the suit," making it presumptively enforceable.  *Martinez v. Bloomberg LP*, 740 F.3d

211, 217-18 (2d Cir. 2014); *accord Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir.

2007).  Rio Tinto cannot "satisfy the heavy burden" of showing that enforcement would be

unreasonable or unjust, or that the "[clause's] incorporation was the result of fraud or

overreaching."  *Martinez*, 740 F.3d at 219, 228 (citations omitted).

## 1.      Clause 20 Is A Mandatory Forum Selection Clause

Under the clear language of Clause 20, Rio Tinto's suit against Vale should have been

brought in England.  That language  provides (with the single inapplicable alternative of suit in

Brazil) that "any disputes which may arise out of or in connection with this Deed and that

accordingly any proceedings arising out of or in connection with this Deed *shall be brought*" in

the courts of England.  (Ex. A, Confidentiality Deed, cl. 20(b)) (emphasis added).  It is not

merely permissive, but mandatory.  As Lord Collins of Mapesbury, former Justice of the UK

Supreme Court, the highest court of England and Wales, and author of the leading English text

on conflict of laws, explains, the use of "shall" is mandatory and not permissive, and signals an

obligation to submit disputes *only* to English courts.  (Ex. C, Declaration of Lord Collins, dated

July 29, 2014, ¶¶ 7, 63-64).[3]  Thus, the Deed requires these two non-U.S. parties to bring all

---

[3] The English choice of law provision of the Deed governs the interpretation of Clause 20.  *See
Martinez*, 740 F.3d at 217-18; *see also Longo v. FlightSafety Int'l, Inc.*, No. 12-civ-2413 (WFK)
(LB), --- F. Supp. 2d ---, 2014 WL 880410, at *3 (E.D.N.Y. Mar. 6, 2014) (noting that the
mandatory nature of the clause and its scope are "quintessentially interpretive questions" and
applying English law to interpret them); (Ex. A, Confidentiality Deed, cl. 20(a) (choice of law
provision)).

disputes arising out of or in connection with the Deed in the courts of England or – as a limited

exception – in the courts of Brazil, and does not provide for a forum in the United States.  (*Id.* ¶¶

10, 60, 95).  U.S. law is to the same effect.  *See Phillips*, 494 F.3d at 386 ("A forum selection

clause is viewed as mandatory when it . . . incorporates obligatory venue language"; phrase "are

to be brought" established England as an obligatory venue for proceedings within the scope of

the clause).[4]

      This clear language is reinforced by the remainder of Clause 20, as well as by the rest of

the Deed.  First, Clause 20(c) explains Clause 20(b)'s reference to England as the "non-

exclusive" forum by providing the single carve-out to the requirement that all disputes "shall" be

brought in the courts of England: "[n]otwithstanding the provisions of sub-Clause (b) of this

Clause 20, the parties recognize that the Brazilian courts may be the appropriate forum for the

enforcement of some of the provisions of this Deed, . . . not least where injunctions are

required."  (Ex. A, Confidentiality Deed, cl. 20(c)).  There would be no need to specify that

Clause 20(c) applied "notwithstanding" Clause 20(b) if Clause 20(b) itself left it open for the

parties to commence litigation in Brazil.  Under English law, the entirety of Clause 20(c) would

be superfluous if Clause 20(b) did not otherwise require the parties to submit all disputes in

connection with the Deed to the courts of England.  (Ex. C, Collins Decl. ¶¶ 8, 65).  Similarly,

---

[4] *See also Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06-civ-0615 (BSJ), 2008 WL
4922327, at *7 (S.D.N.Y. Feb. 27, 2008) (use of "'*shall be brought*' . . . require[s] that any
action under the bill [of lading] be brought before a specific court"); *Am. Home Assurance Co. ex
rel. Stanley Door Sys. v. M/V Hanjin Marseilles*, No. 03-civ-9539 (GBD) (AJP), 2004 WL
1197240, at *4 (S.D.N.Y. June 1, 2004) (Peck, C.M.J.) ("[T]he cases generally hold that use of
the word 'shall,' even without more, makes the forum selection clause mandatory, not simply
permissive.") (collecting cases); *cf. GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l
Ass'n.*, 242 F. Supp. 2d 279, 283 (S.D.N.Y. 2002) (Berman, J.) ("shall be brought" constitutes
"specific language of exclusion"; by contrast, use of "may be," as opposed to mandatory
language such as "shall be," renders a forum selection clause permissive).

the English choice of law provision in Clause 20(a) and the England service of process provision in Clause 22(a) without more already confer jurisdiction on English courts, making Clause 20(b) superfluous if its intention were not to make jurisdiction mandatory.  (*Id.* ¶¶ 9, 71-85).[5]

Commercial common sense reinforces this reading.  (Ex. C, Collins Decl. ¶¶ 26-36, 71-85).  There is no commercial reason for the parties to have agreed that more than 17 countries in which they have principal subsidiaries might exercise jurisdiction over disputes arising out of the Deed, as would be the case if the clause were merely permissive.  (*Id.* ¶ 69).  Rather, because the Deed is governed by English law, it made commercial sense for the parties to agree that disputes be resolved in England, which is also Rio Tinto's home, subject to the limited carve-out for Brazil, Vale's home.  (*Id.* ¶ 70).

In short, under both a plain reading of the text of Clause 20 and the required interpretive analysis under English law, Clause 20 was intended to and in fact constitutes an exclusive forum selection clause.  Simply put, potential claims may be brought in either England or Brazil, such that neither is the exclusive forum, but together they are the *only* forums where claims can be brought, to the exclusion of any other forums, including the United States.

