# EXHIBIT D
# Part I of V

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>    Plaintiff,<br><br>-against-<br><br>Vale, S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSGR Guinea Ltd. BVI, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR Guinea, Frederic Cilins, Michael Noy, Avraham Lev Ran, Mamadie Touré, and Mahmoud Thiam,<br><br>    Defendants. | 14 Civ. 3042 (RMB) |

## SECOND DECLARATION OF
## LORD COLLINS OF MAPESBURY
### September 3, 2014

**I Introduction**

1. On July 29, 2014 I made a declaration in these proceedings, in which I expressed the opinion that the jurisdiction clause in sub-clause 20(b) of the Confidentiality Deed was an exclusive jurisdiction clause, and that these proceedings fall within the category of "any disputes which may arise out of or in connection with this Deed," which is broad enough to cover not only contractual claims but also tortious, equitable and statutory claims arising out of the relationship between the parties.

2. The purpose of this second declaration is to express an opinion on whether the new cause of action for fraudulent inducement made by Rio Tinto in these proceedings and the new allegations in the complaint fall within the scope of the

1

jurisdiction clause (or forum selection clause). On this aspect, this opinion (like my first opinion) is subject to my understanding that the role of an expert on foreign law in the federal court (as it is in the English court) is to give evidence on the content of that law, and not to apply it to the facts of the case, but that it may be helpful to the court if I express my view on the application of the principles to the present proceedings.

3. I have been supplied with the amended complaint dated August 15, 2014, which alleges that Vale's strategy was to dupe Rio Tinto into revealing its confidential and proprietary information about the Simandou Concession, and that Vale actively concealed from Rio Tinto that it was also in discussions with the Government of Guinea for some or all of Rio Tinto's Simandou Concession, and that it was evaluating and considering Defendants Steinmetz and BSGR as possible partners to pursue the Simandou Concession: paras 52 et seq. The plaintiffs' cause of action is that Vale's material omissions and misrepresentations fraudulently induced Rio Tinto to enter into the negotiations and sign the Confidentiality Deed and that Rio Tinto is entitled to rescind the Confidentiality Deed: paras 226 et seq.

4. In this opinion I shall use the same abbreviations as in my first opinion. Appendix LC3 to this opinion contains copies of the additional legal authorities to which I refer. Where the appendix contains the relevant portions only of an authority, I have satisfied myself that nothing else in the report affects what is said in the extracts. As before, this opinion is given exclusively for use in these proceedings in the US District Court for the Southern District of New York.

## II  The basic principle: construction of jurisdiction (forum selection) clauses

5. As I explained in my first opinion (paras 57-58), the modern law is now to be found in the decision of the House of Lords in *Fiona Trust and Holding Corp v Privalov* [2007] UKHL 40, [2007] Bus LR 1719.[1] That was a case in which the charters contained jurisdiction clauses providing for the exclusive jurisdiction of the English courts, but the charters also provided that the parties could elect for arbitration, and the charterers did so elect. For the sake of convenience the

---

[1] LC3/3. Only an extract from this decision was exhibited to my first declaration.

2

clause was discussed as if it were a simple arbitration clause: see para 4. The decision went on to sweep away technical distinctions in arbitration agreements between different types of wording such as disputes "arising under" or "arising out of" or "in connection with" or "in relation to." Instead the court was to start from the assumption that the parties, as rational business people, are likely to have intended any dispute arising out of their relationship to be decided by the same tribunal.

6. I also pointed out that the same principle has been applied in many cases to jurisdiction clauses, including a decision of the Court of Appeal in which I gave the leading opinion: *UBS AG v HSH Nordbank AG* [2009] EWCA Civ 585, [2009] 1 CLC 934.[2] I accepted in that decision that the proper approach to the construction of clauses agreeing jurisdiction was to construe them widely and generously. In the most recent case, decided in July 2014, the Court of Appeal again accepted that the decision in *Fiona Trust* applies to jurisdiction clauses, and held that a submission to the exclusive jurisdiction of the English courts applied to tortious claims: *Starlight Shipping Co v Allianz Marine & Aviation Versicherungs AG* [2014] EWCA Civ 1010, paras 8 and 12.[3]

7. The principles are stated in Dicey, Morris and Collins, *Conflict of Laws*, 15th ed, 2012 ("Dicey"), para 12-109,[4] as follows:

> "In cases in which there is no dispute as to the validity of a jurisdiction clause, the principal question is likely to be to determine that the dispute in question falls within the material scope of the clause, or the within the jurisdiction clause *ratione materiae*. As the common law regards these clauses as ordinary contractual terms, the question is one of construction and interpretation. In principle, where it is a matter of dispute, the construction and interpretation of a jurisdiction clause is a matter to be referred to the law which governs the jurisdiction clause, which will usually be the law governing the contract of which it forms a part, albeit a separable part. The account which follows explains the approach to construction and interpretation as this will be applied to a jurisdiction clause which is governed by English law, or which is not governed by a law demonstrated to be materially different from English law.

