# EXHIBIT 2

# QUEEN'S BENCH DIVISION (COMMERCIAL COURT)

4–10; 18 October 2006

———

SEA TRADE MARITIME CORPORATION

v

HELLENIC MUTUAL WAR RISKS ASSOCIATION (BERMUDA) LTD

(THE "ATHENA") (No 2)

[2006] EWHC 2530 (Comm)

Before Mr Justice LANGLEY

**Arbitration — Jurisdiction and error of law — P&I Association Rules — Arbitration clause contained in Rules — Whether arbitration clause incorporated into contract of insurance — Relevance of knowledge of brokers — Whether agreement contained exclusive jurisdiction clause — Arbitration Act 1996, sections 67 and 69.**

In December 1992 the claimant (Sea Trade), through agents and brokers, applied to enter their vessel *Athena* with the defendant Association for the purpose of obtaining war risk insurance. On 4 December 1992 the Association's agents offered insurance "in accordance with the rules and bye-laws of the Association". The offer was accepted by Sea Trade on 11 December, and *Athena* was entered into the Association from 10 December 1992.

On 10 December 1992 Sea Trade completed an Application for Membership of the Association in respect of *Athena*. The Application stated that Sea Trade applied to become a member of the Association "in accordance with the Bye-Laws and the Rules for such Association with which I/we agree to conform". A Certificate of Entry was supplied to Sea Trade's brokers referring to "the Rules of the Association for the time being in force".

In January 1993 the Association wrote a letter to Sea Trade enclosing the "Rates and Terms" for the current policy year and stating that the "Rates and Terms" should be read in conjunction with the current Rules of the Association which could be obtained from the Association's managers or agents at specified addresses. Sea Trade's brokers issued cover notes confirming that insurance had been effected with the Association. One cover note was for the period from 10 to 31 December 1992 and the other was for the 1993 year. The cover was for war risks "on terms and conditions" as attached. The attachment included "Conditions: Conditions as Rules to cover War, etc . . . "

Thereafter the insurance was renewed annually as from 1 January of each year. Pursuant to a request from Sea Trade's brokers a Certificate of Entry dated 27 September 1996 was supplied by the Association's agents. In December 1996 the renewal for 1997 was confirmed by the Association's agents in a fax stating that renewal would be "in accordance with . . . terms of entry and the Association's current rules on values as expiry". On 14 January 1997 Sea Trade's brokers sent to Sea Trade's agents a "confirmation of insurance" recording that renewal had been effected for 1997 "subject to the general conditions attached". The general conditions attached included "CONDITIONS: Conditions as Rules to cover War, etc. Subject to Conditions as per Club Certificate".

In May 1997 Sea Trade presented a war risks claim to the Association in respect of damage to *Athena* from an explosion said to have been caused by Tamil Tigers when the vessel was at Trincomalee. The claim was presented on the basis that there was no right to recover under the insurance because Sri Lanka had been declared an "Additional Premium Area" (APA) and Sea Trade had failed to give proper notice of the fact that it was going to Sri Lanka as required by Rule 25.1 of the Rules of the Association. The Association was asked to exercise the discretion provided for by Rule 25.3 to make payment notwithstanding the want of notice.

The Association decided, in the exercise of its discretion, to make a payment of up to US$3.4 million. However, Sea Trade claimed a further US$3.5 million and brought proceedings against the Association in Greece to recover the additional amount. Sea Trade also brought proceedings in New York.

The Association sought a stay of the New York proceedings in favour of arbitration in London relying on Rule 44 of the Rules, which provided:

> 44.1 The Association and each Owner hereby submits to the jurisdiction of the High Court of Justice of England in respect of any dispute or difference between the Owner and the Association arising out of or in connection with these Rules or out of or in connection with any contract between the Owner and the Association.

> 44.2 Save for any claim by the Association in respect of the sums which the Association may consider to be due to it from an Owner either the Association or the Owner may, by giving written notice of the election to the other, elect to have such dispute or difference referred to arbitration in London subject to the provisions of Rules 44.2.1 to 44.2.7.

> . . .

> 44.2.7 The submission to arbitration and all proceedings therein shall be subject to the English Arbitration Act 1996 and to any statutory modification thereof.

A stay of the New York proceedings was granted on 13 March 2003.

In the London arbitration Sea Trade contended *inter alia* that Rule 44 had not been incorporated into the insurance contract because it had not been specifically referred to and because Sea Trade was unaware of it; alternatively, if Rule 44.1 had been incorporated into the contract it was not an exclusive jurisdiction clause in favour of the English courts.

The arbitrators held that Rule 44 was incorporated into the insurance, and that Rule 44.1 did constitute an exclusive jurisdiction clause.

