# EXHIBIT 3

All England Official Transcripts (1997-2008)

# Mercury Communications Ltd and another v Communication Telesystems International

*Conflict of laws - Jurisdiction - Contract containing non-exclusive jurisdiction clause - Whether leave required to serve proceedings outside the jurisdiction - Whether existence of clause affecting determination of forum conveniens - RSC Ord 11, r 1(2) - Civil Jurisdiction and Judgments Act 1982, Sch 1, art 17*

(Transcript)

**QUEEN'S BENCH DIVISION (COMMERCIAL COURT)**

**MOORE-BICK J**

**27 MAY 1999**

**27 MAY 1999**

**This is a signed judgment handed down by the judge, with a direction that no further record or transcript need be made (RSC Ord 59, r(1)(f), Ord 68, r1). See Practice Note dated 9 July 1990, [1990] 2 All ER 1024.**

S Berry for the Plaintiffs

T Ivory QC for the Defendant

Dibb Lupton Alsop; Osborne Clarke

**MOORE**

**-BICK J**

:

*Background*

In October 1994 the first plaintiff, Mercury Communications Limited ('Mercury'), entered into an agreement with the defendant, Communication Telesystems International ('CTS') for the supply of telecommunications services. These took the form of providing connection to a dedicated network which would allow voice traffic originating and terminating outside the UK to be routed through the International Public Switched network. CTS carries on business as a provider of long distance telephone services to private and commercial customers, as well as 'wholesale' switched telecommunications services to other companies. In order to provide a low cost international telephone service to its customers CTS entered into contracts with many providers of switched voice traffic services whose rates for calls to different international destinations varied.

intended simply to exclude the jurisdiction of the courts of other contracting states where the parties (whether domiciled in a contracting state or not) had agreed to the exclusive or non-exclusive jurisdiction of the courts of a contracting state. The correctness of that view is reinforced by a passage in the recent judgment of the Court of Appeal in *Haji-Ioannou v Frangos* (Court of Appeal, unreported, 31st March 1999) in which Lord Bingham CJ said that *Re Harrods (Buenos Aires) Ltd* must be taken to have decided that, where the choice is between the exercise of jurisdiction properly conferred on the English court and the exercise of jurisdiction by a foreign court in a non-contracting state, the power to stay on the grounds of *forum non conveniens* is not excluded by the Convention. It is therefore clear in my judgment that it would not be inconsistent with the Convention to stay the action in favour of the courts of California on the grounds of *forum conveniens* if the interests of justice so require.

*Discretion*

The fact that the writ in this action could have been served on the defendant in California without the leave of the court has one important consequence so far as the question of *forum conveniens* is concerned: the burden is on CTS to satisfy the court that the action should be stayed rather than on Mercury to show that England is the appropriate forum, as would be the case if service out were a matter of discretion. I say that because proper weight must in my view be given to the fact that jurisdiction has been founded here as of right and I can see no reason why a distinction should be drawn for these purposes between the case where the defendant has been served within the jurisdiction and the case where he has been served out of the jurisdiction under Order 11, rule 1(2) without the need to obtain leave. I approach the question of *forum conveniens* in the present case, therefore, on the basis that it is for CTS to show that the action should be stayed because there is some other available forum having competent jurisdiction which is clearly or distinctly the more appropriate forum for the trial of the action: see per Lord Goff in *Spiliada Maritime Corp v Cansulex Ltd* [1987] AC 460 at pages 476 - 477. Each of the parties made submissions relating to factors such as the availability of documents and witnesses and the relative ease with which the proceedings could be conducted in California and England respectively to which I shall return in due course. However, three factors stand out as of particular importance in this case: the parties' submission to the jurisdiction in clause 16, their choice of English law as the proper law of the contract and the fact that proceedings are already under way in California.

Mr Berry submitted that clause 16 is of paramount importance in this case because by agreeing to it CTS undertook as a matter of contract not to contest the jurisdiction if Mercury brought proceedings against it in this country. Although he recognised for the purpose of this argument that the court had a discretion to stay the proceedings, he submitted that the proper course was to enforce the contract and allow the action to proceed here notwithstanding the concurrent proceedings in California. In support of that submission he relied principally on a passage in the judgment of Waller J in *British Aerospace plc v Dee Howard Co* [1993] 1 Lloyd's Rep 368. Mr Ivory, however, submitted that the approach suggested by Waller J was not appropriate in this case. He submitted that since clause 16 is in terms a non-exclusive jurisdiction clause CTS was quite entitled to bring proceedings against Mercury in California and relied heavily on the existence of those proceedings as forming an important aspect of the circumstances which the court had to take into account in deciding whether to stay this action.

