# EXHIBIT 4

All England Reporter/2006/January/Antec International Ltd v Biosafety USA Inc - [2006] All ER (D) 208 (Jan)

[2006] All ER (D) 208 (Jan)

# Antec International Ltd v Biosafety USA Inc

[2006] EWHC 47 (Comm)

**Queen's Bench Division (Commercial Court)**

**Gloster J**

**27 January 2006**

*Conflict of laws - Jurisdiction - Non-exclusive jurisdiction - Contract containing non-exclusive English jurisdiction clause - Whether jurisdiction clause to be given effect .*

The claimant was an English company.  The defendant was an American corporation based in Florida.  In 2003, the parties entered into a contract under which the defendant would perform distribution services in the United States.  It contained a non-exclusive English jurisdiction clause.  Subsequently, the claimant was taken over by an English subsidiary of a Delaware corporation, and some of its activities began to be co-ordinated from Delaware.  Otherwise, the performance of the contract was unaffected, the claimant manufacturing and processing the defendant's orders in England.  Disputes arose and the claimant served proceedings on the defendant in Florida in December 2004.  The defendant applied to set aside or stay the proceedings on the ground, inter alia, that the appropriate forum for the trial of the action was Florida.  It also brought proceedings in Florida against the claimant and the claimant's Delaware parent company.

The application would be dismissed.

England was the appropriate forum, on the facts of the case.

The fact that the parties had freely negotiated a contract providing for the non-exclusive jurisdiction of the English courts and English law, created a strong prima facie case that the English jurisdiction was the correct one.  The defendant could not point to any overwhelming or even strong reasons to justify the court not requiring it to observe the contractual choice of the English court as the forum for the resolution of the dispute, notwithstanding that a Delaware corporation was also a defendant to the Florida proceedings.  The claimant was and always had been an English company.  At the time of contracting for English jurisdiction, the defendant would have known that in the event of a dispute its witnesses might have to travel to England, and the English courts might be scrutinising the defendant's actions in Florida.  Nothing had changed in relation to the jurisdictional position.  In all the circumstances, there were no, and certainly no strong or overwhelming, reasons for not requiring the defendant to comply with its contractual choice of non-exclusive English jurisdiction.

Ricky Diwan (instructed by Eversheds) for the claimant.

Ben Hubble (instructed by Courts & Co) for the defendant.

James Wilson   Barrister (NZ).

directly to consider Biosafety's application for a stay on grounds of forum non conveniens.

4. However, Mr Ricky Diwan, counsel for Antec, in the course of a clear and helpful argument, submitted as a threshold point that there was no room for the application of the forum non conveniens doctrine in the light of the judgment of the European Court of Justice ("ECJ") in *Owusu -v- Jackson* (1 March 2005, Case No C-281/02). Accordingly, he submitted that, since section 49 of the Civil Jurisdiction and Judgments Act 1982 (as amended by Schedule 2 to the Civil Jurisdiction and Judgments Order 2001 - SI 2001/3928) permits the court to apply the doctrine of forum non conveniens only provided that it is not inconsistent with the Regulation, there was no basis upon which the court was entitled to consider Biosafety's alternative application for a stay, and that I should therefore dismiss it without even considering it on its merits.

5. After the hearing before me, and after my receiving from counsel various post-judgment submissions on the law in relation to the *Owusu* issue, it became apparent that, contrary to what I had been told at the hearing, it had become necessary for me to give an urgent determination, during the vacation, on Biosafety's application. That was because, on 14th July 2005, apparently shortly after the conclusion of the hearing before me (and contrary to indications given by Mr Hubble at the hearing as to the imminence of proceedings, as he was not aware that these were about to be issued), Biosafety commenced proceedings in Florida against both Antec and Antec's ultimate parent company, E I DuPont de Nemours & Company ("DuPont"), a company incorporated in Delaware. In those circumstances, on 4th August 2005, Antec's solicitors, Eversheds, requested that I give my judgment as a matter of urgency, in the vacation, so that my determination could be put before the Florida court in the context of Antec's and DuPont's challenge to the jurisdiction of that court. Accordingly, on 8th August 2005 I gave a short oral judgment refusing Biosafety's application for a stay on the grounds of forum non conveniens. I specifically told the parties that, in view of the time which I had available, I was not at that stage going to give any ruling or make any decision on the Owusu point, but was merely going to address the merits of the forum non conveniens argument, on the assumption that Antec's arguments in relation to the *Owusu* point were not well founded, and that the court was accordingly entitled to entertain Biosafety's application for a stay on forum non conveniens grounds on its merits.

