# EXHIBIT 6

Statute Law Review/2014/Issue 2, June/Editorial/Editorial -- In Honour of the Moribund "Shall" - Statute Law Rev (2014) 35 (2): 5

Statute Law Review

Statute Law Rev (2014) 35 (2): 5

1 June 2014

# Editorial -- In Honour of the Moribund "Shall"

© Oxford University Press 2014

STATUTES

Down but not out, the word "shall" struggles on to maintain its place in the toolbox of the legislative drafter. Since it has taken two additional knocks in recent months, this seems a fitting moment to offer a few words of encouragement to those who are doing their best to preserve the last habitats of this beleaguered animal.

The bumper 104-page volume of "guidance" published in March 2014 by the Parliamentary Counsel Office in London clearly thinks that the battle to exterminate the word "shall" has to all intents and purposes been won. There is no discussion of the issues that might arise in considering the pros and cons of its usage, and the treatment of the word clearly implies that discussion is unnecessary since all right-thinking drafters are now committed to the extermination programme. The poor animal in its last dying gasps is dismissed with the curt observation that "OPC policy is to minimise the use of the legislative 'shall'."

Why, one might be tempted to ask, should use of the word be "minimised." Either it is a useful word or it is not. If it is not, then it should never be used. If it is sometimes useful, then it should be used in any case in which it is useful. A programme of minimization suggests some kind of dogmatic or theological agenda to prevent the word getting above itself. However, legislative drafting should never be about dogma or theology, but simply about how best to convey policy and meaning.

The Guidance goes on to explore certain alleged alternatives to the word "shall." Prime among them is the suggestion that the word "must" can be used in the context of obligations "(although 'is to be' and 'it is the duty of' may also be appropriate alternatives in certain contexts)." But those of us who still use the word "shall" in legislative drafting enjoy the contrast between it and the word "must." "Must" is a word of compulsion or necessity: it is not a word of duty or obligation. In everyday colloquial speech, we may sometimes use the word "must" to cover a range of meanings including obligations of various kinds ("you must tidy your room"; "you must move your car"); but when a natural speaker stops to consider the difference between necessity and obligation, she or he is clear that one uses "must" for the former and "should," "ought," or something like them, for the latter.

Accordingly, it is appropriate to say that an application form "must" be on pink paper. That is the legislative proposition that it is a condition of a valid application form that it be on pink paper. It is not the imposition of an obligation on an application form

*Statute Law Rev (2014) 35 (2): 5 at  6*

to ensure that it is printed on the pink paper; such an obligation would be difficult for an application form to fulfil in the circumstances of its inanimation.

By way of contrast, when I say that the Secretary of State "shall" appoint a Chief Dog Tickler, I do not mean that there is any practical necessity for her or him to make the appointment. I mean that she or he is under a legal obligation to make it.

Of course, the word "shall" is not found commonly in modern colloquial speech. That is because its use as a future tense has become rare or obsolete, and in natural speech, we are never in the position of imposing legal obligations. The legislative drafter should welcome the fact that a colloquial use of the word "shall" has died out, leaving it free for us to use in the distinct sense of the imposition of a legal obligation, something that never arises in demotic usage.

This impinges on the wider question of the difference between pompous and formal language. Persecution of the humble "shall" is led by those drafters who think it is necessary to abolish the formal in order to avoid the pompous. The rest of us, of course, realize that not only is that unnecessary but also it is bound to be ineffective. A naturally pompous drafter will be able to find ridiculous forms of usage even within the constraints of a bumper 104-page manual. Indeed, given that the PCO Manual appears to recommend the use of the rather prolix "it is the duty of," there is clearly neither the intent nor the likelihood of effectively curtailing pomposity.

Even if drafters are increasingly misled by a misguided attempt to modernize, one might have hoped that at least the judges would continue to hold the bar for precision and accuracy in legislative drafting. But those who have been following the increasingly exciting skirmishes between the judicial and other members of the Rule Committees and the Joint Committee on Statutory Instruments (see, in particular, the first Special Report of Session 2013-14) will be becoming increasingly despondent. In particular, rules of court continue unashamedly to use the word "will" when imposing obligations of a procedural or administrative nature on judicial and clerical officers.

Again, if it is seriously thought that these increasingly lengthy and complicated Rules are rendered pellucid by the mere use of "will" in place of "shall," the Rule Committees are deceiving themselves. Nor is there any evidence that the general public dislike formality in legislative language addressed to them. What the public and everybody else wants, however, is to maximize clarity and certainty. Saying that a court clerk "will" do something leaves the citizen unclear as to to what kind of remedy, if any, she or he has if the clerk fails to conform to the prediction or, possibly, comply with the obligation. Saying that the clerk "shall" leaves no room for doubt in the mind of the citizen that the use of the word that would be archaic in normal speech indicates both the formality and the unique nature of what the rule--a form of legislation--is doing; it is using a word not found in everyday speech because it is doing something--imposing a legal obligation--not done in everyday life.

It is not too late for drafters around the world to think again. Although "shall" is on the edge of extinction, a number of brave jurisdictions have set themselves the task of preserving sufficient habitats for it to ensure that it can be released into the wild in any jurisdiction that, having obliterated it, is far-sighted enough to think again. Let us hope that legislative conservationists will rally around even at this late hour and that the word will flourish again at least enough to ensure that the next edition of the PCO "Guidance" requires more than a single sentence to dismiss the use of "the legislative shall."