# EXHIBIT 8



GEORGETOWN UNIVERSITY LAW LIBRARY

3 0700 01089772 5

# STROUD'S
# JUDICIAL DICTIONARY
# OF WORDS AND PHRASES

### Eighth Edition

## VOLUME 3

## P-Z

SWEET & MAXWELL

*Published in 2012 by*
*Sweet & Maxwell,*
*100 Avenue Road, London NW3 3PF*
*Part of Thomson Reuters (Professional) UK Limited*
*(Registered in England & Wales, Company No 1679046.*
*Registered Office and address for service:*
*Aldgate House, 33 Aldgate High Street, London EC3N 1DL)*

*Typeset by Interactive Sciences Ltd, Gloucester*
*Printed and bound by CPI Group (UK) Ltd, Croydon, CR0 4YY*

*For further information on our products and services, visit*
*www.sweetandmaxwell.co.uk*

*No natural forests were destroyed to make this product; only farmed*
*timber was used and re-planted.*

A CIP catalogue record for this book is available from the British Library

ISBN 978 0 414 02451 9

Sweet & Maxwell ® is a registered trademark of
Thomson Reuters (Professional) UK Limited.

Crown copyright material is reproduced with the permission of the
Controller of HMSO and the Queen's Printer for Scotland.

All rights reserved. No part of this publication may be reproduced or transmitted in
any form or by any means, or stored in any retrieval system of any nature without
prior written permission, except for permitted fair dealing under the
Copyright, Designs and Patents Act 1988, or in accordance with the terms of a
licence issued by the Copyright Licensing Agency in respect of photocopying
and/or reprographic reproduction. Application for permission for other use of
copyright material including permission to reproduce extracts in other
published works shall be made to the publishers. Full acknowledgement of
author, publisher and source must be given.

© Sweet & Maxwell
2012

amount to touching within the meaning of the Sexual Offences Act 2003 (*R. v H. (Sexual assault: touching)* [2005] EWCA Crim 732).

**SHACK.** " 'Shack' is a peculiar name of common, used in the countrey of Norfolke; and cattell go to shack, is as much to say, as to goe at liberty, or to goe at large" (Terms de la Ley). See further *Corbet's Case*, 7 Rep. 5 a; *Cheesman v Hardham*, 1 B. & Ald. 710, 711.

**SHADOW DIRECTOR.** See DIRECTOR.
Stat. Def., Companies Act 2006 s.251.

**SHAFT.** In the Acts relating to mines, "shaft" includes pit: see Metalliferous Mines Regulation Act 1872 (c.77) s.41; Coal Mines Regulation Act 1887 (c.58) s.75.
"Shaft" (Coal Act 1938 (c.52 s.44(1)). Three disused mine shafts, which had been filled in and had subsided in varying degrees, were still "shafts" within the scope of this Act (*Gosforth UDC v National Coal Board* (1958) 172 E.G. 595).
See WORKING SHAFT.

**SHAFTESBURY'S (LORD) ACT.** Liberty of Religious Worship Act 1855 (18 & 19 Vict., c.86).

**SHALL.** "Too much care cannot be employed in using or construing this word. Its various meanings range under two general classes according as it is used—
As implying futurity; or
As implying a mandate, or giving permission or direction.
If something is agreed to be done if or when something else 'shall' happen, this contemplates futurity; and things that have happened and are existent at the time of the agreement will not accomplish the condition precedent to the fulfilment of the agreement.
'Shall be born', in the absence of a context, are words of futurity; and, in a will, mean persons born after its date" (*Gibbons v Gibbons*, 6 App. Cas. 471).
A reference in a will to children who "shall predecease me" referred to events to take place after the making of the will, and therefore excluded a child who had died before the date of the will (*Re McPherson* [1968] V.R. 368).
Where a testatrix provided legacies for her sisters and brothers and made special provisions for any of them who "shall predecease me", it was held that the word "shall" has a sense which indicates futurity and that therefore the special provisions could not operate in a case where a brother had died before the testatrix had made the will (*Re Rowlands* [1973] V.R. 225).
Sometimes, however, "shall" includes past time. Thus in a divesting clause, if donee of property "shall become bankrupt", seems "to mean simply being bankrupt" (per Kindersley V.C., *Seymour v Lucas*, 29 L.J. Ch. 843); and in

