# EXHIBIT 9

A

House of Lords

# Fili Shipping Co Ltd and others *v* Premium Nafta Products Ltd and others

## [On appeal from Fiona Trust and Holding Corpn and others *v* Privalov and others]

### [2007] UKHL 40

B

2007 July 30, 31;            Lord Hoffmann, Lord Hope of Craighead,
     Oct 17                  Lord Scott of Foscote, Lord Walker of Gestingthorpe
                             and Lord Brown of Eaton-under-Heywood

C

*Arbitration — Arbitrator — Jurisdiction — Owners bringing tort proceedings against charterers and purporting to rescind charterparties for bribery — Owners seeking court declaration as to validity of rescission — Charterers seeking determination of issue by arbitrator pursuant to arbitration clause — Whether arbitration clause impeached by allegations of bribery — Arbitration Act 1996 (c 23), ss 7, 9, 72(1)*

D

Eight companies within a Russian group of companies entered into charterparties as owners with three chartering companies. Each of the charterparties contained a clause providing for "any dispute arising under this charter" to be decided in England and conferred on either party the right to elect to have any such dispute referred to arbitration. The owners, among others, brought proceedings against the charterers for the torts of conspiracy, bribery and breach of fiduciary duty, claiming, inter alia, that each of the eight charterparties had been induced by bribery and, having purported to rescind the charters, sought a declaration from the court as to the validity of that act. The charterers sought to have the issue determined under the arbitration clause and appointed an arbitrator. On the owners' application under section 72(1) of the Arbitration Act 1996[1] to restrain the arbitral proceedings and on the charterers' application under section 9 of the Act that the court proceedings be stayed, the judge held that the question whether the charterparties were void for bribery fell outside the scope of the arbitration clause and refused the charterers' application for a stay. On appeal by the charterers, the Court of Appeal held that the dispute did fall within the arbitration clause, which survived notwithstanding any illegality of the main contract since section 7 of the 1996 Act required an arbitration clause to be treated as a distinct agreement.

E

F

On the owners' appeal—

*Held*, dismissing the appeal, that the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen, were likely to have intended any dispute arising out of the relationship into which they had entered or purported to enter to be decided by the same tribunal unless the language made it clear that certain questions were intended to be excluded from the arbitration; that where it was claimed that in any event the arbitration clause had been impeached by the illegality of the contract in which it was contained, the effect of the principle of

G

---

[1] Arbitration Act 1996, s 7: see post, para 9.
S 9: "(1) A party to an arbitration agreement against whom legal proceedings are brought . . . in respect of a matter which under the agreement is to be referred to arbitration may . . . apply to the court in which the proceedings have been brought to stay the proceedings so far as they concern that matter . . ."
S 72(1): "A person alleged to be a party to arbitral proceedings but who takes no part in the proceedings may question—(a) whether there is a valid arbitration agreement . . . by proceedings in the court for a declaration or injunction or other appropriate relief."

H

A   courts adopt an approach to construction which is likely in many cases to defeat those expectations. The approach to construction therefore needs to be re-examined.

13   In my opinion the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen, are likely to have intended any dispute arising out of the relationship into which they have entered or purported to enter to be decided by the same tribunal. The
B   clause should be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction. As Longmore LJ remarked, at para 17: "if any businessman did want to exclude disputes about the validity of a contract, it would be comparatively easy to say so."

14   This appears to be the approach adopted in Germany: see the
C   *Decision of 27 February 1970 of the Federal Supreme Court of the Federal Republic of Germany (Bundesgerichtshof)* (1970) 6 Arbitration International 79, 85:

> "There is every reason to presume that reasonable parties will wish to have the relationships created by their contract and the claims arising therefrom, irrespective of whether their contract is effective or not,
D    decided by the same tribunal and not by two different tribunals."

15   If one adopts this approach, the language of clause 41 of Shelltime 4 contains nothing to exclude disputes about the validity of the contract, whether on the grounds that it was procured by fraud, bribery, misrepresentation or anything else. In my opinion it therefore applies to the present dispute.

E   16   The next question is whether, in view of the allegation of bribery, the clause is binding upon the owners. They say that if they are right about the bribery, they were entitled to rescind the whole contract, including the arbitration clause. The arbitrator therefore has no jurisdiction and the dispute should be decided by the court.

17   The principle of separability enacted in section 7 means that the invalidity or rescission of the main contract does not necessarily entail
F   the invalidity or rescission of the arbitration agreement. The arbitration agreement must be treated as a "distinct agreement" and can be void or voidable only on grounds which relate directly to the arbitration agreement. Of course there may be cases in which the ground upon which the main agreement is invalid is identical with the ground upon which the arbitration agreement is invalid. For example, if the main agreement and
G   the arbitration agreement are contained in the same document and one of the parties claims that he never agreed to anything in the document and that his signature was forged, that will be an attack on the validity of the arbitration agreement. But the ground of attack is not that the main agreement was invalid. It is that the signature to the arbitration agreement, as a "distinct agreement", was forged. Similarly, if a party alleges that someone who purported to sign as agent on his behalf had no authority
H   whatever to conclude any agreement on his behalf, that is an attack on both the main agreement and the arbitration agreement.

18   On the other hand, if (as in this case) the allegation is that the agent exceeded his authority by entering into a main agreement in terms which were not authorised or for improper reasons, that is not necessarily an