CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK

**By ECF**                                                                                      September 24, 2014

Hon. Richard M. Berman
United States District Court
For the Southern District of New York
500 Pearl Street, Courtroom 12D
New York, NY 10007

Re:  <u>Rio Tinto plc v. Vale S.A., et al.</u>, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Berman:

This letter is respectfully submitted on behalf of all appearing defendants ("Defendants") in further support of their joint motion to dismiss the Amended Complaint of Rio Tinto plc ("Rio Tinto").

A.   **THE JURISDICTION CLAUSE IS MANDATORY AND COVERS RIO TINTO'S CLAIMS AGAINST VALE**

Rio Tinto's opposition and its expert declaration rest on false premises and straw men. Vale is obviously not saying that "non-exclusive" means "exclusive," as Rio Tinto contends; its point is that Clause 20 provides for *two* jurisdictions, England and Brazil, each of which is therefore non-exclusive of the other, but does not permit suit anywhere else in the world. Likewise, Vale obviously does not dispute that *one* of the purposes of Clause 20 is to eliminate any *forum non conveniens* defense to a suit in England, but to accept Rio Tinto's argument that this is the *only* purpose of that elaborate clause would render the rest of it surplusage and defy basic principles of contract interpretation. Rio Tinto's expert does not squarely take issue with either of these propositions.[1] The Second Circuit has held that a forum selection clause is

---

[1] Lord Hoffmann's statement that "the forum selection clause in the Confidentiality Deed permits claims *like those in this case* to be brought outside England and Brazil, including in the United States District Court for the Southern District of New York" (Hoffmann Decl. ¶ 30) (emphasis added) is carefully hedged. He does not state that the clause permits the claims in connection with the Deed or *against Vale* to be brought in New York, but implies that joinder of other defendants "should" lead to a different result. (*Id.* ¶ 33). That is also wrong, as discussed at pages 4-5 *infra*.

viewed as mandatory either "when it confers exclusive jurisdiction on the designated forum" or when it "incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). Here, the first sentence of sub-clause 20(b), providing that any suit "shall" be brought in England, contains such obligatory language, and requires suit in England with the single exception of the other – hence also "non-exclusive" – forum, Brazil.

When the straw men are eliminated, all of Rio Tinto's arguments can be swiftly rejected. Rio Tinto's expert admits that "the use of the word 'shall' in sub-clause (b) . . . suggests an imperative obligation to sue in England" (Hoffmann Decl. ¶ 20); and the use of the phrase "*any* proceedings," far from being a "temporal" reference (*id.*), clearly shows the parties intended *all* claims to be brought in England (subject only to the sub-clause 20(c) alternative of Brazil). When used in a contract, this language is one of obligation, not expectation (or "foresee[ability]"). (Mot. 5 n.4 (citing cases); Collins Decl. ¶¶ 7, 63-64; Ex. A, Decl. of Lord Collins, dated Sept. 24, 2014 ("Collins Reply"), ¶ 36). Rio Tinto attaches talismanic qualities to the term "non-exclusive," but its expert does not dispute that the term, far from being determinative, is just one factor to consider in assessing whether a forum selection clause is mandatory.[2] (Collins Decl. ¶ 41). Here, sub-clauses 20(b) and 20(c), read together, clearly include the term "'non-exclusive' to indicate that England and Brazil are non-exclusive as to each other while being exclusive as to other forums." (Pl. Opp. at 5 n.1 (citing Mot. at 5); Collins Reply ¶ 5).

The Court can readily dispose of the rest of Rio Tinto's arguments. Rio Tinto argues that it made commercial sense for the parties to have given themselves "flexibility" to sue wherever

---

[2] As another straw man, Rio Tinto asserts that Vale is relying on a theory of "mistake" in this drafting. (Pl. Opp. at 4-5). This is not true. While both parties' experts concur that the drafting of Clause 20 is awkward (*see* Hoffmann Decl. ¶ 22 (clause "could have been better expressed")), as written, the language clearly reflects an intention to provide that England and Brazil, each a "non-exclusive" forum in relation to the other, are the only two forums where "*any*" proceedings can be brought.

