# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rio Tinto plc,

              Plaintiff,

    -against-

Vale, S.A., Benjamin Steinmetz, BSG
Resources Limited, BSG Resources (Guinea)
Ltd. aka BSG Resources Guinée Ltd, BSGR
Guinea Ltd. BVI, BSG Resources Guinée
SARL aka BSG Resources (Guinea) SARL
aka VBG-Vale BSGR Guinea, Frederic
Cilins, Michael Noy, Avraham Lev Ran,
Mamadie Touré, and Mahmoud Thiam,

              Defendants.

14 Civ. 3042 (RMB)

## THIRD DECLARATION OF
## LORD COLLINS OF MAPESBURY
### September 24, 2014

## I    Introduction

1.    I refer to my previous declarations of July 29, 2014 and September 3, 2014 in these proceedings. I use the same abbreviations in this declaration. I have been asked by Cleary Gottlieb for my views on the declaration of Lord Hoffmann dated September 10, 2014. Appendix LC4 to this declaration contains further authorities to which I refer in this declaration. As before, where the exhibit contains the relevant portions only, I have satisfied myself that nothing else in the report affects what is said in the extracts.

2.    Both Lord Hoffmann and I agree that the questions whether the jurisdiction (forum selection) clause is exclusive and whether it applies to the claims against Vale in these proceedings are both questions of contractual construction. We are, as Lord Hoffmann recognizes at para 9 of his declaration, entirely agreed on the principles of

1

construction which are applicable; in addition, it seems, we agree that a claim for fraudulent inducement of a contract falls within the jurisdiction clause.

3.     We differ only as to the application of those principles to the facts of the case, which (as I have previously pointed out) is, both in English law and in US Federal law, a matter for the court rather than the experts on foreign law. But, as before, I give my views on the questions of construction in case it would be helpful to the court.

4.     I should begin by stating that Lord Hoffmann's characterisation of my opinion as expressing the view that the word "non-exclusive" should be understood to mean "exclusive" and that that is "a truly heroic feat of interpretation" (para 8) is simply forensic exaggeration.

5.     My opinion was, and remains, that sub-clause 20(b) read in context is a submission to the exclusive jurisdiction of the English court, subject to a carve-out for Brazilian jurisdiction in sub-clause 20(c), and that the document read as a whole shows that the expression "non-exclusive" was carelessly inserted in order to convey the effect of the limited carve-out for Brazilian courts on the exclusive jurisdiction of the English courts or mistakenly not deleted: first declaration, para 94. I did not express, and do not now express, the opinion, that the word "non-exclusive" should be read to mean "exclusive." My opinion does not depend upon such a reading, but upon the most natural interpretation of sub-clauses 20(b) and 20(c) as a whole.

6.     Lord Hoffmann concludes that, first, sub-clause 20(b) is a traditional non-exclusive jurisdiction clause and, second, the conspiracy claims against Vale are not covered by the clause. In my opinion, with the greatest possible respect to the views of Lord Hoffmann, he reaches the first conclusion by attaching undue weight to a standard form/boilerplate *forum conveniens* waiver provision, which (as I will show) is entirely neutral on the issue of exclusivity; and he reaches the second conclusion by reasoning which is contrary to his own opinion in *Fiona Trust and Holding Corp v Privalov* [2007] UKHL 40, [2007] Bus LR 1719[1] and other English case law.

**II     The question of exclusivity**

---

[1] LC2/17.

*The forum conveniens waiver*

7.     In this section I shall set out why Lord Hoffmann reaches the first conclusion by attaching unjustifiable weight to the boilerplate provision in sub-clause 20(b) that each of the parties "waives any objection to proceedings in any such court on the ground of venue or on the ground that proceedings have been brought in an inconvenient forum." I shall describe this as "the *forum conveniens* waiver."

8.     The reason why the *forum conveniens* waiver cannot bear the weight Lord Hoffmann attaches to it is that as a matter of law it is entirely neutral as to whether a clause is exclusive or non-exclusive, because either (a) it applies to both exclusive and non-exclusive jurisdiction clauses at common law because in both cases *forum conveniens* principles can be applied; or (b) it does not apply at all because it is ineffective as a matter of law in an English court by virtue of the operation of an instrument in European Union law – the Brussels I Regulation – because *forum conveniens* principles do not apply in such cases; or (c) if (contrary to my view) *forum conveniens* principles can apply in the Brussels I Regulation context to allow stays of English proceedings in favour of proceedings in non-EU countries, then the *forum conveniens* waiver would apply equally to exclusive and non-exclusive jurisdiction clauses.

