# EXHIBIT A

**Rio Tinto plc v Vale SA and others**

**Second Declaration of Lord Hoffmann**

1.      I refer to my previous declaration of September 10, 2014. I have been asked to give my views in response to Lord Collins' Third Declaration dated September 24, 2014.

2.      I note that Lord Collins says that he did not say that "non-exclusive" should be understood to mean exclusive. He was only saying that when the parties used the words "non-exclusive", the context shows that they meant exclusive. For my part, I cannot see the difference.

3.      Lord Collins says that the second sentence of sub-clause (b), which I said indicated an intention to prevent, so far as possible, a successful application to an English court for a stay on grounds of *forum non conveniens*, is "boilerplate" and therefore, presumably, not to be taken as indicating anything. But he says nothing about the references in sub-clause (c) to creating an exception for cases where Brazil was a more convenient forum, which strongly support the view that the exception was intended to *permit* applications to the English court for a stay in such cases. The overall structure of Clause 20 makes sense only if the references to a convenient forum in both sub-clauses are taken seriously.

4.      Lord Collins goes on to say that the references to *forum non conveniens* are "neutral" because the English court could also refuse to enforce an exclusive jurisdiction clause. Of course the enforcement of the clause, whether exclusive or non-exclusive, by stay or anti-suit injunction, is a matter for the discretion of the Court and in paragraph 34 of my first Declaration I gave some examples of cases in which English courts had declined to enforce jurisdiction clauses in the interests of justice (almost invariably where third parties were involved in the litigation). But this "neutrality" does Lord Collins's argument no good, because it is not enough for him to show that an exclusive jurisdiction clause could also have been overridden. He has to show that designating a non-exclusive jurisdiction, as the parties did here, was commercially pointless and therefore must have been a mistake. The case-law

1

to which I referred in paragraphs 11 and 12 of my First Declaration show that this was not the case.

5.      Finally, Lord Collins says that exclusion of a *forum non conveniens* application was unnecessary because "the prevailing view" is that Article 23 of the Brussels Regulation would require the English court to take jurisdiction regardless. Perhaps I should explain what this means. The Brussels Regulation is European legislation forming part of English law. It sets out various bases upon which Member States of the European Union, including the United Kingdom, have jurisdiction over civil disputes. So, for example, Article 2 says: "Subject to this Regulation, persons domiciled in a Member State shall, whatever their nationality, be sued in the courts of that Member State." Article 23 says:

> 1. If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise.

6.      As Rio Tinto Ltd is domiciled in England (part of a Member State) sub-clause 20(b) will on any view of its construction confer jurisdiction under Article 23. The same answer would be given by English common law, which is why I had not previously tried to distinguish between the two sources of jurisdiction.

7.      The question to which Lord Collins refers is whether a court of a Member State upon which jurisdiction has been conferred by agreement under Article 23 is *obliged* to exercise that jurisdiction, so that the power to stay the proceedings on grounds of *forum non-conveniens* is excluded.

8.      In *Owusu v Jackson*[1] the European Court of Justice ruled that when a defendant was domiciled in a Member State, so that its courts had jurisdiction under Article 2, they were obliged to accept jurisdiction and could not stay the

---
[1] [2005] QB 801.

2

proceedings on grounds of *forum non conveniens,* whether the more appropriate forum was thought to be the court of a Member State or a non-Member State. The *Owusu* decision, however, only addressed the availability of *forum non conveniens* in the context of Article 2 jurisdiction. It was silent with respect to disputes involving Article 23 jurisdiction.

9. Since then, there has been academic and judicial discussion, but no clear decision, as to whether the same principle would apply to jurisdiction conferred by agreement under Article 23.[2] In *Amtec International Ltd v Biosafety USA Inc*[3] Gloster J rehearsed some of the arguments for saying that cases under Article 23 were different:

> It is clearly a moot point as to whether the ECJ's decision in *Owusu* predicates that a jurisdiction clause falling within Article 23 has mandatory effect, so that, once a court of a Member State is seised as a result of the invocation of such a clause, the Regulation requires the relevant court to take jurisdiction, so as to *exclude any application of the forum non conveniens* doctrine, even where the potential alternate jurisdiction involved is not a Member State. It could be argued that different considerations apply in relation to Article 23, which is not expressed in the mandatory terms of Article 2; and that Article 23 does not impose any requirement upon the court which is identified in the non-exclusive jurisdiction clause, to exercise such jurisdiction. It could further be argued that Article 23 preserves the concept of party autonomy in choice of court and, accordingly, the application of the *forum non conveniens* rule, where appropriate.

10. She found it unnecessary to decide the question, saying that it was "an extremely difficult question of European law, and where it is highly likely that, for the issue to be conclusively resolved, it would be necessary for there to be a reference to the European Court of Justice."

---

[2] See for example *Jurisdiction and Arbitration Agreements and their Enforcement*, (2005) David Joseph QC at 267; *Forum Non Conveniens and European Ideals*, Edwin Peel, [2005] LMCLQ 363; *The Death of Harrods: Forum Non Conveniens and the European Court*, Adrian Briggs [2005] LQR 121; *Forum Non Conveniens and Ideal Europeans* Adrian Briggs [2005] LMCLQ 378. The latest judicial mention of the controversy is by Stuart-Smith J in *Cuccolini SLR v Elcan Industries Inc* [2013] EWHC 2994. He referred to Lord Collins's comment in *UBS AG v HSH Nordbank* [2009] 2 Lloyd's Rep 272 about "the prevailing view" but said he found it unnecessary to decide the point.
[3] [2006] EWHC 47 (Comm).

3

11.     Lord Collins, on the other hand, thinks that the better view is that the *Owusu* principle applies equally to Article 23. Regardless of which view controls, however, it would not have been irrational for the parties to the Confidentiality Deed to have made such express provision as they could to exclude the possibility of a *forum non conveniens* stay. On the contrary, it would have been foolish to leave the agreement open to chance on a "difficult question of European law" if one could deal with the point in the terms of the agreement, as the parties did in this case.

Leonard Hoffmann

Brick Court Chambers

3 October 2012