# Exhibit 3

*A*        Court of Justice of the European Communities

# Owusu *v* Jackson and others

## (Case C-281/02)

|   |   |   |
|---|---|---|
| *B* | 2004 May 4;<br>Dec 14;<br>2005 March 1 | Acting President P Jann<br>Presidents of Chamber CWA Timmermans and A Rosas<br>Judges C Gulmann, J-P Puissochet, R Schintgen,<br>N Colneric, S von Bahr and JN Cunha Rodrigues<br>Advocate General P Léger |

*C*

*Conflict of laws — Jurisdiction under European Convention — Forum non conveniens — One only of several defendants domiciled in contracting state — Courts of that state having jurisdiction under Convention vis-à-vis that defendant — Action having close ties with non-contracting state and none with any other contracting state — Whether discretion to decline jurisdiction in favour of non-contracting state — Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters 1968 (as amended), art 2*

*D*

The claimant, domiciled in the United Kingdom, who had hired from the first defendant, also domiciled in the United Kingdom, a holiday villa in Jamaica which had access to a private beach, suffered severe injuries on diving from the beach onto a submerged sandbank, and brought an action in England for damages against the first defendant and other defendants, Jamaican companies of which one owned the beach and others had licences in connection with its use. The defendants invited the judge to decline jurisdiction in favour of the courts of Jamaica, on the basis of the doctrine of forum non conveniens, but the judge refused on the grounds that, despite the connecting factors with Jamaica, article 2 of the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters 1968 (as amended)[1] obliged him to assume jurisdiction vis-à-vis the first defendant in view of that defendant's domicile, and that if he did not try the action against the other defendants also, there would be a risk of conflicting decisions in different jurisdictions. On the defendants' appeal and reference by the Court of Appeal to the Court of Justice of the European Communities for a preliminary ruling, the principal question referred was whether, where the case before a court of a Brussels Convention contracting state had connecting factors with a non-contracting state but none with any other contracting state, the court could exercise a discretionary power, available under its national law, to decline jurisdiction in favour of the courts of the non-contracting state.

*E*

*F*

On the reference—

*Held*, that since article 2 of the Convention was mandatory and the Convention contained no express exception relating to forum non conveniens, it was not open to a court of a contracting state to decline jurisdiction conferred on it by article 2 on the ground that a court of a non-contracting state would be a more appropriate forum for the trial of the action, even if the jurisdiction of no other contracting state was in issue or the proceedings had no connecting factor with any other contracting state (*post*, paras 35, 37, 46, operative part).

*G*

The following cases are referred to in the judgment:

*H* *Azienda Agricola Ettore Ribaldi v Azienda di Stato per gli interventi nel mercato agricolo (AIMA)* (Joined Cases C-480–482, 484, 489–491 and 497–499/00) (not yet reported) 25 March 2004, ECJ

---

[1] Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters 1968 (as amended), art 2: see *post*, para 4.

*Bacardi-Martini SAS v Newcastle United Football Co Ltd* (Case C-318/00) [2003] ECR I-905, ECJ

*Besix SA v Wasserreinigungsbau Alfred Kretzschmar GmbH & Co KG (Wabag)* (Case C-256/00) [2003] 1 WLR 1113; [2002] ECR I-1699, ECJ

*Djabali v Caisse d'Allocations Familiales de l'Essonne* (Case C-314/96) [1998] ECR I-1149, ECJ

*Erich Gasser GmbH v MISAT Srl* (Case C-116/02) [2005] 1 QB 1; [2004] 3 WLR 1070, ECJ

*GIE Groupe Concorde v Master of the vessel Suhadiwarno Panjan* (Case C-440/97) [1999] ECR I-6307, ECJ

*Gmurzynska-Bscher v Oberfinanzdirektion Köln* (Case C-231/89) [1990] ECR I-4003, ECJ

*Harrods (Buenos Aires) Ltd, In re* [1992] Ch 72; [1991] 3 WLR 397; [1991] 4 All ER 334, CA

*Marc Rich and Co AG v Società Italiana Impianti PA* (Case C-190/89) [1991] ECR I-3855, ECJ

