# Exhibit T

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                            :

RIO TINTO PLC,                        :
                            :

                Plaintiff,    :     Case No. 14-cv-3042 (RMB) (AJP)
                            :

          - v -           :    **DEFENDANT MAHMOUD THIAM'S**
                            :    **RESPONSES AND OBJECTIONS TO**
VALE, S.A., et al.,             :    **PLAINTIFF'S FIRST SET OF**
                            :    <u>**DOCUMENT REQUESTS**</u>
             Defendants.    :
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       Defendant Mahmoud Thiam, through his undersigned attorneys, pursuant to Fed. R. Civ.

P. 34(b) and the Court's scheduling order by minute entry dated July 28, 2014, hereby responds

to Plaintiff Rio Tinto PLC's ("Rio Tinto") First Set of Document Requests to Mahmoud Thiam,

dated June 30, 2014[1] (the "Requests"), as follows:

<u>**GENERAL OBJECTIONS**</u>

       1.     Thiam objects to the Requests to the extent they seek information that is protected

from disclosure under the attorney-client privilege, the work product doctrine, or any other

applicable law, privilege, rule, or immunity.  By his responses to the Requests, Thiam does not

waive but expressly preserves his attorney-client privilege, work product privilege, and all other

applicable privileges.

---

      [1] On August 15, 2014, Rio Tinto filed an Amended Complaint.  *See* dkt. no. 83.  Counsel for Rio Tinto have represented that Rio Tinto does not intend to withdraw, supplement or otherwise revise the Requests in light of the Amended Complaint.  Accordingly, and for the avoidance of doubt, Thiam responds to the Requests as though they were originally made with reference to the Amended Complaint.

2.      Thiam objects to the Requests to the extent they purport to impose obligations inconsistent with, or beyond, those required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

3.      Thiam objects to the Requests to the extent they purport to impose obligations inconsistent with, or beyond, those required by: (i) the Rule 502(d) Order entered in this action on July 10, 2014 at dkt. no. 61 ("Rule 502(d) Order"); (ii) the Stipulated Protective Order entered in this action on August 12, 2014 at dkt. no. 81 ("Protective Order"); or (iii) the Stipulation and Order Regarding the Production of Electronically Stored Information and Other Materials, entered in this action on August 12, 2014 at dkt. no. 82 ("ESI Protocol").

4.      Thiam objects to Rio Tinto's definitions of terms used in the Requests to the extent these definitions require the disclosure of information beyond the scope of that required under the Federal Rules of Civil Procedure or the Local Rules of this Court.

5.      Thiam objects to the Requests to the extent that responding to the Requests would violate any of Thiam's obligations arising from his role as a Minister of the Government of the Republic of Guinea.

6.      Thiam objects to the Requests to the extent that responding to the Requests would violate any provision of the law of the Republic of Guinea or any other applicable law.

7.      Thiam objects to the Requests to the extent they seek the documents protected from disclosure by the terms of a confidentiality agreement or order.

8.      Thiam objects to the Requests to the extent they seek the production of documents that are not relevant to any claim or defense in this proceeding.

9.      Thiam objects to the Requests to the extent they are overbroad, unduly burdensome, or unlikely to lead to the discovery of admissible evidence.

10.     Thiam objects to the Requests to the extent they are repetitive or seek cumulative documents.

11.     Thiam objects to the Requests to the extent they seek the production of documents that are already in the possession, custody, or control of Rio Tinto.

12.     Thiam objects to the Requests to the extent they seek the production of documents that are not in his possession, custody, or control.

13.     Pursuant to Paragraph 7 of the Instructions in the Requests, Thiam will produce documents in response to the Requests on a rolling basis as they become available.  Following the completion of the document production, Thiam will produce a privilege log consistent with the requirements of Fed. R. Civ. P. 26(b)(5)(A) and Section F of the ESI Protocol.

14.     A response that Thiam will produce responsive documents does not imply that any such documents exist, or that any such documents are in Thiam's possession, custody, or control.

15.     As of the date of these responses and objections, the parties have not moved past the initial pleading phase of the litigation.  Accordingly, Thiam makes these responses and objections subject to, and without waiver of, his rights to: (a) make additional or supplemental responses and objections; and (b) revise, correct, supplement or clarify these responses and objections in accordance with the Federal Rules of Civil Procedure.

16.     Thiam reserves the right to demand the return of any inadvertently produced document consistent with the provisions of the Rule 502(d) Order and Section X of the Protective Order.

17.     These General Objections are incorporated into the responses below as if fully set forth therein.

## RESPONSES TO SPECIFIC DOCUMENT REQUESTS

Document Request No. 1:

All Documents and Communications by, between, or among any of the Defendants relating to the matters alleged in the Complaint.

Response to Document Request No. 1:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; and (v) the request seeks documents that are not relevant to any claim or defense in this proceeding.  Subject to and without waiving his general objections, Thiam will produce all Documents[2] and Communications within his possession, custody or control that are responsive to this request.

Document Request No. 2:

All Documents and Communications concerning Rio Tinto's Concession, the Zogota Project, and/or the Vale-BSGR Transaction.

Response to Document Request No. 2:

Thiam objects to this request on the following grounds: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of other requests, including Document Request No. 1, and therefore seeks

---

[2] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Requests.

duplicative and/or cumulative documents.  Subject to and without waiving his general objections, Thiam will produce all Documents and Communications within his possession, custody or control that are responsive to this request.

Document Request No. 3:

All Documents and Communications concerning your views, opinions, analysis, and conclusions regarding the validity of Rio Tinto's Concession.

Response to Document Request No. 3:

Thiam objects to this request because it is virtually identical to Document Request No. 5 and therefore seeks the production of duplicative and/or cumulative documents.  Thiam therefore refers to his response to Document Request No. 5, *infra*.

Document Request No. 4:

All Documents and Communications you prepared, collected, reviewed, or considered in the course of evaluating Rio Tinto's Concession, and any communication related to any such Document.

Response to Document Request No. 4:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of other requests, including Document Request Nos. 1, 2 and 5, and therefore seeks the production of duplicative and/or cumulative documents.  Subject to and without waiving his general or specific objections, Thiam will produce all responsive Documents and Communications in his possession, custody, or control that concern Rio Tinto's Concession.

Document Request No. 5:

All Documents and Communications concerning your views, opinions, analyses, conclusions, and public statements regarding the validity of Rio Tinto's Concession.

Response to Document Request No. 5:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of other requests, including Document Request Nos. 1, 2 and 4, and therefore seeks duplicative and/or cumulative documents.  Subject to and without waiving his general objections, Thiam will produce all Documents and Communications within his possession, custody or control that are responsive to this request.

Document Request No. 6:

All Documents and Communications relating to any communication between you and (a) any Defendant; (b) Pentler Holdings; (c) Nysco Management Corporation; (d) The Beny Steinmetz Group; (e) Onyx Financial Advisors; (f) Matinda and Co. Limited; (g) Mark Struik; (h) Yossie Tchelet; (i) Dag Cramer; (j) Sandra Merloni-Horemans; (k) David Trafford; (l) Asher Avidan; (m) Patrick Saada; and/or (n) Rio Tinto relating to Simandou.

Response to Document Request No. 6:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of other requests, including Document Request Nos. 1 and 2, and therefore seeks duplicative and/or

6

cumulative documents.  Subject to and without waiving his general objections, and assuming that

the qualifier "relating to Simandou" applies to all Documents and Communications that may be

responsive to this request, Thiam will produce all responsive Documents and Communications in

his possession, custody, or control that concern Simandou.

Document Request No. 7:

      All Documents and Communications relating to any communication regarding Simandou
about (a) any Defendant; (b) Pentler Holdings; (c) Nysco Management Corporation; (d) The
Beny Steinmetz Group; (e) Onyx Financial Advisors; (f) Matinda and Co. Limited; (g) Marc
Struik; (h) Yossie Tchelet; (i) Dag Cramer; (j) Sandra Merloni-Horemans; (k) David Trafford;
(l) Asher Avidan; (m) Patrick Saada; and/or (n) Rio Tinto.

Response to Document Request No. 7:

      Thiam objects to this request to the extent that: (i) the request is vague and ambiguous;

(ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are

already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that

are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are

not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of

other requests, including Document Request Nos. 1, 2 and 6, and therefore seeks duplicative

and/or cumulative documents.  Subject to and without waiving his general objections, and

assuming that the qualifier "regarding Simandou" applies to all Documents and Communications

that may be responsive to this request, Thiam will produce all responsive Documents and

Communications in his possession, custody, or control that concern Simandou.

Document Request No. 8:

      All Documents and Communications concerning the preparation for and attendance at
meetings or discussions with (a) any Defendant; (b) Pentler Holdings; (c) Nysco Management
Corporation; (d) The Beny Steinmetz Group; (e) Onyx Financial Advisors; (f) Matinda and Co.
Limited; (g) Marc Struik; (h) Yossie Tchelet; (i) Dag Cramer; (j) Sandra Merloni-Horemans;
(k) David Trafford; (l) Asher Avidan; (m) Patrick Saada; and/or (n) Rio Tinto relating to
Simandou, and any related correspondence.

