UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>Plaintiff,<br><br>v.<br><br>Vale S.A., Benjamin Steinmetz, BSG Resources Limited, VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,<br><br>Defendants. | Civil Action No. 14-cv-3042 (RMB) (AJP) |

## PLAINTIFF RIO TINTO PLC'S OPPOSITION
## TO DEFENDANTS' MOTION TO STAY DISCOVERY

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................4

I.     THE COURT HAS CONSISTENTLY AND REPEATEDLY REJECTED
DEFENDANTS' ARGUMENTS AND DELAY TACTICS ..............................................4

II.     THIS COURT ALREADY ORDERED THAT JURISDICTIONAL
DISCOVERY HAS TO GO FORWARD ...........................................................................6

ARGUMENT ......................................................................................................................7

I.     DEFENDANTS FAIL TO ESTABLISH THAT DISCOVERY IS SO BROAD
AND BURDENSOME THAT A STAY IS APPROPRIATE .............................................7

    A.     The Outstanding Discovery is Properly Tailored to this Litigation .......................8

    B.     It is No Additional Burden to Produce Documents That Defendants Have
Already Provided or Will Provide to Governmental Authorities .........................10

    C.     This Discovery is Necessary Whether the Case Proceeds Here or in
England ...............................................................................................................11

II.     RIO TINTO WILL BE PREJUDICED BY A FULL STAY OF DISCOVERY ..............14

    A.     There is Nothing Short About the Stay Defendants Seek in this Case .................14

    B.     BSGR and Steinmetz Improperly Seek to Stay Jurisdictional Discovery ............15

III.     DEFENDANTS' MOTIONS TO DISMISS LACK MERIT ...........................................17

    A.     Defendants Continue to Oversell Their Forum Non Conveniens Motion ............17

    B.     Defendants' Anticipated 12(b)(6) Motion Will Fail ............................................21

    C.     BSGR's and Steinmetz's Anticipated Rule 12(b)(2) Motion Lacks Merit ...........24

CONCLUSION ...................................................................................................................25

i

## TABLE OF AUTHORITIES

### Cases

*Angermeir v. Cohen,*
_ F. Supp. 2d _, 2014 WL 1613016 (S.D.N.Y. Mar. 27, 2014)................................25

*Anti-Monopoly Inc. v. Hasbro, Inc.,*
No. 94-cv-2120(LMM)(AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) ....................12, 13

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006)................................................................23

*Chevron Corp. v. Aguinda*
No. 11-cv3718 (LAK), 2011 WL 220755 (S.D.N.Y. June 2, 2011)................................10, 14

*Chevron Corp. v. Donziger,*
871 F. Supp. 2d 229 (S.D.N.Y. 2012)................................................22, 23

*DiRienzo v. Philip Servs. Corp.,*
294 F.3d 21 (2d Cir. 2002)................................................................19

*ESI, Inc. v. Coastal Power Prod. Co.,*
995 F. Supp. 419 (S.D.N.Y. 1998) ................................................................19

*Fuji Photo Film U.S.A., Inc. v. McNulty,*
640 F. Supp. 2d 300 (S.D.N.Y. 2009)................................................................22

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947)................................................................20

*Hachette Distrib., Inc. v. Hudson County News Co. Inc.,*
136 F.R.D. 356 (E.D.N.Y. 1991)................................................................15

*Hicks v. City of New York,*
268 F. Supp. 2d 238 (E.D.N.Y. 2003) ................................................................15

*Hong Leong Fin. Ltd. v. Pinnacle Performance Ltd.,*
297 F.R.D. 69 (S.D.N.Y. 2013) ................................................................7

*Kassover v. UBS A.G.,*
08-cv 2753, 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008) ................................................11

*Kirch v. Liberty Media Corp.,*
No. 04-cv667 (NRB), 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ................................19

*Lerner v. Fleet Bank, N.A.,*
318 F.3d 113 (2d Cir. 2003)................................................................23

*Madanes v. Madanes,*
981 F. Supp. 241, (S.D.N.Y. 1997) ................................................................19

*McDonald v. Piedmont Aviation,*
   625 F. Supp. 762 (S.D.N.Y. 1986) ......................................................15

*McLaughlin v. Anderson,*
   962 F.2d 187 (2d Cir. 1992) ..............................................................23

*Moran v. Flaherty,*
   No. 92-cv-3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992) ............7, 8

*N.Y. Dist. Council of Carpenters Pension Fund v. Forde,*
   939 F. Supp. 2d 268 (S.D.N.Y. 2013)...............................................21

*PT United Can Co. Ltd. v.  Crown Cork & Seal Co., Inc.,*
   138 F.3d 65 (2d Cir. 1998)................................................................19

*Shannon v. N.Y.C. Trans. Auth.,*
   No. 00-cv-5079, 2001 WL 286727 (S.D.N.Y. Mar. 22, 2001)...............7

*Spool v. World Child Int'l Adoption Agency,*
   520 F.3d 178 (2d Cir. 2008)..............................................................23

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,*
   175 F. Supp. 2d 573 (S.D.N.Y. 2001)...............................................15

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.,*
   No. 05-cv-85456, 2006 WL 223689 (S.D.N.Y. Jan. 27, 2006) ............12

*Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.,*
   725 F. Supp. 2d 438 (S.D.N.Y. 2010)................................................20

*U.S. v. Cilins*, 13 Cr. 315, Dkt. No. 3 ....................................................25

*In re WRT Energy Secs. Litig.,*
   No. 96-cv-3610, 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996)..................7

## Statutes

Fed. R. Civ. P. 4 ....................................................................................25

Fed. R. Civ. P. 9 ....................................................................................25

Fed. R. Civ. P. 12 ...................................................................3, 4, 17, 24

CPLR § 302..........................................................................................24

Civil Procedure Rules 1998 (of England), Part 31 ..............................11, 12

## Other Authorities

8A Charles A. Wright, Arthur R. Miller, et al.,
   Fed. Practice & Procedure §2035 (3d ed. 2014)....................................7

iii

Rio Tinto plc ("Rio Tinto") respectfully submits this memorandum in opposition to the motion for a protective order staying all discovery filed by Defendants Vale S.A. ("Vale"), Benjamin Steinmetz, BSG Resources Limited, ("BSGR"), VBG Guinea, VBG-Vale (Guernsey), and Mahmoud Thiam (hereinafter, "Defendants").[1]

## PRELIMINARY STATEMENT

As Defendants well know, the current discovery in this case is narrowly tailored to the relevant issues in this case, and merely involves responding to interrogatories and producing documents.  The information sought in these written discovery requests is the very same type of information Defendants likely have already collected and produced, or will produce, to the various authorities actively investigating the same misconduct at issue in this case, including the U.S. Department of Justice ("DOJ") (specifically, the U.S. Attorney's Office for the Southern District of New York and the Criminal Division of the DOJ in Washington DC).[2]  Moreover, as this Court already has recognized, even if Defendants somehow prevail on their meritless motion to dismiss on *forum non conveniens* grounds, they will have to produce similar, if not identical, information in the Courts of England pursuant to English disclosure rules.  *See* 7/28/2014 Hr'g Tr. at 12:13-18.  Defendants cannot, therefore, be prejudiced by proceeding with the very discovery they likely have already started and will inevitably have to perform no matter where this case proceeds.  For this reason alone, there is no valid basis to delay discovery.

