UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>        Plaintiff,<br><br>   -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG<br>Resources Limited, VBG–Vale BSGR Limited<br>aka BSG Resources (Guinea) Ltd. aka<br>BSG Resources Guinée Ltd, BSG Resources<br>Guinée SARL aka BSG Resources (Guinea)<br>SARL aka VBG-Vale BSGR, Frederic Cilins,<br>Mamadie Touré, and Mahmoud Thiam,<br><br>        Defendants. | 14 Civ. 3042 (RMB) (AJP) |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 1

I.   Defendants' Motions To Dismiss Have Substantial Grounds ......................................... 1

II.  Discovery In This Case Will Be Broad And Burdensome ............................................... 5

III. Rio Tinto Would Not Be Unfairly Prejudiced From A Stay ............................................ 9

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
No. 94 Civ. 2120(LMM)(AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) ......................... 1, 2, 5

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012) ................................................................................. 4

*Commonwealth Ins. Co. v. Beneficial Corp.*,
No. 87 Civ. 5056(CSH), 1987 WL 17951 (S.D.N.Y. Sept. 29, 1987) ................................ 9

*In re Milk Products Antitrust Litig.*,
84 F. Supp. 2d 1016 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) ..................... 8

*In re Sealed Case*,
801 F.2d 1379 (D.C. Cir. 1986) ......................................................................................... 8

*In re Sulfuric Acid Antitrust Litig.*,
No. 1536, 2004 WL 769376 (N.D. Ill. Apr. 9, 2004) ........................................................ 8

*In re Union Carbide Corp. Gas Plant Disaster*,
809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871 (1987) .............................................. 3

*Matter of Mediators, Inc.*,
190 B.R. 515 (S.D.N.Y. 1995), *aff'd*, 105 F.3d 822 (2d Cir. 1997) ................................. 3

*New York Dist. Council of Carpenters Pension Fund v. Forde*,
939 F. Supp. 2d 268 (S.D.N.Y. 2013) ............................................................................... 3

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ............................................................................................... 2

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
175 F. Supp. 2d 573 (S.D.N.Y. 2001) ............................................................................... 9

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*,
No. 05 Civ. 8546(PKL)(MHD), 2006 WL 223689 (S.D.N.Y. Jan. 27, 2006) ................... 9

*Stutts v. De Dietrich Grp.*,
465 F. Supp. 2d 156 (E.D.N.Y. 2006) ............................................................................... 4

*Tymoshenko v. Firtash*,
No. 11 Civ. 2794(KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)....................................... 4

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009)............................. 4

## **Rules**

CPLR 302................................................................................................................................... 4

Fed. R. Civ. P. 4 ....................................................................................................................... 4

Fed. R. Civ. P. 12 ................................................................................................................. 1, 3

Fed. R. Civ. P. 26 ..................................................................................................................... 8

Defendants Vale S.A. ("Vale"), Benjamin Steinmetz, BSG Resources Limited ("BSGR"),

VBG Guinea, VBG-Vale (Guernsey), and Mahmoud Thiam ("Defendants") submit this reply

brief in further support of their Motion (Dkt. 100) to stay discovery pending the outcome of

Defendants' fully briefed letter motion to dismiss the amended complaint brought by plaintiff

Rio Tinto plc ("Rio Tinto" or "Plaintiff") (Dkt. 83) pursuant to the doctrine of *forum non*

*conveniens* ("FNC Brief," Dkt. 84, and "FNC Reply," Dkt. 89) (together, the "FNC Motion").

