UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>    Plaintiff,<br><br> -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG<br>Resources Limited, VBG–Vale BSGR Limited<br>aka BSG Resources (Guinea) Ltd. aka<br>BSG Resources Guinée Ltd, BSG Resources<br>Guinée SARL aka BSG Resources (Guinea)<br>SARL aka VBG-Vale BSGR, Frederic Cilins,<br>Mamadie Touré, and Mahmoud Thiam,<br><br>    Defendants. | 14 Civ. 3042 (RMB) (AJP) |

### REPLY DECLARATION OF MATTHEW M. KARLAN

    Pursuant to 28 U.S.C. § 1746, Matthew M. Karlan declares as follows:

    1.  I am an associate with the law firm of Cleary Gottlieb Steen & Hamilton

LLP, counsel to defendant Vale S.A. in the above-captioned matter.  I am duly admitted to

practice before this Court.

    2.  I submit this declaration in support of the Motion of Defendants Vale

S.A., Benjamin Steinmetz, BSG Resources Limited, VBG Guinea, VBG-Vale (Guernsey), and

Mahmoud Thiam to Stay Discovery (the "Motion").

    4.  Attached to this declaration as Exhibits A-C are true and correct copies of

the following documents:

| Ex. | Document |
|-----|----------|
| A | Letter from Keith H. Forst of Quinn Emanuel Urquhart & Sullivan, LLP to Kavitha Sivashanker of Mishcon de Reya LLP, dated October 1, 2014. |
| B | Email from Matthew M. Karlan of Cleary Gottlieb Steen & Hamilton LLP to Meghan McCaffrey of Quinn Emanuel Urquhart & Sullivan, LLP, dated October 16, 2014. |
| C | Letter from Eric C. Lyttle of Quinn Emanuel Urquhart & Sullivan, LLP to Lewis J. Liman of Cleary Gottlieb Steen & Hamilton LLP, dated October 21, 2014. |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
October 27, 2014

Matthew M. Karlan

# Exhibit A

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8139**

WRITER'S INTERNET ADDRESS
**keithforst@quinnemanuel.com**

October 1, 2014

<u>VIA EMAIL</u>

Kavitha Sivashanker, Esq.
Mishcon de Reya LLP
750 7th Avenue
New York, NY 10019

Re:     Jurisdictional Discovery Served on Defendants BSGR and Steinmetz

Dear Kavitha:

   I write in follow-up to our discussion last week to work towards an agreed framework and scope for Defendants BSGR's and Steinmetz's (hereinafter, "Defendants") collection and production of documents in response to our requested jurisdictional discovery.  As an initial matter, let me reiterate our objective to amicably resolve Defendants' initial objections to our requests without resorting to court intervention.  We think that's an achievable goal, particularly because our jurisdictional discovery seeks information highly relevant to Defendants' contention that they are not subject to personal jurisdiction in the Southern District of New York, which, of course, cannot be resolved unless and until Defendants complete their respective document productions.  Per our conversation, what follows is a general summary of our phone discussion and, where appropriate, further explanation on some of our discovery requests.

**I.     Defendant BSGR's and Steinmetz's Collection Efforts To Date**

   From our call, we understand that Defendants have, as a first step, identified what appears to be the total amount of electronically-stored information ("ESI") – approximately 20 terabytes – that resides on their system(s).  We do appreciate Defendants taking this first step.  But what also became clear from our call is that Defendants have done little else in terms of gathering, culling, and reviewing a subset of that ESI for purposes of responding (*i.e.*, readying a production of documents) to our jurisdictional discovery requests.  This is particularly

disconcerting given that we served Defendants with jurisdictional requests almost six weeks ago. There is no reason for Defendants to continue to delay this process.  As permitted by our ESI Protocol (Dkt. No. 82), we are perfectly fine with a rolling production of documents, hopefully beginning very soon with, at mimimum, documents in response to requests where Defendants have indicated they will indeed be providing documents.  *See* BSGR Resps. to Request Nos. 1, 2, 4, 8, 12 – 15, 20, 21, and 23, and Steinmetz Resps. to Request Nos. 1, 2, 3, 7, 11 – 14, 19, 20, and 22.

As also discussed on our call, we too would like to agree on a list of custodians and set of search terms for particular discovery requests that warrant such an approach.  We suggest again that you take an initial cut at those proposed custodians and search terms since (presumably) you have the ability to confer with your client, have access to relevant documentation, and are aware of the principal custodians that are likely to have relevant documents.  To be clear, reaching agreement on these issues should not stand in the way of Defendants rolling out their respective productions in connection with certain discovery requests.  Many documents that fall squarely within the scope of our requests – *e.g.*, assets in the US, ownership interests in the US, payments connected to the US, real estate in the US – can, and should, be produced now without the need for reaching agreement on custodians and search terms.

## II.   Defendant BSGR's and Steinmetz's Objections To Certain Discovery Requests

With respect to the remaining requests, Defendants have (with the exception of one request)[1] refused to produce any documents, objecting that each request seeks information that falls "outside the scope of the limited jurisdictional discovery permitted by the Order."  *See* BSGR Resps. to Request Nos. 3, 6, 7, 9 – 11, 16 – 19, 22, and 24, and Steinmetz Resps. to Request Nos. 4 – 6, 8 – 10, 15 – 18, , 2, 3, 7, 11 – 14, 19, 20, and 22.  Contrary to that objection, Plaintiff's requests do not fall outside the permitted scope of  Judge Peck's July 29, 2014 Order, which specifically instructed Plaintiffs to serve jurisdictional discovery.  In issuing that Order, Judge Peck also "reconginz[ed] there will be some overlap" between that and merits discovery. *Id.* at 20.  Moreover, Judge Peck's Order did not attempt to define the precise contours of jurisdictional discovery that Plaintiff was entitled to propound.  Instead, he left that to the parties to "work out."  *Id.*  Consistent with that instruction from the Court, Plaintiff remains committed to working cooperatively with Defendants concerning its requested discovery.

