**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

October 29, 2014

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:     *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

        We write on behalf of Plaintiff Rio Tinto plc ("Rio Tinto") in the above-captioned matter to respectfully request, pursuant to Local Civil Rule 37.2, a pre-motion conference concerning Rio Tinto's proposed motion to compel Defendant Thiam to respond to Rio Tinto's discovery requests.

        Rio Tinto served Defendant Thiam with its First Set of Requests for Production on June 30, 2014.  On September 3, 2014, Defendant Thiam served his responses and objections.  Since then, Rio Tinto and Defendant Thiam have conducted telephonic meet and confers on September 23, 2014 and October 10, 2014, and have exchanged correspondence related thereto.  Defendant Thiam has, in theory, agreed to produce documents that are responsive to the majority of Rio Tinto's First Set of Requests for Production (subject to some narrowing and revisions agreed to by Rio Tinto through the meet and confer process).  Thus, this dispute is not about objections based on relevance.  Instead, Defendant Thiam is taking the position that, despite the existence of a robust protective order in this case (*see* Dkt. No. 81), he cannot even begin producing documents for the foreseeable future because of objections based upon the potential existence of unidentified laws, confidentiality agreements, secrecy rules and privileges that *might* prohibit disclosure.  Accordingly, Rio Tinto seeks to file a motion to compel requiring Defendant Thiam to substantiate these objections with concrete information (or withdraw them) by November 21, 2014, and to begin a rolling document production no later than December 1, 2014.[1]

_____

        [1]   Should Defendant Thiam have a significant volume of data warranting the application of search terms or other culling criteria, Rio Tinto is of course amenable to modifying this date as appropriate.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

I.   **Defendant Thiam Refuses to Produce Documents Based on Hypothetical Laws, Contracts, Secrecy Rules, and Privileges**

In Defendant Thiam's responses and objections to Rio Tinto's First Set of Requests for Production, he included several general objections that apparently apply to all of Rio Tinto's document requests, including the following:

- "5. Thiam objects to the Requests to the extent that responding to the Requests would violate any of Thiam's obligations arising from his role as a Minister of the Government of the Republic of Guinea."

- "6. Thiam objects to the Requests to the extent that responding to the Requests would violate any provision of the law of the Republic of Guinea or any other applicable law."

- "7. Thiam objects to the Requests to the extent they seek the documents protected from disclosure by the terms of a confidentiality agreement or order."

Decl. of Matthew Karlan, Dkt. No. 99 ("Karlan Decl.") Ex. T (Defendant Mahmoud Thiam's Responses and Objections to Plaintiff's First Set of Document Requests dated September 3, 2014).

During the first meet and confer between Rio Tinto and Defendant Thiam on September 23, 2014, Rio Tinto asked Defendant Thiam's attorney to provide clarification about the above-listed objections (hereinafter, "General Objections 5, 6 and 7"). Defendant Thiam's counsel explained that General Objections 5 and 6 are based upon the *possibility* that certain laws or obligations might restrict Thiam's disclosure of documents and communications obtained in connection with his service as a Minister of the Government of Guinea. As of September 23, 2014 – almost three months after Rio Tinto served its First Set of Requests for Production – Defendant Thiam's counsel was unable to provide any details about the potential laws that might prohibit such disclosure, nor had they begun searching for an expert they contend is needed to assist them with determining whether any such laws even exist.

Later, on October 10, 2014, Defendant Thiam's counsel sent a letter to Rio Tinto adding a new objection to Requests 13 and 14 of Rio Tinto's First Set of Requests for Production:[2]

On further review, we intend to amend Thiam's Responses and Objections to state that Mr. Thiam also specifically objects to Request Nos. 13 and 14 to the extent that they ask him to reveal information that is protected from disclosure by governmental secrecy rules and privileges concerning communications with the governmental

---

[2] Request No. 13 seeks "All Documents and Communications concerning Simandou and/or the Vale-BSGR Transaction with any governmental entity including the CTRTCM, the United Kingdom's Serious Fraud Office, the U.S. Department of Justice, Securities and Exchange Commission, or Internal Revenue Service, France, and Switzerland regarding Simandou." Request No. 14 seeks "All Documents and Communications concerning Simandou and/or the Vale-BSGR Transaction provided or produced to any governmental entity, including the CTRTCM, the United Kingdom's Serious Fraud Office; the U.S. Department of Justice, Securities and Exchange Commission, or Internal Revenue Service, France, and Switzerland." Karlan Decl. Ex. L (Plaintiff Rio Tinto's First Set of Document Requests to Mahmoud Thiam dated June 30, 2014).

entities identified in the requests.

