**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8120**

WRITER'S INTERNET ADDRESS
**williamburck@quinnemanuel.com**

October 30, 2014

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:    *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

　　We write on behalf of Plaintiff Rio Tinto plc ("Rio Tinto") in the above-captioned matter to respectfully request, pursuant to Local Civil Rule 37.2, a pre-motion conference concerning differences that have arisen between Rio Tinto and Defendant Vale S.A. ("Vale") over Rio Tinto's discovery requests.

　　Rio Tinto engaged Vale in extensive good-faith meet and confer negotiations, spanning multiple sessions and multiple hours.[1]  The last of these sessions was completed this past Tuesday, October 28, 2014.  Those negotiations on the whole were productive, resulting in a number of compromises and only a limited number of issues that presently require the Court's guidance.  As detailed below, these outstanding issues go to the heart of this case.

　　Yet Defendant Vale has taken an unreasonably restrictive view of the scope of discovery.  It is well established that the standard for relevance in the discovery context is, by design, liberal and permissive.  Discovery under Rule 26(b) properly encompasses any and all information that appears reasonably calculated to lead to the discovery of admissible evidence.  S*ee Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (term "reasonably calculated" means "any possibility that the information

---

[1]  Rio Tinto and Vale met and conferred telephonically on five different occasions – September 4, 2014, September 24, 2014, September 30, 2014, October 6, 2014, and October 28, 2014 – with each session lasting an hour or more.

sought may be relevant to the subject matter of the action"). Accordingly, Rio Tinto is forced to seek leave from the Court to file a motion to compel requiring Vale to produce documents in response to the discovery requests discussed below.

## I.   Vale Must Produce Documents and Communications with Defendants Dated After December 2008

Unfortunately and without legitimate basis, Vale has largely refused to produce any documents or communications by or among the Defendants and various individuals associated with the Defendants after December 2008. *See* October 21, 2014 Letter from E. Lyttle to L. Liman, attached as Ex. 1, at 4-6.[2] Vale's position is at direct odds with the fact that Vale participated in a conspiracy to steal Rio Tinto's mining rights to Simandou that spanned almost ten years, from at least 2005-2013, and included a cover-up that likely continues to this day. Indeed, the Defendants were in constant contact from December 2008 onward, formalized their illicit joint venture in 2010, and engaged in document destruction in 2013. More specifically, we know, at a minimum, the conspiracy:

❖ In 2009-2010, had numerous meetings and communications in furtherance of the conspiracy and leading up to the announcement of the VBG joint venture in April 2010; (Dkt. No. 83 (the "Amended Complaint") ¶¶ 102-104, 107-108)

❖ In June 2010, paid at least one additional bribe to Defendant Thiam (*Id*. ¶¶ 14, 115, 176);

❖ From 2008-2011, drew upon the resources and power of Defendant Thiam, a U.S. citizen serving as the Guinean Minister of Mines to intimidate Rio Tinto into not pursuing its rights (*Id*. ¶¶ 97-101, 111-118);

❖ From 2010-2013, utilized the confidential information and technical know-how they had misappropriated from Rio Tinto to develop and exploit Simandou for their own joint benefit (*Id*. ¶¶ 15, 110, 119-120); and

❖ In 2013, sent Defendant Cilins into the United States to destroy evidence in a desperate attempt to further conceal and cover up their illicit activities (*Id*.¶¶ 16, 121-131).

---

[2] More specifically, Request No. 11 calls for the production of "All Documents and Communications between You and any Defendant regarding Rio Tinto's Concession." Request No. 13 calls for "All Documents and Communications concerning any Communication regarding Simandou between Your directors, officers, employees, representatives, agents, or consultants and (a) any Defendant; (b) Ibrahaim Touré; (c) Moussa Dadis Camara; (d) Lansana Conté; (e) Pentler Holdings; (f) Nysco Management Corporation; (g) The Beny Steinmetz Group; (h) Onyx Financial Advisors; (i) Matinda and Co. Limited; (j) Marc Struik; (k) Yossie Tchelet; (l) Dag Cramer; (m) Sandra Merloni-Horemans; (n) David Trafford; (o) Asher Avidan; and/or (p) Patrick Saada." Decl. of Matthew Karlan, Dkt. No. 99 ("Karlan Decl."), Ex. F. Vale has refused to produce any documents after December 2008 as to Any Defendant, the Beny Steinmetz Group, Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, Onyx Financial Advisors, Nysco Management Corporation, and Touré (after April 30, 2010). Ex. 1 at 3-4. Vale has taken the same position with respect to Request No. 14, which calls for "All Documents and Communications concerning any internal or external Communication among Your directors, officers, employees, representatives, agents, consultants, and/or any third party relating to Simandou" and concerning the same persons and entities as Request No. 13. *Id*. at 5-6.

