quinn emanuel trial lawyers | washington, dc
777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

November 17, 2014

Hon. Andrew J. Peck
United States Magistrate Judge, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Pursuant to Your Honor's November 3, 2014 Order ("Order"), Plaintiff Rio Tinto plc ("Plaintiff") and Defendants BSG Resources Ltd. ("BSGR") and Benjamin Steinmetz (together, "Defendants") write jointly to update the Court on the status of discussions regarding search terms for personal jurisdictional discovery in advance of our December 9, 2014 conference.

Since the November 3, 2014 hearing before Your Honor ("Hearing"), the parties have begun negotiating search terms as per this Court's Order. On November 7, 2014, Rio Tinto sent Defendants a proposed list of search terms and custodians. Defendants responded with a counter-proposal on November 14, 2014.

The parties held a telephonic meet and confer on November 17, 2014 to discuss the search terms and related issues. While the parties have made some progress in resolving areas of disagreement, there are some disputes that will likely require the Court's assistance. The parties will provide an updated status report to the Court on December 2, 2014, but below is a summary of the issues as they stand today.

### A. Scope of Discovery

The parties are at odds regarding the scope of jurisdictional discovery. Each of the parties' positions are summarized below. The parties do not envision resolving this issue prior to the December 9, 2014 conference.

***Plaintiff's Summary*:**

Plaintiff propounded discovery requests targeting jurisdictional documents that concern Defendants' contacts, as well as their agents' contacts, with the United States. As the Court noted, *see* 11/3/14 Hr'g Tr. 27:19 – 28:3, and as settled law provides, *see e.g., Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991), Plaintiff is entitled to jurisdictional discovery from Defendants' agents. As set out in Plaintiff's Amended Complaint, those agents include Frederic Cilins; Michael Noy; and Avraham Lev Ran and a company he co-owns, Pentler Holdings.

***Frederic Cilins:*** Subject to certain search term negotiations that the parties are currently negotiating (*see infra* Section D), Defendants have agreed to search, review, and produce electronic documents related to Mr. Cilins, with particular emphasis on activities and contacts in the United States.

***Michael Noy:*** Mr. Noy is another individual that has been linked to Defendants specifically as their agent. As set out in the Amended Complaint, Michael Noy is an agent and employee of BSGR. Am. Compl. ¶ 26. In particular, he is Mr. Cilins's (Defendants' admitted agent) direct superior. *Id.* According to BSGR's own website, "[l]acking a permanent presence in Guinea, BSGR sought to work with Michael Noy, Avraham Lev Ran and Frederic Cilins, who had extensive business operations in Guinea." *Id.* In addition, Mr. Noy co-owns several properties in Florida with Mr. Cilins. *Id.* at ¶ 25. Accordingly, Plaintiff has requested that Defendants search, review, and produce electronic documents related to Mr. Noy, with particular emphasis on activities and contacts in the United States.

***Avraham Lev Ran and Pentler Holdings:*** Mr. Lev Ran is another agent of Defendants. He has been specifically linked to Mr. Cilins's operations in the United States on behalf of Defendant BSGR. As alleged in the Amended Complaint, "Lev Ran was affiliated with Pentler Holdings ('Pentler'), which owned a 17.65 percent equity stake in BSGR Guinea BVI (an entity that has since been dissolved) from March 2006 until March 2008, and operates on behalf of BSGR. In 2010, Lev Ran on behalf of BSGR and/or Steinmetz, and in furtherance of the conspiracy, twice wired money from an account in Israel to an account in Florida that belonged to Defendant Touré." *Id.* ¶ 25. And as noted above, he too co-owns several properties with Mr. Cilins in Florida. *Id.* Accordingly, Plaintiff has requested that Defendants search, review, and produce electronic documents related to Mr. Lev Ran and Pentler Holdings, with particular emphasis on activities and contacts in the United States.

***Mamadie Toure and Matinda*:** Plaintiff has further included "Mamadie OR Toure OR Matinda" (Matinda is the name of a company Ms. Touré owned, *see* Am. Compl. ¶ 50) as a proposed search term since Mr. Cilins had specific interactions with her *in the United States* on behalf of Defendants, including several in-person meetings between Cilins and Touré related to the destruction of evidence and obstruction of justice (for which Cilins is now in prison). To be clear, Plaintiff is not seeking merits-related discovery regarding Defendant Touré, but rather seeking documents that link Mr. Cilins's conduct in the United States to the Defendants.

