CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

November 17, 2014

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      Pursuant to Your Honor's instructions at the November 3, 2014 conference,[1] we write on behalf of Vale S.A. ("Vale") to inform the Court of the parties' positions on whether Rio Tinto plc ("Rio Tinto") has waived claims of privilege with respect to its investigation of its claims and whether it will produce documents responsive to Vale's Document Requests 39, 41, and 42 and respond fully to Vale's Interrogatory 22 regarding that investigation.[2]  At the last conference, Rio Tinto conceded it must show conduct that is "diligent as an investigation" and offered to "turn[] over the facts of that investigation," but stated that "this matter is not ripe."  (Nov. 3, 2014 Tr. 43:21-22, 44:9-11.)  The parties have now reached an impasse, and we write this letter to set forth the issue, to seek an Order compelling Rio Tinto to produce the responsive documents and give a complete interrogatory response, and to suggest a further way forward.  In particular, Vale seeks a ruling that Rio Tinto must produce all documents concerning its alleged investigation, including communications with counsel, through the filing of the complaint on April 30, 2014, or at least up until April 2013, which Rio Tinto alleges is the earliest date it knew or could have known of its claims despite its diligent investigation.  Unless Plaintiff is prepared to abandon its assertions concerning its purportedly stymied investigation, Vale is entitled to discovery to disprove them.

---

[1] Your Honor directed the parties to provide "short letter briefing."  (Nov. 3, 2014 Tr. 46:16-18.)

[2] Vale's discovery requests to Rio Tinto are in the record.  (Dk. 99 Exs. V, W.)  The relevant requests here are excerpted in the Annex to this letter.

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Hon. Andrew J. Peck, p. 2

I. **Vale Is Entitled To Discovery Of Rio Tinto's Alleged Investigation, Including Communications With Counsel, Up Until The Filing Of The Complaint**

Through this lawsuit, Rio Tinto has put at issue three hotly-disputed issues as relevant here: (1) whether and when it discovered the nature of the claim within the limitations period; (2) whether it exercised due diligence in pursuing the discovery of the claim; and (3) whether the acts that it claims constituted fraudulent concealment in fact stymied its ability to bring its claim here. In particular, Rio Tinto alleges that the four-year statute of limitations running from the date it knew or should have known of it alleged injury that would otherwise bar its RICO claims was equitably tolled because although "[i]n April 30, 2010, . . . "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence in pursuing discovery" of its claims and although it "conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou," it was "stymied due to the concealed and intricate nature of the RICO enterprise" (Am. Compl. ¶ 146) and due to Defendants' fraudulent concealment. (*Id.* ¶ 144.) It alleges at great length that post-April 2010 conduct by Defendants "wrongfully concealed the material facts relating to their unlawful conduct and resulting injury." (*Id.*) That alleged conduct includes, *inter alia*:

- "Repeated false statements by Thiam, as a representative of the Government of Guinea, regarding the legitimacy and validity of the Vale-BSGR joint venture," issued from May 2010 through February 2011;

- "BSGR's continued public statements dismissing the veracity of the bribery allegations despite compelling evidence, for example its September 28, 2012 press release characterizing the allegations as 'baseless and merely constitute a crude smear campaign'";

- "a false affidavit dated November 26, 2012 submitted by Defendant Cilins to the Government of Guinea concerning material facts relating to the unlawful conduct of himself, Steinmetz, BSGR, and Touré"; and

- "the repeated efforts of Defendant Cilins, acting at the behest of Defendants Steinmetz and BSGR, to obstruct the investigations of the U.S. and Guinean Governments by attempting to convince Defendant Touré to sign a false declaration and destroy material evidence" in 2012 and 2013.

(*Id.* ¶ 144(b)-(d).)[3] Plaintiff alleges "Rio Tinto's inability to discover evidence of the RICO enterprise was a consequence of the foregoing obstruction and other fraudulent and criminal conduct." (*Id.* ¶ 147.) It alleges that "Defendants' successful concealment of their illegal and tortious activities" did not end until "*January 2013* when the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation ('FBI') began conducting a federal criminal investigation regarding potential violations of the Foreign Corrupt Practices Act ('FCPA') and anti-money laundering statutes relating to, among other things, the laundering into and through the United States of potential bribe payments to Guinean officials for the

---

[3] Vale does not concede that Rio Tinto has pleaded fraudulent concealment in a manner sufficient to survive a motion to dismiss.

purpose of obtaining Rio Tinto's rights to Simandou (the 'Grand Jury Investigation')." (*Id.* ¶ 121 (emphasis added).) It claims "*Rio Tinto was unable to discover the conduct that underlies its RICO and other claims until after the criminal proceedings involving Cilins became public in April 2013*." (*Id.* ¶ 147 (emphasis added).)[4] Thus, it alleges it (and its counsel) "did not know of or discover, and could not have known or discovered in the exercise of reasonable diligence, the unlawful conduct and resulting injury alleged herein that underlies the RICO claims and the other wrongs alleged herein until after the criminal proceedings against various Defendants . . . were publicly disclosed beginning in April 2013." (*Id.* ¶ 143.)

