**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

November 18, 2014

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Pursuant to your Honor's November 3, 2014 Order, we write on behalf of Plaintiff Rio Tinto plc ("Rio Tinto") regarding the status of Defendant Vale S.A.'s ("Vale") request for privileged communications and work product related to Rio Tinto's investigation of the claims at issue.

Although Rio Tinto has met and conferred multiple times with Vale regarding this issue, provided it with the U.S. Court of Appeals for the Second Circuit's *In re County of Erie* decision that flatly rejects the broad "at-issue" waiver Vale relies upon, and offered to produce the underlying facts of the investigation during the time period for which equitable tolling may be required (December 2008–April 2010), the parties unfortunately remain at an impasse.[1]  Vale asks this Court to ignore the Second Circuit's *In re County of Erie* decision and order an unprecedented blanket waiver of the attorney-client and work product protections.  For the reasons detailed below, Rio Tinto respectfully requests that this Court deny Vale's request.

**I.     Introduction**

Vale's request for a blanket waiver of the attorney-client privilege related to Rio Tinto's decision to bring this lawsuit is a breathtaking invasion of the attorney-client privilege that is

---

[1] It was not until last Thursday night (November 13) that Vale informed Rio Tinto that it had rejected its offer of compromise.  To the extent Vale files additional correspondence with the Court on this issue, Rio Tinto reserves the right to respond as needed.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

completely unfounded in the law. The "at issue" or "implied" waiver Vale seeks to enforce derives from the test first articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). Indeed, all but one of the "at issue" waiver cases cited by Vale in its October 30, 2014 and November 3, 2014 letters (collectively, "Vale's Prior Letters") to the Court expressly rely upon *Hearn* or its progeny. But the *Hearn* test had long been the subject of heavy criticism before it was ultimately and resoundingly rejected by the Second Circuit in *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (emphasis added):

> We agree with its critics that the *Hearn* test cuts too broadly and therefore conclude that the District Court erred in applying it here. According to *Hearn*, an assertion of privilege by one who pleads a claim or affirmative defense "put[s] the protection information at issue by making it relevant to the case. But privileged information may be in some sense *relevant* in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue. The *Hearn* test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver. Nowhere in the *Hearn* test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver. ***We hold that a party must rely on privileged advice from his counsel to make his claim or defense***.

In Vale's Prior Letters, it cites only three decisions (*Bohack*, *WLIG* and *Connell*) from district courts in the Second Circuit on "at-issue" waiver, each of which was decided before *In re County of Erie*. In fact, Vale did not cite a single case after *In re County of Erie* from this Circuit that supports its position. The only post-*In re County of Erie* cases Vale cited were two cases from district courts in the Ninth Circuit (*Landmark* and *Seaman*) that both rely upon the now-discredited *Hearn*. Counsel for Rio Tinto provided counsel for Vale with the *In re County of Erie* decision in order to try to head this issue off and not waste the Court's time. Vale unfortunately continued to pursue this issue anyway.

*In re County of Erie* not only discredits every case Vale relies upon, it also outlines the very narrow situations in which "at-issue" waiver actually may be found. *In re County of Erie* holds that "at-issue" waiver is strictly limited to instances where a party *relies* on privileged advice from counsel in order to make a claim or defense. In this case, Rio Tinto has not asserted or relied upon advice of counsel for its fraudulent concealment claims. Indeed, Vale cannot and does not point to a single instance where Rio Tinto is relying upon advice of counsel to demonstrate the reasonableness of its decision when to bring this lawsuit. There is no "sword and shield" here. This is equally fatal to Vale's claims.

Moreover, any legal advice by Rio Tinto's lawyers – if it were somehow "at issue" – is immaterial. In the Second Circuit, the RICO limitations test is an objective one that is determined with objective reference to the investigation itself: what facts Rio Tinto learned and when it learned them. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 296 (S.D.N.Y. 2013) ("whether a plaintiff is placed on inquiry notice is analyzed under an objective standard"). This is an objective – not a subjective – test, and advice of counsel is immaterial.

