# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

November 24, 2014

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

We write on behalf of Vale S.A. ("Vale") in response to the letter of Plaintiff Rio Tinto plc ("Rio Tinto"), dated November 18, 2014 (Dk. 121) (the "Letter"). During the parties' meet and confers on Plaintiff's waiver of privilege with respect to its investigation, Vale offered to review, and Plaintiff purported to provide, the case law supporting Plaintiff's position. Plaintiff's Letter cites a number of cases that it declined to provide to Vale while the parties were conferring on this issue. None of these new cases supports Plaintiff's position; however, Vales takes this opportunity to respond to the case law that Plaintiff did not previously raise. We also write to correct Plaintiff's misreading of *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), on which it places great reliance.

## I.    Rio Tinto Misreads *County of Erie* And Its Progeny

Courts in this District have flatly rejected the notion "that after the Second Circuit's decision in *In re County of Erie*, 546 F.3d 222 (2d Cir.2008), there can only be an implied waiver if a party affirmatively relies on privileged communications in support of a claim or defense." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972, at *6 (S.D.N.Y. July 3, 2012). Indeed, "[a]fter *Erie*, the Southern District has continued to recognize the broader waiver principles endorsed by the Second Circuit," and "while the *Erie* court narrowed the *Hearn* test, the court did nothing to undermine the principles adopted in *Bilzerian* and subsequently endorsed by courts in this district." *Id.* at *7. As Judge Sweet explained,

"[t]he Erie Court reaffirmed the principle adopted in *United States v. Bilzerian,* 926 F.2d 1285 (2d Cir.1991), that an inquiry into state of mind . . . typically calls forth the possibility of implied waiver of the attorney client privilege," and "went on to conclude that a finding of waiver is justified when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *MBIA*, 2012 WL 2568972, at *6 (citations and quotation marks omitted).[1]

Under *Erie*, Plaintiff's invocation of fraudulent concealment, with its requirement of due diligence, waives privilege with respect to its alleged investigation because testing Plaintiff's assertion of due diligence requires "an inquiry into state of mind," *Erie*, 546 F.3d at 228-229, and because "fairness requires examination of protected communications" with counsel in order to determine Plaintiff's state of mind, *Bilzerian*, 926 F.2d at 1292. Specifically, Rio Tinto pled, and relies on, the allegation that post-April 2010 concealment stymied its "lengthy investigation involving substantial resources" into whether a claim existed against any defendant and that it did not discover the conduct that underlies its claims until "April 2013." (Am. Compl. ¶¶ 146, 147.) Vale is entitled to test that allegation by discovery into, *inter alia*, whether Rio Tinto, in fact, had such a lengthy investigation, whether it involved substantial resources, whether it timely identified a claim (but one that Rio Tinto chose nonetheless not then to pursue), what leads the investigation pursued (and whether it pursued anything that could have been stymied as a result of the post-April 2010 conduct), whether it discovered any of the conduct that "underlies its RICO and other claims" (*id.* ¶ 147), whether it and its lawyers credited (for example) the BSGR denials of the bribery allegations or the various statements made by defendant Thiam, and more generally whether any of the post-April 2010 conduct had any impact (and what that impact was) on its investigation.

Rio Tinto cites a new case, *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 296 (S.D.N.Y. 2013), for the proposition that "the RICO limitations test is an objective one that is determined with objective reference to the investigation itself." (Letter at 2.) But *De Sole* dealt with the test of when the statute of limitations for RICO claims begins – *i.e.*, when the plaintiff is placed on inquiry notice of the injury – not the question here which is whether the running of the statute of limitations which has begun should be tolled. *De Sole*, 974 F. Supp. 2d at 296.[2] There should be no dispute when the statute of limitations began to run; Rio Tinto lost its rights to Simandou in the summer of 2008 or by December 2008 at the latest. Rio Tinto's allegations

---

[1] Post-*Erie* decisions from this District reaffirm the availability of waiver even absent explicit reliance on counsel's advice. *See, e.g.*, *MBIA*, 2012 WL 2568972; *Arista Records, LLC v. Lime Group, LLC*, No. 06 Civ. 5936(KMW), 2011 WL 1642434, at *2-3 (S.D.N.Y. Apr. 20, 2011) (rejecting argument that a party may present state-of-mind evidence as part of a good faith defense without waiving privilege so long as it did not rely on advice of counsel); *Xuedan Wang v. Hearst Corp.*, No. 12 Civ. 793(HB), 2012 WL 6621717, at *2-3 (S.D.N.Y. Dec. 19, 2012) (same).

