**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

December 1, 2014

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

      We write on behalf of Rio Tinto plc ("Rio Tinto") in opposition to Vale S.A.'s ("Vale") letter of November 17, 2014 (Dkt. No. 119) and in response to Vale's November 24, 2014 letter (Dkt. No 122) regarding "at issue" waiver.  Vale's belated effort to downplay *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008) ("*Erie*"), and the new cases it now relies on, are unpersuasive.[1] The fact remains that Rio Tinto is not relying on any privileged legal advice, nor any claims of good faith or state of mind, in order to support its fraudulent concealment arguments.  Under *Erie* and its progeny, the "at issue" waiver inquiry ends there.  Vale cites no post-*Erie* Second Circuit cases – and indeed there are no post-*Erie* Second Circuit cases period – that stand for the proposition that, by merely asserting fraudulent concealment or equitable tolling, Rio Tinto has put its good faith or state of mind at issue sufficient to waive the privilege.  Rio Tinto therefore respectfully requests that the Court deny Vale's request.

**I.     THERE IS NO "AT ISSUE" WAIVER HERE UNDER *ERIE* AND ITS PROGENY**

      Apparently now recognizing that *Erie* controls in the Second Circuit and their pre-*Erie* and non-Second Circuit cases do not, Vale attempts to carve out a broad "state of mind" exception to *Erie*'s requirement that "a party must *rely* on privileged advice from his counsel to make his claim or defense" in order to invoke "at issue" waiver.  *Erie*, 546 F.3d at 229 (emphasis in original).  Vale's purported "state of mind" exception is based on the Second

---

[1] As noted in our November 18 letter (Dkt. No. 121), counsel for Rio Tinto provided counsel for Vale with the *Erie* decision prior to Vale submitting its November 17 letter in order to head off what Rio Tinto continues to believe is meritless motion practice.  Vale proceeded to give *Erie* a two-sentence discussion in its November 17 letter.

Circuit's decision in *U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991).  But even a cursory analysis of the origins of the "state of mind" at issue waiver in *Bilzerian* and its post-*Erie* application show that any "state of mind" exception is still limited to when a party's state of mind necessarily implicates legal advice, such as the assertion of a good faith belief in the lawfulness of particular conduct.  Rio Tinto has asserted no such good faith or state of mind reflecting legal advice, and Vale's broadside attack on the attorney-client privilege fails.

### A.   State of Mind Must Implicate Legal Advice for "At Issue" Waiver

The new cases Vale relies upon for its purported "state of mind" exception all stem from the Second Circuit's decision in *Bilzerian*.  Mr. Bilzerian was convicted of securities fraud, false statements to the Securities and Exchange Commission, and other violations of securities laws.  *Id.* at 1289.  At his trial, Mr. Bilzerian had sought to testify regarding his good faith belief in the lawfulness of his conduct, and filed a motion *in limine* to allow him to testify to that good faith belief without being cross examined about conversations he had with his counsel on the subject.  *Id*. at 1291.  The trial court held that if Mr. Bilzerian were to testify regarding his good faith in the legality of his actions, it would open the door to cross-examination with respect to the basis for his belief, and that such cross-examination would allow inquiry into communications with his attorney.  *Id.*

The Second Circuit affirmed, observing that Mr. Bilzerian's good faith defense "that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue."  "His conversation with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent."  *Id.* at 1292.  Simply put, Mr. Bilzerian's good faith defense necessarily implicated advice from his counsel.  *Bilzerian* is thus consistent with *Erie*'s requirement that "a party must *rely* on privileged advice from his counsel to make his claim or defense" in order for "at issue" waiver to apply.  *Erie*, 546 F.3d at 229 (emphasis in original).

