**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

December 3, 2014

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:     Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

We write on behalf of Plaintiff Rio Tinto plc ("Plaintiff") to preview a number of
outstanding issues concerning Plaintiff's jurisdictional discovery requests to Defendants BSGR
and Steinmetz ("Defendants") that need Your Honor's attention and resolution.[1]  For months, we
have attempted to reach agreement on the culling criteria (custodians, search terms, and time
periods) to frame Defendants' review and production of jurisdictional discovery.  Regrettably,
however, our efforts to settle upon that culling criteria have not been reciprocated.  Although
Defendants will surely say they have been a willing, cooperative participant, any such statement
is belied by their *in*action:  They have not produced a single document; they have yet to collect
documents from key executives, including Mr. Steinmetz; they have rejected our suggestion that,
at minimum, we proceed in stages whereby they produce a subset of documents responsive to a
subset of search terms and time periods while otherwise agreeing to table unrelated differences
until resolution by the Court; and they have refused to run the simplest of search term reports
(and claim they are unable to do so).  These are just a few examples, and we are particularly
concerned that, eight months into the litigation, Defendants have yet to produce a single
document related to personal jurisdiction.

---

[1]  On November 26, 2014, Plaintiff proposed that the parties submit a joint letter to the Court, supplying
Defendants with a draft template of that joint submission.  On November 28, 2014, Defendants informed Plaintiff
that they preferred to instead proceed with separate submissions.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS |
MUNICH | SYDNEY | HONG KONG | BRUSSELS

It bears further mention that, in addition to Judge Berman reminding Defendants on Monday that discovery should proceed, *see* 12/1/14 Hr'g Tr. at 31: 21-22, Judge Berman commented specifically to Defendants that "litigants [regularly] say there is no personal jurisdiction" but "that argument doesn't get you very far unless we have a motion before us." *Id.* at 14:3-6. To file a motion to dismiss for lack of personal jurisdiction, however, Defendants must first *provide* Rio Tinto with the jurisdictional discovery that was ordered by the Court many months ago.

Per the Court's instruction at the previous conference and following up on the parties' November 17, 2014 letter, below is a summary of outstanding issues regarding jurisdictional discovery, to be discussed further at the upcoming hearing on December 9, 2014.

## I.     Scope of Discovery

The parties remain at impasse over whether Defendants must collect and produce documents from their reputed agents, namely:  Michael Noy, Avraham Lev Ran, Pentler Holdings, Mamadie Toure, and Matinda – indeed, Defendants refuse to even run these search terms and provide us with the number of resulting hits.  On this issue, Plaintiff incorporates its November 17, 2014 letter, and simply summarizes the details therein by saying that Defendants' agents – all of whom are alleged to have close connections to the conduct of Frederic Cilins that took place in the United States[2] – may each, separate and apart from one another, provide a pathway for this Court to exercise jurisdiction over Defendants.

We also note that our search terms related to these agent individuals or entities do not seek merits-based discovery, nor do they seek to circumvent the Court's previous orders, despite Defendants' contrary characterizations.[3]  We are, instead, simply targeting activities and conduct of these reputed agents that *took place in the United States – e.g.*, travel to the United States, payments made in the United States, the destruction of evidence in the United States, ownership of U.S.-properties, and wire transfers made through the United States.  Such activity relates directly to the question of personal jurisdiction.  Defendants cannot contest personal jurisdiction while withholding documents that would undoubtedly shed light on what their agents did in the United States in furtherance of the conspiracy alleged in Plaintiff's Amended Complaint.

---

[2]   These allegations are further supported by public filings by federal prosecutors in proceedings against Cilins regarding his efforts to destroy evidence of bribery and corruption related to Simandou. *See U.S. v. Cilins*, 13-Cr-315,  Dkt. No. 13-5 at 9 (S.D.N.Y. June 6, 2013) (explaining Noy and Lev Ran were "closely connected with Cilins's criminal conduct" in the United States).

[3]   In the parties November 17, 2014 letter, Defendants identify the search terms "Hollywood," "Beachfront," Yacht Basin," and "IST" as examples of terms that seek merits discovery.  These terms, however, have nothing to do with merits discovery.  Instead, they were proposed as terms precisely because they reflect, on information and belief, where BSGR's agents owned property in the United States ("Hollywood [FL]"), particular street names where those properties are located ("Beachfront" and "Yacht Basin"), and known nicknames for known BSGR employees ("IST").

## II.      Time Period for Jurisdiction Discovery

*General Jurisdiction.*   The parties also disagree as to the appropriate time period for discovery concerning general jurisdiction.  This dispute was previewed in the parties' November 17, 2014 letter to the Court.  *See* Dkt. No. 118 at 3-5.  As Defendants have done after every conference, they have interpreted this Court's orders from the November 3, 2014 hearing in an unreasonably narrow manner.  Per present discussions between the parties, Defendants want to limit the time period to a *two-week* window, beginning one week before Plaintiff filed its Complaint on April 30, 2014 and ending one week after.[4]   We respectfully submit, however, that a two-week window is far too narrow.  Indeed, this Court has ordered general jurisdiction discovery spanning years:

> Thus, plaintiffs are entitled to jurisdictional discovery regarding the extent of defendant Privatbank's general business contacts with the United States in the years 1992—1998, a period that includes the relevant period in this action and five preceding years. *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d at 207–08; *see also, Metropolitan Life Ins. Co.,* 84 F.3d at 569–70 (holding that the time period relevant for determining extent of a defendant's contacts for general jurisdiction purpose should include a number of years prior to the events giving rise to the claims asserted).

*Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004).  There is no justification for limiting a document collection to just two weeks, and there are numerous examples of why such a collection would be insufficient for purposes of jurisdiction:  such a narrow window would overlook documents that concern, *e.g.*, travel plans to and from New York made earlier in 2014; financial accounts that were opened months before April 30, 2014 or closed weeks after; BSGR organizational charts that were created, accessed, or modified on, for example, April 1, 2014 but not again accessed until later in the year; apartments or other properties that were purchased before April 2014; ongoing business activities in May 2014 that stem from meetings or conduct that took place in the United States earlier that year.  The examples could go on and on.

Accordingly, Plaintiff respectfully requests that the Court order Defendants to collect documents from the appropriate custodians (discussed below) concerning general jurisdiction from January 1, 2014 through May 31, 2014 – a brief six-month time frame.

*Specific Jurisdiction.*  The parties also remain at impasse over terms related to specific jurisdiction – terms that relate, for example, to suspected wire transfers, cash payments, and the destruction of evidence that took place in the United States.   In particular, Defendants again propose running these terms across tiny windows in 2012 and 2013 (again, measured in weeks).  Just as above, however, those narrow windows run the risk over overlooking critical documents

---

[4]   Until recently, Defendants were only willing to search for documents created, accessed, or modified on a single day, April 30, 2014, the day Plaintiff filed its original complaint.  Although Defendants have since backed off that proposal, their current proposal remains unreasonable.

that may be dispositive here.  They threaten to overlook, *e.g.*, (i) communications leading up the cash payments made in the United States; (ii) follow-on communications confirming and/or reflecting that evidence in the United States was indeed destroyed per Frederic Cilins instructions; and (iii) end-of-year bank statements memorializing that wire transfers were made, and between whom.

Accordingly, Plaintiff respectfully requests that the Court order Defendants to collect documents from the appropriate custodians concerning specific jurisdiction from January 1, 2012 through December 31, 2013 (years that correspond to Cilins's U.S. conduct, *see* Am. Compl. ¶¶ 124-129, 133), and for those search terms aimed at the wire transfers alleged in the Amended Complaint, January 1, 2010 through December 31, 2010 and January 1, 2013 through December 31, 2013.  *Id.* at ¶¶ 130, 140(b).

## III.     Custodians

The parties have agreed to divide Defendants' custodians into two groups – one set of custodians for *specific* jurisdiction and another set for *general* jurisdiction.  There is no present dispute as to the first group of custodians.  There is, however, dispute over the second, which includes collecting and reviewing documents responsive to search terms such as "United States," "U.S.," New York," "NY," "Manhattan."[5]  For those and other similar terms, Plaintiff has asked Defendants to collect documents from seven, executive-level individuals.  On information and belief, these seven individuals are the most likely to have documents pertaining to Defendants activities, if any, in New York and/or the United States.  Although Defendants have not yet collected documents from *any* of these seven individuals in order to get a sense of the volume of documents they may or may not have, Defendants have flatly refused to collect from the following three individuals without providing any reason for that refusal.

- **David Clark**.  Mr. Clark is the former Chairman and Director of BSGR, as well as a former board member that only recently resigned from BSGR this year on April 14, 2014 – two weeks before Plaintiff filed its original complaint.  Additionally, Mr. Clark signed the joint venture agreement between BSGR and Vale.  As Chairman and Director, Mr. Clark is (presumably) aware of BSGR's corporate structure and organization, operations, accounts, assets, and other business activities that may connect to New York and the United States.  Most tellingly, BSGR has agreed to collect documents from its *current* Chairman and Director, Mr. Peter Driver, who replaced Mr. Clark but nonetheless still refuses to collect from Mr. Clark.

---

[5]   Defendants BSGR and Steinmetz have not yet run these search terms across any data because they have not yet even *collected* data from principal custodians.  Even so, Defendants claim (in a vacuum) that Plaintiff's proposed search terms are overbroad and will yield large numbers of non-responsive documents in the United States. That of course presents a knotty dichotomy:  it is unclear how Defendants can represent that they do not do business in this country while simultaneously complaining that basic search terms related to this country will yield too many hits.  Indeed, Defendants' own counsel proposed to the Court that they run "New York" and "Manhattan" as search terms, *see* 11/3/2014 Hr'g Tr. at 17:14, terms that Defendants now claim are overbroad.

- **Dag Cramer.**  Mr. Cramer is the CEO of Onyx Financial Advisors UK (the financial arm of BSGR), and a current BSGR board member.  In these capacities, Mr. Cramer (presumably) has documents and information concerning, among other things, BSGR's accounts, payments, wire transfers, financial assets, and real estate that may have connected to or have been routed through New York or the United States.

- **France "Frank" Eagar.**  On information and belief, Mr. Eagar is a Tax Compliance Officer and Business Development Executive at BSGR or an affiliate.  Accordingly, Mr. Eagar would have documents and information concerning, among other things, BSGR's corporate structure, financial operations, business ventures, and other business activities in New York or the United States.

Accordingly, Plaintiff respectfully requests that Defendants collect documents from these three custodians.  As explained in Plaintiff's previous letter dated November 17, Plaintiff strenuously objects to the suggestion that it should have to pay for any portion of the collection.  This Court has already ordered that this discovery must proceed, and Plaintiff should not bear the cost of this routine litigation expense.  *See* Dkt. No. 118 at 8.

## IV.  Search Terms and Metrics

The parties remain at impasse over the search terms and metrics detailed in their November 17, 2014 joint submission.  Instead of repeating its arguments from that letter here, Plaintiff simply notes that it has asked Defendants to provide it with a search term report, on a term-by-term basis, so that it could evaluate which specific terms are bringing back too many hits and revise (or even drop) terms accordingly.  Defendants have refused to provide any such report.  To be sure, Plaintiff and Defendant disagree on how many documents are too many documents to review.  By way of example, Defendants argue that reviewing 9,228 documents that hit on either "Fred* or Cilin*" is too burdensome.[6]  Plaintiffs respectfully disagree, particularly as it concerns Frederic Cilins who is central to the jurisdictional inquiry at issue.  In any event, Plaintiff will be prepared to discuss the particular terms and strings detailed in the parties' November 17, 2014 letter next week at the hearing.

\*       \*       \*

As explained above, despite significant efforts, Defendants are not complying with this Court's order regarding jurisdictional discovery, and we respectfully request the Court's assistance to resolve these issues.

Very truly yours,


/s/Michael Lyle
Michael Lyle

---

[6]  Although Defendants report that 9,228 documents hit on these two terms, that is not a "unique" document count, which Defendants say that cannot compute.