**Mishcon de Reya**
NEW YORK LLP

750 7th Avenue - 26th floor
New York, NY 10019

www.mishconnewyork.com

December 3, 2014

| | |
|---|---|
| Direct Tel: | 212-612-3265 |
| Direct Fax: | 212-612-3297 |
| E-mail: | Vincent.Filardo@Mishcon.com |

<u>**BY ECF AND HAND DELIVERY**</u>

Hon. Andrew J. Peck
United States Magistrate Judge
United States District Court
For the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, NY 10007-1312

      Re:    <u>Rio Tinto plc v. Vale, S.A., et al</u>,
                Civ. Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

      This Firm is counsel to defendants BSG Resources Limited ("BSGR") and Benjamin Steinmetz (together, "Defendants") in the above-captioned action ("Action").

      Pursuant to the November 3, 2014 order of the Court ("Order"), issued orally by Your Honor at the status conference held on the same date ("Conference"), Plaintiff Rio Tinto plc ("Plaintiff") and Defendants were directed to meet and confer regarding proposed search terms for jurisdictional discovery, and to advise the Court of the status of those discussions on November 17, 2014.  (*See* Nov. 3, 2014 Hr'g Tr. at 35:14-19).  As required, Plaintiff and Defendants submitted a joint letter on November 17, 2014, advising Your Honor that the parties had made some progress resolving areas of disagreement, but other unresolved issues would likely require the Court's intervention.  (Dkt. No. 118) ("November 17 Joint Letter"). Defendants now write to update the Court on the current status of their discussions with Plaintiff in advance of the December 9, 2014 conference.

      While the parties have resolved certain of their outstanding disagreements, they remain at an impasse on a number of critical threshold issues concerning jurisdictional discovery that would require the Court's intervention.

      Following the Conference, Defendants understood that Your Honor specifically:

- limited the scope of jurisdictional discovery to Defendants' conduct in the United States, and not to any of their alleged agents or co-conspirators, except for defendant Frederic Cilins.  (*See* Nov. 3, 2014 Hr'g Tr. at 26:25-29:11);

- limited jurisdictional discovery to the time of the (i) filing of the Complaint (Dkt. No. 2) ("Complaint") as to general jurisdiction, and (ii) allegations in the Amended Complaint (Dkt. No. 83) ("Amended Complaint") concerning the activities of defendant Cilins in the United States with respect to New York long-arm jurisdiction.  (*See id.* at 30:9-32:1); and

- directed that Plaintiff would provide proposed search terms to Defendants by November 7, 2014, and that *Defendants* would select the appropriate custodians among their employees, after receiving those terms.  (*See id.* at 34:22-35:19).

Nevertheless, Plaintiff chose to ignore Your Honor's clear directives, and has insisted upon dramatically expanding the (i) scope of discovery to include purely merits-based discovery concerning Defendants' alleged agents or co-conspirators and the purported misconduct of defendant Cilins, and (ii) temporal scope of jurisdictional discovery to cover *several years*.  Despite Your Honor's directive, Plaintiff has also decided that it should choose the number and identity of Defendants' document custodians, and has proposed a list of custodians that is far broader than Defendants believe necessary for limited jurisdictional discovery.

### A.     The Court Appropriately Limited the Scope of Jurisdictional Discovery.

Your Honor clearly limited the scope of jurisdictional discovery to Defendants' conduct in the United States, and not to any of their alleged agents or co-conspirators, except for defendant Frederic Cilins.  (*See* Nov. 3, 2014 Hr'g Tr. at 26:25-29:11).  Even as to defendant Cilins, Your Honor stated "[K]eep Mr. Cilins in *for now*."  (*See id.* at 29:11 (emphasis added)).

Despite that unequivocal ruling, Plaintiff argues it is entitled, as part of jurisdictional discovery, to purely merits-based discovery concerning Defendants' alleged agents or co-conspirators, including (i) former-defendant Michael Noy; (ii) former-defendant Avraham Lev Ran; (iii) defendant Mamadie Touré, and (iv) Ibrahima Kassory Fofana.  (*See* November 17 Joint Letter, at 2-3).  Consequently, Plaintiff proposes search terms related to these individuals, including companies purportedly owned or co-owned by them.  For example, Plaintiff proposes search terms regarding: (i) Pentler Holdings, a company allegedly co-owned by Messrs. Noy, Lev Ran, and Cilins; (ii) "Hollywood" and "Beachfront," locations where Plaintiff alleges Messrs. Noy, Lev Ran, and Cilins own property; (iii) "Yacht Basin," described by Plaintiff as an address for defendant Touré; and (iv) "IST," the initials of defendant Touré's brother who resides in Guinea.  (*See id.* at 5-7).  Plaintiff claims these searches are appropriate for jurisdictional discovery because the identified individuals are allegedly linked to Defendants or defendant Cilins.  Plaintiff reaches further, and even includes search terms for "Ibrahima Fofana," who Plaintiff believes is an agent of BSGR, and "Maryland," where Plaintiff claims Mr. Fofana resides.  (*Id.* at 2-3, 7).  However*, as even Plaintiff acknowledges*, Mr. Fofana is not mentioned anywhere in its Amended Complaint.  (*See id.* at 2-3).  Given Your Honor's ruling,

and the limited scope of this jurisdictional discovery inquiry, the foregoing proposed search terms are unnecessarily over-broad and should be rejected.

Plaintiff also believes it is entitled to merits-based discovery concerning the purported misconduct of defendant Cilins. Astonishingly, Plaintiff has proposed search terms that have no bearing on the relationship between Defendants and defendant Cilins -- as an agent or an employee of BSGR -- but instead are only designed to inquire into Cilins's alleged wrongdoing in Florida. For example, Plaintiff's proposed terms include: (i) "attestation or declaration"; (ii) "destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR wipe OR "get rid" OR trash OR discard OR cover OR conceal*"[1]; and (iii) "wells fargo".

Plaintiff's proposals are plainly contrary to the Court's Order, and again seek to broaden the scope of jurisdictional discovery to include not only merits-based discovery concerning alleged agents and co-conspirators other than Cilins, but also co-defendants and former co-defendants in this Action. As Your Honor stated when the Court rejected this same discovery strategy at the Conference, "[T]hat's proving your case through the back door." (*See* Nov. 3, 2014 Hr'g Tr. at 26:25-27:8 (regarding discovery of co-defendants stating, "You may get it later. You're not getting it now."); *id.* at 27:9-28:3 (regarding discovery as to contacts with co-conspirators stating, "[t]hat is basically the merits, is it not?")). Given that the Court has already expressly rejected Plaintiff's request for merits discovery, and, *a fortiori*, its proposed search terms designed to secure that discovery, Defendants respectfully request that the Court give no further consideration to Plaintiff's apparent renewed request for merits-based discovery.

> **B.    The Scope of Jurisdictional Discovery Should Not Be Expanded Because Plaintiff's Allegations Cannot Confer Jurisdiction Over Defendants Through Any Purported Agent.**

The allegations of the Amended Complaint are insufficient to confer personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(a) or (b) (alleged RICO bases for jurisdiction) or CPLR 302 (New York's long-arm statute), and thus through any agent allegedly acting on their behalf. Accordingly, Plaintiff is not entitled to any additional jurisdictional discovery beyond that which has been already ordered by the Court at the Conference.

The allegations of the Amended Complaint are insufficient to establish personal jurisdiction over BSGR or Steinmetz under either 18 U.S.C. §§ 1965(a) or (b) because, among other reasons: (i) Rio Tinto does not allege that either BSGR or Steinmetz had an agent in New York on April 30, 2014 (the day that this action was commenced); and (ii) BSGR and Steinmetz were not served in the United States -- both executed waivers of service in England. *See*

---

[1] On November 19, 2014, in response to Defendants' initial hit report, and in an attempt to narrow this search term, Plaintiff revised it to include additional keywords, (destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR wipe OR "get rid" OR trash OR discard OR cover OR conceal*) AND (doc* OR paper OR data OR contract OR eviden* OR info* OR email OR e-mail). Plaintiff also added a similar search string in French, (detrui* OR destruct* OR elimin* OR enleve* OR effac* OR brul* OR essuy* OR débarrass* OR déchet* OR jete* OR couvr* OR cach*) AND (document* OR papier OR donnée OR contrat OR fichier OR preuv* or info* OR email OR e-mail).

*Pincione v. D'Alfonso*, No. 10 Civ. 3618(PAC), 2011 WL 4089885, at *5 (S.D.N.Y. Sept. 13, 2011) (requiring "agent in the jurisdiction on the day the complaint is filed" for § 1965(a) jurisdiction) (citation omitted); Waiver of Service Returned Executed, filed on June 9, 2014 (Dkt. No. 28); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985) (finding plaintiffs had not served the foreign defendants in the United States, and therefore the court could not exercise personal jurisdiction over those parties under § 1965(b)).

      Having no other basis to establish jurisdiction, Plaintiff must rely on the provisions of New York's long-arm statute (*i.e.,* CPLR 302(a)(2)-(a)(3)). The Amended Complaint, however, does not allege that BSGR directly committed any tortious act in New York -- an essential allegation to establish jurisdiction under CPLR 302(a)(2). Furthermore, Plaintiff has not alleged jurisdiction over BSGR, pursuant to CPLR 302(a)(2), based on the tortious acts of agents who were "physically present in New York." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784(RMB)(GWG), 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) (Berman, J.) (citation and quotation omitted) (finding that CPLR 302(a)(2) requires allegations that defendants were physically present in New York during occurrence of alleged wrongful conduct).

      Nor does the Amended Complaint sufficiently allege personal jurisdiction over Mr. Steinmetz pursuant to CPLR 302(a)(3) because it does not allege the occurrence of any tortious act committed by Steinmetz (or any of his alleged agents or co-conspirator) outside of New York which also *caused injury to person or property* within New York. *See Bank of New York Mellon v. SACE S.p.A*, 10 CIV 2510 RMB, 2011 WL 102728, at *4 (S.D.N.Y. Jan. 6, 2011) (Berman, J.) ("Under CPLR § 302(a)(3)(ii), a court in New York may exercise jurisdiction over a nondomiciliary when the defendant (1) committed a tortious act outside New York, (2) *that causes injury within New York State*, (3) the defendant expects or should reasonably expect the act to have consequences in the state, and (4) derives substantial revenue from interstate or international commerce.") (emphasis added); *see also Brooks v. Von Lenthe*, No. 05 Civ. 3655 RMB AJP, 2006 WL 177146, at *2 (S.D.N.Y. Jan. 24, 2006) (Berman, J.) (adopting Magistrate Peck's Report and Recommendation and granting German entities' and their German employees' Rule 12(b)(2) motion, where plaintiff failed to show that defendants transacted business in New York, committed tortious acts in or that had an effect in New York, or owned, used, or possessed real property in New York under CPLR 301(a)). Here, Rio Tinto's alleged injury was the loss of its mining interests *in Guinea* resulting from the *Guinean Government's* rescission of those rights -- the Amended Complaint fails to allege any injury to Plaintiff occurring in New York. (*See* Am. Compl. ¶¶ 92, 154, 196-97).

      In these premises, Plaintiff's attempts to evade Your Honor's Order should not be permitted, and all jurisdictional discovery search terms should be appropriately tailored to comply with the Order, as Defendants have proposed.

### C. Plaintiff Ignores the Court's Order Regarding the Relevant Time Period for Jurisdictional Discovery.

Your Honor limited jurisdictional discovery to the time of the (i) filing of the Complaint as to general jurisdiction, and (ii) allegations in the Amended Complaint concerning the activities of defendant Cilins in the United States with respect to New York long-arm jurisdiction. (Nov. 3, 2014 Hr'g Tr. at 30:9-32:1). Notwithstanding Your Honor's clear directive, and Defendants' good-faith efforts to meet and confer with Plaintiff on these issues, Plaintiff continues to demand broad time periods for jurisdictional discovery that are not appropriately tailored to the jurisdictional allegations directed at Defendants in the Amended Complaint.

As set forth in the parties' November 17 Joint Letter, Plaintiff originally requested that Defendants run its proposed search terms from January 2008 to the present -- a time-period neither supported in the Court's Order, nor by relevant jurisdictional authority in the Second Circuit. (November 17 Joint Letter, at 4). Nevertheless, Defendants tested Plaintiff's proposed search terms, and, consequently, proposed different time periods that would achieve a more manageable and appropriate review in accordance with the Court's Order[2] (*see* Nov. 3, 2014 Hr'g Tr. at 30:9-32:1), including that:

> (i) search terms concerning general jurisdiction be run for April 30, 2014, the date of the filing of the Complaint, as well as one week prior and after this date to capture any data that was sent, created, or last accessed on April 30, 2014; and
>
> (ii) the search term (fred* or cilin*) be run for April 27, 2012 – May 8, 2012 (*see* Am. Compl. ¶ 133) and March 1, 2013 – April 14, 2013 (*see id.* ¶¶ 124-130), corresponding to the time periods when defendant Cilins's alleged activities occurred in the United States.

Plaintiff has now proposed the following time periods: (i) January 1, 2014 through May 30, 2014, for search terms concerning general jurisdiction[3]; (ii) a *two-year period* between January 1, 2012 and December 2013, for search terms concerning Mr. Cilins; and (iii) the *years* 2010 and 2013, for search terms concerning Mr. Cilins's alleged wire transfers through Wells

---

[2] Although Defendants do not agree that many of Plaintiff's proposed search terms are within the scope of the Order, Defendants fulfilled their meet and confer obligations and complied with the Order by proposing narrower time periods for various search terms and providing Plaintiff with hit reports for those searches on November 14, 2014 ("Nov 14 Hit Report"). A copy of Defendants' Nov 14 Hit Report is attached as **Exhibit A**. This included, for example, proposing that the search term "florida" OR "floride" OR "fl" be limited to the time of Mr. Cilins's alleged conduct in the United States, April 27, 2012 – May 8, 2012 (*see* Am. Compl. ¶ 133) and March 1, 2013 – April 14, 2013 (*see id.* ¶¶ 124-130). Absent a narrow temporal limitation, this search term has nothing to do with jurisdictional discovery and is overbroad. Additionally, Defendants suggested that the search term "Wells Fargo," if deemed appropriate, be limited to (a) July 13, 2010 – August 19, 2010 (*see id.* ¶¶ 140(b), 161, 167(c)), a two-week range based upon Plaintiff's allegations of the date of such transfers, and (b) March 1, 2013 – April 14, 2013 (*see id.* ¶ 130), a time period that encompasses defendant Cilins's alleged activities in the United States until the date of his arrest.

[3] Notably, Plaintiff suggested a six-week timeframe on the parties' November 24, 2014 meet and confer teleconference, but then later inexplicably proposed this five-month timeframe in written correspondence on November 28, 2014, which appears to be Plaintiff's current position.

Fargo bank.[4]  Even if Plaintiff's proposed underlying search terms were appropriate -- they are not -- Plaintiff's proposed time periods ignore the Order and relevant case law in the Second Circuit, and are another blatant attempt to inappropriately broaden the scope of jurisdictional discovery.[5]

For Plaintiff to establish that this Court has general jurisdiction over Defendants, it must establish that such jurisdiction existed "at the time of the Complaint."  *See* Nov. 3, 2014 Hr'g Tr. at 30:25-31:7; *see also Arrow Trading Co. v. Sanyei Corp. (Hong Kong)*, 576 F. Supp. 67, 70 (S.D.N.Y. 1983) (noting that relevant time period for general jurisdiction under CPLR 301 is "at the time th[e] action was commenced"); *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 401 (S.D.N.Y. 2009) (same).  Plaintiff's proposal to extend this jurisdictional inquiry by a period of *five months*, without any justification for that expansion, and without identifying any search terms concerning Defendants' alleged direct business activities in the United States,[6] reveals that it did not (and does not) have a basis to claim that general jurisdiction exists over Defendants, and that its demand for discovery here remains a fishing expedition into the merits of the case.

Likewise, Plaintiff seeks to expand jurisdictional discovery relevant to New York's long-arm statute beyond the limitations set by the CPLR and the Order.  *See* N.Y. C.P.L.R. § 302(a)(2)-(a)(3); Nov. 3, 2014 Hr'g Tr. at 31:15-17 ("if we're talking long arm, it's got to be ... in connection with the allegations of the complaint").  The Amended Complaint alleges Mr. Cilins's conduct to have occurred in Florida during *one week* in 2012 and *six weeks* in 2013 (*see* Am Compl. ¶¶ 124-130, 133).  Nevertheless, Plaintiff demands that Defendants search for documents over a two-year period.  Moreover, although the Amended Complaint alleges that Mr. Cilins purportedly made certain wire transfers through a Wells Fargo account in the United States over the course of *less than two weeks* in 2010 and *at most six weeks* in 2013 (*see id.* ¶¶ 130, 140(b), 167(c)), Plaintiff demands that Defendants conduct discovery on that issue for *two entire years* (2010 and 2013).  Plaintiff's proposed broad time periods -- and search topics -- have no purpose other than to probe the merits of the Action.

In accordance with the Order, Defendants respectfully submit that jurisdictional discovery should be limited to the time periods they propose.  (*See supra*, Section C at 5-6).

---

[4] On November 19, 2014, Plaintiff additionally proposed limiting the time period for the terms "attestation or declaration" to March 1, 2012 through May 30, 2012 and February 1, 2013 through April 14, 2013.  Plaintiff has not confirmed whether this more narrow time period is acceptable to them.  Regardless, Defendants believe this search term goes far beyond the scope of the Order.

[5] Although Defendants do not agree with Plaintiff's revised proposed time periods, they re-ran the search terms and provided Defendants with a second hit report for these periods on November 23, 2014 ("Nov 23 Hit Report").  A copy of the Nov 23 Hit Report is attached as **Exhibit B**.

[6] Despite alleging that Defendants conduct business in the United States, (*see* Am. Compl. ¶ 20), Plaintiff refuses to propose any specific search terms targeting Defendants' alleged business activities in the United States or New York.  Rather, they have proposed generic broad search terms, including, "New York OR NY," "Manhattan," "United States OR USA or US [case sensitive] OR states OR America OR Etas Unis OR Amerique," without any further limiting term.

D.  **Plaintiff's Proposed Search Terms.**

1.  **Plaintiff Refuses to Reasonably Mitigate the
    Burden of Analyzing its Proposed Search Terms.**

Defendants tested Plaintiff's proposed search terms and provided it with detailed "hit" reports. (*See* Exs. A and B). Plaintiff further requested that Defendants provide unique-term hit reports for its proposed search terms. (*See supra* at n.8). Defendants explained to Plaintiff that Clearwell, the electronic discovery review tool used by Defendants, does not automatically generate unique term hit reports. Accordingly, creating these reports would require numerous searches for each proposed date range and for each location where BSGR maintains data, necessitating approximately thirty hours of consultant time, at a significant cost to Defendants. Therefore, Defendants suggested deferring this work until the Court has ruled upon the relevant disputed threshold issues, which would likely obviate its need. Thereafter, Plaintiff requested that Defendants provide hit reports on a "word-by-word" basis. Defendants explained that to create that report, they would need to re-run each requested search broken down by word, over all of the various applicable time period proposals, again requiring significant time and cost. Nevertheless, Defendants suggested that Plaintiff identify the specific words and time periods for which they wanted hit reports. Plaintiff *refused to provide this information even after Defendants' counsel requested it three times*, and instead claimed that Defendants were "throwing up road block after road block." Plaintiff's inaction, and refusal to substantively discuss their proposed report, indicates that Plaintiff is not interested in compromising on its proposal or limiting its requested search terms.

2.  **The Parties Agree to the Search Term (Fred\* or Cilin\*)
    But Disagree as to the Appropriate Time Period.**

In accordance with the Order, Defendants have agreed to run the search term (Fred\* or Cilin\*) for the time period April 27, 2012 through May 8, 2012, and March 1, 2013 through April 14, 2013. (*See supra*, Section B). This search results in 1,468 reviewable items. (*See* Ex. B at 2). Plaintiff insists the search term be run from January 1, 2012 through December 31, 2013, which yields 9,228 reviewable items. (*Id*). Defendants respectfully request the Court adopt their proposed time scope for this search term.

3.  **Search Terms Regarding Defendants'
    Alleged Co-Conspirators and Present/Former
    Co-Defendants Are Specifically Excluded by the Order.**

Plaintiff desires to expand the scope of jurisdictional discovery to include merits-based discovery concerning Defendants' alleged co-conspirators, co-defendants, and former co-defendants. (*See supra*, Section B). As a result, Plaintiff has proposed search terms concerning former co-defendants Michael Noy and Avraham Lev Ran, and current co-defendant Mamadie Touré. As just one example of the expansive nature of Plaintiff's proposed search terms, Plaintiff requested that Defendants run the term "IST" because it believes this term is a *nickname* for the *brother* of defendant Touré. Plaintiff has provided no explanation for why that search

term would uncover documents relating to personal jurisdiction over Defendants *in New York*. (*See* November 17 Joint Letter, at 6).

Defendants object to running these search terms as they unquestionably violate the Court's Order limiting the scope of jurisdictional discovery to Defendants' conduct in the United States, and not to any of their alleged agents or co-conspirators, except for defendant Cilins. (*See* Nov. 3, 2014 Hr'g Tr. at 26:25-29:11). Plaintiff refuses to withdraw these search terms, and continues to attempt to prove its case "through the back door" by seeking merits-based discovery from Defendants. (*Id*. at 26:25-27:8). Defendants respectfully submit that the Court should reject Plaintiff's proposed expansion of the scope of jurisdictional discovery, and all of the following search terms: (i) Mamadie OR Toure OR Matinda, (ii) Avraham* OR "Lev Ran", (iii) Michael* OR Mike OR Noy, (iv) Pentler OR PH OR Holdings; (v) "Yacht Basin"; (vi) Hollywood; (vii) Beachfront; and (viii) IST.

### 4.    Search Terms Related to Kassory Fofana Are Not Supported by the Allegations in the Amended Complaint.

Plaintiff also proposes to include search terms for Mr. Ibrahima Fofana and Maryland,[7] where it claims Mr. Fofana resides, because Plaintiff believes Mr. Fofana is an agent of BSGR. (*See* November 17 Joint Letter, at 2-3, 7; *see also supra*, Section B). Neither Mr. Fofana, nor conduct attributed to him, are alleged in the Amended Complaint, and Plaintiff's attempt to include search terms related to him have already been rejected by the Court. (*See* Nov. 3, 2014 Hr'g Tr. 26:25-29:11).

Plaintiff's terse response that "Defendants should just run the search terms" for Mr. Fofana (November 17 Joint Letter, at 7) -- even though those terms have no connection to jurisdiction over Defendants in this Action -- does not help resolve the issue. Defendants respectfully ask that the Court reject Plaintiff's proposed terms.

### 5.    Plaintiff's Additional Proposed Search Terms Related to Its Merits-Based Allegations Further Ignore the Limited Scope of Jurisdictional Discovery Set Forth in the Order.

Plaintiff has proposed additional search terms related solely to defendant Cilins's alleged wrongful conduct in Florida.[8] (*See, e.g., id*. ¶¶ 123-130, 132-141, 167(g)). Defendants object to running these proposed search terms for purposes of limited jurisdictional discovery, because

---

[7] Plaintiff has proposed the following search terms: (i) Ibrahima OR Kass* OR "Don Kass*" OR Fofana OR "IF Global" OR IFGLOBAL OR IFG and (ii) Maryland or MD.

[8] Plaintiff has proposed the following search terms: (i) attestation OR declaration; (ii) (destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR wipe OR "get rid" OR trash OR discard OR cover OR conceal*) AND (doc* OR paper OR data OR contract OR eviden* OR info* OR email OR e-mail); (iii) (detrui* OR destruct* OR elimin* OR enleve* OR effac* OR brul* OR essuy* OR débarrass* OR déchet* OR jete* OR couvr* OR cach*) AND (document* OR papier OR donnée OR contrat OR fichier OR preuv* or info* OR email OR e-mail); and (iv) Wells Fargo.

they do not concern the relationship between Defendants and defendant Cilins as an *agent or an employee of BSGR*. (*See* Am. Compl. ¶ 22).

Moreover, these search terms are too broad, as evidenced by the test searches Defendants ran yielding significant hit results. (*See* Ex. B). For example, Plaintiff's proposed terms "attestation OR declaration," when searched for Defendants' proposed time periods of April 27, 2012 through May 8, 2012 and March 1, 2013 through April 14, 2013, yields 1,916 reviewable items. However, when these same terms are searched for Plaintiff's proposed time period of March 1, 2012 through May 30, 2012 and February 1, 2013 through April 14, 2013, they yield 3,476 reviewable items. (*See* Ex. B at 1). In addition, Plaintiff's proposed search term strings (ii) and (iii) (set forth in footnote 8 above), yield a total of 27,004 reviewable items when searched for Defendants' proposed time periods of April 27, 2012 through May 8, 2012 and March 1, 2013 through April 14, 2013. When these same terms are searched for Plaintiff's proposed time period of January 1, 2012 through December 2013, they yield a total of 161,042 reviewable items. (*Id.*).

Given the clear over-breath of Plaintiff's proposal, Defendants respectfully request that the Court reject it entirely.

### 6. Search Terms Related to General Jurisdiction.

As the parties explained in their November 17 Joint Letter, Defendants will have to perform an additional costly ESI collection in order to conduct jurisdictional discovery concerning general jurisdiction (*i.e.*, direct business activities of BSGR and Mr. Steinmetz in New York and residency of Mr. Steinmetz in New York on the date of the Complaint). (*See* November 17 Joint Letter, at 8). The cost of that collection is driven by the number of custodians and locations from which Defendants' vendor will need to collect data. The cost of processing that data will depend on the size of the collection, which is driven by the time period for which data is collected and the number of custodians from whom data is to be collected. Based upon Plaintiff's proposed custodial list and time period, Defendants electronic discovery vendor has quoted an estimate of $300,000 for this collection. Incurring the cost for general jurisdiction discovery collection before the parties have agreed, or the Court has ruled, on the appropriate number and identity of custodians, and the time period relevant for this inquiry, would be wasteful. Defendants believe this collection should be limited to the time of the filing of the Complaint (*see supra*, Section B), and to four custodians as discussed below (*see infra*, Section E(2)). Without first collecting this data, Defendants have been unable to test any proposed search terms.[9]

---

[9] Plaintiff has proposed the following search terms: (i) New York or NY; (ii) Manhattan; (iii) "United States" OR USA OR US [case sensitive] OR states OR America OR Etas Unis OR Amerique); and (iv) (Beny OR Steinmetz) AND (apartment* OR resid* OR house OR home OR lease OR rent* OR office).

### E. Plaintiff's Inappropriate Custodian Demands.

#### 1. Custodians for Long-Arm Jurisdiction.

At the Conference, Plaintiff agreed to provide proposed search terms to Defendants, and Defendants stated that *they* would select the appropriate custodians after receiving those terms. (*See* Nov. 3, 2014 Hr'g Tr. at 34:22-35:19). Plaintiff did not object. (*See id.*) When Plaintiff proposed its search terms to Defendants, however, it also proposed a list of custodians, including several individuals who have never even been employed by BSGR.[10] Although Plaintiff's custodian list was far broader than Defendants believe appropriate for New York long-arm jurisdiction discovery, Defendants agreed to almost all of Plaintiff's proposed custodians who are current or former BSGR employees. As a result, the parties have agreed on a tentative list of custodians for long-arm jurisdiction, including: (i) Asher Avidan; (ii) Benjamin Steinmetz; (iii) Dag Cramer; (iv) David Clark[11]; (v) David Trafford; (vi) Francis "Frank" Eagar; (vii) Gerard "Gerry" Wilson; (viii) Iwan Williams; (ix) Marc Struik; (x) Peter Driver; (xi) Sandra Merloni-Horemans; and (xii) Yossie Tchelet.

Plaintiff still seeks to include two additional individual custodians: (i) Ibrahima Sory Touré and (ii) Issage Bangoura. Defendants do not believe these individuals are proper custodians for jurisdictional discovery because they worked for BSGR *solely in connection with mining activities in Guinea*. Moreover, as Defendants have advised Plaintiff, neither had a BSGR email address and BSGR does not have any custodial data for them. In light of the foregoing, it would seem that this issue could have been resolved without the Court's intervention, but Plaintiff persists in its obstinacy. Since these two individuals have no relevance to personal jurisdiction over Defendants, and Defendants do not possess any data generated by them, they cannot be appropriate custodians.

#### 2. Custodians for General Jurisdiction.

In an effort to limit the amount of data to be collected, Defendants have proposed the following four custodians for general jurisdiction discovery: (i) Benjamin Steinmetz; (ii) Asher Avidan, President of BSGR since 2006; (iii) Peter Driver,[12] Director and Chairman of BSGR since 2014; and (iv) Marc Struik, Chief Operating Officer of BSGR's Mining and Metals Division since 2007. Defendants believe these four custodians would have knowledge of Steinmetz's or BSGR's business dealings in the United States if any hypothetically existed, and that they comprehensively cover the universe of potentially relevant general jurisdictional discovery. Moreover, the list of proposed custodians for general jurisdiction should be

---

[10] Including, Avraham Lev Ran, Michael Noy, and Ian Cope.

[11] David Clark was not included in Plaintiff's proposed custodian list. Upon further review of the proposed list, BSGR determined he was an appropriate addition and should be included.

[12] Defendants originally proposed David Clark, Director and Chairman of BSGR from 2005-2014, as a custodian for general jurisdiction discovery. However, he retired on April 14, 2014, and is not an appropriate custodian for general jurisdiction. Since Peter Driver replaced him as Director on the same day, Defendants propose that he be included instead.

significantly narrower than those for long-arm jurisdiction since there are limited allegations in the Amended Complaint relevant to the inquiry.

      Plaintiff, however, insists that three additional custodians be included for this collection and review, specifically (i) Doron Levy; (ii) Dag Cramer; and (iii) Francis "Frank" Eagar. Plaintiff's proposal to nearly double the list of custodians for general jurisdictional discovery is unreasonable and burdensome, and should be rejected by this Court. Mr. Levy was identified as a potential non-party witness in Defendants' Amended Initial Disclosures. (Dkt. No. 84-21). However, he is not an employee of BSGR, and Defendants do not have any of his custodial documents. Accordingly, he is not an appropriate custodian for general jurisdictional discovery. Moreover, Mr. Eagar left BSGR in 2012 and therefore would not be an appropriate custodian.

      In the event Defendants must proceed with a more expansive collection, they intend to seek a Court order shifting the costs of that collection to Plaintiff.

      Respectfully submitted,

      */s/* Vincent Filardo, Jr.
      Vincent Filardo, Jr.

cc:    All Counsel of Record (by ECF)

# EXHIBIT A

| No. | Rio Tinto's Proposed Search Term | Reviewable Items | |
|---|---|---|---|
| | | As Proposed by Rio Tinto | As Proposed by MdR |
| 1 | (destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR "wipe" OR "get rid" OR "trash" OR "discard" OR "cover" OR conceal*) | 226,562 | 29,744 |
| 2 | fred* OR cilin* | 15,487 | 2,709 |
| 3 | "florida" OR "floride" OR "fl" | 16,862 | 2,170 |
| 4 | "attestation" OR "declaration" | 18,592 | 3,219 |
| 5 | "wells fargo" | 1,572 | 99 |
| 6 | "jacksonville" | 405 | 283 |

| No. | BSGR's and Mr. Steinmetz's Proposed Search Terms | Reviewable Items | |
|---|---|---|---|
| 1 | Cilin* | 1,125 | 480 |
| 2 | ("florida" OR "floride" OR "FL") AND Cilin* | 354 | 286 |
| 3 | ("attestation" OR "declaration") AND Cilin* | 147 | 85 |
| 4 | "Jacksonville" AND Cilin* | 292 | 237 |

# EXHIBIT B

| Keyword | Reviewable Items | | |
|---|---|---|---|
| | January 1, 2008-present | January 1, 2012-December 31, 2013 | April 27, 2012-May 8, 2012 and March 1, 2013-April 14, |
| (destroy* OR destruct* OR delet* OR remove* OR erase* OR burn* OR wipe OR "get rid" OR trash OR discard OR cover OR conceal*) AND (doc* OR paper OR data OR contract OR eviden* OR info* OR email OR e-mail) | 247,417 | 147,751 | 25,105 |
| (detrui* OR destruct* OR elimin* OR enleve* OR effac* OR brul* OR essuy* OR débarrass* OR déchet* OR jete* OR couvr* OR cach*) AND (document* OR papier OR donnée OR contrat OR fichier OR preuv* or info* OR email OR e-mail) | 22,775 | 13,291 | 1,899 |
| | March 1, 2012-May 30, 2012 and February 1, 2013-April 14, 2013 | | April 27, 2012-May 8, 2012 and March 1, 2013-April 14, 2013 |
| attestation OR declaration | 3,476 | | 1,916 |
| | | January 1, 2012-December 31, 2013 | April 27, 2012-May 8, 2012 and March 1, 2013-April 14, |
| fred* OR cilin* | | 9,228 | 1,468 |
| "florida" OR "floride" OR "fl" | | 4,721 | 1,497 |
| "Jacksonville" | | 326 | 14 |
| | 2010 and 2013 | July 13, 2010-August 8, 2010 and March 1, 2013 – April 14, 2013 | |
| "wells fargo" | 532 | 62 | |