

750 7th Avenue - 26th floor
New York, NY 10019

www.mishconnewyork.com

December 5, 2014

Direct Tel:   212-612-3265
Direct Fax:  212-612-3297
E-mail:        Vincent.Filardo@Mishcon.com

**BY ECF AND HAND DELIVERY**

Hon. Andrew J. Peck
United States Magistrate Judge
United States District Court
For the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, NY 10007-1312

        Re:    *Rio Tinto plc v. Vale, S.A., et al*,
                  Civ. Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

       This Firm is counsel to defendants BSG Resources Limited ("BSGR") and Benjamin Steinmetz (together, "Defendants") in the above-captioned action ("Action"). We write pursuant to the November 3, 2014 order of the Court ("Order"), issued orally by Your Honor at the status conference held on the same date ("Conference") (*see* Nov. 3, 2014 Hr'g Tr. at 13:13-19), and in response to the letter filed by counsel to Plaintiff Rio Tinto plc ("Plaintiff") on December 3, 2014 (Dkt. No. 132) ("Plaintiff's Letter").

       **A.**       **The Scope of Discovery Should Be Limited in Accordance with the Order.**

       Although not previously identified in Plaintiff's proposed custodian list, or the November 17 Joint Letter to Your Honor,[1] Plaintiff, astonishingly, now claims that Defendants "must collect and produce documents from their reputed agents, namely: Michael Noy, Avraham Lev Ran, *Pentler Holdings, Mamadie Touré, and Matinda*." (Plaintiff's Letter, at 2 (emphasis added)). However, defendant Touré is not and has never been a BSGR employee. Similarly, Matinda (allegedly, a company owned by Ms. Touré) and Pentler Holdings (a company co-owned by Avraham Lev Ran, Michael Noy, and defendant Cilins) are not and have never been subsidiaries of BSGR, *nor are they alleged to be Defendants' agents*. Moreover, former defendants Noy and Lev Ran are not and have never been BSGR employees. (*See* December 3, 2014 letter to the Court ("Defendants' Letter"), at 10 n.10). Accordingly, BSGR does not possess any custodial data for these individuals and entities, and could not collect and produce their documents even if this discovery was contemplated by the Order (it is not). By proposing

---

[1] Terms not defined herein shall have the meaning ascribed to them in Defendants' Letter.

Legal1us.244333.6

these individuals and entities, not only as custodians, but also as search terms, Plaintiff again attempts to obtain discovery Your Honor specifically precluded. (*See* Nov. 3, 2014 Hr'g Tr. at 26:25-29:11 (limiting jurisdictional discovery to Defendants' conduct in the United States, and not to any of their alleged agents or co-conspirators, *except for defendant Frederic Cilins*)).

At bottom, Plaintiff's proposed search terms ignore the singular purpose of the inquiry into long-arm jurisdiction -- and the limited discovery granted by Your Honor with respect to alleged agents -- namely, to determine whether the agency relationship alleged in the Amended Complaint exists between Defendants and defendant Cilins. (*See* Nov. 3, 2014 Hr'g Tr. at 27:19-29:11, 31:15-32:1).

### B. Defendants Have Appropriately Identified the Relevant Time Period for Jurisdictional Discovery.

As Your Honor recognized at the Conference, for the Court to exercise its jurisdiction under CPLR § 301, Plaintiff must show that Defendants were doing business in New York when the Action was commenced on April 30, 2014. *See* Nov. 3, 2014 Hr'g Tr. at 30:25-31:7; *see also Arrow Trading Co. v. Sanyei Corp. (Hong Kong)*, 576 F. Supp. 67, 70 (S.D.N.Y. 1983) ("[T]he court concludes that defendant was not 'doing business' in New York at the time this action was commenced and is not, therefore, subject to jurisdiction pursuant to N.Y.Civ.Prac.L. § 301.").

Where, as here, the Amended Complaint contains no specific allegations concerning general jurisdiction, the time period proposed by Defendants (April 15, 2014 through April 30, 2014, two weeks prior to the commencement of the Action), to search for general jurisdiction discovery is sufficient. *See, e.g., Edelman v. Taittinger, S.A.*, 8 A.D.3d 121, 778 N.Y.S.2d 484, 485 (1st Dep't 2004) ("Since the relevant inquiry under CPLR 30[1][2] is whether defendants were doing business in New York at the time the action was brought . . . the IAS court properly exercised its discretion in limiting the jurisdictional discovery" to within one month of the filing of the complaint). The cases cited by Plaintiff do not support its requested six month discovery period because they all concern discovery predicated on specific allegations of business activities in the jurisdiction prior to commencement of the action. *See e.g., In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207 (2d Cir. 2003) (allegations of meeting minutes revealing business activities that could support specific jurisdiction; general jurisdiction did not exist); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 564-65 (2d Cir. 1996) (jurisdictional discovery warranted under the *Vermont* long-arm statute because plaintiff offered specific examples inferring that defendant "had significant business contacts with Vermont"); *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) (allegations supported by defendant's website and annual report showing that it engaged in securities transactions in the United States sufficient to subject it to FRCP 4(k)(2) jurisdiction); Plaintiff's Letter, at 3. The Amended Complaint has no allegations of specific business activities attributable to Defendants.

---

[2] Although the First Department's Opinion refers to CPLR § 302, a review of the First Department's prior Opinion in this case reveals that this is a typographical error and should refer to CPLR § 301. *See Edelman v. Taittinger, S.A.*, 298 A.D.2d 301, 302 (1st Dep't 2002). The New York Supreme Court ultimately granted defendants' motion to dismiss for lack of personal jurisdiction. *Edelman v. Taittinger, S.A.*, No. 122663/2000 (Sup. Ct. N.Y. Cnty. Mar. 15, 2006).

Citing no authority, Plaintiff also argues that the window for long-arm jurisdiction discovery should be expanded from Defendants' proposed period -- which is limited to the allegations of Cilins's alleged activities in the United States -- to a two-year period (from January 1, 2012 through December 31, 2013). Conveniently, in its attempts to limit its own production of documents to defendant Vale, S.A., Plaintiff takes the opposite position, arguing that "any discovery on the BHP takeover must be limited to the actual time period of the BHP takeover -- November 2007 to November 2008 -- and no more." (Dkt. No. 134, at 14). Plaintiff cannot have it both ways. By its own argument, Plaintiff reveals its true motive for seeking to expand this period -- obtaining merits based discovery. (*See* Plaintiff's Letter, at 4 (Defendants' proposed time period may "overlook, *e.g.*, (i) communications leading up to the cash payments made in the United States; (ii) follow-on communications confirming and/or reflecting that evidence in the United States was indeed destroyed per Frederic Cilins instructions; and (iii) end-of-year bank statements memorializing that wire transfers were made, and between whom.")). All three reasons given by Plaintiff concern Cilins's alleged conduct, not his alleged relationship with Defendants.

In any event, Plaintiff has already acknowledged that Defendants' proposed search period is the appropriate one when it agreed that "under the long-arm statute, you must look at [the] time of the allegations in the complaint." (*See* Nov. 3, 2014 Hr'g Tr. at 31:13-14).

### C.  Custodians

Notwithstanding its inconsistent arguments with respect to Michael Noy, Avraham Lev Ran, Pentler Holdings, Mamadie Touré, and Matinda as custodians, it appears Plaintiff has withdrawn its objections to Defendants' custodian list for long-arm jurisdiction.[3] (*Compare* Plaintiff's Letter at 2 with 4). It seems Plaintiff now agrees only data from the following custodians should be searched with respect to long-arm jurisdiction: (i) Asher Avidan; (ii) Benjamin Steinmetz; (iii) Dag Cramer; (iv) David Clark; (v) David Trafford; (vi) Francis "Frank" Eagar; (vii) Gerard "Gerry" Wilson; (viii) Iwan Williams; (ix) Marc Struik; (x) Peter Driver; (xi) Sandra Merloni-Horemans; and (xii) Yossie Tchelet. (*See* Plaintiff's Letter, at 4).

With respect to custodians for general jurisdiction, Plaintiff patently misrepresents that Defendants offered no explanation for their purported "refusal" to collect documents from David Clark, Dag Cramer, and Francis "Frank" Eagar.[4] (Plaintiff's Letter, at 4). On the contrary, Defendants advised Plaintiff that Mr. Clark retired on April 14, 2014, and therefore, he is not an appropriate custodian for general jurisdiction. (Defendants' Letter, at 10 n.12). Indeed, in correspondence with Plaintiff, Defendants agreed that if the Court determined Plaintiff was entitled to documents predating Mr. Clark's resignation, Defendants would collect his custodial documents for the limited period directed by the Court. Likewise, Defendants advised Plaintiff that Mr. Eager was not a BSGR employee when the Action was commenced, and because BSGR

---

[3] Plaintiff had not previously advised Defendants that it had withdrawn its claim that Michael Noy, Avraham Lev Ran, Ian Cope, Ibrahima Sory Touré, and Issage Bangoura are appropriate custodians. (*See, e.g.,* November 17 Joint Letter, at 5).

[4] Plaintiff appears to have withdrawn its request that Doron Levy be included as a general jurisdiction custodian.

does not have custodial documents for him for that period, he is not an appropriate custodian for general jurisdiction. (*Id.* at 11). Moreover, Defendants have repeatedly advised Plaintiff that their proposed custodians for general jurisdiction purposes include the senior BSGR executives who have been with the company for many years and would have knowledge of any hypothetical business activities conducted in the United States. (*Id.* at 10). Finally, Defendants have explained that there is a significant cost involved in performing the collection of data for general jurisdiction discovery, which is why they seek to limit the custodians and confirm the relevant time period prior to conducting that collection.[5]

### D. Plaintiff's Letter Ignores the Salient Issues Regarding Its Proposed Search Terms.

Plaintiff's contention that Defendants refused to provide it with a hit report on a term-by-term basis is demonstrably false. (*See* Defendants' Letter, at 7).

With respect to the search term "(fred* or cilin*)", Plaintiff conflates the issues of relevancy and burden. The relevant period for long-arm jurisdiction with respect to defendant Cilins is limited to the allegations in the Amended Complaint concerning his purported acts as an alleged agent of BSGR and/or Steinmetz in the United States. (*See, e.g.*, Nov. 3, 2014 Hr'g Tr. at 31:15-17). Increasing the search period to two years -- as proposed by Plaintiff -- increases the number of document hits by nearly a multiple of seven (9,228 documents compared to 1,468). The fact that Plaintiff's proposed date range would pull documents that are irrelevant to the long-arm jurisdiction inquiry further evidences Plaintiff's unreasonable and burdensome overreaching. *See, e.g., City of N.Y. v. Group Health, Inc.*, No. 06 Civ. 13122(RJS)(RLE), 2008 WL 4547199, at *5-6 (S.D.N.Y. Oct. 10, 2008) (denying motion to compel production of 101 documents, where moving party had "failed to show how these documents [wer]e *relevant* to the underlying claims and defenses") (emphasis added).

For the reasons set forth herein and in Defendants' Letter, Defendants respectfully request that the Court adopt their proposed custodians for general jurisdiction discovery and temporal restrictions on long-arm and general jurisdiction discovery, and reject Plaintiff's proposed search terms.

Respectfully submitted,

/*s*/ Vincent Filardo, Jr.
Vincent Filardo, Jr.

cc:   All Counsel of Record (by ECF)

---

[5] Defendants have not run Plaintiff's proposed search terms for general jurisdiction given the collection issues identified *supra* at Section C, in the November 17 Joint Letter (at 8), and in Defendants' Letter (at 9). However, Plaintiff's proposed search terms appear over-broad on their face as Defendants previously explained to the Court. (*See* Nov. 3, 2014 Hr'g Tr. at 17:13-16 ("If … we're going to sit down and say what search terms, I'd say New York, Manhattan, *but even that would get a whole huge universe of documents that we would then have to review*.") (emphasis added)).