Ee16rioa

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   RIO TINTO,

4                   Plaintiff,

5             v.                          14 CV 3042(RMB)

6   VALE, S.A., et al.,

7                   Defendants.

8   ------------------------------x
                                         New York, N.Y.
9                                        December 1, 2014
                                         9:45 a.m.
10
    Before:
11
                        HON. RICHARD M. BERMAN,
12
                                         District Judge
13
                           APPEARANCES
14
    QUINN EMMANUEL URQUHART & SULLIVAN, LLP
15        Attorneys for Plaintiff
    BY:  MICHAEL J. LYLE
16        ERIC C. LYTTLE

17  CLEARY GOTTLIEB STEEN & HAMILTON, LLP
          Attorneys for Defendant Vale
18  BY:  LEWIS LIMAN
          ESTI TAMBAY
19
    MISHCON DE REYA, LP
20        Attorneys for Defendants BSG
    BY:  VINCENT FILARDO
21        ELIZABETH ROTENBERG-SCHWARTZ
          KAVITHA SIVASHANKER
22        BENJAMIN STEINMETZ

23  MARTIN AUERBACH, ESQ.
          Attorney for Defendant VBG
24

25

Ee16rioa

(Appearances cont'd)


SULLIVAN & WORCESTER, LLP
    Attorneys for Defendant Thiam
BY:  PAUL SUMMIT

1              (Case called; in open court)

2              THE COURT:  Please be seated.  So as I mentioned to

3    you I think in an endorsement that we're happy to have brief

4    oral argument on the venue issue.  Before we do that I lost

5    track somewhat of where you are on terms of discovery.

6              MR. LYLE:  Good morning, your Honor.  Michael Lyle on

7    behalf of the plaintiff Rio Tinto.  Your Honor, discovery is

8    proceeding.  We've had begun production of documents on both

9    sides and we've had a number of hearings in front of Judge Peck

10   who continues to move us along.  There are a couple of issues

11   that we are meeting and conferring about and will likely be

12   back in front of Judge Peck on some of those in the next week

13   or so.  So discovery is proceeding.  We have not yet begun

14   depositions or anything of the like.  At this stage we're

15   really at the written discovery point.

16             THE COURT:  So I am happy to hear very briefly from

17   the movant.  How are you going to divide or are you?

18             MR. LIMAN:  Your Honor, what we propose is that for

19   Vale, I will argue that the forum selection clause is mandatory

20   and Mr. Filardo will argue the traditional forum non conveniens

21   factors.

22             THE COURT:  Okay.

23             MR. LIMAN:  Your Honor, what we would urge is that

24   there are two independent bases for dismissal here.  Both the

25   mandatory form selection clause and the traditional factors --

Ee16rioa

```
 1              THE COURT:  I got that.  I am pretty far along in the
 2    review.
 3              MR. LIMAN:  Your Honor, what I would propose is you
 4    have got a lot of pieces of paper in front of you.  I would
 5    just highlight four points that I think we would urge your
 6    Honor to focus on as you look through the papers.
 7              THE COURT:  Right.
 8              MR. LIMAN:  The first is the legal stance.  Your Honor
 9    is familiar with the Atlantic Marine standard that requires
10    that forum selection clauses be given controlling weight except
11    in the most exceptional circumstances.  What we would also urge
12    your Honor to focus on is the fact --
13              THE COURT:  It strikes me that only applies if you
14    know what the forum selection clause says.
15              MR. LIMAN:  That's correct, your Honor.
16              THE COURT:  I don't think it is as open and shut as
17    you have suggested when you said let's have this venue motion
18    first because you think it is dispositive as it were.  So
19    doesn't seem clear cut to me at all.
20              MR. LIMAN:  Your Honor, one thing we would say is that
21    both lords in this case are of the view that the clause could
22    have been better written than the lawyers who drafted it.
23              THE COURT:  Who did draft it?
24              MR. LIMAN:  It was drafted by lawyers on both sides.
25    I don't right now know who the lawyers are.  I do think it is
```

Ee16rioa

1    important to focus on the standard in the Second Circuit, which

2    is the ultimate question is is the clause mandatory or is it

3    permissive?  What the Second Circuit says in the *Phillips* case

4    is that there are two independent ways in which a clause can be

5    considered to be mandatory.  One is if it uses the language of

6    exclusivity.  The other is if it uses obligatory venue

7    language.  And that obviously makes sense, your Honor.  It is

8    not only the law of the circuit but as your Honor is aware

9    parties not infrequently draft mandatory clauses, which require

10   litigation to be brought in one of two venues.  Each venue is

11   not exclusive with respect to the other; but nonetheless it is

12   mandatory.

13          THE COURT:  So which case such as that are you

14   principally relying on where there were two jurisdictions that

15   exclusively are the locus of venue?

16          MR. LIMAN:  Your Honor, we would urge you to focus on

17   *Phillips*.  Itself doesn't use the language of exclusivity and I

18   believe in *Phillips* it was federal or state.  If you would look

19   also --

20          THE COURT:  Do you have a case comparable to yours

21   where there are two countries and between the two of them they

22   are the only places where suit can be brought?

23          MR. LIMAN:  Your Honor, I don't offhand.  I don't

24   think the plaintiffs have cited a contrary case, but I do not

25   offhand.

Ee16rioa

```
 1            THE COURT:  Well, that is what I am asking:  Is there
 2    such a case?
 3            MR. LIMAN:  There may be cases like that.
 4            THE COURT:  If you don't have it offhand, and I take
 5    it you've done a thorough review, there is no such case
 6    otherwise you would have it on-hand as it were.
 7            MR. LIMAN:  I am not sure that that is the case, your
 8    Honor.  What I would ask is that we can supply you with a case
 9    within a couple of days.
10            THE COURT:  If you haven't done it by now, you haven't
11    found it because obviously that would support your case.  I am
12    not saying there is one either.  That is what would be most
13    helpful.
14            MR. LIMAN:  This is the second point.  There are a
15    series of cases where the identical language that was used in
16    this contract is used in other forum selection clauses the
17    "shall be brought" and the courts have held that that language
18    is mandatory.
19            What I would focus your Honor on is the decision by
20    Judge Spatt in the Express Scripts case in the Eastern
21    District.  Judge Spatt cites a number of cases at the bottom of
22    page 23 of the printout for the proposition that where a forum
23    selection clause provides that a dispute shall be brought in a
24    particular venue, that language is to be considered to be
25    mandatory.
```

Ee16rioa

1          THE COURT:  I think, though, in this situation you

2     really rather than argue the Black letter law as it were, it is

3     really the facts of different cases that are going to be most

4     persuasive.  That is why I mentioned or asked if there were

5     such a case.  We can all recite the principles.  You have two

6     leading experts on opposite sides of the fence citing law.  The

7     real question is what case comes closest to this where the

8     outcome is the one that you are arguing for factually.

9          MR. LIMAN:  If your Honor will give me just a moment.

10          I had thought, your Honor, in *Express Scripts* one of

11     the cases involved two alternative forum.  I am not sure

12     whether that is the case or not.

13          Your Honor, the underlying principle remains.  I hear

14     what your Honor is saying that it will be useful to find a case

15     that is directly on point.  The Court has to construe the

16     contract.  It does have two experts that express somewhat

17     different views.  Your Honor, I would suggest that only our

18     expert expresses the view that this clause is mandatory.

19          THE COURT:  I thought your expert actually said it was

20     a mistake the way it was written.

21          MR. LIMAN:  No, your Honor.  I think both of the

22     experts say that this could have been expressed better.

23          THE COURT:  I think everyone thought it could be

24     expressed better.  "Mistake" is a term of art in this context

25     and I thought that your expert was coming close to saying it

Ee16rioa

1   was a mistake.

2           MR. LIMAN:  Your Honor, there are a number of

3   paragraphs where our expert expressed his view.

4           THE COURT:  What else could it be if you are arguing

5   for the result that you are arguing for where the language

6   doesn't say that?

7           MR. LIMAN:  Your Honor, it could be actually exactly

8   what the expert says that it is, which is in paragraph 94 of

9   his report where he says that "it is a reasonable inference

10  that the expression 'nonexclusive' was as a result of careless

11  drafting inserted or left in subclause 20 B in error.  Perhaps

12  because the drafter was endeavoring to convey the effect of the

13  limited carve out in subclause 20 C of subclause 20 B when in

14  fact the effect of subclause 20 C would have been rendered

15  better by having the expression 'exclusive (subject to

16  subclause 20 C jurisdiction in subclause 20 B.'"  No doubt it

17  would have been expressed better.

18          Their expert in paragraphs 22 and 23 says there is --

19  this is paragraph 22 with respect to the use of the word shall.

20  The expert recognizes that "shall" in the ordinary circumstance

21  suggests an imperative obligation to sue in England.  That is

22  paragraph 20.  And then goes on to say, "There is no doubt that

23  the idea" -- this is the interpretation their expert is

24  proffering -- "could have been better expressed, but that is in

25  my view the best way not to convict the parties of having

Ee16rioa

subscribed to an absurd contradiction."  So he refers to a

different kind of interpretation, avoiding absurdity.  Then he

goes on to 23 to say, "In this case, however, the question in

this case is not whether something has gone wrong but what has

gone wrong."

So, your Honor, we would agree with you that the

interpretations of the competing experts do not relieve this

Court from the task of interpretation.  We do think that this

Court has the role of interpretation.  We think on the role of

interpretation our interpretation is in fact the only

interpretation that gives meaning to all of the words.

I am going to give your Honor the particular

paragraphs within our expert's declaration, but I want to focus

on a couple of words from the contract.  First is the use the

word "shall."

THE COURT:  I got that.

MR. LIMAN:  Let me give your Honor something that you

may not have, which is if you look through the confidentiality

deed as a whole, it is quite clear that the parties knew how to

use the word "shall" when they wanted it imperative and used

the word "may" when they wanted discretion.  In Clause 2 of the

confidentiality deed, which applies to joint and several

obligations, the parties drafted "Rio Tinto and Rio Tinto, Ltd.

shall be jointly and severally liable."  In Clause 3 they use

the word may.  That provides, "Either party may provide to the

Ee16rioa

1    other certain confidentiality information."

2              In Clause 4.2 --

3              THE COURT:  I am not sure I am understanding the

4    point.

5              MR. LIMAN:  The point that I am making, your Honor, is

6    that as I read Rio Tinto's papers and as their expert says,

7    their interpretation is one in which the word shall has to be

8    interpreted as may.  That is what their expert says.

9              THE COURT:  You are saying that the document has shall

10   and may in various sections?

11             MR. LIMAN:  It shows that the parties knew how to use

12   those terms and use them intentionally.  That is how one

13   interprets a contract.  You look to see--

14             THE COURT:  I get that.

15             MR. LIMAN:  -- how to use the terms.

16             The final thing, your Honor, that I would point to is

17   the interpretation that our expert gives.  As your Honor knows,

18   our expert says that his interpretation is not based upon the

19   doctrine of mistake or avoiding a mistake or avoiding an error.

20   His interpretation is based upon principles of contract

21   interpretation.  Those principles of contract interpretation

22   are the same in England as the principles in the United States.

23   The principles require the court to give each word its plain

24   meaning that the principles require the court to construe

25   contract trying to give each sentence independent meaning.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ee16rioa

1      THE COURT:  The only word, which is the elephant in

2   the room, that you haven't mentioned is the word

3   "nonexclusive."  How could you make an oral argument and not

4   deal with that unless I have asked about it?

5      MR. LIMAN:  Your Honor, I was prepared to address that

6   and I will.  I think the answer to that is simple respectfully.

7      THE COURT:  Is simple?

8      MR. LIMAN:  Yes.

9      THE COURT:  What is the simple answer to that?

10      MR. LIMAN:  The simple answer is England is not the

11   exclusive venue because the contract itself says that

12   litigation can be brought in Brazil.  Brazil is not the

13   exclusive venue because litigation can be brought in England.

14   The Second Circuit says, and the Spatt decision says, that

15   language of exclusivity is not the test.  It is one of the

16   tests.  The other test is:  Does it use mandatory language such

17   as shall?  If one is to give this contract an interpretation

18   that confers meaning on each word, your Honor has to give

19   meaning to the word shall.

20      THE COURT:  And no meaning to the word nonexclusive?

21      MR. LIMAN:  And meaning to the word nonexclusive.  The

22   meaning to the word nonexclusive is that England does not have

23   exclusive jurisdiction.  It absolutely does not have exclusive

24   jurisdiction.  That doesn't answer the question whether the

25   United States or any other venue besides Brazil is a

Ee16rioa

1   permissible venue.

2           The other portions of the report that your Honor had

3   to look at in terms of interpreting the contract are the

4   purpose of that first sentence of 20 B itself.  Under Rio

5   Tinto's interpretation that first sentence would have no

6   meaning.  They say, Well, the words shall can mean may.  They

7   cite not a contract case but a treatise on legislative

8   drafting.

9           THE COURT:  Well, I get it.

10          MR. LIMAN:  The other provisions we would focus on is

11  the reference to notwithstanding which would be in 20 C, which

12  would be meaningless if their interpretation were accepted.

13  This is very important, Clause 22, which provides for venue in

14  Britain by saying that each party will appoint agents for

15  service of process.  It is undisputed on this record here that

16  the first sentence of 20 B if it was only intended to permit

17  jurisdiction in England wouldn't be necessary because 22 does

18  that.

19          THE COURT:  I got it.

20          MR. LIMAN:  Therefore, it has to be given the

21  mandatory interpretation.

22          Your Honor, I haven't addressed the issue of whether

23  this comes within the scope.  If you like, I could refer you to

24  cases.

25          THE COURT:  No.  I think I am familiar with the

Ee16rioa

1   argument.

2           MR. LIMAN:  Thank you, your Honor.

3           THE COURT:  Let's hear both points from the defense

4   and then we'll hear from plaintiff.

5           MR. FILARDO:  Good morning, your Honor.

6           THE COURT:  Good morning.

7           MR. FILARDO:  Your Honor, I think as Mr. Liman opened,

8   we do urge the Court to look at these two bases, both the

9   exclusive forum selection clause that Mr. Liman just argued and

10  the traditional non conveniens analysis that I am going to

11  argue.

12          As independent bases to dismiss this action on forum

13  non conveniens grounds in favor of suit in England, I wanted to

14  highlight two important points on the forum non conveniens

15  traditional analysis.  The first being what is always

16  undertaken by a court in this analysis is the amount of

17  deference to give plaintiff's choice of forum here in New York

18  in this court.  This is a foreign plaintiff.  This is a United

19  Kingdom plaintiff whose home forum is England.  Nearly all the

20  eight defendants, in fact all but one, are foreign defendants.

21  Four of the six appearing defendants have already sought your

22  Honor's leave to if necessary to move on grounds of lack of

23  personal jurisdiction in this court.  I say for the

24  nonappearing, the two nonappearing defendants also appear to

25  have those kinds of personal jurisdiction objections.  The

Ee16rioa

1    reason I am raising that is in light of those personal

2    jurisdiction arguments --

3              THE COURT:  Do you know how many cases I have where

4    litigants say there is no personal jurisdiction here?  That

5    argument doesn't get you very far unless we have a motion

6    before us.

7              MR. FILARDO:  Understood, your Honor.  The only reason

8    I raise it here is that in *In Re Herald Primeo* case that your

9    Honor presided over, it is a factor when you are looking at

10   whether or not to give deference to a forum plaintiff's choice.

11   When you look at it, it just does not give rise to an inference

12   that New York is more convenient than England when England is

13   the home forum.  That is really the first inquiry here.

14             The next inquiry is whether or not there is an

15   alternative forum.  We propose to the Court that would be

16   England.  I don't think that plaintiff seriously object to that

17   other than on one basis and that being that there are two

18   nonappearing defendants in this case and that even though all

19   the other defendants have consented to jurisdiction in England,

20   those two haven't.  Well, the answer to that, your Honor, is

21   that they are not before the Court.  In fact, the time for them

22   to respond to complaint, the original complaint, in this action

23   has long since past.  The time for them to respond to the

24   second amended complaint has now long since past.  Plaintiffs

25   have not sought to proceed against those defendants although

Ee16rioa

1    they have the procedural right to do so.  They failed to

2    prosecute against those defendants.  I think *In Re Herald* and

3    *Odyssey Re (London), Ltd.,* another case in the Southern

4    District, and that is 82 F. Supp. 2d 282, in both those cases

5    they were nonappearing defendants that did not restrict the

6    Court's ability to dismiss the case on forum non conveniens

7    grounds.  Those are two important inquiries and I think those

8    are the two issues that plaintiff raise in their papers.

9           With respect to the balancing test, public and private

10   interest factors, this is a case about foreign parties'

11   disputes over foreign mining rights, specifically West Africa

12   Guinea mining rights.  No parties identified witnesses in their

13   initial disclosures to be found here in the U.S. or in New York

14   frankly.  Plaintiffs didn't even identify the two nonappearing

15   defendants as witnesses.  On the other hand, all parties

16   identified nonparty witnesses all over the globe.  Those

17   nonparty witnesses would be difficult if not impossible to get

18   process over to compel them to testify either at deposition or

19   at trial here in this court.  Clearly they are outside the

20   100-mile bubble.  Most of these jurisdictions I found don't

21   provide for a deposition-type testimony even if that could be

22   acquired under the Hague Convention.  That in and of itself is

23   a typical basis for finding that the jurisdiction in New York

24   to be inconvenient.  I think our papers go into detail as to

25   the additional costs that are incurred here with having to deal

Ee16rioa

1    with documentation of witnesses that are all over the world.

2              THE COURT:  Sorry.  With what?

3              MR. FILARDO:  With having documents all over the

4    world, not here in New York.  I think it is limited but it

5    bears at least mentioning.

6              THE COURT:  Isn't that a little bit of an

7    old-fashioned concept?

8              MR. FILARDO:  In some respects, your Honor.  It is

9    worth noticing that there are confidentiality and other

10   statutes would prevent the ability for us to orderly have this

11   type of discovery whether it is electronic or otherwise.  It

12   does increase the cost and that goes into the analysis of

13   weight at least on the private interest factors.

14             THE COURT:  I get it.

15             MR. FILARDO:  On the public interest factors it comes

16   down to the connection with New York.  There really isn't much,

17   if any, connections here.  Plaintiff points to an investigation

18   that is going on in Southern District of New York.  It is an

19   investigation.  It is a grand jury investigation.  I am not

20   sure of their knowledge of the facts of this investigation.  It

21   is secret after all.  It is different with respect to a contact

22   in the U.S. because that has to do with essentially whether or

23   not the government has venue to bring that investigation here

24   in New York.  That is not the issue that we're arguing and

25   certainly it is not the issue that is upfront in a forum non

Ee16rioa

```
 1    conveniens analysis.  In any event, they had argued perhaps
 2    there would be documents that would be produced to the
 3    government in the course of that investigation and that would
 4    somehow give connections here to New York.  Frankly, I think
 5    any documents that were produced, were produced a few weeks
 6    ago.  Only one party had them.  The others had not been asked
 7    to produce documents to the government.  So I think that is now
 8    minimized.  There were many documents and that was done.
 9    Really that is typically what I've seen to be their sole
10    connection here to the U.S. and to New York specifically, which
11    is important here.
12             THE COURT:  I got it.
13             MR. FILARDO:  Finally, I think on the public interest
14    factors, it has to do with the application of law.  If your
15    Honor was to find that the claims that are stated in the
16    amended complaint arise out of the confidentiality deed that
17    Mr. Liman was just arguing, those claims would be subject to
18    English law.  There is a question as to whether this Court has
19    to apply English law at least to the common law claims as to
20    Vale and perhaps to all of the defendants.  If not, then there
21    would be a split as to applying different laws to different
22    defendants on different issues and that could cause confusion
23    to the jury.  I think our papers do outline the other elements
24    of the balancing tests.
25             THE COURT:  What would happen if I didn't accept your
```

Ee16rioa

 1   argument hypothetically and I did accept Mr. Lyle's, then what?

 2          MR. FILARDO:  If I can restate it?  If you accepted

 3   that the exclusive forum selection clause was enforced but that

 4   the traditional factors did not merit dismissal?

 5          THE COURT:  Right.

 6          MR. FILARDO:  Well, I think at that point you have to

 7   step back and take another look at whether or not there were

 8   all of the necessary parties that would be before your Honor,

 9   whether or not in the analysis of forum non conveniens whether

10   not having really the primary defendant -- one of the primary

11   defendants who is alleged in the complaint not before the Court

12   whether or not that would make this trial convenient because

13   the bottom line is to determine whether or not a trial will be

14   convenient in the jurisdiction when you are looking at forum

15   non conveniens inquiry.

16          THE COURT:  By definition I would have found it was

17   convenient; right?  If hypothetically you lost the argument, I

18   would have found at least as to your clients, it was

19   convenient?

20          MR. FILARDO:  I understand, your Honor.

21          THE COURT:  Instead of being subtle there is a

22   possibility of two different trials; right?  What law would be

23   applied if part of the case stayed here?

24          MR. FILARDO:  If there was a possibility of two

25   different trials, hypothetically if you denied the forum non

Ee16rioa

1   conveniens and then denied the personal jurisdiction motions

2   and the 12(b) motions, which we also feel are very strong and

3   have not had an opportunity to brief --

4           THE COURT:  By the way, we're not doing anymore

5   piecemeal motions for your planning going forward.

6           MR. FILARDO:  Understood.  Hypothetically other than

7   potential motions as necessary party and so forth, we would be

8   looking at a situation where you look at New York law, federal

9   law with respect to the statutes, the federal statutes that are

10  alleged here.  With respect to the common law statute, I will

11  not go there because I don't think they state a claim.  I think

12  it is clear on its face.

13          THE COURT:  Thank you.

14          MR. LYLE:  Thank you, your Honor.  Michael Lyle on

15  behalf of Rio Tinto.

16          First, your Honor, turning to the confidentiality deed

17  if that is where the Court would like me to proceed?

18          THE COURT:  Pardon me?

19          MR. LYLE:  Would the Court like me to proceed first

20  with the confidentiality deed?

21          THE COURT:  Sure.  I think you should address

22  Mr. Liman argument first.

23          MR. LYLE:  Thank you, your Honor.  I think the Court

24  put his finger right on the issue.

25          THE COURT:  I wish I thought that.

Ee16rioa

1          MR. LYLE:  The provision says nonexclusive.  The issue

2     is the document clearly states not once but twice that

3     jurisdiction is nonexclusive both in the U.K.

4          THE COURT:  I get that.  Mr. Liman's probably most

5     compelling argument is that it doesn't make any sense to say

6     nonexclusive in the sense that he is saying that what the

7     parties did hear it to say that jurisdiction is exclusive in

8     either England or in Brazil not anywhere else.  So how do you

9     get anywhere else?

10          MR. LYLE:  The way we get there is that the provision

11     is a forum non conveniens provision.  That is what is being

12     done here and that is what our expert Lord Hoffman talks about

13     in detail in his declarations.  The purpose of these provisions

14     was to set up English courts as advantageous court that allows

15     for jurisdiction and sets up forum non conveniens waiver with

16     one exception.  So if one of the parties to this agreement

17     filed a litigation in the courts of the U.K. in London, that

18     jurisdiction is deferred jurisdiction.  That's advantageous in

19     that forum non conveniens is where they will be with one

20     exception.  Brazil in certain circumstances, which would be the

21     subject of the U.K. court's discretion to send it to Brazil,

22     which is why when you look at what the parties were focused on,

23     foreign non conveniens issue, the structures that is in place,

24     that is what is happening with these provisions.  It is not a

25     jurisdiction provision.  It is a forum non conveniens

Ee16rioa

```
 1   provision, which says the U.K. courts have jurisdiction if a
 2   party proceeds in that forum.  Forum non conveniens motion is
 3   not available except in favor of Brazil.  Otherwise, because
 4   the provisions repeatedly say nonexclusive, a litigation can be
 5   filed in Brazil in the first instance or in other courts in any
 6   other jurisdiction that they can establish jurisdiction, which
 7   in those events, either the Brazil courts or say the United
 8   States --
 9             THE COURT:  You just lost me.  How did you get to New
10   York?
11             MR. LYLE:  If a litigation is commenced.
12             THE COURT:  As here.
13             MR. LYLE:  As here in New York unlike if it was done
14   in the U.K. the litigation is subject to a forum non conveniens
15   motion.  The difference is if you go in the U.K. and you pick
16   London or the courts of the U.K., you have waived forum non
17   conveniens.  Other even if you proceed in Brazil, you can still
18   be subject to forum non conveniens.  In either even because the
19   words nonexclusive are used ambiguously, you can proceed
20   elsewhere, i.e., in the United States but your lawsuit is
21   subject to a forum non conveniens motion.  That is what the
22   provisions do.
23             What you had originally pointed to, your Honor --
24             THE COURT:  I heard you.
25             MR. LYLE:  In order to give effect to what Vale's
```

Ee16rioa

```
 1    expert says, the Court would have to read nonexclusive to mean
 2    exclusive.
 3              THE COURT:  Yeah, essentially.
 4              MR. LYLE:  You would be reading a mistake.  Their
 5    expert has said repeatedly in his declarations that in order to
 6    achieve the outcome that Vale urges on this Court, you have to
 7    assume that the parties made a drafting error.  They used words
 8    nonexclusive not once but twice when they meant to say
 9    exclusive.  That's very clearly stated by their expert
10    repeatedly Mr. Liman read it to the Court.  He said it was a
11    result of careless drafting by the lawyers that prepared the
12    document.
13              By the way, the Court asked who prepared the document.
14    It was prepared by lawyers from Cleary Gottlieb and lawyers
15    from Linklaters.  Cleary Gottlieb on behalf Vale; Linklaters on
16    behalf of Rio Tinto.
17              THE COURT:  It would be usual for them to make that
18    mistake.
19              MR. LYLE:  It would be.  That is what Lord Hoffman
20    says.  He said in his declaration, in fact, in order for you to
21    guess what Lord Collins wants you to do, you would have to ask
22    yourself -- you would have to find that the parties made the
23    astonishing mistake of using a well known technical term in a
24    diametrically opposite sense.  In other words, that they use
25    the nonexclusive when they meant exclusive.
```

Ee16rioa

1          THE COURT:  I got it.

2          MR. LYLE:  That makes no sense.  Mr. Liman urged the

3     Court that to give effect to all of the words in the document,

4     our version gives effect to all of the words in the document.

5          THE COURT:  Take me through that again.  Nonexclusive

6     is obvious because you contend that it can be litigating here

7     where we are, right, not in England and not in Brazil?

8          MR. LYLE:  Exactly.  So the word shall is the other

9     issue.  If you look at what Lord Hoffman has said in his

10     declaration that is explained in terms of a temporal reference.

11     It is a recognition by the parties that because they have

12     agreed that England is going to be jurisdiction, that there is

13     going to be claims in the future.  Claims shall be brought in

14     the future in the courts of England and when they do that, they

15     have a forum non conveniens waiver.  So he gives effect to all

16     of the provisions of the document.  Vale's expert on the other

17     hand does not.  Right?  He is not giving effect to all of the

18     words in the document.  In fact, he trying to give an opposite

19     meaning to the words.

20          THE COURT:  To one of the words.  I get it.

21          MR. LYLE:  By therefore having a mistake, Judge.

22          THE COURT:  As Mr. Liman have you got a factually

23     identical or similar case where this problem arose?  We have

24     not found it.

25          MR. LYLE:  There is no case, Judge.  Both of our

Ee16rioa

1   experts recognize that.  Lord Collins recognizes it.  So does

2   Lord Hoffman.  There are no cases that say that exclusive --

3   when the term nonexclusive is used, it means exclusive.  There

4   are no cases in where.

5          THE COURT:  What is the implication of a mistake in

6   your legal opinion?

7          MR. LYLE:  The imposition of a mistake if a provision

8   can be given the full effect of all of its words that as a

9   matter of law interpretation is favored over an interpretation

10  that attributes mistake.  That is agreed to by the experts in

11  the case, Judge.

12         THE COURT:  What happens if it is a mistake?

13         MR. LYLE:  If there is a mistake?

14         THE COURT:  Yes.

15         MR. LYLE:  Well, if there is a mistake then the Court

16  has to -- the Court can do his best to reconcile the provisions

17  and apply discretion and try to get to the parties' intent.

18  That is what the standard would be that the Court would apply.

19         Also, your Honor, one other point that you were

20  talking to Mr. Liman about.  There are no cases reading the

21  word shall in the presence of nonexclusive.  So there are no

22  cases that consider that.  The case that Mr. Liman cites you

23  to, the *Express Scripts* case that he discussed earlier, the

24  provision in that case that was at issue in the agreement was

25  on page 19 of that opinion and the words nonexclusive are not

Ee16rioa

1    in.  Nonexclusive jurisdiction does not appear anywhere in that

2    provision.  So it is entirely inapplicable and does not support

3    the proposition that he urges the Court to consider.

4              THE COURT:  Okay.

5              MR. LYLE:  The last point, your Honor, on the use of

6    the word shall, even Lord Collins in his third declaration at

7    paragraph 36 recognizes that shall can be used in circumstances

8    to mean may.  That is not what Lord Hoffman is saying, but he

9    recognizes the word shall can be used.  So what we're doing

10   here --

11             THE COURT:  You are giving it back to all of the words

12   their legalese.

13             Mr. Liman didn't reach this argument, but I would be

14   interested in hearing your take on the "arising out of or in

15   connection with" argument.

16             MR. LYLE:  With respect to the scope, the arising out

17   of or in connection with argument, yes, your Honor, that

18   provision -- this case, the lawsuit that we have brought is a

19   claim for a RICO conspiracy fraud.

20             THE COURT:  Right.

21             MR. LYLE:  The conduct that we allege is outside of

22   what the agreement was about.  It is not arising out of or in

23   connection with the deed.  What does the deed focus on?  The

24   deed is about technical information, geological information and

25   technical information about the mine, infrastructure

Ee16rioa

1    information, information about drilling, geological data and

2    information that was being provided to Vale by Rio Tinto.  That

3    is what the deed is focused on.  What our litigation is about

4    are the rights to the mine that were stolen as part of the RICO

5    conspiracy by Vale and Mamadie Toure.

6            The deed focuses on the technical information.  The

7    rights, which were stolen as part the RICO conspiracy, those

8    rights are not a function of the deed.  Those rights are a

9    function of government action by the government of Guinea and a

10   whole separate series of transactions and events that took

11   place as part of the conspiracy where government officials were

12   bribed -- Guinean government officials were bribed by the

13   defendants to take the rights that had been conferred to Rio

14   Tinto and converted them to none.  Our allegations do not stem

15   from technical geological information in the confidentially

16   deed but rather the RICO conspiracy that we alleged extensively

17   in our complaint that springs out of the conduct.

18           THE COURT:  I got it.

19           Mr. Liman, I am going to give you an opportunity in a

20   minute to address that argument because you didn't before.

21           You have yet another argument to make on forum non

22   conveniens.

23           MR. LYLE:  Yes, your Honor.  Turning to what we were

24   referring to as the traditional forum non conveniens factors.

25   As the Court has recognized the standard that should be applied

Ee16rioa

1    the Court is well aware of that is cited in the *American Stock*

2    *Exchange* case that this Court decides as well as the In Re

3    *Herald* decision.  It said that it should only be granted were a

4    trial in the United States would be unjust, oppressive or

5    vexatious and not merely inconvenient for the defendant.  At

6    arriving at a question of whether or not to grant a forum non

7    conveniens motion, a three-prong test is applied, which is the

8    question of how much deference should be afforded to Rio

9    Tinto's choices of forum, whether there is an adequate

10   alternative forum, and then the balancing of the public and

11   private factors.  So we agree on the standard.

12        The question of how much deference to give is a

13   function of a sliding scale, which the Court is well aware of.

14   In this instance the sliding scale indicates that when you look

15   at the Rio Tinto selection of the forum, is it due to reason

16   that the law recognizes as valid and if so more deference is

17   given to Rio Tinto even though Rio Tinto is a foreign

18   plaintiff.  In this instance what we have is three defendants

19   who could not be sued anywhere else other than in New York.

20   Those three defendants are Mahmoud Thiam, who is here in New

21   York living here in New York city, Defendant Stillins, who is

22   here in prison in New York in connection with his conduct that

23   stems from and related directly to the allegation of our

24   complaint and Defendant Toure, who is here in Florida also in

25   the United States.  So we have three defendants, two of which

Ee16rioa

1   are here in New York city and a third defendant in Florida who

2   are subject to courts of the United States and are not subject

3   to jurisdiction elsewhere.

4           What we also have is the fact that the conduct that

5   gave rise to the lawsuit in this case, much of that conduct

6   took place right here in New York city.  The information that

7   Vale utilized and gained from Rio Tinto, which it ultimately

8   utilized in furtherance of this conduct was taken here in New

9   York city in negotiations that took place in the law offices of

10  Cleary Gottlieb.

11          We also have the fact, your Honor, that Rio Tinto has

12  significant ties to the United States, which is a

13  distinguishing factor from the courts decision in the *In Re*

14  *Herald* case.  In that case none of the plaintiffs had a

15  connection to the United States.  The only remaining defendants

16  had no connection to the United States.

17          THE COURT:  Right.  They were all Irish.

18          MR. LYLE:  Yes.  There were parallel proceedings that

19  were existing at the time.  There were hundreds of claims

20  already in the courts of Ireland and in Luxembourg that

21  addressed identical issues that were before this Court in that

22  litigation.  We do not have that in this case.

23          THE COURT:  I think that's fine.  I get it.

24          MR. LYLE:  Would you like me for move to the rest of

25  the balancing factors?

Ee16rioa

1          THE COURT:  I don't think so.  I can easily do that on

2    my own.

3          MR. LYLE:  Thank you, your Honor.

4          THE COURT:  Let's hear from Mr. Liman on the arising

5    out of or in connection with issue.

6          MR. LIMAN:  Your Honor, I believe it is addressed at

7    pages 7 and 8 of our opening brief.  In sum the allegations of

8    the complaint with respect to Vale, that Vale -- I am now

9    quoting from paragraph four -- "duped Rio Tinto into revealing

10   its confidential and proprietary information about the Simandou

11   concession."  That is an allegation that Vale obtained

12   information, which is obtained only pursuant to the

13   confidential deed under false pretenses that arises out of.

14   Number two, that it used that information in a way that was not

15   permitted.  Because as your Honor knows information that is

16   provided to Vale, Vale would be able to use for whatever reason

17   it wanted but for the existence of the contract.

18         Your Honor, we would point your attention to two

19   opinions, Judge Sullivan's opinion in *Midamines* where Judge

20   Sullivan says that there is no case that provides a RICO

21   exception to mandatory forum selection clause and the *Roby* case

22   from the Second Circuit.

23         THE COURT:  I think we all know that so that doesn't

24   really get us there, does it?  The real issue is is that clause

25   mandatory.  That's the show-stopper.

Ee16rioa

1           MR. LIMAN:  Your Honor, I do think that is the real

2      issue in this case.  I would say with respect to whether it is

3      mandatory, if you read nonexclusive to mean that jurisdiction

4      lies anywhere in the world, then you can come to the conclusion

5      that the use of the word nonexclusive was intended to permit

6      jurisdiction to lie anywhere in the world.  That is what the

7      word nonexclusive means.

8           THE COURT:  That is what it usually means.

9           MR. LIMAN:  Your Honor, I don't think that is right.

10          THE COURT:  Nonexclusive means you can go anywhere

11     where you can get jurisdiction.  You still need to get personal

12     jurisdiction.

13          MR. LIMAN:  Your Honor, if that is what you conclude,

14     I think that would support their argument.  If on the other

15     hand you conclude that nonexclusive means as to the particular

16     jurisdiction it is not limited to that jurisdiction and you

17     could apply to others, then we win I think.

18          THE COURT:  You think exclusive to London or Brazil?

19          MR. LIMAN:  I think it turns on what you understand

20     nonexclusive to mean.

21          THE COURT:  It is fairly astonishing.  Although, I

22     guess we'll never understand why your firm and Linklaters would

23     use the word nonexclusive when they presumably according to you

24     meant exclusive.

25          MR. LIMAN:  Your Honor, I think for the very clear

Ee16rioa

1    reason that they did not want clause 20 B to be read to exclude

2    Brazil.

3            THE COURT:  It said it is exclusively in London and

4    then they have notwithstanding some claims can be brought in

5    Brazil.  The word leaps out at you.  The minute we learn

6    anything about jurisdiction, we're introduced to whether it is

7    exclusive or nonexclusive.  Certainly Cleary and Linklaters

8    know that.  That is what is so astonishing here.

9            MR. LIMAN:  Our client is a Brazilian client and it

10   wanted to make sure that in agreeing to jurisdiction in their

11   hope, which was England, it was not doing anything to preclude.

12           THE COURT:  I get that.  The help that they had didn't

13   help them reach that result.  That's what is so astonishing.

14           MR. LIMAN:  It could have been drafted better.  On the

15   other hand, the use of the word shall I think reads directly

16   out of the cases.  I don't think there is a case that says it

17   is predictive as to what happens in the future.  That is not

18   what we do in contracts.  In contracts you impose language of

19   obligation and rights.

20           THE COURT:  I get it.  Thank you.  This has been very

21   helpful.  I will get to it as soon as I can.  Keep going with

22   discovery in the meantime.

23           MR. LYLE:  Your Honor, I apologize.  You mentioned

24   discovery and it reminded me of a point my colleague raised.

25   We have a discovery deadline that we're past pursuant to your

Ee16rioa

1    Honor's order.  We're continuing to work with Judge Peck.  I

2    think we're all endeavoring to proceed.  When your Honor set

3    the discovery schedule, you recognized --

4             THE COURT:  I did.  I did.  So as to the next deadline

5    if you come up with one, please run that by me.

6             MR. LYLE:  We'll do, your Honor.

7             THE COURT:  I am not trying to interfere with Judge

8    Peck in that regard.  As to the end date of discovery, I would

9    like to make that determination.

10            MR. LYLE:  Thank you, your Honor.

11            THE COURT:  Thank you so much.

12                              o0o

13

14

15

16

17

18

19

20

21

22

23

24

25