## quinn emanuel trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

January 8, 2015

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:    Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Pursuant to Your Honor's December 9, 2014 Order ("Order"), Plaintiff Rio Tinto plc ("Plaintiff") and Defendants VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, and BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR (together, "VBG Defendants"), Benjamin Steinmetz, BSG Resources Limited ("BSGR"), Vale S.A. ("Vale"), and Mahmoud Thiam write jointly to update the Court on the status of various discovery issues in advance of our January 13, 2015 hearing.

Since the December 9, 2014 hearing before Your Honor ("Hearing"), the parties have been meeting and conferring on a regular basis, both through telephonic meet and confers and written correspondence. While the parties have made some progress, there are a number of disputes with respect to Plaintiff Rio Tinto and Defendant Vale that require the Court's assistance. Below is a proposed agenda for the status conference, with a short explanation from the relevant parties on each dispute.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

I. **SCHEDULING MATTERS**

   A. **Defendants' 12(b)(6) Motion to Dismiss; Certain Defendants' 12(b)(2) Motion**

All defendants intend to move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6); certain defendants – but not others – intend to file a separate motion pursuant to Fed. R. Civ. P. 12(b)(2). The parties agree the motion to dismiss should be briefed on the same schedule, but are in disagreement that they should be briefed as two separate motions. *See* Dkt. No. 154 and Dkt. No. 155. The parties have met and conferred and agreed to the following briefing schedule, which defendants proposed to Judge Berman on January 7, 2015: (1) Defendants will file their motion by January 30, 2015; (2) Plaintiff will file its opposition by February 27, 2015; and (3) Defendants will file their reply by March 13, 2015.

The parties are in disagreement with respect to the number of pages the parties should be allowed to file for their briefs. If the Court requires defendants to file the 12(b)(6) and 12(b)(2) motions jointly, defendants have sought the Court's permission to file a joint opening brief of 60 pages. Plaintiff Rio Tinto has opposed this request, asking the Court to limit defendants to a joint brief of 25 pages.

   B. **Proposed Discovery Schedule**

The parties have also reached agreement on a proposed discovery schedule for consideration by Your Honor and Judge Berman (the parties plan to propose this to Judge Berman at the upcoming conference on January 20). As illustrated below, the parties are endeavoring to complete fact discovery by the end of year, and to complete expert discovery by the end of March 2016.

1. Jurisdictional Discovery Production Deadline for BSGR and Steinmetz: January 16, 2015
2. Defendant Thiam to produce privilege log: February 20, 2015
3. Pre-motion letter to the Court on Thiam government privilege document issue: February 23, 2015.
4. Status of Settlement Discussions: March 1, 2015
5. Plaintiff's response to pre-motion letter by Thiam on government privilege issues: March 16, 2015
6. Defendant Thiam's reply in further support of his pre-motion letter: March 26, 2015
7. Rolling document productions must be substantially complete, subject to any pending personal jurisdiction or discovery motions: June 30, 2015
8. Depositions may begin: July 1, 2015
9. Affirmative Expert Witness Disclosures: August 14, 2015
10. Document production must be complete: August 28, 2015
11. Rebuttal Expert Witness Disclosures: September 11, 2015
12. All Fact Discovery Complete: December 31, 2015
13. Affirmative Expert Reports Due: January 15, 2016
14. Rebuttal Expert Reports Due: February 26, 2016
15. Expert Depositions Complete: March 31, 2016
16. Expert Discovery Complete (subject to further order by the Court): March 31, 2016

17. Motions for Summary Judgment Due: TBD
18. Trial:  TBD

## II.     PREDICTIVE CODING

Rio Tinto sent Vale a predictive coding proposal on December 4, 2014.  The parties met and conferred on that proposal on December 19, 2014.  Vale sent to Plaintiff Rio Tinto a proposed protocol for predictive coding on December 24, 2014.  On January 6, 2015, Rio Tinto sent Vale proposed revisions to that protocol.  Those two parties continue to discuss predictive coding.  A telephonic meet and confer regarding the protocol is scheduled for January 8, 2015.  Plaintiff Rio Tinto believes that the use of predictive coding is appropriate in this case and intends to use predictive coding for all productions in this case (with the exception of the BHP issues, which utilizes search terms pursuant to the Court's December 9 order).  Rio Tinto has only met and conferred with Vale regarding the use of predictive coding, as a discussion of predictive coding with respect to all other defendants is either premature or in the case of Defendant Thiam, who already made one production utilizing a set of negotiated search terms, unnecessary.

## III.    DEFENDANT CILINS

On January 7, 2015, Rio Tinto initiated default judgment proceedings with respect to Defendant Cilins.  Rio Tinto will continue to keep the Court informed of any progress with respect to those proceedings.

## IV.    DISCOVERY FROM DEFENDANT THIAM

In accordance with the Court's order, Defendant Thiam made an initial production of documents in December.  With respect to Defendant Thiam's claim that certain documents cannot be produced to Rio Tinto on the basis of a privilege under Guinean law, this Court ordered Defendant Thiam to produce a privilege log and submit a brief "on what the Guinean privilege is," 11/3 Hr'g Tr. at 8:14-16, and the parties agreed to a briefing schedule and obtained the Court's approval last month.  Since then, Defendant Thiam requested and Rio Tinto agreed to a modified briefing schedule for that process, subject to the Court's approval:  (1) Defendant Thiam will provide a privilege log to Plaintiff on February 20, 2015, and will file a pre-motion letter for a protective order on or before February 23, 2015; (2) Rio Tinto will file its opposition to Thiam's letter by March 16, 2015; and (3) Defendant Thiam will file any reply by March 26, 2015.

In addition, on December 22, 2014, Defendant Thiam served Plaintiff Rio Tinto with a set of  document requests, and Rio Tinto's responses and objections are due on January 21, 2015.

## V.     DISCOVERY FROM DEFENDANTS BSGR AND STEINMETZ

### A.     Jurisdictional Discovery From Defendants BSGR and Steinmetz

In accordance with the Court's order, Defendants BSGR and Steinmetz will produce jurisdictional discovery on January 16, 2015.

3

### B. Vale's Document Requests to Defendants BSGR and Steinmetz

***Defendants BSGR's and Steinmetz's Summary:***  On January 5, 2015, Defendant Vale served its First Request for Production of Documents on Defendants BSGR and Steinmetz. Consistent with Your Honor's July 29, 2014 Order ("July 29 Order") limiting Plaintiff's discovery of BSGR and Mr. Steinmetz to personal jurisdiction (see July 29 Order at 17:23-24, 20:18-22, 27:10-12), BSGR and Mr. Steinmetz object to Vale's service of merits-based discovery prior to the Court's determination of their upcoming motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that the Court lacks personal jurisdiction over them. Vale, itself, agrees that unless and until this Court determines that it has personal jurisdiction over BSGR and Mr. Steinmetz, they need not respond to these document requests. At this time, Vale only requests that copies of any production made by BSGR and Mr. Steinmetz to Plaintiff in compliance with Your Honor's July 29 Order, be also produced to it. BSGR and Mr. Steinmetz agree to provide a copy of any such production to Vale.

## VI. DISCOVERY FROM VBG DEFENDANTS

Rio Tinto has been in discussions with the VBG Defendants regarding their responses to Rio Tinto's first set of discovery requests. VBG Defendants anticipate responding by this Friday, January 9, 2015.

## VII. DISCOVERY FROM DEFENDANT VALE

Plaintiff and Defendant Vale have exchanged correspondence and conducted several telephonic meet and confers. There are several issues that require the Court's attention.

### A. Plaintiff's Position

***Vale Document Production:***  Rio Tinto served its discovery requests on Vale *over six months* ago. To date, Vale has produced a total of 840 documents (only the hypothetical grand jury production that Your Honored ordered it to produce). After that production of 840 documents, the parties met and conferred on a number of outstanding issues but Vale took the unequivocal position that its current production obligations in this case were met (Dkt. No. 13) until the December 9 Status Conference in which Your Honor ordered that "Discovery with respect to Vale. In general, it should be going forward." 12/9/2014 Hr'g 28:22-23. But even in the face of that mandate, Vale has not produced any additional documents in response to Rio Tinto's discovery requests.

Vale's stonewalling needs to stop. The parties reached agreement on the scope of several of Rio Tinto's requests months ago and Rio Tinto promptly brought the key disputes to Your Honor's attention in an October 30, 2014 pre-motion letter to compel production (Dkt. No. 112) that remains pending. Vale could and should, at a minimum, begin production at least with respect to those requests on which we have reached agreement and from the seven custodians it itself identified as having responsive documents back on December 1.

Unfortunately, Vale's document collection appears to be lagging too. Rio Tinto responded to Vale's proposed custodian list on December 4, three days after Vale first provided it. At that time, Rio Tinto identified an additional 22 custodians for Vale to consider. Vale

4

responded to Rio Tinto's proposed custodians on December 19, agreeing to 13 of them.  To date, however, it appears that Vale has collected from only nine of them (and less than half of the seven custodians Vale initially proposed on December 1).

There are five key outstanding issues that are the subject of Rio Tinto's pending October 30, 2014 pre-motion letter to compel (Dkt. No. 112).  Those are:  (1) documents and communications with its co-defendants after December 2008; (2) documents relating to transfers of money, gifts, or other consideration to BSGR, VBG, and the Beny Steinmetz Group; (3) documents concerning the materials it reviewed in the Rio Tinto data room; (4) documents relating to Vale and BSGR's efforts to develop Simandou independent of the information it stole from Rio Tinto; and (5) documents related to its motives for and efforts at acquiring Simandou.  Rio Tinto believes resolution of these issues will advance the parties' discussions.

*Vale's Custodians:*  Rio Tinto believes that the parties have reached a preliminary agreement with respect to Vale's custodians (a total of 22 custodians, which Rio Tinto believes is a reasonable number given the size and complexity of this case and is less than the number of custodians from whom Rio Tinto has agreed to produce).  But Vale continues to maintain that any agreement on custodians be conditional on agreement as to the substantive scope of Rio Tinto's discovery requests.  Putting aside that Rio Tinto has little insight into what Vale means by this conditional agreement (or even how such an agreement would be workable here), Rio Tinto believes that any further disputes with respect to the scope of discovery can be better evaluated in the context of predictive coding – where burden concerns can be understood and dealt with rather than in the abstract – and that the parties should proceed with collecting and producing from these agreed upon custodians.  Rio Tinto respectfully seeks the Court's guidance on this issue.

*Data and information stolen from Rio Tinto's Data Room:*  As discussed at the last status conference, Rio Tinto provided Vale with proposed search terms for Rio Tinto Request Nos. 12, 33, and 44-50 (what Vale terms the "Misappropriated Information" requests).  Those search terms were provided as a means of assessing Vale's claims that these requests were overly burdensome.[1]  It took Vale more than two weeks to meet and confer with Rio Tinto on this issue, and again, only after this Court ordered that the parties "sit down and try to come up with search terms that work or other approaches that work."  12/9/2014 Hr'g Tr. at 42: 8-10.  Having been forced to run those search terms by the Court, Vale then refused to provide Rio Tinto with the search term hits report until three days after the parties' meet and confer (during which Vale flatly refused to provide the hit report and refused to provide any information regarding unique hits, the custodians, or the date ranges against which the search terms were run).

A review of the search term hit report for Rio Tinto's proposed terms show that there is no undue burden associated with these requests.  Indeed, the hit report shows that the proposed terms return less than 89,000 unique hits (and at worst approximately 254,000 documents if families are included).  These hits show that Rio Tinto has proposed proper search terms and that

---

[1] Indeed, as noted above, the parties are close to agreement on a predictive coding protocol.  These search terms (and any others the parties discuss now) will be useful in developing seed sets.

they are being run against (at least some of) the proper custodians. Moreover, half of those unique hits are associated with one term in particular, PDF. PDF is an abbreviation used for Pic de Fon, one of Rio Tinto's drill sites that Rio Tinto provided Vale with confidential information on in the Rio Tinto data room. In any event, Rio Tinto has offered several times that, to the extent the term PDF hits on the term "pdf" (Adobe Acrobat files) or other false hits, it would be more than willing to work with Vale and its electronic discovery vendor to find ways to exclude those references from review.

As the Court is aware, discussions regarding search terms and other culling criteria is an iterative process that requires work and cooperation between the parties. But Vale has provided no counter proposals for Rio Tinto's consideration and no suggestions with respect to limiting or narrowing the terms, and instead just claims "[Rio Tinto's] search terms don't work." 12/9/2014 Hr'g Tr. at 42:7-8. Vale instead continues to wrongly insist that Rio Tinto must identify with more specificity the "misappropriated" information. Of course, as an initial matter, Rio Tinto did just that more than six weeks ago when it identified and produced the nine key documents Vale stole from Rio Tinto's data room. Dkt. No. 134. But more importantly, Vale's whole premise is wrong. The discovery related to Rio Tinto's information is to find out precisely what Vale and its co-conspirators used, how they used it, and when they used it. Vale is not entitled to more specificity than that which the Court has already ordered and Rio Tinto has provided. Rio Tinto's data room provided Vale with unfettered access to its data and information on Simandou, none of which Vale would otherwise have had access to. This is exactly why Rio Tinto's discovery must be broad on this issue and why Rio Tinto is entitled to discovery about how Vale and its co-conspirators used Rio Tinto's information – any and all of its information – in forming the conspiracy; how Vale and its co-conspirators used Rio Tinto's information in advancing the conspiracy; and how the joint venture that was born from the conspiracy continued to use it. Rio Tinto's discovery requests and search terms were designed to and appear to have done a good job of getting at that.

Vale's proposal with respect to these requests – that it produce certain communications with BSGR and/or Steinmetz but produce nothing related to the data and information it stole from Rio Tinto and then used in furtherance of its conspiracy – falls far short of its discovery obligations in this case. It is time that Vale move on and begin producing documents on this topic. Your Honor already has recognized that Vale is "going in circles" and that this issue is akin to "Groundhog day." 12/9/2014 Hr'g Tr. at 42:16-17. Accordingly, the Court directed the parties to resolve any burden associated with these requests through predictive coding, search terms, custodians, or other culling criteria. *Id*. at 42: 8-9, 19-21. Rio Tinto's search term hits report shows that Rio Tinto Request Nos. 12, 33, and 44-50 are not burdensome and indeed, have effectively limited the more than 1.3 terabytes of data that Vale (when it sought a stay) represented to this Court it would need to search in response to Rio Tinto's document requests. Rio Tinto therefore respectfully seeks and order from this Court requiring Vale immediately begin production of documents responsive to these requests.

    **B.**    **Defendant Vale's Position**

*Defendant Vale's Summary:*

6

The parties first held a Rule 26(f) conference on July 9, 2014, after the Court directed Plaintiff to participate in such a conference. Prior to the Court's direction, Plaintiff had refused to participate. Plaintiff's discovery requests on Vale were deemed served only on July 10, 2014, and the parties agreed that responses and objections would be due on September 3, 2014. Vale complied with that deadline without any request for extension. On October 6, 2014, Defendants moved for a stay of discovery. In light of that motion, at the November 3, 2014 conference, Your Honor ordered that Vale "produce what it hypothetically produced to the government" pursuant to a Grand Jury investigation regarding Simandou, noting that "we will see how much more [Plaintiff] need[s] after that." (Nov. 3, 2014 Tr. 19-20.) Vale proposed that it would produce the Grand Jury materials in two weeks, which it did, producing over 8,000 pages of relevant documents to Rio Tinto. These documents are at the core of the issues in the case, concerning Vale's awareness – or as the evidence shows, lack thereof – concerning any bribery or corruption by BSGR and Steimetz in connection with Simandou.

Plaintiff complains that Vale has not made additional rolling productions, but Plaintiff has dragged its feet in the meet-and-confer process, delaying agreement on scope, which necessarily precedes collection and review, as Plaintiff previously acknowledged. (Dk. 95.) Vale sent Plaintiff a letter on November 13, 2014 documenting areas of agreement and areas of disagreement and proposals with respect to Rio Tinto's requests to Vale. Even though both sides agreed that agreement on scope would have to proceed agreement on custodians and culling methodology, Plaintiff delayed for over a month, failing to respond to Vale's letter until December 19. Plaintiff has offered no explanation for its extended delay.

Vale's production has also been delayed by Rio Tinto's refusal to identify the allegedly misappropriated information with the particularity necessary to search for documents containing that information, as sought in Plaintiff's Requests 12, 33, and 44-50. Rio Tinto has identified nine documents from the Rio Tinto Data Room that it claims contain the confidential information that was misappropriated by Vale. These documents span over 270 pages and contain a countless variety of facts and data covering a large number of topics, none of which is particularly identified as confidential or misappropriated, and much of which is public. Vale has offered to search for those documents themselves, but that offer has to date been rebuffed as inadequate.

Judge Peck suggested that the parties attempt to formulate a workable search approach for these requests. Plaintiff has proposed search terms for these requests whose breadth and generality reflect Rio Tinto's refusal (or inability) to specify what was supposedly stolen. Vale has twice now provided Rio Tinto with detailed hit reports demonstrating the extreme overbreadth of these search terms. Those reports show that these search terms, for just these requests, which relate to just one issue of many in this litigation, hit on fully one-third of all documents that the searched custodians have in their mailboxes. Plaintiff's search terms yield a de-duplicated review set of over 250,000 documents for just nine custodians out of the 22 custodians provisionally agreed upon (with Rio Tinto reserving its rights to seek more).[2] There

---

[2] Although Vale has explained it many times, Rio Tinto continues to foster an incorrect reading of the "uniqueness" column in the hit reports for Rio Tinto's search terms: the numbers (footnote continued)

is no merit to Plaintiff's disingenuous suggestion that its search terms (when applied to less than half of the custodians for nine of Plaintiff's 50 requests), yielding a quarter million documents for review, meaningfully limits the burden on Vale – much less target relevant information.

Vale has offered a way forward: Vale has begun review of, and intends to produce in February, all communications between Vale and BSGR and/or Steinmetz during the timeframe of the negotiations between Vale and Rio Tinto. That is when the information was allegedly stolen by Vale and provided to BSGR, which allegedly used that information to convince the Government of Guinea to accept its bribes. (Am. Compl. ¶¶ 86-90.) Notably, Vale's offer (which will come to fruition in short order) is without prejudice to Rio Tinto's right to revisit this request. After Rio Tinto has reviewed that production, if it believes there is any purportedly confidential information still at issue in this case, Vale will welcome Rio Tinto's specific identification of that information from the documents produced.

Finally, as to the five issues Plaintiff has raised in its pre-motion letter (Dkt. 112), many of these are red herrings, and the remainder remain at an impasse only because Plaintiff has taken an unreasonable position. The requests at issue are addressed briefly below.

**Request 1:** This Request calls for all documents relating to (1) Vale's "interest" in acquiring Simandou, (2) Simandou's value, (3) the quality of Simandou's iron ore, (4) market assessments of Simandou, and (5) Vale's efforts to acquire Simandou. The request, which in effect calls for all documents concerning Simandou prior to the inception of the joint venture, and many thereafter as well, is astoundingly overbroad, burdensome, and irrelevant. Both Vale and Rio Tinto are major international mining companies. Simandou is one of the largest iron ore deposits in the word. Presumably both companies have reams of paper concerning Simandou, as likely do all major iron ore mining companies, regardless of whether they hold an interest in the mine. But the vast majority of those documents are completely irrelevant to this case.

**Request 11**: This Request seeks all communications between Vale and any defendant regarding "Rio Tinto's Concession." "Concession" here is defined in Plaintiff's requests so as to encompass all documents regarding Simandou regardless of whether, at the time those documents were generated or for the time period to which they refer, Rio Tinto had any rights in Simandou. Vale has offered to produce documents responsive to this request up to April 30, 2010. Between April 30, 2010 and April 30, 2014, Vale has already agreed to produce all communications among defendants concerning Simandou that would be relevant, including, in response to Request 2, any non-privileged documents related to allegations of bribery or corruption on the part of any of Vale's alleged coconspirators in relation to obtaining or retaining mining rights at Simandou, and any non-privileged documents regarding obstruction of justice by BSGR, Cilins, or any of the defendants in regard to Simandou. Plaintiff does not identify what other documents would be relevant, and obviously the burden of searching Vale's files for communications concerning Simandou with its Simandou joint venture partner after the formation of that joint venture is extremely burdensome, and unwarranted.

---

Rio Tinto relies upon do not include document families and do not include documents containing more than one search term.

**Requests 12, 33, 44-50:** These Requests seek, in a variety of ways, documents concerning the purportedly confidential information Plaintiff alleges Vale misappropriated. As noted above, while the parties do not have an agreement on the scope of these requests, and while the search terms Plaintiff has offered to date do not resolve this scope dispute, Vale has undertaken, as a way to avoid this problem, to produce all communications with BSGR and/or Steinmetz during the timeframe of the negotiations between Vale and Rio Tinto, when Vale allegedly stole the information at issue and provided it to BSGR. Vale anticipates making that production in February. After Plaintiff has reviewed that production, if it believes there is any purportedly confidential information still at issue in this case, we will welcome Plaintiff's specific identification of that information from the documents produced.

**Requests 15-16**: These Requests call for documents concerning the transfer of any gifts or anything else of value between Vale or any other defendant and (a) any Defendant; (b) Ibrahima Touré; (c) Moussa Dadis Camara; (d) Lansana Conté; (e) Pentler Holdings; (f) Nysco Management Corporation; (g) The Beny Steinmetz Group; (h) Onyx Financial Advisors; (i) Matinda and Co. Limited; (j) Marc Struik; (k) Yossie Tchelet; (l) Dag Cramer; (m) Sandra Merloni-Horemans; (n) David Trafford; (o) Asher Avidan; and/or (p) Patrick Saada.

Vale has agreed to produce non-privileged, responsive documents with respect to all subparts of this request between January 1, 2005 and April 30, 2010. Between April 30, 2010 and April 30, 2014, Vale has agreed to produce non-privileged, responsive documents with the exception of transfers between Vale and (a) Defendants BSGR or VBG, and (g) The Beny Steinmetz Group, as those aspects of the requests would require Vale to search for and produce irrelevant, ordinary course transfers during the course of the joint venture. Given that the allegations in the Amended Complaint do not concern transfers between Vale and these BSGR-related entities, with the possible exception of transfers made from Vale to BSGR in connection with formation of the joint venture, concerning which Vale has already agreed to produce documents (*see* Request 29, 36), there is no reason for Rio Tinto insist on imposing the burden on Vale of searching for documents with respect to these subparts.

## VIII.   DISCOVERY FROM PLAINTIFF RIO TINTO

Plaintiff and Defendant Vale have exchanged correspondence and conducted several telephonic meet and confers. The parties continue to discuss the use of predictive coding as a culling mechanism for discovery and have exchanged drafts of a predictive coding protocol. The parties have also reached preliminary agreement with respect to proposed custodians.

### A.   Rio Tinto Document Production

*Plaintiff's Summary:*  Rio Tinto has made every effort to comply with the Court's December 9, 2014 order on production regarding the BHP requests. Immediately following the status conference, Rio Tinto reached out to Defendant Vale requesting identification of the five custodians it would use for the purposes of these requests. What then followed was several days of back and forth, during which Rio Tinto provided Vale with all the information it sought with respect to the respective roles and responsibilities of the various proposed BHP custodians. Vale did not finalize its list of five custodians until December 13, 2014, choosing only two of the five custodians identified by Rio Tinto as relevant to the BHP requests, and three other Rio Tinto

9

custodians that Vale selected on its own. In further effort to move the BHP discovery requests forward in as expeditious and complete manner as possible, Rio Tinto also accepted all of Vale's proposed BHP search terms, resulting in the review of more than 22,000 documents.

As ordered by the Court, Rio Tinto will make a sizeable production of over 10,500 documents (consisting of over 48,000 pages) on or before January 9, 2015. Rio Tinto will continue with a rolling production on the BHP issues until that production is complete, and is moving as expeditiously as possible.

With respect to discovery beyond the BHP requests, Rio Tinto has collected documents from all of the agreed upon custodians and intends to use predictive coding. Rio Tinto will continue to move that process forward as the parties reach a resolution with respect to the proposed predictive coding protocol.

### *Defendant's Summary:*

As Your Honor told Plaintiff at the conference on December 9: "you are the plaintiff. You should know your documents and what has to be produced much better at the time you start a lawsuit. If that means you had to go faster, so be it." (Dec. 9, 2014 Tr. 43-44.) Vale hoped Rio Tinto would heed those words, but to date it has not.

Vale served discovery requests on Plaintiff on September 3, 2014. To date, Rio Tinto has not produced a single document in response to those requests. The only documents Rio Tinto has produced are the ones the Court ordered it to produce: about 200 documents from the Rio Tinto Data Room, nine of which Plaintiff claims are relevant. Plaintiff did not serve its responses when originally due, but rather requested an extension until October 13, 2014, which Vale granted.

Vale has not been dilatory with respect to discovery: it requested a meet-and-confer with Plaintiff the night it received Plaintiff's Responses and Objections. Those meet and confers were held on October 16 and 22, 2014. Vale wrote Plaintiff on October 18 and 24 with detailed accounts of each meet-and-confer, setting forth the parties' positions, and attempting to bring the process to resolution. Vale separately wrote Plaintiff on October 24 to identify three areas where the parties had reached an impasse and required the Court's assistance. Plaintiff responded by falsely accusing Vale of "attempt[ing] to short circuit the meet and confer process," thus continuing its attempt to prevent Vale from obtaining rulings where there were genuine disagreements. Only by raising these issues with the Court on October 30 was Vale able to move them towards resolution.

On December 11, 2014, Rio Tinto requested, and Vale granted, yet another extension, this time for a week for Rio Tinto to serve amended interrogatory responses as ordered by the Court. However, Plaintiff's interrogatory responses are still not complete in at least two respects.

First, Plaintiff's second amended response to Vale's Interrogatory 22 purports to identify "Persons that, based on its current understanding, may have knowledge related to Rio Tinto's investigation *between December 2008 and the filing of the complaint*" on April 30, 2014 (emphasis added). However, Vale's Interrogatory 22 calls specifically for persons with

knowledge relating to Paragraph 146 of the Amended Complaint, which makes allegations regarding Rio Tinto's investigation beginning on April 30, 2010.  Plaintiff has refused to provide an amended response that separately identifies the persons with knowledge concerning the allegations identified in Interrogatory 22, as requested, arguing that Your Honor's directions at the last conference "in effect, revised Interrogatory No. 22 to provide names from 2008 through the filing of the complaint."

Second, Plaintiff's interrogatory responses to date inexplicably fail to identify Rio Tinto's general manager for Simandou, Steven Din, who Vale only recently identified, and who presumably would be responsive to several of Vale's interrogatories, including Interrogatories 3 (Plaintiff's compliance with its legal obligations regarding Simandou), 7 (Plaintiff's confidential information), and 15 (Plaintiff's investment in Simandou).  Plaintiff should amend its responses to include Mr. Din and anyone else they have omitted.

Most recently, Rio Tinto has announced that it will not meet its Court-ordered production deadline for Vale's BHP requests of January 9, 2015.  Plaintiff has now taken it upon itself to ignore the Court's deadline and turn this into a rolling production, with no defined date for completion.  Plaintiff's half-hearted attempts to suggest that its failure to comply with the Court's order is due to some fault by Vale are without justification.  Vale has persistently pursued timely production of these documents, only to be frustrated.  As noted above, following the parties' initial meet and confers, Vale identified the BHP requests as a sticking point on October 24, 2014, and indicated it would raise the issue with the Court.   On November 3 the Court ruled that Plaintiff must produce documents in response to these requests.  That same day, Vale emailed Plaintiff requesting a copy of the "restricted" or "insider" list for the BHP takeover defense to expedite selection of appropriate custodians.  It was not until November 10 that Plaintiff provided the requested list, supplementing that list three days later with another insider list with additional names.  Vale made a proposal to Plaintiff on November 19 concerning the appropriate time period, custodians, and search terms for these requests.  Still Plaintiff delayed collecting and producing documents.  Following the Court's December 9 order again instructing Plaintiff to make production in response to these requests, Vale persistently sought the information necessary to select a limited set of five custodians, as ordered.  That it took plaintiff several days to provide basic information about its employees (including its own proposed custodians) is no excuse for its late production.

What then followed was several days of back and forth, during which Rio Tinto provided Vale with all the information it sought with respect to the respective roles and responsibilities of the various proposed BHP custodians.  Vale did not finalize its list of five custodians until December 13, 2014, choosing only two of the five custodians identified by Rio Tinto as relevant to the BHP requests, and three other Rio Tinto custodians that Vale selected on its own.  In further effort to move the BHP discovery requests forward in as expeditious and complete manner as possible, Rio Tinto also accepted all of Vale's proposed BHP search terms, resulting in the review of more than 22,000 documents.

Plaintiff's announcement last night that it intends to use predictive coding in responding to Vale's non-BHP requests, gives rise to additional concerns.  Consistent with the Court-ordered ESI Protocol, under which the parties have agreed that "[n]o later than ninety (90) days prior to the conclusion of document production, each Party shall have made substantial progress toward

11

the completion of document discovery" (Dk. 82 at 8), and with the mutually agreed schedule under which "[r]olling document productions must be substantially complete" by June 30, 2015, it is essential that Plaintiff's use of predictive coding does not further delay Plaintiff's production. It is particularly important that Plaintiff produce in a timely manner all documents responsive to Vale's requests concerning Plaintiff's alleged trade secrets and its sharing of its purportedly confidential information with third parties (Vale's Requests 20 and 23), and that this production be made on a basis at least as broad as that which Plaintiff is requesting from Vale for similar information. In light of these concerns, and Plaintiff's inability to meet deadlines in the past, Vale asks that the Court set a schedule with benchmarks for Rio Tinto's production of documents, starting with those responsive to Vale's Requests 20 and 23.

Finally, a the substantive scope of Vale's requests are close to resolution, but the parties require the Court's assistance with respect to at least one issue. Vale's Request 21 calls for documents relating to "Rio Tinto's negotiations with any Third Party regarding any transaction that would include or involve Simandou (or any of Rio Tinto's rights with respect to Simandou) from 2006 to the present." Rio Tinto's negotiations with any and all Third Parties regarding Simandou are relevant to a number of issues in this case, not least of which is whether the purportedly confidential information at issue was in fact kept secret. Plaintiff has objected to the alleged burden of producing documents regarding all of the (apparently many) third parties implicated by this request. It insists on limiting its production to four known third parties: IFC, BHP, Chinalco and Vale. Those documents are certainly relevant, but leave unanswered the questions of what other third parties Rio Tinto spoke to, on what terms, and what information was shared, among others.

*   *   *

The parties will continue to keep the Court informed of their progress as the meet and confer process advances.

Very truly yours,


/s/Michael Lyle
Michael Lyle

12