Mishcon de Reya
NEW YORK LLP

750 7th Avenue - 26th floor
New York, NY 10019

www.mishconnewyork.com

February 4, 2015

Direct Tel:   212-612-3265
Direct Fax:   212-612-3297
E-mail:       Vincent.Filardo@Mishcon.com

**V**IA **ECF**

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, NY 10007

      Re:    *Rio Tinto plc v. Vale, S.A., et al.,*
               Civ. Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

        This Firm serves as counsel to defendants Benjamin Steinmetz and BSG Resources Limited ("BSGR") (together, "BSG Defendants") in the above-captioned action ("Action").

        On February 6, 2015, the BSG Defendants will be filing a motion to dismiss plaintiff Rio Tinto plc's ("Rio Tinto") Amended Complaint (Dkt. No. 83) ("Amended Complaint" or "AC") on the grounds, *inter alia*, that the Court lacks personal jurisdiction over them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) ("Rule 12(b)(2) Motion").[1]  Pursuant to Part 2.A of Your Honor's Individual Practices and S.D.N.Y. Local Civil Rule 37.2, we write to request a pre-motion conference to seek leave to file a motion, pursuant to Rule 26(c), for a protective order continuing to stay all merits discovery against the BSG Defendants at least until the Court determines whether it has jurisdiction over them.

**A.**    **Relevant Procedural Background.**

        On June 30, 2014, Rio Tinto served merits discovery on the BSG Defendants, which included its separate: (i) First Sets of Document Requests to BSGR and Benjamin Steinmetz

---

[1] The BSG Defendants' Rule 12(b)(2) Motion will be fully submitted as of March 20, 2015, in accordance with Judge Berman's January 20, 2015 Order ("January 20 Order").  On February 6, 2015, all defendants also will be moving jointly for dismissal, pursuant to Rule 12(b)(6), for failure to state a claim and because Rio Tinto's claims are time-barred.  Given these strong additional grounds for dismissal of the Amended Complaint and the blatant insufficiency of Rio Tinto's pleading therein, if the Court concludes, as it should, that the Amended Complaint must be dismissed on one of these grounds, it may not even need to reach the Rule 12(b)(2) Motion for lack of jurisdiction.

Legal1us.257862.6
Switchboard: +1 212 612 3270
Main Fax: +1 212 612 3297

New York:   Mishcon de Reya New York LLP
London:     Mishcon de Reya Solicitors

A list of partners is available for
inspection at the above address

(together, "Rio Tinto's Document Requests"); and (ii) First Sets of Interrogatories to BSGR and Benjamin Steinmetz (together, "Rio Tinto's Interrogatories," and collectively with the Document Requests, "Rio Tinto's Discovery Demands").

On July 8, 2014, the BSG Defendants submitted a pre-motion conference letter to Your Honor (Dkt. No. 56), informing Your Honor of their intent to file the Rule 12(b)(2) Motion for lack of jurisdiction and objecting to Rio Tinto's service of the Discovery Demands prior to the Court determining whether it had personal jurisdiction over them. During the July 29, 2014 conference, Your Honor heard oral argument from the BSG Defendants and Rio Tinto regarding the propriety of merits discovery prior to the Court's determination of personal jurisdiction over the BSG Defendants. At that conference, and after careful consideration of the parties' arguments on this issue, Your Honor ordered that Rio Tinto's discovery be limited to personal jurisdiction, unless and until the Court determines that it has jurisdiction over them ("July 29 Order").[2] At the January 13, 2015 conference, Your Honor reiterated that merits discovery cannot proceed as to the BSG Defendants prior to a determination of jurisdiction over them, stating "I don't know when your motion is going to be decided and therefore when you can *impose* on BSGR and Steinmetz for merits discovery." (Jan. 13, 2015 Hr'g Tr. at 15:21-23 (emphasis added)). In confining discovery to jurisdictional issues, Your Honor's rulings at the July 9, 2014 and January 13, 2015 conferences were clearly in accord with the prevailing law in the Second Circuit -- parties over whom jurisdiction has not been established cannot, and should not, be subjected to the same burdens as parties over whom jurisdiction is clear. *See Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery") (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n. 13 (1978)).

In accordance with the July 29 Order, on August 5, 2014, Rio Tinto served jurisdictional discovery requests on the BSG Defendants ("Jurisdictional Requests"). On September 3, 2014, the BSG Defendants timely responded to Rio Tinto's Jurisdictional Requests. Pursuant to Your Honor's Orders of November 3, 2014 ("November 3 Discovery Order") and December 9, 2014 ("December 9 Discovery Order") providing for very limited jurisdictionally-confined discovery, the BSG Defendants were required to produce any responsive material to the Jurisdictional Requests by January 16, 2015, including a sworn statement from Mr. Steinmetz declaring that he does not and did not "own … any real estate … [or] any property of any sort in New York … within six months around the filing of the complaint in both directions." (*See* December 9 Discovery Order at 10:6-11:10).

---

[2] On January 5, 2015, defendant Vale S.A. ("Vale") served its First Requests for Production of Documents on the BSG Defendants. Consistent with the July 29 Order, and in light of the BSG Defendants' objections to Vale's discovery requests, Your Honor's January 13, 2015 Order provided that the BSG Defendants need not submit any formal response to Vale's merits-based discovery prior to the Court's determination of personal jurisdiction. Vale did not object to that Order.

Mishcon de Reya
NEW YORK LLP

On January 16, 2015, the BSG Defendants complied with Your Honor's December 9 Discovery Order by producing: (i) a sworn Declaration by Steinmetz, dated January 13, 2015, refuting every one of the general jurisdictional allegations made against him in the Amended Complaint, and (ii) all non-privileged documents responsive to the Jurisdictional Requests, as limited in scope by Your Honor's November 3 and December 9 Discovery Orders setting forth the search term and date parameters for that discovery. This necessitated having to review almost 6,000 documents collected by Navigant, the BSG Defendants' document collection vendor. These documents do not contain a shred of evidence supporting Rio Tinto's claim that the Court has, and can assert, jurisdiction over the BSG Defendants. Your Honor's skepticism concerning the sufficiency of Rio Tinto's bases for asserting personal jurisdiction over the BSG Defendants was prescient. (*See, e.g.,* Dec. 9, 2014 Hr'g Tr. at 8:24-9:1 ("Frankly, it does not sound like there is really a general jurisdiction argument being advanced as opposed to what we usually call a fishing expedition.")). Indeed, Rio Tinto admitted as much when its counsel stated in open court before Your Honor, "you're right, in our complaint we don't plead general jurisdiction applies" to the BSG Defendants. (*See id.* at 7:13-15).

To date, the BSG Defendants have timely complied with every one of both Your Honor's and Judge Berman's Orders. Pursuant to Judge Berman's January 20 Order setting forth the briefing schedule for the Rule 12(b)(2) Motion and defendants' joint Rule 12(b)(6) motion to dismiss (for failure to state a claim and because Rio Tinto's claims are time-barred), on Friday, February 6, 2015, the BSG Defendants will be filing their Rule 12(b)(2) Motion and all defendants will be jointly filing their Rule 12(b)(6) motion.

By Order dated January 16, 2015 (Dkt. No. 163), Judge Berman set June 30, 2015 as the deadline of substantial completion of document production. In setting this deadline, Judge Berman specifically stated that it "is not contingent upon any pending or impending personal jurisdiction motion(s)" (emphasis in original). This new deadline places the BSG Defendants in a position not contemplated by Your Honor's earlier Orders limiting discovery to jurisdictional issues because, at the January 20, 2015 conference, Judge Berman stated that he expected merits discovery to proceed against *all* defendants in this Action. Not surprisingly, on January 21, 2015, Rio Tinto sent a letter to the BSG Defendants requiring them to respond to all of its Discovery Demands. As a consequence, our clients must now either immediately participate in merits-based discovery, or risk non-compliance with the June 30, 2015 deadline in the event that their Rule 12(b)(2) Motion is ultimately denied. As set forth in greater detail below, it is unfair to place the BSG Defendants in this position.

The BSG Defendants have identified potentially discoverable documents in five (5) foreign jurisdictions -- Switzerland, France, South Africa, the Channel Islands, and the United Kingdom. These documents were collected by Navigant and would need to be reviewed by counsel for the BSG Defendants here and by foreign counsel specifically engaged for that purpose. Prior to a definitive ruling by the Court that it has personal jurisdiction over the BSG Defendants, any merits discovery as to them can be taken only through the Hague Convention,

Mishcon de Reya
NEW YORK LLP

and not under the Federal Rules of Civil Procedure.[3]  The taking of discovery, pursuant to the Hague Convention, in these foreign jurisdictions will be further complicated by the need to comply with privacy laws and blocking statutes in each of those foreign jurisdictions.  *See, e.g., In re Herald*, 2011 WL 5928952, at *15 (Berman, J.) (noting that compliance with "foreign (*i.e.*, non-U.S.) privacy laws," including European Union privacy law, would affect the costs of the discovery process in New York) (citation and quotations omitted).  The BSG Defendants know that at least one of these foreign jurisdictions -- Switzerland -- even imposes severe criminal penalties for disclosures made in violation of its privacy and bank secrecy laws.  *See, e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 118 F.R.D. 331, 332-33 (S.D.N.Y. 1988) (noting that the breaking of certain Swiss privacy and bank secrecy laws carries "draconian" penalties and could subject those involved to "criminal prosecution").  The BSG Defendants would also need to determine whether they faced similar risks in any of the other foreign jurisdictions. Needless to say, such determinations would require engagement of foreign counsel having expertise in these matters.

If the BSG Defendants were required to engage in merits discovery before the Court has determined whether it has jurisdiction over them, they would have to undertake at least the following time-consuming, labor-intensive, and costly tasks:

*Responding to Party Discovery*

(1)     Prepare and serve formal written responses and/or objections to all discovery requests propounded on them;

(2)     Retain and consult with foreign counsel to ensure full compliance with all of the privacy laws and blocking statutes in Switzerland, France, South Africa, the Channel Islands, and the United Kingdom;

(3)     Search for and review documents collected by Navigant to identify all non-privileged responsive documents, which could include several million records in multiple foreign languages (French, Portuguese, Italian, Spanish, German, and Russian) necessitating the engagement of foreign language translators to make a thorough review possible;

---

[3] *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 554 n.4 (1987) ("It is well established that a court has the power to impose discovery under the Federal Rules of Civil Procedure *when it has personal jurisdiction over the foreign party*.") (emphasis added); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."); Wirth, et al., Transnational Litigation § 25:45 (Nov. 2014) ("[I]n principle all taking of evidence within Switzerland must be conducted through judicial assistance in civil matters based on either the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, which entered into force for Switzerland on January 1, 1995, the 1954 Hague Convention, or the Cantonal Codes of Civil Procedure.").

Mishcon de Reya
NEW YORK LLP

(4)     Prepare privilege log(s) identifying any documents withheld from production on the grounds of attorney-client privilege, attorney work-product doctrine, or any other applicable law, privilege, protection, or immunity;

(5)     Respond to any party's assertion of deficiencies in the BSG Defendants' discovery responses, including preparing written responses and participating in meet and confer conferences;

(6)     Respond to and oppose any motion to compel the BSG Defendants' discovery responses;

*Affirmative Discovery*

(7)     Prepare and serve discovery requests on all parties in the Action;

(8)     Retain foreign counsel to assist with the service of discovery requests in the jurisdictions in which Rio Tinto's and the other defendants' potentially discoverable documents are located;

(9)     Review potentially hundreds-of-thousands of documents produced by Rio Tinto and the other defendants in response to the BSG Defendants' discovery requests;

(10)    Respond to any party's deficient discovery responses and document productions, including preparing detailed written responses and participating in meet and confer conferences;

(11)    Prepare and argue any necessary motions to resolve any party's discovery deficiencies;

(12)    Retain foreign counsel with sufficient expertise to assist with the preparation and service of discovery requests on at least seventy-six (76) non-party individuals and entities located in South Africa, the Channel Islands, and Brazil, having documents and information relevant to the issues in this Action (*see* BSGR & Steinmetz Am. Initial Disclosures, Dkt. No. 99-2, at 3-17);

(13)    Review potentially hundreds-of-thousands of documents produced by non-parties in response to the BSG Defendants' discovery requests;

(14)    Retain foreign counsel with sufficient expertise to assist in the resolution of foreign non-party discovery deficiencies and disputes.

In order to comply with the June 30, 2015 deadline for substantial completion of document production, the BSG Defendants would need to perform, and substantially complete,

Mishcon de Reya
NEW YORK LLP

all of these tasks.  However, in the event the Rule 12(b)(2) Motion is eventually granted, as we hope and expect it will be by early Spring 2015, the BSG Defendants would have needlessly engaged in all of the above-described tasks and incurred enormous expenses in the process.  As Your Honor recognized at the January 13, 2015 conference, the BSG Defendants would, upon the granting of their Rule 12(b)(2) Motion, at the most, only have to respond to discovery requests made to them as non-parties to this Action under the Hague Convention.[4]  (*See* Jan. 13, 2015 Hr'g Tr. at 15:21-16:1, 17:16-21 ("[F]or at least document discovery purposes, after X period of time goes by and there is no decision [on the Rule 12(b)(2) Motion], deal with it as a rule 45 subpoena or Hague Convention or whatever.")).  Needless to say, non-party discovery would be vastly different, far less burdensome, and exponentially less costly.  *See, e.g.,* Fed. R. Civ. P. 45(d) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to *avoid imposing undue burden or expense* on a person subject to the subpoena.") (emphasis added).

**B.      The BSG Defendants Should Not Be Required To Engage In Merits Discovery Until The Court Determines Whether It Has Jurisdiction Over Them.**

        Requiring the BSG Defendants -- who are domiciled in Switzerland and the Channel Islands, have no presence in New York, and conduct no business in the United States -- to engage in time-consuming, labor-intensive, and massively expensive merits discovery would be unfair until a definitive ruling has been made as to whether they are subject to jurisdiction in this Court.

        Rule 26(c)(1)(A) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A).  As Your Honor held in *Anti-Monopoly*, courts have discretion as to whether to stay discovery for "good cause," which "may be shown where a party has filed (or *sought leave to file*) a ... motion to dismiss."  *Anti-*

---

[4] The BSG Defendants would then only be subject to narrowly-tailored letters of request, which would be further limited under the Hague Convention and by the rules of the jurisdictions where discovery is sought. *See, e.g.,* Switzerland, Declarations Reservations to Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, dated March 18, 1970, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=561&disp=resdn ("Switzerland declares that Letters of Request issued for the purpose of obtaining pre-trial discovery of documents *will not be executed* if: a) the request has no direct and necessary link with the proceedings in question; or b) a person is required to indicate what documents relating to the case are or were in his/her possession or keeping or at his/her disposal; or c) a person is required to produce documents other than those mentioned in the request for legal assistance, which are probably in his/her possession or keeping or at his/her disposal; or d) interests worthy of protection of the concerned persons are endangered.") (emphasis added);  France, Declarations Reservations to Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, dated March 18, 1970, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=501&disp=resdn ("The declaration made by the French Republic in accordance with Article 23 relating to Letters of Request issued for the purpose of obtaining pre-trial discovery of documents does not apply when the requested documents are *enumerated limitatively in the Letter of Request and have a direct and precise link with the object of the procedure*.") (emphasis added).

*Monopoly, Inc. v. Hasbro, Inc.*, 94CIV.2120(LMM)(AJP), 1996 WL 101277, at *2 (S.D.N.Y. Mar. 7, 1996) (Peck, M.J.) (emphasis added).

Courts in the Southern District of New York consider three factors when deciding whether to enter a protective order restricting or staying discovery: (i) the breadth of discovery sought and the burden of responding to the discovery, (ii) whether a stay would unfairly prejudice the party opposing the stay; and (iii) the strength of an anticipated or pending dispositive motion. *See Anti-Monopoly, Inc.*, 1996 WL 101277, at *3-4 (granting stay where (i) plaintiff had served extensive discovery requests that would be moot if motion to dismiss granted, (ii) stay would not prejudice plaintiff, and (iii) motion to dismiss had substantial grounds); *see also Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, No. CV 05-4294 DRH ETB, 2006 WL 897996, at *1 (E.D.N.Y. Mar. 31, 2006) (on motion to stay discovery pending resolution of motion to dismiss for lack of personal jurisdiction, evaluating "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay").

Here, all three of these factors weigh heavily in favor of a continued stay of merits discovery.

### 1. The BSG Defendants' Motion to Dismiss For Lack of Jurisdiction Is Very Strong.

In ruling upon a motion to stay discovery, courts in this District have repeatedly noted that the Court need not decide whether the motion to dismiss will ultimately be granted; rather, a stay of discovery is appropriate where, as in this case, the dispositive motion "is 'not unfounded in the law' and 'appears to have substantial grounds.'" *Anti-Monopoly*, 1996 WL 101277, at *4. The BSG Defendants have strong and compelling bases to seek dismissal because this Court lacks personal jurisdiction over them, and their motion to dismiss for lack of personal jurisdiction will more than meet the low threshold for continuing to stay merits discovery. *See, e.g., Gandler v. Nazarov*, 94 CIV. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (staying discovery pending resolution of motion to dismiss based on lack of personal jurisdiction that was "potentially dispositive" and "not unfounded in the law").

As Judge Berman has stated, "[o]n a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), 'the *plaintiff bears the burden* of showing that the court has jurisdiction over the defendant.'" *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (Berman, J.) (emphasis added) (citation omitted). Prior to discovery on any jurisdictional issues, a plaintiff must make a *prima facie* showing of personal jurisdiction over the defendant. *See Reiss v. Steigrod*, 866 F. Supp. 747, 749 (S.D.N.Y. 1994). However, where, as here, the court "allowed the parties to conduct discovery on the jurisdictional issue," the Second Circuit has held that the plaintiff "bears the burden of proving by *a preponderance of the evidence* that personal jurisdiction exists." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d

1039, 1043 (2d Cir. 1990) (citation omitted) (emphasis added); *see also Reiss*, 866 F. Supp. at 749 ("After discovery has been conducted, the issue of personal jurisdiction must be established by a preponderance of the evidence.") (citations omitted).

The conclusory allegations in Rio Tinto's Amended Complaint fail to allege sufficient facts to constitute even a *prima facie* basis for establishing personal jurisdiction over the BSG Defendants. *See Gmurzynska*, 257 F. Supp. 2d at 625 ("[C]onclusory allegations are not enough to establish personal jurisdiction") (quotation omitted).[5] Now that the BSG Defendants have fully complied with Your Honor's December 9 Discovery Order requiring production of all documents relevant to whether there is a basis for this Court to assert personal jurisdiction over them, Rio Tinto's burden is far greater -- now it must prove by a preponderance of evidence that there is a legally sufficient basis for the Court to assert jurisdiction over the BSG Defendants. *See, e.g., Reiss*, 866 F. Supp. at 749 (holding that after jurisdictional discovery, plaintiff "ha[d] failed to meet his burden of proof not only by a preponderance of evidence, he ha[d] also failed to make out even a prima facie case of personal jurisdiction").

      (a)     The BSG Defendants Are Not Subject To
               General Jurisdiction In New York Under CPLR 301.

Rio Tinto has not provided any legally sufficient basis to support its claim that the Court has, and can assert, general jurisdiction over the BSG Defendants. Neither of the BSG Defendants is located in New York or the United States. Steinmetz is a citizen of Israel and France, and resides in Switzerland. BSGR is a Channel Islands corporation, has its principal place of business in Guernsey, and has no presence in New York or the United States. (*See* Dkt. No. 84 at 20).

Rio Tinto's counsel stated in open court before Your Honor, "you're right, in our complaint we don't plead general jurisdiction applies" to the BSG Defendants. (*See* Dec. 9, 2014 Hr'g Tr. at 7:13-15). Indeed, the Amended Complaint does not contain any allegations that BSGR regularly conducts business in New York. Rio Tinto solely alleges in its Amended Complaint that Steinmetz (i) "maintains a business address at 580 Fifth Avenue, Apartment 417, New York, New York," and (ii) "maintained a residence at 781 Fifth Avenue, Apartment 701, New York, New York," at the time of the allegations in the Complaint, filed on April 30, 2014. (AC ¶ 20). Pursuant to Your Honor's December 9 Order, however, Steinmetz produced a Declaration refuting both of these allegations. Moreover, Steinmetz further declared that he does not (i) maintain a business address or residence, (ii) have any ownership interest in commercial or residential real estate property, or (iii) conduct any business, in New York or the United States. Nor has Rio Tinto adduced any evidence through discovery -- which was completed on January 16, 2015 -- to support its allegations of general jurisdiction over the BSG Defendants.

---

[5] Rio Tinto further bundles its allegations against BSGR together with its allegations against VBG-Vale BSGR Limited and BSG Resources Guinée SARL, including jurisdictional allegations, rendering them even more conclusory and vague. (AC ¶¶ 21, 31).

As Your Honor recognized at the December 9, 2014 conference, "[f]rankly, it does not sound like there is really a general jurisdiction argument being advanced as opposed to what we usually call a fishing expedition." (*See* Dec. 9, 2014 Hr'g Tr. at 8:24-9:1). Accordingly, Rio Tinto not only will fail to establish by a preponderance of the evidence that the BSG Defendants are subject to general jurisdiction in this Court, but it has failed to make out even a *prima facie* case for such jurisdiction. *See Landoil Res. Corp.*, 918 F.2d 1039 at 1043-45 (affirming district court's finding that, after jurisdictional discovery, the record "failed to establish by a preponderance of the evidence an adequate predicate" for personal jurisdiction over defendant under CPLR 301).

        (b)      The BSG Defendants Are Not Subject To Specific Jurisdiction, Pursuant To 18 U.S.C. §§ 1965(a) Or (b) Or CPLR 302.

Nor can Rio Tinto meet its burden to prove by a preponderance of evidence that the BSG Defendants are subject to specific jurisdiction in this Court, pursuant to 18 U.S.C. §§ 1965(a) or (b) (RICO jurisdiction) or CPLR 302 (NY long-arm jurisdiction).

As a matter of law, Rio Tinto cannot avail itself of either 18 U.S.C. §§ 1965(a) or (b) to establish jurisdiction over the BSG Defendants because: (i) Rio Tinto neither alleges, nor will it be able to establish, that either BSGR or Steinmetz had an agent in New York on April 30, 2014 (the day that this action was commenced); and (ii) BSGR and Steinmetz were not served in the United States -- both executed waivers of service in England. *See Pincione v. D'Alfonso*, No. 10 Civ. 3618(PAC), 2011 WL 4089885, at *5 (S.D.N.Y. Sept. 13, 2011) (requiring "agent in the jurisdiction on the day the complaint is filed" for § 1965(a) jurisdiction) (citation omitted); Waiver of Service Returned Executed, filed on June 9, 2014 (Dkt. No. 28); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985) (finding plaintiffs had not served the foreign defendants in the United States, and therefore the court could not exercise personal jurisdiction over those parties under § 1965(b)).

Having no other basis to establish jurisdiction, Rio Tinto must rely on the provisions of New York's long-arm statute (*i.e.,* CPLR 302(a)(2)-(a)(3)). The Amended Complaint only alleges personal jurisdiction over BSGR pursuant to CPLR 302(a)(2), (AC ¶ 31), and over Steinmetz pursuant to CPLR 302(a)(3). (AC ¶ 32).

Rio Tinto cannot establish, and the Amended Complaint does not even allege, that BSGR directly committed any tortious act in New York -- an essential element necessary to establish jurisdiction under CPLR 302(a)(2). Furthermore, Rio Tinto cannot establish jurisdiction over BSGR, pursuant to CPLR 302(a)(2), based on the tortious acts of agents while they were "physically present in New York." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784(RMB)(GWG), 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) (Berman, J.) (citation and quotation omitted) (finding that CPLR 302(a)(2) requires that defendants were physically present in New York during occurrence of alleged wrongful conduct). In fact, the Amended Complaint does not even allege a tortious act to have been committed by defendants Cilins, Touré, or Thiam -- as purported agents or co-conspirators of BSGR -- in New York. The only acts(s) alleged to

Mishcon de Reya
NEW YORK LLP

have occurred in New York is Cilins's alleged call(s) from some unspecified location outside New York to Touré, a Florida domiciliary, who happened to be in New York. *See* AC ¶ 124. As a matter of law, any such phone call does not constitute sufficient physical presence within New York required to establish jurisdiction under CPLR 302(a)(2). *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (finding that defendant or his agents must have committed the tortious act while physically present in the State of New York for CPLR 302(a)(2) jurisdiction). Moreover, the Amended Complaint's allegations of Vale's conduct in New York also do not (and cannot) support personal jurisdiction over the BSG Defendants. Rio Tinto alleges meetings between Vale and itself in New York, between November 2008 and February 4, 2009, during which Vale allegedly made fraudulent misrepresentations to Rio Tinto to gain access to certain of its confidential information. *See, e.g.,* AC ¶¶ 59, 63, 76, 96, 161, 208-09). Vale's purported misconduct arises from its contractual breach of a Confidentiality Deed with Rio Tinto, which does not constitute a "tortious act" under CPLR 302(a)(2). (*See id.* ¶¶ 229-235). Nevertheless, Rio Tinto's only (unsupported) allegation of a conspiratorial relationship between Vale and BSGR prior to February 4, 2009 is a single purported meeting between them in December 2008. (*See id.* ¶ 86). Such conclusory, non-specific, and "bland" allegations of conspiracy during the relevant time period are plainly insufficient to establish jurisdiction over BSGR under CPLR 302(a)(2). *See Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir 1975) ("The New York law seems to be clear that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of [CPLR] section 302(a)(2).").

Nor can Rio Tinto assert jurisdiction over Steinmetz pursuant to CPLR 302(a)(3), directly or through any purported agent, because it cannot establish, and has not alleged, the occurrence of any tortious act occurring outside New York -- either by Steinmetz or any of his alleged agents or co-conspirators -- which *caused injury to person or property within* New York. *See Bank of New York Mellon v. SACE S.p.A*, 10 CIV 2510 RMB, 2011 WL 102728, at *4 (S.D.N.Y. Jan. 6, 2011) (Berman, J.) ("Under CPLR § 302(a)(3)(ii), a court in New York may exercise jurisdiction over a nondomiciliary when the defendant (1) committed a tortious act outside New York, (2) *that causes injury within New York State*, (3) the defendant expects or should reasonably expect the act to have consequences in the state, and (4) derives substantial revenue from interstate or international commerce.") (emphasis added); *see also Brooks v. Von Lenthe*, No. 05 Civ. 3655 RMB AJP, 2006 WL 177146, at *2 (S.D.N.Y. Jan. 24, 2006) (Berman, J.) (adopting Magistrate Judge Peck's Report and Recommendation and granting German entities' and their German employees' Rule 12(b)(2) motion, where plaintiff failed to show that defendants transacted business in New York, committed tortious acts in or that had an effect in New York, or owned, used, or possessed real property in New York under CPLR 301(a)). Here, Rio Tinto's alleged injury was the loss of its mining interests *in Guinea*. Obviously, Rio Tinto's injury occurred in West Africa, <u>not</u> in New York. Nor does the Amended Complaint allege any other injury Rio Tinto suffered in New York. *See* AC ¶¶ 92, 154, 196-97; *see also Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 CIV. 3756 LGS, 2014 WL 5757545, at *5 (S.D.N.Y. Nov. 4, 2014) (finding no CPLR 302(a)(3) jurisdiction where plaintiff failed to make a *prima facie* showing that defendants' allegedly tortious acts caused injury in New York, as the "the situs of a nonphysical, commercial injury is where the critical events associated with the dispute

Mishcon de Reya
NEW YORK LLP

took place"); *Reiss v. Steigrod*, 866 F. Supp. 747, 750 (S.D.N.Y. 1994) (finding that plaintiff had failed to establish jurisdiction under CPLR 302(a)(3) after jurisdictional discovery, stating "I can and do not assume that defendant has met the requirements of the long-arm statute if plaintiff's papers offer no facts to support his bare allegations").

In addition, Rio Tinto cannot meet the requirements of either CPLR 302(a)(3)(i) or (ii) -- as it must. *See Reiss*, 866 F. Supp. at 750 (finding plaintiff "proffered no facts establishing the requirements of either [CPLR 302(a)(3)](i) or (ii)"). The Amended Complaint merely alleges that Steinmetz "regularly does or solicits business, and/or engages in other persistent conduct, and/or derives substantial revenue from goods used or consumed and/or services rendered in the state." (AC ¶ 32). However, as Judge Berman has held, "(conclusory) allegations that [defendant] … regularly solicit[s] business, or engages in any other persistent course of conduct … in the state of New York, … fail to satisfy CPLR section 302(a)(3)(i)." *Pitbull Productions*, 2008 WL 1700196, at *7 (emphasis added) (quotation marks omitted). Rio Tinto does not even attempt to plead CPLR 302(a)(3)(ii) as an alternative basis for jurisdiction over Steinmetz. *See id.* at *7-8 (finding plaintiffs' jurisdictional claims regarding defendant on the basis of CPLR 302(a)(ii) "unpersuasive").

Moreover, Rio Tinto will never be able to establish the minimum contacts required for the Court to exercise personal jurisdiction over the BSG Defendants. As set forth *supra* at Section B(1)(a), p. 8, the BSG Defendants are foreign parties who do not conduct business in New York or the United States. The jurisdictional discovery the BSG Defendants have provided does not contain any evidence showing that BSGR or Mr. Steinmetz performed any act in New York or the United States -- because they never did. *See Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 598 (S.D.N.Y. 1998) (finding that defendant did not have minimum contacts with New York and the exercise of jurisdiction over it would not be reasonable); *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *24-25 (S.D.N.Y. Oct. 13, 2000) (dismissing RICO claims and finding lack of personal jurisdiction over defendants, where defendants' conduct did not satisfy the level of minimum contacts with the United States necessary to assert personal jurisdiction over them). In any event, this issue was completely put to rest, when, in open court, Rio Tinto admitted that it does not even allege that the BSG Defendants had any such contacts. (*See* Dec. 9, 2014 Hr'g Tr. at 7:13-15).

(c)    The BSG Defendants Are Not Subject To Jurisdiction
       Pursuant To Rule 4(k)(2).

Rio Tinto also cannot rely upon Rule 4(k)(2) because it has not even pled it or its "requisite elements" as a basis for jurisdiction over either BSGR or Steinmetz in the Amended Complaint. *See* AC ¶¶ 31-32; *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 165-66 (E.D.N.Y. 2006) (finding that plaintiffs failed to satisfy the requirements of Rule 4(k)(2) jurisdiction, where they did not plead the requisite elements, "in particular that jurisdiction is not available in any state"). Nor can Rio Tinto establish personal jurisdiction over the BSG Defendants pursuant to Rule 4(k)(2) "through the imputation of contacts of … [their] putative

Mishcon de Reya
NEW YORK LLP

co-conspirators with the United States" -- a theory of jurisdiction that has been "widely criticized by courts and scholars." *Tymoshenko v. Firtash*, 11-CV-2794 KMW, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (citations and quotations omitted) (emphasis added) (declining to consider the contacts of defendant's alleged co-conspirators in the Rule 4(k)(2) analysis, and granting motion to dismiss RICO claims for lack of personal jurisdiction).

### 2.      Rio Tinto's Extremely Broad And Burdensome Discovery Demands Warrant Issuance Of A Continued Stay of Merits Discovery

An additional reason for continuing to stay merits discovery now is that, on their face, Rio Tinto's Discovery Demands are impermissibly broad and burdensome. *See, e.g., Gandler v. Nazarov*, 94 CIV. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (staying discovery pending resolution of motion to dismiss based on lack of personal jurisdiction); *Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, No. CV 05-4294 DRH ETB, 2006 WL 897996, at *1 (E.D.N.Y. Mar. 31, 2006) (same).

Requiring the BSG Defendants -- who are domiciled in Switzerland and the Channel Islands, have no presence in New York, and conduct no business in the United States -- to now engage in time-consuming, labor-intensive, and massively expensive merits discovery would be unfair.  Indeed, writing for a unanimous panel of the Second Circuit, Judge Haight found it fundamentally unfair that a plaintiff would be entitled to any discovery, other than "limited discovery with respect to the jurisdictional issue[s]," prior to showing a reasonable basis for the Court's assertion of jurisdiction over the defendant. *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n. 13 (1978)); *see also Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005) *aff'd*, 332 F. App'x 643 (2d Cir. 2009) (finding that if the plaintiffs could not "make out a prima facie case for personal jurisdiction, they cannot take any discovery—even jurisdictional discovery—from a foreign corporation").

Under these circumstances, the burden imposed on the BSG Defendants to respond to Rio Tinto's Discovery Demands in the absence of a continued stay of merits discovery is extreme and unwarranted.

### 3.      Rio Tinto Will Not Be Prejudiced By A Continued Stay Of Merits Discovery

The final factor courts consider in evaluating a motion to stay discovery is whether the stay would cause unfair prejudice to the opposing party. *See Anti-Monopoly, Inc.*, 1996 WL 101277, at *3-4.  The continued stay of merits discovery sought by the BSG Defendants will not prejudice Rio Tinto for three reasons.

Mishcon de Reya
NEW YORK LLP

First, courts in this District do not find prejudice when a proposed stay is only for a definite and relatively short period of time -- as it would be here.[6]  The BSG Defendants request a stay for a well-defined and brief period of time -- through Judge Berman's decision on the BSG Defendants' Rule 12(b)(2) Motion on the grounds of lack of personal jurisdiction.  That Motion will be fully submitted as of March 20, 2015 -- a period of less than *two months* from now. There is no reason why the parties should not anticipate a reasonably expeditious ruling on the Motion by Judge Berman.  Given this timetable, the continued stay of merits discovery sought here would likely be as short as eight (8) to ten (10) weeks.

Second, there is no reason -- compelling or otherwise -- why a short continued stay of merits discovery pending the Court's determination of personal jurisdiction over the BSG Defendants would prejudice Rio Tinto.  In the Court's July 29, 2014 Order, Your Honor ordered that Rio Tinto's discovery of the BSG Defendants be limited to personal jurisdiction, unless and until the Court has determined whether it has jurisdiction over them.  At the time of the July 29, 2014 conference before Your Honor, all of the parties remained subject to Judge Berman's June 9, 2014 Order requiring that all discovery be completed by November 28, 2014.  (Dkt. No. 35). Rio Tinto never filed, within fourteen (14) days of the July 29, 2014 conference before Your Honor or at any later date, any objections to the July 29 Order or asserted any prejudice arising from the July 29, 2014 Order limiting discovery of the BSG Defendants to jurisdictional issues. *See* July 10, 2014 Hr'g Tr. at 16:13-22 (the parties have "14 days to file objections [which] is always triggered from the time of the conference.").  It would be disingenuous for Rio Tinto to now argue that it would be prejudiced by a continued (and reasonably short) stay of merits discovery as to the BSG Defendants, since the parties have substantially more time to complete discovery than they had at the time of the July 29, 2014 conference before Your Honor.

Finally, since the BSG Defendants have taken appropriate measures to preserve all potentially relevant documents, there is no risk of spoliation.

It is evident that Rio Tinto will not suffer any prejudice from a brief continued stay of merits discovery, much less the "extraordinary prejudice" needed to defeat a stay motion. *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (granting stay because "[p]laintiffs do not demonstrate extraordinary prejudice to them" and "will not be damaged by the grant of a stay of discovery until the motions to dismiss are decided"); *see also Gandler v. Nazarov*, 94 CIV. 2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (finding no evidence that plaintiffs would be "unfairly prejudiced by a stay," and staying discovery pending resolution of motion to dismiss based on lack of personal jurisdiction); *Port Dock & Stone Corp. v. Oldcaster Ne., Inc.*, No. CV 05-4294 DRH ETB, 2006 WL 897996, at *1 (E.D.N.Y. Mar. 31, 2006) (granting motion to stay discovery during pendency of motion to dismiss based on lack of personal jurisdiction, where plaintiffs "failed to demonstrate that a stay of discovery would unfairly prejudice them").

---

[6] *See, e.g., Integrated Sys. & Power, Inc.*, 2009 WL 2777076, at *1 (granting stay pending decision on motion to dismiss that was filed August 17 and would be fully submitted October 13, because the "short stay requested" would only "likely delay the commencement of discovery for a few months").

* * * * *

    For all of the foregoing reasons, the BSG Defendants respectfully submit that their request for a pre-motion conference seeking leave to file a motion for a protective order continuing to stay all merits discovery against them until the Court determines whether it has jurisdiction over them should be granted in its entirety.

Respectfully submitted,

Vincent Filardo, Jr.

cc:    All Counsel of Record (by ECF)