**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

February 6, 2015

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:    Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Plaintiff Rio Tinto plc ("Rio Tinto") respectfully submits this brief response to Defendants BSGR's and Steinmetz's (the "BSG Defendants") pre-motion letter seeking, once again, to stay all discovery.  For the reasons set forth below, the BSG Defendants' motion should be denied.

***The BSG Defendants flout Judge Berman's order.***  The BSG Defendants have no basis to ask the Court to reconsider Judge Berman's unequivocal order that they proceed with merits discovery.  On January 14, 2015, the parties submitted a proposed case schedule that included the following deadline:  "7. Rolling document productions must be substantially complete, subject to any pending personal jurisdiction or discovery motions: June 30, 2015."  Dkt. No. 160.  On January 16, 2015, Judge Berman rejected that particular deadline as proposed.  He wrote:  "Item #7 is not contingent upon any pending or impending personal jurisdiction motion(s)[.]"  Dkt. No. 163 (emphasis in original).  In other words, Judge Berman was ordering *all* parties to comply with the June 30, 2015 deadline by substantially completing their *entire* document productions by that date.

At the parties' January 20, 2015 hearing before Judge Berman, Judge Berman reiterated his order:

> **MR. LYLE**: As we read it [the January 16, 2015 Order], with respect to your decision as it relates to discovery, are we correct that merits discovery should proceed against all defendants even those that intend to file the motion to dismiss --
>
> **THE COURT**: I think so, yes.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

> **MR. LYLE**: -- for subject matter -- for personal jurisdiction?
>
> **THE COURT**: Yes. That was -- there was a specific reference in my order to not contingent upon, that's what I had in mind.
>
> **MR. LYLE**: Thank you, your Honor.

(Ex. A, 1/20/15 Hr'g Tr. at 8:24-9:10) (emphasis added). Counsel for the BSG Defendants addressed the Court immediately after this exchange, and when he did, he did *not* raise any objection or otherwise raise any concern over Judge Berman's explicit order that the BSG Defendants participate in merits discovery. Judge Berman's order is clear: everyone, including the BSG Defendants, must proceed with merits discovery notwithstanding any forthcoming motions.[1] There is simply no excuse and no time for the BSG Defendants to refuse to abide Judge Berman's order.

The prejudice to Rio Tinto is also clear. Since the outset of this case, the BSG Defendants have done all they can to delay discovery. This motion is just the latest example, and most brash in light of Judge Berman's order. No party disputes that there is a lot to accomplish before June 30, 2015; indeed, the BSG Defendants' own letter drives home that point. But more importantly, the BSG Defendants' letter drives home that *any* stay, especially one that lasts months as proposed by the BSG Defendants, would jeopardize the entire schedule, likely causing all parties to miss the June 30, 2015 deadline and thus compromising the schedule through trial.

Moreover, the BSG Defendants have no basis to complain about having to participate in discovery pending a ruling on their motion to dismiss for lack of personal jurisdiction. Last year, they consciously made the strategic decision to bifurcate their motions to dismiss, choosing to withhold their motion to dismiss for lack of personal jurisdiction while the Court considered (and denied) their motion to dismiss for *forum non conveniens*. Had the BSG Defendants chosen instead to promptly submit their motion for lack of personal jurisdiction, they would likely know by now whether they were all in or all out of this case. If any party should have to bear the attendant prejudice of the strategic decision to bifurcate, it should be the party who made it.

***The Court has already denied this motion.*** The BSG Defendants' instant motion is no different than the motion to stay it filed four months ago in October. It makes the same arguments. It cites the same cases. It complains about the same purported burdens. It was denied. Dkt. No. 144. Undeterred, the BSG Defendants, without any apparent legal basis, have re-filed the same motion to stay; they argue (again) that their soon-to-be-filed 12(b)(2) motion will be "strong" and, because of that, this Court should stay discovery. Dkt. No. 174 at 7. But while touting the purported strength of their forthcoming motion and the "conclusory" and "bland" nature of Rio Tinto's

---

[1] The BSG Defendants are the only litigants that are disregarding Judge Berman's order. Co-Defendant VBG, for example, is working cooperatively with Rio Tinto to conduct merits discovery notwithstanding its forthcoming motion that the Court does not have personal jurisdiction over it. And Co-Defendant Vale is doing the same notwithstanding its forthcoming motion that Rio Tinto's allegations should be dismissed due to threshold issues of law.

Amended Complaint, the BSG Defendants conspicuously run from the complaint itself. They avoid, at all costs, quoting actual allegations from Rio Tinto's Amended Complaint – specific allegations that, for example, describe how the BSG Defendants (i) engaged, paid, and sent its co-conspirator, employee, and known agent, Defendant Frederic Cilins, *to the United States* to conceal and/or destroy evidence (Am. Compl. ¶¶ 16, 32, 124-31, 135-39), (ii) engaged and paid co-conspirators and agents to wire money bribes to an account *in Florida* for Defendant Mamadie Touré (*id.* ¶¶ 25, 124-31, 140-41), (iii) entered into a behind-the-scenes agreement with their co-conspirator Defendant Vale, while Vale was meeting with Plaintiff *in New York*, to obtain rights to the Simandou Concession (*id.* ¶¶ 102-04), (iv) illegally obtained, pursuant to their agreement with co-conspirator Defendant Vale, geological, technical, and logistical data provided by Plaintiff during the meetings *that took place in New York* (*id.* ¶¶ 87, 89-90), and (v) had a co-conspirator pay bribes to Defendant Thiam, *a U.S. citizen* (*id.* ¶¶ 97, 101, 111, 115). These allegations, which the BSG Defendants attempt to whistle past, conclusively establish that this Court can properly exercise jurisdiction over the BSG Defendants under any number of jurisdictional provisions.[2]

New York's long-arm statute expressly permits this Court to "exercise personal jurisdiction over any non-domiciliary" who "in person or through an *agent*" commits or performs certain enumerated acts. N.Y. CPLR §302(a). For example, N.Y. CPLR § 302(a)(2) permits a court to exercise personal jurisdiction over a defendant who *through an agent* "commits a tortious act within the State." Furthermore, the term "agent" has customarily been interpreted broadly, *see Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981), and has been held to include *co-conspirators*. In *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991), the Court explained:

> CPLR 302(a)(2) permits the exercise of jurisdiction over an out-of-state defendant who commits a tortious act within New York either in person or through an agent. Courts have defined "agent" broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators. It is well established that acts committed in New York by the co-conspirator of an out-of-state

---

[2] The BSG Defendants also selectively clip-quote Rio Tinto's Amended Complaint in an effort to mischaracterize it as "conclusory" and "bland." But the BSG Defendants of course omit any and all allegations that are at odds with the picture they want to paint for the Court. They say, citing only ¶ 86 in the Amended Complaint, that Rio Tinto's "only" allegation of its "conspiratorial relationship between Vale and BSGR prior to February 4, 2009 is a single purported meeting between them in December 2008." Dkt. No. 174 at 10. But ¶ 86 only *begins* to describe Vale's and BSGR's conspiratorial relationship. In the paragraphs that follow, Rio Tinto's alleges in detail that BSGR "continued lobbying and bribing key Guinean Government officials—a fact which Vale knew or should have known—including by making illegal promises and payments" (Am. Compl. ¶ 90), "[i]n December 2008, Vale and BSGR met with the Guinean Government to propose a potential Vale–BSGR joint venture to develop Simandou Blocks 1 and 2" (*id.* ¶ 91), and while "Vale met with Rio Tinto at the New York offices of Cleary Gottlieb on December 21-22, 2008, January 15-16 and 28-29, 2009 and February 4, 2009 . . . . Defendant Mahmoud Thiam, who was receiving bribes from Steinmetz and BSGR, used his power and authority as the Minister of Mines to advance the conspiracy by ensuring that the award of Simandou Blocks 1 and 2 would be finalized" (*id.* ¶96-97).

defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR 302(a)(2).

(internal citations omitted); *see also Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-cv-488 (BSJ)(HBP), 2012 WL 3594288, at *1 (S.D.N.Y. Aug. 16, 2012).

Likewise, civil RICO claims against any person "may be instituted in the district court of the United States for any district in which such person resides, is found, *has an agent*, or transacts his affairs." 18 U.S.C. § 1965(a) (emphasis added). On its face, therefore, this provision also permits the Court to exercise jurisdiction over the BSG Defendants provided they had an agent and/or co-conspirator operating on their behalf in New York when Rio Tinto initiated this lawsuit. *See Am. Trade Partners, L.P. v. A-1 Int'l Imp. Enters., Ltd.*, 755 F. Supp. 1292, 1304 (E.D. Pa. 1990) ("Section 1965(a) provides that venue may be found in the district where the defendant 'has an agent.' The co-conspirator theory is bottomed on agency theory. It is said that each co-conspirator acts as the agent for the others and any co-conspirator's act in a district is attributable to the other co-conspirators."). And they did. In this case, the BSG Defendants' agents and/or co-conspirators, specifically Defendants Thiam and Cilins, were in New York when Rio Tinto initiated this lawsuit. Defendant Thiam, for example, resided in New York on April 30, 2014 when the complaint was filed and continues to reside there. Defendant Cilins was also in New York when Rio Tinto initiated this lawsuit. *See* Dkt. No. 37 (Aff. of Serv. on Cilins).

Fed. R. Civ. P. 4(k)(2) provides separate grounds for this Court to exercise jurisdiction over the BSG Defendants. That rule was specifically enacted to permit the exercise of personal jurisdiction in federal courts over alien defendants having contacts with the ***nation as a whole***, but whose contacts are so scattered among states that none of them would have general jurisdiction over those defendants. In fact, Rule 4(k)(2) is designed to "fill a gap in the enforcement of federal law" for courts to exercise personal jurisdiction over defendants "having sufficient contacts with the United States to justify the application of United States law . . . but having insufficient contact with any single state to support jurisdiction under state long-arm legislation." *United States v. Int'l Brotherhood of Teamsters,* 945 F. Supp. 609, 616–17 (S.D.N.Y. 1996) (quoting Fed. R. Civ. P. 4(k)(2), advisory committee's note (1993)). Notably, contacts under this rule may be established by the conduct of the defendant *and its agents. See Peterson v. Islamic Republic of Iran*, No. 10-cv-4518 KBF, 2013 WL 1155576, at *18 (S.D.N.Y. Mar. 13, 2013).

Contrary to the BSG Defendants' argument, Rio Tinto has pleaded the requisite elements of Rule 4(k)(2) – assuming *arguendo* that pleading the application of a federal rule in a federal case is even necessary, and it is not. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). Rule 4(k)(2) permits a federal court's exercise of personal jurisdiction where: "(1) plaintiff's claim arises under federal law; (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law." *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 264 (S.D.N.Y. 2005). Elements (1) and (3) are straightforward and easily satisfied here. This RICO case arises under federal law, and the Amended Complaint, as provided above, details instance after instance where Defendants, their agents (Vale, Cilins, Thiam, Fofana), and co-conspirators (same) operated throughout the United States (*e.g.*, New York, Florida, Maryland) to defraud and injure Rio Tinto, and then, to cover it up. For element (2), Rio Tinto has *not* alleged that

Defendants *are* subject to the general jurisdiction of any state court, including New York, as even the BSG Defendants note in their letter.

These are just a few examples of why jurisdiction is proper here. Accordingly, this Court can justifiably exercise jurisdiction over the BSG Defendants. But Your Honor need not, in any event, resolve this issue here and now. Judge Berman is slated to consider and decide it; in the meantime, however, he has unequivocally ordered merits discovery to proceed.

***There is no undue burden in proceeding with document discovery.*** The BSG Defendants further complain that it is "unfair" for them to proceed with document discovery because they will have to spend additional, and perhaps waste, time and money. That complaint, particularly considering the time and money devoted to a 14-page rehash of old issues, rings hollow. The BSG Defendants are both sophisticated and solvent, and they have continued to spare no expense in investing time and money to stall discovery at every stage of this case. The better investment for the BSG Defendants is of course for them to refocus their time and money in complying with Judge Berman's order.

As an initial matter, there is no reason that the BSG Defendants cannot provide written answers to Rio Tinto's discovery requests. Last June, Rio Tinto propounded a narrow set of interrogatory responses that, per local rule 33.3, simply seek, *e.g.*, "names of witnesses with knowledge of information relevant to the subject matter of the action." Even here, however, the BSG Defendants are digging in and refusing to provide written responses. Worse still, the BSG Defendants overstate their purported burden in beginning to roll out a production of documents *that they acknowledge as having already collected and reviewed* – specifically, at least 6,000 documents that connect them to Defendant Frederic Cilins. (*See* Dkt No. 174 at 3). In fact, this only demonstrates that the BSG Defendants are already well underway in having collected, processed, searched, and teed up relevant documents concerning merits issues for review and production. Both sides have previously acknowledged that jurisdictional and merits discovery overlap,[3] and because of that, the BSG Defendants have processed a large amount of ESI from a dozen or so relevant custodians and already begun culling those documents with search terms. Contrary to their representations, the BSG Defendants could be, and should be, seeing that process through rather than abruptly stopping it.

Moreover, any such production by the BSG Defendants at this stage of the case would not be for naught. Even they acknowledge that they will have to respond to discovery requests, should they be dismissed from the case, through the Hague Convention and/or letters rogatory. That discovery is sure to overlap with what is being requested of them at this point in time. And to the extent the BSG Defendants truly believe that conducting their own affirmative discovery (*e.g.*, simply propounding

---

[3] Judge Berman has discretion to order merits discovery to proceed alongside any challenge to jurisdiction, especially where, as here, jurisdictional and merits discovery are intertwined. *See Opticon, Inc. v. Zazzu*, No. 94-cv-6256, 1995 WL 67656, at *1 (S.D.N.Y. Feb. 17, 1995); *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1160 (D. Nev. 2009); *Angstrom Technologies, Inc. v. Wray*, 382 F. Supp. 2d 895, 898 (E.D. Ky. 2005); *Jimmy Smith Racing Tires, Inc. v. Ashleman*, No. 1:05-cv-0970, 2006 WL 2699127, at *10 (N.D. Ga. Sep. 19, 2006).

discovery requests) would be too burdensome, they have the prerogative to take a wait-and-see approach. But that choice concerning *affirmative* discovery should not absolve them of having to *respond* to merits discovery that has been properly propounded by Rio Tinto and ordered to proceed by Judge Berman.

*   *   *

For the foregoing reasons, Rio Tinto respectfully submits that the BSG Defendants' second motion for a stay of discovery should be denied.

Very truly yours,

/s/Michael Lyle
Michael Lyle