UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rio Tinto plc,

                Plaintiff,

    -against-

Vale S.A., Benjamin Steinmetz, BSG
Resources Limited, VBG–Vale BSGR Limited
aka BSG Resources (Guinea) Ltd. aka
BSG Resources Guinée Ltd, BSG Resources
Guinée SARL aka BSG Resources (Guinea)
SARL aka VBG-Vale BSGR, Frederic Cilins,
Mamadie Touré, and Mahmoud Thiam,

                Defendants.

14 Civ. 3042 (RMB) (AJP)

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS RIO TINTO PLC'S AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.     THE RICO CLAIMS ARE TIME-BARRED ........................................................ 3

       A. The SOL Began For All Defendants In December 2008................................ 3

       B. The SOL Is Not Tolled As To Any Defendant .............................................. 4

II.    THE AC FAILS TO STATE A CLAIM FOR RELIEF ..................................... 13

       A. Rio Tinto Has Not Pleaded A Pattern Of Racketeering ............................... 13

       B. Additional Defects With Regard To Each Movant........................................ 17

III.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BSGR,
       STEINMETZ, OR THE VBG DEFENDANTS ............................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art Assure Ltd., LLC v. Artmentum GmbH,*
No. 14 Civ. 3756(LGS), 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ........................................ 29

*Atkins v. Apollo Real Estate Advisors, L.P.,*
No. CV-05-4365, 2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008) ................................................ 25

*Avalos v. IAC/Interactivecorp.,*
No. 13-CV-8351(JMF), 2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ....................................... 24

Bank of New York Mellon v. SACE S.p.A,
No. 10 Civ. 2510(RMB), 2011 WL 102728 (S.D.N.Y. Jan. 6, 2011) ......................................... 28-29

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................................. 14

*Bensusan Rest. Corp. v. King,*
126 F.3d 25 (2d Cir. 1997) ...................................................................................................... 28

*Bingham v. Zolt,*
683 F. Supp. 965 (S.D.N.Y. 1988) ........................................................................................... 16

*Casio Computer Co. v. Sayo,*
No. 98CV3772(WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ........................................... 29

*Castellano v. Bd. of Trustees,*
937 F.2d 752 (2d Cir. 1991) ...................................................................................................... 17

*Crawford v. Franklin Credit Mgmt. Corp.,*
758 F.3d 473 (2d Cir. 2014) ...................................................................................................... 14

*Cruz v. FXDirectDealer, LLC,*
855 F. Supp. 2d 89 (S.D.N.Y. 2012) ......................................................................................... 20

*De Jesus v. Sears, Roebuck & Co.,*
87 F.3d 65 (2d Cir. 1996) ......................................................................................................... 25

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001) ............................................................................................. 13-14, 17

*Donahue v. Pendleton Woolen Mills, Inc.,*
633 F. Supp. 1423 (S.D.N.Y. 1986) .......................................................................................... 4

*Drexel Burnham Lambert Inc. v. Saxony Heights Realty Assocs.,*
777 F. Supp. 228 (S.D.N.Y. 1991) ............................................................................................ 18

*European Cmty. v. RJR Nabisco, Inc.*,
764 F.3d 129 (2d Cir. 2014) ........................................................................ 24

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 (S.D.N.Y. 2014) ........................................................... 20-21

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) ........................................................................ 17

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
67 F.3d 463 (2d Cir. 1995) .......................................................................... 15

*Gmurzynska v. Hutton*,
257 F. Supp. 2d 621 (S.D.N.Y. 2003) ........................................................ 26, 30

*Griffin v. McNiff*,
744 F. Supp. 1237 (S.D.N.Y. 1990), *aff'd*, 996 F.2d 303 (2d Cir. 1993) ...... 5

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) ......................................................... 17, 25

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ..................................................................................... 14

*Hall v. E. I. Du Pont De Nemours & Co.*,
312 F. Supp. 358 (E.D.N.Y. 1970) ............................................................. 4-5

*Harris v. NYU Langone Med. Ctr.*,
No. 12 Civ. 0454(RA)(JLC), 2013 WL 3487032 (S.D.N.Y. July 9, 2013) .... 25-26

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990) .......................................................................... 19

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009) ......................................................... 12

*In re Grand Jury Subpoena dated August 9, 2000*,
218 F. Supp. 2d 544 (S.D.N.Y. 2002) ........................................................ 21

*In re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) .......................................................................... 13

*JBC Holdings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013) ........................................................ 21

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ..................................................................................... 12-13

*Koch v. Christie's Int'l PLC*,
785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ................................... 5, 11

*Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................................................... 29

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990) ..................................................................................... 26

*Lehigh Val. Indus., Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ......................................................................................... 28

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ....................................................................................... 24

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
No. 03 Civ. 9612(GEL), 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ...................... 18

*Lippe v. Bairnco Corp.*,
225 B.R. 846 (S.D.N.Y. 1998) .................................................................................... 25

*Matter of Mediators, Inc.*,
190 B.R. 515 (S.D.N.Y. 1995), *aff'd*, 105 F.3d 822 (2d Cir. 1997) ............................. 5

*McLaughlin v. Anderson*,
962 F.2d 187 (2d Cir. 1992) ....................................................................................... 20

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Technologies Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006) ("*NGC*") .......................................................... *passim*

*Nordic Bank PLC v. Trend Group, Ltd.*,
619 F. Supp. 542 (S.D.N.Y. 1985) .............................................................................. 27

*O'Brien v. Nat'l. Prop. Analyst Partners*,
719 Supp. 222 (S.D.N.Y. 1989) .................................................................................. 5

*Papapietro v. Popular Mortgage Servicing Co.*,
No. 13-CV-2433(SLT)(RML), 2014 WL 5824682 (E.D.N.Y. Nov. 10, 2014) ............... 4

*Pincione v. D'Alfonso*,
No. 10 Civ. 3618(PAC), 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011) ...................... 27

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.*,
No. 07 Civ. 1784(RMB)(GWG), 2008 WL 1700196 (S.D.N.Y. Apr. 4, 2008) ............. 27-28, 29

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
No. 89 Civ. 2809(BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ............................ 15, 23

iv

*Reiss v. Steigrod*,
866 F. Supp. 747 (S.D.N.Y. 1994) ............................................................................ 26, 29

*Rotella v. Wood*,
528 U.S. 549 (2000) ........................................................................................................ 3

*Santos v. Dist. Council of New York City & Vicinity of United
Bhd. of Carpenters & Joiners of Am., AFL-CIO*,
619 F.2d 963 (2d Cir. 1980) ............................................................................................ 3

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997) ..................................................................................... 18, 19

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ........................................................................................... 8

*Simon v. Weaver*,
327 F. Supp. 2d 258 (S.D.N.Y. 2004) ........................................................................... 19

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) .................................................................................... 16, 18

*Stichting Ter Behartiging v. Schreiber*,
327 F.3d 173 (2d Cir. 2003) ......................................................................................... 23

*Success Universal Ltd. v. CWJ Int'l Trading, Inc.*,
No. 95 Civ. 10210 (DLC), 1996 WL 535541 (S.D.N.Y. Sept. 20, 1996) ....................... 6

*Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*,
842 F. Supp. 1567 (S.D.N.Y. 1994) .............................................................................. 15

*Town of Poughkeepsie v. Espie*,
402 F. Supp. 2d 443 (S.D.N.Y. 2005) ........................................................................... 13

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010) .................................................................................... 19, 20

*United States v. Castle*,
925 F.2d 831 (5th Cir. 1991) ........................................................................................ 21

*United States v. Cruz*,
993 F.2d 164 ................................................................................................................. 21

*United States v. Inc. Vill. of Island Park*,
791 F. Supp. 354 (E.D.N.Y. 1992) ................................................................................. 5

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) ......................................................................................... 17

*United States v. Thorn,*
317 F.3d 107 (2d Cir. 2003) ........................................................................ 21-22

*USA Network v. Jones Intercable, Inc.,*
729 F. Supp. 304 (S.D.N.Y. 1990) ............................................................. 14-15

*W & D Imports, Inc. v. Lia,*
563 F. App'x 19 (2d Cir. 2014) .................................................................. 16

*Weizmann Inst. of Sci. v. Neschis,*
229 F. Supp. 2d 234 (S.D.N.Y. 2002) ....................................................... 17

*World Wrestling Entm't Inc. v. Jakks Pac. Inc.,*
328 F. App'x 695 (2d Cir. 2009) ................................................................ 10

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
530 F. Supp. 2d 486 (S.D.N.Y. 2007) ......................................... 3, 15-16, 23

**Rules and Statutes**

15 U.S.C. § 78dd-1(a) .................................................................................. 23

15 U.S.C. § 78dd-2(a) .................................................................................. 23

15 U.S.C. § 78dd-3(a) .................................................................................. 23

18 U.S.C. 1961 ............................................................................................ 23

18 U.S.C. § 1961(5) ..................................................................................... 14

Defendants Vale S.A. ("Vale"), Benjamin Steinmetz, BSG Resources Limited ("BSGR"), VBG Guinea, VBG-Vale (Guernsey), and Mahmoud Thiam ("Movants") move under F.R.C.P. 12(b)(6) to dismiss the Amended Complaint of Rio Tinto plc ("Rio") (Dk. 83, the "AC"). Defendants Steinmetz, BSGR, VBG Guinea, and VBG-Vale (Guernsey) move to dismiss the AC pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction.

## STATEMENT OF FACTS[1]

When the rhetoric is stripped away, this case presents a dispute among three competitors for the rights to an iron ore mine.  Rio alleges that Vale, BSGR and certain individuals engaged in a conspiracy, the "ultimate target [of which] was Rio Tinto's mining concession in the Simandou region of southeast Guinea," and seeks damages for the alleged loss of that concession.  AC ¶ 1.  *See also* Dk. 143 at 6.  BSGR, Steinmetz and Cilins (purportedly a BSGR agent) are alleged to have paid bribes at various times to Guinean President Conté, his fourth wife, defendant Mamadie Touré, and Thiam, Guinea's Minister of Mines, to induce Guinea to revoke Rio's rights to Simandou and award them instead to BSGR, *id.* ¶¶ 2, 13, 42-46, 48-51, which the AC alleges occurred in December 2008. *Id.* ¶ 92.[2]  Years later, beginning in April 2012, Cilins, allegedly on behalf of "other" defendants, sought to have Touré sign a false declaration and destroy certain documents related to acts of bribery, for which Cilins was prosecuted and pleaded guilty to one count of obstruction of a criminal investigation.  *Id.* ¶¶ 119-131.

Rio alleges that, beginning in late 2008, Vale entered into negotiations with it for the potential purchase of certain assets, including the Simandou mining rights, although with respect to

---

[1] Movants accept the well-pleaded facts of the Amended Complaint as true solely for purposes of this motion.

[2] Thiam did not become Minister of Mines, however, until January 2009, AC ¶ 24, and is not alleged to have had any role whatsoever in December 2008 when Rio's concession was revoked.  *See infra* at 7.

Simandou no purchase occurred.  AC ¶¶ 54, 105.  Starting on November 24, 2008, Rio shared with Vale certain purportedly confidential information about Simandou pursuant to a "Confidentiality Deed," dated September 2, 2008, and a "Data Room Access Agreement."  *Id.* ¶¶ 55, 64.

The AC alleges that the RICO enterprise was born at a meeting between BSGR, Steinmetz and Vale in December 2008, in the midst of the Rio-Vale negotiations.  AC ¶ 159; *see id.* ¶¶ 86-87.  The AC also alleges the supposed plot "quickly began to bear fruit."  *Id.* ¶ 12.  In December 2008, Vale and BSGR representatives allegedly met with Guinean officials and used Rio's confidential information to convince Guinea to assign the Simandou rights to BSGR.  *Id.* ¶¶ 12, 89.

While the AC is deliberately vague about the sequence of events in December 2008, it unequivocally alleges that within nine days of the earliest potential date of the enterprise's formation, its objective – to "wrest half of the Simandou Concession from Rio Tinto" – was achieved when Guinea revoked Rio's concession for Blocks 1 and 2 on December 9, 2008.  *Id.* ¶¶ 12, 92, 154.[3]  Two days later, Guinea publicly announced it was awarding exploration licenses for Blocks 1 and 2 to an affiliate of BSGR.  *Id.* ¶ 92.  Two months later, in February 2009, Thiam issued a letter officially rescinding Rio's rights to Blocks 1 and 2, and, in June 2009, confirmed the grant of the rights to BSGR.  *Id.* ¶¶ 91, 98, 100.[4]

---

[3] Even before the alleged formation of the enterprise began, Guinea had issued a decree in July 2008 stating that Rio's rights in Simandou were reduced to that of an exploration permit holder, AC ¶ 77, and on November 3, 2008, an affiliate of BSGR had obtained written assurances from Guinea's then Minister of Mines (not Thiam) that the Government would withdraw Rio's Simandou rights entirely.  *Id.* ¶ 80.

[4] The Vale-Rio negotiations came to an end in June 2009.  AC ¶ 105.  Seventeen months after BSGR obtained the rights, and nearly ten months after the end of the Vale-Rio discussions, Vale entered into a joint venture with BSGR to develop BSGR's Simandou Blocks 1 and 2.  *Id.* ¶ 108.  There is no allegation that the formation of the joint venture violated the Confidentiality Deed or any other agreement Vale had with Rio.

<u>ARGUMENT</u>

**I.  <u>THE RICO CLAIMS ARE TIME-BARRED</u>**

    **A.  <u>The SOL Began For All Defendants In December 2008</u>**

The RICO statute of limitations is four years, which begin to run when the plaintiff "knew or should have known of his injury," not when he discovers his claim. *Rotella v. Wood*, 528 U.S. 549, 553, 555, 559 (2000).[5] "Although RICO cases often involve 'pattern[s] of predicate acts that [are] complex, concealed or fraudulent,' . . . it is plaintiff's discovery of the injury, not discovery of the underlying pattern of predicate acts, which triggers the statute of limitations." *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) ("*NGC*") (citing *Rotella*, 528 U.S. at 555-57). Once the plaintiff knows or should have known she was injured, the clock begins to run, and it is incumbent on her to investigate. That this may require "considerable inquiry and investigation" does not relieve her of that obligation; RICO is "aimed at rewarding the swift who undertake litigation in the public good." *Rotella*, 528 U.S. at 556, 559.

Here, the AC alleges that "Rio Tinto has been injured in its business and property by the loss of its legitimate rights to Blocks 1 and 2 of Simandou" and that theft of Rio's rights to Simandou Blocks 1 and 2 was the alleged RICO "enterprise's ultimate target." AC ¶¶ 1, 205; *see also id.* ¶ 1 ("This is a case about the theft of Rio Tinto's valuable mining rights by the Defendants."). That loss was known to Rio no later than December 9, 2008, when "the Guinean Government sent a letter to Rio Tinto indicating that it was rescinding Rio Tinto's rights to Simandou Blocks 1 and 2." *Id.* ¶ 92.

---

[5] "[T]he [statute of limitations] analysis for civil RICO conspiracy claims is the same as that for civil RICO claims brought under the substantive RICO provision." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) (citation and quotation omitted), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). When the time bar appears on the face of the complaint, "[t]he limitations defense . . . may be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12(b)(6)." *Santos v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 n.4 (2d Cir. 1980).

The AC also alleges that "[o]n December 11, 2008, it was publicly announced that the Guinean Government was awarding exploration licenses for those same blocks to BSGR Guinea." *Id.* Thus, Rio's alleged RICO claims accrued no later than December 2008, and expired in December 2012, more than 16 months before Rio filed its original complaint in April 2014.

## B. The SOL Is Not Tolled As To Any Defendant

Presumably recognizing that its own pleading shows its RICO claims to be time-barred, Rio alleges that defendants fraudulently concealed those claims. AC ¶ 144. In so alleging, however, Plaintiff faces a heavy burden. Fraudulent concealment may toll a limitations period only in "exceptional circumstances." *NGC*, 420 F. Supp. 2d at 264. In order to avail itself of that exception, "plaintiff must establish three elements including: (1) wrongful concealment by the defendant (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *Id.* at 265 (citing *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)). Each of these three elements must be pleaded with particularity under Fed. R. Civ. P. 9(b). *Id.* at 265. Rio's complaint would be timely only if the statute of limitations did not begin running until April 30, 2010; if even a single day ran on the statute between Rio's injury in December 2008 and that date, its claim is time-barred.

Element (1) requires that the concealment be "wrongful." A plaintiff cannot claim fraudulent concealment because the defendant did not volunteer or affirmatively disclose his wrongdoing; there is no "duty to confess." *See, e.g., Papapietro v. Popular Mortgage Servicing Co.*, No. 13-CV-2433(SLT)(RML), 2014 WL 5824682, at *9 (E.D.N.Y. Nov. 10, 2014) ("mere silence" not enough to toll RICO claim); *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986). Indeed, "[i]t is in the nature of a conspiracy that there be secrecy; mere nondisclosure or denial of the existence of a conspiracy does not constitute fraud or deceit for tolling purposes. If it did, the tolling exception to the statute of limitation would eclipse the basic statute itself." *Hall v. E.*

*I. Du Pont De Nemours & Co.*, 312 F. Supp. 358, 362 (E.D.N.Y. 1970).  As to element (2), the plaintiff

must allege a fraudulent act that "prevented [its] discovery of the nature of the claim within the

limitations period."  *NGC*, 420 F. Supp. 2d at 267 (emphasis added) (citation and quotation

omitted).  *See, e.g., United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 370 (E.D.N.Y. 1992)

("The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a

defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim" (citation

omitted)).

        Finally, "[a] plaintiff cannot point to the deceptive practices of one defendant, and demand

equitable tolling as to all," as "[c]ourts in this district have consistently held that the doctrine of

fraudulent concealment only serves to toll the statute of limitations as to those defendants who

actively participated in the concealment."  *Matter of Mediators, Inc.*, 190 B.R. 515, 525 (S.D.N.Y. 1995),

*aff'd*, 105 F.3d 822 (2d Cir. 1997).[6]  And once the plaintiff has discovered or should have discovered

the claim, the statute of limitations begins to run on the claim for all potential defendants; the fact

that plaintiff does not know who all the potential defendants are, or each element of wrongdoing,

does not continue to toll the statute.  *See Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 117-18

(S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012); *NGC*, 420 F. Supp. 2d at 268 (even assuming

"wrongful concealment by at least some of the defendants," the nature of the claim was not

concealed where "the information NGC possessed in 1996 should have been sufficient to challenge

the alleged misconduct").  Rio's fraudulent concealment allegations, which it purports to set forth in

---

[6] *See also Griffin v. McNiff*, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y. 1990) ("[T]he doctrine of
fraudulent concealment tolls the statute of limitations only as to those defendants who committed
the concealment, and plaintiffs may not generally use the fraudulent concealment by one defendant
as a means to toll the statute of limitations against other defendants."), *aff'd*, 996 F.2d 303 (2d Cir.
1993).  Rio cannot avoid this requirement with conclusory allegations of "conspiracy"; not only does
it fail to allege facts properly supporting such a claim, but also its "alleged RICO conspiracy is, in
any event, different from a conspiracy to conceal fraud."  *O'Brien v. Nat'l. Prop. Analyst Partners*, 719 F.
Supp. 222, 232 (S.D.N.Y. 1989) (citing *Greenfield v. Kanwit*, 87 F.R.D. 129, 132 (S.D.N.Y. 1980)).

AC ¶ 144, fail to satisfy these criteria as a matter of law.

      **Vale.**  Rio's pleading conspicuously makes only one allegation of fraudulent concealment by Vale:  "Vale's continued negotiations with Rio Tinto during the first half of 2009, despite its discussions with Steinmetz and BSGR to develop a joint venture."  AC ¶ 144(a).[7]  The sole basis for this claim is that Vale later entered into a joint venture with BSGR – which Rio discovered when the joint venture was formed in April 2010.  AC ¶ 146.  This is patently deficient.  Vale is not said to have represented that it was *not* engaged, or would not engage, in negotiations with BSGR.  Vale and Rio were rivals who carefully refrained from entering into any such restraint of trade.  The January 2009 Letter of Intent between the parties (referred to in the AC and therefore incorporated by reference) made clear that Vale was not "under any obligation to enter into any agreement or transaction [with Rio] regarding Simandou," and did not prohibit Vale from discussing Simandou, "one of the largest iron ore deposits in the world," AC ¶ 36, with BSGR – the party with the rights to Simandou.  The Confidentiality Deed contains a provision on Prohibited Activities that for up to one year prevented each of Vale and Rio from entering into an agreement to acquire shares of the other party *but not, it made clear, "the assets of the other party*."  Deed 5.1.  Vale was thus free to discuss with BSGR the rights Rio admits were given to BSGR – and had no obligation to disclose such discussions to its rival, Rio.  *See, e.g.*, *Success Universal Ltd. v. CWJ Int'l Trading, Inc.*, No. 95 Civ. 10210 (DLC), 1996 WL 535541, at *6 (S.D.N.Y. Sept. 20, 1996) ("A buyer-seller relationship in an arms-length transaction . . . does not give rise a fiduciary relationship, or to the kind of special relationship required to create a duty to disclose.").  There was no wrongful concealment.

      Rio also does not allege – nor could it – that Vale's absence of disclosure to Rio of the potential joint venture agreement (before that agreement was signed) impeded Rio's discovery of its

---

[7] Vale is *not* alleged to have been involved in any bribery or obstruction; the AC at most alleges that Vale "knew or should have known" about such acts based on BSGR's reputation.  AC ¶ 89.

claim (Element 2).  Rio affirmatively admits that it only "exercised due diligence in pursuing discovery of the claims" "[u]pon learning" of the Vale-BSGR joint venture on April 30, 2010.  AC ¶ 146.  That alone makes its claim untimely:  under *Rotella,* the statute begins running upon injury and is not tolled until an investigation begins.  Indeed, Rio admits that at the time of its injury in December 2008, it "viewed [the] purported change to its Simandou concession as an illegitimate sham," AC ¶ 77, was "well aware of allegations of BSGR's reputation for corruption and bribery," *id.* ¶ 78, and "was on notice that Steinmetz's and BSGR's efforts to misappropriate Rio Tinto's Simandou Concession included bribery and other acts of political corruption," AC ¶ 82.  Moreover, as to the causation requirement, Vale's only alleged "fraudulent concealment" could not have impeded Rio's investigation because – despite these red flags – Rio alleges that it did not conduct any investigation until *after* the "concealment" had ended:  Vale could not have impeded an investigation that did not exist.  And, after that date in 2010, by Rio's own admission, it was BSGR and Steinmetz's alleged bribes and obstruction that allegedly impeded the investigation – and not anything wrongfully concealed by Vale.  AC ¶ 147.  Accordingly, the AC does not allege any fraudulent concealment by Vale that impeded Plaintiff's investigation.

**Thiam**.  Thiam, a U.S. citizen, AC ¶ 2, became the Guinean Minister of Mines in January 2009, AC ¶ 24, and the AC does not allege that he played any prior role.  Thiam had <u>no</u> involvement in December 2008 when Guinea "rescinded" Rio's rights to Simandou Blocks 1 and 2, and "awarded exploration licenses" to BSGR.  AC ¶ 92.  The "RICO Enterprise" had already achieved its "ultimate objective," AC ¶ 166:  "to defraud Rio Tinto and convince Guinean Government officials through bribery to hand over the rights to Blocks 1 and 2 of Simandou to the Defendants . . . ." *Id.*

The AC nevertheless alleges Thiam received bribes from BSGR of "as much as" $100 million. AC ¶ 115.[8] These bribe "installments" supposedly began at some unspecified time after January 2009, AC ¶ 101; the only "installment" specified by any time and place is alleged in Paris "between mid-May and mid-June 2010" (or alternatively, "between June 6 and June 12 2010"). AC ¶¶ 115, 176. Thiam allegedly "doled out" portions (unspecified) of the bribe, at times (unspecified), to an "array of government officials" (also completely unspecified). AC ¶¶ 2, 14.[9]

The bribe's "purpose" was to somehow "finalize," AC ¶ 97, what Rio admits had been accomplished in December 2008. Rio "did not accept that its rights to Blocks 1 and 2 were actually rescinded." AC ¶ 94. Rio was free to "not accept" reality, but the conundrum remains: bribe(s) supposedly paid to Thiam for action already taken prior to his arrival.

Rio tries to insulate itself from its barely sketched but inflammatory allegations with a double layer of "information and belief."[10] But Rule 9(b) requires particularity as to the circumstances of the alleged fraud in order to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit . . . ." *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

The AC's concealment allegations as to Thiam are, frankly, risible. Rio blames Thiam for "Continu[ing] to Cover up the Scheme," AC p. 33, and proclaims that Thiam "repeatedly

---

[8] Or alternatively, "over $100 million." AC ¶ 176. In Rio's original Complaint, there was a third version: a precise $200 million delivered in one fell swoop in June 2010. Original Compl. ¶ 11.

[9] Or alternatively, he did not dole anything out. The AC simultaneously alleges the "doling out" and contradicts it, saying repeatedly that "one or more" government officials was bribed. AC ¶¶ 174, 179. If only one official (Thiam) was allegedly bribed, what is left of the vague "doled out" theory?

[10] Under the subheading "Factual Allegations," p. 14, Rio announces that all its subsequent allegations are "upon information and belief." Then the AC often adds a second layer of "information and belief" about bribes. *See, e.g.*, AC ¶¶ 115, 176, 177.

disseminated false information to benefit BSGR and Vale, and disparage Rio Tinto."  AC ¶ 111.  But

the few statements they manage to scrape together are anodyne.

To wit:  in May 2010, Thiam "dismissed the suggestion of a Guinean opposition leader that

the rights of BSGR and Vale to Blocks 1 and 2 were invalid."  Thiam said, "There is no opposition .

. . BSGR has a legal title and decided on a joint venture with Vale . . . . "  AC ¶ 112.  On June 8,

2010, on CNBC, Thiam "praised BSGR and spoke in favor of the joint venture between BSGR and

Vale . . . . "  AC ¶ 114.  On October 4, 2010, Thiam said,

> We have asked in vain for Rio Tinto to give us written confirmation (that) they have
> given up half of Simandou in accordance with the mining code.  If this isn't done by
> February 2011, Rio risks losing the other two blocks under its control and could
> definitively lose its rights to the zone.

*See* AC ¶ 116.[11]  These are the "false" statements by which Thiam "continu[ed] to cover up

the scheme."  AC p. 33.

There are three fatal problems for Rio.  First, the contention that Rio's "lengthy

investigation" was stymied by these plain vanilla public statements makes no sense.  Rio fought a

public battle post-December 2008 to convince the Government that the rescission was invalid.  AC

¶¶ 92, 94.  Thiam was just re-asserting the well-known Government position on legality.

Second, none of the statements are false, or even alleged with enough specificity to be false.

Third, Rio's investigation is said to have begun on April 30, 2010.  AC ¶ 146.  Yet every

Thiam statement Rio cites occurred *after* that.  It defies common sense to believe that Thiam's

---

[11] Filardo Decl ¶ 14, Ex. B, attaching the actual report of Thiam's media statement supposedly
"paraphrased" in the AC by Rio.  AC ¶ 116.  Rio's "paraphrase" is a distortion.  Thiam did not say
Rio had a deadline to "formally waive its rights" to Blocks 1 and 2 (a phrase Rio repeats twice in the
"paraphrase"); Rio had no rights by then to that half of Simandou.

reiteration of Guinea's position (one publicly known, and disputed by Rio since December 2008) had any impact on Rio's "lengthy investigation."[12]

**BSGR & Steinmetz**.  Nowhere in the AC does Rio allege that Steinmetz personally attempted to conceal the purported underlying conspiracy.  The only act(s) of concealment Rio ascribes directly to BSGR are "continued public statements dismissing the veracity of the bribery allegations despite compelling evidence . . . ."  AC ¶ 144(b).  However, the fact that a defendant chose not to admit to the alleged wrongdoing does not satisfy the first "wrongful concealment" prong of the fraudulent concealment doctrine.  *See supra* at 4.  Furthermore, Rio does not, and could not, plausibly allege with sufficient particularity that "public statements" such as press releases, not directed at Rio and merely denying wrongdoing, prevented it from discovering the nature of its claim within the limitations period.  *See, e.g., World Wrestling Entm't Inc. v. Jakks Pac. Inc.*, 328 F. App'x 695, 698 (2d Cir. 2009).

Next, Rio ascribes to BSGR and/or Steinmetz the efforts of Cilins to persuade Touré to sign a false attestation and destroy certain documents on an agency theory.  *See* AC ¶¶ 124, 126-130, 133, 135-141, 144(e).  Rio alleges that there were two waves of Cilins-Touré activity aimed at concealing the nature of the purported underlying conspiratorial activity.  The first wave purportedly occurred in April and May 2012, when "Cilins tried to persuade Defendant Touré to sign a declaration falsely stating that she had no relationship with BSGR."  *Id.* ¶ 133.  By Rio's own telling, however, "Touré never signed it."  *Id.*  Accordingly, Rio does not, and could not, plausibly allege (with sufficient

---

[12]  Rio's contention that the Cilins criminal episode helped to conceal Rio's cause of action, AC ¶ 147, is irrelevant as to Thiam.  Stripped of impermissible "group pleading" against "the defendants," the AC does not allege any connection between Thiam and Cilins and Touré; or between Thiam and the alleged Cilins/Touré criminal episode.  Also, besides vague references to "the Defendants," there is no allegation in the AC that Thiam is a target, subject, or witness of the alleged investigations by the U.S. Attorney's Office for the Southern District of New York, or the Guinean Government.  AC ¶ 121.

particularity or otherwise) that this purported activity prevented it from discovering the nature of its claim within the limitations period.

The second wave of Cilins-Touré "cover-up" activity purportedly occurred in March and April 2013, when Cilins allegedly offered Touré payment in exchange for her destruction of documents evidencing previous bribe payments. *See id.* ¶¶ 124-130, 139, 144(e). Of course, by March and April 2013 – nearly five-and-a-half years after the Guinean Government announced its intention to rescind Rio's rights to Simandou Blocks 1 and 2 and award them to BSGR Guinea – the statute of limitations had already run. Accordingly, this second wave of Cilins-Touré "cover-up" activity could not operate to toll a statute of limitations that had already passed. *See, e.g.*, *Koch*, 699 F.3d at 157.

**VBG Defendants**. The AC does not allege the VBG Defendants committed a single act of fraudulent concealment. *See* AC ¶ 144. Instead, Rio vainly attempts to elide this pleading failure by defining the VBG Defendants as part of "BSGR" and ascribing its alleged action to them. Rio complains that "[t]here is no distinguishing between BSG Resources Limited, VBG Guernsey and VBG-Vale BSGR Guinea," that Rio has "no choice" but to refer to these separate and distinct entities "interchangeably" and that "[a]bsent discovery, it is near impossible to attribute specific acts to specific entities." AC ¶ 21. But had Rio done adequate diligence before filing suit against the VBG Defendants, or fully reviewed the website Rio cites as the source of its uncertainty, or not prematurely amended as to VBG without the "absent discovery" Rio now has, it would have known that the VBG Defendants are distinct from the other defendants, including "BSGR," and that no alleged act of fraudulent concealment by any other defendant is attributable to the VBG Defendants.

Prior to April 30, 2010, the VBG Defendant then known as BSG Resources (Guinea) Limited, a Guernsey corporation, was a separate, wholly owned subsidiary of BSG Resources Limited. BSG Resources (Guinea) Limited in turn wholly owned the VBG Defendant then known

11

as BSG Resources (Guinea) SARL, a Guinean limited liability company.  On April 30, 2010, Vale

became the majority owner and took control of the VBG Defendants, which changed their names to

VBG-Vale BSGR Limited and VBG-Vale BSGR Guinea Limited, respectively.  Filardo Decl. ¶¶ 15-

29.  This change of ownership and control was clearly reflected in public documents, including press

releases on the website Rio cites as a basis of its inability to distinguish "VBG" from "BSGR."  *Id.*

¶¶ 17-18.

        Given this well-documented history, Rio's professed uncertainty provides no basis for

ignoring the corporate separateness of the VBG Defendants.  *See, e.g.*, *IMG Fragrance Brands, LLC v.*

*Houbigant, Inc.*, 679 F. Supp. 2d 395, 404-05 (S.D.N.Y. 2009) (presumption is that "[p]arent and

subsidiary or affiliated corporations are, as a rule, treated separately and independently") (citation

omitted).  Moreover, even if one could collapse the distinction between parent and subsidiary, it is

clear that none of the alleged acts of concealment by other defendants can be ascribed to VBG.

        Vale's alleged acts of fraudulent concealment in 2009, when it had no interest in or control

over the VBG Defendants, cannot be attributed to them – and the AC does not even attempt to do

so.  Similarly, the alleged acts of fraudulent concealment in 2012 and 2013 by Steinmetz and BSGR,

or Cilins allegedly acting at their direction and behest, all come at a time when they had no control

over, and held only a minority interest, or none at all, in the VBG Defendants.  By then, Vale had

become majority owner and controlled the VBG Defendants, and Rio does not allege that Vale was

even aware of these alleged acts of concealment, which in turn precludes attributing them to VBG.

                                                ***

        Finally, for all defendants, as to the third required element – due diligence in pursuing

discovery of the claim – Rio's equitable tolling claim is foreclosed by *Klehr v. A.O. Smith Corp.*, 521

U.S. 179 (1997), and its progeny.  Rio not only fails to allege "with any specificity what efforts it

made to investigate a RICO cause of action in the four years following" Dec. 9, 2008, *NGC*, 420 F.

Supp. 2d at 268, it affirmatively admits that for more than 16 months after its injury (until April 30, 2010), it conducted no investigation at all.  AC ¶ 146.  In a RICO case, this lack of diligence is fatal: "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment'" "irrespective of what the plaintiff should have known."  *Klehr*, 521 U.S. at 194-95.  *See also Merrill Lynch*, 154 F.3d at 60 (Plaintiffs fail to plead due diligence where "they make no allegation of any specific inquiries . . . , let alone detail when such inquiries were made, to whom, regarding what, and with what response."); *Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 456 (S.D.N.Y. 2005) ("The Supreme Court has deliberately emphasized that in the context of a civil RICO case, the bar is raised in terms of a Plaintiff's obligation to act swiftly and with diligence to ascertain and act on a RICO injury.").

The decision in *NGC* is on point.  There, the plaintiff, which alleged that it had lost a contract due to defendants' bribery of a Saudi official, sought to avoid statute-of-limitations dismissal by arguing that it could "invoke the doctrine of fraudulent concealment to toll the statute of limitations because some of the defendants concealed the U.S. acts of bribery supporting the RICO cause of action."  *NGC*, 420 F. Supp. 2d at 266.  The court rejected this argument where plaintiff acknowledged it knew of the termination of its subcontract in 1996, more than four years before filing suit, and alleged that it believed the termination was wrongful at that time.  *Id.* at 267-68.  Judge Buchwald held that because "the information NGC possessed in 1996 should have been sufficient to challenge the alleged misconduct in Saudi tribunals . . . concealment of the U.S. bribery and money laundering could not have obscured from NGC the true 'nature' of its cause of action."  *Id.* at 268.  The same result follows here.

## II.  <u>THE AC FAILS TO STATE A CLAIM FOR RELIEF</u>

### A.  <u>Rio Tinto Has Not Pleaded A Pattern Of Racketeering</u>

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citation and quotation omitted).  To establish a violation of 18 U.S.C. § 1962(c), Rio "must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Id.* at 306 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  To plead a section 1962(d) RICO conspiracy claim, the plaintiff must plead that the defendants "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense" under RICO.  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).  Rio cannot just plead conclusions; a complaint must plead sufficient factual allegations that when assumed to be true "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To plead the required pattern of racketeering activity, a plaintiff must allege "at least two acts of racketeering activity," or predicate acts.  18 U.S.C. § 1961(5); *see DeFalco*, 244 F.3d at 306.  In addition, "to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis original).  The requirement that plaintiff plead a threat of continued criminal activity – the "continuity" requirement – must be established by alleging either an "open-ended" scheme, in which the predicate acts are part of the defendants' regular way of conducting business, or a "closed-ended" scheme, consisting of a "series of related predicates extending over a substantial period of time."  *Id.* at 241-42.  Rio has failed to plead either.

### 1.  <u>No Open-Ended Continuity</u>

Rio alleges that defendants' alleged actions "constituted a continuous course of conduct in the United States beginning in 2008 and continuing today . . . ."  AC ¶ 195.  However, a plaintiff cannot plead open-ended continuity where the complaint simultaneously pleads that the "alleged purpose of [defendants'] fraudulent scheme . . . was essentially accomplished."  *USA Network v. Jones Intercable, Inc.*, 729 F. Supp. 304, 318 (S.D.N.Y. 1990); *see also GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,

67 F.3d 463, 466 (2d Cir. 1995) (no open-ended continuity where "the scheme was *inherently* terminable" and "could not have continued once" plaintiff's assets were taken).

The AC admits that the alleged scheme's single goal, to deprive Rio of Simandou Blocks 1 and 2, was achieved in December 2008. AC ¶ 166. The AC also explicitly pleads that the alleged RICO "scheme *was successful* because Defendants were able to obtain Blocks 1 and 2 of Simandou," *id.* ¶ 169 (emphasis added), and that this occurred "when officials in the Guinean Government announced *in December 2008* that the Government *had rescinded* half of Rio Tinto's Simandou Concession (Blocks 1 and 2) and intended to assign that interest to BSGR," *id.* ¶ 12 (emphasis added); *see also* ¶¶ 91, 92. Thus, the "alleged purpose of [defendants'] fraudulent scheme . . . was essentially accomplished" in December 2008, defeating any reliance on open-ended continuity. *USA Network*, 729 F. Supp. at 318.

This conclusion is not altered by the alleged 2010 payment to Thiam (or the purely conclusory allegation – if it is even that – of laundering of such bribes), AC ¶¶ 166, 193, or by the post-December 2008 attempts by BSGR's alleged agent Cilins to conceal BSGR's purported wrongdoing, AC ¶ 119 *et seq.* It is settled law that acts to conceal prior wrongdoing "do not constitute continuing criminal conduct." *Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*, 842 F. Supp. 1567, 1572-73 (S.D.N.Y. 1994). In "determining the duration of the RICO scheme for the purposes of establishing continuity," the Court should exclude "acts of obstruction of justice . . . because efforts by a defendant to cover up the underlying conduct are inadequate to satisfy the continuity requirement of the RICO statute." *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809(BSJ), 1996 WL 442799, at *7 n.8 (S.D.N.Y. Aug. 6, 1996); *see World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 512 (S.D.N.Y. 2007) (holding acts "to cover up past misconduct," such as "alleged obstruction, perjury and false statements[,] . . . do not extend the pattern of racketeering activity").

15

For similar reasons, defendants' alleged misuse of Rio's information in the operation of Simandou, AC ¶ 119, cannot convert this into a RICO case.  To extend the relevant period for the purpose of assessing continuity to include defendants' alleged subsequent use of the confidential information "would allow plaintiffs to turn every finite scheme . . . into an enterprise simply by characterizing the defendant's subsequent enjoyment of the proceeds of the scheme as continuous criminal activity."  *Bingham v. Zolt*, 683 F. Supp. 965, 970 (S.D.N.Y. 1988).  The fact that Rio has repeatedly said that the case is <u>not</u> about misappropriation (except as an alleged means to "steal" its concession in December 2008)[13] only reinforces this conclusion.

### 2.  <u>No Closed-Ended Continuity</u>

"[C]losed-ended continuity is primarily a temporal concept," and "[t]he relevant period, moreover, is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (citation and quotation omitted).  The Second Circuit has stated: "Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where, as here . . . [t]he activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy."  *Id.* (citation and quotation omitted); *see also W & D Imports, Inc. v. Lia*, 563 F. App'x 19, 24 (2d Cir. 2014) (plaintiff failed to allege closed-ended continuity when the acts complained of occurred over period of approximately 18 months).

Rio alleges a period of racketeering predicate activity lasting *two weeks*.  According to the AC,

---

[13] *E.g.*, Dec. 1, 2014 Hr'g Tr. at 25:3-26:17 ("What our litigation is about are the rights to the mine that were stolen as part of the RICO conspiracy by Vale and Mamadie Toure. . . .  Those rights are a function of government action by the government of Guinea . . . where government officials were bribed. . . .  Our allegations do not stem from technical geological information in the confidentiality deed but rather the RICO conspiracy that we alleged extensively in our complaint that springs out of the conduct.").

the alleged RICO enterprise did not exist until sometime in December 2008, AC ¶¶ 86-87, and had achieved its goal of obtaining Rio's rights to Blocks 1 and 2 by December 11, 2008, *id.* ¶¶ 12, 92. The alleged scheme targeted a single victim, Rio, and a single piece of property, its concession to Simandou Blocks 1 and 2. *See, e.g., id.* ¶ 1.

Even accepting that the RICO enterprise's goal was not fully achieved until "the Minister of Mines and the President of Guinea . . . affirm[ed] the validity of and ratif[ied] the [BSGR] licenses" for Blocks 1 and 2, AC ¶ 95, Rio explicitly pleads that this occurred on June 29, 2009, within 7 months (not *2 years*) of enterprise formation. *Id.* ¶ 100.[14]

### B. Additional Defects With Regard To Each Movant

"[T]he requirements of section 1962(c) must be established as to each individual defendant." *DeFalco*, 244 F.3d at 306. Thus, Rio cannot plead RICO claims against each defendant by "lumping the defendants into collective allegations," as this "results in a failure to demonstrate the elements of § 1962(c)." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009); *see United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise . . . .").

**Vale.** As to Vale, where Rio purports to make out a RICO "pattern" by invoking the mail

---

[14] Plaintiff's RICO conspiracy claim must fall as well. Where, as here, the complaint is bereft of any allegations of an agreement to do anything other than what was allegedly done, the "RICO conspiracy claims are entirely dependent on their substantive RICO claims" and the failure of one requires dismissal of the other. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004); *see also Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (Berman, J.) ("Because Plaintiffs' substantive RICO claim fails, Plaintiffs' claim of conspiracy to commit a violation of 18 U.S.C. § 1962(c), pursuant to § 1962(d), must also fail" (citation and quotation omitted)). Moreover, because the sole basis for subject matter jurisdiction here is Rio's federal RICO claims, if it dismisses them the Court should, pursuant to 28 U.S.C. § 1367(c)(3), decline to exercise supplemental jurisdiction over Rio's state law claims as well. *See Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (under § 1367(c)(3), "if the federal claims are dismissed . . . the state claims should be dismissed as well" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))).

and wire fraud statutes alone, the Circuit has held a plaintiff cannot "artificially fragment[] a singular act into multiple acts simply to invoke RICO."  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (finding only one alleged fraudulent act and the remaining acts were "subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose"); *see Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612(GEL), 2004 WL 2071689, at *16 (S.D.N.Y. Sept. 16, 2004) (Lynch, J.) ("[M]ultiple acts in furtherance of a *single* extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts.").  Moreover, Rio's allegations are subject to the heightened pleading standard of Rule 9(b), under which it must "state the contents of the communications, who was involved and where and when they took place, and should explain why they were fraudulent."  *Spool*, 520 F.3d at 184-85 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  In this regard, "[c]ontractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages."  *Id.*  An "attempt to convert a contract claim into a tort claim by the additional naked assertion that the breaching party never intended to perform is doomed to fail."  *Drexel Burnham Lambert Inc. v. Saxony Heights Realty Assocs.*, 777 F. Supp. 228, 235 (S.D.N.Y. 1991).

Rio's allegations fall far short of what is necessary to invoke the draconian weapon of RICO. The AC alleges two anodyne acts by Vale:  that a January 29, 2009 Letter of Intent made "false representations to Rio Tinto regarding [Vale's] interest to purchase Simandou" and that, at February 4, 2009 meeting, Vale <u>continued</u> to "express an interest in purchasing" Rio's rights to Simandou. AC ¶ 167(a), (d).  Neither allegation makes out a fraud claim.  Vale had every right to consider its options with *both* Rio and BSGR at the same time, and Rio does not allege otherwise.  Further, even if somehow Plaintiff could make out a claim of fraud, the two alleged statements – one made a month after the other and allegedly "continu[ing]," AC ¶ 167(d), the representation made by the earlier statement – do not make out two separate predicate acts for purposes of RICO.  *See Schlaifer*

*Nance & Co.*, 119 F.3d at 98.  Further, there are no facts pleaded to support the conclusory assertion that either of these communications employed the wires or the mails.  The two alleged predicate acts by Vale thus do not satisfy Section 1962 or Fed. R. Civ. P. 8(a) or 9(b).  And, finally, both of these alleged acts *post-date* Rio's injury in December 2008, and could therefore not satisfy the civil RICO causation requirement.  *See UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010) (plaintiff must show that the RICO violation was the proximate cause of his injury).

Rio's conclusory allegations that Vale entered a conspiratorial agreement likewise should be dismissed for independent reasons.  To allege a RICO conspiracy, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990).  Here, the allegation that Vale and BSGR met and formed a RICO enterprise in 2008 that influenced Guinean officials is supported only by conclusory allegations that this happened "[u]pon information and belief."  AC ¶ 86.  Rio alleges that in April 2010, well over a year after its own discussions with Vale terminated, Vale and BSGR announced a joint venture.  But those allegations do not establish Vale and BSGR conspired in December 2008 when Vale was talking to Rio.  As *Twombly* made clear, such allegations of innocuous economic activity – here, entirely of the *post hoc, ergo propter hoc* variety – do not plead an illegal agreement.  Further, Rio's conclusory assertion that Vale "knew or should have known" of the alleged bribery is not sufficient to plead actual knowledge, much less agreement sufficient to support a conspiracy claim.  *See, e.g., Simon v. Weaver*, 327 F. Supp. 2d 258, 260-62 (S.D.N.Y. 2004) (allegation that defendant "knew or should have known" of primary party's RICO violations was insufficient to satisfy "[t]he knowledge element in an aiding and abetting claim [which] requires both actual and specific knowledge of the primary party's violations").

**Thiam**.  Predicate acts are alleged under three rubrics: mail and wire fraud (18 U.S.C. §§ 1341, 1343), Foreign Corrupt Practices Act (15 U.S.C. § 78dd), and money laundering (18 U.S.C. §

1956).  Each is defective.  Moreover, given Thiam's commencement as Minister in January 2009, Rio

fails both tests of the Second Circuit on RICO causation:

> First, [a plaintiff] must show that the RICO violation was the proximate cause of his
> injury, meaning 'there was a direct relationship between the plaintiff's injury and the
> defendant's injurious conduct.'  Second, he must show that the RICO violation was
> the but-for (or transactional) cause of his injury, meaning that but for the RICO
> violation, he would not have been injured.

*UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010) (citation  omitted).

<u>Mail and wire fraud</u>.  Rio relies on Thiam's "false" statements to the media as its mail and

wire fraud predicates.  AC ¶ 167(i)-(j).[15]  First:

> [W]here the [RICO] complaint alleges 'that the mailings themselves were fraudulent,
> i.e., that the mailings themselves contained false or misleading information', a
> plaintiff must satisfy Rule 9(b).

*Cruz v. FXDirectDealer, LLC*, 855 F. Supp. 2d 89, 98 (S.D.N.Y. 2012), *rev'd in part on other grounds*, 720

F.3d 115 (2d Cir. 2013); *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) (mail fraud requires

"some element of deception").  Does Rio really contend it meets the standard when it quotes Thiam

saying BSGR has legal rights to half of Simandou?

Moreover,

> In the context of the predicate acts of mail and wire fraud, 'proof of
> misrepresentation – even widespread and uniform misrepresentation – only satisfies
> half of the equation . . . because plaintiffs must also demonstrate <u>reliance</u> on a
> defendant's . . . misrepresentation to establish causation under RICO.'

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014) (citation

omitted) (no reliance possible on defendant misrepresentations about plaintiff's patent infringement

---

[15] The only statement by Thiam that Rio actually enumerates in its "Mail and Wire Fraud" section,
AC ¶ 165 *et seq.*, is Thiam's June 2010 CNBC appearance, discussed *supra*.  With a vague reference to
other "false statements," AC ¶ 166(i), Rio presumably intended to include the several other
innocuous Thiam statements referenced earlier in the AC.

when plaintiff "disputed from the outset that it was infringing the . . . patent . . . . ").  Even if

Thiam's statements had been false, they were being hotly disputed, not relied on, by Rio.

Foreign Corrupt Practices Act.  Rio further alleges that Thiam violated the Foreign Corrupt

Practices Act ("FCPA").  AC ¶ 174 *et seq.*  First, an alleged bribee cannot violate the FCPA; it does

not target foreign government officials receiving bribes.  *United States v. Castle*, 925 F.2d 831, 831,

832 (5th Cir. 1991); *In re Grand Jury Subpoena dated August 9, 2000*, 218 F. Supp. 2d 544, 550 (S.D.N.Y.

2002).  Second, the bribe is pled only "on information and belief," which is inadequate under Rule

9(b).  "[S]uch allegations must be 'accompanied by a statement of the facts upon which the belief is

founded.'"  *JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (citations

omitted).  Rio pleads no such factual basis, and instead makes "precisely the sort of speculative,

'naked assertion[s]' that do not suffice to survive a motion to dismiss."  *Id.* at 526 (citations omitted).

Moreover, "[t]he implausibility of plaintiffs' allegations is reinforced by their internal

inconsistency."  *Id.*  The notion that BSGR would bribe Thiam for the rescission of rights that

occurred before he took office defines the implausible.  On a motion to dismiss, the Court must use

"judicial experience and common sense," which defeat these allegations.  *Id.* (citation omitted).

Money Laundering.  AC ¶ 193(c).  The elements of a money laundering offense are: "(1) that

the defendant conducted a financial transaction which involved the proceeds of unlawful activity; (2)

that he knew that the property involved in the transaction was proceeds of some form of specified

unlawful activity; and (3) that he intended to promote the . . . unlawful activity."  *United States v. Cruz*,

993 F.2d 164, 167 (8th Cir 1993) (citation omitted).  The first and second elements rest on a house

of cards:  Rio's implausible and unsupported information and belief allegations.  The third requires

that "the receipt and deposit of laundered funds was made with the intent to promote the specified

underlying unlawful activity, be it, for example, by promoting continued illegal activity or by being

essential to the completion of the scheme."  *United States v. Thorn*, 317 F.3d 107, 133 (2d Cir. 2003).

Here, Rio merely alleges, in a sentence fragment: "Upon information and belief, in 2011, an estate in Duchess (sic) County, New York for $3.75 million." AC ¶193(c).[16] Nothing remotely suggests that the purchase promoted illegal activity or was essential to completing an illegal scheme. Rio does not even allege that the purchase had any connection, financial or otherwise, to the alleged bribe.[17] The AC merely places its allegation about the property purchase close to the vague AC allegations about alleged bribery. AC ¶¶ 115, 193(c).

Rio has failed to plead any predicate; two are required. And even if the alleged bribe had been well pled, and were an FCPA violation, the effort to spawn multiple predicates from the single alleged crime would still fall short of the necessary two predicates. *See* discussion *supra* at 18.

**BSGR & Steinmetz.** In addition to the reasons set forth above, *see supra* pp. 17-22, the AC also fails to sufficiently allege two or more predicate acts against BSGR and Steinmetz. The AC alleges against BSGR and Steinmetz predicate acts of: (i) mail and wire fraud; (ii) destruction of records in a federal investigation in violation of the Travel Act; (iii) illegal payments to foreign officials in violation of the Travel Act; (iv) obstruction of a criminal investigation; (v) tampering with a witness; and (vi) money laundering. Each of these purported predicate acts is legally insufficient to plead a pattern of racketeering activity as required for a Section 1962(c) claim.

Allegations relating to cover up. All of the alleged activity attributed to BSGR and Steinmetz as: (i) mail and wire fraud; (ii) violations of the Travel Act through the destruction, alteration, and falsification of records in a federal investigation in violation of 18 U.S.C. § 1519; (iii) obstruction of a criminal investigation; (iv) tampering with a witness, victim, or an informant; and (v) money

---

[16] The allegation goes on to say, bizarrely, that "Thiam paid for both properties with cash." AC ¶ 193(c). No other property is specified.

[17] Scrambling to tar Thiam, Rio says Thiam "sought refuge in the United States" through purchase of the property in Dutchess County. AC ¶ 161. Thiam is a U.S. citizen and long-time N.Y. resident, AC ¶ 24, and ended his government service, according to the AC, in 2011, the year he returned to the United States and allegedly purchased the property.

laundering *occurred after July 2010* – more than a year (and in some instances nearly 4 years) after the objective of the RICO scheme was already allegedly completed – and for the alleged purpose of covering up the RICO conspiracy.[18]   However, acts allegedly done after completion of the RICO enterprise's purpose, in an attempt to conceal that activity, are legally insufficient to serve as predicate acts, and cannot satisfy the requirement for continuity.  *See World Wrestling Entm't*, 530 F. Supp. 2d at 512 (alleged activity not a predicate act because it post-dated completed scheme by years, and could only have been intended to cover-up, rather than further, a continuing RICO scheme); *Ray Larsen Assocs., Inc.*, 1996 WL 442799, at *7 n.8 (efforts to cover-up not predicate acts).

          <u>Payments to Guinean officials</u>.  Other alleged Travel Act violations attributed to BSGR and Steinmetz concern payments to Guinean Government officials, and to Thiam during a June 2010 meeting in Paris, in violation of 15 U.S.C. § 78dd.  AC ¶¶ 174-177.  These allegations are legally insufficient to allege violations of 15 U.S.C. § 78dd (and thus the Travel Act) because – as required by Section 78dd – neither BSGR nor Steinmetz is, or is alleged to be, "a domestic concern," an "issuer of securities," or "located in the United States" at the time the alleged improper payments were made.  *See* 15 U.S.C. §§ 78dd-1(a), 78dd-2(a), 78dd-3(a); 18 U.S.C. 1961; *see also Stichting Ter Behartiging v. Schreiber*, 327 F.3d 173, 179-80 (2d Cir. 2003) (liability under § 78dd-2(a) requires alleged offender be a "domestic concern").  Additionally, the AC fails to allege "use of the mails or of any means or instrumentality of interstate commerce," as required for a violation of 15 U.S.C. § 78dd.  AC ¶¶ 174-176.  Moreover, because Travel Act violations can only serve as RICO predicate acts when the alleged underlying conduct occurred in the U.S., these payments – all of which were alleged to have been made outside the U.S., *see* AC ¶¶ 175-76 – are legally insufficient to serve as the

---

[18] *See* (i) AC ¶ 167; (ii) AC ¶ 173; (iii) AC ¶¶ 182-83; (iv) AC ¶¶ 188-89; and (v) AC ¶¶ 193(a)-(b). The vague allegation about purported false and misleading statements on BSGR's website, AC ¶ 167, also fails to satisfy the heightened pleading standard of Rule 9(b), offers no indication of reliance by Rio, and does not  plead a predicate act.  *See supra* at 20-21.

bases for Travel Act violations. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014) (Travel Act does not have extraterritorial application). The only alleged payments made inside the U.S. and through the mail or other instrumentality of interstate commerce attributed to BSGR or Steinmetz are to Touré, and she is only alleged to be the wife of the former Guinean President – not a foreign official herself. AC ¶ 23. Thus, any alleged payments to Touré are also legally insufficient to serve as a violation of 15 U.S.C. § 78dd, or the Travel Act. AC ¶ 177. The AC fails to adequately plead a pattern of racketeering activity against BSGR and Steinmetz, because it fails to sufficiently allege any activity that can serve as a predicate act.

In addition to failing to sufficiently allege predicate acts or a pattern of racketeering by BSGR and Steinmetz, Rio also fails to sufficiently plead causation and proximate damages. The AC must sufficiently allege that the RICO violation was the but-for cause of Rio's injury. *See supra* at 19-20; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 (2d Cir. 2006) (alleged injury must have been directly caused by the RICO predicate acts); *Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351(JMF), 2014 WL 5493242, at *6 (S.D.N.Y. Oct. 30, 2014) ("[i]n order to state a claim for relief under either Section 1962(c) or (d), a plaintiff must establish both but-for causation and proximate causation"; claim dismissed for failure to plead causation). Rio's conclusory assertion that the alleged RICO enterprise was the "but for" and proximate cause of its loss of Simandou mining rights is implausible given Rio's claim that as early as July 28, 2008 – four months before it alleges the RICO enterprise was formed in December 2008[19] – "Guinea had issued a decree purporting to change Rio Tinto's property rights to those of an exploration permit holder." AC ¶ 77. Rio's loss of its mining

---

[19] Rio alleges that "prior to the formation of the RICO enterprise in the United States, Defendants Steinmetz, BSGR . . . Cilins, and Touré already were actively engaging in bribery and corruption in an effort to gain control of the Simandou Concession," AC ¶ 48, but makes no allegation that these purported efforts resulted in the July 28, 2008 revocation of Rio's rights, *see id.* ¶ 77, explicitly alleging only that the December 9, 2008 confirmation of the revocation was influenced by BSGR. *See id.* ¶¶ 91, 92.

rights in July 2008 cannot be proximately caused by later events.

**VBG Defendants**.  The AC makes no specific or particularized allegations of even a single RICO predicate act by the VBG Defendants.  Rio ignores the teaching of *DeFalco*, *First Capital Asset Mgmt.*, *Gross* and *Persico* discussed at 17 *supra*, and relies on "lumping the defendants into collective allegations," *Gross*, 628 F. Supp. 2d at 495, against the mislabeled "BSGR."

The AC's failure to allege even a single specific predicate act by the VBG Defendants, or any factual basis for imputing other defendants' alleged conduct to them, requires dismissal under Rule 12(b)(6).  *See Lippe v. Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y. 1998) ("To make out a RICO claim against these separate, corporate defendants, plaintiffs cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant."); *see also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (affirming dismissal of RICO claim based on corporate affiliation without specific allegation that defendant "acted independently to further this alleged RICO scheme"); *Atkins v. Apollo Real Estate Advisors, L.P.*, No. CV-05-4365, 2008 WL 1926684, at *8 (E.D.N.Y. Apr. 30, 2008) (RICO claims against corporate affiliates dismissed where complaint failed to allege specific acts or conduct by them).

Rio's election to simply lump the VBG Defendants into the term "BSGR" also deprives them of even the basic notice required by Rule 8 and utterly fails to meet Rule 9(b)'s higher requirement of individualized and particularized allegations of fraud.  "In order to comply with Rule 8, [a] complaint should offer specification as to the particular activities by any particular defendant." *Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454(RA)(JLC), 2013 WL 3487032, at *7 (S.D.N.Y. July 9, 2013) (citation omitted).  In the absence of any allegations describing their conduct, the VBG Defendants lack notice of "the basis upon which the relief is sought against [them]." *Id.*  Rule 9(b) is even stricter, requiring a plaintiff "alleging fraud" to "state with particularity the circumstances

constituting fraud," which Rio's fraud claims – lacking any particularized factual allegations against the VBG Defendants – utterly fail to do.

### III. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BSGR, STEINMETZ, OR THE VBG DEFENDANTS

**BSGR & Steinmetz**.  Rio cannot establish personal jurisdiction over BSGR or Steinmetz, and the AC must be dismissed against them on this independently sufficient ground.  As this Court has stated, "[o]n a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), 'the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'"  *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (citation omitted).  Prior to discovery on any jurisdictional issues, a plaintiff must make a *prima facie* showing of personal jurisdiction over the defendant, and the "conclusory allegations" in the AC as to BSGR and Steinmetz are insufficient to meet this standard.  *Id*.[20]  However, where, as here, the court "allowed the parties to conduct discovery on the jurisdictional issue," the Second Circuit has held that the plaintiff "bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists."  *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (citation omitted).  Now that BSGR and Steinmetz have produced all jurisdictionally-related documents as ordered, Filardo Decl. ¶¶ 8-13, Rio must establish jurisdiction over them by a preponderance of evidence.  *Reiss v. Steigrod*, 866 F. Supp. 747, 749 (S.D.N.Y. 1994).

There Is No General Jurisdiction Under CPLR 301.  Rio has not alleged or shown any legally sufficient basis for the Court to assert general jurisdiction over BSGR and Steinmetz.[21]  The AC only makes *two* allegations as to general jurisdiction over Steinmetz – each of which was refuted

---

[20] Rio further bundles its jurisdictional allegations against BSGR together with its allegations against the VBG Defendants, rendering its allegations even more conclusory.  *See infra* at 29-30.

[21] Rio's counsel admitted as much when it stated in open court, "you're right, in our complaint we don't plead general jurisdiction applies" to BSGR or Steinmetz.  *See* Dec. 9, 2014 Hr'g Tr. at 7:13-15.

in his Declaration – and none as to BSGR.[22]  Moreover, Rio adduced no evidence through jurisdictional discovery to support its allegations of general jurisdiction over them.  *See* Filardo Decl. ¶¶ 8-13.

    <u>There Is No Specific Jurisdiction Under The RICO Statute Or CPLR 302</u>.  Nor can Rio meet its burden to prove by a preponderance of evidence that BSGR or Steinmetz are subject to specific jurisdiction in this Court pursuant to 18 U.S.C. §§ 1965(a) or (b) or CPLR 302.  As a matter of law, Rio cannot avail itself of either 18 U.S.C. §§ 1965(a) or (b) to establish jurisdiction because: (i) Rio does not allege that either BSGR or Steinmetz had an agent in New York on April 30, 2014 (the day that this action was commenced); and (ii) BSGR and Steinmetz were not served in the U.S. – both executed waivers of service in England (Dk. 28).  *See Pincione v. D'Alfonso*, No. 10 Civ. 3618(PAC), 2011 WL 4089885, at *5 (S.D.N.Y. Sept. 13, 2011) (requiring "an agent in the jurisdiction on the day the complaint is filed," not just "at some point in time," for § 1965(a) jurisdiction) (citation omitted); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985) (court could not exercise personal jurisdiction under § 1965(b) over foreign defendants not served in U.S.).

    Rio's reliance on New York's long-arm statute is equally unavailing.  The AC alleges personal jurisdiction over BSGR pursuant to CPLR 302(a)(2), AC ¶ 31, and over Steinmetz pursuant to CPLR 302(a)(3). AC ¶ 32.  The AC does not allege that BSGR directly committed any tortious act in New York.  Absent that, Rio can only establish jurisdiction over BSGR based on the tortious acts of agents while they were "physically present in New York." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784(RMB)(GWG), 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) (Berman, J.)

---

[22] The AC does not allege that BSGR regularly conducts business in N.Y.  The AC alleges only that Steinmetz maintains a N.Y. business address and residential address.  AC ¶ 20.  Steinmetz does not have any ownership interest in the alleged properties or in any other N.Y. or U.S. real estate property, nor does he conduct any business here.  Filardo Decl. ¶ 13, Ex. A., Steinmetz Decl. ¶¶ 1-9.

(citation omitted).  But the AC does not even allege a tortious act to have been committed by Cilins, Touré, or Thiam – as purported agents or co-conspirators of BSGR – in New York.  The only acts(s) alleged to have occurred in New York is Cilins's alleged call(s) from some unspecified location outside New York to Touré, a Florida domiciliary, who happened to be in New York.  AC ¶ 124.  As a matter of law, such calls are insufficient to constitute physical presence within New York.  *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (defendant or his agents must have committed tortious act while physically present in N.Y. for CPLR 302(a)(2) jurisdiction).  The AC's allegations of Vale's conduct in New York also fail to establish personal jurisdiction over BSGR and Steinmetz, since Vale's alleged misconduct constitutes, at most, a contractual breach and not a tortious act under CPLR 302(a)(2).[23]  Rio's only conclusory allegation of a conspiratorial relationship between Vale and BSGR, prior to February 4, 2009, is that they had a single meeting in December 2008.  *See* AC ¶ 86.  Such non-specific and "bland assertion[s] of conspiracy" during the relevant time period are plainly insufficient to establish jurisdiction over BSGR under CPLR 302(a)(2).  *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975).

Rio cannot establish jurisdiction over Steinmetz pursuant to CPLR 302(a)(3) because it has not alleged the occurrence of any tortious act occurring outside New York – either by Steinmetz directly or through any of his alleged agents or co-conspirators – which *caused injury to person or property within* New York.  *See Bank of New York Mellon v. SACE S.p.A*, No. 10 Civ. 2510(RMB), 2011 WL 102728, at *4 (S.D.N.Y. Jan. 6, 2011) (Berman, J.) (no CPLR 302(a)(3) jurisdiction because plaintiff failed to allege an injury in New York).  Here, Rio's alleged injury was the loss of its mining

---

[23] Rio alleges meetings between Vale and itself in New York, between November 2008 and February 4, 2009, during which Vale allegedly made fraudulent misrepresentations to Rio to gain access to certain of its confidential information.  *See, e.g.,* AC ¶¶ 59, 63, 96, 208-09.  However, Vale's purported misconduct arises from its alleged breach of a Confidentiality Deed with Rio.  *See, e.g.*, AC ¶¶ 229-235.

interests *in Guinea*.  The AC does not allege that Rio suffered any other injury in New York.  *See* AC

¶¶ 92, 154, 196-97; *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756(LGS), 2014 WL

5757545, at *5 (S.D.N.Y. Nov. 4, 2014) (plaintiff failed to show defendants' allegedly tortious acts

caused injury in N.Y., as the "the situs of a nonphysical, commercial injury is where the critical

events associated with the dispute took place") (citation and quotations omitted).

In addition, Rio cannot meet the requirements of either CPLR 302(a)(3)(i) or (ii).  *See Reiss*,

866 F. Supp. at 750.  The AC baldly asserts that Steinmetz "regularly does or solicits business,

and/or engages in other persistent conduct, and/or derives substantial revenue from goods used or

consumed and/or services rendered in the state."  AC ¶ 32.  But, as this Court has held, such

conclusory allegations "fail to satisfy CPLR section 302(a)(3)(i)."  *Pitbull*, 2008 WL 1700196, at *7.

Rio does not even attempt to plead CPLR 302(a)(3)(ii) as an alternative basis for jurisdiction over

Steinmetz.  *See id.* at *7-8 (finding plaintiff's CPLR 302(a)(3)(ii) claims "unpersuasive").

Moreover, Rio will never be able to establish the minimum contacts required for the Court

to exercise personal jurisdiction over BSGR and Steinmetz.  BSGR and Steinmetz are foreign parties

who do not conduct business in New York or the U.S.  *See supra* at 26-27.  The jurisdictional

discovery they have provided contains no evidence that either performed any act in New York or

the U.S. – because they never did.  *See Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F.

Supp. 2d 593, 598 (S.D.N.Y. 1998) (defendant lacked minimum contacts with New York); *Casio

Computer Co. v. Sayo*, No. 98CV3772(WK), 2000 WL 1877516, at *24-25 (S.D.N.Y. Oct. 13, 2000)

(RICO claims dismissed; defendants' conduct did not satisfy requisite minimum contacts with U.S.

for jurisdiction).  Indeed, Rio has admitted that it does not even allege that BSGR or Steinmetz had

such contacts.  *See* Dec. 9, 2014 Hr'g Tr. at 7:13-15.

**VBG Defendants**.  Rio asserts no basis for general jurisdiction over the VBG Defendants.

Nor does the AC allege any actions by the VBG Defendants giving rise to specific jurisdiction.  Rio

again tries to fill a fatal gap by lumping the VBG Defendants into the term "BGSR" and then relying on its conclusory allegation that *BSGR* "directed its employees and/or agents to enter the United States and commit tortious acts within the state." AC ¶ 31. But this pleading gambit improperly ignores the separate identity of the VBG Defendants, *see supra* at 12, 25, and cannot establish jurisdiction.

In the absence of any allegation that the VBG Defendants were present in New York when this action was commenced, and given that they were not served here, the Court cannot exercise jurisdiction over them under 18 U.S.C. § 1965 (a) or (b). *See supra* at 27. Nor is there any basis for long-arm jurisdiction over them under N.Y. C.P.L.R. § 302(a)(2). There is no allegation the VBG Defendants committed any acts in New York and no substantive allegation that they committed tortious acts here through an agent or co-conspirator. *See Gmurzynska*, 257 F. Supp. 2d at 628, 630.

Defendant Cilins' alleged actions in 2012 and 2013 do not give rise to jurisdiction over the VBG Defendants. There is no allegation that Cilins acted at their direction, or with their knowledge. And to the extent Cilins is alleged to have acted at the direction of Steinmetz and BSGR, those actions all post-date April 30, 2010, after they had conveyed majority ownership and control of the VBG Defendants to Vale, which is not alleged to have had any knowledge of, or role in directing, Cilins. Similarly, Vale's alleged conduct in N.Y. in 2008 and 2009 fails to establish jurisdiction over VBG; at that time Vale had no interest in or control over the VBG Defendants. Filardo Decl. ¶¶ 15-29.

Finally, asserting jurisdiction over the VBG Defendants would be inconsistent with the United States Constitution. There is no allegation that the VBG Defendants, domiciled in Guernsey and Guinea, purposely directed any activities toward New York or even the United States, and thus the "minimum contacts" test is not met.

Dated:  New York, New York
          February 6, 2015


Respectfully submitted on behalf of all Movants,

CLEARY GOTTLIEB STEEN & HAMILTON LLP      MISHCON DE REYA NEW YORK LLP



By:  _/s/ L. Liman_____      By:  _/s/ V. Filardo, Jr._____
        Lewis J. Liman                            Vincent Filardo, Jr.
        Jonathan I. Blackman                       Robert Gold
        Boaz S. Morag                             Elizabeth M. Rotenberg-Schwartz

        One Liberty Plaza                         750 Seventh Avenue, 26th Floor
        New York, New York  10006                 New York, New York 10019
        (212) 225-2000                            (212) 612-3270
        (212) 225-3999                            (212) 612-3297


        *Attorneys for Defendant Vale S.A.*       *Attorneys for Defendants BSG Resources*
                                                  *Limited and Benjamin Steinmetz*



LAW OFFICES OF MARTIN J. AUERBACH, ESQ.      SULLIVAN & WORCESTER LLP (MA)



By:  _/s/ M. J. Auerbach_____    By:  _/s/ P. Summit_____
        Martin J. Auerbach                          Paul Eliot Summit

        1330 Avenue of the Americas                 One Post Office Square
        Suite 1100                                  Boston, MA 02109
        New York, New York 10019                    (617) 210-8437
        (212) 704-4347                              (617) 338-2880
        (212) 304-0175


        *Attorneys for Defendants VBG-Vale BSGR*     *Attorneys for Defendant Mahmoud Thiam*
        *Limited a/k/a BSG Resources (Guinea) Ltd.*
        *a/k/a BSG Resources Guinee Ltd., and BSG*
        *Resources Guinee SARL a/k/a BSG*
        *Resources (Guinea) Ltd. a/k/a VBG-Vale*
        *BSGR Guinea*