# ECF TRANSCRIPTION SHEET



**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:   (212) 805-7933
Telephone No.: (212) 805-0036

Dated:  February 19, 2015                                                     Total Number of Pages: 4

**MEMO ENDORSED:**

1. Vale to respond by close of business today.

2. The Court is inclined to order the Feasibility Study produced w/o redactions (but w/o prejudice to the parties' broader positions).

Copies **by ECF** to: All Counsel
                     Judge Berman

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2/19/15

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

**MEMO ENDORSED** 2/19/15

1. Refer to Vale by doc #1 [illegible] frog.
2. The court is inclined to order the Feasibility Study produced w/o redaction (but w/o prejudice to the parties' broader positions).

SO ORDERED:

Hon. Andrew J. Peck
United States Magistrate Judge

BY ECF [illegible]

WRITER'S DIRECT DIAL NO.
(202) 538-8166

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

February 18, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:  Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

Plaintiff Rio Tinto plc respectfully requests a pre-motion conference concerning an issue that the parties have been unable to resolve on their own since our last conference on February 6, 2015.[1] Counsel for Defendant Vale SA recently disclosed that it has in its possession the Feasibility Study for Simandou Blocks 1 and 2 that VBG submitted to the Guinean Government. This Feasibility Study is a comprehensive mining document that likely contains or reflects information Vale stole from Rio Tinto's Data Room and used in furtherance of its conspiracy. Rio Tinto has asked Vale to produce the complete Feasibility Study now as it is highly relevant and comprised of a discrete set of documents that can easily be produced by Vale's counsel. But Vale has refused to produce the complete document. Instead, Vale intends to significantly and improperly redact it, and produce only those portions it unilaterally deems relevant at some unspecified point in the future.[2]

---

[1] At the February 6, 2015 conference, Rio Tinto advised the Court that we might need to seek its guidance in advance of the next scheduled status conference. There are a couple of other less pressing issues, particularly with respect to Vale's position on Rio Tinto Document Request No. 1, that Rio Tinto will raise as part of the standard joint agenda letter process.

[2] Vale already has Rio Tinto's Feasibility Study in unaltered form without redactions. Vale initially was provided it in the Data Room during its negotiations with Rio Tinto, and again when Rio Tinto produced it in this litigation.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Vale has no credible basis to refuse to produce the Feasibility Study, unredacted and in its entirety. *First*, it is indisputably relevant. Broadly speaking, a feasibility study assesses the technical and economic viability of an iron ore mining and processing operation. More specifically, it contains information related to ports, railways, and other infrastructure, geology, mine planning, modeling, drill operations and procedures, technical analyses and plans relating to the development of Simandou. In other words, the Feasibility Study likely contains proof that Vale and its co-conspirators took and used information from Rio Tinto's Data Room. There is simply no doubt that the Feasibility Study, per Fed. R. Civ. P. 26(b)(1), "appears reasonably calculated to lead to the discovery of admissible evidence," and Vale's refusal to previously disclose its possession of it and to now produce it is telling in that regard.

*Second*, the Feasibility Study will significantly inform the parties ongoing discussions about the scope of Requests Nos. 12, 33, and 44-50, that, in aggregate, target documents that would shed light on what information Vale improperly took and used from Rio Tinto's Data Room; Vale has labeled these as the "misappropriation requests."[3] For months, Rio Tinto and Vale have gone back and forth over the scope of Requests Nos. 12, 33, and 44-50. Vale has objected to the scope of these requests, most recently objecting to Rio Tinto's attempt to include "geologic data, modeling, mapping, studies, analyses, or plans" and "drilling procedure and operations" into the scope of documents that should be produced in response to Requests Nos. 12, 33, and 44-50. Instead, Vale has asked Rio Tinto to operate in the dark and identify any and all documents from the Data Room that reflect the universe of information that Vale itself took and used from the Data Room. Of course, only *Vale*, and not Rio Tinto, knows exactly what *it* stole, how much *it* stole, and how *it* used that stolen information. Nevertheless, Rio Tinto has identified a set of documents that it believes reflects, at least in part, the information Vale stole from the Data Room. Vale, in contrast, has not produced a single document that would shine light on what information it took, when it took it, and how it has used that information. Yet this entire time, as Vale has been attempting to lock Rio Tinto into the set of documents it identified to frame discovery concerning what Vale misappropriated from the Data Room, Vale has been sitting on the very Feasibility Study that was used by Vale and its co-conspirators to demonstrate their purported knowledge of and ability to develop Blocks 1 and 2 to the Guinean Government. Indeed, the Feasibility Study likely will shine important and specific light on what information therein traces back to information from Rio Tinto's Data Room. Had Vale produced the Feasibility Study earlier in the litigation, the parties could have saved themselves, and the Court, a lot of time, money, and aggravation.

*Third*, having finally acknowledged that it had the Feasibility Study, Vale now wants to redact it for relevance. Vale proposes to filter the Feasibility Study through the documents Rio Tinto previously made a good faith effort to identify as constituting the stolen information, producing only

---

[3] Rio Tinto has rejected Vale's attempt to label these requests as "misappropriation requests" and to treat this case as a simple misappropriation case. This case is anything but a simple misappropriation case. It is a complex RICO case, chock full of substantiated allegations of lies, deceit, theft, fraud, and cover-up, of which Vale played a central role, particularly insofar as it both wrongfully took Rio Tinto's technical information and thereafter *used it* in connection with its conspiratorial conduct with other parties. Vale is therefore obligated to produce documents *both* reflecting what it stole from Rio Tinto's Data Room *and* how it subsequently used that information with its co-conspirators and third parties.

2

those parts of the Feasibility Study that corresponded to that material. This is wholly improper for a number of reasons. As an initial matter, redacting for relevance is disfavored in this Court. *See In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context"). These concerns are particularly true here. Vale cannot be, particularly not now after failing to disclose that it had a copy of the Feasibility Study at its fingertips, the final arbiter of relevance and decide on its own as an interested party what information therein is purportedly relevant to this case. *See e.g., Moore v. Kaye Ins. Associates*, 1995 WL 600244, at *3 (S.D.N.Y. Aug. 8, 1995); *Hyundai Merchant Marine v. U.S.*, 1991 WL 190563, at *2 (S.D.N.Y. Sept. 16, 1991) ("The relevance of particular documents is often not easy to determine in isolation and certainly cannot be unilaterally determined by the party opposing production."). Fed. R. Civ. P. 26(b)(1), in any event, is not so limited: Vale must produce any information that may *lead* to relevant evidence; certainly the Feasibility Study is likely to do that. For example, a comparison between Rio Tinto's Feasibility Study and Vale's Feasibility Study (in complete, unredacted form) may inform what information Vale stole and how it used that information. Indeed, Rio Tinto is entitled to take discovery concerning whether Vale and its co-conspirators stole and used more of its information to develop Simandou than what is reflected in the set of documents Rio Tinto has been able to identify so far. The Feasibility Study offers one efficient way to do that, at least in part. Additionally, Rio Tinto is entitled to explore how Defendants were able to develop their Feasibility Study and compile the information therein so quickly – an "unprecedented accomplishment," as they have put it. It is Rio Tinto's position that such an "unprecedented accomplishment" could not have occurred but for the information Vale stole from the Data Room.

Finally, to the extent Vale is ironically concerned that their Feasibility Study (from almost four years ago) contains commercially sensitive information that Rio Tinto should not be permitted to see portions of, Vale is free to designate those portions appropriately under the Protective Order in this case, which includes an "Highly Confidential – Attorneys' Eyes Only" provision.

The Feasibility Study is a readily-identifiable, discrete document that Vale has at its fingertips, primed for production. Accordingly, Rio Tinto respectfully requests that the Court compel Vale to produce its Simandou Feasibility Study in its entirety and without redactions by February 20, 2015.

Very truly yours,

/s/Michael Lyle
Michael Lyle

3