`      UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>                    Plaintiff,<br><br>         -against-<br><br>Vale S.A., Bejamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,<br><br>                    Defendants. | 14 Civ. 3042 (RMB)(AJP) |

## APPLICATION FOR THE ISSUANCE OF
## <u>INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)</u>

Defendant Vale S.A. ("Vale" or the "Applicant"), respectfully petitions this Court pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"), for the issuance of a Letter of Request in the form annexed hereto as Exhibit B, addressed to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, requesting that the Senior Master cause the Letter of Request to be served upon the designated recipients, who are representatives of BSG Resources Ltd.  In support thereof, the Applicant respectfully represents as follows:

### BACKGROUND

1.      On April 30, 2014, Rio Tinto plc ("Plaintiff" or "Rio Tinto") filed a complaint in this Court against Vale, BSG Resources Ltd. ("BSGR"), and the other named defendants (together, "Defendants") alleging, *inter alia*, that Vale and BSGR had conspired to take for

themselves Rio Tinto's iron ore mining rights to the Simandou area of the Republic of Guinea ("Guinea") in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Dkt. No. 2.)  Rio Tinto filed an amended complaint ("AC") with substantially similar allegations on August 15, 2014.  (Dkt. No. 83.)   Rio Tinto alleges that one of its competitors, BSGR, engaged in bribery to obtain Rio Tinto's rights to Blocks 1 and 2 in Simandou for itself in December 2008 and that another of its competitors, Vale, conspired with BSGR and assisted it in obtaining those rights in December 2008 by misappropriating confidential information from Rio Tinto and providing it to BSGR.  (AC ¶¶ 154, 174-180.)  Vale denies the allegations against it.

2.      On February 6, 2015, Defendants moved on various grounds to dismiss the claims respectively made against them, including in the case of BSGR for alleged lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Dkt. No. 180.)

3.      Notwithstanding BSGR's motion to dismiss on personal jurisdiction grounds, the Court has ordered that merits discovery proceed in this case for all Defendants, including BSGR. (Dkt. No. 163; Jan. 20, 2015 Hr'g Tr. 8:24-9:8.)  Vale has served requests for documents under the Federal Rules of Civil Procedure on BSGR seeking evidence relevant to the claims made by Rio Tinto and Vale's defenses to them.

4.      However, because the issue of personal jurisdiction over BSGR is presently unresolved, Magistrate Judge Andrew J. Peck has suggested that it may ultimately prove necessary to seek evidence from BSGR, which has its principal offices in London, under the Hague Evidence Convention.  (Jan. 13, 2015 Hr'g Tr. 17:16-18:20.)

5.      Accordingly, in the event that BSGR is dismissed for lack of jurisdiction or otherwise and Vale is not, Vale hereby requests that the Court issue a Letter of Request under the

Hague Convention in parallel to document production in the U.S., as suggested by Magistrate Judge Peck.  Under the Court's scheduling order, document productions by the parties must be substantially complete by June 30, 2015.  (Dkt. No. 163)  Given this tight timetable, and in light of the time necessary to obtain written evidence and witness testimony under the Hague Convention, Vale is making this application now so that the process of issuing the Letter of Request in this Court and enforcing them in the United Kingdom can be completed within the existing deadlines.  If BSGR complies with the Applicants' discovery requests under the Federal Rules of Civil Procedure, the Applicants will not need to pursue this Application.

## RELIEF REQUESTED

6.     Vale therefore requests that this Court issue an Order in the form attached hereto as Exhibit A:

(a)     Providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature;

(b)     Requiring that the Clerk of the District Court return the original, signed Letter of Request to Vale, so that said Letter of Request may be delivered to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, which is the domicile of the designated recipients from whom evidence is sought; and

(c)     Directing counsel for Vale to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom;

so that Vale may obtain for use at trial potential evidence material the claims and defenses at issue in the above-captioned litigation.

7.     The persons from whom evidence is sought by the Letter of Request are BSGR and the following directors (or shadow directors), officers, employees, representatives, agents, intermediaries and consultants (collectively "Representatives") of BSGR or its subsidiaries and affiliates, as well as Onyx Financial Advisors Limited ("Onyx"), which provides management services to BSGR:  Beny Steinmetz, Dag Cramer, Asher Avidan, Marcus Struik, David Clark, and Yossie Tchelet.  To the extent, if any, that materials in the possession or control of Onyx are not within the possession or control of BSGR, then this Letter of Request should be construed as being made separately to Onyx.

8.     BSGR and the individuals connected with it have knowledge of facts bearing on the central issues of this case, and the documents and testimony sought are material to Rio Tinto's claims and/or Vale's defenses.

9.     Vale has considered the requirements of the Courts of England and Wales in respect of letters of request, including the form in which the Letter of Request should be presented to the English Court and its permissible content.  It believes that this Letter of Request is consistent with these requirements, as contained in the UK Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules.  This Court is requested to issue this Letter of Request on this basis.

10.     Vale requests that after this Court has signed the Letter of Request, it be returned to Vale for forwarding to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process Section, Room E16).

WHEREFORE, Vale respectfully requests that the Court enter the attached form of order (i) providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature; (ii) directing that the Clerk of the District Court return the original, signed Letter of Request to counsel for Vale, so that said Letter of Request may be issued to the Competent Judicial Authority of the United Kingdom; (iii) directing counsel for Vale to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom; and (iv) granting such other relief as the Court deems just and proper.

Dated: New York, New York       CLEARY GOTTLIEB STEEN & HAMILTON LLP

        February 23, 2015

        _____
        Jonathan I. Blackman
        Lewis J. Liman
        Boaz S. Morag
        One Liberty Plaza
        New York, New York 10006
        Telephone: (212) 225 2000
        Facsimile: (212) 225 3999

        *Counsel for Vale, S.A.*

# EXHIBIT A

# (DRAFT ORDER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc, <br><br>                 Plaintiff, <br><br>       -against- <br><br> Vale S.A., Bejamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam, <br><br>                Defendants. | 14 Civ. 3042 (RMB)(AJP) |

## ORDER GRANTING APPLICATION FOR
## ISSUANCE OF INTERNATION LETTER OF REQUEST (LETTER ROGATORY)

Upon the Application for the Issuance of an International Letter of Request (Letter Rogatory) (the "Application") filed by Vale, S.A. ("Vale" or the "Applicant"), requesting the issuance of an international letter of request (the "Letter of Request") pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

This Court shall sign the Letter of Request attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature.

The Clerk of the District Court is directed to return the original, signed Letter of Request to counsel for Vale so that said Letter of Request may be issued to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom.

Vale is directed to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.

Dated: _____, 2015
      New York, New York

                    _____
                    THE HONORABLE RICHARD M. BERMAN
                    UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# (LETTER OF REQUEST)

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Richard M. Berman<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 17B<br>New York, New York 10007 |
| **2.** | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Richard M. Berman<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 17B<br>New York, New York 10007 |

**4.    Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | | |
|---|---|---|
| | **Date** | Examinations to occur as the parties may agree, but no later than November 30, 2015.  Document productions to occur as the parties may agree, but no later than June 30, 2015. |
| | **Reason for urgency** | Under the Court's Scheduling Order (Dkt. Nos. 161, 163), document productions must be substantially complete by June 30, 2015 and pretrial examination of fact witnesses must be complete by November 30, 2015. |

IN COMFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| **5.** | *a* **Requesting judicial authority (Article 3,a)** | The Honorable Richard M. Berman<br>United States District Court<br>Southern District of New York |

10

500 Pearl Street, Courtroom 17B
New York, New York 10007

**b  To the competent
authority of (Article 3,a)**

United Kingdom of Great Britain and Northern
Ireland

**6.  Names and addresses of the
Parties and their
representatives (including
representatives in the
requested State) (Article 3,b)**

**a  Plaintiff**

**Rio Tinto plc**

**Representatives**

William A. Burck
Michael J. Lyle
Eric C. Lyttle
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street NW, 11th Floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

**b  Defendants**

**Vale, S.A.**

**Representatives**

Jonathan I. Blackman
Lewis J. Liman
Boaz S. Morag
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000
Facsimile: (212) 225 3999

**BSG Resources Limited**

**Representatives**

Robert Gold
Vincent Filardo, Jr.
Elizabeth M. Rotenberg-Schwartz
Mishcon de Reya New York, LLP
750 Seventh Avenue
New York, New York 10019

Telephone: (212) 612 3270
Facsimile: (212) 612-3297

**Benjamin Steinmetz**

Representatives  Robert Gold
Vincent Filardo, Jr.
Elizabeth M. Rotenberg-Schwartz
Mishcon de Reya New York, LLP
750 Seventh Avenue
New York, New York 10019
Telephone: (212) 612 3270
Facsimile: (212) 612-3297

**BSG Resources Guinee SARL**
*also known as*
VBG-Vale BSGR Guinea

Representatives  Martin Joel Auerbach
Law Offices of Martin J. Auerbach, Esq
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Telephone: (212) 704 4347
Facsimile: (212) 3040175

**Mahmoud Thiam**

Representatives  Paul Eliot Summit
Sullivan & Worcester LLP (MA)
One Post Office Square
Boston, MA 02109
Telephone: (617) 210 8437
Facsimile: (617) 338 2880

**7. Nature of the proceedings and summary of claims (Article 3,c)**

7.1 This action, captioned <u>Rio Tinto v. Vale, S.A., et al.</u>, Case No. 14 Civ. 3042

(RMB)(AJP) (the "Action"), is a civil litigation proceeding pending before the Requesting Court

asserting, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO") by Vale, BSG Resources Limited, VBG – Vale BSGR Limited and BSG Resources

Guinée SARL, Frédéric Cilins, Mamadie Touré, and Mahmoud Thiam.  All of the defendants are

alleged to have been co-conspirators in a scheme to steal Rio Tinto's mining rights to Blocks 1 and 2 in the Simandou region of Guinea.  In this application, the term "BSGR" is used to refer to BSG Resources Limited as well as any of its subsidiaries, or its affiliates.  The term "Representative" is used to refer to directors (or shadow directors), officers, employees, representatives, agents, intermediaries and consultants.  The Relevant Period referred to below is January 1, 2004 to April 30, 2014.  Although not named as defendants, Rio Tinto's complaint has identified Avraham Lev Ran and Michael Noy as Representatives of BSGR, who are alleged to have been co-conspirators with the defendants.

7.2     Rio Tinto, headquartered in the United Kingdom, is one of the three largest mining companies in the world, operating globally and mining a wide variety of metals and minerals, including iron ore.

7.3     Vale, a Brazilian corporation, is another of the world's three largest mining companies and also mines iron ore among numerous other metals and minerals.

7.4     BSG Resources Limited is a Guernsey corporation that is principally engaged in mining operations in Africa and eastern Europe, but which also engages in power generation and oil and gas exploration and production.  The company is wholly owned by Nysco Management Corporation Limited, a company incorporated in the British Virgin Islands, which is in turn wholly owned by the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose beneficiaries are Benjamin ("Beny") Steinmetz, an Israeli businessman domiciled in Switzerland who ultimately controls BSGR, and members of his family.  BSG Resources Limited maintains an office in London.

7.5     In February 1997, the government of the West African nation of Guinea (the "Government of Guinea") awarded permits to Rio Tinto to explore an area of Guinea called

Simandou, which is known to be one of the most significant untapped iron ore deposits in the world.  Rio Tinto alleges that it spent the next nine years exploring and developing Simandou. In 2006, the Government of Guinea awarded Rio Tinto a "Concession" that consisted of mining rights to four "Blocks" or areas of Simandou:  Blocks 1, 2, 3, and 4.  Rio Tinto claims to have continued developing and investing in Simandou, including developing railway and port plans to transport iron ore from Simandou by rail to the coast of the Atlantic Ocean, either through Guinea or through the neighboring country of Liberia.

7.6     In 2008, Rio Tinto approached Vale to discuss the possible sale of assets from Rio Tinto to Vale or a possible joint venture between the companies.  In September 2008, Vale and Rio Tinto executed a Confidentiality Deed and in November 2008 Rio Tinto opened a data room so that Vale could review certain of Rio Tinto's documents related to the assets under discussion. After the Confidentiality Deed was signed and the data room opened, the two parties ultimately discussed the sale of Rio Tinto's rights to Simandou.

7.7     On December 4, 2008, the Government of Guinea withdrew half of the Rio Tinto Concession, which covered Blocks 1 and 2 of Simandou.  Notwithstanding this revocation, Rio Tinto and Vale continued to explore possible transactions.  Vale ultimately purchased iron and potash assets from Rio Tinto, but negotiations regarding Simandou were terminated by  Rio Tinto in June 2009.

7.8     On December 9, 2008, BSGR was granted a research permit for Simandou Blocks 1 and 2 following the Government of Guinea's withdrawal of Rio Tinto's Concession to those Blocks on December 4, 2008.

7.9     Over a year later, in February 2010, BSGR approached Vale about the possibility of partnering to develop its mining area in Blocks 1 and 2 of Simandou and the two parties began

negotiating a joint venture.  The negotiations culminated in the signing of a Framework

Agreement and Shareholders' Agreement, both dated April 30, 2010.  The Agreements both

included broad and detailed anti-bribery representations and warranties, on which Vale relied.

The joint venture was called "VBG."  Vale paid BSGR $500 million as an initial payment of the

$2.5 billion purchase price for its 51% stake in the venture.

   7.10  On October 30, 2012, VBG Guinea received notice that a Technical Committee

for the Review of Mining Titles and Agreements of the Government of the Republic of Guinea

(the "Technical Committee") had begun investigating how BSGR had obtained its mining rights

to Simandou.

   7.11  On information and belief, in or about January 2013, a U.S. federal Grand Jury

began a criminal investigation into allegations that BSGR violated the Foreign Corrupt Practices

Act ("FCPA") relating to BSGR's suspected bribes of Guinean officials in connection with

obtaining rights to Simandou.  The Federal Bureau of Investigation ("FBI") arrested BSGR's

alleged agent Frédéric Cilins on April 14, 2013 after recording several conversations between

him and a confidential informant, Mamadie Touré (the fourth wife of former Guinean President

Conté and a co-defendant in this action), that implicated him in offering bribes and attempting to

destroy documentary evidence of bribes paid by BSGR to obtain its mining rights in Guinea.

The U.S. Department of Justice ("DOJ") filed criminal charges against Cilins the next day.

Cilins pleaded guilty in 2014 to obstruction of justice and was sentenced to 24 months in prison

with three years of supervised release.  Cilins was released from prison on January 9, 2015.

   7.12  In April 2014, after concluding its investigation, the Government of Guinea

revoked VBG's rights to Simandou, having determined that BSGR had obtained its rights to

Blocks 1 and 2 of Simandou through corrupt acts, including bribery of Mamadie Touré and

efforts by Cilins to destroy evidence of such bribery by, *inter alia*, Cilins and Michael Noy seeking to induce Mamadie Touré to execute a false declaration in the U.S. Grand Jury proceeding.  The Technical Committee found that Vale had no involvement in this bribery scheme.  Vale instituted an arbitration proceeding against BSGR alleging, in part, that it was defrauded by BSGR.

7.13    Thereafter, on April 30, 2014, Rio Tinto filed a complaint against Vale, BSGR, and a number of other parties alleging, *inter alia*, that it lost its rights to Simandou Blocks 1 and 2 because of a conspiracy by Vale and BSGR in December 2008.  Rio Tinto alleged that, as a result of BSGR's alleged bribery and Vale's alleged disclosure of Rio Tinto's trade secrets to BSGR, BSGR was able to obtain Rio Tinto's rights to Simandou Blocks 1 and 2.  An Amended Complaint with substantially similar allegations was filed on August 15, 2014.

7.14    Rio Tinto claims that Vale used access to Rio Tinto's data room (*see supra* ¶ 7.6) to steal confidential information about Simandou and gave that information to BSGR for BSGR to use in obtaining Rio Tinto's rights, which BSGR obtained in December 2008.  Rio Tinto further claims that Vale met with Steinmetz, BSGR, and Mahmoud Thiam, then-Minister of Mines for Guinea and a co-defendant in this action, multiple times from January 2009 to June 2009 in furtherance of the conspiracy to obtain rights to Simandou.  Rio Tinto alleges that Steinmetz and BSGR paid bribes to Thiam to confirm their interest in Simandou Blocks 1 and 2. Rio Tinto alleges that BSGR and Vale formed a joint venture agreement with respect to Simandou Blocks 1 and 2 in April 2010.

7.15    In addition to the DOJ's and Technical Committee's investigations, BSGR is also under investigation by law enforcement agencies in Switzerland, France, and the United Kingdom in relation to its illicit activities in Guinea.  The Swiss authorities have received a

Letter of Request from the Conakry Court of First Instance, pursuant to which they have seized

documents at BSGR's management company, Onyx Financial Advisors Ltd. ("Onyx"), and

Steinmetz's home.  The Guernsey Financial Investigations United and the United Kingdom's

Serious Fraud Office (the "SFO") have also opened inquiries, including in serving Section 2

Notices on BSGR's current and past London counsel as well as Onyx.  BSGR has filed an

application for judicial review of the SFO Section 2 Notices in the Administrative Court Divison

of the English High Court of Justice.

      7.16    Vale denies each of the allegations made against it, any conspiracy with BSGR,

any involvement in BSGR's and Steinmetz's corrupt activities, and any misappropriation of

trade secrets.  In particular, Vale denies that it did or could have entered into a conspiracy with

BSGR in December 2008 when BSGR alone enjoyed the rights to Simandou Blocks 1 and 2,

after December 2008 sought other mining companies as partners with respect to these rights, and

did not agree to a joint venture with Vale until April 2010.  Rio Tinto's claims, as summarized

above, put at issue whether BSGR and Steinmetz engaged in a conspiracy with Vale, whether

BSGR and Steinmetz engaged in corruption or bribery, whether they obtained the mining rights

in which Vale subsequently invested by those means, and whether Vale had anything to do with

these activities, which it denies.  The evidence sought from the witnesses identified below, which

includes evidence of BSGR's discussions with mining companies other than Vale after BSGR

obtained the rights to Simandou Blocks 1 and 2 in December 2008 and before BSGR signed the

joint venture agreement with Vale in April 2010, of travels by BSGR to Guinea and meetings

with Guinean government officials, and of submissions made by BSGR and Steinmetz in the

official investigation described above are material to the resolution of these disputes.

8.      **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1     Rio Tinto's claims rest fundamentally on (1) BSGR's alleged  bribery and corruption and (2) the allegation that BSGR formed a conspiracy with Vale in December 2008 shortly before BSGR obtained the rights to Simandou Blocks 1 and 2 in December 2008. Documents reviewed by the Applicant and interviews conducted with individuals with knowledge of BSGR's structure and operations identify Beny Steinmetz, Dag Cramer, Asher Avidan, Marcus Struik, David Clark, and Yossie Tchelet  as among those Representatives of BSGR who were involved in BSGR's operations during the relevant time period and have knowledge of facts that bear on the issues of this case.

8.2     It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties you direct Beny Steinmetz, Dag Cramer, Asher Avidan, Marcus Struik, David Clark, and Yossie Tchelet (each a "Witness") to provide oral testimony for use at trial (if appropriate) to counsel for applicants subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witnesses' unique importance to the claims and defenses is described both above and in the subject matters as to which each is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from Beny Steinmetz, Dag Cramer, Asher Avidan, Marcus Struik, David Clark, and Yossie Tchelet is available only by an order of the High Court.

| | | |
|---|---|---|
| 9. | **Identity and address of any person to be examined (Article 3,e)** | Asher Avidan<br>Marcus Struik<br>David Clark<br>Yossie Tchelet<br>Beny Steinmetz<br>BSG Resources Limited<br>7 Old Park Lane, Mayfair<br>London W1K 1QR |

Dag Cramer
Onyx Financial Advisors UK Ltd
7 Old Park Lane, Mayfair
London W1K 1QR

10. **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that each Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of England and Wales, on the following subjects:

a.   Travel to Guinea by any Representative of BSGR in the Relevant Period;

b.   Discussions with Rio Tinto and/or the Government of Guinea about Rio Tinto's rights to Simandou Blocks 1 and 2 between January 1, 2005 and April 30, 2011;

c.   Communications with individuals allegedly involved in bribery (as described below);

d.   Anti-bribery representations made to Vale in the Framework and Shareholders Agreements entered into with Vale;

e.   Investigations of bribery or corruption related to Simandou by government entities, including the Government of Guinea, the Serious Fraud Office of the United Kingdom, the U.S. Department of Justice, France, or Switzerland;

f.   Payments, gifts, gratuities, or anything else of value paid by any BSGR Representative to any individual allegedly involved in bribery;

g.   BSGR's allegations of a conspiracy involving Rio Tinto, Global Witness, and George Soros and the purported lawsuit forthcoming in the High Court of London;

h.      BSGR's dealings and communication with Beny Steinmetz, Asher Avidan,  Marc Struik, Dag Cramer, Yossie Tchelet, Sandra Merloni-Horemans, Avraham Lev Ran, Frédéric Cilins, Roy Oron and Michael Noy;

i.      Knowledge about Cilins' activities and contacts;

j.      The establishment of Pentler Holdings Ltd.;[1]

k.      The U.S. Department of Justice's investigation of Cilins;

l.      Rio Tinto's alleged misinformation campaign against BSGR and/or Steinmetz;[2]

m.      Alleged blackmail of BSGR by third parties in relation to BSGR's activities in Guinea;[3]

n.      Alleged efforts by third parties to collude with the Government of Guinea to strip BSGR of its rights to Simandou, including alleged election rigging in South Africa;

o.      BSGR's approach to Vale to commence negotiations that led to their Guinean joint venture;

p.      BSGR's discussions and negotiations of a potential joint venture or partnership regarding Simandou with other entities other than Vale, including Arcelor-Mittal, Chinalco, and others, prior to April 30, 2010.

11.     **Documents or other property to be inspected (Article 3,g)**

It is requested that BSGR be required to produce the specified documents described herein as are believed to exist in its power, possession or control.  Such documents are necessary

---

[1] The Technical Committee found that Pentler Holdings Ltd. was the entity established by BSGR to pay bribes to persons in Guinea.

[2] BSGR has alleged that the bribery allegations against it are the result of such a campaign.

[3] BSGR has alleged that the allegations against it are the result of such attempts.

for the purposes of justice and for the due determination of the matters in dispute between the
parties.

    a.  The emails, letters and other documents and communications held on the BSGR IT
system or in other locations within the possession custody or power of BSGR,
exchanged between BSGR Representatives and ArcelorMittal Representatives and
between BSGR Representatives and Chinalco Representatives, regarding a potential
joint venture, partnership, or similar investment in Simandou Blocks 1 and 2, between
January 1, 2008 and April 30, 2010.

    b.  The flight logs and passenger details for BSGR's private aircraft Challenger 601,
registration VP-CBS, from 2005 to 2014 referred to in the First Witness Statement of
Dag Lars Cramer dated November 25, 2014 in the claim BSG Resources Limited v.
The Director of the Serious Fraud Office and The Secretary of State for the Home
Department dated November 26, 2014, Claim No. CO/5477/2014.

    c.  Copies of the passports or equivalent identity documentation, including diplomatic
passports, of Beny Steinmetz, Asher Avidan,  Marc Struik, Dag Cramer, Yossie
Tchelet, Sandra Merloni-Horemans, Avraham Lev Ran, Frédéric Cilins, Roy Oron
and Michael Noy for the Relevant Period.

    d.  The itineraries, records and receipts retained by BSGR in relation to travel to Guinea
in the Relevant Period by BSGR Representatives.

    e.  The documents annexed to or used in preparation of  BSGR's "Overview of BSGR's
Iron Ore Investment in Guinea: Chronicle of Events 2006-2012," which it submitted
to the Technical Committee in February 2012;

f.  The contract between Pentler Holdings and Ismaila Daou dated 20 February 2006 as referred to by Global Witness in "FBI surveillance implicates diamond billionaire in plan to subvert US fraud probe," dated 9 April 2014, p. 4;[4]

g.  The letter from Aboubacar Bah to BSGR demanding payment under the Memorandum of Understanding signed by Aboubacar Bah, Ibrahima Sory Touré, Pentler Holdings, Ltd., dated 20 February 2006;

h.  The letters, emails and attachments sent between Mamadie Touré and Frédéric Cilins exchanging versions of a declaration between 27 April 2012 and 5 May 2012;

i.  The letters, emails and attachments from Michael Noy to Frédéric Cilins with edits to the draft of proposed attestation by Mamadie Touré;

j.  The boxes of hard copy material referred to at paragraph 65 of the First Witness Statement of James Lewis Libson in the claim BSG Resources Limited v. The Director of the Serious Fraud Office and The Secretary of State for the Home Department dated November 26, 2014; Claim No. CO/5477/2014 (the "James Libson Witness Statement");

k.  The server containing around 180,000 documents (approximately 30GB of data) to which Mishcon de Reya and Onyx have access, as referred to in the Legal Business article "*180,000 documents: Mishcon brings Israeli billionaire's judicial review against SFO and Theresa May*" dated 16 December 2014[5] and at paragraph 66 of the James Libson Witness Statement.

---

[4] Available at http://www.globalwitness.org/sites/default/files/library/GW%20BSGR%20report%20-%2009.04.14.pdf

[5] Available at http://www.legalbusiness.co.uk/index.php/lb-blog-view/3393-180-000-documents-mishcon-brings-israeli-billionaire-s-judicial-review-against-sfo-and-theresa-may#sthash.ISnmduNQ.dpuf

l.  The materials collated or marked for preservation by a litigation hold by BSGR for the purposes of its internal corruption investigation undertaken by Joe Lieberman and Louis Freeh in to the affairs of BSGR, requested by the SFO pursuant to three Section 2 Notices dated 25 July 2014 and three Amended Section 2 Notices dated 7 October 2014.

m.  *Gifts to Representatives of the Government of Guinea by BSGR or its Representatives*

   i.  The invoice, the receipt and the manufacturing details relating to the gift of pharmaceuticals to Henriette Conté Foundation in 2004-2005 by Frédéric Cilins.

   ii.  The invoice, the receipt and the manufacturing details relating to the gift of a diamond-covered gold watch to President Conté by Roy Oron.

   iii.  The invoice, the receipt and the manufacturing details relating to the gift of a model diamond-covered Formula 1 race car to the Minister of Mines by Roy Oron.

   iv.  The invoice, the receipt and the manufacturing details relating to the gift of model diamond-covered Formula 1 race car to President Conté by Beny Steinmetz.

n. *Cash payments to Representatives of the Government of Guinea by BSGR or its Representatives*

    i. The cashier's receipt[6] for the withdrawal of $200,000 in cash subsequently placed in a bag delivered by Ibrahima Sory Touré to Mamadie Touré on behalf of BSGR in 2006.

    ii. The cashier's receipt for the withdrawal $1 million in cash delivered by Asher Avidan to Mamadie Touré in the BSGR offices in 2008.

    iii. The cashier's receipt for the withdrawal of $5,000 given to Mamadie Touré in an envelope by Asher Avidan and Issiaga Bangoura on behalf of BSGR after the death of Lansana Conté in December 2008.

    iv. The cashier's receipt for the withdrawal of $50,000 delivered by a BSGR Representative sent by Asher Avidan to Mamadie Touré in early 2009.

    v. The cashier's receipt for the withdrawal of $1 million in cash paid by BSGR representatives to Mamadie Touré in 2009 as described in Mamadie Touré Decl. ¶ 64.

o. *Bank Transfers to Representatives of the Government of Guinea by BSGR or its Representatives*

    i. The bank account statement reflecting a payment of $998,000 from Ghassan Boutrous' account at Rockel Commercial Bank to Mamadie Touré on behalf of BSGR on September 3, 2009.

---

[6] For the avoidance of doubt, all references herein to "cashier's receipt" or to "bank account statement" should be taken to encompass any such equivalent document if the same is referred to or known by a different term.

ii.  The bank account statement reflecting a payment of $2,000 from Ghassan Boutrous' account at Rockel Commercial Bank to Mamadie Touré on behalf of BSGR on September 3, 2009.

iii.  The bank account statement and the check receipt reflecting a payment of $100,000 by check from Michael Noy to Mamadie Touré, dated July 21, 2010, from his Bank of Wachovia account on behalf of BSGR.

iv.  The bank account statement reflecting a payment of $149,970 by wire transfer from account in the name of Lev Ran at Bank Leumi to Mamadie Touré's Wells Fargo account, dated July 21, 2010.

v.  The bank account statement and the check receipt reflecting a payment of $100,000 by check issued from Wells Fargo Bank payable from Frédéric Cilins to Mamadie Touré dated  July 27, 2010.

vi.  The bank account statement and the check receipt reflecting a payment of a $50,000 by check issued from Wells Fargo Bank payable from Frédéric Cilins to Mamadie Touré dated August 5, 2010.

vii.  The bank account statement reflecting a payment of $99,970 by wire transfer from Lev Ran's Bank Leumi account to Mamadie Touré's Wells Fargo account dated  August 5, 2010.

viii.  The bank account statement reflecting a payment of $500,000 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on October 11, 2011.

ix. The bank account statement reflecting a payment of $250,000 by Olympia Title Insurance to Mamadie Touré 's BGMP account on 11 January 2012.

x. The bank account statement reflecting a payment of $150,000 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on 11 January 2012.

xi. The bank account statement reflecting a payment of $936,451 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on 14 May 2012.

xii. The wire transfers and records of gifts evidencing payments, gifts, gratuities, or anything else of value, including the origin and destination of wire transfers, cash payments and any other payments, made by any BSGR Representative to (a) Frédéric Cilins, (c) Michael Noy; (d) Ibrahima Touré; (e) Mamadie Touré; (f) Moussa Dadis Camara; (g) Lonsana Conté; (h) Pentler Holdings; (i) Matinda and Co. Limited; (j) any Representative of the Government of Guinea, its departments; agencies, or instrumentalities.

p. The letters and other documents and communications produced by BSGR to:

i. the Government of Guinea (and the Technical Committee) from October 30, 2012 through the date of production,

ii. the United Kingdom's Serious Fraud Office between September 1, 2013 through the date of production,

    iii.  the U.S.'s Department of Justice between April 15, 2013 through the date of production,

    iv.  the public authorities of France between August 13, 2013 through the date of production,

    v.  the public authorities of Switzerland, including the Public Prosecutor's Office of the Canton of Geneva, between August 13, 2013 through the date of production, regarding their investigations of any alleged bribery or corruption in relation to obtaining mining rights at Simandou.

q.  The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the possession custody or power of BSGR which are responsive to any of the following keyword searches, for the Relevant Period:

    i.  Frédéric Cilins,

    ii.  Roy Oron,

    iii.  Ibrahima Soure Touré OR Toure,

    iv.  Mamadie Touré,

    v.  Mahmoud Thiam,

    vi.  Moussa Dadis Camara,

    vii.  Lansana Conté OR Conte,

    viii.  Beny Steinmetz,

    ix.  Asher Avidan,

    x.  Dag Cramer,

    xi.  Onyx Financial Advisors,

    xii.  David Clark,

    xiii.  Sandra Merloni-Horemans,

    xiv.  Ismaila Daou,

    xv.  Kassory Fofana,

    xvi.  Adam Schiffman,

    xvii.  William J. Schwartz,

    xviii.  Ghassan Boutrous,

    xix.  Pentler Holdings,

    xx.  Matinda and Co. Limited,

    xxi.  Cooley LLP.

r.  The following formal documents of Pentler Holdings Ltd:

    i.  Memorandum of Association,

    ii.  Register of Members,

    iii.  Register of Mortgages and Charges,

    iv.  Incorporation Certificate,

    v.  Articles of Association,

    vi.  Register of Directors,

    vii.  The Minutes and Resolutions including the First Minutes and Resolutions,

    viii.  Pentler's certificate of authorized capital stamped by Margali Management,

     ix.  The Letter from BSGR to Pentler dated 13 February 2006 attesting that Onyx holds 88250 shares in BSG Resources Guinea equivalent to 17.65% on behalf of Pentler Holdings, subject to the execution of the contract between BSG Resources (Guinea) Limited and the Government of Guinea regarding the mining exploration of iron ore and bauxite in Guinea,

     x.  The Power of Attorney dated 13 February 2006 authorizing Avraham Lev Ran to act on behalf of Pentler Holdings Ltd signed by Sandra Merloni-Horemans.

s.  The File of Correspondence provided to the court in the claim BSG Resources Limited v. The Director of the Serious Fraud Office and The Secretary of State for the Home Department dated November 26, 2014; Claim No. CO/5477/2014.

t.  The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the or in other locations within the possession custody or power of BSGR, between BSGR Representatives regarding BSGR's representations and warranties in relation to the Framework and Shareholders Agreements entered into with Vale, from July 1, 2009 until April 30, 2010.

u.  The emails, letters, invoices from, and other documents and communications with, and transfer details of or payments made to Cooley LLP, its employees, agents, attorneys, and representatives in connection with its representation of Cilins, made on or behalf of BSGR from April 1, 2013 through the date of production.

v.   The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the possession custody or power of BSGR which concern:

       i.   Cilins's activities in Guinea on BSGR's behalf;

      ii.   Cilins's activities in the United States;

    iii.   Agreements between Cilins and BSGR;

    iv.   Payments from BSGR to Cilins or on his behalf;

      v.   Cilins's contacts with Roy Oron, Ibrahima Touré, Mamadie Touré, Mahmoud Thiam, Moussa Dadis Camara, Lansana Conté, Pentler Holdings, Matinda and Co. Limited, and/or any Representative of the Government of Guinea, its departments, agencies, or instrumentalities;

    vi.   Payments made by Cilins to any Representative of the Government of Guinea, its departments, agencies, or instrumentalities.

w.   The documents supporting BSGR's allegations that rumors of any wrongdoing by BSGR and/or Steinmetz were the result of a misinformation campaign by Rio Tinto.

x.   The documents supporting BSGR's allegations that third parties have attempted to blackmail it in relation to its activities in Guinea.

y.   The documents supporting BSGR's allegations that third parties have colluded with the Guinean Government to strip it of the Simandou concession, including but not limited to its allegations that South African third parties were involved in election-rigging.

z.   The letters and other documents and communications filed by BSGR with the court in a lawsuit being brought in the High Court of London against Rio Tinto, George Soros and Global Witness relating to Simandou, as reported on June 1, 2014 by *The Sunday Times.*

12.   **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, each Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13.   **Special methods or procedure to be followed (Article 3,i and 9)**

13.1   The Requesting Court further requests that Jonathan Blackman, Lewis Liman, and Jonathan Kelly, who are representatives of Vale, or such other persons later designated by Vale, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witnesses on the subjects identified above and elicit their sworn testimony.

13.2   Pursuant to Article 9 of the Convention, it is requested that the legal representatives of Vale be permitted to conduct the examination of each Witness in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

13.3     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4     The Requesting Court respectfully requests that the representatives of Vale be allotted a total of five hours for each of their examinations.  Counsel for these parties will consult with each of the Witness' legal representatives in order to determine a mutually convenient date to conduct the examination on or before November 30, 2015, as approved by you.

13.5     The Requesting Court also respectfully requests that the questions and the responses of each Witness be recorded verbatim and that each Witness sign the verbatim transcript.  The verbatim transcript of each Witness' responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of each Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall

Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7    The appearance of each Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.    **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)**[7]

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

15.    **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

---

[7] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by Vale to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicant to accept service of any proceedings in England and Wales.

16. **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

Each Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or the United Kingdom, or would disclose a privileged communication.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of each Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by Vale.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                    ………………………………….


SIGNATURE AND SEAL OF         ………………………………….
THE REQUESTING AUTHORITY