**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

February 23, 2015

Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

**Re:**   *Rio Tinto v. Vale et al*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      Plaintiff Rio Tinto respectfully asks this Court to hold a pre-motion conference concerning Defendants BSGR's and Steinmetz's (together, "BSGR") refusal to participate in merits discovery pursuant to the Federal Rules.[1] On February 13, after sitting on Rio Tinto's requested discovery for almost a year, BSGR told Rio Tinto that it will *not* respond to that discovery (including interrogatories that simply ask for the identification of knowledgeable witnesses). Instead, BSGR will only *consider* responding to Rio Tinto's discovery if it is separately served through the onerous and sluggish Hague Convention ("Convention"). In support, BSGR professes confusion over whether Judge Berman has ordered it to participate in merits discovery per the Federal Rules.[2] But there is and can be no confusion, as BSGR itself recently wrote this Court: "[O]ur clients must now either immediately participate in merits-based discovery, or risk non-compliance with the June 30, 2015 deadline." Dkt. No. 174, at 3. BSGR is out of time and must participate in merits discovery pursuant to the Federal Rules without further delay or else the current schedule will not hold.

      BSGR's pending challenge to personal jurisdiction does not change this result, particularly where, as here, merits discovery is intertwined with personal jurisdiction discovery. Another court in this district in fact has ordered a foreign entity to proceed with discovery under the Federal Rules in a strikingly similar circumstance when that foreign entity was contesting personal jurisdiction. *See Chevron Corp. v. Donziger*, 296 F.R.D. 168, 198-201 (S.D.N.Y. 2013). In *Chevron*, the plaintiff brought a RICO suit against a New York attorney and his Ecuadorian clients seeking to set aside a foreign judgment that was allegedly procured through bribery and fraud. *Id*. at 176-78. The

---

[1] At the February 6, 2015 conference, the Court requested that, if BSGR took the position that discovery must proceed through the Hague Convention, BSGR should brief it. 2/6/15 Hr'g 7:2-20. Because BSGR has not done that, Rio Tinto now submits this letter brief in order to keep things moving along.

[2] Tellingly, BSGR made no attempt to clarify Judge Berman's order when he affirmed from the bench that *all* discovery was to proceed immediately for *all* defendants, even those that intended to file a motion to dismiss. 1/20/15 Hr'g 8:24-9:9.

Ecuadorian defendants moved to dismiss the suit for lack of personal jurisdiction, arguing that (i) retaining a New York attorney in connection with their foreign case and (ii) directing his actions in connection therewith were not enough to confer jurisdiction under New York's long-arm statute via principles of agency. *Id*. at 199-201. The court deferred ruling on the motion to dismiss because it found that the factual issues presented by the jurisdictional challenge – *e.g.*, the extent to which the Ecuadorian defendants authorized or ratified their New York-based attorney's activities – were inherently "intertwined with the merits." *Id*. at 199-200. The court concluded full discovery was necessary to resolve the motion and invited the defendants to renew their petition after the close of fact discovery. *Id*. at 199-200. Discovery then proceeded under the Federal Rules.[3] *Id*. at 200-01. The same result should obtain here. There is no clean separation of merits and jurisdictional discovery as it relates to BSGR. Whether, and the extent to which, BSGR authorized or ratified its co-Defendants' activities in New York and the United States apply equally to the Court's jurisdiction over BSGR and its culpability alike.

Indeed, personal jurisdiction (or the alleged lack of it) has no bearing on the core holding of *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522 (1987) (hereinafter, "*Aérospatiale* ") and its progeny. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 302 (3d Cir. 2004) ("We disagree, however, that the *Aérospatiale* holding is dependent on personal jurisdiction.); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 49-50 (D.D.C. 2000) (accord). When a litigant like BSGR appears in court to challenge that court's jurisdiction under the Federal Rules, it agrees to be bound by that court's authority until that court concludes that it does (or does not) have proper jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706-07 (1982). Accordingly, as the Third Circuit has held, any attempt to parse the comity analysis to draw a distinction between "merits" discovery and "jurisdictional" discovery is "predicated on a false dichotomy of having and not having jurisdiction." *In re Auto. Refinishing*, 358 F.3d at 303. By appearing here to challenge jurisdiction, BSGR accepts that this Court has the inherent discretion and authority to order it to proceed with *any* type of discovery, at *any* time, and under *any* method, including the Federal Rules. *See id*.

BSGR therefore has now turned to the Convention to achieve what it knows will amount to a *de facto* stay. Discovery through the Convention is, in practice, riddled with uncertainty and delay.[4] *See Aérospatiale*, 482 U.S. at 542-43. And it is well settled that the Convention is *not* the exclusive mechanism for obtaining discovery from a foreign entity, and litigants are never required to first

---

[3] Other cases have held the same. *See Hollins v. United States Tennis Ass'n*, 469 F. Supp. 2d 67, 78-79 (E.D.N.Y. 2006) (declining to stay merits depositions while a challenge to personal jurisdiction was pending); *Opticon Inc. v. Zazzu*, 1995 WL 67656, at *1 (S.D.N.Y. Feb. 17, 1995) (deferring decision on pending motion to dismiss for lack of personal jurisdiction until fact discovery was complete); *cf. Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013) (in "the unusual situation in which the jurisdictional dispute is interwoven with the underlying merits" such that a decision on a jurisdictional issue requires ruling on the merits, a court should defer its decision on the jurisdictional question until trial).

[4] Rio Tinto would need to submit separate Letters of Request on BSGR, for documents and depositions, to at least Switzerland, France, South Africa, the United Kingdom, and the Channel Islands. Processing those Letters of Request will take no less than two months (best case in France but more likely six months) and up to twelve months (in the U.K.). Those timelines of course omit that certain countries – Switzerland and the U.K. – are hesitant to permit pre-trial discovery, and all countries will permit BSGR to object and oppose any such Letter of Request, something they surely will do.

2

pursue discovery under the Convention before serving discovery under the Federal Rules. *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998). For these reasons, courts in this jurisdiction do not simply acquiesce to a foreign entity's attempt to stave off discovery under the Federal Rules. BSGR must instead make a compelling showing that, on balance, the principles of comity require merits discovery to proceed under the Convention rather than the Federal Rules – a showing it has not even attempted to make.

Nor could BSGR make such a showing even if it tried. Courts apply four principal factors to determine whether discovery of a foreign party should proceed under the Federal Rules versus the Convention: (1) the competing interests of U.S. law and foreign law; (2) the burden imposed by compliance with discovery; (3) the importance of the information sought to the litigation; and (4) the good faith of the party resisting discovery. *First Am. Corp.*, 154 F.3d at 22. Considered here, these factors prohibit BSGR's end run around Judge Berman's order.

***The United States Has The Greatest Interest***. This factor has already been considered in this case. Last year, BSGR moved to dismiss this case for *forum non conveniens*. Dkt No. 84. According to BSGR, England was a far better forum for, and with far more interest in, this case than the United States. In rejecting that argument, Judge Berman specifically noted that this case alleges "at least three *significant* connections between Rio Tinto's claims and this district, including (1) the New York City meetings between Vale and Rio Tinto, which allegedly occurred on November 19 and 24, 2008, December 21-22, 2008, January 15-16 and 28-29, 2009 and February 4, 2009; (2) the pendency of a federal criminal investigation in this district relating to the subject matter of this action, namely BSGR's obtaining of Rio Tinto's mining rights to Blocks 1 and 2 of Simandou; and (3) Defendant Thiam's use of alleged bribe payments to purchase a home in Dutchess County, New York." Dkt No. 143, at 30 (emphasis added; internal citations omitted).

Indeed, throughout their multi-year conspiracy to defraud Rio Tinto and steal Rio Tinto's rights to the Simandou Concession, BSGR and its co-conspirators acted with callous disregard for the laws of the United States. They stole Rio Tinto's proprietary information during meetings in New York, and attempted to cover-up their illicit dealings through bribery and the destruction of evidence in the United States. Their deeds did not go unnoticed, nor unpunished. Federal investigation into these violations of U.S. law remains ongoing, and it has already yielded a guilty plea from Defendant Cilins for his role in the conspiracy. After subjecting itself to U.S. laws by participating in a criminal enterprise within U.S. borders, BSGR cannot now use the Convention as a shield to block turning over documents that would shed light on their culpability in this case.

Against the backdrop of these considerations, the competing interests of the other jurisdictions affected by Rio Tinto's discovery requests are insignificant. Other than passing references to foreign blocking statutes in its futile attempts to stay discovery, *see, e.g.*, Dkt. No. 174 at 4, BSGR has made no effort to articulate a compelling foreign interest that is threatened by Rio Tinto's discovery requests. But blocking statutes are not enough. *See Aérospatiale*, 482 U.S. at 544 n. 29 ("American courts are not required to adhere blindly to the directives of such a statute."). Even in cases where a foreign government has defended its blocking statute in a submission to the court, courts have nonetheless ordered discovery under the Federal Rules. *See Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429 (E.D.N.Y. 2010); *Bodner v. Paribas*, 202 F.R.D. 370 (E.D.N.Y. 2000). Moreover, in cases where blocking statutes and Convention procedures will not offer a meaningful opportunity to pursue the full discovery available under the Federal Rules, courts have rejected

attempts to make discovery proceed under the Convention. *First Am.* 154 F.2d at 23; *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 557-58 (S.D.N.Y. 2012); *Haynes v. Kleinwefers*, 119 F.R.D. 335, 338 (E.D.N.Y. 1988); *cf. Aérospatiale*, 482 U.S. at 542-43 (discouraging use of Convention procedures in cases where they would be "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules."). BSGR's request should meet the same fate here, for the same reasons.

***There Is No Undue Burden To BSGR***. BSGR cannot claim Rio Tinto's requests are unduly burdensome. BSGR has already completed most of the leg work to put itself in a position to produce documents in the near future. It has mapped its company's data, knowing precisely how much there is and where it is located. It has already collected and processed ESI from a number of its principal custodians. And it has already tested a host of search terms against that data. *See* Dkt No. 174, at 3. BSGR is therefore already well on its way to having a significant set of data ready for review and production. Were BSGR to continue down that path, it could easily meet the parties' June 30, 2015 deadline. Moreover, as a general rule, courts are more sensitive to discovery burdens that may be imposed on non-parties through discovery under the Federal Rules. *Strauss*, 249 F.R.D. at 454. As a named defendant in this action, BSGR's perceived burden of responding to discovery should be afforded little weight. Rio Tinto is also willing to work with BSGR to resolve any purported burden concerns it might have. And even then, this Court is in a position to resolve any persisting disputes that the parties cannot otherwise work out between themselves.

***BSGR Is Critical And So Are Its Documents.*** Rio Tinto's discovery seeks highly relevant information from BSGR that includes information concerning (1) the Vale-BSGR transaction and Rio Tinto's mining concession in Guinea; (2) BSGR's interest in Simandou and its efforts to acquire Simandou; (3) communications between BSGR and its co-conspirators; (4) payments BSGR made to co-conspirators and foreign officials; and (5) BSGR's use of Rio Tinto's data and information to develop Simandou. BSGR does not dispute that it has unique information, unique documents, and employees with unique knowledge of these categories of information. Nor does it dispute that this discovery is both relevant and vital to the resolution of Rio Tinto's claims. That is all that is required to pass muster in this inquiry. *See Strauss* 249 F.R.D. at 441 (finding that the scope of discovery did not weigh in favor of Convention procedures where the information sought was necessary to establish liability); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 53 (E.D.N.Y. 2010) (scope of request was proper where all documents requested fell within the scope of relevant discovery); *Compaigne Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 32 n.8 (S.D.N.Y. 1984) (accord).

***BSGR's Delay Tactics Should Not Be Rewarded***. BSGR has tried everything to stall discovery in this case. It convinced the Court to bifurcate early motions practice and has twice unsuccessfully moved to stay merits discovery. It also unsuccessfully attempted to qualify case deadlines – *i.e.*, the date by which it must substantially complete its production – by carving out an exception to those deadlines depending on the outcome of its pending 12(b)(2) motion.

BSGR's deleterious conduct throughout the limited discovery it has participated in also weighs heavily in favor of this Court denying its attempt to invoke the Convention over the Federal Rules. For example, it is not even clear that BSGR has completed the limited jurisdictional discovery that this Court ordered. The Court ordered BSGR to search the custodial files of its key executives for documents and communications that referenced Frederic Cilins, BSGR's known agent

and co-conspirator that was jailed in New York for his role in the RICO scheme at issue in this case. Although BSGR contests that Frederic Cilins is its agent or affiliate, BSGR's key executives had thousands of documents apparently implicating Cilins in some fashion. Yet BSGR produced only *nine* of these documents, claiming that *everything else* was non-responsive or privileged. That claim is simply not credible. It defies reason and common sense that BSGR would have so many documents implicating Cilins if, as BSGR purports, it has no idea who he is nor cares what he is up to. BSGR cannot, on the one hand, deny that Frederic Cilins was its agent or co-consipirator, and then, on the other hand, withhold documents that stand to undermine that claim. On its face, BSGR's meager response to jurisdictional discovery is far from complete. *See Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 528-29 (S.D.N.Y. 1987); *Strauss*, 249 F.R.D. at 456 ("Bad faith delays and dilatory tactics will weigh against the objecting party.") Here, BSGR's obstructionist behavior weighs heavily in favor of discovery continuing under the Federal Rules.

To avoid any further prejudice from BSGR's refusal to participate in discovery, Rio Tinto respectfully requests that the Court enforce Judge Berman's order and require BSGR to (1) substantively respond to Rio Tinto's written discovery by February 27, 2015; and (2) begin producing documents by March 6, 2015.

Respectfully submitted,


/s/ Michael J. Lyle
Michael J. Lyle