**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

February 24, 2015

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Plaintiff Rio Tinto plc ("Plaintiff") and Defendants VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, and BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR (together, "VBG Defendants"), Benjamin Steinmetz, BSG Resources Limited ("BSGR"), Vale S.A. ("Vale"), and Mahmoud Thiam write jointly to update the Court on the status of various discovery issues in advance of our February 27, 2015 hearing.

Since the February 6, 2015 hearing before Your Honor ("Hearing"), the parties have continued to meet and confer on a regular basis, both through telephonic meet and confers and written correspondence. Plaintiff Rio Tinto and Defendant Vale also refined the proposed predictive coding protocol, which was submitted to the Court for review on February 13, 2015 (Dkt. No. 181). Below is a proposed agenda for the status conference, with a short explanation from the relevant parties on each dispute.

**I.   DISCOVERY FROM DEFENDANT THIAM**

In accordance with the Court's Order, Defendant Thiam provided all responsive, otherwise non-privileged documents previously withheld as privileged to counsel for the Government of Guinea on February 13, 2015. Counsel for Mr. Thiam has not heard back from the Guinean Government with respect to its review of those documents, despite the Guinean

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Government's previous representations that it would be able to do so within one week. Counsel for Mr. Thiam has agreed to follow up with counsel for the Guinean government to find out when they can expect the Guinean government's response. The parties hope to be able to provide the Court with further details regarding the Guinean Government's position and any potential document production by Friday's hearing.

While there are a few other areas of disagreement regarding Mr. Thiam's confidentiality designations for certain documents, the parties are continuing with the meet and confer process in an attempt to resolve those issues. To the extent they are not resolved, they will be brought to the Court's attention before the next conference.

## II.    DISCOVERY FROM DEFENDANTS BSGR AND STEINMETZ

### A.    Plaintiff's Position

***BSGR's Refusal To Participate In Discovery Per The Federal Rules.*** Rio Tinto has submitted a separate letter requesting a pre-motion conference over Defendants BSGR's and Steinmetz's refusal to participate in merits discovery under the Federal Rules. Rio Tinto incorporates that letter herein by reference.

***BSGR's and Steinmetz's Document Production.*** On January 16, 2015, Defendants Steinmetz and BSGR produced just *nine documents* (two unique emails and seven replicates) in response to Rio Tinto's jurisdictional discovery requests. That entire production, which BSGR and Steinmetz purport to represent as "complete," spans just thirty-three pages. But such a trivial production raises serious concerns over how BSGR and Steinmetz evaluated documents for responsiveness, especially since they admit to having *thousands* of documents in their possession that implicate Defendant Frederic Cilins in some form or fashion.[1] BSGR and Steinmetz have refused to disclose exactly how many documents hit the search terms Fred* and/or Cilins*.[2] But based on a recent letter from BSGR and Steinmetz, that number appears that it could be as high as five thousand documents.

Rio Tinto wrote BSGR last week asking for (1) a search report, identifying hit counts separately for each custodian and each search term; (2) a general description of the types of documents and their content that hit on the search terms; and (most importantly) (3) an explanation of how documents were evaluated for responsiveness. BSGR and Steinmetz refused

---

[1] As ordered by this Court, BSGR and Steinmetz ran the search terms Fred* and Cilins* against the files of twelve high-level custodians, including Mr. Steinmetz himself, over three time periods: July 1, 2010 – August 31, 2010; March 1, 2012 – July 1, 2012, and February 1, 2013 – June 1, 2013.

[2] Rio Tinto reserves its rights with respect to discovery relating to the activities of BSGR's and Steinmetz's co-conspirators (including Vale, Mr. Thiam, and Mamadie Toure) in New York and the United States for purposes of establishing personal jurisdiction. This letter, however, is limited to discovery about Mr. Cilins because that is the nature of the current dispute among Steinmetz, BSGR and Rio Tinto.

2

to provide this information in responses. Instead, they simply stated that their production was complete and added the following carefully-worded pledge: "We have not withheld any non-privileged responsive documents concerning jurisdictional issues and Cilins." Notably absent from BSGR's and Steinmetz's letter, however, was any denial that Mr. Steinmetz and/or key executives at BSGR, *e.g.*, (i) had any direct communication with Cilins himself; (ii) had direct communications between themselves concerning Cilins; (iii) had communications with third parties concerning Cilins; (iv) had documents in their possession concerning or referencing Cilins' conduct and/or activity in the United States; (v) had documents referencing Cilins' illegal acts that landed him in jail; or (vi) had documents concerning any payment to Cilins. BSGR's and Steinmetz's carefully-worded response, devoid of any information that would illuminate how they evaluated documents for responsiveness, only further serves to sound the alarm.

Rio Tinto strongly suspects that BSGR and Steinmetz applied unreasonably narrow criteria in determining which of the thousands of documents hitting on Fred* or Cilins* were responsive. On one hand, BSGR and Steinmetz maintain that Cilins has never been affiliated with either of them in any way, yet on the other hand, they have withheld potentially thousands of documents containing reference to Cilins himself. They cannot have it both ways. BSGR and Steinmetz have placed their relationship with Cilins squarely at issue. Any documents in their possession – *let alone thousands* – that concern Cilins stand to undermine their claim that he has never been affiliated with them. Even a document with passing reference to Cilins could shine relevant, important light on the nature of the relationship between Cilins and either Defendant.

At minimum, therefore, BSGR and Steinmetz owes Rio Tinto (1) a search report, identifying hit counts separately for each custodian and each search term; (2) a general description of the types of documents and their content that hit on the search terms; and (3) an explanation of how documents were evaluated for responsiveness. Alternatively, if BSGR and Steinmetz maintain their refusal to provide this information, Rio Tinto respectfully asks the Court for an order compelling BSGR and Steinmetz to immediately produce all documents that contain any reference to Defendant Frederic Cilins, including those it has previously withheld as "non-responsive." Rio Tinto will bear the risk of investing time and money to review documents that BSGR and Steinmetz claim are "non-responsive."

**BSGR's and Steinmetz's Privilege Log.** On February 17, BSGR and Steinmetz produced a joint privilege log. It falls far short of complying with Southern District Local Rule 26.2 and the parties' ESI order. As an initial matter, we had expected to receive two logs – one from Defendant BSGR and another from Defendant Steinmetz. Those Defendants are, to the best of our knowledge, distinct from each other and should have provided separate logs reflecting documents held back by each. Rio Tinto has written to BSGR and Steinmetz to identify a number of deficiencies in that log, specifically that (1) the information therein is unreasonably vague and thus fails to provide sufficient detail to permit Rio Tinto or the Court to make an informed judgment as to whether documents are in fact protected from disclosure; (2) it fails to sufficiently identify the nature of the privilege claimed or the basis for the claim; (3) it fails to identify each individual on the log, specifically who each person is and whom each person works for; (4) it fails to identify the number of documents withheld from each category; (5) it appears to withhold entire e-mail chains that should instead be produced in redacted form; and (6) it warrants explanation as to Defendants' assertion of work product protection in 2013 as a result of "media inquires" and "news reports" concerning Frederic Cilins. To be clear, during the

3

parties' February 10, 2015 meet and confer regarding BSGR and Steinmetz's proposed privilege log categories, Rio Tinto specifically reserved all rights to review and challenge those proposed categories upon production of the privilege log.  The parties were not in agreement with respect to BSGR and Steinmetz's proposed categories and it is disingenuous for them to now suggest to the Court otherwise, as they do below.

Rio Tinto expects a response from BSGR and Steinmetz this Wednesday.  Rio Tinto reserves its rights to raise this issue with the Court and seek appropriate relief following receipt of that letter.

### B. Defendant Vale's Position

Vale has served document requests on BSGR and Steinmetz and, given Judge Berman's direction that they participate fully in ongoing merits discovery (Dk. 163; Jan. 20, 2015 Tr. 8:24-9:8), expects that BSGR will comply with these requests.  It is willing to meet and confer as to the specific objections raised, and requests the Court to direct BSGR and Steinmetz to engage in such a meet and confer process and not continue to assert their generic objection that discovery can only proceed pursuant to the Hague Convention on the Taking of Evidence Abroad (the "Hague Convention").  Nevertheless, as a precaution in view of the fact that BSGR and Steinmetz have moved to dismiss for lack of personal jurisdiction, Vale has also prepared an Application for the Issuance of an International Letter of Request, which it has served on the parties and has presented to Judge Berman, to seek discovery from BSGR and Steinmetz abroad pursuant to the Hague Convention if that proves necessary.  Vale has requested that the Letter of Request be executed as soon as possible so that it may proceed expeditiously to present them to the High Court of London, where BSGR is located.

### C. Defendants BSGR's and Steinmetz's Position

*Neither BSGR nor Steinmetz Have Refused To Participate In Discovery Per The Federal Rules.*

At the February 6, 2015 conference, Your Honor ordered the BSG Defendants to respond and/or object to Plaintiff's merits discovery requests within one month of Judge Berman's January 16, 2015 Order, but directed the BSG Defendants to file its objections much sooner if they intended to assert a blanket objection on the grounds that such discovery must proceed through Letters of Request and/or the Hague Convention.  The BSG Defendants agreed to serve those blanket objections on Plaintiff -- and defendant Vale -- by February 13, 2015, and did so.  Although those objections were clear on their face, in their February 20, 2015 letter to Plaintiff, the BSG Defendants reiterated that they were objecting to Plaintiff's discovery requests sought pursuant to Rules 33 and 34, not to merits discovery generally.

As the BSG Defendants have repeatedly argued, and made clear to Plaintiff, unless and until the Court determines personal jurisdiction over them, any merits discovery ordered by Judge Berman to go forward should occur through Federal Rule of Civil Procedure 28(b), the appropriate international treaty, or by Letters of Request to the appropriate foreign authority, not pursuant to Federal Rules of Civil Procedure 30, 33 and 34.  Indeed, on February 23, 2015, Vale

4

moved the Court for issuance of Letters of Request for the taking of discovery from the BSG Defendants in England.  The BSG Defendants have offered to meet-and-confer with Plaintiff on this issue, as directed by Your Honor.  Rather than doing so, and after it became aware of Vale's motion for issuance of Letters of Request, on February 23, 2015, Plaintiff filed a letter with Your Honor seeking a pre-motion conference to compel the BSG Defendants to respond to its interrogatories, and start producing documents by March 6, 2015, pursuant to Federal Rules 33 and 34, respectively.  The BSG Defendants will be submitting, prior to the February 27 conference, a detailed letter in opposition to Plaintiff's request and in response to the issues raised in Plaintiff's letter, including to Plaintiff's version of the factual and procedural history of this discovery dispute, and the legal authority cited by Plaintiff that purportedly supports its position.

### *BSGR's and Steinmetz's Document Production.*

Plaintiff recently asserted in a February 17, 2015 letter to the BSG Defendants that the jurisdictional discovery produced by them on January 16, 2015 is incomplete.  The BSG Defendants complete jurisdictional discovery on that date, and have not withheld any non-privileged responsive documents.  Despite the boundaries of its own Jurisdictional Discovery Requests, Plaintiff now demands that the BSG Defendants produce every document containing a hit on the search terms "Fred*" and "Cilin*," along with a "(i) a search report, identifying hit counts separately for each custodian and search term, (ii) a general description of the types of documents and their content that hit on the search terms, and (iii) a description of how documents were evaluated for responsiveness."

In a letter dated February 20, 2015, the BSG Defendants provided Plaintiff with much of the information it requested.  Specifically, the BSG Defendants informed Plaintiff that, of the documents returned by Your Honor's So-Ordered searches,[3] only thirteen were returned as a result of the search term "Wells Fargo," and that all of those documents were generic financial marketing emails or news articles that innocuously reference Wells Fargo.  Additionally, the BSG Defendants informed Plaintiff that the over-broad and generic search term "Fred*" -- that Plaintiff demanded the BSG Defendants search -- returned a vast amount of miss-hits unrelated to any of the allegations in the Amended Complaint or defendant Frederick Cilins.  In fact, nearly 2,000 items were hit upon solely because of an irrelevant reference to a person named

---

[3] Pursuant to Your honor's Order, the BSG Defendants reviewed documents hitting on the following search terms during the following time periods: (i) (fred* or cilin*) for (a) July 1, 2010-August 31, 2010, (b) March 1, 2012-July 1, 2012, and (c) February 1, 2013-June 1, 2013; and (ii) "Wells Fargo" for July and August 2010.  The parties agreed upon, and Judge Peck ordered, the following twelve custodians for discovery as to specific jurisdiction: (i) Asher Avidan; (ii) Benjamin Steinmetz; (iii) Dag Cramer; (iv) David Clark; (v) David Trafford; (vi) Francis "Frank" Eagar; (vii) Gerard "Gerry" Wilson; (viii) Iwan Williams; (ix) Marc Struik; (x) Peter Driver; (xi) Sandra Merloni-Horemans; and (xii) Yossie Tchelet.

5

Fred Van Urk.[4]  Of the remaining documents, those that are actually responsive to the Jurisdictional Discovery Requests, and concern Cilins, are numerous multiple custodian copies of media reports and email inquiries discussing Cilins and internal company email chains referencing those reports and inquiries, as well as non-responsive documents filed in cases here in the Southern District of New York.  Indeed, the number of documents that were returned from the search terms "Fred*" and "Cilin*" are less than 660, and are comprised of multiple duplicates of the same or similar media reports concerning Cilins.  There is no reasonable basis for Plaintiff's demands, and in the circumstances, they are unwarranted and unnecessary.

### *BSGR's and Steinmetz's Privilege Log.*

The BSG Defendants were surprised to receive Plaintiff's February 23, 2015 letter and its objection to the form and substance of the Privilege Log because the Privilege Log's form, including the descriptions of documents that were to be used, were discussed during a meet and confer teleconference with counsel for Plaintiff on February 10, 2015, and the BSG Defendants believed they had an agreement about how documents would be described on the Privilege Log. During that same teleconference, the BSG Defendants proposed categories of documents which would be grouped together on the privilege log in compliance with the Southern District Local Rule 26.2 and the parties' ESI order.  Furthermore, the Privilege Log provides Plaintiff with all of the information required by section F.2 of the ESI order.  Notwithstanding the foregoing, in a continued effort to provide Plaintiff with sufficient information to evaluate the claim of privilege for the withheld documents, the BSG Defendants will respond to Rio's February 23, 2015 letter and produce a supplement to the Privilege Log.

## III. DISCOVERY FROM VBG DEFENDANTS

### A. Plaintiff's Position

*VBG's Interrogatory Responses*.  Defendant VBG supplemented its interrogatory responses on February 20, 2014.  We have reviewed those supplemental responses and they remain deficient:

- Both VBG Guernsey and Guinea have not identified any individuals in response to Interrogatory No. 4, which seek identities of persons with any oral or written communications with various persons, including Ibrahima Toure, Defendant Mamadie Toure and her company, Matinda and Co. Limited, among others, and Interrogatory No. 5, which seeks the identities of all third parties with whom the parties had communications or interactions with regarding Simandou, the Defendants, the Government of Guinea, the Zogota Project, and the Vale-BSGR Transaction .

---

[4] Other examples of complete miss-hits based upon the search term "Fred*" include (i) significant numbers of irrelevant documents hitting on an individual named "Frederic Marti," (ii) irrelevant documents that appear to be phishing e-mails purportedly from individuals named "Frederic Hartman" and "Frederik Whitfield," among others, and (iv) other irrelevant documents concerning individuals named "Fred" who are not Cilins, and that concern matters unconnected to the allegations in the Amended Complaint.

- VBG Guernsey has not identified any individuals in response to Interrogatory No. 3, which seeks the identities of any persons who, among other things, had any oral or written communications with any governmental entities investigating what happened at Simandou, and Interrogatory No. 6, which seeks the identity of persons with knowledge of the matters alleged in the Amended Complaint.

Both VBG Guernsey and Guinea say in response to each interrogatory that they are still "in the process of endeavoring to identify additional individuals." Rio Tinto propounded these interrogatories almost three months ago. At this stage of the case, VBG should have provided complete lists of knowledgeable individuals in response to each. It is far too late for VBG to continue to kick the can down the road.

*VBG's Document Production*. VBG has not complied with Your Honor's order from the parties' last conference on February 6. At that conference, Rio Tinto explained that VBG had recently learned that 20 boxes of hard-copy documents had been left behind in its office in Guinea. Your Honor correspondingly ordered VBG, in no uncertain terms, to "get the documents – unless there is a reason the documents can't leave the country, let's get them shipped to you immediately so that they're here by the two weeks from today, and then you can fight over content." Hr'g 14:9-12. Yet VBG has not complied and its documents are not here. Without regard to the Court's order and without conferring with Rio Tinto, VBG has apparently lined up foreign counsel to review its documents in Guinea at some unknown point in the future. While we appreciate that effort, Rio Tinto had sought an order from this Court, and this Court so ordered, to force VBG to get its boxes to the United States *by last week* so that documents could be produced immediately upon the parties' resolution of which documents therein were responsive to Rio Tinto's document requests. As it stands now, however, virtually nothing has happened since our last conference: VBG's documents are still in Guinea, they have not been reviewed, and the parties' have not had any discussions over their content and when responsive documents might be produced. Rio Tinto fears, absent strict order and threat of consequences, that VBG will continue to do as it pleases, disregarding orders and dragging its feet when it comes to discovery.

*VBG's Request For Documents Seized by the Guinean Government*. On February 17, 2015, VBG submitted a request to the Guinean Government to obtain copies of documents seized from its premises in May 2013. We are awaiting the Guinean Government's response.

    **B.**    **Defendant's Position**

**IV.**    **DISCOVERY FROM DEFENDANT VALE**

Plaintiff and Defendant Vale have exchanged correspondence and conducted several telephonic meet and confers. In accordance with the Court's order, the parties also revised the proposed predictive coding protocol, which was submitted to the Court for review on February 13, 2015.

7

A.     Plaintiff's Position

*Data and Information Stolen from Rio Tinto's Data Room:*  As the Court is aware, Vale continues to dispute the scope of certain of Rio Tinto's document requests, including Request Nos. 12, 33, and 44-50 (what Vale improperly labels as the "misappropriation requests."). Most recently, Vale objected to Rio Tinto's efforts to seek discovery on these requests related to "geologic data, modeling, mapping, studies, analyses, or plans," and "drilling procedure and operations."  Not only are both topics specifically sought by Rio Tinto's discovery requests, but both are also included in the nine documents previously identified by Rio Tinto as containing the information that Vale took from the Data Room.[5]  Indeed, Vale has admitted as much to the Court and Rio Tinto when it argued that the nine documents identified by Rio Tinto included: information on mining concession targets at Simandou, including northern targets at Ballagbeni, Damaro, and Captain Hook; the estimated total tonnage for Pic de Fon and Oueleba; the quality of the typical Simandou ore blend; the number of exploration drill rigs operating onsite at Simandou; and geologic information indicating that the mapped goethite continued throughout the northern targets at Blocks 1 and 2.  Dkt. No. 134 at 9; November 26, 2014 email from M. Karlan to M. McCaffrey.  All of these topics undoubtedly fall within the rubric of geologic data and drilling procedures and operations.  Rio Tinto therefore respectfully requests that the Court order that Vale produce documents related to "geologic data, modeling, mapping, studies, analyses, or plans," and "drilling procedure and operations.".

In addition, as this Court is aware, Vale recently produced its Feasibility Study for Simandou.  Rio Tinto is in the process of reviewing the study and believes that it will assist in further identifying the information that Vale and its co-conspirators stole from the Rio Tinto Data Room and used to develop Simandou.

*Financial Valuations of Simandou:*  Vale and Rio Tinto have been able to largely resolve their outstanding disputes regarding the scope of Rio Tinto Request No. 1, with a few limited exceptions:

- **Valuations beyond April 2011.**  Vale continues to refuse to produce documents related to any internal or external valuations, estimates of reserves and/or capitalization of expenses past April 22, 2011, even though it has requested – and Rio Tinto has agreed to provide – similar documents through April 30, 2014.  Such documents are highly relevant from both sides because, at a minimum, they will help inform the quantum of damages in this case.

- **Vale's motive for acquiring Simandou.**  Vale also has refused to produce documents reflecting Vale's desire (or lack thereof) in acquiring interest in or obtaining access to Simandou, prior to April 30, 2010.  Again, such documents are critically and highly relevant to Rio Tinto's claims that Vale made the

---

[5]  Moreover, in identifying those nine documents, Rio Tinto expressly reserved its right to "amend, modify, or supplement" those documents as discovery in the case proceeds.  Rio Tinto recently did just that, identifying an additional six documents that explicitly included those topics.

8

"strategic decision to gain control of some or all of Simandou at any cost," and began that effort as early as 2005.  Dkt. No. 83 at ¶¶3, 7.  Vale's counter proposal on this request, to "produce documents concerning any contemplated, potential, or actual acquisition by Vale of an interest in Simandou dated between Jan. 1, 2005 and April 30, 2010" is insufficient.  Rio Tinto's request is not so limited, and instead seeks documents related to Vale's desire to gain an interest in all or some of Simandou up until the filing of the Complaint, regardless of that interest having been in connection with a potential or actual acquisition.  Moreover, Vale's proposal would effectively make Request No. 1 duplicative of several of Rio Tinto's other requests, including Request Nos. 3-5, 13-14, and 19-21.

Rio Tinto is entitled to discovery on both of these issues and therefore respectfully requests that the Court order Vale to produce documents in response to Request No. 1 relating to any internal or external valuations (whether formal or informal), estimates of reserves and/or capitalization of expenses, financial forecasts, budgets, projections, market studies, market analyses, competitive analyses and assessments, or outside consultant reports concerning Simandou in whole or part" and "any documents, notes, memoranda, communications, business plans, or other records reflecting Vale's desire (or lack thereof) before April 30, 2010 of acquiring interest in or obtaining access to Simandou in whole or part."

### B. Defendant's Position

*Document Requests*.  On February 21, 2015, Vale made an additional rolling production of documents in response to Rio Tinto's document requests, which includes the complete, unredacted VBG Feasibility Study.  On February 23, 2015, Vale made an additional rolling production of documents contained in the BSGR data room.  In total, Vale has produced over 7,300 pages since the last discovery conference.  Vale has also collected all potentially relevant files it has identified to date, is beginning the predictive coding process in accordance with the negotiated protocol, and expects to make one or more additional significant productions by the end of March.  Vale's responses and objections to Rio Tinto's second set of document requests are due March 2, 2015.  As to Plaintiff's first set of document requests to Vale, the parties have continued to meet and confer since the last conference but are at an impasse on Plaintiff's Requests 1, 12, 33, and 44-50 and require the Court's assistance to move forward.

Request 1.  This Request originally called for all documents relating to (1) Vale's "interest" in acquiring Simandou, (2) Simandou's value, (3) the quality of Simandou's iron ore, (4) market assessments of Simandou, and (5) Vale's efforts to acquire Simandou.  Vale objected to this request on the basis that it is overbroad and, except to the extent covered by Plaintiff's other requests (including those related to two sets of negotiations for Simandou, Requests No. 3-5, 19-21), calls for documents not relevant to any dispute.

During their meet-and-confers, the parties have agreed to revise this request to three categories of documents proposed by Plaintiff, but Vale requires the Court's assistance as to the appropriate date range for category two and the scope of category three.

9

1) *Documents concerning any estimates, analyses, study, data, usage, evaluation, assessment, or other due diligence of Simandou before June 30, 2009 , including without limitation any perceived or actual advantages of acquiring interest in or obtaining access to Simandou in whole or part.*

- Vale has agreed to produce documents responsive to this category.

2) *Any internal or external valuations (whether formal or informal), estimates of reserves and/or capitalization of expenses, financial forecasts, budgets, projections, market studies, market analyses, competitive analyses and assessments, or outside consultant reports concerning Simandou in whole or part.*

   1. Rio Tinto has stated that this category is relevant to potential damages calculations. Vale's position is that any such damages occurred in December 2008, when Rio Tinto alleges it lost its rights to Simandou Blocks 1 and 2 (Am. Compl. ¶¶ 12, 92, 154), and so later valuations of Simandou would be irrelevant. Nevertheless, Vale has offered to produce documents through April 22, 2011, the date of Rio Tinto's settlement with the Government of Guinea in which it voluntarily relinquished any claim to Simandou Blocks 1 and 2 (and therefore the latest date possibly relevant to damages), and Rio Tinto has agreed to do the same in response to Vale's similar document requests.[6] Rio Tinto insists that the end date should be April 30, 2014, when it filed its complaint, which would greatly increase the burden of this request with no corresponding increased benefit. Given fluctuations in world iron ore prices and changes in the demand for iron ore, the longer the period after Rio Tinto's injury for damages discovery, the less relevant this discovery becomes, and the more any relevance is outweighed by burden.

3) *Any notes, memoranda, communications, business plans, or other records reflecting Vale's desire (or lack thereof) before April 30, 2010 of acquiring interest in or obtaining access to Simandou in whole or part.*

   1. This category is overbroad and vague insofar as any document mentioning Simandou might "reflect" a "desire (or lack thereof)" to acquire that asset, and Vale has already agreed to produce any relevant documents in response to other requests related to Vale's negotiations with either Rio Tinto or BSGR. As a compromise, Vale has offered to produce documents concerning any

---

[6] Specifically, Vale's Request 43 calls for documents "reflecting or relating to Rio Tinto's estimates of reserves and/or capitalization of expenses with respect to Simandou, or the good will associated with Simandou (or impairment of such good will) as reflected in Rio Tinto's financial statements."

10

contemplated, potential, or actual acquisition by Vale of an interest in Simandou dated between Jan. 1, 2005 and April 30, 2010, but Rio Tinto has rejected this compromise. As framed, this category is overbroad and vague because documents "reflecting" Vale's "desire (or lack thereof)" in acquiring an interest in or access to Simandou would be impossible to identify in any meaningful way. Given the broad definition of "reflecting," literally any document mentioning or referring to Simandou – the world's largest undeveloped iron ore deposit – could "reflect" either a desire or lack of desire to acquire it, or else why would a major mining company be discussing it at all? In an effort to be cooperative, Vale has sought to alleviate this problem by proposing a date range, beginning three years before it allegedly entered into a conspiracy to acquire Rio Tinto's interest in December 2008, and ending on April 30, 2010, when its joint venture with BSGR was created, the time when it *did* acquire an interest in Simandou. Documents dated later than April 30, 2010 would shed no light on Vale's alleged "motive" to acquire an interest in Simandou, which is the ostensible justification for this request, while suffering from the vagueness inherent in the way Rio Tinto has formulated the request.

Requests 12, 33, 44-50. These requests seek documents concerning the purportedly confidential information Plaintiff alleges Vale misappropriated from the Rio Tinto Data Room. As of the last conference, Vale believed the parties had agreed that Vale would conduct a reasonable search for documents containing information falling into a limited number of categories of information identified by Vale that are contained in the nine documents Plaintiff has identified, pursuant to this Court's order, as containing the allegedly misappropriated information (the "9 Documents"). Unfortunately, Plaintiff has now rejected this compromise and seeks to inappropriately expand the scope of its misappropriation claims and of discovery in violation of the Court's orders.

At the November 3 conference, the Court rejected Plaintiff's position that discovery could extend to *everything* in any way related to Simandou (or everything in the Data Room regarding Simandou) and ordered Rio Tinto to produce the specific Data Room documents from which it contends Vale misappropriated Rio Tinto's confidential information, ruling that the identification of those documents "will limit the scope of your claims accordingly and discovery to match with it." (Nov. 3, 2014 Tr. 42:10-12.) Plaintiff identified the 9 Documents on November 24, 2014. Plaintiff then told the Court:

> [W]e took your order very seriously. The data room had over 200-plus documents in it. **We have successfully winnowed that down to nine documents.** These are the nine documents that the Vale employees repeatedly, consistently accessed throughout the negotiations. These nine documents contain the key information that we have always alleged,

11

>  which relates to the geological data, the rail and transport options, both
>  through Guinea and through Liberia, and the port.

(Dec. 9, 2014 Tr. 38:1-9 (emphasis added).) Accordingly, Plaintiff's identification of the 9 Documents on November 24 limits both its claims and discovery in this case.[7]

In violation of the Court's orders – and contrary to its representations to the Court – Plaintiff has belatedly attempted to expand discovery in this area to categories that have no basis in its identification of allegedly misappropriated information. Specifically, Plaintiff demands that Vale search for and produce documents concerning the following:[8]

1) *The mining targets that Rio Tinto referred to as Ballagbeni, Kerkour South, Diodio, and Pic de Tibe.*

   - There is no information in the 9 Documents related to those mining sites with the exception of a one-page, high-level map of all four blocks at Simandou (RT0000403). No serious misappropriation claim could be based on this high-level map of all four blocks at Simandou, which simply identifies these locations without any further detail. Counsel will have a copy available for the court at the conference. Adding these mining targets would triple the scope of Rio Tinto's request, from two sites to six sites.

---

[7] Pursuant to that Order, the parties have reached substantial agreement on these requests. They have agreed to a date cutoff of October 31, 2012. In terms of scope, Vale has agreed to produce, based on the 9 Documents: (1) Documents and communications, including to and from VBG, BSGR and/or Steinmetz, concerning the exportation of iron ore from Simandou Blocks 1 and 2 via a trans-Liberian railway; (2) Documents and communications, including to and from VBG, BSGR and/or Steinmetz, concerning the selection of a port location in Liberia for exporting iron ore from Simandou Blocks 1 and 2; (3) Documents and communications, including to and from VBG, BSGR and/or Steinmetz, concerning resource estimates for the Damaro and Captain Hook mining sites; and (4) Documents and communications, including to and from VBG, BSGR, and/or Steinmetz, concerning the Trans Guinean railway as a means to export iron ore from Simandou.

[8] To the extent Plaintiff attempts, as it has during meet-and-confers, to rely on *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978), for the proposition that discovery is broader than the allegations in the complaint, it is wrong. Discovery is limited to the claims and defenses of the parties, *see* Fed. R. Civ. P. 26(b)(1), notwithstanding *Oppenheimer*, a 1978 decision concerning a class action notice, which pre-dated the 2000 amendment to Rule 26 narrowing the scope of discovery to matters relevant to a party's claim or defense. "The rule change . . . signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are *not already identified in the pleadings*." Rule 26 Adv. Committee Notes to 2000 Amendment (emphasis added).

12

2) *Geologic data, modeling, mapping, studies, analyses, or plans.*

- The only geologic information in the 9 Documents related to Blocks 1 and 2 is some high-level resource estimates and drilling sites for Captain Hook and Damaro, which Vale has agreed to search for. Plaintiff has failed to identify any pages in the 9 Documents that contain other specific geologic information to justify broader requests.[9]

3) *Drilling procedure and operations.*

- This topic is also not found in the 9 Documents, or even the Amended Complaint. It is also vague and overbroad, as it could encompass everything related to the work performed at Simandou over a two-year period, which again the Court already has ruled Plaintiff is not entitled to receive.

In short, Vale asks only that Plaintiff be held to this Court's orders and to its own representations. As Vale has previously argued in this Court, Plaintiff may not "shift[] the burden to defendants to clarify [Plaintiff's] claim," *MSCI Inc. v. Jacob*, 36 Misc. 3d 211, 213-15 (N.Y. Sup. Ct. 2012), nor is it sufficient for Plaintiff to merely provide information that "at most, identified the categories of [Plaintiff's] alleged trade secrets, but did not describe the trade secrets themselves." *Switch Commc'ns Grp. v. Ballard*, No. 2:11-CV-00285-KJD, 2012 WL 2342929 at *2 (D. Nev. June 19, 2012). Plaintiff's attempt to belatedly re-"open the . . . categories of trade secrets that it accuses [Vale] of having misappropriated or intending to misappropriate" is inappropriate. *Id.* As Your Honor recognized, it is Plaintiff's burden to "sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets" because it "helps the court to determine the outer permissible bounds of discovery." *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007). Plaintiff's burden also helps prevent "fishing expeditions to discover the trade secrets of a competitor" and "ensures that [the plaintiff] will not mold its cause of action around the discovery it receives." *Id.* at 681. Because Your Honor already ruled that the 9 Documents "will limit the scope of [Plaintiff's] claims accordingly and discovery to match with it" (Nov. 3, 2014 Tr. 42:10-12), and because Plaintiff has affirmatively represented that the 9 Documents "contain the key information that we have always alleged," (Dec. 9, 2014 Tr. 38:1-9), Vale asks that Plaintiff be held to those limits and not be permitted to expand discovery to the categories it belatedly demands.

---

[9] Rio Tinto's response that geologic data is "all over the Data Room" is of no avail, given that it has already purported to identify the documents containing the relevant information, and those documents do not contain geological information beyond that which Vale has agreed to produce. In addition, demanding "geological data" related to a mining operation without having specified what specific data Rio Tinto allegedly provided to Vale is nearly as broad as demanding everything related to that operation, which this Court has already rejected.

13

### V.     DISCOVERY FROM PLAINTIFF RIO TINTO

Plaintiff and Defendant Vale have exchanged correspondence and conducted several telephonic meet and confers.  The parties have also reached agreement with respect to a proposed predictive coding protocol.

#### A.     Plaintiff's Position

***Rio Tinto Document Production:***  On February 16, 2015, Rio Tinto completed its production of documents in response to Vale's BHP requests.  To date, Rio Tinto has now produced almost 55,000 documents in response to Vale's discovery requests alone.

With respect to discovery beyond the BHP requests, Rio Tinto and Vale have largely resolved the remaining outstanding discovery disputes between the parties.  One issue remains outstanding with respect to Vale Request No. 21, which calls for "all documents relating to Rio Tinto's negotiations with any Third Party regarding any transaction that would include or involve Simandou...from 2006 to present."  In an effort to resolve the dispute regarding Vale Request No. 21, Rio Tinto has already agreed to produce documents related to three potential transactions involving all of Simandou (Blocks 1-4):  any potential transaction considered in response to the BHP takeover attempt, the Vale deal, and a deal with Chinalco.  To the best of our knowledge, these are the only three potential transactions involving all of Simandou.

Rio Tinto also has proposed to produce the documents from a data room that was established as part of joint venture negotiations between Rio Tinto and Chinalco which ultimately culminated in a joint venture between Rio Tinto and Chinalco subsidiary, Chalco, for Simandou Blocks 3 and 4.  That joint venture was announced in March 2010.  As we explained to counsel for Vale, we are in the process of reviewing the material provided in that data room to confirm that there are no issues with respect to any privilege concerns or other non disclosure obligations.  Assuming we are able to resolve those issues, Rio Tinto will agree to produce those documents, as well as the confidentiality deed executed in connection with those negotiations, as part of its rolling discovery productions moving forward.

With that proposal, Rio Tinto believe that all disputes with respect to Vale's discovery requests to Rio Tinto are now resolved.  Once the proposed predictive coding protocol is entered by the Court, Rio Tinto will proceed with training the predictive coding software, review and production of responsive documents.

#### B.     Defendant's Position

The parties have continued to meet and confer regarding Vale's document requests to Plaintiff.  Vale identifies two issues that may require the Court's assistance.

***Investigative Reports***.  Plaintiff has represented that its production of investigative reports is complete and that no documents were withheld on privilege grounds.  Vale wrote to

Plaintiff regarding two apparent deficiencies in the production. Plaintiff has responded to confirm that no report exists from the investigative firm "Aenas," which Plaintiff had identified in response to Vale's Interrogatory 22, and that it will be producing "Report Eleven" from Livingstone and Company, which was missing from its prior production.

*Chinalco Data Room*. Vale's Request 21 calls for documents relating to "Rio Tinto's negotiations with any Third Party regarding any transaction that would include or involve Simandou (or any of Rio Tinto's rights with respect to Simandou) from 2006 to the present." The relevance of this request is apparent, since any information that Rio Tinto shared with Chinalco could not have been misappropriated by Vale. Rio Tinto has conceded that relevance by agreeing to produce documents from the Chinalco negotiations against the five BHP custodians selected by Vale.

Plaintiff has represented to Vale that, in addition to the potential transactions with Vale and BHP, it engaged in negotiations concerning Simandou with Chinalco, during which Rio Tinto provided Chinalco with access to a data room. Those documents are obviously probative of Plaintiff's claim that allegedly misappropriated information "was confidential and proprietary and known only to a small number of Rio Tinto's employees." (Am. Compl. ¶ 57.) Nor could documents provided by Rio Tinto to Chinalco qualify as privileged, since any privilege would have been waived when the document was shared with this third party. They also constitute a discrete set of documents that Plaintiff could produce without the need to apply predictive coding or any other culling process. Vale requested production of these data room documents on February 1, 2015, which Plaintiff has said it is considering but has yet to definitively respond to this request. At Plaintiff's request, Vale expedited production of the documents in the BSGR data room that Vale received. Vale requests that Rio Tinto reciprocate and be ordered to produce the documents in the Chinalco Data Room, as well as its confidentiality agreement with Chinalco, if any, by March 6, 2015.

## VI. THIRD PARTY DISCOVERY

Vale expects to present Judge Berman with an Application for International Letters of Request seeking discovery under the Hague Convention from the foreign investigative firms Rio Tinto has identified as having assisted it in its purported "lengthy investigation . . . into the activities of Vale and BSGR at Simandou" (Am. Compl. ¶ 146) and will seek this Court's assistance in that regard. Rio Tinto has produced 36 reports from the foreign firms it retained to conduct competitive intelligence (without producing any reports from a U.S. firm). Among other things, those reports expose as an utter fabrication the allegation at the heart of this case -- that Vale entered into a conspiracy with BSGR in December 2008, before Rio Tinto lost its concession for Simandou Blocks 1 and 2, that was only "documented" in April 2010: the reports show that BSGR was engaged in negotiations with other Rio Tinto competitors, but *not* with Vale, after BSGR obtained these rights in December 2008. Rio Tinto has designated the reports it produced from these investigative firms as "Highly Confidential – Attorneys' Eyes Only." Vale does not believe these documents are Confidential, let alone Highly Confidential and has initiated the process for re-designation.

In the interim, Vale seeks this Court's guidance as to whether it would prefer that Vale submit its Application for Letters of Request to this Court under seal so that the Court can consider the limited respect to which Vale refers to information from the reports.

*   *   *

The parties will continue to keep the Court informed of their progress as the meet and confer process advances.

Very truly yours,


/s/Michael Lyle
Michael Lyle