Mishcon de Reya
NEW YORK LLP

750 7th Avenue - 26th floor
New York, NY 10019

www.mishconnewyork.com

February 26, 2015

Direct Tel:   212-612-3265
Direct Fax:   212-612-3297
E-mail:       Vincent.Filardo@Mishcon.com

**VIA ECF**

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, NY 10007

      Re:   *Rio Tinto plc v. Vale, S.A., et al.*,
              Civ. Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      This Firm serves as counsel to defendants BSG Resources Limited ("BSGR") and Benjamin Steinmetz (together, "BSG Defendants") in the above-captioned action ("Action"). We write in response to the February 23, 2015 letter submitted by plaintiff Rio Tinto plc ("Plaintiff"), which requested a pre-motion conference in anticipation of an effort to compel the BSG Defendants to engage in merits discovery pursuant to Federal Rules of Civil Procedure 30, 33 and 34 ("February 23 Letter").

      Before delving into the merits (or lack thereof) of Plaintiff's request, it is important to correct several blatant misrepresentations of the record contained in Plaintiff's February 23 Letter. First, Plaintiff asserts that the BSG Defendants "refus[ed] to participate in merits discovery pursuant to the Federal Rules." Feb. 23 Letter at 1. However, as the BSG Defendants' Objections to Plaintiff's Requests for Production make clear, in light of Judge Berman's Order instructing all parties to proceed to merits discovery, and without waiving any of their other objections, the BSG Defendants are presently objecting only to discovery under Federal Rules of Civil Procedure ("Federal Rules") 30, 33, and 34. The BSG Defendants have repeatedly stated that unless and until the Court concludes that they are subject to personal jurisdiction, any merits discovery should proceed under Federal Rule 28(b) and the Hague procedures for the issuance of international letters of request – and the BSG Defendants have made clear that they stand ready to so properly proceed.

      Similarly, Plaintiff disingenuously asserts that the BSG Defendants have been "sitting on Rio Tinto's requested discovery for almost a year." Feb. 23 Letter at 1. However, as the record shows and we believe the Court understands, merits discovery against the BSG Defendants was

Legallus.261275.3

Switchboard: +1 212 612 3270    New York:  Mishcon de Reya New York LLP    A list of partners is available for
Main Fax: +1 212 612 3297      London:    Mishcon de Reya Solicitors        inspection at the above address

Mishcon de Reya
NEW YORK LLP

entirely stayed until Judge Berman clarified his January 16, 2015 Order on January 20, 2015. *See* Jan. 20, 2015 Hr'g Tr. at 8:20-9:10. If any party may be said to have been sitting on their hands it is Plaintiff, who has had the ability to seek the issuance of letters of request – as defendant Vale S.A. has done.

Third, and most importantly for present purposes, Plaintiff and its counsel have flatly disregarded the Court's clear instructions to the parties on this score. When the parties were last before Your Honor on February 6, 2015, the Court instructed the BSG Defendants that, if they intended to assert a blanket objection that discovery should go forward pursuant to the Hague Convention, they should serve their objections much sooner than "the 30th day." *See* Feb. 6, 2015 Hr'g Tr. 8:1-9. The BSG Defendants readily agreed to serve their objections within one week, *see id.* at 9:24-10:6, and did so, on February 13, 2015. Your Honor further directed the parties to meet and confer on the BSG Defendants' objection to discovery under Federal Rules 30, 33 and 34, and if a resolution could not be reached, to *then* submit letter briefing to the Court as appropriate.[1] The BSG Defendants never had the opportunity to meet and confer with Plaintiff because Plaintiff and its counsel chose to ignore the Court's instruction.

After the BSG Defendants served their objections, and after Vale acknowledged the BSG Defendants' primary objection and proceeded to seek Hague discovery[2], Plaintiff instead filed the February 23 Letter seeking to compel the BSG Defendants to respond to discovery under Federal Rules 33 and 34, on an extremely expedited schedule. *See* Feb. 23 Letter at 5 (seeking to require the BSG Defendants to "substantively respond to Rio Tinto's written discovery by February 27, 2015" and "begin producing documents by March 6, 2015"). Again, by filing the February 23 Letter Plaintiff and its counsel violated this Court's clear instruction to meet and confer, as well as Fed. R. Civ. P. 37(a)(1). The requests made by the February 23 Letter may properly be denied for this misconduct alone.[3]

Plaintiff's request is also thoroughly meritless as a matter of law. The BSG Defendants cannot be required to conduct merits discovery under Federal Rules 30, 33 and 34 before the Court determines that it can properly exercise personal jurisdiction over them. The Court therefore should reject Plaintiff's request *in toto* as a matter of controlling law.

To begin, it is *not* well-settled that, as Plaintiff contends, discovery under Federal Rules 30, 33 and 34 is proper where personal jurisdiction over the producing party remains contested.

---

[1] The Court's instruction was, of course, also consistent with Fed. R. Civ. P. 37(a)(1), which requires parties to meet and confer in good faith regarding such issues.

[2] On February 23, 2015, Vale filed a motion with the Court seeking the issuance of letters of request to obtain discovery from the BSG Defendants in England. *See* Docket No. 191.

[3] In the February 23 Letter Plaintiff also seeks to blame the BSG Defendants for its own dereliction, arguing that it was the BSG Defendants' responsibility to brief the propriety of Hague Convention discovery, and that Plaintiff submitted its letter because the BSG defendants failed to do so. *See* Feb. 23 Letter at 1 n.1. But of course, that is not what Your Honor instructed the BSG Defendants to do. The transcript on this point is clear: The Court instructed the BSG Defendants only to "tell [Plaintiff] what you're doing . . . whether you are engaging in paper discovery . . . under U.S. rules, or Hague Convention, or any other variation." Feb. 6, 2015 Hr'g Tr. at 10:1-5.

Mishcon de Reya
NEW YORK LLP

A review of the authority to which Plaintiff directs the Court for this supposed rule reveals that Plaintiff misrepresents the holdings of the cases, just as badly as it misrepresents the record of these proceedings. For example, Plaintiff directs Your Honor to Judge Kaplan's decision in *Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013), as "a strikingly similar circumstance." Feb. 23 Letter at 1. It is not. Judge Kaplan's decision in the *Chevron* case concerned a motion to compel certain *jurisdictional* discovery – not merits discovery. Judge Kaplan also made clear that – unlike here – the Court did have personal jurisdiction over the parties from whom discovery was then being sought. And contrary to Plaintiff's argument here, Judge Kaplan noted that the existence of personal jurisdiction is a "*prerequisite*" to the enforcement of discovery orders made under the Federal Rules. *See Chevron Corp.*, 296 F.R.D. at 198-201 (emphasis added). In contrast, here, Plaintiff is demanding Rule 33 and 34 *merits* discovery from a party over whom jurisdiction has *not* been established. Furthermore, unlike *Chevron*, this Court has already determined that in the current case jurisdictional discovery is not inextricably intertwined with merits discovery. Plaintiff claims that it needs to know "[w]hether, and the extent to which, BSGR authorized or ratified its co-Defendants' activities in New York." Feb. 23 Letter at 2. But Plaintiff *already specifically sought* this material, and Your Honor ruled that in light of the Amended Complaint's allegations, the conduct of co-conspirators – as opposed to an alleged agent or employee – would pertain only to the merits of the Complaint, not to jurisdiction, and denied Plaintiff's request. *See* Nov. 3, 2014 Hr'g Tr. at 26:14-35:19; Dec. 9, 2014 Hr'g Tr. at 5:1-7:7. Thus, *Chevron* is entirely inapposite.[4]

Plaintiff's analysis of *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987) ("*Aerospatiale*"), and its progeny is similarly confused. Plaintiff asks this Court to do what no other court has done – to extend *Aerospatiale*'s holding to the fact pattern presented by this case. Plaintiff can only muster this argument by contending that the undisputed presence of personal jurisdiction in *Aerospatiale* had no bearing on the Supreme Court's ultimate decision. This contention is wrong. There is no dispute that in *Aerospatiale*, the Supreme Court addressed a situation in which merits discovery was sought form a foreign defendant over which personal jurisdiction *was uncontested and established*. *See Aerospatiale*, 482 U.S. at 524. There can similarly be no dispute – despite Plaintiff's cherry-picked parenthetical – that the subsequent authority to which Plaintiff points only extends *Aerospatiale*'s holding to *jurisdictional* discovery. Not a single case extends the rule of *Aerospatiale* to *merits* discovery sought from a foreign party in advance of a determination of personal jurisdiction over that party. *See In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 (3d Cir. 2004) ("The second issue certified in this appeal is whether we should adopt a first resort rule in favor of the procedures under the Hague Convention, rather than the Federal Rules of Civil Procedure, for *jurisdictional* discovery from foreign defendants . . . .") (emphasis in original); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 48 (D.D.C. 2000)

---

[4] For the same reasons, Plaintiff's citation to cases for the proposition that a court can permit merits discovery to go forwards under Federal Rules 33 and 34 where jurisdiction and merits are intertwined is inapposite to the instant case.

("The first question to be answered is whether the Court must always require first-resort to Hague procedures for jurisdictional discovery . . . .").[5]

Moreover, in reading *In re Automotive Refinishing Paint*, Plaintiff takes the Third Circuit's statement concerning the dependency of *Aerospatiale*'s holding on personal jurisdiction out of context. The Third Circuit held that a court may choose to conduct *jurisdictional* discovery under Hague procedures or under Federal Rules 30, 33 and 34, once a *prima facie* case for personal jurisdiction has been alleged, just as *Aerospatiale* allows a court to choose either rubric for merits discovery after personal jurisdiction has been established. *See In re Automotive Refinishing*, 358 F.3d at 303. But nothing in the Third Circuit's opinion supports Plaintiff's contention that use of Federal Rules 30, 33 and 34 is appropriate for conducting *merits* discovery *prior to* the determination of personal jurisdiction – much less that a court can require a litigant who challenges personal jurisdiction to engage in "*any* type of discovery, at *any* time, and under *any* method." Feb. 23 Letter at 2. Very much to the contrary, the Third Circuit wrote:

> No one would dispute that if jurisdiction[al] discovery yields no evidence sufficient to establish personal jurisdiction, the court must dismiss the underlying action against the appellants, rather than deciding which set of procedural rules to apply.

*In re Automotive Refinishing*, 358 F.3d at 303 n. 18.

Plaintiff's deepest misrepresentation of precedent resides in its discussion of *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). Plaintiff tells this Court that *Insurance Corp.* stands for the proposition that a litigant who challenges personal jurisdiction "agrees to be bound by that court's authority until that court concludes that it does (or does not) have proper jurisdiction." In fact, the case does no such thing. Rather, *Insurance Corp.* concerned the question of whether a court could find that a litigant waived a personal jurisdiction objection *as a sanction under Federal Rule 37*. As part of its analysis, the Supreme Court explained the uncontroversial principle that "[b]y submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination *on jurisdiction*." *Insurance Corp.*, 456 U.S. at 706 (emphasis added). Nowhere in the Supreme Court's analysis is there support for the proposition that where a litigant appears for the purpose of challenging a court's personal jurisdiction over it, the litigant has submitted to any action that the court might take, properly or improperly, until the challenge is resolved.

In reality, precedent demonstrates that the opposite is true. As Justice Blackmun explained in his concurring opinion in *Aerospatiale*, "[i]t is well established that a court has the power to impose discovery under the Federal Rules of Civil Procedure *when it has personal jurisdiction over the foreign party*." *Aerospatiale*, 482 U.S. at 554 n.4 (Blackmun, J., concurring in part and dissenting in part). Indeed, until jurisdiction is established, a named defendant is

---

[5] Plaintiff's citation to *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) concerns a situation where personal jurisdiction *had* been established and thus *Aerospatiale* could be directly applied. *See First Am. Corp.*, 154 F.3d at 19-20 (explaining that foreign party was subject to personal jurisdiction).

Legal1us.261275.3                         4

Mishcon de Reya
NEW YORK LLP

more akin to a non-party, and it is well-settled that a court may not enforce discovery orders against a non-party over whom it lacks jurisdiction. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."); *In re Auto. Refinishing Paint*, 229 F.R.D. 482, 487 (E.D. Pa. 2005) ("A federal court must have personal jurisdiction over a nonparty witness in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 37."); *see also Beckman Instruments, Inc. v. LKB Produkter*, No. CIV.A. R-85-3133, 1986 WL 5354, at *2 (D. Md. Jan. 13, 1986) ("if the Court finds that it lacks personal jurisdiction over [defendant], all further discovery must follow the procedures of The Hague Convention treaty").

Requiring a plaintiff to utilize Federal Rule 28(b) or the appropriate international convention to take discovery from a foreign defendant prior to the establishment of personal jurisdiction makes intuitive sense as well. The Court, of course, has the authority to determine whether or not it has personal jurisdiction over a party. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 374 (2d Cir. 2005) ("a court has jurisdiction to determine its own jurisdiction") (*quoting United States v. United Mine Workers of Am.*, 330 U.S. 258, 292 (1947)). This authority carries with it the ability to decide how to determine its jurisdiction, including whether to require use of Federal Rules 30, 33, and 34. However, there is a crucial distinction between jurisdictional and merits discovery in these circumstances. Jurisdictional discovery aids the Court itself in allowing it to determine whether or not it has jurisdiction over a foreign litigant. *See, e.g., Royalty Network Inc. v. Dishant.com, LLC*, 638 F.Supp.2d 410, 425 (S.D.N.Y. 2009) (noting that the purpose of jurisdictional discovery is to aid a court's jurisdiction inquiry). But once the Court moves beyond discovery aimed at determining its own jurisdiction (and thus whether it is fair to exercise power over a litigant), and into discovery concerning a plaintiff's claims, the discovery is no longer for the benefit of the Court, but for the benefit of the private plaintiff. Requiring a foreign defendant to bear the burden of compliance with the rules of a system to which the foreign litigant has never submitted, for the benefit of the plaintiff, undermines the very reason – the Constitutional reason – why the Court must ensure the propriety of its exercise of personal jurisdiction in the first place. Such a result would not be fair or consistent with any notion of due process.

Moreover, as a practical matter in this case, requiring the BSG Defendants to submit to discovery under Federal Rules 30, 33 and 34, even as they and Vale proceed with substantially the same corpus of discovery under Hague procedures, would be senselessly inefficient. Indeed, because discovery on these topics is indisputably available to Plaintiff under Federal Rule 28(b) and Hague procedures, doing so would, by definition, be *unduly* burdensome. And as the Supreme Court in *Aerospatiale* instructed, the federal courts must

> exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position . . . . Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.

Mishcon de Reya
NEW YORK LLP

> When it is necessary to seek evidence *abroad*, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.

*Aerospatiale*, 482 U.S. at 546 (emphasis added).

Thus, Plaintiff's argument stands unsupported by precedent or by common procedural sense. The Court therefore need not engage in a balancing of the *Aerospatiale* factors to determine the appropriate method for merits discovery. However, in the event the Court believes such factors should be weighed, it is clear that the balance weighs heavily in favor of requiring the parties to use Federal Rule 28(b) and the Hague Convention.

Central to the evaluation of whether or not to require use of the Hague Convention is a comity analysis composed of seven factors (five of which were originally drawn from *Aerospatiale* and two of which were elucidated in *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987)): (i) the importance of the information requested to the litigation; (ii) the degree of specificity of the discovery request; (iii) whether the information sought originated in or presently is located in the United States; (iv) the availability of alternative means of accessing the information; (v) the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine the interests of the state where the information is located; (vi) hardship that compliance under the Federal Rules would impose; and (vii) the good faith of the objecting party. *See Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), 2012 WL 1918866, *4 (S.D.N.Y. May 23, 2012) (balancing factors and requiring plaintiff to seek discovery through Hague Convention for certain foreign defendants). Relying on out-of-date authority, Plaintiff conspicuously ignores several of these important factors that would clearly cut against its position. *See* Feb. 23 Letter at 3 (addressing only four factors). Balancing those four factors and the others required to be considered, it becomes evident that the Court should require the parties here to use Federal Rule 28(b) or the Hague Convention in order to seek merits discovery from the BSG Defendants.

The first factor – the importance of the information requested – weighs against Plaintiff's position because a significant amount of what Plaintiff is requesting is wholly irrelevant to its claims in this action (and is instead transparently sought for purposes of separate actions overseas). For example, Plaintiff demands documents dating back to January 1, 2005, years prior to the events upon which Plaintiff bases its claims. Additionally, Plaintiff demands production of irrelevant categories of documents that have nothing to do with any of the allegations in the Amended Complaint. For instance, Plaintiff seeks the production of "[a]ll Documents and Communications concerning a purported lawsuit being brought in the High Court of London against Rio Tinto, George Soros and Global Witness relating to Simandou, as reported on June 1, 2014 by The Sunday Times," despite there being no mention of any such lawsuit in the Amended Complaint (and no such lawsuit on the dockets of the High Court). This information is not relevant – and certainly not "highly relevant" as Plaintiff claims – to this action.

Similarly, the second factor (which Plaintiff fails to address) – the specificity of the requests – also weighs against Plaintiff. Plaintiff served more than forty separate requests for document production to each of the BSG Defendants, with each request demanding "all documents and communications" relating to over-broad categories. In actuality, Plaintiff's discovery demands could not be any less specific than they currently are.

The third factor (which Plaintiff also fails to address) – whether the information originated in or is presently located in the United States – also weighs against Plaintiff, because *all* of the information Plaintiff seeks originated outside of the United States and is still located outside of the United States.

The fourth factor – the availability of alternative means of acquiring the requested information – also obviously weighs against Plaintiff (who also left this factor unaddressed). Much of the information Plaintiff seeks is available from other defendants who are unquestionably subject to the personal jurisdiction of this Court, and as discussed above the Hague Convention presents a proven and wholly suitable method by which Plaintiff can acquire any relevant information from abroad.

The fifth factor – the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine the interests of the state where the information is located – also weighs against Plaintiff, because the United States does not have a strong interest in helping a private foreign plaintiff litigate deeply-disputed claims against foreign defendants concerning wholly foreign mining rights. Moreover, the United States' minimal interest pales in comparison to the undermining of the interests of the five foreign jurisdictions that will be impacted by requiring the BSG Defendants to engage in merits discovery pursuant to Federal Rules 30, 33 and 34. Plaintiff's appeal to Judge Berman's ruling on defendants' *forum non conveniens* motion is, like the rest of Plaintiff's factual citations, misleading. *See* Feb. 23 Letter at 4. Judge Berman's explanation of the purported links between the allegations in the Amended Complaint and New York took into account all of the *forum non conveniens* factors and explained only that it would not be unduly burdensome to require a New York jury to try this action. *See* Decision and Order, dated Dec. 17, 2014 (Docket No. 143), at 29-30. Judge Berman did not, as Plaintiff contends, already consider and decide that the United States' interest in this action is stronger than that of any other state for any purpose.

The sixth factor – the hardship that compliance under the Federal Rules would impose – also weighs against Plaintiff. Given the allegations in the Amended Complaint, discovery will certainly impose a hardship upon the BSG Defendants under *either* Federal Rules 30, 33, and 34 *or* Rule 28(b) and the Hague Convention. However, without requiring the use of the Hague Convention procedures, and thus involving the appropriate foreign central authorities in the process, the BSG Defendants will potentially be subject to civil and criminal penalties for violating blocking and privacy statutes. This risk of liability creates a unique hardship that will only be present when Federal Rules 30, 33, and 34 are used. Furthermore, as Your Honor recognized at the January 13, 2015 conference, the BSG Defendants would, upon the granting of

their Federal Rule 12(b)(2) Motion, at the most, only have to respond to discovery requests made to them as non-parties to this action under the Hague Convention. *See* Jan. 13, 2015 Hr'g Tr. at 15:21-16:1, 17:16-21 ("[F]or at least document discovery purposes, after X period of time goes by and there is no decision [on the Rule 12(b)(2) Motion], deal with it as a rule 45 subpoena or Hague Convention or whatever."). Requiring use of the Hague Convention until such time as the Federal Rule 12(b)(2) Motion is granted would significantly alleviate the burden and expense such discovery will impose on the BSG Defendants, and avoid the serious Constitutional risk of imposing unduly burdensome discovery upon a party over whom the Court in fact has no personal jurisdiction.

Finally, the seventh factor – the good faith of the objecting party – weighs against Plaintiff because the BSG Defendants have done nothing more than assert their appropriate objections in a timely manner. Indeed, it is the Plaintiff, not the BSG Defendants, who have now disregarded the Court's clear instruction to meet and confer, ignored the amicable approach taken by Vale, and forced the Court to entertain this unnecessary letter briefing.[6]

Thus, because each of the relevant factors weighs against Plaintiff, comity also requires that the Court instruct Plaintiff to proceed with merits discovery under Federal Rule 28(b) and the Hague Convention prior the establishment of personal jurisdiction over the BSG Defendants.

Finally, Plaintiff again attacks the BSG Defendants' jurisdictional discovery production, insinuating that the BSG Defendants have failed to comply with the Court's orders. Plaintiff made a similar attack in a February 17, 2015 letter to the BSG Defendants, to which the BSG Defendants responded on February 20, 2015. Unable to accept the fact that the BSG Defendants do not actually have the documents Plaintiff needs them to have in order to validate its jurisdictional theories, Plaintiff repeats its claim that the BSG Defendants are withholding documents and misleading the Court. This unprofessional tactic is baseless and unwarranted.

As the BSG Defendants explained in their February 20, 2015 letter to Plaintiff, applying the agreed-upon – and So-Ordered – search terms to the agreed-upon – and So-Ordered –

---

[6] Plaintiff claims that the BSG Defendants have delayed the proceedings by duping the Court into bifurcating early motions practice, twice unsuccessfully moving to stay merits discovery, and attempting to qualify case deadlines. *See* Feb. 23 Letter at 4. None of these claims are true. With respect to early motions practice, the transcript from the July 28, 2014 status conference in front of Judge Berman clearly shows that Judge Berman agreed to permit all defendants to submit a separate *forum non conveniens* motion before counsel to the BSG Defendants said a word. *See* July 28, 2014 Hr'g Tr. at 10:5-11:13. On motions to stay, while the BSG Defendants have twice sought pre-motion conferences to discuss a motion to stay, neither Your Honor nor Judge Berman has ruled on a formal motion under the appropriate legal framework. Finally, the purported attempt at qualifying case deadlines was actually part of a joint submission to the Court agreed upon by all parties, including Plaintiff, and was approved by Your Honor. *See* Scheduling Order, dated Jan. 15, 2015 (Docket no. 161). Once again, Plaintiff and its counsel are baldly misrepresenting the record to the Court.

custodians[7] resulted in a universe of approximately 2,300 documents.[8]  Only thirteen documents were returned as a result of the search term "Wells Fargo," and all of those documents were generic financial marketing emails or news articles that innocuously reference Wells Fargo. Additionally, the BSG Defendants informed Plaintiff that the over-broad and generic search term "Fred*" — that Plaintiff demanded the BSG Defendants search – returned a vast amount of miss-hits unrelated to any of the allegations in the Amended Complaint or defendant Frederick Cilins. In fact, nearly 620 documents (or nearly 2,000 items including family members) were hit upon solely because of an irrelevant reference to a person named Fred Van Urk.[9]  Only approximately 660 documents actually contained the term "Cilin" or "Cilins."  Of these documents, those that are actually responsive to Plaintiff's Jurisdictional Discovery Requests are numerous multiple custodian copies of media reports and email inquiries discussing Cilins and internal company email chains referencing those reports and inquiries, as well as non-responsive documents filed here in the Southern District of New York.  Indeed, as Plaintiff is well aware, media reports concerning Cilins from the relevant time period also frequently discussed the BSG Defendants. It is thus completely reasonable for the BSG Defendants to be aware of and concerned with such reports.  Those that are responsive, but privileged, are listed on the BSG Defendants' privilege log as required by the ESI Order.[10]  In sum, there is absolutely no basis upon which Plaintiff can rightfully accuse the BSG Defendants of engaging in "obstructionist behavior."

---

[7] Pursuant to Your honor's Order, the BSG Defendants reviewed documents hitting on the following search terms during the following time periods: (i) (fred* or cilin*) for (a) July 1, 2010-August 31, 2010, (b) March 1, 2012-July 1, 2012, and (c) February 1, 2013-June 1, 2013; and (ii) "Wells Fargo" for July and August 2010.  The parties agreed upon, and Judge Peck ordered, the following twelve custodians for discovery as to specific jurisdiction: (i) Asher Avidan; (ii) Benjamin Steinmetz; (iii) Dag Cramer; (iv) David Clark; (v) David Trafford; (vi) Francis "Frank" Eagar; (vii) Gerard "Gerry" Wilson; (viii) Iwan Williams; (ix) Marc Struik; (x) Peter Driver; (xi) Sandra Merloni-Horemans; and (xii) Yossie Tchelet.

[8] Counsel's preliminary estimate of 6,000 documents was based upon an estimate provided by the BSG Defendants' vendor, and included all "family members" of documents containing search terms.  The BSG Defendants reviewed the "family member" documents for the sake of completeness, even though they included none of the search terms.

[9] Other examples of complete mis-hits based upon the search term "Fred*" include (i) significant numbers of irrelevant documents hitting on an individual named "Frederic Marti," (ii) irrelevant documents that appear to be phishing e-mails purportedly from individuals named "Frederic Hartman" and "Frederik Whitfield," among others, and (iv) other irrelevant documents concerning individuals named "Fred" who are not Cilins, and that concern matters unconnected to the allegations in the Amended Complaint.

[10] To address some of Plaintiff's objections to the privilege log that the BSG Defendants produced, they will be producing a supplement shortly.

Mishcon de Reya
NEW YORK LLP

      For all of the foregoing reasons, the BSG Defendants respectfully request that the Court deny Plaintiff's letter application entirely. The BSG Defendants also stand ready to fully brief these issues on a schedule set by Your Honor.

Respectfully,

Vincent Filardo, Jr.

cc:    All Counsel of Record (by ECF)