**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

March 13, 2015

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:    Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (S.D.N.Y.)

Dear Judge Peck:

Plaintiff Rio Tinto plc ("Plaintiff") and Defendants VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, and BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR (together, "VBG Defendants"), Benjamin Steinmetz, BSG Resources Limited ("BSGR"), Vale S.A. ("Vale"), and Mahmoud Thiam write jointly to update the Court on the status of various discovery issues in advance of our March 17, 2015 hearing.

Since we last wrote the Court on March 6, 2015, the parties have continued to meet and confer on a regular basis, both through telephonic meet and confers and written correspondence. In particular, Rio Tinto, the BSGR Defendants, and Vale have met and conferred on the Application for Letters of Request seeking discovery pursuant to the Hague Convention on the Taking of Evidence Abroad (the "Hague Convention" from the BSGR Defendants, as further described below.  Rio Tinto and Vale have met and conferred regarding several discovery disputes as well, described in further detail below.  Rio Tinto and Vale have also exchanged initial disclosures as required by the Predictive Coding Protocol entered by the Court (Dkt No. 206).  Below is a proposed agenda for the March 17, 2015 status conference.

**I.    DISCOVERY FROM DEFENDANT THIAM**

In accordance with the Court's Order, Defendant Thiam provided all responsive,

otherwise non-privileged documents previously withheld as privileged to counsel for the Government of Guinea on February 13, 2015.  On March 12, 2015 counsel for the Government of Guinea confirmed review of those documents is complete.  However, under Guinean law, the documents must be submitted to the Secretary-General in the Presidency to formally authorize release of the documents.  Counsel for the Guinean Government stated that the documents have already been submitted to the Secretary-General and that the review is under way now.  They expect a ruling from the Secretary-General shortly and they expect that the Secretary-General will authorize release of the majority of Mr. Thiam's documents, with the exception of a small number of documents identified as potentially raising issues of attorney-client privilege, commercial sensitivity or diplomatic secrecy issues.  Even with respect to this small category of documents, the Guinean Government's counsel noted that the government is considering waiving any objection to allow the release of those documents for this litigation.  If and when the documents are released, Mr. Thiam has stated that he will be able to produce the documents to Rio Tinto within a week.  The parties will continue to keep the Court apprised of any developments on this issue.

## II.    DISCOVERY FROM DEFENDANTS BSGR AND STEINMETZ

### A.    Hague Convention Letters of Request

Rio Tinto, Vale and the BSGR Defendants are pleased to report that they have reached agreement with respect to the Joint Application for an International Letter of Request seeking discovery pursuant to the Hague Convention from the BSGR Defendants and the BSGR Defendants consent to its submission and enforcement in the United Kingdom and that they agree they will raise no objection to it there.  The parties therefore attach the Joint Application for the Court's review and execution (attached hereto as Ex. A).

### B.    Review of BSGR and Steinmetz's Non-Responsive Cilins Documents

In accordance with the Court's February 27, 2015 direction, Defendants BSGR and Steinmetz made available for Rio Tinto's review today 133 document families composed of 255 individual non-privileged, non-responsive documents that were returned as a result of the requested and so-ordered search term "Cilin*."  Although many of the individual documents do not contain the search term and thus were not included in the Court's February 27, 2015 direction, because they are part of a family of documents where at least one family member does contain the search term, the documents were made available for Rio Tinto's review.  Defendants BSGR and Steinmetz withheld from Rio Tinto 409 families of documents that were returned as a result of the search term but which are privileged.  Counsel for Rio Tinto completed its review of those documents today and will update the Court on the results of that review at the parties' hearing on March 17, 2015. As a result of this review, Rio Tinto and its counsel have seen all non-privileged documents that were returned by the requested and so-ordered search term "Cilin*."

## III.    DISCOVERY FROM VBG DEFENDANTS

Rio Tinto and VBG have scheduled a call for Monday afternoon to discuss the progress VBG has made since our last conference.  The parties will provide the Court with an update on Tuesday.

## IV.    DISCOVERY FROM DEFENDANT VALE

As required by the parties Predictive Coding Protocol (Dkt No. 206), Rio Tinto and Vale exchanged certain required initial disclosures on March 6, 2015.  The parties are continuing to advance the predictive coding process and intend to exchange control sets at the earliest opportunity.  The parties will provide the Court with an update on that progress at our next hearing.

Vale served its responses and objections to Rio Tinto's Second Request for Production of Documents on March 2, 2015.  The parties met and conferred on those responses on March 12, 2015.  While there are areas of disagreement regarding several of Rio Tinto's requests, the parties will continue with the meet and confer process in an attempt to resolve those issues.  To the extent they are not resolved, they will be brought to the Court's attention before the next conference.

## V.    DISCOVERY FROM PLAINTIFF RIO TINTO

Plaintiff and Defendant Vale have exchanged correspondence and conducted several telephonic meet and confers.  Vale served its Second Request for Production of Documents from Rio Tinto on February 23, 2015.  Rio Tinto's responses to those requests are due on March 25, 2015.

### A.    Plaintiff's Position

*Rio Tinto's Document Production*.  As discussed at the parties' last hearing, Rio Tinto produced the contents of the Chinalco Data Room, as well as its confidentiality agreement with Chinalco, on March 6, 2015.  In accordance with the Parties' ESI Protocol (Dkt No. 82), Rio Tinto will also be producing a privilege log for the BHP requests on March 18, 2015.  Any documents determined not to be privileged in the course of Rio Tinto completing its privilege log will be produced soon thereafter.

*Rio Tinto's Redaction of Identifying Source Information.*  Vale seeks an order from this Court requiring Rio Tinto to remove redactions from its investigative reports that were made in order to protect the identity of confidential sources.  Those redactions were not only appropriate, as explained in greater detail below, but they were also minimal.  Indeed, the vast majority of the more than 650 pages of investigative reports produced by Rio Tinto are redaction free.  Moreover, redacting the names of confidential informants is appropriate where, as here, the redactions do not materially affect the nature or quality of the information provided and "the identities of the confidential informants do not go to the heart of the case and are at best marginally relevant to the issues at stake in this litigation." *Management Information Technologies, Inc. v. Alyeska Pipeline Service Co.*, 151 F.R.D. 478, 482–83 (D.D.C. 1993).  Neither Vale nor any other Defendant can identify any plausible reason why the identities of

these confidential sources are relevant to this litigation or at all necessary to the investigation and presentation of their claims and defenses.  Defendants already know the names of percipient witnesses with information relevant to this case from the parties' initial disclosures under Rule 26(a)(1) and from the parties' interrogatory responses.  See *United States v. Bailey*, No. 14-cr-78, 2015 WL 867490, at *1 (E.D. Wis. Feb. 18, 2015) ("For [mere 'tipsters' (i.e., those whose only role was to provide the police with information)], the rationale for the privilege [to maintain their anonymity] is stronger and the case for overriding it is generally weak." (citations omitted)).  Whether any of these witnesses provided information to investigators has nothing to do with whether Defendants formed a RICO enterprise and obtained Rio Tinto's rights to Simandou Blocks 1 and 2 through a campaign of fraud, bribery, intimidation, money laundering, obstruction, and intimidation.  See *Alyeska*, 151 F.R.D. at 482–83.  Defendants have no legitimate need for these informants' names.

Moreover, protecting these confidential sources is especially important because they face potential reputational, economic, and personal harm if their identities are disclosed to Defendants or made public.  *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 246–49 (E.D. Pa. 2014) (risk of financial harm justified concealing sources' names); *United States v. Valencia*, Crim. H-04-514 SS, 2006 WL 3707867, at *7–*8 (S.D. Tex. Aug. 25, 2006) (protecting sources' identities where, among other things, "The Publishers made representations of strict confidentiality to the sources of the trade data, and the sources appeared to value those promises. Second, McGraw-Hill and NGI vigorously protect within each of their firms the identity of their confidential sources and the trading data they collect from those sources."); *In re Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 774 (10th Cir. 1993) (underlying concern of protecting informants who assist an investigation is "the common-sense notion" that they "may later be targeted for reprisal from those upset by the investigation" (citation and quotation marks omitted)).  Mr. Steinmetz and BSGR, in particular, have a well-known history of waging no-holds-barred publicity battles against their adversaries.  *See, e.g.*, Henry Mance, *Israeli Billionaire Fails to Silence Critic Over Mine Deal*, Fin. Times, Dec. 21, 2014, *available at* http://www.ft.com/cms/s/0/14e1d76a-8921-11e4-9b7f-00144feabdc0.html#axzz3UC2WMNuQ; Claim, Steinmetz v. Global Witness Ltd., 13-5380 (H.C. Ch. Div. Dec. 12, 2013), *available at* http://bsgresources.com/assets/Uploads/12-12-2013-Claim-Form-Particulars-of-Claim.PDF; Claim, BSG Res. Ltd. v. FTI Consulting, Ltd., (H.C. Queen's Bench), *available at* http://www.bsgresources.com/assets/Uploads/Particulars-of-claim.pdf; Filardo Decl., Ex. D, Dkt. No. 179-4.  The confidential sources who provided information to investigators did so on the condition that they not be subjected to the kind of attacks that Defendants have employed in the past and indeed, continue to employ to this day.  *See, e.g.* Ilan Solomons, *BSG Vows to Clear its Name After Bribery Allegations, Fight for Return of Guinea Assets*, Mining Weekly, Mar. 6, 2015, *available at* http://www.miningweekly.com/article/bsg-resources-continues-fight-for-simandou-and-zogota-2015-03-06 (BSGR CEO Marc Struik vows that "Categorically…anybody that tries to get these assets, [BSGR] will start legal proceedings against them in any applicable jurisdiction").

Finally, the confidential sources are not the only parties that face harm should the Court order removal of the redactions.  So do the investigative firms whose business it is to collect such information based on promises that any information provided will be kept confidential.  Revelation of their confidential sources will undermine these assurances and even destroy their network of sources – and potentially the business operations of the investigative firms

themselves – the firms have cultivated over the years.  Such harsh results are not warranted or justifiable.

**B.     Defendant's Position**

There are presently two issues with respect to Vale's discovery from Rio Tinto, both of which relate to Rio Tinto's allegation that starting "April 30, 2010," "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence in pursuing discovery of the claims asserted herein" and "conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou."  (Am. Compl. ¶ 146.)  In response to Vale's requests and the Court's previous orders (*see* Jan. 13, 2015 Tr. 52:12-21), Rio Tinto has identified six firms as having been involved in its alleged post-April 30, 2010 investigation[1] and has produced reports from two of those six firms.  None of the reports from any of the firms post-dates December 2010.

On their face, the reports are devoted largely to competitive intelligence and, at most, to the questions of how BSGR obtained its interest in Simandou or how Rio Tinto could regain an interest in Blocks 1 and 2 if the Guinean government made that opportunity available.  Two reports from 2010 also contain purported chronologies of Vale's contacts with and eventual joint venture with BSGR on April 30, 2010.  None appear to investigate the question of how Rio Tinto *lost* its concession or any claim arising therefrom.  (Vale's position is that Rio Tinto lost its rights because it failed to exploit Simandou, as the Guinean government stated at the time it revoked the rights.)  The reports also set forth the type of alleged facts that are in the Amended Complaint regarding the conduct of BSGR, Thiam, and Steinmetz and contain red flags regarding that conduct.  Notably, the reports also contradict Rio Tinto's conspiracy allegations, indicating that BSGR was engaged in negotiations with *other* Rio Tinto competitors, but *not* Vale, soon after BSGR obtained the rights in December 2008, and that BSGR and Vale had no substantive discussions about a potential joint venture until December 2009.

In light of what the reports have revealed, Vale has requested additional discovery on those issues, which the Court has already held to be relevant to Vale's statute of limitations defense.  Rio Tinto has rebuffed Vale's requests, as set forth below.

***Quinn's And Weil's Investigation On Behalf Of Rio Tinto.***  Rio Tinto's amended interrogatory responses, as clarified by further correspondence, identify Quinn Emanuel and attorneys William Burck, Mike Lyle, Eric Lyttle, Meghan McCaffrey, and Jaime Kaplan ("Quinn") as "persons and firms involved with Rio Tinto's investigation between April 30, 2010 and April 30, 2014."  Rio Tinto's identification of lawyers from its current firm as having been involved in its investigation is inconsistent with its prior representation to this Court that none of

---

[1] Those firms are: (1) Executive Research Associates, (2) Aeneas, (3) Livingstone and Company, (4) Weil, Gotshal and Manges LLP, (5) Quinn Emanuel Urquhart & Sullivan, and (6) Amsterdam & Partners LLP.   Rio Tinto identified the following as having been involved with its investigation after December 2008 but concluding by April 29, 2010:  (1) BTG Intelligence and (2) Africa Risk Consulting.

its lawyers had any "first-hand percipient knowledge of the investigation."  (Jan. 13, 2014 Tr. 50:5-10.)

In light of Quinn's admission that it is a witness to and participant in Rio Tinto's investigation, Vale requested by letter dated February 24, 2015 that Rio Tinto produce non-privileged materials by March 17, 2015 related to that investigation, including pitch books, letters of engagement, invoices, and correspondence it may have had with Vale or BSGR relating to any investigation of a potential claim for Rio Tinto's loss with respect to Simandou.  Vale also requested that Quinn preserve all related documents, in light of the Court's order regarding a future determination of a potential privilege waiver.  (Dec. 9, 2014 Tr. 20:22-21:3.)  After further discussion, Quinn indicated that it would not voluntarily produce these materials and Vale served subpoenas on Quinn on March 6, 2015 (for non-privileged documents) and on March 9, 2015 (for privileged documents or else a privilege log).[2]

On March 11, 2015, Quinn indicated it would be objecting to these subpoenas and that the issue should be raised with the Court before the subpoena responses are due.  Quinn has claimed that, other than conducting fact interviews (which it claims are privileged) and reading the reports of the investigative firms, it did not conduct or direct its own investigation.  Vale is entitled to test that claim.  Information regarding the nature of the engagement, the hours billed, the activities conducted, and the time spent on Quinn's investigation, Vale believes, will demonstrate that Rio Tinto, despite the red flags in the investigative reports, was not in fact conducting a lengthy investigation of its claims regarding the loss of its concession (especially from December 2010 on) and that no such investigation was thwarted by Vale.

The Court has already ordered Rio Tinto to "produce the factual information from any privileged document that is relevant to the investigation and diligence issue, and log everything else." (Dec. 9, 2014 Tr. 20:23-21:1.)  The manifest purpose of such logging was so that the Court could determine – based on a more fulsome record – whether as to any particular document "there indeed has been a waiver or not."  (*Id.* at 21:2.)  Quinn should do the same, so that the Court can resolve the issue of waiver.

Vale recognizes that the Court has so far ruled that document production by Rio Tinto itself should proceed, except with regard to productions already ordered by the Court, in accordance with the rolling production schedule, which contemplates document production to be substantially completed by June 30, 2015.  This ruling does not cover the subpoenas to Quinn, as Quinn has suggested in agreeing that the issue should be raised at this time, which call for

---

[2] On February 24, 2015, Vale also served a subpoena on Rio Tinto's former counsel, Weil, Gotshal and Manges LLP ("Weil"), with which Rio Tinto's current attorneys were associated at the time they began the investigation at issue.  Weil has objected to that subpoena on the grounds that certain of the relevant files were transferred to Quinn and that compliance would be burdensome.  Vale is working with Weil to narrow the scope of the Weil subpoena to limited categories that can easily be produced, including (1) letters of engagement with Rio Tinto, (2) bills and invoices, and (3) the letter from Rio Tinto requesting that Weil transfer all relevant documents in its possession to Quinn.  Vale has asked that Weil produce these documents by March 26, 2015, the date on which the subpoena is returnable.

Quinn's own non-privileged materials and its production of a privilege log for those of its own materials for which it claims a privilege (which, Vale submits, will assist in determining the larger privilege waiver issue in a timely way).

**Confidentiality Of Investigative Reports And Failure To Disclose Sources.**  The investigative reports Rio Tinto has produced contain a double layer of protection that is unjustified and prejudices Vale's defense.  *First*, the reports redact the names of the individuals who served as sources of information contained therein, many of whom are obviously potential witnesses in this action (and may be called or sought to be called by Vale, if not by Rio Tinto).  *Second*, all the reports are designated "Highly Confidential – Attorneys' Eyes Only."  Vale has objected the redactions and designations, and also has requested that Rio Tinto amend its interrogatory responses, which fail to identify the sources for these investigative reports, who purportedly have knowledge of the claims in the Amended Complaint.  Rio Tinto has refused to identify its sources and objected to any de-designation of the reports.

Rio Tinto's refusal to identify these individuals is based solely on the unsupported assertion that they "face reprisal, economic, business reprisal, and potentially personal harm" (Jan. 13, 2015 Tr. 52:4-5), as it cannot deny their relevance.  This objection is not well founded, since Rio Tinto can – and in fact has – designate unredacted Responses to Vale's Interrogatories as well as the reports themselves as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order in this case, which renders any confidentiality concerns moot.  *See In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 38 (S.D.N.Y. 2003) ("[T]he parties have agreed to treat the identities of these customers as confidential, meaning that the information requested will only be shared with counsel (including in-house counsel) and certain limited non-legal personnel . . . . The parties, in other words, have already addressed plaintiffs' confidentiality concerns."); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CV. 8144 (SWK), 2008 WL 2941215, at *5 (S.D.N.Y. July 30, 2008) (rejecting plaintiff's argument that the risk of retaliation justified it not disclosing the identity of confidential sources).

The Protective Order defines "AEO" information as information that is "extremely sensitive," the disclosure of which "would create a substantial risk of serious harm (including, but not limited, to trade secrets, financial data, personal information, or competitively-sensitive information about future business plans and strategies) that could not be avoided by less restrictive means" (Dk. 81 at I.9).  The information contained in the reports does not fit this description.  The only reason Rio Tinto has proffered why the reports require protection is the unsupported assertion that their disclosure would expose the sources identified therein to retaliation.  (Jan. 13, 2015 Tr. 52:1-11.)  Of course, given that the sources are redacted, that justification fails.  At a minimum, Rio Tinto's rationale would require producing unredacted copies of the reports and designating as AEO only those portions that were previously redacted (*i.e.*, the pages containing sources' names).

The production of investigative reports also leaves no doubt that Rio Tinto's Third Amended Interrogatory Responses remain deficient, because Rio Tinto has failed to identify several individuals referenced in the reports who purportedly have knowledge of the allegations in the Amended Complaint, and indeed on whose knowledge many of those allegations appear to be based.  Vale requested that Rio Tinto amend its responses to include these sources and produce unredacted versions of the reports, information to which Vale is clearly entitled.  *See*

Fed. R. Civ. P. 26(b)(1) (allowing parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter"); *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. at 33-34 (requiring disclosure of confidential sources with knowledge related to plaintiffs' claims, regardless of whether plaintiffs intend to rely on those individuals at trial). Rio Tinto has refused to do so.

In short, Rio Tinto should be required to produce: (1) unredacted reports with the appropriate confidentiality designation, including AEO as appropriate; (2) redacted reports that are not designated AEO; (3) amended interrogatory responses that list all individuals with knowledge of the facts alleged in its Amended Complaint, with an appropriate confidentiality designation; and (4) a redacted version of those interrogatory responses without any confidentiality designation.

## VI.    THIRD PARTY DISCOVERY

### A.    Plaintiffs' Position

***Subpoenas on Quinn Emanuel and Weil Gotshal, Rio Tinto's Lawyers in this Litigation.***  On February 24, 2015, Vale served a subpoena on Weil Gotshal ("Weil"), the law firm at which Rio Tinto's outside lawyers worked prior to joining Quinn Emanuel ("Quinn"). Vale followed that subpoena with two more subpoenas (served on March 6 and March 9) on Quinn, the law firm at which Rio Tinto's lawyers now work.  Those subpoenas request that Quinn and Weil produce materials related to Rio Tinto's investigation into the activities of Vale and BSGR at Simandou.[3]  Even though its response is not due until March 26, Weil already has written to object to the subpoena (attached hereto as Ex. B).  Similarly, Quinn's responses to the subpoenas served on it are not due until April 6 and April 8, respectively.  But we also have raised our objections with Vale early in order to avoid unnecessary delay.  To date, Vale has not withdrawn the subpoenas.  We are now similarly raising this issue with the Court early and asking it to quash these improper subpoenas.

As an initial matter, the subpoenas are an end run around Your Honor's order.  On January 13, 2015, we advised Your Honor that we did not intend to search the files of either our current or former law firm.  *See* Jan. 13, 2015 Hr'g Tr. 51:14–16 (In response to, "We, your Honor, are not planning to search Quinn Emanuel or Weil Gotshal files," Your Honor replied, "Understood.")  Vale's subpoenas therefore are an impermissible attempt to get through non-party discovery what Your Honor has already denied.

---

[3]   Even though the subpoena to Weil purportedly only seeks non-privileged information, Vale has made it clear it intends to seek privileged information from Weil as well.  *See* February 24, 2015 Letter from L. Liman to Weil (attached hereto as Exhibit C) ("We view this subpoena as an *initial step in our discovery* relating to Rio Tinto's affirmative claim that it should be excused from the requirement to timely file under RICO…Vale takes the position that Rio Tinto has waived claims of privilege with respect to its assertions concerning its investigation and accordingly that Vale may be entitled to further discovery from Weil *on that issue*) (emphasis added).

In any event, Vale's purported justifications for these subpoenas are entirely without merit. Vale contends these subpoenas are proper because Rio Tinto has waived privilege over its investigation by putting it "at issue" with its fraudulent concealment/equitable tolling arguments. Vale's argument directly contradicts the Second Circuit's decision in *In re County of Erie,* 546 F.3d 222, 229 (2d Cir. 2008) ("at-issue" waiver is strictly limited to when a party relies "on privileged advice from his counsel to make his claim or defense"). Moreover, the subpoenas on their face seek privileged information that is not even relevant to the tolling Rio Tinto asserts. As we have repeatedly explained to Vale in the past, the work by lawyers from Weil began in the fall of 2010 and the work by lawyers from Quinn began in April 2013 – both periods fall within the applicable four year statute of limitations. As a result, neither Weil nor Quinn have any documents from the period in which tolling is even possibly relevant, *i.e.*, from December 2008-April 2010.

For the post-April 2010 work performed by Quinn and Weil, only non-privileged factual information is discoverable and Vale already has it (from the investigator reports that already have been produced) or will get it from Rio Tinto's files and witnesses. Indeed, Vale's subpoenas fundamentally mistake the law firms' roles in Rio Tinto's investigation. As we have explained to Vale, neither Quinn nor Weil lawyers were fact gatherers in connection with the investigator reports. We did not supervise the investigators; we didn't even select or hire them. We were not in the field with the investigators, we were not reviewing the investigators' notes and deciding what should be included in the reports, and we were not advising them about what sources to pursue. We were not recipients of any factual information that Vale has not already been provided in the investigator reports or in the public record.[4] At bottom, the Quinn/Weil attorneys read the exact same investigative reports and public records Vale now has, containing the same facts Vale now knows. Our review of those facts and the legal advice we rendered based on them (all during – not before – the statute of limitations period so no tolling required) are, of course, privileged.

For these reasons, any non-privileged factual information related to Rio Tinto's investigation will be in Rio Tinto's files, and we already have agreed to search for and produce it. Similarly, for privileged information related to that investigation, we have agreed to search the files of our in-house counsel in order to identify and log it. This will necessarily include any communications from outside lawyers at Quinn or Weil. Because Vale already will be getting non-privileged factual materials and a log showing privileged communications relating to the investigation from Rio Tinto's files, the subpoenas amount to nothing more than asking the law

---

[4]   The only piece of Quinn Emanuel's or Weil Gotshal's investigation that Vales does not have relates to counsel's interviews of company witnesses as part of evaluating legal options. This is standard practice before filing suit, and is unquestionably protected. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 JMF, 2015 WL 221057, at *10 (S.D.N.Y. Jan. 15, 2015) (holding that outside law firm's interviews were privileged and noting that "[i]nterview notes and memoranda produced in the course of similar internal investigations have long been considered classic attorney work product"); *William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009) (Peck, J.) (quoting *Granite Partners L.P. v. Bear, Stearns & Co.,* 184 F.R.D. 49, 52 (S.D.N.Y.1999), to note: "The doctrine extends to notes, memoranda, witness interviews, and other materials."). Vale of course will get to depose these Rio Tinto witnesses to learn what facts they know, but Vale is not entitled to see the communications between counsel and our client, Rio Tinto, especially during – not before – the applicable limitations period.

firms to locate and log all of the information in their files that is unquestionably protected by the attorney-client and work product privileges. That is an unnecessary, expensive, and unduly burdensome abuse of discovery that is prohibited under the Federal Rules.

The specific materials sought by the subpoena are equally objectionable. First, the subpoena requests Quinn's and Weil's proposals and engagement letters. As an initial matter, we are not aware of any proposals or marketing materials that were provided, but anything that was would be captured as part of our search of Rio Tinto's files. And engagement and disengagement letters are irrelevant other than to maybe show Vale (1) when Quinn and Weil were engaged (something we already have told Vale and this Court), and (2) the scope of services, which is privileged and would be redacted anyways. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 101 (S.D.N.Y. 2009) (any materials that "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege.") The myriad of other things in engagement letters, such as the rates we charge or anything associated with conflicts, are not relevant.

Second, the subpoena requests bills, invoices, and time sheets. How much we have billed, and the hours we spent doing it are not relevant. And while invoices might be discoverable, the detailed time entries ours contain are not. Indeed, the materials Vale requested contain details about specific legal research performed by Quinn/Weil attorneys and communications between Quinn/Weil and Rio Tinto. Disclosure of these detailed time entries therefore amounts to disclosure of privileged litigation strategy. *See, e.g., DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005) (applying New York law to find that attorney invoices are privileged if they provide "detailed accounts of the legal services rendered"); *105 St. Associates, LLC v. Greenwich Ins. Co.*, No. 05 CIV. 9938(VM)(DF), 2006 WL 3230292, at *6 (S.D.N.Y. Nov. 7, 2006) ("[B]illing statements that are detailed in showing services, conversations, and conferences between counsel and others are protected by the attorney-client privilege."); *Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) ("[C]orrespondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, . . ., fall within the privilege."); *United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 183522, at *5 (E.D.N.Y. Jan. 8, 2010) (finding that invoice descriptions of various tasks performed by a law firm were protected attorney work product). Redacting our time entries is a pointless exercise since we would essentially be redacting everything other than the date of the work and who performed it.

Third, the subpoenas request all correspondence with Vale concerning Simandou, Guinea, BSGR, Steinmetz, and/or Vale. As an initial matter, we are not aware of any such correspondence. In any event, Vale already has any such correspondence in its possession, so we should not have to expend time and resources trying to locate it.

Finally, the subpoenas request all documents "concerning Simandou, Vale, BSGR, Steinmetz, and/or the loss by Rio Tinto of any of its rights in Simandou." This request is patently overbroad and burdensome. It effectively asks Quinn/Weil to produce its entire file in this litigation, and most, if not all, of these documents are privileged attorney-client communications and attorney work product. *See, e.g., Estate of Ungar v. Palestinian Auth.*, 332

F. App'x 643, 645 (2d Cir. 2009) (affirming the decision to quash a subpoena that asked for essentially every document a law firm possessed relating to its representation of a nonparty); *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007) (finding that subpoena was overbroad and sought privileged documents where it requested from the attorney all records, documents, and communications related to the case); *Murphy v. Gorman*, 271 F.R.D. 296, 322–23 (D.N.M. 2010) (quashing subpoena requesting "law firm's memoranda, notes, correspondence, and electronic-mail," and noting that not only is a privilege log for the entire file unnecessary, but if it is produced, the requesting law firm must produce one as well). And again, any non-privileged responsive documents will be captured as part of our search of Rio Tinto's files.

With its subpoenas, Vale impermissibly seeks to pierce one of the most sacrosanct and protected privileges under the law – the attorney-client privilege. Vale reaches too far and its requests must be denied. Rio Tinto has not effected an implied waiver of the attorney-client privilege merely by invoking the discovery rule in response to Vale's statute of limitations defense. The discovery rule is evaluated by looking at the facts known to the party seeking to toll – Vale already has those facts in the investigator reports that have been produced and can seek any further clarification about the factual knowledge Rio Tinto held from Rio Tinto witnesses themselves. Rio Tinto is relying on the facts known to it – not *any* privileged communications or documents such as the legal advice based on those facts – in support of tolling. The case law on this is clear: where a party is not relying on the privileged communication as a claim or defense, the privilege remains intact. *See, e.g., In re County of Erie,* 546 F.3d at 229; *see also Green v. Beer,* 2010 WL 2653650 at *5–6 (S.D.N.Y. July 2, 2010) (holding that legal advice was relevant but not waived where parties were not relying on the advice); *Weiss v. Nat'l Westminister Bank*, PLC, No. CV 05-4622 CPS/MDG, 2008 WL 5115027, at *3 (E.D.N.Y. Dec. 3, 2008) (lawyers from Cleary Gottlieb, including Mr. Jonathan Blackman who represents Vale here, successfully asserting that "the efficacy of [the client's] defense of lack of knowledge turns on what it knew rather than on the bona fides of the opinions of its counsel").

### B.    Defendant Vale's Position

After Rio Tinto refused to de-designate excerpted portions of its investigative reports in order for Vale to file its Applications for International Letters of Request seeking discovery under the Hague Convention from the foreign investigative firms, on March 11, 2015, Vale sought leave from this Court to file the Applications under seal. Those excerpts from the reports are necessary to provide the specificity required for the requests to satisfy the standards applicable in the relevant foreign jurisdictions, as Rio Tinto expressly recognized. Vale's application remains pending. Vale requests that it be granted and that the Court promptly authorize the issuance of the Letters.

Rio Tinto has indicated that it will oppose the Applications on the grounds that it has confidentiality obligations to the investigative firms. This is a new, belated, and meritless objection. The information requested is highly relevant to Rio Tinto's claim that it conducted due diligence and that fraudulent concealment tolls the statute of limitations. The information requested regarding the nature of the engagement, the hours billed, the activities conducted, and the time spent on the investigation will demonstrate that Rio Tinto was well aware of any red flags with respect to BSGR's purported bribery well before April 2010 and, despite these red

flags, was not in fact conducting a lengthy investigation of its claims regarding the loss of its concession and was not thwarted by Vale.  Vale also believes this discovery will demonstrate, among other things, that Rio Tinto did not hire these firms to conduct an investigation of its claim, but to gather competitive intelligence.

*       *       *

The parties will continue to keep the Court informed of their progress as the meet and confer process advances.

Very truly yours,


/s/Michael Lyle
Michael Lyle