# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc, | |
|                 Plaintiff, | |
|      -against- | |
| Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam, | 14 Civ. 3042 (RMB)(AJP) |
|               Defendants. | |

## JOINT APPLICATION FOR THE ISSUANCE OF
## INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)

Plaintiff Rio Tinto plc ("Rio Tinto") and Defendant Vale S.A. ("Vale," and together with Rio Tinto the "Applicants"), respectfully petition this Court pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"), for the issuance of a Letter of Request in the form annexed hereto as Exhibit B, addressed to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, requesting that the Senior Master cause the Letter of Request to be served upon the designated recipients.  In support thereof, the Applicants respectfully represents as follows:

### BACKGROUND

1.      On April 30, 2014, Rio Tinto filed a complaint in this Court against Vale, BSG Resources Ltd. ("BSGR"), and the other named defendants (together, "Defendants") alleging, *inter alia*, that Vale and BSGR had conspired to take for themselves Rio Tinto's iron ore mining

rights to the Simandou area of the Republic of Guinea ("Guinea") in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Dkt. No. 2.)  Rio Tinto filed an amended complaint ("AC") with substantially similar allegations on August 15, 2014.  (Dkt. No. 83.)

2.      On February 6, 2015, Defendants moved on various grounds to dismiss the claims respectively made against them, including in the case of BSGR for asserted lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Dkt. No. 180.)

3.      Notwithstanding BSGR's motion to dismiss on personal jurisdiction grounds, the Court has ordered that merits discovery proceed in this case for all Defendants, including BSGR. (Dkt. No. 163; Jan. 20, 2015 Hr'g Tr. 8:24-9:8.)  Rio Tinto and Vale have served requests for documents under the Federal Rules of Civil Procedure on BSGR seeking evidence relevant to the claims made by Rio Tinto and Vale's defenses to them.

4.      However, because the issue of personal jurisdiction over BSGR is presently unresolved, Your Honor has suggested that it may ultimately prove necessary to seek evidence from BSGR under the Hague Evidence Convention, and has instructed the Parties to endeavor to reach agreement on the text of an appropriate Letter of Request.  (Jan. 13, 2015 Hr'g Tr. 17:16-18:20; *see also* Feb. 27 Hr'g Tr. 19:22-20:21.)

5.      The Parties have conferred and agreed to the terms of Part 8 of the attached Letter of Request and accordingly, Rio Tinto and Vale hereby request that the Court issue the attached Letter of Request under the Hague Convention pending resolution of the Defendants' pending motion to dismiss, as suggested by Your Honor.  Under the Court's scheduling order, document productions by the parties must be substantially complete by June 30, 2015.  (Dkt. No. 163.) Given this tight timetable, and in light of the time necessary to obtain evidence under the Hague Convention, the Applicants are making this application now so that the process of issuing the

Letter of Request in this Court and enforcing it in the United Kingdom can be completed within the existing deadlines and without any prejudice to pursue discovery pursuant to the Federal Rules of Civil Procedure should the Court deny BSGR's and Mr. Steinmetz's motion to dismiss for lack of personal jurisdiction.

## RELIEF REQUESTED

6.     The Applicants therefore request that this Court issue an Order in the form attached hereto as Exhibit A:

(a)     Providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature;

(b)     Requiring that the Clerk of the District Court return the original, signed Letter of Request to counsel to Vale, so that said Letter of Request may be delivered to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, where the requested evidence may be found; and

(c)     Directing counsel for Vale to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom;

so that Rio Tinto and Vale may obtain for use at trial potential evidence material to the claims and defenses at issue in the above-captioned litigation.

7.     The persons from whom evidence is sought by the Letter of Request are BSGR; Onyx Financial Advisors Limited ("Onyx"), which provides management services to BSGR; Dag Cramer, an officer of Onyx; and to the extent available within the jurisdiction of the Courts of the United Kingdom of Great Britain and Northern Ireland, Benjamin Steinmetz, Asher

Avidan, Marcus Struik, David Clark, Yossie Tchelet, Ian Cope, Iwan Williams, and Sandra Merloni-Horemans.  To the extent, if any, that materials in the possession or control of Onyx are not within the possession or control of BSGR, then this Letter of Request should be construed as being made separately to Onyx.

8.     BSGR and the individuals connected with it have knowledge of facts bearing on the central issues of this case, and the documents and testimony sought are material to Rio Tinto's claims and/or Vale's defenses.

9.     Vale and Rio Tinto have considered the requirements of the Courts of England and Wales in respect of Letters of Request, including the form in which the Letter of Request should be presented to the English Court and its permissible content.  Both parties believe that this Letter of Request is consistent with these requirements, as contained in the UK Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules.  BSGR consents to the submission and enforcement of the attached Letter of Request.  This Court is requested to issue this Letter of Request on this basis.

10.     Vale and Rio Tinto request that after this Court has signed the Letter of Request, it be returned to Vale for forwarding to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process Section, Room E16).

WHEREFORE, the Applicants respectfully request that the Court enter the attached form of order (i) providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature; (ii) directing that the Clerk of the District Court return the original, signed Letter of Request to counsel for Vale,

so that said Letter of Request may be issued to the Competent Judicial Authority of the United

Kingdom; (iii) directing counsel for Vale to transmit the original, signed Letter of Request to the

Competent Judicial Authority of the United Kingdom; and (iv) granting such other relief as the

Court deems just and proper.

Dated: New York, New York

   March 13, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP


_____

Jonathan I. Blackman
Lewis J. Liman
Boaz S. Morag
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000
Facsimile: (212) 225 3999

*Counsel for Vale, S.A.*

QUINN EMANUEL URQUHART AND SULLIVAN LLP


_____

William A. Burck
Michael J. Lyle
Eric C. Lyttle
Stephen M. Hauss
777 6th Street, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
williamburck@quinnemanuel.com
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
stephenhauss@quinnemanuel.com

*Attorneys for Plaintiff Rio Tinto plc*

# EXHIBIT A

# (DRAFT ORDER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>                    Plaintiff,<br><br>          -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,<br><br>                    Defendants. | 14 Civ. 3042 (RMB)(AJP) |

### ORDER GRANTING JOINT APPLICATION FOR
### ISSUANCE OF INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)

Upon the Application for the Issuance of an International Letter of Request (Letter Rogatory) (the "Application") filed by Plaintiff Rio Tinto plc ("Rio Tinto") and Defendant Vale, S.A. ("Vale," and together with Rio Tinto the "Applicants"), requesting the issuance of an international letter of request (the "Letter of Request") pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

This Court shall sign the Letter of Request attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature.

The Clerk of the District Court is directed to return the original, signed Letter of Request to counsel for Vale so that said Letter of Request may be issued to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom.

Counsel to Vale are directed to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.

Dated: _____, 2015
          New York, New York


_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE

8

# EXHIBIT B

# (LETTER OF REQUEST)

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |
| 2. | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |

4.      **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Document productions to occur as the parties may agree, but no later than June 30, 2015. |
| **Reason for urgency** | Under the Court's Scheduling Order (Dkt. Nos. 161, 163), document productions must be substantially complete by June 30, 2015. |

IN COMFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| 5. *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |

|   |   |   |
|---|---|---|
| *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland |

**6.** **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

|   |   |   |
|---|---|---|
| *a* | **Plaintiff** | **Rio Tinto plc** |
|   | **Representatives** | William A. Burck<br>Michael J. Lyle<br>Eric C. Lyttle<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>777 6th Street NW, 11th Floor<br>Washington, DC 20001<br>Telephone: (202) 538-8000<br>Facsimile: (202) 538-8100 |
| *b* | **Defendants** | **Vale, S.A.** |
|   | **Representatives** | Jonathan I. Blackman<br>Lewis J. Liman<br>Boaz S. Morag<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |
|   |   | **BSG Resources Limited** |
|   | **Representatives** | Vincent Filardo, Jr.<br>Timothy J. McCarthy<br>Mishcon de Reya New York, LLP<br>750 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 612 3270<br>Facsimile: (212) 612-3297 |
|   |   | **Benjamin Steinmetz** |

11

|                 |                                           |
|-----------------|-------------------------------------------|
| Representatives | Vincent Filardo, Jr.                      |
|                 | Timothy J. McCarthy                       |
|                 |                                           |
|                 | Mishcon de Reya New York, LLP             |
|                 | 750 Seventh Avenue                        |
|                 | New York, New York 10019                  |
|                 | Telephone: (212) 612 3270                 |
|                 | Facsimile: (212) 612-3297                 |

**BSG Resources Guinee SARL**
*also known as*
VBG-Vale BSGR Guinea

|                 |                                             |
|-----------------|---------------------------------------------|
| Representatives | Martin Joel Auerbach                        |
|                 | Law Offices of Martin J. Auerbach, Esq      |
|                 | 1185 Avenue of the Americas, 31st Floor     |
|                 | New York, New York 10036                    |
|                 | Telephone: (212) 704 4347                   |
|                 | Facsimile: (212) 3040175                    |

**Mahmoud Thiam**

|                 |                                  |
|-----------------|----------------------------------|
| Representatives | Paul Eliot Summit                |
|                 | Sullivan & Worcester LLP (MA)    |
|                 | One Post Office Square           |
|                 | Boston, MA 02109                 |
|                 | Telephone: (617) 210 8437        |
|                 | Facsimile: (617) 338 2880        |

**7.      Nature of the proceedings and summary of claims (Article 3,c)**

7.1     This action, captioned <u>Rio Tinto v. Vale, S.A., et al.</u>, Case No. 14 Civ. 3042

(RMB)(AJP) (the "Action"), is a civil litigation proceeding pending before the Requesting Court

asserting, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO") by Vale, BSG Resources Limited, VBG – Vale BSGR Limited and BSG Resources

Guinée SARL, Frédéric Cilins, Mamadie Touré, and Mahmoud Thiam.  All of the defendants are

alleged to have been co-conspirators in a scheme to steal Rio Tinto's mining rights to Blocks 1

and 2 in the Simandou region of Guinea.  In this application, the term "BSGR" is used to refer to

BSG Resources Limited as well as any of its subsidiaries, or its affiliates.  The term

"Representative" is used to refer to Benjamin Steinmetz, Dag Cramer, Asher Avidan, Marcus Struik, David Clark, Yossie Tchelet, Ian Cope, Iwan Williams, and Sandra Merloni-Horemans. Although not named as defendants, Rio Tinto's complaint has identified Avraham Lev Ran and Michael Noy as Representatives of BSGR, who are alleged to have been co-conspirators with the defendants.

7.2     Rio Tinto, headquartered in the United Kingdom, is one of the three largest mining companies in the world, operating globally and mining a wide variety of metals and minerals, including iron ore.

7.3     Vale, a Brazilian corporation, is another of the world's three largest mining companies and also mines iron ore among numerous other metals and minerals.

7.4     BSGR is a Guernsey corporation that is principally engaged in mining operations in Africa and eastern Europe, but which also engages in power generation and oil and gas exploration and production.  The company is wholly owned by Nysco Management Corporation Limited, a company incorporated in the British Virgin Islands, which is in turn wholly owned by the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose beneficiaries are Benjamin ("Beny") Steinmetz, an Israeli businessman domiciled in Switzerland, and members of his family.  Onyx Financial Advisors Limited ("Onyx") provides management services to BSGR from an office in London, where BSGR is also alleged to have an office.

7.5     In February 1997, the government of the West African nation of Guinea (the "Government of Guinea") awarded permits to Rio Tinto to explore an area of Guinea called Simandou, which is known to be one of the most significant untapped iron ore deposits in the world.  In 2006, the Government of Guinea awarded Rio Tinto a Concession that consisted of mining rights to four "Blocks" or areas of Simandou: Blocks 1, 2, 3, and 4.  Rio Tinto claims to

have developed railway and port plans to transport iron ore from Simandou by rail to the coast of

the Atlantic Ocean, either through Guinea or through the neighboring country of Liberia.

7.6     In 2008, Rio Tinto and Vale discussed possible transactions related to certain

assets, including Rio Tinto's Simandou concession, and executed a Confidentiality Deed, after

which Rio Tinto opened a data room so that Vale could review certain of Rio Tinto's allegedly

highly confidential and proprietary documents.  On December 4, 2008, the Government of

Guinea withdrew half of the Rio Tinto Concession, which covered Blocks 1 and 2 of Simandou.

Notwithstanding this revocation, Rio Tinto and Vale continued to explore a possible transaction

involving Simandou until June 2009.

7.7     On December 9, 2008, BSGR was granted an exploration permit for Simandou

Blocks 1 and 2.  On April 30, 2010, Vale and BSGR signed a Framework Agreement and

Shareholders' Agreement, creating a joint venture, which was called "VBG-Vale BSGR Guinea"

("VBG"), to develop Simandou Blocks 1 and 2.

7.8     On October 30, 2012, VBG received notice that a Technical Committee for the

Review of Mining Titles and Agreements of the Government of the Republic of Guinea (the

"Technical Committee") had begun investigating how BSGR had obtained its mining rights to

Simandou.  This notice identified various assertedly corrupt actions that had come to the

Technical Committee's attention, alleged to have been carried out by BSGR Guinea and its

agents, including Frédéric Cilins, in order to improperly influence the Government of Guinea

into awarding the mining rights to BSGR.  In April 2014, after concluding its investigation, the

Government of Guinea revoked VBG's rights to Simandou, having concluded that BSGR had

obtained its rights to Blocks 1 and 2 of Simandou through corrupt acts.  The Technical

Committee also found that, based on the information obtained in its investigation, it was "likely

that [Vale] did not participate in the corrupt practices."  Following the withdrawal of the mining

rights, Vale instituted an arbitration proceeding against BSGR alleging, in part, that it was

defrauded by BSGR.

7.9     The following day, Rio Tinto filed its complaint against Vale, BSGR, and a

number of other parties alleging, *inter alia*, that it lost its rights to Simandou Blocks 1 and 2

because of a conspiracy by Vale and BSGR.  Rio Tinto alleges that, as a result of BSGR's

alleged bribery and Vale's alleged disclosure of Rio Tinto's highly confidential and proprietary

documents to BSGR, the Defendants were able to secure Rio Tinto's rights to Simandou Blocks

1 and 2.  Rio Tinto further alleges that one or more Defendants engaged in additional bribery and

took actions to intimidate Rio Tinto and to conceal evidence of the alleged wrongdoing.  An

Amended Complaint with substantially similar allegations was filed on August 15, 2014.

7.10    Vale denies each of the allegations made against it, any conspiracy with BSGR or

any other Defendant, any involvement in alleged corrupt activities by BSGR and Steinmetz, and

any theft or use of Rio Tinto's confidential information.

7.11    BSGR denies each of the allegations against it, including allegations of corrupt

activities in Guinea and of any conspiracy with Vale.  BSGR asserts that the findings of the

Technical Committee were themselves improperly influenced, and that certain documents

purporting to indicate misconduct by it and its personnel are later forgeries.  BSGR further notes

that it has itself brought affirmative claims in arbitration against the Government of Guinea for

the wrongful revocation of VBG's rights to Simandou Blocks 1 and 2.

7.12    The evidence sought hereby is material to the resolution of these disputes.

8.    **Evidence to be obtained and documents to be inspected (Article 3,d and 3,g)**

8.1     It is therefore requested that BSGR be required to produce the specified documents described herein as are believed to exist in its power, possession or control. To the extent, if any, that materials in the possession or control of Onyx are not within the possession or control of BSGR, then this Letter of Request should be construed as being made also to Onyx and references to BSGR shall be read also as references to Onyx.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

    a.   The emails, letters and other documents and communications within the possession custody or power of BSGR that were exchanged between BSGR Representatives and ArcelorMittal Representatives and between BSGR Representatives and Chinalco Representatives, regarding a potential joint venture, partnership, or similar investment in Simandou Blocks 1 and 2, between January 1, 2008 and April 30, 2010.

    b.   The flight logs and passenger details for BSGR's private aircraft Challenger 601, registration VP-CBS, from 2005 to 2014 referred to in the First Witness Statement of Dag Lars Cramer dated November 25, 2014 in the claim BSG Resources Limited v. The Director of the Serious Fraud Office and The Secretary of State for the Home Department dated November 26, 2014, Claim No. CO/5477/2014.

    c.   The itineraries, records and receipts retained by BSGR in relation to travel to Guinea by Benjamin Steinmetz, Asher Avidan,  Marc Struik, Dag Cramer, Yossie Tchelet, Sandra Merloni-Horemans, Avraham Lev Ran, Frédéric Cilins, Roy Oron, Michael Noy, Ian Cope, Iwan Williams, and Sandra Merloni-Horemans from January 1, 2005 until December 31, 2013.

d.  BSGR's "Overview of BSGR's Iron Ore Investment in Guinea: Chronicle of Events 2006-2012," and the documents annexed to it, which BSGR submitted to the Technical Committee in February 2012;

e.  The contract between Pentler Holdings and Ismaila Daou dated 20 February 2006 as referred to by Global Witness in "FBI surveillance implicates diamond billionaire in plan to subvert US fraud probe," dated 9 April 2014, p. 4;[1]

f.  The letter from Aboubacar Bah to BSGR demanding payment under the Memorandum of Understanding signed by Aboubacar Bah, Ibrahima Sory Touré, Pentler Holdings, Ltd., dated 20 February 2006;

g.  The letters, emails and attachments sent between Mamadie Touré and Frédéric Cilins exchanging versions of a declaration between 27 April 2012 and 5 May 2012;

h.  The letters, emails and attachments from Michael Noy to Frédéric Cilins with edits to the draft of proposed attestation by Mamadie Touré generated in or around March-April 2013;

i.  *Alleged gifts to Representatives of the Government of Guinea by BSGR or its Representatives*

    i.  The invoice and the receipt relating to the gift of pharmaceuticals allegedly made to the Henriette Conté Foundation in 2004-2005 by Frédéric Cilins.

    ii. The invoice and the receipt relating to the gift of a diamond-covered gold watch allegedly made to President Conté by Roy Oron, and the document that identifies the source of the diamonds in the watch.

---

[1] Available at http://www.globalwitness.org/sites/default/files/library/GW%20BSGR%20report%20-%2009.04.14.pdf

iii.   The invoice and the receipt relating to the gift of a model diamond-covered Formula 1 race car allegedly made to the Minister of Mines by Roy Oron, and the document that identifies the source of the diamonds in the model.

iv.   The invoice and the receipt relating to the gift of model diamond-covered Formula 1 race car allegedly made to President Conté by Beny Steinmetz, and the document that identifies the source of the diamonds in the model.

v.   The invoice and the receipt relating to the gift of two Land Cruisers allegedly made to Mamadie Touré by Asher Avidan and Beny Steinmetz as described in Mamadie Touré Decl. ¶ 26.

vi.   The invoice and the receipt relating to the gift of a necklace allegedly made to Mamadie Touré by Asher Avidan as described in Mamadie Touré Decl. ¶ 27, and the document that identifies the source of the necklace.

vii.   The invoice and the receipt relating to the gift of a white gold chain with seven diamonds allegedly made to Mamadie Touré by Asher Avidan as described in Mamadie Touré Decl. ¶ 27, and the document that identifies the source of the diamonds in the chain.

j.   *Alleged cash payments to Representatives of the Government of Guinea by BSGR or*

   *its Representatives*

    i.   The cashier's receipt[2] for the withdrawal of $200,000 in cash allegedly

        subsequently placed in a bag delivered by Ibrahima Sory Touré to

        Mamadie Touré on behalf of BSGR in 2006.

    ii.   The cashier's receipt for the withdrawal of $1 million in cash allegedly

        delivered by Asher Avidan to Mamadie Touré in the BSGR offices in

        2008.

   iii.   The cashier's receipt for the withdrawal of $5,000 allegedly given to

        Mamadie Touré in an envelope by Asher Avidan and Issiaga Bangoura

        on behalf of BSGR after the death of Lansana Conté in December 2008.

   iv.   The cashier's receipt for the withdrawal of $50,000 allegedly delivered

        by a BSGR Representative sent by Asher Avidan to Mamadie Touré in

        early 2009.

    v.   The cashier's receipt for the withdrawal of $1 million in cash allegedly

        paid by BSGR representatives to Mamadie Touré in 2009 as described in

        Mamadie Touré Decl. ¶ 64.

   vi.   The cashier's receipt for the withdrawal of cash for any payments

        allegedly made to Mahmoud Thiam by Beny Steinmetz or BSGR in and

        around the time Mahmoud Thiam sent Rio Tinto a February 29, 2009

        letter purporting to officially rescind Rio Tinto's rights to Blocks 1 and 2

---

[2] For the avoidance of doubt, all references herein to "cashier's receipt" or to "bank account statement" should be taken to encompass any such equivalent document if the same is referred to or known by a different term.

as alleged in paragraphs 97-98 and 101 of Rio Tinto's Amended Complaint;

vii.   The cashier's receipt for the withdrawal of cash for any payment allegedly made to Mahmoud Thiam in and around the time Mahmoud Thiam sent Rio Tinto a May 28, 2009 letter demanding that Rio Tinto remove its equipment from Blocks 1 and 2 as alleged in paragraphs 97, 99 and 101 of Rio Tinto's Amended Complaint;

viii.   The cashier's receipt for the withdrawal of cash for any payment allegedly made to Mahmoud Thiam in and around the time Mahmoud Thiam sent Rio Tinto a June 26, 2009 letter chastising Rio Tinto for questioning the validity of BSGR's rights to Blocks 1 and 2 as alleged in paragraph 97, 100-101 of Rio Tinto's Amended Complaint.

ix.   The cashier's receipt for the withdrawal of cash for another alleged installment payment by BSGR representatives to Mahmoud Thiam between mid-May and mid-June 2010 as alleged in paragraph 115 of Rio Tinto's Amended Complaint;

x.   Cashier receipts for the alleged withdrawal of cash for any payments made to Mahmoud Thiam between January 1, 2009 and December 31, 2011.

k.   *Alleged bank transfers to Representatives of the Government of Guinea by BSGR or its Representatives*

   i.  The bank account statement reflecting an alleged payment of $998,000 from Ghassan Boutrous' account at Rockel Commercial Bank to Mamadie Touré on behalf of BSGR on September 3, 2009.

  ii.  The bank account statement reflecting an alleged payment of $2,000 from Ghassan Boutrous' account at Rockel Commercial Bank to Mamadie Touré on behalf of BSGR on September 3, 2009.

 iii.  The bank account statement and the check receipt reflecting an alleged payment of $100,000 by check from Michael Noy to Mamadie Touré, dated July 21, 2010, from his Bank of Wachovia account on behalf of BSGR.

 iv.  The bank account statement reflecting an alleged payment of $149,970 by wire transfer from account in the name of Lev Ran at Bank Leumi to Mamadie Touré's Wells Fargo account, dated July 21, 2010.

  v.  The bank account statement and the check receipt reflecting an alleged payment of $100,000 by check issued from Wells Fargo Bank payable from Frédéric Cilins to Mamadie Touré dated July 27, 2010.

 vi.  The bank account statement and the check receipt reflecting an alleged payment of a $50,000 by check issued from Wells Fargo Bank payable from Frédéric Cilins to Mamadie Touré dated August 5, 2010.

 vii.  The bank account statement reflecting an alleged payment of $99,970 by wire transfer from Lev Ran's Bank Leumi account to Mamadie Touré's Wells Fargo account dated  August 5, 2010.

    viii.  The bank account statement reflecting an alleged payment of $500,000 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on October 11, 2011.

    ix.  The bank account statement reflecting an alleged payment of $250,000 by Olympia Title Insurance to Mamadie Touré 's BGMP account on 11 January 2012.

    x.  The bank account statement reflecting an alleged payment of $150,000 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on 11 January 2012.

    xi.  The bank account statement reflecting an alleged payment of $936,451 by Olympia Title Insurance to Mamadie Touré's Wells Fargo account on 14 May 2012.

    xii.  The wire transfers and comparable records evidencing payments relating to Simandou made by any BSGR Representative to (a) Frédéric Cilins; (c) Michael Noy; (d) Ibrahima Touré; (e) Mamadie Touré; (f) Moussa Dadis Camara; (g) Lonsana Conté; (h) Pentler Holdings; or (i) Matinda and Co. Limited.

l.  The itineraries, records, and receipts retained by BSGR in relation to travel:

    i.  to Dakar, Senegal in and around March 1, 2009 to meet with a representative for Vale;

    ii.  between March 19, 2009 and March 25, 2009 for meetings attended by Vale, Steinmetz, Moussa Dadis Camara, and Mahmoud Thiam;

        iii.  to Paris in and around April 2009 to meet with representatives for Vale and Mahmoud Thiam;

        iv.  to Brazil in January 2010 to meet with representatives for Vale.

m.  The email, letters, and other documents and communications held on the BSGR IT system or in other locations within the possession, custody or power of BSGR exchanged between Roy Oron, Marc Struik, Asher Avidan, and/or Frederic Cilins and Ibrahima Touré relating to Simandou or Guinea between January 1, 2005 through December 31, 2006, as alleged in the April 2014 Guinean Technical Committee Report at ¶¶ 17-18.

n.  The letters and other documents and communications produced by BSGR to:

        i.  the Government of Guinea (and the Technical Committee) from October 30, 2012 through the date of production,

        ii.  the United Kingdom's Serious Fraud Office between September 1, 2013 through the date of production,

        iii.  the U.S.'s Department of Justice between April 15, 2013 through the date of production,

        iv.  the public authorities of France between August 13, 2013 through the date of production,

        v.  the public authorities of Switzerland, including the Public Prosecutor's Office of the Canton of Geneva, between August 13, 2013 through the date of production, regarding their investigations of any alleged bribery or corruption in relation to obtaining mining rights at Simandou.

o.  The following formal documents of Pentler Holdings Ltd:

    i.  Memorandum of Association,

   ii.  Register of Members,

  iii.  Register of Mortgages and Charges,

  iv.  Incorporation Certificate,

   v.  Articles of Association,

  vi.  Register of Directors,

 vii.  The Minutes and Resolutions including the First Minutes and Resolutions,

viii.  Pentler's certificate of authorized capital stamped by Margali Management,

  ix.  The Letter from BSGR to Pentler dated 13 February 2006 attesting that Onyx holds 88250 shares in BSG Resources Guinea equivalent to 17.65% on behalf of Pentler Holdings, subject to the execution of the contract between BSG Resources (Guinea) Limited and the Government of Guinea regarding the mining exploration of iron ore and bauxite in Guinea,

   x.  The Power of Attorney dated 13 February 2006 authorizing Avraham Lev Ran to act on behalf of Pentler Holdings Ltd signed by Sandra Merloni-Horemans.

p.  The File of Correspondence provided to the court in the claim BSG Resources Limited v. The Director of the Serious Fraud Office and The Secretary of State for the Home Department dated November 26, 2014; Claim No. CO/5477/2014.

q.  The emails, letters and other documents and communications on the BSGR IT system or in other locations within the possession custody or power of BSGR, between BSGR Representatives regarding BSGR's representations and warranties in the Framework and Shareholders Agreements entered into with Vale, from July 1, 2009 until April 30, 2010.

r.  The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the possession custody or power of BSGR which reflect:

    i.  Cilins' activities in Guinea on BSGR's behalf relating to Simandou;

    ii.  Cilins' interactions with Mamadie Touré in Jacksonville, Florida and New York;

    iii.  Agreements between Cilins and BSGR relating to Guinea, Simandou, Mamadie Touré, or payments to Representatives of the Government of Guinea, or payments to Cilins' or Cooley LLP relating to Cilins' representation in his criminal case;

    iv.  Payments from BSGR to Cilins relating to Guinea, Simandou, Mamadie Touré, payments to Representatives of the Government of Guinea, or payments to Cilins' or Cooley LLP relating to Cilins' representation in his criminal case;

    v.  Cilins' contacts with Roy Oron, Ibrahima Touré, Mamadie Touré, Mahmoud Thiam, Moussa Dadis Camara, Lansana Conté, Kassory Fofana, Pentler Holdings, or Matinda and Co. Limited;

vi.   Cilins' offer to pay Mamadie Touré $12 million, which was to be distributed to President Lansana Conté or other Guinean ministers or officials, as alleged in ¶11 of the U.S. Department of Justice's April 15, 2013 Complaint against Frederic Cilins;

vii.   Cilins' efforts or instructions to destroy documents in the possession of Mamadie Touré as recited in his allocution to the United States District Court for the Southern District of New York.

s.   The documents supporting BSGR's allegations that rumors of any wrongdoing by BSGR and/or Steinmetz were the result of a misinformation campaign by Rio Tinto.

t.   The documents supporting BSGR's allegations that third parties have attempted to blackmail it in relation to its activities in Guinea.

u.   The documents supporting BSGR's allegations that third parties have colluded with the Guinean Government to strip it of the Simandou concession, including but not limited to its allegations that South African third parties were involved in election-rigging.

v.   The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the possession custody or power of BSGR exchanged between BSGR Representatives and Vale Representatives concerning a potential joint venture, partnership, or similar investment in Simandou Blocks 1 and 2, between January 1, 2008 and April 30, 2010.

w.   The emails, letters and other documents and communications held on the BSGR IT system or in other locations within the possession custody or power of BSGR which concern:

      i.  BSGR's alleged use of data obtained from Vale concerning the development of mining targets and drill locations at Simandou mining sites Metallica, Iron Maiden, the Gaff, Massif de Diodio, Damaro, Samedougou, and Steely Dan;

     ii.  BSGR's alleged use of data obtained from Vale concerning the identification and selection of a port or ports in Liberia for exporting iron ore from Simandou Blocks 1 and 2, as referenced in BSGR, VBG, and Vale's September 2011 Simandou Feasibility Study;

   iii.  BSGR's alleged use of data obtained from Vale concerning the transport of iron ore from Simandou via a Trans-Guinea railway or alternatively rebuilding the Trans-Guinea railway for passenger and light commercial use, as announced in BSGR's 30 April 2010 press release on the Vale-BSGR Simandou joint venture;

   iv.  BSGR's communications with the Government of Liberia and/or the Government of Guinea, before April 30, 2010, regarding a Liberian rail line and port in Liberia for exporting iron ore from Simandou, as announced in BSGR's 30 April 2010 press release on the Vale-BSGR Simandou joint venture;

     v.  BSGR's alleged use of data obtained from Vale concerning Rio Tinto's mining targets and drill locations at Simandou mining sites Captain Hook, Damaro, Kerkour South, Ballagbeni, Diodio, or Pic de Tibe.

x.  Documents referring to information and documents related to Simandou and received by BSGR from Vale before April 2010;

y.  The emails, letters and other documents and communications held on the BSGR IT

   system or in other locations within the possession custody or power of BSGR which

   concern or were used to develop the January 21, 2009 "BSGR Guinea Simandou

   Blocks 1 and 2 Exploration Programme and Budget," created by Graham Greenway,

   Iwan Williams, and Iain Bryson.

9.   **Request for notification of the time and place for the execution of the request
     and identity and address of any person to be notified (Article 7)[3]**

     Jonathan Kelly
     Cleary Gottlieb Steen & Hamilton LLP
     City Place House
     55 Basinghall Street
     London EC2V 5EH

     Sue Prevezer QC
     Quinn Emanuel Urquhart & Sullivan LLP
     One Fleet Place
     London EC4M 7RA
     United Kingdom

10.  **Request for attendance or participation of judicial personnel of the
     requesting authority at the execution of the letter of request (Article 8)**

     None.

11.  **The fees and costs incurred which are reimbursable under the second
     paragraph of Article 14 or under Article 26 of the Convention will be
     borne by**

   The fees and costs incurred which may be reimbursable under the second paragraph of

Article 14 of the Convention, being the fees and costs in connection with the execution of this

Letter of Request, will be initially borne by Vale and Rio Tinto.  The payment of any such fees

and costs is without prejudice to the Applicants' right to make subsequent requests for

---

[3] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by Vale to the
jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the
Applicant to accept service of any proceedings in England and Wales.

reimbursement of those fees and costs from other parties to the proceedings before the

Requesting Court.


DATE OF REQUEST                                    ……………………………………

SIGNATURE AND SEAL OF                      ……………………………………
THE REQUESTING AUTHORITY