UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rio Tinto plc,

Plaintiff,

-against-

Vale S.A., Benjamin Steinmetz, BSG Resources Limited, VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,

Defendants.

14 Civ. 3042 (RMB) (AJP)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS RIO TINTO PLC'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. RIO CONCEDES THAT THE DECEMBER 2008 LOSS OF SIMANDOU WAS NOT CAUSED BY A PATTERN OF RACKETEERING ACTIVITY ....1

II. THE AC FAILS TO PLEAD A PATTERN OF RACKETEERING GENERALLY AND AS TO EACH DEFENDANT ....3

III. RIO MISSTATES THE LAW WITH RESPECT TO THE STATUTE OF LIMITATIONS AND FAILS TO PLEAD FRAUDULENT CONCEALMENT....7

IV. RIO FAILS TO SHOW PERSONAL JURISDICTION OVER BSGR, STEINMETZ OR VBG....8

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997) .......... 7

*Bankers Trust Co v. Rhoades*,
859 F.2d 1096 (2d Cir 1988) .......... 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 8

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995) .......... 1, 2

*Bingham v. Zolt*,
683 F. Supp. 965 (S.D.N.Y. 1988) .......... 3-4

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 9

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012) .......... 4

*Chevron Corp. v. Donziger*,
974 F. Supp. 2d 362 (S.D.N.Y. 2014) .......... 4

*China Trust Bank of New York v. Standard Chartered Bank, PLC*,
981 F. Supp. 282 (S.D.N.Y. 1997) .......... 5

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004) .......... 10

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978) .......... 5

*Eno Farms Co-op. Ass'n., Inc. v. Corp. For Indep. Living*,
No. 3:06CV1983 (AHN), 2007 WL 3308016 (D. Conn. Nov. 5, 2007), *as amended* (Nov. 13, 2007) .......... 2

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 .......... 6

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) .......... 4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011) .......... 5

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) .......... 9

*In re Grand Jury Subpoena dated August 9, 2000*,
218 F. Supp. 2d 544 (S.D.N.Y. 2002) .......... 6

*In re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) .......... 1, 2, 7

*In re Terrorist Attacks on Sept. 11, 2011*,
538 F.3d 71 (2d Cir. 2008) .......... 9, 10

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02-cv-7618, 2010 WL 2507025 (S.D.N.Y. June 21, 2010) .......... 9

*Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998) .......... 10

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003) .......... 1

*Li Jun An v. Hui Zhang*,
No. 13 Civ. 5064 (PKC), 2013 WL 6503513 (S.D.N.Y. Dec. 6, 2013) .......... 4

*Long Island Lighting Co. v. Imo Indus. Inc.*,
6 F.3d 876 (2d Cir. 1993) .......... 1-2

*Marshall v. Hyundai Motor Am.*,
No. 12-CV-3072 (KMK), 2014 WL 5011049 (S.D.N.Y. Sept. 30, 2014) .......... 1

*Moll v. U.S. Life Title Ins. Co. of New York*,
700 F. Supp. 1284 (S.D.N.Y. 1988) .......... 8

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Technologies Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006) .......... 7

*Ochs v. Shearson Lehman Hutton Inc.*,
768 F. Supp. 418 (S.D.N.Y. 1991) .......... 4

*Pier Connection, Inc. v. Lakhani*,
907 F. Supp. 72 (S.D.N.Y. 1995) .......... 4

*Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*,
No. 95 Civ. 5575 (KMW), 1996 WL 340002 (S.D.N.Y. June 19, 1996) .......... 5

*Skylon Corp. v. Guilford Mills, Inc.*,
No. 93 Civ. 5581 (LAP), 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997) .......... 3

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) .......... 3

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) .......... 10

*Tymoshenko v. Firtash*,
No. 11-cv-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) .......... 10

*United States v. Castle*,
925 F.2d 831 (5th Cir. 1991) .......... 6

*United States v. Kozeny*,
667 F.3d 122 (2d Cir. 2011) .......... 5

*United States v. Walsh*,
700 F.2d 846 (2d Cir. 1983) .......... 5

*USA Network v. Jones Intercable, Inc.*,
729 F. Supp. 304 (S.D.N.Y. 1990) .......... 3

*V. Cars, LLC v. Israel Corp.*,
902 F. Supp. 2d 349 (S.D.N.Y. 2012) .......... 10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) .......... 9

*Weizmann Inst. of Sci. v. Neschis*,
229 F. Supp. 2d 234 (S.D.N.Y. 2002) .......... 4

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) .......... 2, 4, 5

**Rules and Statutes**

15 U.S.C. § 78dd-2(a) .......... 6

18 U.S.C. § 371 .......... 6

18 U.S.C. § 1964(c) .......... 4

18 U.S.C. § 1965(a) .......... 9, 10

CPLR § 301 .......... 9

CPLR § 302(a) .......... 10

Fed. R. Civ. P. 4(k)(2) .......... 9-10

**Other Authorities**

Leonard B. Sand, *et al.*, 3 Modern Federal Jury Instructions: Criminal, Instruction 60-2 (2014) .......... 5

## I. RIO CONCEDES THAT THE DECEMBER 2008 LOSS OF SIMANDOU WAS NOT CAUSED BY A PATTERN OF RACKETEERING ACTIVITY

In its Opposition, Rio concedes the central issue of its case: it admits that the Dec. 2008 loss of Simandou Blocks 1 and 2 was *not* caused by a pattern of racketeering since "not even one predicate act . . . occurred before December 2008." Opp. 5. That concession requires dismissal of the case. Mot. 19, 20, 24; *see Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (plaintiff must show RICO violation caused its injury). The Court need read no further to dismiss.

Having abandoned its claims that the 2008 loss of Simandou was the result of a RICO pattern or enterprise, Rio seeks to rewrite its complaint (and restart the limitations clock) by asserting (1) "in April 2011 . . . [Rio] . . . relinquish[ed] its claims to Blocks 1 and 2 as part of a settlement with the Guinean Government" and (2) "the RICO Enterprise pilfered [Rio's] valuable information." Opp. 1-2. But neither injury is alleged in the AC and "parties cannot amend their pleadings through issues raised solely in their briefs." *Marshall v. Hyundai Motor Am.*, No. 12-CV-3072 (KMK), 2014 WL 5011049, at *13 (S.D.N.Y. Sept. 30, 2014).[1] In any case, neither new argument is availing.

The AC does not even mention the April 2011 settlement with Guinea, much less allege that it caused Rio harm or was the result of a pattern of racketeering. Even were it pleaded, "the injury had to be new and independent to be actionable." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (distinguishing *Bankers Trust Co v. Rhoades*, 859 F.2d 1096 (2d Cir 1988), and *Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995)). The unpleaded settlement was neither. Rio alleges that Guinea rescinded Rio's rights to Simandou Blocks 1 and 2 and awarded exploration licenses to BSGR for those blocks in *Dec. 2008*. AC ¶ 92. That loss was clearly ascertainable and not

---

[1] The Court made clear that the AC is Rio's final shot. July 28, 2014 Tr. 10:1-4. The parties are now more than halfway to the completion of fact discovery (and 3 months from completion of document production) – too late to reverse course even if the Court left Rio that latitude.

"speculative at that juncture, and its RICO claim accrued at that time." *Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887 (2d Cir. 1993); *see Bingham*, 66 F.3d at 561. Indeed, based on that loss, Guinea demanded that Rio remove its equipment from Blocks 1 and 2 in May 2009 and, in June 2009, "made the initial December 2008 award of Simandou Blocks 1 and 2 to BSGR official." AC ¶¶ 99-100; *see id.* ¶ 148. BSGR then enjoyed all rights to Simandou Blocks 1 and 2.

Rio's injury occurred and its claim accrued by Dec. 2008; anything it "lost" by agreeing to "accept" Guinea's decision and release it from any claims based on that loss, *see* Opp. 12, concerns precisely the same property that Rio lost in 2008 and is thus derivative, not new and independent, of that loss. *See Merrill Lynch*, 154 F.3d at 59; *see World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 527 (S.D.N.Y. 2007) ("*WWE*") ("subsequent costs associated with the initial injury" not new and independent), *aff'd*, 328 F. App'x 695 (2d Cir. 2009); *Eno Farms Co-op. Ass'n., Inc. v. Corp. For Indep. Living*, No. 3:06CV1983 (AHN), 2007 WL 3308016, at *8 (D. Conn. Nov. 5, 2007), *as amended* (Nov. 13, 2007) (harm "derivative of the core injury sustained" not new and independent).

Nor can Rio save its RICO claims against Vale or any other defendant by asserting now that the case is *not* about its loss of Simandou but about the information Vale allegedly stole. Rio does not allege it suffered any "discrete" injury from the theft of information. *Bingham*, 66 F.3d at 561. Nor could it. To the contrary, it alleged that "[t]his is a case about the theft of [Rio's] valuable mining rights," AC ¶ 1, and made the judicial admission that its case was *not* a misappropriation-of-information case. Mot. 16 n.13. Thus, "[t]he gravamen of [Rio's] claims against Vale is an alleged conspiracy unlawfully to deprive [Rio] of its rights to the Simandou Concession." Dk. 143 at 22-23; *see also* AC ¶ 89 (Rio's information used "to persuade" Guinean Government to "revoke[] [Rio's] Simandou rights, assigning those rights to BSGR"). Having deliberately eschewed a misappropriation case (ineffectual under RICO), Rio cannot reverse course to avoid the consequences of its concession that its mining rights were lost before a RICO pattern had begun.

## II. THE AC FAILS TO PLEAD A PATTERN OF RACKETEERING GENERALLY AND AS TO EACH DEFENDANT

Rio's admission that no predicate act preceded Jan. 2009[2] also dooms its claim of a RICO pattern. Rio cannot satisfy "open-ended continuity" because it pleads that the "ultimate objective" of the conspiracy was to convince Guinea "to hand over the rights to Blocks 1 and 2 of Simandou to Defendants." AC ¶ 166. That objective – achieved in Dec. 2008, before the first "predicate act," and "confirmed" in June 2009, *id.* ¶ 13 – reflects an "inherently terminable" scheme effected over a brief period to deprive a single putative victim of a single asset. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008).

Rio argues that the defendants "strong-arm[ed] [Rio] into dropping an effort to challenge that theft." Opp. 14. This again concedes that it has no case. Whether "challenged" or not, the loss is the "theft"; a party cannot manufacture open-ended continuity by refusing to "accept," AC ¶ 94, its loss. *See USA Network v. Jones Intercable, Inc.*, 729 F. Supp. 304, 318 (S.D.N.Y. 1990) (no threat of continuity after purpose of scheme "was essentially accomplished"); *Skylon Corp. v. Guilford Mills, Inc.*, No. 93 Civ. 5581 (LAP), 1997 WL 88894, at *6 (S.D.N.Y. Mar. 3, 1997) (no continuity for acts after "goal of the scheme . . . was effectively accomplished"). Nor can Rio manufacture open-ended continuity by arguing defendants would have "retain[ed]" the rights and enjoyed "profitably mining and earning income from [Simandou]" in perpetuity if not stopped, Opp. 14, or that defendants engaged in a cover-up after achieving their goal. Rio's argument "would allow plaintiffs to turn every finite scheme . . . into an enterprise simply by characterizing the defendant's subsequent enjoyment of the proceeds of the scheme as continuous criminal activity." *Bingham v. Zolt*, 683 F.

[2] Rio thus abandons any RICO claim based on pre-Jan. 2009 conduct, including alleged bribery by BSGR before that date, the Sept. 2008 Confidentiality Deed between Rio and Vale, expressions of interest by Vale in Simandou, and the alleged Nov. 2008 N.Y. meetings. In opposing defendants' *forum non conveniens* motion, Rio said these acts and Vale's accessing Rio's data room in Nov. and Dec. were the heart of the whole case. *See* Dk. 88 at 19. It now says the exact opposite.

Supp. 965, 970 (S.D.N.Y. 1988); *see Ochs v. Shearson Lehman Hutton Inc.*, 768 F. Supp. 418, 426 (S.D.N.Y. 1991) ("continuing to do business" did not show continuity). The required pattern is one of "racketeering acts," not of "*effects*," *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 75-76 (S.D.N.Y. 1995), nor of defendants' alleged "retention or use" of "ill-gotten fruits," *WWE*, 530 F. Supp. 2d at 511 (citations omitted), and Rio does not dispute that acts "designed to keep past misconduct a secret," Opp. 18. n.7, are not part of a pattern. *See* Mot. 15 (citing cases).[3]

Rio also has not alleged "closed-ended continuity." It admits the RICO pattern must have existed before it can sue for treble damages for a loss caused by that pattern. Opp. 1; 18 U.S.C. § 1964(c). It also does not dispute that to sue any particular defendant it must allege at least that the defendant engaged in a "pattern of racketeering" for two or more years. *See* Mot. 16-17; *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 256 (S.D.N.Y. 2002) (Berman, J.) (no closed-ended continuity even if scheme spanned 7 years). But whether measured by when it first lost Simandou or when that loss was "confirmed," Rio alleges a period no greater than 6 months for all defendants viewed collectively, and as shown below, its allegations are even more deficient for "each defendant individually." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004).

**Vale.** Rio alleges two predicate acts by Vale, a Jan. 2009 letter and a Feb. 2009 meeting containing the same alleged misrepresentation – over a year before Vale had any rights in Simandou. That single alleged misrepresentation is not a pattern, *see* Mot. 17-18; *Li Jun An v. Hui Zhang*, No. 13 Civ. 5064 (PKC), 2013 WL 6503513, at *8-9 (S.D.N.Y. Dec. 6, 2013) (Opp. 17) ("two communications," 39 days apart, "each sent from the same individuals to the same recipients for the

---

[3] Because the alleged enterprise's goal had been achieved and BSGR had obtained Simandou 1 and 2 by Dec. 2008, this case is different from *Chevron Corp. v. Donziger*, where the alleged obstruction occurred not as a cover-up for a completed scheme but "in service of the alleged overall goal of obtaining a baseless Ecuadorian judgment for use in obtaining money from Chevron." 871 F. Supp. 2d 229, 252 (S.D.N.Y. 2012). *See also Chevron Corp. v. Donziger*, 974 F.Supp.2d 362, 460-64 (S.D.N.Y. 2014) (false declaration was designed to delay Section 1782 proceedings that might derail scheme).

same purpose and containing the same letter" did not show a pattern). It also does not satisfy Rules 8 or 9(b). Rio says Vale did not negotiate in good faith but does not identify what Vale said that was misleading, who said it, or how it was misleading. *See Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*, No. 95 Civ. 5575 (KMW), 1996 WL 340002, at *10 (S.D.N.Y. June 19, 1996) (allegation that defendant "misrepresented that it intended to negotiate the agreements . . . in good faith . . . falls far short of Rule 9(b)'s particularity requirement" absent pleading "specific individual" responsible and "precise nature" of statement). It claims simply that Vale (which had been interested in Simandou while Rio had the rights) later formed a joint venture with BSGR after BSGR had the rights. But Vale had the perfect right then to talk to Rio's competitor, BSGR; and in any event one cannot plead fraud by hindsight.[4] Mot. 18; *see Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

**BSGR & Steinmetz.** Rio concedes that BSGR's and Steinmetz's alleged activities were for cover-up purposes. Opp. at 18 ("part of a 'desperate attempt to avoid detection'").[5] But cover-up activities in support of a single scheme, single victim enterprise – as alleged in the AC – after the completion of the enterprise's goal are not predicate acts. *See* Mot. 15; *WWE*, 530 F. Supp. 2d at 512; *China Trust Bank of New York v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 288 (S.D.N.Y. 1997); *see also supra* n.3. Rio's Travel Act argument also fails because the Act requires, regardless of whether bribes were paid directly to foreign officials or through a U.S. citizen, that the primary actor

[4] Rio asserts for the first time that Vale violated the Travel Act through its (unpleaded) knowledge or "willful blindness" to the fact that the "money it put into the joint venture would be used to pay bribes." Opp. 17. Even were this asserted in the AC, Rio pleads none of the required Travel Act elements, including "intent to promote 'unlawful activity.'" *United States v. Walsh*, 700 F.2d 846, 854 (2d Cir. 1983); *see generally* Leonard B. Sand, *et al.*, 3 Modern Federal Jury Instructions: Criminal, Instruction 60-2 (2014); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065, 2071 (2011) ("should have known" or "deliberately disregarded" insufficient for willful blindness). Rio cites *United States v. Kozeny*, 667 F.3d 122 (2d Cir. 2011), involving a FCPA instruction, but that court noted, "knowledge is not established in this manner if the person merely failed to learn the fact through negligence or if the person actually believed that the transaction was legal." *Id.* at 132.

[5] Rio's claim that the activities were also "to keep the scheme alive" is not alleged. *See* Opp. 18.

be a domestic concern, which neither BSGR nor Steinmetz is. *See* 15 U.S.C. § 78dd-2(a). Moreover, Thiam's appearance on TV does not violate the statute because the AC does not allege that during Thiam's television interview he made any kind of offer or promise to a foreign official for the purpose of influencing that official's activities, as the statute requires. *See id.* § 78dd-2(a)(1).

**Thiam.** Mail/wire fraud. Thiam's statements to the media were made *after* BSGR had obtained Simandou. Rio admits *sub silentio* that they were not false, but says they (somehow) "furthered" a fraud. Nonsense. The statements were truthful and anodyne. And Rio is silent on the requirement of reliance. *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014). FCPA/Travel Act. Because Thiam, as a foreign official, cannot be prosecuted under the FCPA/Travel Act for receiving bribes, Rio argues Thiam "redistributed bribes to other Guinean officials." Opp. 21. Not only does this unspecific allegation fail Rule 9(b),[6] "foreign officials who receive bribes are not covered by the FCPA, nor can they be prosecuted for conspiracy to violate it." *In re Grand Jury Subpoena dated August 9, 2000*, 218 F. Supp. 2d 544, 550 (S.D.N.Y. 2002).[7] Money laundering. Rio's allegation is: Thiam bought a U.S. property. How did that "promote" continued illegal activity, or help complete a scheme? Rio says the purchase "conceal[ed] the proceeds of the criminal scheme," Opp. 22; but this is a "formulaic recitation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), for which the AC has *no* fact allegation in support. And 18 U.S.C. § 1957, which it now relies upon, is not even pleaded in the AC.

**VBG.** Rio now asserts the VBG Defendants were the "alter ego" of "BSGR, Vale or both." Opp. 19, 20. But nowhere does the AC allege that the VBG defendants were not distinct entities or

[6] Rio cites no case (and research reveals none) where a foreign official was prosecuted for sharing bribes with other foreign officials. Further, that allegation fails Rule 9(b). The AC is fact free. *No* official is identified by name or position. There is *no* specification of time, place, date, or amount. *Not a single corrupt act* is specified as to any of these unidentified officials. *See* AC ¶¶ 2, 14, 115, 176.

[7] *See also United States v. Castle*, 925 F.2d 831 (5th Cir. 1991) (foreign officials excluded not only from FCPA prosecution, but also from conspiracy to violate the FCPA, 18 U.S.C. § 371).

that they were the "alter ego" of either. Indeed, the AC does not allege comingling of funds, failure to follow corporate formalities, or any other of the ten hallmarks of alter ego liability. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

## III. RIO MISSTATES THE LAW WITH RESPECT TO THE STATUTE OF LIMITATIONS AND FAILS TO PLEAD FRAUDULENT CONCEALMENT

Rio's admission that the Dec. 2008 loss was not caused by a pattern of racketeering makes it unnecessary to address limitations. In any case, Rio's brief demonstrates its claim is time barred.

The statute of limitations indisputably began to run when the plaintiff knew or should have known of its *loss,* not when it "knew or should have known of the RICO Enterprise's fraudulent scheme." Opp. 7. *See* Mot. 3; *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp. 2d 253, 264 (S.D.N.Y. 2006) ("*NGC*"). Rio's Opposition cannot and does not cure the AC's failure to allege (with particularity) as to each defendant the three independent elements needed to toll the statute of limitations for fraudulent concealment. *Id.* at 265.

Rio effectively admits it did not conduct due diligence continuously from when it knew it was injured and "*throughout* the period to be equitably tolled." *NGC*, 420 F. Supp. 2d at 268. It pleads it lost Blocks 1 and 2 to a company allegedly renowned for bribery under suspicious circumstances and attempted to dispute that loss with Guinea, AC ¶¶ 78, 92-94, and yet did *nothing* to investigate a claim against the defendants for over 14 months until "April 30, 2010," and only then allegedly "exercised due diligence in pursuing discovery" of its claims, AC ¶ 146. Rio was required to *plead* a timely and continuous investigation, including "when such inquiries were made, to whom, regarding what, and with what response," *Merrill Lynch*, 154 F.3d at 60, but failed to do so.[8]

Rio also fails to allege any fraudulent concealment by any defendant. It does not and cannot

[8] Rio improperly asserts that "in 2009 (shortly after the December 2008 assignment to BSGR)" it hired investigators. Opp. 11. The AC says nothing of the kind, but pleads the exact opposite. AC ¶ 146.

allege a "self-concealing" wrong, Opp. 9, such as passing-off or bid-rigging. To the contrary, it alleges an open and notorious *theft*: its concession was wrongfully taken and it knew this in Dec. 2008. *See Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1290 (S.D.N.Y. 1988) (distinguishing theft requiring active concealment – "[a] thief who steals an antique vase" – from self-concealing fraud – "sell[ing] a worthless vase as a valuable antique").

**Vale.** Rio's argument that "Vale lied about its true intentions during negotiations with [Rio] and kept secret its scheme," Opp. 9-10, is mere rhetoric. *See* Mot. 4, 8; *Twombly*, 550 U.S. at 556. Rio knew about the JV when Vale knew about it – when it was signed. The AC does not allege that Rio learned anything about Vale after April 2010 that it did not know before.

**BSGR & Steinmetz.** The allegations of cover-up activities in the AC, *see* Opp. 10, are insufficient to show fraudulent concealment because, even assuming they occurred before the statute had already run, Rio does not, and could not, allege that they impeded its (unpleaded) investigation in any way. *See* AC ¶¶ 111-118.

**Thiam.** Rio recites its empty contention that Thiam "disseminated false information," AC ¶ 111, to "conceal," but fails to show a single falsehood. Nor does Rio explain how Thiam's (truthful) statements, all made *after* April 30, 2010, somehow "concealed" a fraud.[9]

**VBG.** Rio alleges no acts of concealment by the VBG Defendants. Instead it persists in trying to ascribe to them the alleged conduct of others – here the obstructive acts of Cilins, AC ¶ 144(e); Opp. 10 – which are not in any event alleged to have impeded its investigation.

## IV. RIO FAILS TO SHOW PERSONAL JURISDICTION OVER BSGR, STEINMETZ OR VBG

**Rio's Burden.** Rio has now received comprehensive jurisdictional discovery, including even

[9] Rio argues "equitable estoppel," Opp. 10 n.4, based on Thiam's "threats" to Blocks 3 and 4 to "intimidate" Rio from pursuing its claims to Blocks 1 and 2. Yet Rio "did not accept" the loss and "*made every effort* to convince" Guinea it was "invalid." AC ¶ 94 (emphasis added). So much for "intimidation."

a review of documents beyond those requested, and found no evidentiary basis for jurisdiction over the BSGR and VBG Defendants. *See* Dk. 217 at 2; Nov. 3, 2014 Tr. 26:14-35:19. Disappointed, Rio urges the Court to apply a *prima facie* standard. But that is not the test. Having received jurisdictional discovery, Rio bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02-cv-7618, 2010 WL 2507025, at *7 n.21 (S.D.N.Y. June 21, 2010). Rio fails that test (indeed, even the *prima facie* standard) in every respect.

**Due Process.** "[I]rrespective of the basis for . . . personal jurisdiction, the Court must always engage in a due process inquiry." *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 892255, at *1 (S.D.N.Y. Mar. 3, 2015). Rio's invocation of personal jurisdiction – under CPLR § 302(a)(2), 18 U.S.C. § 1965(a), and now under unpleaded Rule 4(k)(2)[10] – rests on a flawed premise: that the activities of alleged co-conspirators in N.Y. and/or the U.S. should be imputed to the BSGR and VBG defendants, whether or not they were aware of those activities, and no matter how attenuated the relationship between those activities and Rio's putative injuries. But to invoke personal jurisdiction a plaintiff must make a showing that *each* defendant in question ***intentionally acted in a way that was expressly aimed at the forum state,*** and caused an injury that was known to be likely felt ***in*** the forum state and that is the basis for plaintiff's claims. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The alleged wrongful conduct here was directed, not at the U.S., but at a UK-headquartered, Anglo-Australian company's interests in Guinea. *See* AC ¶ 1 ("[E]nterprise's ultimate target was Rio Tinto's mining concession in . . . Guinea."); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014); *In re Terrorist Attacks on Sept. 11, 2011*, 538 F.3d 71, 93, 95 (2d Cir. 2008).

**CPLR § 302(a)(2).** Rio points to (i) the Vale-Rio meetings in New York in Nov. 2008,

[10] To the extent Rio asserts jurisdiction over Steinmetz under CPLR § 301 by suggesting that there are "critical gaps" in his affidavit, Opp. 25 n.10, his Reply Decl. ¶ 5 makes clear he did not maintain *any* business or residential addresses anywhere in N.Y. or the U.S. during the relevant time period. Thus, he is not subject to general jurisdiction here, as Rio conceded. Dec. 9, 2014 Tr. 7:13-15.

which did not involve BSGR or the VBG defendants , *see* Opp. 24, and which took place more than one year prior to any alleged agreement between BSGR and Vale, (ii) Thiam's appearance on a television program, *see id.* at 27, and (iii) Cilins' imprisonment, *see id.*. But appearing on television and serving a prison sentence are not torts and do not implicate CPLR 302(a)(2). And Rio has neither alleged nor established (i) that the BSGR or VBG defendants even "had an awareness of the effects of the activity in New York," (ii) that Vale's "activity was for the[ir] benefit," or (iii) that Vale "acted at the[ir] behest of or on [their] behalf of, or under the[ir] control" – the essential predicates to jurisdiction on an agency or conspiracy theory. *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 602 (S.D.N.Y. 1998).[11]

**18 U.S.C. § 1965(a)**. Section 1965(a) provides no independent basis of jurisdiction, *Laborers Local 17,* 26 F. Supp. 2d at 601, and so the failure to establish jurisdiction under CPLR § 302(a) precludes jurisdiction under § 1965(a) as well. *See id.*

**Rule 4(k)(2)**. Finally, the AC did not allege and Rio offers no evidence of minimum contacts to support jurisdiction under Rule 4(k)(2) based on a conspiracy theory. *See In re Terrorist Attacks*, 538 F.3d at 93 (conclusory allegations insufficient, and court will not draw argumentative inferences in plaintiff's favor to establish personal jurisdiction); *see*, *e.g.*, *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010).[12]

---

[11] Even if BSGR had attended the New York meetings, there would be no § 302(a)(2) jurisdiction: If the information obtained from Rio was misappropriated, that occurred in Guinea, not New York. *See*, *e.g.*, *V. Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 364-65 (S.D.N.Y. 2012) (misappropriation of trade secrets deemed to occur where information is misused). Similarly, Cilins' alleged actions in the U.S., Opp. 24, occurred *after* Rio's claimed injury and the alleged wiring of funds or Thiam's U.S. citizenship, *see id.*, bear no relation to it. *See*, *e.g.*, *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 763-64 (S.D.N.Y. 2004).

[12] Moreover, "the use of this conspiracy theory has been widely criticized by courts and scholars." *Tymoshenko v. Firtash*, No. 11-cv-2794, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013).

Dated: New York, New York
March 20, 2015

Respectfully submitted on behalf of all Movants,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ L. Liman*
Lewis J. Liman
Jonathan I. Blackman
Boaz S. Morag

One Liberty Plaza
New York, New York 10006
(212) 225-2000
(212) 225-3999

*Attorneys for Defendant Vale S.A.*

MISHCON DE REYA NEW YORK LLP

By: */s/ V. Filardo, Jr.*
Robert Gold
Vincent Filardo, Jr.
Timothy J. McCarthy

750 Seventh Avenue, 26th Floor
New York, New York 10019
(212) 612-3270
(212) 612-3297

*Attorneys for Defendants BSG Resources Limited and Benjamin Steinmetz*

LAW OFFICES OF MARTIN J. AUERBACH, ESQ.

By: */s/ M. J. Auerbach*
Martin J. Auerbach

1330 Avenue of the Americas
Suite 1100
New York, New York 10019
(212) 704-4347
(212) 304-0175

*Attorneys for Defendants VBG-Vale BSGR Limited a/k/a BSG Resources (Guinea) Ltd. a/k/a BSG Resources Guinee Ltd., and BSG Resources Guinee SARL a/k/a BSG Resources (Guinea) Ltd. a/k/a VBG-Vale BSGR Guinea*

SULLIVAN & WORCESTER LLP (MA)

By: */s/ P. Summit*
Paul Eliot Summit

One Post Office Square
Boston, MA 02109
(617) 210-8437
(617) 338-2880

*Attorneys for Defendant Mahmoud Thiam*