F3HAARIOC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   RIO TINTO PLC,

4                    Plaintiff,

5            v.                            14 CV 3042 (AJP)

6   VALE, S.A. ET AL.,

7                    Defendants.

8   ------------------------------x
                                          New York, N.Y.
9                                         March 17, 2015
                                          2:10 p.m.
10
    Before:
11
                        HON. ANDREW J. PECK,
12
                                          Magistrate Judge
13
                           APPEARANCES
14
    QUINN EMANUEL
15       Attorneys for Plaintiff Rio
    BY:  MEGHAN A. MCCAFFREY MICHAEL J. LYLE
16
    CLEARY GOTTLIEB STEEN & HAMILTON LLP
17       Attorneys for Defendant
    BY:  JONATHAN I. BLACKMAN LEWIS J. LIMAN
18
    MISHCON DE REYA
19       Attorneys for DEFENDANT
    BY:  VINCENT FILARDO
20

21

22

23

24

25

1          (Case called)

2          THE COURT:  All right.  The good news is your letters

3   seem to be getting shorter and having more agreement than

4   disagreement.  The bad news for you all is I have a three

5   o'clock conference call, so we have a 2:55 hard stop.  So let's

6   use our time wisely.

7          With respect to the agreed upon letters rogatory, you

8   want to hand them up or did you submit them via ECF as opposed

9   to the ones with the issue about redactions?

10          MR. BLACKMAN:  Your Honor, I think a set was attached

11  to the ECF filing of the joint letter but we have another copy

12  to hand up.

13          THE COURT:  OK.  I think when my secretary printed it

14  out she didn't print the attachment.

15          (Pause)

16          THE COURT:  All right.  Does this, specifically, say

17  in here that BSGR, etc., consents?

18          MR. BLACKMAN:  Yes, your Honor, it does.  And for the

19  sake of good order, perhaps, the Court will ask their counsel

20  to confirm that but --

21          THE COURT:  Your letter to me says that I was just

22  looking about it in terms of when it lands on the desk of the

23  senior master in London whether there is something in it that

24  will immediately tell him that all the parties including the

25  recipient of the requests are consenting to it.

1          MR. BLACKMAN:  I believe that they do.

2          MS. MCCAFFREY:  Your Honor, at paragraph five, page

3    two, the parties have conferred and agreed to the terms of part

4    eight of the attached letter.

5          THE COURT:  Wait.  OK.  But that's not anything that

6    my counterpart in the UK is going to see.  That's what I was

7    looking for.  In fact it's not like in the fist paragraph.  On

8    a quick read I don't see anything.

9          MR. BLACKMAN:  I think your Honor may be right.  And I

10   think our intention which may not have been done the right way

11   is that to have the consent in the application but --

12         THE COURT:  Well, you know that's great for me.  The

13   application is not going to be seen by the senior master.  So

14   my suggestion is why don't you all revise it.  And I know there

15   are certain formalities, so it may not be possible for you to

16   put it in the first page of the letter of request.

17         MR. BLACKMAN:  I think that's an excellent suggestion

18   which we will do and bring it back to your Honor by filing it

19   later this week.

20         THE COURT:  Okay.  Just so you know, I won't be able

21   to sign it until Monday but I think the loss of three days will

22   be more than made up by you figuring out how, as close to the

23   first page of what the folks in the UK are going to see, you

24   know, we'll have that everybody is consenting to it.

25         MR. BLACKMAN:  Your Honor, just for the sake of this

1  record, I'd ask that you ask Mr. Filardo so it's clear at least

2  for the purpose of this Court that this is consented to and the

3  procedure that the Court just outlined will be followed.

4          MR. FILARDO:  Good afternoon, your Honor.

5          My clients agree to the terms and scope of these

6  letters of requests.

7          THE COURT:  And that they will not be opposed in any

8  way in the UK?

9          MR. FILARDO:  That's correct, your Honor, agreed to

10  these.

11          MR. BLACKMAN:  Thank you, your Honor.

12          THE COURT:  All right.  Now, as to the letters of

13  request with confidentiality, you want to hand me at least one

14  copy so I could see what the issue is or all of them as the

15  case may be?

16          (Pause)

17          MR. BLACKMAN:  I think this is a set of all of them.

18          THE COURT:  All right.  I've got three.  Is that what

19  I am supposed to have?

20          MR. BLACKMAN:  Yes, I believe so.

21          THE COURT:  OK.  So why don't you tell me what it is

22  that's the problem.

23          MR. BLACKMAN:  Well, your Honor --

24          THE COURT:  And in specific I know what the general

25  problem is.

1              MR. BLACKMAN:  All right.  I am looking at the

2        requests for -- letters of request to the senior master for

3        letters of request directed to Africa Risk Consultant

4        Livingston and Company and the issue is that in order to make

5        these very specific --

6              THE COURT:  Counsel, counsel, paragraph and line.  I

7        got the general issue and time is short today.

8              MR. BLACKMAN:  Sure.  Understand, your Honor, For

9        example, if you turn to page 51, paragraph W it refers there to

10        an interview memorandum summarizing a conversation with a,

11        quote, very well placed official.  It quotes what the official

12        said, and it says as referenced on pages four and 13 of your

13        report entitled The Political Landscape in Guinea dated 18

14        June 2010.  And throughout each of these parts what we've done

15        is to quote the statement and reference, the page of the report

16        where it occurs in order to be specific.  None of that in our

17        view is at all confidential.  The statements themselves are

18        there and most of them are reflected in allegations in the

19        pleadings in this lawsuit or are evidence allegedly supporting

20        them and we see no reason why we should be having an issue

21        about filing these with the Court.

22              THE COURT:  OK.  So let me hear from Rio Tinto.  Give

23        me your best paragraph here where the sky is going to fall if

24        this is public or quasi public.

25              MS. MCCAFFREY:  Your Honor, I think even looking at

1    the paragraph that Mr. Blackman referred you to there, the

2    issue becomes we certainly believe, as do our clients, in the

3    investigative firms who generated these reports that these are

4    highly confidential in nature.  In fact, we've made every

5    effort to protect the confidentiality of these reports.  The

6    investigative firms they were only supposed to be disclosed to

7    Rio Tinto.  They were not supposed to be provided to an third

8    parties.

9              THE COURT:  OK.  But my question is this.  One way to

10   avoid public disclosure is for your client's contractual

11   relation with Africa Risk Consulting or former contractual

12   relation to allow us to bypass the Hague Convention by your

13   client asking Africa Risk Consultant to respond albeit

14   producing out of London but respond to a normal Federal Rules

15   document request, informal request, whatever you want to call

16   it.  In other words, if they agree to respond to these letters

17   of requests without going through the Court then none of this

18   has to become public at least at this point.

19             If not, you know unless the counterbalance is you get

20   Africa Consulting to agree that it will not argue against a

21   watered down version of the request via the Hague Convention

22   and won't say it doesn't understand it or whatever.  I mean, I

23   suppose one could say, you know, the interview memo

24   characterizing your conversation is referenced on pages four

25   and 13 without saying what it says per se.  But I don't want to

1    create -- I mean, I have never seen the investigative reports.

2    I don't know whether the senior master in London without the

3    consent of the -- we'll call it the target -- would honor that

4    or not.  I don't know how one can do a letter of request in a

5    non public way.  And you know, at least based on the first

6    example and with the fact that it certainly doesn't disclose

7    who the sources are, I am inclined to say there's a difference

8    between the confidentiality of the entire report and the

9    confidentiality of little snippets of it when used in a court

10   document.

11            MS. MCCAFFREY:  Understood, your Honor.  I think there

12   are two points on that.  I think these aren't just small

13   snippets from these reports.  They are letters of request cover

14   the vast majority of information that are contained in those

15   reports.  So, they're effectively waiving the confidential --

16   that's effectively covering the vast majority of information

17   contained in those reports.

18            We understand -- I understand that what you're -- how

19   you're directing us and what you are getting at with this.  I

20   think that's something that we have -- we've not spoken with

21   counsel for Vale about that being a potential.  I think it's

22   something we --

23            THE COURT:  It's really more a question of the

24   investigative firms, Africa Consulting and BTG Intelligence and

25   whoever else this is going to.  Look, by agreement since this

1   basically it seems to be and I've seen it for all of three

2   minutes, you know, all their backup raw material that led to

3   the investigative report, one can do that as a single request.

4   Give me all your backups to your interviews and anything else

5   that resulted in this report.  That might or might not pass

6   muster here.  If contested is likely not to pass muster in the

7   UK.  And I don't want to take three months trying it that way

8   and find out that it's not specific.  So you know, you pay a

9   price, so to speak, and you make a deal.  You want to get them

10  to avoid the Hague Convention?  See if these companies -- and

11  the good thing is, are all of these going -- well, at least the

12  ones going to England, I know and certainly under the prior

13  special senior master, that England is not France or Germany

14  shall we say.  So, if there's consent, it might sail through.

15          MS. MCCAFFREY:  Yes, sir.

16          THE COURT:  If there isn't, then I've got to look at

17  what the record will be here, etc.

18          MS. MCCAFFREY:  Understood.  We'll -- if we can have

19  the opportunity to go back and speak to these investigator we

20  may be able to resolve these issue on our own.

21          THE COURT:  All right.  So what I am going to do is

22  give these back to Vale's counsel.  I would like you, I know

23  it's six hours ahead already or five hours ahead in London but,

24  hopefully, by Monday you'll be able to report to the Court, if

25  not Vale, whenever Vale's patience runs out which if you pull

1    the plug too soon may be counterproductive, submit what you

2    want just by letter, without filing anything at this point, not

3    ECF but the old fashioned way, and I will be putting the burden

4    on you to really show me and you may then have to file it with

5    the court under seal, the entire investigative report why this

6    gives the show away and/or how it is one can seal a Hague

7    Convention request which I've never heard of.  You know, I

8    might be able to seal what I issue over here but it's going to

9    then get publicly filed in the UK.  That as I understand it is

10   the general procedure.

11        MR. BLACKMAN:  The only thing I'd add to that and

12   we're happy and hopeful that the plaintiff will get us what we

13   want is that actually, although, there are procedures for

14   somebody getting to letters rogatory that are filed with senior

15   master, they won't be on public file as a filing in this court

16   would be.  And in the other jurisdictions like France they

17   certainly won't be.  So to some extent this is in our view an

18   artificial problem but we wanted to get solved.

19        THE COURT:  All right.  We'll try to solve it.  It is

20   my practice not to seal court orders.  You know, parties can

21   file under seal whatever they want but there's this little

22   bitty thing called the First Amendment and the press right to

23   know.  I've been through that before.  And for me to actually

24   seal a court order as opposed to letting you file things under

25   seal you are going to have to show me something other than the

1    parties have a confidential order and you designated the report

2    as "confidential".

3            So I think you all can get the message.  It would,

4    certainly, be a lot smoother in general for the letters of

5    request to go out as agreed letters including agreed to not

6    only by the two parties to the U.S. litigation or all of the

7    parties in interest to the U.S. litigation but also by the

8    recipient who's basically saying I am covering my rear end by

9    going Hague but I am willing to comply and ask, in essence will

10   be asking the Court to order compliance as opposed to

11   noncompliance.

12           MR. BLACKMAN:  Right.  And clearly if Rio Tinto which

13   employed these firms agrees presumably they will agree and we

14   won't have an issue.

15           THE COURT:  Right.  OK.  So you are going to work it

16   out.  Good.

17           All right.  I think the first issue that requires my

18   issue which continues with these investigative reports starts

19   on page three, paragraph Roman numeral V; is that correct?  Is

20   there anything before that that wasn't agreed upon that

21   whatever say greed upon or we'll tell you about it next time we

22   have a problem?  You don't need to clutter the transcript or

23   run the clock on it.

24           MR. BLACKMAN:  I think that's correct, your Honor.

25   That is the redaction issue from these reports.  And if I could

1    speak to that briefly because I know that the clock is ticking.

2    These reports contain in various places redactions of the names

3    of witnesses.  One of the most striking is the most recent one

4    that we received only a few weeks ago on March 2nd.  It's the

5    December 1, 2010 project Vale report which is produced by one

6    of the terms called Executive Research.  And this has in

7    various places references to individuals and on the page there

8    is simply a black line including on things that are really

9    quite significant, this report in particular seems to be the

10   source of much of the complaint, including the famous alleged

11   meeting of December 2008.  And when you turn to this, they say

12   there's a meeting, the same source black and beginning of the

13   report talks about their sources being black.  And these are

14   clearly percipient witnesses or at least witnesses with

15   discoverable information.  In fact if you look at Rio Tinto's

16   interrogatory answers when we asked them I believe in response

17   to Interrogatory Number 11 for what their sources -- 12.  I am

18   sorry.  No, nine.  Got it wrong.  Interrogatory nine about this

19   meeting, the only person they listed in their answer other than

20   people from Vale and BSGR was this executive research and now

21   they won't tell us who the witness is.  So, clearly, it's

22   discoverable and highly informant.  And the fact that they say

23   they won't call this person, obviously, it's irrelevant.

24          So, the only thing they've raised there is to say,

25   well, this is highly confidential.  And we say, yes.  And it's

1   also "attorney's eyes only" when the document was produced.

2   And we're quite happy to have that name given to us on the same

3   "attorney's eyes only" basis as the rest of the report.  And

4   the notion that somehow that's not enough that these people are

5   in danger is really pretty off base.  "Attorney's eyes only"

6   means that I am seeing it, Mr. Liman is seeing it, my

7   colleagues at Cleary Gottlieb are seeing it and three in-house

8   lawyers at Vale, full stop, no business people, no Mr. Stein --

9            THE COURT:  I assume.

10            MR. BLACKMAN:  -- and the other counsel.  But they're

11   bound by the same rules that we are.

12            THE COURT:  All right.  Let me hear from plaintiff's

13   counsel.

14            MS. MCCAFFREY:  Thank you, your Honor.

15            We disagree that the identity of these confidential

16   informants needs to be disclosed their identity is tangential

17   to the issues here in this case presented here.  As

18   Mr. Blackman pointed out, we have identified the firm that it

19   has the knowledge relevant to the claim.

20            THE COURT:  Well, thinking -- Heaven forbid this case

21   goes to trial, the investigative firm's knowledge of what

22   happened at a meeting is hearsay if offered for the truth.

23   It's offered for other purposes as to Rio Tinto's knowledge or

24   whatever, that's another matter.  I am finding it difficult to

25   see how the house of cards is going to full down if counsel get

1    it.  I admit that I am smiling as I said that because we've

2    just gone over the issue of whether the letters of request for

3    Hague Convention should have information from the investigative

4    report.  So, I realize -- whatever.  But this is not like a

5    criminal case.  And frankly, even when I am sitting on the

6    other side of the Court on the criminal side, in order for

7    certain proceedings to be sealed, you can't just say there's a

8    risk of harm to the person because that's what happens to

9    people who talk, whatever.  There's got to be much more of a

10   factual showing.

11            MS. MCCAFFREY:  Yes, your Honor.  Understood.  I think

12   that there are several points here that you've just raised.  I

13   think that first and foremost and as we discussed at the

14   February 5th hearing that we had Rio Tinto has no intention to

15   call any of these witnesses at trial.  They have not been

16   identified by any of the other closing parties.

17            THE COURT:  Because they don't necessarily know who

18   they are.

19            MS. MCCAFFREY:  Understood, your Honor.  But I think

20   the point here --

21            THE COURT:  Assume this were a car accident case.

22   Let's take it back to something nice and simple.  Car accident,

23   you hire an investigative firm to find out if there were

24   witnesses and the report has certain information.  And you say

25   you don't need to know who those witnesses are because I am not

1    calling them to trial.  But it's similar to 26(A) disclosures

2    and other discovery.  You are not calling them because they may

3    have told your investigator that your client's car ran the red

4    light and was going 90 miles an hour on a city street.

5    Defendant in that hypothetical would, certainly, be entitled to

6    know who the witnesses are.

7         MS. MCCAFFREY:  Your Honor, understood.  I think that

8    the defendant also has the resources and ability to conduct

9    their own investigations to figure out what happened.

10        THE COURT:  OK.  The request is granted.  By the

11   defense and you are to produce unredacted copies "attorneys

12   eyes only".

13        MS. MCCAFFREY:  Your Honor, may I raise just one

14   additional issue?

15        THE COURT:  Yes.  Except, generally, start with your

16   strongest argument.  When you tell me they have the resources

17   to go and do an investigation at this point you are losing

18   points terribly.

19        MS. MCCAFFREY:  Your Honor, I understand.  I think my

20   one remaining point is there is significant harm that both

21   these confidential informants can face, as well as the

22   investigative forms here.  I think the confidential informants

23   and the public remembered is very clear especially with respect

24   to the defendant's -- assignment very activity pursue any

25   adversaries.

1    THE COURT:  Are you suggesting that counsel for those

2    entities, Mr. Filardo or any other of the attorneys entitled to

3    do this are going to put their law license at risk by telling

4    their clients the names of these people?

5         MS. MCCAFFREY:  No, sir, I am not suggesting that.

6         THE COURT:  OK.  Then how does it get from -- and

7    we'll pick on Mr. Filardo -- How does it get from Mr. Filardo

8    to his client if he is not breaching his duty an officer of the

9    court.

10         MS. MCCAFFREY:  Because I think the next stop after

11   these confidential informants are identified is then they will

12   be seeking discovery from these confidential informants and it

13   will impact --

14         THE COURT:  I'll worry about that when it comes to

15   that.

16         And, Mr. Blackman, you may have to show a much higher

17   need for anything that gets those names public via deposition

18   or letters rogatory than if you are merely to see who they're

19   talking about on the report.  I understand the slippery slope

20   and I am warning you now that you are going to have to show

21   something a lot stronger than what you have here before you

22   will be able to go from, OK, now you know the names.  They may

23   be people who are already on the deposition list because even

24   though they haven't listed them, you all know them as, you

25   know, whatever.  You just don't know who is the person who told

1    the investigators but you know certain people from your client

2    or the other clients.  You may not get -- this is getting your

3    foot in the door and it's going to slam after that.  So that

4    protects you at least for now on that.

5              MS. MCCAFFREY:  Thank you.

6              MR. BLACKMAN:  Thank you, your Honor.

7              THE COURT:  OK.  So that's the Court's order.  Get it

8    done by Monday.  Is that doable?

9              MS. MCCAFFREY:  Yes, your Honor.

10             THE COURT:  Good.  OK.  I think the next issue is

11   Quinn Emanuel and Weil Gotshal.  And my inclination is to leave

12   that in abeyance, see what you get from Rio Tinto.  Based on

13   the timing and the comments that appears to be saying I think

14   Mr. Lyle can confirm that they did not interview anybody.  They

15   merely liaised with the reports.

16             MR. BLACKMAN:  The only thing I would say to that,

17   your Honor, is after your Honor's ruling of December 9 which is

18   when you said, tell us about your investigations, which they

19   didn't want to do at all, although, they're clearly relevant,

20   particularly, to their limitations issue, after that they

21   amended their interrogatory answers.  In their new amended

22   answer to our interrogatory 22 which asked about the basis for

23   the allegation in paragraph 146 of the complaint that they did

24   a thorough investigation and showed due diligence.  They

25   identified the sets, OK.  So we understand that --

F3HAARIOC                    Conference

1          THE COURT:  In the course of time.

2          MR. BLACKMAN:  In the course of time Rio Tinto may

3    introduce --

4          THE COURT:  Let me interrupt you.  I assume, Mr. Lyle,

5    neither you nor your partners or former partners whether at

6    Weil or Quinn Emanuel and partners includes associates,

7    counsels, and etc., none of you guys are testifying, correct?

8          MR. LYLE:  We are not testifying, your Honor.

9          THE COURT:  So they can't sandbag you that way.

10          MR. BLACKMAN:  We understand that and we appreciate

11   that.  However, the work they did which is not privileged, not

12   the advice they gave but literally the work they did is

13   relevant to the diligence issue and timing.

14          THE COURT:  If they did work then, presumably, it got

15   to Rio Tinto in some way and we have not taken that off the

16   table but at this point I am quashing the subpoenas to Quinn

17   and Weil without prejudice and you won't even have to pay the

18   $50 a second time.  If you have to reissue the subpoenas we'll

19   worry about that down the road.

20          MR. BLACKMAN:  Can I just raise one point then, your

21   Honor?

22          THE COURT:  Yes.

23          MR. BLACKMAN:  I think this is almost the last thing

24   we have today.  We -- the last time this issue was visited with

25   respect to Rio itself your Honor was not inclined to treat the

F3HAARIOC                    Conference

1   production of Rio's documents dealing with these investigations

2   on any more expedited basis beyond the report that we already

3   have.  And our problem is this, we have a pretty hard stop of

4   January 30 to get documents here and then there's going to be

5   privilege issues with which --

6           THE COURT:  June 30.

7           MR. BLACKMAN:  Misspoke.  June 30.  And there's going

8   to be a privilege waiver issue and what we are trying to do is

9   tee it up sooner rather than later.

10          THE COURT:  I understand.  And one of the advantages

11  among many others of predictive coding whatever name you want

12  to use, particularly, if it's a continuous active learning

13  process but even if it isn't is that you are going to be

14  getting the documents in waives and presumptively now that

15  you've got the protocol or whatever have actually started

16  moving toward.  So you'll be starting to get waves and,

17  certainly, if the -- and I forget what the protocol says if

18  anything about when you are getting privilege logs there isn't

19  something in the protocol, work it out.

20          MR. BLACKMAN:  It doesn't.  That's the problem.  It

21  doesn't.  The concern we have --

22          THE COURT:  I understand.  Any reason not to do the

23  privilege logs on a rolling basis along with the production?

24          MS. MCCAFFREY:  Your Honor, the EIS protocol

25  specifically calls for the production of privilege logs 30 days

1  | after the completion of discovery.  That's been agreed upon by

2  | the parties in this case.

3  |         THE COURT:  Be careful what you agree to.  If that's

4  | what the order says, that's what it says.  All I'll say further

5  | on this issue is that if we have to go to the Quinn Emanuel or

6  | Weil Gotshal files you are not going to have a long amount of

7  | time to go through them.  So that's going to be the pain for

8  | the deferral.  On this point I'm willing to defer.

9  |         MR. BLACKMAN:  On that issue I don't want to re-argue

10 | but what about just their bills?  Those are sitting in a file.

11 |         THE COURT:  No.  Nope.  Good try, but no.

12 |         All right.  I think that completed the letter; yes?

13 |         MR. BLACKMAN:  I believe it did, your Honor.

14 |         MR. LYLE:  Yes, your Honor.  The only other thing as

15 | we did tell the Court we were going to review the documents

16 | from BSGR which we have done.  I had a brief conversation with

17 | Mr. Filardo about those documents.  We believe some of them are

18 | responsive.  We are going help work that out.  If we are unable

19 | to we'll be back before you with that.

20 |         MR. FILARDO:  Your Honor, it is of course our position

21 | that there are no further responsive documents to be produced.

22 | We're happy to speak to counsel, have a brief meet and confer

23 | and then to the extent we can't agree to swiftly bring it to

24 | your Honor.

25 |         THE COURT:  When do you all think you are going need

1    to be back?

2              MR. BLACKMAN:  Three weeks, your Honor.

3              MR. LYLE:  That seems reasonable to us, your Honor.

4              THE COURT:  Like the beginning of April.  OK.  Does

5    April 8 work for all of you?  It is during Passover for those

6    who care but I won't make you eat bread.  April 8 going once

7    twice, OK.  You want two o'clock to make your travel easier?

8              MR. LYLE:  Yes.  Thank you, your Honor.

9              THE COURT:  And I'd like the trend that the letters

10   are getting shorter and fewer disputes.  Let's keep it up.

11             Just scheduling, twice this week and next the only day

12   I am going to be around is next Monday.  So for the letters of

13   request, try very hard -- I mean the one that you are just

14   putting in a paragraph that says, we're all in agreement

15   including the recipient, that I expect I'll have latter this

16   week.  As to the ones where you are talking to the

17   investigative firms, try very, very hard to get it in a

18   position where you could give me something to sign on Monday if

19   we're going the route that I've got to do a Hague request as

20   opposed to a completely informal way of working it out which is

21   certainly what the Court would suggest.

22             OK.  Thank you.  Usual drill, you'll split the

23   transcript however you've all been doing.

24                              (Adjourned)

25