# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc, <br><br>                 Plaintiff, <br><br>    -against- <br><br> Vale S.A., Benjamin Steinmetz, BSG Resources Limited, VBG–Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam, <br><br>              Defendants. | 14 Civ. 3042 (RMB) |

## DECLARATION OF ALI HADJARIAN

ALI HADJARIAN declares as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Specialist Leader at Deloitte Transactions and Business Analytics LLP ("Deloitte"). Deloitte has been retained by Cleary Gottlieb and Vale in this matter to consult on their use of text categorization, also referred to as predictive coding in electronic discovery. I make this declaration based upon my personal knowledge except where otherwise indicated.

2.      I have over 19 years of industry experience in advanced data and text analytics and a doctoral degree in the same area. Prior to joining Deloitte, I worked for a Federally Funded Research and Development Center (FFRDC) and acted as a trusted advisor to the U.S. Government on a number of high profile analytics projects with the SEC, the IRS, and the Public Company Accounting Oversight Board (PCAOB). My research has resulted in many publications and a handful of patents. I have also led the design and development efforts for a number of commercial data and text analytics tools.

3.      At Deloitte I am a leader of the FAS Analytics Institute, a market-leading team of

analytics experts from industry and academia that researches and develops Deloitte's advanced analytics capabilities in text, visual, predictive and geospatial analytics. As part of my duties at Deloitte, I advise on methodological issues concerning the use of text categorization in electronic discovery. During my four years at Deloitte, I estimate that I have worked on approximately two dozen matters involving the use of text categorization for electronic discovery.

4.       Text categorization is the task of automatically classifying documents into a set of predefined categories. It typically involves two steps: (1) training and (2) prediction - or scoring. In the training step, a supervised learning algorithm is used to build a classification (or predictive) model from a sample of attorney reviewed documents, typically referred to as the training set. The classification model is then used to generate class predictions (or scores) for documents that have not been yet reviewed. This happens in the prediction step. The performance of the predictive model is typically measured against a test set that does not include any of the training documents. To improve the performance of the model, the training set can be augmented with additional examples and the training step can be repeated. Thus, text categorization is often an iterative exercise.

5.       In this matter, I understand that parties have agreed to a protocol that uses different terminology than that used above. The test set is referred to as a "control set" and the first training set is referred to as a "seed set," and all subsequent training sets are "training sets." To avoid confusion, I am adopting the terminology agreed to in this matter for purposes of this declaration.

6.       To build a model capable of identifying potentially relevant documents belonging to all subcategories of relevance, it is important for the documents in the training sets (or seed and subsequent training sets, as defined in the agreed upon protocol) to provide coverage of these

2

subcategories. If there is not adequate coverage of all of the subcategories in the seed and/or training sets, there is a risk that the model will fail to identify potentially relevant documents belonging to those subcategories. For instance, if documents related to football, baseball, and basketball are considered to be relevant, and there are few or no documents related to basketball in the seed and training sets, the model may be ineffective at identifying documents related to basketball in the document universe (assuming the keywords associated with basketball are rather unique and distinct from those associated with football or baseball).

7.     The above is particularly true for "low-prevalence" subcategories of documents that appear relatively infrequently in the document universe. For high-prevalence documents, many different selection methods, including random selection, may be sufficient to identify sufficient examples for training the model because documents in those subcategories are relatively common. For low-prevalence subcategories of documents, a more targeted selection of training documents, such as through the use of keyword searches and other pertinent culling criteria, may be necessary to identify sufficient examples of low-prevalence documents and to minimize the risk that the model will fail to identify documents belonging to such subcategories.

8.     A random selection of seed and training sets may be inadequate to identify low-prevalence documents because by definition a random sample includes documents roughly in proportion to their prevalence in the document universe. To continue the sports analogy above, a random sample drawn from a document universe will likely contain plenty of examples of documents related to high-prevalence topics like football, baseball, and basketball, but it would likely not contain many examples of documents related to low-prevalence topics like field hockey and curling. Using randomly selected seed and training sets could potentially cause the text categorization process to fail to identify low-prevalence documents as potentially relevant.

3

9.      For this reason, I typically advocate a more targeted selection of training documents over a random selection, particularly for text categorization scenarios where the coverage of such low-prevalence subcategories of documents is rather crucial.

10.     Use of documents selected at random for a single seed or training set would not necessarily risk overlooking low-prevalence subcategories of documents if other measures are taken. That single seed or training set might not contain many examples of low-prevalence documents, but that shortcoming could be rectified with subsequent training sets that are selected using more targeted selection criteria that do identify a sufficient number of low-prevalence documents.

11.     Flaws with respect to the identification of low-prevalence documents can be difficult to detect. "Recall" is typically used to measure how successful a text categorization process has been at identifying relevant documents in a document universe. Recall is the percentage of all relevant documents in a document universe that have been identified by a given process. A high level of recall can be achieved by identifying only or predominantly high-prevalence documents even while failing to identify low-prevalence documents. In that instance, recall would not measure the success of the text categorization process in identifying low-prevalence documents. The effectiveness of the text categorization process in identifying high-prevalence documents would mask the ineffectiveness of the process in identifying low-prevalence documents.

12.     I understand that Rio Tinto has expressed concerns about the inclusion of near-duplicate documents in Vale's seed set. I do not believe it is possible to say, a priori, whether inclusion of duplicate documents in a seed set will make a classification model better or worse or if it will have no material effect. Moreover, to the extent the inclusion of near-duplicate

4

documents in the seed set adversely affects the classification model, they could easily be

removed in subsequent training iterations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:     Washington, D.C.
              May 28, 2015

                                        Ali Hadjarian

5