**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

June 1, 2015

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

  We write on behalf of Defendant Vale S.A. ("Vale") in response to the letter filed by Plaintiff Rio Tinto plc ("Rio Tinto"), expanding upon matters addressed in the parties' joint status letter (Dk. 259). We submit this letter in connection with the conference today, June 1.

  We are compelled to respond because Plaintiff's unauthorized reply misconstrues the issues raised by Vale in the joint letter (of which Plaintiff had advance notice) and obscures the pertinent issue, which is as follows: in violation of the Court's order that the parties make reciprocal productions "of both sides of litigation hold material" for "[a]ny lit hold for civil or criminal matters arising out of the Simandou situation" (April 8, 2015 Tr. 6:10, 7:6-7), Rio Tinto has, two months later, still failed to disclose the date or scope of its purported oral litigation hold issued to 16 employees sometime in 2010.

  Plaintiff's letter states that the oral hold was issued "Fall 2010" and that "the content[s] . . . of this [hold] already have been provided to Vale." (Dk. 259 at 1.) Neither piece of required information has been disclosed to Vale. "Fall 2010" is not a date. The Amended Complaint alleges that "[i]n April 30, 2010, Rio Tinto was genuinely shocked that Vale and BSGR were doing business together" and that "[u]pon learning of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence" and "conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou." (Am. Compl. ¶ 146.) It is material – not only to the question of spoliation but also to the statute of limitations –

Hon. Andrew J. Peck, p. 2

whether the purported oral hold was issued before April 30, 2010 (when Rio Tinto alleges it was ignorant of any potential claim) or after that date (and if so, how long after).  Among other things, a significant delay in issuing the oral hold after the April 2010 announcement of the Vale-BSGR JV raises serious issues of potential spoliation:  by Rio Tinto's account, it anticipated litigation as early as April 2010.  Moreover, a delay would put the lie in Rio Tinto's claim of surprise in response to that announcement.  If the purported oral hold was issued, Rio Tinto knows when, and can easily say so.  Moreover, Rio Tinto's reply letter states that the purported "Fall 2010" oral hold advised recipients of the need to "*continue retaining*" documents.  (Dk. 259 at 1 (emphasis added).)  If there was an earlier hold instruction issued (orally or in writing), Plaintiff must disclose that fact and the earlier hold's date (be it in "Fall 2010" or otherwise), contents, and recipients.  Those facts are material.

Rio Tinto also has not disclosed the content of its purported oral hold.  Its reply states that it "advised [certain recipients] that they needed to continue retaining *all documents related to Simandou and the Rio Tinto-Vale negotiations*" and claims "the content . . . of this already have been provided to Vale."  (Dk. 259 at 1 (emphasis added).)  That is news to Vale.  Rio Tinto previously described the content of the oral hold to Vale as extending to "*documents related to Simandou*," with no mention of the "Rio Tinto-Vale negotiations."  (May 12, 2015 Letter from E. Lyttle to L. Liman at 1.)  The discrepancy too is material.  For one thing, an instruction concerning Vale specifically would obviously be relevant to when Rio Tinto first believed it had a claim against Vale.  Moreover, either description (with or without the mention of Vale) leaves unanswered whether the hold extended to a number of relevant matters (not limited to Simandou) about which documents certainly existed in 2010 – some, none, or all of which may still exist today.  For example, did Rio Tinto preserve documents related to:

- BSGR, its operations in Guinea, its purported reputation for bribery, its relationship with alleged co-conspirators Cilins, Thiam, Lev Ran, Noy, and Touré, and its alleged secret agreement with Vale;

- Alleged secret meetings among Vale, BSGR, and the Government of Guinea during 2008 and 2009;

- The 2007 proposal by BHP Billiton to Rio Tinto involving a proposed acquisition of Rio Tinto in exchange for shares of BHP Billiton and Rio Tinto's strategies to respond to that proposal and its decision on or about November 8, 2007 to reject it as not in the best interests of Rio Tinto's shareholders;

- The offer made by BHP Billiton to the shareholders of Rio Tinto on or about February 6, 2008 for all of the shares in Rio Tinto Limited and Rio Tinto plc and Rio Tinto's strategies to respond to that exchange offer;

- Transactions or potential transactions between Rio Tinto and any third party that would involve or include the sale or transfer of all or substantially all of Rio Tinto's non-iron ore assets (*i.e.*, not Simandou) or the spin-off of such assets during the period of time from November 2007 to November 2008;

Hon. Andrew J. Peck, p. 3

- Rio Tinto's negotiations with Chinalco and/or Chalco concerning the Chinese company's investment in a 9% stake in Rio Tinto in 2008;

- Vale's and BSGR's alleged applications for rights to "Simandou North" (which is separate from Simandou Blocks 1-4) in 2005-6;

- Rio Tinto's engagement of, and correspondence with, its investigative firms concerning BSGR, Steinmetz, or Vale; and

- Rio Tinto's reaction to the April 2010 announcement of the BSGR-Vale JV.

These matters are all the subjects of Vale's discovery requests to Rio Tinto and they are not limited to Simandou or the Vale-Rio Tinto negotiations for Simandou. Among other things, the fact that Rio Tinto's Seed and Training Sets contained only one document regarding its response to the April 30, 2010 announcement of the Vale-BSGR transaction is concerning and suggests that Rio Tinto failed timely to retain documents regarding that transaction. Rio Tinto should be able to disclose easily whether the oral hold informed employees whether to hold onto each of the categories above and anything else.

      Finally, Rio Tinto is wrong to suggest that the fact it "uses an automatic archiving system called eVault that captures and retains all email . . . after 60 days" (Dk. 259 at 1) excuses its violation of this Court's order. The Court's order was made with knowledge of and against the backdrop of Rio Tinto's system. As Rio Tinto admits, that system permitted individuals – including the key employees involved here – to delete emails for a full 60 days after receipt and Rio Tinto does not say it can retrieve those emails. Thus, if, as is suggested by Rio Tinto's letter, it failed to issue a litigation hold timely or that hold was incomplete, there would be no protection for Vale against Rio Tinto's intentional or reckless destruction of evidence.

                      Respectfully submitted,

                        /s/ Lewis J. Liman
                        Lewis J. Liman

cc:      All counsel of record (via ECF)