**APPENDIX 1**
**LETTERS OF REQUESTS TO INVESTIGATIVE FIRMS**

**REQUESTS COMMON TO ALL FIRMS:**

| Firm | Requests |
|---|---|
| Livingston & Company (UK)<br><br>BTG Intelligence Limited (UK)<br><br>Africa Risk Confidential (UK)<br><br>Aeneas (France)<br><br>Executive Research and Associates (South Africa) | 1. The proposals, pitch books, presentations You provided to or prepared for Rio Tinto as reflected in the Reports.[1]<br><br>2. The engagement letters and disengagement letters between You and Rio Tinto for Rio Tinto's retention of Your services in connection with the Reports.<br><br>3. The bills or invoices, including the time sheets or records of activities performed by You in connection with Rio Tinto's retention of Your services as reflected in the Reports.<br><br>4. The bank statements showing payment by Rio Tinto to You in connection with Rio Tinto's retention of Your services as reflected in the Reports.<br><br>5. The documents shared with Rio Tinto in connection with the Reports.<br><br>6. The drafts of the Reports, including the research for, preparation of, and analyses and discussions regarding the Reports for Rio Tinto, whether relied upon or not in any version of the a Report for Rio Tinto.<br><br>7. Any other documents reviewed, received, or prepared in connection with the Reports, including the documents summarizing or characterizing conversations or information received by contacts, sources, and/or informants cited in Your Reports for Rio Tinto.<br><br>8. Interview memoranda and documents relied upon for relevant findings in the reports as indicated below. |

---

[1] At the time Vale obtained the Letters of Request seeking discovery from investigative firms engaged by Rio Tinto, Rio Tinto had not produced any reports authored by Aeneas and, as a result, the requests directed to Aeneas called for documents prepared for Rio Tinto in connection with Aeneas' services concerning Simandou, Guinea, BSGR, Steinmetz, and/or Vale between April 30, 2010 and April 30, 2014, rather than for documents prepared for Rio Tinto as reflected in specific reports.

**REQUESTS UNIQUE TO PARTICULAR FIRMS:**

| Livingston & Company | 1. The interview memoranda with Your source who is quoted on pages 1 and 3 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010, as stating that BSGR was discussing infrastructure "with [Arcelor]Mittal – specifically the issue of the railway that will go from Mifergui to Buchanan."

2. The documents, including interview memoranda, which You relied on for the finding of "[o]ne of [Y]our associates" in Monrovia that "BSGR is in partnership with 'a number' of strategic partners in the context of its Liberian operations, implying that the arrangement goes beyond the cooperation with Vale," including interview memoranda summarizing conversations with "a senior Liberian official" who is noted as stating that "one of the companies involved is an infrastructure company," as referenced on page 5 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010.

3. The documents, including interview memoranda, which You relied on for Your findings on page 5 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010, that "Steinmetz had already signed a separate MoU whereby agreement was to be reached before 1 June 2010 for the development of Yekepa-Buchanan railway operated by Mittal," and that "[w]hile BHP Billiton's interest in having access to the railway is widely known, more directly linked to Steinmetz' strategy are the intentions of the Israeli company Elenilto owned by Jacob Engel, which is the current operator of the Western Cluster," including documents evidencing Your findings concerning Elenilto and Jacob Engel.

4. The documents, including interview memoranda, which You relied on for Your finding on page 6 of Your report entitled "Guinea (Report Six)," dated 9 July 2010, that "Beny Steinmetz originally approached Chinalco about the Blocks 1 & 2 project, but Chinalco refused to enter into a JV and finance BSRG [*sic*]."

5. The documents, including interview memoranda, which You relied on for Your findings concerning the importance of Steinmetz's "close ties" to "Ibrahim [*sic*] Sory |
|---|---|

II Touré, a brother-in-law of [President] Conté and currently the chief external relations officer of Steinmetz' BSG Resources (Guinea) Ltd (BSGR)," including Your finding that Asher "Avidan worked closely with Ibrahim [*sic*] Sory II Touré, prior to the death of Conté, using his access to seize Rio Tinto's assets immediately following the 9 December 2008 government announcement that control of half the concession had been rescinded," as referenced on page 2 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010.

6. The documents, including interview memoranda, which You relied on for Your findings on pages 1 and 2 of Your report entitled "Guinea (Report Three)," dated 18 June 2010 concerning "the lengths it appears Steinmetz allegedly went to in order to secure control of the Simandou Blocks," including:

    i.    The interview memoranda with Your source quoted on page 2 of that report as stating:  "Beny knew that securing the concessions would cost him money, but in the long run it would be worth it . . . .  He also knew that the Guinean government wouldn't get anything out of a multinational playing by the rules, so it was a simple case of persuading corrupt government officials to obtain the deposits by confiscating them from Rio, and then agreeing on the fee. This is how he operates – the suitcase that [Steinmetz' business partner] Victor Kenan was spotted with outside the president's office contained $10 million.

    ii.    The interview memoranda with Your source quoted on page 1 of that report as stating that the "$10 million [that BSGR] paid to officials in 2008 was 'a sweetner.'"

    iii.    The interview memoranda with Your source described on pages 1 and 2 of that report as "well-known" to You and quoted as stating that "[a]fter asking him this question, [Minister of Mines Mahmoud] Thiam [("Thiam")] replied that he was 'asking for my $200 million.'"

7. The interview memoranda of Your source quoted on page 4 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010 as stating that Steinmetz "has

been offering bribes to most of the key people in Guinea for the past several years."

8. The interview memoranda of the "officer" quoted on page 4 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010 as stating that "Steinmetz puts a lot of effort into looking for influence, and has tried repeatedly to influence President Konaté," including by "sending him a gift of a white cow – a gift which was returned because it was 'unwanted.'"

9. The interview memoranda with a source described as having knowledge of "Beny Steinmetz' 'inner circle,'" who is referenced on pages 1 and 3 of Your report entitled "Guinea (Report Ten)," dated 6 August 2010, who "related to one of [Your] associates in Tel Aviv how it appears [BSGR] has sought to gain influence in several African countries, and specifically in Guinea," explaining that "[Avraham] Levran [sic] had told him that he is responsible for what he himself called 'special payments to officials and leaders in countries of interest in Africa,'" and that "'Avi [Lev Ran] receives the money in cash, and delivers it to others.  He told me that he personally delivered to the head of a certain country in Africa a suitcase with cash, and that on his way to the office also delivered envelopes of $10k and up to $40k to helpers, subordinates and aides of that leader.'"

10. The interview memoranda with Your source who "told [You]:  '[Steinmetz] considers [Ehud] Olmert to be his Number One 'door opener' in Africa,' Olmert plans to increase his activities in Africa,'" as referenced on page 2 of Your report entitled "Guinea (Report Nine)," dated 30 July 2010.

11. The documents, including interview memoranda, which You relied on for Your findings concerning Beny Steinmetz's relationship with Ibrahima Kassory Fofana ("Fofana"), including Your finding that Fofana is "considered by some to be Beny Steinmetz' 'godfather' in Guinea," as referenced on page 5 of Your report entitled "Guinea (Report Eleven)," dated 11 August 2010, and interview memoranda with Your source who is referenced on page 8 of Your report entitled "Guinea (Report Four)," dated 25 June 2010, who stated that Fofana was "a consultant to Beny Steinmetz."

12. The documents, including interview memoranda, evidencing Your discussion with "several of [Y]our sources in Conakry" who "have been told that [Prime Minister Cellou Dalein] Diallo's election campaign may have received funds from Beny Steinmetz," and that Diallo is "'under pressure' to support a review of contracts," including interview memoranda with "a political figure close to [Alpha] Condé [who] explained to [You] that the 'Rio-Tinto-Steinmetz-Vale affair' is in the electoral spotlight," stating that "'there are suspicions – all of them unproven . . . that Diallo is supporting Steinmetz, perhaps because of campaign contributions,'" as referenced on pages 1 and 3 of Your report entitled "Guinea (Report One – Preliminary)," dated 1 June 2010, on pages 1 and 4 of Your report entitled "Guinea (Report One – Final)," dated 4 June 2010, and on page 11 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010.

13. The documents, including interview memoranda, evidencing reports from Your "associates in Monrovia," which characterized Steinmetz's relationship with Liberia's Minister of Lands, Mines and Energy, Eugene Shannon as "strong . . . allow[ing] Steinmetz to acquire considerable iron ore concessions that lie close to the Nimba-Buchanan railway line," and explained that "[b]y contrast, BHP billiton . . . has recently been frustrated by Shannon, who has instructed his negotiators to stall discussions with the company," as referenced on pages 4-5 of Your report entitled "Guinea (Report Two)," dated 11 June 2010.

14. The documents, including interview memoranda, which You relied on for Your finding on page 6 of Your report entitled "Guinea (Report Six)," dated 9 July 2010, that "BSRG [sic] is doing a good job of muzzling the press with handsome payoffs."

15. The interview memoranda summarizing or characterizing Your conversation on 17 June 2010 with Your source who is referenced on page 3 of Your report entitled "Guinea (Report Three)," dated 18 June 2010 who "told [You]: 'Beny is saying that if Rio goes after him, Thiam will threaten to confiscate their remaining concessions in Guinea.'"

16. The interview memoranda summarizing or characterizing Your conversation with a source described as a "mining sector insider who is well-known to us" who is

referenced on page 2 of Your report entitled "Guinea (Report Seven)," dated 16 July 2010, who "explained:  'Thiam, along with the Secrétaire-général du minister Aboubacar Koly Kourouma has been pressuring President Sékouba Konaté and [Prime Minister] Jean-Marie Doré to make further ultimatums to Rio Tinto with regard to the relinquishment of their claim to Blocks 1 and 2, in return for guaranteeing their retention of title to Blocks 3 and 4.'"

17. The interview memoranda summarizing or characterizing Your conversation with a source described as a "very well-placed official" who "explained:  'Thiam's principle political role is as paymaster to both the top officials in government and to potential opponents of the deals that have been cemented over the last year with BSRG [sic] and China International Fund.  Thiam has been instrumental in paying of Dadis's supporters,'" as referenced on pages 4 and 13 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010.

18. The interview memoranda summarizing or characterizing Your conversation with a source "in Conakry [who] told [You]:  'Thiam is positioning himself as the gatekeeper, so that he and his network of business associates will have legal and contractual rights to Guinean assets after the elections, and will be able to offer these up to the 'super-majors' for buyouts – in the same way that Steinmetz attracted Vale,'" as referenced on pages 4 and 13 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010.

19. The interview memoranda summarizing or characterizing Your discussion with an official who is referenced on page 3 of Your report entitled "Guinea (Report Four)," dated 25 June 2010, concerning correspondence from Thiam "[m]aking reference to the Vale-BSRG [sic] deal [that] read: 'I have been monitoring the deal for months, next comes Rio-Chinalco, then Bellzone and X.  Then I can go home.'"

20. The interview memoranda summarizing or characterizing Your conversation with a source described as "familiar with Mines Ministry opinion on the Rio Tinto issue," who is referenced on pages 2-3 of Your report entitled "Guinea (Report Eight)," dated 23 July 2010, who stated "'Remember, there is very much a 'party line' within the Ministry, and this party line has been promoted by Thiam and [Prime Minister]

Doré, both of whom stand to gain enormously if the Blocks 1 and 2 issue can be definitely resolved in favour of Beny Steinmetz and Vale."

21. The documents, including interview memoranda, which You relied on for Your finding on pages 1 and 3 of Your report entitled "Guinea (Report Five)," dated 2 July 2010 that "Mahmoud Thiam has privately shared his concerns about the prospect of a legal challenge regarding the revocation of Simandou Blocks 1 and 2 and their reallocation to BSRG [sic], including interview memoranda with a source who is quoted on pages 1 and 3 of that report as stating:

    i.    "[I]t's clear that 'unofficial' signature bonuses have been paid in order to push the deal through. I think that if Rio Tinto were to present a strong case before an international arbitration court they would have a good chance of winning. This is what is really worrying Thiam."

    ii.   Thiam "is conscious that Rio Tinto is almost certainly planning a major legal challenge. He is of the view that this will not only be against Steinmetz – perhaps in multiple jurisdictions – but possibly also against the Government of Guinea . . . everyone knows that the whole process of revocation and reallocation of the Simandou Blocks is full of legal problems."

22. The documents, including interview memoranda, which You relied on for Your findings on pages 1 and 2 of Your report entitled "Guinea (Report Nine)," dated 30 July 2010 that "BSRG [sic] has been anticipating that Rio Tinto will take legal action regarding control of Simandou Blocks 1 & 2" and concerning the suggestion that Steinmetz "probably has a source or sources in that company (Rio Tinto), who are feeding him with information" and that BSGR "may have more than one informer within Rio."

23. The documents summarizing or characterizing Your conversations with sources "regarding the demand made on 21 June 2010 by the Ministre Secrétaire-général at the Presidency Tibou Kamara for Rio Tinto to provide the Government with the geological studies of Simandou Blocks 1 & 2, and the demand made on 25 June 2010 by Prime Minister Doré that Rio Tinto provide the feasibility studies and schedule for

exploitation of the concessions with 60 days, that is by 17 August [2010]," as referenced on pages 1 and 4 of Your report entitled "Guinea (Report Eleven)," dated 11 August 2010.

24. The documents which You relied on for Your "examin[ation] [of] the legal basis upon which Rio Tinto's Zagota [sic] and Simandou North Blocks One and Two were transferred to BSGR," as referenced on pages 1 and 3 of Your report entitled "Guinea (Report Three)," dated 18 June 2010, and on pages 4, 15, & 16 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010 including:

   i.   The interview memoranda or documents summarizing or characterizing Your associate's "preliminary discussions with a Guinean lawyer who specializes in mining issues," who Your associate stated was "firmly of the belief that the confiscation of the Rio blocks and their subsequent reassignment to BSGR . . . may have been done illegally," and that "Rio Tinto has a case which should be made before the International Court of Arbitration," as referenced on pages 1 and 3 of Your report entitled "Guinea (Report Three)," dated 18 June 2010.

   ii.  The interview memoranda or documents summarizing or characterizing Your associates in Conakry's "discreet discussions with Ministry officials" in which "concerns regarding the award of Simandou 1 & 2 to BSRG [sic] are being voiced by officials," as referenced on pages 4, 15, and 16 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010.

   iii. The documents which You relied on for Your finding that "it would seem appropriate to await the result of inquiries into . . . the legality of the seizure of Simandou 1and 2, with the purpose of drawing up a sound legal case on the basis of which an action can then be launched once the election is over and the new government is in place, as referenced on pages 4, 15, and 16 of Your report entitled "The Political Landscape in Guinea," dated 18 June 2010.

25. The documents, including interview memoranda, summarizing or characterizing Your discussion with a source described as "an insider in the Brazilian mining sector" and in "personal contact with Vale's senior management," who was asked

"why he thought Rio Tinto had not yet contested the Guinea deal in court" and "explained:  'The fact that Rio has not gone to court or to dispute resolution means they may believe they can talk the situation through and reach a compromise with Vale," as referenced on page 4 of Your report entitled "Guinea (Report Seven)," dated 16 July 2010.

26. The interview memoranda summarizing or characterizing Your discussions with Your source described as an "Ex-Vale director," who was asked "whether he thought that Vale's access to Simandou Blocks 1 and 2 might lead to a legal challenged by Rio Tinto," as referenced on page 5 of Your report entitled "Guinea (Report Seven)," dated 16 July 2010.

27. The interview memoranda summarizing or characterizing Your discussions with Your source quoted as stating that Steinmetz "believes that he is in the clear as far as the Rio blocks are concerned . . . He is sure that the title over the concessions that he holds is legitimate – and let's face it, Vale would not have signed off on the deal if their lawyers thought that there might be a problem," as referenced on page 6 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010.

28. The interview memoranda summarizing or characterizing Your discussions with Your source quoted as stating that Steinmetz "clearly sold the Simandou deal to Vale on [the] understanding" that he would "broker a bilateral agreement between Guinea and Liberia for the export of iron ore through Buchanan," as referenced on page 5 of Your report entitled "Guinea/Liberia – Beny Steinmetz," dated 7 May 2010.

29. The interview memoranda summarizing or characterizing Your discussions with "a director of Vale" who is referenced on pages 1, 2, and 9 of Your report entitled "Guinea (Report Four)," dated 25 June 2010, and quoted as stating "that the development of [Simandou Blocks 1 and 2] will start soon . . . It is important to remember that Rio Tinto lost the contract because they did not develop it in a timely manner.  This is what we have learned and we do not want to repeat the mistakes of Rio Tinto."

30. The documents, including interview memoranda, which You relied on for Your

| | |
|---|---|
| | finding on pages 1 and 2 of Your report entitled "Guinea (Report Six)," dated 9 July 2010, that Alpha Condé "has followed the Rio Tinto case with interest and is aware of the way that BSRG [sic] 'negotiated' the concessions."<br><br>31. The interview memoranda summarizing or characterizing Your discussions with a source who is referenced on pages 1 and 2 of Your report entitled "Guinea (Report Eight)," dated 23 July 2010, who stated that "Prime Minister Doré is very annoyed that Rio Tinto officials circumvented the Prime Minister's Office and contacted Interim President Sékouba Konaté directly to discuss their claim to Blocks 1 and 2."<br><br>32. The interview memoranda summarizing or characterizing Your discussions with a source who is referenced on page 3 of Your report entitled "Guinea (Report Four)," dated 25 June 2010, who "told [You]: 'People believe that Rio has done a deal with the Government formally abandoning its claim to Zagota [sic] and Blocks One and Two in order to secure title over its remaining properties and push ahead with the Chinalco JV.'"<br><br>33. The documents, including interview memoranda, which You relied on for Your finding that "[t]he suggestion that RioTinto [sic] has also provided campaign finance to [Presidential Candidate] Sidya Touré has also been quite widely discussed," as referenced on page 2 of Your report entitled "Guinea (Report Four – Supplementary 3)," dated 28 June 2010.<br><br>34. The report entitled "Political and Business Issues Regarding Control of Simandou Blocks 1 & 2," referenced on page 10 of Your Report entitled "Guinea (Report Twelve)," dated 13 August 2010. |
| BTG Intelligence Limited | 1. The documents from Your "enquiries" which You relied on for Your finding that "Steinmetz has also invested a considerable amount of time and effort in forging a good working relationship with Mahmoud Thiam, the Guinean Minister of Mines and that they meet on a regular basis," as referenced on page 6 of the report entitled "Project Raven Report," dated 19 July 2010.<br><br>2. The documents, news reports, and other sources cited on pages 12-18 of Your report |

entitled "Project Raven Report," dated 19 July 2010, concerning a potential joint venture, partnership, investment agreement, or other arrangement regarding Simandou between BSGR and potential partners, including but not limited to China International Fund ("CIFL"), Aluminum Corporation of China Limited ("Chalco"), and/or Aluminum Corporation of China ("Chinalco").

3.  Any other documents which You relied on for Your findings as set forth on pages 12-13 of Your report entitled "Project Raven" concerning a potential joint venture, partnership, investment agreement, or other arrangement regarding Simandou between BSGR and potential partners, including but not limited to China International Fund ("CIFL"), Aluminum Corporation of China Limited ("Chalco"), and/or Aluminum Corporation of China ("Chinalco"), including, if obtained in the course of Your enquiries:

    i.   The interview memoranda summarizing conversations with members of BSGR, CIFLT, Chalco, or Chinalco related to such a potential joint venture.

    ii.  The emails to or from a BSGR email address with CIFL, Chalco, and/or Chinalco and their attachments.

    iii. The term sheets agreed between BSGR and CIFL, Chalco, and/or Chinalco.

    iv.  The contents of any data room between BSGR and CIFL, Chalco, and/or Chinalco.

4.  The reports compiled as a result of information obtained relating to the "Suggested Lines of Enquiry" identified on pages 19-20 of the report entitled "Project Raven Report," dated 19 July 2010.

5.  The documents, including interview memoranda, summarizing or characterizing Your discussion with a source described as "a very close personal and business associate of Steinmetz" who "informed [You] that Beny Steinmetz has already paid nearly $10m to the military regime in Guinea some time ago and that having secured additional mining concessions in Simandou he has been seeking assistance from

Beijing to support his growing company infrastructure in Guinea and that he is also courting assistance from an influential entrepreneur in Monaco to maintain his business momentum," as referenced on page 19 of the report entitled "Project Raven Report," dated 19 July 2010.

6. The documents, including interview memoranda, which You relied on for "earlier information from a gold mining contact in Guinea that Steinmetz is very close to the Guinean Minister of Mines," as referenced on page 19 of the report entitled "Project Raven Report," dated 19 July 2010.

7. The documents which You relied on for Your finding that "the Guinean Government's Minister of Mines, Mahmoud Thiam, had wholly supported and encouraged Steinmetz's business flirations with the Chinese.  There were suggestions that Thiam himself had even offered Chinalco, the Chinese Aluminum Company that part of the Simandou project that had been removed from Rio Tinto and 'handed' to Steinmetz," as referenced on page 5 of the report entitled "Project Raven Report – Part 2," dated 19 July 2010.

8. The documents which You relied on for "the rumor that CIFL did withdraw its offer" for a potential joint venture with BSGR, as referenced on page 6 of the report entitled "Project Raven Report – Part 2," dated 19 July 2010.

9. The documents which You relied on for Your finding that "Chinalco, CIFL and other Chinese companies [were] 'circling' around the lucrative iron ore and other mining contracts in Guinea," as referenced on page 7 of the report entitled "Project Raven Report – Part 2," dated 19 July 2010.

10. The spreadsheet "that summarises the sequence of events" and which was presumably attached to "Project Raven Report – Part 2," as referenced on page 8 of that report.

11. "The reference documents, from which the database has been created, [which] have also been scanned, indexed and incorporated into another searchable database by our researchers" and are also maintained in "hard-copy," as referenced on pages 9 and 10

| | |
|---|---|
| | of the report entitled "Project Raven Report – Part 2," dated 19 July 2010. |
| | 12. The documents evidencing Your "awareness" "that in August 2009 the former Prime Minister of Israel, Ehud Olmert, who is also a personal friend of Beny Steinmetz, visited MCC Limited in Beijing together with Steinmetz," as referenced on page 21 of the report entitled "Project Raven Report – Part 2," dated 19 July 2010. |
| | 13. The documents, including interview memoranda, evidencing Your discussion with a source who "stated that he and Steinmetz were still heavily engaged interacting with the Chinese in Guinea and in other locations," as referenced on page 21 of the report entitled "Project Raven Report – Part 2," dated 19 July 2010. |
| Africa Risk Confidential | 1. The documents, including interview memoranda, which You relied on for Your finding that "[t]he minister of mines [Thiam] told a confidential ARC source that he has a good relations with Benny Steinmetz who has made a point of making himself known to Thiam," as referenced on page 15 of Your report entitled "Project Isiro," dated 26 June 2009. |
| | 2. The documents which You relied on for Your findings on page 1 of Your report entitled "Key Findings," dated 7 November 2010, referring to Minister of Mines Mahmoud Thiam's ("Thiam") "[f]requent travel on the private jet of Beny Steinmetz . . . to numerous jurisdictions" and "Thiam and Beny Steinmetz tog[e]ther making frequent private flights to numerous jursidictions," including the flight records and confidential source inquiries supporting the itineraries listed on page 22 of that report. |
| | 3. The documents which You relied on for Your finding that "Steinmetz and Thiam attend[ed] a family wedding in Israel," as referenced on page 1of Your report entitled "Key Findings," dated 7 November 2010, including (for example) the wedding invitation, passport details, flight information, or correspondence related to the visit. |
| | 4. Any other documents, providing a basis for, or concerning Your findings as set forth in Your report entitled "Key Findings," dated 7 November 2010, concerning the |

relationship between Thiam and Steinmetz.

5. The documents, including interview memoranda, which You relied on for Your finding that Thiam "is very close to former economy and finance minister Ibrahima Kassory Fofana, who supported his appointment for his current position in the new military government," as referenced on page 22 of Your report entitled "Interim Draft: Project Isiro Profiles," dated 18 May 2009, and pages 3 and 13 of Your report entitled "Key Findings," dated 7 November 2010, including interview memoranda with the source quoted on page 13 of that report as saying, "When he was in government, Kassory Fofana often asked Thiam's advice."

6. The documents, including interview memoranda summarizing or characterizing Your discussion with a "well-informed source," which You relied on for Your finding that "Thiam returned to Guinea on this specific mission:  to support the Kassory [Fofana] agenda," as referenced on page 20 of Your report entitled "Interim Draft: Project Isiro Profiles," dated 18 May 2009.

7. The documents, including interview memoranda or media articles, which You relied on for Your finding that "Guinea commentators suggest Fofana was behind the 2008 award of the Simandou iron ore concession to BSGR Guinea" and that "[i]t is thought Fofana's influence secured the decision by the new Mines Minister [Thiam] . . . not to overturn the award to BSGR.  Steinmetz is known to have met personally with the new Mines Minister," as referenced on page 4 of Your report entitled "Corruption Risk Enquiry: Draft Report," dated 1 July 2009.

8. The documents, including interview memoranda and other "reports [that] indicate that Kassory [Fofana] did not avoid a direct confrontation with Prime Minister Ahmed Tidiane Souaré on 10 November 2008, when he gave Souaré a talking to in private," as referenced on page 25 of Your report entitled "Interim Draft: Project Isiro Profiles," dated 18 May 2009.

9. The documents which You relied on for Your finding of Thiam's purchase of properties located at 771 Duell Road in Dutchess County, New York, 170 East End Avenue in New York, New York, including (for example) the deed of purchase, land

registry, or land value appraisal.

10. The documents which You relied on for Your finding on page 1 of Your report entitled "Key Findings," dated 7 November 2010, of Thiam's "[s]uspicious purchase of $1.5 million new development apartment in New York with no mortgage several days after the conclusion of a loan agreement between CIF and Alex Stewart International," including the deed of purchase, land registry, land value appraisal, and the loan agreement.

11. The documents concerning or relating to any other real estate owned directly or indirectly by Thiam.

12. The documents which You relied on for Your finding that Rio Tinto was "already well-informed about Beny Steinmetz, his interests and activities," as referenced on page 12 of Your report entitled "Project Isiro, Section II: Corruption Risk Enquiry, Draft Report," dated 1 July 2009 and on page 18 of Your report entitled "Project Isiro II, Draft report," dated 12 August 2009.

13. The documents which You relied on for Your findings as set forth in Your report entitled "Key Findings," dated 7 November 2010, concerning bribes paid by BSGR to the Government of Guinea, including the finding on page 15 that "[President] Conté's fourth wife ([Mamadie Touré] cited above [on page 12]) who actually has interests in BSGR Guinea, received kickbacks to help establish the company in the country," including interview memoranda from sources referring to "£7 million and much more from the start" and the *Jeune Afrique* report from 2008 cited for the proposition that "Steinmetz paid $7 million to those close to Conté on the eve of the signing over of the rights to Simandou."

14. The documents which You relied on for Your finding that "Ibrahima Sory Touré, in charge of external relations for BSGR Guinea, is one of the brothers of Mamadie Touré Conté, the 4th wife of the late president," as referenced on page 15 of Your report entitled "Project Isiro, Section II: Corruption Risk Enquiry, Draft Report," dated 1 July 2009, including the *Africa Mining Intelligence* report, dated 7 January

| | |
|---|---|
| | 2009, which is cited as the source supporting that statement. |
| | 15. The documents which You relied on for Your finding that "Ibrahima Sory Touré was the intermediary of his sister, who used her influence on Conté to achieve her goals," as referenced on page 12 of Your report entitled "Key Findings," dated 7 November 2010, including the interview memoranda of the conversations with Ibrahima Sory Touré, as quoted on pages 12-13 of that report. |
| | 16. The interview memoranda with a "senior ARC source who knows Touré well," who is referenced on pages 18-20 of Your report entitled "Project Isiro II, Draft report," dated 12 August 2009, as having confirmed Touré's relationship with Steinmetz, stating that Touré "opened many doors to Steinmetz and has many relationships," characterizing the award of mining rights to BSGR as "a beautiful coup," and reporting that Touré was appointed to his BSGR position for his "services rendered." |
| | 17. The documents which You relied on to evidence the roles of Ibrahima Sory Touré and Kassory Fofana, as referenced on page 5 of Your report entitled "Project Isiro II, Draft report," dated 12 August 2009. |
| | 18. The sources which You relied on to support the statement that "[t]here are perceived/suspected links between Steinmetz and Kassory Fofana in Guinean news/commentary websites," including articles attributed to Moussa Diop about the influence of Mamadie Touré Conté in the grant of the Simandou concession, as referenced on pages 15-16 of Your report entitled "Project Isiro, Section II: Corruption Risk Enquiry, Draft Report," dated 1 July 2009, and on page 20 of Your report entitled "Project Isiro II, Draft report," dated 12 August 2009, which adds that "Diop claims that a US source asserted that Thiam had financial management links with some of Conté's wives in addition to financial management role for Fofana." |
| Executive Research and Associates | 1. The documents, including interview memoranda, which You relied on for Your findings set forth on page 16 of the "Project VAAL" report that "several companies were approached simultaneously [by BSGR] including [Arcelor]Mittal" concerning a potential joint venture, partnership, investment agreement, or other arrangement regarding Simandou, including the names of the "several companies" other than |

ArcelorMittal and interview memoranda summarizing or characterizing conversations with members of BSGR and/or members of the "several companies" related to such a potential joint venture.

2.  The documents which You relied on for Your finding that BSGR "spoke to Mittal, BHP-Billiton and Kumba before it spoke to Vale," as referenced on page 9 of the "Project VAAL II" report, including interview memoranda reflecting discussions between Dag Cramer and a source during a meeting in Europe on 7 November 2008, during which Cramer told the source that Mittal may be "'interested' in collaborating with BSGR in a JV," as referenced on page 10 of the "Project VAAL II" report.

3.  The documents which You relied on for Your finding on page 12 of the "Project VAAL II" report that, as of February 2009, "[n]egotiations had started between BSGR and Chinalco," as well as Your finding on page 14 of that report of a meeting between a "Chinalco delegation" and "BSGR elements" on 22-24 November 2009.

4.  The documents, including interview memoranda from "multiple sources," which You relied on for Your findings as set forth on page 6 of the "Project VAAL" report concerning a potential joint venture, partnership, investment agreement, or other arrangement regarding Simandou between BSGR and ArcelorMittal, including to interview memoranda from "multiple sources" evidencing that "discussions between ArcelorMittal and BSGR broke down during the latter half of [2009]," including:

    i.   The interview memoranda summarizing or characterizing conversations with members of BSGR and/or ArcelorMittal related to such a potential joint venture.

    ii.  The emails to or from a BSGR email address with ArcelorMittal and their attachments.

    iii. The term sheets agreed between BSGR and ArcelorMittal.

    iv.  The contents of any data room between BSGR and ArcelorMittal.

5. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 3 and 6 of the "Project VAAL" report that "[m]ultiple sources have indicated that Vale only entered into serious negotiations with BSGR in December 2009."

6. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 3 and 6 of the "Project VAAL" report that "the December 2009 talks [between BSGR and Vale] had been preceded by earlier discussions of a preliminary nature between both parties, the first having taken place in late 2008 following by a second round of discussions in July 2009."

7. The interview memoranda reflecting discussions with a "Guinean source" who was told by a Vale delegation that "the only prior contacts Vale had had with BSGR people working in Simandou-Zogota, was on a social or in an un-official capacity – but that no 'official discussions or agreement' had been reached at this time between both sides" and the interview memoranda with other "[k]ey sources . . . of the view that official meetings only took place between Vale and BSGR <u>after</u> Vale's early December meeting with the [Guinean] officials," as referenced on page 10 of the "Project VAAL II" report.

8. The documents, including interview memoranda, which You relied on for Your findings related to the meetings, referenced in the "Project VAAL II" report, between BSGR and Vale, and Your finding that "the first such recorded meeting between both sides only took place on 1 March 2009," including in reference to the following meetings:

   i. The meeting in Dakar, Senegal between BSGR's Mark Struik and "Mr. Martins" from Vale on 1 March 2009.

   ii. The meeting between Minister Thiam and Vale "engineers" on 4 March 2009.

   iii. The meeting between Issa Camara, Avidan, and a Vale representative at Simandou on 7 March 2009.

iv.   The bilateral meetings between Vale and BSGR officials in Conakry on 19 March 2009.

v.   The meeting between Vale's legal team, officials from Vale's local office, and legal representatives from BSGR and Bateman on 25 March 2009.

vi.   The meeting between Vale CEO Roger Agnelli and members of BSGR Guinea's team around 10 April 2009.

vii.   The  meeting between Minister Thiam and top Vale and BSGR officials in Paris on 15 April 2009.

viii.   The visit by Avidan and Cramer to Brazil to meet a host of Vale's directors in January 2010.

ix.   The meeting between BSGR people and Vale in Conakry on 13-14 February 2010.

x.   The ongoing meetings between BSGR and Vale team leaders at Simandou in February 2010.

xi.   The additional meetings in April 2010, as referenced on page 16 of the "Project VAAL II" report, including final negotiations to have taken place in Brazil on 20-30 April 2010.

9.   The documents, including interview memoranda, gathered from "human intelligence" and sources referenced on page 5 of the "Project VAAL II" report, including:

i.   Two sources [redacted][2];

---

[2] Because Rio Tinto failed to produce un-redacted copies of its investigative reports to Vale until the afternoon of March 23, 2015, Vale's Letters of Request – which were submitted to the Court that same afternoon in accordance with Magistrate Judge Peck's instruction at the March 17, 2015 conference in this case – refer to the redacted versions of the investigative firm reports.

ii.   One top source [redacted];

iii.   A source in ArcelorMittal's head-office in Europe, including with respect to "discussions at one point" between "BSGR and Mittal";

iv.   Roughly 5 to 6 sources working at different levels in Guinea Conakry.

10. The "memo written by [Marco] Monteiro in May 2006, [according to which] an iron ore project was already being planned for Simandou," as referenced on page 7 of the "Project VAAL II" report.

11. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 8 of the "Project VAAL" report that the Government of Guinea "played a crucial role, specifically in assuring Vale (and the Brazilian government) that the Simandou investment would be safe."

12. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 8 of the "Project VAAL" report that Mahmoud Thiam ("Thiam") "has been behind attempts to undermine Rio Tinto's claim to the Simandou concessions, wanting rather several mining groups to work the area," including "RT-Chinalco and Vale-BSGR . . . an Angolan-Chinese-conglomeration CIF Sonangol in a JV known as ADC . . . Bellzone . . . [and] of course, ArcelorMittal and BHP-Billiton."

13. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 3 and 9 of the "Project VAAL" report that Jean Marie Doré ("Doré") "work[ed] closely with Mining Minister Thiam in getting several large mining companies to develop Simandou, believing that no single firm or coalition of companies can deal with the huge area single-handedly."

14. The sources which You relied on for Your finding that "[w]ith regard to the [Guinea Conakry ("GC")] Mining Ministry, there is widespread acknowledgement that it is the purveyor of widespread corruption" and that the ministry "has become the personal fiefdom of Minister Thiam," as referenced on page 20 of the "Project

VAAL" report.

15. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 8-9 of the "Project VAAL" report that the "powerful fourth wife of the late President Conté, Mamadie Touré has been known to have been a long-time supporter of Benny Steinmetz," including interview memoranda with Your source(s) for the "rumour" that Mamadie Touré's brother, "BSGR's [then] Vice-President of its Guinea operations Ibrahima Soury [*sic*] Touré . . . convinced her to convince the ailing general [President] Conté to intercede on Steinmetz's behalf . . . in securing the Simandou concessions," and interview memoranda with Your source(s) for Your finding that "Mamadie Touré was a critical supporter of mining contracts secured by BSGR in December 2007" in the Forécariah mining region, including by "overrul[ing] cabinet decisions on the allocation of mining concessions in favour of Steinmetz and also reportedly secur[ing] a top government building for BSGR to use as its [headquarters] in Guinea."

16. The documents, including interview memoranda, which You relied on for Your finding of "rumours that Steinmetz paid GBP 7 million to elicit favours from the presidential wife," as referenced on page 8 of the "Project VAAL II" report.

17. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 9 of the "Project VAAL" report that Colonel Bouréma Condé, although originally "skeptical of the BSGR-Vale deal, having been close to the Rio Tinto dispensation . . . seemed to change his mind after BSGR initiated several 'social programmes' in destitute areas under his control and direction."

18. The documents, including interview memoranda, which You relied on for Your finding that Vale "[i]s willing to take some risks, if the outcome looks promising," as referenced on page 11 of the "Project VAAL" report including interview memoranda with the "Vale source" quoted on page 11 of that report as saying, "'[w]e don't have a problem in going into troubled areas:  if you want to hunt elephants, you have to go where elephants are.  There are no elephants on 5th St, NYC.'"

19. The documents which You relied on for Your finding set forth on pages 3 and 11 of

the "Project VAAL" report that "[t]he decision to enter into talks with BSGR was taken by a strategy 'crisis group' headed by Vale's CEO Roger Agnelli" (as also referenced on page 12 of the "Project VAAL II" report).

20. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 3 and 12 of the "Project VAAL" report that "[o]nce the decision to link up with Steinmetz was taken" an "operational oriented [group] was constituted [at Vale] to hold direct talks with BSGR" which "worked during late 2009 in intense contacts with" BSGR (as also referenced on page 12 of the "Project VAAL II" report).

21. The "classified briefing made to the three Vale teams dealing with BSGR and selected shareholders" made by José Carlos Martins, as referenced on pages 12-13 of the "Project VAAL" report.

22. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 15 of the "Project VAAL" report that "Vale used several entities to ensure that all legal aspects of the deal [with Simandou] was secure, notwithstanding the challenges posed by Rio Tinto," and that Vale "did its homework before making the investment," including any documents summarizing conversations with José Martins who is quoted on page 15 of that report as saying "'[w]e took all precautions.'"

23. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 3, 15, and 16 of the "Project VAAL" report that "[a]vailable information suggests that there was very little internal opposition to Vale partnering [with] BSGR in Guinea" and that "[h]ad there been significant opposition to the Simandou deal within Vale, it would not have gone through, especially with government concerns that were lurking in the background."

24. The documents, including interview memoranda, which You relied on for Your findings as set forth on pages 16 of the "Project VAAL" report that "if there was one major exception [to the lack of opposition to the Simandou deal within Vale], it came from Fabio Barbosa," including interview memoranda with the sources cited on page

16 of that report stating that in mid-2008 Fabio Barbosa "voiced concerns over Simandou with regard to environmental and other ethical issues, but that the exact reasons are not known."

25. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 16 of the "Project VAAL" report that "BSGR was frightened by the prospect of having to develop [a Trans-Guinean Rail link] alone, when it took possession of the Simandou concessions, and therefore had made it a priority to find a willing partner to share the burden of infrastructure costs," including:

    i.  The interview memoranda summarizing or characterizing conversations with members of BSGR related to finding, and/or negotiations with, such a willing partner to share the burden of infrastructure such a potential joint venture.

    ii.  The emails to or from a BSGR email address with potential partners discussing infrastructure and their attachments.

26. The documents, including interview memoranda, which You relied on for Your findings that Vale "was [BSGR's] first prospective partner willing to work on infrastructure" as set forth on page 16 of the "Project VAAL" report.

27. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 16 of the "Project VAAL" report that Vale was willing to work with BSGR on infrastructure "although on a revised and downscaled version of the original grand project," including:

    i.  The documents, including emails to or from a BSGR email address with potential partners and interview memoranda summarizing conversations with members of BSGR related to or discussing the "original grand project."

    ii.  The term sheets relating to the "original grand project."

    iii.  The documents, including emails to or from a BSGR email address and

interview memoranda summarizing conversations with members of BSGR related to or discussing the "revised and downscaled version of the original grand project."

   iv.  The term sheets relating to the "revised and downscaled version of the original grand project."

28. The interview memoranda with "one contact in GC," who was reported as stating that using the Liberian corridor to transport iron ore from Simandou "was part of Rio Tinto's initial plan of action (from around 2006)" but that "the significant political instability within Liberia had thrown a question mark over the viability of such a line" and that "efforts had been undertaken to pursue the alternate rail route through Liberia, but the lack of security prevented even preliminary efforts," as referenced on page 17 of the "Project VAAL" report.

29. The documents, including interview memoranda, which You relied on for Your finding as set forth on page 17 of the "Project VAAL" report that "Liberia offers a deepwater port option making the pursuance of the transport link more practical."

30. The interview memoranda with Your "contact in GC" who is referenced on page 17 of the "Project VAAL" report and who characterized the "Liberian option [as] extremely problematic, and personally did not think it was do-able."

31. The documents, including interview memoranda, which You relied on for Your findings as set forth on page 17 of the "Project VAAL" report that "Bateman played a significant role in leveraging the full value of [the Simandou] deposit for BSGR," and was "directly responsible for defining and managing the metallurgical test work . . . the materials handling system at a port and the entire infrastructure surrounding the mine and the plant," including the sources supporting the statement that this "ultimately led to the signing of the [joint venture] between BSGR and GC government in December 2008."