UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RIO TINTO PLC,

             Plaintiff,

  -against-

VALE S.A., BENJAMIN STEINMETZ, BSG
RESOURCES LIMITED, VBG–VALE BSGR
LIMITED AKA BSG RESOURCES (GUINEA) LTD.
AKA BSG RESOURCES GUINÉE LTD, BSG
RESOURCES GUINÉE SARL AKA BSG
RESOURCES (GUINEA) SARL AKA VBG-VALE
BSGR, FRÉDÉRIC CILINS, MAMADIE TOURÉ,
AND MAHMOUD THIAM,

             Defendants.

14 Civ. 3042 (RMB)

## DECLARATION OF SCOTT HORTON

SCOTT HORTON declares as follows pursuant to 28 U.S.C. § 1746:

1.     I am of counsel to the firm of DLA Piper UK LLP ("DLA Piper").  I make this declaration based upon personal information except where otherwise indicated.

2.     DLA Piper has since April 2012 advised the Government of Guinea ("GoG") and several of its political subdivisions in connection with natural resource development issues.  This included a preliminary investigation into allegations of wrongdoing relating to the withdrawal of natural resource exploration and development rights respecting Blocks 1 and 2 of the Simandou concession from Rio Tinto in 2008, the grant of rights to BSG Resources Ltd. ("BSGR") beginning in 2008, and the transfer by BSGR of an interest in those rights to Vale S.A. in 2010.  This preliminary investigation in turn led to decisions taken by competent authorities in Guinea to (1) commence a formal license-review proceeding before the Comité Technique de Revue des Titres et Conventions Miniers, an inter-agency task force charged with the investigation and review of questions arising around mineral licenses and recommend action thereon to the Minister of Mining and Geology and other officers of the GoG; (2) open a criminal investigation into specific allegations of bribery and

corruption; and (3), taking into account information secured that reflected that a substantial part of the alleged wrongful conduct transpired outside of Guinea, and much of it within the jurisdiction of the United States, to issue requests for mutual legal assistance to other affected law enforcement agencies, including the United States Department of Justice.

3.      In April 2013, the United States Department of Justice announced the arrest of Frédéric Cilins, on charges of obstruction of a criminal investigation in violation of 18 U.S.C. § 1510, tampering with a witness, victim, or informant in violation of 18 U.S.C. § 1512(c)(2), and destruction of documents in violation of 18 U.S.C. § 1519.  On March 10, 2014, Cilins ultimately pleaded guilty to obstructing the U.S. criminal investigation into BSGR's activities in Guinea in violation of 18 U.S.C. § 1510(a).  Around the time of Cilins' arrest, GoG was in communication with Vale and its counsel seeking information relevant to the Simandou inquiry. I was one of the persons acting on Guinea's behalf in those overtures and I participated in several meetings in Paris at which the GoG's requests were spelled out in some detail and discussed. I advised Vale's representatives that specific information was being sought relating to Vale's dealings with BSGR and its agents and representatives in connection with the Simandou inquiry. I also noted that the inquiry had not, up to that point, revealed any evidence, whether testimonial or documentary, linking Vale to corrupt acts, and that it therefore appeared on the present state of the evidence that Vale may itself have been a victim.  I then asked that Vale permit the GoG to review materials that Vale's attorneys had compiled in connection with its due diligence on BSGR in order to assist the GoG with respect to its investigation.  I also strongly advised Vale to be in touch with the U.S. Department of Justice to offer its cooperation to the pending U.S. grand jury investigation, and then put Vale's attorneys in touch with U.S. Department of Justice attorneys working on the matter.

4.      Among the items I raised with Vale's attorneys were due diligence materials, particularly including an investigative report (the "Report") that had been prepared by Nardello & Co. at the request of Vale's counsel, Clifford Chance, in connection with Vale's acquisition of an interest in Simandou from BSGR.  Mr. Clovis Torres, Vale's general counsel, responded that Vale could not turn over these materials, but because it wished to be fully forthcoming in its dealings with GoG and assist

the GoG in bringing its investigation to a prompt conclusion, Vale would allow the due diligence materials, including the Report, to be examined by a GoG representative in its offices in Brazil.  I requested that an investigator working for DLA Piper on the matter, Steven Fox of Veracity Worldwide, who was planning to be in Rio de Janeiro the following week, be permitted to examine these materials in Vale's offices.

5.      I understand that Rio Tinto plc is claiming in this litigation that Vale waived the attorney client privilege and attorney work product protection that applies to the Report based on the fact that Mr. Fox, acting as a representative of the GoG, examined the Report.  I express no view on the merits of Rio Tinto's waiver argument.  I do note, however, that at the time, Vale had a common interest with GoG in uncovering any corrupt conduct by BSGR, given that it could pursue certain remedies for breach of contract and fraudulent misrepresentations based on representations BSGR made in connection with its contracts with Vale.

6.      Moreover, I can confirm that Mr. Torres insisted that the GoG maintain the information given to it by Vale in confidence and I, on GoG's behalf, provided assurances that the information would be used only in the context of the pending proceedings and would be kept in confidence to the extent permitted by law. Mr. Torres stressed that the Report was only being shared by Vale on the express understanding that it would be kept confidential.

7.      When Mr. Fox visited Vale's offices in Brazil on April 19, 2013, he did so as an agent of GoG, and was similarly bound to keep the Report confidential.  I understand that Mr. Fox was permitted only to review the Report, and Vale did not give him a copy or permit him to make copies because Vale wanted to preserve the confidentiality of the Report. The GoG thus does not have a copy of the Report.

8.      After DLA Piper had retained Veracity to assist it in connection with its investigation, Mr. Fox informed me that Rio Tinto or its counsel were seeking to hire Veracity.  At Veracity's request and upon consultation of GoG, and without informing Vale, DLA Piper provided a conflict waiver to Veracity in June 2014.  DLA Piper made clear to Veracity at that time that Veracity is not permitted to use for the benefit of Rio Tinto any information it received from Vale to assist the GoG's

investigations surrounding Simandou. In fact, after it was brought to my attention that there was a concern that Mr. Fox might share the information from the Report with Rio Tinto, I called him to remind him that it was understood at the time he had reviewed the Report that the contents of the Report would be kept confidential by the GoG, that he was acting as an agent of the GoG when he had reviewed the Report, and that if any information gathered from his review of the Report was shared in any way with Rio Tinto, this would be viewed by DLA Piper and GoG as a breach of Veracity's duties.  Mr. Fox confirmed that he understood and said he would not share any information with Rio Tinto from his review of the Report.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:      New York, New York
               June 4, 2015

_____
Scott Horton