2015 WL 2400182
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

JUS PUNJABI, LLC, et al., Plaintiffs,
v.
GET PUNJABI INC., et al., Defendants.

No. 1:14–cv–3318–GHW.
|
Signed May 20, 2015.

*MEMORANDUM OPINION AND ORDER*

GREGORY H. WOODS, District Judge.

**I. INTRODUCTION**

 *\*1* Jus Punjabi, a cable and satellite television network serving the U.S. Punjabi community, and its founder and CEO, Penny Sandhu, filed this suit against various individuals and entities that they allege committed fraud in various forms in conjunction with Get Punjabi, a rival television network.[1] In response to a motion to dismiss, plaintiffs filed an amended complaint ("AC" at Dkt. Nos. 34, 36), adding as parties three additional entities, and including information about individual defendants' relationships to those entities.[2]

On September 19, 2014, defendants Get Punjabi U.S. Inc., Harwinder Singh, Maninder Singh, Manish Vasisht, Pardes News Media, Inc., and Balwant Singh Mallah filed a motion to dismiss the amended complaint. Dkt. No. 38. Defendant Ashok Mathias, who answered the original complaint, *see* Dkt. No. 20, filed a "Joinder to Motion to Dismiss Amended Complaint," Dkt. No. 39, and a "Response and Joinder to Reply in Support of Motion to Dismiss Amended Complaint," Dkt. No. 43, in which he purports to join the argument sections of the other defendants' memoranda of law in support of their motion. Defendants IKK Onkar Media U.S. Inc., Iris Mediaworks, Limited, and Iris Mediaworks USA, Inc., who were added in the amended complaint, and defendant Amit Khurana have not appeared in this case.

For the reasons outlined below, the moving defendants' motion to dismiss is GRANTED as to the RICO and Lanham Act claims. Having thus dismissed the only claims raising a federal question, and that being the only basis for federal jurisdiction over this lawsuit, the Court declines to exercise jurisdiction over the remaining state law claims.

**II. BACKGROUND**[3]

Ms. Sandhu founded Jus Punjabi in 2005 as a television network designed for the Punjabi community in the United States. Because most Punjabis in the U.S. speak the Punjabi dialect, and most of the Indian cable networks in the U.S. broadcast in Hindi, Ms. Sandhu saw an opportunity to create a network broadcasting in Punjabi. AC at ¶ 22. Additionally, because, according to plaintiffs, most Punjabis in the U.S. are well-educated and sophisticated, and most of the Indian cable networks in the U.S. broadcast primarily "simplistic," "formulaic" content such as sitcoms and soap operas, Ms. Sandhu "envisioned a network that relied on information and news content." AC at ¶¶ 22–23, 27. As part of Ms. Sandhu's effort to create such a network, Jus Punjabi introduced daily live programming—otherwise unavailable to Indian television audiences in the U.S.—covering news and current events, and offering call-in participation from viewers. In founding Jus Punjabi, Ms. Sandhu cultivated relationships and negotiated with both advertisers and cable and satellite providers. She fully launched the 24–hour–a–day network in 2007, and it "swiftly gained the reputation of a premium cable and satellite channel." AC at ¶¶ 28–29.

The defendants are affiliated with Get Punjabi, a rival television network. Plaintiffs allege that defendants undertook a scheme to defraud them and ultimately destroy Jus Punjabi. Plaintiffs allege that all of the defendants began "more than two years ago to engage in sustained, ongoing schemes" to defraud plaintiffs and put them out of business. AC at ¶ 40. Defendants allegedly stole confidential information from plaintiffs and used it to try and appropriate Jus Punjabi's business, including usurping relationships Jus Punjabi had built up with advertisers and broadcasting "copycat" live call-in news shows, each starting 30 minutes before each of Jus Punjabi's identically-formatted shows aired. AC at ¶¶ 43–44.

 *\*2* The scheme to destroy Jus Punjabi allegedly originated with Ms. Sandhu's hiring of defendant Amit Khurana in 2008. At the time, Jus Punjabi sponsored Mr. Khurana's H–1B visa so that he could live and work in the United States. As part of his work at Jus Punjabi, Mr. Khurana had access to confidential information, including the price structures of agreements between Jus Punjabi and its advertisers, as well as the identities of key contact people at those advertisers.

On November 3, 2011—after he had already worked at Jus Punjabi for about three years—Mr. Khurana signed a noncompete/confidentiality agreement. AC at ¶ 30.

At some point (plaintiffs do not say when), defendants (plaintiffs do not say who) allegedly recruited Mr. Khurana to steal information from Jus Punjabi and bring it to them. Defendants (again, unidentified) also allegedly recruited defendant Ashok Mathias, plaintiffs' accountant, and one of his associates, defendant Harwinder Singh, to provide defendants with confidential financial information, including "corporate and personal tax returns, bank account statements, confidential financial statements and budgets, and business plans and projections." AC at ¶ 45. Additionally, defendants (still unidentified) allegedly recruited defendant Balwant Singh Mallah to breach an employment agreement with Jus Punjabi and join Get Punjabi as on-air talent.

Plaintiffs also allege that defendants "financed their theft of Jus Punjabi's business by massive tax avoidance and money laundering schemes," AC at ¶ 47, and that Get Punjabi is "primarily financed by illegal means," including defendant Maninder Singh's operation of construction companies that employ illegal aliens and do not pay proper wages. AC at ¶ 49.

In Counts 1–4 of their complaint, plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In particular they allege that the defendants: (1) "conducted and participated in the conduct of" a RICO enterprise "through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c); (2) "received income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, a part or all of such income, or the proceeds of such income, in the acquisition of an interest in, or the establishment or operation of" a RICO enterprise, in violation of 18 U.SC. § 1962(a); (3) "through a pattern of racketeering activity have acquired and maintained, directly or indirectly, an interest in" a RICO enterprise, in violation of 18 U.S.C. § 1962(b); and (4) conspired to violate these subsections, in violation of 18 U.S.C. § 1962(d). *See* AC at ¶¶ 58–73.

In Count 5, plaintiffs allege that the defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1), by misrepresenting the nature, characteristics, and qualities of Jus Punjabi's goods, services, and commercial activities, in their advertising, marketing, and promotional activities. *See* AC at ¶¶ 74–76. Counts 6–8 are claims under New York state law for tortious interference and breach of contract. *See* AC at ¶¶ 77–85.

### III. LEGAL STANDARD—MOTION TO DISMISS

 **\*3** "Although on a motion to dismiss a court must accept all factual allegations as true and draw all inferences in the plaintiff's favor, dismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief." *Levy v. Southbrook Int'l Investments, Ltd.,* 263 F.3d 10, 14 (2d Cir.2001), *cert. denied,* 535 U.S. 1054 (2002) (citations omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must allege in their complaint facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To meet this plausibility standard, plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*

Legal conclusions need not be accepted as true, thus "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557). To avoid dismissal, plaintiffs must "nudge [ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Also relevant to this case, as described in more detail below, is Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Thus, where plaintiffs allege fraud, in their complaint they must: (1) "adequately specify the statements [they] claim[ ] were false or misleading"; (2) "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent"; (3) "state when and where the statements were made"; and (4) "identify those responsible for the statements." *Lundy v. Catholic Health Sys.,* 711 F.3d 106, 119 (2d Cir.2013) (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)); *see also Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)).

## IV. DISCUSSION

Defendants now move to dismiss plaintiffs' RICO and Lanham Act claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and urge the Court not to retain jurisdiction over the remaining state law claims. Because the Court agrees with the moving defendants that plaintiffs have failed to state a claim under any provision of RICO or under the Lanham Act, and because the Court declines to exercise its supplemental jurisdiction over the remaining state law claims, their motion is granted.

### A. RICO Claims

**\*4** The moving defendants assert that plaintiffs failed to properly allege their RICO claims because they did not allege RICO predicate acts of fraud with the requisite particularity and they did not adequately plead all of the required elements of a RICO violation. To establish a civil damages claim under RICO, plaintiffs must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.2008) (quoting *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001)).

To establish a violation of section 1962(c) of the substantive RICO statute,[4] plaintiffs must properly allege that "the defendant conducted, or participated in the conduct, of a RICO enterprise's affairs through a pattern of racketeering activity." *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 487 (2d Cir.2014). To establish a violation of section 1962(a) of the substantive RICO statute,[5] plaintiffs must properly allege that the defendant "use[d] ... income 'derived ... from a pattern of racketeering activity' to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce." *GICC Capital Corp. v. Tech. Fin. Grp., Inc .,* 67 F.3d 463, 465 (2d Cir.1995) (quoting 18 U.S.C. § 1962(a)). And to establish a violation of section 1962(b) of the substantive RICO statute,[6] plaintiffs must properly allege that the defendant acquired "any interest in or control of [a RICO] enterprise 'through a pattern of racketeering activity.' " *Id.* (quoting 18 U.S.C. § 1962(b)). "[T]o establish a RICO conspiracy,[7] a plaintiff must show a conspiracy to commit a substantive RICO violation," thus, the requirement to properly allege a violation of the substantive RICO statute applies with equal force to plaintiffs' RICO conspiracy claims under 18 U.S.C. § 1962(d). See *Spool,* 520 F.3d at 183.

"Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.' " *GICC Capital Corp.,* 67 F.3d at 465. This means plaintiffs "must plead at least two predicate acts, and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)) (other citation omitted). Additionally, plaintiffs must adequately plead each element of a substantive RICO claim for each defendant. See *DeFalco,* 244 F.3d at 306.

The Court finds that plaintiffs have failed to adequately allege any RICO predicate acts and also failed to allege a pattern of racketeering activity, thus plaintiffs' RICO claims will be dismissed in their entirety.

#### 1. Predicate Acts

To state a claim for civil damages under RICO, plaintiffs must allege that a defendant committed at least two predicate acts of racketeering activity. See *GICC Capital Corp.,* 67 F.3d at 465. The RICO statute defines "racketeering activity," in relevant part, as an act indictable under a number of provisions of the United States Code. See 18 U.S.C. § 1961(1)(B). Plaintiffs allege that the defendants engaged in mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and "fraud in the use of visas, passports [,] and permits" in violation of 18 U.S.C. § 1546. See AC at ¶ 2. If adequately pled, each of these would qualify as a RICO predicate act under 18 U.S.C. § 1961(1)(B).

#### a. Mail and Wire Fraud

**\*5** Plaintiffs' allegations of mail and wire fraud are subject to the heightened pleading requirements of Rule 9(b). See *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir.2004). To satisfy these requirements, in their complaint, plaintiffs were required to: (1) "adequately specify the statements [they] claim[ ] were false or misleading"; (2) "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent"; (3) "state when and where the statements were made"; and (4) "identify those responsible for the statements." *Lundy v. Catholic Health Sys.,* 711 F.3d 106, 119 (2d Cir.2013) (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)); *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)

("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent.").

None of plaintiffs' allegations related to mail or wire fraud are sufficient to state a claim under Rule 9(b). Plaintiffs allege that "defendants"—without specifying which ones—committed mail and wire fraud by "recruit[ing]" plaintiffs' accountant, Mr. Mathias, and his assistant, Harwinder Singh, both of whom are defendants in this case,

> to provide defendants, through the use of, among other things, the United States mails and interstate wires on dates currently unknown to plaintiffs because of the secretive nature of defendants' activities, *all* of Jus Punjabi's and Ms. Sandhu's financial information, including corporate and personal tax returns, bank account statements, confidential financial statements and budgets, and business plans and projections.

AC at ¶ 45 (emphasis in original). These allegations do not satisfy any of the requirements of Rule 9(b): plaintiffs do not specify statements they claim were false or misleading, they give no particulars as to *why* those unidentified statements were fraudulent, they give no information about when and where such statements were made, and their blanket assertion that "defendants" "recruited" Mr. Mathias and Mr. Singh to provide confidential information is insufficient to identify who was responsible for the alleged fraud.

Plaintiffs claim they cannot provide information about the dates of these allegedly fraudulent acts because defendants have acted in secret. However, "[o]ne of the purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs." *Madonna v. United States,* 878 F.2d 62, 66 (2d Cir.1989) (citation omitted). The rule was designed "to provide a defendant with fair notice of the plaintiff's claim." *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852 (1988). Thus, "[b]are-bones allegations do not satisfy Rule 9(b)." *Lundy,* 711 F.3d at 119. Plaintiffs cannot simply cast a wide net and hope that one or more of the defendants will fall in.

*6 Plaintiffs also assert that Harwinder Singh told a confidential informant that he was working for Mr. Mathias, had obtained "personal insider information" about plaintiffs, and had made copies of plaintiffs' personal and business records, which he allegedly showed to the confidential informant and others at Get Punjabi. AC at ¶ 40. While these allegations are slightly more specific in that they identify a responsible party and particular statements, the Court does not understand plaintiffs to be alleging that these statements by Harwinder Singh are fraudulent. Rather, plaintiffs are alleging that the statements are true and that Harwinder Singh did in fact do these things. But "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool,* 520 F.3d at 184. For Mr. Singh's alleged actions to constitute mail or wire fraud, plaintiffs must allege facts consistent with those crimes.

Plaintiffs also allege that Mr. Khurana sent emails on five specific dates in 2011 and 2012, "direct[ing] advertisers which had purchased air time on Jus Punjabi to wire-transfer funds to him at bank accounts he and, upon information and belief, the other defendants controlled. The advertisers were deceived into believing that the funds they were directed to wire were for payment to Jus Punjabi." AC at ¶ 51. With these allegations, plaintiffs do allege some particulars as to the nature of Mr. Khurana's allegedly fraudulent statements: they provide dates and one responsible party—Mr. Khurana. But again, plaintiffs fail to identify which defendants (besides Mr. Khurana) were allegedly involved in these acts, and why they assert that those defendants' actions were fraudulent. "Although the rule that allegations may not be based on information and belief is relaxed if the matters are peculiarly within the adverse party's knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Madonna,* 878 F.2d at 66 (alteration and quotation marks omitted). Plaintiffs have not provided such a statement of facts, nor have they provided any of the other information required by Rule 9(b).

Even as to Mr. Khurana, these allegations are insufficient. "To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme." *Lundy,* 711 F.3d at 119 (quoting *McLaughlin v. Anderson,* 962 F.2d 187, 190–91 (2d Cir.1992)); *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 488 (2d Cir.2014) ("the mailed or wired communication ... must, by the terms of the statutory sections, be made in furtherance of the fraudulent scheme"). Plaintiffs have not alleged any facts to support their assertion that Mr. Khurana's emails were in furtherance of the alleged scheme

to destroy their business, or any scheme. He sent two of the emails in 2011, before Get Punjabi was even founded, and there are no allegations that any other defendants— individuals or corporations—were involved in or knew about these emails. In short, there are no facts alleged here that would transform what appears to be ordinary theft into RICO predicate acts.

**\*7** Plaintiffs did not plead their claims of mail and wire fraud with the particularity required by Rule 9(b), thus, those alleged predicate acts cannot form the basis of plaintiffs' RICO claims.

### b. Visa, Passport, and Permit Fraud

Plaintiffs allegations of visa, passport, and permit fraud under 18 U.S.C. § 1546 fare no better. Such claims are also subject to Rule 9(b)'s heightened pleading standard. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir.2004) ("all allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); *see also Magnifico v. Villanueva,* 783 F.Supp.2d 1217, 1228 (S.D.Fla.2011) (Rule 9(b) applies to predicate act based on a violation of section 1546); *Lauter v. Anoufrieva,* 642 F.Supp.2d 1060, 1080– 81 (C.D.Cal.2009) (same); *Cruz v. Cinram Int'l, Inc.,* 574 F.Supp.2d 1227, 1232 (N.D.Ala.2008) (same).

The allegations which appear to be the basis for plaintiffs' section 1546 claims are that: defendant Maninder Singh "systematically exploits illegal aliens as construction workers and thus avoids paying proper wages," AC at ¶ 49; defendant Get Punjabi has "six employees, all of whom are illegal immigrants," *id.* (alteration omitted); and defendant Get Punjabi "employ[s] significant numbers of undocumented aliens who lack proper visas and are subject to deportation." AC at ¶ 50. Besides identifying Maninder Singh and Get Punjabi as employers of undocumented workers generally, plaintiffs offer no information regarding any fraudulent acts committed by these two or any other defendants. They fail to even identify which subsection of the statute defendants allegedly violated. And although plaintiffs may plead fraudulent intent generally, rather than with the particularity required by Rule 9(b), they are still required to "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995). They fail to allege that any of the defendants had *knowledge* of acts of visa, passport, or permit fraud, much less that they participated in such acts, much less that they did so with fraudulent intent.

Plaintiffs did not plead their claims of visa, passport, and permit fraud with the particularity required by Rule 9(b), thus, those alleged predicate acts cannot form the basis of plaintiffs' RICO claims.

### c. Money Laundering

Plaintiffs also fail to state a claim for money laundering under 18 U.S.C. §§ 1956 or 1957. Money laundering claims are not subject to the heightened pleading standard of Rule 9(b), but plaintiffs must still adequately plead all elements of the offense in compliance with Rule 8. *See Tymoshenko v. Firtash,* No. 11–cv–2794 (KMW), 2014 WL 4851825, at \*8 (S.D.N.Y. Sept. 30, 2014) (citing *Casio Computer Co. v. Sayo,* No. 98–cv–3772 (WK), 2000 WL 1877516, at \*16 (S.D.N.Y. Oct. 13, 2000)); *Leung v. Law,* 387 F.Supp.2d 105, 118 (E.D.N.Y.2005); *Madanes v. Madanes,* 981 F.Supp. 241, 253 (S.D.N.Y.1997).

**\*8** Two of the allegations that form the basis of plaintiffs' money laundering claim are bare, conclusory statements: "Defendants ... Engaged in criminal acts involving cash transactions and money laundering to expand and fund their criminal enterprises," and "According to the Confidential Informant, defendants financed their theft of Jus Punjabi's business by massive tax avoidance and money laundering schemes, including the cashing of thousands of dollars of checks with illicit check cashing services located in the New York metropolitan area in order to fund their corrupt activities ." Compl. at ¶¶ 34, 47. These allegations are no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and are insufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009).

The other statement alleging money laundering is also insufficient, as it fails to make out the elements of such a claim. To establish a money laundering claim under 18 U.S.C. § 1956, first plaintiffs must properly allege:

> (1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c) (7) [8] ; and (3) that the defendant knew that the property involved in the financial transaction represented the

proceeds of some form of unlawful activity.

*Tymoshenko,* 2014 WL 4851825, at *8 (quoting *United States v. Maher,* 108 F.3d 1513, 1527–28 (2d Cir.1997)) (alteration omitted). Then plaintiffs must allege that the defendant conducted or attempted to conduct the transaction either: (A) *"with the intent* to promote the carrying on of specified unlawful activity" or engage in tax evasion or filing false tax returns in violation of 26 U.S.C. §§ 7201 or 7206, respectively; or (B) *"knowing* that the transaction [was] designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law." 18 U.S.C. § 1956(a)(1) (emphasis added).

Plaintiffs allege that "Defendant Maninder Singh 'cash[ed] all checks received from his construction business in order to avoid paying taxes and used this cash to finance Get....' " Compl. at ¶ 49. To state a claim for tax evasion under 26 U.S.C. § 7201, plaintiffs must allege: "(1) the existence of a substantial tax debt, (2) willfulness of the nonpayment, and (3) an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax." *United States v. Josephberg,* 562 F.3d 478, 488 (2d Cir.2009). Plaintiffs fail to adequately allege any of these elements. Paying with or otherwise using cash is obviously not a crime, and doing so in the course of operating one's business does not make it so.[9] The complaint's bare-bones allegation does not support the inference that Maninder Singh's money was involved in unlawful activity, nor that Mr. Singh engaged in transactions either knowing or intending to evade his tax obligations.

 *9 Plaintiffs also assert a money laundering claim under 18 U.S.C. § 1957, which states:

> Whoever, in any of the circumstances set forth in subsection (d) [which includes acts which take place in the U.S.], knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

None of the allegations regarding money laundering are sufficient to make out a claim under section 1957, because plaintiffs do not allege any monetary value whatsoever for any of the allegedly unlawful transactions.

Plaintiffs failed to sufficiently plead their claims of money laundering, thus, those alleged predicate acts cannot form the basis of plaintiffs' RICO claims. Having failed to adequately plead any RICO predicate acts, plaintiffs' RICO claims must be dismissed.

### 2. Pattern of Racketeering Activity

"[U]nder any prong of [18 U.S.C.] § 1962, a plaintiff in a civil RICO suit must establish a pattern of racketeering activity. To survive a motion to dismiss, this pattern must be adequately alleged in the complaint." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.2008). This requires that plaintiffs properly allege "at least two acts of racketeering activity, ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The acts must qualify as RICO predicate acts under 18 U.S.C. § 1961(1) and they "must be related, and either amount to or pose a threat of continuing criminal activity." *Spool,* 520 F.3d at 183 (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999)) (alteration omitted). Continuity may be alleged as a "closed-ended pattern" or an "open-ended pattern." *Id.*

A "closed-ended pattern" is "a series of related predicate acts extending over a substantial period of time." *Id.* Two aspects of closed-ended continuity are important here: first, although it is not a bright-line rule, in the Second Circuit, a "substantial period of time" must generally be "a period of at least two years," *id.* at 184 (quoting *Cofacrèdit,* 187 F.3d at 242); second, the relevant time period "is the time *during which RICO predicate activity occurred,* not the time during which the underlying scheme operated or the underlying dispute took place." *Id.* (emphasis added).

Plaintiffs allege that the defendants "began more than two years ago to engage in sustained, on-going schemes to defraud" them. AC at ¶ 40. They also allege that "Defendants' illegal activities had their genesis virtually at the outset of Jus Punjabi's broadcasting," citing the beginning of Mr. Khurana's employment with Jus Punjabi in 2008. *See* AC at ¶ 35. Plaintiffs allege that Mr. Khurana stole money and information from them and that he sent emails to advertisers between February 2011 and November 2012, directing the

advertisers to send money to bank accounts that "he and, upon information and belief, the other defendants controlled." *See* AC at ¶ 4, 34, 41–42, 51. But, again, "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool,* 520 F.3d at 184. And allegations that Mr. Khurana committed some illegal acts before Get Punjabi was even founded are insufficient to allege a pattern under RICO. Even if the other allegations in the amended complaint were sufficient to make out the RICO predicate acts alleged by plaintiffs, there is no indication that any of them took place before Get Punjabi's founding in August 2012, which was exactly two years prior to plaintiffs' filing of the amended complaint in August 2014. *See* AC at ¶ 49. Thus, plaintiffs fail to state a claim for closed-ended continuity.

 **\*10** An "open-ended pattern" is "racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool,* 520 F.3d at 183. While such a threat is "generally presumed when the enterprise's business is primarily or inherently unlawful," there is no such presumption for an enterprise which "primarily conducts a legitimate business." *Id.* at 185 (quoting *Cofacrèdit,* 187 F.3d at 242–43). Plaintiffs themselves allege that defendants' goal was to operate a successful television network, notwithstanding the network's allegedly illegal beginnings. *See* AC at ¶¶ 43, 46, 49 ("Get was established as 'a Punjabi–American media network which was started in' August 2012."). In the case of a primarily legitimate business, such as Get Punjabi, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool,* 520 F.3d at 185 (quoting *Cofacrèdit,* 187 F.3d at 243). The Court finds quite the opposite here.

*Spool* is instructive: in that case, Child and Family Adoption sued their former partner in a joint international-adoption-services venture, World Child International Adoption Agency, alleging RICO, RICO conspiracy, and state law computer fraud claims. *See* 520 F .3d at 180. After relations between the two adoption agencies soured, disgruntled employees of Child and Family assisted World Child in covertly shutting down Child and Family's offices and stealing from them "client files, agency licenses, office supplies, and marketing materials" in order to fraudulently reconstitute the former Child and Family as a "New York branch office" of World Child. *Id.* at 108–81. The Second Circuit found that this scheme was "inherently terminable" because, although the complaint alleged that World Child was fraudulently processing Child and Family's cases during the initial period after the incident, "once the defendants conclude the fraudulent processing, they have no more ... files with which to work." *Id.* at 186. Thus, the Circuit found there was no "threat of continuing conduct." *Id.*

Similarly, in *GICC Capital Corp. v. Tech. Fin. Grp., Inc.,* the Second Circuit found no threat of continuing conduct where the plaintiff alleged that "the defendants would have continued to loot [plaintiff] if not for the fact that all available funds had already been looted." 67 F.3d 463, 466 (2d Cir.1995). The Circuit held that it "defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot." *Id.*

Here, defendants have engaged in a series of allegedly illegal actions in order to establish a successful television network. Such a scheme is "inherently terminable" because defendants have already established their network, and the allegations of wrongdoing—like those in *Spool*—are all related to the start-up activities involved in that process. Defendants' actions may have been illegal or deplorable or both, but there are no facts in the complaint that "imply a threat of continued racketeering activity." *Cofacrèdit,* 187 F.3d at 244; *see also GICC Capital Corp.,* 67 F.3d at 466 ("Even if we assume that defendants' scheme was designed to deprive [plaintiff] of its assets, it is clear that the scheme was *inherently* terminable."). As was the case in *Spool,* "the amended complaint alleges only 'a serious, but discrete and relatively short-lived scheme to defraud a handful of victims,' which is insufficient to establish open-ended continuity." 520 F.3d at 186 (quoting *Cofacrèdit,* 187 F.3d at 244).

 **\*11** Having failed to adequately plead either a closed-ended or an open-ended pattern of racketeering activity, plaintiffs fail to state a claim under RICO.

**B. Lanham Act Claim**
The Lanham Act "generally prohibits false advertising." *ONY, Inc. v. Cornerstone Therapeutics, Inc.,* 720 F.3d 490, 496 (2d Cir.2013). The Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or

misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). Plaintiffs allege that "defendants have in their advertising, marketing and promotional activities 'misrepresented the nature, characteristics[,] and qualities' of Jus Punjabi's 'goods, services, [and] commercial activities.' " AC at ¶ 75 (alterations omitted).

While "the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 57 (2d Cir.2002). Thus, the Second Circuit has said, "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id.* While this characterization may seem to work in plaintiffs' favor, given their allegations about the defendants' scheme to put them out of business, the Circuit went on to say: "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action." *Id.*

Courts in this circuit use a three-prong test to determine whether statements are "commercial advertising or promotion" under the Lanham Act: "The statement must be '(1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.' " *Boule v. Hutton,* 328 F.3d 84, 90–91 (2d Cir.2003) (quoting *Fashion Boutique,* 314 F.3d at 58) (alterations omitted).

Plaintiffs fail to plead a violation of the Lanham Act because they have not alleged any false statements in commercial advertising or promotion. *See Gmurzynska v. Hutton,* 355 F.3d 206, 210 (2d Cir.2004). Plaintiffs allege that Manish Vasisht, Maninder Singh, and Harwinder Singh "gossip[ed]" about Ms. Sandhu and that at some point Harwinder Singh told others in the Get Punjabi offices that Ms. Sandhu was "scamming everyone, she is slick and a cheat." AC at ¶ 40. These statements are plainly not commercial advertising or promotion and are insufficient to state a claim under the Lanham Act. Plaintiffs also allege that defendants "defamed and maligned Ms. Sandhu and Jus Punjabi with its advertisers and with cable and satellite providers in order to divert revenue to defendants." AC at ¶ 34. This statement, without more, cannot sustain a claim under the Lanham Act. Even assuming that the "consumers" who buy Jus Punjabi's "good and services" are their advertisers and cable and satellite providers, rather than the customers who subscribe to their broadcasts, plaintiffs have not alleged any false statements made by a defendant, nor have they alleged a sufficiently widespread dissemination for any such statements to qualify as "commercial advertising or promotion" under the Lanham Act.

*12 Finally, plaintiffs allege that "[d]efendants' corrupt activities also included extensive advertising and marketing campaigns to disparage plaintiffs' good[s], services and business operations and integrity," AC at ¶ 40, and that "defendants have in their advertising, marketing and promotional activities 'misrepresented the nature, characteristics[,] and qualities' of Jus Punjabi's 'goods, services, [and] commercial activities.' " AC at ¶ 75 (alterations omitted). These are exactly the sorts of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has said are insufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## C. State Law Claims

Under 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels *against* exercising supplemental jurisdiction in such a situation: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 183 (2d Cir.2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir.1991)).

Having dismissed all of plaintiffs' claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court, as urged by defendants, declines to exercise its supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

For reasons outlined above, the moving defendants' motion to dismiss is GRANTED in its entirety. The Clerk of Court is directed to close this case.

SO ORDERED.

### Footnotes

1  Now allegedly doing business as "IKK Onkar Media U.S. Inc." *See* Amended Complaint at ¶ 34.

2  It is not clear whether the amended complaint was ever served on the newly-named defendants. They have not appeared in this case.

3  Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009).

4  Alleged in Count I of the amended complaint. *See* AC at ¶ 58–63.

5  Alleged in Count II of the amended complaint. *See* AC at ¶ 64–67.

6  Alleged in Count III of the amended complaint. *See* AC at ¶ 68–70.

7  Alleged in Count IV of the amended complaint. *See* AC at ¶ 71–73.

8  18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" as: (A) any RICO predicate acts; (B) "with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving" certain enumerated bad acts; (C) "any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act"; (D) certain enumerated crimes falling under title 18 of the U.S. code; and (E) environmental crimes.

9  The Court notes that the allegation is not highly plausible. Cashing a check seems a poor way to evade taxation-the check was evidence of the receipt of funds by the business, which the Court presumes is the taxable event, not the expenditure of those funds.

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.