2015 WL 1780164
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Oleg ARONOV and Stat Rx
Pharmacy, Inc., Plaintiffs,
v.
Roland MERSINI, Roman Ilyaev, Jasmina
Incekara, and RJ Pharmacy, Inc., Defendants.

No. 14–cv–7998 (PKC).    |    Signed April 20, 2015.

### MEMORANDUM AND ORDER

CASTEL, District Judge.

 **\*1** The action before the Court alleges defendants' theft of data concerning plaintiffs' retail pharmacy customers for the purpose of fraudulently enticing these customers to use a competing retail pharmacy. Plaintiffs, Stat Rx Pharmacy, Inc. ("Stat Rx") and Oleg Aronov, majority shareholder and president of Stat Rx, bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and allege state laws claims of conversion, unjust enrichment, theft of proprietary information, and fraud. Defendants Roland Mersini and Roman Ilyaev, former employees of Stat Rx, at all times relevant to the Complaint worked for RJ Pharmacy, Inc. ("RJ Pharmacy") with defendant Jasmina Incekara. Defendants move to dismiss the Complaint, asserting that plaintiffs' RICO claim is both procedurally and substantively deficient. Having argued that plaintiffs' RICO claim—the only alleged federal cause of action—should be dismissed, defendants submit that the Court should decline to exercise supplemental jurisdiction over plaintiffs' New York State law claims. For reasons to be explained, defendants' motion to dismiss is granted.

### BACKGROUND

Plaintiff Stat Rx is a retail pharmacy located in the Bronx. (Compl., ¶ 4.) In December 2007, plaintiff Aronov hired defendant Mersini to work as a pharmacy technician at Stat Rx, and hired defendant Ilyaev to assist Mersini. (*Id.* ¶¶ 12–13.) Stat Rx established a customer/patient database with the names, addresses, contact information, medical conditions, and prescription history of all customer/patients. (*Id.* ¶¶ 17, 20.) The database was only accessible by Stat Rx pharmacists, technicians, and managers, including Mersini and Ilyaev. (*Id.* ¶ 18.) Stat Rx employees agreed that the database was owned by Stat Rx, was to be used only for Stat Rx purposes, and was non-transferrable. (*Id .* ¶ 19.)

In April 2010, Ilyaev resigned from Stat Rx and began working for defendant RJ Pharmacy, also located in the Bronx. (*Id.* ¶ 22–23.) Plaintiffs allege that "[a]t or about the same time, the spring and summer of 2010, Ilyaev and Mersini began a campaign of theft of Stat Rx's clients." (*Id.* ¶ 25.) Ilyaev and Mersini stole Stat Rx's confidential customer/patient database and "beginning in the spring of 2010 and continuing each month at least through October 2010, Mersini and Ilyaev placed dozens of telephone calls from Ilyaev's land line at his residence in New Jersey to Stat Rx customers in the Bronx and stated that Stat Rx had changed its name and location to RJ Pharmacy at 2111 Williamsbridge Road." (*Id.* ¶¶ 25–26.) Plaintiffs also claim that defendants misappropriated Stat Rx's vendor list, altered the contact information in Stat Rx's computer database, and stole more than $500,000 worth of medicine. (*Id.* ¶¶ 27–28.) Defendant Incekara, while working for RJ Pharmacy, was allegedly complicit in the "theft and misappropriation of Stat Rx clients" and "aided and abetted the theft of Stat Rx's prescription-medicine inventory." (*Id.* ¶ 29.)

 **\*2** On October 7, 2010, plaintiffs discharged Mersini and instructed him to surrender any contact list he had received during his employment with Stat Rx. (*Id.* ¶ 31.) Plaintiffs told Mersini not to contact Stat Rx clients or physicians, with whom it did business, with the intent to cause damage to Stat Rx. (*Id.*) "Nevertheless, Mersini and Ilyaev, with the consent and at the insistence of Incekara, continued the telephone campaign of theft of Stat Rx's clients and vendors." (*Id.* ¶ 32.)

Plaintiffs' Complaint asserts a RICO claim, a RICO conspiracy claim, and state law claims of conversion, unjust enrichment, theft of proprietary information, and fraud. (*Id.* ¶¶ 45–76.) Plaintiffs base their RICO claim on allegations of wire fraud, specifically, that Mersini and Ilyaev called Stat Rx customers and falsely informed them that Stat Rx had moved and changed its name to RJ Pharmacy. (*Id.* ¶¶ 66, 26, 38, 56–57.) Defendants move to dismiss the Complaint in its entirety. (Dkt. No. 24.)

### DISCUSSION

**I. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 555). In considering a Rule 12(b) (6) motion to dismiss, all non-conclusory factual allegations are accepted as true, see id. at 678–79, and all reasonable inferences are drawn in favor of the plaintiff. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir.2007) (per curiam).

In addition to the pleading requirements of Rule 12(b) (6), a complaint alleging fraud must satisfy the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P., which require a party alleging fraud to "state with particularity the circumstances constituting fraud." To satisfy this pleading threshold, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir.2000) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994)). Further, Rule 9(b) pleadings cannot generally be based upon "information and belief," however, this rule is relaxed when the allegations (i) involve "matters peculiarly within the adverse parties' knowledge" and (ii) are "accompanied by a statement of the facts upon which the belief is founded." Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972). Requiring particularity serves to give a defendant notice of the plaintiff's claim and safeguards a defendant's reputation from "improvident" charges. See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir.2007).

*3 The Supreme Court has stated that "RICO is to be read broadly," because of "Congress' self-consciously expansive language and overall approach" and the statute's "express admonition that RICO is to be liberally construed to effectuate its remedial purposes." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497–98 (1985) (citations and internal quotation marks omitted). Notwithstanding this interpretive directive, because the "mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996) aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc., 113 F.3d 1229 (2d Cir.1997) (alterations omitted) (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990)).

**II. Section 1962(c) RICO Claim**

Plaintiffs allege that defendants conducted or participated, directly or indirectly, in the conduct of affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). (See Compl., ¶ ¶ 61–68.) In order to state a RICO claim under section 1962(c), a plaintiff must adequately "allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly ... participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir.1983). In addition, a civil RICO plaintiff must allege that he or she "was injured in his business or property *by reason of* a violation of section 1962." Id. (emphasis in original) (citing 18 U.S.C. § 1964(c)).

Defendants challenge plaintiffs' pleadings on elements three and four, contending that plaintiffs have failed to allege predicate acts of "racketeering activity," with the particularity required by Rule 9(b), Fed.R.Civ.P., and have failed to allege a sufficient "pattern" within the meaning of RICO.

**A. Racketeering Activity Pursuant to Rule 9(b)**
Racketeering activity consists of the commission of a predicate act. Sedima, 473 U.S. at 495; 18 U.S.C. § 1961(1). The RICO statute sets forth an exhaustive list of acts that qualify as "racketeering activity" under the statute, which includes "any act which is indictable under ... [18 U.S.C] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1) (B). See Beck v. Prupis, 529 U.S. 494, 497 n. 2 (2000) ("Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.' "). To the extent that any predicate acts sound in fraud, the pleading of those acts must satisfy the particularity requirements of Rule 9(b), Fed.R.Civ.P. See, e.g ., Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir.1999). The Court concludes that plaintiffs' pleadings, which allege that defendants engaged in predicate acts of wire fraud, fail to satisfy Rule 9(b) pleading standards.

**\*4** Plaintiffs plead the following in support of their wire fraud claim:

> Though Aronov is unaware of the full scope of the fraudulent misappropriation of clients, on *information and belief,* beginning in the spring of 2010 and continuing each month at least through October 2010, Mersini and Ilyaev placed dozens of telephone calls from Ilyaev's land line at his residence in New Jersey to Stat Rx customers in the Bronx and stated that Stat Rx had changed its name and location to RJ Pharmacy at 2111 Williamsbridge Road.

(Compl., ¶ 26 (emphasis added.)) Plaintiffs further allege that the "racketeering activity" consisted "principally of dozens, if not hundreds, of uses of the telephone to perpetrate fraud." (*Id* . ¶ 38.)

Allegations of fraud may be made on information and belief only if the matters are peculiarly within the adverse parties' knowledge and the allegations are accompanied by a statement of facts upon which the belief is based. *See Segal,* 467 F.2d at 608; *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Here, the allegations of wire fraud are made on information and belief but are not peculiarly within defendants' knowledge. The identity of the speaker and the location from which the calls were placed may be only known to defendants; however, the dates on which Ilyaev and Mersini placed the calls and the content of the alleged misrepresentations are known to the customers who received these calls. *See Schlansky v. United Merchants & Mfrs., Inc.,* 443 F.Supp. 1054, 1063 (S.D.N.Y.1977) (where alleged misrepresentations were made to numerous participants in a pension plan, such information was not peculiarly within the adverse parties' knowledge because "[c]ertainly the [participants] know whether or not omissions and misrepresentations were made to them"). Additionally, plaintiffs fail to submit a statement of facts upon which their belief is based. Without such a statement, plaintiffs' allegations fail to satisfy the Rule 9(b) pleading requirements. *See Segal,* 467 F.2d at 608; *Morgan v. Prudential Grp., Inc.,* 81 F.R.D. 418, 424 (S.D.N.Y.1978) ("[I]nsofar as [allegations] are made on information and belief they must be supported by a recitation of facts lending credence to the belief ... [Plaintiff] must show that his belief is not without foundation, that it is belief rather than irresponsible speculation."); *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 116 (S.D.N.Y.2002) *aff'd,* 352 F.3d 41 (2d Cir.2003) (same).

Plaintiffs' Complaint fails to satisfy Rule 9(b) in other respects. The Complaint, which specifies an approximate eight-month period during which the statements were made, lacks particularity with regard to the timeframe of the alleged misrepresentations. *See Skylon Corp. v. Guilford Mills, Inc.,* 93–cv–5581 (LAP), 1997 WL 88894, at \*2 (S.D.N.Y. Mar. 3, 1997) ("Although plaintiff outlines a four-month window during which all of the misrepresentations occurred, this does not satisfy the pleading standard of Rule 9(b)."); *Sendar Co. v. Megaware Inc.,* 705 F.Supp. 159, 161 (S.D.N.Y.1989) (dismissing a fraud claim for lack of particularity where plaintiff "merely alleg[ed] that statements were made some time during a two month period."); *Alnwick v. European Micro Holdings, Inc.,* 281 F.Supp.2d 629, 641 (E.D.N.Y.2003) (dismissing a fraud claim where amended complaint alleged that fraudulent statements were made between May 1997 and August 1997, in part, because a "vague four-month period of time is insufficient to satisfy the pleading standards of Rule 9(b)"). Further, the Complaint, which does not name any particular Stat Rx customers, fails to allege which defendants made fraudulent communications to which customers. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 185 (2d Cir.2008) ("Allegations of predicate ... wire fraud acts should state ... who was involved." (internal quotation marks and citation omitted)); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' "); *Doehla v. Wathne Ltd., Inc.,* 98–cv–6087 (CSH), 1999 WL 566311, at \*17 (S.D.N.Y. Aug. 3, 1999) (dismissing fraud claims for lack of particularity where the complaint "improperly attributes the alleged fraudulent statements to [three defendants] ... without linking each defendant to a particular statement").

**\*5** The Complaint, with respect to the predicate acts of wire fraud, fails to satisfy the particularity requirements of Rule 9(b), and plaintiffs' RICO claim is therefore subject to dismissal. Because dismissal under Rule 9(b) raises the issue of whether to grant plaintiffs leave to amend, the Court will consider whether, even if the predicate acts of fraud had been pleaded with particularity, the Complaint adequately alleges a pattern of racketeering activity. The Court concludes that it does not.

**B. Pattern Requirement**

Plaintiffs fail to adequately demonstrate that the predicate acts alleged constitute a "pattern" of racketeering activity, as required by the RICO provisions. *See* 18 U.S.C. § 1962(c). Under the statute, a " 'pattern of racketeering activity' requires at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, *and* that they amount to or pose a threat of continued criminal activity.' " *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989)* (emphasis in the original)). Thus, in order to allege a pattern of racketeering activity, a plaintiff must show both relatedness and continuity. *Id.* Defendants contend that plaintiffs fail to plead continuity.

The continuity requirement may "be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool,* 520 F.3d at 183. Here, plaintiffs have failed to adequately allege either a closed-ended or open-ended pattern.

**i. Closed–Ended Continuity**

To demonstrate "closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.' " *Cofacredit,* 187 F.3d at 242 (quoting *H.J. Inc.,* 492 U.S. at 242). The Second Circuit has identified several "non-dispositive factors" considered by courts in determining whether closed-ended continuity exists, "including, *inter alia,* the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Tech. Fin. Group. Inc.,* 67 F.3d 463, 467 (2d Cir.1995). Notwithstanding this list of factors, the Second Circuit has repeatedly emphasized that "closed-ended continuity is primarily a temporal concept," and since the Supreme Court decided *H.J. Inc.* the Circuit has "never held a period of less than two years to constitute a 'substantial period of time.' " *Cofacredit,* 187 F.3d at 242; *see also DeFalco v. Bernas,* 244 F.3d 286, 321 (2d Cir.2001); *Spool,* 520 F.3d at 184. The relevant period in evaluating continuity "is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Spool,* 520 F.3d at 184 (citations omitted).

**\*6** Here, the at most eight-month timeframe identified by plaintiffs falls far short of the two-year benchmark that the Second Circuit has consistently cited. Further, nearly all of the factors identified by the Second Circuit in *GICC Capital* weigh against a finding of closed-ended continuity: the predicate acts took place over a short period of time, there is no variety of predicate acts, there are a small number of participants, and there is only one single scheme.

**ii. Open–Ended Continuity**

"To satisfy open-ended continuity, the plaintiff ... must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit,* 187 F.3d at 242. When an enterprise's business is "primarily or inherently unlawful," such a threat is generally presumed. *Spool,* 520 F.3d at 185 (citations omitted); *see also United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995) ("[W]here the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established ...."). In contrast, when the enterprise primarily conducts a legitimate business, no such presumption arises. *Spool,* 520 F.3d at 185. In such a case, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.* (quoting *Cofacredit,* 187 F.3d at 243).

The activities of the enterprise alleged in the Complaint are not "inherently unlawful." The enterprise consists of a pharmacy that sells prescription medication to its customers (Compl., ¶ 30), and its legitimacy as a business is recognized by plaintiffs. (*See* Pl. Opp., p. 7 ("RJ Pharmacy can claim some 'legitimate' existence" (Dkt. No. 27.)) Thus, in order to show closed-ended continuity, plaintiffs must provide evidence from which it can be inferred that the alleged predicate acts of wire fraud either (1) were the regular way of operating the pharmacy or (2) imply a threat of continued criminal activity. Plaintiffs have failed to do so.

Plaintiffs allege that defendants engaged in criminal acts other than the alleged predicate act of wire fraud, such as stealing Stat Rx's pharmaceuticals and vendors and manipulating its computer contact list, and argue that "the pattern of racketeering at issue is part of a larger scheme which suggests that stealing from Stat Rx is RJ Pharmacy's 'regular way of operating business.' " (Pl. Opp., p. 7 (citations omitted.)) However, when determining whether the predicate acts were the regular way of operating the enterprise, the Court must take into account only the predicate racketeering activity that plaintiffs have alleged, which in this case is wire fraud. See Cofacredit, 187 F.3d at 244. In Cofacredit, the Second Circuit reversed the district court's finding that the plaintiff had demonstrated open-ended continuity because the district court had considered actions that did not constitute predicate racketeering activity, and absent this improper consideration the evidence was insufficient to support a finding of continuity. Id. Taking into account only the alleged wire fraud, the calling of Stat Rx's clients to inform them that the pharmacy had changed its name and location to RJ Pharmacy, the Court concludes that plaintiffs have failed to plausibly plead that this is defendants' regular way of operating its business. Rather, the Complaint alleges a "discrete and relatively short-lived scheme to defraud" Rx Stat, which is insufficient to establish open-ended continuity. See id.; Spool, 520 F.3d at 186.

*7 Moreover, instead of posing an ongoing threat of criminal activity, the racketeering activity alleged in this case is "inherently terminable." The Second Circuit has repeatedly held that "an 'inherently terminable' scheme does not imply a threat of continued racketeering activity." Cofacredit, 187 F.3d at 244; see also Spool, 520 F.3d at 186. In Spool, defendants, an adoption agency, allegedly stole client files from plaintiffs, a group it was previously affiliated with. 520 F.3d at 181. The Second Circuit held that plaintiffs failed to established open-ended continuity because the allegedly fraudulent scheme was "inherently terminable," in that once defendants concluded the fraudulent processing of stolen client cases it would have no more of plaintiffs' files with which to work. Id. at 186; see also GICC Capital, 67 F.3d at 466 ("It defies logic to suggest that a threat of continued looting activity exists when ... there is nothing left to loot."). Here, plaintiffs argue that "the predicate acts —which depended on the theft of Stat Rx's client contact list, which RJ Pharmacy associates presumably still have and can use, 'implies a threat of continued criminal activity.' " (Pl.Opp., p. 7.) However, just like there were a finite number of client cases to process in Spool, the contact list in this case has a limited number of customers on it. Any future fraudulent calls made to persuade customers that RJ Pharmacy is the successor to Stat Rx could not continue indefinitely: once defendants contact each client on the list they will have no more individuals to call. Further, the fact that plaintiffs do not allege that any predicate acts have occurred since October 2010, four years before commencement of this action, suggests that the alleged scheme has come to a close. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir.2004) (concluding that there was no threat of continued criminal activity where the last alleged predicate act occurred approximately two years before the filing of the amended complaint because this suggested that the scheme had "wound to a close.")

Accordingly, plaintiffs have failed to demonstrate that the predicate acts alleged satisfy either closed-ended or open-ended continuity. As a matter of law, the Complaint fails to demonstrate a "pattern of racketeering activity" and thus fails to state a RICO claim under section 1962(c).

### III. Section 1962(d) RICO Conspiracy Claim

In order to "establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." Cofacredit, 187 F.3d at 244 (internal quotation marks and citations omitted). Where "there is insufficient evidence that the [defendants] actually committed predicate acts displaying the continuity necessary to support a substantive RICO violation," and "no evidence that the [defendants] agreed to perform additional predicate acts that, if committed, would have displayed continuity sufficient to establish a pattern of racketeering activity," a RICO conspiracy claim must fail. Id. at 245. Here, plaintiffs have failed to state a substantive RICO claim and have made no additional allegations in pleading a RICO conspiracy claim that would establish a pattern of racketeering activity. As such, plaintiffs have failed to state a RICO conspiracy claim under 18 U.S.C. § 1962(d).

### IV. State Law Claims

*8 Plaintiffs concede that their state law claims of conversion, unjust enrichment, and theft of proprietary information should be dismissed based upon the applicable statute of limitations, but argue that they sufficiently allege a cause of action for fraud. (See Pl. Opp., p. 7 n. 1.) With the dismissal of plaintiffs' federal claims, this Court must decide whether to exercise supplemental jurisdiction over the remaining state law fraud claim. 28 U.S.C. §

1367. Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless." *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.' " *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York,* 464 F.3d 255, 262 (2d Cir.2006) (citing *Carnegie—Mellon Univ. v. Cohill,* 484 U.S. 343, 350, (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill,* 484 U.S. at 350 n. 7. Discovery has not yet commenced in the present action, there are no economies achieved in continuing the action in this Court, and there is no federal interest intertwined with the state law claim. Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law fraud claim.

**CONCLUSION**

The Complaint, assuming the truth of its allegations, suggests that one or both plaintiffs were seriously damaged by tortious conduct of one or more defendants. That, however, is not sufficient to state a federal RICO or RICO conspiracy claim. This Court's declination of supplemental jurisdiction assures that any timely and meritorious state law claim may be pursued in state court.

Defendants' motion to dismiss (Dkt. No. 24) is GRANTED. The Clerk is directed to enter judgment for the defendants and close the case.

SO ORDERED.

---

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.