UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE LED: 6/22/15

---

Rio Tinto plc,

        Plaintiff,

-against-

Vale S.A., Benjamin Steinmetz, BSG
Resources Limited, VBG-Vale BSGR Limited
aka BSG Resources (Guinea) Ltd. aka BSG
Resources Guinée Ltd, BSG Resources Guinée
SARL aka BSG Resources (Guinea) SARL aka
VBG-Vale BSGR, Frederic Cilins, Mamadie
Touré, and Mahmoud Thiam,

        Defendants.

14 Civ. 3042 (RMB)(AJP)

---

## ORDER GRANTING APPLICATION FOR
## ISSUANCE OF INTERNATION LETTERS OF REQUEST (LETTERS ROGATORY)

Upon the Application for the Issuance of an International Letter of Request (Letter
Rogatory) (the "Application") filed by Vale, S.A. ("Vale" or the "Applicant"), requesting the
issuance of an international letters of request (the "Letter of Request") pursuant to the provisions
of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or
Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague
Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

This Court shall sign the Letter of Request attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature in the Letter of Request.

The Clerk of the District Court is directed to return the original, signed Letter of Request to counsel for Vale so that said Letter of Request may be issued to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom.

Vale is directed to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.

Dated: _____, 2015
New York, New York

_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

11

# EXHIBIT B

# (LETTER OF REQUEST TO NIGEL BROWN AND ALEC LEIGHTON)

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18
March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |
| 2. | **Central Authority of<br>the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| 3. | **Person to whom the<br>executed request is<br>to be returned** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |

4.   **Specification of the date by which the requesting authority requires receipt
of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examinations to occur as the parties may agree,<br>but no later than November 30, 2015. |
| **Reason for urgency** | Under the Court's Scheduling Order (Dkt. Nos. 161,<br>163), pretrial examination of fact witnesses must be<br>complete by November 30, 2015. |

IN COMFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE
UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING
REQUEST:

| | | |
|---|---|---|
| 5. | *a* **Requesting judicial<br>authority (Article 3,a)** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 17B<br>New York, New York 10007 |
| | *b* **To the competent<br>authority of (Article 3,a)** | United Kingdom of Great Britain and Northern<br>Ireland |

13

6. **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

*a*   **Plaintiff**                      **Rio Tinto plc**

      **Representatives**               William A. Burck
                                        Michael J. Lyle
                                        Eric C. Lyttle
                                        Quinn Emanuel Urquhart & Sullivan, LLP
                                        777 6th Street NW, 11th Floor
                                        Washington, DC 20001
                                        Telephone: (202) 538-8000
                                        Facsimile: (202) 538-8100

*b*   **Defendants**                    **Vale, S.A.**

      **Representatives**               Jonathan I. Blackman
                                        Lewis J. Liman
                                        Boaz S. Morag
                                        Cleary Gottlieb Steen & Hamilton LLP
                                        One Liberty Plaza
                                        New York, New York 10006
                                        Telephone: (212) 225 2000
                                        Facsimile: (212) 225 3999

                                        **BSG Resources Limited**

      **Representatives**               Robert Gold
                                        Vincent Filardo, Jr.
                                        Elizabeth M. Rotenberg-Schwartz
                                        Mishcon de Reya New York, LLP
                                        750 Seventh Avenue
                                        New York, New York 10019
                                        Telephone: (212) 612 3270
                                        Facsimile: (212) 612-3297

                                        **Benjamin Steinmetz**

      **Representatives**               Robert Gold
                                        Vincent Filardo, Jr.
                                        Elizabeth M. Rotenberg-Schwartz
                                        Mishcon de Reya New York, LLP
                                        750 Seventh Avenue

14

New York, New York 10019
Telephone: (212) 612 3270
Facsimile: (212) 612-3297

**BSG Resources Guinee SARL**
*also known as*
VBG-Vale BSGR Guinea

**Representatives**

Martin Joel Auerbach
Law Offices of Martin J. Auerbach, Esq
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Telephone: (212) 704 4347
Facsimile: (212) 3040175

**Mahmoud Thiam**

**Representatives**

Paul Eliot Summit
Sullivan & Worcester LLP (MA)
One Post Office Square
Boston, MA 02109
Telephone: (617) 210 8437
Facsimile: (617) 338 2880

7.    **Nature of the proceedings and summary of claims (Article 3,c)**

7.1    This action, captioned <u>Rio Tinto v. Vale, S.A., et al.</u>, Case No. 14 Civ. 3042

(RMB)(AJP) (the "Action"), is a civil litigation proceeding pending before the Requesting Court

asserting, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO") by Vale, BSG Resources Limited, VBG – Vale BSGR Limited and BSG Resources

Guinée SARL, Frédéric Cilins, Mamadie Touré, and Mahmoud Thiam.  All of the defendants are

alleged to have been co-conspirators in a scheme to steal Rio Tinto's mining rights to Blocks 1

and 2 in the Simandou region of Guinea.  In this application, the term "BSGR" is used to refer to

BSG Resources Limited as well as any of its subsidiaries, or its affiliates.  The term

"Representative" is used to refer to directors (or shadow directors), officers, employees,

representatives, agents, intermediaries and consultants.  The Relevant Period referred to below is

15

January 1, 2004 to April 30, 2014.  Although not named as defendants, Rio Tinto's complaint has identified Avraham Lev Ran and Michael Noy as Representatives of BSGR, who are alleged to have been co-conspirators with the defendants.

7.2     Rio Tinto, headquartered in the United Kingdom, is one of the three largest mining companies in the world, operating globally and mining a wide variety of metals and minerals, including iron ore.

7.3     Vale, a Brazilian corporation, is another of the world's three largest mining companies and also mines iron ore among numerous other metals and minerals.

7.4     BSG Resources Limited is a Guernsey corporation that is principally engaged in mining operations in Africa and eastern Europe, but which also engages in power generation and oil and gas exploration and production.  The company is wholly owned by Nysco Management Corporation Limited, a company incorporated in the British Virgin Islands, which is in turn wholly owned by the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose beneficiaries are Benjamin ("Beny") Steinmetz, an Israeli businessman domiciled in Switzerland who ultimately controls BSGR, and members of his family.  BSG Resources Limited maintains an office in London.

7.5     In February 1997, the government of the West African nation of Guinea (the "Government of Guinea") awarded permits to Rio Tinto to explore an area of Guinea called Simandou, which is known to be one of the most significant untapped iron ore deposits in the world.  Rio Tinto alleges that it spent the next nine years exploring and developing Simandou. In 2006, the Government of Guinea awarded Rio Tinto a "Concession" that consisted of mining rights to four "Blocks" or areas of Simandou:  Blocks 1, 2, 3, and 4.  Rio Tinto claims to have continued developing and investing in Simandou, including developing railway and port plans to

transport iron ore from Simandou by rail to the coast of the Atlantic Ocean, either through Guinea or through the neighboring country of Liberia.

7.6    In 2008, Rio Tinto approached Vale to discuss the possible sale of assets from Rio Tinto to Vale or a possible joint venture between the companies. In September 2008, Vale and Rio Tinto executed a Confidentiality Deed and in November 2008 Rio Tinto opened a data room so that Vale could review certain of Rio Tinto's documents related to the assets under discussion. After the Confidentiality Deed was signed and the data room opened, the two parties ultimately discussed the sale of Rio Tinto's rights to Simandou.

7.7    On December 4, 2008, the Government of Guinea withdrew half of the Rio Tinto Concession, which covered Blocks 1 and 2 of Simandou. Notwithstanding this revocation, Rio Tinto and Vale continued to explore possible transactions. Vale ultimately purchased iron and potash assets from Rio Tinto, but negotiations regarding Simandou were terminated by Rio Tinto in June 2009.

7.8    On December 9, 2008, BSGR was granted a research permit for Simandou Blocks 1 and 2 following the Government of Guinea's withdrawal of Rio Tinto's Concession to those Blocks on December 4, 2008.

7.9    Over a year later, in February 2010, BSGR approached Vale about the possibility of partnering to develop its mining area in Blocks 1 and 2 of Simandou and the two parties began negotiating a joint venture. The negotiations culminated in the signing of a Framework Agreement and Shareholders' Agreement, both dated April 30, 2010. The Agreements both included broad and detailed anti-bribery representations and warranties, on which Vale relied. The joint venture was called "VBG." Vale paid BSGR $500 million as an initial payment of the $2.5 billion purchase price for its 51% stake in the venture.

17

7.10    On October 30, 2012, VBG Guinea received notice that a Technical Committee for the Review of Mining Titles and Agreements of the Government of the Republic of Guinea (the "Technical Committee") had begun investigating how BSGR had obtained its mining rights to Simandou.

7.11    On information and belief, in or about January 2013, a U.S. federal Grand Jury began a criminal investigation into allegations that BSGR violated the Foreign Corrupt Practices Act ("FCPA") relating to BSGR's suspected bribes of Guinean officials in connection with obtaining rights to Simandou. The Federal Bureau of Investigation ("FBI") arrested BSGR's alleged agent Frédéric Cilins on April 14, 2013 after recording several conversations between him and a confidential informant, Mamadie Touré (the fourth wife of former Guinean President Conté and a co-defendant in this action), that implicated him in offering bribes and attempting to destroy documentary evidence of bribes paid by BSGR to obtain its mining rights in Guinea. The U.S. Department of Justice ("DOJ") filed criminal charges against Cilins the next day. Cilins pleaded guilty in 2014 to obstruction of justice and was sentenced to 24 months in prison with three years of supervised release. Cilins was released from prison on January 9, 2015.

7.12    In April 2014, after concluding its investigation, the Government of Guinea revoked VBG's rights to Simandou, having determined that BSGR had obtained its rights to Blocks 1 and 2 of Simandou through corrupt acts, including bribery of Mamadie Touré and efforts by Cilins to destroy evidence of such bribery by, *inter alia*, Cilins and Michael Noy seeking to induce Mamadie Touré to execute a false declaration in the U.S. Grand Jury proceeding. The Technical Committee found that Vale had no involvement in this bribery scheme. Vale instituted an arbitration proceeding against BSGR alleging, in part, that it was defrauded by BSGR.

18

7.13    Thereafter, on April 30, 2014, Rio Tinto filed a complaint against Vale, BSGR, and a number of other parties alleging, *inter alia*, that it lost its rights to Simandou Blocks 1 and 2 because of a conspiracy by Vale and BSGR in December 2008. Rio Tinto alleged that, as a result of BSGR's alleged bribery and Vale's alleged disclosure of Rio Tinto's trade secrets to BSGR, BSGR was able to obtain Rio Tinto's rights to Simandou Blocks 1 and 2. An Amended Complaint with substantially similar allegations was filed on August 15, 2014.

7.14    Rio Tinto claims that Vale used access to Rio Tinto's data room (*see supra* ¶ 7.6) to steal confidential information about Simandou and gave that information to BSGR for BSGR to use in obtaining Rio Tinto's rights, which BSGR obtained in December 2008. Rio Tinto further claims that Vale met with Steinmetz, BSGR, and Mahmoud Thiam, then-Minister of Mines for Guinea and a co-defendant in this action, multiple times from January 2009 to June 2009 in furtherance of the conspiracy to obtain rights to Simandou. Rio Tinto alleges that Steinmetz and BSGR paid bribes to Thiam to confirm their interest in Simandou Blocks 1 and 2. Rio Tinto alleges that BSGR and Vale formed a joint venture agreement with respect to Simandou Blocks 1 and 2 in April 2010.

7.15    In addition to the DOJ's and Technical Committee's investigations, BSGR is also under investigation by law enforcement agencies in Switzerland, France, and the United Kingdom in relation to its illicit activities in Guinea. The Swiss authorities have received a Letter of Request from the Conakry Court of First Instance, pursuant to which they have seized documents at BSGR's management company, Onyx Financial Advisors Ltd. ("Onyx"), and Steinmetz's home. The Guernsey Financial Investigations United and the United Kingdom's Serious Fraud Office (the "SFO") have also opened inquiries, including in serving Section 2 Notices on BSGR's current and past London counsel as well as Onyx. BSGR filed an

19

application for judicial review of the SFO Section 2 Notices in the Administrative Court Division of the English High Court of Justice, which the English High Court of Justice denied on May 7, 2015.

7.16    Vale denies each of the allegations made against it, any conspiracy with BSGR, any involvement in BSGR's and Steinmetz's corrupt activities, and any misappropriation of trade secrets. In particular, Vale denies that it did or could have entered into a conspiracy with BSGR in December 2008 when BSGR alone enjoyed the rights to Simandou Blocks 1 and 2, after December 2008 sought other mining companies as partners with respect to these rights, and did not agree to a joint venture with Vale until April 2010. Rio Tinto's claims, as summarized above, put at issue whether BSGR and Steinmetz engaged in a conspiracy with Vale, whether BSGR and Steinmetz engaged in corruption or bribery, whether they obtained the mining rights in which Vale subsequently invested by those means, and whether Vale had anything to do with these activities, which it denies.

7.17    Vale and other defendants also assert that Rio Tinto's lawsuit is barred by the four-year statute of limitations to bring RICO claims. Rio Tinto claims that, beginning after April 30, 2010, Rio Tinto "conducted a lengthy investigation involving substantial resources into the activities of Vale and BSGR at Simandou," that "Rio Tinto's efforts were stymied due to the concealed and intricate nature of the RICO enterprise," and that "Rio Tinto was unable to discover the conduct that underlies its RICO and other claims until . . . April 2013." (AC ¶¶ 146-147.) Rio Tinto thereby invokes fraudulent concealment to toll the statute of limitations. Pursuant to the order of this Court, Rio Tinto produced reports from investigative firms retained to conduct competitive intelligence. Among other things, those reports bear on the validity of Rio Tinto's case – that Vale entered into a conspiracy with BSGR in December 2008, before Rio

20

Tinto lost its concession for Simandou Blocks 1 and 2, that was only "documented" in April 2010: it is Vale's case that the reports show that BSGR was engaged in negotiations with other Rio Tinto competitors, but *not* with Vale, after BSGR obtained these rights in December 2008. It is also Vale's case that the reports indicate that Rio Tinto began its investigation well before April 2013, when it claims it finally uncovered the conspiracy, and apparently did not conduct any investigation after December 1, 2010, at the latest.

7.18    The evidence sought from the individuals identified below, which includes evidence of BSGR's discussions with mining companies other than Vale after BSGR obtained the rights to Simandou Blocks 1 and 2 in December 2008 and before BSGR signed the joint venture agreement with Vale in April 2010 and evidence of potential bribery by BSGR and Steinmetz, is material to the resolution of these disputes. The evidence bears on Vale's statute of limitations defense, including on the timing of Rio Tinto's claim and whether its investigation was sufficient, as well as whether Vale was in any way aware of BSGR's wrongdoing.

## 8.      **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Rio Tinto's claims rest fundamentally on (1) BSGR's alleged  bribery and corruption and (2) the allegation that BSGR formed a conspiracy with Vale in December 2008 shortly before BSGR obtained the rights to Simandou Blocks 1 and 2 in December 2008. BTG Intelligence has identified Nigel Brown and Alec Leighton as the persons with responsibility for the relationship with Rio Tinto and the preparation of the Reports, and who have knowledge of facts that bear on the issues of this case.

8.2    It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties you direct Nigel Brown and Alec Leighton to provide oral testimony for use at trial (if appropriate) to counsel for applicant subject

21

to any applicable privileges that may apply under the rules and procedures of the Requesting

Court or the courts of England and Wales. The Witnesses' unique importance to the claims and

defenses is described both above and in the subject matters as to which each is to be examined,

detailed in Section 10 below. Absent voluntary cooperation, evidence from Nigel Brown and

Alec Leighton is available only by an order of the High Court.

| | | |
|---|---|---|
| 9. | **Identity and address of any person to be examined (Article 3,e)** | Nigel Brown and Alec Leighton |
| | | Nigel Brown |
| | | Winnington House |
| | | (2nd Floor) |
| | | 2 Woodberry Grove |
| | | London N12 0DR |
| | | UK |
| | | |
| | | Alec Leighton |
| | | 147 Elgar Avenue |
| | | Berrylands |
| | | Surbiton |
| | | Surrey KT5 9JX |
| | | UK |

10. **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that each Witness be questioned according to the procedure set out below

in Section 12 under oath or solemn affirmation, and subject to any applicable privileges as may

apply under the rules and procedures of the Requesting Court or the courts of England and

Wales, on:

BTG Intelligence's investigation resulting in the reports entitled "Project Raven" and

"Project Raven – Part 2," each dated 19 July 2010 for Rio Tinto, including the scope and timing

of its engagement, who it interviewed, what documents it reviewed, its findings and conclusions.

11.     **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, each Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

12.     **Special methods or procedure to be followed (Articles 3,i and 9)**

12.1     The Requesting Court further requests that Jonathan Blackman, Lewis Liman, and Jonathan Kelly, who are representatives of Vale, or such other persons later designated by Vale, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witnesses on the subjects identified above and elicit their sworn testimony.

12.2     Pursuant to Article 9 of the Convention, it is requested that the legal representatives of Vale be permitted to conduct the examination of each Witness in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by the Applicants, who, subject to approval by you, shall act as referee. It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

12.3     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary. These attorneys are familiar with the relevant events and transactions in this complex matter. Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible. If the

questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

      12.4     The Requesting Court respectfully requests that the representatives of Vale be allotted a total of five hours for each of their examinations. Counsel for these parties will consult with each Witness' legal representatives in order to determine a mutually convenient date to conduct the examination on or before November 30, 2015, as approved by you.

      12.5     The Requesting Court also respectfully requests that the questions and the responses of each Witness be recorded verbatim and that each Witness sign the verbatim transcript. The verbatim transcript of each Witness' responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction. The Requesting Court also respectfully requests that you cause the testimony of each Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

12.6     In the event the evidence cannot be taken in the manner requested above, the
Requesting Court respectfully requests that the evidence be taken in the manner provided by the
applicable law of England and Wales.

12.7     The appearance of each Witness for his or her testimony is voluntary and no
criminal prosecution in the United States will result from a failure to appear.  However, the
Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to
compel each Witness to give evidence in response to this Letter of Request if the Witness is
uncooperative.

13.     **Request for notification of the time and place for the execution of the request
and identity and address of any person to be notified (Article 7)[3]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

14.     **Request for attendance or participation of judicial personnel of the
requesting authority at the execution of the letter of request (Article 8)**

None.

15.     **Specification of privilege or duty to refuse to give evidence under the law of
the state of origin (Article 11,b)**

Each Witness may refuse to answer any question asked during the examination if such
answer would subject the Witness to a real and appreciable danger of criminal liability in the
United States or the United Kingdom, or would disclose a privileged communication.

---

[3] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by Vale to the
jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the
Applicant to accept service of any proceedings in England and Wales.

16.    **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of each Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by Vale. The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST

SIGNATURE AND SEAL OF
THE REQUESTING AUTHORITY

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York