**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

June 24, 2015

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      We respectfully write seeking clarification and enforcement of your Order from the June 22, 2015 status conference regarding Rio Tinto's production of invoices and other documents with respect to Rio Tinto's investigators. We have written to Rio Tinto seeking its confirmation that it would not commingle these documents with the production Rio Tinto was already under an obligation to make on June 30. Rio Tinto initially did not respond to Vale. When pressed, Rio Tinto did not deny that it intended to commingle the documents to conceal those the Court ordered be produced and refused to give an unconditional confirmation.[1]

      At the June 22 conference, Your Honor ordered Rio Tinto to "[p]roduce the material within seven days from today, period." (June 22, 2015 Tr. 8:19-20.) That order would have resulted in production of the materials with respect to the investigators by June 29, 2015. However, Rio Tinto objected to that deadline, telling the Court that "seven days in the midst of trying to meet [the separate June 30 substantial completion production] deadline is very, very difficult." (*Id.* at 11:18-20.) In light of this purported difficulty, the Court extended the deadline for Rio Tinto's production of the documents with respect to the investigators by one day to June 30, 2015. (*Id.* at 11:3-12:6.)

---

[1] Rio Tinto asked that Vale identify the bates numbers of the reports that Vale mentioned at the hearing before Judge Berman yesterday. The reports Vale mentioned are those produced by Rio Tinto. Vale is providing that information by separate letter to Rio Tinto.

Hon. Andrew J. Peck, p. 2

      Vale interprets the Court's order to mean that Rio Tinto must make a discrete production of the invoices and other documents with the respect to the investigators that is distinct from – and not comingled with – the production Rio Tinto was already under an obligation to make on June 30. This interpretation is consistent with what the Court has instructed with respect to Rio Tinto's production of the investigator materials all along: these documents would not have been commingled had Rio Tinto complied with the Court's instruction over *six* months ago, on December 9, 2014, ordering Rio Tinto to produce all non-privileged documents concerning its purported investigation of its claim. (Dec. 9, 2014 Tr. 20:22-21:3, 27:11-28:5.) Nor would these documents have been commingled had Rio Tinto complied with the Court's order at the June 1, 2015 conference to "[p]roduce the invoices. Produce whatever you have that you haven't produced with respect to the investigators. Clear?" (June 1, 2015 Tr. 47:1-5.) So too, the documents would not have been commingled had Rio Tinto followed the Court's order at the June 22, 2015 conference to produce the documents that it was "ordered a month ago to produce" by June 29, without asking for more time. (June 22, 2015 Tr. 11:3-4.)

      There is, and should be, no burden for Rio Tinto in complying with the Court's order. Because the Court ordered Rio Tinto to produce all investigative documents – regardless whether they were generated from predictive coding – there is no burden producing those documents independent from the documents generated by predictive coding. Indeed, Rio Tinto represented many of the documents are kept "on a separate server." (*Id.* at 10:25-11:1.) And, with respect to the responsive documents generated through predictive coding, Rio Tinto has undoubtedly already classified them as pertaining to the investigative firms through document tagging in the course of its review.

      Conversely, Rio Tinto's predictive coding disclosures indicate it may produce well over 100,000 documents on June 30. If the productions are commingled, Vale will have to review *all* of the documents produced by Rio Tinto on June 30 just in order to identify the universe of documents with respect to the investigators. This will impose an intolerable – and *impossible* – burden on Vale who has no way of knowing which documents were sourced from the investigative firms and thus cannot properly ascertain the true universe of documents, which in many cases may not be identifiable by reference to the names of the investigative firms and their reports. If this is in fact Rio Tinto's plan, it should not be allowed to use its own failure to comply with the Court's order as gamesmanship to impose even further impediments to Vale's ability to review the documents with respect to the investigators (and indeed to confirm that Rio Tinto has in fact complied with the order to produce).

      We respectfully request that Your Honor endorse this letter ordering that Rio Tinto produce the invoices and other documents with respect to the investigators separate from the production Rio Tinto was already under an obligation to make on June 30. In the alternative, to the extent that the documents were generated by predictive coding, Vale requests that the Court order Rio Tinto to identify such documents by bates number when they are produced; to the extent that the documents resided elsewhere than in the predictive coding universe, such documents should be produced separately and not commingled with the documents generated by predictive coding.

Hon. Andrew J. Peck, p. 3

                                              Respectfully submitted,

                                              <u>/s/ Lewis J. Liman</u>
                                              Lewis J. Liman

cc:     All counsel of record (via ECF)