F6NPRIOC

1  UNITED STATES DISTRICT COURT

2  SOUTHERN DISTRICT OF NEW YORK
   ------------------------------x

3  RIO TINTO PLC,

4              Plaintiff,

5         v.                          14 CV 3042 (RMB)(AJP)

6  VALE, S.A., ET AL.,

7              Defendants.

8  ------------------------------x

9                                    New York, N.Y.
                                     June 23, 2015
10                                   10:29 a.m.

11 Before:

12              HON. RICHARD M. BERMAN,

13                              District Judge

14                      APPEARANCES

15

16 QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Attorneys for Plaintiff
17 BY:  MICHAEL J. LYLE
        ERIC C. LYTTLE
18

19 CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Attorneys for Defendant Vale, S.A.
20 BY:  LEWIS J. LIMAN
        JOAQUIN P. TERCENO III
21

22 MISHCON DE REYA NEW YORK, LLP
        Attorneys for Defendants BSG Resources Limited and
23 Benjamin Steinmetz
   BY:  VINCENT FILARDO, JR.
24      TIM McCARTHY

25

F6NPRIOC

1                          APPEARANCES (Continued)

2

3   LAW OFFICES OF MARTIN J. AUERBACH, ESQ.
         Attorney for Defendant BSG defendants
    BY:  MARTIN J. AUERBACH

4

5   SULLIVAN & WORCESTER, LLP
         Attorneys for Defendant Mahmoud Thiam
6   BY:  PAUL E. SUMMIT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

F6NPRIOC

1          (In open court)

2          THE COURT:  Please be seated.  So I'd like to cover a

3    couple of topics, which I'll tell you what they are, and you

4    may well have your own issues that you want to present.  So

5    what I would like to do is start with the order issued on

6    June 18.

7          In response to the letters regarding a stay, I wrote

8    that the parties are aware that no stay of discovery is

9    currently in effect, notwithstanding prior applications for a

10   stay by defendants, and none is anticipated before the proposed

11   stay motion and/or the pending motion to dismiss are decided.

12   The parties should meet an confer prior to June 23 and

13   determine if they can jointly agree to a stay and its terms.

14         Then I went on to say that the Court requests that the

15   parties be prepared to discuss at the Tuesday conference, which

16   is this conference, in addition to the proposed stay motion,

17   the issue of alleged document destruction and the status of any

18   settlement discussions.

19         So from my point of view, it would be useful to

20   discuss/hear what you want to say further about stay or stay

21   motion, and then talk about this alleged document destruction,

22   and the status of any settlement discussions.  Actually,

23   preliminarily, even this other one, I would like to hear your

24   take on what the status of the case is at the moment.  So maybe

25   I'll start with plaintiff.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1        MR. LYLE:  Good morning, your Honor.  Michael Lyle for

2   Rio Tinto.  With respect to the stay issue, the parties did,

3   pursuant to your order, meet and confer yesterday afternoon,

4   and we have come to an agreement, we think, and have a proposal

5   that we would like to present to your Honor.  And please

6   correct me if I get this wrong, counsel of record.

7        The agreement would be that we would agree to a stay

8   of deposition discovery and expert discovery until

9   September 30th, unless your Honor rules on the motion to

10  dismiss prior to such time.  In which case, deposition and

11  expert discovery would begin 30 days after your Honor's ruling

12  on the motion.

13       All written discovery would continue, document

14  production would continue, and any of the letters rogatory that

15  have been issued and any of the documents being produced

16  through that process or any depositions that may be taken in

17  connection with those of non-parties would proceed.

18       THE COURT:  Is that a fair statement?

19       MR. LIMAN:  Your Honor, the only thing that I would

20  add is that all subsequent deadlines would be moved by the

21  respective amounts of time; so that the time period for sort of

22  motions for summary judgment or trial or depositions would be

23  moved out an equal amount of time.

24       THE COURT:  So that's a reasonable idea, but let's

25  reserve on that for now and see where we are at those

1  particular milestones.  So, for example, if you need an extra

2  30 days, let's see what unfolds, but I think that it's,

3  generally speaking, an acceptable idea.

4  MR. LYLE:  And we agree with that, your Honor, as

5  well.

6  THE COURT:  Okay.  Could you jointly submit a very

7  short order --

8  MR. LYLE:  Yes.

9  THE COURT:  -- just reflecting that you've reached

10  that agreement?  That's very helpful.

11  MR. LYLE:  We would be happy to do that, your Honor.

12  THE COURT:  Okay.  So I do have a couple of questions.

13  So why don't we turn, though, to this issue of alleged document

14  destruction.  Is that a real issue, or what does it mean, and

15  who's alleged to have done it, and how do you know, et cetera,

16  et cetera?

17  MR. LYLE:  Thank you, your Honor.  Michael Lyle again

18  for Rio Tinto.  The issue of the document destruction has just

19  turned up during the course of the written discovery, and it is

20  in connection with Vale's documents.  We learned in April of

21  this year that, with respect to eight of the key former Vale

22  employees --

23  THE COURT:  Key what?

24  MR. LYLE:  -- former Vale employees, including the

25  CEO, Roger Agnelli of Vale; his right-hand man, Mr. Ledsham;

1   Mr. Ledsham right-hand man, Mr. Alves; all of the people who

2   had critical evidence with respect to our allegations in the

3   complaint.  They had firsthand dealings in connection with the

4   transaction between the defendant BSGR, and Vale.  They are the

5   masterminds of the transaction and the activities that took

6   place, and are central to our allegations as it relates to the

7   RICO conspiracy.

8          Those e-mails for those eight witnesses were destroyed

9   by Vale.  That, of course, is of extreme relevance in this case

10  because we have allegations in this case of destruction of

11  evidence, or attempted destruction of evidence.  In fact,

12  Mr. Cilins, one of the co-defendants in this case, was arrested

13  for attempting to bribe another co-defendant to destroy

14  documents in evidence.

15         THE COURT:  He's currently incarcerated, right?

16         MR. LYLE:  He was incarcerated, has since been

17  released and has been deported from the country, your Honor.

18  And Mr. Cilins was arrested as a co-conspirator, as you know,

19  in connection with his efforts, and he's a co-defendant in this

20  case.

21         So learning of that, you know, we confronted Vale with

22  this issue, and according to Vale, they destroyed those e-mails

23  and documents pursuant to their document destruction policy,

24  which is that, in the absence of a litigation hold, documents

25  are wiped from the hard drive for a former employee's computer,

1    and then the e-mails are put on backup tapes and destroyed

2    after one year.

3         The problem is is that when you look at what happened,

4    their explanation doesn't add up.  Their story has become

5    inconsistent and doesn't make any sense.  When you look at

6    three of the former employees, including Mr. Alves, Mr. Antaki

7    and Mr. Perrotta given the dates that they left and given their

8    stated policy of, you know, retaining backup tapes for one

9    year, they should have backup tapes for each of those three

10   individuals based upon their departure dates and then the one

11   year retention on the backup tapes for e-mails.

12        THE COURT:  And they don't?

13        MR. LYLE:  And they don't.  They also had issued a

14   litigation hold in connection with general litigation.  Five

15   days after Mr. Cilins was arrested, Vale issued a document

16   retention, a litigation hold, on April 19th; so five days --

17   April 19th of 2013, five days after Mr. Cilins was arrested.

18        It is a very broad litigation hold, and it refers to

19   reasonable anticipation of arbitration or other legal

20   proceedings related to the Simandou project, which is, of

21   course, the mine at issue in this case, and other issues

22   stemming from the project, including transactions and dealings

23   between Vale and BSGR, which are at the heart of this case as

24   well.

25        So the litigation hold had been issued, according to

1   Vale, on April 19th, 2013.  When you look at the dates of

2   departure and their e-mail destruction policy, they should have

3   documents, because they issued a hold, for these three

4   witnesses and they don't.

5          The issue gets -- the story gets more complicated and

6   has more twists to it.  Vale, when we confronted them about the

7   issue, submitted a letter to Judge Peck, after we had included

8   the information in the letter to -- joint letter to Judge Peck

9   advising him of the document destruction issue and our desire

10  to take discovery surrounding it.

11         In that letter, Vale stated, in a footnote, that says:

12  Although Vale had no reasonable anticipation of civil

13  litigation in the U.S. or anywhere else related to Simandou

14  before this action was filed, in any case, issued a lit hold on

15  relevant documents years earlier, after becoming aware of the

16  government of Guinea's investigation of Simandou.

17         Well, that turns out to be a false statement for two

18  reasons.  First of all, they did anticipate civil litigation in

19  the U.S. or elsewhere related to Simandou prior to the

20  litigation that we instituted.  We filed our complaint in April

21  of 2014.  We have from them the litigation notice that they

22  sent out a year before, in April of 2013.

23         On top of that, they have then since retracted their

24  statement, and now say that they never issued a litigation hold

25  after becoming aware of the government of Guinea's

1    investigation.

2              If you accept their first version, that they did issue

3    a litigation hold, that implicates, based on their dates of

4    departure and e-mails destruction policy, the e-mails for

5    Mr. Agnelli and Mr. Ledsham, who are central to our case.

6              We have another aspect to this, your Honor.  We have

7    another witness that we've asked for, a witness by the name of

8    Bruno Abreu, who is also a former Vale employee, and we got a

9    correspondence from counsel for Vale in May of this year

10   telling us that a litigation hold for this case, for this

11   litigation, had been issued in May of 2014 and that it was

12   issued in connection with Mr. Abreu's e-mails, which would have

13   been on the backup tapes.

14             When we asked them for the e-mails for Mr. Abreu, they

15   changed their story and told us, no, no, we didn't issue the

16   lit hold in May of 2014 for Mr. Abreu's e-mails.  We did it

17   after his documents and his e-mails had been destroyed on the

18   backup tapes.

19             So we have here, your Honor, multiple instances of

20   litigation hold notices not being complied with, changing

21   stories in connection with the documents.  And what we want,

22   and what we've done, is asked Judge Peck for discovery into

23   what happened.  We certainly want to get to the bottom of it.

24   As it currently stands, Judge Peck has asked that we review the

25   documents, look and see what we have, and then come back to

1   pursue the discovery into this issue.

2           It's clearly important and a central issue in the

3   litigation because it's completely consistent with our case as

4   it relates to the RICO conspiracy and destruction of evidence,

5   the coverup of evidence.  And as your Honor knows full well

6   from our motion to dismiss the fraudulent concealment issues.

7           THE COURT:  And so are you saying that Judge Peck

8   wants you to zero in on what discovery you are asking for with

9   respect to the alleged document destruction?

10          MR. LYLE:  That is our understanding, your Honor.

11  We've raised these issues in numerous letters with Judge Peck.

12  At the hearing before the last hearing, he ordered that we look

13  at the materials that we get, because we're going to be having

14  the document production June 30th, substantial document

15  production will be coming from Vale, and so we'll have a chance

16  to look at that information.

17          The thing that's going to be missing from that, and

18  the big hole that we're going to have, is that any

19  communications among those individuals, who are central to the

20  case, those will be lost.  The only thing that we're going to

21  have is communications with them with other people.  So it may

22  help us try to focus our discovery somewhat, but we certainly

23  believe and expect that we're going to get to the bottom of

24  this, and we'll have that discovery taking place with Judge

25  Peck.

F6NPRIOC

1          THE COURT:  Okay.  Mr. Liman?

2          MR. LIMAN:  Your Honor, it would not be surprising to

3    know that we disagree with a lot of what Rio Tinto said.

4          THE COURT:  Not only would I not be surprised, but I

5    would hope that you disagree with what they said.

6          MR. LIMAN:  Let me make a couple of points, and then

7    respond to a couple of points, and then any questions your

8    Honor has, I'd be prepared to address.

9          The first couple of points are that any issue with

10   respect to document preservation, documents that are gone, is

11   entirely premature because since we have noted to plaintiffs,

12   and as Judge Peck has recognized, there is no evidence that any

13   document is missing in this case.

14         After the issue was raised by the plaintiffs, Vale, on

15   its own, did a thorough investigation to make sure that there

16   were alternative sources of documents for the plaintiffs.  We

17   agreed on alternative sources of documents to give the

18   plaintiffs, and as the record now stands, there is no evidence

19   that any documents are missing.

20         The second point, your Honor, that I make is that this

21   has been the subject at numerous conferences in front of Judge

22   Peck.  I would disagree very much with what Rio Tinto just said

23   the status is in front of Judge Peck.  The status in front of

24   Judge Peck is that Judge Peck gave Rio Tinto the opportunity to

25   push for discovery with respect to document retention, alleged

1  document destruction at the last conference and obtain ruling

2  on it, or wait to see if there was evidence of any documents

3  being missing, and Rio Tinto elected to wait.

4          The third point that I would make --

5          THE COURT:  So when you say to wait, is that in

6  reference to the June 30 discovery or --

7          MR. LIMAN:  Yes, your Honor.  What I expect will

8  happen after June 30th is that both sides are going to take a

9  look at each other's productions.  There are issues on both

10  sides with respect to document preservation and document

11  destruction.

12          The other thing I would say is that we have

13  substantial issues with respect to document destruction by Rio

14  Tinto.  We've elected not to bring them because, frankly, my

15  view of litigation is you bring the claim when you've got all

16  of the pieces in place and not prematurely.

17          I do think, though, that there's an important point

18  that is highlighted by what Rio Tinto said and that I do want

19  to take the opportunity, if your Honor will indulge me, to

20  make, which is that the facts that they laid out actually

21  highlight the wisdom of statutes of limitations and the evil

22  that comes when parties sit on their rights.

23          Let me explain to your Honor why I think that that is

24  important and why this issue is one that Vale may, at the

25  appropriate time, be bringing to your Honor's attention.  At

the moment, there's no evidence that any documents are missing.
We believe that the documents of these eight individuals will
be substantially exculpatory to Vale.

THE COURT:  That they exist and they will be
exculpatory to Vale?

MR. LIMAN:  If they exist, and we believe that they do
exist, we think that they will be exculpatory.  They will
show -- a point that we have made all along -- that there was
no conspiracy going back to 2008.  There was no evidence that
Vale knew of any bribery.  There was no theft of trade secrets.
This is a fight between two behemoths in the mining industry
over the rights to a mine that took place over the course of
about a year or so.

Now, why do I think that this is something that we may
bring to your Honor's attention?  Well, what you didn't hear
from Rio Tinto was that all of these eight custodians are
former employees who departed Vale more than a year before Rio
Tinto brought suit or before litigation was reasonably
anticipated.  Some of them as early as 2009, with one
exception, the latest in 2002.  And they do include Vale's
former CEO and CFO.  We disagree maybe about the importance of
those individuals, but we don't disagree about who the
individuals were.

It is also the case that, as we disclosed, and we
disclosed early and on our own initiative, that Vale had long

1    had a consistent and uniform document retention policy similar

2    to those of many other companies, which says that in the

3    absence of a litigation hold applicable to somebody, which

4    comes in place when litigation is reasonably anticipated, an

5    employee's hard drive is given to somebody else and is

6    overwritten upon their departure and e-mail backup tapes exist

7    for 12 months and then those too are overwritten.

8         So we don't believe that there's any evidence yet that

9    any documents were lost or not retained.  If it develops that

10   evidence, we'll have a discussion, I'm sure, before Judge Peck

11   about what those documents are and whether they are exculpatory

12   or not.  There's no reason to believe that there's any

13   documents that would be helpful to Rio Tinto and, frankly,

14   there's no document destruction at all because what this was

15   was the routine application of Vale's policies.

16        I will say that we take document retention very

17   seriously, and I hope that Rio Tinto does as well.  This may be

18   something we can bring back in front of your Honor at the

19   appropriate time, if the complaint is not dismissed.

20        THE COURT:  Okay.  So, Mr. Lyle, when you said pretty

21   emphatically that these documents of these eight people will be

22   exculpatory, do you know that, or are you saying that you

23   expect that they'll be exculpatory?

24        MR. LIMAN:  Your Honor, based upon not only our

25   expectation but also statements that we have from others who

1   investigated, we have ample reason to believe that they will be

2   exculpatory.

3           In the record in this case is a statement, for

4   example, from the government of Guinea that was made when the

5   Cilins arrest was announced, stating the government of Guinea

6   stating that they believed that Vale was not involved in the

7   underlying activity at all; it was a victim.  That's in the

8   record that's before Judge Peck, and so for that reason, and

9   numerous other reasons.

10          There's no evidence.  There's, frankly, no allegation

11  that Vale was tied to the Cilins' document destruction.

12  There's, frankly, no affirmative allegation that Vale knew of

13  any bribery by BSGR, and as your Honor knows, we're suing BSGR

14  over that.

15          THE COURT:  Yes.

16          MR. LYLE:  Your Honor, if I may?

17          THE COURT:  Yes, just briefly.

18          MR. LYLE:  Briefly, yes, your Honor.  There can't --

19  if Vale's assertions are true, which is, is that they did

20  destroy the backup tapes for these eight individuals, there's

21  no way that they have the communications among those eight

22  individuals.

23          What Mr. Liman is referring to, I believe -- this is

24  what I mentioned earlier -- is that they may have

25  communications from one of the eight with other people that we

F6NPRIOC

 1    might be able to understand what they were saying with other

 2    people at Vale or outside of Vale.

 3              THE COURT:  I get it.

 4              MR. LYLE:  The second thing is, with respect to Rio

 5    Tinto, we have over three million documents in our production,

 6    or in our universe of documents that are going to be searched

 7    through predictive coding, which I won't even try to explain,

 8    but we have our documents, your Honor.  They're there.  Rio

 9    Tinto has a document preservation policy.  So thank you, your

10    Honor, for your time.

11              THE COURT:  Okay.  So I think I've heard enough on

12    that.  These issues will, I'm sure, be sorted out, at least in

13    the first instance, before Judge Peck.  That is to say, about

14    documents and these discovery matters.

15              Then I wanted to ask, what about settlement?  Any

16    steps in that direction?  Can the Court be of any help to you

17    or have you thought about -- or Judge Peck, for that matter, or

18    third parties, or is that not in the cards here?

19              MR. LYLE:  Your Honor, Michael Lyle for Rio Tinto.  We

20    did have some preliminary discussions that you had asked us to

21    have.  We're very far apart at this juncture.  Perhaps after we

22    start having a sense of -- the parties start seeing what the

23    record begins to look like, there may be an opportunity to

24    start.  That may jump start some things, but at this time, it

25    looks like we're very far apart.  It may be a time in the

1   future when we may take your Honor up on its offer of

2   assistance, but I think, at this time, it would be premature.

3   I don't know if other parties have a different view.

4           THE COURT:  Mr. Liman, is that your sense too?

5           MR. LIMAN:  My sense, your Honor, is that the parties

6   are very far apart, and I think for reasons not having anything

7   to do with the substance of the litigation but the industry, I

8   don't think it's likely that settlement discussions would be

9   promising.

10          THE COURT:  Okay.  Anything else that you all wanted

11  to raise today that we haven't talked about?

12          Sounds like you've made good progress.  I did have one

13  question that has come up in my mind.  This will be a question

14  for plaintiff.  In the amended complaint you say:  Upon

15  information and belief, a meeting between Vale and BSGR started

16  in December 2008.  Is there any more, as a result of your

17  pursuit of discovery or any other reason, any more specific

18  date for such a meeting, or is that still your position, on

19  information and belief?

20          MR. LYLE:  Yes, your Honor.  We have not, as of yet,

21  received any further documents.  Well, we've received a handful

22  of documents or a few.  How many documents we've received?

23  Under 10,000 documents.  We understand there are tens of

24  thousands coming our way, and so we'll have a chance to see.

25          THE COURT:  Okay.  All right.  Oh, yes.

F6NPRIOC

          MR. LIMAN:  Your Honor, with respect to that

allegation in particular, I think there is evidence now in the

record that Rio Tinto put in through its investigative reports

that its investigators don't believe that there was any such

agreement in 2008.

          THE COURT:  I'm sorry, I didn't ask that.  Was there

such a meeting?

          MR. LIMAN:  No, there was not.

          THE COURT:  There was no meeting?

          MR. LIMAN:  Correct.

          MR. LYLE:  Your Honor, that's not accurate.  That's

not what --

          THE COURT:  It's disputed.

          MR. LYLE:  Yes.  If that's his position, it's

vigorously disputed by the plaintiff.

          MR. LIMAN:  Your Honor, if that becomes a disputed

issue, I think we can have a deposition or something to show

what the information is --

          THE COURT:  Well, I think all disputes can be

resolved.  I'm just asking if there's any -- Do you have a

document that says there was no meeting in December?

          MR. LIMAN:  I've got their documents, and there is no

evidence that I've got from any of our documents.  In fact, the

joint venture, as your Honor knows, was formed much later and

then for a period of time in 2009 BSGR, according to their

F6NPRIOC

                    documents and our documents, was negotiating with the third

                    parties.  We know that mostly from the Rio Tinto's documents

                    because we wouldn't know what --

                            THE COURT:  Well, it's a pretty narrow question, and I

                    take it it's disputed as to whether or not there was, at this

                    stage, a meeting.

                            MR. LYLE:  Yes.

                            THE COURT:  All right.  Well, this is very helpful, as

                    far as I'm concerned.  When do you think it would be fruitful

                    for us to have another, I guess, status conference?

                            MR. LIMAN:  Your Honor, I would think either if your

                    Honor wants argument on the motion to dismiss or sometime after

                    the motion to dismiss is issued, if it denies the motion to

                    dismiss.  Obviously, if you grant it, it's over.

                            MR. LYLE:  We're scheduled to be here, your Honor, for

                    your information, the last week in July, if it makes sense for

                    us to appear before you then.

                            THE COURT:  That's currently on the calendar?

                            MR. LYLE:  Yes, with Judge Peck.

                            THE COURT:  No, you pursue that with Judge Peck.  I

                    think I won't then set another date for us to get together.  If

                    you all need something, just let me know and I'll put you on

                    the calendar.

                            MR. LYLE:  Thank you, your Honor.

                            THE COURT:  Nice to see you all.

F6NPRIOC

1          MR. LIMAN:  Thank you, your Honor.

2          THE COURT:  Yes.

3          (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25