**quinn emanuel** trial lawyers | washington, dc
777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

July 6, 2015

Hon. Andrew J. Peck
United States Magistrate Judge, Southern
District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   <u>Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)</u>

Dear Judge Peck:

      We write in response to Vale's June 30, 2015 request to appoint Ms. Maura Grossman as a special master to handle issues concerning the parties' predicative coding processes.  Dkt No. 289.  We of course have no objection to Ms. Grossman's qualifications.  We do, however, object to Vale's belated request for a special master at this stage of the case, especially considering the parties have, *e.g.*, already agreed and executed upon their respective protocols through extensive negotiation and with extensive input from Your Honor, already raised and resolved dozens of TAR-related issues,[1] and already completed a substantial amount of document discovery per the parties' schedule (notably, Vale's request came on June 30, the very day substantial completion of production was due).  Whereas Ms. Grossman could have been helpful months ago to the parties and their respective predictive coding processes, we now fear that her appointment today will only cause the parties to revisit, rehash, and reargue settled issues that will translate into unjustified costs, which can already be measured in the hundreds of thousands of dollars.

      To be clear, Rio Tinto first proposed the idea of using a special master back in January, *before* the parties negotiated their protocols and processes, and implemented the same.  It was then (not now) that the added cost of a special master made sense.  Yet Vale opposed that appointment, calling it "premature" and telling the Court that, if it viewed a special master as

---

[1] Indeed, Vale just recently informed the Court that the parties' had agreed upon a follow-on, supplemental training process that would "resolve all issues that have been raised to date with respect to the sufficienc[y] of these items:  training process." June 22, 2015 Hr'g Tr. 13:21–23.  Rio Tinto's agreement to do this supplemental training was explicitly conditioned on Vale's agreement that the parties would not seek a special master.

necessary, it would let the Court know over "the next couple weeks." Jan 13, 2015 Hr'g Tr. 6:12–25. That was in January. And even then, Judge Berman explained in his January 16, 2015 order that: "The Court has not previously perceived the need for a special master in its civil litigation. A special master is not likely to be appointed in this case, and certainly not unless the rationale is presented to and approved by the Court. Judge Peck is a recognized leading discovery expert and the parties are in very capable hands with him." Dkt. No. 163. Following that guidance from Judge Berman, the parties have thereafter relied upon Your Honor's expertise to guide them through their predictive coding efforts, and Vale never once presented the need during those months for a special master.

Moreover, Your Honor has appropriately and repeatedly told Vale that the ship has all but passed on a predictive coding special master at this point in the case. *See, e.g.*, June 1, 2015 Hr'g Tr. 8:15–21 (MR. REENTS: "Your Honor, we would be in favor of both of those, a special master and discussion --" THE COURT: "Where were you two months ago when this issue first came up? You've got a June 30 substantial completion date. Even if the person I am thinking of to appoint as your special master is instantly available, it is a little late."); *Id.* 13:13–18 (THE COURT: "The special master, if you don't get back to me tomorrow or the next day, the ship which may already have long since passed, will certainly have passed, particularly because Ms. Grossman is going to have to get a conflict check and all the usual stuff at a big firm to make sure she is able to do it even if you all want her."). Despite being ordered on June 1 to get back to the Court "tomorrow or the next day," Vale waited another two-and-a-half weeks to even begin checking conflicts on a special master.

While some new TAR-related issues certainly may come up in the future,[2] the remaining document production issues in this case appear to be ones that should be resolved by the Court rather than a TAR-specific special master. For example, Rio Tinto finds Vale's substantially-complete production of under 17,000 documents to be troubling, especially in light of its prior representations that it had "terabytes" of responsive data, Dkt. No. 100 at 9–10, and that it had over 140,000 documents from the eight missing custodians alone. But Vale's discovery failures may be the product of an overly restrictive approach to responsiveness and a custodial pool decimated by the destruction of documents from at least eight key custodians. Rio Tinto remains open to the idea of a discovery special master like a retired former federal judge who can help with this and the disputes that are sure to arise when depositions begin, but there is no need at this point for a TAR-specific special master.

We also note that Vale has elected to engage in *ex parte* contact and communications with Ms. Grossman about the issues in this case. That is especially troubling in light of Your Honor's suggestion *from last January* that Ms. Grossman may be a fitting TAR special master

---

[2] Rio Tinto is not suggesting there are no more predictive coding disputes left with Vale. Indeed, Vale's predictive coding training is still not complete. Because of Vale's delays in producing its Training Set, the parties just met and conferred on objections to Vale's Training Set on July 1. As a result of this meet and confer, Vale agreed to change the coding on 64 documents, which will affect Vale's predictive coding system. Rio Tinto therefore continues to reserve all rights to challenge the adequacy of Vale's training.

for the parties. Vale nonetheless appears to have engaged Ms. Grossman on multiple occasions (without disclosing to Ms. Grossman that this Court had previously mentioned her as a potential TAR special master in this case). Vale's communications include discussions regarding the Court's opinion approving the predictive coding protocol, Vale's use of search terms to significantly limit its document universe, and Vale's training of low prevalence issues in predictive coding. Vale cannot simply brush aside these unilateral communications as insignificant. By no means do we suggest that Ms. Grossman has done anything improper; indeed, it is not even clear she understood that Vale was talking to her about this case. But the fact remains that Vale discussed important issues in our case while she was in consideration to be a special master. This means that Vale will have the notable benefit of her prior thoughts on these subjects and Rio Tinto will lack full confidence that Ms. Grossman's conclusions don't reflect earlier views formed based on these *ex parte* discussions. Vale should have known better than to have had *ex parte* discussion with Ms. Grossman, effectively using her as a consulting expert, only to turn around and seek her appointment as a special master in this case.

If the Court is inclined to appoint Ms. Grossman over Rio Tinto's objections, Rio Tinto suggests it should only be for one-off referrals of new TAR issues that are first deemed worthy of referral by Your Honor. A standing special master (even one Vale pays 100% for)[3] doesn't solve the larger problem of Vale being given a new and more accessible forum in which to regurgitate, re-raise, and re-argue its baseless issues on predictive coding,[4] with Rio Tinto being forced to bear the resulting increase in costs to respond to those allegations. We think, at this point, Your Honor represents an important check on Vale's willingness to vexatiously press these issues that will be lost with the appointment of a special master. To date, Vale has wasted the parties' and the Court's time with faux predictive coding issues; its bad behavior should not be rewarded with unfettered access to a new forum in which to continually re-raise its purported grievances.

---

[3] Notably, Vale has not agreed to bear all of Ms. Grossman's costs as originally contemplated by Your Honor. Vale's proposed order seeks to impose costs based on a who-raised-the-issue standard, rather than the Vale pays 100% that Your Honor clearly stated. June 22, 2015 Hr'g Tr. 21:7–10 ("If you want to **pay for a hundred percent** subject to application for a change in cost if you win most of your issues in front of Ms. Grossman, that's all fine and dandy.") (emphasis added); *Id.* 22:23–23:5 ("So Mr. Reents, the floor is yours on that. If you want to **pay a hundred percent** subject to the possibility that the results will be so clear that Ms. Grossman recommends to me shifting some of those costs against Rio Tinto, that's fine. Otherwise I suspect I'm not going to order them at this point, in light of the protocol, to pay for half of it.") (emphasis added).

[4] As Rio Tinto previously has explained, every key metric shows that Rio Tinto's system is properly trained. Indeed, Rio Tinto's validation set showed an Elusion Rate of less than 0.25%; Rio Tinto has coded over 500 documents as responsive in its Control, Seed, and Training Sets; and Rio Tinto is returning an estimated 80.67% Recall rate and an estimated 62.75% Precision rate within the Control Set (which was created with a 95% Confidence +/- 2% margin of error).

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle