**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial:  +1 (212) 225-2550
E-Mail: lliman@cgsh.com

July 8, 2015

<u>VIA ECF</u>

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:  <u>*Rio Tinto plc v. Vale S.A., et al.*</u>, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      I write on behalf of Defendant Vale S.A. ("Vale") in response to the letter of Plaintiff Rio Tinto plc ("Rio Tinto"), dated July 6, 2015 (Dk. 294) (the "Letter"), in which Rio Tinto objected to the appointment of a special master in this case.  Rio Tinto is intent on preventing timely and efficient resolution of disputes between the parties relating to their use of predictive coding, and has raised a number of pretextual issues concerning Vale's request for such an appointment.  These disputes, and others that may arise in the future, warrant the appointment of a predictive coding special master, as Your Honor suggested at the last conference.

      Rio Tinto's letter seeks to relitigate issues the Court has already addressed.  Its primary objection appears to be that, at this stage, the services of a special master would "only cause the parties to revisit, rehash, and reargue settled issues" regarding their predictive coding processes.  Letter at 1.  Rio Tinto made the same point at the last conference – and the Court addressed it, suggesting the appointment of a special master.  While the parties have agreed to a resolution of several disputes, that does not mean that the services of a special master would no longer be of use, especially since the resolution requires supplemental training over the course of the next two months.  As Rio Tinto concedes, there are predictive coding disputes yet to be resolved.  Letter at 2 n.2.  For example, at the last conference before Your Honor, Rio Tinto refused to resolve Vale's complaint about its failure to update and correct its disclosures regarding its calculation of recall and precision, a critical failure since those figures – required by the Predictive Coding Protocol – provide key metrics by which Vale (and the Court) can assess the sufficiency of Rio

Hon. Andrew J. Peck, p. 2

Tinto's predictive coding process. *See* June 22, 2015 Tr. 14:1-25. Indeed, it was this very dispute which led the Court (not Vale – as Rio Tinto wrongly suggests) to renew its suggestion that the parties seek the services of a special master. *See* June 22, 2015 Tr. 20:5-7.[1] Notably, Your Honor made this suggestion after hearing details on the parties' dispute and well after making the observation that Rio Tinto relies on its Letter that it seemed "a little late" to appoint a special master. *Id.* at 8:15–21; Letter at 2. Rio Tinto offers nothing new that the Court did not already address.

As Rio Tinto's Letter conveys, back in January, Judge Berman indicated that a special master was "not likely" to be appointed in light of Your Honor's expertise in e-discovery, and not without a "rationale" presented to the Court. January 16, 2015 Order ¶ 4 (Dk. 163). However, since that date, that rationale has been repeatedly presented to the Court in the form of numerous technical disputes between the parties for which Your Honor has recognized the necessity of employing a special master. In particular, the TAR-related issues in this case, for which a special master would be particularly valuable, arose just recently and long after Judge Berman commented on the necessity of a special master. And, contrary to Rio Tinto's claim, those issues are ongoing.[2] Going forward, the appointment of a special master will help the parties resolve predictive discovery disputes with a more modest level of court intervention – either because there will be a neutral arbiter in addition to the court to whom to present issues or, more likely, because the ready availability of such a neutral arbiter will deter the parties in the first place from taking positions that are not well-founded in law.

Rio Tinto also complains that the Proposed Order is inconsistent with the allocation of costs contemplated by Your Honor. Letter at 3 n.3. The Proposed Order requires costs and expenses to be covered by "the party who first raises an issue to be resolved, subject to re-allocation by the Court based on the extent to which that party prevails on the issue it raises." Proposed Order ¶ 7 (Dk. 289-1). The only issue that would be before the special master at this point is that Rio Tinto has not adequately disclosed its recall and precision estimates, which is an issue raised by Vale, and hence one for which Vale will cover the full costs, subject to re-allocation. Furthermore, the only party who has indicated a desire to bring any issue in front of a special master is Vale. Nothing in the Proposed Order precludes Rio Tinto from raising any issue directly with the Court; nor does it preclude Rio Tinto from making use of the special master should it later change its mind and decide to do so. Indeed, the proposed Order expressly permits Rio Tinto to change its mind.

---

[1] Rio Tinto also wrongly claims credit for the suggestion back in October 2014 to appoint a special master on e-discovery issues. It was the Court – not Rio Tinto – that suggested a special master (*see* Oct. 7, 2014 Tr. 6:17-25) and, further contrary to Rio Tinto's statement, Vale agreed to pursue appointment of a special master a few days after Your Honor raised the issue at the January 13, 2015 Conference.

[2] In suggesting a special master, Your Honor warned Rio Tinto of the possibility of having to redo large portions of its predictive coding process if it did not accept those services, clearly demonstrating that there is still great value to be added by the appointment of a special master: "[s]o is Rio Tinto any more amenable to getting professional help, or do you want to take your chances that whatever I'm skipping over now will indeed be explained better to my way of understanding it at the end after you've done the retraining and taken out the groups and family members and fixed the statistics accordingly, you know, and maybe you'll be ordered to do a massive retraining at great expense at the end." June 22, 2015 Tr. 21:14-20.

Hon. Andrew J. Peck, p. 3

Finally, Rio Tinto complains about purported "ex parte" communications between Vale and Ms. Grossman. Of course, Ms. Grossman has not yet been appointed to serve as a special master in this case, and so there was and is no prohibition on communications with her, "ex parte" or otherwise. Moreover, the three conversations between Ms. Grossman and Vale took place in the context of Ms. Grossman's unrelated professional acquaintance with counsel to Vale[3], and at a time when the parties had decided not to seek the services of a special master, following Judge Berman's January 16 statement that a special master was "not likely" to be appointed in this case without further justification and before Your Honor's June 1 and June 22 suggestions that the parties revisit the issue. January 16, 2015 Order ¶ 4 (Dk. 163); *see also* June 1, 2015 Tr. 7:12-13; June 22, 2015 Tr. 20:5-6. Most importantly, these conversations would only prevent Ms. Grossman's appointment if they provided a basis for disqualification under 28 U.S.C. 455, which Ms. Grossman has affirmatively sworn is not the case, and which Rio Tinto has not disputed. The conversations were of a general nature regarding topics that are no longer at issue in this litigation, and in which no non-public information was revealed or discussed. Even if these topics were still at issue, which they are not, the fact that Ms. Grossman, who has also published articles (which Rio Tinto can read) and spoken extensively on these topics, provided information or expressed an opinion about them generally should not disqualify her from serving in this case.[4]

For these reasons, Vale respectfully requests that the Court enter the Proposed Order Appointing a Special Master (Dk. 289-1).

        Respectfully submitted,

        /s/ Lewis J. Liman
        Lewis J. Liman

cc:    All counsel of record (via ECF)
       Maura Grossman, Esq.

---

[3] Ms. Grossman and Vale counsel Scott Reents have worked together on a commentary for The Sedona Conference, a nonprofit legal research organization, are both members of Working Group 1 of that organization, and participate in a local "roundtable" of e-discovery lawyers in New York City.

[4] As Your Honor has recognized, to find that general statements or expressions of opinion made by a potential judge or special master should disqualify him or her from future matters would have the perverse effect of precluding those "who know the most about ediscovery in general (and computer-assisted review in particular) from presiding over any case where the use of predictive coding was an option." *Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 163 (S.D.N.Y. 2012).