| | |
|---|---|
| 1   Thursday, 25 June 2015 | 1   that will not be necessary and I will conduct my |
| 2   (10.30 am) | 2   submissions on that basis. |
| 3   Housekeeping | 3   Submissions by MR GEORGE |
| 4   MRS JUSTICE ANDREWS: Mr George, Ms Cockerill, I have an | 4   So my Lady, there are effectively three relevant |
| 5   observer in court who is doing some work shadowing. | 5   considerations or grounds of objection. |
| 6   I hope neither of you object to that. | 6   The first and most important relates to the |
| 7   MR GEORGE: My Lady, no. | 7   protection of the identity of the sources who provided |
| 8   MS COCKERILL: Not at all. | 8   information to my business intelligence consulting |
| 9   MRS JUSTICE ANDREWS: Yes, Mr George? | 9   clients. This is a matter where there is at least some |
| 10  MR GEORGE: My Lady, I appear today for three respondents to | 10  measure of common ground that it involves your judicial |
| 11  orders made pursuant to a letter of request received | 11  consideration and weighing of a number of competing |
| 12  from an American court. My learned friend Ms Cockerill | 12  factors. The test is not dissimilar to that my Lady |
| 13  appears for Vale, who was the requesting party in those | 13  would apply in English civil proceedings, where |
| 14  US proceedings. | 14  redactions were requested on grounds of confidentiality. |
| 15  I hope my Lady has received copies of the skeletons | 15  MRS JUSTICE ANDREWS: Yes. You are not alleging that this |
| 16  of both parties? | 16  is a publication within the meaning of section 10 of the |
| 17  MRS JUSTICE ANDREWS: Yes. | 17  Contempt of Court Act, as I understand it? |
| 18  MR GEORGE: And my Lady has received a variety of bundles, | 18  MR GEORGE: The journalist sources point, my Lady, no. |
| 19  I am afraid to say, but if my Lady can bear with me, | 19  MRS JUSTICE ANDREWS: Even though the evidence does suggest |
| 20  I will attempt to make my submissions primarily by | 20  at some point that there are journalist sources |
| 21  reference to the blue Farrers bundle, if my Lady has | 21  involved? |
| 22  that. Can I confirm my Lady has received bundles from | 22  MR GEORGE: Precisely, my Lady. We invite my Lady, in the |
| 23  Sheridans and DWF as well? | 23  course of considering that balancing exercise, to weigh |
| 24  MRS JUSTICE ANDREWS: I have. | 24  carefully the evidence we have put before the court and |
| 25  MR GEORGE: And one authorities bundle from me and one from | 25  to the analogies that can probably be drawn with |
| Page 1 | Page 3 |
| 1   my learned friend. I am very grateful. | 1   journalistic sources, given that the evidence before the |
| 2   MS COCKERILL: My Lady, that will not have reached you yet. | 2   court does suggest that these people also acted as |
| 3   That is to be handed up at the appropriate time. | 3   journalists and will have talked to the same sources. |
| 4   MRS JUSTICE ANDREWS: No, your skeleton arrived at about | 4   What I do not have before this court, and I will go |
| 5   4 o'clock. | 5   to the evidence in detail, as it were, is to say that |
| 6   MS COCKERILL: My apologies for that, it certainly was | 6   the purpose of any particular communication I could rely |
| 7   dispatched earlier. | 7   on was journalistic in that sense. But we do say it's |
| 8   MR GEORGE: Finally, by way of preliminaries, my Lady, you | 8   an important analogy and my Lady will have seen the |
| 9   will have seen one observation in my skeleton. There | 9   evidence as to why we say that. |
| 10  are before the court, although not exhibited to any of | 10  MRS JUSTICE ANDREWS: Not that I want to short circuit your |
| 11  the witness statements, certain confidential reports | 11  submissions, but on reading this application, am I right |
| 12  which are relevant to the subject matter of this | 12  in thinking -- and it may well be that Ms Cockerill is |
| 13  discussion. | 13  best placed to answer this, but I will be interested to |
| 14  MRS JUSTICE ANDREWS: That I haven't seen. | 14  see what both of you have to say about it: my |
| 15  MR GEORGE: My Lady, I do not refer to them in my | 15  understanding is that Vale made this application for the |
| 16  submissions and nor does my learned friend and nor do | 16  specific purpose of being able to have an argument on |
| 17  I anticipate it will be necessary to go to them. | 17  the limitation point in New York. |
| 18  MRS JUSTICE ANDREWS: I understand entirely what the | 18  MR GEORGE: That was my -- |
| 19  restraints are. | 19  MRS JUSTICE ANDREWS: Because the issue was as to whether |
| 20  MR GEORGE: Precisely. | 20  Rio Tinto had the requisite knowledge and the red flags |
| 21  MRS JUSTICE ANDREWS: I think we can probably manage without | 21  and so forth to enable Vale to say: well, you should |
| 22  looking at them, unless there comes a point in which it | 22  have started proceedings sooner and you're now time |
| 23  becomes inevitable. | 23  barred. Rio Tinto, in turn, would say: well, no, we're |
| 24  MR GEORGE: I am very grateful. If that were to come, | 24  not because we didn't know certain information which was |
| 25  I would ask for submissions on privacy but I am hopeful | 25  essential for us to know at that stage. |
| Page 2 | Page 4 |

DTI Global                   www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                          London EC4A 2DY

1    So the issue to which the disclosure is directed is
2    the state of Rio Tinto's knowledge at a particular time,
3    or during a particular period.  My understanding was
4    that that was the specific basis upon which the judge of
5    the New York court, Judge Peck was asked to issue the
6    letters of request and the purpose for which he granted
7    them.
8        So there wasn't an application to Judge Peck
9    saying: we need to know who the sources are of the
10   information that was supplied to Rio Tinto, in order to
11   be able to evaluate the quality of that information,
12   albeit that that might well be a relevant reason why the
13   documents would be of use if the case ever got to
14   a substantive fight and got past the limitation point.
15       Now, if that is so, and if the sole purpose of the
16   letter of request was to enable information to be
17   provided to Vale for the purposes of dealing with the
18   limitation issue and dealing with the question of Rio
19   Tinto's knowledge, then that was the purpose for which
20   the learned judge asked the assistance of this court.
21       Therefore, although this court does not have the
22   power to blue pencil a letter of request, and strike out
23   a category of disclosure and substitute its own views as
24   to what should be disclosed, when it comes to the
25   exercise of discretion, surely if the identification of

Page 5

1    itself.  You will see it is said and I say only said:
2        "Magistrate Judge Peck ordered that Vale has a right
3    to know the source names on the basis that under US
4    discovery rules, a party is allowed to obtain discovery
5    regarding any non-privileged matter that is relevant to
6    any party's claim or defence, including the identity and
7    location of persons who know of any discoverable
8    matter."
9        If my Lady sees the cross reference, it's to
10   page 131 of the exhibit.
11   MRS JUSTICE ANDREWS:  That's to the rules?
12   MR GEORGE:  And that's to the rule.  My Lady, we looked for
13   the transcript in the exhibit and we found at page 167
14   of the exhibit there is a transcript but we could find
15   nothing to support that statement, and in fact, if one
16   looks at line 4 of page 167, the judge makes the
17   observations:
18       "Give me all your back-ups to the interviews and
19   anything else that resulted in this report that might or
20   might not pass muster here; if contested, is likely not
21   to pass muster in the UK."
22       And it has been contested in the UK and that's where
23   we are.
24       We asked yesterday in correspondence for the full
25   transcript of that hearing, which we received, and I can

Page 7

1    the sources is not actually what the material that's
2    asked for is all about, isn't there a short cut?
3    MR GEORGE:  My Lady, you anticipate, precisely, my
4    submission.
5    MRS JUSTICE ANDREWS:  I spotted the submission in the course
6    of your skeleton argument but it just seems to me we
7    need to deal with that first because do we really need
8    to go into the question of confidentiality?  If the
9    identity of these people is not material but the
10   information is, then I can't see what the problem is.
11   MR GEORGE:  My Lady, may I make one caveat to that so that
12   my learned friend, as it were, can respond because
13   I should draw my Lady's attention to paragraph 68 of
14   Mr Kelly's second witness statement, which my Lady will
15   have, probably, in all three bundles I fear but I am
16   using it from --
17   MRS JUSTICE ANDREWS:  I cannot remember where I put it now.
18   MR GEORGE:  I have it in the Sheridans bundle, bundle 2,
19   where it is, helpfully, a free-standing document --
20   bundle.
21       It's tab 11 of ARC.
22   MRS JUSTICE ANDREWS:  I have a DWF bundle.  Yes, I put his
23   second witness statement in with his exhibits so I have
24   it in that bundle.  Yes, which page?
25   MR GEORGE:  Page 333, so page 19 of the witness statement

Page 6

1    hand up but unless I have missed something there is
2    nothing else in there that supports the statement that
3    this was specifically ordered on the grounds of
4    providing disclosure of the identity of possible future
5    witnesses.
6        As my Lady will appreciate, even if the judge had
7    specifically ordered it on that basis, that is
8    specifically impermissible to be provided under a letter
9    of request by this English court because it is not
10   evidence that is admissible at trial; it is, to quote
11   the phrase from the House of Lords decision in
12   Westinghouse, evidence that "appears to be reasonably
13   calculated to lead to the discovery of admissible
14   evidence", perfectly proper in US procedure but not
15   permissible under a letter of request.
16       So I just make that caveat to my Lady's submissions,
17   that one other possibility has been put forward but we
18   have seen no evidence to support that that actually was
19   in the American court's mind and if it was in the
20   American court's mind, it would be an impermissible
21   reason.
22       Subjected to that, my Lady, we would entirely agree.
23   MRS JUSTICE ANDREWS:  Let's see what Ms Cockerill says.
24       Submissions by MS COCKERILL
25   MS COCKERILL:  Well my Lady, the position is this: it is

Page 8

2 (Pages 5 to 8)

| | |
|---|---|
| 1   entirely fair to say that the letter of request from the | 1   evidence.  Something which comes from -- |
| 2   US court was not specifically directed to sources. | 2   MRS JUSTICE ANDREWS:  From their perspective.  If they |
| 3   Obviously.  It's directed to the materials.  But the | 3   didn't know who the sources were themselves, then they |
| 4   sources are, we say, an integral part of the evidence | 4   weren't in a position to evaluate the quality either. |
| 5   for the trial. | 5   MS COCKERILL:  Well with respect, my Lady, that is |
| 6      So it's not, as my learned friend would like to say | 6   a question for the New York court.  But you know, we are |
| 7   and I entirely understand why he sees it that way, | 7   also, as you know, looking for categories of information |
| 8   a fishing expedition, an attempt to get the names of | 8   which cover what was shared with Rio Tinto so that what |
| 9   these people, simply to go off and use them as | 9   can be seen as the whole picture as to what -- |
| 10   witnesses.  That, I accept, would be an impermissible | 10   MRS JUSTICE ANDREWS:  What was shared with Rio Tinto, |
| 11   fishing expedition. | 11   I actually have more sympathy with you.  I mean, it |
| 12      What it is is what we have at the moment is, | 12   seems to me that one has to break down this information |
| 13   effectively, these reports.  The reports are anonymised | 13   into various categories, but if and insofar as Rio Tinto |
| 14   and they say certain things.  When the New York court | 14   have conveniently lost, or no longer have available to |
| 15   comes to deal with questions, such as: what was the | 15   them, certain materials which were provided to them |
| 16   investigation which was done, how long did it last, what | 16   outwith the reports, which would add to the quality of |
| 17   was its nature, when did red flags arise, in order to | 17   their knowledge, then in principle you should have them, |
| 18   evaluate the evidence which it gets from that report, | 18   subject to the question about the anonymity of the |
| 19   it's not any underpinnings, hence this application for | 19   sources. |
| 20   the documents which underpin the report. | 20      If those sources were anonymised with Rio Tinto, |
| 21      Now, within that -- | 21   then one gets into quite an interesting state of |
| 22   MRS JUSTICE ANDREWS:  I understand that as far as the | 22   affairs.  If, as between the suppliers of the |
| 23   documents are concerned, if and to the extent that those | 23   information and Rio Tinto, the sources were not |
| 24   documents were supplied or their contents were supplied | 24   anonymised, you're on stronger ground, it seems to me. |
| 25   to Rio Tinto, because what really matters is what Rio | 25   MS COCKERILL:  On that question, my Lady, the answer comes, |
| Page 9 | Page 11 |
| 1   Tinto knew or what Rio Tinto, with reasonable diligence, | 1   they're not.  It is a very interesting question, very |
| 2   could have found out at the time, in terms of red flags. | 2   interesting point that my learned friend's clients have |
| 3      But what I do not at the moment understand, | 3   never said that Rio Tinto could not or did not call for |
| 4   Ms Cockerill, is why the -- I can see in a different | 4   particular information or that Rio Tinto could not have |
| 5   context why it might be said: well if the source of the | 5   seen the sources or didn't see the sources. |
| 6   report was somebody close to the government in Guinea, | 6   MRS JUSTICE ANDREWS:  I thought there was some information |
| 7   that would tend to indicate that it was quite a reliable | 7   about that in the witness statements but Mr George will |
| 8   source, but if it was the man who was walking down the | 8   no doubt take me to it. |
| 9   street who just happened to see something dodgy going | 9   MS COCKERILL:  There's is the Begbies Traynor indication |
| 10   on, it would not be.  That I can see entirely, that the | 10   that there was a whole database available to RT, |
| 11   nature of the source might well be relevant to the | 11   following on the submission of the Project Raven report. |
| 12   evaluation of the quality of the evidence. | 12   But the position, my Lady, is this, that if you have |
| 13      But the quality of the evidence is not material to | 13   a situation where this information is shared, or might |
| 14   your limitation defence, is it? | 14   have been shared, my clients need to know what was the |
| 15   MS COCKERILL:  Well my Lady, we say that it is because in | 15   evaluation which could have been put on it, what was the |
| 16   order to evaluate what is known and what RTZ ought to | 16   commentary which might have been passed on in relation |
| 17   have done, whether they ought to have pursued leads with | 17   to the value of the sources. |
| 18   more diligence, which is all part of the limitation | 18      The sources indicate what RT ought to have been |
| 19   argument -- it's not simply a question of: well if they | 19   doing.  Without the sources, one is advanced somewhat |
| 20   didn't know by a certain period, then time bar operates. | 20   from the position in the anonymised overarching reports, |
| 21   It's whether they had certain red flags to know and | 21   but one cannot see the full spectrum of what was |
| 22   whether they pursued their investigation with diligence, | 22   available to RT.  Your Ladyship will bear in mind that |
| 23   whether they were looking at certain other things. | 23   the allegations against my clients in the US court are |
| 24      Within those, you look at what was the information | 24   incredibly serious ones and to be able to evaluate what |
| 25   that they have and what was the quality of that | 25   RT had available to them and what they really should |
| Page 10 | Page 12 |

DTI Global                    www.dtiglobal.com                    8th Floor, 165 Fleet Street
(+44) 207 404 1400                                                 London EC4A 2DY

1    have been doing, is the key thing.  Without the sources,
2    it is next door to impossible to get that fuller
3    valuation in front of the US court.
4        So far as the position in the US court is concerned,
5    I will have to take instructions on exactly where this
6    is to be found.  I believe that there is a passage which
7    specifically refers to the question of sources and
8    magistrate Judge Peck said that sources should be
9    available.  That is obviously not determinative as far
10   as you are concerned because one appreciates that the US
11   court looks at these things with two hats on.  But he
12   certainly said that sources would be available, or
13   should be available.  And that's an indication that the
14   US court does regard that as a matter of moment so far
15   as the proceedings -- I cannot take it further than
16   that --
17   MRS JUSTICE ANDREWS:  It was not the basis on which you made
18       your application, was it?
19   MS COCKERILL:  My Lady, we didn't make the application on
20       the basis of sources because we are seeking more than
21       sources.  It would have been the basis on which we would
22       have made the application, if we had been given the
23       documents anonymised.  Then obviously the basis on which
24       we would have made the application was sources.
25           But at the time we made the application, it was not

Page 13

1    something which was flagged up, I think, to us, as an
2    issue that needed to be specifically raised.  What we
3    were looking for was -- your Ladyship has seen a large
4    number of categories of documents.  It is the documents
5    that we seek, together with the sources.  The sources
6    are part of the documents.  What you have, effectively,
7    is that we are entitled, I think everybody agrees, to
8    a large number of these documents and the question is
9    whether key parts of them can be taken out.  So we have
10   a right, and it's a question of whether they can be
11   taken out.  It was not a matter for us to advance as the
12   basis of our letter of request.  We simply sought the
13   documents au naturel.
14   MRS JUSTICE ANDREWS:  Yes.
15   MS COCKERILL:  And prima facie that is what we are entitled
16       to unless my learned friend makes out a case otherwise.
17   MRS JUSTICE ANDREWS:  Well that is true to a certain extent.
18       But in evaluating whether or not you are -- I should
19       exercise my discretion in favour of redaction.  I have
20       to take into account the real basis for which you need
21       these documents or want these documents and what you
22       said to the US court, as to your reasons for wanting
23       these documents.
24           Now, as I see it very clearly, that you say the
25       reason you want these documents is to be able to advance

Page 14

1    your limitation case on the basis of what Rio Tinto knew
2    and what, in the face of that information, Rio Tinto
3    should have done with it.
4        Now, I can't at the moment see why the source of
5    the -- first of all, if Rio Tinto themselves didn't know
6    who the sources were, then that helps you in your
7    limitation case at all, and even if they did know what
8    the source of the information was, or who the sources of
9    the information were, whether that actually advances or
10   otherwise, a case on limitation that you're seeking to
11   put forward.
12   MS COCKERILL:  I think I may be able to help you a little
13       further by reference to Mr Kelly's second witness
14       statement.  Can I take you to a couple of passages in
15       that, my Lady?
16   MRS JUSTICE ANDREWS:  Yes.
17   MS COCKERILL:  Paragraph 52, which is at page 14.
18       Paragraphs 52 and 54 really are the key, as far as we
19       are concerned.  Mr Kelly says:
20           "The source's names are necessary to enable the
21       New York court to assess their credibility and
22       reliability as sources of information upon which the
23       reports are based, as well as to understand the
24       investigation Rio Tinto claimed it used and that the New York
25       investigative firms to conduct and that the New York

Page 15

1    court found had been put at issue by Rio Tinto,
2    including by reference to such factors as the source's
3    background and whether they have links to other
4    interested parties.  The New York court will not be able
5    to determine what needs the firms had and whether they
6    followed all these, whether the failure to follow leads
7    was a function of any improper concealing conduct
8    without knowing what those leads were and it will not be
9    able to understand and assess the significance of the
10   materials provided to Rio Tinto without knowing that
11   that information is credible."
12       Then at paragraph 54:
13       "I am told by my New York colleagues that the court
14   will not be able to substantiate the information in the
15   reports in determining the thoroughness of the work of
16   the investigative firms, if it is deprived of the
17   information regarding the sources that were consulted in
18   the investigation and whose information Rio Tinto and/or
19   the investigative firms could have used to conduct their
20   investigation."
21   MRS JUSTICE ANDREWS:  Why is the New York court going to be
22       involved in substantiating the information?  The
23       question for the New York court is whether, on the basis
24       of that information, whether substantiated or not, there
25       was sufficient knowledge in Rio Tinto to make the very

Page 16

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                          London EC4A 2DY

1    serious allegations against your clients that it's now
2    advancing.
3    MS COCKERILL:  Well it also goes to the merits of the case
4        advanced by Rio Tinto.  It does, obviously, go, very
5        significantly, to the time bar point but if, for
6        example -- one of the points that my clients have made
7        on a couple of occasions, the conspiracy which is
8        alleged is a conspiracy in 2008 between Vale, as they
9        prefer to be called, and BSGR.  One of the things which
10       will be relevant in establishing whether there was such
11       conspiracy is evidence as to the contacts which BSGR had
12       at the relevant point and, in particular, whether it had
13       contacts with a variety of other people instead of Vale.
14       So a number of other firms from which they could have
15       got some of the information that RT says shows that Vale
16       must have been spilling secrets to BSGR as to projects
17       that RT had in the pipeline which they say Vale knew
18       about --
19   MRS JUSTICE ANDREWS:  That's the substantive issues in the
20       substantive action, that's not the limitation point.
21   MS COCKERILL:  But it goes to both, my Lady, it's
22       primarily -- a lot of what the investigative firms did
23       is about the limitation point but there will also
24       potentially be material which is relevant to the
25       substantive issues and it's put on both --

1    MRS JUSTICE ANDREWS:  That is not the basis on which you
2        asked for the letters of request, Ms Cockerill.  The
3        basis on which the letters of request were asked was to
4        help you with the limitation issues --
5    MS COCKERILL:  Well, my Lady, I think the letters of request
6        actually cover the issues generally.  Paragraph 8.1 of
7        any of the letters of request:
8            "Rio Tinto's claims are fundamentally on BSGR's
9        alleged bribery and corruption and the allegation that
10       BSGR formed a conspiracy."
11           So it actually goes:
12           "For the purposes of justice and for the
13       determination of the matters in dispute [so and so] is
14       a relevant witness."
15           So the overarching merits of the claim are
16       definitely cited as the letter of request.
17   MRS JUSTICE ANDREWS:  I am sure they are.
18   MS COCKERILL:  It is a two pronged attack.
19   MRS JUSTICE ANDREWS:  Right.  Anyway, you maintain that you
20       need these sources to be revealed?
21   MS COCKERILL:  I am afraid so, my Lady.
22   MRS JUSTICE ANDREWS:  Right.  Mr George, is there a halfway
23       house?  The identities of the individuals, I can see why
24       you're saying what you're saying.  But in one of the
25       numerous witness statements I've got from one of the

1    three firms, and I forget which one it is, there was
2        a very helpful schedule produced which gave a generic
3        description of what the source did.
4            Submissions by MR GEORGE
5    MR GEORGE:  My Lady, I think that was Mr Huband of
6        Livingstone.
7    MRS JUSTICE ANDREWS:  That's right.
8    MR GEORGE:  And that was in tab 6 of the Farrers bundle
9        which I have in blue.
10   MRS JUSTICE ANDREWS:  Yes, the blue one.
11   MR GEORGE:  It's page 7.  Sources A to I are ...
12   MRS JUSTICE ANDREWS:  Yes.  Would you resist it if the court
13       were to say: well a description of that generic nature
14       could be given in relation to the sources, so that if
15       you redact the names and the precise identities or
16       information, that is going to lead to the precise
17       identity of the person but one instead said it was
18       source A and you had a key?
19   MR GEORGE:  My Lady, may I take instructions?  I have three
20       clients.  Obviously, that is there from Livingstone so
21       that is in the record.
22   MRS JUSTICE ANDREWS:  But that's what is going through my
23       mind as one particular way of dealing with this because
24       it would enable Ms Cockerill's clients to know whether
25       the source was the man in the street or somebody at the

1    heart of government, but it wouldn't necessarily put
2        that person at fear or at risk of being outed and
3        therefore questions of personal safety might not come
4        in.
5    MR GEORGE:  My Lady, the client would be in the best
6        position to determine what --
7    MRS JUSTICE ANDREWS:  I am happy to rise for a short time.
8        Let me just sound out Ms Cockerill on that.  Would that
9        not meet your client's position fairly well,
10       Ms Cockerill?
11   MS COCKERILL:  My Lady, I think I will have to take
12       instructions on that.  I suspect not but I will have to
13       come back to you if your Ladyship rises.
14           What I would say is if your Ladyship is looking for
15       a way through, and I entirely understand that because it
16       is entirely what the court is urged to do in cases of
17       confidentiality, this is rather difficult because
18       sources, we say, are so integral.
19           It's the protective order.  There is a protective
20       order in place in the States.  My clients are more than
21       happy to agree that whatever documents raise the names
22       of the sources should go into the protective order.
23       That protective order is one which is limited to
24       non-party legal counsel, so there is no question of it
25       getting back to the parties.  Your Ladyship is familiar

| | |
|---|---|
| 1  with these sorts of confidentiality clubs in a variety | 1  Rio Tinto arrangement with at least one of the parties |
| 2  of other litigations. | 2  that you represent, that Rio Tinto has an unfettered |
| 3  My learned friend says -- his clients say that is | 3  right to call upon that particular provider to reveal to |
| 4  not satisfactory to them. We say that that's an | 4  it any information, including the names of the sources, |
| 5  unreasonable stand and that is a very good way of | 5  and indeed I am fortified in that view of the relevant |
| 6  cutting through. | 6  clause by the fact that there is an express |
| 7  MRS JUSTICE ANDREWS: The thought of that actually went | 7  confidentiality term in that contract which works the |
| 8  through my mind as well, whether to make it the subject | 8  other way. In other words, any information that is |
| 9  of a protective order but we all know that leaks can | 9  provided by Rio Tinto to the investigator is expressly |
| 10  occur and where people's lives are at risk, and I am | 10  subject to duties of confidentiality which outlive the |
| 11  alive to the fact that people's lives may be at risk, | 11  contract, but it does not go the other way round. |
| 12  one has to be ultra cautious. | 12  MR GEORGE: My Lady, nothing in this application concerns |
| 13  MR GEORGE: My Lady, in my submission, that is not a short | 13  information provided by any of my clients to Rio Tinto. |
| 14  cut at all. If it is right that, on balance, these | 14  MRS JUSTICE ANDREWS: No. But what I'm saying is that the |
| 15  sources should not be disclosed, then they should be | 15  absence of a contractual, an express contractual |
| 16  protected, in my submission. If that is wrong and | 16  provision which mirrors the Rio Tinto one is a very |
| 17  my Lady is against me, then obviously I would invite and | 17  strong indicator that there is no duty of |
| 18  I hope I would not be opposed, all protective measures | 18  confidentiality because if there was, it would be in the |
| 19  to be taken to protect that information. But in terms | 19  contract and the contract seems to me, on the face of |
| 20  of whether the confidentiality should be breached in the | 20  it, to suggest that Rio Tinto can ask your clients for |
| 21  first place, in my submission that is a matter of | 21  any information it chooses without any fetter. So |
| 22  principle and one cannot have a short cut that actually | 22  you're going to have to persuade me that there is a duty |
| 23  involves disclosing that information. | 23  of confidentiality that attaches to this information and |
| 24  Where my lady is clearly, in my respectful | 24  that's why, although I have some sympathy in relation to |
| 25  submission, correct is that one certainly very useful | 25  individuals who might be put at risk, I am not entirely |
| Page 21 | Page 23 |
| 1  short cut is to provide the types of information that | 1  against Ms Cockerill in terms of the principles in |
| 2  can safely be provided, as Mr Huband has done in his | 2  relation to the confidentiality, which is why I think it |
| 3  witness statement, which A, will, on my learned friend's | 3  might be in everybody's interest to try and come up with |
| 4  case, assist them, and B, will certainly allow them to | 4  a medium solution. |
| 5  take a more reasoned view as to whether there is any | 5  So I am going to rise for five minutes to see if you |
| 6  possible justification for any individual source being | 6  can take instructions, both of you, but don't think |
| 7  the subject of a further application, if it really can | 7  I have made up my mind. I haven't. |
| 8  be said to be relevant and necessary to the | 8  (11.05 am) |
| 9  limitation -- | 9  (A short break) |
| 10  MRS JUSTICE ANDREWS: You're talking about some kind of | 10  (11.09 am) |
| 11  incremental approach. | 11  Submissions by MS COCKERILL |
| 12  MR GEORGE: I am not encouraging it, my Lady, but if there | 12  MRS JUSTICE ANDREWS: Yes? |
| 13  was to be -- | 13  MS COCKERILL: Well, my Lady, I hate to be a party pooper |
| 14  MRS JUSTICE ANDREWS: Neither am I -- | 14  but I am afraid that I have taken instructions and I am |
| 15  MR GEORGE: My Lady is considering, as it were, ways through | 15  told that that is not acceptable. I am also asked to |
| 16  and in my submission that need not be ruled out, as it | 16  draw your Ladyship's attention to passages in the |
| 17  were, if my Lady has concerns that it may at some stage | 17  letters of request which we have found which |
| 18  be appropriate further to consider the question of | 18  specifically show the American court saying that it |
| 19  sources. | 19  wants to hear who the investigative firms interviewed. |
| 20  MRS JUSTICE ANDREWS: Yes. I mean I am trying to be | 20  You find it at section -- |
| 21  practical and fair to both parties at the moment because | 21  MRS JUSTICE ANDREWS: Which particular bundle do you want me |
| 22  your case is not without its difficulties either, | 22  to look at the letters of request in? |
| 23  Mr George, in terms of where this duty of | 23  MS COCKERILL: If you were to look in the attachment to |
| 24  confidentiality comes from, and in particular, I have in | 24  Mr Kelly's second witness statement, wherever you have |
| 25  mind the fact that it appears to me, on the face of the | 25  that. |
| Page 22 | Page 24 |

| | |
|---|---|
| 1   MRS JUSTICE ANDREWS:  Yes. | 1   request be running (?) at all, there's nothing that can |
| 2   MS COCKERILL:  If you were to turn up page 32 of that | 2   actually satisfy this court there could be any relevance |
| 3       exhibit, you see section 10 -- | 3   to the information of the sources to any issue in the |
| 4   MRS JUSTICE ANDREWS:  This is about the witnesses being | 4   American proceedings, in my submission. |
| 5       examined? | 5   MRS JUSTICE ANDREWS:  Only if it gets past limitation. |
| 6   MS COCKERILL:  Yes, "It's requested each witness be | 6   MR GEORGE:  With the exception of limitation, but as my Lady |
| 7       questioned", et cetera, et cetera.  Then if you turn | 7   said, that has to be focused on what Rio Tinto knew and |
| 8       over the page, you have key findings, including the | 8   what Rio Tinto knew has already been disclosed.  That is |
| 9       scope and timing of its engagement, who it interviewed, | 9   not what is -- |
| 10      what documents it reviewed, its findings and conclusions | 10  MRS JUSTICE ANDREWS:  Is that right because I thought there |
| 11      and you find -- | 11  were documents or information passing between your |
| 12  MRS JUSTICE ANDREWS:  Yes, about as wide as it could | 12  clients at various stages in Rio Tinto, that Rio Tinto |
| 13      possibly be, isn't it? | 13  said they no longer had and they would have to go to |
| 14  MS COCKERILL:  You find the same wording in the other | 14  your clients for them. |
| 15      letters of request.  The reference for the CTG one is | 15  MR GEORGE:  My Lady, that's not something -- I may have ... |
| 16      page 82 of the bundle. | 16  (Pause). |
| 17  MRS JUSTICE ANDREWS:  That's in relation to witnesses, | 17     My Lady, I will check that.  That is not my |
| 18      that's not in relation to the documents, is it? | 18  understanding.  My understanding is nobody is suggesting |
| 19  MS COCKERILL:  Well of course, as I said earlier, you would | 19  that Rio Tinto have not disclosed everything which they |
| 20      only really get the reference to who it interviewed in | 20  received from each of the clients in the American |
| 21      the context of the witnesses because as far as the US | 21  proceedings. |
| 22      court is concerned, it is looking at the documents | 22  MRS JUSTICE ANDREWS:  I think the allegation is that Rio |
| 23      whole.  The question of sources is not live at that | 23  Tinto have stuck rigidly to the letter of what they were |
| 24      point, we are simply seeking the documents, including | 24  ordered to disclose in terms of what they physically |
| 25      the sources. | 25  still had in their possession but that there may be |
| Page 25 | Page 27 |

| | |
|---|---|
| 1   MRS JUSTICE ANDREWS:  Right.  Mr George?  Would your clients | 1   information that had passed to Rio Tinto which they no |
| 2       be prepared to produce the halfway house? | 2   longer have, which is one of the reasons why your |
| 3              Submissions by MR GEORGE | 3   clients are being asked for the information that they |
| 4   MR GEORGE:  My Lady, our position is that, yes, we would | 4   actually passed to Rio Tinto, as opposed to the business |
| 5       have been, although it appears now irrelevant, to have | 5   reports themselves. |
| 6       consented to an order that where a redaction was made | 6   MR GEORGE:  Now, my Lady, that may well be -- it is clearly |
| 7       for the purpose of preserving confidentiality, and | 7   possible in any circumstance to say Rio Tinto have given |
| 8       I won't draft on my feet, but we would undertake to | 8   what they still have but how do we know they haven't |
| 9       provide full details relating to that source, as could | 9   done -- I understand that.  But to that extent we are |
| 10      assist in assessing the reliability and relevance of | 10  then considering, purely, a very, very narrow category |
| 11      this material, insofar as we considered it compatible | 11  of documents which are those which were provided to Rio |
| 12      with the duties of confidentiality, which could then | 12  Tinto. |
| 13      have been considered and potentially probed on an | 13     Although I will take instructions, my understanding |
| 14      incremental basis, my Lady.  However as I understand, | 14  is that none of the information provided to Rio Tinto |
| 15      that is not ... | 15  will contain any of the sensitive information.  So that |
| 16  MRS JUSTICE ANDREWS:  Don't rule it out all together. | 16  would not be controversial for these purposes because |
| 17  MR GEORGE:  My Lady, that in my submission -- because the | 17  anything disclosed to Rio Tinto by any of my three |
| 18      concern is, in a sense, a narrow one, it is to protect | 18  clients will not raise these confidentiality issues. |
| 19      the identity of people who may suffer recriminations -- | 19  MRS JUSTICE ANDREWS:  So if one is concentrating on what Rio |
| 20      and I appreciate I will have to make submissions on | 20  Tinto actually knew, you are telling me that Rio Tinto |
| 21      this -- to whom the duty of confidentiality is owed, and | 21  did not know who the sources were? |
| 22      in my submission, looking at the other side of the | 22  MR GEORGE:  No.  Nothing that is being applied for by my |
| 23      balancing scales, there is nothing before the court. | 23  learned friend, and which we are objecting to disclosure |
| 24      Even if one can say: well there are some wide words by | 24  of, was ever known by Rio Tinto. |
| 25      the American court that could effectively mean this | 25     I understand my Lady's point that it may be that |
| Page 26 | Page 28 |

DTI Global                www.dtiglobal.com                8th Floor, 165 Fleet Street
(+44) 207 404 1400                                          London EC4A 2DY

1    there are things Rio Tinto once had because we gave
2    them -- they failed to disclose and I see the force in
3    that but that is not a point that engages the
4    confidentiality issue because if there is any such
5    material, it will not have contained anything which we
6    now wish to protect.  So to the extent that subset is of
7    concern to my Lady, it's not something that raises this
8    confidentiality problem.
9    MRS JUSTICE ANDREWS:  Right.
10   MR GEORGE:  So my Lady, addressing the confidentiality
11   itself -- I will try to do it as briefly as possible
12   because my Lady has obviously traversed a substantial
13   part of the ground.
14   MRS JUSTICE ANDREWS:  Let's go through it in a little more
15   detail because as I understand it, the question of
16   making the request more specific, I think, is something
17   that can be sorted out between you, can it not?
18   MR GEORGE:  That is certainly the subsidiary element of this
19   morning.
20   MRS JUSTICE ANDREWS:  Right.
21   MR GEORGE:  The meat related to the cooks to the sauces.
22       My Lady, I am very conscious of how inefficient it
23   will be to continually flick through evidence in
24   different bundles, so I have taken the liberty of
25   preparing a short schedule which has no commentary at

Page 29

1    all, purely extracts from evidence so that my Lady has
2    it.  I will pass it to my learned friend.  (Handed).
3       I will start, my Lady if I may, by looking at the
4    evidence in relation to the confidentiality itself and
5    I will then turn to the other side of the scale which is
6    what relevance is it to the American litigation.
7       My Lady, I highlight from this side, three
8    particular passages.  Firstly, the third entry on page 1
9    from Mr Huband:
10      "I can confirm that each of the sources who have
11   been identified at paragraphs G to NN of schedule A of
12   the order, will have received a specific assurance from
13   Livingstone, Guinea and/or Liberia in country associates
14   that their identity will not be disclosed in any event."
15      So that is an express assurance of confidentiality
16   provided to a source and at the risk of repeating,
17   my Lady, just so it's clear, and the identity of that
18   source has never been provided to Rio Tinto.  And on the
19   evidence of Mr Parkhouse for Livingstone -- if I give
20   you the reference, this is paragraph 9 of Mr Parkhouse's
21   second witness statement.  It wouldn't be provided to
22   Rio Tinto if they asked.  They haven't asked.  And,
23   my Lady, we can debate Rio Tinto's contractual
24   entitlement, although in a sense that is a matter for
25   Rio Tinto, perhaps, but my client's position is, no,

Page 30

1    they would not be entitled to that information and they
2    certainly haven't --
3    MRS JUSTICE ANDREWS:  It depends, really, what system of law
4    governs the contract.  If it was English, they would,
5    very clearly.  I can't even see the contrary argument,
6    Mr George, at the moment.
7    MR GEORGE:  Would it be of assistance to turn to the
8    contract?  It's not the determinative point but does
9    my Lady have it in the DWF bundle?
10   MRS JUSTICE ANDREWS:  Goodness knows where I have it.
11   I don't like to nag you, Mr George, I don't want to
12   shoot the messenger, but really, an application of this
13   kind, to be produced in three bundles in this haphazard
14   way, is wholly unsatisfactory.
15   MR GEORGE:  I appreciate that, my Lady, and I apologise.
16   The DWF file, tab 5, has the --
17   MRS JUSTICE ANDREWS:  I have Mr Humphrey's witness statement
18   and -- yes.
19   MR GEORGE:  Precisely.
20   MRS JUSTICE ANDREWS:  The express confidentiality clause is
21   paragraph 32.  It's all one way, as you will see, it's
22   all in relation to the consultant having to keep
23   confidential information given to it for the purposes of
24   the consultancy services.
25      Confidential information, I think, is expressly

Page 31

1    defined but it doesn't involve information going from
2    the consultant to Rio Tinto.
3       When we go back to paragraph 16.1, paragraph 16.1
4    says:
5       "The consultant must provide Rio Tinto, or the
6    relevant company, with any information requested by
7    either of them in relation to the provision of the
8    consultancy services."
9    MR GEORGE:  Now my Lady, as I say, not the most
10   determinative point but I will make the submissions so
11   my Lady has them.
12      Our submission is clause 16.1 does not enable Rio
13   Tinto to ask, effectively, for further consultancy
14   services or further information in the nature of
15   detailed information or reports, such as the sources.
16   What it does -- and you can see, my Lady, that clause 16
17   relates to consultants' information, accounts and
18   records -- it enables and it intended to enable, Rio
19   Tinto to carry out an effective audit of the services
20   which have been provided, just so we actually have done
21   what we say we have done.  It has not entitled them to
22   information which they know is confidential and I rely,
23   my Lady, on clause 3.4E, the consultants'
24   representations:
25      "The consultants ... Rio Tinto in each relevant

Page 32

| | |
|---|---|
| 1 company ... The execution of the contract and the | 1 confidential. |
| 2 performance of the consultancy services do not and will | 2 MR GEORGE:  Well my Lady, that is the position but, equally, |
| 3 not result in a breach of the terms of or ... under any | 3 that is the evidence before this court.  With respect -- |
| 4 agreement or undertaking, whether verbal or written or | 4 MRS JUSTICE ANDREWS:  It's not very good, is it? |
| 5 any instrument to which the consultant may be affected | 5 MR GEORGE:  -- it is the best evidence before this court. |
| 6 or bound." | 6 One could not, as it were, expect the source, as it |
| 7     Now my Lady, if the construction of clause 16.1 | 7 were, themselves to provide at this stage, a witness |
| 8 contended by Vale is right, then that representation was | 8 statement, but you do have direct evidence from the |
| 9 necessarily wrong because everybody knew, both Rio Tinto | 9 representatives of the company.  My Lady, in my |
| 10 and the investigation firms, that there were obligations | 10 submission, it's not only the evidence from those |
| 11 of confidentiality owed by, in this case, Begbies | 11 representatives of what they have been informed happened |
| 12 Traynor, to its sources, that it would be a breach of | 12 in this particular case, it is also evidence of the |
| 13 those obligations for Begbies Traynor to agree to | 13 general business practices which are undertaken in this |
| 14 provide that information to Rio Tinto and in my | 14 field by business intelligence professionals. |
| 15 submission, and this would be the evidence, were the | 15     It would be, in my submission, surprising, if it |
| 16 matter to fall for determination, clause 16.1 plainly | 16 were to be the case that people were asked to reveal |
| 17 was not intended to override an express obligation, in | 17 what, by its nature, is sensitive information, which |
| 18 this case verbal, of confidentiality.  And clause 16.1 | 18 could lead to recriminations, without receiving the |
| 19 should be restricted by the promise in clause 3.4 and | 19 types of assurances that the various deponents before |
| 20 indeed the mutual understanding of the parties that they | 20 this court say were expressly provided. |
| 21 would not put each other in breach of verbal agreements | 21 MRS JUSTICE ANDREWS:  If the information is not sensitive, |
| 22 with third parties. | 22 in the sense that it is wrongfully provided -- |
| 23     So my Lady -- | 23 MR GEORGE:  Quite, which is not suggested. |
| 24 MRS JUSTICE ANDREWS:  The fatal problem with that argument | 24 MRS JUSTICE ANDREWS:  -- which is never suggested, then |
| 25 is clause 3.4 is a representation as at the date of the | 25 I think one has to look at the nature of the |
| Page 33 | Page 35 |
| 1 contract and it is a representation that there has not | 1 information.  If it's out there in the public domain and |
| 2 in fact been, and will not be, a breach of an order, | 2 it's just evidence gathering, then one cannot see why |
| 3 rule, regulation, injunction, decree, et cetera, or the | 3 gathering it and providing it is going to put anybody in |
| 4 terms of an undertaking. | 4 any danger at all. |
| 5     Now, that's as at the date of the contract.  It's | 5     It's only if somebody -- I can see that there may be |
| 6 a representation by the consultants, of Rio Tinto.  So | 6 political sensitivities in a country such at Guinea, so |
| 7 it's saying: well when we provide you with the report, | 7 if you have sources close to the government and they |
| 8 we are not going to be in breach of our obligations to | 8 seem to be shopping one of their number for malpractice, |
| 9 a third party.  That seems to me to be a very different | 9 then that's an obvious case.  But somebody simply |
| 10 thing from saying: well Rio Tinto can't call upon you at | 10 providing information as to what the situation is on the |
| 11 a later stage to substantiate the information you're | 11 ground, is not going to be in the same position. |
| 12 giving us, by revealing who you got it from. | 12 MR GEORGE:  My Lady, that is undoubtedly correct.  What |
| 13 MR GEORGE:  Maybe they can call but we will not -- and this | 13 my Lady has, of course, is Mr Huband's helpful schedule |
| 14 is the representation, that we will make sure we don't | 14 of who we are trying to protect in this case. |
| 15 put Rio Tinto in the position of requiring us to breach | 15 Those -- |
| 16 an obligation to a third party. | 16 MRS JUSTICE ANDREWS:  It's interesting that Mr Huband, |
| 17     That is precisely what has happened.  They have | 17 I think it's Mr Huband, draws a distinction between the |
| 18 asked, because they were asked in terms of the court | 18 people he labels "associates" and the people he labels |
| 19 proceedings and we have said: no, that would breach an | 19 "sources".  Speaking for myself, I can't at the moment |
| 20 obligation to a third party. | 20 see why any confidentiality should attach to the |
| 21     So that is the position vis-a-vis Rio Tinto. | 21 identification of the associates because they are the |
| 22 MRS JUSTICE ANDREWS:  All I have at the moment in terms of | 22 people who are effectively subcontractors who are being |
| 23 evidence on this is a general allegation, which is at | 23 engaged to carry out the evidence gathering. |
| 24 best hearsay, that assurances have been given by X to Y | 24     Now they may use confidential sources and give |
| 25 in the background, that the information will be kept | 25 confidential sources certain assurances that their |
| Page 34 | Page 36 |

| | |
|---|---|
| 1   identities won't be disclosed, and it may well be that | 1   to be a regional corruption investigator, then the fact |
| 2   that's no different from the business intelligence | 2   he's identified as being the source of information |
| 3   agencies giving those assurances directly, because you | 3   relating to regional corruption is hardly going to put |
| 4   are just looking at an associate acting, if you like, as | 4   him in any danger, is it? |
| 5   the mouth piece or the employee or venture partner of | 5   MR GEORGE:  Well my Lady, this obviously comes up quite |
| 6   the ultimate person who's trying to find out the | 6   often in this type of context as to whether, as it were, |
| 7   information. | 7   somebody is so notorious a target anyway that you are |
| 8        Speaking for myself, I think that there's much more | 8   merely incrementally increasing the danger, as it were, |
| 9   force in your argument in relation to the sources than | 9   by potentially annoying another 12 people, when he's |
| 10  there is in relation to the associates. | 10  already annoyed 1200. |
| 11  MR GEORGE:  My Lady, I see that.  I will take instructions | 11  MRS JUSTICE ANDREWS:  I do not think it's so much the |
| 12  as to whether there are any associates we are seeking to | 12  annoyance, I think what's actually being said by |
| 13  protect before I go too far -- | 13  Mr Huband is that other people might not employ him if |
| 14  MRS JUSTICE ANDREWS:  That's what Mr Huband says.  He says | 14  his identity became known.  That's what's being said, |
| 15  he wants all the associates protected, as well as the | 15  not that he would be harmed but his capacity to provide |
| 16  sources. | 16  these services to people would be seriously harmed if |
| 17  MR GEORGE:  The evidence is at paragraph 11 of Mr Huband's | 17  his identity -- I don't know what that means. |
| 18  statement in relation to confidentiality -- | 18       What it basically means is he might not be able to |
| 19  MRS JUSTICE ANDREWS:  Remind me which of these many bundles | 19  earn a living and I cannot see why he won't be able to |
| 20  is Mr Huband. | 20  earn a living unless he's under cover.  He's a very |
| 21  MR GEORGE:  Mr Huband is blue. | 21  senior, regional corruption investigator. |
| 22  MRS JUSTICE ANDREWS:  Yes, okay.  His witness statement | 22  MR GEORGE:  My Lady, what is presumably being suggested is |
| 23  I thought was the most helpful of all of them, I must | 23  the evidence does not go so high as to suggest the risk |
| 24  say, in terms of what we're dealing with here. | 24  of life and limb, the recriminations against him would |
| 25  MR GEORGE:  I hear that, my Lady.  I should perhaps say on | 25  take more economic form. |
| Page 37 | Page 39 |

| | |
|---|---|
| 1   Mr Humphries' behalf, as he says, he knows nothing at | 1   MRS JUSTICE ANDREWS:  I can see the government officials |
| 2   all about anything, he was not able to assist | 2   right.  You have a government official who's a witness |
| 3   particularly but ... | 3   to key events and conversations, obviously he's |
| 4   MRS JUSTICE ANDREWS:  He either knows or he doesn't. | 4   a potential target. |
| 5   MR GEORGE:  Quite.  So the sources are at -- | 5        Ditto source G, which is going to cause problems. |
| 6   MRS JUSTICE ANDREWS:  He says that three of the associates | 6        H is a journalist: |
| 7   were journalists and, of course, the journalists will | 7        "Exposure of his identity will hinder his access to |
| 8   have their own sources.  They have a senior journalist | 8   information which has been of considerable value in |
| 9   associate.  Well I can't see why the journalist is going | 9   improving global understanding of Guinea in political |
| 10  to be put at risk by anything because it's just doing | 10  life."  Whatever that means.  I do not think exposure of |
| 11  something on the side line which happens to be his or | 11  his identity to the lawyers acting for Vale and Rio |
| 12  her job.  No suggestion of any illegality by anybody. | 12  Tinto is going to make a huge deal of difference to his |
| 13  Why are the journalists going to be put at risk if their | 13  journalistic work. |
| 14  identities are known? | 14       Ditto an academic. |
| 15  MR GEORGE:  My Lady, if I could short circuit, as it were. | 15       The executives, well ... I can see there's an |
| 16  The people we seek to protect are at 24.1, page 7. | 16  argument in relation to the executives.  And the ex |
| 17  MRS JUSTICE ANDREWS:  Your sources A to G. | 17  patriot because I can well see if his name is revealed, |
| 18  MR GEORGE:  Precisely.  I am instructed B and C are the | 18  there might be ... |
| 19  associates and I obviously can't develop the evidence | 19  MR GEORGE:  My Lady is obviously right that there are |
| 20  beyond what is written there, for obvious reasons, | 20  stronger and weaker justifications for each particular |
| 21  that's the very point at which it's been framed.  The | 21  individual.  But just stepping back of course, there is |
| 22  only associates are B and C and the material relied upon | 22  a balancing act to be carried out and what one would |
| 23  is set out there. | 23  also need to carry out in relation to each of these |
| 24  MRS JUSTICE ANDREWS:  Yes.  If somebody's job is to act as | 24  individuals is what relevance is their evidence said to |
| 25  a regional corruption investigator and he's well known | 25  have to the US proceedings?  Which in a sense is why |
| Page 38 | Page 40 |

DTI Global                         www.dtiglobal.com                  8th Floor, 165 Fleet Street
(+44) 207 404 1400                                                   London EC4A 2DY

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

1  I floated, without necessarily encouraging, a more
2  incremental approach to this, whereby information of
3  this type that my Lady has just reviewed, could be
4  provided and one could then balance those arguments
5  against why it is said this individual has something
6  relevant to the United States proceedings, rather than
7  requiring them all to be disclosed without, in my
8  submission, any basis for submitting that they are
9  relevant at this time.
10      In my submission, my Lady, and I understand
11  my Lady's points about: well some of the possible
12  consequences are going to be more serious than others
13  but, nonetheless, on the evidence before the court, an
14  express duty of confidentiality between the associates
15  and the sources and each of my clients, has been
16  established.
17      There is an argument which my Lady and I have had
18  and I understand my Lady's point, about whether the
19  investigative firms have put themselves in a position
20  where they might have conflicting obligations, by
21  signing up to a contract with Rio Tinto that put them in
22  a position of potentially requiring them to breach those
23  obligations. I understand my Lady's point.
24      But even if that were the case, that still means the
25  sources, the obligations that they were promised, will

Page 41

1  be breached. And that may be my client's fault but
2  that's still not fair or right that the sources should
3  suffer repercussions because of an ill advised signature
4  of what are, basically, Rio Tinto standard terms and
5  certainly there is no suggestion anyone at the time
6  considered that clause 16.1 would have the draconian
7  effect that Vale are now positing for it.
8      Even if it did, the sources would be entitled to say
9  "Well I didn't make that contract and I have express
10  obligations of confidentiality." And without wishing to
11  rehash the point, if I just give my Lady the references
12  on my schedule to where express obligations of
13  confidentiality are, other than Mr Huband. So if we
14  move on to Begbies, you will see there, the second item
15  there, and that's provided, and then for ARC --
16  MRS JUSTICE ANDREWS: Yes:
17      "Specific undertakings evidently provided [I don't
18  know what that's supposed to mean, it looks like an
19  inference being drawn] ...as the overseeing author
20  evidently provided each of them ... will have agreed to
21  similar assurances."
22      I mean, that's not clear evidence that he's done
23  anything, it's speculation, it's an assumption that he
24  would have done it because that's the way it's done.
25  MR GEORGE: I think from the preceding paragraph, if we jus

Page 42

1  turn it up. So paragraph 17, the DWF file, tab 5,
2  page 93.
3  MRS JUSTICE ANDREWS: Yes.
4  MR GEORGE: Second sentence of paragraph 17:
5      "Mr Brown also confirmed to me [the deponent] that
6  in relation to other sources not disclosed in the report
7  [ie that Rio Tinto have never been informed of],
8  specific undertakings with those sources were entered
9  into, into separately protecting the identity of the
10  source and undertaking that their identity would, under
11  no circumstances, be disclosed."
12      That's what he knows from Mr Brown, so when he says
13  "evidently" in paragraph 80, he means, from what Mr
14  Brown's told me, it's not his direct knowledge but it's
15  what Mr Brown has told him.
16  MRS JUSTICE ANDREWS: It's quite interesting. One looks at
17  it ... "The sources of information were largely,
18  largely, anonymous in the reporting sense [which
19  suggests they were not all anonymous.] To the extent
20  they agreed to their identity being disclosed, then
21  reference in the report was made and the identity
22  disclosed."
23      In which case, if Vale have got the report, they
24  will know the identity.
25  MR GEORGE: Yes, and there's nothing in this application

Page 43

1  that relates to -- I am sure it comes up for each of my
2  clients. There will be people who do not require to
3  have confidentiality, who were not promised
4  confidentiality, whose identity was disclosed to Rio
5  Tinto and who Rio Tinto know about and who have
6  disclosed that material to Vale.
7  MRS JUSTICE ANDREWS: What we are really dealing with is
8  sources of information in the report that were not
9  revealed -- those sources were not in fact revealed to
10  Rio Tinto.
11  MR GEORGE: Never.
12  MRS JUSTICE ANDREWS: So at the time when Rio Tinto had the
13  reports, they themselves, whether or not they had
14  a contractual right to call for it, did not in fact know
15  who provided that information to them -- to their
16  business associates -- and were unable there, on the
17  basis of that, to evaluate, use that information to
18  evaluate the quality of the information.
19  MR GEORGE: Precisely. They had what they had and nothing
20  in this argument is about anything that Rio Tinto ever
21  had at any material time. Never was anything that I am
22  trying to protect, within Rio Tinto's knowledge.
23      Finally, my Lady, ARC, African Risk. You will see
24  the principal evidence from Ms O'Connor at the top of
25  page 2:

Page 44

11 (Pages 41 to 44)

Rio Tinto Plc v Vale SA & ors                          25 June 2015

---

1   "I confirm that each of ARC' ... produced for Rio
2   Tinto received an assurance their identity would not be
3   disclosed ... when they first began working with ARC."
4   MRS JUSTICE ANDREWS:  What it boils down to is apart from
5   the two layers of associates and sources that one has in
6   Livingstone's case, are a network of individuals who are
7   providing information, all of whom are said to have
8   received specific assurances that their identities will
9   not be disclosed.  Insofar as the associates are
10  journalists, they would of course be the usual
11  journalists, subject to the usual journalistic source of
12  confidentiality, which is a matter of public policy in
13  this jurisdiction, is expressly protected, for very good
14  public policy reasons.
15      In other cases, perhaps the quality of the
16  information doesn't expose them to quite the same
17  dangers but what you have is a complete range.
18  MR GEORGE:  Precisely, my Lady.
19  MRS JUSTICE ANDREWS:  But your main point is everybody was
20  given an express assurance.  Then the reputations of the
21  three businesses concerned will take a hit, if it's
22  found that as a result of a court order, they have had
23  to disclose it.  I am not quite sure why it makes
24  a difference to their reputation if they find that
25  having valiantly resisted disclosure, they're forced to

Page 45

---

1   disclose it into a confidentiality agreement.
2   MR GEORGE:  Well, my Lady, I will address on the various
3   subheadings.  My Lady is right to characterise the
4   different nature of the argument are these.  Firstly
5   and importantly, the express promise of confidentiality
6   to anyone.
7       Secondly, the evidence of risk to life, limb,
8   property, and in my schedule I have attempted to
9   summarise each of these within each category.
10      Thirdly, evidence of the damages to business
11  reputation.
12      In our submission -- I take my Lady's point, but the
13  submission is that once it is held that an express
14  promise of confidentiality is, on this hypothesis, not
15  given sufficient weight to be upheld by a court, then
16  notwithstanding the court's attempts to protect it --
17  and I understand what -- the protect orders the courts
18  can and do put in place, but as my Lady herself observed
19  and we all know from practice, leaks can and do happen,
20  even with the best will in the world, let alone
21  deliberate ones -- that will severely restrict people's
22  confidence in the services which not only my three
23  clients but in fact the business intelligence community
24  as a whole can provide.  And obviously we would say,
25  particularly so, in situations where as we currently

Page 46

---

1   stand and we currently see it, we see no basis upon
2   which they should be disclosed.  They are, on our
3   submission, of no relevance to the US proceedings.  At
4   best, on my learned friend's case, of the most marginal
5   and tangential relevance and in those circumstances, it
6   would be extremely serious for the business.
7       Fourthly, my Lady, and finally, in these categories,
8   is the journalistic analogy, if I put it that way.  It
9   is an important one to bear in mind.  For the reasons
10  I have given, I am not going to stand up and say, you
11  know, they are identical to journalists, it is
12  a different industry, nor does the fact they are
13  journalists in a different context --
14  MRS JUSTICE ANDREWS:  One has to live in the real world.
15  This is evidence or intelligence gathering in a country
16  where there may not be the same respect for life and
17  limb as elsewhere.
18  MR GEORGE:  Precisely.
19  MRS JUSTICE ANDREWS:  One has to take judicial notice of
20  that.
21  MR GEORGE:  And, equally, where the number of people who
22  have sufficient knowledge in that country, and thus to
23  act as journalists or intelligence gatherers or
24  assistants -- and you have seen from the evidence that
25  much of the work my clients do is for government bases

Page 47

---

1   and formal public bodies, are likely to be the same
2   people.  There are not that many people who can provide
3   an informed assessment of any particular political issue
4   within Guinea and as my Lady says, can clearly take
5   judicial notice of the nature of that particular country
6   in its recent modern history.
7       So my Lady, those are --
8   MRS JUSTICE ANDREWS:  What are you actually asking for,
9   Mr George, in terms of the court order?  You want
10  a carte blanche redaction?
11  MR GEORGE:  Well my Lady, I don't put it as -- I wouldn't
12  characterise it as carte blanche.  If we go to the blue
13  file, if that's convenient, tab 4.  It's the Livingstone
14  file, tab 4.
15  MRS JUSTICE ANDREWS:  "Not required to produce any copies of
16  documents nor any evidence which may infringe any duty
17  of confidentiality."
18      That's going to need much more specificity, isn't
19  it?
20  MR GEORGE:  My Lady, I agree and let me immediately say that
21  "shall not be required to produce" means to be required
22  to produce in redacted form.  We are not suggesting that
23  we simply say: you cannot have the document.
24      The "infringe any duty of confidentiality" relates
25  to only one aspect of that duty and that is clear from

Page 48

---

12 (Pages 45 to 48)

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

| | |
|---|---|
| 1  the next line: | 1  goes too far but that will be a forum, as it were, in |
| 2    "It is information regarding disclosure of the | 2  which a further, more forensic analysis could take |
| 3    identity of the source." | 3  place, without having -- |
| 4  MRS JUSTICE ANDREWS:  It would be better, would it not, to | 4  MRS JUSTICE ANDREWS:  That puts the examiner in a very |
| 5  vary the order so as to permit redaction of the | 5  difficult position because, normally, when you take |
| 6  documents for a specific purpose? | 6  objections to questions, the way that it's done, in my |
| 7  MR GEORGE:  Yes. | 7  experience, is that the examiner allows the question to |
| 8  MRS JUSTICE ANDREWS:  And maybe on particular terms.  I will | 8  be answered and it then goes back to the home court to |
| 9  hear what Ms Cockerill will have to say but if I were | 9  rule on whether or not that information is admissible or |
| 10  with you, one possibility would be for me to say | 10  not. |
| 11  "I permit you to redact the documents so as to remove | 11  MR GEORGE:  That is the difficulty with that.  I was putting |
| 12  any information which would lead directly or indirectly | 12  it as an option just so that -- but the difficulty with |
| 13  to the disclosure of the identity of the source." | 13  it not being resolved at my Lady's level, if I can put |
| 14    Then I might, however, require that there is | 14  it that way, is it doesn't have the -- |
| 15  a generic description along the lines of what is said in | 15  MRS JUSTICE ANDREWS:  The scope of the disclosure or the |
| 16  Mr Huband's statement, so that we know that it's | 16  scope of the disclosure pursuant to the letters of |
| 17  source I or source A or source X. | 17  request, I think is something I have to grasp with a |
| 18  MR GEORGE:  My Lady, yes.  As I have said, we would be | 18  nettle on today because otherwise it puts both parties |
| 19  prepared and entirely see the force of an argument that | 19  in an impossible position when it comes to the |
| 20  the redactions should be justified as much as possible | 20  cross-examination of the witnesses.  If Ms Cockerill is |
| 21  without breaching the very purpose for which the | 21  going to be doing it, then she won't know what questions |
| 22  protection was provided, in order that the evidence can | 22  she's allowed to ask and what she is not allowed to ask. |
| 23  be tested and both the justifications can be considered | 23  MR GEORGE:  I think my learned friend has nominated others |
| 24  and any further application of the disclosure of sources | 24  from her instructing solicitors to conduct it. |
| 25  can be predicated on a specific application as to why | 25    But my Lady, yes, so our primary position, for the |
| Page 49 | Page 51 |

| | |
|---|---|
| 1  this individual, in relation to the very issue which he | 1  reasons that I have given, is -- those are my |
| 2  purported to speak to or however Ms Cockerill wants to | 2  submissions on the confidentiality but -- |
| 3  put it, my learned friend wants to put it, but that | 3  MRS JUSTICE ANDREWS:  What else is on the shopping list? |
| 4  would be a much more satisfactory and proportionate way | 4  There's specificity but I think that's something -- |
| 5  of proceeding than effectively having these names out | 5  MR GEORGE:  I said I would look at both sides of the |
| 6  there, regardless really, of -- without any analysis of | 6  balancing scale so I also wanted to look very briefly at |
| 7  what issue they might be relevant to, in which case, as | 7  why the relevance to the US proceedings which obviously |
| 8  it were, the -- | 8  gets set against the confidentiality -- and let me make |
| 9  MRS JUSTICE ANDREWS:  Well there is the halfway house. | 9  brief submissions in relation to what is going on in |
| 10  I could either say: well for the time being you are | 10  America. |
| 11  permitted to do that, and give liberty to apply to come | 11    There are three points.  The first is in relation to |
| 12  back with precise evidence as to why the disclosure of | 12  paragraph 68.  If that is said to be in -- relevant, |
| 13  the name of that individual is key.  Or I can say no. | 13  that it leads to -- |
| 14  Because at the end of the day, as a matter of | 14  MRS JUSTICE ANDREWS:  Sorry, 68 of? |
| 15  discretion, I have to consider the balancing exercise in | 15  MR GEORGE:  Mr Kelly's second witness statement.  Sorry, |
| 16  relation to confidentiality.  Or I could say yes. | 16  I said that too fast: |
| 17  MR GEORGE:  Yes, my Lady.  Or just to add to my Lady's | 17    "The right to know the source's name on the basis |
| 18  options, my Lady could say: well I am going to permit | 18  that it will enable them to identify further, the |
| 19  the redactions with or without justifications.  I know | 19  identity and location of persons who know of any |
| 20  there is going to be an oral examination of at least two | 20  discoverable matter." |
| 21  witnesses because Mr Huband and Ms O'Connor are not | 21  MRS JUSTICE ANDREWS:  That's British Westinghouse. |
| 22  objecting to being there.  Questions will obviously -- | 22  MR GEORGE:  My Lady, if I don't need to take you to British |
| 23  can be asked about the material that has been provided | 23  Westinghouse, I won't.  But that is plainly out. |
| 24  and the redactions.  Doubtless, as representatives, we | 24  MRS JUSTICE ANDREWS:  You can't basically. |
| 25  will be there to make submissions if the questioning | 25  MR GEORGE:  The second basis, as my Lady has said, is |
| Page 50 | Page 52 |

13 (Pages 49 to 52)

Rio Tinto Plc v Vale SA & ors                    25 June 2015

| | |
|---|---|
| 1 limitation. There are two submissions, the first of | 1 second witness statement at the exhibit, page 137 of |
| 2 which my Lady has entirely articulated, which is how can | 2 Mr Kelly's exhibit -- |
| 3 anything that isn't in Rio Tinto's knowledge, be | 3 MRS JUSTICE ANDREWS: 137? |
| 4 relevant? As I have made clear, nothing in this | 4 MR GEORGE: Yes. You will see this is what I have called |
| 5 application, as far as confidentiality is concerned, | 5 a justification table. What my learned friend's clients |
| 6 relates to anything that Rio Tinto have ever had. | 6 have tried to do is take each piece of information and |
| 7 Because anything that went to Rio Tinto, we entirely | 7 justify why they need it. |
| 8 accept, is not something we can now seek to protect and | 8 If one goes to page 140, item L, just to take an |
| 9 we don't. That's why Rio Tinto were told of it because | 9 example, this is a request for documents referred to. |
| 10 it didn't need protecting. | 10 My Lady will see a report dated 19 July 2010. So on any |
| 11 Also on limitation, my Lady, there is quite an | 11 view, that was provided to Rio Tinto within the |
| 12 important date point that Mr Kelly seems to have | 12 limitation period. It's said to be relevant, if one |
| 13 ignored. Proceedings were issued on 30 April 2014. | 13 looks at the next entry: |
| 14 It's a four year limitation period, so the four years | 14 "These documents relating to Mr ... will demonstrate |
| 15 Rio Tinto had, go back to 30 April 2010. So any red | 15 that Rio Tinto was well aware of any red flags with |
| 16 flags after 30 April 2010 don't matter, they're within | 16 respect ... bribery of government officials well |
| 17 the four year period. | 17 before April 2010." |
| 18 The only relevance of limitation is what red flags | 18 It is beyond us how a report received after |
| 19 Rio Tinto knew before 30 April 2010. | 19 19 July 2010 by Rio Tinto, can conceivably tell anything |
| 20 Of the 19 reports which Livingstone produced, 18 of | 20 about what Rio Tinto knew before April 2010. |
| 21 them fall outside the relevant period. All of the | 21 MRS JUSTICE ANDREWS: It depends what's in the report, |
| 22 reports which Begbies produced, fall outside the | 22 doesn't it? Because the fact the report may be actually |
| 23 relevant period. | 23 provided at a later date, the contents of the report may |
| 24 It is, we say, surprising that this wasn't drawn to | 24 relate to events that have occurred at an earlier stage |
| 25 the attention of the English court when they were asked | 25 and it may narrate those events. So I can see that the |
| Page 53 | Page 55 |

| | |
|---|---|
| 1 to make this order because there's a material difference | 1 date might actually be a bit of a red herring there. |
| 2 between the quality of the material in relation to -- | 2 MR GEORGE: Only, my Lady, if what it related to was some |
| 3 MRS JUSTICE ANDREWS: It's a bit late now, isn't it, because | 3 earlier knowledge of Rio Tinto. |
| 4 the US courts made the letter of request in relation to | 4 MRS JUSTICE ANDREWS: Yes. |
| 5 this material. It's the US court that should have been | 5 MR GEORGE: If that's the case, that's obviously been |
| 6 told this is out of -- | 6 disclosed, I mean that's not been redacted -- |
| 7 MR GEORGE: My Lady, that may well be right but in any | 7 MRS JUSTICE ANDREWS: The reports are out there. |
| 8 event -- | 8 MR GEORGE: The reports are out there. What's being said |
| 9 MRS JUSTICE ANDREWS: That's something that Rio Tinto should | 9 here is the information that Rio Tinto didn't have, that |
| 10 have done, it's a bit like shoving the stable door after | 10 under the layer (?) report they received on 19 July |
| 11 the horse has bolted. | 11 could be relevant to what they knew on April 2010, and |
| 12 MR GEORGE: I am not going to develop that. We reject | 12 we simply cannot see how that could be correct. |
| 13 entirely the submissions that we are in any way in | 13 My Lady, finally, in relation to this, in terms of |
| 14 collusion with Rio Tinto and indeed we would be | 14 the -- perhaps I think what could fairly be called the |
| 15 equally -- and are equally aggrieved about Rio Tinto, as | 15 catch all position that: oh, well something might turn |
| 16 it were, in these actions. We understand there are | 16 up in relation to the overall merits, as it were, again, |
| 17 billions of dollars at stake between two of the world's | 17 firstly, the fundamental point, the reports are out |
| 18 largest mining companies. We do not participate on that | 18 there. What they say about the merits, what knowledge |
| 19 scale, we are simply trying to protect the identity of | 19 there was in the report, is already in evidence in the |
| 20 our businesses. | 20 US proceedings. |
| 21 But the position now, as appears absolutely quite | 21 MRS JUSTICE ANDREWS: Well the catch all is relevant, |
| 22 clear, that the vast majority of information requested | 22 specifically, to the gaps. By "gaps" I mean any |
| 23 of Livingstone and all of that requested of Begbies | 23 documents that Rio Tinto, or information Rio Tinto had |
| 24 Trainer, must be irrelevant to the limitation issue. | 24 which they say they no longer have and therefore don't |
| 25 It's probably worth highlighting, back in Mr Kelly's | 25 have to disclose pursuant to the US court order. It may |
| Page 54 | Page 56 |

14 (Pages 53 to 56)

1    be that they are within fairly short compass but I would
2    have thought that's the category --
3    MR GEORGE:  In which case that is fine because that does not
4    involve confidentiality.  There's no objection on
5    confidentiality with that, there's a wording point which
6    we will discuss in the second issue.  That doesn't
7    matter for confidentiality.  If that's the only point of
8    the catch all, that goes nowhere, so we're left with
9    a limitation point that simply cannot run because it
10   cannot relate to Rio Tinto's knowledge and in most of
11   the cases it postdates it.
12       Anything else -- particularly, no one has yet
13   articulated what any other relevance could it be --
14   could at most be a fishing expedition on the sort
15   of: you never know what may turn up that may be useful.
16   MRS JUSTICE ANDREWS:  It may not pertain to their knowledge
17   but think about the section 32-type point, which has
18   a special name in the US proceedings and I have now
19   forgotten what it is, but the -- what you know or with
20   reasonable diligence could have found out point.
21   MS COCKERILL:  Equitable tolling.
22   MRS JUSTICE ANDREWS:  Equitable tolling, thank you,
23   Ms Cockerill.  On the equitable tolling point, one of
24   the enquiries is going to be whether or not Rio Tinto
25   could, with reasonable diligence, have found out certain

Page 57

1    information.  And, therefore, it does not just stop at
2    Rio Tinto's actual knowledge, I can see an argument
3    running along the basis: well you have clause 16, you
4    could have utilised clause 16 to force the company to
5    provide you with information that was, if you like,
6    further and better particulars of the allegation in
7    paragraph 63 of their report -- I take that paragraph as
8    at random, I don't know how long the reports were, but
9    let's say there's a particular passage in one of the
10   reports that waves an orange flag, not necessarily a red
11   one but an orange flag, and it looks a little bit iffy
12   and if one then investigates the orange flag and it gets
13   redder and redder and redder, so that with due
14   diligence, Rio Tinto, by pursuing its contractual rights
15   against your clients, could have found out that there
16   was really a lot more to it than met the eye, that would
17   advance Ms Cockerill's limitation case.
18       On the other hand, if Rio Tinto wanted to rely on
19   equitable tolling, they would have said: well we would
20   have hit our heads against a brick wall because we would
21   only have got as far as finding out the source of
22   information was somebody that Livingstone were not
23   prepared to tell us any more about without getting into
24   trouble and we just hit a dead end and therefore we
25   could not reliably rely upon this information.

Page 58

1    So I think you have to go a bit wider than their
2    actual knowledge.  It's what they could, by taking
3    reasonable steps, have found out at the time.
4    MR GEORGE:  My Lady, that must be right.  The first
5    submission on that is that, in my submission, is where
6    the date point is clearly relevant because no orange
7    flag of that nature, in my Lady's example, arising after
8    30 April 2010, could give rise to that --
9    MRS JUSTICE ANDREWS:  Because it's within the four years.
10   MR GEORGE:  Precisely within the limitation period.  That
11   rules out all of Begbies, 18 of 19 of Livingstone and
12   two of ARC.  ARC do have material within the relevant
13   period.
14       Secondly, my Lady, obviously in a hypothesis where
15   Rio Tinto didn't exercise clause 16.1, it is to put
16   it -- a long way down the line to speculate as to what
17   would have happened if they didn't.  Ms Cockerill may
18   win at first base.  She may just say "You had
19   clause 16.1", my construction may fail and that will be
20   that, Rio Tinto didn't exercise it and they should have
21   done.  But it's quite some degrees of separation to say
22   the court will start investigating.  We know they didn't
23   but if they had, what might they have done and what
24   might that have revealed.  And certainly no evidence
25   before this court, although there could be, if one took

Page 59

1    a more incremental approach, perhaps in relation to
2    a specific passage in a specific report in a specific
3    individual, and that's likely to occur.  And in my
4    submission it's very much a sort of sledge hammer and
5    nuts situation, to require that identity of a
6    significant number of confidential sources to be
7    disclosed, on the hypothesis that one of them might be
8    relevant on that ground.  If that were the case, one
9    could make an application on a very specific and
10   discrete basis, at a subsequent point.
11       Finally, I have given you the reference of
12   Mr Parkhouse 2, paragraph 9, to show that this is not
13   our -- may I hand it up?  I apologise, my Lady, it's for
14   the blue file.  Tab 10, just so my Lady has it.
15       (Handed).
16   MRS JUSTICE ANDREWS:  Have I seen this before?
17   MR GEORGE:  My Lady, we have discussed it but possibly
18   because it was in my schedule.
19   MRS JUSTICE ANDREWS:  Thank you.  I think I might.  I am not
20   sure.
21   MR GEORGE:  It probably reached the court but not in an
22   orderly form.
23   MRS JUSTICE ANDREWS:  I was handed a couple of extra things
24   to put into the bundles this morning.
25   MR GEORGE:  Similarly, or to similar effect, Ms O'Connor's

Page 60

DTI Global                    www.dtiglobal.com                    8th Floor, 165 Fleet Street
(+44) 207 404 1400                                                  London EC4A 2DY

1  second witness statement at paragraph 6.
2       May I, with sincere apologies, hand it up again. It
3  probably has reached you but just to show you one
4  paragraph, it may be easier, my Lady. (Handed.)
5  MRS JUSTICE ANDREWS: That did come this morning, yes.
6  MR GEORGE: So the relevance is the second sentence of
7  paragraph 6:
8       "Furthermore, ARC insisted at the outset of its
9  engagement with Rio Tinto that its sources' identities
10  remained confidential. Rio Tinto accepted it had no ...
11  who are our sources."
12      I appreciate, my Lady, that it's for another court,
13  potentially, as to what, if anything, that would do to
14  clause 16.1 but certainly that's the evidence before
15  this court.
16  MRS JUSTICE ANDREWS: Did they all sign 16.1?
17  MR GEORGE: No, my Lady, I think it's merely a contract by
18  incorporation. There was Rio Tinto's standard terms
19  appear and there is --
20  MRS JUSTICE ANDREWS: It's expressly governed by English
21  law.
22  MR GEORGE: My Lady, ARC didn't have the standard terms at
23  all so clause --
24  MRS JUSTICE ANDREWS: I thought that -- that was my
25  understanding from reading Ms O'Connor, so it may well

Page 61

1       "It is sometimes said that in taking this element
2  into account, ie confidentiality, the court has to
3  perform a balancing process. The metaphor is one well
4  worn in the law but I doubt if it is more than a rough
5  metaphor. Balancing can only take place between
6  commensurables but here the process is to consider
7  fairly the strength and value of the interest in
8  preserving confidentiality and the damage which may be
9  caused by breaking it, then to consider whether the
10  objective to dispose fairly of the case can be achieved
11  without doing so and only, in the last resort, to order
12  discovery, subject, if need be, to protective
13  measures ... more complex process than merely using the
14  scales, it is an exercise in judicial judgment."
15      I merely emphasise, my Lady, that it is not simply
16  evaluating strengths and weaknesses of the
17  confidentiality argument. Once you are satisfied, as
18  I invite my Lady to be, that there is evidence of an
19  express confidentiality promise to each of the
20  associates and sources here, leave aside other factors
21  that relate to that, one does have to tread very
22  carefully about, can the case be disposed of justly
23  without ordering disclosure, and in my submission the
24  evidence simply does not come close to showing a
25  likelihood that any of it is going to be relevant. And

Page 63

1  be that ARC is in a slightly different position from
2  everybody else. I certainly think that there is a very
3  powerful argument that 16.1 puts paid to any obligation
4  of confidentiality as between anyone who signed those
5  terms and Rio Tinto. But if there was an express
6  agreement and the evidence before me is that there was,
7  with ARC, that they keep the sources confidential,
8  that's a different matter.
9  MR GEORGE: I draw that evidence to my Lady's attention.
10      My Lady, may I have a moment to check I have covered
11  the matters on that topic before moving on?
12  MRS JUSTICE ANDREWS: Yes.
13  MR GEORGE: (Pause) My Lady, the only other matter which ...
14  at the risk of trying my Lady's patience, may I just --
15  I have cited -- the classic English authority on the
16  balancing test in this context is that of the House of
17  Lords in Nasse in tab 3 of the authorities bundles. Is
18  my Lady familiar with that or is it worth turning that
19  up?
20  MRS JUSTICE ANDREWS: I'm more familiar with Rio Tinto and
21  Westinghouse. Nasse, I think I had better have a quick
22  look at it.
23  MR GEORGE: Just looking at 1067, letter D, this is the
24  English law, as it were, confidentiality obligations in
25  the context of disclosure:

Page 62

1  certainly, if there was any possibility of it being
2  relevant, no injustice will be done by my Lady ordering
3  at this stage for redactions to be permitted,
4  explanations to be provided, if my Lady thinks it is
5  appropriate, so there can be further testing of them
6  with specific applications in the future, if necessary,
7  about specific individuals, by reference to a specific
8  passage in a report.
9       At the moment -- and I am not going to traverse the
10  contents of the report -- it will be obvious to my Lady
11  from the width of the letter of request, effectively
12  anything that could, as it were, look like it might have
13  had some underlying information, that has been asked
14  about and that is not in my submission, satisfactory or
15  proportionate.
16  MRS JUSTICE ANDREWS: Yes.
17  MR GEORGE: My Lady, those are my submissions on what is by
18  far the most important point. Would my Lady like me to
19  address here on subsidiary matters?
20  MRS JUSTICE ANDREWS: Let's go through the shopping list and
21  see what else you need me to determine. The parties,
22  I think to a large extent, are moving towards some form
23  of common ground in terms of the width of the
24  documentation, or the specificity of the documentation.
25  MR GEORGE: Two have been conceded, there are three

Page 64

Page 65

1   categories which we say still are impermissibly wide by
2   reference to -- my Lady will be familiar with the test
3   of -- each individual document does not have to be
4   described but --
5   MRS JUSTICE ANDREWS: But generically sufficiently clear.
6     It's Lord Justice Moore Bick.
7   MR GEORGE: Perhaps if one just highlights the objected to
8     phrases and my Lady may then be able to determine the
9     matters relatively speedily. Obviously at my Lady's
10    convenience.
11      If one goes to the order itself, which is -- I am
12    back in my favourite blue bundle at tab 3 -- so my Lady,
13    if one just picks up C, you will see:
14      "The bills or invoices, including the timesheets
15    ..."
16      That's all fine:
17      "... or records of activities performed by you ..."
18      It's just that "records of activities" which we say
19    is too wide, in that what it could encompass, in
20    a sense, being any memorandum or evidence of anything
21    done, is A, wide and B, leaves the hypothetical and
22    objective recipient somewhat scratching their head as to
23    how they are supposed to identify, particularly at
24    a remove in time, what does and doesn't --
25   MRS JUSTICE ANDREWS: It's records that are backing up the

Page 66

1     bills or invoices is what's being asked for, isn't it?
2     So records of the activities leading to those charges,
3     I would have thought, is the way to do it.
4   MR GEORGE: That sort of specificity is what we haven't got
5     yet. As it is drafted --
6   MRS JUSTICE ANDREWS: That's clearly what it's aimed at,
7     Mr George, is it's the bills or invoices, including
8     timesheets, well timesheets speaks for themselves, but
9     there may not be timesheets but there would be some kind
10    of back up documentation that is provided in order to
11    generate the bill or the invoice, because in order to be
12    able to compute how much is charged, one would have to
13    have some sort of record of what was done to generate
14    that charge. So I am sure there's a form of wording
15    that could be agreed between you that spells that out in
16    words of one syllable but I think that's what "records
17    of activities" is aimed at.
18   MR GEORGE: If that's right, I don't understand there will
19    be an objection to it being specified in a way we can
20    collate.
21   MRS JUSTICE ANDREWS: So that deals with that one. What is
22    the next one that's controversial?
23   MR GEORGE: E.
24   MRS JUSTICE ANDREWS: E is straightforward, isn't it?
25    That's the group of documents that we have been

Page 67

1     debating, which are the ones which Rio Tinto say we
2     haven't got them any more and Rio Tinto say they haven't
3     got them, but you have to go to the source to find out
4     what else was provided. So it's anything that you
5     provided to Rio Tinto in connection with the reports
6     that you provided to Rio Tinto; in other words, anything
7     that was annexed to them or provided at their request.
8   MR GEORGE: Well, my Lady, this has been suggested --
9     I don't want to push this because my Lady has the
10    point -- perhaps I can take it from my skeleton argument
11    rather than handing up another letter because I have
12    quoted it there.
13   MRS JUSTICE ANDREWS: Yes.
14   MR GEORGE: There's no objection to filling the gaps. We
15    are quite happy to do that. It's really only about the
16    width of what this would require in terms of --
17   MRS JUSTICE ANDREWS: Where in your skeleton, Mr George?
18   MR GEORGE: I'm at paragraph 19.2.
19   MRS JUSTICE ANDREWS: Yes.
20   MR GEORGE: "Documents covered by category would include
21    material such as pitch material ...(Reading to the
22    words)... work that resulted or stems from any of the
23    reports or had correspondence in connection with such
24    work ... itemised bills like time records ... those
25    documents would be responsive."

Page 68

1     So it is very much a catch all of matters material
2     and immaterial, administrative and substantive and
3     whilst I entirely appreciate the importance of
4     practicality, there is also a legal principle here, on
5     the compendious description.
6   MRS JUSTICE ANDREWS: Well compendious description is too
7     generic, you cannot have it is the legal point.
8   MR GEORGE: Also what exactly is being described because
9     this is not a description of a document in any way,
10    shape or form. A document shared with Rio Tinto is
11    a description of something that happened to that
12    document during the course of its life.
13      In my submission that actually falls out with the
14    test entirely. You have to define it and describe it by
15    reference to some innate characteristic of that
16    document.
17   MRS JUSTICE ANDREWS: Is that right? Provided it's a class,
18    it falls within a class, the difficulty is actually
19    finding out -- it is going to put you to a lot of
20    trouble, no doubt, to find out what exactly was passed
21    on, but what they're really getting at is the gaps,
22    I think, and any correspondence passing between the
23    parties in relation to the work that was done.
24   MR GEORGE: My Lady, that is --
25   MRS JUSTICE ANDREWS: Again, it seems to me that that can be

17 (Pages 65 to 68)

1   cured by drilling it down to correspondence generated --
2   correspondence between your client and Rio Tinto
3   concerning the reports, including any correspondence in
4   relation to queries or requests for amplification.  And
5   any documents that were supplied to Rio Tinto, whether
6   or not at their request, relating to the work that was
7   done, that's the subject of the reports.
8   MR GEORGE:  My Lady, yes, I'm grateful.
9   MRS JUSTICE ANDREWS:  So that's really what that is driving
10      at.  It doesn't seem to me that -- you have the bills,
11      invoices, you've got the bank statements, you've got the
12      back up to the bills, the records relating to that, it's
13      really -- I think they're also concerned to find out
14      whether you still have back up records of what you sent
15      to Rio Tinto.
16  MR GEORGE:  My Lady, we entirely see the force in filling
17      the gaps, we entirely accept Rio Tinto's knowledge is
18      relevant and this is merely just about making sure --
19  MRS JUSTICE ANDREWS:  Documents evidencing what was sent to
20      Rio Tinto, correspondence passed on between the parties
21      and anything back up that relates to the reports
22      themselves.
23          So if, in conjunction with the report, there was
24      a paragraph which referred to another document and you
25      sent a copy of that document, and Rio Tinto haven't

Page 69

1   disclosed it but you have a copy, you have to disclose
2   it.
3   MR GEORGE:  Exactly.  It's the width, not the principle, but
4   as my Lady has said, that is something that drafting
5   should be able to -- in the light of this exchange --
6   MRS JUSTICE ANDREWS:  Then there's a third class, I think.
7   MR GEORGE:  I believe it's F.  Let me just check on my page.
8   No, F has been conceded.  I apologise, my Lady.
9   MRS JUSTICE ANDREWS:  You are whingeing about producing bank
10      statements but --
11  MR GEORGE:  No, my Lady, that's been conceded.  Before you
12      encourage my learned friend to give an indication --
13  MRS JUSTICE ANDREWS:  Right.
14  MR GEORGE:  H is the last one "but I understand in
15      correspondence, alternative formulation has been put
16      forward ... "  The reference, just so my Lady has my
17      submissions, does one see paragraph H at the bottom of
18      page 5 of the letter of request?
19  MRS JUSTICE ANDREWS:  Yes.
20  MR GEORGE:  "The documents, including interview memoranda
21      [nothing wrong with that] which you relied on for the
22      finding ... "
23          And, again, we have no problem with interview
24      memoranda, that's a specified description:
25          "... but the documents included which you relied on

Page 70

1   ..."
2       Again, to describe, by reference to something which
3   happened to the documents, which is difficult to verify,
4   difficult, historically, to recreate, we say falls out
5   with the legal test.
6   MRS JUSTICE ANDREWS:  Well, I think again there is a finding
7   that is made in a particular paragraph and what is being
8   asked for is what material, what other raw materials in
9   your possession that led to you to make that finding.
10  I think that's clear enough.  That's a generic
11  description, it's the back up for that finding.
12  MR GEORGE:  Yes my Lady, and there's a formulation that
13      reformulates that --
14  MRS JUSTICE ANDREWS:  I, personally, don't think it's too
15      wide.  I mean it seemed to me that it's quite clear that
16      what that's aimed at is: you have made a finding in this
17      report, we want to see any documents or any information
18      that you have in your possession that led to you to make
19      that finding.
20  MR GEORGE:  It would be in my learned friend's gift as to
21      whether we will rely on the previous formulation but
22      those are the parameters.
23  MRS JUSTICE ANDREWS:  If you want to make it more specific
24      so it helps you --
25  MR GEORGE:  It merely gives us comfort that it will not be

Page 71

1   said at some dates: here -- reliance will be argued
2   upon: "The alternative ... memoranda refers to documents
3   provided to or received from the sources who were
4   interviewed ..."
5   MRS JUSTICE ANDREWS:  The real difficulty is the person
6   asking the question doesn't actually know what the
7   documents are you relied on, and so the only way of
8   giving it a generic description is to do it by reference
9   to the use that was made of them.  I don't see that as
10  falling outside of the general principle provided, that
11  it is clearly pinned to that particular paragraph in
12  your report.
13      So somebody somewhere must know where the source of
14  the finding is to be found, presumably the person who
15  compiled the report.  More difficulties if that person
16  has left you.
17  MR GEORGE:  My Lady, I doubt that will cause a drafting
18      difficulty in due course.
19      Just one more set of categories, specific purely to
20      ARC, so I'm afraid it's the ARC bundle, tab 3.
21  MRS JUSTICE ANDREWS:  Yes.  Remind me which one is the ARC
22      bundle?
23  MR GEORGE:  It's white in mine.
24  MRS JUSTICE ANDREWS:  I am just going to put the blue one
25      away for the time being, before I rain my papers on the

Page 72

18 (Pages 69 to 72)

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

| | |
|---|---|
| 1 associate or the court clerk. | 1 documents in relation to this had been collected by |
| 2 MR GEORGE: I am sure she will enjoy handing them back to | 2 Ms O'Connor and were therefore not in issue effectively. |
| 3 counsel at the end of the hearing. | 3 Because under the principle of Lee and Angus (?) , if |
| 4 MRS JUSTICE ANDREWS: Something is going to be said about | 4 you have actually collected the documents, you cannot |
| 5 costs, yes. The ARC bundle is ... I don't know which is | 5 then say they are too hard to find. |
| 6 the ARC bundle. | 6 MRS JUSTICE ANDREWS: It's not a question of saying they are |
| 7 MR GEORGE: It has Sheridans on my spine and probably on | 7 too hard to find, it's saying they are too generically |
| 8 yours, my Lady. | 8 wide to describe, but I must admit it's a little |
| 9 MRS JUSTICE ANDREWS: I have a Sheridans bundle here, yes. | 9 difficult to say: we don't know what documents we're |
| 10 MR GEORGE: So it's the letter of request, schedule A, which | 10 supposed to collect, if they have already collected |
| 11 is the documents. Three, what in my submission are | 11 them. |
| 12 fairly described as catch alls that we object to. | 12 MS COCKERILL: If the policy underlying the test, which is |
| 13 So J -- | 13 that the witness must not be in any doubt as to what he |
| 14 MRS JUSTICE ANDREWS: Actually, I still don't have the | 14 is going to do, he must be tearing his hair out, if that |
| 15 Sheridans bundle. (Pause) I am sorry about this | 15 is the policy underlying the test, then once you have |
| 16 Mr George, I do not have the Sheridans bundle. I have | 16 a witness who says: well I have the documents, they |
| 17 everything but. I have a lot of loose files but I don't | 17 cannot be allowed to say: well I have the documents, |
| 18 actually have that bundle. | 18 we're not going to show you, because I think it's |
| 19 MR GEORGE: May I hand up a relatively clean copy. It's | 19 particularly wrong. |
| 20 clean on the relevant pages, as it were, I do not think | 20 MRS JUSTICE ANDREWS: Mr George, I think we need to go back |
| 21 there's anything controversial on it. (Handed.) | 21 and find out whether or not these documents have been |
| 22 MRS JUSTICE ANDREWS: Thank you, yes. | 22 collated. If they have been collated, I think you are |
| 23 MR GEORGE: J, my Lady sees: | 23 obliged to produce them. |
| 24 "Any other documents providing a basis for or | 24 Submissions by MR GEORGE |
| 25 concerning your findings are set forth in your report." | 25 MR GEORGE: My Lady, I would not accept that and there is |
| Page 73 | Page 75 |

| | |
|---|---|
| 1 We say that is too generic and indeed the very | 1 a debate one could have on that 19th century first |
| 2 formulation "any other" and -- I apologise, my Lady, as | 2 instance authority and indeed there's a relevant passage |
| 3 it has been conceded as Mr Hirst reminds me, then I do | 3 about it in my learned friend's book but may I take |
| 4 not dwell upon that one. | 4 instructions about that before I go down that ... |
| 5 MRS JUSTICE ANDREWS: Right. | 5 MRS JUSTICE ANDREWS: It may well be the pragmatic solution |
| 6 MR GEORGE: Q I think is still in play. There's only two to | 6 is to hand over what you have collated and to rule that |
| 7 go, I will just identify them for my Lady. The | 7 that's all you have to hand over. |
| 8 documents concerning or relating to any other real | 8 MR GEORGE: Precisely. Let me take instructions over the |
| 9 estate owned directly or indirectly by Mr Thiam. | 9 short adjournment before I go down that interesting but |
| 10 And Y: | 10 possibly not material digression. |
| 11 "Any other documents reviewed, received or prepared | 11 So, my Lady, I am extremely grateful. The only |
| 12 in connection with the reports, including the | 12 other issue on my shopping list is the slightly |
| 13 documents --" | 13 different position of Begbies. Begbies have a witness |
| 14 MRS JUSTICE ANDREWS: Y falls -- | 14 who was ordered for cross-examination -- |
| 15 MR GEORGE: Y is not pursued either, I'm grateful. | 15 MRS JUSTICE ANDREWS: Who is going to be sitting there |
| 16 MRS JUSTICE ANDREWS: What's the problem with Q, it's too | 16 saying "I don't know, I don't know". Well it will be |
| 17 wide, anything to do with any real estate. | 17 a very short cross-examination. |
| 18 MR GEORGE: Precisely, my Lady. | 18 MR GEORGE: If I just hand up one letter, just so you have |
| 19 MRS JUSTICE ANDREWS: It does seem a bit wide. | 19 the complete correspondence. This was, until 4 o'clock |
| 20 Ms Cockerill, what about Q? | 20 yesterday or whenever we received my learned friend's |
| 21 Submissions by MS COCKERILL | 21 skeleton argument, (Handed), where the correspondence |
| 22 MS COCKERILL: Well my Lady -- | 22 rested. |
| 23 MRS JUSTICE ANDREWS: Is there any way we can make it more | 23 The second paragraph: |
| 24 specific, what is that actually driving at? | 24 "We write to inform you that we will consent to your |
| 25 MS COCKERILL: I have to say, my Lady, I had understood that | 25 application ... as against Mr John Humphrey on the |
| Page 74 | Page 76 |

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                              London EC4A 2DY

1  agreed basis there will be no ...(Reading to the
2  words)... to this effect."
3      Now I accept it appears from my learned friend's
4  skeleton argument that she does want to cross-examine
5  him but what has happened is that the basis for the
6  cross-examination has now changed.  What the American
7  court requested this court to ask Mr Humphrey to be
8  cross-examined about was issues relevant to the
9  proceedings and even if my learned friend wanted this
10  formulation, that does not include: what can you tell us
11  about the administrative resources of your company?
12      Insofar as the purpose of the cross-examination is
13  to ask him where documents are, ie questions which might
14  lead to the discoverability of other discoverable
15  documents --
16  MRS JUSTICE ANDREWS:  You are back into Westinghouse.
17  MR GEORGE:  -- we are back into British Westinghouse.  So
18  whilst this deal may not have been done, so my learned
19  friend may be entitled to ask for Mr Humphrey to turn
20  up, he should not be ordered to do so, it is not
21  a proper basis anymore, for him to be ordered to do so
22  and I have set out in my skeleton argument the
23  uncontroversial position at paragraph 18.5:
24      "It must be shown that the proposed witness who is
25  to give oral evidence has relevant evidence to give."

Page 77

1      Now as far as the document order is concerned
2  against Begbies, a point is taken in my learned friend's
3  skeleton argument that although we have produced a nil
4  return, there is a further word search we should do
5  because there may have been a slightly --
6  MRS JUSTICE ANDREWS:  A different project name, yes.
7  MR GEORGE:  I am instructed we are content to do the
8  search -- I think it's Blackbird and Raven or something
9  like that.  So we don't press for discharge today.
10  Begbies obviously adopt all the other submissions in
11  relation to ARC and Livingstone on all of the other
12  points we have debated but we will, as it were, do that
13  search --
14  MRS JUSTICE ANDREWS:  I think a form of words can be put
15  into the court order which requires you to carry out
16  a word search under other keywords, which can be agreed,
17  and if that turns up nothing, so be it.
18  MR GEORGE:  Precisely.
19  MRS JUSTICE ANDREWS:  If it turns up something that's
20  relevant, you will give it.
21  MR GEORGE:  We are content to do that but we do press for
22  the order against Mr Humphrey to attend for cross
23  because there is no proper basis for it.  We have, I am
24  reminded, identified -- they no longer work for us but
25  the relevant people who would know something, Vale can

Page 78

1  trouble them, as it were.
2      My Lady, unless I can assist you further, those were
3  my items.
4  MRS JUSTICE ANDREWS:  Right.  Thank you very much, Mr George
5  Ms Cockerill?
6      Submissions by MS COCKERILL
7  MS COCKERILL:  My Lady, would it be sensible if I just tied
8  up these request points first?
9      I think we are more or less there in relation to C
10  and E, the ones which you discussed a rewording with my
11  learned friend, so I probably don't need to address you
12  on that.  We have also discussed the position as regards
13  Ms O'Connor's statement that she's gathered materials.
14      So what we are really left with, I think, unless
15  your Ladyship had any further questions, is Mr Humphrey
16  and BGT.
17      In relation to Mr Humphrey, the position is
18  this: for each of the witnesses, what you have
19  effectively got is a dual letter of request.
20  Your Ladyship will of course be aware that the letter of
21  request to produce documents is akin to the old subpoena
22  ducestecum, and the old subpoena ducestecum the
23  documents didn't come by themselves, they came attached
24  to a witness.  So for each set of documents you do,
25  effectively, have to tender somebody and there is

Page 79

1  a right to ask them questions in relation to just -- the
2  documents which turn up, effectively, whether it's
3  verifying that they're true copies or whatever.
4      So that is a relevance which goes to all the
5  witnesses who are the correct person to bring the
6  documents.  Now, Mr Humphrey, whether or not he is
7  a person who can give relevant evidence in the sense of
8  a letter of request for oral evidence, is the relevant
9  person for the documents.
10      So while it is correct that insofar as he is sought
11  to be compelled to give witness evidence in relation to
12  the underlying issues, that's the letter of request for
13  oral evidence, we don't pursue that.
14      We do say that it is right that he turn up to deal
15  with any issues that arise on the documents.  That is
16  particularly the case where you have a situation with
17  Begbies, where they are saying that they don't have to
18  produce anything else.
19      In relation to that, I shall just put down a marker.
20  My learned friend says: well you know, we see the point
21  on Project Raven so we are prepared to search for
22  Project Blackbird as well, that being the name that was
23  mentioned in the other document.  That's not enough,
24  obviously, just searching for the Project Raven and
25  Project Blackbird does not necessarily answer the

Page 80

DTI Global                    www.dtiglobal.com           8th Floor, 165 Fleet Street
(+44) 207 404 1400                                        London EC4A 2DY

1  requests which it has been agreed are relevant for
2  documents which should be produced.
3  MRS JUSTICE ANDREWS:  Well they have to carry out a search
4  in relation to documents that were generated, falling
5  within the categories, that would have given rise to the
6  reports.
7  MS COCKERILL:  Yes.  They have to do the search --
8  MRS JUSTICE ANDREWS:  They will know what they called this
9  project internally.  You make the point that it may have
10  been referred to as Project Raven in correspondence with
11  Rio Tinto and it may have been called something else for
12  internal purposes.  Provided that they carry out
13  a search in relation to the names which they know that
14  they used for it, then that's going to be good enough,
15  isn't it?
16  MS COCKERILL:  Well I think, my Lady, they ought to at least
17  think about it, for this reason: your Ladyship is
18  probably aware that in relation to these sorts of
19  things, it's not necessarily the case that you get
20  a project name straight away, so you might have a period
21  of time where something is not called project anything,
22  so you might have to look by reference to, you know, Rio
23  Tinto Guinea.
24    Likewise, your Ladyship will know that very often in
25  the course of these kinds of investigations like in the

Page 81

1  if you are dissatisfied with the disclosure and you want
2  to ask him what steps he's taken or if the agreed steps
3  haven't been taken, you want to interrogate him about
4  that, I can't see how the court can stop him.
5    But what I am not prepared to do, Ms Cockerill, is
6  to allow a British Westinghouse-type enquiry in by the
7  back door.  You can't get it by the front door, you are
8  certainly not going to get it by the back.
9  MS COCKERILL:  That is not the intention, my Lady.  The
10  maintenance of Mr Humphrey is very much with an eye to
11  at the moment, BGTSA (?), we have three documents,
12  that's it.  If Mr Humphrey is going to send along those
13  three documents and say that's the universe of what they
14  can produce, then you know, I think I would be entitled
15  to ask some questions about that.
16  MRS JUSTICE ANDREWS:  Well it's a shame, actually, that
17  letters of request are so hidebound in terms of
18  procedure that you have actually got to go through the
19  motions of a live witness turning up, instead of
20  somebody swearing an affidavit or a statement or putting
21  a statement of truth on a disclosure list.  Is there no
22  way we can cut things down by doing that?
23    What's going through my mind is that one -- of
24  course accedes to the letter of request by providing
25  that a proportionate search is carried out, disclosure

Page 83

1  course of litigation, you may send an email which
2  doesn't have the case name or the project name but
3  simply the witness name or the document name.
4    So a search which simply goes by reference to the
5  project names is not necessarily going to be adequate.
6  MRS JUSTICE ANDREWS:  Can't the parties agree on keywords to
7  put in a search in the ordinary way that you would in
8  disclosure?
9  MS COCKERILL:  Well I see no reason why not, I am just
10  putting down the marker that Project Blackbird isn't the
11  be all and end all.
12  MRS JUSTICE ANDREWS:  I can see that it may be incumbent on
13  Mr Humphrey to carry out more specific electronic
14  search, or search and it seems to me the sensible way to
15  deal with that is for the parties to agree the keywords
16  and the matter to be proceeded with on the basis as if
17  one was carrying out electronic disclosure here.
18    Of course bearing in mind that that might then end
19  up with thousands of hits every time you put in the word
20  "Rio Tinto", which is problematic.
21  MS COCKERILL:  Yes.
22  MRS JUSTICE ANDREWS:  So you have to think of something
23  sensible that's not going to unduly burden the party
24  that has to carry out the search.
25    As to Mr Humphrey being asked questions, of course

Page 82

1  is carried out.  You are not at the moment satisfied,
2  I understand why.  You get a keyword search, the witness
3  who conducts it or causes it to be carried out then
4  verifies the search by means of a properly attested
5  statement or a list.  Why does he then have to turn up
6  and be cross-examined?
7  MS COCKERILL:  In many cases, I can see the force in that,
8  my Lady.  Sadly, one is hidebound by the process.  Also
9  in this case, I think one of the funny aspects of the
10  BGT saga is your Ladyship may recall seeing in the
11  skeleton arguments that one of the things BGT says is
12  they have so little because RTZ told them to destroy
13  documents and they did so.
14    Now, Mr Humphrey being the person who is basically
15  charged with the documents --
16  MRS JUSTICE ANDREWS:  Do you know under whose watch the
17  destruction took place?
18  MS COCKERILL:  Well we are told in correspondence that this
19  happened under the watch of somebody else.  But I think
20  the US court may want to have chapter and verse on that
21  because it's obviously a very significant matter.
22    Now it may be that Mr Humphrey can only say "The
23  best that I can tell you is that this is what I've been
24  told."  But it is a matter which is obviously very
25  serious and which I think we would say is best dealt

Page 84

21 (Pages 81 to 84)

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

1    with, if necessary, by you know, Mr Humphrey answering
2       a couple of questions.
3    MRS JUSTICE ANDREWS:  What is the ambit of the interrogation
4       of Mr Humphrey that you want to pursue then?  You want
5       to ask him purely questions relating to what steps have
6       been taken to carry out searches for the documents and
7       why it is that he's unable to produce documents that no
8       longer exist in the possession of the firm.  Is that it?
9    MS COCKERILL:  Yes, and his best information as to what
10      happened to those documents.  It may be that that --
11   MRS JUSTICE ANDREWS:  Let's pause there and see what
12      Mr George says about that.
13          Submissions by MR GEORGE
14   MR GEORGE:  My Lady, there is absolutely nothing that
15      Mr Humphrey will be able to add to paragraphs 9 and 10
16      of his second witness statement.  Has my Lady seen that?
17   MRS JUSTICE ANDREWS:  I probably have.
18   MR GEORGE:  May I just remind my Lady of it.
19   MRS JUSTICE ANDREWS:  Which of the many bundles am I now
20      dealing with?
21   MR GEORGE:  Let me hand up the page.
22   MRS JUSTICE ANDREWS:  I have seen it.  Read it out to me,
23      Mr George, it's easier.
24   MR GEORGE:  It's coming up --
25   MRS JUSTICE ANDREWS:  I have it, I have it.

Page 85

1    US court?
2    MR GEORGE:  My Lady, we would have no objection to -- those
3       paragraphs, as it were, perhaps being -- maybe the whole
4       witness statement is probably relevant.  Certainly 9 and
5       10 and indeed such a witness statement, leave aside the
6       hidebound point, it would clearly be sensible if this
7       was the type of witness statement that simply was to be
8       produced once the further word searches have been
9       carried out, explaining what the word searches are,
10      attaching any new documents that have been found,
11      reiterating paragraphs 9 and 10 but not -- and
12      Mr Humphrey is, and I make this note very lightly, but
13      he is the Group General Legal Counsel, a very
14      significant and senior individual.  To, as it were,
15      require him to physically turn up and face questions
16      about which he will be able to give no assistance to
17      anyone is surprising for the courts --
18   MRS JUSTICE ANDREWS:  The only thing he is going to be able
19      to give any assistance on is, it seems to me, the extent
20      to which the searches were carried out.
21   MR GEORGE:  Which is subsequently in the future but assuming
22      he puts in a witness statement saying what they are --
23      there's obviously no reason to doubt they've been done,
24      they'll have turned up what they turned up.  If further
25      word searches are wanted, as my Lady has said, it's

Page 87

1    MR GEORGE:  "Since my first statement ...(Reading to the
2       words)...  Mr Brown has confirmed to me ... to destroy
3       all supporting and source documentation ... Mr Brown
4       confirmed his recollection as he complied with
5       ...(Reading to the words)... on the files.  Such a
6       standard practice would be to retain files ... for
7       a period of six and a half years unless instructed
8       otherwise.  Our solicitors approached Mr Brown and
9       Mr Leighton, requested they provide a witness statement
10      in these proceedings, setting out their recollection of
11      events, leading to the production of reports and the
12      destruction of documents.  Neither was willing to
13      assist.
14          We have suggested -- we don't know.  It is clearly
15      within the well resourced party of Vale's capability to
16      go and find Mr Brown and Mr Leighton and obtain this
17      information but there is nothing Mr Humphrey can provide
18      beyond that.  He has taken all such enquiries he was
19      able to.  It doubtless came as a surprise to him to find
20      that the matters that occurred at paragraph 9 have
21      occurred, but he has no basis on which to obtain any
22      further information and that's all he could say if asked
23      in cross-examination.
24   MRS JUSTICE ANDREWS:  What is the status of his witness
25      statement?  Can that be used, can that be put before the

Page 86

1    clearly sensible to say in correspondence what they want
2       rather than waiting until he turns up and asks him what
3       they were.  There is no value in the cross-examination.
4       There is value in the production of a witness statement
5       like this that stands, effectively, as a disclosure
6       report would in modern litigation, explaining what has
7       been done.  There is nothing he can say about Mr Brown
8       and Mr Leighton and as far as we know -- they clearly
9       still exist because he has spoken to them and Vale
10      can -- I am not encouraging them to do this, it's
11      entirely a matter for them but if they want this
12      information, it's to Mr Brown and Mr Leighton and not
13      Mr Humphrey they should be looking and for those
14      reasons, I invite my Lady not to order Mr Humphrey to
15      attend, although obviously, we're happy to produce a
16      report of this type and a statement of this type,
17      confirming what's been done, in due course.
18          Submissions by MS COCKERILL
19   MS COCKERILL:  My Lady, the position is that Mr Humphrey is
20      the company secretary of Begbies trading group, he is
21      the person within Begbies who is involved with dealing
22      with formal governance and compliance levels, as well as
23      the document management.  It appears he was actually in
24      that position at the time this documentation destruction
25      was alleged to have taken place, so not only can he deal

Page 88

22 (Pages 85 to 88)

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

| | |
|---|---|
| 1   with the question of how they have turned up the | 1   a High Court, and my submission is that in -- |
| 2   documents they have turned up now but he can deal with | 2   MRS JUSTICE ANDREWS:  The examiner has been appointed so one |
| 3   what his knowledge was in relation to the destruction of | 3   of us cannot sit.  That is right, isn't it?  I think |
| 4   the documents and how such documents came to be | 4   a QC has already been appointed. |
| 5   destroyed, if they did come to be destroyed, without | 5   MR GEORGE:  Adrian Hughes, I believe, my Lady. |
| 6   that coming to his attention, if he says that that is | 6   MS COCKERILL:  An examiner has been appointed but that could |
| 7   the case.  It is a very serious matter, you will | 7   be amended as part of the order if your Ladyship saw |
| 8   obviously appreciate, that documents are destroyed in | 8   fit.  It's entirely a matter for your Ladyship which |
| 9   relation to an issue which is potentially a serious | 9   route you choose to go down but I would suggest that |
| 10   matter before the US courts. | 10   given the nature of the issues which might arise, it is |
| 11      We all know that the firms these days do have | 11   a practical and sensible approach to deal with the |
| 12   document maintenance policies and if that document | 12   possibility of hostile witness applications.  Otherwise |
| 13   maintenance policy is overwritten, that's something | 13   parties have to come back to court, it wastes time -- |
| 14   which probably ought to have come to his attention but | 14   MRS JUSTICE ANDREWS:  The court has the power, does it, to |
| 15   certainly my clients do want to talk to him not just | 15   confer upon an examiner the ability to rule whether |
| 16   about what documents turn up but about this destruction | 16   a witness is hostile?  Where does that come from? |
| 17   of documents. | 17   MS COCKERILL:  Your Ladyship asks, naturally, a very good |
| 18      The normal situation would be on a subpoena | 18   question.  On the occasions when I think an examiner has |
| 19   ducestecum, witness summons to produce documents, that | 19   been given that power, as far as I know it has been done |
| 20   a witness would turn up to deal with that sort of issue | 20   with the consent of the parties.  Otherwise, the people |
| 21   and there is no reason why that normal situation should | 21   who have the power to rule are essentially masters and |
| 22   be put into abeyance here. | 22   judges, and frequently one finds that examiners are not |
| 23   MRS JUSTICE ANDREWS:  I will think about Mr Humphrey. | 23   terribly keen on doing the ruling, which is why -- |
| 24   MS COCKERILL:  I am grateful, my Lady.  While I am on the | 24   MRS JUSTICE ANDREWS:  It's a terrible burden on somebody. |
| 25   subject of Mr Humphrey, BGT and so forth, is it just | 25   MS COCKERILL:  If you have this sort of situation, the court |
| Page 89 | Page 91 |

| | |
|---|---|
| 1   worth my picking up the final point in my skeleton about | 1   tends to prefer to give it to a master or judge. |
| 2   the form of the order? | 2   MRS JUSTICE ANDREWS:  It's looking like it's going to have |
| 3   MR GEORGE:  My Lady, I apologise, I did have something to | 3   to be a master, isn't it, but I will see what Mr George |
| 4   say on the hostile witness point but my learned friend | 4   has to say. |
| 5   may well be addressing the same authorities because my | 5   MR GEORGE:  Again, I can take instructions over the short |
| 6   knowledge came from her book. | 6   adjournment about how much we wish to press this point |
| 7   MRS JUSTICE ANDREWS:  Yes, the form of the order. | 7   but certainly in our submission there is no evidence |
| 8   MS COCKERILL:  What I have suggested, my Lady, is to the | 8   before this court which could justify that this should |
| 9   extent that there is a history, and I will be coming | 9   be the first occasion in however many hundreds of years |
| 10   back to this, of getting these documents being | 10   it is, as the review in the relevant section of my |
| 11   troublesome and also in this case, BGT saying documents | 11   learned friend's book, should justify this court on this |
| 12   have been destroyed and so forth, there is a possibility | 12   occasion to assume, if it has the power at all, to |
| 13   that questions of a hostile nature may be needed to be | 13   exercise it, to give the power to treat a witness as |
| 14   asked to these witnesses. | 14   hostile. |
| 15      Now your Ladyship will appreciate that treating | 15   MRS JUSTICE ANDREWS:  On the other hand this is one of these |
| 16   a witness as hostile in an examination is not entirely | 16   cases where I have this horrible view that at some point |
| 17   a straightforward matter because the examiner has no | 17   in the course of the examination, somebody might say the |
| 18   power to rule on that in the usual way. | 18   witness, rightly or wrongly, is behaving as a hostile |
| 19      So where it is a case where a possibility of | 19   witness and want to have the opportunity -- of course it |
| 20   a ruling as a hostile witness floats onto the horizon, | 20   will be their own witness, would it not, because |
| 21   it is possible, and Senior Master Whitaker sometimes | 21   a hostile witness is where you call the witness -- |
| 22   used to make an order either for a master or a judge to | 22   MR GEORGE:  And you are bound. |
| 23   sit as the examiner, so that they could then rule or to | 23   MRS JUSTICE ANDREWS:  I am just wondering how it arises in |
| 24   put in something into the order to say the examiner | 24   this context because the witness is being called to be |
| 25   should have power to rule as if they were a master of | 25   examined but they're normally being cross-examined, |
| Page 90 | Page 92 |

23 (Pages 89 to 92)

1    aren't they?  But wouldn't they be cross-examined by
2    Vale or is Vale going to be actually asking them
3    non-leading questions?
4    MR GEORGE:  Apparently examination-in-chief is required.
5    MRS JUSTICE ANDREWS:  So the question is whether or not they
6    would be able to cross-examine them.  It seems to me
7    it's obviously sensible that whoever conducts this
8    examination to have the power to rule on such an
9    application, if it occurs, because if they don't,
10   everybody is going to be back in court, the judge or the
11   master is then going to have to make a ruling when he
12   hasn't actually seen the witness, which is nonsense
13   because the only person who can really evaluate what
14   someone's behaviour is like is the person who's actually
15   conducting the examination.  So I think the answer to
16   this is to modify the order to direct the examination be
17   carried out before a master.
18   MR GEORGE:  My Lady, let me take instructions over the short
19   adjournment as to whether we need to press you on that
20   or whether we are willing to consent to the powers to be
21   conferred on Mr Hughes, and I'll take instructions.
22   MRS JUSTICE ANDREWS:  It's one or the other, I think.
23   MS COCKERILL:  If your Ladyship is minded to go down that
24   route, I do have a form of order that has been used in
25   the fairly recent past.

Page 93

1    whether something was an orange flag or a red flag and
2    so it's really a question of what they had the right to
3    ask, and if they didn't follow up certain red flags,
4    orange flags, yellow flags, whatever, does that tip
5    into, as a matter of New York law, a lack of due
6    diligence for the purposes of equitable tolling.
7       It also links up with a point we have made in
8    Mr Kelly's witness statement.  Of course if these firms
9    are providing litigation support, you expect this sort
10   of material, either to be available or to be made
11   available.
12      So that's --
13   MRS JUSTICE ANDREWS:  It's what they could have found out if
14   they'd asked questions at the relevant time but with the
15   underlining at the relevant time because Mr George, it
16   seems to me, has a fair point about the dates of all of
17   these reports.
18   MS COCKERILL:  That's the other point I want to deal with.
19   I will finish off this and deal with that.
20   MRS JUSTICE ANDREWS:  You say it's not just knowledge, but
21   it's what they might have asked and might have found out
22   if they hadn't?
23   MS COCKERILL:  Yes, and of course, they get something in a
24   report and they don't particularly like the look of it
25   and so they don't follow it up, whereas you know, it's

Page 95

1    MRS JUSTICE ANDREWS:  Alright, Ms Cockerill, my view is it
2    is preferable that the power should exist.  If there's
3    any doubt as to whether or not the examiner will have
4    that power, it's going before a master.
5    MS COCKERILL:  I am grateful, my Lady.
6    MRS JUSTICE ANDREWS:  That brings us back to the
7    confidentiality, does it not?
8    MS COCKERILL:  It does, it does indeed.  Now, I think that
9    there are a couple of points which I should probably
10   deal with first before I go back to the beginning of my
11   submissions, as they are --
12   MRS JUSTICE ANDREWS:  Why don't you deal with those before
13   lunch.
14   MS COCKERILL:  Then I can see how --
15   MRS JUSTICE ANDREWS:  Reformulate the way in which you want
16   to put it, in the light of the discussions this morning.
17   MS COCKERILL:  Yes.  The two points that I really wanted to
18   deal with, with you before lunch, were firstly this
19   question of the relevance of Rio Tinto's knowledge and
20   I think when we started this morning, your Ladyship was
21   saying surely what matters is what Rio Tinto knew.
22   MRS JUSTICE ANDREWS:  I think I will modify that, knew or
23   could have found out at the time.
24   MS COCKERILL:  Yes.  Your Ladyship talked about red or
25   orange flags and of course one of the issues will be

Page 94

1    something which is important.
2       There's one other point which is highly significant
3    in this regard, and I think also tips over into the
4    timing point.  I am instructed that, as a matter of
5    New York law, it's not simply RTZ's knowledge -- sorry,
6    I mustn't say RTZ -- RT's knowledge that matters, for
7    the purposes of equitable tolling.  The firm's
8    knowledge, the investigative firm's knowledge is imputed
9    to RT for the purposes of that argument.
10   MRS JUSTICE ANDREWS:  On a sort of imputed agency basis?
11   MS COCKERILL:  I believe so.  So that's the first point
12   I wanted to deal with.
13      The second point was this time period argument which
14   I entirely understand your Ladyship's initial reaction,
15   it does look a bit odd.
16      But of course your Ladyship has to bear in mind that
17   when you look at the reports, the actual reports that
18   have been disclosed go over the whole period, so you
19   have there to start off with a powerful indication that
20   so far as the New York court is concerned, the entire
21   period matters.  The reason why it matters, I am going
22   to try and explain.
23      We do not accept, and I am firmly instructed by
24   those who are sitting behind me in New York, that as
25   a matter of New York law, post 2010 reports are

Page 96

| | |
|---|---|
| 1  relevant. They are relevant, for example, to the | 1  introduced -- |
| 2  question of whether the investigation was frustrated by | 2  MRS JUSTICE ANDREWS: It sound like a bad point anyway. |
| 3  fraudulent concealment. So if the investigators were | 3  MR GEORGE: I am glad. |
| 4  able to get information after April 2010 and before the | 4  MS COCKERILL: In my defence, I would say this. The point |
| 5  announcement of -- | 5  about the timing of the reports is one which certainly |
| 6  MRS JUSTICE ANDREWS: Slow down, slow down. Whether the | 6  first came to my attention in my learned friend's |
| 7  investigation was frustrated by fraudulent concealment? | 7  skeleton yesterday afternoon but your Ladyship should |
| 8  MS COCKERILL: Yes. | 8  understand that we do not accept that this timing point |
| 9  MRS JUSTICE ANDREWS: Which is, of course, Rio Tinto's | 9  is a good one -- |
| 10  point. | 10  MRS JUSTICE ANDREWS: The thing about the timing point it |
| 11  MS COCKERILL: Yes. | 11  seems to me, as I said to Mr George, is that there is an |
| 12  MRS JUSTICE ANDREWS: Yes. | 12  element of water under the bridge about it. The |
| 13  MS COCKERILL: So if they were able to get information sort | 13  New York court has issued letters of request, rightly or |
| 14  of in the early phase after April 2010, then it would -- | 14  wrongly, that relate to the reports which you have, and |
| 15  not the late phase after 2010, the early phase -- then | 15  those include reports which postdate April 2010. |
| 16  it would appear they weren't frustrated by fraudulent | 16  I can't rewrite the letters of request. I have |
| 17  concealment. | 17  a discretion in relation to categories, as to whether |
| 18  Secondly, if they discovered certain things | 18  they are to be disallowed for reasons of lack of |
| 19  after April 2010, then an inference may arise that the | 19  specificity or for reasons of public policy or something |
| 20  investigator could have obtained that particular | 20  along that nature and I won't allow a Westinghouse-type |
| 21  information prior to April 2010. | 21  fishing expedition. |
| 22  They only didn't because RT or its agents didn't ask | 22  But apart from that, it doesn't seem to me that it's |
| 23  them to look for it. | 23  now possible for me to rewrite history and say you |
| 24  Thirdly, information which was actually reported | 24  cannot have the documents which the New York court has |
| 25  after April 2010 may have been discovered before. | 25  requested because they relate to events after |
| Page 97 | Page 99 |

| | |
|---|---|
| 1  Fourthly, there is apparently law in New York that | 1  2 April 2010. |
| 2  Rio Tinto can't invoke the statute of limitations if | 2  So whether it's strictly relevant or not, I am not |
| 3  they didn't bring their claim as soon as possible after | 3  sure really adds very much to the general thrust of it. |
| 4  they knew of the claim, even if they had been able to | 4  It's been done. |
| 5  suspend the limitation period earlier. So discovery -- | 5  MS COCKERILL: Well I obviously agree with your Ladyship but |
| 6  MRS JUSTICE ANDREWS: Similar to section 32. | 6  for the reasons that I have given, the reasons why the |
| 7  MS COCKERILL: It is. | 7  later reports are in evidence in the States and the |
| 8  MRS JUSTICE ANDREWS: So the equitable tolling runs out at | 8  letter of request was phrased around them and requests |
| 9  the point at which you could reasonably have brought the | 9  were made in relation to the later report, is as |
| 10  claim, notwithstanding any concealment at an earlier | 10  a matter of New York law relevance and that's why the |
| 11  stage. So the date when they actually found out that | 11  New York judge asked. |
| 12  they had enough is pertinent and the date when they | 12  MRS JUSTICE ANDREWS: I can see the point about getting |
| 13  actually found out, might well be after 2010. But that | 13  information in the early days and whether that goes to |
| 14  would still bring them within the limitation period, | 14  the question of frustration. As to whether or not one |
| 15  surely? | 15  can draw inferences as to whether or not the information |
| 16  MS COCKERILL: Well I am told that it affects their ability | 16  could have been obtained earlier, that seems to me to be |
| 17  to rely on the statute of limitations if they didn't act | 17  an entirely circular argument because one is simply |
| 18  as quickly as possible after they discovered. So if you | 18  speculating as to what they would have got if they'd |
| 19  then -- yes. | 19  been asked. |
| 20  MRS JUSTICE ANDREWS: I don't follow that at all. | 20  The first thing you have to do is find out whether |
| 21  MR GEORGE: My Lady, I hesitate to interrupt. There's reams | 21  the question has been asked. If the question wasn't |
| 22  of evidence before this court and this is the first | 22  asked, then you have to look at what information was |
| 23  time, as I understand it, that this point has been | 23  available at the time and not what they get at a later |
| 24  taken. We have had no opportunity to consider its | 24  stage. |
| 25  voracity or validity and it should not be allowed to be | 25  But anyway, it's an interesting point, Ms Cockerill, |
| Page 98 | Page 100 |

DTI Global                     www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                            London EC4A 2DY

1  but I think that as far as this application is
2  concerned, I am not going to start truncating the
3  timescale because the letter of request already says it
4  covers the whole period.  Rightly or wrongly.
5  MS COCKERILL:  I am grateful for that indication, my Lady.
6  So those were the two points I wanted to address before
7  you before lunch.
8  MRS JUSTICE ANDREWS:  I think we will break there then if
9  that's a convenient moment and resume at 2.  I was going
10 to ask both of you, what do you want from me in terms of
11 a ruling?  Do you want something formal handed down or
12 do you want me just to tell you what I think the answer
13 should be at the close of submissions and then go away
14 and write up the order?
15 MR GEORGE:  May I take instructions from my three clients
16 over the short adjournment?
17 MRS JUSTICE ANDREWS:  Tell me at 2 o'clock.
18 (12.54 pm)
19         (The short adjournment)
20 (2.00 pm)
21 MRS JUSTICE ANDREWS:  Ms Cockerill, I have an apology to
22 make to the shorthand writers.  I didn't realise there
23 was only one person and I would normally have had
24 a break.  At an appropriate moment, if we are still
25 going, I will have a break for her.  I'm really sorry.

Page 101

1  MS COCKERILL:  Thank you, my Lady.  Just before we broke for
2  the short adjournment, you asked the parties to consider
3  how we would like to proceed in terms of judgment, order
4  or whatever.
5      For our part, we would be keen to pursue the course
6  that results in the speediest determination to an order.
7  So if that is by way of relatively informal judgment and
8  your sketching out with us this afternoon exactly where
9  the order goes, we would, for our part, be content with
10 that.  I don't know if my learned friend has anything to
11 say.
12 MRS JUSTICE ANDREWS:  Mr George?
13 MR GEORGE:  My Lady, for our part, and you will appreciate
14 the submissions I've made on the importance to the
15 industry and the clients.  If my Lady were minded to
16 order at this time, disclosure of the identity of
17 sources, we would ask for a formal judgment so that
18 could be considered by my clients.
19      To the extent that my Lady is minded to -- there are
20 a range of options that have been set out between the
21 parties but require some other form of relief at this
22 stage.  For example, ordering us to provide descriptions
23 that don't reveal the identity as has been mooted.  We
24 would be more than content for my Lady to indicate that
25 today so that we can move on and implement it but if it

Page 102

1  is to have the actual disclosure of the identity, we
2  would ask for obvious reasons, for --
3  MRS JUSTICE ANDREWS:  Alright, well I see where both parties
4  are, thank you.
5  MS COCKERILL:  It may be, my Lady, that we could rough out
6  an order today, with your Ladyship handing down a formal
7  judgment at a later stage, if that were the way to
8  approach it.
9  MRS JUSTICE ANDREWS:  If I were to go down the course that
10 Mr George would want a reserved judgment on, that's the
11 only way that we would be able to deal with it, I think.
12 MS COCKERILL:  I am grateful.  Unless your Ladyship has
13 anything further to deal with before I get to the bulk
14 of my submissions, I will start.
15      I hope you will excuse me if I start with a couple
16 of introductory points which I will take as speedily as
17 I may, but I think they are important for you to
18 understand where my client is on this.
19      The first point is that the starting point is
20 everybody agrees underlying material which was used to
21 put these reports together is relevant evidence for
22 trial.  Nobody has denied this.
23      The primary response, of course, which one expects
24 from a letter of request of this nature is the whole lot
25 is fishing, it's not evidence for trial.  That's exactly

Page 103

1  what we don't see here.
2      We don't see Rio Tinto, as one so often does, here,
3  taking every point under the sun.  So nobody disputes
4  this material will assist the New York court at trial
5  and the New York court has, of course, sought this help
6  to determine extremely serious allegations.
7      So that's your starting point.  We say that this is
8  therefore material that should be provided in toto
9  unless there are very good reasons why not.
10      Two other background points.  The first concerns the
11 reason why we are here.  That is essentially the
12 behaviour of RT in the US and this is a point which goes
13 to the material generally but does also relate to the
14 question of sources which we of course are focusing on.
15      Your Ladyship I think has read Mr Kelly's second
16 witness statement so I won't take you to it in extenso
17 but you will have seen from that, that RT has really
18 done its best to frustrate the production of documents
19 in the US.  This material was requested there, RT took
20 a rather dubious point about: well can you oblige us to
21 produce material which isn't actually physically in our
22 possession.
23      They were then told to contact the firms and did so
24 in advance of the firms uniformly rejecting the
25 requests, citing confidentiality of sources.  They were

Page 104

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                           London EC4A 2DY

1  told then to contact the firms specifically in relation
2  to sources, and this is something which it might be
3  worth just taking your Ladyship to because we are
4  talking about sources.
5      I have shown your Ladyship the letter of request and
6  the extent to which that deals with sources.  If
7  your Ladyship were to turn up the Livingstone bundle,
8  which I think is also the blue bundle, number 2, and go
9  to the exhibit to Mr Kelly's statement, and go to
10 page 97 of the exhibit.
11     You will see there an extract from the transcript of
12 one of the hearings in New York.  You see towards the
13 bottom of the page there, which is page 25 of the
14 transcript, the court --
15 MRS JUSTICE ANDREWS:  Page, sorry?
16 MS COCKERILL:  Page 97 of the exhibit, page 25 of the
17    transcript.
18 MRS JUSTICE ANDREWS:  Tab 2 gives me Mr Kelly's witness
19    statement --
20 MS COCKERILL:  Sorry, my Lady, we're in Livingstone
21    bundle --
22 MRS JUSTICE ANDREWS:  I only have one Livingstone bundle,
23    that's the blue bundle, yes.  So where do I find the tab
24    that you want me to look at?
25 MS COCKERILL:  Sorry, if your Ladyship could turn up

Page 105

1      "You, or at least your client, has had
2  a relationship with the ... investigators that allows
3  you to ask for this information because it was being
4  asked for in a lawsuit and you are to do that without
5  any negative in there, whether that's a wink or
6  whatever.  I want a very clean letter sent out by
7  appropriate relationship person, saying you are acting
8  at the request of Rio Tinto, asking them to disclose the
9  confidential sources."
10     So your Ladyship sees there that the New York court
11 was quite forceful about wanting those sources and the
12 answer which came back from Rio Tinto was: well, no, we
13 can't get it, which of course is an answer which appears
14 to contradict the terms of the contract which
15 your Ladyship was discussing with my learned friend
16 earlier.
17 MRS JUSTICE ANDREWS:  It's directly contrary to clause 16.
18 MS COCKERILL:  Exactly.  So your Ladyship therefore sees
19    a very, it would appear, clear determination on the part
20    of RTZ to --
21 MRS JUSTICE ANDREWS:  Mind you, I say it's a clear
22    distinction.  I am not sure actually.  They would be
23    entitled to ask questions in the provision of
24    information, the extent to which it actually entitles
25    them to the names of the confidential sources -- maybe

Page 107

1  Mr Kelly's second statement wherever you have it, I have
2  it at tab 9 in the second Livingstone bundle.
3  MRS JUSTICE ANDREWS:  There isn't a second Livingstone
4     bundle.  I do have an exhibit separately in a Cleary
5     Gottlieb bundle and it's the second witness statement,
6     page 97 did you say?
7  MS COCKERILL:  Page 97.  So at line 17:
8      "The court: all right, I am going to direct you for
9  each of these investigators to say that you are
10 directing, ordering, requesting, whatever word you think
11 is most important under the contract, for them to reveal
12 the names of their sources to you and that you want
13 a written response and we will see where it goes from
14 there."
15     Then Rio Tinto says:
16     "We don't think --"
17 MRS JUSTICE ANDREWS:  Who is Mr Lyttle?  Who does he
18    represent?
19 MS COCKERILL:  I think that's Rio Tinto.  He says:
20     "I do not think we have a right under the contract
21 to source names.  We have asked them if they are willing
22 to provide it."
23     The court goes on to say:
24     "Well I have no control over the non-parties."
25     And goes on to say that:

Page 106

1  I am going a little far in saying that.  It's certainly
2     arguable.
3  MS COCKERILL:  Well it's certainly a broad provision which
4     appears --
5  MRS JUSTICE ANDREWS:  But this is on the basis of whatever
6     is within their possession, power, custody and control
7     that's being directed, as part of their personal
8     obligation of disclosure, isn't it?
9  MS COCKERILL:  Yes.  The point that I'm really making here
10    is that you can see that RT have not been doing their
11    best to assist with the process.  You have heard what's
12    happened in relation to the BTG documents that RT have
13    apparently ordered --
14 MRS JUSTICE ANDREWS:  Yes, Rio Tinto have been extremely
15    naughty.
16 MS COCKERILL:  And the simple point I am making is the court
17    should really be alert to being made a party to this
18    sort of reprehensible behaviour by going along with the
19    arguments which avoid the material being made
20    available --
21 MRS JUSTICE ANDREWS:  That gets rid of the jury point, let's
22    get on to the substance.  I understand you have a duty
23    to your clients, Ms Cockerill, but there is only one of
24    me here, not 12.
25 MS COCKERILL:  Your Ladyship puts it very amusingly.  If

Page 108

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                           London EC4A 2DY

Page 109

1  I can just say one more thing, and I will do this really
2  quickly, I promise you.  The investigative firms of
3  course deny that they have any coordination with Rio
4  Tinto in the steps they are taking and you have seen
5  that in the new statement served by Farrers.  But
6  your Ladyship has seen, I think, what we have had to say
7  in Mr Kelly's witness statement, that if there isn't
8  coordination between at least the parties, the
9  investigative firm, something very surprising is going
10  on.
11      If I could just ask you for your note, at page 103
12  and 105 of Mr Kelly's exhibit, if your Ladyship were to
13  turn that up at some point and you could see just to
14  what extent there is overlap between the way that the
15  firms have presented their case.  And there, I will
16  leave my jury point with one very small coda, which is
17  that there is a contrast.  We have, by contrast, sought
18  to take a very realistic and constructive approach to
19  this application and your Ladyship will have noted that
20  in relation to some requests which could have been
21  highly contentious, we have stepped back from them,
22  wanting to make sure that there's not a waste of time
23  and costs -- and that we are now focusing --
24  MRS JUSTICE ANDREWS:  You are to be commended for that but
25  you still eschew, or your clients eschew, the sensible

Page 110

1  course of allowing generic descriptions and insist on
2  pursuing the names of individuals whose lives may be put
3  at danger, on the evidence before me.
4  MS COCKERILL:  I shall have to address you on whether the
5  evidence really goes that far and I shall move on to
6  that now.
7      But I am just sort of saying to your Ladyship that
8  the reason that we are pursuing this, in the light of
9  points which are being run very hard in the other
10  direction, is that we have considered this carefully and
11  what is left are matters of great importance to us, to
12  the New York litigation.
13  MRS JUSTICE ANDREWS:  But why?  I mean this is the one thing
14  I'm finding incredibly difficult to drill down to.
15  I can understand why you want to be able to evaluate
16  what Rio Tinto knew.  I can understand why you want to
17  be able to evaluate what Rio Tinto could have got out of
18  the business firms that they instructed and that their
19  knowledge is to be attributed to Rio Tinto and so on.
20  All of that will have a bearing on whether or not the
21  action is time barred or there's this equitable tolling
22  defence available.
23      I can't see how knowing that it was John Smith or
24  Fred Bloggs who provided the information is going to get
25  you an iota further in that objective.

Page 111

1  MS COCKERILL:  Well, I have taken your Ladyship to the
2  paragraphs earlier, I am not going to do that again.
3  What I will just say is this.  If your Ladyship looks
4  back at where we got to on fraudulent concealment this
5  morning and the degree of complexity which there is in
6  there and the question of attribution of the knowledge
7  or imputation of the knowledge of the firms.  When
8  your Ladyship looks at that, and you're looking at the
9  question of red flags, surely it makes a difference to
10  whether a flag is red or orange or yellow or green,
11  potentially who the source is.
12  MRS JUSTICE ANDREWS:  No.  Where the source comes from, yes.
13  Identity of the individual, no.  "Somebody close to the
14  president's palace has told us X", yes, that's
15  potentially very powerful information.  The fact that it
16  was the under minister for the interior as opposed to
17  the minister for justice, neither matters nor takes you
18  a step further at all.
19  MS COCKERILL:  But my Lady, as one knows from the trashy
20  newspapers or magazines over here, the phrase "someone
21  close to" can cover somebody who actually has good
22  sources of knowledge or the tea boy.  You know, there is
23  a real difference between the areas of information which
24  you can cover under that sort of description.  That is
25  one of the problems with the descriptions which have

Page 112

1  been put forward.  Unless you have the source and you
2  know who they are, you are still groping in the dark, in
3  my submission.
4      We will obviously come back to that.
5      On confidentiality, there's a fundamental difference
6  between the sides.  My learned friend's side proceeds as
7  if the burden is somehow on me to show you why these
8  materials should be disclosed in full.
9  MRS JUSTICE ANDREWS:  No, the burden is on him to explain
10  why the order should be redacted because, on the face of
11  it, you have an order which gives full and unredacted
12  effect to the letters of request which is what this
13  court would normally do as a matter of comity.  But he
14  says he has at least shifted the evidential burden the
15  other way, by two sources.  One, he says the material is
16  not actually relevant to anything you need and you are
17  going to have to persuade me that it is.  And, secondly,
18  he says that I have to weigh into the balance the public
19  policy aspects of this and the fact that one would be
20  trespassing upon information that is confidential and
21  one doesn't do that lightly.
22  MS COCKERILL:  But the way my learned friend approaches it
23  is that, basically, as soon as he waves the
24  confidentiality card, somehow the burden shifts to me
25  and that is not the case.

DTI Global                        www.dtiglobal.com                   8th Floor, 165 Fleet Street
(+44) 207 404 1400                                                    London EC4A 2DY

Rio Tinto Plc v Vale SA & ors                    25 June 2015

1    Because I am sure your Ladyship remembers,
2    essentially, what the Nasse case says. It's only in
3    exceptional circumstances, really, that confidentiality
4    shifts, even in the disclosure context, to a point where
5    you say you don't get the documents or you don't get the
6    information.
7    MRS JUSTICE ANDREWS: The court will not usually refuse to
8    order the disclosure of relevant, and I stress relevant,
9    documents or information to a party, merely because it
10   is said to be confidential. Even if the confidentiality
11   arises in the context of an express contractual promise
12   of confidentiality. That is absolutely trite.
13       So the starting point is in favour of disclosure of
14   the information, unless it is irrelevant or there are
15   countervailing reasons why it should not -- good
16   countervailing reasons why it shouldn't be disclosed.
17   MS COCKERILL: Absolutely, my Lady.
18   MRS JUSTICE ANDREWS: You would agree with that as
19   a formulation of the law?
20   MS COCKERILL: I would put it slightly differently. That's
21   in the disclosure context. Your Ladyship has to, of
22   course, remember that here we're in the subpoena context
23   so we are looking not merely at material which has been
24   said to be relevant in the disclosure sense but evidence
25   which is relevant for trial, trial evidence. That's

Page 113

1    confidentiality -- you really, really, really need to
2    know the identity of source A because the information
3    that source A has provided is of critical import,
4    whereas the information that source B has provided
5    doesn't actually take the case one way or the other.
6    MS COCKERILL: It is a potential way forward. It's not
7    a good way forward, for two reasons essentially.
8    Firstly, it effectively puts a chink in the door of the
9    primacy of the needs of litigation. It effectively cuts
10   away from the Nasse principle. Because you're then
11   saying well, you know, we'll basically let the
12   confidentiality argument have its head and put the
13   burden of proof on the party who otherwise has a right
14   to the documents, to prove that they should have the
15   full information. We say where a case has been made out
16   for the relevance of that information, that is not
17   satisfactory.
18       The second thing is a boring practical point, I'm
19   afraid, my Lady. There is not a huge amount of time in
20   play here.
21   MRS JUSTICE ANDREWS: Then you just have to run the risk,
22   Ms Cockerill, that whatever I rule today, if it's
23   against you, shuts the door.
24   MS COCKERILL: Well that is --
25   MRS JUSTICE ANDREWS: If that's the risk that your clients

Page 115

1    a higher hurdle which we have already met.
2        So your Ladyship should be particularly cautious.
3    Of course, cases like Pharaon (?), and there are
4    a number of other cases, even show you that in some
5    cases of bankers' confidentiality, the court will say,
6    you know, that's a really well established, highly
7    important, totally recognised area of confidentiality.
8    Confidentiality loses when documents are necessary for
9    the purposes of litigation.
10   MRS JUSTICE ANDREWS: And the keyword is "necessary".
11   MS COCKERILL: Yes. My Lady, I have made my submissions on
12   that. We can come back to it and debate it some more at
13   a later point. I have explained to your Ladyship,
14   I hope, that we do not accept that cutting down to
15   a description or redacting in full -- I mean redacting
16   in full is obviously no good at all -- cutting down even
17   to a description is no good for the purposes of
18   evaluating what weight can be given to the evidence --
19   MRS JUSTICE ANDREWS: How do you know until you actually
20   know what the descriptions are? It may be that if you
21   are given at this juncture, Mr George's halfway house
22   suggestion, which is that we park this until you have
23   had disclosure on a limited basis, not the most
24   satisfactory way of dealing with it, but you can then
25   come back with a more specific request and say that

Page 114

1    are willing to run, then so be it.
2    MS COCKERILL: We are not willing to run it, my Lady, that's
3    why your Ladyship has to be very careful about whether
4    you go down this route. I understand the attraction.
5    It's obviously -- appears like a practical solution but
6    you must accept if you go down that route, that you may
7    be effectively saying to the New York court that you
8    won't help it, refusing the interests of comity in the
9    practical sense. So I do urge you to think very
10   carefully about it.
11   MRS JUSTICE ANDREWS: I don't react terribly well to big
12   sticks being waved, Ms Cockerill.
13   MS COCKERILL: It's only a small stick.
14   MRS JUSTICE ANDREWS: This court does not play lip service
15   to the principle of comity. You will be getting all of
16   the documents and all of the information that you
17   require. The only issue between you is a fairly narrow
18   one in relation to the identification of certain
19   individuals. This court has a discretion in that
20   regard, which is a discretion that's issued on questions
21   of public policy and even my brother judge in the United
22   States has recognised that the English court is the
23   final arbitrator on questions of policy.
24   MS COCKERILL: Indeed so, my Lady, I entirely accept that.
25   And all I am saying to you is that it is an unusual

Page 116

29 (Pages 113 to 116)

1  step, it is a step in favour of ruling in favour of
2  confidentiality over litigation and I would just urge
3  your Ladyship to be entirely happy that that is the
4  right course in the light of the value of the evidence
5  on confidentiality.  That is what I'm coming to now.
6      The question, really, which you have to examine is
7  why is this the really, really unusual case which breaks
8  the rule that litigation trumps confidentiality.  One
9  argument which is put forward is: well it's just like
10  journalistic sources.  Our answer to that is, well of
11  course it isn't.  This is nothing like journalist
12  sources.  The position for journalists is underpinned by
13  a very strong public interest argument, as your Ladyship
14  is aware, that the press are a watchdog of the citizens'
15  rights and that they, as purveyors, hopefully, of fair
16  and accurate information on matters of public
17  importance, essentially underpin the exercise by
18  individuals of a host of their other rights.
19      That is in no way analogous to the paid gathering of
20  commercial gossip and information for the private
21  interests of corporations and individuals.
22      The position of the investigator firms could hardly
23  be further from the public interest argument in favour
24  of confidentiality of journalist sources.
25      Yes, some of the people who gather this information

Page 117

1  are ex-journalists but just because they are
2  ex-journalists does not mean they carry round with them
3  a right to public protection for the rest of their lives
4  or when they are acting in a way when they are not
5  journalists.  Just because they choose to use some
6  journalistic sources does not mean a journalist's rights
7  attach to it because they are using, effectively, their
8  sources for another purpose, at their and their source's
9  risk.
10      My learned friend says: well the approach of
11  journalists' public policy protection does arise in
12  other areas and gives in his skeleton at paragraph 32,
13  a couple of examples.  Again, where you tend to find
14  this approach, in the cases that he's mentioned, you're
15  looking at areas which very obviously engage a public
16  interest.  So unless you are looking at something in the
17  public interest, the quasi journalist approach
18  doesn't --
19  MRS JUSTICE ANDREWS:  It is not, in your submission, in the
20  public interest that somebody would be willing, paid or
21  unpaid, to provide an intelligence report about
22  corruption in a particular country, potentially at risk
23  to himself if he is found out doing it, A, because he's
24  being paid for it and B, because he's not the source of
25  a journalist's information?

Page 118

1  MS COCKERILL:  Well my Lady, my learned friend obviously
2  prays that in aid and it is very attractive.  But he is
3  not doing it for a public interest purpose.  He is doing
4  it, essentially, for somebody else's commercial gain.
5  So it is not analogous at all.  Of course, that argument
6  is being used to piggy back an argument that the entire
7  investigative firm's process should be covered by
8  a quasi journalistic public interest.
9  MRS JUSTICE ANDREWS:  No, Mr George is not going that far.
10  It's a very, very narrow point that's being taken about
11  the interest, the overriding public interest, that
12  individuals of this nature should not be deterred from
13  providing this kind of information, which is of
14  commercial value.  It may be of a different type of
15  value to the public value that is provided by sources to
16  journalists but, nevertheless, this is information of
17  a commercial value to people generally, and no doubt
18  your own clients use sources of a similar nature in
19  order to find out what's going on on the ground.
20      If that sort of route to finding out what's going on
21  in a country were to dry up all together, I dare say
22  your clients would be first at the barricades
23  complaining about it.
24  MS COCKERILL:  Well my Lady, there may be public interest in
25  individual cases.  That is not to say that there is

Page 119

1  public interest in the overall system, nor is it to say
2  that if some confidential information is ordered to be
3  disclosed in litigation, as your Ladyship says, that
4  this affects the market.  Because just because something
5  is ordered under an order after a contested hearing in a
6  very limited context, this isn't going to set the cat
7  amongst the pigeons in the investigative market.
8  MRS JUSTICE ANDREWS:  Well it depends and that's why the
9  facts and evidence before me matter.  If it was simply
10  a case of Livingstone saying "Our position in the market
11  is going to be jeopardised because as a result of
12  a court order, we've been forced to disclose information
13  about our sources and we're then not going to be able to
14  get anybody to trust us anymore", I would not be
15  terribly impressed by that argument.  But their evidence
16  goes much further than that.
17  MS COCKERILL:  Well I think what your Ladyship wants me to
18  concentrate on is essentially that paragraph in
19  Mr Huband's evidence which is the closest that we get in
20  any of the evidence to dealing with these matters in a
21  detailed fashion.
22      When we look at that, your Ladyship should bear in
23  mind just how far that is from what is said generally.
24  So these are specific examples which are given.  They
25  are the only specific examples which are given.  My

Page 120

30 (Pages 117 to 120)

1   point, essentially, today is this: if you are going to
2   establish confidentiality, it needs to be done properly
3   and compellingly.  In the normal run of cases,
4   your Ladyship will think of the various confidentiality
5   cases of which you are aware.  This isn't done in this
6   way, with practically no details before the court, on
7   the basis, largely, of broad assertions.
8       Cases like Nasse and the Pharaon case and all these
9   sorts of cases, you have somebody coming and saying,
10  "Here I am, this is my right being infringed", or, "I am
11  a party and I'm concerned that I'm going to infringe
12  your rights of identified people in this way".  This is
13  not identified people in a particular way -- the example
14  I was thinking of was in BCCI v Pharaon, where you have
15  a bankers' confidentiality relationship, you know what
16  is being disclosed in relation to exactly whom and the
17  mere fact of disclosure infringes confidentiality in
18  a way which the court would not normally allow, because
19  the court is very strict about banker's client
20  confidentiality.  This is not this sort of case.  You
21  need to make out what is confidentiality, what is the
22  nature of the obligation, what are the circumstances in
23  which it arises.
24  MRS JUSTICE ANDREWS:  It's very narrow because unlike the
25  banking cases, one isn't dealing with the failure to

Page 121

1   anybody at all if they hadn't been promised that their
2   names would be kept confidential.  So the confidential
3   information is simply the identification of named
4   individuals.
5   MS COCKERILL:  But is it necessarily confidential?  Just
6   because somebody says they're going to maintain
7   confidentiality, doesn't necessarily make the
8   information confidential.  You need to look at --
9   MRS JUSTICE ANDREWS:  It does if you make somebody a promise
10  on the faith of which they disseminate information to
11  you, then that is either a contractual promise or at
12  least it is -- the information is disseminated in
13  circumstances giving rise to an obligation of
14  confidentiality which at least, according to
15  Lord Denning, is enough to raise a duty of confidence.
16  MS COCKERILL:  Even in circumstances where the information
17  is -- suppose you said that you were going to tell
18  somebody the price of a loaf of bread in confidence,
19  does that make the price of the loaf of bread
20  confidential information?
21  MRS JUSTICE ANDREWS:  No, it doesn't but if I say to
22  somebody "I will tell you what happened this morning in
23  the Royal Courts of Justice if you promise that you
24  won't leak the fact that I was the one who told you
25  about it", and I then tell you that, what I have told

Page 123

1   disclose information.  The banking case, the banker has
2   a duty of confidentiality to the client who banks with
3   the bank and the court order will normally require that
4   that evidence be disclosed, which may show that the
5   client is up to no good or it may show that money has
6   been transferred in and out of the client's accounts and
7   so on.  It's generally easy to show where the balancing
8   exercise lies there because if somebody is coming to the
9   court for the very good reason of wanting to get hold of
10  that kind of information, ex hypothesi the
11  confidentiality should yield to the interest in
12  providing that information because it's needed in order
13  to find out where the money went or what was going on.
14      But here, the confidential information is not what
15  the source told somebody.  You're going to get that.
16  What the source actually said is going to be divulged.
17  What was made of it is going to be divulged.  The view
18  that was taken by the person to whom it was divulged of
19  the reliability of that information, is going to be
20  divulged because if they didn't think it was reliable,
21  it wouldn't be in the report.
22      So you're getting all of that.  The one thing you're
23  not getting is that it was John Smith or Fred Bloggs who
24  gave the information.  That is because John Smith and
25  Fred Bloggs would not have given that information to

Page 122

1   you may not be confidential, but my name certainly
2   would.  And that's the distinction that we're drawing
3   here.
4   MS COCKERILL:  My Lady --
5   MRS JUSTICE ANDREWS:  If the information is out there in the
6   public domain, then it cannot be confidential.  If it is
7   already confidential but somebody is not actually
8   breaking any -- I'm told that none of this involves any
9   of the individuals concerned doing anything unlawful.
10  And I must take that at face value.
11  MS COCKERILL:  I think the discussion we have just had
12  illustrates quite precisely why the detail of the
13  circumstances is important.  Because what you have here
14  is a variety of versions of the circumstances which gave
15  rise to the confidentiality.  You've got, well some
16  people were told explicitly there were specific
17  agreements, it was implicit.  The story in relation to
18  specific witnesses -- not witnesses, sources, is not
19  made clear.  This is not a case where you have source A,
20  the source of the confidentiality is a specific
21  agreement on such and --
22  MRS JUSTICE ANDREWS:  I am told in relation to all of the
23  people in one particular clutch that there was
24  a specific agreement with each and every one of them
25  entered into.  That is the one of the three business

Page 124

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                           London EC4A 2DY

1    entities that did not have an agreement with Rio Tinto.
2    It didn't have the standard form agreement, whichever
3    one it is. I keep forgetting who is who.
4    MS COCKERILL: ARC.
5    MRS JUSTICE ANDREWS: ARC. I don't know if -- you have
6    a copy, I think, of Mr George's schedule,
7    Ms Cockerill -- in relation to ARC, I think the evidence
8    is all one way, isn't it?
9    MS COCKERILL: Well the position in relation to ARC is --
10   it's, again, a little nuanced:
11       "The name of the source who provided the information
12   ... in strict conditions. Their identity is a source of
13   that information ... remain confidential."
14   MRS JUSTICE ANDREWS: What's uncertain about that? It's
15   pretty clear, isn't it?
16   MS COCKERILL: Your Ladyship is right, I was misremembering
17   the --
18   MRS JUSTICE ANDREWS: I think ARC is straightforward. It
19   may be more nuanced in relation to the other two but
20   ARC, the evidence is very clear, they made it a strict
21   condition of providing the information, that their
22   identity was not to be disclosed under any
23   circumstances. So that's, on the face of it,
24   information that's provided in circumstances where the
25   name of the individual is subject to an express promise

Page 125

1    to keep it confidential.
2        Begbies' specific undertakings were entered into.
3    And Mr Brown, on the basis I think, of the preceding
4    paragraph, told Mr Humphrey that he provided them with
5    specific assurances.
6    MS COCKERILL: Yes. That's the evidently provided --
7    MRS JUSTICE ANDREWS: There was the sort of assumption that
8    Mr Leighton would have acted likewise.
9    MR GEORGE: It's paragraph 17 of Mr Humphrey and we looked
10   earlier, and for Mr Huband it's paragraph 18, who in
11   fairness, also says:
12       "I can confirm that each of the sources who have
13   been identified will have received a specific
14   assurance."
15   MS COCKERILL: It's a "will have" and in relation to
16   Livingstone, you also have "the sources implicitly
17   understand that their anonymity is protected."
18   MRS JUSTICE ANDREWS: Yes, well, Mr Huband is a little bit
19   more woolly.
20   MS COCKERILL: Yes. So all I'm saying, my Lady, is this,
21   that in relation to Mr Huband, you have sort of one side
22   of it to an extent, but not the other. You don't have
23   this witness -- this source was providing information
24   pursuant to this particular understanding. But then you
25   do have some description of what the source is, but

Page 126

1    again, although they look more particular and
2    your Ladyship, I know, is attracted by going down this
3    route, if you just look at them: source A:
4        "A well placed Guinean government official who's
5    witnessed the key events and conversations.
6        "What sorts of key events and conversations?"
7    MRS JUSTICE ANDREWS: You will know that when you marry
8    source A to the information that is attributed to him or
9    her.
10   MS COCKERILL: But again, my Lady, that's cart before the
11   horse. To an extent, if my learned friend wants to say
12   he's getting to the extent of a confidentiality that
13   overrides the starting point which is to provide, what
14   we ought to be seeing is something like Mr Kelly's
15   schedule saying: in relation to each segment, or each
16   source, this is the basis on which the information was
17   given and this is the description of the information
18   they gave and who they are and why it causes them
19   a difficulty.
20       Which would then stop you getting to the point:
21       "... should thus be seen as a potential target of
22   recrimination."
23       That's not fact, that's submission. That is not
24   a basis for concluding that the name should not be
25   disclosed.

Page 127

1    MRS JUSTICE ANDREWS: Why? I mean, the court can take
2    judicial notice, surely, of what goes on in countries
3    such as Guinea.
4    MS COCKERILL: This is a point I wanted to address with
5    your Ladyship -- I'm sorry, your Ladyship was going to
6    say, you should say judicial notice of what goes on in
7    countries like Guinea. That's exactly the sort of
8    approach that, for example, in a forum conveniens-type
9    argument, one shouldn't lightly assume that other
10   countries do not operate in a proper manner and you
11   don't have --
12   MRS JUSTICE ANDREWS: So we don't live in the real world,
13   Ms Cockerill, we have to live in an assumption that
14   everybody behaves in exactly the same way as the US and
15   the UK.
16   MS COCKERILL: Well one might say that making that sort of
17   assumption is an improper or undiverse approach.
18   MRS JUSTICE ANDREWS: It may well be an improper and
19   undiverse approach, it may also be a sensible one. I am
20   going on the evidence that's before me. I can't dismiss
21   this evidence out of hand on the basis that you say
22   I should assume that every foreign government does not
23   behave like Mr Mugabe in Zimbabwe.
24   MS COCKERILL: No, my Lady, I am saying you should assume
25   nothing against a foreign government or foreign

Page 128

Rio Tinto Plc v Vale SA & ors                              25 June 2015

1    governmental procedures until you have evidence which
2    justifies it, which is the way one would proceed in
3    other areas in relation to this.  You shouldn't assume
4    that a judgment given by a foreign court is no good
5    unless you have evidence that their justice system is
6    not good.
7        What you have in relation to this, you have
8    Ms O'Connor saying that, some years ago, somebody she
9    knew was put in prison.  That was back in the Conde
10   regime, which I think went out in 2008.
11       There have been some --
12   MRS JUSTICE ANDREWS:  That's the material period, isn't it
13   or one of the material periods, pre 2010?
14   MS COCKERILL:  Yes, but we are looking at danger to
15   witnesses now.  What my learned friend needs to be
16   addressing is if these people are said to be in danger,
17   what is the evidence that they will be in danger now?
18   I'm just asking you to consider that.  We would say that
19   what you have, really isn't enough to make negative
20   assumptions about a foreign regime.
21   MRS JUSTICE ANDREWS:  Just suppose, Ms Cockerill, just
22   suppose -- I have to remember that none of these
23   individuals, possibly even knows what's going on in this
24   court.  They have had no opportunity to come and make
25   any submissions to this court about whether or not this

Page 129

1    information should be revealed.  They may well be out of
2    the jurisdiction, they may not have access to legal
3    advice and just suppose their name comes out and
4    something nasty happens to them in consequence.
5        They have not had a fair hearing before this court
6    because they haven't had an opportunity to explain to
7    the court what dangers they are facing.  Why should
8    I take that risk?
9    MS COCKERILL:  I understand entirely where your Ladyship
10   comes from on that.  I do see your point.  I should
11   just --
12   MRS JUSTICE ANDREWS:  You say the evidence isn't of
13   a sufficiently concrete quality for me to assume that
14   that risk is a realistic one, as opposed to a purely
15   theoretical risk.
16   MS COCKERILL:  I do say that, my Lady.  I also say that when
17   you say they haven't had an opportunity to be present,
18   that isn't, actually, strictly right.  They have a right
19   to be heard at this hearing.  If there is a threatened
20   breach of confidentiality, there is authority to that
21   effect.
22   MRS JUSTICE ANDREWS:  The order cannot have been served on
23   them, it's only been served on the three companies.
24   MS COCKERILL:  It is absolutely open to the investigative
25   companies to notify the people who they think they would

Page 130

1    be in danger of breaching confidentiality towards and to
2    give them the opportunity to be heard, or at least to
3    put in evidence through them.
4    MRS JUSTICE ANDREWS:  Perhaps I should adjourn this
5    application to give them that opportunity.
6    MS COCKERILL:  My Lady, I am not asking you to do that
7    because that was a matter for the investigative firms.
8    They have delayed long enough in relation to this
9    evidence.  All I'm saying is that you shouldn't assume
10   that there has been no opportunity, that they have had
11   no chance at all to appear because there is an
12   opportunity to appear.
13       I am not sure how much further I can take this.
14   I know my submissions are finding unparalleled favour
15   with you.
16       Can I just ask you to go with me and look at
17   Mr Huband's paragraph that we were talking about and
18   I will promise you I will sit down shortly and stop
19   annoying you.
20   MRS JUSTICE ANDREWS:  No, I am not stopping you at all, I am
21   just testing the proposition to destruction,
22   Ms Cockerill, to see how far I need to go.
23       Mr Huband's paragraph?
24   MS COCKERILL:  Yes.  Your Ladyship yourself went through
25   this list and I would just like you to run through it

Page 131

1    again.  We have looked at source A and I have said
2    should -- "long established ex-patriot figure."
3    Ex-patriot where?  Ex-patriot here?  Ex-patriot from
4    here in Guinea?
5        "Must be seen as likely to create the possibility of
6    recrimination by those whose activities --"
7    MRS JUSTICE ANDREWS:  He, I think, is one of the two
8    associates.
9    MS COCKERILL:  Yes.  He is one of the associates.
10   MRS JUSTICE ANDREWS:  I was, in principle, thinking that
11   there was not a reason not to reveal who the associates
12   were because these are people who have actually been
13   enlisted specifically to go and dig out information.
14   MS COCKERILL:  Yes.
15   MRS JUSTICE ANDREWS:  So in the absence of some pretty
16   strong evidence that they're going to be jeopardised, an
17   associate, I would have thought, in principle, subject
18   to Mr George persuading me to the contrary, associate
19   really ought to be divulged.  That is subject, of
20   course, to the overall question of relevance, which I am
21   still far from persuaded on, I am bound to say.
22       But in terms of the overriding of confidentiality,
23   I am not sure that the evidence in relation to
24   associates is that strong.  It's the sources, isn't it?
25   MS COCKERILL:  Yes.

Page 132

33 (Pages 129 to 132)

Rio Tinto Plc v Vale SA & ors                                          25 June 2015

1  MRS JUSTICE ANDREWS: The people who are still there,
2      somebody who's a long established executive, people who
3      are actually still involved in the political world.
4  MS COCKERILL: Again, "long established mining sector
5      executive." Doesn't actually say he is based in Guinea.
6      It says he's assisted Livingstone in several different
7      enquiries into regional corruption. So again, and
8      yourself, I think you raised the question of why in
9      relation to this:
10          "Another senior executive with BSGR whose insights
11      into the company's operations ... personal acquaintance
12      with our associate."
13          What sort of role has he got? Where is he based?
14      Because if we are saying these people are -- we are
15      protecting their confidentiality because they would be
16      at risk of being hauled into prison and the thumbscrews
17      attached, you know, we need to know where they are in
18      order to assess whether that's a risk. Because if these
19      people are based in London, it isn't.
20  MRS JUSTICE ANDREWS: It's not just a question of being
21      hauled into prison with thumbscrews, it's a question of
22      whether it's going to jeopardise their employment
23      relationship or expose them to recriminations within the
24      companies within which they work.
25  MS COCKERILL: Fine. If it's about their employment

Page 133

1      relationship, if they divulge the information not in
2      breach of contract, no issue. If they divulge the
3      information in breach of contract, that is not something
4      the court should be protecting.
5  MRS JUSTICE ANDREWS: I am told there's no illegality
6      involved.
7  MS COCKERILL: So there we are. If they divulge the
8      information not in breach of contract, what is the basis
9      of saying it's going to affect their employment? What
10      right does anybody have to complain if they are not
11      doing anything wrong in terms of their contract?
12  MRS JUSTICE ANDREWS: Well we all know that perceptions are
13      very different from legal realities, that whether or not
14      the legal rights or wrongs are in favour of confidence,
15      it may be seen as disloyalty, to just put it in a
16      neutral way, that you would even be talking about the
17      company's business behind their back with somebody like
18      Livingstone.
19  MS COCKERILL: This is what you should be being told here,
20      that the confidentiality matters because although
21      there's not a breach of contract, they are operating in
22      a community where it would be perceived as a breach of
23      loyalty or whatever. You are being asked, basically, to
24      overturn my client's right to see these documents. In
25      particular parts --

Page 134

1  MRS JUSTICE ANDREWS: You are talking about it as a right to
2      see the documents. You have a letter of request, you
3      have a court order. The question is: do you have
4      a right? You only have a right to see these documents
5      if they are necessary and relevant.
6  MS COCKERILL: That is not an issue. The documents are
7      accepted as relevant. The sources are part of that
8      material. Therefore --
9  MRS JUSTICE ANDREWS: The sources are not accepted as being
10      relevant, that's what you've been arguing about for the
11      last three hours, isn't it?
12  MS COCKERILL: It is, my Lady, but you only get to the
13      sources if you get to confidentiality and then you are
14      arguing about the relevance of the particular
15      material --
16  MRS JUSTICE ANDREWS: I don't see that. I think you are
17      putting it the wrong way round. First of all, you have
18      to say: is this information relevant? If it is
19      relevant, then the question of confidentiality comes in
20      as to whether or not it should be or not be disclosed.
21          If it is irrelevant, then we don't even get as far
22      as confidentiality. Because you don't need it.
23  MS COCKERILL: The way the application proceeds, as
24      your Ladyship says, is that we have an order that my
25      learned friend is applying to redact, so where it does

Page 135

1      proceed is that my learned friend needs to establish
2      that right. So the burden is on him --
3  MRS JUSTICE ANDREWS: If he persuades me it's irrelevant
4      information, he can redact on that basis alone, surely?
5      Which is why I started this whole process by asking the
6      question of both of you, was not the foundation for this
7      application for disclosure, the limitation point?
8          The whole basis on which this request was
9      launched -- and I am going to stop for the shorthand
10      writer in a minute -- was not the whole basis on which
11      this application was launched, a requirement to have
12      documents to enable you to make good your argument that
13      there were red flags, or that Rio Tinto could jolly well
14      have got their act together much earlier. And it will
15      also be of relevance to find out what Rio Tinto has to
16      say about its equitable tolling defence, whether or not
17      there is material on which they can rely to say: well we
18      couldn't have acted this way further because we couldn't
19      have got past this particular obstacle. That's what
20      it's all about. I can see if you had launched this
21      application on the basis: well it's relevant to the
22      underlying action to know what the reliability of this
23      information is, it might have been a slightly different
24      matter. But apart from the odd little passage in
25      Mr Kelly, I've got no information that it goes beyond

Page 136

34 (Pages 133 to 136)

Page 137

1    limitation.
2    MS COCKERILL: Well my Lady, I have, I think, addressed you
3        on the subject of whether the letter of request goes to
4        the underlying merits as well. And I have addressed you
5        at some length, I think, already, on -- the nature of
6        the lead, who the lead is, the reliability of the lead,
7        is very important in the context of equitable tolling
8        and the various shades that come within fraudulent
9        concealment. Which also include things like what
10       information was known by other people that they may have
11       tipped BSGR off to. I think I have covered all of those
12       points.
13           If your Ladyship was minded to stop for the
14       shorthand writer, maybe we could stop for five minutes
15       and I will say anything very brief I need to, following
16       that.
17   MRS JUSTICE ANDREWS: Don't feel under any pressure of time.
18       I think it's getting to the stage where even if I were
19       against you, Ms Cockerill, I would probably want to
20       formulate my thoughts overnight.
21           I know that both of you want a speedy response but
22       I think this is too important to give an off the cuff
23       determination.
24   MR GEORGE: My Lady, we could not agree more. Our urging
25       for speed, we would not in any way to sacrifice -- this

Page 138

1        is an important point and it does not come up that often
2        and there is a great deal of material for my Lady.
3    MRS JUSTICE ANDREWS: I also think that you have both raised
4        an issue which might have ramifications beyond the
5        instant case in terms of the confidentiality and how the
6        court should approach it. So I am not rushing either of
7        you. The two potential courses that are going through
8        my mind at the moment, with or without giving you an
9        indication of where I am this evening, would be either
10       to think about it overnight and give you an extempore
11       judgment tomorrow or to reserve it until Monday and hand
12       it down on Monday.
13   MR GEORGE: My Lady, I don't believe -- we would be more
14       than content with Monday, if that was convenient to
15       your Lady. Equally, I am available tomorrow morning if
16       that was convenient to my Lady.
17   MRS JUSTICE ANDREWS: Let's see where we are at the end of
18       the legal argument. I think what I will do is hear the
19       rest of the legal argument today. I won't give you
20       a snap decision, I think it's far too important to do
21       that. But you will get a decision by no later than
22       Monday and by close of business today I will have
23       a thought as to how it's going to be done.
24   MS COCKERILL: We are very grateful to your Ladyship.
25       I think for our part, whichever course commends itself

Page 139

1    most to your Ladyship, we are content with.
2    MRS JUSTICE ANDREWS: Obviously, a formal reserve judgment
3        is going to take a little longer to formulate but the
4        more I think about it, the more I worry that trying to
5        do it extempore may not be the best thing for both the
6        parties and if you have something in writing from me,
7        then at least --
8    MR GEORGE: Certainly my instructions are that there are
9        a number of participants actively in the industry who
10       would wish to read and consider, as you say, for the
11       wider implications of a judgment in this and the more
12       reasoned -- an extempore would be entirely reasoned but
13       in a sense, any opportunity for further reflection
14       should be taken and certainly there will be no prejudice
15       to the weekend.
16   MRS JUSTICE ANDREWS: All right, we will proceed on that
17       basis. You can both proceed on the basis that I will
18       reserve judgment until at least tomorrow, probably until
19       Monday, and I will hear whatever either of you have to
20       say in terms of further argument today and then we will
21       reconvene at a convenient moment. I will stop for the
22       shorthand writer. Ten minutes.
23   (2.54 pm)
24                   (A short break)
25   (3.04 pm)

Page 140

1    MS COCKERILL: Good afternoon again, my Lady. We left
2        matters in the middle of Mr Huband's paragraph 24. I am
3        not going to go through each one of these line by line
4        but I would just ask your Ladyship -- your Ladyship
5        raised a number of questions in relation to these and
6        rightly so, I would submit.
7            When your Ladyship considers the question of whether
8        you should proceed down this line that we've been
9        discussing, of whether there should be a further
10       description of the sources whose identities are to be
11       redacted, if there is to be redaction, you should look
12       very carefully at whether that can be a satisfactory
13       route and how much detail there would have to be.
14           In my submission, if you wanted to go down that
15       route, there would have to be more detail in terms of
16       the category to which -- the category of disclosure, the
17       lead, to which the source related, where they were
18       operating, the nature of their position and the evidence
19       for risk, so that one has rather more detail than here.
20           I was making a point earlier about a senior
21       political source close to government or close to the
22       president and I made the tea boy joke. It's a valid
23       point in itself but my instructing solicitor has
24       reminded me that the Iraq war, for example, we have
25       sources close to the government in Iraq, underlying the

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

1    dossiers there and "close to" turned out to be something
2    rather different.  So your Ladyship sees there is ample
3    scope for not only not helping but positively
4    distracting attention or leading away from a true
5    analysis of whether a source should be valued or not.
6        When we come to the question of relevance which
7    I won't say much more but your Ladyship needs to
8    understand that when you're looking at equitable tolling
9    and so forth, you do need to understand what leads
10   should have been followed and the question of whether
11   a lead should have been followed may depend, crucially,
12   on the nature of their information, who they were, as to
13   whether they were a reputable source or the tea boy or
14   whatever.
15   MRS JUSTICE ANDREWS:  One has to be careful not to mix up
16       the question of what leads should have been followed by
17       Rio Tinto with the knowledge of the individual business
18       investigation entities.
19           Business investigation entities' knowledge is to be
20       attributed for the purposes of New York law, to the
21       people who commission them.  So the knowledge of
22       Livingstone is attributed to Rio Tinto.  So if
23       Livingstone consider that they have reliable information
24       from Mr X that there is going to be a coup, just to take
25       a hypothetical example, they themselves evaluate it as
                              Page 141

1    nail, with or without the degree of success.
2    MS COCKERILL:  This is, it seems to us, a very interesting
3        point, the question of confidentiality.  Because that
4        was a point I raised at the outset.  Your Ladyship
5        cannot simply say that RT couldn't have obtained this
6        confidential information.  Your Ladyship will recall
7        that in Mr Kelly's statement there's a paragraph about
8        how all of these companies hold themselves out as
9        effectively providing litigation support.  To the extent
10       that what was being done was litigation support, it's
11       a necessary part of what you would expect, that the
12       person who's seeking the information gets information
13       for you so that you can call witnesses.  So they would
14       inevitably expect to be allowed the names of the
15       witnesses and it should be noted, my Lady, that --
16   MRS JUSTICE ANDREWS:  That's why clause 16 is no doubt
17       couched in the wide terms that it is.  I think, for what
18       it's worth, that Mr George is wrong on the
19       interpretation of the contract and it has an English law
20       clause in it, I've noticed.  I think Rio Tinto would
21       probably be entitled to call for information, possibly
22       even as to the name of the source, for that very reason.
23   MS COCKERILL:  What I would say is this, my Lady.
24   MRS JUSTICE ANDREWS:  But they might not get it very easily
25       they might have to go to litigation in order to get it.
                              Page 143

1    reliable and there's an internal memo which says "We
2    have information from an impeccable source that there's
3    going to be a coup", and then let's say a coup happens.
4        You can evaluate the reliability of the information
5    without knowing who the source was, because you have the
6    facts following upon the provision of the information to
7    enable you to put two and two together.
8        That deals with the reliance that is placed by the
9    investigating person upon the source.
10       When one is dealing with what Rio Tinto should have
11   followed up, we are dealing with very different
12   territory, aren't we, because they are not told who the
13   sources are, except insofar as it's in the reports
14   already and there's no argument about that.
15       So the question becomes: so Rio Tinto have asked the
16   investigators who the sources were, and if they'd asked,
17   would they have actually got the information out of
18   them?  Would that have left them any better off?  I am
19   not sure that the answer to that will be productive from
20   your perspective because you may be able to attribute
21   the business entities' knowledge to Rio Tinto, even
22   though they don't have it, but insofar as what Rio Tinto
23   themselves should have done, given the attitude that is
24   taken to confidentiality now, if they tried to get hold
25   of that information, they would have fought tooth and
                              Page 142

1    MS COCKERILL:  I don't know.  This is something that you may
2        want to raise with my learned friend.  Certainly in the
3        US, RT positively assert that the work done was
4        litigation support, and if that was the case, then it
5        would be bizarre if the set-up was such that the
6        contract required them to litigate.
7            So my submission is that, in relation to that, to
8        the extent that that's troubling you, you should
9        certainly be very slow to conclude that the answer is in
10       confidentiality, if you're not actually satisfied of
11       that position as to litigation support is wrong.  I am
12       not entirely sure what my learned friend has to say
13       about that.
14           If it's the case that RT had the right to those
15       witness names, there was no real confidentiality, RT
16       would have the right to that information in the States
17       or anywhere and it would effectively put the rights of
18       the New York court and of the people who RT are now
19       suing, behind RT.  They could have this material and we
20       couldn't.  Unless your Ladyship is given some --
21   MRS JUSTICE ANDREWS:  But they haven't got it.  If they had
22       it, if it was within their knowledge now, the court in
23       New York could tell Rio Tinto to divulge that
24       information and we wouldn't be having this argument
25       here.
                              Page 144

36 (Pages 141 to 144)

Rio Tinto Plc v Vale SA & ors                              25 June 2015

1  MS COCKERILL: If they had it, yes. They don't have it at
2      the moment, but the question is, could they have had it?
3      Could they have it.
4  MRS JUSTICE ANDREWS: That's all part and parcel of the
5      argument about whether this is information within their
6      possession, power, custody or control, for which I was
7      shown that excerpt of the argument that was before the
8      judge.
9  MS COCKERILL: Yes, my Lady, but it's also a question for
10     here, the question of whether my learned friends can't
11     say that it really is a case that it's litigation
12     support because if they agree with RT that it's
13     litigation support, then that throws a fairly major
14     spanner in the works of saying confidentiality. If they
15     say it's not litigation support, then so be it.
16         You know, at least your Ladyship knows when she is
17     grappling with this rather difficult situation, that
18     there is not that anomaly. It's a very interesting
19     anomaly that RT say in the States, something which
20     indicates powerfully that this would not be treated as
21     confidential between RT and the litigation support
22     companies.
23  MRS JUSTICE ANDREWS: So you say that from RT's perspective,
24     they say that it's litigation support and that means the
25     information would not be confidential as between the

Page 145

1      going in that direction, urge you to say should be
2      a better, fuller description tied to the particular
3      piece of information -- that is only a course to go
4      down, effectively, if you are satisfied about
5      confidentiality. That confidentiality is trumping what
6      I'm saying in terms of the need for sources in the
7      States.
8         If you look in the round and you see well, you know,
9      we are looking at rather broad assertions in relation to
10     confidentiality and we do have this rather strange
11     situation where it does appear that RT are saying that
12     this is stuff which they ought to have been able to get
13     hold of because it was litigation support, then you
14     might take the view: well, I don't need to go there
15     because it cannot be confidential and it cannot be right
16     to treat as confidential, when RT could have had
17     a different position.
18  MRS JUSTICE ANDREWS: What was the outcome of the
19     application? I saw the transcript. There's obviously
20     an application against RT on the basis that they were
21     entitled to compel the entities to produce information
22     and that must have fallen on stoney ground.
23  MS COCKERILL: I think, my Lady, the outcome of that was the
24     writing of the letters. It was the first letter which
25     was written where RT effectively said "We're writing to

Page 147

1  entities --
2  MS COCKERILL: Exactly.
3  MRS JUSTICE ANDREWS: -- and RT. Quite apart from the right
4      as against two of them, the contractual right to call
5      for it.
6         On the other hand, you then get a tension because
7      the evidence before me is that in relation to the third
8      of them, there was an express promise given by Rio Tinto
9      that it wouldn't ask for who the sources were.
10        So even if the business is one of litigation
11     support, you have a contractual promise not to ask for
12     it.
13  MS COCKERILL: It would be rather odd but if that's the
14     answer, that's the answer.
15  MRS JUSTICE ANDREWS: That's the evidence, that's the
16     evidence at the moment.
17  MS COCKERILL: I do not think your Ladyship has had an
18     answer on litigation support because if that were the
19     case, it would effectively lead to another anomaly. But
20     I just flag that up as a matter that while your Ladyship
21     is grappling with how do you balance these competing
22     demands and the potential possibility of going down the
23     route that your Ladyship has indicated, of coming up
24     with some regime whereby the individual investigative
25     firms give a description -- which I would, if you're

Page 146

1      you because of some litigation in the States", and then
2      there's the second letter where the judge says "No, no,
3      no, no, no, you send a clean letter." And that then
4      dovetails back into the question of where RT stand in
5      relation to this particular application.
6         My Lady, I am conscious I have troubled you for
7      quite a long time. I do not think there's a huge amount
8      that I can add but, obviously, if there are questions on
9      particular issues. I think we dealt with the
10     specificity areas and so forth this morning. It really
11     is just the confidentiality this afternoon so --
12  MRS JUSTICE ANDREWS: Well I think both of you have enough
13     of a steer in relation to the other matters, to be
14     moving towards getting the right kind of order. At
15     least as far as the specificity is concerned. It's
16     confidentiality, really, that you're waiting for me.
17  MS COCKERILL: I am reminded of one final thing. We have
18     flagged it up, I did mention it earlier, but there is
19     the question of the protective order in the States.
20     That is a simpler way through.
21  MRS JUSTICE ANDREWS: Well any order I make is going to be
22     subject to that protective order anyway.
23  MS COCKERILL: But we would obviously suggest that --
24  MRS JUSTICE ANDREWS: You say that is good enough, I'm not
25     sure it is. But I have to think about it. And

Page 148

37 (Pages 145 to 148)

1    I promise you I will give it quite a lot of
2    consideration.  As I say, the more I think about it, the
3    more I think this case is not one for snap judgments.
4    MS COCKERILL:  I am very grateful to your Ladyship.
5            Submissions by MR GEORGE
6    MR GEORGE:  My Lady, I don't wish to traverse all of the
7    ground because it's been canvassed in a number of
8    debates but may I address you, just in reply, on that
9    last point of litigation support because in my
10   submission it was a false basis to say that there is
11   ambiguity or that my Lady does not know the position of
12   the respondents.
13       Again, having to find these witness statements,
14   I know is frustrating but I am afraid, my Lady, it's
15   Ms O'Connor number 2.
16   MRS JUSTICE ANDREWS:  I have that loose.
17   MR GEORGE:  Paragraph 10.  This is in response to Mr Kelly:
18       "The litigation support referred to on ARC's website
19   refers to ARC support function in substantial
20   litigations which ARC is retained by legal counsel to
21   support.  Rio Tinto did not retain ARC for litigation
22   but to provide investigative reports.  Mr Kelly's
23   conclusion in paragraph 61 is surmised and is wholly
24   incorrect.  ARC was asked to produce business
25   intelligence for...(reading to the words)... for Rio

Page 149

1    Tinto, not to gather evidence for use in litigation
2    which is a distinct activity."
3    MRS JUSTICE ANDREWS:  So, basically, what Rio Tinto is
4    telling the court in the US is mistaken or is incorrect?
5    MR GEORGE:  If it's what my learned friend says they have
6    said to the US court, it is incorrect.  We have not
7    presently identified precisely what passage is being
8    relied upon.
9    MS COCKERILL:  If I may just interject.  That is, of course,
10   the position of ARC, who are the people who have the
11   confidentiality provision in their contract.  I am not
12   sure what the position is of the other investigative
13   firms.  I think Mr Humphrey may have dealt with it but
14   I am not sure about ...
15   MR GEORGE:  Could I invite you to find Mr Parkhouse's second
16   witness statement, paragraph 10:
17       "At several points in his statement, Mr Kelly
18   ...(Reading to the words)... that is speculative and
19   I am told by Mr Huband, wrong.  In particular,
20   paragraph 55, based on a statement by Rio Tinto, Mr
21   Kelly expressly makes an assumption that Livingstone
22   would have known that any sources of ...(reading to the
23   words)... At paragraph 60, he asserts that absent this
24   aspect, the work we did would be of no value to Rio
25   Tinto.  Mr Huband informs me that it is all incorrect,

Page 150

1    Livingstone was not told that it was investigating
2    potential claims against Vale and at no point did it
3    occur to Mr Huband that the sources of information might
4    be potential trial witnesses.  On no occasion has
5    Livingstone been asked to produce the trial
6    witnesses...(reading to the words)... Nonetheless,
7    clients, including Rio Tinto, pay the fees, confirming
8    that the work was --"
9        We don't know what Rio Tinto has told the American
10   court.  In his evidence, Mr Kelly merely points out that
11   litigation support is something which my clients offer
12   in certain circumstances and the evidence before this
13   court is that this was not one of those circumstances.
14       Now my Lady, had it been, we would doubtless be
15   having arguments of privilege which had been raised.
16   None of those have been raised because it's not that
17   type of case.
18       As far as Mr Humphrey is concerned, there is no
19   evidence any differently with regard to Begbies, with
20   obviously, the caveat there that Mr Humphrey makes clear
21   he's not the person who knows anything about anything,
22   as it were.  That may be something Mr Brown and
23   Mr Leighton can assist with.
24       So, my Lady, in my submission this is clearly not
25   a litigation support place and in those circumstances,

Page 151

1    that provides no support for a basis that there was a no
2    confidentiality between Rio Tinto and my clients.
3        We have debated issue 16.1.  My submission is that
4    whatever else it may provide, it does not allow a demand
5    for the provision of the identity of the sources of
6    information which is the only issue before this court.
7    But my Lady has the point, even if I was wrong about all
8    of that, that is not the determining factor here because
9    the express promises of confidentiality made by my
10   clients to the associates and sources are not taken away
11   or abrogated by matters of which they were unaware,
12   namely these other contracts.
13       My Lady, the only --
14   MRS JUSTICE ANDREWS:  Help me on this.  It seems to me that
15   Ms Cockerill has made a point about the quality of the
16   evidence, and it is in many respects somewhat vague in
17   relation to the threats that the individuals face,
18   particular individuals face.
19       It seems to me that if one was dealing with
20   information that was absolutely critical and germane to
21   the heart of a case, that one might then want to --
22   where it was plainly relevant and sought to be disclosed,
23   then when one is balancing public policy interest in
24   keeping information confidential against that sort of
25   critical information, say the bankers' situation, that

Page 152

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                          London EC4A 2DY

| | |
|---|---|
| 1  one would really need very strong and cogent evidence to | 1  will be useful for my Lady to see the whole hearing, but |
| 2  stop somebody getting hold of the critical information, | 2  the American judge, as my Lady has already seen from the |
| 3  simply on the basis that it was confidential or | 3  brief exercise, it's quite clear that the English Senior |
| 4  provision of the information might expose an individual | 4  Master, who obviously had some familiarity from previous |
| 5  to risk of one kind or another. | 5  cases, would be considering this and that it may well |
| 6      Where one is dealing with article 8, article 2, | 6  not pass muster with him. So there's no question about |
| 7  article 3-type points, one would then need to descend | 7  trespassing. |
| 8  into the sort of particulars one is familiar with in the | 8      This exercise on redactions to confidentiality is |
| 9  administrative court in relation to country guidance and | 9  very, very different to striking out whole classes of |
| 10  so forth, explaining precisely what the risks are that | 10  documents or effectively rewriting them. |
| 11  individuals face on the ground in a particular country. | 11  MRS JUSTICE ANDREWS: Well you don't, you cannot rewrite |
| 12      But if one is dealing with information that is of | 12  MR GEORGE: Precisely, so you can just strike out. So the |
| 13  remote, if any, relevance to the issues, then does that | 13  consideration involves looking at the specific relevance |
| 14  have a bearing on the quality of the information that's | 14  of the redacted information, which is here the identity |
| 15  provided on the other end of the scale? | 15  of the sources versus the evidence which my Lady has in |
| 16  MR GEORGE: My Lady, in my submission yes of course it does, | 16  each case as to the interests that require to be |
| 17  and indeed it is absolutely intrinsic to the balancing | 17  protected, be it confidentiality, risk of recrimination. |
| 18  exercise that this court is carrying out. I know that | 18  MRS JUSTICE ANDREWS: It's a potential prejudice, isn't it, |
| 19  that expression has been deprecated to the judicial | 19  on both sides. |
| 20  discretion, but nonetheless you are considering two | 20  MR GEORGE: Precisely. |
| 21  competing factors. | 21  MRS JUSTICE ANDREWS: What is going to happen if the |
| 22      My Lady, in a sense a starting point could be what | 22  information is handed out at a risk that is flagged up |
| 23  is the relevance of this information. After all, that | 23  in the evidence eventuates, balance that against what |
| 24  is the Nasse formulation -- | 24  harm is it going to do to the party that's seeking the |
| 25  MRS JUSTICE ANDREWS: It seemed to me that that is the | 25  information if they don't have it. |
| Page 153 | Page 155 |

| | |
|---|---|
| 1  starting point. You don't start with the | 1  MR GEORGE: Precisely. |
| 2  confidentiality, you start with the relevance. Do they | 2  MRS JUSTICE ANDREWS: At the moment, I am bound to say that |
| 3  need this information at all? Why do they need it? | 3  I am having a little difficulty in understanding why |
| 4  What does it go to? Where is it going to get them to | 4  this information is so crucial, to anything. |
| 5  find it out? Leave aside from that the fact that they | 5  MR GEORGE: My Lady, in my submission it's fair to |
| 6  obviously want it, you can see why they would want it, | 6  characterise the debate as I say it is irrelevant, for |
| 7  commercially and as a matter of litigation tactics, but | 7  reasons I have given. My Lady friend -- I heard what my |
| 8  that's a separate point. | 8  learned friend said before lunch. I still do not |
| 9      But I am still grappling with relevance here and | 9  understand why much of the evidence is going to be |
| 10  I don't think it's an answer to it to say, "Well that's | 10  relevant, but if she is right it will be of the most |
| 11  all water under the bridge, it's all part and parcel of | 11  marginal and tangential hypothetical relevance on, well, |
| 12  the letter of request and the New York judge obviously | 12  if they'd asked, which they didn't, and if we'd agreed |
| 13  thought it was relevant or he wouldn't have made the | 13  to do it, which we wouldn't have, would they have known |
| 14  order in the terms in which he did". I think, with | 14  from the identity of the sources something extra from |
| 15  respect, that's putting too fine a gloss on it. | 15  what they'd have known about the underlying documents |
| 16  MR GEORGE: That would be the position if I was inviting | 16  they're going to get anyway. |
| 17  my Lady to strike out whole categories of documents for | 17  MRS JUSTICE ANDREWS: Putting the case at its highest, |
| 18  this reason, because that would be effectively to | 18  it's: if Rio Tinto had exercised its powers to compel -- |
| 19  second-guess that exercise in America. I am not | 19  for the purposes of the argument we assume they've |
| 20  objecting to the class of documents in principle. I'm | 20  got -- to compel the business entities to reveal this |
| 21  seeking to protect the very narrow piece of information | 21  information to them, would it have put them in a |
| 22  within that. | 22  position where they should have commenced proceedings |
| 23      In those circumstances, you are in no way revisiting | 23  much sooner? |
| 24  anything that the American court has done, and indeed -- | 24  MR GEORGE: Yes. |
| 25  I will hand up the transcript before I finish because it | 25  MRS JUSTICE ANDREWS: That's what it comes down to. |
| Page 154 | Page 156 |

DTI Global                    www.dtiglobal.com                    8th Floor, 165 Fleet Street
(+44) 207 404 1400                                                London EC4A 2DY

Rio Tinto Plc v Vale SA & ors                                    25 June 2015

| | |
|---|---|
| 1 MR GEORGE:  And it is almost impossible to see how the | 1 or create other recriminations.  It is only if you |
| 2   identity of the source is going to affect that | 2   cannot dispose fairly or justly of the case otherwise, |
| 3   evaluation by the American court. | 3   and in my submission that requires -- and my Lady is |
| 4 MRS JUSTICE ANDREWS:  On the one hand, you might say it | 4   obviously right, that if it was critical, and the |
| 5   might have affected Rio Tinto's evaluation, but the | 5   English authorities in the bundle demonstrate, that |
| 6   problem is there's already been a value judgment applied | 6   obviously was of critical importance, there is going to |
| 7   to that information by your clients.  If that's going to | 7   be a very finely judged balancing exercise to be carried |
| 8   be attributed to Rio Tinto, whether they knew it or not, | 8   out. |
| 9   then you don't need to know who the source is because | 9     Where one simply cannot see the relevance at all, |
| 10   you have done the thinking for them. | 10   and it's marginal and tenuous at best, there is, in my |
| 11 MR GEORGE:  Precisely.  I have heard what my Lady has said | 11   submission, very little evidence that is required to get |
| 12   about the timing point, but in this particular context | 12   over the relevant threshold.  I entirely hear what |
| 13   the timing point is important because there is no basis | 13   my Lady says in relation to the evidence, and partly |
| 14   on the evidence that's been put forward, the idea that | 14   obviously that's why I've prepared a schedule, so |
| 15   you have to move as soon as possible -- | 15   my Lady can weigh it in toto rather than scurrying |
| 16 MRS JUSTICE ANDREWS:  I didn't follow that point. | 16   around throughout the witness statements, but |
| 17 MR GEORGE:  Precisely, my Lady.  Leaving aside that, on this | 17   cumulatively in my submission. |
| 18   analysis it clearly is relevant whether this exercise we | 18     My learned friend is quite wrong to suggest that |
| 19   are now hypothesising, they would have asked, we would | 19   I have stood up and said it's her burden of proof and |
| 20   have told them, they would have learnt X or Y, took | 20   that's that.  We have adduced -- |
| 21   place within the primary limitation period. | 21 MRS JUSTICE ANDREWS:  No, you have accepted it is your |
| 22     Because if it did, and subject to that point which | 22   burden of proof. |
| 23   we are parking for the moment, it is irrelevant, because | 23 MR GEORGE:  Quite.  I have adduced evidence to try and meet |
| 24   of the timing point.  That's not revisiting anything or | 24   it.  And that evidence establishes, as I have said, some |
| 25   contradicting anything the American court have said in | 25   of the submissions that are made are not correct.  We |
| Page 157 | Page 159 |

| | |
|---|---|
| 1   the letter of request about what may be a prima facie -- | 1   have expressed evidence as to the assurances given to |
| 2   it's identifying the weight of the relevance, but | 2   each of the associates and sources, express evidence |
| 3   effectively one can assess it at zero for these purposes | 3   that this was not litigation support, and I won't read |
| 4   because all of that exercise within the limitation | 4   out the other bits of the schedule because my Lady has |
| 5   period simply cannot take anybody anywhere. | 5   it and my Lady will consider it. |
| 6 MRS JUSTICE ANDREWS:  Well I can see that information after | 6     It's obviously perfectly proper to make submissions |
| 7   the event might be the foundation for an argument where | 7   about the evidence, but this is not a burden of proof |
| 8   you were able to get this with ease in 2010; you could | 8   case.  I have put forward my evidence and in my |
| 9   have got it equally easily in 2008 if you'd actually | 9   respectful submission -- |
| 10   asked the question.  That I can see. | 10 MRS JUSTICE ANDREWS:  You say it's enough, Ms Cockerill says |
| 11 MR GEORGE:  In my submission, you don't need the identity of | 11   it isn't, that you should have descended to more |
| 12   the source from that. | 12   specificity and I have to make up my mind up. |
| 13 MRS JUSTICE ANDREWS:  No, you don't. | 13 MR GEORGE:  Precisely.  On the other hand of that, I say, |
| 14 MR GEORGE:  You can just make the submission, "You retained | 14   when one looks at relevance, it is, with respect, my |
| 15   Livingstone in 2010.  Why didn't you retain them in | 15   respectful submission that our evidence is an awful lot |
| 16   2008?"  I mean, that's how the submissions can be put | 16   more impressive than the explanations that have been put |
| 17   and I am not -- I have no axe to grind otherwise, | 17   forward by the American lawyers through my learned |
| 18   whether that's a good point or a bad point, but you do | 18   friend, who I appreciate has only passed on what she has |
| 19   not need to know the identity of the source in order to | 19   been told about New York law, as to why anyone considers |
| 20   make it, in my submission. | 20   these are going to be of relevance to disposing fairly |
| 21 MRS JUSTICE ANDREWS:  It's food for thought anyway. | 21   of the case, as opposed to an obvious litigation tactic |
| 22 MR GEORGE:  My Lady, we respectfully wholeheartedly endorse | 22   pressure point in incredibly high well-resourced and |
| 23   the proposition, which is entirely consistent with | 23   fought litigation, that is obviously of the nature we |
| 24   Nasse, that one starts by looking at relevance -- it is | 24   are all familiar with that's taking place in the United |
| 25   only a last resort that one would breach confidentiality | 25   States. |
| Page 158 | Page 160 |

40 (Pages 157 to 160)

1     In my submission, when one looks at it very clearly,
2  the relevance versus the prejudice, putting all of the
3  categories of potential prejudice under that heading, it
4  is quite clear that very limited redactions that
5  I invite the court to make are appropriate.
6  MRS JUSTICE ANDREWS:  Before you sit down, there's
7  a question of Mr Humphrey.
8     I think that we've got to Mr Humphrey saying he's
9  got no relevant evidence to give in relation to the
10  material in the documents, the information in the
11  documents themselves, and I think you've got
12  a concession that they can't go on a sort of
13  Westinghouse expedition with him.
14     Why should he not in the normal way answer to the
15  subpoena ducestecum so as to be able to (A) answer
16  questions in relation to the searches that have been
17  carried out, given that this procedure doesn't actually
18  allow for a witness statement instead of somebody
19  turning up and (B) to provide evidence in answer to
20  questions about the destruction of the documents.
21     In particular, I'm interested to know what you have
22  to say about Ms Cockerill's point that he was in the
23  position that he's now in at the time when these
24  documents were destroyed on the instructions of Rio
25  Tinto.

Page 161

1  place now, or in the next 28 days before the order
2  requires to be complied with, to be conducted on the
3  basis of agreements and negotiations between the
4  parties.  That is perfectly sensible.
5     Having Mr Humphrey turn up and answer questions
6  about them isn't going to take anyone any further.
7     Secondly, as to the destruction point, you have the
8  evidence of Mr Humphrey, I showed it to you earlier.
9  Yes, you can probably say, "That happened on your
10  watch".  I mean, he clearly didn't know about it, that's
11  implicit from what he said when Mr Brown and Mr Leighton
12  told him.  Yes, "If that must be said, this is most
13  unsatisfactory, isn't it, what Mr Brown and Mr Leighton
14  did", and he may well agree, he may well have something
15  to say.  That won't take the litigation position any
16  further forward for anyone.  What will take the position
17  forward, potentially, is Mr Brown and Mr Leighton coming
18  to court and asking questions about what they did and
19  why they did it in breach of company policy, if that's
20  the position.
21     So, in my submission, this is disproportionate and,
22  the use of effective case management, the court should
23  order whether a proper report be compiled of the
24  searches, particularly of a nil return if it's going to
25  be provided, but that there is nothing that Mr Humphrey

Page 163

1  MR GEORGE:  My Lady, two submissions in relation to that.
2     In the modern age of the -- and we are all familiar
3  with the way civil procedure works and we are not
4  seeking to deny anyone an opportunity; it's simply
5  a question of a pointless exercise, in our submission,
6  in fact for both sides.
7     As far as the searches are concerned, Mr Humphrey,
8  we have said, will obviously -- he's provided a witness
9  statement already explaining previous searches.  There
10  will obviously be one provided as to the further ones
11  that have been carried out.
12     If there are questions about that, in a sense the
13  better way is for these -- exchange of correspondence so
14  further searches can be carried out, if appropriate.  To
15  have this done orally is unlikely to produce anything
16  useful beyond -- it may not even be within the power to
17  have further searches carried out, you will just end up
18  with some evidence that these were not very satisfactory
19  searches.  That sort of thing will be handled in
20  advance.
21     So in a sense we are not going to get better
22  searches out of having Mr Humphrey turn up and sit there
23  and be criticised, that evidence will be of no use at
24  all.
25     What's relevant is for the searches that are to take

Page 162

1  can usefully assist the court with.
2     My Lady, finally one asks -- we see the point of the
3  hostile witnesses, and we are not going to object to the
4  power being exercised.
5     My instructions are we would consider it
6  appropriate, particularly as I understand from my
7  learned friend this is a normal course, that an officer
8  who has been trained and has experience in using that
9  power of hostile witness, which certainly as
10  a practitioner one simply doesn't and wouldn't be
11  appointed, an so we would ask for the Master --
12          Discussion
13  MRS JUSTICE ANDREWS:  An order that a Master do it.  Would
14  you be content with that, Ms Cockerill?
15  MS COCKERILL:  I would be very content, my Lady, if it's
16  possible to get a Master.
17  MRS JUSTICE ANDREWS:  I can vary the order to provide that
18  the examination be carried out before a Master instead.
19     I am going to direct that Mr Humphrey should turn
20  up, but I make it very clear, Ms Cockerill, the ambit of
21  any questions that are to be asked of him are strictly
22  in relation to his role as the producer of the
23  documents, and that will extend to asking him any
24  questions about how they came to be destroyed, insofar
25  as you get anything of any value out of him.  I suspect

Page 164

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                              London EC4A 2DY

1  you won't get very much, but I don't think I can
2  properly stop you calling for him to produce it, given
3  that that's the normal procedure.
4      Of course, if he turns up and has nothing of any
5  value to say, there may be cost consequences.
6  MR GEORGE:  Yes, and the costs will be paid anyway because
7  that's part of the order --
8  MRS JUSTICE ANDREWS:  In which case, they do it at their own
9  risk.
10 MR GEORGE:  Precisely.  This, obviously, is an inter partes
11 application, but the normal compliance of the order is
12 that it would be at the expense of the applicants.
13 MRS JUSTICE ANDREWS:  All more reason then why I shouldn't
14 shut out Vale from having at least the opportunity to
15 ask him that.  But I am putting down the very clear
16 marker: there's not going to be any type of British
17 Westinghouse type questions being asked of him, and that
18 ought to be reflected, I think, in the order when it's
19 finally drawn up.
20 MR GEORGE:  Yes, my Lady.
21     Two final things.  I have said three times now, I
22 think, I will hand up the full transcript of the
23 American proceedings.  My team are getting concerned
24 I will leave without doing it (Handed).
25 MRS JUSTICE ANDREWS:  Thank you very much.

Page 165

1  That will save both of you time because if I have the
2  template of the order, we can then just incorporate
3  whatever I decide about the redactions and then it can
4  be signed off and handed to you through the associate
5  straight away on Monday and that will save time.
6  MR GEORGE:  If we put alternative proposals, insofar as
7  there are outstanding disputes, it would be relatively
8  easy for my Lady to say yay or nay.
9  MRS JUSTICE ANDREWS:  Yes, I'll go for this or no for that.
10 That would be terribly helpful if you both have the time
11 to do it, and I appreciate the offer thank you.
12 MS COCKERILL:  We will see what we can achieve, my Lady
13 MRS JUSTICE ANDREWS:  Thank you very much.
14 (3.42 pm)
15     (The hearing concluded)
16

17 Housekeeping ........................................1

Submissions by MR GEORGE ...........................3
18
Submissions by MS COCKERILL ........................8
19
Submissions by MR GEORGE ..........................19
20
Submissions by MS COCKERILL .......................24
21
Submissions by MR GEORGE ..........................26
22
Submissions by MS COCKERILL .......................74
23
Submissions by MR GEORGE ..........................75
24
Submissions by MS COCKERILL .......................79
25

Page 167

1  MR GEORGE:  I do not think this is controversial: one of the
2  orders we seek will need a formal extension for
3  compliance with the order, in whatever form my Lady
4  finally orders, and then obviously we will comply with
5  that.
6  MRS JUSTICE ANDREWS:  All necessary extensions in principle
7  will be granted.  I hope the parties can come to
8  reasonable accommodation in terms of timescale.
9  MR GEORGE:  I am grateful, my Lady.
10 MRS JUSTICE ANDREWS:  Obviously there's no point making an
11 order saying that you must comply with it if you cannot
12 comply with it or the timescale has already gone.
13     Thank you both very much indeed.
14     I will reserve judgment.  I think it is likely to be
15 Monday morning.
16     I will do my level best to get you something to look
17 at in advance, I cannot promise it, but I will try very
18 hard to get you something by close of business tomorrow.
19 MR GEORGE:  I am grateful.
20 MS COCKERILL:  My Lady, if we make any progress agreeing the
21 specificity matters, is it worth communicating with your
22 clerk for you to incorporate it or shall we just leave
23 it for Monday?
24 MRS JUSTICE ANDREWS:  It would be helpful to have a draft
25 order in advance, if you can manage to get that far.

Page 166

1

Submissions by MS COCKERILL .......................88
2
Submissions by MR GEORGE .........................149
3
Discussion ........................................164
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 168

DTI Global                    www.dtiglobal.com              8th Floor, 165 Fleet Street
(+44) 207 404 1400                                           London EC4A 2DY

**A**

abeyance 89:22
ability 91:15
   98:16
able 4:16 5:11
   12:24 14:25
   15:12 16:4,9
   16:14 38:2
   39:18,19 65:8
   66:12 70:5
   85:15 86:19
   87:16,18 93:6
   97:4,13 98:4
   103:11 110:15
   110:17 120:13
   142:20 147:12
   158:8 161:15
abrogated
   152:11
absence 23:15
   132:15
absent 150:23
absolutely 54:21
   85:14 113:12
   113:17 130:24
   152:20 153:17
academic 40:14
accedes 83:24
accept 9:10 53:8
   69:17 75:25
   77:3 96:23
   99:8 114:14
   116:6,24
acceptable 24:15
accepted 61:10
   135:7,9 159:21
access 40:7
   130:2
accommodation
   166:8
account 14:20
   63:2
accounts 32:17
   122:6
accurate 117:16
achieve 167:12
achieved 63:10
acquaintance
   133:11
act 3:17 38:24
   40:22 47:23
   98:17 136:14
acted 4:2 126:8
   136:18
acting 37:4
   40:11 107:7
   118:4
action 17:20
   110:21 136:22
actions 54:16
actively 139:9

activities 65:17
   65:18 66:2,17
   132:6
activity 150:2
actual 58:2 59:2
   96:17 103:1
add 11:16 50:17
   85:15 148:8
address 46:2
   64:19 79:11
   101:6 110:4
   128:4 149:8
addressed 137:2
   137:4
addressing
   29:10 90:5
   129:16
adds 100:3
adduced 159:20
   159:23
adequate 82:5
adjourn 131:4
adjournment
   76:9 92:6
   93:19 101:16
   101:19 102:2
administrative
   68:2 77:11
   153:9
admissible 8:10
   8:13 51:9
admit 75:8
adopt 78:10
Adrian 91:5
advance 14:11
   14:25 58:17
   104:24 162:20
   166:17,25
advanced 12:19
   17:4
advances 15:9
advancing 17:2
advice 130:3
advised 42:3
affairs 11:22
affect 134:9
   157:2
affidavit 83:20
afraid 1:19
   18:21 24:14
   72:20 115:19
   149:14
African 44:23
afternoon 99:7
   102:8 140:1
   148:11
age 162:2
agencies 37:3
agency 96:10
agents 97:22
aggrieved 54:15

ago 129:8
agree 8:22 20:21
   33:13 48:20
   82:6,15 100:5
   113:18 137:24
   145:12 163:14
agreed 42:20
   43:20 66:15
   77:1 78:16
   81:1 83:2
   156:12
agreeing 166:20
agreement 33:4
   46:1 62:6
   124:21,24
   125:1,2
agreements
   33:21 124:17
   163:3
agrees 14:7
   103:20
aid 119:2
aimed 66:6,17
   71:16
akin 79:21
albeit 5:12
alert 108:17
alive 21:11
allegation 18:9
   27:22 34:23
   58:6
allegations
   12:23 17:1
   104:6
alleged 17:8
   18:9 88:25
alleging 3:15
allow 22:4 83:6
   99:20 121:18
   152:4 161:18
allowed 7:4
   51:22,22 75:17
   98:25 143:14
allowing 110:1
allows 51:7
   107:2
alls 73:12
Alright 94:1
   103:3
alternative
   70:15 72:2
   167:6
ambiguity
   149:11
ambit 85:3
   164:20
amended 91:7
America 52:10
   154:19
American 1:12
   8:19,20 24:18

26:25 27:4,20
   30:6 77:6
   151:9 154:24
   155:2 157:3,25
   160:17 165:23
amount 115:19
   148:7
ample 141:2
amplification
   69:4
amusingly
   108:25
analogies 3:25
analogous
   117:19 119:5
analogy 4:8 47:8
analysis 50:6
   51:2 141:5
   157:18
ANDREWS 1:4
   1:9,17,24 2:4
   2:14,18,21
   3:15,19 4:10
   4:19 6:5,17,22
   7:11 8:23 9:22
   11:2,10 12:6
   13:17 14:14,17
   15:16 16:21
   17:19 18:1,17
   18:19,22 19:7
   19:10,12,22
   20:7 21:7
   22:10,14,20
   23:14 24:12,21
   25:1,4,12,17
   26:1,16 27:5
   27:10,22 28:19
   29:9,14,20
   31:3,10,17,20
   33:24 34:22
   35:4,21,24
   36:16 37:14,19
   37:22 38:4,6
   38:17,24 39:11
   40:1 42:16
   43:3,16 44:7
   44:12 45:4,19
   47:14,19 48:8
   48:15 49:4,8
   50:9 51:4,15
   52:3,14,21,24
   54:3,9 55:3,21
   56:4,7,21
   57:16,22 59:9
   60:16,19,23
   61:5,16,20,24
   62:12,20 64:16
   64:20 65:5,25
   66:6,21,24
   67:13,17,19
   68:6,17,25

69:9,19 70:6,9
   70:13,19 71:6
   71:14,23 72:5
   72:21,24 73:4
   73:9,14,22
   74:5,14,16,19
   74:23 75:6,20
   76:5,15 77:16
   78:6,14,19
   79:4 81:3,8
   82:6,12,22
   83:16 84:16
   85:3,11,17,19
   87:18 89:23
   90:7 91:2,14
   91:24 92:2,15
   92:23 93:5,22
   94:1,6,12,15
   94:22 95:13,20
   96:10 97:6,8
   97:12 98:6,8
   98:20 99:2,10
   100:12 101:8
   101:17,21
   102:12 103:3,9
   105:15,18,22
   106:3,17
   107:17,21
   108:5,14,21
   109:24 110:13
   111:12 112:9
   113:7,18
   114:10,19
   115:21,25
   116:11,14
   118:19 119:9
   120:8 121:24
   123:9,21 124:5
   124:22 125:5
   125:14,18
   126:7,18 127:7
   128:1,12,18
   129:12,21
   130:12,22
   131:4,20 132:7
   132:10,15
   133:1,20 134:5
   134:12 135:1,9
   135:16 136:3
   137:17 138:3
   138:17 139:2
   139:16 141:15
   143:16,24
   144:21 145:4
   145:23 146:3
   146:15 147:18
   148:12,21,24
   149:16 150:3
   152:14 153:25
   155:11,18,21

156:2,17,25
   157:4,16 158:6
   158:13,21
   159:21 160:10
   161:6 164:13
   164:17 165:8
   165:13,25
   166:6,10,24
   167:9,13
and/or 16:18
   30:13
Angus 75:3
annexed 67:7
announcement
   97:5
annoyance
   39:12
annoyed 39:10
annoying 39:9
   131:19
anomaly 145:18
   145:19 146:19
anonymised
   9:13 11:20,24
   12:20 13:23
anonymity
   11:18 126:17
anonymous
   43:18,19
answer 4:13
   11:25 80:25
   93:15 101:12
   107:12,13
   117:10 142:19
   144:9 146:14
   146:14,18
   154:10 161:14
   161:15,19
   163:5
answered 51:8
answering 85:1
anticipate 2:17
   6:3
anybody 36:3
   38:12 120:14
   123:1 134:10
   158:5
anymore 77:21
   120:14
anyway 18:19
   39:7 99:2
   100:25 148:22
   156:16 158:21
   165:6
apart 45:4 99:22
   136:24 146:3
apologies 2:6
   61:2
apologise 31:15
   60:13 70:8
   74:2 90:3

**apology** 101:21
**apparently** 93:4
98:1 108:13
**appear** 1:10
61:19 97:16
107:19 131:11
131:12 147:11
**appears** 1:13
8:12 22:25
26:5 54:21
77:3 88:23
107:13 108:4
116:5
**applicants**
165:12
**application** 4:11
4:15 5:8 9:19
13:18,19,22,24
13:25 22:7
23:12 31:12
43:25 49:24,25
53:5 60:9
76:25 93:9
101:1 109:19
131:5 135:23
136:7,11,21
147:19,20
148:5 165:11
**applications**
64:6 91:12
**applied** 28:22
157:6
**apply** 3:13 50:11
**applying** 135:25
**appointed** 91:2
91:4,6 164:11
**appreciate** 8:6
26:20 31:15
61:12 68:3
89:8 90:15
102:13 160:18
167:11
**appreciates**
13:10
**approach** 22:11
41:2 60:1
91:11 103:8
109:18 118:10
118:14,17
128:8,17,19
138:6
**approached**
86:8
**approaches**
112:22
**appropriate** 2:3
22:18 64:5
101:24 107:7
161:5 162:14
164:6
**April** 53:13,15

53:16,19 55:17
55:20 56:11
59:8 97:4,14
97:19,21,25
99:15 100:1
**arbitrator**
116:23
**ARC** 6:21 42:15
44:23 45:1,3
59:12,12 61:8
61:22 62:1,7
72:20,20,21
73:5,6 78:11
125:4,5,7,9,18
125:20 149:19
149:20,21,24
150:10
**ARC's** 149:18
**area** 114:7
**areas** 111:23
118:12,15
129:3 148:10
**arguable** 108:2
**argued** 72:1
**arguing** 135:10
135:14
**argument** 4:16
6:6 10:19 31:5
33:24 37:9
40:16 41:17
44:20 46:4
49:19 58:2
62:3 63:17
67:10 76:21
77:4,22 78:3
96:9,13 100:17
115:12 117:9
117:13,23
119:5,6 120:15
128:9 136:12
138:18,19
139:20 142:14
144:24 145:5,7
156:19 158:7
**arguments** 41:4
84:11 108:19
151:15
**arises** 92:23
113:11 121:23
**arising** 59:7
**arrangement**
23:1
**arrived** 2:4
**article** 153:6,6,7
111,24
**articulated** 53:2
57:13
**aside** 63:20 87:5
154:5 157:17
**asked** 5:5,20 6:2
7:24 18:2,3
24:15 28:3

30:22,22 34:18
34:18 35:16
50:23 53:25
64:13 66:1
71:8 82:25
86:22 90:14
95:14,21
100:11,19,21
100:22 102:2
106:21 107:4
134:23 142:15
142:16 149:24
151:5 156:12
157:19 158:10
164:21 165:17
**asking** 48:8 72:6
93:2 107:8
129:18 131:6
136:5 163:18
164:23
**asks** 88:2 91:17
164:2
**aspect** 48:25
150:24
**aspects** 84:9
112:19
**assert** 144:3
**assertions** 121:7
147:9
**asserts** 150:23
**assess** 15:21
16:9 133:18
158:3
**assessing** 26:10
**assessment** 48:3
**assist** 22:4 26:10
38:2 79:2
86:13 104:4
108:11 151:23
164:1
**assistance** 5:20
31:7 87:16,19
**assistants** 47:24
**assisted** 133:6
**associate** 37:4
38:9 73:1
132:17,18
133:12 167:4
**associates** 30:13
36:18,21 37:10
37:12,15 38:6
38:19,22 41:14
44:16 45:5,9
63:20 132:8,9
132:11,24
152:10 160:2
**assume** 92:12
128:9,22,24
129:3 130:13
131:9 156:19
**assuming** 87:21

**assumption**
42:23 126:7
128:13,17
150:21
**assumptions**
129:20
**assurance** 30:12
30:15 45:2,20
126:14
**assurances**
34:24 35:19
36:25 37:3
42:21 45:8
126:5 160:1
**attach** 36:20
118:7
**attached** 79:23
133:17
**attaches** 23:23
**attaching** 87:10
**attachment**
24:23
**attack** 18:18
**attempt** 1:20 9:8
**attempted** 46:8
**attempts** 46:16
**attend** 78:22
88:15
**attention** 6:13
24:16 53:25
62:9 89:6,14
99:6 141:4
**attested** 84:4
**attitude** 142:23
**attracted** 127:2
**attraction** 116:4
**attractive** 119:2
**attribute** 142:20
**attributed**
110:19 127:8
141:20,22
157:8
**attribution**
111:6
**au** 14:13
**audit** 32:19
**author** 42:19
**authorities** 1:25
62:17 90:5
159:5
**authority** 62:15
76:2 130:20
**available** 11:14
12:10,22,25
13:9,12,13
95:10,11
100:23 108:20
110:22 138:15
**avoid** 108:19
**aware** 55:15
79:20 81:18

117:14 121:5
**awful** 160:15
**axe** 158:17

**B**

**B** 22:4 38:18,22
65:21 115:4
118:24 161:19
**back** 20:13,25
32:3 40:21
50:12 51:8
53:15 54:25
65:12 66:10
69:12,14,21
71:11 73:2
75:20 77:16,17
83:7,8 90:10
91:13 93:10
94:6,10 107:12
109:21 111:4
112:4 114:12
114:25 119:6
129:9 134:17
148:4
**background**
16:3 34:25
104:10
**backing** 65:25
**back-ups** 7:18
**bad** 99:2 158:18
**balance** 21:14
41:4 112:18
146:21 155:23
**balancing** 3:23
26:23 40:22
50:15 52:6
62:16 63:3,5
122:7 152:23
153:17 159:7
**bank** 69:11 70:9
122:3
**banker** 122:1
**bankers** 114:5
121:15 152:25
**banker's** 121:19
**banking** 121:25
122:1
**banks** 122:2
**bar** 10:20 17:5
**barred** 4:23
110:21
**barricades**
119:22
**base** 59:18
**based** 15:23
133:5,13,19
150:20
**bases** 47:25
**basically** 39:18
42:4 52:24
84:14 112:23

115:11 134:23
150:3
**basis** 3:2 5:4 7:3
8:7 13:17,20
13:21,23 14:12
14:20 15:1
16:23 18:1,3
26:14 41:8
44:17 47:1
52:17,25 58:3
60:10 73:24
77:1,5,21
78:23 82:16
86:21 96:10
108:5 114:23
121:7 126:3
127:16,24
128:21 134:8
136:4,8,10,21
139:17,17
147:20 149:10
152:1 153:3
157:13 163:3
**BCCI** 121:14
**bear** 1:19 12:22
47:9 96:16
120:22
**bearing** 82:18
110:20 153:14
**began** 45:3
**Begbies** 12:9
33:11,13 42:14
53:22 54:23
59:11 76:13,13
78:2,10 80:17
88:20,21 126:2
151:19
**beginning** 94:10
**behalf** 38:1
**behave** 128:23
**behaves** 128:14
**behaving** 92:18
**behaviour** 93:14
104:12 108:18
**believe** 13:6 70:7
91:5 96:11
138:13
**best** 4:13 20:5
34:24 35:5
46:20 47:4
84:23,25 85:9
104:18 108:11
139:5 159:10
166:16
**better** 49:4 58:6
62:21 142:18
147:2 162:13
162:21
**beyond** 38:20
55:18 86:18
136:25 138:4

162:16
**BGT** 79:16
    84:10,11 89:25
    90:11
**BGTSA** 83:11
**Bick** 65:6
**big** 116:11
**bill** 66:11
**billions** 54:17
**bills** 65:14 66:1
    66:7 67:24
    69:10,12
**bit** 54:3,10 56:1
    58:11 59:1
    74:19 96:15
    126:18
**bits** 160:4
**bizarre** 144:5
**Blackbird** 78:8
    80:22,25 82:10
**blanche** 48:10
    48:12
**Bloggs** 110:24
    122:23,25
**blue** 1:21 5:22
    19:9,10 37:21
    48:12 60:14
    65:12 72:24
    105:8,23
**bodies** 48:1
**boils** 45:4
**bolted** 54:11
**book** 76:3 90:6
    92:11
**boring** 115:18
**bottom** 70:17
    105:13
**bound** 33:6
    92:22 132:21
    156:2
**boy** 111:22
    140:22 141:13
**breach** 33:3,12
    33:21 34:2,8
    34:15,19 41:22
    130:20 134:2,3
    134:8,21,22
    158:25 163:19
**breached** 21:20
    42:1
**breaching** 49:21
    131:1
**bread** 123:18,19
**break** 11:12
    24:9 101:8,24
    101:25 139:24
**breaking** 63:9
    124:8
**breaks** 117:7
**bribery** 18:9
    55:16

**brick** 58:20
**bridge** 99:12
    154:11
**brief** 52:9
    137:15 155:3
**briefly** 29:11
    52:6
**bring** 80:5 98:3
    98:14
**brings** 94:6
**British** 52:21,22
    77:17 83:6
    165:16
**broad** 108:3
    121:7 147:9
**broke** 102:1
**brother** 116:21
**brought** 98:9
**Brown** 43:5,12
    43:15 86:2,3,8
    86:16 88:7,12
    126:3 151:22
    163:11,13,17
**Brown's** 43:14
**BSGR** 17:9,11
    17:16 18:10
    133:10 137:11
**BSGR's** 18:8
**BTG** 108:12
**bulk** 103:13
**bundle** 1:21,25
    6:18,18,20,22
    6:24 19:8
    24:21 25:16
    31:9 65:12
    72:20,22 73:5
    73:6,9,15,16
    73:18 105:7,8
    105:21,22,23
    106:2,4,5
    159:5
**bundles** 1:18,22
    6:15 29:24
    31:13 37:19
    60:24 62:17
    85:19
**burden** 82:23
    91:24 112:7,9
    112:14,24
    115:13 136:2
    159:19,22
    160:7
**business** 3:8
    28:4 35:13,14
    37:2 44:16
    46:10,23 47:6
    110:18 124:25
    134:17 138:22
    141:17,19
    142:21 146:10
    149:24 156:20

166:18
**businesses** 45:21
    54:20

**C**

**C** 38:18,22 65:13
    79:9
**calculated** 8:13
**call** 12:3 23:3
    34:10,13 44:14
    92:21 143:13
    143:21 146:4
**called** 17:9 55:4
    56:14 81:8,11
    81:21 92:24
**calling** 165:2
**canvassed** 149:7
**capability** 86:15
**capacity** 39:15
**card** 112:24
**careful** 116:3
    141:15
**carefully** 3:24
    63:22 110:10
    116:10 140:12
**carried** 40:22
    83:25 84:1,3
    87:9,20 93:17
    159:7 161:17
    162:11,14,17
    164:18
**carry** 32:19
    36:23 40:23
    78:15 81:3,12
    82:13,24 85:6
    118:2
**carrying** 82:17
    153:18
**cart** 127:10
**carte** 48:10,12
**case** 5:13 14:16
    15:1,7,10 17:3
    22:4,22 33:11
    33:18 35:12,16
    36:9,14 41:24
    43:23 45:6
    47:4 50:7 56:5
    57:3 58:17
    60:8 63:10,22
    80:16 81:19
    82:2 84:9 89:7
    90:11,19
    109:15 112:25
    113:2 115:5,15
    117:7 120:10
    121:8,20 122:1
    124:19 138:5
    144:4,14
    145:11 146:19
    149:3 151:17
    152:21 155:16

156:17 159:2
    160:8,21
    163:22 165:8
**cases** 20:16
    45:15 57:11
    84:7 92:16
    114:3,4,5
    118:14 119:25
    121:3,5,8,9,25
    155:5
**cat** 120:6
**catch** 56:15,21
    57:8 68:1
    73:12
**categories** 11:7
    11:13 14:4
    47:7 65:1
    72:19 81:5
    99:17 154:17
    161:3
**category** 5:23
    28:10 46:9
    57:2 67:20
    140:16,16
**cause** 40:5 72:17
**caused** 63:9
**causes** 84:3
    127:18
**cautious** 21:12
    114:2
**caveat** 6:11 8:16
    151:20
**century** 76:1
**certain** 2:11
    4:24 9:14
    10:20,21,23
    11:15 14:17
    36:25 57:25
    95:3 97:18
    116:18 151:12
**certainly** 2:6
    13:12 21:25
    22:4 29:18
    31:2 42:5
    59:24 61:14
    62:2 64:1 83:8
    87:4 89:15
    92:7 99:5
    108:1,3 124:1
    139:8,14 144:2
    144:9 164:9
**cetera** 25:7,7
    34:3
**chance** 131:11
**changed** 77:6
**chapter** 84:20
**characterise**
    46:3 48:12
    156:6
**characteristic**
    68:15

**charge** 66:14
**charged** 66:12
    84:15
**charges** 66:2
**check** 27:17
    62:10 70:7
**chink** 115:8
**choose** 91:9
    118:5
**chooses** 23:21
**circuit** 4:10
    38:15
**circular** 100:17
**circumstance**
    28:7
**circumstances**
    43:11 47:5
    113:3 121:22
    123:13,16
    124:13,14
    125:23,24
    151:12,13,25
    154:23
**cited** 18:16
    62:15
**citing** 104:25
**citizens** 117:14
**civil** 3:13 162:3
**claim** 7:6 18:15
    98:3,4,10
**claimed** 15:24
**claims** 18:8
    151:2
**class** 68:17,18
    70:6 154:20
**classes** 155:9
**classic** 62:15
**clause** 23:6
    31:20 32:12,16
    32:23 33:7,16
    33:18,19,25
    42:6 58:3,4
    59:15,19 61:14
    61:23 107:17
    143:16,20
    152:3
**clean** 73:19,20
    107:6 148:3
**clear** 30:17
    42:22 48:25
    53:4 54:22
    65:5 71:10,15
    107:19,21
    124:19 125:15
    125:20 151:20
    155:3 161:4
    164:20 165:15
**clearly** 14:24
    21:24 28:6
    31:5 48:4 59:6
    66:6 72:11

86:14 87:6
    88:1,8 151:24
    157:18 161:1
    163:10
**Cleary** 106:4
**clerk** 73:1
    166:22
**client** 20:5 69:2
    103:18 107:1
    121:19 122:2,5
    12:14,23 17:1
    17:6 19:20,24
    20:20 21:3
    23:13,20 26:1
    27:12,14,20
    28:3,18 41:15
    44:2 46:23
    47:25 55:5
    58:15 89:15
    101:15 102:15
    102:18 108:23
    109:25 115:25
    119:18,22
    151:7,11 152:2
    152:10 157:7
**client's** 20:9
    30:25 42:1
    122:6 134:24
**close** 10:6 36:7
    63:24 101:13
    111:13,21
    138:22 140:21
    140:21,25
    141:1 166:18
**closest** 120:19
**clubs** 21:1
**clutch** 124:23
**Cockerill** 1:4,8
    1:12 2:2,6 4:12
    8:23,24,25
    10:4,15 11:5
    11:25 12:9
    13:19 14:15
    15:12,17 17:3
    17:21 18:2,5
    18:18,21 20:8
    20:10,11 24:1
    24:11,13,23
    25:2,6,14,19
    49:9 50:2
    51:20 57:21,23
    59:17 74:20,21
    74:22,25 75:12
    79:5,6,7 81:7
    81:16 82:9,21
    83:5,9 84:7,18
    85:9 88:18,19
    89:24 90:8
    91:6,17,25
    93:23 94:1,5,8

94:14,17,24
95:18,23 96:11
97:8,11,13
98:7,16 99:4
100:5,25 101:5
101:21 102:1
103:5,12
105:16,20,25
106:7,19
107:18 108:3,9
108:16,23,25
110:4 111:1,19
112:22 113:17
113:20 114:11
115:6,22,24
116:2,12,13,24
119:1,24
120:17 123:5
123:16 124:4
124:11 125:4,7
125:9,16 126:6
126:15,20
127:10 128:4
128:13,16,24
129:14,21
130:9,16,24
131:6,22,24
132:9,14,25
133:4,25 134:7
134:19 135:6
135:12,23
137:2,19
138:24 140:1
143:2,23 144:1
145:1,9 146:2
146:13,17
147:23 148:17
148:23 149:4
150:9 152:15
160:10 164:14
164:15,20
166:20 167:12
167:18,20,22
167:24 168:1
Cockerill's
19:24 58:17
161:22
coda 109:16
cogent 153:1
collate 66:20
collated 75:22
75:22 76:6
colleagues 16:13
collect 75:10
collected 75:1,4
75:10
collusion 54:14
come 2:24 20:3
20:13 24:3
50:11 61:5
63:24 79:23

89:5,14 91:13
91:16 112:4
114:12,25
129:24 137:8
138:1 141:6
166:7
comes 2:22 5:24
9:15 11:1,25
22:24 39:5
44:1 51:19
111:12 130:3
130:10 135:19
156:25
comfort 71:25
coming 85:24
89:6 90:9
117:5 121:9
122:8 146:23
163:17
comity 112:13
116:8,15
commenced
156:22
commended
109:24
commends
138:25
commensurab...
63:6
commentary
12:16 29:25
commercial
117:20 119:4
119:14,17
commercially
154:7
commission
141:21
common 3:10
64:23
communicating
166:21
communication
4:6
community
46:23 134:22
companies 54:18
130:23,25
133:24 143:8
145:22
company 32:6
33:1 35:9 58:4
77:11 88:20
163:19
company's
133:11 134:17
compass 57:1
compatible
26:11
compel 147:21
156:18,20

compelled 80:11
compellingly
121:3
compendious
68:5,6
competing 3:11
146:21 153:21
compiled 72:15
163:23
complain 134:10
complaining
119:23
complete 45:17
76:19
complex 63:13
complexity
111:5
compliance
88:22 165:11
166:3
complied 86:4
163:2
comply 166:4,11
166:12
compute 66:12
concealing 16:7
concealment
97:3,7,17
98:10 111:4
137:9
conceded 64:25
70:8,11 74:3
conceivably
55:19
concentrate
120:18
concentrating
28:19
concern 26:18
29:7
concerned 9:23
13:4,10 15:19
25:22 45:21
53:5 69:13
78:1 96:20
101:2 121:11
124:9 148:15
151:18 162:7
165:23
concerning 69:3
73:25 74:8
concerns 22:17
23:12 104:10
concession
161:12
conclude 144:9
concluded
167:15
concluding
127:24
conclusion

149:23
conclusions
25:10
concrete 130:13
Conde 129:9
condition 125:21
conditions
125:12
conduct 3:1
15:25 16:7,19
51:24
conducted 163:2
conducting
93:15
conducts 84:3
93:7
confer 91:15
conferred 93:21
confidence
46:22 123:15
123:18 134:14
confidential
2:11 31:23,25
32:22 35:1
36:24,25 60:6
61:10 62:7
107:9,25
112:20 113:10
120:2 122:14
123:2,2,5,8,20
124:1,6,7
125:13 126:1
143:6 145:21
145:25 147:15
147:16 152:24
153:3
confidentiality
3:14 6:8 20:17
21:1,20 22:24
23:7,10,18,23
24:2 26:7,12
26:21 28:18
29:4,8,10 30:4
30:15 31:20
33:11,18 36:20
37:18 41:14
42:10,13 44:3
44:4 45:12
46:1,5,14
48:17,24 50:16
52:2,8 53:5
57:4,5,7 62:4
62:24 63:2,8
63:17,19 94:7
104:25 112:5
112:24 113:3
113:10,12
114:5,7,8
115:1,12 117:2
117:5,8,24
121:2,4,15,17

121:20,21
122:2,11 123:7
123:14 124:15
124:20 127:12
130:20 131:1
132:22 133:15
134:20 135:13
135:19,22
138:5 142:24
143:3 144:10
144:15 145:14
147:5,5,10
148:11,16
150:11 152:2,9
154:2 155:8,17
158:25
confirm 1:22
30:10 45:1
126:12
confirmed 43:5
86:2,4
confirming
88:17 151:7
conflicting 41:20
conjunction
69:23
connection 67:5
67:23 74:12
conscious 29:22
148:6
consent 76:24
91:20 93:20
consented 26:6
consequence
130:4
consequences
41:12 165:5
consider 22:18
50:15 63:6,9
98:24 102:2
129:18 139:10
141:23 160:5
164:5
considerable
40:8
consideration
3:11 149:2
155:13
considerations
3:5
considered
26:11,13 42:6
49:23 102:18
110:10
considering 3:23
22:15 28:10
153:20 155:5
considers 140:7
160:19
consistent
158:23

conspiracy 17:7
17:8,11 18:10
construction
33:7 59:19
constructive
109:18
consultancy
31:24 32:8,13
33:2
consultant 31:22
32:2,5 33:5
consultants
32:17,23,25
34:6
consulted 16:17
consulting 3:8
contact 104:23
105:1
contacts 17:11
17:13
contain 28:15
contained 29:5
Contempt 3:17
contended 33:8
content 78:7,21
102:9,24
138:14 139:1
164:14,15
contentious
109:21
contents 9:24
55:23 64:10
contested 7:20
7:22 120:5
context 10:5
25:21 39:6
47:13 62:16,25
92:24 113:4,11
113:21,22
120:6 137:7
157:12
continually
29:23
contract 23:7,11
23:19,19 31:4
31:8 33:1 34:1
34:5 41:21
42:9 61:17
106:11,20
107:14 134:2,3
134:8,11,21
143:19 144:6
150:11
contracts 152:12
contractual
23:15,15 30:23
44:14 58:14
113:11 123:11
146:4,11
contradict
107:14

contradicting
157:25
contrary 31:5
107:17 132:18
contrast 109:17
109:17
control 106:24
108:6 145:6
controversial
28:16 66:22
73:21 166:1
convenience
65:10
conveniens-type
128:8
convenient
48:13 101:9
138:14,16
139:21
conveniently
11:14
conversations
40:3 127:5,6
cooks 29:21
coordination
109:3,8
copies 1:15
48:15 80:3
copy 69:25 70:1
73:19 125:6
corporations
117:21
correct 21:25
36:12 56:12
80:5,10 159:25
correspondence
7:24 67:23
68:22 69:1,2,3
69:20 70:15
76:19,21 81:10
84:18 88:1
162:13
corruption 18:9
38:25 39:1,3
39:21 118:22
133:7
cost 165:5
costs 73:5
109:23 165:6
couched 143:17
counsel 20:24
73:3 87:13
149:20
countervailing
113:15,16
countries 128:2
128:7,10
country 30:13
36:6 47:15,22
48:5 118:22
119:21 153:9

153:11
coup 141:24
142:3,3
couple 15:14
17:7 60:23
85:2 94:9
103:15 118:13
course 3:23 6:5
25:19 36:13
38:7 40:21
45:10 68:12
72:18 79:20
81:25 82:1,18
82:25 83:24
88:17 92:17,19
94:25 95:8,23
96:16 97:9
102:5 103:9,23
104:5,14
107:13 109:3
110:1 113:22
114:3 117:4,11
119:5 132:20
138:25 147:3
150:9 153:16
164:7 165:4
courses 138:7
court 1:5,12
2:10 3:17,24
4:2,4 5:5,20,21
8:9 9:2,14 11:6
12:23 13:3,4
13:11,14 14:22
15:21 16:1,4
16:13,21,23
19:12 20:16
24:18 25:22
26:23,25 27:2
34:18 35:3,5
35:20 41:13
45:22 46:15
48:9 51:8
53:25 54:5
56:25 59:22,25
60:21 61:12,15
63:2 73:1 77:7
77:7 78:15
83:4 84:20
87:1 91:1,13
91:14,25 92:8
92:11 93:10
96:20 98:22
99:13,24 104:4
104:5 105:14
106:8,23
107:10 108:16
112:13 113:7
114:5 116:7,14
116:19,22
120:12 121:6
121:18,19

122:3,9 128:1
129:4,24,25
130:5,7 134:4
135:3 138:6
144:18,22
150:4,6 151:10
151:13 152:6
153:9,18
154:24 157:3
157:25 161:5
163:18,22
164:1
courts 46:17
54:4 87:17
89:10 123:23
court's 8:19,20
46:16
cover 11:8 18:6
39:20 111:21
111:24
covered 62:10
67:20 119:7
137:11
covers 101:4
create 132:5
159:1
credibility 15:21
credible 16:11
critical 115:3
152:20,25
153:2 159:4,6
criticised 162:23
cross 7:9 78:22
cross-examina...
51:20 76:14,17
77:6,12 86:23
88:3
cross-examine
77:4 93:6
cross-examined
77:8 84:6
92:25 93:1
crucial 156:4
crucially 141:11
CTG 25:15
cuff 137:22
cumulatively
159:17
cured 69:1
currently 46:25
47:1
custody 108:6
145:6
cut 6:2 21:14,22
22:1 83:22
cuts 115:9
cutting 21:6
114:14,16

———————
D
———————
D 62:23

damage 63:8
damages 46:10
danger 36:4
39:4,8 110:3
129:14,16,17
131:1
dangers 45:17
130:7
dare 119:21
dark 112:2
database 12:10
date 33:25 34:5
53:12 55:23
56:1 59:6
98:11,12
dated 55:10
dates 72:1 95:16
day 50:14
days 89:11
100:13 163:1
dead 58:24
deal 6:7 9:15
40:12 77:18
80:14 82:15
88:25 89:2,20
91:11 94:10,12
94:18 95:18,19
96:12 103:11
103:13 138:2
dealing 5:17,18
19:23 37:24
44:7 85:20
88:21 114:24
120:20 121:25
142:10,11
152:19 153:6
153:12
deals 66:21
105:6 142:8
dealt 84:25
148:9 150:13
debate 30:23
76:1 114:12
156:6
debated 78:12
152:3
debates 149:8
debating 67:1
decide 167:3
decision 8:11
138:20,21
decree 34:3
defence 7:6
10:14 99:4
110:22 136:16
define 68:14
defined 32:1
definitely 18:16
degree 111:5
143:1
degrees 59:21

delayed 131:8
deliberate 46:21
demand 152:4
demands 146:22
demonstrate
55:14 159:5
denied 103:22
Denning 123:15
deny 109:3
162:4
depend 141:11
depends 31:3
55:21 120:8
deponent 43:5
deponents 35:19
deprecated
153:19
deprived 16:16
descend 153:7
descended
160:11
describe 68:14
71:2 75:8
described 65:4
68:8 73:12
description 19:3
19:13 49:15
68:5,6,9,11
70:24 71:11
72:8 111:24
114:15,17
126:25 127:17
140:10 146:25
147:2
descriptions
102:22 110:1
111:25 114:20
destroy 84:12
86:2
destroyed 89:5,5
89:8 90:12
161:24 164:24
destruction
84:17 86:12
88:24 89:3,16
131:21 161:20
163:7
detail 4:5 29:15
124:12 140:13
140:15,19
detailed 32:15
120:21
details 26:9
121:6
determination
18:13 33:16
102:6 107:19
137:23
determinative
13:9 31:8
32:10

determine 16:5
20:6 64:21
65:8 104:6
determining
16:15 152:8
deterred 119:12
develop 38:19
54:12
difference 40:12
45:24 54:1
111:9,23 112:5
different 10:4
29:24 34:9
37:2 46:4
47:12,13 62:1
62:8 76:13
78:6 119:14
133:6 134:13
136:23 141:2
142:11 147:17
155:9
differently
113:20 151:19
difficult 20:17
51:5 71:3,4
75:9 110:14
145:17
difficulties 22:22
72:15
difficulty 51:11
51:12 68:18
72:5,18 127:19
156:3
dig 132:13
digression 76:10
diligence 10:1
10:18,22 57:20
57:25 58:14
95:6
direct 35:8
43:14 93:16
106:8 164:19
directed 5:1 9:2
9:3 108:7
directing 106:10
direction 110:10
147:1
directly 37:3
49:12 74:9
107:17
disallowed 99:18
discharge 78:9
disclose 27:24
29:2 45:23
46:1 56:25
70:1 107:8
120:12 122:1
disclosed 5:24
21:15 27:8,19
28:17 30:14
37:1 41:7 43:6

43:11,20,22
44:4,6 45:3,9
47:2 56:6 60:7
70:1 96:18
112:8 113:16
120:3 121:16
122:4 125:22
127:25 135:20
152:22
**disclosing** 21:23
**disclosure** 5:1
5:23 8:4 28:23
45:25 49:2,13
49:24 50:12
51:15,16 62:25
63:23 82:8,17
83:1,21,25
88:5 102:16
103:1 108:8
113:4,8,13,21
113:24 114:23
121:17 136:7
140:16
**discoverability**
77:14
**discoverable** 7:7
52:20 77:14
**discovered**
97:18,25 98:18
**discovery** 7:4,4
8:13 63:12
98:5
**discrete** 60:10
**discretion** 5:25
14:19 50:15
99:17 116:19
116:20 153:20
**discuss** 57:6
**discussed** 60:17
79:10,12
**discussing**
107:15 140:9
**discussion** 2:13
124:11 164:12
168:3
**discussions**
94:16
**disloyalty**
134:15
**dismiss** 128:20
**dispatched** 2:7
**dispose** 63:10
159:2
**disposed** 63:22
**disposing** 160:20
**disproportion...**
163:21
**dispute** 18:13
**disputes** 104:3
167:7
**dissatisfied** 83:1

**disseminate**
123:10
**disseminated**
123:12
**dissimilar** 3:12
**distinct** 150:2
**distinction** 36:17
107:22 124:2
**distracting**
141:4
**Ditto** 40:5,14
**divulge** 134:1,2
134:7 144:23
**divulged** 122:16
122:17,18,20
132:19
**document** 6:19
48:23 65:3
68:9,10,12,16
69:24,25 78:1
80:23 82:3
88:23 89:12,12
**documentation**
64:24,24 66:10
86:3 88:24
**documents** 5:13
9:20,23,24
13:23 14:4,4,6
14:8,13,21,21
14:23,25 20:21
25:10,18,22,24
27:11 28:11
48:16 49:6,11
55:9,14 56:23
66:25 67:20,25
69:5,19 70:20
70:25 71:3,17
72:2,7 73:11
73:24 74:8,11
74:13 75:1,4,9
75:16,17,21
77:13,15 79:21
79:23,24 80:2
80:6,9,15 81:2
81:4 83:11,13
84:13,15 85:6
85:7,10 86:12
87:10 89:2,4,4
89:8,16,17,19
90:10,11 99:24
104:18 108:12
113:5,9 114:8
115:14 116:16
134:24 135:2,4
135:6 136:12
154:17,20
155:10 156:15
161:10,11,20
161:24 164:23
**dodgy** 10:9
**doing** 1:5 12:19

13:1 38:10
51:21 63:11
83:22 91:23
108:10 118:23
119:3,3 124:9
134:11 165:24
**dollars** 54:17
**domain** 36:1
124:6
**door** 13:2 54:10
83:7,7 115:8
115:23
**dossiers** 141:1
**doubt** 12:8 63:4
68:20 72:17
75:13 87:23
94:3 119:17
143:16
**doubtless** 50:24
86:19 151:14
**dovetails** 148:4
**draconian** 42:6
**draft** 26:8
166:24
**drafted** 66:5
**drafting** 70:4
72:17
**draw** 6:13 24:16
62:9 100:15
**drawing** 124:2
**drawn** 3:25
42:19 53:24
165:19
**draws** 36:17
**drill** 110:14
**drilling** 69:1
**driving** 69:9
74:24
**dry** 119:21
**dual** 79:19
**dubious** 104:20
**ducestecum**
79:22,22 89:19
161:15
**due** 58:13 72:18
88:17 95:5
**duties** 23:10
26:12
**duty** 22:23 23:17
23:22 26:21
41:14 48:16,24
48:25 108:22
122:2 123:15
**dwell** 74:4
**DWF** 1:23 6:22
31:9,16 43:1

━━━━ E ━━━━
**E** 66:23,24 79:10
**earlier** 2:7 25:19
55:24 56:3

98:5,10 100:16
107:16 111:2
126:10 136:14
140:20 148:18
163:8
**early** 97:14,15
100:13
**earn** 39:19,20
**ease** 158:8
**easier** 61:4
85:23
**easily** 143:24
158:9
**easy** 122:7 167:8
**economic** 39:25
**effect** 42:7 60:25
77:2 112:12
130:21
**effective** 32:19
163:22
**effectively** 3:4
9:13 14:6
26:25 32:13
36:22 50:5
64:11 75:2
79:19,25 80:2
88:5 115:8,9
116:7 118:7
143:9 144:17
146:19 147:4
147:25 154:18
155:10 158:3
**either** 11:4
22:22 32:7
38:4 50:10
74:15 90:22
95:10 123:11
138:6,9 139:19
**electronic** 82:13
82:17
**element** 29:18
63:1 99:12
**else's** 119:4
**email** 82:1
**emphasise** 63:15
**employ** 39:13
**employee** 37:5
**employment**
133:22,25
134:9
**enable** 4:21 5:16
15:20 19:24
32:12,18 52:18
136:12 142:7
**enables** 32:18
**encompass**
65:19
**encourage** 70:12
**encouraging**
22:12 41:1
88:10

**endorse** 158:22
**engage** 118:15
**engaged** 36:23
**engagement**
25:9 61:9
**engages** 29:3
**English** 3:13 8:9
31:4 53:25
61:20 62:15,24
116:22 143:19
155:3 159:5
**enjoy** 73:2
**enlisted** 132:13
**enquiries** 57:24
86:18 133:7
**enquiry** 83:6
**entered** 43:8
124:25 126:2
**entire** 96:20
119:6
**entirely** 2:18
8:22 9:1,7
10:10 20:15,16
23:25 49:19
53:2,7 54:13
68:3,14 69:16
69:17 88:11
90:16 91:8
96:14 100:17
116:24 117:3
130:9 139:12
144:12 158:23
159:12
**entities** 125:1
141:18,19
142:21 146:1
147:21 156:20
**entitled** 14:7,15
31:1 32:21
42:8 77:19
83:14 107:23
143:21 147:21
**entitlement**
30:24
**entitles** 107:24
**entry** 30:8 55:13
**equally** 35:2
47:21 54:15,15
138:15 158:9
**equitable** 57:21
57:22,23 58:19
95:6 96:7 98:8
110:21 136:16
137:7 141:8
**eschew** 109:25
109:25
**essential** 4:25
**essentially** 91:21
104:11 113:2
115:7 117:17
119:4 120:18

121:1
**establish** 121:2
136:1
**established**
41:16 114:6
132:2 133:2,4
**establishes**
159:24
**establishing**
17:10
**estate** 74:9,17
**et** 25:7,7 34:3
**evaluate** 5:11
9:18 10:16
11:4 12:24
44:17,18 93:13
110:15,17
141:25 142:4
**evaluating** 14:18
63:16 114:18
**evaluation** 10:12
12:15 157:3,5
**evening** 138:9
**event** 30:14 54:8
158:7
**events** 40:3
55:24,25 86:11
99:25 127:5,6
**eventuates**
155:23
**everybody** 14:7
33:9 45:19
62:2 93:10
103:20 128:14
**everybody's**
24:3
**evidence** 3:19,24
4:1,5,9 8:10,12
8:14,18 9:4,18
10:12,13 11:1
17:11 29:23
30:1,4,19
33:15 34:23
35:3,5,8,10,12
36:2,23 37:17
38:19 39:23
40:24 41:13
42:22 44:24
46:7,10 47:15
47:24 48:16
49:22 50:12
56:19 59:24
61:14 62:6,9
63:18,24 65:20
77:25,25 80:7
80:8,11,13
92:7 98:22
100:7 103:21
103:25 110:3,5
113:24,25
114:18 117:4

120:9,15,19,20
122:4 125:7,20
128:20,21
129:1,5,17
130:12 131:3,9
132:16,23
140:18 146:7
146:15,16
150:1 151:10
151:12,19
152:16 153:1
155:15,23
156:9 157:14
159:11,13,23
159:24 160:1,2
160:7,8,15
161:9,19
162:18,23
163:8
evidencing
69:19
evidential
112:14
evidently 42:17
42:20 43:13
126:6
ex 40:16 122:10
exactly 13:5
68:8,20 70:3
102:8 103:25
107:18 121:16
128:7,14 146:2
examination
50:20 90:16
92:17 93:8,15
93:16 164:18
examination-i...
93:4
examine 117:6
examined 25:5
92:25
examiner 51:4,7
90:17,23,24
91:2,6,15,18
94:3
examiners 91:22
example 17:6
55:9 59:7 97:1
102:22 121:13
128:8 140:24
141:25
examples 118:13
120:24,25
exception 27:6
exceptional
113:3
excerpt 145:7
exchange 70:5
162:13
excuse 103:15
execution 33:1

executive 133:2
133:5,10
executives 40:15
40:16
exercise 3:23
5:25 14:19
50:15 59:15,20
63:14 92:13
117:17 122:8
153:18 154:19
155:3,8 157:18
158:4 159:7
162:5
exercised 156:18
164:4
exhibit 7:10,13
7:14 25:3 55:1
55:2 105:9,10
105:16 106:4
109:12
exhibited 2:10
exhibits 6:23
exist 85:8 88:9
94:2
expect 35:6 95:9
143:11,14
expects 103:23
expedition 9:8
9:11 57:14
99:21 161:13
expense 165:12
experience 51:7
164:8
explain 96:22
112:9 130:6
explained
114:13
explaining 87:9
88:6 153:10
162:9
explanations
64:4 160:16
explicitly 124:16
expose 45:16
133:23 153:4
exposure 40:7
40:10
express 23:6,15
30:15 31:20
33:17 41:14
42:9,12 45:20
46:5,13 62:5
63:19 113:11
125:25 146:8
152:9 160:2
expressed 160:1
expression
153:19
expressly 23:9
31:25 35:20
45:13 61:20

150:21
extempore
138:10 139:5
139:12
extend 164:23
extension 16:2
extensions 166:6
extenso 104:16
extent 9:23
14:17 28:9
29:6 43:19
64:22 87:19
90:9 102:19
105:6 107:24
109:14 126:22
127:11,12
143:9 144:8
extra 60:23
156:14
extract 105:11
extracts 30:1
extremely 47:6
76:11 104:6
108:14
ex-journalists
118:1,2
ex-patriot 132:2
132:3,3,3
eye 58:16 83:10

F

F 70:7,8
face 15:2 22:25
23:19 87:15
112:10 124:10
125:23 152:17
152:18 153:11
facie 14:15
158:1
facing 130:7
fact 7:15 21:11
22:25 23:6
34:2 39:1 44:9
44:14 46:23
47:12 55:22
111:15 112:19
121:17 123:24
127:23 154:5
162:6
factor 152:8
factors 3:12 16:2
63:20 153:21
facts 120:9
142:6
fail 59:19
failed 29:2
failure 16:6
121:25
fair 9:1 22:21
42:2 95:16
117:15 130:5

156:5
fairly 20:9 56:14
57:1 63:7,10
73:12 93:25
116:17 145:13
159:2 160:20
fairness 126:11
faith 123:10
fall 33:16 53:21
53:22
fallen 147:22
falling 72:10
81:4
falls 68:13,18
71:4 74:14
false 149:10
familiar 20:25
62:18,20 65:2
153:8 160:24
162:2
familiarity
155:4
far 9:22 13:4,9
13:14 15:18
25:21 37:13
51:1 53:5
58:21 64:18
78:1 88:8
91:19 96:20
101:1 108:1
110:5 119:9
120:23 131:22
132:21 135:21
138:20 148:15
151:18 162:7
166:25
Farrers 1:21
19:8 109:5
fashion 120:21
fast 52:16
fatal 33:24
fault 42:1
favour 14:19
113:13 117:1,1
117:23 131:14
134:14
favourite 65:12
fear 6:15 20:2
feel 137:17
fees 151:7
feet 26:8
fetter 23:21
field 35:14
fight 5:14
figure 132:2
file 31:16 43:1
48:13,14 60:14
files 73:17 86:5,6
filling 67:14
69:16
final 90:1 116:23

148:17 165:21
finally 2:8 44:23
47:7 56:13
60:11 164:2
165:19 166:4
find 7:14 24:20
25:11,14 37:6
45:24 67:3
68:20 69:13
75:5,7,21
86:16,19
100:20 105:23
118:13 119:19
122:13 136:15
149:13 150:15
154:5
finding 58:21
68:19 70:22
71:6,9,11,16
71:19 72:14
110:14 119:20
131:14
findings 25:8,10
73:25
finds 91:22
fine 57:3 65:16
133:25 154:15
finely 159:7
finish 95:19
154:25
firm 85:8 109:9
firmly 96:23
firms 15:25 16:5
16:16,19 17:14
17:22 19:1
24:19 33:10
41:19 89:11
95:8 104:23,24
105:1 109:2,15
110:18 111:7
117:22 131:7
146:25 150:13
firm's 96:7,8
119:7
first 3:6 6:7 15:5
21:21 45:3
52:11 53:1
59:4,18 76:1
79:8 86:1 92:9
94:10 96:11
98:22 99:6
100:20 103:19
104:10 119:22
135:17 147:24
firstly 30:8 46:4
56:17 94:18
115:8
fishing 9:8,11
57:14 99:21
103:25
fit 91:8

five 24:5 137:14
flag 58:10,11,12
59:7 95:1,1
111:10 146:20
flagged 14:1
148:18 155:22
flags 4:20 9:17
10:2,21 53:16
53:18 55:15
94:25 95:3,4,4
111:9 136:13
flick 29:23
floated 41:1
floats 90:20
focused 27:7
focusing 104:14
109:23
follow 16:6 95:3
95:25 98:20
157:16
followed 16:6
141:10,11,16
142:11
following 12:11
137:15 142:6
food 158:21
force 29:2 37:9
49:19 58:4
69:16 84:7
forced 45:25
120:12
forceful 107:11
foreign 128:22
128:25,25
129:4,20
forensic 51:2
forget 19:1
forgetting 125:3
forgotten 57:19
form 39:25
48:22 60:22
64:22 66:14
68:10 78:14
90:2,7 93:24
102:21 125:2
166:3
formal 48:1
88:22 101:11
102:17 103:6
139:2 166:2
formed 18:10
formulate
137:20 139:3
formulation
70:15 71:12,21
74:2 77:10
113:19 153:24
forth 4:21 73:25
89:25 90:12
141:9 148:10
153:10

**fortified** 23:5
**forum** 51:1
  128:8
**forward** 8:17
  15:11 70:16
  112:1 115:6,7
  117:9 157:14
  160:8,17
  163:16,17
**fought** 142:25
  160:23
**found** 7:13 10:2
  13:6 16:1
  24:17 45:22
  57:20,25 58:15
  59:3 72:14
  87:10 94:23
  95:13,21 98:11
  98:13 118:23
**foundation**
  136:6 158:7
**four** 53:14,14,17
  59:9
**Fourthly** 47:7
  98:1
**framed** 38:21
**fraudulent** 97:3
  97:7,16 111:4
  137:8
**Fred** 110:24
  122:23,25
**free-standing**
  6:19
**frequently** 91:22
**friend** 1:12 2:1
  2:16 6:12 9:6
  14:16 21:3
  28:23 30:2
  50:3 51:23
  70:12 77:9,19
  79:11 80:20
  90:4 102:10
  107:15 112:22
  118:10 119:1
  127:11 129:15
  135:25 136:1
  144:2,12 150:5
  156:7,8 159:18
  160:18 164:7
**friends** 145:10
**friend's** 12:2
  22:3 47:4 55:5
  71:20 76:3,20
  77:3 78:2
  92:11 99:6
  112:6
**front** 13:3 83:7
**frustrate** 104:18
**frustrated** 97:2
  97:7,16
**frustrating**

149:14
**frustration**
  100:14
**full** 7:24 12:21
  26:9 112:8,11
  114:15,16
  115:15 165:22
**fuller** 13:2 147:2
**function** 16:7
  149:19
**fundamental**
  56:17 112:5
**fundamentally**
  18:8
**funny** 84:9
**further** 8:4
  13:15 15:13
  22:7,18 32:13
  32:14 49:24
  51:2 52:18
  58:6 64:5 78:4
  79:2,15 86:22
  87:8,24 103:13
  110:25 111:18
  117:23 120:16
  131:13 136:18
  139:13,20
  140:9 162:10
  162:14,17
  163:6,16
**Furthermore**
  61:8
**future** 64:6
  87:21

——— **G** ———

**G** 30:11 38:17
  40:5
**gain** 119:4
**gaps** 56:22,22
  67:14 68:21
  69:17
**gather** 117:25
  150:1
**gathered** 79:13
**gatherers** 47:23
**gathering** 36:2,3
  36:23 47:15
  117:19
**general** 34:23
  35:13 72:10
  87:13 100:3
**generally** 18:6
  104:13 119:17
  120:23 122:7
**generate** 66:11
  66:13
**generated** 69:1
  81:4
**generic** 19:2,13
  49:15 68:7

71:10 72:8
74:1 110:1
**generically** 65:5
  75:7
**George** 1:4,7,9
  1:10,18,25 2:8
  2:15,20,24 3:3
  3:18,22 4:18
  6:3,11,18,25
  7:12 12:7
  18:22 19:4,5,8
  19:11,19 20:5
  21:13 22:12,15
  22:23 23:12
  26:1,3,4,17
  27:6,15 28:6
  28:22 29:10,18
  29:21 31:6,7
  31:11,15,19
  32:9 34:13
  35:2,5,23
  36:12 37:11,17
  37:21,25 38:5
  38:15,18 39:5
  39:22 40:19
  42:25 43:4,25
  44:11,19 45:18
  46:2 47:18,21
  48:9,11,20
  49:7,18 50:17
  51:11,23 52:5
  52:15,22,25
  54:7,12 55:4
  56:2,5,8 57:3
  59:4,10 60:17
  60:21,25 61:6
  61:17,22 62:9
  62:13,23 64:17
  64:25 65:7
  66:4,7,18,23
  67:8,14,17,18
  67:20 68:8,24
  69:8,16 70:3,7
  70:11,14,20
  71:12,20,25
  72:17,23 73:2
  73:7,10,16,19
  73:23 74:6,15
  74:18 75:20,24
  75:25 76:8,18
  77:17 78:7,18
  78:21 79:4
  85:12,13,14,18
  85:21,23,24
  86:1 87:2,21
  90:3 91:5 92:3
  92:5,22 93:4
  93:18 95:15
  98:21 99:3,11
  101:15 102:12
  102:13 103:10

119:9 126:9
132:18 137:24
138:13 139:8
143:18 149:5,6
149:17 150:5
150:15 153:16
154:16 155:12
155:20 156:1,5
156:24 157:1
157:11,17
158:11,14,22
159:23 160:13
162:1 165:6,10
165:20 166:1,9
166:19 167:6
167:17,19,21
167:23 168:2
**George's** 114:21
  125:6
**germane** 152:20
**getting** 20:25
  58:23 68:21
  90:10 100:12
  116:15 122:22
  122:23 127:12
  127:20 137:18
  148:14 153:2
  165:23
**gift** 71:20
**give** 7:18 30:19
  36:24 42:11
  50:11 59:8
  70:12 77:25,25
  78:20 80:7,11
  87:16,19 92:1
  92:13 131:2,5
  137:22 138:10
  138:19 146:25
  149:1 161:9
**given** 4:1 13:22
  19:14 28:7
  31:23 34:24
  45:20 46:15
  47:10 52:1
  60:11 81:5
  91:10,19 100:6
  114:18,21
  120:24,25
  122:25 127:17
  129:4 142:23
  144:20 146:8
  156:7 160:1
  161:17 165:2
**gives** 71:25
  105:18 112:11
  118:12
**giving** 34:12
  37:3 72:8
  123:13 138:8
**glad** 99:3
**global** 40:9

**gloss** 154:15
**go** 2:17 4:4 6:8
  9:9 17:4 20:22
  23:11 27:13
  29:14 32:3
  37:13 39:23
  48:12 53:15
  59:1 64:20
  67:3 74:7
  75:20 76:4,9
  83:18 86:16
  91:9 93:23
  94:10 96:18
  101:13 103:9
  105:8,9 116:4
  116:6 131:16
  131:22 132:13
  140:3,14
  143:25 147:3
  147:14 154:4
  161:12 167:9
**goes** 17:3,21
  18:11 51:1,8
  55:8 57:8
  65:11 80:4
  82:4 100:13
  102:9 104:12
  106:13,23,25
  110:5 120:16
  128:2,6 136:25
  137:3
**going** 10:9 16:21
  19:16,22 23:22
  24:5 32:1 34:8
  36:3,11 38:9
  38:13 39:3
  40:5,12 41:12
  47:10 48:18
  50:18,20 51:21
  52:9 54:12
  57:24 63:25
  64:9 68:19
  72:24 73:4
  75:14,18 76:15
  81:14 82:5,23
  83:8,12,23
  87:18 92:2
  93:2,10,11
  94:4 96:21
  101:2,9,25
  106:8 108:1,18
  109:9 110:24
  111:2 112:17
  119:9,19,20
  120:6,11,13
  121:1,11
  122:13,15,16
  122:17,19
  123:6,17 127:2
  128:5,20
  129:23 132:16

133:22 134:9
136:9 138:7,23
139:3 140:3
141:24 142:3
146:22 147:1
148:21 154:4
155:21,24
156:9,16 157:2
157:7 159:6
160:20 162:21
163:6,24 164:3
164:19 165:16
**good** 21:5 35:4
  45:13 81:14
  91:17 99:9
  104:9 111:21
  113:15 114:16
  114:17 115:7
  122:5,9 129:4
  129:6 136:12
  140:1 148:24
  158:18
**Goodness** 31:10
**gossip** 117:20
**Gottlieb** 106:5
**governance**
  88:22
**governed** 61:20
**government**
  10:6 20:1 36:7
  40:1,2 47:25
  55:16 127:4
  128:22,25
  140:21,25
**governmental**
  129:1
**governs** 31:4
**granted** 5:6
  166:7
**grappling**
  145:17 146:21
  154:9
**grasp** 51:17
**grateful** 2:1,24
  69:8 74:15
  76:11 89:24
  94:5 101:5
  103:12 138:24
  149:4 166:9,19
**great** 110:11
  138:2
**green** 111:10
**grind** 158:17
**groping** 112:2
**ground** 3:10
  11:24 29:13
  36:11 60:8
  64:23 119:19
  147:22 149:7
  153:11
**grounds** 3:5,14

8:3
**group** 66:25
  87:13 88:20
**guidance** 153:9
**Guinea** 10:6
  30:13 36:6
  40:9 48:4
  81:23 128:3,7
  132:4 133:5
**Guinean** 127:4

**―――――――**
**H**
**H** 40:6 70:14,17
**hair** 75:14
**half** 86:7
**halfway** 18:22
  26:2 50:9
  114:21
**hammer** 60:4
**hand** 8:1 58:18
  60:13 61:2
  73:19 76:6,7
  76:18 85:21
  92:15 128:21
  138:11 146:6
  154:25 157:4
  160:13 165:22
**handed** 2:3 30:2
  60:15,23 61:4
  73:21 76:21
  101:11 155:22
  165:24 167:4
**handing** 67:11
  73:2 103:6
**handled** 162:19
**haphazard**
  31:13
**happen** 46:19
  155:21
**happened** 10:9
  34:17 35:11
  59:17 68:11
  71:3 77:5
  84:19 85:10
  108:12 123:22
  163:9
**happens** 38:11
  130:4 142:3
**happy** 20:7,21
  67:15 88:15
  117:3
**hard** 75:5,7
  110:9 166:18
**harm** 155:24
**harmed** 39:15
  39:16
**hate** 24:13
**hats** 13:11
**hauled** 133:16
  133:21
**head** 65:22

115:12
**heading** 161:3
**heads** 58:20
**hear** 24:19 37:25
  49:9 138:18
  139:19 159:12
**heard** 108:11
  130:19 131:2
  156:7 157:11
**hearing** 7:25
  73:3 120:5
  130:5,19 155:1
  167:15
**hearings** 105:12
**hearsay** 34:24
**heart** 20:1
  152:21
**held** 46:13
**help** 15:12 18:4
  104:5 116:8
  152:14
**helpful** 19:2
  36:13 37:23
  166:24 167:10
**helpfully** 6:19
**helping** 141:3
**helps** 15:6 71:24
**herring** 56:1
**hesitate** 98:21
**hidebound**
  83:17 84:8
  87:6
**high** 39:23 91:1
**higher** 114:1
**highest** 156:17
**highlight** 30:7
**highlighting**
  54:25
**highlights** 65:7
**highly** 96:2
  109:21 114:6
  160:22
**hinder** 40:7
**Hirst** 74:3
**historically** 71:4
**history** 48:6
  90:9 99:23
**hit** 45:21 58:20
  58:24
**hits** 82:19
**hold** 122:9
  142:24 143:8
  147:13 153:2
**home** 51:8
**hope** 1:6,15
  21:18 103:15
  114:14 166:7
**hopeful** 2:25
**hopefully** 117:15
**horizon** 90:20
**horrible** 92:16

**horse** 54:11
  127:11
**host** 117:18
**hostile** 90:4,13
  90:16,20 91:12
  91:16 92:14,18
  92:21 164:3,9
**hours** 135:11
**house** 8:11 18:23
  26:2 50:9
  62:16 114:21
**Housekeeping**
  1:3 167:16
**Huband** 19:5
  22:2 30:9
  36:16,17 37:14
  37:20,21 39:13
  42:13 50:21
  126:10,18,21
  150:19,25
  151:3
**Huband's** 36:13
  37:17 49:16
  120:19 131:17
  131:23 140:2
**huge** 40:12
  115:19 148:7
**Hughes** 91:5
  93:21
**Humphrey**
  76:25 77:7,19
  78:22 79:15,17
  80:6 82:13,25
  83:10,12 84:14
  84:22 85:1,4
  85:15 86:17
  87:12 88:13,14
  88:19 89:23,25
  126:4,9 150:13
  151:18,20
  161:7,8 162:7
  162:22 163:5,8
  163:25 164:19
**Humphrey's**
  31:17
**Humphries** 38:1
**hundreds** 92:9
**hurdle** 114:1
**hypothesi**
  122:10
**hypothesis** 46:14
  59:14 60:7
**hypothesising**
  157:19
**hypothetical**
  65:21 141:25
  156:11

**―――――――**
**I**
**idea** 157:14
**identical** 47:11

**identification**
  5:25 36:21
  116:18 123:3
**identified** 30:11
  39:2 78:24
  121:12,13
  126:13 150:7
**identify** 52:18
  65:23 74:7
**identifying**
  158:2
**identities** 18:23
  19:15 37:1
  38:14 45:8
  61:9 140:10
**identity** 3:7 6:9
  7:6 8:4 19:17
  26:19 30:14,17
  39:14,17 40:7
  40:11 43:9,10
  43:20,21,24
  44:4 45:2 49:3
  49:13 52:19
  54:19 60:5
  102:16,23
  103:1 111:13
  115:2 125:12
  125:22 152:5
  155:14 156:14
  157:2 158:11
  158:19
**iffy** 58:11
**ignored** 53:13
**ill** 42:3
**illegality** 38:12
  134:5
**illustrates**
  124:12
**immaterial** 68:2
**immediately**
  48:20
**impeccable**
  142:2
**impermissible**
  8:8,20 9:10
**impermissibly**
  65:1
**implement**
  102:25
**implications**
  139:11
**implicit** 124:17
  163:11
**implicitly**
  126:16
**import** 115:3
**importance** 68:3
  102:14 110:11
  117:17 159:6
**important** 3:6
  4:8 47:9 53:12

64:18 96:1
  103:17 106:11
  114:7 124:13
  137:7,22 138:1
  138:20 157:13
**importantly**
  46:5
**impossible** 13:2
  51:19 157:1
**impressed**
  120:15
**impressive**
  160:16
**improper** 16:7
  128:17,18
**improving** 40:9
**imputation**
  111:7
**imputed** 96:8,10
  137:9
**include** 67:20
  77:10 99:15
  137:9
**included** 70:25
**including** 7:6
  16:2 23:4 25:8
  25:24 65:14
  66:7 69:3
  70:20 74:12
  151:7
**incorporate**
  166:22 167:2
**incorporation**
  61:18
**incorrect** 149:24
  150:4,6,25
**increasing** 39:8
**incredibly** 12:24
  110:14 160:22
**incremental**
  22:11 26:14
  41:2 60:1
**incrementally**
  39:8
**incumbent**
  82:12
**indicate** 10:7
  12:18 102:24
**indicated** 146:23
**indicates** 145:20
**indication** 12:9
  13:13 70:12
  96:19 101:5
  138:9
**indicator** 23:17
**indirectly** 49:12
  74:9
**individual** 22:6
  40:21 41:5
  50:1,13 60:3
  65:3 87:14
  111:13 119:25

125:25 141:17
  146:24 153:4
**individuals**
  18:23 23:25
  40:24 45:6
  64:7 110:2
  116:19 117:18
  117:21 119:12
  123:4 124:9
  129:23 152:17
  152:18 153:11
**industry** 47:12
  102:15 139:9
**inefficient** 29:22
**inevitable** 2:23
**inevitably**
  143:14
**inference** 42:19
  97:19
**inferences**
  100:15
**inform** 76:24
**informal** 102:7
**information** 3:8
  4:24 5:10,11
  5:16 6:10
  10:24 11:7,12
  11:23 12:4,6
  12:13 15:2,8,9
  15:22 16:11,14
  16:17,18,22,24
  17:15 19:16
  21:19,23 22:1
  23:4,8,13,21
  23:23 27:3,11
  28:1,3,14,15
  31:1,23,25
  32:1,6,14,15
  32:17,22 33:14
  34:11,25 35:17
  35:21 36:1,10
  37:7 39:2 40:8
  41:2 43:17
  44:8,15,17,18
  45:7,16 49:2
  49:12 51:9
  54:22 55:6
  56:9,23 58:1,5
  58:22,25 64:13
  71:17 85:9
  86:17,22 88:12
  97:4,13,21,24
  100:13,15,22
  107:3,24
  110:24 111:15
  111:23 112:20
  113:6,9,14
  115:2,4,15,16
  116:16 117:16
  117:20,25
  118:25 119:13

119:16 120:2
120:12 122:1
122:10,12,14
122:19,24,25
123:3,8,10,12
123:16,20
124:5 125:11
125:13,21,24
126:23 127:8
127:16,17
130:1 132:13
134:1,3,8
135:18 136:4
136:23,25
137:10 141:12
141:23 142:2,4
142:6,17,25
143:6,12,12,21
144:16,24
145:5,25 147:3
147:21 151:3
152:6,20,24,25
153:2,4,12,14
153:23 154:3
154:21 155:14
155:22,25
156:4,21 157:7
158:6 161:10
**informed** 35:11
43:7 48:3
**informs** 150:25
**infringe** 48:16
48:24 121:11
**infringed** 121:10
**infringes** 121:17
**initial** 96:14
**injunction** 34:3
**injustice** 64:2
**innate** 68:15
**insights** 133:10
**insist** 110:1
**insisted** 61:8
**insofar** 11:13
26:11 45:9
77:12 80:10
142:13,22
164:24 167:6
**instance** 76:2
**instant** 138:5
**instructed** 38:18
78:7 86:7 96:4
96:23 110:18
**instructing**
51:24 140:23
**instructions**
13:5 19:19
20:12 24:6,14
28:13 37:11
76:4,8 92:5
93:18,21
101:15 139:8

161:24 164:5
**instrument** 33:5
**integral** 9:4
20:18
**intelligence** 3:8
35:14 37:2
46:23 47:15,23
118:21 149:25
**intended** 32:18
33:17
**intention** 83:9
**inter** 165:10
**interest** 24:3
63:7 117:13,23
118:16,17,20
119:3,8,11,11
119:24 120:1
122:11 152:23
**interested** 4:13
16:4 161:21
**interesting**
11:21 12:1,2
36:16 43:16
76:9 100:25
143:2 145:18
**interests** 116:8
117:21 155:16
**interior** 111:16
**interject** 150:9
**internal** 81:12
142:1
**internally** 81:9
**interpretation**
143:19
**interrogate** 83:3
**interrogation**
85:3
**interrupt** 98:21
**interview** 70:20
70:23
**interviewed**
24:19 25:9,20
72:4
**interviews** 7:18
**intrinsic** 153:17
**introduced** 99:1
**introductory**
103:16
**investigates**
58:12
**investigating**
59:22 142:9
151:1
**investigation**
9:16 10:22
15:24 16:18,20
33:10 97:2,7
141:18,19
**investigations**
81:25
**investigative**

15:25 16:16,19
17:22 24:19
41:19 96:8
109:2,9 119:7
120:7 130:24
131:7 146:24
149:22 150:12
**investigator**
23:9 38:25
39:1,21 97:20
117:22
**investigators**
97:3 106:9
107:2 142:16
**invite** 3:22 21:17
63:18 88:14
150:15 161:5
**inviting** 154:16
**invoice** 66:11
**invoices** 65:14
66:1,7 69:11
**invoke** 98:2
**involve** 32:1
57:4
**involved** 3:21
16:22 88:21
33:13 134:6
**involves** 3:10
21:23 124:8
155:13
**iota** 110:25
**Iraq** 140:24,25
**irrelevant** 26:5
54:24 113:14
135:21 136:3
156:6 157:23
**issue** 4:19 5:1,5
5:18 14:2 16:1
27:3 29:4 48:3
50:1,7 54:24
57:6 75:2
76:12 89:9,20
116:17 134:2
135:6 138:4
152:6
**issued** 53:13
99:13 116:20
**issues** 17:19,25
18:4,6 28:18
77:8 80:12,15
91:10 94:25
148:9 153:13
**item** 42:14 55:8
**itemised** 67:24
**items** 79:3

_____
**J**

**J** 73:13,23
**jeopardise**
133:22
**jeopardised**

120:11 132:16
**job** 38:12,24
**John** 76:25
110:23 122:23
122:24
**joke** 140:22
**jolly** 136:13
**journalist** 3:18
3:20 38:8,9
40:6 117:11,24
118:17
**journalistic** 4:1
4:7 40:13
45:11 47:8
117:10 118:6
119:8
**journalists** 4:3
38:7,7,13
45:10,11 47:11
47:13,23
117:12 118:5
118:11 119:16
**journalist's**
118:6,25
**judge** 5:4,5,8,20
7:2,16 8:6 13:8
90:22 92:1
93:10 100:11
116:21 145:8
148:2 154:12
155:2
**judged** 159:7
**judges** 91:22
**judgment** 63:14
102:3,7,17
103:7,10 129:4
138:11 139:2
139:11,18
157:6 166:14
**judgments** 149:3
**judicial** 3:10
47:19 48:5
63:14 128:2,6
153:19
**July** 55:10,19
56:10
**juncture** 114:21
**June** 1:1
**jurisdiction**
45:13 130:2
**jury** 108:21
109:16
**justice** 1:4,9,17
1:24 2:4,14,18
2:21 3:15,19
4:10,19 6:5,17
6:22 7:11 8:23
9:22 11:2,10
12:6 13:17
14:14,17 15:16
16:21 17:19

18:1,12,17,19
18:22 19:7,10
19:12,22 20:7
21:7 22:10,14
22:20 23:14
24:12,21 25:1
25:4,12,17
26:1,16 27:5
27:10,22 28:19
29:9,14,20
31:3,10,17,20
33:24 34:22
35:4,21,24
36:16 37:14,19
37:22 38:4,6
38:17,24 39:11
40:1 42:16
43:3,16 44:7
44:12 45:4,19
47:14,19 48:8
48:15 49:4,8
50:9 51:4,15
52:3,14,21,24
54:3,9 55:3,21
56:4,7,21
57:16,22 59:9
60:16,19,23
61:5,16,20,24
62:12,20 64:16
64:20 65:5,6
65:25 66:6,21
66:24 67:13,17
67:19 68:6,17
68:25 69:9,19
70:6,9,13,19
71:6,14,23
72:5,21,24
73:4,9,14,22
74:5,14,16,19
74:23 75:6,20
76:5,15 77:16
78:6,14,19
79:4 81:3,8
82:6,12,22
83:16 84:16
85:3,11,17,19
85:22,25 86:24
87:18 89:23
90:7 91:2,14
91:24 92:2,15
92:23 93:5,22
94:1,6,12,15
94:22 95:13,20
96:10 97:6,9
97:12 98:6,8
98:20 99:2,10
100:12 101:8
101:17,21
102:12 103:3,9
105:15,18,22
106:3,17

107:17,21
108:5,14,21
109:24 110:13
111:12,17
112:9 113:7,18
114:10,19
115:21,25
116:11,14
118:19 119:9
120:8 121:24
123:9,21,23
124:5,22 125:5
125:14,18
126:7,18 127:7
128:1,12,18
129:5,12,21
130:12,22
131:4,20 132:7
132:10,15
133:1,20 134:5
134:12 135:1,9
135:16 136:3
137:17 138:3
138:17 139:2
139:16 141:15
143:16,24
144:21 145:4
145:23 146:3
146:15 147:18
148:12,21,24
149:16 150:3
152:14 153:25
155:11,18,21
156:2,17,25
157:4,16 158:6
158:13,21
159:21 160:10
161:6 164:13
164:17 165:8
165:13,25
166:6,10,24
167:9,13
**justification**
22:6 55:5
**justifications**
40:20 49:23
50:19
**justified** 49:20
**justifies** 129:2
**justify** 55:7 92:8
92:11
**justly** 63:22
159:2

_____
**K**

**keen** 91:23
102:5
**keep** 31:22 62:7
125:3 126:1
**keeping** 152:24
**Kelly** 15:19

53:12 136:25
149:17 150:17
150:21 151:10
**Kelly's** 6:14
15:13 24:24
52:15 54:25
55:2 95:8
104:15 105:9
105:18 106:1
109:7,12
127:14 143:7
149:22
**kept** 34:25 123:2
**key** 13:1 14:9
15:18 19:18
25:8 40:3
50:13 127:5,6
**keyword** 84:2
114:10
**keywords** 78:16
82:6,15
**kind** 22:10 31:13
66:9 119:13
122:10 148:14
153:5
**kinds** 81:25
**knew** 10:1 15:1
17:17 27:7,8
28:20 33:9
53:19 55:20
56:11 94:21,22
98:4 110:16
129:9 157:8
**know** 4:24,25
5:9 7:3,7 10:20
10:21 11:3,6,7
12:14 15:5,7
19:24 21:9
28:8,21 32:22
39:17 42:18
43:24 44:5,14
46:19 47:11
49:16 50:19
51:21 52:17,19
57:15,19 58:8
59:22 72:6,13
73:5 75:9
76:16,16 78:25
80:20 81:8,13
81:22,24 83:14
84:16 85:1
86:14 88:8
89:11 91:19
95:25 102:10
111:22 112:2
114:6,19,20
115:2,11
121:15 125:5
127:2,7 131:14
133:17,17
134:12 136:22

137:21 144:1
145:16 147:8
149:11,14
151:9 153:18
157:9 158:19
161:21 163:10
**knowing** 16:8,10
110:23 142:5
**knowledge** 4:20
5:2,19 11:17
16:25 43:14
44:22 47:22
53:3 56:3,18
57:10,16 58:2
59:2 69:17
89:3 90:6
94:19 95:20
96:5,6,8,8
110:19 111:6,7
111:22 141:17
141:19,21
142:21 144:22
**known** 10:16
28:24 38:14,25
39:14 137:10
150:22 156:13
156:15
**knows** 31:10
38:1,4 43:12
111:19 129:23
145:16 151:21

_____
**L**

**L** 55:8
**labels** 36:18,18
**lack** 95:5 99:18
**lady** 1:7,10,15
1:18,19,21,22
2:2,8,15 3:4,12
3:18,22,22 4:8
6:3,11,14 7:9
7:12 8:6,22,25
10:15 11:5,25
12:12 13:19
15:15 17:21
18:5,21 19:5
19:19 20:5,11
21:13,17,24
22:12,15,17
23:12 24:13
26:4,14,17
27:6,15,17
28:6 29:7,10
29:12,22 30:1
30:3,7,17,23
31:9,15 32:9
32:11,16,23
33:7,23 35:2,9
36:12,13 37:11
37:25 38:15
39:5,22 40:19

41:3,10,17
42:11 44:23
45:18 46:2,3
46:18 47:7
48:4,7,11,20
49:18 50:17,18
51:25 52:22,25
53:2,11 54:7
55:10 56:2,13
59:4,14 60:13
60:14,17 61:4
61:12,17,22
62:10,13,18
63:15,18 64:2
64:4,10,17,18
65:2,8,12 67:8
67:9 68:24
69:8,16 70:4,8
70:11,16 71:12
72:17 73:8,23
74:2,7,18,22
74:25 75:25
76:11 79:2,7
81:16 83:9
84:8 85:14,16
85:18 87:2,25
88:14,19 89:24
90:3,8 91:5
93:18 94:5
98:21 101:5
102:1,13,15,19
102:24 103:5
105:20 111:19
113:17 114:11
115:19 116:2
116:24 119:1
119:24 124:4
126:20 127:10
128:24 130:16
131:6 135:12
137:2,24 138:2
138:13,15,16
140:1 143:15
143:23 145:9
147:23 148:6
149:6,11,14
151:14,24
152:7,13
153:16,22
154:17 155:1,2
155:15 156:5,7
157:11,17
158:22 159:3
159:13,15
160:4,5 162:1
164:2,15
165:20 166:3,9
166:20 167:8
167:12
**Ladyship** 12:22
14:3 20:13,14

20:25 79:15,20
81:17,24 84:10
90:15 91:7,8
91:17 93:23
94:20,24 96:16
99:7 100:5
103:6,12
104:15 105:3,5
105:7,25
107:10,15,18
108:25 109:6
109:12,19
110:7 111:1,3
111:8 113:1,21
114:2,13 116:3
117:3,13 120:3
120:17,22
121:4 125:16
127:2 128:5,5
130:9 131:24
135:24 137:13
138:24 139:1
140:4,4,7
141:2,7 143:4
143:6 144:20
145:16 146:17
146:20,23
149:4
**Ladyship's**
24:16 96:14
**Lady's** 6:13 8:16
28:25 41:11,18
41:23 46:12
50:17 51:13
59:7 62:9,14
65:9
**large** 14:3,8
64:22
**largely** 43:17,18
121:7
**largest** 54:18
**late** 54:3 97:15
**launched** 136:9
136:11,20
**law** 31:3 61:21
62:24 63:4
95:5 96:5,25
98:1 100:10
113:19 141:20
143:19 160:19
**lawsuit** 107:4
**lawyers** 40:11
160:17
**layer** 56:10
**layers** 45:5
**lead** 8:13 19:16
35:18 49:12
77:14 137:6,6
137:6 140:17
141:11 146:19
**leading** 66:2

86:11 141:4
**leads** 10:17 16:6
16:8 52:13
141:9,16
**leak** 123:24
**leaks** 21:9 46:19
**learned** 1:12 2:1
2:16 5:20 6:12
9:6 12:2 14:16
21:3 22:3
28:23 30:2
47:4 50:3
51:23 55:5
70:12 71:20
76:3,20 77:3,9
77:18 78:2
79:11 80:20
90:4 92:11
99:6 102:10
107:15 112:6
112:22 118:10
119:1 127:11
129:15 135:25
136:1 144:2,12
145:10 150:5
156:8 159:18
160:17 164:7
**learnt** 157:20
**leave** 63:20 87:5
109:16 154:5
165:24 166:22
**leaves** 65:21
**Leaving** 157:17
**led** 71:9,18
**Lee** 75:3
**left** 57:8 72:16
79:14 110:11
140:1 142:18
**legal** 20:24 68:4
68:7 71:5
87:13 130:2
134:13,14
138:18,19
149:20
**Leighton** 86:9
86:16 88:8,12
126:8 151:23
163:11,13,17
**length** 137:5
**letter** 1:11 5:16
5:22 8:8,15 9:1
14:12 18:16
27:23 54:4
62:23 64:11
67:11 70:18
73:10 76:18
79:19,20 80:8
80:12 83:24
100:8 101:3
103:24 105:5
107:6 135:2

137:3 147:24
148:2,3 154:12
158:1
**letters** 5:6 18:2,3
18:5,7 24:17
24:22 25:15
51:16 83:17
99:13,16
112:12 147:24
**let's** 8:23 29:14
58:9 64:20
85:11 108:21
138:17 142:3
**level** 51:13
166:16
**levels** 88:22
**Liberia** 30:13
**liberty** 29:24
50:11
**lies** 122:8
**life** 39:24 40:10
46:7 47:16
68:12
**light** 70:5 94:16
110:8 117:4
**lightly** 87:12
112:21 128:9
**likelihood** 63:25
**likewise** 81:24
126:8
**limb** 39:24 46:7
47:17
**limitation** 4:17
5:14,18 10:14
10:18 15:1,7
15:10 17:20,23
18:4 22:9 27:5
27:6 53:1,11
53:14,18 54:24
55:12 57:9
58:17 59:10
98:5,14 136:7
137:1 157:21
158:4
**limitations** 98:2
98:17
**limited** 20:23
114:23 120:6
161:4
**line** 7:16 38:11
49:1 59:16
106:7 140:3,3
140:8
**lines** 49:15
**links** 16:3 95:7
**lip** 116:14
**list** 52:3 64:20
76:12 83:21
84:5 131:25
**litigate** 144:6
**litigation** 30:6

82:1 88:6 95:9
110:12 114:9
115:9 117:2,8
120:3 143:9,10
143:25 144:4
144:11 145:11
145:13,15,21
145:24 146:10
146:18 147:13
148:1 149:9,18
149:21 150:1
151:11,25
154:7 160:3,21
160:23 163:15
**litigations** 21:2
149:20
**little** 15:12 29:14
58:11 75:8
84:12 108:1
125:10 126:18
136:24 139:3
156:3 159:11
**live** 25:23 47:14
83:19 128:12
128:13
**lives** 21:10,11
110:2 118:3
**living** 39:19,20
**Livingstone** 19:6
19:20 30:13,19
48:13 53:20
54:23 58:22
59:11 78:11
105:7,20,22
106:2,3 120:10
126:16 133:6
134:18 141:22
141:23 150:21
151:1,5 158:15
**Livingstone's**
45:6
**loaf** 123:18,19
**location** 7:7
52:19
**London** 133:19
**long** 9:16 58:8
59:16 131:8
132:2 133:2,4
148:7
**longer** 11:14
27:13 28:2
56:24 78:24
85:8 139:3
**look** 10:24 24:22
24:23 35:25
52:5,6 62:22
64:12 81:22
95:24 96:15,17
97:23 100:22
105:24 120:22
123:8 127:1,3

**131:16** 140:11
147:8 166:16
**looked** 7:12
126:9 132:1
**looking** 2:22
10:23 11:7
14:3 20:14
25:22 26:22
30:3 37:4
62:23 88:13
92:2 111:8
113:23 118:15
118:16 129:14
141:8 147:9
155:13 158:24
**looks** 7:16 13:11
42:18 43:16
55:13 58:11
111:3,8 160:14
161:1
**loose** 73:17
149:16
**Lord** 65:6
123:15
**Lords** 8:11
62:17
**loses** 114:8
**lost** 11:14
**lot** 17:22 58:16
68:19 73:17
103:24 149:1
160:15
**loyalty** 134:23
**lunch** 94:13,18
101:7 156:8
**Lyttle** 106:17

———————
**M**
**magazines**
111:20
**magistrate** 7:2
13:8
**main** 45:19
**maintain** 18:19
123:6
**maintenance**
83:10 89:12,13
**major** 145:13
**majority** 54:22
**making** 29:16
69:18 108:9,16
128:16 140:20
166:10
**malpractice**
36:8
**man** 10:8 19:25
**manage** 2:21
166:25
**management**
88:23 163:22
**manner** 128:10

**marginal** 47:4
156:11 159:10
**marker** 80:19
82:10 165:16
**market** 120:4,7
120:10
**marry** 127:7
**master** 90:21,22
90:25 92:1,3
93:11,17 94:4
155:4 164:11
164:13,16,18
**masters** 91:21
**material** 6:1,9
10:13 17:24
26:11 29:5
38:22 44:6,21
50:23 54:1,2,5
59:12 67:21,21
68:1 71:8
73:20 76:10
95:10 103:20
104:4,8,13,19
104:21 108:19
112:15 113:23
129:12,13
135:8,15
136:17 138:2
144:19 161:10
**materials** 9:3
11:15 16:10
71:8 79:13
112:8
**matter** 2:12 3:9
7:5,8 13:14
14:11 21:21
30:24 33:16
45:12 50:14
52:20 53:16
57:7 62:8,13
82:16 84:21,24
88:11 89:7,10
90:17 91:8
95:5 96:4,25
100:10 112:13
120:9 131:7
136:24 146:20
154:7
**matters** 9:25
18:13 62:11
64:19 65:9
68:1 86:20
94:21 96:6,21
96:21 110:11
111:17 117:16
120:20 134:20
140:2 148:13
152:11 161:21
**mean** 11:11
22:20 26:25
42:18,22 56:6

**56:22** 71:15
110:13 114:15
118:2,6 128:1
158:16 163:10
**meaning** 3:16
**means** 39:17,18
40:10 41:24
43:13 48:21
84:4 145:24
**measure** 3:10
**measures** 21:18
63:13
**meat** 29:21
**medium** 24:4
**meet** 20:9
159:23
**memo** 142:1
**memoranda**
70:20,24 72:2
**memorandum**
65:20
**mention** 148:18
**mentioned** 80:23
118:14
**mere** 121:17
**merely** 39:8
61:17 63:13,15
69:18 71:25
113:9,23
151:10
**merits** 17:3
18:15 56:16,18
137:4
**messenger** 31:12
**met** 58:16 114:1
**metaphor** 63:3,5
**middle** 140:2
**mind** 8:19,20
12:22 19:23
21:8 22:25
24:7 47:9
82:18 83:23
96:16 107:21
120:23 138:8
160:12
**minded** 93:23
102:15,19
137:13
**mine** 72:23
**mining** 54:18
133:4
**minister** 111:16
111:17
**minute** 136:10
**minutes** 24:5
137:14 139:22
**mirrors** 23:16
**misrememberi...**
125:16
**missed** 8:1
**mistaken** 150:4

**mix** 141:15
**modern** 48:6
88:6 162:2
**modify** 93:16
94:22
**moment** 9:12
10:3 13:14
15:4 22:21
31:6 34:22
36:19 62:10
64:9 83:11
84:1 101:9,24
138:8 139:21
145:2 146:16
156:2 157:23
**Monday** 138:11
138:12,14,22
139:19 166:15
166:23 167:5
**money** 122:5,13
**Moore** 65:6
**mooted** 102:23
**morning** 29:19
60:24 61:5
94:16,20 111:5
123:22 138:15
148:10 166:15
**motions** 83:19
**mouth** 37:5
**move** 42:14
102:25 110:5
157:15
**moving** 62:11
64:22 148:14
**Mugabe** 128:23
**muster** 7:20,21
155:6
**mustn't** 96:6
**mutual** 33:20

———————
**N**
**nag** 31:11
**nail** 143:1
**name** 40:17
50:13 52:17
57:18 78:6
80:22 81:20
82:2,2,3,3
124:1 125:11
125:25 127:24
130:3 143:22
**named** 123:3
**names** 7:3 9:8
15:20 19:15
20:21 23:4
50:5 81:13
82:5 106:12,21
107:25 110:2
123:2 143:14
144:15
**narrate** 55:25

**narrow** 26:18
28:10 116:17
119:10 121:24
154:21
**Nasse** 62:17,21
113:2 115:10
121:8 153:24
158:24
**nasty** 130:4
**naturally** 91:17
**nature** 9:17
10:11 19:13
32:14 35:17,25
48:5 59:7
90:13 91:10
99:20 103:24
119:12,18
121:22 137:5
140:18 141:12
160:23
**naturel** 14:13
**natures** 46:4
**naughty** 108:15
**nay** 167:8
**necessarily** 20:1
33:9 41:1
58:10 80:25
81:19 82:5
123:5,7
**necessary** 2:17
3:1 15:20 22:8
64:6 85:1
114:8,10 135:5
143:11 166:6
**need** 5:9 6:7,7
12:14 14:20
18:20 22:16
40:23 48:18
52:22 53:10
55:7 63:12
64:21 75:20
79:11 93:19
112:16 115:1
121:21 123:8
131:22 133:17
135:22 137:15
141:9 147:6,14
153:1,7 154:3
154:3 157:9
158:11,19
166:2
**needed** 14:2
90:13 122:12
**needs** 16:5 115:9
121:2 129:15
136:1 141:7
**negative** 107:5
129:19
**negotiations**
163:3
**neither** 1:6

22:14 86:12
111:17
**nettle** 51:18
**network** 45:6
**neutral** 134:16
**never** 12:3 30:18
35:24 43:7
44:11,21 57:15
**nevertheless**
119:16
**new** 4:17 5:5
9:14 11:6
15:21,25 16:4
16:13,21,23
87:10 95:5
96:5,20,24,25
98:1 99:13,24
100:10,11
104:4,5 105:12
107:10 109:5
110:12 116:7
141:20 144:18
144:23 154:12
160:19
**newspapers**
111:20
**nil** 78:3 163:24
**NN** 30:11
**nominated**
51:23
**nonsense** 93:12
**non-leading**
93:3
**non-parties**
106:24
**non-party** 20:24
**non-privileged**
7:5
**normal** 89:18,21
121:3 161:14
164:7 165:3,11
**normally** 51:5
92:25 101:23
112:13 121:18
122:3
**note** 87:12
109:11
**noted** 109:19
143:15
**notice** 47:19
48:5 128:2,6
**noticed** 143:20
**notify** 130:25
**notorious** 39:7
**notwithstanding**
46:16 98:10
**nuanced** 125:10
125:19
**number** 3:11
14:4,8 17:14
36:8 47:21

60:6 105:8
114:4 139:9
140:5 149:7,15
**numerous** 18:25
**nuts** 60:5

———————
**O**
**object** 1:6 73:12
164:3
**objected** 65:7
**objecting** 28:23
50:22 154:20
**objection** 3:5
57:4 66:19
67:14 87:2
**objections** 51:6
**objective** 63:10
65:22 110:25
**obligation** 33:17
34:16,20 62:3
108:8 121:22
123:13
**obligations**
33:10,13 34:8
41:20,23,25
42:10,12 62:24
**oblige** 104:20
**obliged** 75:23
**observation** 2:9
**observations**
7:17
**observed** 46:18
**observer** 1:5
**obstacle** 136:19
**obtain** 7:4 86:16
86:21
**obtained** 97:20
100:16 143:5
**obvious** 36:9
38:20 64:10
103:2 160:21
**obviously** 9:3
13:9,23 17:4
19:20 21:17
29:12 38:19
39:5 40:3,19
46:24 50:22
52:7 56:5
59:14 65:9
78:10 80:24
84:21,24 87:23
88:15 89:8
93:7 100:5
112:4 114:16
116:5 118:15
119:1 139:2
147:19 148:8
148:23 151:20
154:6,12 155:4
159:4,6,14
160:6,23 162:8

162:10 165:10
166:4,10
**occasion** 92:9,12
151:4
**occasions** 17:7
91:18
**occur** 21:10 60:3
151:3
**occurred** 55:24
86:20,21
**occurs** 93:9
**odd** 96:15
136:24 146:13
**offer** 151:11
167:11
**officer** 164:7
**official** 40:2
127:4
**officials** 40:1
55:16
**oh** 56:15
**okay** 37:22
**old** 79:21,22
**once** 29:1 46:13
63:17 75:15
87:8
**ones** 12:24 46:21
67:1 79:10
162:10
**open** 130:24
**operate** 128:10
**operates** 10:20
**operating**
134:21 140:18
**operations**
133:11
**opportunity**
92:19 98:24
129:24 130:6
130:17 131:2,5
131:10,12
139:13 162:4
165:14
**opposed** 21:18
28:4 111:16
130:14 160:21
**option** 51:12
**options** 50:18
102:20
**oral** 50:20 77:25
80:8,13
**orally** 162:15
**orange** 58:10,11
58:12 59:6
94:25 95:1,4
111:10
**order** 5:10 9:17
10:16 20:19,20
20:22,23 21:9
26:6 30:12
34:2 45:22

48:9 49:5,22
54:1 56:25
63:11 65:11
66:10,11 78:1
78:15,22 88:14
90:2,7,22,24
91:7 93:16,24
101:14 102:3,6
102:9,16 103:6
112:10,11
113:8 119:19
120:5,12 122:3
122:12 130:22
133:18 135:3
135:24 143:25
148:14,19,21
148:22 154:14
158:19 163:1
163:23 164:13
164:17 165:7
165:11,18
166:3,11,25
167:2
**ordered** 7:2 8:3
8:7 27:24
76:14 77:20,21
108:13 120:2,5
**ordering** 63:23
64:2 102:22
106:10
**orderly** 60:22
**orders** 1:11
46:17 166:2,4
**ordinary** 82:7
**ought** 10:16,17
12:18 81:16
89:14 127:14
132:19 147:12
152:22 165:18
**outcome** 147:18
147:23
**outed** 20:2
**outlive** 23:10
**outset** 61:8
143:4
**outside** 53:21,22
72:10
**outstanding**
167:7
**outwith** 11:16
**overall** 56:16
120:1 132:20
**overarching**
12:20 18:15
**overlap** 109:14
**overnight**
137:20 138:10
**override** 33:17
**overrides** 127:13
**overriding**
119:11 132:22

**overseeing** 42:19
**overturn** 134:24
**overwritten**
89:13
**owed** 26:21
33:11
**owned** 74:9
**o'clock** 2:5
76:19 101:17
**O'Connor** 44:24
50:21 61:25
75:2 129:8
149:15
**O'Connor's**
60:25 79:13

———————
**P**
**page** 6:24,25,25
7:10,13,16
15:17 19:11
25:2,8,16 30:8
38:16 43:2
44:25 55:1,8
70:7,18 85:21
105:10,13,13
105:15,16,16
106:6,7 109:11
**pages** 73:20
**paid** 62:3 117:19
118:20,24
165:6
**palace** 111:14
**papers** 72:25
**paragraph** 6:13
15:17 16:12
18:6 30:20
31:21 32:3,3
37:17 42:25
43:1,4,13
52:12 58:7,7
60:12 61:1,4,7
67:18 69:24
70:17 71:7
72:11 76:23
77:23 86:20
118:12 120:18
126:4,9,10
131:17,23
140:2 143:7
149:17,23
150:16,20,23
**paragraphs**
15:18 30:11
85:15 87:3,11
111:2
**parameters**
71:22
**parcel** 145:4
154:11
**park** 114:22
**Parkhouse**

30:19 60:12
**Parkhouse's**
30:20 150:15
**parking** 157:23
**part** 9:4 10:18
14:6 29:13
91:7 102:5,9
102:13 107:19
108:7 135:7
138:25 143:11
145:4 154:11
165:7
**partes** 165:10
**participants**
139:9
**participate**
54:18
**particular** 4:6
5:2,3 12:4
17:12 19:23
22:24 23:3
24:21 30:8
35:12 40:20
48:3,5 49:8
58:9 71:7
72:11 97:20
118:22 121:13
124:23 126:24
127:1 134:25
135:14 136:19
147:2 148:5,9
150:19 152:18
153:11 157:12
161:21
**particularly**
38:3 46:25
57:12 65:23
75:19 80:16
95:24 114:2
163:24 164:6
**particulars** 58:6
153:8
**parties** 1:16 16:4
20:25 22:21
23:1 33:20,22
51:18 64:21
68:23 69:20
82:6,15 91:13
91:20 102:2,21
103:3 109:8
139:6 163:4
166:7
**partly** 159:13
**partner** 37:5
**parts** 14:9
134:25
**party** 1:13 7:4
24:13 34:9,16
34:20 82:23
86:15 108:17
113:9 115:13

121:11 155:24
**party's** 7:6
**pass** 7:20,21
30:2 155:6
**passage** 13:6
58:9 60:2 64:8
76:2 136:24
150:7
**passages** 15:14
24:16 30:8
**passed** 12:16
28:1,4 68:20
69:20 160:18
**passing** 27:11
68:22
**patience** 62:14
**patriot** 40:17
**pause** 27:16
62:13 73:15
85:11
**pay** 151:7
**Peck** 5:5,8 7:2
13:8
**pencil** 5:22
**people** 4:2 6:9
9:9 17:13
26:19 35:16
36:18,18,22
38:16 39:9,13
39:16 44:2
47:21 48:2,2
78:25 91:20
117:25 119:17
121:12,13
124:16,23
129:16 130:25
132:12 133:1,2
133:14,19
137:10 141:21
144:18 150:10
**people's** 21:10
21:11 46:21
**perceived**
134:22
**perceptions**
134:12
**perfectly** 8:14
160:6 163:4
**perform** 63:3
**performance**
33:2
**performed**
65:17
**period** 5:3 10:20
53:14,17,21,23
55:12 59:10,13
81:20 86:7
96:13,18,21
98:5,14 101:4
129:12 157:21
158:5

**periods** 129:13
**permissible** 8:15
**permit** 49:5,11
50:18
**permitted** 50:11
64:3
**person** 19:17
20:2 37:6 72:5
72:14,15 80:5
80:7,9 84:14
88:21 93:13,14
101:23 107:7
122:18 142:9
143:12 151:21
**personal** 20:3
108:7 133:11
**personally** 71:14
**persons** 7:7
52:19
**perspective** 11:2
142:20 145:23
**persuade** 23:22
112:17
**persuaded**
132:21
**persuades** 136:3
**persuading**
132:18
**pertain** 57:16
**pertinent** 98:12
**Pharaon** 114:3
121:8,14
**phase** 97:14,15
97:15
**phrase** 8:11
111:20
**phrased** 100:8
**phrases** 65:8
**physically** 27:24
87:15 104:21
**picking** 90:1
**picks** 65:13
**picture** 11:9
**piece** 37:5 55:6
147:3 154:21
**pigeons** 120:7
**piggy** 119:6
**pinned** 72:11
**pipeline** 17:17
**pitch** 67:21
**place** 20:20
21:21 46:18
51:3 63:5
84:17 88:25
151:25 157:21
160:24 163:1
**placed** 4:13
127:4 142:8
**plainly** 33:16
52:23 152:22
**play** 74:6 115:20

116:14
**pm** 101:18,20
139:23,25
167:14
**point** 2:22 3:18
3:20 4:17 5:14
12:2 17:5,12
17:20,23 25:24
28:25 29:3
31:8 32:10
38:21 41:18,23
42:11 45:19
46:12 53:12
56:17 57:5,7,9
57:17,20,23
59:6 60:10
64:18 67:10
68:7 78:2
80:20 81:9
87:6 90:1,4
92:6,16 95:7
95:16,18 96:2
96:4,11,13
97:10 98:9,23
99:2,4,8,10
100:12,25
103:19,19
104:3,7,12,20
108:9,16,21
109:13,16
113:4,13
114:13 115:18
119:10 121:1
127:13,20
128:4 130:10
136:7 138:1
140:20,23
143:3,4 149:9
151:2 152:7,15
153:22 154:1,8
157:12,13,16
157:22,24
158:18,18
160:22 161:22
163:7 164:2
166:10
**pointless** 162:5
**points** 17:6
41:11 52:11
78:12 79:8
94:9,17 101:6
103:16 104:10
110:9 137:12
150:17 151:10
153:7
**policies** 89:12
**policy** 45:12,14
75:12,15 89:13
99:19 112:19
116:21,23
118:11 152:23

163:19
**political** 36:6
40:9 48:3
133:3 140:21
**pooper** 24:13
**positing** 42:7
**position** 8:25
11:4 12:12,20
13:4 20:6,9
26:4 30:25
34:15,21 35:2
36:11 41:19,22
51:5,19,25
54:21 56:15
62:1 76:13
77:23 79:12,17
88:19,24
117:12,22
120:10 125:9
140:18 144:11
147:17 149:11
150:10,12
154:16 156:22
161:23 163:15
163:16,20
**positively** 141:3
144:3
**possession** 27:25
71:9,18 85:8
104:22 108:6
145:6
**possibility** 8:17
49:10 64:1
90:12,19 91:12
132:5 146:22
**possible** 8:4 22:6
28:7 29:11
41:11 49:20
90:21 98:3,18
99:23 157:15
164:16
**possibly** 25:13
60:17 76:10
129:23 143:21
**post** 96:25
**postdate** 99:15
**postdates** 57:11
**potential** 40:4
115:6 127:21
138:7 146:22
151:2,4 155:18
161:3
**potentially**
17:24 26:13
39:9 41:22
61:13 89:9
111:11,15
118:22 163:17
**power** 5:22
90:18,25 91:14
91:19,21 92:12

92:13 93:8
94:2,4 108:6
145:6 162:16
164:4,9
**powerful** 62:3
96:19 111:15
**powerfully**
145:20
**powers** 93:20
156:18
**practical** 22:21
91:11 115:18
116:5,9
**practicality** 68:4
**practically**
121:6
**practice** 46:19
86:6
**practices** 35:13
**practitioner**
164:10
**pragmatic** 76:5
**prays** 119:2
**pre** 129:13
**preceding** 42:25
126:3
**precise** 19:15,16
50:12
**precisely** 2:20
3:22 6:3 31:19
34:17 38:18
44:19 45:18
47:18 59:10
74:18 76:8
78:18 124:12
150:7 153:10
155:12,20
156:1 157:11
157:17 160:13
165:10
**predicated**
49:25
**prefer** 17:9 92:1
**preferable** 94:2
**prejudice**
139:14 155:18
161:2,3
**preliminaries**
2:8
**prepared** 26:2
49:19 58:23
74:11 80:21
83:5 159:14
**preparing** 29:25
**present** 130:17
**presented**
109:15
**presently** 150:7
**preserving** 26:7
63:8
**president** 140:22

92:13 93:8
**president's**
111:14
**press** 78:9,21
92:6 93:19
117:14
**pressure** 137:17
160:22
**presumably**
39:22 72:14
**pretty** 125:15
132:15
**previous** 71:21
155:4 162:9
**price** 123:18,19
**prima** 14:15
158:1
**primacy** 115:9
**primarily** 1:20
17:22
**primary** 51:25
103:23 157:21
**principal** 44:24
**principle** 11:17
21:22 68:4
70:3 72:10
75:3 115:10
116:15 132:10
132:17 154:20
166:6
**principles** 24:1
**prior** 97:21
**prison** 129:9
133:16,21
**privacy** 2:25
**private** 117:20
**privilege** 151:15
**probably** 2:21
3:25 6:15
54:25 60:21
61:3 73:7
79:11 81:18
85:17 87:4
89:14 94:9
137:19 139:18
143:21 163:9
**probed** 26:13
**problem** 6:10
29:8 33:24
70:23 74:16
157:6
**problematic**
82:20
**problems** 40:5
111:25
**procedure** 8:14
83:18 161:17
162:3 165:3
**procedures**
129:1
**proceed** 102:3
129:2 136:1

Case 1:14-cv-03042-RMB-AJP   Document 305-1   Filed 07/27/15   Page 57 of 63

139:16,17
140:8
**proceeded** 82:16
**proceeding** 50:5
**proceedings**
1:14 3:13 4:22
13:15 27:4,21
34:19 40:25
41:6 47:3 52:7
53:13 56:20
57:18 77:9
86:10 156:22
165:23
**proceeds** 112:6
135:23
**process** 63:3,6
63:13 84:8
108:11 119:7
136:5
**produce** 26:2
48:15,21,22
75:23 79:21
80:18 83:14
85:7 88:15
89:19 104:21
147:21 149:24
151:5 162:15
165:2
**produced** 19:2
31:13 45:1
53:20,22 78:3
81:2 87:8
**producer** 164:22
**producing** 70:9
**production**
86:11 88:4
104:18
**productive**
142:19
**professionals**
35:14
**progress** 166:20
**project** 12:11
78:6 80:21,22
80:24,25 81:9
81:10,20,21
82:2,5,10
**projects** 17:16
**promise** 33:19
46:5,14 63:19
109:2 113:11
123:9,11,23
125:25 131:18
146:8,11 149:1
166:17
**promised** 41:25
44:3 123:1
**promises** 152:9
**pronged** 18:18
**proof** 115:13
159:19,22

160:7
**proper** 8:14
77:21 78:23
128:10 160:6
163:23
**properly** 84:4
121:2 165:2
**property** 46:8
**proportionate**
50:4 64:15
83:25
**proposals** 167:6
**proposed** 77:24
**proposition**
131:21 158:23
**protect** 21:19
26:18 29:6
36:14 37:13
38:16 44:22
46:16,17 53:8
54:19 154:21
**protected** 21:16
37:15 45:13
126:17 155:17
**protecting** 43:9
53:10 133:15
134:4
**protection** 3:7
49:22 118:3,11
**protective** 20:19
20:19,22,23
21:9,18 63:12
148:19,22
**prove** 115:14
**provide** 22:1
26:9 32:5
33:14 34:7
35:7 39:15
46:24 48:2
58:5 86:9,17
102:22 106:22
118:21 127:13
149:22 152:4
161:19 164:17
**provided** 3:7
5:17 8:8 11:15
16:10 22:2
23:9,13 28:11
28:14 30:16,18
30:21 32:20
35:20,22 41:4
42:15,17,20
44:15 49:22
50:23 55:11,23
64:4 66:10
67:4,5,6,7
68:17 72:3,10
81:12 104:8
110:24 115:3,4
119:15 125:11
125:24 126:4,6

153:15 162:8
162:10 163:25
**provider** 23:3
**provides** 152:1
**providing** 8:4
36:3,10 45:7
73:24 83:24
95:9 119:13
122:12 125:21
126:23 143:9
**provision** 23:16
32:7 107:23
108:3 142:6
150:11 152:5
153:4
**public** 36:1
45:12,14 48:1
99:19 112:18
116:21 117:13
117:16,23
118:3,11,15,17
118:20 119:3,8
119:11,15,24
120:1 124:6
152:23
**publication** 3:16
**purely** 28:10
30:1 72:19
85:5 130:14
**purported** 50:2
**purpose** 4:6,16
5:6,15,19 26:7
49:6,21 77:12
118:8 119:3
**purposes** 5:17
18:12 28:16
31:23 81:12
95:6 96:7,9
114:9,17
141:20 156:19
158:3
**pursuant** 1:11
51:16 56:25
126:24
**pursue** 80:13
85:4 102:5
**pursued** 10:17
10:22 74:15
**pursuing** 58:14
110:2,8
**purveyors**
117:15
**push** 67:9
**put** 3:24 6:17,22
8:17 12:15
15:11 16:1
17:25 20:1
23:25 33:21
34:15 36:3
38:10,13 39:3
41:19,21 46:18

47:8 48:11
50:3,3 51:13
59:15 60:24
68:19 70:15
72:24 78:14
80:19 82:7,19
86:25 89:22
90:24 94:16
103:21 110:2
112:1 113:20
115:12 117:9
129:9 131:3
134:15 142:7
144:17 156:21
157:14 158:16
160:8,16 167:6
**puts** 51:4,18
62:3 87:22
108:25 115:8
**putting** 51:11
82:10 83:20
135:17 154:15
156:17 161:2
165:15

**Q**
**QC** 91:4
**quality** 5:11
10:12,13,25
11:4,16 44:18
45:15 54:2
130:13 152:15
153:14
**quasi** 118:17
119:8
**queries** 69:4
**question** 5:18
6:8 10:19 11:6
11:18,25 12:1
13:7 14:8,10
16:23 20:24
22:18 25:23
29:15 51:7
72:6 75:6 89:1
91:18 93:5
94:19 95:2
97:2 100:14,21
100:21 104:14
111:6,9 117:6
132:20 133:8
133:20,21
135:3,19 136:6
140:7 141:6,10
141:16 142:15
143:3 145:2,9
145:10 148:4
148:19 155:6
158:10 161:7
162:5
**questioned** 25:7
**questioning**

50:25
**questions** 9:15
20:3 50:22
51:6,21 77:13
79:15 80:1
82:25 83:15
85:2,5 87:15
90:13 93:3
95:14 107:23
116:20,23
140:5 148:8
161:16,20
162:12 163:5
163:18 164:21
164:24 165:17
**quick** 62:21
**quickly** 98:18
109:2
**quite** 10:7 11:21
35:23 38:5
39:5 43:16
45:16,23 53:11
54:21 59:21
67:15 71:15
107:11 124:12
146:3 148:7
149:1 155:3
159:18,23
161:4
**quote** 8:10
**quoted** 67:12

**R**
**rain** 72:25
**raise** 20:21
28:18 123:15
142:2
**raised** 14:2
133:8 138:3
140:5 143:4
151:15,16
**raises** 29:7
**ramifications**
138:4
**random** 58:8
**range** 45:17
102:20
**Raven** 12:11
78:8 80:21,24
81:10
**raw** 71:8
**reached** 2:2
60:21 61:3
**react** 116:11
**reaction** 96:14
**read** 85:22
104:15 139:10
160:3
**reading** 4:11
61:25 67:21
77:1 86:1,5

149:25 150:18
150:22 151:6
**real** 14:20 47:14
72:5 74:8,17
111:23 128:12
144:15
**realise** 101:22
**realistic** 109:18
130:14
**realities** 134:13
**really** 6:7 9:25
12:25 15:18
22:7 25:20
31:3,12 44:7
50:6 58:16
67:15 68:21
69:9,13 79:14
93:13 94:17
95:2 100:3
101:25 104:17
108:9,17 109:1
110:5 113:3
114:6 115:1,1
115:1 117:6,7
117:7 129:19
132:19 145:11
148:10,16
153:1
**reams** 98:21
**reason** 5:12 8:21
14:25 81:17
82:9 87:23
89:21 96:21
104:11 110:8
122:9 132:11
143:22 154:18
165:13
**reasonable** 10:1
57:20,25 59:3
166:8
**reasonably** 8:12
98:9
**reasoned** 22:5
139:12,12
**reasons** 14:22
28:2 38:20
45:14 47:9
52:1 88:14
99:18,19 100:6
100:6 103:2
104:9 113:15
113:16 115:7
156:7
**recall** 84:10
143:6
**received** 1:11,15
1:18,22 7:25
27:20 30:12
45:2,8 55:18
56:10 72:3
74:11 76:20

126:13
receiving 35:18
recipient 65:22
recognised
  114:7 116:22
recollection 86:4
  86:10
reconvene
  139:21
record 19:21
  66:13
records 32:18
  65:17,18,25
  66:2,16 67:24
  69:12,14
recreate 71:4
recrimination
  127:22 132:6
  155:17
recriminations
  26:19 35:18
  39:24 133:23
  159:1
red 4:20 9:17
  10:2,21 53:15
  53:18 55:15
  56:1 58:10
  94:24 95:1,3
  111:9,10
  136:13
redact 19:15
  49:11 135:25
  136:4
redacted 48:22
  56:6 112:10
  140:11 155:14
redacting
  114:15,15
redaction 14:19
  26:6 48:10
  49:5 140:11
redactions 3:14
  49:20 50:19,24
  64:3 155:8
  161:4 167:3
redder 58:13,13
  58:13
refer 2:15
reference 1:21
  7:9 15:13 16:2
  25:15,20 30:20
  43:21 60:11
  64:7 65:2
  68:15 70:16
  71:2 72:8
  81:22 82:4
references 42:11
referred 55:9
  69:24 81:10
  149:18
refers 13:7 72:2

149:19
reflected 165:18
reflection
  139:13
Reformulate
  94:15
reformulates
  71:13
refuse 113:7
refusing 116:8
regard 13:14
  96:3 116:20
  151:19
regarding 7:5
  16:17 49:2
regardless 50:6
regards 79:12
regime 129:10
  129:20 146:24
regional 38:25
  39:1,3,21
  133:7
regulation 34:3
rehash 42:11
reiterating
  87:11
reject 54:12
rejecting 104:24
relate 55:24
  57:10 63:21
  99:14,25
  104:13
related 29:21
  56:2 140:17
relates 3:6 32:17
  44:1 48:24
  53:6 69:21
relating 26:9
  39:3 55:14
  69:6,12 74:8
  85:5
relation 12:16
  19:14 23:24
  24:2 25:17,18
  30:4 31:22
  32:7 37:9,10
  37:18 40:16,23
  43:6 50:1,16
  52:9,11 54:2,4
  56:13,16 60:1
  68:23 69:4
  75:1 78:11
  79:9,17 80:1
  80:11,19 81:4
  81:13,18 89:3
  89:9 99:17
  100:9 105:1
  108:12 109:20
  116:18 121:16
  124:17,22
  125:7,9,19

126:15,21
  127:15 129:3,7
  131:8 132:23
  133:9 140:5
  144:7 146:7
  147:9 148:5,13
  152:17 153:9
  159:13 161:9
  161:16 162:1
  164:22
relationship
  107:2,7 121:15
  133:23 134:1
relatively 65:9
  73:19 102:7
  167:7
relevance 26:10
  27:2 30:6
  40:24 47:3,5
  52:7 53:18
  57:13 61:6
  80:4 94:19
  100:10 115:16
  132:20 135:14
  136:15 141:6
  153:13,23
  154:2,9 155:13
  156:11 158:2
  158:24 159:9
  160:14,20
  161:2
relevant 2:12
  3:4 5:12 7:5
  10:11 17:10,12
  17:24 18:14
  22:8 23:5 32:6
  32:25 41:6,9
  50:7 52:12
  53:4,21,23
  55:12 56:11,21
  59:6,12 60:8
  63:25 64:2
  69:18 76:2
  77:8,25 78:20
  78:25 80:7,8
  81:1 87:4
  92:10 95:14,15
  97:1,1 100:2
  103:21 112:16
  113:8,24,25
  135:5,7,10,18
  135:19 136:21
  152:22 154:13
  156:10 157:18
  159:12 161:9
  162:25
reliability 15:22
  26:10 122:19
  136:22 137:6
  142:4
reliable 10:7

122:20 141:23
  142:1
reliably 58:25
reliance 72:1
  142:8
relied 38:22
  70:21,25 72:7
  150:8
relief 102:21
rely 4:6 32:22
  58:18,25 71:21
  98:17 136:17
remain 125:13
remained 61:10
remember 6:17
  113:22 129:22
remembers
  113:1
remind 37:19
  72:21 85:18
reminded 78:24
  140:24 148:17
reminds 74:3
remote 153:13
remove 49:11
  65:24
repeating 30:16
repercussions
  42:3
reply 149:8
report 7:19 9:18
  9:20 10:6
  12:11 34:7
  43:6,21,23
  44:8 55:10,18
  55:21,22,23
  56:10,19 58:7
  60:2 64:8,10
  69:23 71:17
  72:12,15 73:25
  88:6,16 95:24
  100:9 118:21
  122:21 163:23
reported 97:24
reporting 43:18
reports 2:11
  9:13,13 11:16
  12:20 15:23
  16:15 28:5
  32:15 44:13
  53:20,22 56:7
  56:8,17 58:8
  58:10 67:5,23
  69:3,7,21
  74:12 81:6
  86:11 95:17
  96:17,17,25
  99:5,14,15
  100:7 103:21
  142:13 149:22
reprehensible

108:18
represent 23:2
  106:18
representation
  33:8,25 34:1,6
  34:14
representations
  32:24
representatives
  35:9,11 50:24
reputable
  141:13
reputation 45:24
  46:11
reputations
  45:20
request 1:11 5:6
  5:16,22 8:9,15
  9:1 14:12 18:2
  18:3,5,7,16
  24:17,22 25:15
  27:1 29:16
  51:17 54:4
  55:9 64:11
  67:7 69:6
  70:18 73:10
  79:8,19,21
  80:8,12 83:17
  83:24 99:13,16
  100:8 101:3
  103:24 105:5
  107:8 112:12
  114:25 135:2
  136:8 137:3
  154:12 158:1
requested 3:14
  25:6 32:6
  54:22,23 77:7
  86:9 99:25
  104:19
requesting 1:13
  106:10
requests 69:4
  81:1 100:8
  104:25 109:20
require 44:2
  49:14 60:5
  67:16 87:15
  102:21 116:17
  122:3 155:16
required 48:15
  48:21,21 93:4
  144:6 159:11
requirement
  136:11
requires 78:15
  159:3 163:2
requiring 34:15
  41:7,22
requisite 4:20
reserve 138:11

139:2,18
  166:14
reserved 103:10
resist 19:12
resisted 45:25
resolved 51:13
resort 63:11
  158:25
resourced 86:15
resources 77:11
respect 11:5
  35:3 47:16
  55:16 154:15
  160:14
respectful 21:24
  160:9,15
respectfully
  158:22
respects 152:16
respond 6:12
respondents
  1:10 149:12
response 103:23
  106:13 137:21
  149:17
responsive 67:25
rest 118:3
  138:19
rested 76:22
restraints 2:19
restrict 46:21
restricted 33:19
result 33:3 45:22
  120:11
resulted 7:19
  67:22
results 102:6
resume 101:9
retain 86:6
  149:21 158:15
retained 149:20
  158:14
return 78:4
  163:24
reveal 23:3
  35:16 102:23
  106:11 132:11
  156:20
revealed 18:20
  40:17 44:9,9
  59:24 130:1
revealing 34:12
review 92:10
reviewed 25:10
  41:3 74:11
revisiting 154:23
  157:24
rewording 79:10
rewrite 99:16,23
  155:11
rewriting 155:10

**rid** 108:21
**right** 4:11 7:2
  14:10 18:19,22
  19:7 21:14
  23:3 26:1
  27:10 29:9,20
  33:8 40:2,19
  42:2 44:14
  46:3 52:17
  54:7 59:4
  66:18 68:17
  70:13 74:5
  79:4 80:1,14
  91:3 95:2
  106:8,20
  115:13 117:4
  118:3 121:10
  125:16 130:18
  130:18 134:10
  134:24 135:1,4
  135:4 136:2
  139:16 144:14
  144:16 146:3,4
  147:15 148:14
  156:10 159:4
**rightly** 92:18
  99:13 101:4
  140:6
**rights** 58:14
  117:15,18
  118:6 121:12
  134:14 144:17
**rigidly** 27:23
**Rio** 4:20,23 5:2
  5:10,18 9:25
  9:25 10:1 11:8
  11:10,13,20,23
  12:3,4 15:1,2,5
  15:24 16:1,10
  16:18,25 17:4
  18:8 23:1,2,9
  23:13,16,20
  27:7,8,12,12
  27:19,22 28:1
  28:4,7,11,14
  28:17,19,20,24
  29:1 30:18,22
  30:23,25 32:2
  32:5,12,18,25
  33:9,14 34:6
  34:10,15,21
  40:11 41:21
  42:4 43:7 44:4
  44:5,10,12,20
  44:22 45:1
  53:3,6,7,9,15
  53:19 54:9,14
  54:15 55:11,15
  55:19,20 56:3
  56:9,23,23
  57:10,24 58:2

  58:14,18 59:15
  59:20 61:9,10
  61:18 62:5,20
  67:1,2,5,6
  68:10 69:2,5
  69:15,17,20,25
  81:11,22 82:20
  94:19,21 97:9
  98:2 104:2
  106:15,19
  107:8,12
  108:14 109:3
  110:16,17,19
  125:1 136:13
  136:15 141:17
  141:22 142:10
  142:15,21,22
  143:20 144:23
  146:8 149:21
  149:25 150:3
  150:20,24
  151:7,9 152:2
  156:18 157:5,8
  161:24
**rise** 20:7 24:5
  59:8 81:5
  123:13 124:15
**rises** 20:13
**risk** 20:2 21:10
  21:11 23:25
  30:16 38:10,13
  39:23 44:23
  46:7 62:14
  115:21,25
  118:9,22 130:8
  130:14,15
  133:16,18
  140:19 153:5
  155:17,22
  165:9
**risks** 153:10
**role** 133:13
  164:22
**rough** 63:4
  103:5
**round** 23:11
  118:2 135:17
  147:8
**route** 91:9 93:24
  116:4,6 119:20
  127:3 140:13
  140:15 146:23
**Royal** 123:23
**RT** 12:10,18,22
  12:25 17:15,17
  96:9 97:22
  104:12,17,19
  108:10,12
  143:5 144:3,14
  144:15,18,19
  145:12,19,21

  146:3 147:11
  147:16,20,25
  148:4
**RTZ** 10:16
  84:12 96:6
  107:20
**RTZ's** 96:5
**RT's** 96:6
  145:23
**rule** 7:12 26:16
  34:3 51:9 76:6
  90:18,23,25
  91:15,21 93:8
  115:22 117:8
**ruled** 22:16
**rules** 7:4,11
  59:11
**ruling** 90:20
  91:23 93:11
  101:11 117:1
**run** 57:9 110:9
  115:21 116:1,2
  121:3 131:25
**running** 27:1
  58:3
**runs** 98:8
**rushing** 138:6

---
**S**
**sacrifice** 137:25
**Sadly** 84:8
**safely** 22:2
**safety** 20:3
**saga** 65:9
**satisfactory** 21:4
  50:4 64:14
  114:24 115:17
  140:12 162:18
**satisfied** 63:17
  84:1 144:10
  147:4
**satisfy** 02:7
**sauces** 29:21
**save** 167:1,5
  saw 91:7 147:19
**saying** 5:9 18:24
  18:24 23:14
  24:18 34:7,10
  75:6,7 76:16
  80:17 87:22
  90:11 94:21
  107:7 108:1
  110:7 115:11
  116:7,25
  120:10 121:9
  126:20 127:15
  128:24 129:8
  131:9 133:14
  134:9 145:14
  147:6,11 161:8
  166:11

**says** 8:23 15:19
  17:15 21:3
  32:4 37:14,14
  38:1,6 43:12
  48:4 75:16
  80:20 85:12
  89:6 101:3
  106:15,19
  112:14,15,18
  113:2 118:10
  120:3 123:6
  126:11 133:6
  135:24 142:1
  148:2 150:5
  159:13 160:10
**scale** 30:5 52:6
  54:19 153:15
**scales** 26:23
  63:14
**schedule** 19:2
  29:25 30:11
  36:13 42:12
  46:8 60:18
  73:10 125:6
  127:15 159:14
  160:4
**scope** 25:9 51:15
  51:16 141:3
**scratching** 65:22
**scurrying**
  159:15
**search** 78:4,8,13
  78:16 80:21
  81:3,7,13 82:4
  82:7,14,14,24
  83:25 84:2,4
  searches 85:6
  87:8,9,20,25
  161:16 162:7,9
  162:14,17,19
  162:22,25
  163:24
**searching** 80:24
**second** 6:14,23
  15:13 24:24
  30:21 42:14
  43:4 52:15,25
  55:1 57:6 61:1
  61:6 76:23
  85:16 96:13
  104:15 106:1,2
  106:3,5 115:18
  148:2 150:15
**secondly** 46:7
  59:14 97:18
  112:17 163:7
**second-guess**
  154:19
**secretary** 88:20
**secrets** 17:16
**section** 3:16

  24:20 25:3
  57:17 92:10
  98:6
**sector** 133:4
**see** 4:14 6:10 7:1
  8:23 10:4,9,10
  12:5,21 14:24
  15:4 18:23
  24:5 25:3 29:2
  31:5,21 32:16
  36:2,5,20
  37:11 38:9
  39:19 40:1,15
  40:17 42:14
  44:23 47:1,1
  49:19 55:4,10
  55:25 56:12
  58:2 64:21
  65:13 69:16
  70:17 71:17
  72:9 80:20
  82:9,12 83:4
  84:7 85:11
  92:3 94:14
  100:12 103:3
  104:1,2 105:11
  105:12 106:13
  108:10 109:13
  110:23 130:10
  131:22 134:24
  135:2,4,16
  136:20 138:17
  147:8 154:6
  155:1 157:1
  158:6,10 159:9
  164:2 167:12
**seeing** 84:10
  127:14
**seek** 14:5 38:16
  53:8 166:2
**seeking** 13:20
  15:10 25:24
  37:12 143:12
  154:21 155:24
  162:4
**seen** 2:9,14 4:8
  8:18 11:9 12:5
  14:3 47:24
  60:16 85:16,22
  93:12 104:17
  109:4,6 127:21
  132:5 134:15
  155:2
**sees** 7:9 9:7
  73:23 107:10
  107:18 141:2
**segment** 127:15
**send** 82:1 83:12
  148:3
**senior** 38:8
  39:21 87:14

  90:21 133:10
  140:20 155:3
**sense** 4:7 26:18
  30:24 35:22
  40:25 43:18
  65:20 80:7
  113:24 116:9
  139:13 153:22
  162:12,21
**sensible** 79:7
  82:14,23 87:6
  88:1 91:11
  93:7 109:25
  128:19 163:4
**sensitive** 28:15
  35:17,21
**sensitivities** 36:6
**sent** 69:14,19,25
  107:6
**sentence** 43:4
  61:6
**separate** 154:8
**separately** 43:9
  106:4
**separation** 59:21
**serious** 12:24
  17:1 41:12
  47:6 84:25
  89:7,9 104:6
**seriously** 39:16
**served** 109:5
  130:22,23
**service** 116:14
**services** 31:24
  32:8,14,19
  33:2 39:16
  46:22
**set** 38:23 52:8
  72:19 73:25
  77:22 79:24
  102:20 120:6
**setting** 86:10
**set-up** 144:5
**severely** 46:21
**shades** 137:8
**shadowing** 1:5
**shame** 83:16
**shape** 68:10
**shared** 11:8,10
  12:13,14 68:10
**Sheridans** 1:23
  6:18 73:7,9,15
  73:16
**shifted** 112:14
**shifts** 112:24
  113:4
**shoot** 31:12
**shopping** 36:8
  52:3 64:20
  76:12
**short** 4:10 6:2

20:7 21:13,22
22:1 24:9
29:25 38:15
57:1 76:9,17
92:5 93:18
101:16,19
102:2 139:24
**shorthand**
101:22 136:9
137:14 139:22
**shortly** 131:18
**shoving** 54:10
**show** 24:18
60:12 61:3
75:18 112:7
114:4 122:4,5
122:7
**showed** 163:8
**showing** 63:24
**shown** 77:24
105:5 145:7
**shows** 17:15
**shut** 165:14
**shuts** 115:23
**side** 26:22 30:5
38:11 112:6
126:21
**sides** 52:5 112:6
155:19 162:6
**sign** 61:16
**signature** 42:3
**signed** 62:4
167:4
**significance** 16:9
**significant** 60:6
84:21 87:14
96:2
**significantly**
17:5
**signing** 41:21
**similar** 42:21
60:25 98:6
119:18
**Similarly** 60:25
**simple** 108:16
**simpler** 148:20
**simply** 9:9 10:19
14:12 25:24
36:9 48:23
54:19 56:12
57:9 63:15,24
82:3,4 87:7
96:5 100:17
120:9 123:3
143:5 153:3
158:5 159:9
162:4 164:10
**sincere** 61:2
**sit** 90:23 91:3
131:18 161:6
162:22

**sitting** 76:15
96:24
**situation** 12:13
36:10 60:5
80:16 89:18,21
91:25 145:17
147:11 152:25
**situations** 46:25
**six** 86:7
**skeleton** 2:4,9
6:6 67:10,17
76:21 77:4,22
78:3 84:11
90:1 99:7
118:12
**skeletons** 1:15
**sketching** 102:8
**sledge** 60:4
**slightly** 62:1
76:12 78:5
113:20 136:23
**slow** 97:6,6
144:9
**small** 109:16
116:13
**Smith** 110:23
122:23,24
**snap** 138:20
149:3
**sole** 5:15
**solicitor** 140:23
**solicitors** 51:24
86:8
**solution** 24:4
76:5 116:5
**somebody** 10:6
19:25 36:5,9
39:7 58:22
72:13 79:25
83:20 84:19
91:24 92:17
111:13,21
118:20 119:4
121:9 122:8,15
123:6,9,18,22
124:7 129:8
133:2 134:17
153:2 161:18
**somebody's**
38:24
**someone's** 93:14
**somewhat** 12:19
65:22 152:16
**soon** 98:3 112:23
157:15
**sooner** 4:22
156:23
**sorry** 52:14,15
73:15 96:5
101:25 105:15
105:20,25

128:5
**sort** 57:14 60:4
66:4,13 89:20
91:25 95:9
96:10 97:13
108:18 110:7
111:24 119:20
121:20 126:7
126:21 128:7
128:16 133:13
152:24 153:8
161:12 162:19
**sorted** 29:17
**sorts** 21:1 81:18
121:9 127:6
**sought** 14:12
80:10 104:5
109:17
**sound** 20:8 99:2
**source** 7:3 10:5
10:8,11 15:4,8
19:3,18,25
22:6 26:9
30:16,18 35:6
39:2 40:5
43:10 45:11
49:3,13,17,17
49:17 58:21
67:3 72:13
86:3 106:21
111:11,12
112:1 115:2,3
115:4 118:24
122:15,16
124:19,20
125:11,12
126:23,25
127:3,8,16
132:1 140:17
140:21 141:5
141:13 142:2,5
142:9 143:22
157:2,9 158:12
158:19
**sources** 3:7,18
3:20 4:1,3 5:9
6:1 9:2,4 11:3
11:19,20,23
12:5,5,17,18
12:19 13:1,7,8
13:12,20,21,24
14:5,5 15:6,8
15:22 16:17
18:20 19:11,14
20:18,22 21:15
22:19 23:4
25:23,25 27:3
28:21 30:10
32:15 33:12
36:7,19,24,25
37:9,16 38:5,8

38:17 41:15,25
42:2,8 43:6,8
43:17 44:8,9
45:5 49:24
60:6 61:9,11
62:7 63:20
72:3 102:17
104:14,25
105:2,4,6
106:12 107:9
107:11,25
111:22 112:15
117:10,12,24
118:6,8 119:15
119:18 120:13
124:18 126:12
126:16 132:24
135:7,9,13
140:10,25
142:13,16
146:9 147:6
150:22 151:3
152:5,10
155:15 156:14
160:2
**source's** 15:20
16:2 52:17
118:8
**spanner** 145:14
**speak** 50:2
**Speaking** 36:19
37:8
**speaks** 66:8
**special** 57:18
**specific** 4:16 5:4
29:16 30:12
42:17 43:8
45:8 49:6,25
60:2,2,2,9 64:6
64:7,7 71:23
72:19 74:24
82:13 114:25
120:24,25
124:16,18,20
124:24 126:2,5
126:13 155:13
**specifically** 8:3,7
8:8 9:2 13:7
14:2 24:18
56:22 105:1
132:13
**specificity** 48:18
52:4 64:24
66:4 99:19
148:10,15
160:12 166:21
**specified** 66:19
70:24
**spectrum** 12:21
**speculate** 59:16
**speculating**

100:18
**speculation**
42:23
**speculative**
150:18
**speed** 137:25
**speediest** 102:6
**speedily** 65:9
103:16
**speedy** 137:21
**spells** 66:15
**spilling** 17:16
**spine** 73:7
**spoken** 88:9
**spotted** 6:5
**stable** 54:10
**stage** 4:25 22:17
34:11 35:7
55:24 64:3
98:11 100:24
102:22 103:7
137:18
**stages** 27:12
**stake** 54:17
**stand** 21:5 47:1
47:10 148:4
**standard** 42:4
61:18,22 86:6
125:2
**stands** 88:5
**start** 30:3 59:22
96:19 101:2
103:14,15
154:1,2
**started** 4:22
94:20 136:5
**starting** 103:19
104:7 113:13
127:13 153:22
154:1
**starts** 158:24
**state** 5:2 11:21
**statement** 6:14
6:23,25 7:15
8:2 15:14 22:3
24:24 30:21
31:17 35:8
37:18,22 49:16
52:15 55:1
61:1 79:13
83:20,21 84:5
85:16 86:1,9
86:25 87:4,5,7
87:22 88:4,16
95:8 104:16
105:9,19 106:1
106:5 109:5,7
143:7 150:16
150:17,20
161:18 162:9
**statements** 2:11

12:7 18:25
69:11 70:10
149:13 159:16
**States** 20:20
41:6 100:7
116:22 144:16
145:19 147:7
148:1,19
160:25
**status** 86:24
**statute** 98:2,17
**steer** 148:13
**stems** 67:22
**step** 111:18
117:1,1
**stepped** 109:21
**stepping** 40:21
**steps** 59:3 83:2,2
85:5 109:4
**stick** 116:13
**sticks** 116:12
**stoney** 147:22
**stood** 159:19
**stop** 58:1 83:4
127:20 131:18
136:9 137:13
137:14 139:21
153:2 165:2
**stopping** 131:20
**story** 124:17
**straight** 81:20
167:5
**straightforward**
66:24 90:17
125:18
**strange** 147:10
**street** 10:9 19:25
**strength** 63:7
**strengths** 63:16
**stress** 113:8
**strict** 121:19
125:12,20
**strictly** 100:2
130:18 164:21
**strike** 5:22
154:17 155:12
**striking** 155:9
**strong** 23:17
117:13 132:16
132:24 153:1
**stronger** 11:24
40:20
**stuck** 27:23
**stuff** 147:12
**subcontractors**
36:22
**subheadings**
46:3
**subject** 2:12
11:18 21:8
22:7 23:10

45:11 63:12
69:7 89:25
125:25 132:17
132:19 137:3
148:22 157:22
**Subjected** 8:22
**submission** 6:4,5
12:11 21:13,16
21:21,25 22:16
26:17,22 27:4
32:12 33:15
35:10,15 41:8
41:10 46:12,13
47:3 59:5,5
60:4 63:23
64:14 68:13
73:11 91:1
92:7 112:3
118:19 127:23
140:14 144:7
149:10 151:24
152:3 153:16
156:5 158:11
158:14,20
159:3,11,17
160:9,15 161:1
162:5 163:21
**submissions**
1:20 2:16,25
3:2,3 4:11 8:16
8:24 19:4
24:11 26:3,20
32:10 50:25
52:2,9 53:1
54:13 64:17
70:17 74:21
75:24 78:10
79:6 85:13
88:18 94:11
101:13 102:14
103:14 114:11
129:25 131:14
149:5 158:16
159:25 160:6
162:1 167:17
167:18,19,20
167:21,22,23
167:24 168:1,2
**submit** 140:6
**submitting** 41:8
**subpoena** 79:21
79:22 89:18
113:22 161:15
**subsequent**
60:10
**subsequently**
87:21
**subset** 29:6
**subsidiary** 29:18
64:19
**substance**

108:22
**substantial**
29:12 149:19
**substantiate**
16:14 34:11
**substantiated**
16:24
**substantiating**
16:22
**substantive** 5:14
17:19,20,25
68:2
**substitute** 5:23
**success** 143:1
**suffer** 26:19
42:3
**sufficient** 16:25
46:15 47:22
**sufficiently** 65:5
130:13
**suggest** 3:19 4:2
23:20 39:23
91:9 148:23
159:18
**suggested** 35:23
35:24 39:22
67:8 86:14
90:8
**suggesting** 27:18
48:22
**suggestion** 38:12
42:5 114:22
**suggests** 43:19
**suing** 144:19
**summarise** 46:9
**summons** 89:19
**sun** 104:3
**supplied** 5:10
9:24,24 69:5
**suppliers** 11:22
**support** 7:15
8:18 95:9
143:9,10 144:4
144:11 145:12
145:13,15,21
145:24 146:11
146:18 147:13
149:9,18,19,21
151:11,25
152:1 160:3
**supporting** 86:3
**supports** 8:2
**suppose** 123:17
129:21,22
130:3
**supposed** 42:18
65:23 75:10
**sure** 18:17 34:14
44:1 45:23
60:20 66:14
69:18 73:2

100:3 107:22
109:22 113:1
131:13 132:23
142:19 144:12
148:25 150:12
150:14
**surely** 5:25
94:21 98:15
111:9 128:2
136:4
**surmised** 149:23
**surprise** 86:19
**surprising** 35:15
53:24 87:17
109:9
**suspect** 20:12
164:25
**suspend** 98:5
**swearing** 83:20
**syllable** 66:16
**sympathy** 11:11
23:24
**system** 31:3
120:1 129:5

**T**

**tab** 6:21 19:8
31:16 43:1
48:13,14 60:14
62:17 65:12
72:20 105:18
105:23 106:2
**table** 30:7 55:5
**tactic** 160:21
**tactics** 154:7
**take** 12:8 13:5
13:15 14:20
15:14 19:19
20:11 22:5
24:6 28:13
37:11 39:25
45:21 46:12
47:19 48:4
51:2,5 52:22
55:6,8 58:7
63:5 67:10
76:3,8 92:5
93:18,21
101:15 103:16
104:16 109:18
115:5 124:10
128:1 130:8
131:13 139:3
141:24 147:14
158:5 162:25
163:6,15,16
**taken** 14:9,11
21:19 24:14
29:24 78:2
83:2,3 85:6
86:18 88:25

98:24 111:1
119:10 122:18
139:14 142:24
152:10
**takes** 111:17
**talk** 89:15
**talked** 4:3 94:24
**talking** 22:10
105:4 131:17
134:16 135:1
**tangential** 47:5
156:11
**target** 39:7 40:4
127:21
**tea** 111:22
140:22 141:13
**team** 165:23
**tearing** 75:14
**tell** 55:19 58:23
77:10 84:23
101:12,17
123:17,22,25
144:23
**telling** 28:20
150:4
**template** 167:2
**Ten** 139:22
**tend** 10:7 118:13
**tender** 79:25
**tends** 92:1
**tension** 146:6
**tenuous** 159:10
**term** 23:7
**terms** 10:2 21:19
22:23 24:1
27:24 33:3
34:4,18,22
37:24 42:4
48:9 49:8
56:13 61:18,22
62:5 64:23
67:16 83:17
101:10 102:3
107:14 132:22
134:11 138:5
139:20 140:15
143:17 147:6
154:14 166:8
**terrible** 91:24
**terribly** 91:23
116:11 120:15
167:10
**territory** 142:12
**test** 3:12 62:16
65:2 68:14
71:5 75:12,15
**tested** 49:23
**testing** 64:5
131:21
**thank** 57:22
60:19 73:22

79:4 102:1
103:4 165:25
166:13 167:11
167:13
**theoretical**
130:15
**they'd** 95:14
100:18 142:16
156:12,15
**Thiam** 74:9
**thing** 13:1 34:10
87:18 99:10
100:20 109:1
110:13 115:18
122:22 139:5
148:17 162:19
**things** 9:14
10:23 13:11
17:9 29:1
60:23 81:19
83:22 84:11
97:18 137:9
165:21
**think** 2:21 14:1
14:7 15:12
18:5 19:5
20:11 24:2,6
27:22 29:16
31:25 35:25
36:17 37:8
39:11,12 40:10
42:25 51:17,23
52:4 56:14
57:17 59:1
60:19 61:17
62:2,21 64:22
66:16 68:22
69:13 70:6
71:6,10,14
73:20 74:6
75:18,20,22
78:8,14 79:9
79:14 81:16,17
82:22 83:14
84:9,19,25
89:23 91:3,18
93:15,22 94:8
94:20,22 96:3
101:1,8,12
103:11,17
104:15 105:8
106:10,16,19
106:20 109:6
116:9 120:17
121:4 122:20
124:11 125:6,7
125:18 126:3
129:10 130:25
132:7 133:8
135:16 137:2,5
137:11,18,22

138:3,10,18,20
138:25 139:4
143:17,20
146:17 147:23
148:7,9,12,25
149:2,3 150:13
154:10,14
161:8,11 165:1
165:18,22
166:1,14
**thinking** 4:12
121:14 132:10
157:10
**thinks** 64:4
**third** 30:8 33:22
34:9,16,20
70:6 146:7
**Thirdly** 46:10
97:24
**thoroughness**
16:15
**thought** 12:6
21:7 27:10
37:23 57:2
61:24 66:3
132:17 138:23
154:13 158:21
**thoughts** 137:20
**thousands** 82:19
**threatened**
130:19
**threats** 152:17
**three** 1:10 3:4
6:15 19:1,19
28:17 30:7
31:13 38:6
45:21 46:22
52:11 64:25
73:11 83:11,13
101:15 124:25
130:23 135:11
165:21
**threshold**
159:12
**throws** 145:13
**thrust** 100:3
**thumbscrews**
133:16,21
**Thursday** 1:1
**tied** 79:7 147:2
**time** 2:3 4:22 5:2
10:2,20 13:25
17:5 20:7 41:9
42:5 44:12,21
50:10 59:3
65:24 67:24
72:25 81:21
82:19 88:24
91:13 94:23
95:14,15 96:13
98:23 100:23

102:16 109:22
110:21 115:19
137:17 148:7
161:23 167:1,5
167:10
**times** 165:21
**timescale** 101:3
166:8,12
**timesheets** 65:14
66:8,8,9
**timing** 25:9 96:4
99:5,8,10
157:12,13,24
**Tinto** 4:20,23
5:10 9:25 10:1
10:1 11:8,10
11:13,20,23
12:3,4 15:1,2,5
15:24 16:1,10
16:18,25 17:4
23:1,2,9,13,16
23:20 27:7,8
27:12,12,19,23
28:1,4,7,12,14
28:17,20,20,24
29:1 30:18,22
30:25 32:2,5
32:13,19,25
33:9,14 34:6
34:10,15,21
40:12 41:21
42:4 43:7 44:5
44:5,10,12,20
45:2 53:6,7,9
53:15,19 54:9
54:14,15 55:11
55:15,19,20
56:3,9,23,23
57:24 58:14,18
59:15,20 61:9
61:10 62:5,20
67:1,2,5,6
68:10 69:2,5
69:15,20,25
81:11,23 82:20
94:21 98:2
104:2 106:15
106:19 107:8
107:12 108:14
109:4 110:16
110:17,19
125:1 136:13
136:15 141:17
141:22 142:10
142:15,21,22
143:20 144:23
146:8 149:21
150:1,3,20,25
151:7,9 152:2
156:18 157:8
161:25

**Tinto's** 5:2,19
18:8 30:23
44:22 53:3
57:10 58:2
61:18 69:17
94:19 97:9
157:5
**tip** 95:4
**tipped** 137:11
**tips** 96:3
**today** 1:10 51:18
78:9 102:25
103:6 115:22
121:1 138:19
138:22 139:20
**told** 16:13 24:15
43:14,15 53:9
54:6 84:12,18
84:24 98:16
104:23 105:1
111:14 122:15
123:24,25
124:8,16,22
126:4 134:5,19
142:12 150:19
151:1,9 157:20
160:19 163:12
**tolling** 57:21,22
57:23 58:19
95:6 96:7 98:8
110:21 136:16
137:7 141:8
**tomorrow**
138:11,15
139:18 166:18
**tooth** 142:25
**top** 44:24
**topic** 62:11
**totally** 114:7
**toto** 104:8
159:15
**trading** 88:20
**trained** 164:8
**Trainer** 54:24
**transcript** 7:13
7:14,25 105:11
105:14,17
147:19 154:25
165:22
**transferred**
122:6
**trashy** 111:19
**traverse** 64:9
149:6
**traversed** 29:12
**Traynor** 12:9
33:12,13
**tread** 63:21
**treat** 92:13
147:16
**treated** 145:20

**treating** 90:15
**trespassing**
112:20 155:7
**trial** 8:10 9:5
103:22,25
104:4 113:25
113:25 151:4,5
**tried** 55:6
142:24
**trite** 113:12
**trouble** 58:24
68:20 79:1
**troubled** 148:6
**troublesome**
90:11
**troubling** 144:8
**true** 14:17 80:3
141:4
**trumping** 147:5
**trumps** 117:8
**truncating** 101:2
**trust** 120:14
**truth** 83:21
**try** 24:3 29:11
96:22 159:23
166:17
**trying** 22:20
36:14 37:6
44:22 54:19
62:14 139:4
**turn** 4:23 25:2,7
30:5 31:7 43:1
56:15 57:15
77:19 80:2,14
84:5 87:15
89:16,20 105:7
105:25 109:13
162:22 163:5
164:19
**turned** 87:24,24
89:1,2 141:1
**turning** 62:18
83:19 161:19
**turns** 78:17,19
88:2 165:4
**two** 13:11 18:18
45:5 50:20
53:1 54:17
59:12 64:25
74:6 94:17
101:6 104:10
112:15 115:7
125:19 132:7
138:7 142:7,7
146:4 153:20
162:1 165:21
**type** 39:6 41:3
87:7 88:16,16
119:14 151:17
165:16,17
**types** 22:1 35:19

**U**

**UK** 7:21,22
128:15
**ultimate** 37:6
**ultra** 21:12
**unable** 44:16
85:7
**unaware** 152:11
**uncertain**
125:14
**uncontroversial**
77:23
**underlining**
95:15
**underlying**
64:13 75:12,15
80:12 103:20
136:22 137:4
140:25 156:15
**underpin** 9:20
117:17
**underpinned**
117:12
**underpinnings**
9:19
**understand** 2:18
3:17 9:7,22
10:3 15:23
16:9 20:15
26:14 28:9,25
29:15 41:10,18
41:23 46:17
54:16 66:18
70:14 84:2
96:14 98:23
99:8 103:18
108:22 110:15
110:16 116:4
126:17 130:9
141:8,9 156:9
164:6
**understanding**
4:15 5:3 27:18
27:18 28:13
33:20 40:9
61:25 126:24
156:3
**understood**
74:25
**undertake** 26:8
**undertaken**
35:13
**undertaking**
33:4 34:4
43:10
**undertakings**
42:17 43:8
126:2
**undiverse**
128:17,19
**undoubtedly**

36:12
**unduly** 82:23
**unfettered** 23:2
**uniformly**
104:24
**United** 41:6
116:21 160:24
**universe** 83:13
**unlawful** 124:9
**unpaid** 118:21
**unparalleled**
131:14
**unreasonable**
21:5
**unredacted**
112:11
**unsatisfactory**
31:14 163:13
**unusual** 116:25
117:7
**upheld** 46:15
**urge** 116:9 117:2
147:1
**urged** 20:16
**urging** 137:24
**use** 5:13 9:9
36:24 44:17
72:9 118:5
119:18 150:1
162:23 163:22
**useful** 21:25
57:15 155:1
162:16
**usefully** 164:1
**usual** 45:10,11
90:18
**usually** 113:7
**utilised** 58:4

**V**

**v** 121:14
**vague** 152:16
**Vale** 1:13 4:15
4:21 5:17 7:2
17:8,13,15,17
33:8 40:11
42:7 43:23
44:6 78:25
88:9 93:2,2
151:2 165:14
**Vale's** 86:15
**valiantly** 45:25
**valid** 140:22
**validity** 98:25
**valuation** 13:3
**value** 12:17 40:8
63:7 88:3,4
117:4 119:14
119:15,15,17
124:10 150:24
157:6 164:25

165:5
**valued** 141:5
**variety** 1:18
17:13 21:1
124:14
**various** 11:13
27:12 35:19
46:2 121:4
137:8
**vary** 49:5 164:17
**vast** 54:22
**venture** 37:5
**verbal** 33:4,18
33:21
**verifies** 84:4
**verify** 71:3
**verifying** 80:3
**verse** 84:20
**versions** 124:14
**versus** 155:15
161:2
**view** 22:5 23:5
55:11 92:16
94:1 122:17
147:14
**views** 5:23
**vis-a-vis** 34:21
**voracity** 98:25

**W**

**waiting** 88:2
148:16
**walking** 10:8
**wall** 58:20
**want** 4:10 14:21
14:25 24:21
31:11 48:9
67:9 71:17,23
77:4 83:1,3
84:20 85:4,4
88:1,11 89:15
92:19 94:15
95:18 101:10
101:11,12
103:10 105:24
106:12 107:6
110:15,16
137:19,21
144:2 152:21
154:6,6
**wanted** 52:6
58:18 77:9
87:25 94:17
96:12 101:6
128:4 140:14
**wanting** 14:22
107:11 109:22
122:9
**wants** 24:19
37:15 50:2,3
120:17 127:11

war 140:24
wasn't 5:8 53:24
    100:21
waste 109:22
wastes 91:13
watch 84:16,19
    163:10
watchdog
    117:14
water 99:12
    154:11
waved 116:12
waves 58:10
    112:23
way 2:8 9:7
    19:23 20:15
    21:5 23:8,11
    31:14,21 42:24
    47:8 50:4 51:6
    51:14 54:13
    59:16 66:3,19
    68:9 72:7
    74:23 82:7,14
    83:22 90:18
    94:15 102:7
    103:7,11
    109:14 112:15
    112:22 114:24
    115:5,6,7
    117:19 118:4
    121:6,12,13,18
    125:8 128:14
    129:2 134:16
    135:17,23
    136:18 137:25
    148:20 154:23
    161:14 162:3
    162:13
ways 22:15
weaker 40:20
weaknesses
    63:16
website 149:18
weekend 139:15
weigh 3:23
    112:18 159:15
weighing 3:11
weight 46:15
    114:18 158:2
well-resourced
    160:22
went 21:7 53:7
    122:13 129:10
    131:24
weren't 11:4
    97:16
Westinghouse
    8:12 52:21,23
    62:21 77:16,17
    161:13 165:17
Westinghouse...

83:6 99:20
we'll 115:11
we're 4:23 37:24
    57:8 75:9,18
    88:15 105:20
    113:22 120:13
    124:2 147:25
we've 120:12
    140:8 161:8
whichever 125:2
    138:25
whilst 68:3
    77:18
whingeing 70:9
Whitaker 90:21
white 72:23
wholeheartedly
    158:22
wholly 31:14
    149:23
wide 25:12
    26:24 65:1,19
    65:21 71:15
    74:17,19 75:8
    143:17
wider 59:1
    139:11
width 64:11,23
    67:16 70:3
willing 86:12
    93:20 106:21
    116:1,2 118:20
win 59:18
wink 107:5
wish 29:6 92:6
    139:10 149:6
wishing 42:10
witness 2:11
    6:14,23,25
    12:7 15:13
    18:14,25 22:3
    24:24 25:6
    30:21 31:17
    35:7 37:22
    40:2 52:15
    55:1 61:1
    75:13,16 76:13
    77:24 79:24
    80:11 82:3
    83:19 84:2
    85:16 86:9,24
    87:4,5,7,22
    88:4 89:19,20
    90:4,16,20
    91:12,16 92:13
    92:18,19,20,21
    92:21,24 93:12
    95:8 104:16
    105:18 106:5
    109:7 126:23
    144:15 149:13

150:16 159:16
    161:18 162:8
    164:9
witnessed 127:5
witnesses 8:5
    9:10 25:4,17
    25:21 50:21
    51:20 79:18
    80:5 90:14
    124:18,18
    129:15 143:13
    143:15 151:4,6
    164:3
wondering
    92:23
woolly 126:19
word 78:4,16
    82:19 87:8,9
    87:25 106:10
wording 25:14
    57:5 66:14
words 23:8
    26:24 66:16
    67:6,22 77:2
    78:14 86:2,5
    149:25 150:18
    150:23 151:6
work 1:5 16:15
    40:13 47:25
    67:22,24 68:23
    69:6 78:24
    133:24 144:3
    150:24 151:8
working 45:3
works 23:7
    145:14 162:3
world 46:20
    47:14 128:12
    133:3
world's 54:17
worn 63:4
worry 139:4
worth 54:25
    62:18 90:1
    105:3 143:18
    166:21
wouldn't 20:1
    30:21 48:11
    93:1 122:21
    144:24 146:9
    154:13 156:13
    164:10
write 76:24
    101:14
writer 136:10
    137:14 139:22
    150:16
writers 101:22
writing 139:6
    147:24,25
written 33:4
    38:20 106:13

147:25
wrong 21:16
    33:9 70:21
    75:19 134:11
    135:17 143:18
    144:11 150:19
    152:7 159:18
wrongfully
    35:22
wrongly 92:18
    99:14 101:4
wrongs 134:14

_____
        X
_____
X 34:24 49:17
    111:14 141:24
    157:20

_____
        Y
_____
Y 34:24 74:10,14
    74:15 157:20
yay 167:8
year 53:14,17
years 53:14 59:9
    86:7 92:9
    129:8
yellow 95:4
    111:10
yesterday 7:24
    76:20 99:7
yield 122:11
York 4:17 5:5
    9:14 11:6
    15:21,25 16:4
    16:13,21,23
    95:5 96:5,20
    96:24,25 98:1
    99:13,24
    100:10,11
    104:4,5 105:12
    107:10 110:12
    116:7 141:20
    144:18,23
    154:12 160:19

_____
        Z
_____
zero 158:3
Zimbabwe
    128:23

_____
        1
_____
1 30:8 167:16
10 3:16 25:3
    60:14 85:15
    87:5,11 149:17
    150:16
10.30 1:2
103 109:11
105 109:12
1067 62:23
11 6:21 37:17

11.05 24:8
11.09 24:10
12 39:9 108:24
12.54 101:18
1200 39:10
131 7:10
137 55:1,3
14 15:17
140 55:8
149 168:2
16 32:16 58:3,4
    107:17 143:16
16.1 32:3,3,12
    33:7,16,18
    42:6 59:15,19
    61:14,16 62:3
    152:3
164 168:3
167 7:13,16
17 43:1,4 106:7
    126:9
18 53:20 59:11
    126:10
18.5 77:23
19 6:25 53:20
    55:10,19 56:10
    59:11 167:19
19th 76:1
19.2 67:18

_____
        2
_____
2 6:18 44:25
    60:12 100:1
    101:9,17 105:8
    105:18 149:15
    153:6
2.00 101:20
2.54 139:23
2008 17:8
    129:10 158:9
    158:16
2010 53:15,16,19
    55:10,17,19,20
    56:11 59:8
    96:25 97:4,14
    97:15,19,21,25
    98:13 99:15
    100:1 129:13
    158:8,15
2014 53:13
2015 1:1
24 140:2 167:20
24.1 38:16
25 1:1 105:13,16
26 167:21
28 163:1

_____
        3
_____
3 62:17 65:12
    72:20 167:17
3-type 153:7

3.04 139:25
3.4 33:19,25
3.4E 32:23
3.42 167:14
30 53:13,15,16
    53:19 59:8
32 25:2 31:21
    98:6 118:12
32-type 57:17
333 6:25

_____
        4
_____
4 2:5 7:16 48:13
    48:14 76:19

_____
        5
_____
5 31:16 43:1
    70:18
52 15:17,18
54 15:18 16:12
55 150:20

_____
        6
_____
6 19:8 61:1,7
60 150:23
61 149:23
63 58:7
68 6:13 52:12,14

_____
        7
_____
7 19:11 38:16
74 167:22
75 167:23
79 167:24

_____
        8
_____
8 153:6 167:18
8.1 18:6
80 43:13
82 25:16
88 168:1

_____
        9
_____
9 30:20 60:12
    85:15 86:20
    87:4,11 106:2
93 43:2
97 105:10,16
    106:6,7