quinn emanuel  trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia  20001-3706 | TEL (202) 538-8000 | FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
(202) 538-8166

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

August 6, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:     Rio Tinto v. Vale et al, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

Defendant Vale's August 4, 2015 letter (Dkt No. 309) purports to correct the record where no such correction is necessary.  The document Vale references in its letter says exactly what Rio Tinto told the Court it said and, more importantly, is representative of numerous other documents that support Rio Tinto's allegations in this case.  To reiterate, the document at issue is an annotated Mineral Development Agreement dated November 2009 regarding BSGR's and Vale's joint proposal to construct a railway through and a port in Liberia for the export of iron ore from Guinea.  Rio Tinto expressly alleges in its operative complaint that Vale and BSGR fraudulently obtained and used Rio Tinto's proprietary information, such as the plan for the exportation of iron ore from Guinea through a Liberian railway and port, in furtherance of their conspiracy.  Indeed, Rio Tinto made this information (*i.e.*, using a Liberian railway and port) available to Vale when the parties where engaged in negotiations.  Vale attempts to explain away the significance of this annotated agreement by pointing to *other* documents, including documents produced *after* the parties' most recent hearing, and by relying on certain metadata connected to the agreement and those other documents.  But Vale's attempt to whitewash the significance of the agreement only reinforces what Rio Tinto told the Court at the hearing:  Vale needs to produce documents that it is improperly withholding, including all documents concerning BSGR's and Vale's desire to use a Liberian railway for exporting iron ore from Guinea.

On its face, the annotated agreement Vale complains about is highly relevant:  it (i) is dated just five months after the negotiations between Rio Tinto and Vale ended (a time period in which Vale denies having had *any* contact with BSGR), (ii) it addresses information (the use of

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Liberia to export iron ore from Simandou) that Rio Tinto alleges Vale stole from it, and (iii) indicates that changes are necessary to the agreement based on Vale's and BSGR's proposal to use a Liberian railway, a proposal that was necessarily raised and discussed at some earlier point in time.  Moreover, one of the emails Vale references in its letter relating to the agreement concedes an additional key fact: the agreement relates to a new port at Didia, which is exactly what Rio Tinto identified to Vale during the negotiations, and is exactly what Rio Tinto alleged in the Amended Complaint.

Vale premises its argument that Rio Tinto made a misrepresentation on the metadata from two versions of the agreement, one of which (along with a cover email) had been withheld from Rio Tinto until after the parties' last hearing.  But Vale's self-serving interpretations and assumptions based on the metadata associated with these documents do not resolve the key question about when the annotated agreement was *first* created or even *later* modified.  Vale merely cites the metadata field on which the document was *last* modified, which is unremarkably identical to and a product of the email attaching it.[1]  In fact, the more relevant metadata to consider contradicts Vale's interpretation:  in both versions Vale has now produced, the title of the agreement in the metadata is "DRAFT-*May 10, 2009*," which is even earlier than what is on the face of the agreement.  How exactly the agreement has a date of May 10, 2009 (when, notably, Vale was still in negotiations with Rio Tinto) in the title metadata field, as compared to November 2009 date on the face of the document, as compared to a last modified date of September 2010 remains open.  For example, it is unclear whether the agreement was *previously* modified, *subsequently* modified, or circulated between Vale and BSGR or within Vale itself before September 2010.  Moreover, Vale's citation to the website address for this document links to a November 28, *2008* agreement.  Meaning, at some point, the date on the face of the version used by BSGR and Vale changed to November 2009.

In short, Vale's letter and its sudden production of additional documents in connection with its letter only reinforce that there are more documents that Vale needs to produce.  Rio Tinto therefore requests that Vale be ordered to immediately produce the rest of the documents it is wrongfully withholding.

Finally, the only part of the record in need of correction is Vale's repeated misrepresentation that there are "no documents supportive" of Rio Tinto's allegations.  While Rio Tinto's review of Vale's documents is ongoing, even the limited amount of documents it has produced so far show that:

- Vale's Eduardo Etchart met with BSGR and Defendant Frederic Cilins (who later pled guilty in 2014 to obstruction of justice, specifically the destruction of bribery documents, in connection with the U.S. investigation into bribery and corruption at Simandou) as early as 2006;

---

1  Indeed, this same metadata field in the other version of the document produced by Vale has the same date as the email that attaches it.

- Vale mapped out a strategy in response to Mr. Ledsham's request that Vale focus on gaining a stake in Simandou by currying favor with the Guinean Government and noting that BSGR was acting improperly in trying to gain rights at Simandou, in particular through direct contact with one of the President's wives in October 2008 (one of whom later admitted to receiving bribes from BSGR representatives in an effort to steal Rio Tinto's mining rights at Simandou) – *i.e.*, at the exact time Vale was heading into negotiations with Rio Tinto for Simandou; and

- Vale's in-country manager in Guinea reported to Vale's Eduardo Ledsham (a key custodian whose documents have been destroyed) on December 12, 2008 about the irregular award of Simandou Blocks 1 and 2 to BSGR just days earlier and stated that Beny Steinmetz flew into Guinea with bags and envelopes likely containing cash.

Despite Vale's baseless claims, all of these documents (and many others) support the allegations in the Amended Complaint, and this is so even though Vale has destroyed untold numbers of documents from eight critical witnesses (including Vale's former CEO and CFO), all of whom were central to Vale's venture into Simandou. Rio Tinto has already informed the Court, and reiterates here, that given this wholesale destruction, Vale's production is missing emails among these key witnesses, and merely includes less than 2,000 e-mails that were sent or received by these eight custodians. In fact, there is only *one email* sent by Roger Agnelli – Vale's former CEO who led Vale's efforts with respect to Simandou. In short, Vale cannot on the one hand, destroy documents from key witnesses and then, on the other hand, say "there [are] no documents supportive of Rio Tinto's allegation[s]."

Very truly yours,


/s/Michael Lyle
Michael Lyle