USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 8/13/15

MEMO ENDORSED ORDER, 14 civ. 3042

The amount of ink spilled by both sides, at great expense to their clients, is a waste of money, and certainly a waste of the Court's time. It is more than past time for counsel to learn to follow Fed. R. Civ. P. 1 (and its Dec. 1 version coming, making even clearer that cooperation is expected). Both sides letters keep trying to argue the merits of the case, an issue that will be before Judge Berman if the case survives the motions to dismiss. Let's try to lower the temperature and focus on discovery, so you can, sooner rather than later, get to the merits.

As to Mr. Brown, without ruling on the "possession, custody or control" issue, Rio Tinto and its counsel is to use good faith best efforts to get him to search for and produce responsive documents to Vale. The same goes for Mr. Leighton, although the argument for practical possession, custody and control is weaker there. As to costs, while the amounts Brown and Leighton allegedly have sought seem outrageously high (one might even say extortionate), all the Court can do at this point is invite the parties to cooperate to get them to reduce their demands. In light of the parties' legal expenses (as reflected in such things as the 6 page single spaced letter to which this Order is attached) the Court cannot get too concerned with which side should bear the cost- but I will rule on it down the road if necessary.

The real message is for the parties and their counsel to cooperate more and write less.

Dated: New York, New York
       August 13, 2015

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

Copy ECF: All Counsel
          Judge Berman

BY ECF

**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
(202) 538-8166

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

August 12, 2015

**MEMO ENDORSED**

- ATTACHED

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

We write in response to Vale's August 10 letter to Your Honor (Dkt No. 315). Once again, Vale has resorted to misrepresenting the record, distorting the facts, and making baseless accusations. The fact is that Rio Tinto properly identified the investigative firms responsible for producing the investigative reports Vale sought.[1] As a result, with respect to the investigative reports prepared by Begbies Traynor Group plc ("BTG") that are the subject of Vale's letter, Vale received two boxes containing nine arch lever files of responsive documents from BTG on August 4 – a fact omitted from Vale's letter to Your Honor. This fact alone shows that Rio Tinto pointed Vale in the right direction. The rest of Vale's arguments in its latest attempt to push its "cause célèbre" rest on equally faulty premises: that, prior to the English proceedings (to which Rio Tinto was not a party), Rio Tinto knew that two *former employees* of BTG had responsive BTG documents and that Rio Tinto had the ability to force them to turn them over. Vale is wrong about both assertions. Rio Tinto offered to explain all of this to Vale, but Vale instead rushed to Court with incorrect assumptions and mischaracterizations, rather than actual facts. *See* Ex. A, Aug. 7, 2015 email from E. Lyttle to J. Blackman. Rio Tinto now writes to provide the Court with the actual facts that Vale did not wait to hear.

As the Court knows, Rio Tinto was ordered to identify the investigative firms. Rio Tinto correctly identified BTG as the investigative firm it hired for its investigation in the Spring of 2010. Rio Tinto's engagement letter is with BTG, the reports came under BTG cover, BTG submitted the invoices, and BTG is the company Rio Tinto paid.[2] As a professional courtesy,

---

[1] Those same reports were also produced to Vale – by its own admission – almost 6 months ago.

[2] All of which Vale knows since Rio Tinto has produced not only the investigative reports at issue but also all of its invoices for that work.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Rio Tinto also identified a point of contact at each investigative firm, including BTG.[3] Here again, Rio Tinto correctly identified John Humphrey as the point of contact at BTG as he handled all aspects of BTG's responses to requests for documents. Mr. Humphrey on two separate occasions responded on behalf of BTG to Rio Tinto's requests that BTG voluntarily provide the requested documents, asserted BTG's rights over the documents sought, and repeatedly advised Rio Tinto that BTG would not turn them over.[4] Mr. Humphrey also provided all the witness statements on behalf of BTG in the English proceedings. In those witness statements and during the English proceedings, Mr. Humphrey confirmed that BTG had some responsive documents and agreed to produce them (subject to redactions for confidential source information that the English court permitted). Mr. Humphrey was then ordered by the English court to search for more responsive documents held by BTG. Ultimately, Mr. Humphrey and BTG produced "two boxes of files" containing "nine lever arch files," which Vale received on August 4, almost a full week before writing its letter to the Court (and still has not provided them to Rio Tinto). *See* Ex. D, Aug 4, 2015 email from J. Turner to P. Duignan; *see also* Ex. E., Letter from DWF LLP to Cleary Gottlieb.[5] And although Rio Tinto has not seen it because Vale has not provided it, Mr. Humphrey's and BTG's production would not seem to be fluff since the cover letter indicates they are redacting source-related information pursuant to the English court's judgment.[6] In light of all this, Vale cannot claim that Rio Tinto was wrong (or to use

---

[3] Vale distorts the record when it cites, on page 2 of its letter, two portions of the February 6 transcript as a purported order from Your Honor that Rio Tinto was to identify appropriate individuals from each firm to be examined in relation to the investigations. Your Honor made no such order. The first discussion at the February 6 hearing that Vale cites related to a single report (not a BTG report) which did not identify who had prepared it (unlike the reports at issue here, which clearly identified themselves as BTG reports). Vale requested, and Rio Tinto agreed in that instance, to identify who prepared the report. Even then, Vale stated that it would "start with just the entity . . . ." Feb. 6, 2015 Tr. at 27:6-17. The second discussion at the February 6 hearing that Vale cites related to amending interrogatory responses to identify Rio Tinto employees that Vale had indicated it believed should be included, which Rio Tinto agreed to and did do. *Id.* at 29:1-12. Notably, on the interrogatory front, Vale's new view articulated in its letter that Rio Tinto should have identified specific people within the investigative firms (rather than just the firms themselves) in its interrogatory responses is at odds with what Vale itself did in its interrogatory responses. Vale's interrogatory responses are chock full of instances where Vale identified only entities, not individuals within those entities. *See, e.g.*, Vale's Third Amended Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 6, 12 (identifying entities such as Nardello, Deutsche Bank, and Ernst & Young, not individuals within those entities).

[4] These April 8, 2015 and May 22, 2015 letters from Mr. Humphrey were provided to Vale and the Court. Copies of these letters from Mr. Humphrey are attached again here for the Court's convenience as Exhibits B and C.

[5] Curiously, Vale cites on page 3 of its letter to Mr. Humphrey's first witness statement on June 2 in which he says he had no responsive documents but omits that Mr. Humphrey and BTG later produced these two boxes of documents even though Vale received these documents almost a full week before writing its letter to the Court.

[6] Rio Tinto only learned that Vale had received these documents from BTG in the course of preparing this response and only after having to (once again) request that Vale provide it with materials from the English proceedings.

2

their inflammatory term, "deceptive") for identifying Mr. Humphrey as the point of contact at BTG.

Vale's true complaint therefore is that Rio Tinto should have identified two *former employees* of BTG as its points of contact, namely Messrs. Nigel Brown and Alec Leighton, rather than Mr. Humphrey. But Rio Tinto retained BTG, not Mr. Brown or Mr. Leighton for the Spring 2010 investigation.[7] And at the time Rio Tinto identified BTG and Mr. Humphrey, Rio Tinto had every reason to believe that BTG was in possession of its own documents, including those created by former employees like Messrs. Brown and Leighton. Indeed, prior to the English proceedings, Rio Tinto had no reason to believe either Mr. Brown or Mr. Leighton had documents responsive to Vale's letters of request since their work was done while they were at BTG years ago.[8] Even the English proceedings were a black hole for Rio Tinto: Rio Tinto had no specific information because it was not a party to them, was not permitted to participate in them, and Vale failed to provide any information about them until Rio Tinto demanded it. This is important because it puts the lie to Vale's unseemly attempts to besmirch Rio Tinto's counsel. All of the statements from Rio Tinto's counsel that Vale cites to in its letter occurred *before* Rio Tinto had information that responsive BTG documents were held by Mr. Brown or Mr. Leighton.

Indeed, even minimal scrutiny wrecks Vale's timeline of alleged "false statements to the Court." Vale cites to the June 1 status conference before Your Honor, the June 18 joint agenda letter, and the June 22 status conference before Your Honor. All of those are *before* Mr. Humphrey's June 23 second witness statement, which, for the first time, suggested that responsive BTG documents may not be in the possession of BTG.[9] While Mr. Humphrey did submit an initial witness statement dated June 2, that witness statement only identified Messrs. Brown and Leighton as the preparers of the BTG reports; it did not indicate that either of them had responsive BTG documents. Vale buried Mr. Humphrey's first witness statement in a production of documents from the English proceedings it made on June 17, failed to mention Mr. Brown or Mr. Leighton in the June 18 joint agenda letter, and then sandbagged Rio Tinto at the June 22 hearing by handing Rio Tinto two new letters of request directed to Messrs. Brown and Leighton at the same time it presented them for Your Honor to sign (*i.e.*, without any advance opportunity for Rio Tinto to review them). Making matters worse, Vale failed to even identify Messrs. Brown and Leighton as the recipients on the record during the June 22 conference, instead vaguely referring to them as "two other people who are not with BTG." *See* June 22,

---

[7] Moreover, Rio Tinto never hid the fact that Mr. Brown was Rio Tinto's point of contact at BTG back in 2010, when he was still employed there. Vale knew as much at least by April 17, 2015, when Rio Tinto produced its contract with BTG where, on page 3, Mr. Brown signs the engagement letter as BTG's representative. As noted above and from what BTG has produced to Vale, we know Mr. Humphrey was clearly the right point of contact at BTG today.

[8] Messrs. Brown and Leighton did additional work for Rio Tinto in 2008 while employed at a different firm, GardaWorld. While not an investigative report relevant to Rio Tinto's tolling allegations, Rio Tinto nevertheless produced this report to Vale in response to its second set of document requests. Rio Tinto understands that Messrs. Brown and Leighton have now offered to search for documents relevant to this report, too.

[9] Despite Rio Tinto having repeatedly asked Vale to provide it materials from the English proceedings, Vale did not bother to provide Rio Tinto with this second witness statement until July 31.

3

2015 Tr. at 2:12-16. Thus, the first time Rio Tinto learned that Vale was interested in Messrs. Brown and Leighton was *after* the June 22 hearing. And the first time Rio Tinto learned that BTG believed certain documents may be in the possession of Messrs. Brown and Leighton was on June 29, when Mrs. Justice Andrews of the English court issued her opinion (which, incidentally, Vale never identified as having been entered or sent to Rio Tinto).

When Rio Tinto finally learned of the assertions BTG had made in the English proceedings, it promptly reached out to Mr. Brown on July 2 to request that he provide any responsive documents he may have. Rio Tinto believed this was consistent with what the Court had asked it to do in the past with respect to other investigators, and consistent with Rio Tinto's position that it has no objection to any investigator turning over materials responsive to Vale's requests. Rio Tinto later advised Vale that it had asked Mr. Brown to provide documents responsive to its letters of request (*See* Ex. F, Aug. 5, 2015 email from M. McCaffrey to L. Liman, et al.), and also advised Mr. Brown that Vale's requests do not cover the work Mr. Brown did for Quinn Emanuel so that he knows he is free to respond. Indeed, both Mr. Brown and Mr. Leighton have indicated they are willing to cooperate by searching for responsive documents and reaching out to former contacts, although it is not clear what documents either of them may have responsive to Vale's letters of request that Vale has not already otherwise received from BTG. Recent letters from Messrs. Brown and Leighton to Cleary Gottlieb lawyers (including the one cited on page 5 of Cleary's letter) indicate that they will need to look through old files, computers and hard drives, including ones held by BTG, before understanding what they have. *See e.g.*, Aug. 10, 2015 email from N. Brown to J. Turner (Clearly Gottlieb); Aug. 5, 2015 email from A. Leighton to J. Kelly (Cleary Gottlieb).[10] This is an important point: if even today neither Mr. Brown nor Mr. Leighton know for sure whether they have anything responsive, Rio Tinto certainly cannot be expected to have known any different. In any event, Rio Tinto remains open to discussing ways to facilitate a production from Mr. Brown on the condition that Vale will not use those efforts to argue such materials are somehow in Rio Tinto's or Quinn Emanuel's custody or control (which they are not).

And there, buried beneath all the rhetoric, lies Vale's real issue. Vale's big reveal on the custody or control front is that Quinn Emanuel's retention of Dangate, Mr. Brown's *new* company, *after* this lawsuit was filed for work *over four years later* and *completely unrelated to* any of Mr. Brown's prior work at BTG on Simandou somehow gives Rio Tinto and/or Quinn Emanuel custody or control over BTG's documents that Mr. Brown may have in his possession from his days as an employee at BTG.[11] That is utter nonsense. Only BTG and Mr. Brown can

---

[10] Vale has asked whether Rio Tinto is willing to pay for this effort. Messrs. Leighton and Brown, however, have offered to try to collect documents that seem to exceed the scope of Vale's letters of request as well as even its document requests to Rio Tinto, and do not obviously relate to Rio Tinto's investigation (*e.g.,* collect materials for work done for other companies related to other mining contracts, and materials related to bauxite concessions). Rio Tinto therefore understandably asked Vale what exactly it was proposing to ask Messrs. Brown and Leighton to collect, what of that Vale was requesting Rio Tinto to pay for, and on what basis. Vale summarily declined Rio Tinto's request for more clarity and "declined to do [Rio Tinto's] research for [it]." Aug. 12, 2015 email from M. Karlan to E. Lyttle.

[11] Although we understand he works with Mr. Brown, Quinn Emanuel has not retained, and has no relationship with, Mr. Leighton.

4

know and make the call on what BTG documents, if any, Mr. Brown should produce. BTG sought and received protection from the English court to prevent the production of source documentation from BTG's documents and there is no basis for Rio Tinto, Quinn Emanuel, Cleary Gottlieb, Vale, or this Court to interfere with that ruling as it relates to BTG's documents. Indeed, Mr. Humphrey of BTG confirmed in his June 2, 2015 first witness statement for the English proceedings that neither BTG nor Mr. Brown provided Rio Tinto with any source documents used or produced in preparing the BTG reports. Finally, Quinn Emanuel's separate engagement (over four years later) of a *former employee* of BTG does not create a commercial relationship today with BTG. Vale's bluster aside, it remains absolutely true that neither Rio Tinto nor Quinn Emanuel has a current commercial relationship with BTG. And likewise, our understanding is that neither Mr. Brown nor Mr. Leighton have done any work for Rio Tinto, while with any company, since at least 2013.[12]

      A couple of final points bear on these issues. First, Vale complains that Rio Tinto did not tell it that Quinn Emanuel had hired Mr. Brown. But Rio Tinto had no obligation to disclose that, and Vale was not entitled to know it. As before, Quinn Emanuel's retention of Mr. Brown *after this lawsuit was filed*, for work *over four years later* and *completely unrelated to* any of Mr. Brown's prior work at BTG on Simandou is all fully-protected work product. Vale's scorched earth discovery into the work of Rio Tinto's investigators in 2009-2010 cannot be used as a means to interfere with Rio Tinto's rights today to pursue evidence in support of its case. It is quite natural that, in looking for evidence, Rio Tinto's outside counsel would look back to investigators with some prior knowledge of the issues. The world of investigators able to work in the places at issue in this case is small, and Vale's relentless attacks on them have not helped things. Despite all this, Quinn Emanuel (not Rio Tinto) is in the process of engaging another investigative firm subject to Vale's letters of request to do more work related to the case. Vale likewise is not entitled to know who that is or the work they are doing.[13] And just like with Mr. Brown, later work with counsel gives Rio Tinto no commercial ability to demand source names today to which it was never entitled in the first place from earlier work. Importantly, none of this changes the ability of these investigators to serve as fact witnesses for their prior work, and indeed Rio Tinto has asserted no privilege or protection that would prevent the investigators from talking about their prior work for Rio Tinto.

      Moreover, outside counsel's current right to work with investigators in developing their case today should actually take precedence in light of the limited relevance of what Vale seeks from them related to their prior 2009-2010 work for Rio Tinto. After hearing from the investigators, the English court (without even the benefit of hearing from Rio Tinto) properly deemed what Vale sought from the investigative firms as having "marginal relevance." *Vale S.A. v. Livingstone and Company, Africa Risk Consulting Ltd., and Begbies Traynor (Investigations) Ltd.*, [2015] EWHC 1865 (WB) at ¶48. As the English court recognized, even if equitable tolling

---

[12] Dangate has a standing procurement agreement in place with Rio Tinto. Neither Dangate nor Mr. Brown, however, have done any work for Rio Tinto since 2013.

[13] If Your Honor would like, Rio Tinto would be happy to make an *in camera* submission identifying this investigator firm and explaining the work it is doing. We would be willing to do the same thing regarding Mr. Brown's work for Quinn Emanuel, too.

5

is needed (and it is not since Rio Tinto filed its lawsuit within four years of being on notice of its RICO injury), the relevance of the investigators is limited to what they actually told Rio Tinto. That is contained in the investigative reports that have already been produced by Rio Tinto. What investigators hypothetically may have known but did not report to Rio Tinto, or what other rabbit holes they hypothetically could have gone down is irrelevant. The investigators are not agents of Rio Tinto, and their uncommunicated knowledge, if any, is not imputed to Rio Tinto. The investigators may be relevant in the broadest sense, but they are far from "crucial" or "critical" to any question in the case. This is especially true of the work of BTG, which occurred after the April 2010 announcement of the Vale-BSGR joint venture and thus within the four-year statute of limitations for RICO claims (Rio Tinto filed in April 2014). In other words, what Rio Tinto learned from BTG (or Mr. Brown or Mr. Leighton while at BTG) is irrelevant for statute of limitations purposes because Rio Tinto filed within four years of learning it.

Finally, Vale's desperate attempt to fabricate a more sinister picture is taken to new heights with its unsubstantiated, third-hand hearsay that a Rio Tinto employee asked Mr. Brown to destroy documents related to BTG's investigation. Vale's assertion is based solely on Mr. Humphrey's witness statement from the English proceedings (hearsay), in which he purports to relay Mr. Brown's recollection (more hearsay) of something Mivil Deschenes, a former Rio Tinto security employee, told Mr. Brown (even more hearsay). All of these statements were made in proceedings to which Rio Tinto was not a party and had no opportunity to challenge. But even putting aside these fatal hearsay issues, both Messrs. Brown and Leighton have now contradicted them: footnote 7 in Vale's letter says that Mr. Leighton has told Vale that Mr. Humphrey was incorrect; Mr. Brown's August 10 email that Vale cites in its letter at page 5 says "some of the information" should still be available on secure Intranet drives at BTG; and a portion of Mr. Brown's August 10 email that Vale did not cite suggests that Mr. Humphrey may just have been mistaken ("John Humphrey is likely to have been able to find billing information and administration related material but we are not sure that he would have the knowledge or been able to locate research material, source reports, etc."). The fact that Messrs. Brown and Leighton are offering to produce documents, and go to BTG to get them, belies that the documents were destroyed (as does the fact that we now know that BTG and Mr. Humphrey have produced two boxes of responsive documents). And the former Rio Tinto employee in question, Mr. Deschenes, will not support Vale's story when he is permitted to testify. Try as it might, Vale has no evidence of document destruction here that comes close to its wiping of documents from eight custodians it agreed to produce from.

Vale's calculated attempt to paint Rio Tinto as deceptive and making misrepresentations to the Court is not only demonstrably false, but also an unproductive and unfortunate use of this Court's resources.

Very truly yours,


/s/ Michael J. Lyle
Michael J. Lyle