# Exhibit B

In *Shah v HSBC Private Bank*[66] the issue was whether a order should be made that redacted names in a document should be unredacted.

10–19 A distinction should be drawn between the blanking out of names and the blanking out of a separate part of a document. Where names are blanked out, it will usually be obvious to the other party what has occurred and why, and it will be open to the other party to make an application to court in case of dispute. But where part of a document is blanked out, it will not be apparent to the other party what has been blanked out and the other party may not have the basis of a challenge. So it is the solicitor's obligation not to blank out in such circumstances unless satisfied that there is an entitlement to redact.[67]

Because the original document must be preserved intact, the most sensible course is to give disclosure by producing to the other party a photocopy of the part being produced for inspection. The irrelevant or privileged parts are obliterated; this can be done by masking while copying or by blanking out parts of a copy using a marker pen. If a privileged section is being masked, make sure it is wholly illegible. If inspection of the original is required, this can be done once the parts not being produced for inspection have been safely masked.

### D. Excessive blanking out

10–20 In substantial litigation, it is common for documents to be blanked out. However, the trend is often to do so unthinkingly, without analysing properly the basis or justification for so doing. When the blanking out is challenged, and the redaction revealed, this can at the least make the lawyers look foolish for having sought to blank out without justification, and worse, can make the client look as though he is trying to hide something. Where material in the document is simply irrelevant, it is unlikely that there will be any point in blanking it out unless it is confidential. Blanking out part of a document always seems to excite interest in the document and the hidden contents for the other side.

But lawyers are increasingly going beyond what is permissible. Large numbers of documents are disclosed with black lines through them in a way which makes it impossible to see what the basis of the redaction is or whether it is appropriate. On examination, too often these documents turn out to have been redacted based on an unjustifiably narrow definition of relevance. Passages redacted turn out to be material after all. Or the purported redaction on the ground of privilege is made because an expert or lawyer is referred to in the document even though there is no reference to legal advice. In the last couple of years or so, sloppy and unjustified redactions seem to have become increasingly popular. Steps need to be taken to stop this. It will often be sensible to ask for the lawyers to ask to see the original unredacted document on terms that the contents are not communicated to the client. There can surely be no objection to this in any case where the redaction is not based on privilege. Where the redaction is based on privilege, then it will be inappropriate to have sight of the other side's document referring to privileged legal advice. But there is no reason why the other side

---

[66] *Shah v HSBC Private Bank* [2011] EWCA Civ 1154.
[67] But see in this regard *CMCS Common Market Commercial Services v Taylor* [2011] EWHC 324 (Ch) (Briggs J.) discussed at para.8–02.

---

should not be asked to identify with precision the basis of the redaction—not merely whether it is on grounds of privilege, but explaining whether it is referring to legal advice or some other basis.

In *GE Capital* the Court of Appeal said that it was incumbent on the legal adviser to examine the communications in question critically to see whether there are any non-privileged parts which should be disclosed to the other side.[68] At present, however, the right to redact is being regularly abused, and the courts should be vigilant to stop this. In *Paddick v Associated Newspapers*[69] Tugendhat J. accepted a submission by counsel that the statement of a party who has blanked out parts of a document that the blanked out parts are irrelevant is conclusive. This formulation goes too far on any view[70] but it is suggested that the approach which the courts should be adopting is precisely the opposite, in circumstances where there is no doubt that the right is currently being abused.

### E. The procedure for the court to follow

In *Atos Consulting v Avis Plc*[71] Ramsey J.[72] said that the appropriate course to be 10–21 adopted in an application for inspection of redacted documents where the right being relied upon is privilege or irrelevance is as follows:

(a) The court has to consider the evidence produced on the application.
(b) If the court is satisfied that the right to withhold inspection of a document is established by the evidence and there are no sufficient grounds for challenging the correctness of that asserted right, the court will uphold the right.
(c) If the court is not satisfied that the right to withhold inspection is established because, for instance, the evidence does not establish a legal right to withhold inspection, then the court will order inspection of the documents.
(d) If sufficient grounds are shown for challenging the correctness of the asserted right then the court may order further evidence to be produced on oath or, if there is no other appropriate method of properly deciding whether the right to withhold inspection should be upheld, it may decide to inspect the documents.
(e) If it decides to inspect then having inspected the documents it may invite representations.

There are difficulties in inspection by the court[73]. Ramsey J. recognised this and treated inspection by the court as a "solution of last resort".

---

[68] *GE Capital* [1995] 1 W.L.R. 172 at 176.
[69] *Paddick v Associated Newspapers Ltd* [2003] EWHC 2991 (QB). See para.15–05.
[71] *Atos Consulting v Avis Plc* [2007] EWHC 323 (TCC).
[72] After referring with approval to the 9th edition of this book at paras 5–21, 9–22 and 12–33. Discussed at para.8–18.