UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rio Tinto plc,

        Plaintiff,

    -against-

Vale S.A., Benjamin Steinmetz, BSG
Resources Limited, BSG Resources (Guinea)
Ltd., BSGR Guinea Ltd. BVI, BSG Resources
Guinée Sarl, Frederic Cilins, Mamadie Touré,
and Mahmoud Thiam,

        Defendants.

14 Civ. 3042 (RMB)(AJP)

## APPLICATION FOR THE ISSUANCE OF AN
## INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)

Plaintiff Rio Tinto plc ("Rio Tinto") respectfully petitions this Court pursuant to the

provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in

Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague

Evidence Convention"), for the issuance of a Letter of Request in the form annexed hereto as

Exhibit B, addressed to the Senior Master of the High Court (Queen's Bench Division) acting as

the Competent Judicial Authority of the United Kingdom, requesting that the Senior Master

cause the Letter of Request to be served upon the designated recipient, Ernst & Young LLP, the

Ernst & Young member-firm in London, England.  In support thereof, Rio Tinto respectfully

represents as follows:

## BACKGROUND

1.      On April 30, 2014, Rio Tinto filed a complaint in this Court against Vale, BSG

Resources Ltd. ("BSGR"), and the other named defendants (together, "Defendants") alleging,

*inter alia*, that Vale and BSGR had conspired to take for themselves Rio Tinto's iron ore mining

rights to the Simandou area of the Republic of Guinea ("Guinea") in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Dkt. No. 2.)  Rio Tinto filed an amended complaint ("AC") with substantially similar allegations on August 15, 2014.  (Dkt. No. 83.)

2.      In response to written interrogatories propounded by Rio Tinto on June 30, 2014 and May 20, 2015, Vale identified "Ernst & Young" as an entity likely to have information that is highly relevant to Rio Tinto's claims.  Specifically, Vale indicated that Ernst & Young:

(a)     "may have had access to the Rio Tinto Data Room between November 24, 2008 and June 30, 2009;"

(b)     was "retained by Vale in the context of negotiations [with] BSGR and/or Steinmetz regarding Simandou and/or the Vale-BSGR Transaction from December 1, 2009 until April 30, 2010;"

(c)     was one of Vale's "investigators, due diligence counselors, financial analysts, and/or lawyers in relation to Simandou;"

(d)     "may have knowledge relating to one or more of the 'matters alleged in the Complaint' between January 1, 2005 and April 30, 2014;" and

(e)     "may have knowledge concerning Paragraphs 241 to 246 of Vale's Protective Answer and/or . . . defenses."

3.      Based on the foregoing, Rio Tinto issued a subpoena *duces tecum* to Ernst & Young LLP (U.S.) on June 2, 2015, seeking documents concerning the work Ernst & Young performed for Vale related to Simandou.

4.      On June 16, 2015, Ernst & Young LLP (U.S.) returned its objections and responses to the subpoena, indicating that it did not have any responsive documents in its possession, custody, or control.  That same day, in a discussion with Rio Tinto's counsel, an attorney at Ernst & Young LLP (U.S.) conveyed her understanding that Ernst & Young member-firms in Brazil, Gabon, and the United Kingdom had been retained by Vale to perform work related to Simandou.

5.        On July 10, 2015, Rio Tinto asked Ernst & Young LLP (U.S.) to produce all responsive documents in the possession of the other Ernst & Young member-firms that had performed work for Vale related to Simandou in response to Rio Tinto's subpoena *duces tecum*. The firm rejected that request, claiming that such materials are not within its control.

6.        On July 16, 2015, Rio Tinto asked Vale to request that each of the relevant Ernst & Young member-firms, in Brazil, Gabon, and the U.K., produce all materials within their possession that are responsive to Rio Tinto's subpoena.  During the July 28, 2015 hearing before this Court, Vale confirmed that it would make such requests and would produce any documents provided by the Ernst & Young firms that are responsive to Rio Tinto's outstanding document requests, as narrowed by agreement or order of this Court.

7.        Days before the hearing, on July 24, 2015, Vale sent a letter to Ernst & Young's U.K. member-firm, Ernst & Young LLP, indicating that Vale "may" have retained Ernst & Young's U.K. office to perform work concerning Simandou.  Vale's letter asked the firm to produce any documents within its control relating to that engagement.

8.        On August 6, 2015, Ernst & Young's U.K. affiliate refused to produce any documents concerning that engagement "without first receiving an order of the English Courts for production."

9.        On August 11, 2015, Vale confirmed that it had retained Ernst & Young's U.K. member-firm to perform work in support of its joint venture with BSGR concerning Simandou in 2010.  Vale identified and provided the engagement letter governing that arrangement to Rio Tinto.

10.        From the face of that letter, it is clear that Vale retained Ernst & Young LLP (U.K.) to perform due diligence concerning Vale's joint venture discussions with BSGR.

3

Specifically, Vale retained Ernst & Young's U.K. affiliate to examine BSGR's books and records to identify weaknesses and provide recommendations to fix any weaknesses through the imposition of internal controls.

11.     Evidence regarding the factual investigation performed by Ernst & Young, at Vale's direction, is critical to Rio Tinto's claims.  Throughout this litigation, Vale has steadfastly denied that it had any indication at the time it entered a joint venture with BSGR that BSGR and Steinmetz acquired their interest in Simandou through bribery and other corrupt acts.  In maintaining that stance, Vale has placed what it knew about BSGR's shady dealings in Guinea, and when it acquired such knowledge, directly at issue.

12.     Moreover, Rio Tinto alleges that Vale "made the strategic decision to gain control of Simandou at any cost," ultimately resulting in its decision to enter into a RICO conspiracy with BSGR and the other defendants to steal Rio Tinto's rights.  In doing so, they chose to ignore the overwhelming weight of evidence showing BSGR's bribery and corruption in Guinea, and instead assisted in the ongoing cover up to conceal their actions.  Vale's so-called "due diligence," that Ernst & Young assisted them in performing, was part of that cover up and evidence to date indicates that it was nothing more than a charade to cover up the truth of what really happened with Simandou.

13.     Vale engaged Ernst & Young to carefully scrutinize, among other things, BSGR's books, its records, its board minutes, its off-balance sheet conditions, and its agreements with third parties.  Indeed, Vale specifically asked Ernst & Young to "report back" on BSGR's risk of "bribery and corruption."  Discovery of Ernst & Young's work will therefore shed invaluable light on the nature of Vale's pre-transaction diligence, including what Vale knew about BSGR going into the deal; what it knew about BSGR immediately after the deal; what it continued to

investigate about BSGR, and why; and whether Vale made any internal or external changes in response to that information.

## RELIEF REQUESTED

14.    Rio Tinto therefore requests that this Court issue an Order in the form attached hereto as Exhibit A:

(a)    Providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature;

(b)    Requiring that the Clerk of the District Court return the original, signed Letter of Request to counsel to Rio Tinto, so that said Letter of Request may be delivered to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, where the requested evidence may be found; and

(c)    Directing counsel for Rio Tinto to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom;

15.    The Letter of Request seeks information from Ernst & Young LLP, the Ernst & Young member-firm based in the United Kingdom.

16.    Ernst & Young LLP and individuals connected with the firm, including but not limited to, Jonathan Middup, John Houlden, Tim Pinkstone, Rob Sinclair, Noel Davison, and Lee Downham, have knowledge of facts bearing on the central issues of this case, and the documents sought are material to Rio Tinto's claims.

17.    Rio Tinto has considered the requirements of the Courts of England and Wales in respect of Letters of Request, including the form in which the Letter of Request should be

presented to the English Court and its permissible content.  Rio Tinto believes this Letter of
Request is consistent with these requirements, as contained in the UK Evidence (Proceedings in
Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules.  This Court is requested
to issue this Letter of Request on this basis.

      18.     Rio Tinto requests that after this Court has signed the Letter of Request, it be
returned to Rio Tinto for forwarding to the Senior Master of the High Court (Queen's Bench
Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of
Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process
Section, Room E16).

      WHEREFORE, Rio Tinto respectfully requests that the Court enter the attached form of
order (i) providing for this Court to sign the Letter of Request and affix the seal of the United
States District Court for the Southern District of New York over said signature; (ii) directing that
the Clerk of the District Court return the original, signed Letter of Request to counsel for Rio
Tinto, so that said Letter of Request may be issued to the Competent Judicial Authority of the
United Kingdom; (iii) directing counsel for Rio Tinto to transmit the original, signed Letter of
Request to the Competent Judicial Authority of the United Kingdom; and (iv) granting such
other relief as the Court deems just and proper.

Dated: Washington, DC         August 20, 2015

QUINN EMANUEL URQUHART AND SULLIVAN LLP

_____ /s/ Michael J. Lyle

William A. Burck
Michael J. Lyle
Eric C. Lyttle
Stephen M. Hauss
777 6th Street, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
williamburck@quinnemanuel.com
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
stephenhauss@quinnemanuel.com

*Attorneys for Plaintiff Rio Tinto plc*

# EXHIBIT A

# (DRAFT ORDER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>        Plaintiff,<br><br>   -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,<br><br>        Defendants. | 14 Civ. 3042 (RMB)(AJP) |

**ORDER GRANTING APPLICATION FOR
ISSUANCE OF INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)**

Upon the Application for the Issuance of an International Letter of Request (Letter Rogatory) (the "Application") filed by Plaintiff Rio Tinto plc ("Rio Tinto"), requesting the issuance of an international letter of request (the "Letter of Request") pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

This Court shall sign the Letter of Request attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature.

The Clerk of the District Court is directed to return the original, signed Letter of Request to counsel for Rio Tinto so that said Letter of Request may be issued to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom.

Counsel to Rio Tinto is directed to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: _____, 2015
          New York, New York

_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

# (LETTER OF REQUEST)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc, <br><br>               Plaintiff, <br><br>     -against- <br><br> Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd., BSGR Guinea Ltd. BVI, BSG Resources Guinée Sarl, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam, <br><br>               Defendants. | 14 Civ. 3042 (RMB)(AJP) |

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

**TO THE HIGH COURT OF ENGLAND AND WALES:**

The United States District Court for the Southern District of New York presents its compliments to the High Court of England and Wales and respectfully requests international judicial assistance to obtain evidence to be used in the above-captioned civil action proceeding before this Court.  This Court has determined that it would further the interests of justice if by the proper and usual process of your Court, you summon the witnesses listed herein at paragraph 9 to appear before a person empowered under British law to administer oaths and take testimony forthwith, to give testimony under oath or affirmation by questions and answers upon oral examination in respect of the matters and issues identified at paragraph 10, and permit the parties to create a written transcript and video recording of such testimony, and you summon Ernst & Young LLP to produce copies of the documents in its possession, custody or control that are identified in paragraph 11.

The Applicant for this letter is Rio Tinto plc.  Sue Prevezer QC, of Quinn Emanuel Urquhart & Sullivan LLP, One Fleet Place, London EC4M 7RA, is counsel to Rio Tinto and is available to answer any questions the Court may have.

This request is made pursuant to Rules 4(f) and 28 of the Federal Rules of Civil Procedure; the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"); the All Writs Act, 28 U.S.C. § 1651 and 28 U.S.C. § 1781 (permitting the transmittal of letters of request through the district courts and the Department of State); the Vienna Convention on Consular Relations and by the United Kingdom, Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules.  The United States District Court for the Southern District of New York is a competent Court of law and equity that properly has jurisdiction over this proceeding, and has the power to compel the attendance of witnesses and production of documents.

The testimony and production of documents are intended for use at trial and in the view of this Court, will be relevant to claims and defences in the case, including whether, as Plaintiff Rio Tinto has alleged, Defendant Vale S.A. in fact was aware that BSGR, its business partner and alleged co-conspirator, had bribed government officials to obtain certain mining licenses in the Simandou region of Guinea.

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in a British Court.  The requesting Court is satisfied that the evidence sought to be obtained through this Letter of Request is relevant and necessary and cannot reasonably be obtained by other methods.  Because this Court lacks authority to compel participation of these persons and, such participation being necessary in order that justice be

served in the above-captioned proceedings, this Court respectfully requests assistance from the

High Court of England and Wales.

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |
| 2. | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |
| 4. | **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request** | |

        **Date**               September 25, 2015

        **Reason for urgency**     Rio Tinto is requesting a response no later than September 25, 2015 to allow time to review Ernst & Young LLP's production before proceeding with depositions, which are scheduled to begin no later than September 30, 2015.

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| 5. *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |

|   |   |   |
|---|---|---|
| *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland |

**6. Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

|   |   |   |
|---|---|---|
| *a* | **Plaintiff** | **Rio Tinto plc** |
|   | **Representatives** | Sue Prevezer QC |

Quinn Emanuel Urquhart & Sullivan LLP
One Fleet Place
London EC4M 7RA
United Kingdom
Telephone: 44 20 7653 2000
Fax: 44 20 7653 2100

William A. Burck
Michael J. Lyle
Eric C. Lyttle
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street NW, 11th Floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

|   |   |   |
|---|---|---|
| *b* | **Defendants** | **Vale, S.A.** |
|   | **Representatives** | Jonathan I. Blackman |

Lewis J. Liman
Boaz S. Morag
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225 2000
Facsimile: (212) 225 3999

**BSG Resources Limited**

Representatives

Vincent Filardo, Jr.
Timothy J. McCarthy
Daniel M. Mandell
Mishcon de Reya New York, LLP
750 Seventh Avenue
New York, New York 10019
Telephone: (212) 612 3270
Facsimile: (212) 612-3297

**Benjamin Steinmetz**

Representatives

Vincent Filardo, Jr.
Timothy J. McCarthy
Daniel M. Mandell
Mishcon de Reya New York, LLP
750 Seventh Avenue
New York, New York 10019
Telephone: (212) 612 3270
Facsimile: (212) 612-3297

**BSG Resources Guinee SARL**
*also known as*
VBG-Vale BSGR Guinea

Representatives

Martin Joel Auerbach
Law Offices of Martin J. Auerbach, Esq
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Telephone: (212) 704 4347
Facsimile: (212) 3040175

**Mahmoud Thiam**

Representatives

Paul Eliot Summit
Sullivan & Worcester LLP (MA)
One Post Office Square
Boston, MA 02109
Telephone: (617) 210 8437
Facsimile: (617) 338 2880

**7.      Nature of the proceedings and summary of claims (Article 3,c)**

<u>Case Background</u>

7.1     This action, captioned <u>Rio Tinto v. Vale, S.A., et al.</u>, Case No. 14 Civ. 3042

(RMB)(AJP) (the "Action"), is a civil litigation proceeding pending before the Requesting Court

asserting, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO") by Vale, BSG Resources Limited, VBG – Vale BSGR Limited and BSG Resources

Guinée SARL, Frédéric Cilins, Mamadie Touré, and Mahmoud Thiam.  All of the defendants are

alleged to have been co-conspirators in a scheme to steal Rio Tinto's mining rights to Blocks 1

and 2 in the Simandou region of Guinea.  In this Letter of Request, the term "BSGR" is used to

refer to BSG Resources Limited as well as any of its subsidiaries, or its affiliates.

7.2     Rio Tinto, headquartered in the United Kingdom, is one of the three largest

mining companies in the world, operating globally and mining a wide variety of metals and

minerals, including iron ore.

7.3     Vale, a Brazilian corporation, is another of the world's three largest mining

companies and also mines iron ore among numerous other metals and minerals.

7.4     BSGR is a Guernsey corporation that is principally engaged in mining operations

in Africa and eastern Europe, but which also engages in power generation and oil and gas

exploration and production.  The company is wholly owned by Nysco Management Corporation

Limited, a company incorporated in the British Virgin Islands, which is in turn wholly owned by

the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose

beneficiaries are Benjamin ("Beny") Steinmetz, an Israeli businessman domiciled in Switzerland,

and members of his family.  Onyx Financial Advisors Limited ("Onyx") provides management

services to BSGR from an office in London, where BSGR is also alleged to have an office.

As set out by the allegations in Rio Tinto's Amended Complaint:

7.5      In February 1997, the government of the West African nation of Guinea (the "Government of Guinea") awarded permits to Rio Tinto to explore an area of Guinea called Simandou, which is known to be one of the most significant untapped iron ore deposits in the world.  In 2006, the Government of Guinea awarded Rio Tinto a Concession that consisted of mining rights to four "Blocks" or areas of Simandou:  Blocks 1, 2, 3, and 4.  Rio Tinto claims to have developed, among other things, railway and port plans to transport iron ore from Simandou by rail to the coast of the Atlantic Ocean, either through Guinea or through the neighboring country of Liberia.

7.6      In 2008, Rio Tinto and Vale discussed possible transactions related to certain assets, including Rio Tinto's Simandou concession, and executed a Confidentiality Deed, after which Rio Tinto opened a data room so that Vale could review certain of Rio Tinto's highly confidential and proprietary documents.

7.7      On December 4, 2008, however, the Government of Guinea withdrew half of the Rio Tinto Concession, which covered Blocks 1 and 2 of Simandou.

7.8      On December 9, 2008, BSGR was granted an exploration permit for Simandou Blocks 1 and 2.  After that, Rio Tinto alleges the conspiracy, through Defendant Mahmoud Thiam, who served as the Guinean Minister of Mines from January 2009 until 2011, worked to confirm BSGR's mining rights to Blocks 1 and 2 of Simandou and stymie Rio Tinto's efforts to regain them through a campaign of bribery, intimidation, and threats to Rio Tinto's remaining mining licenses in Guinea.  Rio Tinto alleges that these actions continued for years, including efforts by Defendant Cilins to destroy documents evidencing the work of the conspiracy in 2013.

7.9     Notwithstanding the revocation of Rio Tinto's rights to Blocks 1 and 2, Rio Tinto and Vale continued to explore a possible transaction involving Simandou until June 2009.

7.10     On April 30, 2010, Vale signed a Framework Agreement and Shareholders' Agreement with BSGR, creating a joint venture, which was called "VBG," to develop Simandou Blocks 1 and 2.  The deal was structured as a multi-stage transaction, under which Vale received a 51% interest in the venture.  At the time of the venture's formation, Vale paid a $500 million down payment with the remainder of its $2.5 billion payment conditioned on BSGR's fulfilment of certain critical conditions, one of which was the resolution of any claims or uncertainty surrounding BSGR's acquisition of Blocks 1 and 2.  Vale never paid the remainder of the purchase price for its interest.

7.11     According to Rio Tinto's allegations, in May or June of 2010, in return for his cooperation and assistance in the furtherance of the conspiracy, Defendant Thiam received an installment payment in what ultimately was, in total, a $100 million bribe from the other co-conspirators.

7.12     On October 30, 2012, VBG received notice that a Technical Committee for the Review of Mining Titles and Agreements of the Government of the Republic of Guinea (the "Technical Committee") had begun investigating how BSGR had obtained its mining rights to Simandou.  This notice was preceded by a year long review of VBG's mining titles and agreements by the Government of Guinea.  In its October 30, 2012 letter, however, the Technical Committee identified various purported corrupt actions that had come to the Technical Committee's attention, alleged to have been carried out by BSGR Guinea and its agents, including Frédéric Cilins, in order to improperly influence the Government of Guinea into awarding the Simandou mining rights to BSGR.

7.13     In January 2013, the U.S. and Guinean Governments opened parallel criminal investigations into how Steinmetz and BSGR obtained their interest in Simandou.  Today, government agencies in at least six different countries – including the Serious Fraud Office in the United Kingdom – are investigating Steinmetz, BSGR, and other Defendants for their role in the theft of Rio Tinto's Simandou mining rights.

7.14     In April 2013, U.S. federal authorities arrested BSGR's agent, Frédéric Cilins, in Florida and charged him with obstruction of a grand jury investigation, destruction of evidence, and witness tampering, arising from his efforts to destroy documents evidencing the bribes that BSGR and Steinmetz paid to Defendant Touré.  In March 2014, Cilins entered a guilty plea to one count of obstruction.

7.15     In April 2014, after concluding its investigation, the Government of Guinea revoked VBG's (of which Vale was a majority shareholder and managed day-to-day operations) rights to Simandou, having concluded that BSGR had obtained its rights to Blocks 1 and 2 of Simandou through corrupt acts.

7.16     On April 30, 2014, Rio Tinto filed its complaint against Vale, BSGR, and a number of other parties alleging, *inter alia*, that it lost its rights to Simandou Blocks 1 and 2 because of a conspiracy by Vale and BSGR.  Rio Tinto alleges that, as a result of BSGR's alleged bribery and Vale's alleged disclosure of Rio Tinto's highly confidential and proprietary documents to BSGR, the Defendants were able to secure Rio Tinto's rights to Simandou Blocks 1 and 2.  Rio Tinto further alleges that the conspiracy continued after the public announcement of the Vale-BSGR joint venture on April 30, 2010.  Among other things, the conspiracy is alleged to have stymied Rio Tinto's efforts to regain its rights to Blocks 1 and 2 through a campaign of bribery, intimidation, and threats to Rio Tinto's remaining mining rights to Blocks 3 and 4.  Specific bribes are

alleged to have been paid by the conspiracy after April 30, 2010, and Defendant Cilins was arrested in 2013 for his efforts to destroy bribery documents on behalf of the conspiracy.

7.17    An Amended Complaint with substantially similar allegations was filed on August 15, 2014.

7.18    BSGR denies each of the allegations against it, including allegations of corrupt activities in Guinea and of any conspiracy with Vale.

7.19    Vale denies each of the allegations made against it, including any conspiracy with BSGR or any other Defendant, any involvement in alleged corrupt activities by BSGR and Steinmetz, and any theft or use of Rio Tinto's confidential information.  In so doing, Vale has denied that it had knowledge of the acts of bribery and corruption employed by BSGR to steal Blocks 1 and 2 of Simandou away from Rio Tinto.  Vale maintains that it conducted vigorous due diligence concerning BSGR and the manner in which BSGR obtained its mining licenses in Simandou before entering the joint venture with BSGR.

**Relevance of Materials Possessed by Ernst & Young**

7.20    The U.K. firm Ernst & Young LLP ("Ernst & Young") is a Limited Liability Partnership, incorporated in England with the registration number OC300001.  Its principal place of business and registered office is 1 More London Place, London SE1 2AF.

7.21    While Ernst & Young is not a party to this dispute and there are no allegations that have been asserted against the firm, the evidence sought from Ernst & Young below is material to Rio Tinto's case.

7.22    In 2010, Vale hired Ernst & Young to perform due diligence services concerning its transactions with BSGR.  Specifically, Vale retained Ernst & Young to assess whether BSGR's books and records, as well as its financial controls, presented a substantial risk of bribery or other acts of corruption.  In light of the nature and timing of its work, Rio Tinto has

alleged that Ernst & Young's diligence efforts occurred during a critical point in the litigation timeline.  The firm examined BSGR's books immediately before Vale's deal with BSGR was announced on 30 April 2010, and in the months that followed, as evidenced by three engagement letters executed by Vale between 12 May 2010 and 11 October 2010.

7.23     The scope of Ernst & Young's work was described in this series of engagement letters.  After an initial discussion between Vale and Ernst & Young on 26 April 2010, Ernst & Young sent its first engagement letter to Vale on 27 April 2010 – three days before the Vale-BSGR joint venture was announced - which Vale signed on 12 May 2010.  ("Engagement Letter 1" herein).  Among other things, Engagement Letter 1 called for Ernst & Young to (i) analyze BSGR's books and records, "noting potential weaknesses" and providing "recommendations on how identified weaknesses [could] be fixed;" (ii) interview relevant BSGR accounting personnel; (iii) review the "existence of key accounting information;" and (iv) report back on matters Ernst & Young believed to "increase bribery and corruption risk."

7.24     While Ernst & Young did not provide a "legal opinion" to Vale, as explained in Engagement Letter 1, the firm understood that Vale may ultimately have used its factual findings to assess whether BSGR was in compliance with the books and records provisions of the U.S. Foreign Corrupt Practices Act.  Under the terms of the initial engagement, Ernst & Young planned to present its findings in a written report to Vale no later than 14 May 2010.

7.25     As noted above, *see infra* ¶ 7.10, on 30 April 2010, Vale announced that it had created a mining joint venture with BSGR.

7.26     On 12 May 2010, Vale received and executed a second engagement letter from Ernst & Young, retaining the firm to perform "due diligence services" concerning its "proposed acquisition" of a 51% interest in a joint venture with BSGR.  ("Engagement Letter 2" herein).  In

Engagement Letter 2, Ernst & Young explained that the term "due diligence" described Ernst & Young's "enquiries into agreed aspects of the accounts, organisation, and activities" of BSGR. The letter further explained that Vale had asked Ernst & Young "to comment, based on information obtained in performing [its] work, on matters that may assist [Vale] in negotiating the terms of the Transaction or mitigate the key risks identified, including matters requiring further action following the completion of the Transaction."  An appendix to that letter described the steps Ernst & Young committed to undertake, including:  (i) reviewing financial information provided by BSGR; (ii) evaluating potential undisclosed liabilities; and (iii) looking for any "evidence to suggest accounting policies have been used to manipulate reported results."

7.27    Four months later, on 30 September 2010, Ernst & Young sent a third engagement letter to Vale concerning "due diligence services" in connection with its "proposed acquisition" of a 51% interest in a joint venture with BSGR.   ("Engagement Letter 3" herein). That letter was nearly identical in form and substance to Engagement Letter 2, including an identical definition for the "due diligence" services it had been retained to provide.

7.28    Vale has consistently opined that its diligence process – which would have included the work performed by Ernst & Young – revealed no evidence of wrongful conduct by BSGR.  Indeed, counsel for Vale has stated:  "[BSGR] misrepresented to us through reps, warranties, personal certifications and the like that they had engaged in no such activity, the standard FCPA diligence.  That's why Vale entered into the joint venture."  These same sentiments have been echoed by Vale executives in public statements concerning Simandou. *See, e.g.*, Consuelo Dieguez, *Risk Contract: How Vale Signed a Deal to bear All the Costs of an Obscure Multi-billion-dollar Mining Project in Guinea*, Piauí, Mar. 2014 (Christopher Peterson trans.) (quoting former Vale General Counsel Fabio Spina, "Before we closed the deal, we did

our due diligence.  Vale hired two international law firms, Cleary Gottlieb and Clifford Chance, to proceed with an independent investigation into the concession.  Neither of them turned up anything suspicious,' . . . . In his opinion, due diligence was performed 'to the greatest possible extent that a purchaser is able.'"), *available at* http://revistapiaui.estadao.com.br/edicao-90/business-in-africa-ii/risk-contract.

      7.29    Rio Tinto's case is that Vale ignored clear warning signs and in fact was aware of BSGR's illegal conduct.  Based on documents produced by Vale, Rio Tinto's case is also that Ernst & Young, which was retained directly by Vale and acted at Vale's direction, altered its initial conclusion that BSGR posed a high risk of bribery and corruption when pressed by Vale to modify its analysis.

      7.30    Moreover, Rio Tinto alleges that there is no evidence that Vale took any real steps to investigate whether BSGR had acquired its interest in Simandou through illegal bribes.  In support of its contentions, Rio Tinto points to the timing of the Ernst & Young engagement letters.  Vale first engaged Ernst & Young to perform financial due diligence four days before the deal was announced, under a contract that contemplated a final written report that would be delivered after the Vale-BSGR joint venture was formed.  Engagement Letter 1 was not signed by Vale until almost two weeks after the deal was announced.  Engagement Letters 2 and 3 were sent and executed after the Vale-BSGR joint venture was announced.

      7.31    Rio Tinto alleges that the foregoing provides evidence that Vale always intended to consummate the joint venture with BSGR, without regard to the outcome of its diligence efforts.  In Rio Tinto's view, such evidence both undercuts Vale's diligence defense and in turn supports Rio Tinto's contentions that Vale not only played a knowing and ongoing role in the conspiracy to steal Rio Tinto's mining rights, but also worked with its co-defendants to cover up

the theft of Rio Tinto's rights at Simandou until the conspiracy was publicly revealed with the arrest of Defendant Cilins in 2013.

7.32    Evidence sought from Ernst & Young is material to the resolution of these disputes, including what Vale knew about BSGR going into the deal; what it knew about BSGR immediately after the deal; what it continued to investigate about BSGR, and why; and whether Vale made any internal or external changes in response to that information.  Thus, the evidence sought from Ernst & Young is directly related to Rio Tinto's allegations regarding the conspiracy involving Vale and BSGR, and its ongoing concealment, because Vale did nothing to pull out of the deal or put a stop to it until after the conspiracy was uncovered in 2013.

7.33    Documents reviewed by the Applicant, including engagement letters produced and clarification provided by Vale, identify Ernst & Young as a firm that Vale retained to assist in its due diligence surrounding its 2010 joint venture negotiations with BSGR.  Vale has identified Ernst & Young as an entity that has information that is highly relevant to Rio Tinto's claims.  Among other things, Vale has indicated that Ernst & Young:

    a.    was "retained by Vale in the context of negotiations [with] BSGR and/or Steinmetz regarding Simandou and/or the Vale-BSGR Transaction from December 1, 2009 until April 30, 2010;"

    b.    was one of Vale's "investigators, due diligence counselors, financial analysts, and/or lawyers in relation to Simandou;" and

    c.    "may have knowledge relating to one or more of the 'matters alleged in the Complaint' between January 1, 2005 and April 30, 2014."

7.34    Moreover, documents reviewed by the Applicant, including the Ernst & Young engagement letters produced by Vale, identify Jonathan Middup, John Houlden, Tim Pinkstone, Rob Sinclair, Noel Davison, and Lee Downham as among those employees or representatives of Ernst & Young who were involved with the due diligence work Ernst & Young performed for

Vale concerning Simandou and therefore have knowledge of facts that bear on the issues of this case.

### 8.      Evidence to be obtained or other judicial act to be performed (Article 3,d)

8.1      In light of the foregoing, it is requested that for the purpose of justice and for due determination of the matters in dispute between the parties you direct Jonathan Middup, John Houlden, Tim Pinkstone, Rob Sinclair, Noel Davison, and Lee Downham to provide oral testimony for use at trial (if appropriate) to counsel for Applicant subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales. The Witnesses' unique importance to the claims and defenses is described both above and in the subject matters as to which each Witness is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from Jonathan Middup, John Houlden, Tim Pinkstone, Rob Sinclair, Noel Davison, and Lee Downham is available only by an order of the High Court.

### 9.      Identity and address of any person to be examined (Article 3,e)

Jonathan Middup
John Houlden
Tim Pinkstone
Rob Sinclair
Noel Davison
Lee Downham

Ernst & Young LLP
1 More London Place
London
SE1 2AF
United Kingdom

### 10.      Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)

10.1      It is requested that each Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as

may apply under the rules and procedures of the Requesting Court or the courts of England and
Wales, on:

Pursuant to the Ernst & Young engagement letters executed by Vale on or around 12
May 2010,[1] and 11 October 2010,[2] the services Ernst & Young provided thereunder (together,
the "Services"), including (i) Ernst & Young's draft, final, and revised versions of its
work product provided in connection with the Services, (ii) all source information
gathered, considered, and/or relied upon by Ernst & Young in connection with providing any
work product concerning the Services, and (iii) all communications with Vale leading up to and
after issuance of all draft, final, and revised versions of the work product provided in connection
with the Services.

**11.     Evidence to be obtained and documents to be inspected (Article 3,d and 3,g)**

11.1     It is requested that Ernst & Young be required to produce the specified documents
described herein as are believed to exist in its power, possession or control.  Such documents are
necessary for the purposes of justice and for the due determination of the matters in dispute
between the parties.

a.  All versions of the written Report prepared by Ernst & Young on or around 14 May
2010 ("Report 1" herein), including the final version and all intermediate drafts,
regarding its due diligence work concerning the financial records maintained by BSG
Resources (Guinea) Limited (Guernsey) or BSG Resources (Guinea) Limited SARL
(Guinea), as described on Page 3 of Engagement Letter 1.

b.  All documents or other materials Vale or BSGR made available to Ernst & Young in
the course of its preparation of Report 1.

c.  All documents obtained from external sources, other than Vale or BSGR, and
considered by Ernst & Young in its preparation of Report 1.

---

[1]   Vale executed two engagement letters with Ernst & Young to perform due diligence concerning Simandou on 12
May 2010.  The first engagement letter was sent by Ernst & Young to Vale on 27 April 2010 and the second was
sent by Ernst & Young on 12 May 2010.

[2]   This engagement letter was sent by Ernst & Young to Vale on 30 September 2010.

d.   All work product created by Ernst & Young during its preparation of Report 1.

e.   All communications between Vale (or BSGR) and Ernst & Young concerning Report 1, relating to the preparation, modification, or finalization of Report 1.

f.   All versions of the "final written report" concerning due diligence performed by Ernst & Young ("Report 2" herein"), including the final version and all intermediate drafts of the report submitted to Vale for "comments prior to issuing [the report] in final form," as described on Page 7 of Engagement Letter 2.

g.   All documents or other materials Vale or BSGR, made available to Ernst & Young in the course of its preparation of Report 2.

h.   All documents obtained from external sources, other than Vale or BSGR, and considered by Ernst & Young in its preparation of Report 2.

i.   All work product created by Ernst & Young during its preparation of Report 2.

j.   All communications between Vale (or BSGR) and Ernst & Young concerning Report 2, relating to the preparation, modification, or finalization of Report 2.

k.   All versions of the "final written report" concerning due diligence performed by Ernst & Young ("Report 3" herein), including the final version and all intermediate drafts of the report submitted to Vale for "comments prior to issuing [the report] in final form," as described on Page 5 of Engagement Letter 3.

l.   All documents or other materials Vale or BSGR made available to Ernst & Young in the course of its preparation of Report 3.

m.   All documents obtained from external sources, other than Vale or BSGR, and considered by Ernst & Young in its preparation of Report 3.

n.   All work product created by Ernst & Young during its preparation of Report 3.

o.   All communications between Vale (or BSGR) and Ernst & Young concerning Report 3, relating to the preparation, modification, or finalization of Report 3.

**12.   Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, each Witness to appear to be examined under oath or affirmation at the office of Quinn Emanuel Urquhart & Sullivan LLP, One Fleet Place, London EC4M 7RA, or such other place as the parties may agree.

**13.     Special methods or procedure to be followed (Articles 3,i and 9)**

13.1     The Requesting Court further requests that Sue Prevezer QC, who is a representative of Rio Tinto, or such other persons later designated by Rio Tinto, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witnesses on the subjects identified above and elicit their sworn testimony.

13.2     Pursuant to Article 9 of the Convention, it is requested that the legal representatives of Rio Tinto be permitted to conduct the examination of each Witness in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by the Applicant, who, subject to approval by you, shall act as referee.  It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

13.3     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible. If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4     The Requesting Court respectfully requests that the representatives of Rio Tinto be allotted a total of five hours for each of their examinations.  Counsel for Rio Tinto will consult with each Witness's legal representatives in order to determine a mutually convenient date to conduct the examination on or before December 31, 2015, as approved by you.

13.5    The Requesting Court also respectfully requests that the questions and the responses of each Witness be recorded verbatim and that each Witness sign the verbatim transcript. The verbatim transcript of each Witness's responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction. The Requesting Court also respectfully requests that you cause the testimony of each Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Sue Prevezer of Quinn Emanuel Urquhart & Sullivan LLP, One Fleet Place, London EC4M 7RA, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13. 7    The appearance of each Witness for his or her testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.     **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)**

Sue Prevezer QC
Quinn Emanuel Urquhart & Sullivan LLP
One Fleet Place
London EC4M 7RA
United Kingdom

15.     **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

16.     **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

Each Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or the United Kingdom, or would disclose a privileged communication.

17.     **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, will be initially borne by Rio Tinto.  The payment of any such fees and costs is without prejudice to the Applicant's right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                    …………………………………….

SIGNATURE AND SEAL OF          …………………………………….
THE REQUESTING AUTHORITY