**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
(202) 538-8166

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

September 2, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: <u>Rio Tinto v. Vale, et al., Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)</u>

Dear Judge Peck:

We write in response to Vale's August 31, 2015 letter, Dkt. No. 335, in which it asks the Court to issue letters of request to three law firms Rio Tinto engaged as outside counsel to provide legal advice, Dkt. Nos. 332–34. The letters of request ("LORs"), which Rio Tinto only saw for the first time when Vale filed them, violate Your Honor's prior ruling that outside law firms should not be subpoenaed absent good cause and are otherwise improper for the reasons detailed below. They also are unnecessary: As Rio Tinto explained to Vale days before it filed the LORs, Rio Tinto already has produced the non-privileged materials related to the work of these law firms and logged the privileged materials.[1] Therefore, the LORs seek, at best, to obtain non-privileged documents Vale already has and, at worst, to obtain non-discoverable, privileged documents. In short, they are a needless burden on foreign courts and the third-party law firms.

*First*, the LORs run afoul of the Court's direction months ago that the parties not subpoena outside law firms until they have reviewed the parties' discovery production and demonstrated that the requested materials have not been produced. *See, e.g.*, Jan. 13, 2015 Hr'g Tr. 50:17–23 (Counsel for Rio Tinto: "We did not understand your Honor to say and don't think the case law requires a search of lawyer files as well, because any relevant documents that need to be logged will be captured in the search of the in-house lawyers. We are not going to log all of our --" The Court: "Certainly if that is true, then you don't need to log something twice."); Mar.

---

[1] All three of the outside law firms Vale seeks discovery from were identified on Rio Tinto's privilege log served on July 30, 2015 and even identified in certain documents produced by Rio Tinto (*see* Dkt. No. 322 at 7 n.9). Vale's feigned surprise at their existence during the last conference before Your Honor on August 19, 2015 and in its August 31 letter therefore is demonstrably false.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

17, 2015 Hr'g Tr. 16:11–12 (The Court: "My inclination is to leave [subpoenas to law firms] in abeyance, see what you get from Rio Tinto."); Apr. 8, 2015 Hr'g Tr. 15:3–6 (Counsel for Rio Tinto: "[W]e have not served a subpoena on Cleary Gottlieb because we didn't think Your Honor would want that."  The Court: "Correct.").  Vale has made no such showing.  Indeed, Rio Tinto agreed to include several of its in-house lawyers as custodians for the very reason that those in-house lawyers' files would contain communications with outside law firms, including the three firms that are subject to Vale's proposed LORs.  As explained eight months ago, documents responsive to Vale's requests would be produced from the custodians Rio Tinto agreed to search or included in a privilege log.  Jan. 13, 2015 Hr'g Tr. 50:17–23.  And that is exactly what has happened.  Rio Tinto has produced responsive non-privileged materials from each of the law firms Vale now seeks to subpoena and included privileged materials in its privilege logs.  Vale does not contest this; to the contrary, Vale's letter confirms that Rio Tinto's production contains the relevant materials, and it offers no justification for imposing further requests on third parties.[2]

*Second*, Vale's legal basis for requesting these documents rests on the faulty premise that they relate to its flawed theory that Rio Tinto was on notice that Vale had defrauded Rio Tinto in 2008 and 2009 when it stole Rio Tinto's information for the benefit of the RICO conspiracy.  But as explained at the most recent discovery conference, Vale myopically (and wrongly) assumes that *any* legal advice Rio Tinto received concerning Simandou after 2008 relates to Vale's criminal conspiracy with its co-defendants and others.  *See* Aug. 19, 2015 Hr'g Tr. 15:2–17:5.  Vale yet again mischaracterizes the nature of Rio Tinto's lawsuit, which by now Vale knows well is about Vale's and BSGR's *joint* effort, along with others, to obtain and retain Rio Tinto's rights to Simandou Blocks 1 and 2.  It is no surprise that Rio Tinto was receiving legal advice in relation to the loss of Simandou.  And it likewise is no surprise such legal advice focused on BSGR, since the exploration rights had been awarded to BSGR in December 2008.  But contemplating legal action against BSGR alone before the announcement of its joint venture with Vale on April 30, 2010 reveals nothing about Rio Tinto's awareness (or, more appropriately, lack of awareness) that Vale, BSGR, Beny Steinmetz, Mahmoud Thiam, Frederic Cilins, Mamadie Touré, and others joined to form a criminal enterprise that engaged in a pattern of racketeering activity that injured Rio Tinto.  Indeed, none of the work of these law firms relates to Vale or the RICO conspiracy.  As a result, the requested materials have no impact on whether the statute of limitations began to run on Vale's conduct at issue in this case prior to April 30, 2010.

*Third*, Vale's assertion that the at-issue waiver doctrine renders these materials discoverable ignores contrary binding authority of which Vale is well aware.  *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008), expressly holds that "at-issue" waiver is strictly limited to

---

[2]  The only exception appears to be bills and invoices (including time sheets) and records of payment for these outside law firms.  While Rio Tinto agreed to and did produce these materials for the various investigative firms, that was because such materials were at least arguably relevant to evaluating the diligence of Rio Tinto's investigation.  The same is not true for the provision of legal advice by these outside law firms.  Even assuming *arguendo* that the time entries were not privileged, they still would fail to meet the relevance threshold because the legal advice rendered by these law firms has no bearing on Rio Tinto's "diligence" in the factual investigation into what happened.

instances where a party relies on privileged advice from counsel, including by asserting good faith, in order to make a claim or defense. Rio Tinto, however, has claimed *diligence*, not reliance on advice of counsel or good faith, in attempting to discover Vale's and its coconspirators' crimes that was thwarted by their fraudulent concealment.[3] Neither *Erie* nor any other decision in the Second Circuit following *Erie* holds that a party puts its state of mind or good faith at issue when asserting equitable tolling or fraudulent concealment. The reason for this is simple—whether a party exercises reasonable due diligence in discovering its claims is an objective, not subjective, test. *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 266 (S.D.N.Y. 1997) ("the test as to when fraud should have with reasonable diligence been discovered is an objective one"); *In re Integrated Res. Real Estate Ltd. P'ships Secs. Litig.*, 850 F. Supp. 1105, 1118 (S.D.N.Y. 1993) (same). Only by ignoring binding authority and common sense can Vale argue that Rio Tinto has put its legal advice at issue. In any event, if Vale wishes to challenge Rio Tinto's assertion of privilege by arguing at-issue waiver, the proper procedure – as this Court previously recognized – is to challenge Rio Tinto's privilege logs. Burdening foreign courts and third parties with unnecessary, duplicative, and improper discovery requests is a waste of resources and a transparent attempt to circumvent this Court's orders.[4]

\*   \*   \*

Vale already has non-privileged materials related to the work of these law firms. Simply reviewing Rio Tinto's production and privilege logs would have made that clear, as Rio Tinto explained to Vale days before it submitted the LORs. Instead, Vale once again jumped the gun and made a gratuitous request for materials it already has, this time requesting the Court's stamp of approval for LORs that clearly and unabashedly seek discovery into privileged information from Rio Tinto's outside lawyers. The Court should decline Vale's request to issue the LORs.

Respectfully submitted,

/s/ Michael Lyle
Michael Lyle

---

[3] As explained in Rio Tinto's opposition to the Defendants' motion to dismiss, Rio Tinto was not on notice of its RICO injury until April 30, 2010 at the earliest (when Vale publicly announced its joint venture with BSGR) and timely filed suit four years later (in April 2014). Evidence of fraudulent concealment or equitable tolling therefore may not even be needed, and in any event would only be relevant prior to April 30, 2010. What Rio Tinto learned after April 30, 2010 is not relevant to any diligence inquiry since Rio Tinto filed within four years of learning it.

[4] The LORs also are inappropriately slanted toward Vale's erroneous point of view, as opposed to a neutral description of the allegations in this case. *See, e.g.*, Dkt. No. 332, Ex. B., ¶ 7.18 (claiming "Rio Tinto sat on any claim for the loss of Simandou until April 2014" and stating "[T]he law is clear that there can be no equitable tolling, even where there is concealment – **there was none here by Vale** – if plaintiff knew of the existence of a potential claim." (emphasis added)). Such advocacy is inappropriate in a letter of request issued by a U.S. court to a foreign court.