## 2.     Clause 20 Applies To Rio Tinto's Claims Against Vale

At the pre-motion conference and in its July 10, 2014 letter to Judge Peck (Dkt. No. 60),

---

[5] *Cf. Syncora Guar. Inc. v. HSBC Mexico, S.A.*, 861 F. Supp. 2d 252, 259 n.5 (S.D.N.Y. 2012) (Berman, J.) (finding that broad interpretation of scope of language excluding from arbitration certain disputes "[n]otwithstanding the foregoing" clause providing that "[a]ny dispute . . . shall be settled by arbitration" would render language "superfluous," an outcome which "'is not preferred and will be avoided if possible'") (*citing Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003)); *Stanley Door Sys*, 2004 WL 1197240, at *4-5 (Peck, C.M.J.) (interpreting clause providing disputes "shall be governed by German Law and determined by the Courts of Bremen" and holding that carve-out permitting litigation in France in limited circumstance was "additional language that [further] makes clear [the clause's] mandatory nature," because "[c]ontracts must be read in their entirety" and if the "clause were permissive, the France carve-out . . . would be superfluous").

Rio Tinto argued that its claims, as against Vale, did not "arise out of" or are not "in connection

with" the Deed.  (July 28, 2014 Hr'g Tr. at 8:2-7, 8:14-24).  That argument is meritless.

Rio Tinto does not contend (in either its Complaint or its Amended Complaint) that *Vale*

was engaged in BSGR's alleged bribery in connection with the Simandou concession.  Rather,

all of Rio Tinto's claims against Vale arise from and relate to the Deed and the alleged misuse of

confidential information provided under it.  Rio Tinto's original Complaint made this abundantly

clear.  In the very first paragraph of its original Complaint, Rio Tinto claimed that this case is

about Vale's "theft of Rio Tinto's valuable mining rights" (Compl. ¶ 1) – to wit, Rio Tinto

alleged that it agreed to give Vale Rio Tinto's proprietary information under "false pretenses,"

and that "Vale's role in the scheme was to continue to obtain Rio Tinto's highly confidential and

proprietary information under false pretenses, and pass that information on to Steinmetz and

BSGR in order to facilitate their efforts to induce officials in the Guinean Government to rescind

Rio Tinto's rights."  (*Id.* ¶ 7).  Rio Tinto claimed that it "provided this information in good faith

pursuant to a confidentiality agreement that required Vale to treat the information with discretion

and solely for the intended purpose – to determine whether Rio Tinto and Vale could agree to

terms on Rio Tinto's interest in Simandou."  (*Id.* ¶ 2).  It alleged that the "Deed stated that both

parties would hold 'Confidential Information in strict confidence' [and] further stated that neither

party would 'make any use of the Confidential Information or any part of it except' to 'conduct

an assessment of whether or not the parties would pursue' a transaction under which Vale would

acquire an interest in Rio Tinto's assets."  (*Id.* ¶ 55 (quoting Deed)).  In sum, Rio Tinto's claims

derive directly from representations made by and obligations assumed under the Deed, and must

necessarily arise "in connection with" the Deed.[6]

---

[6] *See also*, *e.g.*, Compl. ¶ 94 ("BSGR and Steinmetz needed Vale to continue its ruse of

*(continued)*

In its Amended Complaint, Rio Tinto attempts to plead around that conclusion, by downplaying references to the Deed and adding a claim that it was fraudulently induced to enter into the Deed.  (Am. Compl. ¶¶ 226-235).  This attempt fails.  As an initial matter, Rio Tinto cannot "blatantly change[] [its] statement of the facts in order to respond to [Defendants'] motion to dismiss."  *Colliton v. Cravath Swaine & Moore LLP*, No. 08-civ-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 4, 2008) (citation omitted) (rejecting amended complaint that changed the facts, after defendant argued in a pre-motion letter why suit was barred, as "a transparent attempt . . . to avoid a dispositive defense"), *aff'd* 356 F. App'x 535 (2d Cir. 2009).[7] More important, Rio Tinto's deletion of quotes from the Deed cannot alter the essential fact that the gravamen of its claims still squarely and necessarily arises out of and in connection with the Deed.  Indeed, "the substance of the allegations in the new cause of action relates to a claim that Vale wrongfully obtained information under the Confidentiality Deed and misused that information, and therefore raises a dispute which arises 'out of or in connection with' the Confidentiality Deed."  (Ex. D, Additional Declaration of Lord Collins, dated Sept. 3, 2014, ¶ 25).  Vale obtained information from Rio Tinto pursuant to the Deed and by allegedly "feign[ing]" interest in the deal the Deed was intended to facilitate.  (*See* Am. Compl. ¶¶ 4, 11,

---

negotiating with Rio Tinto in order to maintain access to Rio Tinto's confidential information"); ¶ 111 ("Defendants utilized and implemented Rio Tinto's Liberian railway and Didia port plans . . . information [that] Rio Tinto provided to Vale during its confidential negotiations"); ¶ 148(c) ("Vale continued to falsely express an interest in purchasing Rio Tinto's rights to Simandou"); ¶ 189 ("By feigning interest in a deal related to Simandou, Vale and its co-conspirators were able to gain access to key confidential and proprietary information from Rio Tinto, which Defendants then used for their own development of Simandou.").

[7] Indeed, the facts in Rio Tinto's Amended Complaint "directly contradict[] the facts set forth in [the] original complaint," *Colliton*, 2008 WL 4386764, at *6:  Rio Tinto's original Complaint asserted that Vale engaged in fraud only *after* the parties entered into the Deed, while its Amended Complaint now asserts that such fraud arose *before* the parties entered into the Deed and in fact induced Rio Tinto to enter into it.

15, 53, 56, 160, 208).  It did so via the Data Room, access to which was governed by the Deed.
(*Id.* ¶¶ 10, 61, 66, 106, 161).  And Vale allegedly used the information contrary to the terms of
the Deed by giving it to Steinmetz and BSGR and using it "for their own development of
Simandou."  (*Id.* ¶¶ 62, 87, 90).

    The information that Rio Tinto conveyed to Vale would have been "misappropriated" (*id.*
¶¶ 15, 161; *see also* Compl. ¶¶ 12, 14, 110, 142) only because it was allegedly used outside the
terms of the Deed.  Rio Tinto freely conveyed the information to Vale; absent a contract, Vale
had every right to use it as it chose.  If it was misused, that is because its use was in violation of
the terms under which it was conveyed, *i.e.*, the Deed.  *Faiveley Transp. Malmo AB v. Wabtec
Corp.*, 559 F.3d 110, 117 (2d Cir. 2009); *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, No. 11-
civ-6528 (CJS), 2013 WL 1945954, at *5 (W.D.N.Y. May 9, 2013); *Direct Mail Prod. Servs.
Ltd. v. MBNA Corp.*, No. 99-civ-10550 (SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7,
2000) (misappropriation claim falls within the scope of forum selection clause).[8]

    Rio Tinto cannot avoid dismissal by arguing that its claims are not subject to the forum
selection clause because they are not specifically labeled as a breach of the Deed.  In interpreting
the scope of the forum selection clause, this Court cannot "depend solely on the legal labels used
by [Rio Tinto] to decide if [this] case arises out of the contract," *Phillips*, 494 F.3d at 388, and
"[t]he scope of a forum selection clause does not turn on 'whether an ingenious pleader could
frame a cause of action without actually mentioning the . . . Agreement,'" *Martinez*, 740 F.3d at

---

[8] There are no well pled allegations of misrepresentations save for the representations made in
connection with the Deed.  (Am. Compl. ¶¶ 4, 54-55, 229, 232).  These alleged
misrepresentations were themselves related to the Deed, "despite being made prior to that event."
*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 129-30 (2d Cir. 2001).  And any
purported omissions by Vale could not, as a matter of law, be fraudulent, given that no "duty of
disclosure" existed since there was no "fiduciary relationship between the parties."  *See Nasik
Breeding & Research Farm Ltd. v. Merck & Co., Inc.* 165 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).

227 (*citing Skype Techs. SA v. Joltid Ltd.*, [2009] EWHC (Ch) 2783, [19]).[9]  The forum selection

clause here applies not just to claims specifically alleging breach of the Deed but also to claims

"arising out of" the Deed and the even broader claims "in connection with" it.  *Coregis*, 241 F.3d

at 129 ("relating to" and "in connection with" are synonymous, meaning "connected by reason of

an established or discoverable relation," and are broader in scope than the term "arising out of,"

which is tied to the concept of causal connection);[10] *Bluefire Wireless Inc. v. Cloud9 Mobile

Commc'ns Ltd.*, No. 09-civ-7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009)

("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises

from the contract, the forum selection clause governs the action.") (citations omitted); *see

generally* Ex. C, Collins Decl. ¶¶ 5, 57-58.

English courts "presume a jurisdictional clause encompasses all disputes arising out of

the contractual relationship between parties 'unless the language makes it clear that certain

questions were intended to be excluded,'" *Longo*, 2014 WL 880410, at *4 (quoting *Fili Shipping

Co. Ltd. v. Premium Nafta Prods. Ltd. ("Fiona Trust")*, [2007] UKHL 40), and have been clear

that forum selection clauses with the words "'arising out of' or 'in connection with'" not only

---

[9] *See also Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-civ-5262 (JFK), 2004
WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) ("Artful pleading should not be allowed to frustrate
the purpose and benefit of a forum selection clause.") (*citing Direct Mail Prod. Servs.*, 2000 WL
1277597, at *6); *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 305-06 (D. Conn. 2009) ("A
forum selection clause should not be defeated by artful pleading of claims not based on the
contract containing the clause if those claims grow out of the contractual relationship, or if 'the
gist' of those claims is a breach of that relationship.") (citation omitted).

[10] *See also Prod. Res. Grp. LLC v. Martin Prof'l A/S*, 907 F. Supp. 2d 401, 414-15 (S.D.N.Y.
2012) (distinguishing between "arise out of" and the broader "relating to' or "in connection
with" and finding that clause containing the latter language covered claims for patent
infringement); *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-civ-9580 (HB), 2008
WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (explaining that "in connection with" is broader in
scope than "arise out of"); *MAK*, 620 F. Supp. 2d at 305-06 ("[d]espite [plaintiff's] artful
pleading," its claim had a "logical relation" to the agreement and thus "is a controversy in
connection with that agreement").

apply to claims covering breach of contract but also apply to "claims arising from *pre-inception* matters such as misrepresentation," *Martinez*, 740 F.3d at 225 (*citing UBS AG v. HSH Nordbank AG*, [2009] EWCA (Civ) 585 [82]) (emphasis added) – covering precisely the new fraudulent inducement claim that purportedly preceded the Deed.  Ex. C, Collins Decl. ¶ 5 (clause is "broad enough to cover not only contractual claims but also tortious equitable and statutory claims arising out of the relationship between the parties"); *id.* ¶¶ 57-58 (discussing *Fiona Trust* and *UBS AG*); Ex. D, Collins Add. ¶¶ 5-8, 25 (allegations in Amended Complaint fall within scope of jurisdiction clause); *see also Martinez*, 740 F.3d at 225 ("[T]he proper approach to the construction of clauses agreeing [to] jurisdiction is to construe them widely and generously.") (quoting *UBS AG*, [2009] EWCA (Civ) 585 [82]).[11]

Similarly, under U.S. law, courts consistently find that broad forum selection clauses, such as this one, encompass tort claims that have an "undeniable nexus between the claims and the subject matter of the" contract.  *Mercury W. AG Inc.*, 2004 WL 421793, at *7; *see also Direct Mail Prod. Servs.*, 2000 WL 1277597, at *6 (forum selection clauses encompass claims that "ultimately depend on the existence of a contractual relationship between the parties," or if "resolution of the claims relates to interpretation of the contract," or if the claims "involve the same operative facts as a parallel claim for breach of contract") (citations omitted).  This includes claims that sound in fraud.  *Seaton Ins. Co. v. Cavell USA, Inc.*, No. 07-civ-7032 (RMB), 2008 WL 8943879, at *2 (S.D.N.Y. May 14, 2008) (Berman, J.) (forum selection clause covered fraud claims which "stem[med] from the parties' contractual relationship," explaining that the claims "ultimately hinge on the rights and duties" set forth in the Term Sheet containing

---

[11] They also apply to statutory claims, *Martinez*, 740 F.3d at 225 (*citing Skype Techs.* [2009] EWHC (Ch) 2783, [6]), and claims "involv[ing] allegations of bribery during the formation of the contract," *id.* at 226 (*citing Fiona Trust*, [2007] UKHL 40 [1]).

the clause) (citations omitted).[12]

Rio Tinto's new claim that Vale fraudulently induced it to enter into the Deed (and that it should therefore be rescinded) of course does not change this result. It is black-letter law that a forum selection clause is presumptively enforceable unless the "[clause's] incorporation was the result of fraud or overreaching." *Martinez*, 740 F.3d 227-28 (citation omitted). Under English law (Ex. D, Collins Add. ¶¶ 9, 11-13, 17-19, 23) as well as U.S. law (*id.* ¶¶ 20-22),[13] an allegation of fraudulent inducement does not defeat the contract's forum selection clause unless the claim is that the jurisdictional clause *itself* was procured by fraud. Here, Rio Tinto does not even attempt to allege that the *forum selection clause* was induced by fraud, nor could it do so. (*Id.* ¶ 24). As a necessary implication of the principle of separability, "disputes about the

---

[12] *See also Bluefire*, 2009 WL 4907060, at *3 (Plaintiff's claims for fraud and deceptive trade practices were "inextricably intertwined" with contract interpretation and performance under the contract and accordingly were subject to forum selection clause); *Nasik*, 165 F. Supp. 2d at 526 ("[C]ourts of this Circuit have routinely enforced similar choice of law provisions [providing that "any action arising out of this Agreement shall be brought . . ."] even when a party challenges the contract as fraudulent or claims of fraudulent inducement exist."); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (claim for fraud "get[s] the plaintiff nowhere in its efforts to get out from under the forum-selection clause" because "a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance"); *O & G Energy, LLC v. Rimkus Consulting Grp., LLC*, Civil No. 11-147-AFT, 2011 WL 6153194, at *3-4 (E.D. Ky. Dec. 12, 2011) (surveying multi-district authority and finding that forum selection clause applying to legal actions "pursuant to [the] contract" covered plaintiff's fraudulent inducement and misrepresentation claims).

[13] The Second Circuit has held that a "fraudulent inducement claim is no defense to a motion to dismiss based on a forum selection clause unless the fraud procured agreement to the clause specifically, rather than to the contract as a whole." *J.B. Harris, Inc. v. Razei Bar Indus. Ltd.*, 181 F.3d 82 (Table), No. 98-9191, 1999 WL 319330, at *1 (2d Cir. May 4, 1999); *see also Bluefire*, 2009 WL 4907060, at *3 (fraud in the inducement insufficient to invalidate forum selection provision, "rather, the party must show that the forum selection clause itself was the product of fraud"); *Brodsky v. Match.com LLC*, No. 09-civ-5328 (NRB), 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) (adding that, "[w]ere the law otherwise, plaintiffs could easily thwart the parties' reasonable expectations regarding forum selection simply by alleging fraud in their complaint").

validity of the contract must, on the face of it, be resolved pursuant to the terms of the clause." (*Id.* ¶¶ 14-16). It follows that Rio Tinto's fraudulent inducement claim must be resolved pursuant to the forum selection clause.

Nor can Rio Tinto contend that enforcement of Clause 20(b) would be unreasonable or unjust because it cannot prosecute a RICO claim in an English court. As Judge Sullivan decided only a few months ago, "an otherwise enforceable forum-selection clause may [not] be ignored simply because an alternative forum would [not] allow additional causes of action." *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-civ-8089 (RJS), 2014 WL 1116875, at *6 (S.D.N.Y. Mar. 18, 2014) (dismissing RICO and other claims on *forum non conveniens* ground based on forum selection clause); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (holding that forum selection clauses encompassing claims "relating to" and "in connection with" plaintiffs' contracts covered plaintiffs' RICO claims).

Finally, Rio Tinto cannot absolve itself of its contractual commitment to sue Vale only in the courts of England by the contrivance of adding third parties to its lawsuit. Rio Tinto claims that Vale is at the "heart" of its lawsuit (Am. Compl. ¶ 2) and it is a rare misappropriation claim where the plaintiff cannot allege that the misappropriated information was obtained with the assistance of some third party, or shared with some third party. If it were the case that a forum selection clause could be avoided simply by naming such parties, the clause – and the benefits it was intended to confer – would be rendered illusory. Any contractual party could opt out of it by naming an additional defendant. Rio Tinto therefore cannot circumvent its obligations simply by including other defendants in its suit when its claim against Vale arises out of and is linked to the Deed. *St., Sound Around Elecs., Inc. v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple parallel proceedings [because the forum selection

clause applies only to disputes with one, but not all named defendants] was a contingency

entirely foreseeable to plaintiff when it agreed to the forum selection clause . . . Refusing to

enforce a forum selection clause on this basis would undermine whatever measure of certainty

such clauses bring.").[14]

     Because the forum selection clause between Rio Tinto and Vale is mandatory, broad

enough to cover Rio Tinto's claims against Vale, and neither unreasonable or unjust, this Court

should enforce the clause and dismiss Rio Tinto's claims against Vale in favor of adjudication in

an English forum.

**B.**     **TRADITIONAL *FORUM NON CONVENIENS* ANALYSIS FURTHER
     MANDATES DISMISSAL OF THIS ACTION AS TO ALL DEFENDANTS**

     An analysis of this case under the traditional *forum non conveniens* doctrine further

mandates dismissal of this action as to *all Defendants* in favor of suit in England.[15]   In the

Second Circuit, this determination entails a three-step process: (1) the court determines the extent

to which a plaintiff's choice of forum is entitled to deference; (2) it then assesses whether an

---

[14] *See also Far E. Antique Arts v. M/V Cho Yang Success*, No. 01-civ-8375 (HB), 2002 WL
1313308, at *3 (S.D.N.Y. June 14, 2002) (rejecting plaintiffs' claim that the "multi-party nature
of this litigation warrants a finding that the forum selection clauses are unreasonable" because
"plaintiffs have failed to show that the possibility of parallel litigation involving multiple
defendants was anything but foreseeable . . . [and] there are significant public policy reasons in
favor of enforcement."); *Am. Patriot Ins. Agency Inc. v. Mut. Risk Mgmt. Ltd.*, 248 F. Supp. 2d
779, 785 (N.D. Ill. 2003) ("[W]e also reject Plaintiffs' argument that enforcement of the forum
selection clause is precluded by the fact that certain Defendants are not parties to the Agreement.
Plaintiffs cannot escape their contractual obligations simply by joining parties who did not sign
the contract and then claiming that the forum selection clause does not apply.").

[15] As to Vale, given the exclusive forum selection clause, the Court need only consider the public
interest factors in its *forum non conveniens* analysis.  *Atl. Marine*, 134 S. Ct. at 581.
Nevertheless, even absent an enforceable forum selection clause, the Court should consider the
traditional *forum non conveniens* analysis as to all Defendants, and dismiss this action in favor of
suit in England.  *See Midamines*, 2014 WL 1116875, at *2 n.4 ("Because the nature of *forum non
conveniens* analysis differs greatly depending on whether there is an enforceable forum-selection
clause . . . the Court uses the term 'traditional *forum non conveniens*' to refer to the analysis that
would apply in the absence of a forum-selection clause.").

adequate alternative forum exists; and (3) if such an alternative exists, the court considers the

relevant private and public interests to determine whether the balance of convenience tilts in

favor of trial in the foreign forum. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64,

71 (2d Cir. 2003) (*citing Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)); *In re

Herald, Primeo, & Thema Sec. Litig.*, No. 09-civ-289, 2011 WL 5928952, at *11 (S.D.N.Y. Nov.

29, 2011) (Berman, J.). Here, these factors unquestionably support dismissal of the Amended

Complaint.

### 1.      Rio Tinto's Choice Of Forum Is Entitled To Little Deference, If Any

As a United Kingdom corporation with its principal place of business in London (Am.

Compl. ¶ 18), Rio Tinto's choice of forum here merits little deference. *Piper Aircraft Co. v.

Reyno*, 454 U.S. 235, 256 (1981) (foreign plaintiff's choice of forum deserves less deference,

"[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is

convenient") (citations omitted); *In re Herald*, 2011 WL 5928952, at *11 (finding plaintiffs'

choice of forum was entitled "less deference" because plaintiffs were not U.S. citizens or

residents). As the Second Circuit has recognized, "it is more likely that forum-shopping for a

higher damage award or for some other litigation advantage was the motivation for [a foreign]

plaintiff's selection" of a U.S. forum, rather than convenience. *Pollux*, 329 F.3d at 71. Without

doubt, that is precisely why Rio Tinto brought this case here.[16]

In ordering dismissal on *forum non conveniens* grounds in a previous case, Your Honor

held that a foreign plaintiff's decision to bring a RICO claim here revealed an impermissible

---

[16] In amending its Complaint, Rio Tinto adds that it has a New York subsidiary and has assets
and employees in the United States, no doubt to create the impression of some New York
contacts. (Am. Compl. ¶ 18). But that subsidiary, those assets, and those employees have
*nothing* to do with Rio Tinto's claims.

Case 1:14-cv-03042-RMB-AJP   Document 84   Filed 09/03/14   Page 16 of 25

"attempt[] to win a tactical advantage resulting from local laws that favor plaintiff's case" and to achieve "higher damages than are common in other countries." *In re Herald*, 2011 WL 5928952, at *11-12 (citations omitted); *see also Wilson v. Eckhaus*, 349 F. App'x 649, 651 (2d Cir. 2009) (affirming that plaintiffs' choice of forum should be accorded less deference, noting that "plaintiffs had sought a favorable forum by filing suit in the Southern District because the forum would . . . permit them to sue for treble damages under RICO").  Here, Rio Tinto has concocted a RICO claim against its competitors for the sole purpose of attempting to obtain the very tactical advantage this Court has rejected under comparable circumstances.

Even in its Amended Complaint, Rio Tinto continues to visibly strain to "morphose this case" into a dispute with meaningful U.S. connections, when, in fact, there are none.  *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998) (finding that England was the correct forum for the dispute, noting that plaintiffs' attempt to allege U.S. connections was a "red herring").  The gravamen of Rio Tinto's Amended Complaint remains an alleged conspiracy by foreign defendants to misappropriate confidential information in furtherance of a scheme to obtain foreign mining rights through alleged bribery of foreign government officials.  This is plainly not a dispute with significant ties to New York.[17]  Given that Rio Tinto's initial disclosures have "not identified a *single potential witness in New York* or [even] within 100 miles of this courthouse," and the "core operative facts of the[] case[] involve the operations of foreign entities outside of the United States," its choice to litigate in New York, as opposed to its own *home* court in England, should be seen for what it really is – blatant,

---

[17] Ironically, Rio Tinto's attempt to create a U.S. nexus by relying on Vale's alleged breach of the Deed (*i.e.,* Vale's alleged misrepresentations of its contractual intentions to Rio Tinto in New York negotiations), further highlights why its claims are inexorably governed by the English forum selection clause of that Deed.

impermissible forum shopping.  *In re Herald*, 2011 WL 5928952, at *12 (emphasis added).

Accordingly, this Court should, at the most, accord Rio Tinto's choice of forum "very limited deference."  *Id.*; *see also Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 725-26 (S.D.N.Y. 2011).

<strong>2.  <u>English Courts Are An Adequate, And More Appropriate, Alternative Forum For Adjudication Of This Dispute</u></strong>

Defendants' burden to demonstrate the existence of an adequate alternative forum is "not heavy."  *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 336 (S.D.N.Y. 2008).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux*, 329 F.3d at 75 (citation omitted).  Here, the English courts are not only an adequate, but in fact are a superior, forum for adjudication of this foreign dispute.  Indeed, the Second Circuit has "expressed high regard for [English] courts' fairness and commitment to the rule of law."  *Id.*; *see also Roby*, 996 F.2d at 1363 ("United States courts consistently have found [English courts] to be neutral and just forums.").

English courts unquestionably permit adjudication of the subject matter of this dispute, including any claims for fraud.  *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 304 (S.D.N.Y. 2000), *aff'd* 2 F. App'x 109 (2d Cir. 2001).  That Rio Tinto may not bring a RICO claim in England is of no import here, as "an alternative jurisdiction is not rendered inappropriate simply because not all of the contemplated causes of action are available there, so long as the general subject matter of the litigation can be heard there."  *Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*, No. 00-civ-0478 (RMB), 2002 WL 272408, at *3 (S.D.N.Y. Feb. 26, 2002) (Berman, J.) (citation omitted).  The Second Circuit has expressly found actions for fraud to be adequate substitutes for a RICO claim.  *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (rejecting RICO plaintiff's objection to *forum*

*non conveniens* dismissal, holding that foreign fraud action was adequate substitute); *see also*

*Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 304 (dismissing claims in favor of jurisdiction in

the U.K., finding that "there can be no serious objection to the proposition that British courts

provide an adequate substitute for fraud-based RICO claims") (citations omitted).[18]    Here, the

Amended Complaint at best alleges fraud-based claims that can be heard by the English courts,

and in reality alleges facts amounting to no more than a claim for breach of contract against

Vale.  (*See, e.g.*, Am. Compl. Third, Fourth, Fifth, and Sixth Causes of Action).

It is indisputable that an English court would have jurisdiction over this action.  Indeed,

for Vale and Rio Tinto, its jurisdiction is exclusive (save for Brazil).  BSGR, Steinmetz, VBG

Guinea, VBG-Vale (Guernsey), and Thiam all consent to the jurisdiction of the courts of

England in regard to this matter.[19]    An English court would therefore have jurisdiction over all of

the Defendants.[20]    By contrast, here, Steinmetz, BSGR, VBG Guinea, and VBG-Vale (Guernsey)

all contest personal jurisdiction in this Court.

---

[18] *See also Piper Aircraft*, 454 U.S. at 250-51 (affirming dismissal of RICO claims on *forum non conveniens* grounds, despite unavailability of RICO in Indonesia); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998) (dismissing RICO claim for *forum non conveniens* and noting that "the nonexistence of a RICO statute [in the alternative forum] does not, by itself, preclude use of another forum") (citation omitted); *Transunion*, 811 F.2d at 129 (finding corporation's argument concerning its inability to bring RICO claims in Philippine court and obtain treble damages to have "no merit," and holding that fraud claims were an adequate substitute for the alleged RICO claims); *Capital Currency Exch.*, 155 F.3d at 610 ("It is well-established . . . that the unavailability of treble damages does not render a forum inadequate.") (citations omitted).

[19] The Second Circuit has made clear that a defendant's consent to jurisdiction in an alternative forum is not only permissible, but also further supports dismissal of the action.  *See PT United Can Co.*, 138 F.3d at 74; *In re Herald*, 2011 WL 5928952, at *13.

[20] Cilins and Touré, both foreign nationals, have not appeared in this action.  However, where all appearing defendants who have not otherwise been dismissed are subject to or consent to the jurisdiction of the alternative forum, the court need not seek consent of non-appearing parties to dismiss on the grounds of *forum non conveniens*.  *See In re Herald*, 2011 WL 5928952, at *13 (dismissing on *forum non conveniens* grounds where "each Defendant who has entered an appearance . . . consents to jurisdiction . . .").

Finally, Rio Tinto has *waived* any objection to the adequacy of the English courts, and is expressly barred from now claiming in this, or in any other jurisdiction, that England is an "inconvenient forum" for adjudication of its claims against Vale.  (Ex. A, Confidentiality Deed, cl. 20(b) ("In connection with any disputes which may arise out of or in connection with this Deed, each of the parties . . . waives any objection to proceedings in any such court . . . on the ground that proceedings have been brought in an inconvenient forum.")).

### 3.   <u>Private Interest Factors Favor Dismissal</u>

The *forum non conveniens* private interest factors overwhelmingly favor dismissal. Relevant private interest considerations include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; and (3) all other practical problems that make trial easy, expeditious and inexpensive.  *See*, *e.g.*, *Pollux*, 329 F.3d at 75 (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Here, no relevant information of Rio Tinto, BSGR, Vale, Steinmetz, VBG-Vale (Guernsey), or VBG Guinea has been identified as being located in the United States.  *See Niv*, 710 F. Supp. 2d at 343 (finding where "the majority of relevant evidence is located abroad, the burden imposed on the parties is . . . significant and favors dismissal"); *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 768 (S.D.N.Y. 2006) ("[T]he Second Circuit has frequently weighed in favor of dismissal where, as here, 'all but few' relevant documents are located in a foreign jurisdiction.").  Rio Tinto's documents are mostly located in England, its home forum, as well as France and Australia, and *it has not identified a single document as being located in the United States*.  (Ex. E, Rio Tinto Initial Disclosures, dated June 23, 2014).  BSGR also has documents located in England, and in other foreign jurisdictions, but

again not in the United States.  (Ex. F, Steinmetz & BSGR Am. Initial Disclosures, dated Sept. 3,

2014).  Vale's documents are in Brazil and multiple other locations outside of the United States

(Ex. G, Vale Initial Disclosures, dated July 23, 2014) (including in China, Mozambique, and

Canada), and defendants Steinmetz, VBG-Vale (Guernsey) and VBG Guinea likewise have no

documents in the United States (Ex. F, Steinmetz & BSGR Am. Initial Disclosures, dated Sept.

3, 2014; Ex. H, VBG Initial Disclosures, dated July 31, 2014).

 Similarly, all of the witnesses identified by the parties as having knowledge related to this

dispute are located abroad:  in England (Rio Tinto), the Channel Islands (BSGR), Brazil (Vale),

Switzerland (Steinmetz),[21] and potentially Guinea.  *Indeed, in their respective initial disclosures*

*under Rule 26(a)(1), neither Rio Tinto nor any of the Defendants identified a single U.S. witness*.

(Exs. E-H).  The burden of transporting these foreign witnesses to the United States to testify

"would be extremely inconvenient and would impose prohibitive cost[s] on defendants" as well

as on Rio Tinto.  *Europe and Overseas Commodities Traders S.A. v. Banque Paribas London*,

940 F. Supp. 528, 538 (S.D.N.Y. 1996) (citation omitted); *see also Scottish Air Int'l, Inc. v.*

*British Caledonian Grp.*, *PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996) (noting that "the difficulty,

cost, and disruption" of requiring English witnesses to appear in New York "would be

considerable"); *Capital Currency Exch.*, 155 F.3d at 611 (noting that "the cost of transporting

these witnesses [from England] to New York could be enormous").

 Moreover, although defendants Thiam, Touré, and Cilins are currently located in the

United States, neither Touré nor Cilins has appeared in this action, and virtually all of the

material witnesses are located outside of the United States.  *See Alfadda v. Fenn*, 159 F.3d 41, 47

(2d Cir. 1998) (finding France the more convenient forum, given that all of the defendants and

---

[21] Steinmetz is a citizen of both Israel and France, and has a residence in Switzerland.

almost all of the entities involved were located there).  The cost of obtaining the attendance of

willing witnesses at trial will be considerably less if the action were tried in England, because

most of the witnesses' travel costs and time would be significantly diminished, since they would

be able to travel to England from Europe or Africa.  *See, e.g.*, *id.* at 47 (noting that the French

forum would be less costly for witnesses to attend trial, as most of the relevant entities were

based there, and France was much closer to Saudi Arabia making it "easier for the plaintiffs to

travel there" than New York).  Furthermore, many of the critical witnesses with knowledge

concerning the crux of this dispute – the misappropriation of information by Vale given to BSGR

and the alleged theft of Rio Tinto's mining rights in Guinea by primarily foreign defendants – are

located abroad, which again favors dismissal.  *Niv*, 710 F. Supp. 2d at 341 ("Notably, *none* of

these 'critical' witnesses are located in the United States, which supports dismissing this action

in favor of a foreign court.") (citation omitted).

        In addition, this Court would be unable to compel crucial third party witnesses to testify

in New York.  In contrast, witnesses outside of the parties' control, such as former Rio Tinto

employees who reside in England, could be compelled to testify by an English court.  Indeed,

"[u]nwilling English witnesses could be compelled to testify in person only if the trial were held

in England," and deposition testimony for such witnesses would be difficult to obtain given

British reservations to the Hague Evidence Convention.  *First Union Nat'l Bank v. Paribas*, 135

F. Supp. 2d 443, 450 (S.D.N.Y. 2001).  Accordingly, if the case moved forward in New York, it

would be contrary to the Second Circuit's explicit directive that "live testimony of key witnesses

is necessary so that the trier of fact can assess the witnesses' demeanor" in a case alleging fraud.

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993).  This factor

therefore favors dismissal to an English forum.  *See, e.g.*, *Capital Currency Exch.*, 155 F.3d at

611-12 (finding England "a more efficient and effective forum" where crucial witnesses were "not subject to compulsory process in the United States" but were "subject to compulsory process in England").

Rio Tinto further ignores the substantial costs associated with conducting discovery in this District, particularly since none of the relevant evidence is located in the United States and the parties must comply with foreign privacy laws and blocking statutes to conduct discovery abroad. *See, e.g.*, *In re Herald*, 2011 WL 5928952, at *15 (noting that compliance with "foreign (*i.e.*, non-U.S.) privacy laws," including European Union privacy law, would affect the costs of the discovery process in New York) (citation and quotations omitted); *Erausquin*, 806 F. Supp. 2d at 728 (noting that discovery costs would include "compliance with foreign privacy laws" and the progress of the action had been "impeded for nearly a year by the parties' dispute over the [f]oreign [d]efendants' obligations under those laws"). Moreover, Switzerland has been identified as a location where potentially responsive documents are located. (Ex. F, Steinmetz & BSGR Am. Initial Disclosures, dated Sept. 3, 2014). However, producing documents from this jurisdiction could involve potential criminal penalties for certain disclosures. *See, e.g.*, *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 118 F.R.D. 331, 332-33 (S.D.N.Y. 1988) (noting that the breaking of certain Swiss privacy and disclosure laws carries "draconian" penalties and could subject those involved to "criminal prosecution").

In sum, all of the private interest factors overwhelmingly support dismissal of this action. *See In re Herald*, 2011 WL 5928952, at *15 (dismissing RICO and other claims on *forum non conveniens* grounds).

### 4.   Public Interest Factors Favor Dismissal

All of the traditional public interest factors favor dismissal of this action, including the: (1) administrative difficulties flowing from court congestion; (2) unfairness of burdening citizens

of an unrelated forum with jury duty; (3) local interest in having localized controversies decided "at home;" and (4) avoidance of difficult problems in conflict of laws and the application of foreign law. *See*, *e.g.*, *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002) (*citing Gulf Oil*, 330 U.S. at 508-09).

It is indisputable that the Southern District of New York remains "one of the busiest districts in the country, and . . . a 'congested center' of litigation." *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India*, 634 F. Supp. 842, 861 (S.D.N.Y. 1986) (*citing Gulf Oil*, 330 U.S. at 508); *see also Abert Trading*, 2002 WL 272408, at *6. A New York court and jury should not be burdened with this international dispute between foreign companies concerning their competing rights to iron ore deposits in West Africa. *See Allstate*, 994 F.2d at 1002 (finding that Australia had greater local interest than the United States in resolving fraud claims related to one of the largest liquidations in Australia's history); *Alfadda*, 159 F.3d at 46-47 (holding that "French jurors have a more significant interest in th[e] case than American jurors," in case involving a dispute between a Netherlands corporation and Saudi Arabian shareholders over a French bank's conduct).

Despite Rio Tinto's self-serving labeling of the alleged RICO enterprise as a "domestic" scheme (Am. Compl. ¶ 161), the Amended Complaint alleges no material connection between that concocted scheme and New York. Rather, the Amended Complaint alleges that only a handful of meetings between Rio Tinto and Vale occurred in New York (*id.* ¶¶ 59, 63, 96, 161), and Vale's attorneys and accountants accessed Plaintiff's data room from their offices in New York (*id.* ¶ 66). Moreover, those New York meetings, and subsequent access to the data room, occurred in the context of negotiations pursuant to the Deed, which is expressly governed by English law and subject to an English forum selection clause. Rio Tinto's attempts at creative

pleading cannot mask this inescapable fact. Such tenuous connections to this forum do not give

New York a substantial interest in this litigation. *See Pollux*, 329 F.3d at 71-72 (noting that

plaintiffs alleged no connections to the United States "other than wire transfers, faxes and the

involvement of [bank] officials in the sale of [notes]" and dismissing the action pursuant to the

doctrine of *forum non conveniens*); *Transunion*, 811 F.2d at 129 (affirming dismissal of RICO

claim on *forum non conveniens* grounds despite the fact that some negotiations happened in New

York, during which the alleged fraudulent misrepresentations were made, and a few witnesses

and documents were located in New York); *In re Herald*, 2011 WL 5928952, at *16 (noting that

New York had a "relatively minimal interest in this litigation" even though the action was

"peripherally related to New York" by the involvement of Bernie Madoff) (citation omitted).

Further, English courts have a far greater interest in vindicating the rights of British

corporations – here, Rio Tinto – than United States courts have in adjudicating an international

dispute involving, at best, only a marginal connection to the United States. *See, e.g.*, *Bybee v.

Oper der Standt Bonn,* 899 F. Supp. 1217, 1223-24 (S.D.N.Y. 1995) (finding public interest

factors demonstrated that Germany had a "far greater interest" than the United States in this

dispute, even though "certain of the negotiations leading to the contract occurred in New York

and [the plaintiff was] . . . a New York resident"); *Scottish Air Int'l*, 81 F.3d at 1233-34 (finding

that Great Britain had greater interest in litigation involving inquiry into affairs of Scottish

corporation than the United States).

English law expressly governs the Deed and all of Rio Tinto's claims arising "in

connection with" the misappropriation of confidential information provided pursuant to that

Deed. *See Pollux*, 329 F.3d at 76 (affirming trial court's dismissal on *forum non conveniens*

grounds where English choice of law clause made it likely that English law would apply); *Abert*

*Trading*, 2002 WL 272408, at \*6 (noting that the likelihood that foreign law will apply weighs against retention of the action). Rio Tinto's attempt to recast its breach of contract claim against Vale into a RICO conspiracy targeting multiple foreign defendants does not alter the applicability of English law to this dispute. (*See supra* Section A(2)).

If this case were to proceed in New York, this Court would have to apply English law to the common law claims against Vale, and Rio Tinto contends that New York law would apply to those *same* claims against the other defendants. This would be untenable, and the sort of outcome the public interest factor is designed to prevent. *See, e.g.*, *Pollux*, 329 F.3d at 76 (finding "choice of law considerations favor[ed] adjudication in England," where English law would apply to plaintiffs' contractual claims, English securities law claims, and many of the tort claims, but New York law likely would apply to plaintiffs' negligent supervision and conversion claims); *Piper Aircraft*, 454 U.S. at 259-60 (stating that the "need to apply foreign law point[s] towards dismissal," and noting that the district court concluded that Pennsylvania law would apply to one defendant and Scottish law to another defendant causing confusion for the jury).

*    *    *    *    *    *

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Amended Complaint pursuant to the doctrine of *forum non conveniens*.

Respectfully submitted on behalf of all Defendants,

By:

Lewis J. Liman
Jonathan I. Blackman
Boaz S. Morag

cc: All Counsel of Record (by ECF)