---

[2] LC2/37.
[3] LC2/36.
[4] LC3/13.

3

> Prior to 2007 the case law had allowed a minute examination of the comparative scope of clauses framed in terms of their being applicable to claims 'arising from', or 'arising under', or 'arising under or in connection with' a contract, etc. This was undertaken with a view to determining how each of these verbal formulae might or might not apply if a claim were brought to enforce a contract, or to assert the right to have rescinded a contract, or to allege the legal nullity of a supposed contract, as well as where the claimant formulated a claim as one in tort (for example, for fraud or other misrepresentation), or for restitution, or as a claim for breach of fiduciary duty, etc. In *Fiona Trust & Holding Corp v Privalov*, the House of Lords decisively repudiated the authority which had held that there were material differences between claims 'arising under', 'arising in connection with', etc. stating that the 'fussy distinctions' made in those cases 'reflect no credit upon English commercial law'. Henceforth, as a matter of English law the proper approach to such clauses was to treat the parties as rational commercial actors who would have had no reason to prescribe jurisdiction over some parts, but not over other parts, of what might be a claim which advanced alternative causes of action, some but not other parts of which were plainly contractual."

8. In my first opinion I concluded that a clause such as sub-clause 20(b) submitting "any disputes which may arise out of or in connection with this Deed" would cover not only contractual claims but also tortious, equitable and statutory claims: para 57.

### III    The application of jurisdiction clauses (forum selection agreements) to claims for fraudulent inducement and rescission

9. In my opinion it is clear in English law (as, I venture to suggest, it is also clear in United States law) that an arbitration agreement or jurisdiction clause is a separate and severable agreement, and that a claim for fraudulent inducement of the contract of which it forms a part will fall to be determined by the chosen tribunal unless the fraud was directed to the conclusion of the arbitration or forum selection/jurisdiction clause. The arbitration agreement or jurisdiction clause must be treated as a distinct agreement and will be void or voidable only on grounds which relate directly to the arbitration agreement or jurisdiction clause.

4

10. By way of preface I should point out that the applicable principles were first developed in England mainly by reference to arbitration agreements, and were subsequently extended to jurisdiction clauses, and for that reason it is necessary to refer to cases on arbitration agreements.

## IV   Separability

11. It has long been a basic principle of English arbitration law that an arbitration agreement is separate from the contract of which it forms a part. In *Lesotho Highlands Development Authority v Impregilo SpA* [2005] UKHL 43, [2006] 1 AC 221,[5] Lord Steyn said (at [21]) that it was "part of the very alphabet of arbitration law" that an arbitration agreement, even if (as was usually the case) it was contained in an arbitration clause within the body of a larger contract, formed a separate and distinct agreement. As Lord Diplock said in *Paal Wilson & Co. A/s v. Partenreederei Hannah Blumenthal* [1983] 1 AC 854, 917,[6] it was established in *Heyman v Darwins Ltd* [1942] AC 356[7] that an arbitration clause is collateral to the main contract in which it is incorporated and it gives rise to collateral primary and secondary obligations of its own. In *Heyman v Darwins Ltd* Lord Macmillan said (at 373-374):

> "... not enough attention has been directed to the true nature and function of an arbitration clause in a contract. It is quite distinct from the other clauses. The other clauses set out the obligations which the parties undertake towards each other hinc inde, but the arbitration clause does not impose on one of the parties an obligation in favour of the other. It embodies the agreement of both parties that, if any dispute arises with regard to the obligations which the one party has undertaken to the other, such dispute shall be settled by a tribunal of their own constitution."

12. In *Harbour Assurance Co (UK) Ltd v Kansa General International Insurance* [1993] QB 701, 723[8] Hoffmann LJ said that "the proposition that at least for some purposes the arbitration clause may be treated as severable or separable or autonomous has become orthodox doctrine" and the principle has now been given statutory authority in section 7 of the Arbitration Act 1996. Section 7

---

[5] LC3/6.
[6] LC3/8.
[7] LC3/5.
[8] LC3/4.

5

provides (under the heading "separability of arbitration agreement"): "Unless otherwise agreed by the parties, an arbitration agreement which forms or was intended to form part of another agreement (whether or not in writing) shall not be regarded as invalid, non-existent or ineffective because that other agreement is invalid, or did not come into existence or has become ineffective, and it shall for that purpose be treated as a distinct agreement."

13. Section 7 does not apply to jurisdiction clauses, but it is declaratory of the common law, and it is now well established in English law that the same principle applies to jurisdiction clauses. Accordingly, such a clause is a separable agreement. This was recently said by the Court of Appeal to be uncontroversial. In *Deutsche Bank AG v Asia Pacific Broadband Wireless* [2008] EWCA Civ 1091, [2008] 2 Lloyd's Rep 619[9] Longmore LJ said (at [24])

> "... a jurisdiction clause, like an arbitration clause, is a separable agreement from the agreement as a whole. This is uncontroversial both as a matter of domestic law (see *Mackender v Feldia* [1967] 2 QB 590 and *Fiona Trust v Privalov* [2008] 1 Lloyds Rep 254; [2007] Bus. L.R. 1719) and as a matter of European law (see *Benincasa v Dentalkit SRL* [1997] ECR 1-3767 and Briggs, *Civil Jurisdiction and Judgments* (4th ed. 2005) para. 2 105 esp. at page 131) ..."

**V   Rescission for fraudulent inducement: the basic principle**

14. In the same case, *Deutsche Bank AG v Asia Pacific Broadband Wireless*, Longmore LJ said (ibid.) that it followed from the principle of separability that "disputes about the validity of the contract must, on the face of it, be resolved pursuant to the terms of the clause ..."

15. This is well established in English law. Again most of the authorities have been concerned with arbitration agreements. The leading decision is *Fiona Trust and Holding Corp v Privalov* [2007] UKHL 40, [2007] Bus LR 1719,[10] which, as I have mentioned above (para 5) also involved a jurisdiction clause, but for the

---

[9] LC3/2.
[10] LC3/3.

6

sake of convenience the clause was discussed as if it were a simple arbitration clause: see para 4. Lord Hoffmann said (at [6]-[8], [17]-[18]):

> "6 In approaching the question of construction, it is therefore necessary to inquire into the purpose of the arbitration clause. As to this, I think there can be no doubt. The parties have entered into a relationship, an agreement or what is alleged to be an agreement or what appears on its face to be an agreement, which may give rise to disputes. They want those disputes decided by a tribunal which they have chosen, commonly on the grounds of such matters as its neutrality, expertise and privacy, the availability of legal services at the seat of the arbitration and the unobtrusive efficiency of its supervisory law. Particularly in the case of international contracts, they want a quick and efficient adjudication and do not want to take the risks of delay and, in too many cases, partiality, in proceedings before a national jurisdiction.
>
> 7 If one accepts that this is the purpose of an arbitration clause, its construction must be influenced by whether the parties, as rational businessmen, were likely to have intended that only some of the questions arising out of their relationship were to be submitted to arbitration and others were to be decided by national courts. ... If, as appears to be generally accepted, there is no rational basis upon which businessmen would be likely to wish to have questions of the validity or enforceability of the contract decided by one tribunal and questions about its performance decided by another, one would need to find very clear language before deciding that they must have had such an intention.
>
> 8 A proper approach to construction therefore requires the court to give effect, so far as the language used by the parties will permit, to the commercial purpose of the arbitration clause. But the same policy of giving effect to the commercial purpose also drives the approach of the courts (and the legislature) to the second question raised in this appeal, namely, whether there is any conceptual reason why parties who have agreed to submit the question of the validity of the contract to arbitration should not be allowed to do so.
>
> ..."

7

> 17 The principle of separability enacted in section 7 means that the invalidity or rescission of the main contract does not necessarily entail the invalidity or rescission of the arbitration agreement. The arbitration agreement must be treated as a 'distinct agreement' and can be void or voidable only on grounds which relate directly to the arbitration agreement. Of course there may be cases in which the ground upon which the main agreement is invalid is identical with the ground upon which the arbitration agreement is invalid. For example, if the main agreement and the arbitration agreement are contained in the same document and one of the parties claims that he never agreed to anything in the document and that his signature was forged, that will be an attack on the validity of the arbitration agreement. But the ground of attack is not that the main agreement was invalid. It is that the signature to the arbitration agreement, as a 'distinct agreement', was forged. ...
>
> 18 ...If the arbitration clause has been agreed, the parties will be presumed to have intended the question of whether there was a concluded main agreement to be decided by arbitration."

16. The point was recently underlined by the Court of Appeal in *Sulamérica Cia Nacional de Seguros SA v Enesa Engelharia SA* [2012] EWCA Civ 638, [2013] 1 WLR 102[11] by Moore-Bick LJ, who said (at [9])

> "... It was also common ground that an arbitration agreement forming part of a substantive contract is separable, in the sense that it has an existence separate from that of the contract in which it is found. That principle, which reflects the presumption that the parties intended that even disputes about matters which, if established, would undermine the intrinsic validity of the substantive contract (such as fraudulent misrepresentation) should be determined by their chosen procedure, has been given statutory recognition by section 7 of the Arbitration Act 1996. In *Fiona Trust and Holding Corpn v Privalov* [2007] Bus LR 1719 the House of Lords re-emphasised both the presumption that parties to a contract who have included an arbitration clause intend that all questions arising out of their relationship should be determined in accordance with their chosen procedure and the separability of arbitration agreements which enables their intention to be effective."

---

[11] LC3/9.

## VI Application of the principle to jurisdiction clauses

17. Each of those cases made reference to section 7 of the Arbitration Act. But there is no doubt that the same principles apply at common law, and that they apply to jurisdiction clauses. One of the earliest cases relating to jurisdiction clauses in which this principle was applied was *Mackender v Feldia* [1967] 1 QB 590[12] in which Lord Denning MR said (at 598):

> "I can well see that if the issue was whether there ever had been any contract at all, as, for instance, if there was a plea of non est factum, then the foreign jurisdiction clause might not apply at all. But here there was a contract, and when it was made, it contained the foreign jurisdiction clause. Even if there was non-disclosure, nevertheless non-disclosure does not automatically avoid the contract. It only makes it voidable. ... The contract is not avoided from the beginning but only from the moment of avoidance. In particular, the foreign jurisdiction clause is not abrogated. A dispute as to non-disclosure is 'a dispute arising under' the policy and remains within the clause: just as does a dispute as to whether one side or other was entitled to repudiate the contract ..."

18. In *Deutsche Bank AG v Asia Pacific Broadband Wireless* [2008] EWCA Civ 1091, [2008] 2 Lloyd's Rep 619[13] Longmore LJ said (at [24])

> "... It is only if the jurisdiction clause is itself under some specific attack that a question can arise whether it is right to invoke the jurisdiction clause. Examples of this might be fraud or duress alleged in relation specifically to the jurisdiction clause. Another example might be if the signatures to the agreement were alleged to be forgeries, although no authority has so far so stated. Even in such a case someone has to decide whether the signatures were in fact forged. It might well be thought that a mere allegation to that effect could not have the effect of rendering a jurisdiction clause inapplicable."

19. The position is summarised in Dicey, para 12-112:[14]

> "Closely associated with the question of material scope is the issue whether a jurisdiction clause is applicable when a contract, the original making of

---

[12] LC3/7.
[13] LC3/2. See also *AstraZeneca UK Ltd v Albemarle International Corp* [2010] EWHC 1028 (Comm), [2010] 2 Lloyd's Rep 61, at [95] et seq (Hamblen J) (jurisdiction clause case: principle applied to allegation of duress): LC3/1.
[14] LC3/13.

9

which is not in dispute, has been rescinded, or avoided, or frustrated, or terminated. ... In *Fiona Trust and Holding Co v Privalov*, the House of Lords decisively rejected the contention that where a claimant had rescinded, or had purported to rescind, an admitted commercial contract the validity of which was governed by English law, the dispute-resolution clause was nullified together with everything else. ... A dispute resolution clause would only be deprived of intrinsic effect if the fact or factor which was relied on to impugn the agreement was one specifically referable to or targeted at the dispute-resolution agreement itself. In *Fiona Trust* itself, a contention that the charterparty had been rescinded when it had been discovered that it had been procured by bribery was held insufficient to impugn the dispute-resolution clause in the charter itself, for the allegation of bribery was not one specifically targeted at the dispute-resolution agreement."

20. I claim no expertise in United States law, but as a result of my academic and practical experience in this area of the law, I am familiar with the approach to this issue in the United States, which is, in general, the same as in English law, both as regards the principle of separability and also the consequence that claims for fraudulent inducement are covered by arbitration agreements and forum selection agreements unless the arbitration agreement or forum selection agreement itself was the result of fraud.

21. In *Scherk v Alberto-Culver Co*, 417 US 506 (1974)[15] the Supreme Court said (at 519):

"In The Bremen [*M/S Bremen v Zapata Off-Shore Co*, 407 US 1, 10 (1972)] we noted that forum-selection clauses 'should be given full effect' when 'a freely negotiated private international agreement [is] unaffected by fraud...' ... This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."

22. The same principle has been applied in federal courts in New York. In *Person v*

---

[15] LC3/12.

10

*Google Inc*, 456 F Supp 2d 488 (SDNY 2006)[16] the court said (at 494)

> "...Plaintiff claims he was seduced into doing business with defendant based on a false claim of an auction process, characterized by objective awards based solely on bidding price. ... [T]he fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally. *See A.I. Credit Corp v Liebman*, 791 F Supp 427, 430 (SDNY 1992) ('A party may not, however, avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that "the inclusion of that clause in the contract was the product of fraud or coercion." ') (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 ...(1974))."

### VII   Conclusion

23. In my opinion the jurisdiction agreement in sub-clause 20(b) of the Confidentiality Deed applies to the claim for fraudulent inducement and rescission on the basis of the well established principles that the jurisdiction clause is a separate and severable agreement, and that the fact that the claim is for rescission based on fraudulent inducement will not affect the validity of the clause and its application to the dispute unless the fraud was directed to the conclusion of the jurisdiction agreement.

24. There is no allegation that the jurisdiction clause was entered into as a result of fraud. The claim for rescission of the contract for fraudulent inducement is accordingly for the purposes of sub-clause 20(b) of the Confidentiality Deed a dispute "which may arise out of or in connection with this Deed."

25. In addition, the substance of the allegations in the new cause of action relates to a claim that Vale wrongfully obtained information under the Confidentiality Deed and misused that information, and therefore raises a dispute which arises "out of or in connection with" the Confidentiality Deed.

---

[16] LC3/10. See also *Plastic Suppliers, Inc v Cenveo*, 2011 WL 196887 (NDNY 2011): LC3/11.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Lord Collins of Mapesbury

Executed, London, England

September 3, 2014



Declared to before me by the above-mentioned LORD COLLINS OF MAPESBURY at London, England this 3rd day of September 2014.

Notary Public London, England
(J. B. BURGESS)
My Commission Expires with Life

**CHEESWRIGHTS**
NOTARIES PUBLIC

Bankside House, 107 Leadenhall Street,
London EC3A 4AF
Telephone: 020 7623 9477
Facsimile: 020 7623 5428

12

| | | | |
|---|---|---|---|
| | **APOSTILLE** (Convention de La Haye du 5 octobre 1961) | | |
| 1. **Country:** Pays/Pais | United Kingdom of Great Britain and Northern Ireland | | |
| **This public document** Le présent acte public / El presente documento público | | | |
| 2. **Has been signed by** a été signé par ha sido firmado por | Jeremy Brooker Burgess | | |
| 3. **Acting in the capacity of** agissant en qualité de quien actúa en calidad de | Notary Public | | |
| 4. **Bears the seal/stamp of** est revêtu du sceau / timbre de y está revestido del sello / timbre de | The Said Notary Public | | |
| | **Certified** Attesté / Certificado | | |
| 5. **at** á / en | London | 6. **the** le / el día | 03 September 2014 |
| 7. **by** par / por | Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs | | |
| 8. **Number** sous no / bajo el número | K209132 | | |
| 9. **Seal / stamp:** Sceau / timbre: Sello / timbre: |  | 10. **Signature:** Signature: Firma: | T Batchelor |

This Apostille is not to be used in the UK and only confirms the authenticity of the signature, seal or stamp on the attached UK public document. It does not confirm the authenticity of the underlying document. Apostilles attached to documents that have been photocopied and certified in the UK confirm the signature of the UK public official who conducted the certification only. It does not authenticate either the signature on the original document or the contents of the original document in any way.

If this document is to be used in a country which is not party to the Hague Convention of 5th October 1961, it should be presented to the consular section of the mission representing that country.

*To verify this apostille go to www.verifyapostille.service.gov.uk*