In my judgment the wording of these clauses is clear. The clause in the model and conforming agreements starts by specifically referring to the fact that the agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. It therefore expressly contemplates the relevance of other entities than those actually named in the agreement. It then uses words which are words of submission not reference: "The parties hereby submit to the jurisdiction." The addition of the word "consent" reinforces the same conclusion. The phrase in the *Austrian Lloyd* case was "agree to submit" but in that case it was construed in a transitive sense as an agreement to submit disputes to a particular court in the same way as one can agree to submit disputes to an arbitrator. The clauses which I have to construe do not lend themselves to a transitive construction; the sense is that the parties submit themselves to the jurisdiction of the court not that the parties submit disputes. In the *Austrian Lloyd* case it was open to the court to construe the words as if they read "to agree to submit all such disputes". I do not consider that it would be appropriate to make such an inferential insertion in these clauses. Words are an accurate tool and relatively small differences in wording will produce different contractual effects. In these clauses the parties have used neither the word exclusive nor a sentence construction which is transitive. They have used words which are apt to demonstrate an intention to agree to submit to the jurisdiction of the English Courts and not that there should be a contractual obligation not to have any recourse to any other court. This is the natural meaning of the words used, it is consistent with the surrounding circumstances and the general matrix of the contracts and in accord with the general context in which these clauses appear in the contracts.

101. I have quoted from this judgment at length not only because it addresses the wording used in the Court of Appeal cases referred to, but because, it is agreed, the wording of Rule 44.1 is to the same substantial and grammatical effect as the wording addressed by Hobhouse J. Unless, therefore, there is some valid distinction to be drawn, or I decline to follow the decision, Rule 44.1 would not be an exclusive jurisdiction clause and the arbitral tribunal would have reached an erroneous conclusion. As Mr Bailey, who argued this part of the case on behalf of Sea Trade, put it the question is whether the parties submit to the jurisdiction or all disputes are submitted to the jurisdiction.

102. Mr Moriarty did not submit that Hobhouse J was wrong. He was right not to do so; at least to a court of first instance. The decision has since been frequently referred to substantially without criticism. It was applied by the Court of Appeal in *Sabah Shipyard (Pakistan) Ltd v Islamic Republic of Pakistan* [2003] 2 Lloyd's Rep 571, see *per* Waller LJ at paras 30–34. Mr Moriarty sought to distinguish the decision, pointing out (with some justification, I think) that the analysis of the *Austrian Lloyd* case opened the way to "inferential insertion" in respect of wording not easy to distinguish in substance from the wording before Hobhouse J and this court. The particular wordings in later cases in which jurisdiction clauses were held to be exclusive such as *British Aerospace plc v Dee Howard Co* [1993] 1 Lloyd's Rep 368, *Continental Bank v Aeakos Compania Naviera SA* [1994] 1 Lloyd's Rep 505; [1994] 1 WLR 588 and *Sinochem International Oil (London) Ltd v Mobil Sales and Supply Corporation* [2000] 1 Lloyd's Rep 670 are much more readily distinguishable.

103. In the *British Aerospace* case, at page 375, Waller J distinguished Hobhouse J's decision (described as the *Cannon Screen* case) on two grounds specific to the wording, but also because of the presence of an English choice of law clause, albeit such a clause was also present in the contract construed in *Pathé Screen* itself. Waller J considered the choice of law clause material because "there is no real purpose as I see it in submitting disputes to the jurisdiction of the English court as well as choosing English law unless the intention is to make England exclusive". Rix J in *Sinochem* made the same point at page 676. But, as Mr Bailey submitted, even a non-exclusive jurisdiction clause does have a purpose. It makes it difficult, if not impossible, to argue that the chosen forum is not an appropriate one for the resolution of the dispute. In *Axa Re v Ace Global Markets Ltd* Lloyd's Rep IR 683, Gloster J, like Hobhouse J, held that an English jurisdiction clause was non-exclusive notwithstanding that the contract also contained an English choice of law clause.

104. Although both parties sought to pray in aid "the obvious commercial sense" of their respective constructions neither in my judgment demonstrated any compelling contextual arguments to that end.

105. Mr Moriarty's major submission was that the arbitration provisions in Rule 44.2 justified the court reaching an opposite conclusion to Hobhouse J. I do not think they do. The fact that there is (save for claims by the Association) a mutual elective arbitration clause for arbitration in London cannot, I think, affect the proper construction of Rule 44.1; and, indeed, as Mr Bailey submitted, if it did there is no good reason for giving more emphasis to London than to the fact the Rule is elective or optional.