Although a non-exclusive English jurisdiction clause leaves the parties free to bring proceedings elsewhere without thereby committing any breach of contract, it has generally been regarded as a powerful factor in favour of allowing proceedings brought in this country to continue. There are, it seems to me, two reasons why that should be so. In the first place, as Mr Berry submitted, a clause of that kind involves a contract by each party to submit to the jurisdiction of the English courts if the other chooses to bring proceedings in this country. Although neither party binds itself to bring any action here, each of them does agree to submit to the jurisdiction if an action is brought against it. Secondly, as part and parcel of agreeing to submit to the jurisdiction each party must be taken to have recognised that this country would be an appropriate forum for the trial of the action. In *British Aerospace plc v Dee Howard Co* Waller J recognised both of these factors.

The contract before him in that case contained on its true construction an exclusive jurisdiction clause in favour of the courts of this country, but he also considered what the position would be if the jurisdiction clause were non-exclusive. Having considered the decisions of Hobhouse J in *S & W Berisford plc v New Hampshire Insurance Co* [1990] 2 All ER 321, [1990] 1 Lloyd's Rep 454 and Hirst J in *The Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Ltd v Gann* [1992] 2 Lloyd's Rep 528 he said (page 375 col. 1):

> "It seems to me on the language of the clause that I am considering here, it simply should not be open to DHC to start arguing about the relative merits of fighting an action in London, where the factors relied on would have been eminently foreseeable at the time that they entered into the contract. Furthermore, to rely before the English Court on the factor that they have commenced proceedings in Texas and therefore that there will be two sets of proceedings unless the English Court stops the English action should as I see it simply be impermissible, at least where jurisdiction in those proceedings has been immediately challenged. If the clause means what I suggest it means they are not entitled to resist the English jurisdiction if an action is commenced in England, it is DHC who have brought upon themselves the risk of two sets of proceedings if as is likely to happen BAe commence proceedings in England. Surely they must point to some factor which they could not have foreseen on which they can rely for displacing the bargain which they made ie that they would not object to the jurisdiction of the English Court.
>
> Adopting that approach it seems to me that the inconvenience for witnesses, the location of documents, the timing of a trial and all such like matters are aspects which they are simply precluded from raising. Furthermore, commencing an action in Texas, albeit that may not be a breach of the clause, cannot give them a factor on which they can rely, unless of course the action has continued without protest from BAe."

As Waller J subsequently made clear, he considered that the inclusion in the contract of a non-exclusive jurisdiction clause made it appropriate to approach the issue of *forum conveniens* as if the plaintiff had founded jurisdiction here as of right (see page 376 col. 2). To that extent his comments relate directly to the position in the present case.

In principle I would respectfully agree with that approach. Although I think that the court is entitled to have regard to all the circumstances of the case, particular weight should in my view attach to the fact that the defendant has freely agreed as part of his bargain to submit to the jurisdiction. In principle he should be held to that bargain unless there are overwhelming reasons to the contrary. I would not go so far as to say that the court will never grant a stay unless circumstances have arisen which could not have been foreseen at the time the contract was made, but the cases in which it will do so are likely to be rare. Mr Ivory sought to persuade me that clause 16 was not freely negotiated because Mercury regarded it as 'non-negotiable', but there is nothing in that point. It is clear that the contract as a whole was the subject of detailed negotiations over a period of many weeks and that its terms as finally agreed resulted from the sort of give and take which characterises all commercial negotiations. The fact that Mercury was successful in persuading CTS by whatever means to agree to clause 16 in the form in which it was originally proposed does not detract from that fact. In my judgment, therefore, there is a heavy burden on CTS to show that it should not be held to its bargain.

In the present case it cannot be suggested that circumstances have arisen which CTS did not foresee at the time of the contract - indeed the evidence indicates that from the outset it had in mind the possibility that it might wish to pursue proceedings against Mercury in California - but it was the existence of the proceedings in California on which Mr Ivory placed most reliance. In those proceedings CTS alleges that Mercury has acted in breach of clause 18 and seeks to recover damages accordingly. Its claim is directly relevant to Mercury's claim in this action, both because clause 18 has a direct bearing on the price which Mercury is entitled to charge for the services provided by it and because it would be open to CTS to seek to set off any damages which it recovered against any outstanding liability to Mercury. As Mr Berry accepted, therefore, if the action here is allowed to proceed, CTS will wish to raise in its defence the very issues which are the subject of the Californian proceedings. Moreover, although Mercury has contested the jurisdiction of the court in San Diego, its motion to dismiss the proceedings has failed and there is no practical possibility of an appeal. Unless the parties can agree on some other course, therefore, the action in California will proceed to trial.