6. In the event, I decided that Biosafety had not established that England was not the natural or appropriate forum for Antec's claims, or that Florida (or, indeed, other jurisdictions in the United States of America) were clearly or distinctly the more appropriate forum; see *The Spiliada* [1987] AC 460 at pages 476-477. In particular, I held that Biosafety could not point to any strong or overwhelming reasons for not keeping the parties to their contractual choice of the English court as a forum for the resolution of their disputes, and that the factors of convenience for their witnesses and possible experts and the location of their documentary evidence and the subsequent issue of proceedings in Florida could not amount to strong or overwhelming circumstances such as would justify staying the English proceedings.

**Relevant legal principles**

7. In coming to my conclusion, I applied the following legal principles that can be derived from the authorities:

>  i) The fact that the parties have freely negotiated a contract providing for the non-exclusive jurisdiction of the English courts and English law, creates a strong prima facie case that the English jurisdiction is the correct one. In such circumstances it is appropriate to approach the matter as though the claimant has founded jurisdiction here as of right, even though the clause is non-exclusive; see e.g. per Hobhouse J in *S & W Berisford Plc v New Hampshire Insurance Co.* [1990] 1 Lloyd's Rep. 454, at 463; per Waller J in *British Aerospace Plc v Dee Howard Co* [1993] 1 Lloyd's Rep. 368; per Moore-Bick J in *Mercury Communications Ltd v Communication Telesystems International* [1999] 2 AER 33 at page 41.

ii) Although, in the exercise of its discretion, the court is entitled to have regard to all the circumstances of the case, the general rule is that the parties will be held to their contractual choice of English jurisdiction unless there are overwhelming, or at least very strong, reasons for departing from this rule; see e.g. *British Aerospace Plc supra* ; *Mercury Communications* supra at page 41; per Aikens J in *Marubeni Hong Kong & South China Ltd v Mongolian Government* [2002] 2 AER (Comm) 873 at 891(b) - (f); per Lawrence Collins J in *Bas Capital Funding Corporation and others v Medfinco Ltd and Others* [2004] 1 Lloyd's Rep. 652, at paragraphs 192-195; per Gross J in *Import Export Metro Ltd v Compania Sud Americana de Vapores SA* [2003] 1 Lloyd's Rep. 405.

iii) Such overwhelming or very strong reasons do not include factors of convenience that were foreseeable at the time that the contract was entered into (save in exceptional circumstances involving the interests of justice); and it is not appropriate to embark upon a standard *Spiliada* balancing exercise. The defendant has to point to some factor which it could not have foreseen at the time the contract was concluded. Even if there is an unforeseeable factor or a party can point to some other reason which, in the interests of justice, points to another forum, this does not automatically lead to the conclusion that the court should exercise its discretion to release a party from its contractual bargain; see cases cited supra. In particular, the fact that the defendant has, or is about, to institute proceedings in another jurisdiction, not contemplated by the non-exclusive jurisdiction clause, is not a strong or compelling reason to relieve a party from his bargain, notwithstanding the undesirability of parallel proceedings. Otherwise a party to a non-exclusive jurisdiction clause could avoid its agreement at will by commencing proceedings in another jurisdiction; see cases cited supra and *The El Amria* [1981] 2 Lloyd's Rep. 119; *Breams Trustees Ltd v Upstream Downstream Simulation Services* [2004] EWHC 211 (Ch) per Patten J at paragraphs 27 and 28.

**Application of legal principles to the facts**

8. I concluded that Biosafety could not point to any overwhelming or even strong reasons to justify the Court not requiring it to observe the contractual choice of the English court as the forum for the resolution of its disputes with Antec, notwithstanding the additional element that DuPont, a Delaware corporation is now a defendant to the Florida proceedings. In so deciding, I had regard in particular to the following factual matters.

9. Antec is, and always has been an English incorporated company, which is in the business, inter alia, of manufacturing chemical products (including disinfectants) for distribution and sale world-wide, including two disinfectant products in issue in these proceedings, known as Virkon and Perasafe. Those products are, and always have been, manufactured at Antec's two manufacturing facilities in Sudbury, England, where it has some 65 employees. Antec is a substantial company; in 2003 it had an annual turnover in excess of £11 million, and in 2004 its turnover exceeded £15 million.

10. At the time the parties contracted for English jurisdiction, Biosafety was a Florida-based company and Antec was an English-based company and the contract provided for Biosafety to perform distribution services in the USA in accordance with the contract. In other words, in the event of a dispute, the convenience (or perceived lack of convenience) for Biosafety witnesses was foreseeable; by agreeing to the clause Biosafety would have known that, if proceedings came about it would have to fly people to England and contest proceedings there; equally foreseeable was the fact that the English courts would be scrutinising performance in the USA of the distribution agreement.

11. The only factor that had changed was that, since 8th October 2003 (and therefore after the distribution agreement had been entered into) Antec had become wholly owned by DuPont UK (an English registered