such a case it is immaterial whether the bankruptcy has happened before, or shall have happened after, the making of the instrument (*Seymour v Lucas*, above; *Manning v Chambers*, 16 L.J. Ch. 245; per Lindley L.J., *Re Akeroyd* [1893] 3 Ch. 363; see HEREAFTER); see also TO BE BORN. So, too, in an independent (as distinguished from a substitutionary) testamentary gift to the issue of a deceased member of a class, the words "shall die" or "shall happen to die" do not necessarily point to a future death, so as inevitably to exclude the issue of a member of the class who may have died before the date of the will (*Loring v Thomas*, 30 L.J. Ch. 789; *Christopherson v Naylor*, 1 Mer. 320, cited SHARE; see further 2 Jarm. (8th edn) 1328). So, where there was a gift to children, but if any of them "shall predecease me, leaving any child or children living at my death", such child or children to take the parent's share, the Court of Appeal held that that included the children of a child who was dead at the date of the will (*Re Gorringe* [1906] 2 Ch. 341, following *Loring v Thomas*, above); but the House of Lords reversed that decision (*Gorringe v Mahlstedt* [1907] A.C. 225); *Re Rayner*, 134 L.T. 141; *Re Walker*, 74 S.J. 106. So, where there is a bequest to two or more named persons at 21, and if either "shall die" under that age then his share to go to the survivor or survivors; if one be dead at the date of the will, his share goes to the survivor or survivors (*Re Sheppard*, 1 K. & J. 269). So, "a Surrender to such uses as the testator 'shall' by will appoint, applied to a will antecedently executed, it being considered that the surrender referred to that will which should be in existence at testator's death" (1 Jarm. (4th edn) 58, citing *Spring v Biles*, 1 T.R. 435, fn.). So s.1 of the Poor Removal Act 1846 (c.66) excluded from the period necessary to give a pauper a status of irremovability the time during which he "shall" receive relief from a parish in which he did not reside; held, that that included a case where such relief had been give before the Act passed (*R. v Christchurch*, 12 Q.B. 149).

On the other hand, when a statute makes an alteration in the law and says it "shall" have effect, without more, that is a reason for not giving the alteration a retrospective operation (*Re Chapman* [1896] 1 Ch. 323, reversed on another point [1896] 2 Ch. 763). See further as to retrospective operation of statutes, RETROSPECTIVE.

Whenever a statute declares that a thing "shall" be done, that natural and proper meaning is that a peremptory mandate is enjoined. But where the thing has reference to (a) the time or formality of completing any public act, not being a step in a litigation, or accusation; or (b) the time or formality of creating an executed contract whereof the benefit has been, or but for their own act might be, received by individuals or private companies or private corporations, then the enactment will generally be regarded as merely directory, unless there be words making the thing done void if not done in accordance with the prescribed requirements.

"The Secretary of State shall consult with organisations . . . concerned" (Social Security and Housing Benefits Act 1982 (c.24) s.36(1)). "Shall" in this section is mandatory (*R. v Secretary of State for Social Services, Ex p. Association of Metropolitan Authorities* [1986] 1 All E.R. 164).

"The rules shall be so framed" (Immigration Act 1971 (c.77) s.1(5)). "Shall" is here mandatory (*R. v Immigration Appeal Tribunal, Ex p. Ruhul* [1987] 1 W.L.R. 1538; *R. v Secretary of State for the Home Department, Ex p. Zalihe Huseyin, The Times,* October 31, 1987). See also FREE.

"Shall not being later than" (Supreme Court Act 1981 (c.54) s.77(2)(b)). "Shall" is here directory and not mandatory (*R. v Governor of Spring Hill Prison, Ex p. Sohi* [1988] 1 All E.R. 424).

"The company shall" (Insolvency Act 1986 (c.45) ss.98, 99). "Shall" is here permissive and not mandatory (*Re Salcombe Hotel Development Co* (1989) 5 B.C.C. 807).

"The tribunal shall make an additional award" (Employment Protection (Consolidation) Act 1978 (c.44) s.71(2)(b)). The word "shall" in this section is directory not mandatory (*Conoco (UK) v Neal* [1989] I.R.L.R. 51).

"Shall give not less than 10 days' notice" (Company Directors Disqualification Act 1986 (c.46) s.16(1)). "Shall" here is directory and not mandatory, so that failure to give the 10 days' notice did not render the application for a disqualification order either void or voidable (*Secretary of State for Trade and Industry v Langridge* [1991] 2 W.L.R. 1343).

"Shall . . . supply . . . such information" (Adoption Act 1976 (c.36) s.51(1)). In interpreting Acts of Parliament which impose statutory duties in apparently absolute terms the courts should look to what was intended by Parliament and, as Parliament was presumed not to have intended that those terms should enable someone to benefit from his own serious crime, it was held that there was no absolute duty to provide the information requested under this section (*R. v Registrar-General, Ex p. Smith* [1991] 2 Q.B. 393).

"Shall tell . . . shall proceed" (Magistrates' Courts Act 1980 (c.43) s.21). "Shall" is mandatory and so, once a trial on indictment is ordered under this section, there is no power to vary the decision save as set down by s.25 (*R. v Liverpool Justices, Ex p. Crown Prosecution Service* (1990) 90 Cr.App.R. 261).

"The High Court . . . shall . . . order that they be struck out" (County Courts Act 1984 (c.28) s.40(1) as amended by s.2(1) of the Courts and Legal Services Act 1990 (c.41)). This section does not impose a mandatory requirement on the High Court to strike out proceedings which were wrongly stated in the High Court. There remains the option to transfer the proceedings to a County court (*Restick v Crickmore, The Times,* December 3, 1993).

The word "shall" has ben held, in the following cases, only directory. As regards the time fixed for the appointment of overseers under Poor Relief Act 1601 (c.2) s.1 (*R. v Sparrow,* 2 Stra. 1123), or under Poor Law Overseers Act 1814 (c.91) (*R. v Staffordshire,* 10 L.J.M.C. 166); and as regards the time fixed by 8 Geo. 4, c. xxix, for the election of guardians for the Borough of Norwich (*R. v Norwich,* 1 B. & Ad. 310), by Highways Act 1772 (c.78) s.1, for appointment of surveyors of highways (*R. v Denbighshire,* 4 East, 142), or by Quarter Sessions Act 1814 (c.84) s.1, for holding quarter sessions (*R. v Leicester,* 5 L.J.O.S.M. 95); "and there can be no doubt that the same con-

struction will be put upon the statutes (Law Terms Act 1830 (c.70) s.35, and April Quarter Sessions Act 1834 (c.47)), regulating the time for holding quarter sessions (see 4 Chitty's Statutes (3rd edn), 154, citing Dickinson on Quarter Sessions (6th edn), 65). All the various statutes as to the time for holding quarter sessions have always been held directory" (Dick. Q.S. (6th edn) 65).

"Shall proceed to the summary trial of the information" (Magistrates' Courts Act 1952 (c.55) s.19(5)). The word "shall" in this subsection was not mandatory to the extent of depriving the magistrate of the right of permit the accused to change his mid and opt for trial by jury after all (*R. v Craske, Ex p. Metropolitan Police Commissioner* [1957] 2 Q.B. 591).

"Shall" (R.S.C. Ord.19 r.7(1)) is here not mandatory but directory, and does not deprive the court of the discretionary power to extend a party's time to plead where it is just to do so (*Wallersteiner v Moir* [1974] 1 W.L.R. 991).

Cp. MUST.

The word "shall" and words in their ordinary meaning obligatory, have, in the following cases, been held peremptory.

"Shall issue" (Legal Aid (General) Regulations 1950 (No.1359) reg.5) did not mean that from the time that the duty to issue a legal aid certificate arose a certificate should be deemed to have been issued (*Lacey v W Silk & Son Ltd* [1951] 2 All E.R. 128).

"Shall pay" (the old R.S.C. Ord.42 r.1(2)) did not impose an obligation subject to a penalty (*Re A Debtor (No.277 of 1950), Ex p. The Debtor v Liguori* [1951] Ch. 95). See now R.S.C. Ord.45 r.2 where "shall" is replaced by "must".

For a case of "shall" being taken as "directory" rather than "mandatory", see *Stork* [2004] S.C.L.R. 513, Sheriff Court.

"We say that that would have been an obligation on the judge because s.42(1)(a) provides that proceedings to which it applies 'shall' be transferred to the High Court. That word does not always connote obligation, but in the present case it is to be contrasted with the deliberate use of the facultative 'may' in s 42(2)." (*Schmidt v Wong* [2005] EWCA Civ 1506 at [18].)

For a discussion of the use of the legislative "shall", see *Craies on Legislation*, 8th edn, 2004, para.8.1.9.

"The submissions begin with the proposition that the word 'shall' in rule 67.2(6) and (7) [of the Criminal Procedure Rules 2005] ought to be read to mean 'may' rather than 'must'. Even discounting the terms of rule 67.1, on any basis of ordinary construction this would be an abuse of language. 'Shall' is not a synonym for 'may'." (*Re A.* [2006] EWCA Crim 4 at [31].)

For a case of a legislative document using "shall" in some places and "must" in others, giving rise to attempts to draw a distinction in meaning, see *R. (Girling) v Parole Board* [2005] EWHC 546 (Admin).

For a case affirming the mandatory of shall in "shall be made on the following assumption", see *Greenweb Ltd v Wandsworth London Borough Council* [2008] EWCA Civ 910.

"The principal argument was advanced by reference to a traditional dichotomy, namely whether the Regulation was to be regarded as 'mandatory' or 'directory', with invalidity being the consequence of the first but not the second. The judgment records that during argument Mr. Holgate drew counsel's attention to the discussion of this general topic in de Smith et al Judicial Review (6th edn) to indicate that the law had moved on: see paragraph [36]. It would appear that little authority was otherwise cited to the Deputy Judge. In the course of the judgment he referred to Lord Woolf's judgment in R v Home Secretary ex parte Jeyeanthan [2000] 1 WLR 345 which, on any view, was an important stepping stone on the route away from the formalism inherent in the mandatory/directory dichotomy to the approach approved by the House of Lords in Soneji. Mr. Holgate identified a number of factors which would influence a court in deciding the consequences of a breach of a statutory requirement: 'First of all, there is the importance of the requirement. Some requirements are so important that absence of prejudice resulting from non-compliance is irrelevant. Secondly, the courts do consider whether the statutory requirement or purpose could be fulfilled by substantial compliance. If not, then the requirement may well be taken to be mandatory. Thirdly, regard should be had to the consequences of non-compliance. Fourthly, the issue is often determined in practice in the context of the facts of a specific case. Particularly helpful guidance was given in relation to this area by Lord Woolf MR in R v Home Secretary ex parte Jeyeanthan [2000] 1 WLR 354, 358-362. The starting point is that where the word "shall" is used "the requirement is never intended to be optional" (see page 358G).' " (*North Somerset District Council v Honda Motor Europe Ltd* [2010] EWHC 1505 (QB).)

See SHALL AND LAWFULLY MAY; MAY; WILL.

**SHALL AND LAWFULLY MAY; SHALL AND MAY; SHALL AND MAY AND THEY ARE HEREBY EMPOWERED.** "The words 'shall and lawfully may' are in their ordinary import obligatory, and ought according to established rule, to have that construction, unless it would lead to some absurd or inconvenient consequence, or be at variance with the intent of the legislature, to be collected from other parts of the Act" (per Parke B., delivering the judgment in *Chapman v Milvain*, 5 Ex. 61). Accordingly, it was held that those words in s.9 of the Country Bankers Act 1826 (c.46) rendered it necessary for actions by or against a banking company to be brought in the name of its pubic officer. See also *Steward v Greaves*, 12 L.J. Ex. 109; *Re London & Eastern Banking Corp*, 27 L.J. Ch. 457; *Watts v Shuttleworth*, 29 L.J. Ex. 229.

So the words "shall and may", in Joint Stock Companies Act 1844 (c.110) s.66, were held obligatory (see MAY). But though for the offence of allowing an unauthorised person to act in his name, a solicitor "shall and may be struck off the roll, and for ever after disabled from practising" (Solicitors Act 1843 (c.73) s.32), yet the infliction of so heavy a penalty has been held not imperative, so that a lesser punishment might be imposed (*Re Grayston*, 58