each company does business (Pl. Opp. at 9-10), but fails to explain why – if that were so – the parties would have needed to single out Brazil (and only Brazil) as an available alternative forum. Moreover, while Rio Tinto admits that the first sentence of sub-clause 20(b) cannot be explained as an effort to permit the exercise of long-arm jurisdiction because "the provisions of the contract for appointing agents to receive service [already] enable both parties to be served within the jurisdiction" (Hoffmann Decl. ¶ 10), it likewise cannot explain why the first sentence of sub-clause 20(b) would be necessary at all if the sub-clause's only purpose was to waive any *forum non conveniens* defense: as its expert admits, the second sentence would achieve that purpose. (*Id.* ¶¶ 13, 16-17, 19).[3]

Ultimately, Rio Tinto's argument fails to honor the contract interpretation principles it correctly espouses. It fails to honor the plain meaning of the Deed's terms. (Pl. Opp. at 3). Its interpretation would be the same if the parties used the word "may" instead of "shall." It fails to give meaning to each term in the Deed. (*Id.* at 7). *Forum non conveniens* is addressed only in the second sentence of sub-clause 20(b); Rio Tinto's interpretation would be the same if the first sentence of sub-clause 20(b) were omitted. And it fails to honor commercial context. (*Id.* at 9). Rio Tinto and Vale do business in over 30 different countries; it would be nonsensical for them to provide that claims shall be brought in England if they intended instead to permit suit in any of those venues. (Collins Decl. ¶ 69; Collins Reply ¶¶ 15, 38).[4] While both experts agree that the contract could have been better drafted (Hoffmann Decl. ¶ 22), only Lord Collins's interpretation honors the language and commercial context of the parties' agreement, and that interpretation

---

[3] For reasons stated by Lord Collins, the *forum non conveniens* waiver is entirely neutral with respect to whether the jurisdiction conferred in the first sentence is mandatory or merely permissive because either (a) a *forum non conveniens* waiver applies to both exclusive and non-exclusive jurisdiction clauses at common law; or (b) it does not apply to either at all because it is ineffective as a matter of law in an English court by virtue of the operation of an instrument in European Union law – the Brussels I Regulation. (Collins Reply ¶¶ 8, 16-17, 19-35).
[4] As a commercial matter, there is very little "certainty" resulting from the ability to institute suit in any forum that could be deemed "more convenient or appropriate." (Pl. Opp. at 10).

requires claims to be brought either in England or in Brazil, and nowhere else. (Mot. at 5-6).

Rio Tinto's argument with respect to the main issue it previously raised – the jurisdiction clause's scope – is no more successful. It seriously misreads *Fiona Trust*, which in fact dealt with the same kind of conspiracy and bribery claims that Rio Tinto raises here. (Collins Reply ¶ 45). It claims that an English court in deciding whether to grant an anti-suit injunction would be concerned about the same issues being decided by different tribunals. (Hoffmann Decl. ¶ 35). But Vale is not seeking a stay or an anti-suit injunction in England. It is moving to dismiss in the United States; as Lord Hoffmann admits, whether a U.S. court will dismiss a case under *forum non conveniens* is a question of U.S. law to be decided by the "New York court." (*Id.*). Under U.S. law, where a forum selection clause is clear, it "must be given controlling weight" and the case must be dismissed "in all but the most exceptional circumstances." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 134 S. Ct. 568, 579, 581 (2013).[5]

Once again, when the correct legal standard is applied, the answer is clear. All parties agree that, under English law, forum selection clauses must be construed "broadly" to cover "any dispute arising out of [the parties'] relationship." (Pl. Opp. at 12). Rio Tinto also does not dispute that an interpretation that would carve out from the mandatory jurisdiction clause cases where "other parties also become involved in the dispute" (Hoffmann Decl. ¶ 33) would render that clause and the protections it was intended to confer illusory: in every case in which a party misappropriates and uses confidential information, the owner of the information can sue both the misappropriater and the "other part[y]" who used the information. Restatement (First) of Torts § 757 (1939). The identical clause has been applied to RICO claims where – by definition – at least one other party is involved whose presence would not have been "known to both parties at

---

[5] Of course, Vale does not argue that it is "immune" from liability (Pl. Opp. at 13); the forum selection clause is not exculpatory, it simply designates a mandatory forum where Rio Tinto must bring claims that are "in connection with" the Deed, such as the ones here.

the time of contracting" (Pl. Opp. at 11) (*i.e.*, the RICO enterprise).[6]

Finally, notwithstanding Rio Tinto's impermissible attempt to rewrite its complaint in its opposition brief, *see, e.g.*, *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *8 (S.D.N.Y. Jan. 3, 2012), all of the "illicit" acts alleged against Vale in furtherance of the alleged conspiracy (Pl. Opp. at 13) arise out of or are in connection with the Deed. Vale is alleged to have induced Rio Tinto to provide confidential information pursuant to the Deed and to have used that information contrary to the terms of the Deed. The sole case cited by Plaintiff on this question, *Armco Inc. v. North Atl. Ins. Co. Ltd.*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999), holds that a claim falls outside a contractual forum selection clause only where it is based on a legal duty and relationship that pre-existed the contract (such as the duty the officer defendant there owed his employer plaintiff) and not where – as here – the defendant owed the plaintiff no pre-existing duty and plaintiff's claims "derive from entitlements or benefits granted" in the Deed (*viz.*, the duty to keep the information confidential). *Id.* at 340 (*citing WMW Mach., Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau*, 960 F. Supp. 734 (S.D.N.Y. 1997)). It follows that the forum selection clause must be given controlling weight and the case dismissed as against Vale on this basis.

**B.     TRADITIONAL *FORUM NON CONVENIENS* ANALYSIS MANDATES DISMISSAL OF THIS ACTION AS TO ALL DEFENDANTS**

Rio Tinto's opposition to the traditional *forum non conveniens* grounds also proceeds from the wrong premises and thus reaches the wrong conclusions. Rio Tinto is a United

---

[6] Lord Hoffmann says that "it would seem to me strange" that Vale would "be able to secure immunity" from a RICO lawsuit by insisting on enforcement of the forum selection clause. (Hoffmann Decl. ¶ 38). U.S. courts routinely grant *forum non conveniens* motions where – as here – the contract provides for mandatory jurisdiction elsewhere even if the effect is that the plaintiff cannot pursue a RICO claim. *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 Civ. 8089-(RJS), 2014 WL 1116875, at *6 (S.D.N.Y. Mar. 18, 2014) (dismissing RICO and other claims on *forum non conveniens* ground based on forum selection clause); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (holding that forum selection clauses encompassing claims "relating to" and "in connection with" plaintiffs' contracts covered plaintiffs' RICO claims); Collins Reply ¶¶ 45-52 (conspiracy and RICO claims fall within forum selection clauses under both English and U.S. law).

Kingdom corporation with its principal place of business in London. (Am. Compl. ¶ 18). It has further expressly waived its right to claim "that England is not a convenient forum." (*See* Pl. Opp. at 1-2, 8-9). Though Rio Tinto now asserts it is a "multinational company with significant assets in and ties to the United States and this District" (*id.* at 19), those "assets" and "ties" are indisputably those of some unnamed, non-party subsidiary that appears nowhere among the parties and allegations in the Amended Complaint (*see* Am. Compl. ¶ 18; Mot. at 15 n.16). Thus, Rio Tinto's choice of the Southern District of New York is entitled to no deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981); *In re Herald, Primeo, and Thema Sec. Litig.*, No. 09-civ-289, 2011 WL 5928952, at *11 (S.D.N.Y. Nov. 29, 2011) (Berman, J.).[7]

Rio Tinto also argues that "conduct critical to the success of the RICO enterprise took place in the United States." (*See* Pl. Opp. at 19). But Rio Tinto does not identify any conduct by the non-Vale defendants in the U.S., other than purported efforts by certain of those defendants in Florida to conceal their alleged unlawful acts in Guinea years after the alleged RICO enterprise's objective had been attained. (*See, e.g.*, Am. Compl. ¶¶ 127-130, 161). The only alleged U.S. activities by Vale are limited to a few meetings in New York with Rio Tinto concerning the purchase and sale of assets in foreign countries. (*See, e.g., id.* ¶¶ 59, 63, 96, 161).[8] These allegations do not establish any substantial connection to the United States, much less to this District or to New York. *See, e.g., Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998); Mot. at 16-17.

Finally, Rio Tinto claims that it chose to sue in the Southern District of New York, not

---

[7] The cases upon which Rio Tinto relies provide no basis for granting its forum choice any deference at all. (*See* Pl. Opp. at 14, 18-20). *Compare, Gross v. British Broadcasting Corp.*, 386 F.3d 224, 226, 230 (2d Cir. 2004) (deferring to "a plaintiff's choice of her *home forum*" of New York) (emphasis added); *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (finding forum choice reasonable because defendants were U.S. entities and "plaintiffs' efforts to seek relief from the Egyptian authorities proved abortive").

[8] That Vale's American Depository Receipts (ADRs) trade on the New York Stock Exchange (NYSE) (Pl. Opp. at 19, 22) clearly does not give New York or its citizens any interest in a dispute with no relationship whatsoever to ADRs.

because it could only seek treble damages here under the RICO statute, but because this is "where it could sue all defendants." (*See* Pl. Opp. at 19). That claim is risible. As to the non-Vale defendants (other than Thiam), each of them has contested personal jurisdiction because they are foreigners who engaged in no relevant conduct, or any conduct at all, in the United States. As to Vale, it is a Brazilian company with a mandatory jurisdiction clause compelling litigation in England or Brazil, and as to Thiam (and the other defendants), they have all consented to jurisdiction in England. While Plaintiff now claims that non-appearing defendants Touré and Cilins are "two key defendants" whose failure to move to dismiss dooms Defendants' motion (*id.* at 15-16), Rio Tinto previously represented to Your Honor that neither are "key defendants" or "core defendants for [its] purposes." (*See* June 9, 2014 Hr'g Tr. at 2:15-20; 4:17-19). Notably, neither of these "key" defendants has appeared, and Rio Tinto has not even served Cilins with the operative complaint.[9] (*See* Pl. Opp. at 17). Neither Touré nor Cilins resides or transacts affairs in this District and their absence from this motion does not require this Court to keep the case. *See In re Herald*, 2011 WL 5928952, at *13 (dismissing on *forum non conveniens* grounds where "each Defendant who has entered an appearance . . . consents to jurisdiction"); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 288 n.4 (S.D.N.Y. 2000) (dismissing action, including against non-appearing defendant, given issues were "substantially the same as those concerning the other defendants" and plaintiff had "a full opportunity to make out its claim against" absent defendant).

When the traditional *forum non conveniens* standards are applied, Rio Tinto's attempt at forum shopping should be rejected. This lawsuit concerns the alleged theft of a British company's mining rights in Guinea by five foreign defendants – Vale (a Brazilian corporation),

---

[9] Indeed, Touré was only recently served with the Amended Complaint a few weeks ago, and thus far, Rio Tinto has not even bothered to serve Cilins.

BSGR (a Channel Islands corporation), Steinmetz (a citizen of both Israel and France, with a residence in Switzerland), VBG Guernsey (a Channel Islands entity), and VBG Guinea (a Guinean entity). *See, e.g.*, *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 696 (S.D.N.Y. 2003) (dismissing RICO action on *forum non conveniens* grounds, finding that "[t]he record before the Court points to nothing but forum shopping by the plaintiffs"); *Turedi v. Coca-Cola Co.*, 343 F. App'x 623, 625 (2d Cir. 2009) (affirming dismissal of RICO action on *forum non conveniens* grounds, finding "forum-shopping considerations" substantially motivated plaintiffs' choice of forum given case's lack of U.S. connections). New York and New York jurors have no interest in deciding (i) whether several foreign companies and individuals deprived another foreign company of mining rights located in a foreign country, or (ii) whether one foreign company used the information of another foreign company in a manner that violated a deed governed by foreign law. The claim that New York acquired such an interest because a grand jury in New York is conducting an investigation of obstruction of justice charges is spurious.[10] Not only does Rio Tinto ignore the fact that venue for criminal purposes is governed by different standards and different laws than civil *forum non conveniens*, it also alleges that there are ongoing criminal investigations in "at least six different countries," including in England. (Am. Compl. ¶ 16); *see also Quan v. Computer Sciences Corp.*, Nos. CV 06-3927(CBA)(JO), CV 06-5100(CBA)(JO), 2008 WL 89679, at*4 (E.D.N.Y. Jan. 7, 2008) (finding federal investigation "completely irrelevant" for venue transfer motion, and noting that "the relevant federal agencies would [not] . . . simply make themselves available as the source of first resort for any civil litigants who seek evidence from their files"). Thus, under Rio Tinto's own

---

[10] Also without merit is Rio Tinto's contention that this District is a more appropriate forum than England because certain of the Defendants may need to produce documents to a grand jury in this District. Given the iron-clad secrecy of all U.S. grand jury investigations under Fed. R. Crim. P. 6(e), Rio Tinto would not have access to, or be able to make direct use of, any such evidence. It is sheer speculation as to who may be called to appear before a grand jury, what evidence they might be requested to produce, and whether in fact they may be required to do so.

standards, England would be a convenient forum. And Rio Tinto's claim that an English court would have to apply U.S. law simply exposes its true motives. (*See* Pl. Opp. at 25). English law provides "adequate potential remedies" to address what is, at bottom, a claim by a British company that its overseas property was misappropriated by Brazilian and Channel Islands companies. (Collins Reply ¶¶ 48-51 (*citing Roby*, 996 F.3d at 1366); Mot. at 17-18).

The private interest factors also weigh heavily in favor of dismissal. Rio Tinto plainly ignores Defendants' arguments as to the substantial costs associated with conducting discovery in this District. (*See* Mot. at 19-20, 22). It is not just that "documents and witnesses are scattered across the globe" (Pl. Opp. at 20), but no party other than Thiam, including Rio Tinto, has identified any documents as being located in the United States. (*See* Mot. at 19-20). By contrast, Rio Tinto and BSGR do identify the United Kingdom as a location where documents can be found. (*See id.*).[11] Neither Rio Tinto nor any Defendants identified any witnesses "likely to have discoverable information" in the United States. (*See* Mot. at 20-21). Rio Tinto also offers no reason to believe that Cilins and Touré will testify; it did not think so at the time of serving its Initial Disclosures.[12] And Thiam will be a defendant in England.

Finally, Rio Tinto also makes the spurious claim that Defendants' consent to jurisdiction in England is defective because only Vale's counsel signed the letter-brief in support of Defendants' joint-motion, and no defendant submitted a sworn affidavit or declaration providing for such consent. Plaintiff's assertion misconstrues Your Honor's decision in *In re Herald* (*see*

---

[11] Notably, if this case were to be litigated in an English court, production of those documents clearly would not implicate any English privacy laws or blocking statutes, whereas any documents produced in this District would necessitate the parties' compliance with all applicable foreign privacy laws and blocking statutes (including those of England).

[12] Even if they agreed to testify, Rio Tinto could obtain their testimony under 28 U.S.C. § 1782. Rio Tinto argues that it identified "a number of third-party witnesses in the United States." (Pl. Opp. at 22 (*citing* Am. Compl. ¶¶ 59, 63, 66)). But not only are each of these supposed witnesses professionals who could easily travel, they are witnesses only with respect to the Confidentiality Deed and not with respect to any claim of bribery. (*See, e.g.*, Am. Compl. ¶¶ 90, 120, 166(d), 208).

Pl. Opp. at 16-18), which establishes that Defendants' consent to English jurisdiction in this matter – through a pleading in which they all joined – was proper and effective. *See In re Herald*, 2011 WL 5928952, at *2 n.4 (noting "[d]efendants have advised the Court [in their memorandum of law] that, in the event of dismissal of these actions on *forum non conveniens* grounds, 'each [d]efendant who has entered an appearance . . . consents to jurisdiction'" in the alternative forums). Nonetheless, should the Court require further submissions as a condition of dismissal, counsel for all Defendants will submit declarations stating their clients' consent to jurisdiction in English courts.[13]

*   *   *   *   *   *

For the reasons set forth above and in their opening letter-brief, Defendants respectfully request that the Court dismiss the Amended Complaint pursuant to the doctrine of *forum non conveniens*.

Respectfully submitted on behalf of all Defendants,

By: _____
Lewis J. Liman
Jonathan I. Blackman
Boaz S. Morag

cc: All Counsel of Record (by ECF)

---

[13] Contrary to Plaintiff's assertion, Defendants need not waive *all* statute of limitations defenses as a condition of *forum non conveniens* dismissal. (*See* Pl. Opp. at 18 n.9). Courts in the Second Circuit only condition dismissal on *forum non conveniens* grounds based on waiver of statute of limitations defenses in the alternative forum where the statute ran *during the pendency* of the action in the United States. *See, e.g., Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002). Defendants agree to a similar condition for dismissal of this action, should any applicable statute be identified by Rio Tinto. Rio Tinto further suggests that "any dismissal should be conditioned upon a sworn submission by each Defendant agreeing to . . . satisfy any judgment rendered by an English court." (Pl. Opp. at 18 n.9). Such a condition would be plainly improper here. The Second Circuit vacated a similar condition in *In re Union Carbide Corp.*, 809 F.2d 195, 204-05 (2d Cir. 1987). Plaintiff is not entitled to any special advantage in English courts upon dismissal of this action, given it has ample opportunity to enforce any English judgment that it may obtain.