9.     Because it is helpful to have the precise wording of the clause in mind, I repeat the crucial provisions of sub-clauses 20(b) and (c) of the Confidentiality Deed:

> ...
>
> (b) Each of the parties agrees that the courts of England are to have non-exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Deed and that accordingly any proceedings arising out of or in connection with this Deed shall be brought in such courts. In connection with any disputes which may arise out of or in connection with this Deed, each of the parties irrevocably submits to the jurisdiction of such courts and waives any objection to proceedings in any such court on the ground of venue or on the ground that proceedings have been brought in an inconvenient forum.
>
> (c) Notwithstanding the provisions of sub-Clause (b) of this Clause 20, the parties recognise that the Brazilian courts may be the appropriate forum for the enforcement of some of the provisions of this Deed (including in relation to the obligations set out in sub-Clause 5 (Share Acquisitions)), not least where

3

injunctions are required.   Where this is the case, each of the parties agrees irrevocably and unconditionally to submit to the non-exclusive jurisdiction of the Central Courts (*Foro Central*) of the City of Rio de Janeiro, State of Rio de Janeiro, Brazil.

...

10.   In my first declaration I expressed the view that the combined effect of (1) the use of the phrase "accordingly any proceedings ... *shall* be brought in such courts" in sub-clause 20(b), and (2) the provision in sub-clause 20(c) for the non-exclusive jurisdiction of the Brazilian courts, "notwithstanding the provisions of sub-Clause (b)" meant that claims not covered by sub-clause 20(c) were subject to the exclusive jurisdiction of the English court. As I have said above, I suggested that the retention or insertion of the expression "non-exclusive" was the result of careless drafting at the time the word "may" was deleted and the word "shall" substituted.[2] But my opinion is not dependent on a suggestion of mistake or carelessness in drafting.

11.   For the linguistic and policy reasons which I gave I concluded that the effect of the sub-clause was to grant exclusive jurisdiction to the English court except where sub-clause 20(c) applied. As I said in my first declaration (para 94), the drafters might have been endeavouring to convey the effect on sub-clause 20(b) of the limited carve-out in sub-clause 20(c) by expressing the jurisdiction of the English court to be non-exclusive in view of the fact that the Brazilian courts were also given jurisdiction over some claims.

12.   Lord Hoffmann's answer to this is that the two sub-clauses are concerned with proceedings in England and whether a party can object to them on grounds of *forum conveniens*: para 17.

13.   He is only able to do this by attaching weight to the *forum conveniens* waiver in sub-clause 20(b), namely, that each of the parties "waives any objection to proceedings in any such court on the ground of venue or on the ground that proceedings have been brought in an inconvenient forum." The provision is a boilerplate provision which has

---

[2] First declaration, para 94, note 88.

been in use in England since its introduction from the United States in international loan agreements in the 1970s. Its United States origin is apparent from the use of the expression venue: in the United States, by contrast with England, the question of proper venue under statutory venue rules remains relevant.

14. Lord Hoffmann expresses the view that (a) such a clause is directed to non-exclusive jurisdiction clauses; and (b) such a clause has some substantial legal effect: paras 14-19, and 25. On the basis of those views, he concludes that sub-clauses 20(b) and (c) work together in providing for the non-exclusive jurisdiction of both courts, with the result that proceedings can be brought in any other country in the world whose courts will take jurisdiction.

15. If he is right, proceedings could be brought in the many countries in which the parties do business, including several countries with a civil law tradition, where there is no doctrine of *forum conveniens* (which is largely known only in common law countries) to temper the exercise of jurisdiction. That is so uncommercial a result that the parties should not lightly be regarded as having intended it.

16. In my respectful opinion, he is wrong in both respects. In my opinion, at common law the *forum conveniens* waiver applies to exclusive jurisdiction clauses as much as it does to non-exclusive jurisdiction clauses. Consequently the *forum conveniens* waiver is an entirely neutral factor.

17. But in the circumstances of this case, the common law rule does not apply. The case is exclusively governed by European Union law, namely the Brussels I Regulation, the effect of which is that a court seised of a case under a jurisdiction clause (whether exclusive or non-exclusive) has no discretion to decline jurisdiction, or decline the exercise of jurisdiction. In those circumstances the *forum conveniens* waiver would have no role to play, and would be irrelevant.

18. But if I am wrong in the latter view, and if *forum conveniens* has a role to play in Brussels I Regulation cases, then the discretion would be available in such cases both for exclusive and non-exclusive jurisdiction clauses. In that event the *forum conveniens* waiver would again be a neutral factor.

*The waiver provision at common law*

19.    At common law an exclusive jurisdiction clause is not conclusive. The exercise of the discretion at common law in relation to exclusive jurisdiction clauses is summarised (by reference to the leading cases, culminating in the decision of the House of Lords in *The Sennar (No 2)* [1985] 1 WLR 490) in Dicey, Morris and Collins, *Conflict of Laws*, 15th ed 2012, para 12-152:[3]

> In exercising its discretion whether to grant a stay, the court considers all the circumstances of the case, and the following formulation of the particular factors to be taken into account has been much relied upon: (1) in which country the evidence is available, and the effect of that on the relative convenience and expense of a trial in England or abroad; (2) whether the contract is governed by the law of the foreign country in question, and if so, whether it differs from English law in any material respect; (3) with what country either party is connected, and how closely; (4) whether the defendants genuinely desire trial in a foreign country, or are only seeking procedural advantages; (5) whether the claimants would be prejudiced by having to sue in the foreign court because they would be deprived of security for their claim, or be unable to enforce the judgment in their favour, or be faced with a time-bar not applicable in England, or for political, racial, religious or other reasons be unlikely to get a fair trial.

20.    Consequently *forum conveniens* factors are relevant, although not determinative, in the exercise of the discretion (where such a discretion exists) to override an exclusive jurisdiction clause. Mere convenience is not sufficient to override an exclusive jurisdiction agreement.

21.    The common law principles still apply where neither party is domiciled in the EU, and this remains relevant in England because many international contracts, especially in shipping and insurance, provide for English law and jurisdiction where neither party is in England or any other part of the EU.

22.    It is because *forum conveniens* factors are relevant at common law that the *forum conveniens* waiver is thought to be of use, because even in the case of exclusive jurisdiction agreements, as I have said, the court has a discretion to override the choice of jurisdiction.

---

[3] LC4/9.

23.   The effect of the *forum conveniens* waiver has been considered in a number of cases in England, including a judgment given by me when I was a member of the Court of Appeal. In *UBS AG v HSH Nordbank AG* [2009] EWCA Civ 585, [2009] 1 CLC 934,[4] the contracts involved contained these provisions:

> Each of the Bank and Finance hereby irrevocably waives any objection which it may have to the laying of the venue of any Proceedings in the courts of England and any claim that any such Proceedings have been brought in an inconvenient forum
>
> The Issuer hereby irrevocably waives any objection which it may have now or hereafter to the laying of the venue of any such Proceedings in the courts of England and any claim that any Proceedings have been brought in an inconvenient forum

24.   I referred in my opinion at (at [101]) to a decision of the Court of Appeal (*National Westminster Bank v Utrecht-America Finance Co* [2001] EWCA Civ 658, [2001] CLC 1372, at [23])[5] where a *forum conveniens* waiver had been said to be "fatal" to any forum non conveniens case, and to another case (*Sabah Shipyard (Pakistan) Ltd v Republic of Pakistan* [2002] EWCA Civ 1643, [2003] 2 Lloyd's Rep 571, at [36])[6] where it had not been treated as decisive, but underlined the point that the jurisdiction agreement would be overridden only in exceptional circumstances. *UBS AG v HSH Nordbank AG* was a case of an exclusive jurisdiction clause and the other cases involved non-exclusive clauses.

25.   Consequently the *forum conveniens* waiver is relevant in both exclusive and non-exclusive cases at common law.

*Effect of the Brussels I Regulation*

26.   As I said in my first declaration (para 54), because RTZ is an English company, this case is governed by Article 23(1) of the Brussels I Regulation,[7] which provides:

---

[4] LC2/37.

[5] LC4/4.

[6] LC2/28.

[7] Council Regulation (EC) 44/2001 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters. As I have already pointed out, this will be replaced by Article 25 of the recast Brussels I Regulation (Regulation (EU) 1215/2012), which applies to proceedings instituted on or after January 10, 2015. The new Article 25 is in this respect the same as the existing Article 23.

7

> If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise.

> Such an agreement conferring jurisdiction shall be either: (a) in writing or evidenced in writing; or (b) in a form which accords with practices which the parties have established between themselves; or (c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.

27.    Lord Hoffmann treats cases governed by the common law and by the Brussels I Regulation interchangeably. In para 10, note 1, he refers to the Civil Procedure Rules, Practice Direction 6B, para 3.1(6)(d) (which provides for long-arm jurisdiction in jurisdiction/forum selection clause cases) and to the Brussels Convention, Article 23 (evidently a slip for Brussels I Regulation), and he then goes on to quote a decision of Langley J in *Sea Trade Maritime Corp v Hellenic Mutual War Risks Association (Bermuda) Ltd (The Athena)* [2006] EWHC 2530 (Comm), [2007] 1 Lloyd's Rep 280, at [103][8] and then suggests that the *forum conveniens* waiver was intended to deal with the point made by Langley J that *forum conveniens* might be an obstacle to enforcement of a non-exclusive jurisdiction clause. But that case concerned Bermudan and Liberian parties and the case was not governed by the Brussels I Regulation.

28.    In fact, because this case is governed by the Brussels I Regulation, the long-arm provisions of the Civil Procedure Rules have no application. The effect of CPR Rule 6.33 is that the discretionary grounds for service under the Rules do not apply if the case is within Article 23 of the Brussels I Regulation. Service is as of right in such cases.

29.    Further, in cases governed by the Brussels I Regulation it is in my view the law that, once a court has been seised on the basis of a jurisdiction clause (whether exclusive or

---

[8] LC2/30.

non-exclusive), there is no basis for a refusal by that court to exercise jurisdiction on *forum conveniens* grounds even in favour of the courts of a non-Member State.

30. I made this point cautiously in my judgment in *UBS AG v HSH Nordbank AG* [2009] EWCA Civ 585, [2009] 1 CLC 934,[9] because it was not necessary for the decision and the point might eventually have to be referred to the Court of Justice of the European Communities for an opinion. I said (at [103]-[104]):

> The prevailing view is that there is no scope for the application of forum conveniens to remove a case from a court which has jurisdiction under the Regulation, even as regards a defendant who is not domiciled in a Member State: see, e.g., Dicey, Morris & Collins, *Conflict of Laws* (14th edn, 2006), paras. 11-023, 12-020, and specifically in relation to jurisdiction agreements, para. 12-124, and Briggs, *Agreements on Jurisdiction and Choice of Law* (2008), para. 7.02; ...

> I am therefore disinclined (in common with the judge) to express a view on this controversial area where, on my view of the case, it does not arise for decision.

31. In Dicey, Morris and Collins, paras 12-145 and 12-153,[10] it is put in this way:

> **Discretion.** Where Art. 23 applies, the chosen court has no discretion to decline jurisdiction ...Where the parties, however, have agreed to the jurisdiction of the English court, they are to be taken to be aware that the Brussels I Regulation removes any judicial discretion to not give effect to that agreement ...

32. Professor Briggs, who was the editor of those passages, puts it in this way in *Agreements on Jurisdiction and Choice of Law* (2008), at para 7.02:[11]

> ...the jurisdiction agreement must be given effect, even if a court called upon to do so sees real disadvantages in doing so.

33. If, however (contrary to the prevailing view), there is a discretion under the Brussels I Regulation to stay proceedings in favour of a non-Member State, there would be no reason why it should not apply equally to exclusive and non-exclusive jurisdiction clauses.

---

[9] LC2/37.
[10] LC4/9.
[11] LC4/8.

9

*Conclusion*

34.     My conclusion on this part, therefore, is that the boilerplate *forum conveniens* waiver provision is wholly neutral, and has no part to play in the relationship between sub-clauses 20(b) and (c). To treat the whole of sub-clause 20(b) as designed to exclude objections to the jurisdiction of the English court, as Lord Hoffmann does in para 25, makes no sense of the provision as a whole.

35.     Treating the words "Notwithstanding the provisions of sub-Clause (b) of this Clause 20" and the rest of that sub-clause as a pointer towards non-exclusivity, as Lord Hoffmann does, is misplaced. For the reasons I have given, to the extent that it is effective at common law (which does not apply here), it applies equally to exclusive jurisdiction clauses. Under the Brussels I Regulation, which does apply here, it is ineffective and irrelevant.

36.     It follows, in my view, that the linguistic considerations which I regarded important in my first declaration remain valid. First, I relied on the use of the word "shall" in the phrase "shall be brought". Lord Hoffmann relies on the authorities in statute law which hold that the expression may be directory rather than mandatory. This is of course not a case of statutory interpretation, but of contractual construction. I would accept that even in contracts it may be possible for the natural meaning of "shall" to be displaced to mean "may", but the plain meaning in the present case is clear, and connotes an obligation to sue in the English courts.[12]

37.     The second linguistic pointer is the expression "Notwithstanding the provisions of sub-Clause (b) of this Clause 20". For the reasons I have given, in my opinion this cannot have been intended to refer to the boilerplate waiver provision, and is intended to be a carve-out from sub-clause 20(b) as a whole.

38.     It follows also in my view that the policy considerations which I relied upon continue to apply. In particular, I remain of the view that the number of potential jurisdictions to which a non-exclusive clause would make both parties subject is wholly uncommercial.

---

[12] For this purpose it is not necessary to rely on an ambiguity, which would be immediately resolved by consulting the second draft of the Confidentiality Agreement (the admissibility of which is a matter of doubt), in which the word "may" was replaced by the word "shall". Lord Hoffmann was evidently not shown this.

39.    In my first declaration I catalogued (paras 37-51) what I believe are all the reported English cases on the distinction between exclusive jurisdiction clauses and non-exclusive jurisdiction clauses. It is significant that the overwhelming majority are cases of exclusive jurisdiction. Only a handful are cases of non-exclusive jurisdiction, and they include normal insurance cases such as *S&W Berisford plc v New Hampshire Insurance Co* [1990] 2 QB 631;[13] *McGowan v Summit at Lloyd's*, 2002 SC 638[14]; and *Sea Trade Maritime Corp v Hellenic Mutual War Risks Association (Bermuda) Ltd (The Athena)* [2006] EWHC 2530 (Comm), [2007] 1 Lloyd's Rep 280[15]; and only one case of a one-off unique negotiated contract: *Sabah Shipyard (Pakistan) Ltd v Republic of Pakistan* [2002] EWCA Civ 1643, [2003] 2 Lloyd's Rep 571.[16]

40.    In my experience the most common use of a non-exclusive jurisdiction clause is a unilateral clause to ensure that a party such as a borrower or a guarantor can be sued by a financial institution in as many jurisdictions as possible in the event of default.

41.    In this case, if the clause is non-exclusive, the number of potential jurisdictions would in my experience be wholly unprecedented, and that is a strong pointer to the construction of the English jurisdiction clause in sub-clause 20(b) as exclusive.

**III     The scope of the jurisdiction agreement: fraudulent inducement and conspiracy claims**

42.    In my first and second declarations I expressed the opinion that these proceedings fall within the category in sub-clause 20(b) of "any disputes which may arise out of or in connection with this Deed."

43.    I relied in particular on the decision of the House of Lords in *Fiona Trust and Holding Corp v Privalov* [2007] UKHL 40, [2007] Bus LR 1719[17] in an opinion written by Lord Hoffmann. The decision, which dealt primarily with arbitration clauses but also (as I said in my second declaration at para 5) involved a jurisdiction clause,   swept away technical distinctions between different types of wording such as disputes "arising under" or "arising out of" or "in connection with" or "in relation to." Instead

---

[13] LC2/27.
[14] LC2/19.
[15] LC2/30.
[16] LC2/28.
[17] LC2/17.

the court was to start from the assumption that the parties, as rational business people, are likely to have intended any dispute arising out of their relationship to be decided by the same tribunal.

44. In my second declaration I expressed the opinion that the English authorities (which in in this respect are the same as the United States authorities) showed that the claims for fraudulent inducement of contract introduced by amendment of the Complaint were plainly covered by the jurisdiction clause, and Lord Hoffmann does not dispute this.

45. But he suggests that the jurisdiction clause does not apply to the claims against Vale for conspiracy, and the RICO claims in particular: paras 37-38. I do not agree. First, as regards claims for conspiracy, the decision in *Fiona Trust and Holding Corp v Privalov*, in which all the claims were held to be covered by the jurisdiction/arbitration clause, itself involved conspiracy claims. This is not mentioned in the decision of the House of Lords, but it is apparent from the decision of the Court of Appeal, whose judgment was upheld. As the Court of Appeal pointed out ([2007] EWCA 20, [2007] Bus LR 686, at [4]):[18]

> An intricate and complex action has therefore been instituted in England by a large number of claimants seeking damages for the tort of conspiracy and making claims by way of damages or restitution as a result of the payment of bribes and a claim for compensation or an account of profits in respect of what is said to be a breach of fiduciary duty by those who have entered into the charterparties. There is also a claim that the eight charterparties which are the subject matter of these proceedings have been validly rescinded and that restitution of benefits should be made.

46. Secondly, as regards the RICO claim, Lord Hoffmann suggests that the parties should not be regarded as having agreed that a cause of action which was not maintainable in England should be determined in England: para 38. In this respect he appears to be echoing the views of Lord Scott in *Donohue v Armco Inc* [2001] UKHL 64, [2002] CLC 440, at [68].[19] But in this respect Lord Scott was in a minority of one. Although the House of Lords reversed the decision of the Court of Appeal ([2000] CLC 1090)[20]

---

[18] LC4/3.
[19] LC4/1.
[20] LC4/2.

to grant an anti-suit injunction, it did not disturb the finding of the Court of Appeal that RICO claims were within the exclusive English jurisdiction agreement. Lord Bingham declined to express a view, but pointed out that the practice of the English courts was to give such clauses a generous interpretation: para 14.

47.   It is entirely in accordance with principle that all claims should be within a jurisdiction agreement, and not simply those which are maintainable or which will succeed. In my opinion, the decision of the Court of Appeal on this point is correct, and the minority opinion of Lord Scott is wrong.

48.   I am confirmed in my view by the fact that in the United States the Courts of Appeals of a number of federal circuits have decided that civil claims for RICO and/or securities violations (which were of course not enforceable in England) by Lloyd's members fell within English exclusive jurisdiction clauses and enforced them.

49.   As appears from the reported cases the jurisdiction clause was in this form:

> Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at Lloyd's, and that accordingly any suit, action, or proceeding ... arising out of or relating to such matters shall be brought in such courts, and to this end, each party hereto irrevocably agrees to submit to the jurisdiction of the courts of England and irrevocably waives any objection which it may have now, or hereafter to (a) any Proceedings being brought in such court ... and (b) any claim that any such Proceedings have been brought in an inconvenient forum ...

50.   At least three of the decisions involved actions in the United States which included RICO claims. In *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2nd Cir 1993), *cert. denied*, 510 U.S. 945 (1993)[21] the Court of Appeals for the Second Circuit held (at 1366):

> That RICO provides treble damages and seeks to deter persistent misconduct does not dissuade us from our view that the Roby Names' contract clauses must be enforced.

---

[21] LC4/7.

13

As we have explained, the Roby Names have adequate potential remedies in England and there are significant disincentives to deter English issuers from unfairly exploiting American investors. Although the remedies and disincentives might be magnified by the application of RICO, we cannot say that application of English law would subvert the policies underlying that statute.

51.    This decision was applied in two other cases involving RICO claims: *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir 1998)[22] ("The addition of RICO claims does not alter our conclusion"); *Lipcon v Underwriters at Lloyd's, London*, 148 F 3d 1285, 1299, n 20 (11th Cir 1998)[23] ("Our conclusion is not affected by appellants' pleading of a cause of action under RICO").

52.    In my opinion the English court would take the same view. Indeed I would go so far as to suggest that it would be extraordinary (and perhaps even absurd) as a matter of English law if the United States courts enforced an English exclusive jurisdiction agreement *even though* the claims included a RICO claim, and the English court refused to enforce it *because* the claims included a RICO claim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Lord Collins of Mapesbury

Executed, London, England

September 24, 2014

---

[22] LC4/6.
[23] LC4/5.