*Mund & Fester v Hatrex Internationaal Transport* (Case C-398/92) [1994] ECR I-467, ECJ

*Rechnungshof v Österreichischer Rundfunk* (Joined Cases C-465/00 and 138 and 139/01) [2003] ECR I-4989, ECJ

*Spiliada Maritime Corpn v Cansulex Ltd* [1987] AC 460; [1986] 3 WLR 972; [1986] 3 All ER 843; [1987] 1 Lloyd's Rep 1, HL (E)

*Tatry, Owners of cargo lately laden on board the ship v Owners of the ship Maciej Rataj* (Case C-406/92) (Note) [1999] QB 515; [1999] 2 WLR 181; [1994] ECR I-5439, ECJ

*Turner v Grovit* (Case C-159/02) [2005] 1 AC 101; [2004] 3 WLR 1193; [2005] ICR 23; [2004] All ER (EC) 485, ECJ

*Universal General Insurance Co (UGIC) v Group Josi Reinsurance Co SA* (Case C-412/98) [2001] QB 68; [2000] 3 WLR 1625; [2000] ECR I-5925, ECJ

**REFERENCE** by the Court of Appeal

In proceedings between the claimant, Andrew Owusu, and the defendants, NB Jackson (trading as Villa Holidays Bal-Inn Villas), Mammee Bay Resorts Ltd, Mammee Bay Club Ltd, The Enchanted Garden Resorts & Spa Ltd, Consulting Services Ltd and Town & Country Resorts Ltd, the Court of Appeal, by order of 5 July 2002, referred to the Court of Justice, for a preliminary ruling under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Brussels Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, two questions (see post, para 22) on the Convention of 1968 (OJ 1978 L304, p 36) as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L304, p 1; amended text at p 77), the Convention of 25 October 1982 on the Accession of the Hellenic Republic (OJ 1982 L388, p 1), and the Convention of 26 May 1989 on the Accession of the Kingdom of Spain and the Portuguese Republic (OJ 1989 L285, p 1).

The Judge Rapporteur was Judge Schintgen. The facts are stated in the judgment.

*Richard Plender QC* and *Philip Mead* for the claimant.
*Bernard Doherty* and *Colin Thomann* for the first defendant.
*P Sherrington*, *S Armstrong* and *L Lamb*, solicitors, for the third, fourth and sixth defendants.

*A*   *D Lloyd-Jones QC* and *K Manji*, agent, for the United Kingdom Government.
*R Wagner*, agent, for the German Government.
*A-M Rouchaud-Joët* and *M Wilderspin*, agents, for the Commission of the European Communities.

*B*   The opinion of **MR ADVOCATE GENERAL LÉGER**, delivered on 14 December 2004, is not included in this report.

1 March 2005. **THE COURT (GRAND CHAMBER)** delivered the following judgment in Luxembourg.

*C*   1 This reference for a preliminary ruling concerns the interpretation of article 2 of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (as amended) ("the Brussels Convention").
2 The reference was made in the course of proceedings brought by the claimant, Mr Owusu, against the first defendant, Mr Jackson (trading as Villa Holidays Bal-Inn Villas), and several companies governed by Jamaican

*D*   law, following an accident suffered by the claimant in Jamaica.

### *Legal background*

*The Brussels Convention*

3 According to its Preamble, the Brussels Convention is intended to facilitate the reciprocal recognition and enforcement of judgments of courts

*E*   or tribunals, in accordance with article 293 EC, and to strengthen in the Community the legal protection of persons therein established. The Preamble also states that it is necessary for that purpose to determine the international jurisdiction of the courts of the contracting states.
4 The provisions relating to jurisdiction appear in Title II of the Brussels Convention. According to article 2:

*F*   
> "Subject to the provisions of this Convention, persons domiciled in a contracting state shall, whatever their nationality, be sued in the courts of that state. Persons who are not nationals of the state in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that state."

*G*   5 However, article 5(1)(3) provides that a defendant may be sued in another contracting state, in matters relating to a contract, in the courts for the place of performance of the obligation in question, and, in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred.
6 The Brussels Convention is also intended to prevent conflicting decisions. Thus, according to article 21, which concerns lis pendens:

*H*   
> "Where proceedings involving the same cause of action and between the same parties are brought in the courts of different contracting states, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established. Where the jurisdiction of the court first seised is established,

any court other than the court first seised shall decline jurisdiction in favour of that court."

7 Article 22 provides:

"Where related actions are brought in the courts of different contracting states, any court other than the court first seised may, while the actions are pending at first instance, stay its proceedings. A court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the law of that court permits the consolidation of related actions and the court first seised has jurisdiction over both actions. For the purposes of this article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings."

*National law*

8 According to the doctrine of forum non conveniens, as understood in English law, a national court may decline to exercise jurisdiction on the ground that a court in another state, which also has jurisdiction, would objectively be a more appropriate forum for the trial of the action, that is to say, a forum in which the case may be tried more suitably for the interests of all the parties and the ends of justice: judgment of the House of Lords in *Spiliada Maritime Corpn v Cansulex Ltd* [1987] AC 460, particularly at p 476, per Lord Goff of Chieveley.

9 An English court which decides to decline jurisdiction under the doctrine of forum non conveniens stays proceedings so that the proceedings which are thus provisionally suspended can be resumed should it prove, in particular, that the foreign forum has no jurisdiction to hear the case or that the claimant has no access to effective justice in that forum.

*The main proceedings and the questions referred for a preliminary ruling*

10 On 10 October 1997, the claimant, a British national domiciled in the United Kingdom, suffered a very serious accident during a holiday in Jamaica. He walked into the sea, and when the water was up to his waist he dived in, struck his head against a submerged sandbank and sustained a fracture of his fifth cervical vertebra which rendered him tetraplegic.

11 Following that accident, the claimant brought an action in the United Kingdom for breach of contract against the first defendant, who is also domiciled in that state. The first defendant had let to the claimant a holiday villa in Mammee Bay, Jamaica. The claimant claims that the contract, which provided that he would have access to a private beach, contained an implied term that the beach would be reasonably safe or free from hidden dangers.

12 The claimant also brought an action in tort in the United Kingdom against several Jamaican companies, including the third defendant, Mammee Bay Club Ltd, the owner and occupier of the beach at Mammee Bay which provided the claimant with free access to the beach; the fourth defendant, The Enchanted Garden Resorts & Spa Ltd, which operates a holiday complex close to Mammee Bay, and whose guests were also licensed to use the beach, and the sixth defendant, Town & Country Resorts Ltd,

A  which operates a large hotel adjoining the beach, and which has a licence to use the beach, subject to the condition that it is responsible for its management, upkeep and control.

13  According to the file, another English holidaymaker had suffered a similar accident two years earlier in which she, too, was rendered tetraplegic. The action in tort against the Jamaican defendants therefore embraces not only a contention that they failed to warn swimmers of the hazard constituted by the submerged sandbank, but also a contention that they failed to heed the earlier accident.

B

14  The proceedings were commenced by a claim form issued out of the Sheffield District Registry of the High Court of England and Wales, Civil Division, on 6 October 2000. They were served on the first defendant in the United Kingdom and, on 12 December 2000, leave was granted to the

C  claimant to serve the proceedings on the other defendants in Jamaica. Service was effected on the third, fourth and sixth defendants, but not on Mammee Bay Resorts Ltd or Consulting Services Ltd.

15  The first, third, fourth and sixth defendants applied to the court for a declaration that it should not exercise its jurisdiction in relation to the claim against them. In support of their applications, they argued that the case had closer links with Jamaica and that the Jamaican courts were a forum with

D  jurisdiction in which the case might be tried more suitably for the interests of all the parties and the ends of justice.

16  By judgment of 16 October 2001, the deputy High Court judge in Sheffield held that it was clear from *Universal General Insurance Co (UGIC) v Group Josi Reinsurance Co SA* (Case C-412/98) [2001] QB 68, 85, paras 59–61, that the application of the jurisdictional rules in the Brussels

E  Convention to a dispute depended, in principle, on whether the defendant had its seat or domicile in a contracting state, and that the Convention applied to a dispute between a defendant domiciled in a contracting state and a claimant domiciled in a non-contracting state. In those circumstances, the decision of the Court of Appeal in *In re Harrods (Buenos Aires) Ltd* [1992] Ch 72, which accepted that it was possible for the English courts, applying the doctrine of forum non conveniens, to decline to exercise the

F  jurisdiction conferred on them by article 2 of the Brussels Convention, was bad law.

17  Taking the view that he had no power himself under article 2 of the Protocol of 3 June 1971 to refer a question to the Court of Justice for a preliminary ruling to clarify that point, the judge held that, in the light of the principles laid down in the *UGIC* case, it was not open to him to stay the

G  action against the first defendant since he was domiciled in a contracting state.

18  Notwithstanding the connecting factors that the action brought against the other defendants might have with Jamaica, the judge held that he was also unable to stay the action against them, in so far as the Brussels Convention precluded him from staying proceedings in the action against the first defendant. Otherwise, there would be a risk that the courts in two

H  jurisdictions would end up trying the same factual issues on the same or similar evidence and reach different conclusions. He therefore held that the United Kingdom, and not Jamaica, was the state with the appropriate forum to try the action and dismissed the applications for a declaration that the court should not exercise jurisdiction.

19  The first, third, fourth and sixth defendants appealed against that order. The Court of Appeal (England and Wales), Civil Division, states that, in this case, the competing jurisdictions are a contracting state and a non-contracting state. If article 2 of the Brussels Convention is mandatory, even in this context, the first defendant must be sued in the United Kingdom before the courts of his domicile and it is not open to the claimant to sue him under article 5(3) of the Brussels Convention in Jamaica, where the harmful event occurred, because that state is not another contracting state. In the absence of an express derogation to that effect in the Convention, it is therefore not permissible to create an exception to the rule in article 2. According to the referring court, the question of the application of forum non conveniens in favour of the courts of a non-contracting state, when one of the defendants is domiciled in a contracting state, is not a matter on which the Court of Justice has ever given a ruling.

20  According to the claimant, article 2 of the Brussels Convention is of mandatory application, so that the English courts cannot stay proceedings in the United Kingdom against a defendant domiciled there, even if the English court takes the view that another forum in a non-contracting state is more appropriate.

21  The referring court points out that if that position were correct it might have serious consequences in a number of other situations concerning exclusive jurisdiction or lis pendens. It adds that a judgment delivered in England, deciding the case, which was to be enforced in Jamaica, particularly as regards the Jamaican defendants, would encounter difficulty over certain rules in force in that country on the recognition and enforcement of foreign judgments.

22  Against that background, the Court of Appeal decided to stay its proceedings and to refer the following questions to the Court of Justice for a preliminary ruling:

"(1) Is it inconsistent with the Brussels Convention, where a claimant contends that jurisdiction is founded on article 2, for a court of a contracting state to exercise a discretionary power, available under its national law, to decline to hear proceedings brought against a person domiciled in that state in favour of the courts of a non-contracting state, (a) if the jurisdiction of no other contracting state under the 1968 Convention is in issue, (b) if the proceedings have no connecting factors to any other contracting state? (2) If the answer to question 1(a) or (b) is yes, is it inconsistent in all circumstances or only in some and if so which?"

*On the questions referred*

*The first question*

23  In order to reply to the first question, it must first be determined whether article 2 of the Brussels Convention is applicable in circumstances such as those in the main proceedings, that is to say, where the claimant and one of the defendants are domiciled in the same contracting state and the case between them before the courts of that state has certain connecting factors with a non-contracting state, but not with another contracting state. Only if it is will the question arise whether, in the circumstances of the case in the main proceedings, the Brussels Convention precludes the application by a court of a contracting state of the forum non conveniens doctrine where

A article 2 of that Convention permits that court to claim jurisdiction because the defendant is domiciled in that state.

*The applicability of article 2 of the Brussels Convention*

24 Nothing in the wording of article 2 of the Brussels Convention suggests that the application of the general rule of jurisdiction laid down by that article solely on the basis of the defendant's domicile in a contracting state is subject to the condition that there should be a legal relationship involving a number of contracting states.

25 Of course, as is clear from the Jenard report on the Convention, OJ 1979 C59, p 1, at p 8, for the jurisdiction rules of the Brussels Convention to apply at all the existence of an international element is required.

26 However, the international nature of the legal relationship at issue need not necessarily derive, for the purposes of the application of article 2, from the involvement, either because of the subject matter of the proceedings or the respective domiciles of the parties, of a number of contracting states. The involvement of a contracting state and a non-contracting state, for example because the claimant and one defendant are domiciled in the first state and the events at issue occurred in the second, would also make the legal relationship at issue international in nature. That situation is such as to raise questions in the contracting state, as it does in the main proceedings, relating to the determination of international jurisdiction, which is precisely one of the objectives of the Brussels Convention, according to the third recital in its Preamble.

27 Thus, the Court of Justice has already interpreted the rules of jurisdiction laid down by the Brussels Convention in cases where the claimant was domiciled or had its seat in a non-contracting state while the defendant was domiciled in a contracting state: see *Marc Rich and Co AG v Società Italiana Impianti PA* (Case C-190/89) [1991] ECR I-3855; *Owners of cargo lately laden on board the ship Tatry v Owners of the ship Maciej Rataj* (Case C-406/92) (Note) [1999] QB 515, and *Universal General Insurance Co (UGIC) v Group Josi Reinsurance Co SA* (Case C-412/98) [2001] QB 68, 85, para 60.

28 Moreover, the rules of the Brussels Convention on exclusive jurisdiction or express prorogation of jurisdiction are also likely to be applicable to legal relationships involving only one contracting state and one or more non-contracting states. That is so, under article 16 of the Convention, in the case of proceedings which have as their object rights in rem in immovable property or tenancies of immovable property between persons domiciled in a non-contracting state and relating to an asset in a contracting state, or, under article 17, where an agreement conferring jurisdiction binding at least one party domiciled in a non-contracting state opts for a court in a contracting state.

29 Similarly, as the Advocate General pointed out in paras 142–152 of his opinion, whilst it is clear from their wording that the Brussels Convention rules on lis pendens and related actions or recognition and enforcement of judgments apply to relationships between different contracting states, provided that they concern proceedings pending before courts of different contracting states or judgments delivered by courts of a contracting state with a view to recognition and enforcement thereof in another contracting state, the fact nevertheless remains that the disputes

with which the proceedings or decisions in question are concerned may be international, involving a contracting state and a non-contracting state, and allow recourse, on that ground, to the general rule of jurisdiction laid down by article 2.

30  To counter the argument that article 2 applies to a legal situation involving a single contracting state and one or more non-contracting states, the defendants in the main proceedings and the United Kingdom Government have cited the principle of the relative effect of treaties, which means that the Brussels Convention cannot impose any obligation on states which have not agreed to be bound by it.

31  In that regard, suffice it to note that the designation of the court of a contracting state as the court having jurisdiction on the ground of the defendant's domicile in that state, even in proceedings which are, at least in part, connected, because of their subject matter or the claimant's domicile, with a non-contracting state, is not such as to impose an obligation on that state.

32  The first defendant and the United Kingdom Government have also emphasised, in support of the argument that article 2 of the Brussels Convention applies only to disputes with connections to a number of contracting states, the fundamental objective pursued by the Convention which is to ensure the free movement of judgments between contracting states.

33  The purpose of the fourth indent of article 220 of the EC Treaty (now the fourth indent of article 293 EC), on the basis of which the member states concluded the Brussels Convention, is to facilitate the working of the common market through the adoption of rules of jurisdiction for disputes relating thereto and through the elimination, as far as is possible, of difficulties concerning the recognition and enforcement of judgments in the territory of the contracting states: *Mund & Fester v Hatrex Internationaal Transport* (Case C-398/92) [1994] ECR I-467, 478, para 11. In fact it is not disputed that the Brussels Convention helps to ensure the smooth working of the internal market.

34  However, the uniform rules of jurisdiction contained in the Brussels Convention are not intended to apply only to situations in which there is a real and sufficient link with the working of the internal market, by definition involving a number of member states.  Suffice it to observe in that regard that the consolidation as such of the rules on conflict of jurisdiction and on the recognition and enforcement of judgments, effected by the Brussels Convention in respect of cases with an international element, is without doubt intended to eliminate obstacles to the functioning of the internal market which may derive from disparities between national legal systems on the subject: see, by analogy, as regards harmonisation Directives based on article 95 EC intended to improve the conditions for the establishment and working of the internal market, *Rechnungshof v Österreichischer Rundfunk* (Joined Cases C-465/00 and 138 and 139/01) [2003] ECR I-4989, 5034–5035, paras 41 and 42.

35  It follows from the foregoing that article 2 of the Brussels Convention applies to circumstances such as those in the main proceedings, involving relationships between the courts of a single contracting state and those of a non-contracting state rather than relationships between the courts of a number of contracting states.

A  36  It must therefore be considered whether, in such circumstances, the Brussels Convention precludes a court of a contracting state from applying the forum non conveniens doctrine and declining to exercise the jurisdiction conferred on it by article 2 of that Convention.

*The compatibility of the forum non conveniens doctrine with the Brussels Convention*

B  37  It must be observed, first, that article 2 of the Brussels Convention is mandatory in nature and that, according to its terms, there can be no derogation from the principle it lays down except in the cases expressly provided for by the Convention: see, as regards the compulsory system of jurisdiction set up by the Convention, *Erich Gasser GmbH v MISAT Srl* (Case C-116/02) [2005] 1 QB 1, 35, para 72, and *Turner v Grovit* (Case

C  C-159/02) [2005] 1 AC 101, 113, para 24. It is common ground that no exception on the basis of the forum non conveniens doctrine was provided for by the authors of the Convention, although the question was discussed when the Convention of 9 October 1978 on the Accession of Denmark, Ireland and the United Kingdom was drawn up, as is apparent from the report on that Convention by Professor Schlosser, OJ 1979 C59, p 71, at

D  pp 97–98, paras 77 and 78.

38  Respect for the principle of legal certainty, which is one of the objectives of the Brussels Convention (see, inter alia, *GIE Groupe Concorde v Master of the vessel Suhadiwarno Panjan* (Case C-440/97) [1999] ECR I-6307, 6350, para 23, and *Besix SA v Wasserreinigungsbau Alfred Kretzschmar GmbH & Co KG (Wabag)* (Case C-256/00) [2003] 1 WLR 1113, 1130, para 24), would not be fully guaranteed if the court having

E  jurisdiction under the Convention had to be allowed to apply the forum non conveniens doctrine.

39  According to its Preamble, the Brussels Convention is intended to strengthen in the Community the legal protection of persons established therein, by laying down common rules on jurisdiction to guarantee certainty as to the allocation of jurisdiction among the various national courts before which proceedings in a particular case may be brought: *Besix*, para 25.

F  40  The court has thus held that the principle of legal certainty requires, in particular, that the jurisdictional rules which derogate from the general rule laid down in article 2 should be interpreted in such a way as to enable a normally well-informed defendant reasonably to foresee before which courts, other than those of the state in which he is domiciled, he may be sued: the *GIE Groupe Concorde* case [1999] ECR I-6307, 6350–6351, para 24,

G  and the *Besix* case [2003] 1 WLR 1113, 1130, para 26.

41  Application of the forum non conveniens doctrine, which allows the court seised a wide discretion as regards the question whether a foreign court would be a more appropriate forum for the trial of an action, is liable to undermine the predictability of the rules of jurisdiction laid down by the Brussels Convention, in particular that of article 2, and consequently to undermine the principle of legal certainty, which is the basis of the

H  Convention.

42  The legal protection of persons established in the Community would also be undermined. First, a defendant, who is generally better placed to conduct his defence before the courts of his domicile, would not be able, in circumstances such as those of the main proceedings, reasonably to foresee

before which other court he could be sued. Second, where a plea is raised on the basis that a foreign court is a more appropriate forum to try the action, it is for the claimant to establish that he will not be able to obtain justice before that foreign court or, if the court seised decides to allow the plea, that the foreign court has in fact no jurisdiction to try the action or that the claimant does not, in practice, have access to effective justice before that court, irrespective of the cost entailed by the bringing of a fresh action before a court of another state and the prolongation of the procedural time limits.

43  Moreover, allowing forum non conveniens in the context of the Brussels Convention would be likely to affect the uniform application of the rules of jurisdiction contained therein in so far as that doctrine is recognised only in a limited number of contracting states, whereas the objective of the Brussels Convention is precisely to lay down common rules to the exclusion of derogating national rules.

44  The defendants in the main proceedings emphasise the negative consequences which would result in practice from the obligation the English courts would then be under to try this case, inter alia as regards the expense of the proceedings, the possibility of recovering their costs in England if the claimant's action is dismissed, the logistical difficulties resulting from the geographical distance, the need to assess the merits of the case according to Jamaican standards, the enforceability in Jamaica of a default judgment and the impossibility of enforcing cross-claims against the other defendants.

45  In that regard, genuine as those difficulties may be, suffice it to observe that such considerations, which are precisely those which may be taken into account when forum non conveniens is considered, are not such as to call into question the mandatory nature of the fundamental rule of jurisdiction contained in article 2 of the Brussels Convention, for the reasons set out above.

46  In the light of all the foregoing considerations, the answer to the first question must be that the Brussels Convention precludes a court of a contracting state from declining the jurisdiction conferred on it by article 2 of that Convention on the ground that a court of a non-contracting state would be a more appropriate forum for the trial of the action, even if the jurisdiction of no other contracting state is in issue or the proceedings have no connecting factors to any other contracting state.

*The second question*

47  By its second question, the referring court seeks essentially to know whether, if this court takes the view that the Brussels Convention precludes the application of forum non conveniens, its application is ruled out in all circumstances or only in certain circumstances.

48  According to the order for reference and the observations of the defendants and the United Kingdom Government, that second question is asked in connection with cases involving identical or related proceedings pending before a court of a non-contracting state, or a convention granting jurisdiction to such a court, or a connection with that state of the same type as those referred to in article 16 of the Brussels Convention.

49  The procedure provided for in article 234 EC is an instrument of co-operation between the Court of Justice and national courts by means of which the former provides the latter with interpretation of such Community law as is necessary for them to give judgment in cases on which they

811
**[2005] QB**    Owusu v Jackson (ECJ)
Judgment

*A*  are called to adjudicate: see, inter alia, *Gmurzynska-Bscher v Oberfinanzdirektion Köln* (Case C-231/89) [1990] ECR I-4003, 4017, para 18; *Djabali v Caisse d'Allocations Familiales de l'Essonne* (Case C-314/96) [1998] ECR I-1149, 1162, para 17, and *Bacardi-Martini SAS v Newcastle United Football Co Ltd* (Case C-318/00) [2003] ECR I-905, 932, para 41.

50 Thus, the justification for a reference for a preliminary ruling is not that it enables advisory opinions on general or hypothetical questions to be
*B*  delivered but rather that it is necessary for the effective resolution of a dispute: see, to that effect, *Djabali*, para 19; *Bacardi-Martini*, para 42, and *Azienda Agricola Ettore Ribaldi v Azienda di Stato per gli interventi nel mercato agricolo (AIMA)* (Joined Cases C-480–482, 484, 489–491 and 497–499/00) (not yet reported), 25 March 2004, para 72.

51 In the present case, it is common ground that the factual
*C*  circumstances described in paragraph 48 of this judgment are not the same as those of the main proceedings.

52 Accordingly there is no need to reply to the second question.

*Costs*

53 Since these proceedings are, for the parties to the main proceedings,
*D*  a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court of Justice, other than the costs of those parties, are not recoverable.

On those grounds, the court (grand chamber) rules:
The Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by
*E*  the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland, by the Convention of 25 October 1982 on the Accession of the Hellenic Republic and by the Convention of 26 May 1989 on the Accession of the Kingdom of Spain and the Portuguese Republic, precludes a court of a contracting state from declining the jurisdiction conferred on it by article 2 of that Convention on the ground that a court of a non-contracting state would
*F*  be a more appropriate forum for the trial of the action, even if the jurisdiction of no other contracting state is in issue or the proceedings have no connecting factors to any other contracting state.

MIH

*G*

*H*