Response to Document Request No. 8:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous; (ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of other requests, including Document Request Nos. 1, 2 and 6, and therefore seeks duplicative and/or cumulative documents.  Subject to and without waiving his general objections, and assuming that the qualifier "relating to Simandou" applies to all Documents and Communications that may be responsive to this request, Thiam will produce all responsive Documents and Communications in his possession, custody, or control that concern Simandou.

Document Request No. 9:

All Documents and Communications relating to your traveling on a helicopter or private plane with any BSGR director, officer, employee, representative, agent, or consultant, including Steinmetz, Asher Avidan, Avraham Lev Ran, Michael Noy, Frederic Cilins, Marc Struik, Yossie Tchelet, Dag Cramer, Sandra Merloni-Horemans, David Trafford, and/or Patrick Saada.

Response to Document Request No. 9:

Thiam objects to this request on the following grounds: (i) the request is overbroad and unduly burdensome; (ii) the request seeks documents that are not related to the claims and defenses in this proceeding; (iii) the request is not reasonably calculated to lead to the discovery of admissible evidence; and (iv) the request seeks documents that are not in the possession, custody, or control of Thiam.  Subject to and without waiving his general or specific objections, Thiam will produce all responsive Documents and Communications in his possession, custody or control that concern the allegations in the Amended Complaint.

Document Request No. 10:

All Documents and Communications relating to your receipt of any gift or anything else of value, including the origin and destination of wire transfers, cash payments, and any other payments, from (a) any Defendant; (b) Pentler Holdings; (c) Nysco Management Corporation; (d) The Beny Steinmetz Group; (e) Onyx Financial Advisors; (f) Marc Struik, (g) Yossie Tchelet; (h) Dag Cramer; (i) Sandra Merloni-Horemans; (j) David Trafford; (k) Asher Avidan, and/or (l) Patrick Saada.

Response to Document Request No. 10:

Thiam objects to this request on the following grounds: (i) the request is overbroad and unduly burdensome; (ii) the request seeks documents that are not related to the claims and defenses in this proceeding; (iii) the request is not reasonably calculated to lead to the discovery of admissible evidence; and (iv) the request seeks documents that are not in the possession, custody, or control of Thiam. Subject to and without waiving his general or specific objections, Thiam will produce all responsive Documents and Communications in his possession, custody or control that concern the allegations in the Amended Complaint.

Document Request No. 11:

All Documents and Communications concerning any payments, gifts, gratuities, or anything else of value made by any BSGR director, officer, employee, representative, agent, or consultant, including Steinmetz, to (a) any Defendant; (b) Ibrahima Touré; (c) Moussa Dadis Camara; (d) Lansana Conté; (e) Pentler Holdings; (f) Matinda and Co. Limited; (g) any official, director, officer, employee, agent or representative of the Government of Guinea, its departments, agencies, or instrumentalities, and/or (h) or [sic] any other foreign or government official.

Response to Document Request No. 11:

Thiam objects to this request to the extent that: (i) the request is overbroad and unduly burdensome; (ii) the request seeks documents that are not related to the claims and defenses in this proceeding; (iii) the request is not reasonably calculated to lead to the discovery of admissible evidence; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; and (vi) the request is repetitive of other requests, including Document

9

Request No. 10, and therefore seeks the production of duplicative and/or cumulative documents.

Subject to and without waiving his general or specific objections, Thiam will produce all

responsive Documents and Communications in his possession, custody or control that concern

the allegations in the Amended Complaint.

Document Request No. 12:

All Documents and Communications concerning payments, gifts, gratuities, or anything
else of value made by you to any official, director, employee, agent, or representative of the
Government of Guinea, its departments, agencies, or instrumentalities.

Response to Document Request No. 12:

Thiam objects to this request to the extent that: (i) the request is overbroad and unduly

burdensome; (ii) the request seeks documents that are not related to the claims and defenses in

this proceeding; (iii) the request is not reasonably calculated to lead to the discovery of

admissible evidence; (iv) the request seeks documents that are not in the possession, custody, or

control of Thiam; and (v) the request is repetitive of other requests, including Document Request

Nos. 10 and 11, and therefore seeks the production of duplicative and/or cumulative documents.

Subject to and without waiving his general or specific objections, Thiam will produce all

responsive Documents and Communications in his possession, custody or control that concern

the allegations in the Amended Complaint.

Document Request No. 13:

All Documents and Communications concerning Simandou and/or the Vale-BSGR
Transaction with any governmental entity including the CTRTCM, the United Kingdom's
Serious Fraud Office, the U.S. Department of Justice, Securities and Exchange Commission, or
Internal Revenue Service, France, and Switzerland regarding Simandou.

Response to Document Request No. 13:

Thiam objects to this request to the extent that: (i) the request is vague and ambiguous;

(ii) the request is overly broad and unduly burdensome; (iii) the request seeks documents that are

already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that

are not in the possession, custody, or control of Thiam; (v) the request seeks documents that are

not relevant to the claims and defenses in this proceeding; and (vi) the request is repetitive of

other requests, including Document Request No. 2, and therefore seeks duplicative and/or

cumulative documents.  Subject to and without waiving his general objections, and assuming that

the qualifiers "concerning Simandou and/or the Vale-BSGR Transaction" and "regarding

Simandou" apply to all Documents and Communications that may be responsive to this request,

Thiam will produce all responsive Documents and Communications in his possession, custody,

or control that concern Simandou and/or the Vale-BSGR Transaction.

Document Request No. 14:

      All Documents and Communications concerning Simandou and/or the Vale-BSGR
Transaction provided or produced to any governmental entity, including the CTRTCM, the
United Kingdom's Serious Fraud Office; the U.S. Department of Justice, Securities and
Exchange Commission, or Internal Revenue Service, France, and Switzerland.

Response to Document Request No. 14:

      Thiam objects to this request because it is virtually identical to Document Request No. 13

and therefore seeks the production of duplicative or cumulative documents.  Thiam therefore

refers to his response to Document Request No. 13, *supra*.

Document Request No. 15:

      All Documents and Communications concerning any communication between you and
any other person regarding the destruction of documents relating to any (a) Defendant;
(b) Simandou; (c) the Government of Guinea, its departments, agencies or instrumentalities;
(d) any official, director, employee, agent, or representative of the Government of Guinea, its
departments, agencies, or instrumentalities; (e) Rio Tinto; (f) Pentler Holdings; (g) Nysco
Management Corporation; (h) The Beny Steinmetz Group; (i) Onyx Financial Advisors; and/or
(j) Matinda and Co. Limited.

Response to Document Request No. 15:

Thiam objects to this request to the extent that: (i) the request is overbroad and unduly burdensome; (ii) the request seeks documents that are not related to the claims and defenses in this proceeding; (iii) the request seeks documents that are already in the possession, custody, or control of Rio Tinto; (iv) the request seeks documents that are not in the possession, custody, or control of Thiam; and (v) the request seeks documents that are not relevant to the claims and defenses in this proceeding.  Subject to and without waiving his general or specific objections, Thiam will produce all Documents and Communications in his possession, custody or control that concern the allegations in the Amended Complaint.

Dated:  New York, New York
        September 3, 2014

SULLIVAN & WORCESTER LLP

By: /s/ Paul E. Summit

Paul E. Summit
One Post Office Square
Boston, Massachusetts 02109
Telephone: (617) 338-2488
Facsimile: (617) 338-2880
psummit@sandw.com

Karen E. Abravanel
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3069
Facsimile: (212) 660-3001
kabravanel@sandw.com

*Attorneys for Defendant Mahmoud Thiam*

# Exhibit U

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                             :

RIO TINTO PLC,                          :

                 Plaintiff,       :     Case No. 14-cv-3042 (RMB) (AJP)

                          :

        - v -              :   **DEFENDANT MAHMOUD THIAM'S**
                          :   **RESPONSES AND OBJECTIONS TO**
VALE, S.A., et al.,            :   **PLAINTIFF'S FIRST SET OF**
                          :   <u>**INTERROGATORIES**</u>

           Defendants.      :

                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     Defendant Mahmoud Thiam, through his undersigned attorneys, pursuant to Fed. R. Civ.

P. 33 and the Court's scheduling order by minute entry dated July 28, 2014, hereby responds to

Plaintiff Rio Tinto PLC's ("Rio Tinto") First Set of Interrogatories to Mahmoud Thiam, dated

June 30, 2014[1] (the "Interrogatories"), as follows:

<u>**GENERAL OBJECTIONS**</u>

     1.     Thiam objects to the Interrogatories to the extent they seek information that is

protected from disclosure under the attorney-client privilege, the work product doctrine, or any

other applicable law, privilege, rule, or immunity.  By his responses to the Interrogatories, Thiam

does not waive but expressly preserves his attorney-client privilege, work product privilege, and

all other applicable privileges.

     2.     Thiam objects to the Interrogatories to the extent they purport to impose

obligations inconsistent with, or beyond, those required by the Federal Rules of Civil Procedure.

---

[1] On August 15, 2014, Rio Tinto filed an Amended Complaint.  *See* dkt. no. 83.  Counsel
for Rio Tinto have represented that Rio Tinto does not intend to withdraw, supplement or
otherwise revise the Interrogatories in light of the Amended Complaint.  Accordingly, and for the
avoidance of doubt, Thiam responds to the Interrogatories as though they were originally made
with reference to the Amended Complaint.

3.      Similarly, Thiam objects to the Interrogatories to the extent the purport to impose obligations inconsistent with, or beyond, those required by the Local Rules of this Court.  In particular, since the parties have just commenced discovery in this action, Thiam objects to the Interrogatories to the extent they exceed the scope of questions permitted under Local Rule 33.3(a).  Thiam also objects to the Interrogatories under Local Rule 33.3(b), to the extent there is a more practical method of obtaining the requested information.

4.      Thiam objects to Rio Tinto's definitions of terms used in the Interrogatories to the extent these definitions require the disclosure of information beyond the scope of that required under the Federal Rules of Civil Procedure or the Local Rules of this Court.

5.      Thiam objects to the Interrogatories to the extent that responding to the Interrogatories would violate any of Thiam's obligations arising from his role as a Minister of the Government of the Republic of Guinea.

6.      Thiam objects to the Interrogatories to the extent that responding to the Interrogatories would violate any provision of the law of the Republic of Guinea or any other applicable law.

7.      Thiam objects to the Interrogatories to the extent they seek information protected from disclosure by the terms of a confidentiality agreement or order.

8.      Thiam objects to the Interrogatories to the extent they seek information that is not relevant to any claim or defense in this proceeding.

9.      Thiam objects to the Interrogatories to the extent they are overbroad, unduly burdensome, or unlikely to lead to the discovery of admissible evidence.

10.      Thiam objects to the Interrogatories to the extent they are repetitive and/or seek duplicative or cumulative information.

11.     As of the date of these responses and objections, the parties have not moved past the initial pleading phase of the litigation.  Accordingly, Thiam makes these responses and objections subject to, and without waiver of: (a) Thiam's right to make additional or supplemental objections; and (b) the right to revise, correct, supplement or clarify these responses and objections in accordance with the Federal Rules of Civil Procedure.

12.     These General Objections are incorporated into the responses below as if fully set forth therein.

## RESPONSES TO SPECIFIC INTERROGATORIES

Interrogatory No. 1:

Identify every Person, including every current or former director, officer, employee, representative, agent, or consultant, employed by BSGR or Steinmetz, retained by BSGR or Steinmetz, or acting on BSGR's or Steinmetz's behalf, with whom you had any oral or written communications or any other contact relating to Simandou, the Vale-BSGR Transaction, the Zogota Project, or BSGR's or Steinmetz's efforts to obtain mining rights to Simandou.

Response to Interrogatory No. 1:

Thiam objects to this interrogatory to the extent that: (i) the interrogatory exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the information sought; and (iii) the interrogatory is overly broad and unduly burdensome.  Thiam further objects to this interrogatory to the extent it is repetitive of Interrogatory No. 8, and therefore seeks information that is duplicative or cumulative.  Subject to and without waiving his general or specific objections, Thiam refers to his response to Interrogatory No. 8, *infra*.

Interrogatory No. 2:

Specify every oral or written communication or other contact you have had with Steinmetz, Mamadie Touré, and/or every current or former director, officer, employee, representative, agent, or consultant, employed by BSGR or Steinmetz, retained by BSGR or Steinmetz, or acting on BSGR's or Steinmetz's behalf, including Asher Avidan, Avraham Lev Ran, Michael Noy, Frederic Cilins, Marc Struik, Yossie Tchelet, Dag Cramer, Sandra Merloni-

Goremans, David Trafford, and Patrick Saada relating to Simandou, the Vale-BSGR Transaction, the Zogota Project, or BSGR or Steinmetz's efforts to obtain mining rights at Simandou.

Response to Interrogatory No. 2:

Thiam objects to this interrogatory on the following grounds: (i) the interrogatory exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the information sought; and (iii) the interrogatory is overly broad and unduly burdensome.

Interrogatory No. 3:

For every Person identified in response to Interrogatory No. 2, state which individual the communication or interaction was with, the number of communications or interactions, and the approximate date of each.

Response to Interrogatory No. 3:

Thiam objects to this interrogatory on the following grounds: (i) the interrogatory exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the information sought; and (iii) the interrogatory is overly broad and unduly burdensome.

Interrogatory No. 4:

Identify every person with any knowledge of your communications and contacts with Steinmetz, Mamadie Touré, and every current or former director, officer, employee, representative, agent, or consultant, employed by BSGR or Steinmetz, retained by BSGR or Steinmetz, or acting on BSGR's or Steinmetz's behalf, including Asher Avidan, Avraham Lev Ran, Michael Noy, Frederic Cilins, Marc Struik, Yossie Tchelet, Dag Cramer, Sandra Merloni-Goremans, David Trafford, and Patrick Saada relating to Simandou, the Zogota Project or BSGR or Steinmetz's efforts to obtain mining rights at Simandou.

Response to Interrogatory No. 4:

Thiam objects to this interrogatory to the extent that: (i) the interrogatory exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the information

sought; and (iii) the interrogatory is overly broad and unduly burdensome.  Thiam further objects

to this interrogatory to the extent it is repetitive of Interrogatory No. and 8, and therefore seeks

information that is duplicative or cumulative.  Subject to and without waiving his general or

specific objections, Thiam refers to his response to Interrogatory No. 8, *infra*.

Interrogatory No. 5:

> Identify every person with whom you discussed, or who otherwise have any knowledge
> of, your communications and contacts with the CTRTCM or any other governmental entity,
> including the United Kingdom's Serious Fraud Office, the U.S.'s Department of Justice or
> Securities and Exchange Commission, France, and Switzerland regarding Simandou, the Zogota
> Project and/or the Vale-BSGR Transaction.

Response to Interrogatory No. 5:

> Thiam objects to this interrogatory to the extent that: (i) the interrogatory exceeds the

scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is prohibited under

Local Rule 33.3(b), because there are more practical methods for obtaining the information

sought; and (iii) the interrogatory is overly broad and unduly burdensome.  Thiam further objects

to this interrogatory to the extent it is repetitive of Interrogatory No. 8, and therefore seeks

information that is duplicative or cumulative.  Subject to and without waiving his general or

specific objections, Thiam refers to his response to Interrogatory No. 8, *infra*.

Interrogatory No. 6:

> Identify and describe any meetings involving you and Steinmetz and/or any current or
> former official, director, employee, agent, or representative of BSGR related to Simandou, the
> Zogota Project, and/or the Vale-BSGR Transaction, and for each such meeting or
> communication, provide the date and location of the meeting as well as all participants.

Response to Interrogatory No. 6:

> Thiam objects to this interrogatory on the following grounds: (i) the interrogatory

exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is

prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the

information sought; and (iii) the interrogatory is overly broad and unduly burdensome.

Interrogatory No. 7:

Identify and describe any meetings involving you and any current or former official, director, employee, agent, or representative of Vale related to Simandou and/or the Vale-BSGR Transaction, and for each such meeting or communication, provide the date and location of the meeting as well as all participants.

Response to Interrogatory No. 7:

Thiam objects to this interrogatory on the following grounds: (i) the interrogatory

exceeds the scope of questions permitted under Local Rule 33.3(a); (ii) the interrogatory is

prohibited under Local Rule 33.3(b), because there are more practical methods for obtaining the

information sought; and (iii) the interrogatory is overly broad and unduly burdensome.

Interrogatory No. 8:

Identify every Person, including every former director, officer, employee, representative, agent, or consultant, employed by You, retained by You, or acting on Your behalf, with knowledge relating to the matters alleged in the Complaint.

Response to Interrogatory No. 8:

Thiam objects to this interrogatory to the extent that the interrogatory exceeds the scope

of questions permitted under Local Rule 33.3(a).  Subject to and without waiving his general

objections, and pursuant to his obligations under Local Rule 33.3(a), Thiam provides the

following names of witnesses who may have knowledge of information relevant to the subject

matter of this action:

1. José André Alves

2. Asher Avidan

3. Mathurin Bangoura

4. Boubacar Barry

5.      Stéphane Brabant

6.      Moussa Dadis Camara

7.      Alpha Condé

8.      Olivier Corchia

9.      Dag Cramer

10.     Ismael Diakite

11.     Abubakr Diallo

12.     Steven Din

13.     Habib Diouf

14.     Amadou Dioum

15.     Jean-Marie Doré

16.     Laurent Foucher

17.     Karin Karjian

18.     Kabiné Komara

19.     Aboubacar Koly Kourouma

20.     Papa Koly Kourouma

21.     Fatou Marc

22.     Bangaly Maty

23.     Samuel Mebiame

24.     Saadou Nimaga

25.     Benjamin Steinmetz

26.     Kerfalla Yansane

Dated:  New York, New York
        September 3, 2014

                                       SULLIVAN & WORCESTER LLP

                                         By: /s/ Paul E. Summit_____

                                         Paul E. Summit
                                         One Post Office Square
                                         Boston, Massachusetts 02109
                                         Telephone: (617) 338-2488
                                         Facsimile: (617) 338-2880
                                         psummit@sandw.com

                                         Karen E. Abravanel
                                         1633 Broadway, 32nd Floor
                                         New York, New York 10019
                                         Telephone: (212) 660-3069
                                         Facsimile: (212) 660-3001
                                         kabravanel@sandw.com

                                         *Attorneys for Defendant Mahmoud Thiam*

# Exhibit V

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Rio Tinto plc,

                   Plaintiff,

      -against-

Vale S.A., Benjamin Steinmetz, BSG
Resources Limited, VBG–Vale BSGR Limited
aka BSG Resources (Guinea) Ltd. aka
BSG Resources Guinée Ltd, BSG Resources
Guinée SARL aka BSG Resources (Guinea)
SARL aka VBG-Vale BSGR, Frederic Cilins,
Mamadie Touré, and Mahmoud Thiam,

               Defendants.

14 Civ. 3042 (RMB)

---

## DEFENDANT VALE S.A.'S FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS TO PLAINTIFF

      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule

26.3 of the Local Civil Rules of the United States District Court for the Southern and Eastern

Districts of New York, Defendant Vale S.A. ("Vale") requests that Plaintiff Rio Tinto plc ("Rio

Tinto") produce for examination, inspection and copying, within thirty (30) days of the service

hereof, all documents described below at the offices of Cleary Gottlieb Steen & Hamilton LLP,

One Liberty Plaza, New York, New York 10006, or at such other place or time, or in such other

manner, as the parties mutually agree.

## PRELIMINARY STATEMENT

      Vale has previously taken the position and continues to maintain that no discovery

should be taken or commenced in this action because the Amended Complaint should be

dismissed, *inter alia*, on grounds of *forum non conveniens* and fails to state a claim.

Nonetheless, Vale also recognizes that the Court has directed discovery to commence subject to a motion, made by any Party, for a protective order should the requirements for a protective order be established.  Vale also recognizes that, in order to defend itself against the allegations in the Amended Complaint, should they not be dismissed, it needs discovery from plaintiff. Plaintiff has served discovery on Defendants and Vale would be unduly prejudiced if it did not at the same time serve requests on Plaintiff for the discovery that it requires should this action continue to go forward.  It is in that light, and without prejudice to Vale's position that discovery should be stayed, that Vale serves these requests.  Vale makes these requests without prejudice to, and expressly maintaining, its position that discovery should be stayed with respect to Rio Tinto's requests and will not take the position that discovery should continue should Rio Tinto (or the Court) be prepared to stay discovery pending decision on the motions to dismiss.

## DEFINITIONS

1.     Vale incorporates by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3(c) of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Civil Rules").

2.     "And" and "or," as used herein, shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     "Any," as used herein, means each and every.

4.     "Communicate" or "communication" means all verbal and written means of transmission or exchange of information, including but not limited to statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings and meetings.

5.      "Amended Complaint" means the amended complaint in this action dated August 15, 2014.

6.      "Concern," "evidence," "refer," "relate to," "concerning," "evidencing," "referring," or "relating to" any given subject means all Documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, or refer or relate, directly or indirectly, in any way, to the subject matter identified.

7.      "Data Room" refers to the computer database referenced, *inter alia*, in Paragraph 61 of the Amended Complaint for use during the negotiations between Rio Tinto and Vale in 2008 and 2009 regarding Vale's potential purchase of various Rio Tinto assets.  "Data Room Documents" includes every Document that was uploaded into the Data Room at any time.

8.      "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (including relationship to other events).

9.      "Document(s)" is defined in the broadest possible sense and includes, without limitation, any and all writings, personal notes, electronic mail or "e-mail," cablegrams, telexes, facsimiles, telegrams, studies, calendars, day-timers, diaries, appointment books, agendas, minutes, notes, instructions, demands, schedules, data, notices, drafts, pamphlets, envelopes, voicemail messages, bulletins, photostats, graphs, maps, charts, sketches, diagrams, drawings, plans, specifications, blueprints, forms, manuals, contracts, agreements, appraisals, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries, records or minutes of meetings or conferences, lists, publications, journals, ledgers, memoranda, notepads, notebooks, post cards, "post-it" notes, tabulations, analyses, evaluations, opinions or reports of consultants or experts, projections, work papers, summaries, reports, surveys, studies, logs, message slips, billing records, invoices,

purchase orders, checks (front and back), confirmations, correspondence, letters, interoffice communications, brochures, advertising, packaging or promotional materials, financial or statistical statements or compilations, balance sheets, accounting entries, tax returns, loan documents, publications, articles, books, photographs, video recordings, voice recordings, speeches, transcripts, microfiche, microfilms, films, computer programs, printouts, computer disks or diskettes, hard drives, software, and all recordings made through data processing and/or computer techniques, and the written information necessary to understand and use such materials, and all other written or graphic material of any nature whatsoever, in Plaintiff s possession or control.  A draft or non-identical copy is a separate Document within the meaning of this term.  A Document includes all attachments, whether by staple, clip, rubber band, or binding, and all appended or embedded links or files.

10.     The term "Person" refers to a natural person, a group of natural persons acting as individuals, a group of persons acting in a collegial capacity (e.g., as a committee, board of directors, etc.), a trust, a corporation, a partnership, a limited partnership, a joint venture, a limited liability company, a government or governmental agency and/or any other incorporated or unincorporated business, association, government or entity.

11.     The term "thing" means any tangible object. Any request for or reference to "Documents" is also a request for or reference to "things."

12.     The terms "all" and "each" shall be construed as "all and each."

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.     "Third Party" means any Person other than Vale or Rio Tinto.

15.     "You" or "Your" as used herein means Rio Tinto, as well as any former or current owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, Advisor, consultant or other person(s) purporting to act on Rio Tinto's behalf.

16.     "Rio Tinto" means Rio Tinto and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, employees, agents, attorneys, accountants, and representatives of any of the entities listed above; and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above.

17.     "Advisor" means any and all investment banks, bankers, law firms, lawyers, financial advisors, consulting firms, consultants, public relations person(s), financial advisers and private investigators or investigative firms, including but not limited to advisors appointed pursuant to Rule 3 of the UK Takeover Code and/or the equivalent Australian requirement if applicable, or other parties, persons, or entities, engaged or retained by Rio Tinto. Advisors includes but is not limited to Morgan Stanley, Societe Generale SA, Credit Suisse Group, Rothschild, Macquarie Bank Ltd., J.P. Morgan Cazenove Ltd., Deutsche Bank AG, Allens Arthur Robinson, Linklaters LLP, and any of their predecessors, successors, parents, subsidiaries, divisions, affiliates, and anyone acting or purporting to act on their behalf, including any of their directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

18.     "Restricted List" means all persons authorized to receive non-public information regarding the BHP Billiton Proposal and/or Exchange Offer, including any persons

on an insider list prepared in accordance with Rule 2.8 of the Financial Conduct Authority's

Disclosure and Transparency Rules (or any predecessor rule) or any other rule requiring an issuer

to draw up a list of those persons working for them who have access to inside information

relating directly or indirectly to the issuer.

19.     Any other capitalized terms are used as defined in the Amended

Complaint or in Plaintiff's First Set of Interrogatories to Vale S.A. dated  June 30, 2014.


## INSTRUCTIONS

1.     In addition to following the rules of construction in Rule 26.3(d) of the

Local Civil Rules, whenever necessary to bring within the scope of this Request Documents that

might otherwise be construed to be outside its scope:  (a) the use of a verb in any tense shall be

construed as the use of that verb in all other tenses; and (b)  the use of the feminine, masculine or

neuter genders shall include all genders.

2.     Unless otherwise indicated, the relevant time period for purposes of these

Requests is between January 1, 2006 and April 30, 2014.

3.     All Documents other than ESI shall be produced in the manner in which

they are maintained in the usual course of business.  A request for a Document shall be deemed

to include a request for any and all file folders or binders within which the Document was

contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document

in addition to the Document itself.

4.     All Documents requested herein shall be produced in their entirety, along

with any attachments, drafts, and non-identical copies, including copies that differ due to

handwritten notes or other notes or markings.

5.      Provide all ESI in the form(s) and manner specified in the Stipulation and Order Regarding the Production of Electronically Stored Information and Other Materials, Dkt. No. 82, filed on August 12, 2014.

6.      In the event Plaintiff withholds any Document called for by this Request on the basis of a claim of privilege, Plaintiff shall provide the information required as specified in the Stipulation and Order Regarding the Production of Electronically Stored Information and Other Materials, Dkt. No. 82, filed on August 12, 2014.

7.      If objection is made to any of the Requests, the response shall state whether Documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive Documents will occur notwithstanding such objection.

8.      The use of the singular form of any word includes the plural and vice-versa and shall be construed as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      The present tense includes the past and future tenses.

10.     If any portion of a Document is considered responsive to any request, the request shall be construed as requesting production of the entire Document.

11.     Except when express reference is made to another Paragraph, each Paragraph herein should be construed independently and not by reference to any other Paragraph herein for purpose of limitation.

12.     Any and all examples or descriptions of Documents herein are illustrative only and do not limit the request to those particular Documents or types of Documents, as if it were explicitly noted that such request was "not limited to" the stated examples.

13.     This Request is continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required promptly to serve supplementary responses and produce additional Documents if You obtain further or different information.

## DOCUMENTS REQUESTED

**Request No. 1:**

All Documents concerning the exploration permits granted by the Government of Guinea to Rio Tinto for the purpose of iron ore mining at Simandou as described in Paragraph 36 of the Amended Complaint, including but not limited to Rio Tinto's legal or contractual obligations with respect to the permits, any development milestones Rio Tinto was expected to meet, any agreements or communications concerning a timeline for the completion of Rio Tinto's exploration of Blocks 1, 2, 3, and 4 of Simandou, and Rio Tinto's performance of any obligations pursuant to the permits.  The time period for this Request is February 25, 1997 through April 30, 2014.

**Request No. 2:**

All Documents concerning the mining concession for Simandou Blocks 1, 2, 3 and 4 granted by the Government of Guinea to Rio Tinto on March 30, 2006 as described in Paragraph 37 of the Amended Complaint, including but not limited to Documents relating to Rio Tinto's legal or contractual obligations with respect to exploring, developing, or exploiting Simandou Blocks 1, 2, 3 and 4, any development milestones Rio Tinto was expected to meet, any agreements or communications concerning a timeline for the development and exploitation of the concession, and the assertion in Paragraph 38 of the Amended Complaint that "at all

times" Rio Tinto "met its legal obligations to explore and evaluate the potential for mining ore in Simandou."

**Request No. 3:**

      All Documents concerning Rio Tinto's "invest[ment of] its resources, time, and finances into the exploration and development of the iron ore mining operations at Simandou" between February 1997 and December 2008 as described in Paragraph 38 of the Amended Complaint.

**Request No. 4:**

      All Documents concerning or supporting Your Allegation in Paragraph 55 of the Amended Complaint that "Vale's material omissions and misrepresentations fraudulently induced Rio Tinto to enter into the negotiations and sign a Confidentiality Deed dated September 2, 2008," including but not limited to all documents referring or relating to the Confidentiality Deed, all communications with any Third Party regarding the Confidentiality Deed, and all documents referring or relating to any communications from Vale to You or meetings between You and any director, officer, employee or representative of Vale before the signing of the Confidentiality Deed whether oral or written.

**Request No. 5:**

      All Documents concerning or referring to the proposal first made by BHP Billiton to Rio Tinto on or about November 1, 2007, and reiterated on or about December 12, 2007 ("BHP Billiton Proposal"), involving a proposed acquisition of Rio Tinto in exchange for shares of BHP Billiton, Rio Tinto's strategies to respond to the BHP Billiton Proposal, and Rio Tinto's decision on or about November 8, 2007 to reject that proposal as not being in the best interests of

Rio Tinto's shareholders, including but not limited to Documents also in the custody and control of, in the custody mailbox of, or sent to or from or copied to any of the following: Philip Mitchell, Tom Albanese, Guy Elliot, any persons on the Restricted List, the Board of Directors of Rio Tinto and any member of the Board.

**Request No. 6:**

   All Documents concerning or referring to the offer made by BHP Billiton to the shareholders of Rio Tinto on or about February 6, 2008 for all of the shares in Rio Tinto Limited and Rio Tinto plc ("BHP Billiton Exchange Offer") and/or Rio Tinto's strategies to respond to the BHP Billiton Exchange Offer, including but not limited to Documents also in the custody and control of, in the custody mailbox of, or sent to or from or copied to any of the following: Philip Mitchell, Tom Albanese, Guy Elliot, any persons on the Restricted List, the Board of Directors of Rio Tinto and any member of the Board and any and all Documents sufficient to identify all persons on the Restricted List.

**Request No. 7:**

   All Documents concerning, referring to, or relating to the decision of Rio Tinto and the Board of Rio Tinto not to enter into discussions with BHP Billiton, including but not limited to any materials reviewed by Rio Tinto or the Board of Directors of Rio Tinto regarding defense strategies or alternative transaction proposals with respect to some or all of the assets of Rio Tinto in response to the BHP Billiton Proposal and/or the BHP Billiton Exchange Offer, and any presentations made to the Board of Rio Tinto by consultants and Advisors regarding BHP Billiton and any alternative transaction proposals, including but not limited to Documents also in the custody and control of, in the custody mailbox of, or sent to or from or copied to any of the

following: Philip Mitchell, Tom Albanese, Guy Elliot, any persons on the Restricted List, the

Board of Directors of Rio Tinto and any member of the Board.

**Request No. 8:**

                All Documents, including but not limited to engagement letters, concerning,

referring to, relating to, or constituting communications to Rio Tinto or the Board of Rio Tinto

from any Advisor regarding or in connection with the BHP Billiton Proposal and/or BHP Billiton

Exchange Offer, including but not limited to Documents constituting or concerning

communications with Morgan Stanley, Societe Generale SA, Credit Suisse Group, Rothschild,

Macquarie Bank Ltd., J.P. Morgan Cazenove Ltd., Deutsche Bank AG, Allens Arthur Robinson,

and Linklaters LLP.

**Request No. 9:**

                All Documents concerning, referring to, or relating to any potential transaction

between Rio Tinto and Vale, including but not limited to Project Venice or the project known as

the Venice/Roberta Transaction and any other transaction involving the sale of all or

substantially all of Rio Tinto's assets other than in connection with an internal restructuring

transaction primarily involving Rio Tinto, one or more of its subsidiaries and/or any holding

company formed for the purpose of such transaction wholly owned by persons who were

shareholders of Rio Tinto immediately prior to such transaction.

**Request No. 10:**

                All Documents concerning, referring to, or relating to any transaction or potential

transaction between Rio Tinto and any Third Party that would involve or include the sale or

transfer of all or substantially all of Rio Tinto's non-iron ore assets or the spin-off of such assets

during the period of time from November 2007 to November 2008 (which constitutes the period of time during which BHP Billiton was pursuing the BHP Billiton Proposal and BHP Billiton Exchange Offer), including but not limited to any confidentiality agreements, confidentiality deeds, non-disclosure agreements, or standstill agreements.

**Request No. 11:**

All Documents concerning, relating to, or referring to or constituting final or draft confidentiality agreements, confidentiality deeds, non-disclosure agreements, or standstill agreements with any Third Party regarding the sale of any Rio Tinto assets during the period of time from November 2007 to November 2008 (which constitutes the period of time during which BHP Billiton was pursuing the BHP Billiton Proposal and BHP Billiton Exchange Offer) and any documents regarding any actual or potential transaction with such Third Party.

**Request No. 12:**

All Documents concerning the decision by Rio Tinto's Board of Directors to reject the BHP Billiton Proposal in or around November 2007 or otherwise considered in determining Rio Tinto's strategy in responding to the BHP Billiton Proposal or BHP Billiton Exchange Offer, including whether to engage in negotiations with Vale as a means of defending Rio Tinto against or otherwise resisting the BHP Billiton Proposal or BHP Billiton Exchange Offer.

**Request No. 13:**

All Documents concerning the Government of Guinea's revocation of Rio Tinto's rights to Simandou Blocks 1 and 2 in or around July 2008 and confirmation of that revocation in or around December 2008 and again in or around February 2009, including but not limited to all

communications with the Government of Guinea concerning Rio Tinto's performance of its legal

or contractual obligations or Your meeting milestones with respect to exploring, developing or

exploiting Simandou Blocks 1, 2, 3 and 4, all internal communications regarding the

Government of Guinea's actions with respect to Simandou Blocks 1 and 2, all Documents

relating to any negotiations between Rio Tinto and the Government of Guinea regarding the

Government of Guinea's decision to revoke and/or rescind Rio Tinto's rights to Simandou

Blocks 1 and 2, all Documents relating to any dispute or actual or potential litigation between

Rio Tinto and the Government of Guinea or any representative of the Government of Guinea

regarding the revocation of Rio Tinto's rights to Simandou Blocks 1 and 2, and all Documents

concerning any allegation that Rio Tinto willfully delayed progress on developing Simandou.

**Request No. 14:**

All Documents regarding or constituting communications between Rio Tinto and

any Third Party relating to Rio Tinto's rights to Simandou Blocks 1 and 2, including but not

limited to any communications related to discussions between Chinese officials and Guinean

President Alpha Conte at or around the time of the China-Africa Co-operation Summit in Beijing

in November 2006.

**Request No. 15:**

All Documents supporting, providing a basis for, or concerning the allegation in

Paragraph 48 of the Amended Complaint that "prior to the formation of the RICO enterprise in

the United States, Defendants Steinmetz, BSGR (including through the acts of unnamed co-

conspirators Lev Ran and Noy), Cilins, and Touré already were actively engaging in bribery and

corruption in an effort to gain control of the Simandou Concession."

**Request No. 16:**

        All Documents supporting, providing a basis for, or concerning the allegation in Paragraph 53 of the Amended Complaint that "[i]n 2008, Vale made the strategic decision to gain control of Simandou at any cost," and "devised and pursued a two-front attack on Rio Tinto's Simandou Concession."

**Request No. 17:**

        All Documents supporting, providing a basis for, or concerning the allegations in Paragraph 54 of the Amended Complaint that "beginning in 2008, [Vale] was also in discussions with the Government of Guinea" and "was evaluating and considering Defendants Steinmetz and BSGR as possible partners."

**Request No. 18:**

        All Documents relating to the construction of a railway for the purpose of transporting iron ore from Simandou, including but not limited to any studies concerning the benefits of various options for the railway route, either through Liberia, via a trans-Guinean railway, or any other considered routes, and Rio Tinto's conclusion, as alleged in Paragraph 72 of the Amended Complaint, that "a railway through Liberia was a far more viable option for transporting mined ore from Simandou."

**Request No. 19:**

        All Documents relating to Rio Tinto's proposal to export iron ore from Simandou through a port at Didia, Liberia, including but not limited to Rio Tinto's determination that Didia was "the ideal port location for transporting the Simandou ore to market" as alleged in Paragraph 73 of the Amended Complaint.

**Request No. 20:**

All Documents relating to any information shared by You with any Third Party other than Vale or its representatives (including but not limited to the Government of Guinea or its representatives) from February 1997 to April 2010 relating to railway or port options for exporting iron ore from Simandou or to geological data regarding Simandou, including but not limited to geological data acquisition, geological modeling and mapping, precise coordinates for the top mining targets, Rio Tinto's estimates of the total resource potential for Simandou, and Rio Tinto's plans to export iron ore through Liberia at Didia or any other Liberian port.

**Request No. 21:**

All Documents relating to Rio Tinto's negotiations with any Third Party regarding any transaction that would include or involve Simandou (or any of Rio Tinto's rights with respect to Simandou) from 2006 to the present, including but not limited to negotiations with:  (a) Vale, (b) BHP Billiton, and (c) the Aluminum Corporation of China ("Chinalco").

**Request No. 22:**

All Documents relating to negotiations between Rio Tinto and Vale from in or around May 2008 to June 2009, including but not limited to meetings in August 2008 between representatives from Vale and Rio Tinto, including Philip Mitchell and Pedro Rodrigues, meetings in November and December 2008 and January 2009 as alleged in Paragraphs 64 and 84 of the Amended Complaint, a phone call on February 4, 2009 as alleged in Paragraph 96 of the Amended Complaint, and a workshop in Perth, Australia in May 2009, including but not limited to any meeting minutes, presentations made at any meetings, Documents concerning Rio Tinto's decision in or around November 2008 to include its mining rights to Simandou as a subject of the

already ongoing negotiations between Rio Tinto and Vale, Documents informing Vale of the status of its rights to Simandou during the negotiations, Rio Tinto's valuation of its Simandou rights during the negotiations, the drafting and/or negotiation of the Confidentiality Deed that Rio Tinto sent to Vale on August 8, 2008, and the Data Room Access Agreement, and Rio Tinto's decision to suspend its negotiations with Vale in June 2009 or the suspension of the negotiations generally.

**Request No. 23:**

All Documents relating to the "highly confidential and proprietary information regarding the Simandou Concession" that Rio Tinto allegedly shared with Vale as described in Paragraph 56 of the Amended Complaint, or supporting the allegation that such information was "highly confidential and proprietary," including but not limited to Documents relating to any measures Rio Tinto took to preserve the confidentiality of such information, Documents relating to the value of such information, Documents relating to the sharing of such information with any Third Party, and Documents relating to Your allegation in Paragraph 57 of the Amended Complaint that information was "known only to a small number of Rio Tinto's employees."

**Request No. 24:**

All Documents relating to the Data Room referenced in Paragraph 61 of the Amended Complaint, including but not limited to all Documents, logs, reports, indices, or other data from the Data Room, including metadata, reflecting each Person who had access to the Data Room during the period it was in operation, the data each Person accessed and the time of access and identity of data accessed by such Person, the contents of the Data Room at all times, all

indices cataloguing the Data Room Documents, and all documents  identifying when data was uploaded to or downloaded from the Data Room and by whom this was done.

**Request No. 25:**

   All Documents relating to, supporting or concerning Your allegation that Rio Tinto and Vale met on December 10, 2008 and that Rio Tinto gave a tour of Simandou to Vale as described in Paragraph 85 of the Amended Complaint.

**Request No. 26:**

   All Documents supporting, providing a basis for, evidencing, or otherwise concerning the allegation in Paragraph 167 of the Amended Complaint that Vale made false representations to Rio Tinto, that Vale's interest in Simandou as expressed in the January 29, 2009 letter of intent was a "false representation," that Vale "express[ed] an interest in purchasing some or all of Rio Tinto's rights to Simandou" during a February 4, 2009 telephone call and that such expression was "false."

**Request No. 27:**

   All Documents supporting, providing a basis for, evidencing, or otherwise concerning the allegation that the January 29, 2009 letter of intent, as alleged in Paragraph 167(a) of the Amended Complaint, was posted through the U.S. mails.

**Request No. 28:**

   All Documents supporting, providing a basis for, evidencing, or otherwise concerning the allegation in Paragraph 14 of the Amended Complaint that the Defendants "utilized the confidential information and technical know-how they had misappropriated from

Rio Tinto to develop and exploit Simandou for their joint benefit,"  including  all Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 87 of the Amended Complaint that Vale "improperly divulged" Rio Tinto's confidential information to BSGR.

**Request No. 29:**

        All Documents supporting, providing a basis for, evidencing, or otherwise concerning the allegations contained in Paragraph 86 of the Amended Complaint that Vale and BSGR held a meeting in December 2008 to discuss Simandou Blocks 1 and 2.

**Request No. 30:**

        All Documents supporting, providing a basis for, evidencing, or otherwise concerning the allegations in Paragraph 78 of the Amended Complaint that Vale was "well aware of allegations of BSGR's reputation for corruption and bribery" in November 2008, and in Paragraphs 88 and 90 of the Amended Complaint that Vale "knew or should have known" that BSGR was bribing Government of Guinea officials in December 2008.

**Request No. 31**:

        All documents supporting, providing a basis for, evidencing, or otherwise concerning the allegations in Paragraph 47 of the Amended Complaint that Vale applied for and was denied a mining permit for a concession described as Simandou "North," including but not limited to all documents supporting the statement that Vale was "entitled to the concession under Guinean law," and that "Vale's application was denied in favor of BSGR," and the assertion that, as a result, the "North episode taught Vale an important lesson about BSGR's ability to get things done in Guinea" that influenced Vale's participation in the alleged conspiracy.

**Request No. 32:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 91 of the Amended Complaint that, in December 2008, Vale and BSGR met with the Government of Guinea and presented information that "Vale stole during the confidential negotiations."

**Request No. 33:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 102 of the Amended Complaint that at the end of January 2009 "Vale met again with BSGR in Conakry to discuss the progress of the conspiracy to steal Rio Tinto's Simandou Concession."

**Request No. 34:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 102 of the Amended Complaint that on March 1, 2009 "Mark Struik (who was then BSGR's Chief Operating Officer and currently is the CEO of its Mining and Metals Division) and a representative of Vale met in Dakar, Senegal to discuss the conspiracy."

**Request No. 35:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 103 of the Amended Complaint that "[b]etween March 19, 2009 and March 25, 2009, there were several meetings between Vale and BSGR in Guinea to discuss the details of their business relationship."

**Request No. 36:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 15 of the Amended Complaint that Vale or BSGR "utilized the confidential information and technical know-how they had misappropriated from Rio Tinto" in order to develop Simandou Blocks 1 and 2.

**Request No. 37:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the assertion in Paragraph 13 of the Amended Complaint that "beginning in January of 2009 and continuing through June 2009, Defendants Vale, Steinmetz, BSGR, and Thiam met and communicated on multiple occasions in furtherance of their conspiracy."

**Request No. 38:**

All Documents relating to Rio Tinto's efforts to develop Simandou Blocks 3 and 4 in accordance with its legal and contractual obligations after December 2008, including but not limited to development of railways and mining infrastructure, or any further studies related to the development of Simandou Blocks 3 and 4.

**Request No. 39:**

All Documents supporting, providing a basis for, evidencing, or otherwise concerning the statements in Paragraph 146 of the Amended Complaint that "Rio Tinto was genuinely shocked that Vale and BSGR were doing business together" and that "Rio Tinto exercised due diligence" and "conducted a lengthy investigation" of the facts.

**Request No. 40:**

All Documents relating to Rio Tinto's negotiations with the Government of Guinea from December 2008 to April 17, 2014 regarding Simandou, including but not limited to any attempts by Rio Tinto to regain rights to Blocks 1 and 2 and to Rio Tinto's settlement with the Government of Guinea on April 22, 2011 that allowed it to retain Simandou Blocks 3 and 4.

**Request No. 41:**

All Documents relating to Rio Tinto's surveillance of and/or interaction with BSGR's and/or VBG's operations at Simandou Blocks 1 and 2 from or after December 2008, including but not limited to any reports, complaints, or other communications to the Government of Guinea regarding those operations.

**Request No. 42:**

All Documents relating to any threats by Rio Tinto to sue or otherwise bring legal action against or with respect to any of the Defendants including but not limited to BSGR and/or Vale (or any of their representatives or agents) in relation to Simandou in 2008, 2009 and/or 2010 or any consideration by Rio Tinto whether to bring any legal action against any of the Defendants, including but not limited to any communications with counsel or regarding counsel.

**Request No. 43:**

For each and every quarter from March 2006 to present, all Documents reflecting or relating to Rio Tinto's estimates of reserves and/or capitalization of expenses with respect to Simandou, or the good will associated with Simandou (or impairment of such good will) as reflected in Rio Tinto's financial statements, including but not limited to all Documents provided to Rio Tinto's outside auditors (PricewaterhouseCoopers) or received from such auditors

referring or relating to Simandou or the reserves, expenses, protected revenues and profits, and good will associated with Simandou

**Request No. 44:**

All Documents constituting or referencing or relating to communications with investors or potential investors in Rio Tinto or in any equity or debt of Rio Tinto that reference Simandou or iron ore estimates, expenses, projected costs revenues and profits, or good will associated with Simandou, including but not limited to all Documents constituting or referencing or relating to information about Simandou or the iron ore estimates, expenses, projected costs, revenues, and profits of Simandou provided or to be provided in connection with Rio Tinto debt or equity offerings from March 2006 to the present.

**Request No. 45:**

All Documents relating to communications between Rio Tinto and the International Finance Corporation regarding Simandou from March 2006 to the present, including but not limited to any documents related to any decision by the International Finance Corporation whether to investigate or take any action regarding the revocation of Rio Tinto's rights to Simandou Blocks 1 and 2.

**Request No. 46:**

All document retention policies, practices and procedures, created, implemented, in place, or under consideration for Rio Tinto, including but not limited to document preservation notices issued in relation to Your allegations that Vale fraudulently induced Rio Tinto to sign the Confidentiality Deed and that Rio Tinto would not have signed the Confidentiality Deed but for the "material omissions and misrepresentations" by Vale, that Vale and/or BSGR

misappropriated or stole Rio Tinto's confidential information, and that Defendants stole Rio

Tinto's rights to Simandou.

**Request No. 47:**

        All Documents identified in Your answers to Vale's First Set of Interrogatories or

relating to or supporting Your answers to those Interrogatories.

Dated: New York, New York
        September ~3~ , 2014

                          Respectfully submitted,

                          CLEARY GOTTLIEB STEEN & HAMILTON LLP

                          By: _____
                               Lewis J. Liman
                               Jonathan I. Blackman
                               Boaz S. Morag

                          One Liberty Plaza
                          New York, New York  10006
                          T: 212-225-2000
                          F: 212-225-3999
                          lliman@cgsh.com
                          jblackman@cgsh.com

                          *Attorneys for Defendant Vale S.A.*

TO:    William A. Burck
        Michael J. Lyle
        Eric C. Lyttle
        Stephen M. Hauss
        QUINN EMANUEL URQUHART & SULLIVAN, LLP
        777 6th Street, NW, 11th Floor
        Washington, D.C. 20001
        Telephone: (202) 538-8000
        Facsimile: (202) 538-8100
        williamburck@quinnemanuel.com
        mikelyle@quinnemanuel.com

# Exhibit W

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>                    Plaintiff,<br><br>        -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG<br>Resources Limited, VBG–Vale BSGR Limited<br>aka BSG Resources (Guinea) Ltd. aka<br>BSG Resources Guinée Ltd, BSG Resources<br>Guinée SARL aka BSG Resources (Guinea)<br>SARL aka VBG-Vale BSGR, Frederic Cilins,<br>Mamadie Touré, and Mahmoud Thiam,<br><br>                    Defendants. | 14 Civ. 3042 (RMB) |

**DEFENDANT VALE S.A.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 33.3 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendant Vale S.A. ("Vale") requests that Plaintiff Rio Tinto plc ("Rio Tinto") answer the following interrogatories (the "Interrogatories") under oath, and separately and fully in writing, within 30 days of service hereof.

## PRELIMINARY STATEMENT

Vale has previously taken the position and continues to maintain that no discovery should be taken or commenced in this action because the Amended Complaint should be dismissed, *inter alia*, on grounds of *forum non conveniens* and fails to state a claim. Nonetheless, Vale also recognizes that the Court has directed discovery to commence subject to a motion, made by any Party, for a protective order should the requirements for a protective

order be established.  Vale also recognizes that, in order to defend itself against the allegations in

the Amended Complaint, should they not be dismissed, it needs discovery from plaintiff.

Plaintiff has served discovery on Defendants and Vale would be unduly prejudiced if it did not at

the same time serve requests on Plaintiff for the discovery that it requires should this action

continue to go forward.  It is in that light, and without prejudice to Vale's position that discovery

should be stayed, that Vale serves these interrogatories.  Vale makes these requests without

prejudice to, and expressly maintaining, its position that discovery should be stayed with respect

to Rio Tinto's interrogatories and will not take the position that discovery should continue should

Rio Tinto (or the Court) be prepared to stay discovery pending decision on the motions to

dismiss.

## DEFINITIONS

1.      Vale incorporates by reference herein the Uniform Definitions in

Discovery Requests set out in Rule 26.3 of the Local Civil Rules of the United States District

Court for the Southern District of New York (the "Local Civil Rules").

2.      "And" and "or," as used herein, shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

3.      "Any," as used herein, means each and every.

4.      "Communicate" or "communication" means all verbal and written means

of transmission or exchange of information, including but not limited to statements, admissions,

denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings

and meetings.

2

5.      "Amended Complaint" means the amended complaint in this action dated August 15, 2014.

6.      "Concern," "evidence," "refer, "relate to," "concerning," "evidencing," "referring," or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, or refer or relate, directly or indirectly, in any way, to the subject matter identified.

7.      "Data Room" refers to the computer database referenced, *inter alia*, in Paragraph 61 of the Amended Complaint for use during the negotiations between Rio Tinto and Vale in 2008 and 2009 regarding Vale's potential purchase of various Rio Tinto assets.  "Data Room Documents" includes every Document that was uploaded into the Data Room.

8.      "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (including in relation to other events).

9.      "Document(s)" shall have the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure and for purposes of these Interrogatories shall be deemed to include "electronically stored information" ("ESI") as also defined in Rule 34.  Examples of documents include, but are not limited to, all writings in any form, calendars, correspondence, diaries, manuals, memoranda, notes, reports, records, drawings, graphs, charts, photographs, sound recordings, images, video recordings, telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets, databases, all other forms of electronic communication, and other data or data compilations of whatever nature stored in any medium (including those from which information can be obtained or translated if necessary into a reasonably useable form).  For the avoidance of doubt, document(s) shall include all originals of

any nature whatsoever and all non-identical copies thereof, whether different from the originals

by reason of any notation made on such copies or otherwise.

10.  "Identify" means the response must state:

(a)  when referring to an oral communication, the date, subject matter, communicator, recipient of the communication, nature of the communication, whether it was recorded, and identity of any witness thereto;

(b)  when referring to a document, the type of document (e.g. letter, memorandum, email, excel chart, etc.), date, author or originator, addressee(s), signatories, title or subject matter, present location, and the name and address of the current custodian of such document or, if unknown, the present custodian of any copy thereof and the last known address of each such custodian;

(c)  when referring to a person, to the extent known, the person's full name, present or last known complete address, and, in addition, when referring to a natural person, the person's present or last known place of employment or business affiliation (including complete address), position, and the person's place of employment during the relevant time period, defined in the Instructions below.

11.  "Person" means a natural person, a group of natural persons acting as

individuals, a group of persons acting in a collegial capacity (e.g., as a committee, board of

directors, etc.), a trust, a corporation, a partnership, a limited partnership, a joint venture, a

limited liability company, a government or governmental agency and/or any other incorporated

or unincorporated business, association, government or entity.

12.  "You" or "Your" as used herein means Rio Tinto, as well as any former or

current owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate,

predecessor, successor, attorney, accountant, representative, or other person(s) purporting to act

on Rio Tinto's behalf.

13.  "Rio Tinto" means Rio Tinto and each of its divisions, subsidiaries,

affiliates, controlled entities, joint ventures, related companies, predecessors, successors and

4

assigns; and present and former officers, directors, employees, agents, attorneys, accountants, and representatives of any of the entities listed above; and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above.

14.     Any other capitalized terms are used as defined in the Amended Complaint or in Plaintiff's First Set of Interrogatories to Vale S.A. dated  June 30, 2014.

## INSTRUCTIONS

1.     Each Interrogatory operates and shall be responded to independently, and unless otherwise indicated, no Interrogatory limits the scope of any other interrogatory.

2.     If an objection is made to any part of an Interrogatory, the response shall state that there is an objection to the Interrogatory and the legal and factual basis for such objection.

3.     No part of an Interrogatory shall be left unanswered merely because an objection is made to another part of the Interrogatory.

4.     If any Interrogatory demands an answer that Rio Tinto claims may be withheld due to privilege, work product or any other privilege or immunity from disclosure, Rio Tinto shall answer any portion of the Interrogatory that is not subject to such a claim, and shall indicate with specificity and particularity the basis of said withholding, including:

      (a)     the identity of the person(s) having knowledge of the information;

      (b)     the identity of all persons to whom the information was communicated or otherwise made available;

      (c)     the job title or position of every person identified in response to subparagraphs (a) and (b);

      (d)     the date(s) on which the information was received or became known by each person having knowledge of its existence;

(e)     a brief description of the nature and subject matter of the information; and

(f)     the statute, rule or decision that is claimed to give rise to the privilege.

5.     If the response to any Interrogatory consists in whole or in part of an objection based upon undue burden, then with respect to such response: (a) provide such information as can be ascertained without undue burden; and (b) state with particularity the basis for such objection, including a description of the process or method required to obtain the response to the Interrogatory and the estimated cost and time required to obtain the response to the Interrogatory.

6.     If Rio Tinto cannot answer any Interrogatory in full after exercising due diligence to secure the information to do so, please so state and answer the Interrogatory to the extent possible, explaining any inability to answer the remainder of any such Interrogatory and stating all information or knowledge presently available to Rio Tinto concerning the unanswered portion of said Interrogatory.

7.     Unless otherwise indicated, the relevant time period for purposes of these Interrogatories is between February 25, 1997 and April 30, 2014.

8.     In addition to following the rules of construction in Rule 26.3 of the Local Civil Rules, whenever necessary to bring within the scope of the Interrogatory responses that might be otherwise construed outside to be outside their scope, construe:

(a)     the use of the singular form of any word as including the plural and vice versa;

(b)     the use of a verb in any tense as the use of that verb in all other tenses; and

(c)     the use of the feminine, masculine or neuter genders as including all genders.

9.      The Interrogatories are continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required promptly to serve supplementary responses and produce additional documents if You obtain further or different information.

**INTERROGATORIES**

**Interrogatory No. 1:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 13 of the Amended Complaint that "beginning in January of 2009 and continuing through June 2009," Vale, BSGR, and Mahmoud Thiam "met and communicated" with Beny Steinmetz on "multiple occasions in furtherance of their conspiracy."

**Interrogatory No. 2:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 15 of the Amended Complaint that "[f]rom 2010 to 2013, Defendants and their co-conspirators utilized the confidential information and technical know-how they had misappropriated from Rio Tinto to develop and exploit Simandou for their joint benefit."

**Interrogatory No. 3:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 38 of the Amended Complaint that "at

7

all times during its development, Rio Tinto met its legal obligations to explore and evaluate the potential for mining iron ore at Simandou."

**Interrogatory No. 4:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 48 of the Amended Complaint that "prior to the formation of the RICO enterprise in the United States, Defendants Steinmetz, BSGR (including through the acts of unnamed co-conspirators Lev Ran and Noy), Cilins, and Touré already were actively engaging in bribery and corruption in an effort to gain control of the Simandou Concession."

**Interrogatory No. 5:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 54 of the Amended Complaint that, "in 2008, Vale . . . was evaluating and considering Defendants Steinmetz and BSGR as possible partners to pursue Rio Tinto's Simandou Concession."

**Interrogatory No. 6:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 56 of the Amended Complaint that, at the time Rio Tinto signed the Confidentiality Deed, "Vale was in discussions with the Government of Guinea for the Simandou Concession."

**Interrogatory No. 7:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 57 of the Amended Complaint that the "information requested by Vale, which Rio Tinto ultimately provided, was confidential and proprietary and known only to a small number of Rio Tinto's employees."

**Interrogatory No. 8:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 78 of the Amended Complaint that "[t]hose active in the Guinean mining industry . . . were well aware of allegations of BSGR's reputation for corruption and bribery since it began conducting business in the country."

**Interrogatory No. 9:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 86 of the Amended Complaint that "a meeting between Vale and BSGR occurred in December 2008."

**Interrogatory No. 10:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 87 of the Amended Complaint that "[d]uring its discussions with Steinmetz and BSGR, Vale improperly divulged the confidential

information it had obtained from Rio Tinto at the November 24, 2008 meeting and from the Data Room regarding the technical and geological information necessary for any development at Simandou."

**Interrogatory No. 11:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 88 of the Amended Complaint that "Vale knew that Steinmetz and BSGR … were paying bribes to steal Rio Tinto's Simandou Concession."

**Interrogatory No. 12:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 91 of the Amended Complaint that "[i]n December 2008, Vale and BSGR met with the Guinean Government to propose a potential Vale-BSGR joint venture to develop Simandou Blocks 1 and 2."

**Interrogatory No. 13:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 102 of the Amended Complaint that the meeting that allegedly occurred in January 2009 "was followed by another meeting on March 1, 2009 when Mark Struik (who was then BSGR's Chief Operating Officer and currently is the CEO of its Mining and Metals Division) and a representative of Vale met in Dakar, Senegal to

10

discuss the conspiracy," and that, "Struik and the Vale representative discussed how the costs for the conspiracy would be divided up, specifically that BSGR would be able to finance initial survey and sampling costs, but would need help with the railway and exporting the iron ore."

**Interrogatory No. 14:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 55 of the Amended Complaint that "Vale's material omissions and misrepresentations fraudulently induced Rio Tinto to . . . sign a Confidentiality Deed dated September 2, 2008 (the 'Confidentiality Deed') with Vale."

**Interrogatory No. 15:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 1 of the Amended Complaint that "Rio Tinto had spent eleven years and hundreds of millions of dollars developing mining operations at Simandou and expected it to yield substantial profits into the future."

**Interrogatory No. 16:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 5 of the Amended Complaint that "The Rio Tinto-Vale negotiations began in person with two key meetings in New York in November 2008."

**Interrogatory No 17:**

        Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 38 of the Amended Complaint that Rio Tinto invested "its resources, time, and finances into the exploration and development of the iron ore mining operations at Simandou."

**Interrogatory No. 18:**

        Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 56 of the Amended Complaint that had Rio Tinto "known that Vale was in discussions with the Government of Guinea for the Simandou Concession or that Vale was considering and evaluating Defendants Steinmetz and BSGR as potential partners, it never would have . . . signed the confidentiality agreement."

**Interrogatory No. 19:**

        Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 167 of the Amended Complaint that "Vale made false representations to Rio Tinto regarding its interest to purchase Simandou."

**Interrogatory No. 20:**

        Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that

evidence, reflect, or support Your allegation in Paragraph 159 of the Amended Complaint that "in 2008 . . . BSGR, Steinmetz, and Vale met to discuss the proprietary information Vale learned from Rio Tinto and conspired to obtain further confidential information through false pretenses."

**Interrogatory No. 21:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 175 of the Amended Complaint that "Defendants Steinmetz, BSGR, and Cilins, and others acting at their instruction, made illegal payments to, and improperly influenced, one or more senior officials in Guinea, including Defendant Thiam."

**Interrogatory No. 22:**

Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 146 of the Amended Complaint that "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence in pursuing discovery of the claims asserted" in the Amended Complaint and that "Rio Tinto conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou. But Rio Tinto's efforts were stymied due to the concealed and intricate nature of the RICO enterprise."

**Interrogatory No. 23:**

        Identify each Person having knowledge or information concerning each category, and amount per each category, of any purported damages suffered by Rio Tinto, and the computation of such purported damages.

Dated: New York, New York
      September 3, 2014

                                  Respectfully submitted,

                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                By: _____
                                     Lewis J. Liman
                                   Jonathan I. Blackman
                                   Boaz S. Morag

                                One Liberty Plaza
                                New York, New York  10006
                                T: 212-225-2000
                                F: 212-225-3999
                                lliman@cgsh.com
                                jblackman@cgsh.com

                                *Attorneys for Defendant Vale S.A.*

TO:   William A. Burck
      Michael J. Lyle
      Eric C. Lyttle
      Stephen M. Hauss
      QUINN EMANUEL URQUHART & SULLIVAN, LLP
      777 6th Street, NW, 11th Floor
      Washington, D.C. 20001
      Telephone: (202) 538-8000
      Facsimile: (202) 538-8100
      williamburck@quinnemanuel.com
      mikelyle@quinnemanuel.com
      ericlyttle@quinnemanuel.com
      stephenhauss@quinnemanuel.com

      *Attorneys for Rio Tinto plc*