In contrast to Defendants' lack of prejudice with continued discovery, Rio Tinto will be prejudiced by a delay in discovery because, as both sides agree, there is a lot to get done to

---

[1]  Notably, not all defendants in this action have joined in the motion for a stay.  Nevertheless, Rio Tinto refers to the moving defendants as "Defendants" for ease of reference.

[2]  To be clear, Rio Tinto is not seeking materials from the grand jury.  Rather, Rio Tinto is seeking the materials the Defendants likely already have collected, or will have to collect, for these governmental authorities.  These same documents also are responsive to Rio Tinto's discovery requests, and there is no additional burden in producing them to Rio Tinto without indicating whether they are grand jury materials or not.

prepare this case for trial.  Page after page of Defendants' brief outlines the numerous custodians and volumes of data that must be collected, reviewed, and produced by all parties.  And this is just for the written discovery at issue now; numerous depositions and expert discovery still must follow.  There simply is no reason to delay this process, and this Court should again deny Defendants' request for a stay just as it has done multiple times before.  *See, e.g.*, 7/28/2014 Hr'g Tr. at 12:13-18 (Judge Berman:  "I am not imposing a stay at this time"); 9/8/2014 Hr'g Tr. at 12:11-13 (Judge Peck:  "discovery is not stayed"). The more Defendants are able to delay discovery and the trial, the more it hurts Rio Tinto.  Defendants should not be allowed to cease all discovery and impede Rio Tinto's vindication of its rights at trial, particularly where all parties agree there is a great deal of discovery that must be accomplished before trial.

But that is exactly what Defendants are doing.  To date, despite orders from both Judge Berman and this Court requiring that discovery proceed, Defendants have not yet produced a *single* document.  This, in addition to Defendants' well-documented and well-pled efforts to bribe witnesses and destroy documents, is just another example of Defendants' attempt to avoid justice.  Indeed, their latest stay request (like their multiple prior requests for a stay) is designed to keep Rio Tinto from proving its case and ensure that Rio Tinto is deprived of any and all discovery prior to the Court's rulings on the motions to dismiss.  Defendants' true motive is revealed by their request to stay even the jurisdictional discovery of Defendants Steinmetz and BSGR that this Court already ordered should proceed regardless of any stay.  A stay would only reward those efforts, and prejudice Rio Tinto's access to the information it needs to prove its case.

Defendants' complaint that Rio Tinto's discovery requests are overly broad and burdensome is wrong.  The discovery served to date is appropriately tailored to and targeted at

the claims in this case, which involve a conspiracy that spanned almost a decade, concerned numerous parties, and included numerous wrongful acts such as bribery, corruption, and theft. Indeed, the best evidence of the reasonableness of the outstanding discovery is that Defendant Vale itself has served discovery on Rio Tinto that is equal in scope and covers an even larger date range (back to 1997) than the discovery served by Rio Tinto. Presumably Defendant Vale would not have served discovery it considered overbroad and unduly burdensome. In any event, the answer to Defendants' purported overbreadth and burden concerns is not a stay, but a continuation of the meet and confer process that is already well underway and so far has proven successful in narrowing the areas of dispute. Finally, as noted above, Defendants' claims of burden ring hollow in light of the fact that several of them are the subjects of a governmental investigation in this very District, where they already have or will have to provide documents to DOJ (including the U.S. Attorneys' Office for the Southern District of New York) or other authorities. There is absolutely no additional burden associated with reproducing those documents in this case.

Likewise, Defendants' pending *forum non conveniens* motion and their yet-to-be-filed Rule 12(b) motions to dismiss do not serve as reasons to delay discovery. Indeed, Defendants mischaracterize the record in their continuing effort to oversell the *forum non conveniens* motion. For example, Defendants continue to state that *none* of the key witnesses for this case are located in the United States. Mot. at 1, 8. This is demonstrably false. Three Defendants in this case, who undoubtedly will be witnesses, *live* in the United States: Defendant Mahmoud Thiam lives here in New York City; Defendant Frederic Cilins, who pled guilty to some of the criminal conduct at the heart of this case, is nearby in a Pennsylvania prison (although, according to the Federal Bureau of Prisons website, he still frequents the Metropolitan Detention Center in

3

Brooklyn); and Defendant Mamadie Toure lives in Florida, a short flight away from New York. Defendant Vale also again tries to hide one of the critical flaws in its argument by obscuring that its English law expert on the jurisdictional clause assumes the parties (and their lawyers) made a mistake when they twice said jurisdiction in England was "non-exclusive."  And as noted above, even if this case were to go to England, any document discovery in this action would need to be produced in English proceedings as well.

Defendants equally exaggerate the strength of their anticipated pending Rule 12 motions. The reality is that the allegations of Rio Tinto's Amended Complaint combined with applicable law mean Defendants' motions have no merit.  For these reasons and all the reasons explained below, Defendants' motion should be denied.

**<u>BACKGROUND</u>**

## I.   THE COURT HAS CONSISTENTLY AND REPEATEDLY REJECTED DEFENDANTS' ARGUMENTS AND DELAY TACTICS

At the June 9 conference, upon learning of Defendants' intentions to file motions to dismiss, the Court stated "So, discovery, no problem.  It can start, if you haven't already, you can start with discovery."  6/9/2014 Hr'g Tr. at 4:20–24.  The Court also stated, "I'm going to set a tentative discovery schedule which is obviously subject to, since there's so many parties here, to good faith adjustment of November 28, 2014."  *Id.* at 6:24–7:1.  Consistent with that instruction, the Court issued a case management plan.  *See* Dkt. No. 35.  At no time during that June 9 conference did any of the counsel present for Defendants object to, or even raise a concern regarding, the Court's proposed discovery schedule or statement to "start with discovery."  In accordance with Judge Berman's order, Rio Tinto promptly served its Initial Disclosures on June 23, 2014.  *See* Fed. R. Civ. P. 26(a)(1)(C).  Rio Tinto also served document requests and interrogatories on June 30, 2014, for which responses were due on August 4, 2014.

Defendants' delay tactics began right after that.  Contrary to Judge Berman's order, Defendants refused to serve their Initial Disclosures and affirmatively stated that they would not timely respond to Rio Tinto's served discovery.  As a result of Defendants' refusal to provide even the most basic discovery, Rio Tinto filed a letter with the Court seeking a pre-motion conference to file a motion to compel.  *See* Dkt. No. 51.  In response, Defendants BSGR and Steinmetz asked for a pre-motion conference to request a protective order staying all discovery propounded by Rio Tinto until the Court resolved Defendants' anticipated motions to dismiss (the same request re-raised here).  *See* Dkt. No. 56.  Defendants Vale and Thiam similarly asked for a pre-motion conference regarding a stay.  *See* Dkt. Nos. 57 and 58.

The Court held that conference on July 10, 2014, opening by saying that "[w]e're going to make the first part of this very short.  Despite all the letters [Defendants] sent about stays of discovery, that ship sailed when you were in front of Judge Berman, and at least as of now there is not going to be a stay."  7/10/2014 Hr'g Tr. at 2:3-6.  When counsel for Vale suggested that Judge Berman had not actually rendered a decision concerning a stay, this Court disagreed:

> I'll interrupt you just to make it clear that he [Judge Berman] thinks he has.  Not only having read the transcript of his argument . . .  I called Judge Berman to discuss the matter with him and he believes he has decided it.  So you can take whatever argument you want to him, but he has decided it, at least for now.

*Id.* at 2:19-3:1.  This Court then denied Defendants' motions to stay and ordered that discovery proceed.  *Id.* at 3:6-11, 9:20-24, 15:23-16:4.

Despite this Court's ruling, Defendants continued their efforts to obtain a stay.  On July 17, 2014, Vale, Steinmetz, BSGR, and Thiam went *back* to Judge Berman, requesting another pre-motion conference on Defendants' proposed motions to dismiss and for a stay of discovery.  *See* Dkt. No. 69.  Rio Tinto opposed, not least because the Court had already ruled that discovery should proceed.  *See* Dkt. No. 75.  Judge Berman held a conference on July 28, 2014, at which

5

point he repeated and reaffirmed his denial of Defendants' request for a stay:

> I am not going to issue a stay, in the meantime, as to discovery. I know you have been before Judge Peck, and we discussed it once earlier. Whatever discovery happens in that time, I am sure it can be useful either in Brazil or the United Kingdom. I am not imposing a stay at this time.

7/28/2014 Hr'g Tr. at 12:13-18. Notably, Judge Berman himself recognized that, worst case, any discovery accomplished here would be useful elsewhere.

The instant motion is therefore Defendants' third bite at the apple. As this Court noted on September 9, 2014 when Defendants asked again if they could file a motion for a stay of discovery: "the circuit is quite clear [judges] can't technically stop anyone from filing a motion. But we don't have to deal with the motion for ages." 9/8/2014 Hr'g Tr. at 10:6-8. Defendants nevertheless proceeded with filing the instant motion.

## II.    THIS COURT ALREADY ORDERED THAT JURISDICTIONAL DISCOVERY HAS TO GO FORWARD

Perhaps most egregious is Defendants BSGR's and Steinmetz's request to stay jurisdictional discovery that this Court specifically ordered go forward. On July 29, 2014, the parties appeared before this Court to discuss, among other things, the status of discovery. While there, Defendants BSGR and Steinmetz stated their objection to the scope of discovery that had been served by Plaintiff to date. 7/29/2014 Hr'g Tr. at 17:19-22. In support of that objection, they further flagged their intent to file a "motion to dismiss for lack of personal jurisdiction." *Id*. at 16:7-18. In response, the Court said, "at least as to Mr. Filardo's clients [*i.e.*, Defendants BSGR and Steinmetz], it makes sense to focus on jurisdictional discovery as opposed to pure merits discovery, recognizing there will be some overlap. So that has to go forward regardless." *Id*. at. 20:13-17. Despite this mandate, Defendants BSGR and Steinmetz now seek to stay even that jurisdictional discovery, and to date have not produced a *single* document or provided the list of custodians or search terms Plaintiff Rio Tinto has repeatedly requested.

6

## ARGUMENT

"[T]he issuance of a stay is by no means automatic." *In re WRT Energy Secs. Litig.*, No. 96-cv-3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996). Moreover, a pending motion to dismiss ordinarily is not sufficient to justify a stay of discovery. *See Moran v. Flaherty*, No. 92-cv-3200 (PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). Rather, the burden is on the party seeking a stay to demonstrate good cause by identifying "particular and specific" facts that justify staying discovery. 8A Charles A. Wright, Arthur R. Miller, et al., Fed. Practice & Procedure §2035 (3d ed. 2014); *see Shannon v. N.Y.C. Trans. Auth.*, No. 00-cv-5079 (RWS), 2001 WL 286727 (S.D.N.Y. Mar. 22, 2001).

Where a motion to dismiss is pending and a party seeks to stay discovery, courts consider (1) the strength of the motion to dismiss, (2) the breadth of discovery sought, and (3) the prejudice that would result from the stay. *See Hong Leong Fin. Ltd. v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (Gorenstein, J.) (collecting cases). Here, Defendants mischaracterize the discovery at issue, claim prejudice to themselves where there is none, improperly minimize Rio Tinto's prejudice in the event of a stay, and overstate the strength of their pending and anticipated motions to dismiss. *See In re WRT Energy Sec. Litig.*, 1996 WL 580930, at *1 (denying motion to stay discovery where "the Court cannot conclude on the present record before it that dismissal of the complaint is inevitable"). Accordingly, Defendants have not met their burden, and this Court should deny their third attempt at staying discovery.

## I. DEFENDANTS FAIL TO ESTABLISH THAT DISCOVERY IS SO BROAD AND BURDENSOME THAT A STAY IS APPROPRIATE

Rio Tinto's outstanding discovery requests are narrowly tailored to the relevant issues in this case. They merely involve responding to interrogatories and producing documents. Indeed,

the discovery Defendant Vale itself has served mirrors that from Rio Tinto in scope and, if anything, is even broader because it covers a longer responsive time period (back to 1997). That alone is fatal to their motion, but any remaining burden concerns are allayed by the fact that (1) the information sought in these written discovery requests is the same type of information Defendants likely already have collected and produced, or will produce, to the various authorities currently investigating the same misconduct at issue in this case, including the United States Attorneys' Office for the Southern District of New York; and (2) Defendants will have to gather and produce this information even in the unlikely event that this case must proceed in England, as Judge Berman noted himself. 7/28/2014 Hr'g Tr. at 12:13-18. Simply put, there is nothing so extraordinary or difficult about the discovery in this case that would justify deviating from the rule that discovery "should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Moran*, 1992 WL 276913, at *1.

### A.   The Outstanding Discovery is Properly Tailored to this Litigation

This is a case about the theft of Rio Tinto's mining rights through a scheme of corruption, bribery and cover-up that spanned almost a decade and several continents, including multiple predicate acts that were committed in the United States.[3] Rio Tinto's discovery requests are appropriately tailored to target specific information, documents and witnesses relevant to those claims. Rio Tinto's discovery requests to Defendants include requests related to: (1) Defendants' attempts to acquire mining rights at Simandou, including by means of bribery and corruption; (2) misappropriation of Rio Tinto's confidential information on Simandou; (3) information provided to governments and agencies investigating Steinmetz and BSGR's bribery and corruption regarding Simandou; (5) knowledge of and participation in the active concealment of the RICO

---

[3] Although Defendants are intent on reducing this dispute to a breach of contract case between Rio Tinto and Vale, this is not reality, as demonstrated by Rio Tinto's detailed Amended Complaint.

conspiracy; and (6) efforts to independently develop Simandou independent of the data and information stolen from Rio Tinto.  *See* Decl. of Matthew Karlan, Dkt. No. 99 ("Karlan Decl"). Exs. F-M (Rio Tinto's Discovery Requests).   Thus, despite Defendants' generic complaints that Rio Tinto's discovery requests are "extremely" broad and burdensome (Mot. at 5), Rio Tinto's discovery requests are focused primarily on the nature and extent of Defendants' involvement and participation in the scheme to steal Rio Tinto's mining rights at Simandou, and their subsequent efforts to conceal that scheme from detection.   Such discovery requests are not unduly broad or burdensome, but instead seek information directly relevant to Rio Tinto's claims.[4]

Perhaps the best evidence that Rio Tinto's discovery is appropriate is that Defendant Vale has served discovery that is equal in scope and covers an even longer time period (back to 1997). By its own admission, Vale's discovery requests to Rio Tinto are "similarly broad," and include "47 different categories relating to the matters alleged in the Complaint."   Mot. at 9.   Since Defendants presumably do not consider their discovery to be overly broad and unduly burdensome, they cannot now credibly argue that similar discovery from Rio Tinto is somehow inappropriate.

In any event, to the extent that Defendants believe a particular request is overly broad or unduly burdensome, Rio Tinto has actively engaged in a comprehensive and productive meet and confer process that, to date, has successfully narrowed the areas of dispute.  This meet and confer process over the discovery requests – not a stay to cease discussing them altogether – is the

---

[4]  The time period of Rio Tinto's document requests align with the time period at issue in the Amended Complaint. Vale was active at Simandou North as early as 2005, and the record already is replete with evidence that Vale's co-conspirators began their bribery campaign in 2005.  Am. Comp. ¶ 7.  Moreover, the parties are meeting and conferring on the topic of shortening, where appropriate, the relevant time periods.  For example, Vale and Rio Tinto have agreed to limit Requests related to the joint venture negotiations between Rio Tinto and Vale between May 1, 2008 to June 30, 2009, and have agreed to narrow the timeframe for requests related to Vale's efforts to acquire mining rights at Simandou North to January 1, 2005 to December 31, 2006.  *See* Karlan Decl. Ex. Y.

remedy to Defendants' purported overbreadth and burden concerns.[5]  In denying an application

for a stay in *Chevron Corp. v. Aguinda*, Judge Kaplan stated:

> Of course, a certain amount of work will have to be done to get this matter ready
> for trial.  But the discovery here at issue is not of such a volume as to justify some
> of the rhetoric deployed in the effort to stop it.  If counsel devoted the same effort
> to cooperating in getting the case resolved as they devote to applications like this,
> there would be no serious problem in doing so.

No. 11-cv-3718 (LAK), 2011 WL 2207555, at *3 (S.D.N.Y. June 2, 2011).  The same is true

here.  Defendants have now made this same motion three times, renewing the same arguments

each time.  Defendants time and resources would be far better spent proactively working towards

moving discovery forward, as ordered by the Court, rather than proactively working to stop it.

**B.**     **It is No Additional Burden to Produce Documents That Defendants Have
         Already Provided or Will Provide to Governmental Authorities**

Today at least six different countries – United States, United Kingdom, France, Guinea,

Switzerland, and Guernsey – are investigating Defendants Steinmetz and BSGR, as well as other

Defendants for their role in the theft of Rio Tinto's mining rights at Simandou.  Am. Compl. ¶

16.  The United States' investigation – among the most active – is being run in this District by

the United States Attorneys' Office for the Southern District of New York and the Criminal

Division of the DOJ in Washington DC.  The information sought by the outstanding discovery

requests is the same type of information the Defendants likely already have collected and

produced, or will produce, to U.S. and other authorities.  There is absolutely no additional burden

associated with providing discovery Defendants likely already have started.  All Defendants have

---

[5]  As with their complaints regarding Rio Tinto's "broad" discovery requests, Defendants' spin on the amount of ESI
at issue fails to provide the Court with any context whatsoever.  Defendant Vale claims that the 29 individuals
identified in its interrogatory responses maintain 1.3 terabytes of data.  Mot. at 9.  Perhaps even more incredible,
Defendants BSGR and Steinmetz contend that "Rio Tinto's jurisdictional discovery requests would require the
processing of at least 20.6 terabytes of data."  *Id.* at 10.  These numbers, however, grossly overstate the amount of
data that will actually be reviewed, especially with regard to Defendants Steinmetz and BSGR, whose estimate of
"20.6 terabytes of data" does not reflect application of search terms, de-duplication, and other culling parameters
that will ultimately be applied.

to do is turn over what they have collected in response to the various governmental investigations.  The ease of replicating these productions weighs against Defendants' request for a stay.[6]  *See Kassover v. UBS A.G.*, No. 08-cv2753, 2008 WL 5395942, at *4 (S.D.N.Y. Dec. 19, 2008) (finding that producing the documents that "defendants gathered and surrendered to government investigators previously – would not be burdensome for [defendant]").

### C.   This Discovery is Necessary Whether the Case Proceeds Here or in England

At a hearing on July 28, 2014, Judge Berman denied Defendants' second request to stay discovery in this action.  In so ruling, Judge Berman acknowledged that although motions to dismiss would be filed, "I am not going to issue a stay, in the meantime, as to discovery . . . Whatever discovery happens in that time, I am sure it can be useful either in Brazil or the United Kingdom.  I am not imposing a stay at this time."  7/28/2014 Hr'g Tr. at 12:13-18.

Judge Berman was right:  Defendants inevitably have to perform this discovery no matter where this case ends up.  Under English law, a party must affirmatively identify potentially responsive documents, collect those documents – including electronic documents – review them, and thereafter produce any and all  documents that it may rely on, that adversely affect its own and other parties' cases, and that support another party's case.  *See* Civil Procedure Rules 1998 ("CPR"), Part 31.6.  Further still, in complex disputes such as this one, English judges may order additional disclosures.  *See* CPR 31.5(7).  Indeed, parties can request additional disclosure after receiving an adverse party's initial disclosure much like parties here can do through motions to compel.  Furthermore, parties litigating in England are required to undertake a "reasonable search," which involves balancing the scope of the request, the complexity of the proceedings,

---

[6]  To the extent certain Defendants have provided documents to governmental authorities, they should have provided such documents to Rio Tinto already – it has been months since Rio Tinto served its discovery requests – and these documents are separate and apart from any discussion of ESI that might be culled by predictive coding, search terms, and/or custodians.

the expense of retrieval, and the significance of the document sought. *See* CPR 31.7. In other words, most, if not all, of the document discovery that Defendants are attempting to shut down here would occur in any event in England per its disclosure rules. Indeed, given that Rio Tinto's discovery requests are targeted requests seeking specific documents and information relevant to the claims at issue here – similar claims to those that would be at issue in England – any discovery here would be both relevant and permitted in proceedings in England. *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, No. 05-cv-8546 (PKL-MHD), 2006 WL 223689, at *1 (S.D.N.Y. Jan. 27, 2006) (denying defendant's request for a stay pending resolution of a *forum non conveniens* motion and stating that "[a]lthough discovery will be fairly extensive, its fruits – particularly document production as well as out-of-state witness testimony – will presumably be needed in the litigation of this case whether it is finally adjudicated here or, as defendant apparently wishes, in the United Kingdom.").

In short, none of the document discovery that would occur during the period of the requested stay period would be prohibited by English Civil Procedure Rules. Accordingly, Defendants grossly exaggerate the differences between U.S. and English discovery rights, and any discovery here would be useful in an English proceeding.

******

Defendants cite this Court's decision in *Anti-Monopoly Inc. v. Hasbro, Inc.*, No. 94-cv-2120 (LMM)(AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) eight times in their brief. *Anti-Monopoly* is, however, distinguishable. In that case, the defendant only sought a stay of discovery with respect to plaintiff's secondary-line, antitrust claim (agreeing to proceed with discovery regarding plaintiff's other claims) and did so only *after* filing a motion for judgment on the pleadings as to that particular claim. *Id.* at *4. In contrast, the Defendants here seek a

stay of *all* discovery, even jurisdictional discovery this Court has specifically ordered to proceed, and base their arguments in part on yet-to-be-filed motions to dismiss.  And, as explained below, even Defendants' *forum non conveniens* motion lacks merit, much less the "substantial grounds," Your Honor found persuasive in *Anti-Monopoly*.  Your Honor also noted in *Anti-Monopoly* that plaintiff had served "quite extensive" discovery, totaling over 300 separate requests, on its secondary-line claim alone.  *Id.* at *3. In contrast again, Rio Tinto has served discovery for all its claims on Defendant Vale that total fifty document requests and twelve interrogatories – a fraction of the discovery requests at issue in *Anti-Monopoly* on a single claim.  Further still, the plaintiff in that case, though it cried prejudice over any delay in discovery, had previously asked the court to adopt a "much more leisurely schedule" for the completion of discovery.  *Id.* at *2.  Finally, this is all without noting that Defendants here, unlike the defendant in *Anti-Monopoly*, have already undertaken or will undertake a likely collection, review, and production of responsive documents in connection with parallel criminal proceedings.  In sum, *Anti-Monopoly* is no basis for granting a stay in this case.

Discovery is always a burden in some form or fashion.  Defendants' description of the so-called burden they suffer in the absence of a stay is nothing more than a discussion of the usual discovery demands associated with a typical case involving sophisticated businesses operating in today's global age of email, electronic documents and e-discovery.[7]  If every defendant in a large civil litigation could claim that participating in discovery pending a motion to dismiss was

---

[7]  Similarly, Defendants claims of burden based on their own initial disclosures should carry little weight with this Court.  Mot. at 8.  Defendants Steinmetz and BSGR have used initial disclosures as nothing more than a litigation tactic to support their efforts to dismiss this case and stay discovery.  Indeed, after initially refusing to serve initial disclosures (*see* Dkt. No. 56), Defendants Steinmetz and BSGR served initial disclosures that only identified three witnesses.  *See* Decl. of Eric. C. Lyttle dated Oct. 20, 2014 ("Lyttle Decl.") Ex. A (Defendants Steinmetz's and BSGR's Initial Disclosures dated July 23, 2014).  Conveniently, on  September 3, 2014 – the same day that Defendants filed their motion to dismiss based upon *forum non conveniens* and a mere six weeks after serving their original initial disclosures – Defendants Steinmetz and BSGR amended their disclosures to include 83 individuals located around the world, resulting in a 27-fold increase in witnesses.  *See* Karlan Decl. Ex. D (Defendants Steinmetz's and BSGR's Amended Initial Disclosures dated September 3, 2014).

unduly burdensome in order to obtain a stay, the exception would swallow the rule.  Here, Defendants have failed to demonstrate any extraordinary burden adequate to establish a deviation from the rule that discovery proceeds pending resolution of any motion to dismiss.  Accordingly, this Court should deny Defendants' motion to stay.

## II.     RIO TINTO WILL BE PREJUDICED BY A FULL STAY OF DISCOVERY

While Defendants are correct that this case will involve voluminous discovery with some international components, this does not mean it is unduly burdensome and should be stayed.  *See Chevron*, 2011 WL 2207555 at *3 (denying stay, and noting that "the discovery here at issue is not of such a volume as to justify some of the rhetoric deployed in the effort to stop it.").  Rather, it is the very reason that discovery should proceed.  Given the breadth of discovery all parties agree this case requires, having it proceed allows the parties to properly prepare for trial in a timely manner.

### A.     There is Nothing Short About the Stay Defendants Seek in this Case

To be clear, Defendants do not seek a "short" stay of discovery such that "it will not prejudice Rio Tinto in any way."  Mot. at 15.  In fact, their conclusion asserts that "discovery should be stayed pending a decision on Defendants *motions* to dismiss."  Mot. at 24 (emphasis added).  Thus, even with an expeditious briefing schedule, any stay would last well into 2015, impeding Rio Tinto's ability to move its case forward throughout its duration.

Moreover, even if Defendants truly were seeking a "short" stay of discovery pending resolution of the pending *forum non conveniens* motion, it is unclear how or why Defendants would be so burdened and prejudiced by continuing with the meet and confer process.  Over the past several months, the parties have been engaged in the meet and confer process, largely in response to Rio Tinto's requests, and more recently in regards to Vale's discovery requests.  This process has yielded much progress, narrowing the disputed issues and crystallizing where the

Court's assistance may be needed.  To bring discovery to a halt now – when the parties have worked hard to hash out many crucial issues but others remain – would be severely prejudicial to Rio Tinto.  Indeed, courts generally give weight to a plaintiff's strong interest in proceeding with its litigation.[8]

At bottom, a stay from this Court would only serve to reward Defendants for their dilatory tactics and further unduly prejudice Rio Tinto in the vindication of its rights.  *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y. 1991) (concluding that a "stay of all discovery  . . . would effectively impede the just and speedy administration of the progress of this lawsuit.").  This would be especially prejudicial where, as here, Defendants' motion has little chance of success and Rio Tinto has made every effort to expeditiously move this case, and the discovery process, forward.  *See id.* (denying request for a stay, in part because the lawsuit was being "actively litigated" and "discovery is being expeditiously pursued.").[9]

### B.     BSGR and Steinmetz Improperly Seek to Stay Jurisdictional Discovery

Rio Tinto would suffer even more severe prejudice by a stay of jurisdictional discovery from the BSGR and Steinmetz defendants.  Defendants' request to halt jurisdictional discovery comes as a sudden, unexpected surprise, not least because it flouts this Court's July 29, 2014

---

[8]  *See, e.g.*, *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,* 175 F. Supp. 2d 573, 579-80 (S.D.N.Y. 2001) (denying a motion to stay and highlighting that the plaintiffs have an interest in moving the case forward, a lot of time had been wasted due to "defendants' dilatory tactics," and because "the interests of non-parties and the public favors prompt resolution of the civil case"); *Hicks v. City of New York,* 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003) ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim."); *McDonald v. Piedmont Aviation,* 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (in denying defendant's motion for a stay, court "upholds plaintiff's right to chart the course of his own litigation and to prosecute his claims in the manner of his choice").

[9]  Defendants make numerous false accusations regarding the timing of this lawsuit and how that somehow supports their third request for a stay.  Mot. at 14-15.  Perhaps most misinformed is Defendants' claim that Rio Tinto amended its complaint in an effort to delay this lawsuit. This could not be further from the truth.  Judge Berman's Individual Practices state that "Motions to dismiss in civil cases will be decided 'with prejudice' where the opposing party has been given the opportunity to amend the pleadings after receiving the moving party's pre-motion letter."  Berman Individual Practices at 2.  Upon receipt of the defendants' pre-motion letters, Judge Berman ordered Rio Tinto to amend its Complaint.  *See* Lyttle Dec. Ex. B (Minute Entry dated 7/28/2014 ("Plaintiff is to amend the complaint by 8/15/14")).  Rio Tinto thus amended its complaint in compliance with Judge Berman's order.

Order that expressly directed the parties "to focus on jurisdictional discovery" that "has to go forward regardless" of an anticipated motion to dismiss for lack of jurisdiction.  7/29/14 Hr'g Tr. 20:18-22.

Since this Court's order regarding jurisdictional discovery, Rio Tinto has done all it can to move jurisdictional discovery forward.   It propounded a separate set of jurisdictional discovery requests on August 5, 2014.  *See* Karlan Decl. Exs. N-O.  Thereafter it followed up multiple times by phone, letter, and email, since receiving Defendants BSGR and Steinmetz's responses and objections to those requests.  *See, e.g.*, Lyttle Decl. Ex. C (Email from K. Sivashanker to K. Forst, dated Oct. 9, 2014).   Defendants BSGR and Steinmetz, meanwhile, have not yet produced a *single* document, despite agreeing to do so back in September with respect to a number of Plaintiff's jurisdictional discovery requests.  *See* Karlan Decl. Ex. R (BSGR Resps. to Jurisdictional Discovery Requests) at Nos. 1, 2, 4, 8, 12 – 15, 20, 21, and 23; Karlan Decl. Ex. S (Steinmetz Resps. to Jurisdictional Discovery Requests) at Nos. 1, 3, 7, 11 – 14, 19, 20, and 22).[10]

In light of this obstinance from BSGR and Steinmetz, were a stay of jurisdictional discovery granted, Rio Tinto would be effectively denied the opportunity to obtain discovery to oppose Defendants' anticipated motion to dismiss for lack of personal jurisdiction, a result this Court specifically stated was untenable.  *See* 7/29/14 Hr'g Tr. 16:9-12 ("Because obviously, if you're going to seek leave from Judge Berman to make a motion to dismiss for lack of personal jurisdiction, you have to subject yourself to at least some form of discovery").  Such a result

---

[10]  The latest letter from Defendants BSGR and Steinmetz conveniently paints a rosy picture of their participation in discovery to date.  Lyttle Decl. Ex. D  (Letter from K. Sivashanker to K. Forst, dated Oct. 14, 2014).  There is no doubt it was drafted with the expectation that this letter would be brought to the Court's attention during the course of the motion to stay.  But actions speak louder than words.  Here, the actions of BSGR speak volumes: six months after Rio Tinto filed its lawsuit, these two Defendants have *not even begun searching and reviewing documents*.  *Id.* There is absolutely no question that while they pay lip service to the concept of being committed to the discovery process, their strategy is to delay, even if it means burdening this Court with repeated requests for a stay and ignoring this Court's mandate to focus on jurisdictional discovery.

would be entirely prejudicial to Rio Tinto's ability to oppose a motion to dismiss. Defendants BSGR and Steinmetz's efforts to avoid discovery in this litigation – even jurisdictional discovery – should not be permitted any longer. Not only should the motion to stay be denied, but this Court should require BSGR and Steinmetz to produce documents responsive to Rio Tinto's jurisdictional discovery requests by a date certain.

## III.    DEFENDANTS' MOTIONS TO DISMISS LACK MERIT

Defendants argue they are entitled to a stay based upon the purported strength of their pending motion to dismiss on *forum non conveniens* and their yet-to-be-filed Rule 12 motion to dismiss. Defendants' arguments in support of their pending and anticipated motions, however, are deficient and should be rejected.

### A.    Defendants Continue to Oversell Their Forum Non Conveniens Motion

***The Jurisdictional Clause***.   The Confidentiality Deed between Rio Tinto and Vale contains a non-exclusive jurisdiction clause that expressly and plainly permits Rio Tinto to sue Vale in this Court. As detailed in the first declaration of Rio Tinto's English law expert, Lord Hoffmann (recognized by Vale's own expert as a leader in this area of English law), the plain and ordinary meaning of the phrase "non-exclusive jurisdiction" is well settled and unambiguous under English law. *See* Decl. of Lord Hoffmann dated Sept. 10, 2014, Dkt. No. 88-2 ("Hoffmann 9/10/2014 Decl.") ¶ 7. It means that Rio Tinto had the option to bring this lawsuit in the Courts of England or in this Court as it has chosen to do. *Id.* ¶ 30. In other words, contrary to Vale's claims, the non-exclusive jurisdiction clause in the Deed is permissive and not mandatory. *Id.* Vale's own expert, Lord Collins, even concedes that Lord Hoffmann is correct with respect to the meaning of non-exclusive jurisdiction clauses. Decl. of Lord Collins Decl. dated July 29, 2014, Dkt. No. 84-3 ("Collins 7/29/14 Decl. ") ¶ 59. Lord Hoffmann goes on to give effect to each and every word in the jurisdictional clause without ascribing any mistake to

17

the parties.

Vale's expert, Lord Collins, does not do the same.  Desperate to avoid the plain meaning of the non-exclusive jurisdiction clause in the Deed, Vale attempts to redefine the term "non-exclusive" to mean "exclusive."   In doing so, Vale's expert, Lord Collins, does not offer an interpretation that gives effect to every word of the clause, instead dismissing the use of the highly-specific term "non-exclusive" (used by sophisticated parties and their lawyers, not once, but twice) as the result of "careless drafting."  Collins 7/29/2014 Decl. ¶ 10; *see also id.* at ¶ 62 (opining that "non-exclusive" was left in as a "result of careless drafting"); ¶ 64 (explaining that the expression "non-exclusive" must "hav[e] been inserted, or left in, in error."); ¶ 94 (opining that "the expression 'non-exclusive' was, as a result of careless drafting, inserted or left in sub-clause 20(b) in error . . ."); Decl. of Lord Collins dated Sept. 24, 2014, Dkt. No. 89-1 ("Collins 9/24/2014 Decl.") ¶ 5 ( "'non-exclusive' was *carelessly inserted* . . . or *mistakenly not deleted*") (emphasis added); ¶ 10 ("… retention or insertion of the expression 'non-exclusive' was the result of *careless drafting* . . .") (emphasis added).

The Court is left with a clear choice.  It can assume that sophisticated parties and their lawyers made a mistake and did not mean what they said when they twice used the term "non-exclusive" – a term that is commonly understood in English law to be permissive, not mandatory – and take the unprecedented step of holding that an explicitly non-exclusive jurisdictional clause is in fact exclusive.  Or the Court can read the entire clause in context and conclude that "non-exclusive" means exactly what it says.  Rio Tinto's approach is the correct one.

***Traditional Forum Non Conveniens Analysis.***   The Moving Defendants' motion to dismiss on traditional *forum non conveniens* grounds also failed to make a "clear showing" that there is an adequate alternative forum and "that a trial in the United States would be so

18

oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).

   ***England is Not an Adequate Alterative Forum.***   The Moving Defendants cannot demonstrate that England is an adequate forum because two key defendants—Defendants Touré and Cilins—have not consented to English jurisdiction and appear to be beyond the reach of English courts.   These facts are fatal to the Motion.   Indeed, the Second Circuit has stated that "in order to grant a motion to dismiss for *forum non conveniens*, a court must satisfy itself that the litigation may be conducted elsewhere against *all defendants*."   *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998) (emphasis added).[11]   Absent consent from these two crucial defendants, the Moving Defendants cannot possibly establish that England is an adequate alternative forum.

   ***Rio Tinto's Choice of Forum is Entitled to Deference.***   Rio Tinto has legitimate and substantial reasons for bringing this suit in the United States and, specifically, in the Southern District of New York.   *See* Dkt No. 88 at 19.   Thus, far from the forum shopping accusations the Defendants repeatedly lodge, Rio Tinto chose this forum because (1) it is a forum where it could sue all defendants (including U.S. citizen and New York resident Thiam, and U.S. residents Touré and Cilins); (2) it is a forum conducting an active criminal investigation into the acts which underlie the Amended Complaint, in response to which defendants already are or likely will be producing witnesses and documents; and (3) it is a forum regularly utilized by Vale to conduct business, including its negotiations with Rio Tinto and the active trading of its American Depository Receipts (ADRs) on the New York Stock Exchange (NYSE).   Accordingly, because

---

[11]   *See also ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 426 (S.D.N.Y. 1998) ("[T]he requirement that a defendant be subject to the jurisdiction of the alternative forum 'refers to all defendants.'" (quoting *Madanes v. Madanes*, 981 F. Supp. 241, 265-66 (S.D.N.Y. 1997))); *Kirch v. Liberty Media Corp.*, No. 04-cv-667 (NRB), 2006 WL 3247363, at *5 (S.D.N.Y. Nov. 8, 2006) ("*All defendants*, including the non-German [defendants], have represented to this Court that they would consent to the jurisdiction of the German courts") (emphasis added).

Rio Tinto had ample legitimate reasons to prefer litigating in the United States, its choice of forum is entitled to considerable deference.

***The Private and Public Interests Strongly Favor Rio Tinto's Selection.*** The Moving Defendants' principal argument regarding the private interests, that documents and witnesses are scattered across the globe and are not centralized in the United States, is irrelevant to whether *England* would be a *more* convenient forum than the United States.  What matters instead is the *relative* ease of access to evidence.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Moreover, recent decisions recognize that "the difficulties of discovery are mitigated by instant communication and rapid transport, especially for sophisticated corporate entities such as the parties in this case, thus diminishing any supposed inconvenience that litigating the case in this forum might impose." *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 725 F. Supp. 2d 438, 443 (S.D.N.Y. 2010).  Here, the fact that documents are scattered across the globe makes England no more convenient a forum than the United States.

Indeed, far from supporting dismissal, this factor weighs decisively in favor of retaining jurisdiction in Rio Tinto's chosen forum.  As explained above, Defendant Thiam lives in New York City, so his purported "consent" to proceed in England therefore is absurd, and a transparent attempt at forum shopping.  Defendant Vale finds it convenient enough to trade its ADRs on the NYSE, and found it convenient enough to travel to New York to negotiate with Rio Tinto as part of its ruse.  Finally, Defendants Cilins and Touré are located in the United States and have not consented to jurisdiction in England.  These two defendants are among the most important witnesses in this case, a fact that weighs against dismissal. In short, no other forum has these levels of connections and synergies with all the defendants.

As to the Defendants' argument regarding the public interest factors, the gravamen of that

argument appears to be that the United States and the Southern District of New York do not have a substantial interest in this litigation. *See* Mot. at 17.  The  Defendants cannot seriously contend that the Southern District of New York does not have an interest in this matter at the same time that the U.S. Attorneys' Office for the Southern District of New York is conducting a "major criminal investigation" into this matter.  Am. Compl. ¶ 131.  Accordingly, the benefit to the United States from being able to monitor this suit weighs heavily against dismissal.

In sum, the Moving Defendants have fallen far short of satisfying the burden associated with a successful *forum non conveniens* motion, and therefore it does not support Defendants' motion for a stay.

### B.    Defendants' Anticipated 12(b)(6) Motion Will Fail

Defendants incorrectly state that there are "substantial additional grounds" under 12(b)(6) that warrant dismissal of Rio Tinto's Amended Complaint.  As a preliminary matter, no such motion has been filed by Defendants at this time, nor has Rio Tinto had the opportunity to oppose such a motion.  Accordingly, it is presumptuous at best for Defendants to rely upon these arguments in support of their stay.  In any event, as detailed below, these motions are ill-fated and cannot provide a basis for staying discovery.

***Rio Tinto's Claims are Timely.***  As an initial matter, Defendants do not contest that Rio Tinto's causes of action for fraud, civil conspiracy to commit fraud, aiding and abetting a fraud, and fraudulent inducement are all timely.  Even if Rio Tinto's RICO claims accrued in December 2008, settled case law is clear that any statute of limitations is tolled where, as here, Defendants fraudulently concealed their conspiracy.  *See N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 279-80 (S.D.N.Y. 2013) (tolling civil RICO claim where defendants engaged in fraudulent concealment).  In fact, Defendant Cilins – who was acting on behalf of the other Defendants – has admitted that as recently as 2013 he came to the United States in order to

*cover up the scheme*.  Am. Compl. ¶ 131.  Finally, whether Rio Tinto was, or should have been, aware of the Defendant's unlawful scheme prior to April 2010 is a question of fact that cannot be resolved on a motion to dismiss.  *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 322 n.149 (S.D.N.Y. 2009) (court declined to dismiss civil RICO claims on statute of limitations grounds where defendants argued that fraudulent concealment did not apply because the "dispute raised an issue of fact [and thus] cannot be resolved at the motion to dismiss stage.").

### *Rio Tinto's Amended Complaint Adequately Pleads a Pattern of RICO Conduct.*

Defendants argue that the fraudulent scheme alleged in the Amended Complaint, "lasting as little as *two weeks*," does not meet RICO's pattern requirement.  Mot. at 19.  In making this argument, Defendants ignore and erroneously cite the Amended Complaint, and Defendants fail to cite the numerous paragraphs in the Amended Complaint that list the specific predicate acts Defendants made in furtherance of the conspiracy.  *See, e.g.*, Am. Compl. ¶¶ 167(a)-(k), 173, 175-78, 183, 188-89, and 193(a)-(c).  As explained in the Amended Complaint, these actions took place from December 2008 to at least April 11, 2013, when Defendant Cilins and an agent of Defendant BSGR discussed plans to convince Defendant Touré to conceal and destroy evidence concerning the conspiracy.  *Id.* ¶ 167(g); *see also Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 246-47 (S.D.N.Y. 2012) (relying on obstruction of justice and witness tampering allegations to extend the period for the RICO pattern requirement).  Indeed, if the conspiracy had not collapsed under the cumulative weight of at least six governmental investigations and the April 2014 revocation of BSGR and Vale's rights to Blocks 1 and 2 of Simandou after finding that "Steinmetz and BSGR won the mining rights to Blocks 1 and 2 of Simandou through bribery and corruption," (Am. Compl. ¶ 16), the conspiracy might still be ongoing.

Defendants also ignore that even though the Guinean government first announced on December 11, 2008 that the rights to Blocks 1 and 2 purportedly were granted to Defendants, the remainder of the RICO conspiracy involved finalizing, legitimizing, and covering up their actions by obstructing an FBI-led investigation. *See* Am. Compl. ¶¶ 95-101, 107, 110, 111-49. These actions spanned well over three years, which is more than the Second Circuit's presumptive rule that a conspiracy of less than two years does not meet the pattern requirement. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).[12]

**_Rio Tinto's Complaint Adequately Alleges Causation_.**   Defendants' argument that the Amended Complaint fails to properly allege proximate causation suffers from the same defect as their argument for the pattern requirement: it requires an incomprehensibly narrow view of the Amended Complaint.   Defendants' argument that the conspiracy had completed its work within two weeks ignores allegations that important aspects continued for years afterward.[13]   Am. Compl. ¶¶ 95-101, 107-110, 111-49.[14]

---

[12] Defendants also claim that the RICO conspiracy does not meet the pattern requirement because it involves only one victim, Rio Tinto, and only one piece of property. Mot. at 19.  Recent cases in this district, however, involved single-plaintiff cases that survived motions to dismiss.  *See, e.g.*, *Donziger*, 871 F. Supp. 2d 229 (denying a motion to dismiss and concluding that the pattern allegations were sufficient for a RICO complaint where the RICO conspiracy had only one victim, consisted of a single scheme, and which had a single purpose in obtaining a foreign judgment against the plaintiff).

[13] Defendants' cited cases, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) and *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003), are useless to Defendants.  In *Anza*, the Supreme Court held that a RICO plaintiff could not establish proximate cause to an injury stemming from its competitors' failure to pay the proper amount of New York state sales tax on cash transactions. 547 U.S. at 458.  In *Lerner*, the Second Circuit rejected an attempt to hold the banks retaining the money responsible under RICO for the actions of an unscrupulous attorney who defrauded the plaintiffs of millions of dollars, stating that "we have repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise." 318 F.3d at 124 (citing cases).  There can be no doubt that Rio Tinto is the target, competitor, *and* intended victim of the RICO conspiracy.  The entire object of the conspiracy was to deprive Rio Tinto of its valuable mining rights and there is no argument by the Defendants to the contrary.

[14] Defendants also claim – in a footnote and completely without explanation – that the 65-page, 237-paragraph Amended Complaint is subject to dismissal for failing to plead fraud with particularity.  First, not all RICO claims are subject to Rule 9(b), only those predicates based in fraud.  *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (reversing district court for applying Rule 9(b) pleading standard to non-fraud RICO predicate); *Angermeir v. Cohen*, _ F. Supp. 2d _, 2014 WL 1613016, at *14 (S.D.N.Y. Mar. 27, 2014) (analyzing § 1962(d) conspiracy claim under Rule 8(a)).  Second, the Amended Complaint provides a detailed account of a complicated scheme of bribery, fraud, concealment, exploitation of confidential information, and obstruction, perpetrated by numerous co-

## C.    BSGR's and Steinmetz's Anticipated Rule 12(b)(2) Motion Lacks Merit

Defendants' reliance on the proposed motion of BSGR and Steinmetz is misplaced because this Court has already heard from Defendants BSGR and Steinmetz on exactly this request and, in response, *ordered* that they produce jurisdictional discovery. *See supra* page 6. This Court should reject Defendants BSGR's and Steinmetz's request to rehash a motion already decided.

Nevertheless, Defendants BSGR and Steinmetz go on to devote a portion of their motion to arguing (again) the *perceived* merits of a *perceived* motion to dismiss.  Like the other hypothetical motions to dismiss, however, Defendants BSGR's and Steinmetz's anticipated motion will fail on the merits.  General and specific jurisdiction each satisfy the "minimum contacts" test.[15]  Pursuant to *both* CPLR § 302(a) *and* Federal Rule of Civil Procedure 4(k)(2), Defendants BSGR and Steinmetz have sufficient "minimum contacts" – either by their own actions or through their agents' actions – to New York and/or the United States such that this Court can properly exercise jurisdiction over them.

Plaintiff has included detailed allegations in its Amended Complaint that Defendants BSGR and Steinmetz (i) engaged, paid, and sent its co-conspirator, employee and agent, Defendant Frederic Cilins, *to the United States* to conceal and/or destroy evidence (Am. Compl. ¶¶ 16, 32, 124-31, 135-39), (ii) engaged and paid co-conspirators and agents to wire money bribes to an account *in Florida* for Defendant Mamadie Touré (*id.* ¶¶ 25, 124-31, 140-41), (iii) entered into a behind-the scenes agreement with their co-conspirator Defendant Vale – while

---

conspirators and effected over the course of several years through numerous affirmative acts in New York and the United States.  As such, Rio Tinto's Amended Complaint satisfies Federal Rule of Civil Procedure 9(b).

[15]  For Defendant Steinmetz, Plaintiff has alleged, on information and belief, that he maintained and/or maintains two apartments (one for business, one for pleasure) in this forum over the time period in which Defendants' wrongful scheme unfolded.  *See* Am. Compl. ¶ 20.  That alone could subject Defendant Steinmetz to the jurisdiction of New York courts.  Plaintiff anticipates further substantiating these allegations through the jurisdictional discovery ordered by the Court.

Vale was meeting with Plaintiff *in New York* – to obtain rights to the Simandou Concession (*id.* ¶¶ 102-04), (iv) illegally obtained, pursuant to their agreement with co-conspirator Defendant Vale, geological, technical, and logistical data provided by Plaintiff during the meetings *that took place in New York* (*id.* ¶¶ 87, 89-90), and (v) had a co-conspirator pay bribes to Defendant Thiam, *a U.S. citizen* (*id.* ¶¶ 97, 101, 111, 115).[16]   These allegations, revealing Defendants BSGR's and Steinmetz's fingerprints all over the theft of Plaintiff's mining rights, provide ample support for this Court to exercise specific jurisdiction over Defendants BSGR and Steinmetz.

## CONCLUSION

For the foregoing reasons, Rio Tinto respectfully submits that Defendants' motion for a stay of discovery should be denied.

Dated:  New York, New York
October 20, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  /s/ Michael J. Lyle_____
    William A. Burck
    Michael J. Lyle
    Eric C. Lyttle
    Stephen M. Hauss

    777 6th Street NW, 11th Floor
    Washington, DC 20001
    Telephone:  (202) 538-8000
    Facsimile:  (202) 538-8100
    williamburck@quinnemanuel.com

*Attorneys for Plaintiff Rio Tinto plc*

---

[16]   Indeed, the grand jury indicted Frederic Cilins – Defendant BSGR's and Steinmetz's agent – for the destruction of that evidence, citing multiple wrongful acts that took place in this forum.  *U.S. v. Cilins*, 13 Cr. 315, Dkt. No. 3 (S.D.N.Y. Apr. 25, 2013).