## ARGUMENT

Plaintiff's Opposition to the Motion (Dkt. 106) fails on all three grounds relevant to

granting a stay.  First, Plaintiff does not even dispute that Defendants' FNC Motion and potential

motions to dismiss under Rule 12(b) ("Dismissal Motions") are "not unfounded in the law" and

have "substantial grounds"—indeed, based upon the prior decisions in this District, the stated

bases for the FNC Motion dictate that it be granted, and Defendants expect that it will be.  (*See*

Mot. 16-24.)  Second, the relevant question is not whether Rio Tinto's discovery requests are

objectionably overbroad or unduly burdensome (though many are); it is whether the broad scope

and consequent burden of even appropriate U.S. discovery in this action, which Plaintiff does not

dispute, and would be avoided by dismissal, warrants a short stay while the Dismissal Motions

are decided.  Third, the only "prejudice" articulated by Rio Tinto is delay, but that is inherent in

any stay of discovery.  Accordingly, this Motion should be granted.

## I.      Defendants' Motions To Dismiss Have Substantial Grounds

Plaintiff cannot and does not dispute that, under the applicable standard, each of

Defendants' motions to dismiss "is 'not unfounded in the law' and 'appears to have substantial

grounds.'"  *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120(LMM)(AJP), 1996 WL

101277, at *4 (S.D.N.Y. Mar. 7, 1996).  Judge Berman ordered expedited briefing of the FNC

Motion no doubt for that reason.  (July 28, 2014 Tr. 8:8-13, 10:5-14.)  While chiding Defendants

for citing the relevant law too often, Plaintiff ignores Your Honor's standard entirely.  As this

Court noted in *Anti-Monopoly*, it "need not decide" the Dismissal Motions submitted to Judge

Berman in order to grant a stay here.  1996 WL 101277, at *4.

Plaintiff does not dispute that the forum selection clause in the Confidentiality Deed uses

the imperative "shall" and that this case is within the scope of the mandatory clause, arguing

only that jurisdiction in the United Kingdom is non-exclusive.  But a forum selection clause is

viewed as mandatory either "when it confers exclusive jurisdiction on the designated forum" or

when it "incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378,

386 (2d Cir. 2007).  This Circuit therefore recognizes that sophisticated private parties can agree

that all claims must be brought in one of two or more forums, none of which is exclusive as to

the others—but that do not include the United States.  That is exactly what Rio Tinto and Vale

did here.  The first sentence of sub-clause 20(b), providing that any suit "shall" be brought in

England, contains obligatory language, and requires suit in England with the single exception of

the other—hence "non-exclusive"—forum, Brazil.  Only Vale's interpretation of the

Confidentiality Deed gives meaning to the word "shall" and every term in the agreement

(including "non-exclusive").

This case also should be dismissed under the traditional *forum non conveniens* analysis.

No party other than Thiam, an individual defendant, has identified documents in the United

States.  And, while Rio Tinto now conveniently characterizes Cilins, Touré, and Thiam as "key"

defendants, it previously represented that they were not key in open court.  (June 9, 2014 Tr.

2:15-20).  The Court has further recognized that, as to these three witnesses, discovery will be

readily obtainable even if the case is dismissed in favor of the United Kingdom.  (July 29, 2014

Tr. 10:17-25.)[1]  That Vale's ADRs trade on the NYSE further does not give New York any

interest in a dispute with no relationship whatsoever to ADRs.  Rio Tinto also ignores the fact

that venue for criminal purposes is governed by different standards than civil *forum non*

*conveniens*, and ignores its own allegation that there are ongoing criminal investigations in "at

least six different countries," including in Britain.  (AC ¶ 16.)

      Plaintiff cannot seriously dispute that Defendants' contemplated motions to dismiss under

Rule 12(b) also present substantial grounds for dismissal.[2]  Rio Tinto offers no response to the

argument that its RICO claims accrued in December 2008 and are time-barred on their face.

(Mot. 18-19.)  First, it mistakenly relies on the alleged conduct of non-appearing defendant

Cilins, even though "the doctrine of fraudulent concealment only serves to toll the statute of

limitations as to those defendants who actively participated in the concealment." *Matter of*

*Mediators, Inc.*, 190 B.R. 515, 525 (S.D.N.Y. 1995), *aff'd*, 105 F.3d 822 (2d Cir. 1997).  (Mot.

19 n.10.)[3]  Second, it ignores its own allegations that the RICO enterprise was formed and

accomplished its sole objective of stealing Simandou in a matter of weeks without committing a

single well-pleaded predicate act.  (Mot. 19.)  Third, it is settled that acts "to cover up past

misconduct," such as "alleged obstruction, perjury and false statements[,] . . . do not extend the

---

[1] Notably, neither Cilins nor Touré  has appeared.  Thiam, who has appeared, has in any case consented to jurisdiction in the United Kingdom, so the fact that he resides in New York is "robbed of significance" for purposes of the Court's analysis. *In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 203 (2d Cir.) ("The emphasis placed by plaintiffs on [defendant] UCC[] having its domicile here, where personal jurisdiction over it exists, is robbed of significance by its consent to Indian jurisdiction."), *cert. denied*, 484 U.S. 871 (1987).

[2] Plaintiff falsely implies that Defendants will not seek dismissal of the state-law fraud claims. (Opp. 21.)  As explained in the Motion, "Defendants do not explore here all of the arguments that would be put forward in a motion to dismiss under Rule 12(b), including failure to plead fraud with the particularity required under Rule 9(b)" and "dismissal of the state-law claims pursuant to 28 U.S.C. § 1367(c)(3)."  (Mot. 20 n.11.)

[3] In *New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268 (S.D.N.Y. 2013), cited by Plaintiff to support its inaccurate contention, the alleged concealment was perpetrated by a fiduciary who "failed to disclose material information or perform his duties" and on whom plaintiff was "entitled to rely" by virtue of defendant's "position of trust." *Id.* at 279  (citation omitted).  This is simply not the case here.

pattern of racketeering activity." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp.

2d 486, 512 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).[4]

Finally, Rio Tinto cannot establish jurisdiction over BSGR or Steinmetz, directly or

through any purported agent, based upon the provisions of New York's long-arm statute (*i.e.,*

CPLR 302(a)(2)-(a)(3)).  (Mot. 22-23.)  Not surprisingly, Rio Tinto does not cite a single case to

support its contentions otherwise.  Rather, Rio Tinto simply again argues that Steinmetz

"maintained and/or maintains two apartments . . . in this forum over the time period in which

Defendants' wrongful scheme unfolded" (Opp. 24 n.15), even though counsel for Steinmetz has

repeatedly informed Plaintiff and the Court that such allegations are baseless and false (Mot. 22-

23).  Tellingly, while claiming it urgently needs jurisdictional discovery (Opp. 16-17), Rio Tinto

has made no effort to subpoena the management companies of either of these properties for

information.  Rio Tinto also cannot rely on Rule 4(k)(2) because it has not pleaded it or its

"requisite elements" as a basis for jurisdiction over either BSGR or Steinmetz.  (AC ¶¶ 31-32);

*Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 165-66 (E.D.N.Y. 2006) (plaintiffs failed to

satisfy requirements of Rule 4(k)(2) where they did not plead the requisite elements).[5]

---

[4] Plaintiff's reliance on *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012), is misplaced.  *Chevron* did not address the "continuity" element of a RICO claim, because the obstruction and witness tampering alleged in that case were not designed to conceal a previously completed scheme.  Rather, they were undertaken as part of the ongoing scheme "in service of the alleged overall goal of obtaining a baseless Ecuadorian judgment for use in obtaining money from Chevron."  *Id.* at 252.

[5] Moreover, as Judge Wood recently noted, "[w]hether a plaintiff can establish personal jurisdiction over a defendant pursuant to Rule 4(k)(2) through the imputation of contacts of that defendant's putative co-conspirators with the United States . . . has been widely criticized by courts and scholars." *Tymoshenko v. Firtash*, No. 11 Civ. 2794(KMW), 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013) (citations and quotation marks omitted) (declining to consider the contacts of defendant's alleged co-conspirators in the Rule 4(k)(2) analysis, and granting motion to dismiss RICO claims for lack of personal jurisdiction).

**II.**     <u>**Discovery In This Case Will Be Broad And Burdensome**</u>

Rio Tinto does not dispute that discovery in this case will be broad and—if the Dismissal

Motions are not granted—burdensome.  *Anti-Monopoly*, 1996 WL 101277, at \*3-4.  Rather,

Plaintiff repeatedly argues that to comply with its discovery requests, "[a]ll Defendants have to

do is turn over what they have collected in response to the various governmental investigations."

(Opp. 10-11.)  This reveals Rio Tinto's true intentions: to use U.S. discovery improperly and

prematurely to peer into a confidential grand jury process and circumvent the limitations of the

Confidentiality Deed for which it was paid good consideration.  Crediting Rio Tinto's

speculative allegations, the grand jury investigation is limited to prescribed topics and does not

include Vale.  (AC ¶ 16.)  Even if Rio Tinto's approach were appropriate—it is not (as discussed

*infra* at 8)—Plaintiff's discovery requests sweep far more broadly.  As to Vale, they include, for

example:

- All documents relating to the "interest" of Vale in acquiring Simandou (or finding a partner for that purpose), Simandou's value, the quality of Simandou's iron ore, market assessments of Simandou, and Vale's efforts to acquire Simandou, including any documents concerning Vale's overall designs on Simandou, from January 1, 2006 forward and any market analysis or internal discussions, including with respect to the importance of Simandou to the iron ore market (Requests 1, 18, 19);

- All documents "by, between, or among Defendants relating to the matters alleged in the Complaint," including *all documents concerning Simandou* (one of the largest iron ore deposits in the world and which has been under development since at least 1997 in an undertaking Plaintiff describes of "historic scope") and all other matters alleged in the complaint, including: Rio Tinto's operations in Simandou dating back to 1997; Vale's interest in Simandou North back to 2005; the value and geology and transportation information of Simandou; the operations of Simandou over a period of more than a decade; and shifts in Guinean politics throughout this period (Requests 2, 11);

- All documents concerning "documents, and other data [Vale] reviewed in the . . . Data Room," including all documents *referring* to Data Room documents and all documents *containing the data* that is also reflected in the documents from the Data Room (Requests 12, 33-35); and

- All documents concerning "Simandou concerning geological data, studies, analyses, [or] plans"; "mining data and studies relating to Simandou"; "rail transportation that relate to

Simandou"; "port data and studies relating to Simandou"; "the Transguinean Railway or data, studies, and plans for a Transguinean railway"; "a passenger railway or data, studies, and plans for a passenger railway relating to Simandou"; or "data, studies, and plans regarding using ports in Liberia in connection with Simandou" (Requests 44-50).

(*See* Karlan Decl. (Dkt. 99) Ex. Y, Oct. 3, 2014 Email from E. Tambay, at 1-5.)  In short, Rio Tinto's allegations put at issue more than 17 years of history at Simandou, one of the largest iron ore deposits in the world, including extensive negotiations involving, at different times, three multi-national companies, granting and revocation of mining rights by the Guinean Government, and years of exploration and development, costing hundreds of millions of dollars.  (Mot. 2.)

Plaintiff's purported jurisdictional requests to BSGR and Steinmetz likewise seek discovery obviously directed at the merits of this dispute, including, for example, all documents regarding BSGR's knowledge of Vale's negotiations with Rio Tinto or "any of the Defendants' activities in the United States alleged in the Complaint" (Steinmetz Req. 6; BSGR Req. 7); any communication regarding Simandou (internally or with persons in the United States or any Defendant) (Steinmetz Req. 8; BSGR Req. 9); receipt of information from the Rio Tinto Data Room (Steinmetz Req. 10; BSGR Req. 11); and "consulting work performed by Ibrahima Kassory Fofana and/or IF Global, LLC, relating to Simandou, the Vale-BSGR Transaction, and/or the Zogota Project" (Steinmetz Req. 23; BSGR Req. 24).  (Karlan Decl. Exs. N, O; *see* Mot. 7-8.)

This discovery would be enormously burdensome (and, in fact, any jurisdictional discovery would be completely irrelevant should the FNC Motion be granted, as BSGR and Steinmetz have already consented to jurisdiction in the United Kingdom).   Plaintiff misleadingly claims Vale provides the Court no "context whatsoever" (Opp. 10 n.5) for its estimate that "[c]onsidering only the 29 individuals identified in Vale's Interrogatory Responses 1 and 4, the potentially relevant data, after restricting based on time period . . . , would include approximately

6

1.7 million . . . documents, comprising 1.3 terabytes of data from seven offices in four countries

(Brazil, China, Mozambique, and Canada)." (Mot. 9-10.) In fact, when Plaintiff asked Vale for

further context before it filed its Opposition, Vale explained that it likely "understates the scope

of the material," including because "[t]he estimate of 29 individuals for the time periods May 1,

2008 to June 30, 2009 (for the Rio Tinto negotiations) and December 1, 2009 to April 30, 2010

(for the BSGR negotiations) does not account for any additional individuals who may have

communicated with Rio Tinto or BSGR outside of those time periods." (Karlan Reply Decl.[6] Ex.

B, Oct. 16, 2014 Email from M. Karlan, at 1.) Rio Tinto just did not like the answer. It has

since confirmed that, not only are its requests *not* limited to those negotiations, they are directed

at far more, including but not limited to "Vale's knowledge of Simandou (prior to its

negotiations with Rio Tinto)," "its motive for acquiring Simandou," "facts about [Simandou's]

operations" since April 2010, and all documents concerning Simandou's "geology, mining,

transport, modeling and mapping, resource estimates, exploration data, suitable mining methods,

drilling operations, processing, logistics, the Transguinean Railway, any Guinean passenger rail,

[and] the usage of railways and ports in Liberia" both before Vale signed the agreement with

BSGR and after. (Karlan Reply Decl. Ex. C, Oct. 21, 2014 Letter from E. Lyttle, at 2, 8). To the

extent Rio Tinto seeks more context for BSGR's ESI estimate, absent agreement on the scope of

Rio Tinto's jurisdictional discovery requests (*which Rio Tinto has refused to narrow in any way*),

search terms, and custodians, it is impossible to estimate the amount of data that will actually be

required to be reviewed, but BSGR knows that it would need to process *at least* 20.6 terabytes of

data for search and review (a significant cost and burden) in the event discovery proceeds in this

---

[6] Declaration of Matthew M. Karlan, dated Oct. 27, 2014 ("Karlan Reply Decl.").

action.  Given the enormous amount of data that BSGR has collected, it is evident that discovery

will require the search and review of a huge volume of material.

Moreover, even as to the grand jury material, Plaintiff is not entitled to be carbon copied

on everything that is going to a federal grand jury or to peer into "the direction of the grand

jury's investigation and the names of persons involved."  *In re Sealed Case*, 801 F.2d 1379, 1381

(D.C. Cir. 1986).[7]  If this matter goes forward, it will be entitled only to "discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P.

26(b)(1).  Indeed, if Rio Tinto's claim that it is entitled to grand jury materials and that

Defendants can easily reproduce them in this action is to be credited, that claim supports a stay—

it does not refute it.  If Defendants' Dismissal Motions are denied, any relevant grand jury

documents could be just as easily and quickly produced then.  There is nothing that supports

enabling Rio Tinto to intrude into the grand jury process now, or necessitating this Court to

resolve thorny issues arising from such demand now.

Finally, Plaintiff's argument that discovery would not be burdensome because

"Defendants inevitably have to perform this discovery no matter where this case ends up" (Opp.

11) is just wrong.  (Mot. 12-13.)[8]  As Plaintiff itself acknowledges (Opp. 11), U.K. standards for

---

[7] *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, No. 1536, 2004 WL 769376, at *1-3 (N.D. Ill. Apr. 9, 2004) (noting, in denying motion to compel documents produced to the government in connection with "an open federal grand jury criminal investigation," that "the case law recognizes that the identification and production of materials supplied to the grand jury may permit discerning attorneys to learn 'not only the information contained in specific documents, but the pattern of the grand jury's entire investigation'" (citation omitted)); *In re Milk Products Antitrust Litig.*, 84 F. Supp. 2d 1016, 1026-27 (D. Minn. 1997) (denying motion to compel documents "compiled by Defendants in response to subpoenas from the [DoJ]" including because Plaintiffs had made no showing that the documents "parallel the issues in Plaintiffs' Complaint" and because disclosure would reveal the direction of the grand jury investigation, even if completed), *aff'd*, 195 F.3d 430 (8th Cir. 1999).

[8] Plaintiff quotes Judge Berman's statement that "[w]hatever discovery happens in that time, I am sure it can be useful either in Brazil or the United Kingdom."  (Opp. 11 (quoting July 28, 2014 Tr. 12:15-18).)  The issue is not whether such discovery materials would be admissible in another forum, it is whether Defendants should be put to the burden of broad U.S. discovery that would not be available in Plaintiff's bargained-for forum.  (Mot. 12-13.)  Regardless, the present stay Motion was not before Judge Berman when he made those statements and it is for this Court to determine on the record that has since been made.  (July 28, 2014 Tr. 12-14.)

disclosure are different from those in the United States.  Plaintiff and Vale contracted for the

U.K. rules, and not those of the United States.[9]  "If [Rio Tinto] wished to be certain of full scale

litigation discovery . . . it could have declined to enter into [the Confidentiality Deed]."

*Commonwealth Ins. Co. v. Beneficial Corp.*, No. 87 Civ. 5056(CSH), 1987 WL 17951, at \*5

(S.D.N.Y. Sept. 29, 1987).  It did not, and it must bring its case in the United Kingdom "without

the benefit of full pre-trial discovery, that is what [it] bargained for."  *Id.*  Nonetheless, even if

Plaintiff's contention that the Confidentiality Deed permits it to sue Vale anywhere in the world

is correct, there will be time enough later for it to get U.S. discovery, as discussed below.[10]

### III.   Rio Tinto Would Not Be Unfairly Prejudiced From A Stay

Tellingly, the only prejudice Plaintiff articulates from a stay is the generalized and

insufficient assertion that "there is a lot to get done to prepare this case for trial."  (Opp. 1-2.)[11]

Defendants have not engaged in any "dilatory tactics."  (Opp. 15.)  Defendants served

their Rule 26(a)(1) initial disclosures and their document responses and objections on the date

ordered by the Court and agreed by the parties, after Rio Tinto itself refused to hold an initial

conference.  (July 29, 2014 Tr. 25:7-25; Karlan Decl. Exs. B-E, P-U).  Before it became

expedient to say otherwise, Plaintiff submitted a letter to Your Honor stating (accurately) that the

---

[9] In the one case Rio Tinto cites on this point, there is no mention of any forum selection clause, and there was an "unrebutted proffer by plaintiffs that significant discovery must take place in the United States, . . . presumably . . . whether or not the lawsuit proceeds in this forum."  *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, No. 05 Civ. 8546(PKL)(MHD), 2006 WL 223689, at \*1 (S.D.N.Y. Jan. 27, 2006).  That is not the case here, as there are virtually no documents in the United States.

[10] Plaintiff's argument that Vale's service of discovery requests on Rio Tinto is "fatal" to the Motion (Opp. 8) is risible.  The Court directed the parties to proceed with discovery.  Vale was not required to ignore that directive in order to preserve its rights to seek a stay.

[11] Plaintiff asserts "courts generally give weight to a plaintiff's strong interest in proceeding with its litigation" (Opp. 15), but the cases it cites addressed motions to stay pending the full resolution of parallel proceedings, not a short stay of discovery pending a motion to dismiss.  *See, e.g., Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 579-80 (S.D.N.Y. 2001) (denying stay pending parallel criminal investigation where "completely unpredictable how the criminal investigation will . . . progress[]" and a stay would "halt the civil litigation indefinitely").  Plaintiff also mistakes Defendants' requested relief (Opp. 14):  "At the present time . . . Defendants' request is limited to a brief stay of discovery pending the disposition of the FNC Motion."  (Mot. 1 n.1.)

9

parties were "making progress" and that no disputes were "currently ripe." (Dkt. 95 at 1.)  In

addition, Plaintiff's own letter explains that, before any documents are to be produced, "after the

parties have concluded their meet and confer regarding the scope of the individual document

requests, they intend to meet and confer to reach agreement regarding a list of appropriate

custodians whose documents should be searched." (*Id.* at 3.)  In fact, any purported delay in the

discovery process has resulted from Plaintiff's own inaction.  For example, Plaintiff neglects to

mention that it was Plaintiff—not Defendants—that requested an extension to respond to Vale's

requests.  Since then, and at Vale's request, Plaintiff has met and conferred twice on Vale's

document requests.  By contrast, it was only after Rio Tinto's Opposition, and two weeks after

the last conference, that Rio Tinto provided some of its promised answers to Vale's questions on

Rio Tinto's requests[12] or even suggested a next meet and confer.

Finally, there is nothing "surpris[ing]" (Opp. 15) about Steinmetz and BSGR moving to

stay jurisdictional discovery.  That is what was proposed and what the Court allowed, subject to

*all* discovery proceeding in the interim.  (July 29, 2014 Tr. 27-28; Sept. 8, 2014 Tr. 6-7, 10-12.)[13]

## CONCLUSION

For the foregoing reasons, discovery should be stayed pending a decision on Defendants'

motions to dismiss.

---

[12] Even today, Rio Tinto has not responded to all of Vale's points.  BSGR and Steinmetz likewise have timely complied with all of their discovery obligations to date, and it is Plaintiff who has impeded progress in the meet-and-confers.  (*See* Lyttle Decl. Ex. D, Oct. 14, 2014 Letter from K. Sivashanker.)  Rio Tinto has not offered a *single* proposal for narrowing any of the jurisdictional requests, including those requests impermissibly seeking merits discovery (and beyond) in contravention of the Court's instructions.  (*See* July 29, 2014 Tr. 27:10-22; Lyttle Decl. Ex. D, Oct. 14, 2014 Letter from K. Sivashanker; Karlan Reply Decl. Ex. A, Oct. 1, 2014 Letter from K. Forst.)

[13] Contrary to Rio Tinto's assertions, the issue here has manifestly not been adjudicated before.  Judge Berman said he would not prejudge a motion for a stay, which should be directed to Your Honor.  (July 28, 2014 Tr. 12:25-13:14 ("If he will take it, it is up to him.  I am not going to direct it. . . . That is up to him whether he is going to hear it . . . ."); *id.* at 14:13-14.)  Your Honor indicated that the Court would not be well-positioned to decide a stay motion until the FNC Motion was briefed (July 29, 2014 Tr. 28:21-25; Sept. 8, 2014 Tr. 9:1-10) and accordingly allowed Defendants to make the Motion shortly after the FNC Motion was fully submitted (Sept. 8, 2014 Tr. 9:19-20). Defendants filed their first and only stay motion on the Court-ordered schedule.

Dated: New York, New York
       October 27, 2014

Respectfully submitted on behalf of all Defendants,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:     /s/ Lewis J. Liman                        
        Lewis J. Liman
        Jonathan I. Blackman
        Boaz S. Morag

        One Liberty Plaza
        New York, New York 10006
        (212) 225 2000
        (212) 225 3999

        *Attorneys for Defendant Vale S.A.*

11