Defendants principally object to the jurisdictional discovery on grounds that some of Plaintiff's requested discovery targets Defendants involvment in and/or knowledge of events that took place in the United States, even if those acts were carried out by other actors.  As we

---

[1]   We propounded a request on Defendants asking that they produce any documents and communications that "concern[] Your claim that the Court lacks jurisdiction over You."  BSGR Request No. 5, and Steinmetz Request No. 4.  That request simply seeks the production of documents and/or communcations that Defendants intend on presenting to the Court in connection with their forthcoming motion to dismiss.  Those documents (if any) should be provided now so they don't come as a surprise later.

explained on the phone, settled New York authority forecloses any such objection, as the acts of an agent or conspirator may be attributed to a principal or co-conspirator to obtain perstonal jurisdiction over the latter under N.Y. C.P.L.R. § 302.  *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001); *Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F. Supp. 385, 391 (S.D.N.Y. 1978); *Ghazoul v. International Management Services Inc.*, 398 F. Supp. 307, 312 (S.D.N.Y. 1975); *see also Louros v. Cyr*, 175 F. Supp. 2d 497, 519-20 (S.D.N.Y. 2001) ("Under New York law, a court may exercise jurisdiction over a defendant who acted through an agent even if that defendant never physically entered New York. A formal agency relationship is not required to establish that an out-of-state defendant acted through his agent.  Plaintiffs need only convince the court that [the agent] engaged in purposeful activities in this State in relation to [plaintiffs'] transaction for the benefit of and with the knowledge and consent of the [ ] defendants and that they exercise[d] some control over [the agent] in the matter.") (internal citations and quotations omitted).

Moreover, Rio Tinto is not limited to jurisdicitonal discovery on New York contacts alone.  RICO provides for nationwide service of process.  18 U.S.C. § 1965.  And when, as here, a complaint invokes federal question jurisdiction under a statute providing for nationwide service of process, the jurisdictional inquiry focuses on contacts with the *entire* United States, not just the forum state.  *R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* No. 93 Civ. 8571, 1994 WL 440834, *2 (S.D.N.Y. Aug. 15, 1994); *Herbstein v. Bruetman,* 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (analyzing personal jurisdiction challenge to a RICO claim).  "[D]ue process requires only that a defendant in such a suit have minimum contacts with the United States." *Herbstein,* 768 F. Supp. at 81; *see also City of New York v. Cyco.Net, Inc.*, 383 F. Supp 2d 526, 541–42 (S.D.N.Y. 2005).  Even separate and apart from that, Fed. Rule of Civ. P. 4(k)(2) permits investigation into contacts outside the forum state and more broadly within the United States. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008); *Ayyash v. Bank Al-Madina*, 04-cv-9201 (GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) (Lynch, J.) (granting jurisdictional discovery into defendants' US contacts where jurisdiction to hear RICO claims was premised on FRCP 4(k)(2)).

We won't rehash the factual, good faith allegations set out in Plaintiff's Amended Complaint that both directly *and* indirectly tie Defendants to the underlying events in this case; events that occurred in the United States generally and New York specifically.  But it is precisely those allegations that, if proven, would subject Defendants to the jurisidiciton of the Southern District of New York.  And through his July 29, 2014 Order, Judge Peck expressly granted Plaintiff permission to obtain such discovery.  Accordingly, Defendants have no good grounds for refusing to produce documents in response to Plaintiff's requests that seek, for example:

- documents and communications concerning Defendants knowledge of, involvement in, or participation in Vale's negotiations with Rio Tinto in the United States as alleged in the Complaint.  *See* Request to BSGR No. 6, and Request to Steinmetz No. 5.

- documents and communications concerning Defendants travel to or from the United States relating to Simandou or in connection with the consideration, evaluation, negotiation, or execution of the Vale-BSGR Transaction, including but not limited to

any itineraries, records or receipts in connection with the same.  *See* Request to BSGR No. 10, and Request to Steinmentz No. 9.

- documents and communications concerning Defendants receipt of information contained in the Rio Tinto Data Room from Vale or any other Defendant.  *See* Request to BSGR No. 11, and Request to Steinmentz No. 10.

- documents and communications concerning Defendant Cilins' contacts in the United States with Defendant Touré, and/or Matinda and Co. Limited, or any director, officer, employee, agent, or representative of the same.  *See* Request to BSGR No. 16, and Request to Steinmentz No. 15.[2]

We reiterate again that we look forward to working amicably with Defendants concerning our jurisdictional discovery.  We are, of course, available for another meet and confer to further discuss these issues.  Meantime, we look forward to your forthcoming production(s) and your reply correspondence with proposed custodians and search terms for our review and comment.


Very truly yours,



/s/ Keith H. Forst
Keith H. Forst


cc:     Eric Lyttle, Esq.
        Meghan McCaffrey, Esq.

---

[2]  Defendant BSGR has specifically acknowledged that Defendant Cilins worked on its behalf in relation to Simandou.  *See* "Response to BSGR Guinea press speculation" May 9, 2013, *available at* http://www.bsgresources.com/bsgr-guinea/bsgr-guinea-press-releases/response-to-bsgr-guineapress-speculation-2/.  Rio Tinto also refers Defendants to ¶¶119-141 of its Amended Complaint that set forth the connections between Defendants and co-Defendants Cilins and Touré.

4

# Exhibit B

## Karlan, Matthew M.

| | |
|---|---|
| **From:** | Karlan, Matthew M. |
| **Sent:** | Thursday, October 16, 2014 6:38 PM |
| **To:** | Meghan McCaffrey; Liman, Lewis J.; Blackman, Jonathan I.; Terceno, Joaquin; Tambay, Esti; Morag, Boaz S. |
| **Cc:** | Eric Lyttle; Mike Lyle; William Burck; Stephen Hauss; Jaime Kaplan; Keith Forst |
| **Subject:** | RE: Rio Tinto plc v. Vale, S.A. et al. |

Meghan:

You have noted that Vale asserted in its brief supporting a stay that its "initial assessment, prepared with the assistance of an outside consultant, indicates that responding to Rio Tinto's document requests would entail search and review of ESI including at least many millions of emails in a variety of languages from offices around the globe—none in the United States (*See* Ex. P, Vale's Response to Rio Tinto's First RFP, at 2.)" Vale also asserted that "[c]onsidering only the 29 individuals identified in Vale's Interrogatory Responses 1 and 4"—a limitation to which Rio Tinto had not agreed—"the potentially relevant data . . . would include approximately 1.7 million emails, files, and other documents, comprising 1.3 terabytes of data from seven offices in four countries (Brazil, China, Mozambique, and Canada). (*See id.*; Ex. Q, Vale's Responses and Objections to Rio Tinto's First Interrogatories.)"

We here provide further information in responses to your request. Based on your discovery requests and our recent meet and confers, we believe that the estimate above understates the scope of the material Vale would have to search or review if discovery were not stayed in this case. The 29 individuals identified in Vale's Interrogatory Responses 1 and 4 are those that, to best of Vale's current knowledge, either "may have communicated with Rio Tinto regarding Simandou from May 1, 2008 to June 30, 2009" (Interrogatory Response 1) or "may have communicated with BSGR and/or Steinmetz regarding Simandou and/or the Vale-BSGR Transaction from December 1, 2009 until April 30, 2010" (Interrogatory Response 4). Most of your requests, however, are not limited to persons involved in the negotiations with Rio Tinto or BSGR. The estimate of approximately 1.7 million emails, files, and other documents, comprising 1.3 terabytes of data from seven offices in four countries (Brazil, China, Mozambique, and Canada), assumes a date filter of January 1, 2005 to July 31, 2014 and the exclusion of duplicate documents. The estimate of 29 individuals for the time periods May 1, 2008 to June 30, 2009 (for the Rio Tinto negotiations) and December 1, 2009 to April 30, 2010 (for the BSGR negotiations) does not account for any additional individuals who may have communicated with Rio Tinto or BSGR outside of those time periods. (You have objected to similar time limitations we have suggested in our Responses to the Document Requests, for example in response to Document Request 1, which you stated concerns not only these sets of negotiations with Rio Tinto and BSGR but also any documents concerning Vale's overall designs on Simandou, from January 1, 2006 until the filing of the complaint.) Nor does it account for any individuals who might have documents relating to those communications—but who might not have communicated directly themselves.

Equally important, as you know, your document requests call for documents regarding, *inter alia*, documents concerning geological, mining, rail, or port data relating to Simandou, including regarding a Transguinean Railway, passenger railway, or ports in Liberia (Requests 44-50) for the time period from January 1, 2005 to the present. The estimate of 29 individuals above does not account for the additional individuals who would have documents concerning these operational matters created during the course of the four-year BSGR-Vale joint venture to operate Simandou. You have also asked for documents concerning "the materials, information, documents, and other data [Vale] reviewed in the Rio Tinto Data Room" (Request 12), which as we have noted would pick up not only all documents that constitute documents from the Data Room, but also all documents referring to documents from the Data Room and all documents containing the data that is also reflected in the documents from the Data Room. The estimate of 29 individuals does not include all of the more than 60 individuals identified in Vale's Interrogatory Response 3 who may have had access to the Data Room—and that does not include all those who might not have had access but still would have data derived from the information that was also found in the Data Room. We could go on. (While the estimate does not assume

application of any search terms, we note that for certain individuals, the use of search terms or predictive coding would be unlikely to significantly reduce the number of emails that lawyers would have to review unless you agree to narrow your requests which you heretofore have been unwilling to do.)

Regards,
Matt

_____

Matthew M. Karlan
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jparsons@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2845 | f: +1 212 225 3999
www.clearygottlieb.com | mkarlan@cgsh.com

**From:** Meghan McCaffrey [mailto:meghanmccaffrey@quinnemanuel.com]
**Sent:** Thursday, October 09, 2014 6:53 PM
**To:** Liman, Lewis J.; Blackman, Jonathan I.; Terceno, Joaquin; Tambay, Esti; Karlan, Matthew M.; Morag, Boaz S.
**Cc:** Eric Lyttle; Mike Lyle; William Burck; Stephen Hauss; Jaime Kaplan; Keith Forst
**Subject:** Rio Tinto plc v. Vale, S.A. et al.

Counsel,

On page 9 of Defendants' motion to stay, you make the following statements regarding Vale:

- "Vale's initial assessment, prepared with the assistance of an outside consultant, indicates that responding to Rio Tinto's document requests would entail search and review of ESI including at least many millions of emails in a variety of languages from offices around the globe—none in the United States (*See* Ex. P, Vale's Response to Rio Tinto's First RFP, at 2.)  Considering only the 29 individuals identified in Vale's Interrogatory Responses 1 and 4, the potentially relevant data, after restricting based on time period (a narrowing to which Rio Tinto has not agreed), would include approximately 1.7 million emails, files, and other documents, comprising 1.3 terabytes of data from seven offices in four countries (Brazil, China, Mozambique, and Canada).  (*See id.*; Ex. Q, Vale's Responses and Objections to Rio Tinto's First Interrogatories.)"

Please confirm at your earliest convenience that other than the restrictions of assessing the volume of ESI for 29 individuals across your unspecified time period, that Vale did not apply any search terms, de-duplication or other culling criteria to this data in coming up with the number of 1.3 terabytes.  Also, please let us know what date range you applied to the data.

Regards,
Meghan

**Meghan McCaffrey**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

777 6th Street, NW, 11th Floor
Washington, D.C. 20001
202-538-8177 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
meghanmccaffrey@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit C

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8162**

WRITER'S INTERNET ADDRESS
**ericlyttle@quinnemanuel.com**

October 21, 2014

Lewis J. Liman
Cleary Gottlieb Steen and Hamilton, LLP
One Liberty Plaza
New York, New York 10006

Re:     *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Lewis:

    I write in response to our various meet and confer sessions regarding Rio Tinto's First Request for Production of Documents ("Rio Tinto's First RFP") and First Set of Interrogatories. Below is a summary of our meet and confer, and the positions that Vale has adopted regarding each of the requests included in Rio Tinto's First RFP.  Please let me know if I have misstated anything. Also included here are a number of compromise proposals offered to try to address the concerns Vale articulated during the meet and confer process.

    We have identified a number areas in which we believe the parties are still negotiating, and a handful of other areas for which we believe the parties are at an impasse.  If you disagree that we are at an impasse on any of the areas we have so identified, please let us know no later than October 27, 2014.  As always, we remain available for further discussion.

**General Relevancy in this Case**

    As an initial matter, Rio Tinto is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defenses." Fed. R. Civ. P. 26(b)(1); *see also ACLU v. Clapper*, 959 F.Supp. 2d 724, 746-47 (S.D.N.Y. 2013).  Relevance is to be interpreted broadly, "and will include any matter that bears on, or that reasonably could lead to other [information] that could bear on, any issues that is or may be in the case." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 183 (S.D.N.Y. 2006).  Moreover, "discovery is not limited to the issues raised in the pleadings" because discovery itself is "designed to help define and clarify the issues." *Id.  see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 23.  Rio Tinto's discovery requests are, therefore, entirely appropriate and relevant to the issues in this case.

**Instructions and Definitions**

    **Instruction No. 2.**  As we discussed, Vale's objection to the general responsive time period of January 1, 2005 to present is not well founded.  Vale itself was active at least at Simandou North back in 2005.  In addition, the record already is replete with evidence that Vale's co-conspirators began their bribery campaign in 2005.  Information from this time period therefore is relevant and

discoverable.   Indeed, we note that Vale itself proposed an even longer (more than double) responsive time period back to 1997.  Nevertheless, in an effort at compromise, Rio Tinto will shorten the responsive time period for specific requests as noted herein.

**Definition of "Defendant."**   It is our understanding that Vale is refusing to produce any documents related to co-conspirators Avraham Lev Ran and Michael Noy unless the document request specifically "calls for documents of or relating to co-conspirators" because these individuals were dropped as named defendants in Rio Tinto's Amended Complaint (Dkt. No. 83).  This puts form over substance.  The document requests were served on Vale on June 30, 2014, when both Lev Ran and Noy were named defendants.  Thus, use of the term "Defendants" clearly was intended to and did in fact encompass them at the time.  And it still does since both Lev Ran and Noy remain as un-named Vale co-conspirators in the Amended Complaint.  Consequently, any document request calling for documents of or relating to "defendants" similarly calls for documents of or relating to co-conspirators Lev Ran and Noy.

<u>Document Requests</u>

**Request No. 1.**   As discussed, Rio Tinto cannot agree to Vale's attempts to narrow the scope of this request only to its efforts in acquiring Simandou North (January 1, 2005 to December 31, 2006) and its negotiations with Rio Tinto (May 2008 to June 30, 2009) and BSGR (July 1, 2009 and April 30, 2010).  While it certainly encompasses those three discrete topics, this request is about more than negotiations and is directed at Vale's knowledge of Simandou (prior to its negotiations with Rio Tinto) and its motive for acquiring Simandou.  By way of example, we noted that documents responsive to this request would include market analyses, internal discussions regarding the market and strategic value of Simandou, attempts by Vale to quantify the value of Simandou, any discussions with BSGR and any other mining companies regarding Simandou, and any negotiations with the Guinean government.  We note that this request is directly relevant to Rio Tinto's allegations that Vale made a "strategic decision to gain control of Simandou at any cost" and made "overtures to the Government of Guinea" in order to acquire Simandou (Amended Complaint ¶¶ 3, 53).   Furthermore, Rio Tinto has alleged that Vale began negotiations with BSGR regarding Simandou as early as December 2008 (Amended Complaint ¶¶ 12, 86-87) and continued those negotiations from January 2009 onward (Amended Complaint ¶¶ 14, 102-104), making Vale's proposed time limitation of July 1, 2009 to April 30, 2010 unacceptable with regard to the Vale-BSGR negotiations.  In the spirit of cooperation, however, Rio Tinto proposes to limit this request to a relevant time period of January 1, 2005 to April 22, 2011.  If this is not acceptable, we believe we are at an impasse on this issue.

**Request No. 2.**   Rio Tinto understands that your objections to Request No. 2 center around the fact that Vale and BSGR have operated a joint venture at Simandou since April 2010.  As an initial matter, the entire joint venture is a product of and tainted by the Defendants' misconduct alleged in the Amended Complaint, and therefore facts about its operations are relevant in this litigation.  Nevertheless, in an effort at compromise and as we proposed in our meet and confer, Rio Tinto agrees to exclude from Request No. 2 any documents and communications by, between, or among Vale and BSGR and Vale and VBG relating to the day-to-day business operations of the joint venture after April 30, 2010 (*e.g.,* employee and subcontractor hiring, equipment orders, ore pricing).  We have requested that Vale identify additional categories of day-to-day business operations it believes would be burdensome to produce.  Vale, to date, has refused to do this.  We

renew our request that Vale identify any additional categories of day-to-day business operations that it believes should not be produced. Rio Tinto will consider any such additional categories that Vale identifies in good faith. Absent such additional categories identified by Vale, we believe we are at an impasse on this issue.

**Request Nos. 3-6.** Rio Tinto understands that, subject to and without waving its general and specific objections, Vale will produce documents in response to Request Nos. 3-6 that are dated between May 1, 2008 to June 30, 2009.

**Request No. 7.** As a clarification to our meet and confer, Rio Tinto offered – but by no means committed – to consider narrowing this request to a time period of January 1, 2006 to April 22, 2011, the date of Rio Tinto's settlement with the Government of Guinea regarding Simandou Blocks 1 and 2. Rio Tinto's request is clearly relevant to the claims and defenses at issue here, where Vale's knowledge of its co-conspirators efforts to acquire Simandou go to the very heart of this case. Nonetheless, in light of our discussions, Rio Tinto is prepared to modify Request No. 7 to read as follows: All Documents and Communications concerning Your views, opinions, analyses, and conclusions regarding the validity of Rio Tinto's Concession between January 1, 2006 and April 22, 2011, with the caveat that Vale will agree to produce documents and communications relating to the Guinean government's investigation into how Defendants Steinmetz and BSGR obtained mining rights to Blocks 1 and 2 of Simandou. Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 8.** Rio Tinto understands and agrees that, subject to and without waiving its general and specific objections, Vale will produce documents in response to Request No. 8.

**Request No. 9.** As discussed, this request encompasses both the cessation of negotiations with Rio Tinto as well as Vale's decisions to cease negotiating in good faith with Rio Tinto following its meeting with Steinmetz and BSGR in December 2008 (Amended Complaint ¶¶ 86-90). As such, we propose narrowing the request to the following: All Documents and Communications from May 1, 2008 to June 30, 2009 concerning Vale's decision to cease negotiating in good faith with Rio Tinto regarding the joint venture, partnership, investment agreement, or other arrangement regarding Rio Tinto's Concession and Rio Tinto's decision to cease negotiating the joint venture, partnership, investment agreement or other arrangement regarding Rio Tinto's Concession. Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 10.** Rio Tinto cannot agree to your proposed limitation on Request No. 10 to "a reasonable production of non-privileged documents, if any, regarding meetings held between Rio Tinto and Vale in New York as specifically referenced in the Amended Complaint from November 2008 to June 2009." As we discussed, it is our understanding that Rio Tinto and Vale held additional meetings regarding Rio Tinto's Concession beyond those alleged in the Complaint and the time period should be consistent with the other time period limitations attached to the Rio Tinto-Vale negotiations (*i.e.*,. May 2008 to June 2009). Please confirm that Vale will produce documents in response to Request No. 10, modified as follows: All Documents and Communications concerning any meetings or discussions with Rio Tinto regarding Rio Tinto's Concession from May 2008 to June 2009.

**Request No. 11.** We understand that Vale objects to this request as overly broad and

burdensome because it believes that this request would necessarily encompass the legitimate business operations of the joint venture at Simandou. Consequently, Vale has refused to "search for documents for this Request dated after the Government of Guinea's revocation of Rio Tinto's concession in December 2008." Rio Tinto cannot agree to this limitation. As we have alleged throughout the Complaint, the conspiracy between Vale and the other Defendants continued well after December 2008 and indeed, well into 2013 with the indictment of Defendant Cilins (Amended Complaint ¶¶ 102-104, 107-131). This Request is directly relevant to those allegations. However, in response to your request to narrow Request No. 11, we proposed to exclude any documents related to the routine business operations of the joint venture. By way of example, we assume these types of documents would include documents related to pricing, vendors, quality of the ore extracted by the joint venture, potential customers, and employment. We remain open to further discussions regarding additional categories of documents that would constitute routine business operations, and consequently, would be excluded from this request. However, based upon our discussions and your subsequent correspondence, it appears that we may be at an impasse in regard to this request.

     **Request No. 12.** We understand that Vale requests a narrowed list of categories or specific documents relevant to this Request. As we noted in our discussions, and as you can see from the index of Data Room documents we provided to you, the categories of documents listed in Request No. 12 are already a narrowed category of documents from the much greater universe of documents that Rio Tinto made available to Vale in the Data Room. The categories of documents identified in Request No. 12 also identifies those categories of documents that are most relevant to this case. As such, we offered to modify the request so as to remove the phrase "including Documents." Vale rejected that offer during our meet and confer. As we explained, Vale would not have had *any* Documents or Communications relating to this Request but for its negotiations with Rio Tinto and its access to the Rio Tinto Data Room. We continue to offer to exclude the phrase "including Documents" from this Request.

     Further, in the spirit of compromise, we can exclude the following categories of VDR documents from this request:

- Accounts – Financial Controllers

- Product Group Accounts, Reports and Letters

- Periodic Accounts

- Accounting Policies and Procedures

- Product Group Accounts, Reports and Letters

- Corporate Office Corporate & Secretarial

- Constitutional documents

- Company Officer Details

- Share Capital

- Other Budgets and Forecasts

- SI Budget Plan 2008

- Corporate Structure

- Simfer Corporate Structure

- Employment

- Job Descriptions and Organisational Chart

- Environmental Management

- Environmental Management plans

- Physical or Conceptual Mine Planning

- Policies, Plans and Business Development Projects

**Request Nos. 13 and 14.**  We understand that Vale's objections to Request Nos. 13 and 14 are similar to those of Request No. 11.  Namely, that Vale is concerned this request necessarily encompasses the legitimate business operations of the joint venture.  As such, Vale agrees to produce any documents responsive to this Request prior to December 2008, but believes there should be limitations on production after December 2008. Rio Tinto disagrees with this position given that our Complaint is rife with allegations of communications and meetings between Vale and the various Defendants after December 2008, as well as the myriad ways in which the Defendants attempted to cover and conceal their conspiracy up until the filing of Rio Tinto's complaint (Amended Complaint ¶¶ 102-104, 107-131).  We do, however, appreciate Vale's attempt to provide a framework for treating sets of individuals and organizations.  In response to your proposal, we suggest the following:

    o **Entities and Individuals associated with BSGR.**  We agree that we are likely close to an impasse with regard to those entities and individuals associated with Vale's business partner, BSGR (*i.e.,* BSGR, the Beny Steinmetz Group, Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, and Saada).  It is our understanding that it is also your position that Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, and Saada all had a role in the day-to-day business operations of the joint venture.  But that does not mean that all communications with them relate to day-to-day business operations.  As discussed above in relation to Request Nos. 2 and 11, we will continue to consider any additional proposals you have to exclude materials related to day-to-day business operations.  But a blanket objection to producing all communications with these individuals is not well taken.

    o **Nysco Management Co. and Onyx Financial Advisors.**  We suggest a similar proposal with regard to Nysco Management Co. and Onyx Financial Advisors to exclude materials related to day-to-day business operations of the joint venture.

○ **Defendants Steinmetz, BSG Resources, VBG-Vale BSGR Limited, and Thiam.**
With respect to communications with or relating to Defendants Steinmetz, BSG
Resources, VBG-Vale BSGR Limited, and Thiam, we similarly propose to limit
these requests so as to exclude any materials related to day-to-day business
operations of the joint venture.

○ **Defendants Cilins and Touré.**   We assume that all documents concerning
Defendants Touré and Cilins will be produced, given that there can be no good faith
basis to claim either Defendant had any role in the business operations of the joint
venture.

○ **Ibrahaim Touré.**   We understand that Vale agreed to produce documents concerning
communications with Ibrahaim Touré prior to April 30, 2010, but refuses to produce
any thereafter because he "had a business role with the joint venture."   In response,
we propose to modify this request such that Vale will produce any documents
concerning Mr. Touré responsive to this request until April 30, 2014, and exclude
from production any documents related to the day-to-day business operations of the
joint venture from April 30, 2010 to April 30, 2014.

○ **Guinean Presidents Camara and Conté.**   Rio Tinto has alleged in the Amended
Complaint and has reason to believe that Vale, independent or in conjunction with
the other Defendants, actively lobbied the Guinean government to acquire mining
rights at Simandou.  It is our understanding that those lobbying efforts were not only
specifically tied to requests about Rio Tinto's Concession, but were looped in to
other communications between Vale and the Guinean government related to its
mining capabilities in general, its efforts to develop Bauxite mines in Guinea, and
other related communications, as well as any efforts on the part of Vale to legitimize
BSGR's title to Simandou Blocks 1 and 2 after December 2008.  The documents
requested by this Request are therefore relevant and discoverable.

○ **Pentler Holdings and Matinda and Co. Limited.**   We understand that Vale has
agreed to produce any documents concerning communications by Vale, within Vale,
or with others regarding both entities.

**Request Nos. 15 and 16.**   It appears that the parties are in agreement that Vale will produce
any non-privileged documents regarding payment of consideration to the following individuals and
entities:  Steinmetz, Cilins, Mamadie Touré, Ibrahaim Touré, Camara, Conté, Pentler Holdings,
Nysco Management Co., Onyx Financial Advisors, Matinda and Co. Ltd., Struik, Tchelet, Cramer,
Merloni-Horemans, Trafford, Avidan, and Saada.   Vale, however, has refused to produce any
documents regarding payment of consideration to BSGR, VBG, and the Beny Steinmetz Group,
even though Vale did clarify that it is unaware of any relationship between itself and/or BSGR,
VBG, and the Beny Steinmetz Group other than that related to Simandou.  As we discussed during
our meet and confer, Rio Tinto is entitled to any and all documents relating to the financial aspect
of the relationship between Vale, BSGR, VBG and the Beny Steinmetz Group, especially given that
there appears to be no other relationship amongst those parties outside of Simandou.  Based on our
discussions, we believe that we are at an impasse on this.  Please let us know, however, if you have
any alternate proposals.

**Request No. 17.**  As discussed, Rio Tinto cannot accept Vale's limitation of this request to a narrow subset of documents relating only to "any payment or bribes alleged by Rio Tinto to have been made  by BSGR or Steinmetz prior to Vale entering into its joint venture with BSGR on April 30, 2010."  Indeed, Rio Tinto's Amended Complaint makes clear that the allegations of corruption go well beyond bribery and the announcement of the joint venture, including efforts by BSGR to partner with Defendant Thiam to disseminate false information to benefit BSGR and Vale and disparage Rio Tinto (Amended Complaint ¶¶ 107-118).  This Request goes directly to Vale's knowledge of Steinmetz's and BSGR's bribery and corruption and willingness to enter, and continue in, a joint venture with BSGR at Simandou.  Thus, the relevant time frame with respect to this Request must necessarily be January 1, 2005 to April 30, 2014, given that Steinmetz and BSGR dispatched Defendant Cilins to Guinea for the very purpose of acquiring mining rights at Simandou as early as 2005 (Amended Complaint ¶ 41), again dispatched Cilins in 2013, this time to the United States, to destroy evidence of its corrupt practices (Amended Complaint ¶¶ 124-131), and finally, that the Guinean investigation concluded in April 2014 that BSGR had obtained the rights to Simandou Blocks 1 and 2 through bribery and corruption, leading to the loss of BSGR and Vale's rights to those blocks (Amended Complaint ¶ 149).

**Request No. 18.**  We understand that Vale objects to this Request to the extent it calls for any documents outside of May 1, 2008 to June 30, 2009.  As discussed during our meet and confer, Vale's knowledge of BSGR and Steinmetz's interest in acquiring Simandou – both before and after negotiations ceased between Vale and Rio Tinto – is relevant to Vale's knowledge of BSGR and Steinmetz's interests in acquiring mining rights at Simandou and its willingness, therefore, to enter into a joint venture with BSGR and Simandou.  Nevertheless, in the spirit of compromise, we proposed in our meet and confer to limit the relevant time period for this Request from January 1, 2005 to April 22, 2011.  Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 19.**   As we discussed, this Request encompasses all Documents and Communications concerning BSGR's interest in acquiring any partner for Simandou, not just Vale.  The relevant time period would be from January 1, 2005 to April 30, 2010.  Please confirm that Vale will produce documents in response to this Request as modified.

**Request Nos. 20 and 21.**  Rio Tinto agrees that these requests will be limited to Vale's due diligence on Steinmetz and BSGR between January 1, 2005 and April 30, 2010.  We note, however, that this request would also cover all Documents and Communications Vale prepared, reviewed or considered in the course of its due diligence into a joint venture with BSGR at Simandou, including and documents or information contained in any data room set up for the purposes of negotiating that joint venture.  Please confirm that Vale agrees with this understanding and will produce documents in response to this Request as modified.

**Request Nos. 22-25.**  Rio Tinto understands and agrees that, subject to and without waiving its general and specific objections, Vale will produce documents in response to Request Nos. 22-25.

**Request No. 26.**  During our meet and confer, Rio Tinto explained that this was request was relevant because many anti-corruption policies and procedures contain "know your partner" type of provisions, which would clearly be relevant to Rio Tinto's allegations that Vale knew or should have known of BSGR and Steinmetz's bribery and corruption. In response to your objections, Rio Tinto

proposed narrowing the request to the anti-corruption policies that Vale had in effect with or would have governed Vale's operations with respect to Simandou or with respect to those Vale employees involved with Simandou.  Please confirm that Vale will produce documents in response to this Request as modified.

     **Request No. 27.**  Rio Tinto agrees to withdraw this Request.

     **Request No. 28.**  With regard to Request No. 28, you explained that documents reflecting what occurred in meetings between BSGR and Vale may be relevant, but disagreed that any other information, such as Vale's offering price to BSGR for the Simandou joint venture, would be relevant.  As we explained, such information would be relevant here given that Vale's view of Simandou, and any price it later offered to pay BSGR for Simandou, were substantially informed by its negotiations with Rio Tinto and its access to the Rio Tinto Data Room.  We believe we are at an impasse on this.  Please let us know if you have any further proposals for us to consider.

     **Request No. 29.**  The parties are in agreement that, in response to Request No. 29, Vale will produce any Documents exchanged or executed in connection with the Vale-BSGR Transaction, including but not limited to contracts, shareholders agreement, framework agreement, and anti-bribery certificates.

     **Request No. 30.**  You confirmed that Vale was represented by Clifford Chance, not Cleary Gottlieb, throughout the entire Vale-BSGR Transaction and that Clifford Chance retained Nardello & Co.  You further confirmed that Skadden Arps represented BSGR in the Vale-BSGR Transaction. After considering your responses and objections, Rio Tinto agrees to withdraw this Request.

     **Request Nos. 31 and 32.**  The parties are in agreement that, with respect to Request Nos. 31 and 32, Vale will produce Documents sufficient to identify the location and dates of all meetings between Vale and its representatives and BSGR [Request No. 31] and its representatives and Rio Tinto [Request no. 32] and its representatives in connection with the consideration, evaluation, negotiation, or execution of the Vale-BSGR Transaction [Request No. 31] or a potential transaction with Rio Tinto regarding Simandou [Request No. 32].

     **Request No. 33.**  In our meet and confer process you asked that Rio Tinto identify Documents, categories of Documents, and categories of information to limit this Request.  We have taken your Request under advisement and, consistent with Request No. 12, identify the following categories of Documents and information for this Request:  geology, mining, transport, modeling and mapping, resource estimates, exploration data, suitable mining methods, drilling operations, processing, logistics, the Transguinean Railway, the Guinean passenger rail, and the usage of railways and ports in Liberia.  Also consistent with Request No. 12, we further agree to exclude the categories of VDR documents identified in Request No. 12 from this request as well.  Please confirm that Vale will produce documents in response to this Request as modified.

     **Request No. 34.**  Upon further reflection, Rio Tinto cannot agree to limit the relevant time period for Request No. 34 to November 24, 2008.  Instead, we propose modifying the relevant time period for this Request to May 1, 2008 to April 20, 2014.  Please confirm that Vale will produce documents in response to this Request as modified.

     **Request No. 35.**  Rio Tinto agrees to limit the relevant time period for Request No. 35 to

begin with November 24, 2008. After further consideration, Rio Tinto proposes an end date of April 30, 2014. Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 36.** Our understanding of the parties agreement with respect to Request No. 36 was such that the request would be narrowed to "Documents sufficient to show the origin and destination of wire transfers, cash payments, and any other payments between Vale and BSGR in connection with the Vale-BSGR Transaction." As discussed and agreed upon in our meet and confer, this modification incorporates the language used in the Request itself. We note that this differs slightly from your October 7, 2014 correspondence. Please confirm that Vale will produce documents in response to this Request as modified here.

**Request No. 37 and 38.** As we explained, the departures of Roger Agnelli and Fabio Barbosa are relevant to the claims at issue here and more specifically, to Vale's knowledge of Steinmetz and BSGR's efforts to steal Simandou Blocks 1 and 2 from Rio Tinto. In particular, we note references in a March 2014 Piauí article titled "Risk Contract" that Barbosa "refused to sign" the deal with BSGR, and "instructed the executives from his department not to shoulder such responsibility." The article also notes that, with respect to Agnelli, the terms of the Vale-BSGR deal "left Roger Agnelli in a vulnerable position," and that Agnelli was later fired from his position after the Managing Director of Vale's Board of Directors reviewed the Vale-BSGR contract and "concluded that it was contrary to the company's interests." Although the article is publicly available, we enclose it here for your reference.

**Request No. 39.** With regard to Request No. 39, we clarified that this Request calls for documents provided by Vale to the Guinean Technical Committee as well as any internal discussions within Vale concerning whether BSGR's rights to Blocks 1 and 2 might be subject to rescission or annulment. We further noted that this would encompass documents both prior to Vale entering into a joint venture with BSGR as well as documents after entering the joint venture. With respect to this latter category of documents, we explained that, for example, any documents evidencing regret over the deal with BSGR because of allegations of bribery and corruption would be relevant. You rejected this as irrelevant but agreed to provide a counterproposal to this Request. We are still awaiting that proposal.

**Request No. 40.** Rio Tinto understands and agrees that, subject to and without waiving its general and specific objections, Vale will produce documents in response to Request No. 40.

**Request Nos. 41 and 42.** As we clarified in the meet and confer, Rio Tinto is not seeking Vale's tax records. You confirmed that Vale has not been in communication with government regulators from Switzerland or France. You also proposed to produce substantive communications exchanged with government regulators, including the Government of Guinea, the U.K. Serious Fraud Office, the U.S. Department of Justice, and the U.S. Security and Exchange Commission, as well as documents produced to those regulators, excluding from production any non-substantive transmittal letters. We have considered your proposal and agree that Vale will, subject to its other general and specific objections, produce documents in response to this Request as modified above.

**Request No. 43.** We explained that Request No. 43 encompasses more than merely Vale's document retention policies. In particular, we pointed you to allegations regarding Cilins's efforts to destroy documents in the United States (Amended Complaint ¶¶ 119-131) and noted that any

documents regarding those efforts, or other efforts to destroy documents in relation to investigations or lawsuits regarding Simandou, would also be relevant to this Request.  You agreed to provide a counterproposal to this Request.  We are still awaiting that proposal.

**Request Nos. 44-50.**  It is our understanding that, after meeting and conferring, you are refusing to produce any documents in response to this Request.  As we explained, this Request does not concern information that Vale obtained from Rio Tinto, but rather, is targeted at any Documents or Communications that Vale received from BSGR or information that Vale itself independently created or developed itself, or that was prepared for Vale by a third party relating to specific and limited subject matters identified in Request Nos. 44-50 (e.g. port data and studies, Transguinean railway, rails and ports in Liberia, etc.).  As we noted, Rio Tinto has alleged that Vale and BSGR did little to no independent work in developing Simandou and instead, merely took the information provided to Vale in Rio Tinto's Data Room (Amended Complaint ¶¶ 119-120).  Request Nos. 44-50 are directly relevant to those allegations.  It appears from your correspondence that we are at an impasse with regard to these Requests and require a ruling from the Court.

### Interrogatories

**Relevant Time Period.**  It is our understanding that you object to the relevant time period of "January 1, 2005 to present" and instead propose May 1, 2008 to April 30, 2010.  For the same reasons discussed above with regard to Instruction No. 2 of Rio Tinto's First RFP, Rio Tinto cannot agree to this limitation.  You agreed to re-consider your position in light of our meet and confers on Rio Tinto's First RFP.  We look forward to receiving your response.

**Interrogatory No. 2.**  Rio Tinto also asked that you reconsider your objection to Interrogatory No. 2 given our meet and confer discussions.  We look forward to receiving your response.

Thank you for taking the time to meet and confer regarding Rio Tinto's First RFP and First Set of Interrogatories.  We believe the parties have made substantial progress in resolving many issues, but, as evidenced by the above, several areas of disagreement still remain outstanding.  Finally, we note that the ESI Protocol (Dkt. No. 82) requires the parties to meet and confer regarding relevant search terms and/or the use of predictive coding.  We would like to schedule that meet and confer for some time in November.  Please let us know your availability.

Best,


/s/ Eric C. Lyttle
Eric C. Lyttle