Letter from K. Abravanel to M. McCaffrey dated October 10, 2014 at 2, attached as Ex. 1. Hereinafter, Rio Tinto will refer to this objection as the "Unspecified Secrecy Rules and Privileges Objection." In that letter, counsel for Defendant Thiam also indicated that, over three months after Rio Tinto served its First Set of Requests, Defendant Thiam now objects to Rio Tinto's proposed time frame and intends to amend his responses and objections to Rio Tinto's First Set of Requests accordingly.

After receiving the letter from Ms. Abravanel, Rio Tinto held another meet and confer on October 10, 2014. Thiam's counsel indicated that they had initiated a search for a Guinean law expert to explore prohibitions on disclosure, but did not yet have any names of potential experts. Counsel for Thiam also stated that they were still unaware of any specific laws that might prohibit Thiam from producing documents, but that they still have a general concern that some *might* exist.

Defendant Thiam's position with respect to the "confidentiality agreements" referenced in General Objection 7 is similarly unsatisfactory. As of October 10, 2014, Defendant Thiam's attorneys were unaware of any specific confidentiality agreements that would prohibit disclosure, but were concerned that such documents *might* exist. In other words, the existence of these confidentiality agreements that prohibit Thiam from producing documents in this litigation is completely hypothetical.

As for the newly-minted Unspecified Secrecy Rules and Privileges Objection referenced in Defendant Thiam's October 10, 2014 letter, Defendant Thiam's counsel stated that the Unspecified Secrecy Rules and Privileges Objection is not limited to Guinean law alone, but *any* other applicable government investigation privilege. Defendant Thiam's attorney was not, however, able to provide Rio Tinto with any examples of what these supposed secrecy rules and privileges may be. Defendant Thiam's attorney also represented that although she asked her client whether he had produced any documents to any governmental authorities, her client told her that he "does not know."

Rio Tinto sent a follow-up letter to Defendant Thiam's counsel on October 15, 2014 summarizing the status of negotiations to date. In that letter, Rio Tinto asked Defendant Thiam's counsel to provide an update on when they intended to serve amended responses and objections, their search for a Guinean law expert, and their search for applicable secrecy rules and privileges. Rio Tinto also requested that Defendant Thiam's counsel provide an update on the existence of the confidentiality agreements no later than October 24, 2014. Letter from M. McCaffrey to K. Abravanal dated October 15, 2014 at 1-2, 4, attached as Ex. 2. Defendant Thiam's counsel has not responded to Rio Tinto's requests as of the filing of this letter. Similarly, Defendant Thiam's counsel has failed to provide his amended responses and objections.

## II.    This Court Should Compel Defendant Thiam To Substantiate General Objections 5, 6, and 7, and the Unspecified Secrecy Rules and Privileges Objection

Defendant Thiam has utterly failed to support his general objections with any concrete information. Instead, his counsel has openly admitted that they included the objections at issue because there *might* be Guinean laws, confidentiality agreements, secrecy rules and/or privileges

prohibiting disclosure. It is, however, well-established that "'boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy' while producing 'no documents . . . [is] a paradigm of discovery abuse.'" *Freyd v. Meringolo*, 09-cv-07196, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011) (citing *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009)). Moreover, "the party resisting discovery bears the burden of demonstrating that its objections should be sustained." *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984) ("The burden now falls upon . . . the party resisting discovery, to clarify and explain its objections and to provide support therefor") (collecting cases). Here, Defendant Thiam bears the burden of establishing that Guinean laws and confidentiality agreements exist. Not only has he not met this burden, he apparently has made little or no effort to do so. Absent any concrete information to support General Objections 5, 6, 7 and the Unspecified Secrecy Rules and Privileges Objection, they appear to be just an excuse to avoid document production in this case. This Court should not permit this dilatory conduct to continue, and Defendant Thiam should be ordered to provide concrete information to support his objections, or withdraw them and commence document production. To the extent certain documents in Defendant Thiam's possession, custody or control are not subject to these objections, production of such documents should commence immediately.

**Guinean Laws Do Not Trump Thiam's Obligations to Produce Documents.** Given that this case was filed six months ago and Defendant Thiam is unable to identify any Guinean law prohibiting him from producing responsive documents, General Objections 5 and 6 are particularly suspect. Even if Defendant Thiam is able to find an expert to opine that Guinean law somehow prohibits the disclosure of any documents, such an opinion would by no means discharge him of his obligation to produce those documents here. To the contrary, the Supreme Court has held that the operation of a foreign law – even a blocking statute – "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [law]." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 n.29 (1987) (citing *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958)). Accordingly, it is imperative that Defendant Thiam give Rio Tinto notice of whatever laws he intends to rely on, as Rio Tinto is entitled to move to compel any documents withheld on the basis of foreign law.[3] And if no such laws exist, Defendant Thiam should withdraw General Objections 5 and 6 and begin producing documents.

Finally, Mr. Thiam was only the Guinean Minister of Mines, Energy, and Hydraulics between January 2009 and 2011. Accordingly, any inquiry into Guinean law should not delay the production of documents that pre-date January 2009 or post-date his exit from the position. Likewise, even during his tenure, his communications with his co-conspirators about the bribery, cover up and other illicit acts related to Simandou would not have been part of his official duties, and

---

[3] In fact, some courts have imposed sanctions upon defendants that have refused to comply with orders requiring that defendants produce certain documents being withheld on the grounds that production would violate foreign law. *See, e.g.*, *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 197 (E.D.N.Y. 2010) (rejecting defendant's fear of criminal prosecution for violating foreign secrecy laws as "not, alone, sufficient justification for [its] production failures"), *aff'd*, 706 F.3d 92 (2d Cir. 2013).

therefore not subject to any Guinean law protections.

***Agreements with Confidentiality Clauses Do Not Prevent Document Production.***
Defendant Thiam's general objections as to confidentiality agreements that *might* exist are
completely inappropriate.  It speaks volumes that six months after being named as a defendant in this
lawsuit, Defendant Thiam is still unable to a identify a *single agreement* that contains a non-
disclosure provision.  Moreover, even if such agreements did exist, their existence does not absolve
Mr. Thiam of his discovery obligations in this lawsuit.  *See In re Oxycontin Antitrust Litig.*, No. 04-
md-1603, 2013 WL 1701009, at *2 (S.D.N.Y. Apr. 15, 2013) (finding that withholding documents
because they were covered by third-party confidentiality agreements is not valid because "[t]here is
no privilege for documents merely because they are subject to a confidentiality agreement.") (citing
*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-cv-5560, 2007 WL 473726, at
*3 (S.D.N.Y. Feb. 14, 2007)); *see also Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*,
91 F.R.D. 84, 87-88 (E.D.N.Y. 1981) (holding that private confidentiality agreements "do not
immunize . . . materials from discovery" and that "[t]o hold otherwise would clearly not serve the
truth-seeking function of discovery in federal litigation").  If anything, he might have to give certain
non-parties written notice of his discovery obligations here, and explain that he is obligated by law to
produce the documents.  Moreover, he can assure any non-parties that the documents are being
produced pursuant to a protective order (Dkt. No. 81) that adequately safeguards the confidentiality
of all documents produced in the litigation.  Accordingly, Defendant Thiam should be compelled to
either identify the confidentiality agreements that supposedly prohibit disclosure, or withdraw
General Objection 7 and commence his document production.  Additionally, to the extent Mr. Thiam
maintains responsive documents that are not subject to any of the unidentified confidentiality
agreements, production of those documents should commence immediately.

***The Unspecified Secrecy Rules and Privileges Objection Cannot Delay Production.***  As
explained above, Defendant Thiam cannot continue to delay production based upon hypothetical
objections.  The same goes for the Unspecified Secrecy Rules and Privileges Objection that
Defendant Thiam has made with respect to Requests 13 and 14.  For all of the reasons stated above,
Defendant Thiam should be compelled to either identify the unspecified secrecy rules and privileges
that supposedly prohibit disclosure, or withdraw the Unspecified Secrecy Rules and Privileges
Objection  and produce documents in response to Requests 13 and 14.

*****

 Defendant Thiam has had ample time to conduct an inquiry into whether his concerns
regarding Guinean law and other unspecified secrecy rules and/or privileges are genuine, and has
had more than enough time to review his own documents to determine whether any confidentiality
agreements exist.  Defendant Thiam cannot indefinitely avoid producing documents based on these
unsubstantiated concerns.  Accordingly, Rio Tinto respectfully requests that this Court hold a pre-
motion conference during the conference currently scheduled for November 3, 2014.  Ultimately,
Rio Tinto seeks to file a motion to compel Defendant Thiam to identify with specificity the relevant
Guinean laws, confidentiality agreements, secrecy rules, and privileges that supposedly prohibit
disclosure by November 21, 2014, and to begin a rolling document production no later than
December 1, 2014.  Finally, even if some Guinean law, confidentiality agreement, secrecy rule, or
privilege prohibited the disclosure of certain documents maintained by Mr. Thiam, it certainly does
not prohibit disclosure of *all* responsive documents in his possession.  Accordingly, Rio Tinto seeks

an order compelling Mr. Thiam to begin producing documents not affected by these hypothetical objections no later than December 1, 2014.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle

EXHIBIT 1



Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

T 212 660 3000
F 212 660 3001
www.sandw.com

October 10, 2014

**<u>VIA EMAIL</u>**

Meghan A. McCaffrey, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street NW
11th Floor
Washington, D.C. 20001

   Re: <u>*Rio Tinto plc v. Vale S.A., et al.*</u>, No. 14-cv-3042 (RMB) (AJP)

Dear Meghan:

   I write regarding certain document discovery issues, as a follow-up to our telephonic meet and confer session on September 23, 2014, in response to your letter dated October 1, 2014 and in preparation for our next telephonic meet and confer session on October 10, 2014.

   As a preliminary matter, during our September 23 telephonic meet and confer, you asked about several of our general objections to Rio Tinto's First Request for Production of Documents to Mahmoud Thiam ("Rio Tinto's First RFP"). First, you asked whether we are aware of any specific laws or obligations that would restrict Mr. Thiam's disclosure of documents and communications obtained in connection with his service as a minister of the Government of Guinea. We have initiated efforts to obtain expert advice on Guinean law to help us understand the parameters of what can be publicly disclosed. Please note that until we obtain this advice, Mr. Thiam will not be in a position to disclose any such documents or communications.

   Similarly, you asked whether our objection arising from the terms of a confidentiality agreement was just a "boilerplate objection," or whether it referred to a specific agreement. I stated that we are not aware of any agreement in particular at this point, but need to undertake a thorough analysis to determine which documents Mr. Thiam will be able to disclose in response to Rio Tinto's First RFP. Please note that until we complete this analysis, Mr. Thiam will not be in a position to disclose certain agreements or communications related to them.

   Further, please note that we intend to amend Mr. Thiam's Responses and Objections to Rio Tinto's First RFP ("Thiam's Responses and Objections") to include an additional general objection to Instruction No. 2 of Rio Tinto's First RFP, which states that the timeframe for each request is "the period January 1, 2005 to the present." As Rio Tinto has acknowledged in the Amended Complaint, Mr. Thiam served as the Guinean Minister of Mines, Energy and Hydraulics between January 2009 and 2011. Am. Compl. ¶ 24. Accordingly, Mr. Thiam objects to Rio Tinto's use of the time period in Instruction No. 2 to the extent it is overbroad, unduly

Meghan A. McCaffrey, Esq.
October 10, 2014
Page 2

burdensome, and seeks documents that are beyond the scope of the allegations in the Complaint and that are neither material nor necessary to the prosecution or defense of this action.

As to the specific requests set forth in your October 1 letter, please find our responses set forth below:

- <u>Request No. 1</u>: We would like to meet and confer to clarify the meaning and scope of the phrase "relating to matters alleged in the Complaint" used in this Request.  We note that this phrase is virtually identical to the phrase "that concern allegations in the Amended Complaint" which we have used in our responses to Request Nos. 9, 10, 11, 12 and 15, and to which you have raised an objection.

- <u>Request Nos. 2, 3, and 5:</u> We confirm that subject to his general and specific objections, Mr. Thiam will produce all documents within his possession, custody or control that are responsive to Request Nos. 2, 3, and 5 of Rio Tinto's RFP.

- <u>Request No. 4:</u> Following further review, and in response to the request in your October 1 letter, we agree to amend Thiam's Responses and Objections to remove the additional qualifier "that concern Rio Tinto's Concession" from our response to Request No. 4 of Rio Tinto's RFP.  Accordingly, subject to his general and specific objections, Mr. Thiam will produce all documents within his possession custody or control that are responsive this request.

- <u>Request Nos. 6, 7, and 8:</u> You have confirmed that that the qualifier "relating to Simandou" applies to the entirety of Request Nos. 6 and 8 of Rio Tinto's RFP, and that the qualifier "regarding Simandou" applies to the entirety of Request No. 7 of Rio Tinto's RFP.  Based on this confirmation, and subject to his general and specific objections, Mr. Thiam will produce all documents within his possession, custody or control that are responsive to these requests.

- <u>Request Nos. 13 and 14:</u> On further review, we intend to amend Thiam's Responses and Objections to state that Mr. Thiam also specifically objects to Request Nos. 13 and 14 to the extent that they ask him to reveal information that is protected from disclosure by governmental secrecy rules and privileges concerning communications with the governmental entities identified in the requests.

  As for the specific comments in your October 1 letter, we note that you have confirmed that the qualifier "concerning Simandou and/or the Vale-BSGR Transaction" applies to the entirety of Request Nos. 13 and 14 of Rio Tinto's RFP.  Based on this confirmation, and subject to his general and specific objections (including the additional objection stated above), Mr. Thiam will produce all documents within his possession, custody or control that are responsive to these requests.

# EXHIBIT 2

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8177**

WRITER'S INTERNET ADDRESS
**meghanmccaffrey@quinnemanuel.com**

October 15, 2014

Karen E. Abravanel
Sullivan and Worcester LLP
1633 Broadway, 32nd Floor
New York, New York 10019

Re:     *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Karen:

I write in response to your October 10, 2014 letter and to follow up on our October 10, 2014 telephonic meet and confer regarding the collection and production of documents from Mr. Thiam in response to Rio Tinto's First Request for Production of Documents ("Rio Tinto's First RFP"). Below is a summary of the relevant portions of our discussion, as well as Rio Tinto's understanding of the position that Mr. Thiam has adopted regarding each of the requests included in Rio Tinto's First RFP.

## General Issues

***Thiam's Search for a Guinean Law Expert.***  During our first meet and confer on September 23, 2014, you explained that several of Thiam's objections are based upon the possibility that certain laws or obligations might restrict Thiam's disclosure of documents and communications obtained in connection with his service as a minister of the Government of Guinea.  At the time, you were unable to provide any detail about the potential laws that might prohibit such disclosure.  As of October 10, it is our understanding that you have now initiated a search for a Guinean law expert on behalf of Mr. Thiam, but that you do not yet have any names of potential experts.  It is also our understanding that at this time, you are still unaware of any specific laws that might prohibit Mr. Thiam from producing documents, but that you have a general concern that some might exist.

Given that it has been more than three months since we served Rio Tinto's First RFP and you are only now taking the first step of soliciting names of experts, Rio Tinto is concerned about the amount of time it will take before Mr. Thiam will begin producing responsive documents. Accordingly, we request that you proceed expeditiously with this search for an expert, notify us once you have retained someone and keep us informed of any legal analysis that follows.  We also add that since Mr. Thiam was only the Guinean Minister of Mines, Energy, and Hydraulics between January 2009 and 2011, your inquiry into Guinean law should not delay the production of documents that pre-date January 2009 or post-date his exit from the position.  Please confirm you will produce responsive documents outside the timeframe when Mr. Thiam was employed by the Government of Guinea.

***Confidentiality Agreements.***   Your objections also convey the possibility that certain confidentiality agreements might prohibit Mr. Thiam from producing documents in this litigation. On our call, you stated that at the time, you were unaware of any specific confidentiality agreements. In other words, the existence of these confidentiality agreements that prohibit Mr. Thiam from producing documents are completely hypothetical at this juncture.  Moreover, we view this concern as largely illusory, and do not see any reason why document production should be delayed based upon these yet-to-be identified agreements.  Were such agreements to exist, it is likely that all Mr. Thiam has to do is notify the various parties that he is required to produce certain documents in this litigation, and provide a copy of the Protective Order that has been entered in this case.

As stated above with respect to the Guinean law expert inquiry, we are concerned about how long this process is taking, and how little progress has been made during the last three months. Accordingly, we ask that you provide us with an update on the existence of these supposed agreements no later than October 24, 2014.

***Timeframe for Discovery***.  We understand that you plan to amend your general objections to include an objection to the timeframe based on the fact that Mr. Thiam was only the Guinean Minister of Mines, Energy, and Hydraulics between January 2009 and 2011.  As we explained during our meet and confer, it is entirely possible that Mr. Thiam has responsive documents from the time period prior to his appointment as a minister.  It is also possible that Mr. Thiam has responsive documents dated after he completed his time as a minister.  Accordingly, Rio Tinto is not prepared to limit the timeframe for discovery for Mr. Thiam, but we are willing to take any proposals from you on this topic under advisement.

***Search Terms.***   During our call, you asked us for a list of search terms to apply to Mr. Thiam's data so that you do not have to review all of his ESI.  As we explained on the call, were we to go the route of search terms, we would prefer that you provide us with a list of search terms, which we can then review and augment.

## Specific Document Requests

**Request No. 1.**   In your October 10 letter, you explained that because we object to Mr. Thiam limiting his document production to what he considers to be "relating to matters alleged in the Complaint," you have now decided that you no longer understand our use of the phrase "relating to matters in the Complaint" in Request No. 1.  We find it hard to believe that there is really any confusion.  That said, to resolve this area of disagreement, Rio Tinto is willing to modify Request No. 1 as follows:

> All Documents and Communications by, between, or among any of the Defendants relating to the matters alleged in the Complaint, including but not limited to the Defendants' conspiracy to steal Rio Tinto's Concession and grant Blocks 1 and 2 to BSGR; payments, gifts, gratuities, or anything else of value relating to Simandou; efforts to conceal the conspiracy to steal Rio Tinto's Concession; Vale's efforts to acquire mining rights at Simandou; BSGR's qualifications, or lack thereof, to develop Simandou; Rio Tinto's confidential information provided to Vale as part of the Rio Tinto-Vale joint venture negotiations; and investigations by various Governments related to

No. 15(c) and (d) as follows:

> All Documents and Communications concerning any communication between you and any other person or entity regarding the destruction of documents relating to . . . (c) the Government of Guinea, its departments, agencies or instrumentalities *relating to Simandou*; (d) any official, director, employee, agent, or representative of the Government of Guinea, its departments, agencies, or instrumentalities *relating to Simandou*.

The remaining the sub-parts of Request No. 15 remain the same (and are not qualified by the words "relating to Simandou." Please confirm that you will produce documents responsive to this Request as narrowed by our Proposal.

Finally, we note that you indicated that you plan to serve Amended responses and objections to Rio Tinto's First Set of RFPs. Please let us know when you plan to serve such a document. While we remain hopeful that we can resolve any outstanding areas of disagreement, we must work to bring the meet and confer process to a close so that we can identify any lingering areas of dispute for Judge Peck in a timely manner.

Best,


/s/ Meghan A. McCaffrey
Meghan A. McCaffrey