Rio Tinto is entitled to discovery about all of this, and served requests that were appropriately tailored and targeted to get it.  Rio Tinto needs discovery about Vale's own role in this post-2008 conduct, what Vale knew about its co-conspirators' actions in this post-2008 period, and whether there is additional post-2008 illicit conduct by the conspiracy that Rio Tinto is not aware of.  Indeed, these requests drive at the very heart of the matters in this case – namely Defendants' communications, payments and efforts to steal Rio Tinto's rights at Simandou, and their subsequent attempts to conceal that scheme from detection.  They could not be more relevant.

Vale's purported basis for their refusal stems from alleged concerns that such documents may implicate the "day-to-day business operations" of VBG, the joint venture that was formed as part of the conspiracy in April 2010.  But Vale cannot hide behind the joint venture and its claims of "legitimate" business operations because the entire entity is itself a product of fraud and tainted by Defendants' misconduct.  Indeed, it stretches credulity that Vale would have this Court believe that any documents touching on the business operations of the Vale-BSGR joint venture are somehow legitimate when the Guinean government itself seized all of VBG's documents during its own investigation of how Defendants BSGR, Steinmetz and Vale acquired mining rights at Simandou.[3]  That suggests there was not much in the way of legitimate "day-to-day business operations" at VBG.  Moreover, it is particularly unclear how or why Vale would be concerned that documents between December 2008 and April 2010 could implicate the business operations of the Vale-BSGR joint venture given that the joint venture was not even announced until April 30, 2010.

In any event, to simply lodge a blanket objection and refuse to produce such highly relevant documents because they might impinge upon some non-relevant documents ignores the clear mandate of Rule 26(b)(1) that Rio Tinto is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defenses."  Fed. R. Civ. Proc. 26(b)(1); *see also ACLU v. Clapper*, 959 F. Supp. 2d 724, 746-47 (S.D.N.Y. 2013).  Any concerns that such requests may encompass the business operations of the joint venture is better managed through decisions on custodians, search terms and other culling criteria, not by a blanket refusal to produce all such communications.  And to the extent Vale's concerns are about confidentiality of non-relevant documents, that is exactly why this case has an extensive protective order in place (Dkt. No. 81).

Nevertheless, in an effort to resolve Vale's concerns and in the spirit of compromise, Rio Tinto proposed to exclude any documents related to the day-to-day business operations of the joint venture that are unrelated to the conspiracy. Ex. 1 at 3-4.  Specifically, Rio Tinto agreed to exclude any documents and communications by, between, or among Vale and its co-Defendants relating to the day-to-day business operations of the joint venture, including, among other things, documents related to employee and subcontractor hiring, equipment orders, and iron ore pricing.  *Id*.  Vale has rejected this proposal.  And despite numerous requests from Rio Tinto to provide alternate proposals

---

[3]   As noted in VBG's Initial disclosures, "there are additional potentially responsive documents and computers containing potentially responsive documents that were seized by the Judicial Police of the Republic of Guinea, pursuant to a judicially issued Commission Rogatory dated May 2, 2013, and remain in their custody, possession, and control." July 31, 2014 Rule 26(a)(1) Initial Disclosures of Defendants BSG Resources (Guinea) LTD. aka BSG Resources Guinée Ltd. aka VBG Guernsey and BSGR Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR, Karlan Decl., Ex. D, at 5.

for consideration, or to identify other categories of day-to-day business operations documents that could be excluded, Vale has refused to do so.  *Id.* at 2-6.  Rio Tinto is therefore left with no choice but to ask for everything – as it is entitled to do under the relevance standards under the Federal Rules.

Vale should be ordered to produce all documents and communications between the Defendants and various individuals associated with the Defendants both before and after December 2008 in response to Rio Tinto Document Request Nos. 11, 13 and 14.

## II.   Vale Must Produce Documents Relating to Transfers of Money, Gifts, or Other Consideration to BSGR, VBG, and the Beny Steinmetz Group

Even more incredibly, Vale also refuses to produce *any* documents related to transfers of money, gifts, or other consideration to BSGR, VBG, and the Beny Steinmetz Group (hereinafter, the "Payment Documents").[4]  Ex. 1 at 6.  Vale refuses to do so even though this case is, in part, *about the very payments made by, to and between these entities*.  These documents are undoubtedly relevant in a case about bribes and payments made by the Defendants as part of their ongoing scheme to steal Rio Tinto's mining rights at Simandou.

In refusing to produce documents responsive to this request, Vale yet again claims that such documents may implicate the "day-to-day business operations" of the joint venture.  Vale's sweeping refusal to produce any documents responsive to this request cannot be permitted to stand.  This is especially true here, where the joint venture upon which Vale reportedly relies on for its objection was not even formed until April 30, 2010.  Moreover, Rio Tinto again offered to exclude any documents related to the day-to-day business operations of the joint venture that are unrelated to the conspiracy.  Ex. 1 at 3-4.  But Vale has, yet again, refused Rio Tinto's proposal.  As discussed in Section I, *supra*, Vale cannot be permitted to hide behind the alleged "legitimate" business operations of the joint venture in order to avoid producing relevant documents here.  Vale should, therefore, be compelled to produce documents responsive to Rio Tinto Document Request Nos. 15 and 16.

---

[4]  Request No. 15 calls for "All Documents and Communications concerning any transfer of any gifts or anything else of value, including the origin and destination of wire transfers, cash payments, and any other payments, between You and (a) any Defendant; (b) Ibrahaim Touré; (c) Moussa Dadis Camara; (d) Lansana Conté; (e) Pentler Holdings; (f) Nysco Management Corporation; (g) The Beny Steinmetz Group; (h) Onyx Financial Advisors; (i) Matinda and Co. Limited; (j) Marc Struik; (k) Yossie Tchelet; (l) Dag Cramer; (m) Sandra Merloni-Horemans; (n) David Trafford; (o) Asher Avidan; and/or (p) Patrick Saada."  Karlan Decl., Ex. F.  Request No. 16 seeks "All Documents and Communications concerning any transfer of any gifts or anything else of value, including the origin and destination of wire transfers, cash payments, and any other payments, between any Defendant" and the same persons and entities as Request No. 15.  *Id.*  Vale has refused to produce *any* documents responsive to Request Nos. 15 and 16 as to BSGR, VBG, and the Beny Steinmetz Group, even though there appears to be no other relationship amongst Vale and those entities outside of Simandou.  *See* Ex. 1 at 6.

### III.    Vale Must Produce Documents Concerning the Materials it Reviewed in the Rio Tinto Data Room

At even the most basic level, this case involves Vale's theft of confidential information that Rio Tinto provided to Vale in the Rio Tinto Data Room during the parties' joint venture negotiations.  The Amended Complaint is replete with these allegations, including that Vale was "feigning interest in purchasing Rio Tinto's rights to some or all of the Simandou Concession in order to fraudulently obtain confidential information, so that Defendants could utilize that information to misappropriate Rio Tinto's Simandou Concession," (Amended Complaint ¶ 160), that a "key part" of Vale's strategy was to gain access to the information in Rio Tinto's Data Room, (*Id.* ¶ 4), that through Vale's "access to Rio Tinto's confidential geological, technical, and logistical data" in Rio Tinto's Data Room, the conspiracy "gained everything they needed" (*Id.* ¶ 10), and that the information Vale sought in Rio Tinto's data included, but was not limited to, "geological and technical information, product characteristics, suitable mining methods and drilling operations, processing and logistics, including the viability of different transportation options, and the status of efforts to bring the mine into production" (*Id.* ¶ 11).  The Amended Complaint also alleges that Vale and its co-conspirators utilized this very same confidential information and know-how to develop and exploit Simandou for their joint benefit.  (*Id.* at ¶¶ 15, 119-120.)

Rio Tinto needs and is entitled to know what Vale reviewed in the Rio Tinto Data Room, when it reviewed it, what it did with it, who discussed it, what communications were had about it internally and externally, which of its co-conspirators Vale shared it with, and then how they used it to seize control of Simandou.[5]  Again, these documents could not be more relevant.

Incredibly, Vale continues to refuse to produce documents concerning these materials, claiming that Rio Tinto must identify with specificity categories of documents or specific documents relevant to its request.  As an initial matter, this is not correct.  Vale more than anyone is well aware which of the documents from Rio Tinto's Data Room it misappropriated and misused.  But in any event, this is exactly what Rio Tinto already has done on multiple occasions – in its document requests, in the Amended Compliant (both of which identify particular categories of documents most relevant to this case) (*Id.* ¶¶ 15, 67-74, 119-120), and in the meet and confer process, where Rio Tinto proposed to exclude from its request 19 categories of documents available to Vale in Rio Tinto's Data Room.  Ex. 1 at 4-5.  Rio Tinto has also agreed to exclude all documents related to two other joint ventures Vale and Rio Tinto were negotiating – Potash and Corumbá – documents for both of which also were available in the Rio Tinto Data Room.  Taking Potash and Corumbá off the table has eliminated hundreds of documents from what is otherwise relevant in the Rio Tinto Data Room.

In light of these concessions, Vale's claims that Rio Tinto has not identified with specificity

---

[5]   Rio Tinto Request No. 12 seeks "All Documents and Communications concerning the materials, information, documents, and other data You reviewed in the Rio Tinto Data Room, including, Documents concerning: geology, mining, transport, modeling and mapping, resource estimates, exploration data, suitable mining methods, drilling operations, processing, logistics, the Transguinean Railway, any Guinean passenger rail, the usage of railways and ports in Liberia, and/or the confidential nature of the Data Room Materials."  Karlan Decl., Ex. F.

the types of documents it seeks are incredible. Rio Tinto has consistently sought the same types and categories of information (documents related to geological data and studies, mining data and studies, as well as rail transportation and port studies) in other related document requests.[6] And again, these are the same types and categories of documents that Rio Tinto also alleged that Vale stole. Amended Complaint ¶¶ 67-75, 84-90, 119-120. So Vale's claims that it does not know what Rio Tinto is looking for are just wrong. Indeed, it is unclear what more Rio Tinto can do and, more importantly, it is not required to do so.

The standard for determining relevance is both broad and generous and these documents qualify. Vale must, therefore, be compelled to produce documents responsive to Rio Tinto Document Request No. 12.

## IV.   Vale Must Produce Documents Related to Vale and BSGR's Independent Efforts to Develop Simandou

Rio Tinto served Vale with a series of targeted document requests seeking information related to Vale's and BSGR's independent efforts to develop Simandou outside of the information it stole from Rio Tinto. Those requests also seek the same information related to geological data and studies, mining data and studies, as well as rail transportation and port studies that, as discussed in Section III *supra*, Rio Tinto alleges Vale looked at in the Rio Tinto Data Room.[7] This makes sense. Discovery of this is necessary to know what, if any, work BSGR and Vale did to develop Simandou independent of the information it stole from Rio Tinto, and how Vale's and BSGR's documents and presentations changed after they stole and incorporated Rio Tinto's information.

Again, Rio Tinto has made every attempt to lessen any burden associated with producing documents responsive to these requests by specifically identifying targeted areas for discovery. Rio Tinto does not seek all of the data and information Vale and BSGR may have generated in their allegedly independent efforts to develop Simandou. For example, Rio Tinto does not seek information related to environmental management or conceptual mine planning. Instead, Rio Tinto is and always has been focused on documents related to geological data and studies, mining data and studies, as well as rail transportation and port studies.

Accordingly, Vale should be compelled to produce all documents related to its efforts and that of its co-Defendant and joint venture partner, BSGR's, efforts to independently develop Simandou in response to Rio Tinto Request Nos. 44-50.

---

[6]   *See, e.g.* Request Nos. 44-50. Karlan Decl., Ex. F.

[7]   Rio Tinto's Document Request Nos. 44-50 call for all Documents and communications relating to Simandou concerning: geological data, studies, analyses, plans or other documentation [No. 44], mining data and studies [No. 45], rail transportation [No. 46], port data and studies [No. 47], the Transguinean Railway or data, studies, and plans for a Transguinean railway [No. 48], a passenger railway or data, studies, and plans for a passenger railway [No. 49], and data, studies, and plans regarding using ports in Liberia [No. 50], provided to or received by You. Karlan Decl., Ex. F.

**V.    Vale Must Produce Documents Related to its Motives for and Efforts at Acquiring Simandou**

Vale made a "strategic decision to gain control of some or all of Simandou at any cost." Amended Complaint ¶ 3. This was a motive for Vale's decision to enter into the conspiracy, and Rio Tinto is entitled to explore the reasons behind it. Documents about what Vale knew about Simandou, when they knew it, and what they would do to get it – are therefore highly relevant.

Nevertheless, Vale has refused to produce any documents related to market analyses regarding Simandou, its attempts to value Simandou, its efforts to acquire Simandou, including negotiations with BSGR, other mining companies, and the Guinean government, or other documents regarding the strategic value of Simandou to Vale.[8] But Vale's knowledge, expectation, and forecast of the value of Simandou – and its desperation to acquire Simandou no matter the cost or the person or entity it chose to do business with to get it – go to the very heart of Rio Tinto's case against Vale. Simply put, this information bears upon why Vale did what it did and must be produced.

Rio Tinto also has proposed to limit the timeframe for this request from January 2005 to April 2011. And, as is true with all of the outstanding discovery disputes between Vale and Rio Tinto, any claims of overbreadth or burden on the part of Vale can be addressed through custodians, search terms, and other culling criteria. But without an order from this Court compelling Vale to produce documents responsive to this request, Rio Tinto cannot explore and develop an element critical to its case against Vale and its co-conspirators. Vale's blanket refusal to do so should not be permitted to stand and it must be ordered to produce documents in response to Request No. 1.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle

---

[8]   Specifically, Request No. 1 seeks "All Documents and Communications relating to (a) Your interest in acquiring Simandou; (b) the value of Simandou; (c) the quality of iron ore from Simandou; (d) market assessments of Simandou; and (e) Your efforts to acquire Simandou or a portion thereof."  Karlan Decl., Ex. F.

# EXHIBIT 1

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8162**

WRITER'S INTERNET ADDRESS
**ericlyttle@quinnemanuel.com**

October 21, 2014

Lewis J. Liman
Cleary Gottlieb Steen and Hamilton, LLP
One Liberty Plaza
New York, New York 10006

Re:     *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Lewis:

I write in response to our various meet and confer sessions regarding Rio Tinto's First Request for Production of Documents ("Rio Tinto's First RFP") and First Set of Interrogatories. Below is a summary of our meet and confer, and the positions that Vale has adopted regarding each of the requests included in Rio Tinto's First RFP.  Please let me know if I have misstated anything. Also included here are a number of compromise proposals offered to try to address the concerns Vale articulated during the meet and confer process.

We have identified a number areas in which we believe the parties are still negotiating, and a handful of other areas for which we believe the parties are at an impasse.  If you disagree that we are at an impasse on any of the areas we have so identified, please let us know no later than October 27, 2014.  As always, we remain available for further discussion.

**General Relevancy in this Case**

As an initial matter, Rio Tinto is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defenses." Fed. R. Civ. P. 26(b)(1); *see also ACLU v. Clapper*, 959 F.Supp. 2d 724, 746-47 (S.D.N.Y. 2013).  Relevance is to be interpreted broadly, "and will include any matter that bears on, or that reasonably could lead to other [information] that could bear on, any issues that is or may be in the case." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 183 (S.D.N.Y. 2006).  Moreover, "discovery is not limited to the issues raised in the pleadings" because discovery itself is "designed to help define and clarify the issues." *Id. see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 23.  Rio Tinto's discovery requests are, therefore, entirely appropriate and relevant to the issues in this case.

**Instructions and Definitions**

**Instruction No. 2.**  As we discussed, Vale's objection to the general responsive time period of January 1, 2005 to present is not well founded.  Vale itself was active at least at Simandou North back in 2005.  In addition, the record already is replete with evidence that Vale's co-conspirators began their bribery campaign in 2005.  Information from this time period therefore is relevant and

discoverable.  Indeed, we note that Vale itself proposed an even longer (more than double) responsive time period back to 1997.  Nevertheless, in an effort at compromise, Rio Tinto will shorten the responsive time period for specific requests as noted herein.

**Definition of "Defendant."**  It is our understanding that Vale is refusing to produce any documents related to co-conspirators Avraham Lev Ran and Michael Noy unless the document request specifically "calls for documents of or relating to co-conspirators" because these individuals were dropped as named defendants in Rio Tinto's Amended Complaint (Dkt. No. 83).  This puts form over substance.  The document requests were served on Vale on June 30, 2014, when both Lev Ran and Noy were named defendants.  Thus, use of the term "Defendants" clearly was intended to and did in fact encompass them at the time.  And it still does since both Lev Ran and Noy remain as un-named Vale co-conspirators in the Amended Complaint.  Consequently, any document request calling for documents of or relating to "defendants" similarly calls for documents of or relating to co-conspirators Lev Ran and Noy.

**Document Requests**

**Request No. 1.**  As discussed, Rio Tinto cannot agree to Vale's attempts to narrow the scope of this request only to its efforts in acquiring Simandou North (January 1, 2005 to December 31, 2006) and its negotiations with Rio Tinto (May 2008 to June 30, 2009) and BSGR (July 1, 2009 and April 30, 2010).  While it certainly encompasses those three discrete topics, this request is about more than negotiations and is directed at Vale's knowledge of Simandou (prior to its negotiations with Rio Tinto) and its motive for acquiring Simandou.  By way of example, we noted that documents responsive to this request would include market analyses, internal discussions regarding the market and strategic value of Simandou, attempts by Vale to quantify the value of Simandou, any discussions with BSGR and any other mining companies regarding Simandou, and any negotiations with the Guinean government.  We note that this request is directly relevant to Rio Tinto's allegations that Vale made a "strategic decision to gain control of Simandou at any cost" and made "overtures to the Government of Guinea" in order to acquire Simandou (Amended Complaint ¶¶ 3, 53).  Furthermore, Rio Tinto has alleged that Vale began negotiations with BSGR regarding Simandou as early as December 2008 (Amended Complaint ¶¶ 12, 86-87) and continued those negotiations from January 2009 onward (Amended Complaint ¶¶ 14, 102-104), making Vale's proposed time limitation of July 1, 2009 to April 30, 2010 unacceptable with regard to the Vale-BSGR negotiations.  In the spirit of cooperation, however, Rio Tinto proposes to limit this request to a relevant time period of January 1, 2005 to April 22, 2011.  If this is not acceptable, we believe we are at an impasse on this issue.

**Request No. 2.**  Rio Tinto understands that your objections to Request No. 2 center around the fact that Vale and BSGR have operated a joint venture at Simandou since April 2010.  As an initial matter, the entire joint venture is a product of and tainted by the Defendants' misconduct alleged in the Amended Complaint, and therefore facts about its operations are relevant in this litigation.  Nevertheless, in an effort at compromise and as we proposed in our meet and confer, Rio Tinto agrees to exclude from Request No. 2 any documents and communications by, between, or among Vale and BSGR and Vale and VBG relating to the day-to-day business operations of the joint venture after April 30, 2010 (*e.g.*, employee and subcontractor hiring, equipment orders, ore pricing).  We have requested that Vale identify additional categories of day-to-day business operations it believes would be burdensome to produce.  Vale, to date, has refused to do this.  We

renew our request that Vale identify any additional categories of day-to-day business operations that it believes should not be produced. Rio Tinto will consider any such additional categories that Vale identifies in good faith. Absent such additional categories identified by Vale, we believe we are at an impasse on this issue.

**Request Nos. 3-6.** Rio Tinto understands that, subject to and without waving its general and specific objections, Vale will produce documents in response to Request Nos. 3-6 that are dated between May 1, 2008 to June 30, 2009.

**Request No. 7.** As a clarification to our meet and confer, Rio Tinto offered – but by no means committed – to consider narrowing this request to a time period of January 1, 2006 to April 22, 2011, the date of Rio Tinto's settlement with the Government of Guinea regarding Simandou Blocks 1 and 2. Rio Tinto's request is clearly relevant to the claims and defenses at issue here, where Vale's knowledge of its co-conspirators efforts to acquire Simandou go to the very heart of this case. Nonetheless, in light of our discussions, Rio Tinto is prepared to modify Request No. 7 to read as follows: All Documents and Communications concerning Your views, opinions, analyses, and conclusions regarding the validity of Rio Tinto's Concession between January 1, 2006 and April 22, 2011, with the caveat that Vale will agree to produce documents and communications relating to the Guinean government's investigation into how Defendants Steinmetz and BSGR obtained mining rights to Blocks 1 and 2 of Simandou. Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 8.** Rio Tinto understands and agrees that, subject to and without waiving its general and specific objections, Vale will produce documents in response to Request No. 8.

**Request No. 9.** As discussed, this request encompasses both the cessation of negotiations with Rio Tinto as well as Vale's decisions to cease negotiating in good faith with Rio Tinto following its meeting with Steinmetz and BSGR in December 2008 (Amended Complaint ¶¶ 86-90). As such, we propose narrowing the request to the following: All Documents and Communications from May 1, 2008 to June 30, 2009 concerning Vale's decision to cease negotiating in good faith with Rio Tinto regarding the joint venture, partnership, investment agreement, or other arrangement regarding Rio Tinto's Concession and Rio Tinto's decision to cease negotiating the joint venture, partnership, investment agreement or other arrangement regarding Rio Tinto's Concession. Please confirm that Vale will produce documents in response to this Request as modified.

**Request No. 10.** Rio Tinto cannot agree to your proposed limitation on Request No. 10 to "a reasonable production of non-privileged documents, if any, regarding meetings held between Rio Tinto and Vale in New York as specifically referenced in the Amended Complaint from November 2008 to June 2009." As we discussed, it is our understanding that Rio Tinto and Vale held additional meetings regarding Rio Tinto's Concession beyond those alleged in the Complaint and the time period should be consistent with the other time period limitations attached to the Rio Tinto-Vale negotiations (*i.e*.,. May 2008 to June 2009). Please confirm that Vale will produce documents in response to Request No. 10, modified as follows: All Documents and Communications concerning any meetings or discussions with Rio Tinto regarding Rio Tinto's Concession from May 2008 to June 2009.

**Request No. 11.** We understand that Vale objects to this request as overly broad and

burdensome because it believes that this request would necessarily encompass the legitimate business operations of the joint venture at Simandou. Consequently, Vale has refused to "search for documents for this Request dated after the Government of Guinea's revocation of Rio Tinto's concession in December 2008." Rio Tinto cannot agree to this limitation. As we have alleged throughout the Complaint, the conspiracy between Vale and the other Defendants continued well after December 2008 and indeed, well into 2013 with the indictment of Defendant Cilins (Amended Complaint ¶¶ 102-104, 107-131). This Request is directly relevant to those allegations. However, in response to your request to narrow Request No. 11, we proposed to exclude any documents related to the routine business operations of the joint venture. By way of example, we assume these types of documents would include documents related to pricing, vendors, quality of the ore extracted by the joint venture, potential customers, and employment. We remain open to further discussions regarding additional categories of documents that would constitute routine business operations, and consequently, would be excluded from this request. However, based upon our discussions and your subsequent correspondence, it appears that we may be at an impasse in regard to this request.

      **Request No. 12.** We understand that Vale requests a narrowed list of categories or specific documents relevant to this Request. As we noted in our discussions, and as you can see from the index of Data Room documents we provided to you, the categories of documents listed in Request No. 12 are already a narrowed category of documents from the much greater universe of documents that Rio Tinto made available to Vale in the Data Room. The categories of documents identified in Request No. 12 also identifies those categories of documents that are most relevant to this case. As such, we offered to modify the request so as to remove the phrase "including Documents." Vale rejected that offer during our meet and confer. As we explained, Vale would not have had *any* Documents or Communications relating to this Request but for its negotiations with Rio Tinto and its access to the Rio Tinto Data Room. We continue to offer to exclude the phrase "including Documents" from this Request.

      Further, in the spirit of compromise, we can exclude the following categories of VDR documents from this request:

- Accounts – Financial Controllers

- Product Group Accounts, Reports and Letters

- Periodic Accounts

- Accounting Policies and Procedures

- Product Group Accounts, Reports and Letters

- Corporate Office Corporate & Secretarial

- Constitutional documents

- Company Officer Details

- Share Capital

- Other Budgets and Forecasts

- SI Budget Plan 2008

- Corporate Structure

- Simfer Corporate Structure

- Employment

- Job Descriptions and Organisational Chart

- Environmental Management

- Environmental Management plans

- Physical or Conceptual Mine Planning

- Policies, Plans and Business Development Projects

**Request Nos. 13 and 14.** We understand that Vale's objections to Request Nos. 13 and 14 are similar to those of Request No. 11. Namely, that Vale is concerned this request necessarily encompasses the legitimate business operations of the joint venture. As such, Vale agrees to produce any documents responsive to this Request prior to December 2008, but believes there should be limitations on production after December 2008. Rio Tinto disagrees with this position given that our Complaint is rife with allegations of communications and meetings between Vale and the various Defendants after December 2008, as well as the myriad ways in which the Defendants attempted to cover and conceal their conspiracy up until the filing of Rio Tinto's complaint (Amended Complaint ¶¶ 102-104, 107-131). We do, however, appreciate Vale's attempt to provide a framework for treating sets of individuals and organizations. In response to your proposal, we suggest the following:

- **Entities and Individuals associated with BSGR.** We agree that we are likely close to an impasse with regard to those entities and individuals associated with Vale's business partner, BSGR (*i.e.*, BSGR, the Beny Steinmetz Group, Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, and Saada). It is our understanding that it is also your position that Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, and Saada all had a role in the day-to-day business operations of the joint venture. But that does not mean that all communications with them relate to day-to-day business operations. As discussed above in relation to Request Nos. 2 and 11, we will continue to consider any additional proposals you have to exclude materials related to day-to-day business operations. But a blanket objection to producing all communications with these individuals is not well taken.

- **Nysco Management Co. and Onyx Financial Advisors.** We suggest a similar proposal with regard to Nysco Management Co. and Onyx Financial Advisors to exclude materials related to day-to-day business operations of the joint venture.

 o **Defendants Steinmetz, BSG Resources, VBG-Vale BSGR Limited, and Thiam.** With respect to communications with or relating to Defendants Steinmetz, BSG Resources, VBG-Vale BSGR Limited, and Thiam, we similarly propose to limit these requests so as to exclude any materials related to day-to-day business operations of the joint venture.

 o **Defendants Cilins and Touré.** We assume that all documents concerning Defendants Touré and Cilins will be produced, given that there can be no good faith basis to claim either Defendant had any role in the business operations of the joint venture.

 o **Ibrahaim Touré.** We understand that Vale agreed to produce documents concerning communications with Ibrahaim Touré prior to April 30, 2010, but refuses to produce any thereafter because he "had a business role with the joint venture." In response, we propose to modify this request such that Vale will produce any documents concerning Mr. Touré responsive to this request until April 30, 2014, and exclude from production any documents related to the day-to-day business operations of the joint venture from April 30, 2010 to April 30, 2014.

 o **Guinean Presidents Camara and Conté.** Rio Tinto has alleged in the Amended Complaint and has reason to believe that Vale, independent or in conjunction with the other Defendants, actively lobbied the Guinean government to acquire mining rights at Simandou. It is our understanding that those lobbying efforts were not only specifically tied to requests about Rio Tinto's Concession, but were looped in to other communications between Vale and the Guinean government related to its mining capabilities in general, its efforts to develop Bauxite mines in Guinea, and other related communications, as well as any efforts on the part of Vale to legitimize BSGR's title to Simandou Blocks 1 and 2 after December 2008. The documents requested by this Request are therefore relevant and discoverable.

 o **Pentler Holdings and Matinda and Co. Limited.** We understand that Vale has agreed to produce any documents concerning communications by Vale, within Vale, or with others regarding both entities.

  **Request Nos. 15 and 16.** It appears that the parties are in agreement that Vale will produce any non-privileged documents regarding payment of consideration to the following individuals and entities: Steinmetz, Cilins, Mamadie Touré, Ibrahaim Touré, Camara, Conté, Pentler Holdings, Nysco Management Co., Onyx Financial Advisors, Matinda and Co. Ltd., Struik, Tchelet, Cramer, Merloni-Horemans, Trafford, Avidan, and Saada. Vale, however, has refused to produce any documents regarding payment of consideration to BSGR, VBG, and the Beny Steinmetz Group, even though Vale did clarify that it is unaware of any relationship between itself and/or BSGR, VBG, and the Beny Steinmetz Group other than that related to Simandou. As we discussed during our meet and confer, Rio Tinto is entitled to any and all documents relating to the financial aspect of the relationship between Vale, BSGR, VBG and the Beny Steinmetz Group, especially given that there appears to be no other relationship amongst those parties outside of Simandou. Based on our discussions, we believe that we are at an impasse on this. Please let us know, however, if you have any alternate proposals.