***Ibrahima Kassory Fofana and IF Global:*** Since the filing of the complaint, we have also learned that Ibrahima Kassory Fofana and his company IF Global (based in Maryland), have

acted as BSGR's agent in the United States. Mr. Fofana, a former Guinean politician now living in Maryland, where he operates his consulting company IF Global, has been tied to BSGR as its agent and consultant by credible news outlets. *See* Dkt. No. 111, Ex. B. Accordingly, Plaintiff has requested that Defendants search, review, and produce electronic documents related to Mr. Fofana and IF Global, with particular emphasis on activities and contacts in the United States.

***Defendants' Summary:***

Despite Your Honor's clear directive at the Hearing, limiting the scope of jurisdictional discovery to Defendants' conduct in the United States -- and not to any of their alleged agents or co-conspirators, except for defendant Frederic Cilins -- Plaintiff still believes it is entitled to merits-based discovery. *See* Nov. 3, 2014 Hr'g Tr. 26:25-29:11. Plaintiff disregards and attempts to circumvent the Order by claiming that its proposed search terms, which include, for example, co-defendant Mamadie Toure, and former co-defendants Avraham Lev Ran and Michael Noy, are appropriate searches for jurisdictional discovery because these individuals are directly linked to Mr. Cilins. As Your Honor stated "that's proving your case through the back door." *See id.* at 26:25-27:8 (regarding discovery of co-defendants "You may get it later. You're not getting it now."). Similarly, Plaintiff proposed search terms regarding: (i) Pentler Holdings, a company co-owned by Messrs. Noy, Lev Ran, and Cilins; (ii) "Hollywood" and "Beachfront" locations where Messrs. Noy, Lev Ran, and Cilins purportedly own property; (iii) "Yacht Basin" a purported address for Ms. Toure; and (iv) "IST" the initials of Ms. Toure's brother who resides in Guinea, are all attempts to broaden the limited scope of discovery to other alleged co-conspirators, co-defendants, and former co-defendants. Plaintiff goes even further and includes search terms for Mr. Ibrahima Fofana and Maryland, where it claims he resides, because Plaintiff believes Mr. Fofana is an agent of BSGR who resides in the United States – *although he is not mentioned in the Complaint*. Plaintiff's attempts to evade Your Honor's directives should not be permitted and its search terms should be narrowly tailored to comply with the Order directing limited jurisdictional discovery.

**B. Time Period for Jurisdictional Discovery**

The parties disagree as to the appropriate time period(s) for jurisdictional discovery. During the meet and confer today, Plaintiff made a counter-proposal, which Defendants have taken under advisement. They will respond to Plaintiff on this proposal no later than November 21, 2014. Each of the parties positions as to time period are summarized below.

***Plaintiff's Summary*:**

Plaintiff's initial search term proposal requested that Defendants apply the jurisdictional search terms to the entire relevant time period. In its counter-proposal, Defendants proposed two separate time periods: (1) for general jurisdiction, Defendants propose searching *one day only* – April 30, 2014; (2) for terms related to specific jurisdiction, Defendants propose narrow windows tailored to allegations in Plaintiff's complaint (specifically, April 27, 2012 – May 8, 2012; March 1, 2013 – April 30, 2013; and July 13, 2010 – August 19, 2010).

Plaintiff submits that these proposed time frames are far too narrow. With respect to general jurisdiction, Defendants BSGR and Steinmetz have no basis to limit the collection of

documents to a *single day* – the day the complaint was filed. That approach is simply not workable. As an initial matter, it is entirely unclear whether Defendants would only collect documents whose metadata reflected a "create date," "sent date," or "received date" of April 30, 2014. And were that even possible, such a restricted collection would omit drafts, revisions, replies, forwards, and other documents that are sure to have been created before April 30, 2014 and therefore plainly relevant to general jurisdiction. That is plainly insufficient to probe whether these two Defendants are subject to general jurisdiction. Regarding the narrower time periods for specific jurisdiction through 2010, 2012, and 2013, Defendants' proposed windows are far too narrow, and if allowed, would likely deprive Plaintiff of discovery relevant to personal jurisdiction.

In the spirit of compromise, Plaintiff proposed two reasonable proposals on November 17, 2014. As to general jurisdiction, Plaintiff proposed that Defendants BSGR and Steinmetz conduct discovery for the six months leading up to the complaint (November 1, 2013 – April 30, 2014). For the other search terms, Plaintiff proposed that Defendants BSGR and Steinmetz search only 2012 and 2013, and where the wire payments are at issue in the complaint, 2010 and 2013. While Defendants BSGR and Steinmetz are considering this proposal, it indicated it likely would not accept Plaintiff's proposal. Given that Plaintiff's position is eminently reasonable, this issue may require court intervention.

***Defendants' Summary:***

Your Honor limited jurisdictional discovery to the time of the (i) filing of the Complaint as to general jurisdiction, and (ii) allegations in the Complaint concerning the activities of defendant Cilins in Florida with respect to long-arm jurisdiction. *Id.* at 30:9-32:1. Despite the clear language of the Order, Plaintiff originally requested that Defendants run its proposed search terms from January 2008 to the present. Notwithstanding that Plaintiff's proposal had no justification in the Order, Defendants nevertheless tested Plaintiff's proposed terms and made counter-proposals to achieve a more manageable review set, including that search terms concerning: (i) general jurisdiction would be appropriately run for April 30, 2014, the date of the filing of the Complaint; (ii) Mr. Cilins's alleged conduct in the United States would be appropriately run for April 27, 2012 – May 8, 2012 (*see* Am. Compl. ¶ 133) and March 1, 2013 – April 14, 2013 (*see id.* ¶¶ 124-130); and (iii) Cilins's alleged wire transfers through a Wells Fargo account would be appropriately limited to July 13, 2010 – August 19, 2010 (*see id.* ¶¶ 140(b), 161, 167(c)) and March 1, 2013 – April 14, 2013 (*see id.* ¶ 130). During the meet and confer today, Plaintiff proposed limiting the temporal scope for search terms concerning (i) general jurisdiction from November 2013 – April 30, 2014; (ii) Mr. Cilins to a *two-year period* between January 1, 2012 – December 2013; and (iii) Mr. Cilins's alleged wire transfers through Wells Fargo for the *years* 2010 and 2013. This proposal ignores the law and the Order and is another attempt by Plaintiff to broaden the scope of discovery. In order to establish that this Court has general jurisdiction over Defendants, Plaintiff must show that general jurisdiction existed "at the time of the Complaint." *See* Nov. 3, 2014 Hr'g Tr. 30:25-31:1. Plaintiff's proposal to extend this time period by *six months* and its failure to identify search terms concerning Defendants' purported direct business activities in the United States, demonstrates that Plaintiff's demand for jurisdictional discovery is a fishing expedition to dive into the merits of the case, and that it did not and does not have a basis to claim that jurisdiction exists over Defendants. Likewise, although Mr. Cilins's alleged conduct in the United States purportedly

took place over the course of *one week* in 2012 and *six weeks* in 2013, Plaintiff deems it appropriate to search materials for a two-year period. Finally, although the allegations concerning Mr. Cilins's purported wire transfers through a Wells Fargo account in the United States all take place over the course of *four weeks* in 2010 and *six weeks* in 2013, Plaintiff seeks discovery on this issue for *two entire years* (2010 and 2013). Plaintiff's jurisdictional discovery should be limited to the time periods proposed by Defendants and as ordered by Your Honor.

**C. Custodians**

To date, the parties have agreed on a tentative list of custodians for personal jurisdiction, although there are a few individuals that remain the subject of the meet and confer process.[1] Should there be any outstanding issues with respect to custodians by December 2, 2014, we will notify the Court in the parties' next submission.

**D. Search Terms and Metrics**

The meet and confer process with respect to search terms is ongoing, and the parties exchanged various proposals regarding search terms during today's meet and confer. Plaintiff committed to send Defendants its proposal by no later than Wednesday, November 19. Thereafter, Defendants will re-run the search terms for the potential time periods at issue (taking into account the parties differing points of view) and provide Plaintiff with an updated search term report, including unique hits, by November 21, 2014. The parties will then reconvene on November 24, 2014 for an additional telephonic meet and confer. While the parties remain hopeful that issues related to search terms will be resolved, there are some areas of disagreement summarized below.

***Plaintiff's Summary*:**

Many of the parties' disagreements relating to the search terms involve bigger picture disputes (*e.g.*, the scope of jurisdictional discovery or the time period will dictate the outcome of many of the areas of disagreement regarding search terms). There are, however, some significant areas of disagreement solely on search terms at this time.

- *Search term (*Fred* or Cilins): There are numerous allegations in Plaintiff's complaint that relate to Frederic Cilins, the purported agent of Defendants BSGR and Steinmetz. He is indisputably central to the case, and both parties agree that Mr. Cilins is a proper subject of jurisdictional discovery. Accordingly, Plaintiff proposed that Defendants BSGR and Steinmetz apply the terms (Fred* OR Cilins) to the appropriate custodians. Currently, Defendants BSGR and Steinmetz have refused to apply the term Fred* on the grounds that it brings back too many hits.

[1] Defendants have agreed to search the following individuals for purposes of jurisdictional discovery: Asher Avidan, Beny Steinmetz, Dag Cramer, David Trafford, Francis "Frank" Eagar, Gerard "Gerry" Wilson, Iwan Williams, Marc Struik, Peter Driver, Sandra Merloni-Horemans, and Yossie Tchelet. The parties continue to meet and confer on two additional individuals, Ibrahima Sory Touré and Issage Bangoura. Defendants do not believe they are appropriate custodians for jurisdictional discovery because they worked for BSGR solely in connection with mining activities in Guinea.

Plaintiff cannot drop this search term because it is quite possible that people within BSGR referred to Mr. Cilins as Fred or Freddy – without mentioning his last name. In an effort to compromise, Plaintiff has offered to Defendants that where a document has a unique hit on Fred*, that document can be eliminated from the review if it also has the last name of a Fred or Freddy that they know is not responsive. So, for example, if during the review, attorneys realize that Frederic Smith and Frederic Doe are pulling in hits, Defendants BSGR and Steinmetz can revise the search string such that it is (Fred*) BUT NOT (Smith OR Doe). This should help alleviate any false hits without denying Plaintiff critically relevant jurisdictional discovery related to Mr. Cilins. Plaintiff is hopeful that Defendants BSGR and Steinmetz will accept this proposal.

- *Search terms related to Mr. Cilins's role as Defendants' agent*:[2] At this time, Defendants BSGR and Steinmetz have refused to apply certain search terms that are directly relevant to Mr. Cilins's activities in the United States. As Plaintiff understands it, Defendants believe the search terms (listed in footnote 2) are strictly merits-based discovery. Plaintiff disagrees. Mamadie Touré, Avraham Lev Ran, Michael Noy, and Pentler Holdings are all inextricably tied to Mr. Cilins's conduct in the United States, which Plaintiff alleges was conducted at the behest of Defendants BSGR and Steinmetz. *See* Am. Compl. ¶¶ 119-31 (alleging various contacts between Defendants Touré and Cilins in the United States, at the instruction of Defendant Steinmetz); *id.* ¶¶ 25-26 (alleging that Lev Ran and Noy owned property in Florida with Cilins); *id.* ¶ 136 (alleging that the U.S. Government's filings indicate that BSGR's employees and/or agents, Noy and Lev Ran, are directly connected to the criminal conduct of Cilins. BSGR has admitted that co-conspirators Noy and Lev Ran worked for or were affiliated with BSGR); *id.* ¶ 140 (alleging that through Pentler, Cilins, Lev Ran, and Noy contracted to make illegal payments to Touré). The other terms – Yacht Basin, Hollywood, and Beachfront – all relate to locations in Florida that Cilins could have been sent at the behest of Defendants. Moreover, the term IST is a nickname for BSGR employee Ibrahima Soure Touré, the brother of Defendant Mamadie Touré, who is a key player with respect to Cilins's effort to destroy evidence in the United States. To the extent Ibrahima Touré is involved in BSGR's efforts in the United States to destroy certain evidence, he is directly relevant to the inquiry. Accordingly, all of these terms are directly aimed at targeting documents and communications that would be relevant to jurisdictional discovery. To date, Defendants BSGR and Steinmetz have been unwilling to even run these search terms and provide search term reports. Absent a willingness to do so, it is difficult to understand Defendants' flat-out refusal to consider these highly important search terms.

[2] The relevant search terms are: (i) Mamadie OR Toure OR Matinda, (ii) Avraham* OR "Lev Ran", (iii) Michael* OR Mike OR Noy, and (iv) Pentler OR PH OR Holdings; (v) "Yacht Basin"; (vi) Hollywood; (vii) Beachfront; and (viii) IST.

- *Search terms related to Kassory Fofana.*[3] The Court ordered that jurisdictional discovery would proceed with respect to the agents of Defendants BSGR and Steinmetz that were in the United States. Since filing the complaint, Plaintiff has learned that Kassory Fofana was an agent of Defendants BSGR and Steinmetz in the United States. Accordingly, it provided search terms to that effect. Defendants BSGR and Steinmetz have refused to run these search terms on the grounds that this Court limited jurisdictional discovery to Frederic Cilins. *See supra*, Section A. At the Hearing, during the discussion of Kassory Fofana, counsel for BSGR and Steinmetz told the Court that "I really don't know who he is. I object. My client has no idea what plaintiff is referring to." 11/3/2014 Hr'g Tr. at 33:24-25. If that is accurate, then Defendants should just run the search terms and there would be no hits for Mr. Fofana. If there are search term hits, then the documents should be reviewed and responsive documents should be produced.

- *Search terms related to U.S. contacts:* Although unable to run certain search terms at this time (*see infra* Section E), Defendants are taking the position that certain search terms such as "New York OR NY", "Manhattan," "United States OR USA or US [case sensitive] OR states OR America OR Etas Unis OR Amerique" are overbroad and will yield a burdensome number of hits that have nothing to do with the Defendants' alleged conduct of business in the United States. While Plaintiff is amenable to negotiating resolutions to weed out non-responsive documents (e.g., documents that hit on "New York Times"), it is perplexed as to how Defendants can represent to the Court that they do not do business in this country while simultaneously complaining that basic search terms related to this country will yield too many hits. Indeed, Defendants' own counsel told the Court that if he had to think of jurisdictional search terms, he'd "say New York, Manhattan." 11/3/2014 Hr'g Tr. at 17:14. Accordingly, depending on whether Defendants indicate a willingness to test these search terms, the parties may require the Court's assistance with this issue.

***Defendants' Summary:***

In addition to the search terms discussed in Section B, Defendants disagree with Plaintiff's proposed search terms (i) attestation or declaration, and (ii) destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR wipe OR "get rid" OR trash OR discard OR cover OR conceal*, because they would not tend to uncover any information concerning the relationship between Defendants and Mr. Cilins as an agent or an employee of BSGR as alleged in the Complaint. These search terms concern the purported misconduct of defendant Cilins as alleged in the Complaint, again a merits-based issue. Moreover, even if these were appropriate search terms, they are too broad, as evidenced by the test searches Defendants ran yielding significant hit results.

---

[3] The relevant search terms are: (i) Ibrahima OR Kass* OR "Don Kass*" OR Fofana OR "IF Global" OR IFGLOBAL OR IFG and (ii) Maryland or MD.

**E. Defendants Must Conduct an Additional Collection for the General Jurisdiction Inquiry**

Prior to the initiation of this litigation, Defendants conducted a document collection, including ESI, in mid-2013. Accordingly, in order to conduct jurisdictional discovery for the time period surrounding the filing of Plaintiff's complaint, Defendants will have to perform an additional ESI collection. In an effort to limit the scope of data to be collected, Defendants are endeavoring to provide Plaintiff with a proposed list of custodians for this collection by November 21, 2014. Plaintiff will respond within three days of receipt of Defendants' proposal. While the parties remain hopeful that issues related to search terms will be resolved, there are some current areas of disagreement, which are summarized below.

***Plaintiff's Summary*:**

Defendants BSGR and Steinmetz have suggested that it will consider moving for cost-shifting with respect to this new collection to the extent Plaintiff does not make certain concessions with respect to the collection. While Plaintiff is more than happy to consider a proposal from Defendants BSGR and Steinmetz regarding the appropriate custodians for this collection and meet and confer in good faith, Plaintiff strenuously objects to the suggestion that it should have to pay for any portion of the collection. This Court has already ordered that this discovery must proceed, and Plaintiff should not bear the cost of this routine litigation expense.

***Defendants' Summary:***

In order to conduct jurisdictional discovery for the "time of the Complaint," Defendants will have to perform an additional costly ESI collection. Based upon the parties' current agreed upon custodians, Defendants roughly estimate that the cost of this additional collection will be $300,000. The cost of processing that data will depend on the size of the collection. This directly corresponds to the time-period for which Defendants will be required to collect and review data. As stated above, Defendants believe this collection should be limited to April 30, 2014, and to specific custodians to reduce cost. Defendants will seek to shift the costs of the collection to Plaintiff if it insists on a broader scope.

* * *

The parties will continue the meet and confer process on jurisdictional discovery and update the Court on progress on December 2, 2014.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle

cc: All Counsel of Record (by ECF)