A full 31 paragraphs of the Amended Complaint are devoted exclusively to the alleged post-April 2010 conduct of Thiam, Cilins and others that supposedly frustrated Rio Tinto's investigation. (*Id.* ¶¶ 111-141.) Indeed, Plaintiff does not allege any acts of fraudulent concealment stymied its investigation before April 2010.[5]

The sufficiency and evidentiary basis for these allegations of post-April 2010 concealment are central to Rio Tinto's ability to bring this claim in this Court. Absent equitable tolling, Rio Tinto's claim is facially-barred by RICO's four-year statute of limitations. According to Plaintiff's allegations, Rio Tinto suffered the loss of which it complains in July or December 2008 (*Id.* ¶¶ 77, 92); at best for Rio Tinto, it suffered that injury in June 2009, when "Thiam's June 29, 2009 letter on behalf of the Guinean Government made the initial December 2008 award of Simandou Blocks 1 and 2 to BSGR official" (*id.* ¶ 100). Absent well-pleaded allegations (and later a factual showing) that Defendants fraudulently concealed material facts relating to Defendants' alleged wrongdoing and that Rio Tinto exercised due diligence and could not and did not discover its claim despite that due diligence, Defendants are entitled to peace from any RICO claim by December 2012, or June 2013 at the latest.[6]

Thus, before Vale raised the issue of waiver of privilege resulting from these allegations, Rio Tinto argued strenuously that Defendants' post-April 2010 conduct, allegedly to conceal the conspiracy, entitled it to equitable tolling. In its July 10, 2014 letter to the this Court, Rio Tinto argued that "any statute of limitations is tolled where, as here, Defendants fraudulently concealed their conspiracy," citing, as the only predicate for this claim, that "the United States Attorneys' Office for the Southern District of New York has already secured a guilty plea from Defendant

---

[4] Notably, the alleged Grand Jury Investigation does not relate to Vale's alleged acts of fraud or misappropriation.

[5] Rio Tinto does allege that Vale did not disclose during the first half of 2009 that it was engaged "in discussions with Steinmetz and BSGR to develop a joint venture" (Am. Compl. ¶ 144(a)), but (1) the allegation is not true; (2) even if true, there is nothing that would preclude Vale from having discussions with Steinmetz and BSGR; and (3) the omission to provide information does not constitute fraudulent concealment. *See, e.g., Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1290-91 (S.D.N.Y. 1988) ("[P]laintiffs must allege more than that defendant failed to disclose the existence of the payments. Concealment by mere silence is not enough." (citation and quotation marks omitted)).

[6] The four-year RICO statute of limitations begins to run "when the plaintiff discovered or should have discovered the injury" of which it complains. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted). The limitations period only "may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Id.* at 157.

Cilins – who was acting on behalf of the other Defendants – for his efforts as recently as 2013 to cover up the scheme." (Dk. 60 at 3.) Its message to Judge Berman has been the same. (*See* Dk. 75 at 3 (July 24, 2014 letter to Judge Berman stating the same).) And in its opposition to Defendants' stay motion, Rio Tinto again argued that its RICO claims were timely because "Defendant Cilins – who was acting on behalf of the other Defendants – has admitted that as recently as 2013 he came to the United States in order to *cover up the scheme*." (Dk. 106 at 21-22 (citing Am. Compl. ¶ 131; emphasis original).) Indeed, in its 37.2 letter filed just before the last conference, Rio Tinto urged more expansive discovery from Vale after December 2008, arguing that "the conspiracy . . . [i]n 2013, sent Defendant Cilins into the United States to destroy evidence in a desperate attempt to further conceal and cover up their illicit activities." (Dk. 112 at 2.) The October 21, 2014 letter attached as an exhibit further states that "our Complaint is rife with allegations of . . . the myriad ways in which the Defendants *attempted to cover and conceal their conspiracy up until the filing of Rio Tinto's complaint* (Amended Complaint ¶¶ 102-104, 107-131)." (Dk. 112 at 13 (emphasis added).)

The implication of these allegations is plain. Unless Rio Tinto is prepared to abandon these assertions concerning its purportedly stymied post-April 2010 investigation, Vale is entitled to discovery to disprove them. Rio Tinto cannot have it both ways: it cannot both seek to prosecute a stale claim and at the same time frustrate Vale's ability to show that that claim is stale. Rio Tinto "may not take advantage of the assertion of fraudulent concealment . . . and at the same time preclude its adversary's discovery of the very evidence which pertains to the application of the doctrine." *Bohack Corp. v. Iowa Beef Processors, Inc.*, 31 Fed. R. Serv. 2d 1205 (E.D.N.Y. 1981). Contrary to Plaintiff's suggestion, at-issue waiver is not limited to the advice-of-counsel defense, and has long been applied where equitable tolling is invoked. In *Bohack*, for example, the court held that Bohack's invocation of fraudulent concealment waived privilege with respect to "a letter written by a member of the firm of Simpson, Thacher & Bartlett to the President of Bohack, Mr. Joseph Binder . . . when Simpson, Thacher was counsel for Bohack" and indicating "an opinion by Simpson, Thacher & Bartlett with respect to the merits of a possible action by Bohack against Iowa Beef." *Id.* The court noted that "[p]lainly, the [letter], wherein the firm opines the merits of an anti-trust action against IBP, is of obvious relevance to the validity of plaintiff's claim of fraudulent concealment" and "the letter may reveal that Bohack was aware of a possible claim prior to May 1974 or that Bohack had failed to exercise due diligence in investigating the possible claim." *Id.*

Other courts are in accord. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, No. 02 CIV. 4911 (HB), 2003 WL 1990262, at *3 (S.D.N.Y. Apr. 29, 2003) (even assuming plaintiff's investigation were privileged, plaintiffs who invoked equitable tolling "impliedly waived the privilege by making a claim that in fairness requires an examination of the purported privileged material"); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229, 235 (E.D.N.Y. 1994) ("WLIG put otherwise protected information at issue by raising equitable doctrines to overcome a limitations bar."); *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-02581(JF)(HRL), 2009 WL 3415375, at *2-3 (N.D. Cal. Oct. 21, 2009) ("assertion of fraudulent concealment" means plaintiff "has waived protection over communications that demonstrate when and how it learned of the alleged fraud"), *objections overruled*, 2009 WL 4981156 (N.D. Cal. Dec. 15, 2009); *Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C. 1983) ("[P]laintiff has waived the privilege because the information which the defendant seeks is necessary to resolve the precise statute of limitations issue which the plaintiff has interjected into the case."); *Russell*

*v. Curtin Matheson Scientific, Inc.*, 493 F. Supp. 456, 458 (S.D. Tex. 1980) ("[T]he raising of the equitable tolling issue[] 'placed information protected by (the privilege) in issue.'"); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 423 (S.D.N.Y. 1976) (invocation of estoppel to defeat statute of limitations "waived the privilege").

## II.     Rio Tinto's Arguments Should Be Rejected

At the last conference, Rio Tinto took the position that "if defendants are correct about when the RICO injury occurred, . . . and it occurred in December of 2008,"[7] then "the only time period that we need to toll is December 2008 up through April 2010; i.e. four years before the complaint was filed," that "any investigation between April [20]10 and April 2014 is not relevant," and that the "legal advice is not an issue." (Nov. 3, 2014 Tr. 43:25-44:17.) Your Honor noted that any withheld documents would need to be logged. (*Id.* at 46:5-7.) Plaintiff subsequently made the following proposal to Vale: "Rio Tinto will produce responsive investigative reports, irrespective of privilege, from the time period December 2008 through April 2010, redacting the names of investigators and confidential informants, and will produce responsive, non-privileged documents after April 2010."[8] In addition, Rio Tinto has argued that, "unlike the cases you have cited, Rio Tinto has not alleged reliance on any legal advice as part of that tolling," and "equitable tolling only requires a showing of due diligence, which is an objective, fact-based standard." Thus, Rio Tinto argues: "the only time period that Vale may be entitled to explore is December 2008-April 2010, and that exploration is limited to factual information learned during the investigation during that period. Vale is not entitled to any attorney-client communications or work product."

As set forth below, Plaintiff's position and proposal are unacceptable for several reasons.

### A.     Rio Tinto Is Not Entitled To Impose An Arbitrary April 2010 Cut-Off

First, by its own allegations, Plaintiff did not exercise due diligence until April 30, 2010. Plaintiff alleges that it was "[i]n April 30, 2010, . . . "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, [that] Rio Tinto exercised due diligence in pursuing discovery" of its claims, and that it was in the period after April 2010 that, although it "conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou," it was "stymied due to the concealed and intricate nature of the RICO enterprise" (Am. Compl. ¶ 146) and due to Defendants' fraudulent concealment (*id.* ¶ 144). It does not allege that it exercised due diligence prior to April 2010 or that any fraudulent acts prior to April 2010 stymied its investigation. If Rio Tinto is now claiming that the only period of time it seeks to have tolled is the time period before April 2010, its claim of fraudulent concealment and equitable tolling must be thrown out entirely. So too must this stale lawsuit.

---

[7] Rio Tinto cannot escape its own allegation it was injured—and knew of its injury—in December 2008: "On December 9, 2008, the Guinean Government sent a letter to Rio Tinto indicating that it was rescinding Rio Tinto's rights to Simandou's Blocks 1 and 2. On December 11, 2008, it was publicly announced that the Guinean Government was awarding exploration licenses for those same blocks to BSGR Guinea." (Am. Compl. ¶ 92.)

[8] Rio Tinto's proposal to redact the names of its investigators and confidential informants is not appropriate, as it has provided "no reliable, non-conclusory basis to find that any of the CIs here faces a risk of retaliation sufficient to justify non-disclosure of his or her name to the defense." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 344 (S.D.N.Y. 2011).

Hon. Andrew J. Peck, p. 6

Second, Plaintiff is wrong to suggest that because its RICO injury occurred on or before December 2008, the only time that would need to be tolled is the period until April 30, 2010 (four years before the complaint was filed) and that it need not have prosecuted its claim aggressively thereafter.  Fraudulent concealment requires not only that "the defendant wrongfully concealed material facts relating to defendant's wrongdoing" and that "plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled," but further requires Rio Tinto to show that despite this diligence "the concealment prevented plaintiff's 'discovery of the nature of the claim *within the limitations period*.'"  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (emphasis added) (citations omitted). Assuming the RICO injury occurred in December 2008, that time period here would be until at least December 2012; on Plaintiff's allegations suggesting that it suffered its injury in June 2009, it would be until June 2013.  And, even after the expiration of the limitations period, Plaintiff's diligence would be relevant to its tolling claim.  As Judge Posner explained:

> In a RICO case, given the Supreme Court's emphasis . . . on the importance of prompt suit to achieve the statute's public purposes, the plaintiff should not be entitled to an automatic extension of the statute of limitations by the length of the period of concealment by the defendants. . . . [I]n a RICO case, the plaintiff must both use due diligence . . . even if the defendant is engaged in fraudulent concealment, *and diligently endeavor to sue within the statutory limitations period or as soon thereafter as feasible*.

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387-88 (7th Cir. 2010) (Posner, J.) (emphasis added).  *See also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1995) ("The unused portion of the limitations period . . . is 'a significant circumstance to be evaluated in assessing the plaintiff's punctuality.'"  (citations omitted)).

Thus, to establish equitable tolling, Rio Tinto must prove its diligent investigation through the filing date, regardless of the period it seeks to toll.  *See, e.g.*, *Donovan v. Lewnowski*, No. 03-CV-2985(DLI)(JO), 2005 WL 2095739, at *9 (E.D.N.Y. Aug. 30, 2005) (rejecting equitable tolling of RICO claim where "Plaintiffs offer no explanation for the nearly four-year delay . . . in bringing the instant claims" after the impediment to suit was removed); *Varszegi v. Bove*, No. CIV.A. 398CV776CFD, 2002 WL 553458, at *4 (D. Conn. Mar. 28, 2002) (plaintiff "failed to demonstrate due diligence in attempting to file this RICO action within the four-year limitations period," considering "reasonable diligence is 'required throughout the remainder of the period between the [extraordinary circumstance] and the filing.'"  (citation omitted)); *S.E.C. v. Microtune, Inc.*, 783 F. Supp. 2d 867, 882 (N.D. Tex. 2011) ("[I]f a plaintiff discovers his claims within the limitations period, especially if he still has two years or more remaining in which to file his complaint (as is this case here), there is obviously a lesser need, if any, to toll his claims."), *aff'd sub nom. S.E.C. v. Bartek*, 484 F. App'x 949 (5th Cir. 2012).  Rio Tinto concedes as much, offering to produce *non*-privileged documents concerning its investigation up until the filing date.

Third, even if Rio Tinto were correct that it need only show diligence through April 2010, the courts have consistently held that "[o]nce the waiver is created, parties may not limit the waiver temporally."  *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 Civ. 6876(KMW), 1995 WL 598971, at *3 (S.D.N.Y. Oct. 11, 1995).  Thus, for example, later-

Hon. Andrew J. Peck, p. 7

created documents clearly would be relevant to Rio Tinto's pre-April 2010 knowledge and diligence.

Indeed, plaintiff's precise argument was rejected in *Bank Brussels Lambert*. In that case, a RICO case involving letters of credit, defendant argued "its 'reliance-on-counsel' defense is relevant only to its state of mind during the period directly preceding the issuance of the letters of credit, the last of which was issued on August 23, 1991" and "[c]onsequently . . . privileged documents created after that date remain immune from disclosure." *Id.* at *2. The court was not persuaded, noting among other things that later-dated documents "could shed light on CLS pre-August 1991 conduct, its state of mind, and the legal advice given by R & W" and thus "may be vital to the plaintiffs' ability to meet CLS' defense of reliance on R & W's advice." *Id.* at *4.[9] Similarly, in *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, No. 94 Civ. 4725(CSH)(SEG), 1997 WL 272405, at *2-3 (S.D.N.Y. May 21, 1997), defendant asserted a counterclaim for abuse of process and plaintiff responded with a "good faith" defense but refused to produce privileged documents dated after the allegedly abusive attachment was vacated on August 10, 1994. The court disagreed:

> The relevant question with respect to documents prepared or communications occurring after August 10, 1994 is not the *date* thereof, but whether or not that document or communication contains information that is *relevant* to the actions Kidder took prior thereto. . . . [F]or example, a document prepared today which recounts factual information as to legal advice received by Kidder in the course of preparing its application for the attachment may well be relevant.

*Id.* at *5 (emphasis original). Likewise, in *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 53 (S.D.N.Y. 2002), Judge Koeltl ruled that a party "cannot in fairness try to tailor an advice-of-counsel defense"—or any other litigation position—"in an unfairly prejudicial way, so as to provide all the documents relating to [that issue] up until a certain arbitrary date, which may tend to support [its] positions in this litigation, while categorically excluding any such documents thereafter," which might tell a different story.

Those cases are directly relevant here. It is critical to establish with respect to the claim of fraudulent concealment and equitable tolling what Rio Tinto knew prior to the time it brought suit and when it discovered it, what diligence it exercised, and whether any of that diligence was stymied by the alleged acts of fraudulent concealment. Discovery of the facts relevant to those issues cannot in this case be limited by allowing the party that put counsel's actions at issue to impose an arbitrary time limit any more than it could in those other cases. As the courts ruled, once privileged communications have been put at issue, the plaintiff waives privilege as to the entire subject matter.

---

[9] The court also noted: "The post-August communications will enable the plaintiffs to verify or challenge CLS assertion that its liability, if any, was caused by faulty advice of counsel. To deny the plaintiffs this opportunity would result in a one-sided account and prejudice the plaintiffs' ability to litigate their claim." *Bank Brussels Lamber*, 1995 WL 598971, at *6.

Hon. Andrew J. Peck, p. 8

### B. Rio Tinto Cannot Limit The Waiver To "Facts" And Exclude Attorney Opinion

Rio Tinto is mistaken in its assertion that Vale is only entitled to discover the facts of Plaintiff's investigation and that Plaintiff's communications with counsel, including legal advice, are not at issue. Indeed, Plaintiff's allegations have made those communications vitally relevant to Vale's defense.

Plaintiff's own pleading here alleges the existence of extensive red flags beginning in 2008 that would have required it to investigate and would have led it to the allegations it now makes had it done so. It alleges it knew that "on July 28, 2008, Guinea had issued a decree purporting to change Rio Tinto's property rights to those of an exploration permit holder" but that "Rio Tinto viewed this purported change to its Simandou Concession as an illegitimate sham not in accordance with Guinean mining law." (Am. Compl. ¶ 77.) It alleges that "[o]n December 9, 2008, the Guinean Government sent a letter to Rio Tinto indicating that it was rescinding Rio Tinto's rights to Simandou's Blocks 1 and 2," and "[o]n December 11, 2008, it was publicly announced that the Guinean Government was awarding exploration licenses for those same blocks to BSGR" (*id.* ¶ 92), a company with a well-known "reputation for corruption and bribery" (*id.* ¶ 78) and for which "bribery . . . was particularly necessary to acquire the Simandou Concession because it lacked any track record in iron ore mining" (*id.* ¶ 52). It alleges "[t]his turn of events was surprising" and "highly irregular" (*id.* ¶ 93) and that "Rio Tinto did not accept that its rights to Blocks 1 and 2 were actually rescinded" and instead "made every effort to convince the Government of Guinea that the rescission was invalid and inconsistent with Guinean law," but that its "efforts on this front were consistently stymied by the enterprise" (*id.* ¶ 94).

Indeed, about the only things Rio Tinto did not know in 2008 were the allegations against Cilins and that Vale would sign a joint venture agreement with BSGR. But the signing of a joint venture agreement is not itself actionable; there is nothing in Vale's agreement with Rio Tinto that entitled Rio Tinto to preclude Vale from competing.[10] Thus, it is relevant not just what Rio Tinto knew in April 2010, or any other particular date, but also what efforts it made to discover the relevant facts, what red flags it ignored, who it spoke to, who refused to speak to it, whether any alleged acts of concealment in any way impeded its investigation, and how diligently it pursued its claims once it overcame the alleged fraudulent concealment. In addressing these questions, courts look to a plaintiff's communications with counsel, among other things, to assess the plaintiff's diligence.

In *Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 251-52 (S.D.N.Y. 2005), for example, the court held that the plaintiff's RICO claim accrued in September 1996 and, absent tolling, was time barred in September 2000, two years before the plaintiff filed suit. The court found that "even if the Court were to assume *arguendo* that fraudulent concealment at least during some period of time *did* effectively prevent the Town from timely asserting a claim, Defendants have shown that as early as April 5, 2001" the Town secured legal advice "on the subject of the statute of limitations applicable to a RICO claim," which "compels an inference

---

[10] At the last conference, Rio Tinto admitted that even today it is not aware of any trade secrets that Vale stole from Rio Tinto, which is the only specific misconduct it has ever attributed to Vale. (Nov. 3, 2014 Tr. 37:2-3 ("We don't know what defendant Vale shared with its co-conspirators").)

that in early April of 2001, the new Town Supervisor was undeniably on notice of both a possible RICO injury and the RICO limitations period." *Id.* at 456. Hence, the court could not conclude that the plaintiff "acted diligently by filing suit on an already-expired RICO action in September 2002, almost one and a half years after receiving legal advi[c]e on the issue." *Id. See also Huckabone v. City of Jamestown, N.Y.*, No. 09-CV-602-A, 2014 WL 4146844, at *3 (W.D.N.Y. Aug. 19, 2014) (rejecting fraudulent concealment where evidence showed plaintiff "was actively considering bringing RICO claims against the defendants as far back as 1990 and 1991 and that he had, in fact engaged an attorney . . . to prosecute such claims").

Because communications with counsel are central to a plaintiff's investigation of its claims, the invocation of fraudulent concealment puts at issue those communications with counsel concerning the investigation, and waives any applicable privilege. The waiver is not limited to the "facts" communicated to or from counsel. For example, in *Bohack Corp.*, 31 Fed. R. Serv. 2d 1205, discussed above, the court held that Bohack's invocation of fraudulent concealment waived privilege with respect to a letter from counsel providing counsel's opinion "with respect to the merits of a possible action by Bohack against Iowa Beef," noting its "obvious relevance to the validity of plaintiff's claim of fraudulent concealment." Similarly, the court in *Cablevision Sys. Corp.*, 879 F. Supp. at 236, found that plaintiff's invocation of fraudulent concealment waived privilege and ordered plaintiff's principals "to answer Cablevision's question on communications with attorneys about: (1) specific fee arrangements; (2) cost of litigation; (3) reasons for timing of bringing suit; (4) statute of limitations; (5) alternative methods considered by WLIG to obtain carriage; and (6) efficacy of suit." *See also Russell*, 493 F. Supp. at 458-59 (ordering "that plaintiffs . . . answer questions of defendants' counsel specifically relating to all legal advice . . . to either or both of them more than 180 days prior to December 30, 1975, concerning procedural problems which either faced in bringing an ADEA action and/or how either might satisfy the procedural prerequisites for bringing such an action").

Vale is similarly entitled to probe Plaintiff's diligence—including its communications with counsel—through the filing date.

### C. Plaintiff's Cases Are Not On Point

Prior to the submissions of these letters, Vale volunteered it would review any research Rio Tinto wanted to offer that would support its position. Rio Tinto volunteered six cases. Not one supports its position. Four of the cases, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1997), *Allen v. West Point-Pepperell, Inc.*, 848 F. Supp. 423 (S.D.N.Y. 1994), *Green v. Beer*, No. 06 Civ. 4156(KMW)(JCF), 2010 WL 2653650, at *6 (S.D.N.Y. July 2, 2010), and *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008), did not involve a situation where a plaintiff put its knowledge and due diligence at issue by asserting equitable tolling by fraudulent concealment. As the *Cablevision Systems* court later noted, *Rhone-Poulenc* and *Allen* are "inapposite because they are 'garden-variety' cases in which indeed only the knowledge of a party is at issue." 879 F. Supp. at 235 ("Something more than merely relevance, however, is at stake when a plaintiff seeks to overcome a statute of limitations bar by interjecting equitable doctrines. The statute of limitations affords protection of paramount importance to a defendant

and is not lightly cast aside." (citations omitted)).[11]  *Green v. Beer* likewise did not involve either equitable tolling or any other situation in which counsel's opinions or conduct was put at issue; unlike here, the plaintiff did not rely on counsel's conduct or advice to advance a claim or to defeat a defense.  2010 WL 2653650, at *6.[12]

Also inapposite is *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008), which involved whether a right was "clearly established" at the time of an alleged constitutional violation, and in which the court held that "[t]his is an objective, not a subjective, test, and reliance upon advice therefore cannot be used to support the defense of qualified immunity."  As a consequence, the legal advice sought in discovery was "irrelevant to any defense so far raised by Petitioners."  *Id.* at 230.[13]

This case is fundamentally different.  As plaintiff's pleading implicitly acknowledges, fraudulent concealment, and in particular the element of due diligence, has a subjective component.  A plaintiff invoking equitable tolling seeks an exception from a generally applicable statutory rule based on its own individual circumstances.  Accordingly, the question is not only whether a reasonable plaintiff could have discovered the existence of the claim—that goes to the element of whether the defendant fraudulently concealed the existence of a claim; the plaintiff seeking an exception from the statutory rule must show the actions that it took, the questions that it asked, the diligence that it exercised, the facts that it discovered, when it discovered the existence of the claim, and why—given the exercise of diligence—it should be excused from not discovering it earlier.  *See Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987) ("[T]he determination of whether a plaintiff actually exercised reasonable diligence requires a more subjective inquiry focusing upon the circumstances of the particular case, including the existence of a fiduciary relationship, the nature of the fraud alleged, the opportunity to discover the fraud, and the subsequent actions of the defendants." ); *see also Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001) (noting, for accrual of RICO claim, the "due diligence . . . inquiry is both subjective and objective).

Indeed, the only remotely relevant case Plaintiff cites, *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2010 WL 3167277 (N.D. Ill. Aug. 6, 2010), actually supports Vale's argument.[14]  There, the defendant in an attorney malpractice case sought to discover privileged

---

[11] *Allen* also concluded that, on the facts presented, "defendants may explore non-privileged matters to an extent sufficient to assert their defense; therefore, the privilege need not be breached."  848 F. Supp. at 426.  That is not the case here.

[12] The court ruled that plaintiff could establish damages from the settlement of a claim with the IRS by offering expert testimony regarding the reasonableness of the settlement and was not required to rely on counsel's advice.  *Green*, 2010 WL 2653650, at *5-6.

[13] "After *Erie,* the Southern District has continued to recognize the broader waiver principles endorsed by the Second Circuit," and continued to hold that "a party need not explicitly rely on advice of counsel to implicate the privileged communications."  *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (citation and quotation marks omitted).

[14] In *Johnson Matthey, Inc. v. Research Corp.*, No. 01 Civ. 8115(MBM)(FM), 2002 WL 1728566, at *4 (S.D.N.Y. July 24, 2002), the only case cited by Plaintiff that dealt with equitable tolling, the court ruled for the proponent of the requested discovery on the only disputed attorney-client issue and held that "JM's counsel improperly instructed the witnesses deposed by Research not to testify to their knowledge of the facts if that knowledge came from counsel" and ordered that "Research's counsel be permitted to reopen the depositions [to] elicit when JM's officers

communications between the plaintiff and its litigation counsel until the date of the subpoena even though the plaintiff affirmatively alleged that it had discovered the existence of its claim two years before filing. *Id.* at *6-7. On a motion to quash, the court held that defendant was entitled to documents even from plaintiff's trial counsel and that the plaintiff had waived the attorney-client privilege "for all attorney-client communications on the same subject matter as the investigation" of the matters at issue in the lawsuit up until the date it conceded it discovered its claims. *Id.* at *6. The court reiterated: "'[t]he privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation.'" *Id.* at *6 (citation omitted). After noting the sensitivity of permitting discovery into the communications of trial counsel, the court ruled that the waiver did not extend into the period after plaintiff admitted it discovered the existence of its claim because the communications after the conceded discovery of the claim would "have little relevance to any claim or defense" and "would essentially wipe out Memorylink's privilege with regard to every communication with [its counsel] over the last almost three year period." *Id.* at *8. Of course, in this case, plaintiff alleges that it did not begin the exercise of due diligence until April 2010 and did not discover and could not have discovered its claims until April 2013. (Am. Compl. ¶¶ 146, 147.) Applying the principles of *Memorylink*, it follows that Rio Tinto has waived the privilege with respect to all communications otherwise protected by attorney-client or attorney work-product protection until at least April 2013—including communications with current counsel.[15]

### D. Plaintiff's Interrogatory Responses

At the last conference, Your Honor ruled Rio Tinto could not withhold the names of people with knowledge of its investigation. (Nov. 3, 2014 Tr. 46:3-4 ("Identify all the people. I don't see a privilege in that.")). Following the conference, Rio Tinto served an amended interrogatory response, which identified for the first time two Rio Tinto employees and two investigative firms with knowledge of its investigation.[16] It did not identify any lawyers or law firms and it did not identify all investigative firms used by Rio Tinto. The amended response continues to state an objection based on "the attorney-client privilege and/or the attorney work product doctrine." Plaintiff's amended response is clearly deficient. Your Honor was clear (and correct) that names, including the names of attorneys and law firms, are not privileged. *See, e.g.*, *Bohack*, 31 Fed. R. Serv. 2d 1205 ("Plainly, the work-product rule does not offer any protection to the names and addresses of persons having knowledge of the relevant facts" and "Mr. Shaw cannot assert Bohack's attorney-client privilege for the purpose of avoiding the requested identification of those persons with whom Mr. Shaw had conversations and who are potential witnesses"); *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 34 (S.D.N.Y. 2003) (work product doctrine does not "ordinarily protect the identities of . . . witnesses"); *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 288 (S.D.N.Y. 2002) ("a client's identity is not protected by the attorney-client privilege"); *Ryan v. Lehigh Val. R. Co.*, 5 F.R.D. 399, 401 (S.D.N.Y. 1946) ("names are not privileged").

---

first learned the relevant facts and from whom." The issue of due diligence apparently was not raised and it was not addressed.

[15] Vale inquired of Rio Tinto's current counsel when it was first retained to understand whether the document requests would implicate any communications with that counsel. Counsel refused to answer.

[16] Rio Tinto has designated its entire amended interrogatory response as "attorneys' eyes only."

Hon. Andrew J. Peck, p. 12

      Rio Tinto should be compelled to identify all persons with responsive knowledge through April 30, 2014 and instructed that it may not withhold any names (including the names of attorneys or law firms) on the basis of the attorney-client privilege or work product doctrine.

## Conclusion

      For the foregoing reasons, Vale respectfully requests a ruling that Rio Tinto has put at issue its investigation of its claims, including its communications with counsel, through the filing of the complaint on April 30, 2014, and an order compelling Rio Tinto to produce documents in response to Vale's Requests 39, 41, and 42, without regard to privilege, dated between January 1, 2006 and April 30, 2014, or at least through April 2013.  Vale also requests that the Court order Plaintiff to identify, in response to Interrogatory 22, all persons retained in connection with, or otherwise knowledgeable about, its investigation, including attorneys and law firms and all investigative firms.[17]

                                                                            Respectfully submitted,

                                                                            /s/ Lewis J. Liman
                                                                            Lewis J. Liman

---

[17] In its Responses and Objections, Rio Tinto raised a categorical objection to Vale's Document Requests, stating with respect to Requests 41 and 42 that it would not produce any responsive documents.  It was Rio Tinto's obligation to defend the assertion of privilege and it has failed to do so.  Accordingly, its objection should be rejected on a categorical basis without the creation of an individualized privilege log.  To the extent the Court disagrees and believes that trial counsel can still assert a privilege with respect to particular individualized documents, Vale respectfully requests that Rio Tinto be required to submit a privilege log (in compliance with Local Rule 26.2(a)(2)(A)), as well as evidence (including the date and purpose of retention of the parties to the document and the engagement letter for the parties on the document) so that the court can evaluate the claim of privilege.

**ANNEX**

**Interrogatory No. 22:** Identify each Person who has knowledge or information of any facts (including knowledge or information regarding the location and description of any Documents) that evidence, reflect, or support Your allegation in Paragraph 146 of the Amended Complaint that "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence in pursuing discovery of the claims asserted" in the Amended Complaint and that "Rio Tinto conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou. But Rio Tinto's efforts were stymied due to the concealed and intricate nature of the RICO enterprise."

**Document Request No. 39:** All Documents supporting, providing a basis for, evidencing, or otherwise concerning the statements in Paragraph 146 of the Amended Complaint that "Rio Tinto was genuinely shocked that Vale and BSGR were doing business together" and that "Rio Tinto exercised due diligence" and "conducted a lengthy investigation" of the facts.

**Document Request No. 41:** All Documents relating to Rio Tinto's surveillance of and/or interaction with BSGR's and/or VBG's operations at Simandou Blocks 1 and 2 from or after December 2008, including but not limited to any reports, complaints, or other communications to the Government of Guinea regarding those operations.

**Document Request No. 42:** All Documents relating to any threats by Rio Tinto to sue or otherwise bring legal action against or with respect to any of the Defendants including but not limited to BSGR and/or Vale (or any of their representatives or agents) in relation to Simandou in 2008, 2009 and/or 2010 or any consideration by Rio Tinto whether to bring any legal action against any of the Defendants, including but not limited to any communications with counsel or regarding counsel.