*See In re County of Erie*, 546 F.3d at 229 (holding that because a test was objective, instead of subjective, "reliance upon advice of counsel" could not be used to support it).  What Rio Tinto's counsel thought about those facts, or any legal advice it provided in light of them, is not relevant to the objective determination of when the statute began to run.  It therefore is not "at issue" here.

Finally, Vale is not entitled to *any* documents or discovery after April 2010 (*i.e.*, four years prior to Rio Tinto filling suit in this case) because the timeliness of Rio Tinto's RICO claims depends only on its pre-April 2010 knowledge.  Assuming *arguendo* equitable tolling is even required (and it is not),[2] the only time period which Rio Tinto would need to toll is December 2008 (when Rio Tinto's mining rights to Simandou were first granted to BSGR) through April 2010 (four years prior to when Rio Tinto filed this lawsuit in April 2014).  Rio Tinto acted within four years (*i.e.*, within the RICO statute of limitations) of anything it learned after April 2010.  Thus, any documents or discovery related to Rio Tinto's decision to file a lawsuit after April 2010 are completely irrelevant to equitable tolling or Vale's statute of limitation defense.  As noted above, Rio Tinto offered to produce facts before April 2010 as a compromise but Vale rejected that offer.

## II.     Factual Background

In its October 30, 2014 letter, Vale originally sought this Court's intervention with respect to Vale Interrogatory 22 and Document Request 42.  Rio Tinto has since served Vale with amended interrogatory responses that, in response to Interrogatory 22, identifies additional people (Rio Tinto already had identified over 20 people in its initial interrogatory responses) with percipient and discoverable knowledge about its investigation.  Rio Tinto believes this response resolves any issues with respect to Interrogatory 22.

The dispute remains, however, over Vale's Document Request 42.  On its face, the request seeks a blanket waiver of documents "relating to any threats by Rio Tinto to sue or otherwise bring legal action" or "any consideration by Rio Tinto whether to bring any legal action" regarding Simandou, including "***communications with counsel or regarding counsel***" (emphasis added). Dkt. No. 114 at 6.  Document Request 42 is not limited in any way by time or scope; read literally, it calls for communications between Rio Tinto and its lawyers right up to the day Rio Tinto filed its complaint.  Likewise, Vale makes no effort to limit Document Request 42 to privileged communications relied upon by Rio Tinto in its assertion of fraudulent concealment as required by *In re County of Erie*.  Nor could it, because Vale cannot point to a single privileged document or communication that Rio Tinto has even alleged, let alone relied upon, in support of fraudulent concealment.  Instead, Rio Tinto has only alleged that "Rio Tinto exercised due diligence in pursuing discovery of the claims asserted herein" but that its "efforts were stymied due to the concealed and intricate nature of the RICO enterprise."  Dkt. No. 83 at ¶ 146.  This purely factual allegation puts no legal advice "at issue."

---

[2]  As a threshold matter, the timeliness of Rio Tinto's RICO claim does not require a finding of fraudulent concealment because Rio Tinto filed its claims within four years of being on "inquiry notice" of the RICO injury it suffered.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012).

Nonetheless, and as noted above, Rio Tinto appreciates that the facts – not the legal advice or work product – underlying its investigation during the time period it may seek to have tolled (December 2008–April 2010) may not be privileged. To that end, and in an effort at compromise, Rio Tinto offered to provide Vale its investigative reports from that time period (redacted to protect any names and/or identifying information of confidential sources that could be subject to personal, economic or even physical reprisal). Rio Tinto believes this was a very reasonable offer that would allow Vale to assess the scope of Rio Tinto's investigation and what it learned during that process, while at the same time preserving the attorney-client and work product protections afforded by the Second Circuit. Vale rejected that offer of compromise without explanation or reason, and similarly rejected Rio Tinto's request for a counter proposal.

### III. Argument

#### A. The Sanctity of the Attorney-Client Privilege

With its discovery request, Vale impermissibly seeks to pierce one of the most protected privileges in the judicial system – the attorney-client privilege. *See Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998) (recognizing the attorney-client privilege as one of the "oldest recognized privileges for confidential communications"). Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* at 403. Indeed, the "attorney-client privilege serves a critical function in the operation of the law and the administration of justice[.]" *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 426 (S.D.N.Y. 1994); see *also* Kenneth L. Rothenberg, *Evidence: Attorney-Client Privilege & Work Product Doctrine,* 76 Denv. U.L. Rev. 82 5, 826 (1999) ("Although the attorney-client privilege may serve as a 'roadblock to the truth[,]' ... society has subordinated the search for truth to a preferred value of full, confident, candid, confidential legal representation of a client"). For that reason, "rules [like at-issue waiver] which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." *In re County of Erie*, 546 F.3d at 228.

#### B. Vale's Entire Argument is Premised on the *Hearn* Test and its Progeny, Which Has Been Explicitly Rejected by The Second Circuit

The "at-issue" or "implied" waiver Vale seeks to enforce derives from the test first articulated in *Hearn*, which has since been rejected by the Second Circuit in *In re County of Erie*. *Id.* at 227–28 (detailing criticism of *Hearn* by other circuit courts, district courts in the Second Circuit and academics).[3] The Second Circuit found that "the *Hearn* test cuts too broadly," and

---

[3] In *Hearn,* the U.S. District Court for the Eastern District of Washington held that privileged communications were required to be disclosed where: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the party asserting the privilege; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. 68 F.R.D. at 581.

held that, for "at issue" waiver to apply, "a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.* at 229 (emphasis in original).[4] The Second Circuit noted that, to hold otherwise, "would open a great number of privileged communications to claims of at-issue waiver" as "privileged information may be in some sense relevant in any lawsuit." *In re County of Erie*, 546 F.3d at 229.

The Second Circuit is not alone in rejecting the *Hearn* test. Indeed, court after court asked to apply *Hearn* to find an "at issue" waiver has refused to do so. *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566 at *4 (S.D.N.Y. July 24, 2002) (citing criticism of the "[e]xpansive interpretation of 'at issue' waiver under *Hearn* and its progeny," and ultimately limiting disclosure in a statute of limitations tolling case to facts relating to when the plaintiffs first learned of relevant facts and from whom); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3rd Cir. 1994) (calling *Hearn* of "dubious validity" because it appears "to rest on a conclusion that the information sought is relevant and should in fairness be disclosed"); *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 430 (S.D.N.Y. 1994) (criticizing *Hearn* and finding no at issue waiver of legal advice or confidential communications even though defendants argued an unreasonable delay defense); *United States v. Ohio Edison Co.,* 2002 WL 1585597, at *5 (S.D. Ohio July 11, 2002) (relevancy cannot be test for implicit waiver; party must affirmatively use privileged communications to defend itself or attack opponent before it forfeits the privilege); *Darius v. City of Boston*, 433 Mass. 274, 741 N.E.2d 52, 56 n.7, 58 (2001) (refusing to extend the broad at-issue waiver envisioned by *Hearn* to the statute of limitations and discovery rule context).

With one exception, every one of the "at-issue" waiver cases cited by Vale in its October 20, 2014 and November 3, 2014 letters to the Court rely upon *Hearn* or its progeny.[5] The only case Vale cites which does not rely on *Hearn* or its progeny is *Byers v. Burleson,* 100 F.R.D. 436 (D.D.C. 1983). But *Byers*, like *Hearn*, is directly criticized in *Rhone-Poulenc*, which the Second Circuit followed in *In re Country of Erie*: "Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions. *See, e.g., Byers v. Burleson,* 100 F.R.D.

---

[4] The Second Circuit noted that advice-of-counsel defense has been "properly described as the 'quintessential example' of an implied waiver of privilege." *In re County of Erie*, 546 F.3d. at 228.

[5] *See Bohack Corp. v. Iowa Beef Processors, Inc.*, 1981 WL 2018, at *2 (E.D.N.Y. Jan. 13, 1981) (citing *Hearn*); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229, 234–35 (E.D.N.Y. 1994) (citing *Hearn* and applying "the *Hearn* factors"); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 422–23 (S.D.N.Y. 1976) (citing *Hearn*, and noting that although the *Hearn* holding "is not in point because the party there asserting the privilege had expressly relied upon the advice of counsel," ultimately finding waiver because the Connell court was "persuaded by the logic of the [*Hearn* court's] reasoning"); *United States v. Exxon Corp.*, 94 F.R.D. 246, 248–249 (D.D.C. 1981) (citing *Hearn*); *Seaman v. Sedgwick LLP*, 2014 WL 3738055, at *2 (C.D. Cal. July 28, 2014) (citing a Ninth Circuit case that is quoting *Hearn*); *Russell v. Curtin Matheson Scientific, Inc.*, 493 F. Supp. 456, 458 (S.D. Tex. 1980) (citing *Hearn*); *Regents of Univ. of California v. Micro Therapeutics, Inc.*, 2007 WL 2069946, at *3 (N.D. Cal. July 13, 2007) (citing *Exxon* (which relies on *Hearn*)); *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 3415375, at *2–3 (N.D. Cal. Oct. 21, 2009) (citing *Hearn*, and applying "the *Hearn* test").

436 (D.D.C.1983); *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash. 1975). These decisions are of dubious validity." *Rhone-Poulenc Rorer*, 32 F.3d at 864; *In re County of Erie*, 546, F.3d at 227 (citing *Rhone*).

The only cases Vale cites from district courts in this Circuit (*Bohack*, *WLIG* and *Connell*) were all decided before *In re County of Erie*. In fact, Vale does not cite a single case from this Circuit that has been decided after *In re County of Erie*. Nor could they: the broad at-issue waiver *Hearn* test is dead in the Second Circuit. *See Green v. Beer*, 2010 WL 2653650 at *6 (S.D.N.Y. July 2, 2010) (noting that post-*Erie*, the Second Circuit mandates a "narrow view of waiver" and denying motion to compel because Plaintiff was not relying on legal advice for its defenses); *Gruss v. Zwirn*, 276 F.R.D. 115, 133 (S.D.N.Y. 2011), *rev'd on other grounds*, 2013 WL 3481350 (S.D.N.Y. July 10, 2013) (noting that the Second Circuit "restricted the [*Hearn*] test" in *Erie*); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 2009 WL 3111766, at *16 n.6 (S.D.N.Y. Sept. 28, 2009) (rejecting a party's argument that there was at-issue waiver in part because the party relied on a case that applied the *Hearn* test). And the only post-*In re County of Erie* cases Vale cites are two cases from district courts in the Ninth Circuit (*Landmark* and *Seaman*) that both rely upon the now-discredited *Hearn*.

### C. Rio Tinto Is Not Relying Upon Privileged Legal Advice

*In re County of Erie* makes clear that "at-issue" waiver is strictly limited to when a party relies "on privileged advice from his counsel to make his claim or defense." *In re County of Erie,* 546 F.3d at 229; *see also Green*, 2010 WL 2653650, at *5–6 (holding that legal advice was relevant but not waived where parties were not relying on the advice). To hold otherwise, particularly in the context of a statute of limitations defense, would lead to the absurd result that "[i]n virtually every case in which the statute of limitations ... is pleaded as a defense and the client relies on the discovery rule to overcome the limitation period, the opposing party would be able to inquire of the client's counsel: Did your client tell you anything in confidence about what he or she knew that differs from or contradicts what he or she stated in responses to discovery?" *Darius,* 741 Na.E.2d at 57; *see also Davis v. Parkview Apartments*, 409 S.C. 266, 295, 762 S.E.2d 535, 550-51 (2014) (same, relying on *In re County of Erie*).

In this case, Rio Tinto has not even asserted, let alone relied upon, any privileged advice. In fact, Vale does not and cannot point to a single instance where Rio Tinto is relying upon advice of counsel to demonstrate the reasonableness of its decision when to bring this lawsuit. Since Rio Tinto has not injected any legal advice into these proceedings, no "at-issue" waiver has occurred. *See, e.g., In re County of Erie,* 546 F.3d at 229 (noting that "a mere indication of a claim or defense certainly is insufficient to place legal advice at issue"); *Darius,* 741 N.E.2d at 58 (finding no waiver of privilege where plaintiff relied on the discovery rule to overcome defendant's statute of limitations defense). It simply is not the law that, by the mere assertion of the discovery rule, a defendant is permitted to "automatically probe the plaintiff's attorney-client relationship simply to determine whether the plaintiff may have revealed something to his or her attorneys that might be helpful to the defendant's case." *Id*. at 58. Such a rule would completely eviscerate the protections afforded between an attorney and client.

In any event, legal advice by Rio Tinto's lawyers is immaterial to an objective determination of when the statute of limitations clock began to run. The RICO limitations test is

an objective one that is determined with reference to what facts Rio Tinto learned and when it learned them. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 296 (S.D.N.Y. 2013) ("whether a plaintiff is placed on inquiry notice is analyzed under an objective standard"). For an objective test like this, advice of counsel is immaterial. *See In re County of Erie*, 546 F.3d at 229 (holding that because a test was objective, instead of subjective, "reliance upon advice of counsel" could not be used to support it). What Rio Tinto's counsel thought about those facts, or any legal advice it provided in light of them, therefore is not relevant (and not "at issue") to the objective determination of when the statute began to run.

        The court's decision in *Allen v. West Point-Pepperell Inc.*, which actually applied the *Hearn* test and still found no waiver of privileged communications, is instructive on this point. 848 F. Supp. 423 (S.D.N.Y. 1994). There, the defendant sought to pierce the attorney-client privilege with an unreasonable delay defense, similar to what Vale is attempting here. *Id*. The *Allen* court found that defendants failed to show "that the subject of the privileged communications is critically relevant to the issue of plaintiffs' delay in attacking the releases." *Id*. at 430. Because "the critical point is not what legal advice [attorneys] gave to plaintiffs or what plaintiffs said to [attorneys], but rather what facts plaintiffs knew regarding the alleged fraud, when they became aware of those facts, and their state of mind at all relevant times," the court found that "[p]rivileged communications between [attorneys] and plaintiffs need play no role." *Id*. at 430. *See also United States v. Ghailani,* 751 F. Supp. 2d 498, 502 (S.D.N.Y. 2010) (noting that even though "the reasons for delay in this case are pertinent does not justify disclosure of privileged communications arguably pertinent to that subject because there has been no reliance" on the privileged communications); *Standard Chartered Bank PLC v. Ayala International Holdings*, 111 F.R.D. 76, 82 (S.D.N.Y. 1986) ("What is relevant to the counterclaims here is not what counsel said to [plaintiff] or what [plaintiff] said to counsel, but what [plaintiff] knew or should reasonably have been expected to know," which is a question "to be determined by the proceedings in this court, not by the opinion of [plaintiff's] lawyers"); *Weiss v. National Westminister Bank, PLC*, 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) (requiring the defendant to show that the privilege-holder "relied on the [privileged communications] in asserting its state of mind defense"); *Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, 1998 WL 414933, at *2 (S.D.N.Y. July 23, 1998) (rejecting the argument "that the mere assertion of a fraud theory or other legal claim implicating the plaintiff's knowledge is sufficient to trigger a broad waiver of the plaintiff's attorney-client privilege"); *Rhone–Poulenc Rorer*, 32 F.3d at 863–64 (finding that the attorney-client privilege is not waived merely because a party's state of mind is at issue).[6]

---

[6] For the very same reason, Vale's discovery request would also fail even if the Court were to apply *Hearn*. Because the questions here are objective rather than subjective, and any legal advice rendered by counsel for Rio Tinto is irrelevant to Vale's statute of limitations defense, Vale will not be "denied access to information vital to their claims." *In re County of Erie*, 546 F.3d at 229. Consequently, "there is no unfairness" to Vale and they are "in no way worse off as a result of the disclosure that communications exist than they would be if they were unaware of them." *Id*.

### D. The Only Relevant Time Period for Rio Tinto's Investigation is December 2008 to April 2010

Vale's discovery request is breathtakingly broad not only in its attempts to circumvent the attorney-client privilege, but also in its attempt to acquire such privileged documents within the applicable – and protected – statute of limitations time period. This request cannot stand.

Again, assuming *arguendo* that equitable tolling is even required (and it is not because Rio Tinto filed its lawsuit within four years of actual or inquiry notice of its RICO claim – *see Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012)), the only period for which it would be required is prior to April 30, 2010. Thus, at most Vale is entitled to documents related to Rio Tinto's investigation from December 2008 to April 29, 2010 (*i.e.*, four years prior to Rio Tinto commencing suit). Rio Tinto's documents or communications with its counsel *after* April 29, 2010 are irrelevant to Vale's statute of limitations defense and would undoubtedly tread on the attorney-client privilege and work product doctrine. *See Memorylink Corp. v. Motorola, Inc.*, 2010 WL 3167277, at *8 (N.D.Ill. Aug. 6, 2010) ("Because the timeliness of Memorylink's Malpractice Case depends on its pre-November 30, 2007 knowledge, the court finds that communications with its counsel after November 29, 2007 have little relevance to any claims or defenses"); *see also Darius*, 741 N.E.2d at 58 (holding that what was "put at issue" was what the "plaintiff knew or should have known before January 15, 1996 [two years prior to filing in accordance with the statute of limitations]" and refusing to produce any privileged documents after January 15, 1996).

The cases that Vale cites in support of its argument that it is entitled to *all* documents and communications related to Rio Tinto's investigation – including those dated after April 29, 2010 – do not say otherwise. Vale relies on *Landmark Screens,* 2009 WL 3415375, and *Russell v. Curtin Matheson Scientific, Inc.*, 493 F. Supp. 456, 458 (S.D. Tex. 1980). What Vale fails to note in its briefing to the Court is that both cases support a temporal limit on the scope of waiver. *Landmark* involved a state fraud claim with a statute of limitations of three years, and May 20, 2008 was the day Landmark filed suit. *Landmark Screens,* 2009 WL 3415375 at *2. In denying Defendant's requests for discovery within the statute of limitations time period, the *Landmark* court found that the waiver applied to "communications that relate to whether it had actual or presumptive knowledge of facts such that it was on inquiry of such fraud between June 22, 2004 (the date of the alleged notice) and May 20, 2005 [three years before commencing suit]." *Id*. at *3. The *Landmark* court refused to order production of privileged documents outside of this relevant time period. *Id*.

Similarly, in *Russell*, the plaintiffs argued for equitable tolling, contending they were misled by the Department of Labor with respect to a 180-day period for filing notice of intent to file suit. *Russell*, 493 F. Supp. at 458. Again, the scope of the waiver was limited: for the 180-day period before plaintiffs filed notice of intent to file suit, the attorney-client privilege was not waived. *Id*. "Any communications which they might have had with attorneys less than 180 days prior to [the date they filed their notice of intent to file suit] might have caused the time period to being to run, but would not have affected the plaintiffs' ability to get into court…They are, therefore, still covered by the attorney-client privilege." *Id*.

8

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

  With its discovery request, Vale impermissibly seeks to pierce one of the most sacrosanct and protected privileges under the law – the attorney-client privilege. Vale reaches too far and its requests must be denied. Rio Tinto has not effected an implied waiver of the attorney-client privilege merely by invoking the discovery rule in response to Vale's statute of limitations defense. Indeed, Rio Tinto is not relying on *any* privileged communications or documents in support of its claims. The case law on this is clear – where a party is not relying on the privileged communication as a claim or defense, the privilege remains intact. The facts do not counsel in favor of a different outcome here. Rio Tinto therefore respectfully requests that the Court deny Vale Document Request 42.

Respectfully submitted,


/s/ Michael J.Lyle
Michael J. Lyle

9