[2] For the same reason, Rio Tinto's citation to *Darius v. City of Boston*, 741 N.E.2d 52, 56 n.7, 58 (Mass. 2001), addressing the discovery rule, is not on point. There was no allegation of due diligence or of wrongful conduct that prevented the plaintiff from bringing the claim. The court held that where the plaintiff alleged it discovered its claim in the spring of 1996 "[i]t cannot be said that counsel's advice to the plaintiffs in the spring of 1996 had any relevance to what they knew or should have known in January of 1996." *Id.* at 56. Even in that context, moreover, the court held that the discovery rule "put 'at issue' . . . what the plaintiffs knew or should have known before" the date of its demand letter, distinguishing cases finding waiver because "[t]he city . . . has not sought discovery from any attorneys who . . . represented the plaintiffs between" the injury and the date of the demand letter. *Id.* at 56-57 & n.8.

relevant here are defendants are estopped from relying on the statute and the running of the statute is tolled because within the four year time period after the injury was sustained (and in April 2010 to be specific) Rio Tinto exercised due diligence in conducting an investigation but was stymied because of defendants' conduct.  As long as Rio Tinto persists in that allegation, Vale is entitled to put Rio Tinto to its proof and to challenge it.  Here, Plaintiff alleges numerous red flags.  (*Id.* at 8.)  If counsel told Rio Tinto, within the limitations period, that it had a claim against BSGR or Vale and Rio Tinto nonetheless chose not to bring that claim (because, for example, it thought it could not recover damages, or it wanted the United States or the Guinean Government to do the work), that would defeat its tolling claim regardless of whether a reasonable person would have discovered it.  So too if Rio Tinto never engaged in a lengthy investigation involving substantial resources.  Or if the conduct alleged to be concealment did not have an impact on the investigation or stymie the investigation.  Or if it had leads that it simply ignored, either out of lack of diligence or lack of care.   A defendant might be estopped from relying on the statute of limitations when its conduct frustrated the plaintiff's ability to bring a timely claim; it is not precluded from relying on the statute when the plaintiff's own lack of care or its considered decision caused it not to bring a timely claim.

## II.     **Plaintiff's New Cases Are Still Not On Point**

The remaining new cases cited by Rio Tinto are similarly unavailing.  *Standard Chartered Bank PLC v. Ayala International Holdings*, 111 F.R.D. 76 (S.D.N.Y. 1986), actually supports Vale's argument.  The issue there was not equitable tolling; the court rejected Ayala's position that assertion of a counterclaim based on oral representations waived privilege to disprove reliance, but it reached that conclusion, applying the *Hearn* test, because it found the advice "and whether or not Ayala disregarded its attorneys' advice, are *irrelevant* to the issue."  *Id.* at 82 (emphasis added).  In so doing, however, the court specifically distinguished cases where waiver was found based on the invocation of equitable doctrines to overcome a limitations bar because there, *inter alia*, "the very subject of privileged communications was critically relevant to the issue to be litigated."  *Id.* at 83.[3]

Plaintiff cites a single new case that involved equitable tolling, *Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550(SAS)(MHD), 1998 WL 414933 (S.D.N.Y. July 23, 1998), but that case is similarly inapposite.  There, the sole issue raised by defendants was the timing of plaintiff's acquisition of the facts upon which the complaint was based; defendants assumed "[i]n substance . . . that the mere assertion of a fraud theory or other legal claim implicating the plaintiff's knowledge is sufficient to trigger a broad waiver of the plaintiff's attorney-client privilege and of the otherwise applicable work-product protection."  *Id.* at *2.  On the basis of that claim, defendants sought the legal advice given by the attorney filing the lawsuit.  After recognizing that the Second Circuit recognizes a "broader variant" of at-issue waiver whereby "disclosure may be called for 'when defendant asserts a claim that in fairness requires examination of protected communications,'" *id.* at *2 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)), the court denied the application to see the

---

[3] As *Erie* noted, "whether fairness requires disclosure has been decided on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."  *Erie*, 546 F.3d at 229 (quotation marks and citations omitted).  As the case law cited by Vale demonstrates, the invocation of fraudulent concealment to defeat a statute of limitations is a specific context that has consistently merited waiver of the privilege.  (Dk. 119 at 4-5.)

privileged communications because "[i]f defendants need to learn when the Trustees first acquired the facts that form the predicate for the lawsuit, they are free to ask such questions to the Trustees and to others who may have disclosed such information to the Trustees . . . ." *Id.* at *3. Here, by contrast, the main issue is not just when Rio Tinto learned the facts upon which it bases its lawsuit. It is whether – in the face of all the red flags Rio Tinto admits in its complaint – it in fact exercised due diligence in conducting an investigation and whether any of the purported acts of fraudulent concealment by defendants in any way obstructed Rio Tinto's ability to bring this claim. It is that issue that is highly in dispute. If Rio Tinto's alleged investigation was conducted without the assistance of counsel, there will be no documents responsive to the requests regarding the investigation that are protected by the privilege for the advice of counsel; the court will have to decide whether such an investigation is sufficiently thorough to constitute due diligence and excuse Rio Tinto from the statute of limitations. If, however, the investigation was conducted *with* the assistance of counsel, Rio Tinto cannot allege that the investigation (and the conduct allegedly to stymie it) relieves Rio Tinto of the limitations bar and simultaneously shield by invocation of the privilege the discovery necessary for defendants to test (and put the lie to) that allegation.

The remaining cases Plaintiff cites are either not on point or directly support Vale's position. Many found no waiver because, unlike fraudulent concealment, "[t]he defenses . . . raised . . . can fairly be described as routine defenses." *United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 WL 1585597, at *5 (S.D. Ohio July 11, 2002) (noting, in declining to find waiver based on "fair notice" type defenses, that "[o]nce a waiver has been found, the scope of that waiver would ordinarily extend to the entire subject matter of the transaction at issue"). Several both involved routine defenses of lack of knowledge (and not equitable tolling) and concluded, only after *in camera* review, that the communications were not vital to the case (and indeed were irrelevant) or were otherwise not at issue. They are doubly distinguishable. *See Weiss v. Nat'l Westminster Bank, PLC*, No. CV 05-4622 CPS/MDG, 2008 WL 5115027, at *2-3 (E.D.N.Y. Dec. 3, 2008) (following *in camera* review, "plaintiffs have not shown *on any level* how NatWest has relied on the emails at issue in asserting its state of mind defense"); *United States v. Ghailani*, 751 F. Supp. 2d 501-02 (S.D.N.Y. 2010) (after *in camera* review, opposition to speedy trial motion did not waive privilege because justification for delay was based on declarations by government officials, and "[t]here is no evidence that either [official] ever saw or learned of [the] existence or content" of the documents).

Thus, in *Gruss v. Zwirn*, 276 F.R.D. 115, 135 (S.D.N.Y. 2011), *rev'd in part*, 2013 WL 3481350 (S.D.N.Y. July 10, 2013), the Magistrate Judge found that "[a]dequate evaluation of the *Chapadeau* defense" to a defamation claim based on statements made pursuant to an internal investigation did "not require an examination of the interview notes and summaries made in the course of outside counsel's internal investigation" because "the question is not whether the defendant knew or was aware of the probability that some statement in [the investigator's report] was false, but whether the defendant acted responsibly in selecting and interacting with the investigator and disseminating the results as a whole."[4]

---

[4] The District Court reversed in part, finding a partial waiver by selective disclosure of the documents. *See Gruss v. Zwirn*, No. 09 Civ. 6441(PGG)(MHD), 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013).

In *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014(PKL), 2009 WL 3111766, at *16 (S.D.N.Y. Sept. 28, 2009), the court held that merely "inform[ing] the jury of the fact that counsel was consulted on the subject matter underlying this litigation—a fact that in and of itself is not privileged," would not waive privilege. Here, of course, Plaintiff seeks to do much more, wielding its alleged investigation to defeat the statute of limitations.

Finally, Rio Tinto cites the dissenting opinion in *Davis v. Parkview Apartments*, 409 S.C. 266 (2014), where the majority affirmed the lower court's sanction of dismissal for failure to produce privileged documents put at issue regarding the statute of limitations. That case's holding supports Vale's position.

## Conclusion

The additional authority cited in Rio Tinto's Letter is not on point. Accordingly, Vale's requested Order compelling Rio Tinto to produce documents in response to Vale's Requests 39, 41, and 42 and to fully respond to Vale's Interrogatory 22 should be granted.

Respectfully submitted,

/s/ Lewis J. Liman
Lewis J. Liman