The view that a party's state of mind must necessarily reflect some legal advice in order to invoke "at issue" waiver has continued in the post-*Erie* world.  Indeed, each post-*Erie* case Vale cites is distinguishable because legal advice or good faith belief in the lawfulness of certain conduct was at issue.  For example, in *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 09-cv-3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012), the court, relying on *Bilzerian*, found at issue waiver where MBIA "demonstrated its intention to place the opinion of counsel at issue."  *Id.* at *3..  Not only had MBIA indicated its intent to place the opinion of counsel at issue, it had affirmatively designated two of its attorneys as witnesses, and offered affidavits of witnesses regarding their "understanding" and the "intent" of the parties regarding the agreement at issue.  *Id.* at *5, *7.  Similarly, the court in *Arista Records, LLC v. Lime Group, LLC*, 11-mc-0028, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011),  found at issue waiver where the defendants also asserted a "good faith belief" that their conduct was lawful.  *Id.* at * 1..  As the court noted, "if a defendant *asserted his good faith*, the jury would be entitled to know the basis of his understanding that his actions were legal."  *Id.* at *3 (citing *Erie*) (emphasis added).  The court in *Xuedan Wang v. Hearst Corp*., 12-cv-793, 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012), held the same, finding an at issue waiver under *Bilzerian* where the defendants "raised a good faith defense" and depositions in the case "raise[d] rather than diminishe[d] the possibility of the legal department's involvement" in influencing the defendant's state of mind.  *Id.* at *2

2

Ultimately, regardless of any dicta that good faith and state of mind are bases for finding "at issue" waiver that are distinct from *Erie*'s requirement of reliance on privileged advice, the reality is that *Bilzerian* and its post-*Erie* progeny only find waiver where a party asserts a good faith or state of mind defense that necessarily involves the advice of counsel. In other words – just as with *Erie* – *Bilzerian* still requires that legal advice be put at issue. As explained below, in this case, Rio Tinto is neither asserting a good faith defense, nor putting its knowledge of the law – or any other legal advice – at issue. In sum, *Bilzerian* and its progeny do not and cannot support the breathtaking invasion of Rio Tinto's attorney-client privilege that Vale seeks here.

### B. Rio Tinto Has Not Put Any Legal Advice "At Issue"

Rio Tinto is not asserting a good faith defense (*see, e.g., Bilzerian*, 926 F.2d 1285 (finding at issue waiver with assertion of good faith defense)*, Arista Records*, 2011 WL 1642432 (waiver where defendants asserted good faith belief in legality of actions), *Xuedan Wang*, 2012 WL 6621717 (waiver with assertion of good faith defense and evidence indicated legal department rendered advice on same)), nor is it offering affidavits from its counsel (or any witnesses) implicating any legal advice (*see, e.g., MBIA Ins. Corp.*, 2012 WL 2568972). Indeed, the facts of this case could not be more different from those cases cited by Vale. Simply put, Vale has not and cannot show on any level that Rio Tinto has asserted or will assert a good faith or state of mind defense implicating the advice of its counsel. As a result, Vale has no basis to invade the attorney-client privilege. *See e.g. United States v. Ghailani*, 751 F. Supp. 2d 498, 501–02 (S.D.N.Y. 2010) (finding no at issue waiver because the "critical point" was missing—namely, the privilege-holder did not "*rel[y]* on the privileged communication as a claim or defense or as an element of a claim or defense") (citing *Erie,* 546 F.3d at 228).

Vale's claim that it is entitled to probe Rio Tinto's due diligence to determine whether the Defendants' fraudulent concealment of those acts inhibited Rio Tinto's ability to bring this case does not change this result. Vale says it wants to know whether Rio Tinto conducted "a lengthy investigation that involved substantial resources," "whether it timely identified a claim," "what leads the investigation pursued (and whether it pursued anything that could have been stymied as a result of the post-April 2010 conduct)," "whether it discovered any of the conduct that underlies its RICO and other claims," "whether it credited…the BSGR denials of the bribery allegations or the various statements made by defendant Thiam," and "whether any of the post-April 2010 conduct had any impact (and what that impact was) on its investigation."[2] Dkt. No. 122 at 2. But these issues are ultimately nothing other than questions of fact, all of which can be learned from Rio Tinto's fact witnesses through the course of discovery. None of these questions of fact implicate any good faith belief on the part of Rio Tinto in the lawfulness of its conduct, or any other legal advice. Vale's claims otherwise are pure conjecture.

Courts are in accord. Notably, Vale cites no post-*Erie* cases from the Second Circuit –

---

[2] As explained in Rio Tinto's November 18 letter, Vale is only entitled to explore Rio Tinto's due diligence during the time period for which tolling is required – i.e., from December 2008 to April 2010. Because Rio Tinto filed this lawsuit in April 2014, it filed within the statutory period of anything it learned after April 2010.

3

and we believe there are none[3] – where a court has found that a party put its good faith/state of mind at issue simply by arguing equitable tolling/fraudulent concealment. The relevant post-*Erie* decisions cited in Vale's November 24 letter are distinguished above. And Vale's November 17, 2014 letter cited only four post-*Erie* decisions. Two of those, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012), and *Huckabone v. City of Jamestown*, 09-cv-602A, 2014 WL 4146844 (W.D.N.Y. Aug. 19, 2014),[4] do not even mention, let alone discuss, at issue waiver. The other two, *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 344 (S.D.N.Y. 2011), and *MBIA Ins. Corp*, 2012 WL 2568972, do not involve equitable tolling/fraudulent concealment.[5] Only one – *MBIA* (distinguished above) – even mentions *Erie*. Simply put, there are no Second Circuit cases post-*Erie* saying that a party puts its state of mind or good faith at issue when asserting equitable tolling or fraudulent concealment.[6]

The reason for this is simple – the question of whether a party exercises reasonable due diligence in discovering its claims is an objective, not subjective, one. *In re Merrill Lynch Ltd. Partnerships Litig.*, 7 F. Supp. 2d 256, 266 (S.D.N.Y. 1997) ("the test as to when fraud should have with reasonable diligence been discovered is an objective one"); *In re Integrated Res. Real*

---

[3] Counsel for Rio Tinto likewise has not been able to locate any cases post-*Erie* in which a court in the Second Circuit held that fraudulent concealment/equitable tolling qualified for "at issue" waiver under the good faith/state of mind exception. Like those Vale cites, the only other post-*Erie* cases in which courts found "at issue" waiver under the state of mind exception involved the privilege-holder claiming good faith reliance on legal advice.

[4] Vale completely misrepresents the holding of *Huckabone* by implying that mere retention of counsel indicates inquiry notice of a claim. This is simply incorrect. The *Huckabone* plaintiff sought to toll the statute of limitations on the theory that Defendants' threats of retaliation prevented him from hiring counsel to pursue his claims during the applicable limitations period. 2014 WL 4146844 at * 3–4.

[5] In an effort to learn the identity of Rio Tinto's investigators and confidential informants ("CI"), Vale points the court to the decision in *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund*, 278 F.R.D. 335. But the facts of that case are entirely distinct from those presented here. The *Plumbers* court found identification of the CIs appropriate because the CIs were quoted extensively throughout the complaint and were alleged to have "first-hand knowledge" of the plaintiffs allegations. *Id.* at 339. Rio Tinto, on the other hand, has made no such affirmative representations in its Amended Complaint. Because "the identities of the confidential informants do not go to the heart of the case and are at best marginally relevant to the issues at stake in this litigation," disclosure of their identities here is unnecessary and would do nothing other than subject the informants to the risk of harassment and reprisals. *Management Information Technologies, Inc. v. Alyeska Pipeline Service Co., et al.*, 151 F.R.D. 478, 482–83 (D.D.C. 1993) (refusing to order identification of CIs). Hence, Rio Tinto's proposal to redact its investigators and confidential informants is entirely appropriate here.

[6] Although Vale now appears to have retreated from them, it is worth noting that the only three cases from the Second Circuit it originally cited in support of its position have not fared well post-*Erie*. *WLIG* has not been cited even once after the *Erie* decision. *Bohack* has been cited only once post-*Erie* but not for "at issue" waiver. And *Connell* has only been cited twice post-*Erie*: once in a string cite from a New York state court decision (*People v. Sarihasan*, 29 Misc. 3d 1218(A), 918 N.Y.S.2d 399 (Sup. Ct. 2010)) in which, unlike here, privileged legal advice was clearly put at issue because the defendant submitted an affidavit and gave testimony regarding conversations she had with prior counsel, and in a Massachusetts Supreme court case (*McCarthy v. Slade Associates)* that found no at-issue waiver and reaffirmed a prior holding that "where a defendant raises a statute of limitations defense that is met by the plaintiff's reliance on the discovery rule, the statute of limitations invocation, by itself, does not permit the defendant to intrude into the attorney-client relationship between the plaintiff and her lawyer only to locate a statement by the client that might contradict a statement or position that she has taken in the particular case." *McCarthy v. Slade Associates, Inc.*, 463 Mass. 181, 191, 972 N.E.2d 1037, 1046 (2012)

*Estate Ltd. Partnerships Sec. Litig.*, 850 F. Supp. 1105, 1118 (S.D.N.Y. 1993) (same). Because an objective test applies to the question of Rio Tinto's diligence, any opinions from Rio Tinto's counsel are irrelevant to the question of what *facts* Rio Tinto learned in its investigation and when it learned them. *See, e.g., Weiss v. National Westminister Bank, PLC*, 05-cv-4622, 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) ("the efficacy of [a] defense of lack of knowledge turns on what [the party] knew rather than on the bona fides of the opinions of its counsel"); *Erie*, 546 F.3d at 229 (holding that because a test was objective, instead of subjective, "reliance upon advice of counsel" could not be used to support it). This is all information that can be obtained from Rio Tinto's fact witnesses and non-privileged documents, while the question of whether Rio Tinto was reasonably diligent under the law is one that will be determined by proceedings in this Court, not by the opinion of Rio Tinto's lawyers. Thus, the discovery Vale seeks of privileged communications is irrelevant to rebutting Rio Tinto's equitable tolling and fraudulent concealment claims. These claims do not and cannot rely on any good faith belief by or legal advice to Rio Tinto.

Indeed, Vale's counsel would seem to know this. In another case, lawyers from Cleary Gottlieb, including Jonathan Blackman who represents Vale in this case, argued that where there was no "intimation by [defendants] that it relied on legal advice or the attorney-client communications sought by plaintiffs in asserting its defense," there could be no at issue waiver. *Weiss*, 2008 WL 5115027 at *3. Even though defendants had raised a lack of knowledge state of mind defense, the court agreed with Cleary Gottlieb and, relying on *Erie,* found no waiver because "much of what plaintiffs claim support a finding of implied waiver is based on conjecture…at most this speaks to relevance, not reliance." *Id.* at *2. The Court went on to note that any questions regarding the defendants state of mind (*e.g.*, knowledge) could be determined by discovery of the facts, not the underlying legal advice. *Id.* at *3. The same is true here. At most, Vale's allegations amount to nothing more than mere conjecture about alleged legal advice rendered by Rio Tinto's lawyers; alleged legal advice that Rio Tinto itself has not asserted. Judge Go of the Eastern District of New York and Vale's counsel had it right there, and this Court should find the same here. Where no legal advice has been put at issue and there is no good faith or state of mind defense, there can be no at issue waiver of the attorney-client privilege.[7]

---

[7] Vale's discussion of *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. 2013), attempts to somehow broaden the scope of at issue waiver beyond situations of legal advice and good faith by trying to draw a distinction between the standards used to determine when a plaintiff is placed on inquiry notice of the injury, and when the statute of limitations should be tolled. But as with its other arguments, that is a distinction without merit. The discovery rule and fraudulent concealment are only distinct in that the latter requires an additional showing that a defendant "takes steps beyond the challenged conduct itself to conceal that conduct from the plaintiff," *S.E.C. v. Wyly*, 950 F. Supp. 2d 547, 555–56 (S.D.N.Y. 2013). The objective standard, however, applies to determine inquiry notice and due diligence in both doctrines. *See e.g. Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (discussing the objective standard for the discovery rule and then stating "[t]he doctrine of equitable tolling is similarly limited," since it will stay the statute of limitations "only so long as the plaintiff has exercised reasonable care and diligence") (internal quotations omitted). "Under the fraudulent concealment doctrine, the statute of limitations may be tolled until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or *should have* acquired such knowledge through the exercise of *reasonable* diligence." *S.E.C. v. Microtune, Inc.*, 783 F. Supp. 2d 867, 878 (N.D. Tex. 2011) *aff'd sub nom, S.E.C. v. Bartek*, 484 F. App'x 949 (5th Cir. 2012) (emphasis added) (internal quotations omitted) (quoting and citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir. 1974)). It is well established that in the Second Circuit, "[t]o toll a federal statute of limitations (footnote continued)

### C.     Privileged Legal Advice is not "At Issue" Merely Because it is Relevant

When stripped of its rhetoric, Vale's requests for fairness amount to nothing more than a return to the *Hearn* relevancy standard for at issue waiver. But *Erie* is clear that privileged advice is not put at issue merely because it may be relevant. *See Erie*, 546 F.3d at 229. Because "privileged information may be in some sense *relevant* in any lawsuit," relevance cannot serve as proxy for the requisite showing of a party's reliance "on privileged advice from his counsel [in] mak[ing][a] claim or defense." *Weiss*, 2008 WL 5115027, at * 2 (quoting *Erie* and finding no at issue waiver of privilege).

Moreover, courts have routinely rejected claims of at issue waiver where, as here, the party seeking waiver – not the party claiming privilege – injects the privileged communications and legal advice by virtue of its own asserted affirmative defense. *See, e.g., Chase Manhattan Bank N.A. v. Drysdale Securities Corp.*, 587 F.Supp. 57, 59 (S.D.N.Y. 1984) (finding even under the liberal *Hearn* standard that "[i]t cannot be possible for [defendant] to justify breaching [plaintiff's] privilege by reason of its own pleading of an affirmative defense. That would give an adversary who is a skillful pleader the ability to render the privilege a nullity"); *Darius v. City of Boston*, 433 Mass. 274, 282, 741 N.E.2d 52, 58 (2001) (holding that "the defendant may not, based solely on the plaintiff's invocation of the discovery rule, automatically probe the plaintiff's attorney-client relationship," even if that information would be "helpful to the defendant's case"); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3rd Cir. 1994) (rejecting the *Hearn* rule "that the information sought is relevant and should in fairness be disclosed"); *Allen v. W. Point-Pepperell Inc.*, 848 F. Supp. 423, 426 (S.D.N.Y. 1994) (noting that courts have concluded that implied waiver is not appropriate where a "*defense* putatively requires breaching the privilege") (emphasis in original). The logic behind this limit to the waiver is that the attorney-client privilege will always involve relevant information, and thus, under Vale's arguments, the privilege would never apply. *See Erie*, 546 F.3d at 229 ("[P]rivileged information may be in some sense relevant in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue"); *Allen,* 848 F. Supp. at 426 (noting that the attorney-client privilege by its very nature shields "relevant evidence"); *Darius*, 741 N.E.2d at 57–58 (noting that a relevance standard "would pry open the attorney-client relationship and strike at the very core of the privilege" because "[i]n virtually every case in which the statute of limitations (or lack of timely presentment, as here) is pleaded as a defense and the client relies on the discovery rule to overcome the limitation period, the opposing party would be able to inquire of the client's counsel: Did your client tell you anything in confidence about what he or she knew that differs from or contradicts what he or she stated in responses to discovery?"). To avoid stripping the privilege of meaning, this Court should follow other courts and refuse to find at issue waiver here.

---

pursuant to the fraudulent concealment doctrine, . . . [t]he test of due diligence is an objective one." *In re Ahead by a Length, Inc.*, 100 B.R. 157, 163–64 (Bankr. S.D.N.Y. 1989) (finding that allegations in RICO and fraud claims are sufficient to support a fraudulent concealment theory); *see also New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 286 (S.D.N.Y. 2013) (finding that "the defense of fraudulent concealment is ultimately a fact-intensive determination as to the reasonableness of Plaintiffs' ignorance to the injury").

### D. There is no Unfairness to Vale

The notion of unfairness underlies any determination that a privilege should be forfeited. This notion implicates only "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *John Doe Co. v. United States,* 350 F.3d 299, 306 (2d Cir. 2003). The Second Circuit has made it clear that "[w]hether fairness requires disclosure has been decided ... on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Erie*, 546 F.3d at 229 (quoting *In re Grand Jury Proceedings,* 219 F.3d 175, 183 (2d Cir. 2000)).

In this case, there is no unfairness to Vale because Rio Tinto has not put its good faith, state of mind, or any legal advice "at issue" in the first place. Rio Tinto does not claim that it acted in a good faith belief that its due diligence was adequate under the law, or that its counsel told it so. Nor could it: the factual findings of the investigation are analytically distinct from the interpretation of those findings by Rio Tinto's attorneys. *Weiss,* 2008 WL 5115027 at *3. And Rio Tinto's due diligence will be assessed by this Court, not by the opinions of Rio Tinto's lawyers. *Id.* In other words, because Rio Tinto is in no way using the privilege as a sword, Vale is "no worse off" and has not been denied "access to information vital to" its claims as a result of as a result of any privilege assertions by Rio Tinto. *Erie*, 546 F.3d at 229 (internal citations omitted).

## II. VALE'S ARGUMENT OF A BLANKET WAIVER IS UNPRECEDENTED

The "at issue" waiver Vale seeks is stunning in its scope and breadth. Despite the fact that Rio Tinto has not put its legal advice "at issue"; despite the fact that any tolling is needed only for a short period of time (December 2008–April 2010); despite the fact that case law instructs that any waiver must be narrowly construed, *see United States v. Nobles*, 422 U.S. 225, 240 (1975), Vale seeks an unbounded six-year swath of privileged communications and work product up to the very date Rio Tinto filed its complaint in 2014.[8]

Desperate to find some support for the unprecedented discovery it now seeks, Vale mischaracterizes *Memorylink Corp. v. Motorola, Inc.*, 08-cv-3301, 2010 WL 3167277, (N.D. Ill. Aug. 6, 2010) *aff'd*, 468 F. App'x 960 (Fed. Cir. 2011), by claiming that the case turns on whether a plaintiff admits discovery of its claims. This is simply wrong. *Memorylink* clearly holds that the temporal limit is the "statute of limitations deadline," which the *Memorylink* court characterized as the date of the complaint (November 25, 2009) minus the statute of limitations period (November 25, 2007). *See id.* at *8 (noting that "[defendant's] statute of limitations defense depends on what [the plaintiff] knew or should have known prior to November 25, 2007,

---

[8] *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 1995 WL 598971, at *3 (S.D.N.Y. Oct. 11, 1995)* and *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 1997 WL 272405, at *2-3 (S.D.N.Y. May 21, 1997), cited by Vale, are inapposite. In both cases, parties asserted a good faith/reliance on counsel defense. Thus, the *Bank Brussels* court cautioned that when a party asserts a "defense of its reliance on advice of counsel…that party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied [,]" *Bank Brussels*, 1995 WL 598971, at *4. Rio Tinto has asserted no such defense here.

7

two years prior to the date [the plaintiff] filed its complaint"). Thus, the *Memorylink* court found that, where at issue waiver occurred, the most the defendants were entitled to learn related to the plaintiff's investigation of its claims was the period prior to November 25, 2007. *Id.* Any discovery from after that date was due to the fact that the plaintiff "agreed to voluntarily disclose any privileged communications on or before November 29, 2007." *Id.*

      Notably, not even the cases that Vale itself cites in support of its argument counsel for such a broad and far-reaching waiver of the privilege. As was discussed more fully in Rio Tinto's prior submission, case law – including Vale's own cases – counsels in favor of a temporal limit on the scope of waiver. *See* Dkt. No. 121 at 8. That temporal limit is dictated by the statute of limitations period such that any privileged documents within that statute of limitations period are protected by the attorney-client privilege. Vale's attempts to eviscerate the attorney-client privilege by arguing for a *six year* waiver are unfounded in case law and must be denied.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle