UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rio Tinto plc,<br><br>            Plaintiff,<br><br>    -against-<br><br>Vale S.A., Benjamin Steinmetz, BSG Resources Limited, VBG-Vale BSGR Limited aka BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR, Frederic Cilins, Mamadie Touré, and Mahmoud Thiam,<br><br>            Defendants. | 14 Civ. 3042 (RMB)(AJP) |

## ORDER GRANTING APPLICATION FOR
## ISSUANCE OF INTERNATIONAL LETTERS OF REQUEST (LETTERS ROGATORY)

Upon the Application for the Issuance of an International Letter of Request (Letter Rogatory) (the "Application") filed by Vale S.A. ("Vale" or the "Applicant"), requesting the issuance of an international letters of request (the "Letter of Request") pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

9

This Court shall sign the Letter of Request attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature in the Letter of Request.

The Clerk of the District Court is directed to return the original, signed Letter of Request to counsel for Vale so that said Letter of Request may be issued to the Ministère de la Justice acting as the Competent Judicial Authority of the Republic of France.

Vale is directed to transmit the original, signed Letter of Request to the Competent Judicial Authority of the Republic of France.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.

Dated: ___Sept 9___, 2015
New York, New York

_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE

HON. ANDREW J. PECK
United States [Magistrate Judge]
Southern District of New York

Copies: Hon. Court
         Judge Berman

**BY ECF**

# EXHIBIT B

# (LETTER OF REQUEST TO HERBERT SMITH FREEHILLS LLP)

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |
| 2. | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 20D<br>New York, New York 10007 |

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examinations to occur as the parties may agree, but no later than November 30, 2015. |
| **Reason for urgency** | Under the Court's Scheduling Order (Dkt. Nos. 161, 163), pretrial examination of fact witnesses must be complete by November 30, 2015. |

IN COMFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| 5. | *a* **Requesting judicial authority (Article 3,a)** | The Honorable Andrew J. Peck<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 17B<br>New York, New York 10007 |
| | *b* **To the competent authority of (Article 3,a)** | The Republic of France |

12

6. **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

   *a* **Plaintiff**           Rio Tinto plc

   **Representatives**         William A. Burck
                               Michael J. Lyle
                               Eric C. Lyttle
                               Quinn Emanuel Urquhart & Sullivan, LLP
                               777 6th Street NW, 11th Floor
                               Washington, DC 20001
                               Telephone: (202) 538-8000
                               Facsimile: (202) 538-8100

   *b* **Defendants**          Vale S.A.

   **Representatives**         Jonathan I. Blackman
                               Lewis J. Liman
                               Boaz S. Morag
                               Cleary Gottlieb Steen & Hamilton LLP
                               One Liberty Plaza
                               New York, New York 10006
                               Telephone: (212) 225 2000
                               Facsimile: (212) 225 3999

                               **BSG Resources Limited**

   **Representatives**         Robert Gold
                               Vincent Filardo, Jr.
                               Mishcon de Reya New York, LLP
                               750 Seventh Avenue
                               New York, New York 10019
                               Telephone: (212) 612 3270
                               Facsimile: (212) 612-3297

                               **Benjamin Steinmetz**

   **Representatives**         Robert Gold
                               Vincent Filardo, Jr.
                               Mishcon de Reya New York, LLP
                               750 Seventh Avenue
                               New York, New York 10019

13

                                                  Telephone: (212) 612 3270
                                                  Facsimile: (212) 612-3297

                                                  **BSG Resources Guinee SARL**
                                                  *also known as*
                                                  VBG-Vale BSGR Guinea

**Representatives**                Martin Joel Auerbach
                                                  Law Offices of Martin J. Auerbach, Esq
                                                  1185 Avenue of the Americas, 31st Floor
                                                  New York, New York 10036
                                                  Telephone: (212) 704 4347
                                                  Facsimile: (212) 3040175

                                                  **Mahmoud Thiam**

**Representatives**                Paul Eliot Summit
                                                  Sullivan & Worcester LLP (MA)
                                                  One Post Office Square
                                                  Boston, MA 02109
                                                  Telephone: (617) 210 8437
                                                  Facsimile: (617) 338 2880

7. **Nature of the proceedings and summary of claims (Article 3,c)**

7.1    This action, captioned <u>Rio Tinto v. Vale, S.A., et al.</u>, Case No. 14 Civ. 3042 (RMB)(AJP) (the "Action"), is a civil litigation proceeding pending before the Requesting Court asserting, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by Vale, BSG Resources Limited, VBG – Vale BSGR Limited and BSG Resources Guinée SARL, Frédéric Cilins, Mamadie Touré, and Mahmoud Thiam. All of the defendants are alleged to have been co-conspirators in a scheme to steal Rio Tinto's mining rights to Blocks 1 and 2 in the Simandou region of Guinea. In this application, the term "BSGR" is used to refer to BSG Resources Limited as well as any of its subsidiaries, or its affiliates. The term "Representative" is used to refer to directors (or shadow directors), officers, employees, representatives, agents, intermediaries and consultants. The Relevant Period referred to below is January 1, 2008 to April 30, 2014. Although not named as defendants, Rio Tinto's complaint

has identified Avraham Lev Ran and Michael Noy as Representatives of BSGR, who are alleged to have been co-conspirators with the defendants.

7.2     Rio Tinto, headquartered in the United Kingdom, is one of the three largest mining companies in the world, operating globally and mining a wide variety of metals and minerals, including iron ore.

7.3     Vale, a Brazilian corporation, is another of the world's three largest mining companies and also mines iron ore among numerous other metals and minerals.

7.4     BSG Resources Limited is a Guernsey corporation that is principally engaged in mining operations in Africa and eastern Europe, but which also engages in power generation and oil and gas exploration and production. The company is wholly owned by Nysco Management Corporation Limited, a company incorporated in the British Virgin Islands, which is in turn wholly owned by the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose beneficiaries are Benjamin ("Beny") Steinmetz, an Israeli businessman domiciled in Switzerland who ultimately controls BSGR, and members of his family. BSG Resources Limited maintains an office in London.

7.5     In February 1997, the government of the West African nation of Guinea (the "Government of Guinea") awarded permits to Rio Tinto to explore an area of Guinea called Simandou, which is known to be one of the most significant untapped iron ore deposits in the world. Rio Tinto alleges that it spent the next nine years exploring and developing Simandou. In 2006, the Government of Guinea awarded Rio Tinto a "Concession" that consisted of mining rights to four "Blocks" or areas of Simandou: Blocks 1, 2, 3, and 4. Rio Tinto claims to have continued developing and investing in Simandou, including developing railway and port plans to

transport iron ore from Simandou by rail to the coast of the Atlantic Ocean, either through Guinea or through the neighboring country of Liberia.

7.6 In 2008, Rio Tinto approached Vale to discuss the possible sale of assets from Rio Tinto to Vale or a possible joint venture between the companies. In September 2008, Vale and Rio Tinto executed a Confidentiality Deed and in November 2008 Rio Tinto opened a data room so that Vale could review certain of Rio Tinto's documents related to the assets under discussion. After the Confidentiality Deed was signed and the data room opened, the two parties ultimately discussed the sale of Rio Tinto's rights to Simandou.

7.7 On December 4, 2008, the Government of Guinea withdrew half of the Rio Tinto Concession, which covered Blocks 1 and 2 of Simandou. Rio Tinto and Vale continued to explore possible transactions. Vale ultimately purchased iron and potash assets from Rio Tinto, but negotiations regarding Simandou were terminated by Rio Tinto in June 2009.

7.8 On December 9, 2008, BSGR was granted a research permit for Simandou Blocks 1 and 2 following the Government of Guinea's withdrawal of Rio Tinto's Concession to those Blocks on December 4, 2008.

7.9 Over a year later, in February 2010, after negotiating with other parties, BSGR approached Vale about the possibility of partnering to develop its mining area in Blocks 1 and 2 of Simandou and the two parties began negotiating a joint venture. The negotiations culminated in the signing of a Framework Agreement and Shareholders' Agreement, both dated April 30, 2010. The Agreements both included broad and detailed anti-bribery representations and warranties, on which Vale relied. The joint venture was called "VBG." Vale paid BSGR $500 million as an initial payment of the $2.5 billion purchase price for its 51% stake in the venture.

16

7.10    On October 30, 2012, VBG Guinea received notice that a Technical Committee for the Review of Mining Titles and Agreements of the Government of the Republic of Guinea (the "Technical Committee") had begun investigating how BSGR had obtained its mining rights to Simandou.

7.11    On information and belief, in or about January 2013, a U.S. federal Grand Jury began a criminal investigation into allegations that BSGR violated the Foreign Corrupt Practices Act ("FCPA") relating to BSGR's suspected bribes of Guinean officials in connection with obtaining rights to Simandou. The Federal Bureau of Investigation ("FBI") arrested BSGR's alleged agent Frédéric Cilins on April 14, 2013 after recording several conversations between him and a confidential informant, Mamadie Touré (the fourth wife of former Guinean President Conté and a co-defendant in this action), that implicated him in offering bribes and attempting to destroy documentary evidence of bribes paid by BSGR to obtain its mining rights in Guinea. The U.S. Department of Justice ("DOJ") filed criminal charges against Cilins the next day. Cilins pleaded guilty in 2014 to obstruction of justice and was sentenced to 24 months in prison with three years of supervised release. Cilins was released from prison on January 9, 2015.

7.12    In April 2014, after concluding its investigation, the Government of Guinea revoked VBG's rights to Simandou, having determined that BSGR had obtained its rights to Blocks 1 and 2 of Simandou through corrupt acts, including bribery of Mamadie Touré and efforts by Cilins to destroy evidence of such bribery by, *inter alia*, Cilins and Michael Noy seeking to induce Mamadie Touré to execute a false declaration in the U.S. Grand Jury proceeding. The Technical Committee found that Vale had no involvement in this bribery scheme. Vale instituted an arbitration proceeding against BSGR alleging, in part, that it was defrauded by BSGR.

7.13     Thereafter, on April 30, 2014, Rio Tinto filed a complaint against Vale, BSGR, and a number of other parties alleging, *inter alia*, that it lost its rights to Simandou Blocks 1 and 2 because of a conspiracy by Vale and BSGR in December 2008. Rio Tinto alleged that, as a result of BSGR's alleged bribery and Vale's alleged disclosure of Rio Tinto's trade secrets to BSGR, BSGR was able to obtain Rio Tinto's rights to Simandou Blocks 1 and 2. An Amended Complaint with substantially similar allegations was filed on August 15, 2014.

7.14     Rio Tinto claims that Vale used access to Rio Tinto's data room (*see supra* ¶ 7.6) to steal confidential information about Simandou and gave that information to BSGR for BSGR to use in obtaining Rio Tinto's rights, which BSGR obtained in December 2008. Rio Tinto further claims that Vale met with Steinmetz, BSGR, and Mahmoud Thiam, then-Minister of Mines for Guinea and a co-defendant in this action, multiple times from January 2009 to June 2009 in furtherance of the conspiracy to obtain rights to Simandou. Rio Tinto alleges that Steinmetz and BSGR paid bribes to Thiam to confirm their interest in Simandou Blocks 1 and 2. Rio Tinto alleges that BSGR and Vale formed a joint venture agreement with respect to Simandou Blocks 1 and 2 in April 2010.

7.15     In addition to the DOJ's and Technical Committee's investigations, BSGR is also under investigation by law enforcement agencies in Switzerland, France, and the United Kingdom in relation to its illicit activities in Guinea. The Swiss authorities have received a Letter of Request from the Conakry Court of First Instance, pursuant to which they have seized documents at BSGR's management company, Onyx Financial Advisors Ltd. ("Onyx"), and Steinmetz's home. The Guernsey Financial Investigations United and the United Kingdom's Serious Fraud Office (the "SFO") have also opened inquiries, including in serving Section 2 Notices on BSGR's current and past London counsel as well as Onyx. BSGR filed an

application for judicial review of the SFO Section 2 Notices in the Administrative Court Division of the English High Court of Justice, which the English High Court of Justice denied on May 7, 2015.

7.16 Vale denies each of the allegations made against it, any conspiracy with BSGR, any involvement in BSGR's and Steinmetz's corrupt activities, and any misappropriation of trade secrets. In particular, Vale denies that it did or could have entered into a conspiracy with BSGR in December 2008 when BSGR alone enjoyed the rights to Simandou Blocks 1 and 2, after December 2008 sought other mining companies as partners with respect to these rights, and did not agree to a joint venture with Vale until April 2010. Rio Tinto's claims, as summarized above, put at issue whether BSGR and Steinmetz engaged in a conspiracy with Vale, whether BSGR and Steinmetz engaged in corruption or bribery, whether they obtained the mining rights in which Vale subsequently invested by those means, and whether Vale had anything to do with these activities, which it denies.

7.17 Vale and other defendants also assert that Rio Tinto's lawsuit is barred by the four-year statute of limitations to bring RICO claims. Rio Tinto claims that it "was unable to discover the conduct that underlies its RICO and other claims until . . . April 2013." (AC ¶¶ 146-147.) Rio Tinto thereby invokes fraudulent concealment to toll the statute of limitations. In light of Rio Tinto's claim that it conducted a lengthy investigation continuing through the filing of the complaint, and that it did not know and could not have known with the exercise of reasonable diligence of a claim arising out of its loss of Simandou under April 2013, Vale's Interrogatory No. 22 to Rio Tinto requested that Rio Tinto identify persons with knowledge concerning Rio Tinto's purported investigation. (*See* Vale's First Set of Interrogatories to Plaintiff, Interrogatory No. 22.) In its fourth amended interrogatory responses, dated August 24, 2015, pursuant to a

Court Order, Rio Tinto identified four law firms that "may have knowledge related to Rio Tinto's investigation into potential claims against Defendants BSGR, Steinmetz, and/or the Government of Guinea between December 2008 and the filing of the complaint [on April 30, 2014]: 1. Amsterdam & Partners LLP (Bob Amsterdam, Dean Peroff); 2. Balter, Guth, Aloni & Co (Moshe Balter, Inbal Elkayam, Sue Kiali, Meir Rosenne, Raanan Bar Zohar); 3. Herbert Smith (Stéphane Brabant, Emmanuelle Cabrol, James Clark, Laurence Franc-Menget, Bruno Gay, and former Herbert Smith attorney Charles Kaplan); 4. Mourant Ozannes (Robert Shepherd)."

7.18    In the course of discovery, Vale has obtained documents from Rio Tinto that demonstrate that – contrary to its allegation that it could not have known of the conduct underlying a claim for loss of Simandou until April 2013 and that it conducted thorough due diligence – in or about March 2009 Rio Tinto instructed these firms to bring suit for tortious interference with Rio Tinto's loss of Simandou in 2008. Under these circumstances, the fact that Rio Tinto sat on any claim for the loss of Simandou until April 2014 is evidence against its equitable tolling claim. That fact is plainly relevant – indeed, potentially dispositive – with respect to Rio Tinto's equitable tolling claim: the law is clear that there can be no equitable tolling, even where there is concealment – there was none here by Vale – if plaintiff knew of the existence of a potential claim.

7.19    The evidence sought from the law firm identified below, which includes evidence of when Rio Tinto first knew of its alleged loss, when it first sought to investigate that loss, when it first retained counsel, and what instructions it gave that counsel, is material to the resolution of these disputes. The evidence bears on Vale's statute of limitations defense, including on the

timing of Rio Tinto's claim and whether its investigation was sufficient to toll the otherwise expired statute of limitations.

8.  **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1   To prevent dismissal of its claims, Rio Tinto must affirmatively demonstrate that it conducted a diligent investigation into its potential claims but was prevented from filing a timely lawsuit within four years of its injury due to Defendants' fraudulent concealment. Rio Tinto has identified Stéphane Brabant, Emmanuelle Cabrol, and Laurence Franc-Menget as among those Representatives of Herbert Smith who were involved in Herbert Smith's investigation for Rio Tinto during the relevant time period and who have knowledge of facts that bear on the issues of this case.

8.2   It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties you direct Stéphane Brabant, Emmanuelle Cabrol, and Laurence Franc-Menget to provide oral testimony for use at trial (if appropriate) to counsel for applicant subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of the Republic of France. The Witnesses' unique importance to the claims and defenses is described both above and in the subject matters as to which each Witness is to be examined, detailed in Section 10 below. Absent voluntary cooperation, evidence from these Witnesses is available only by an order of a French Court.

| | | |
|---|---|---|
| 9. | **Identity and address of any person to be examined (Article 3,e)** | Stéphane Brabant<br>Emmanuelle Cabrol<br>Laurence Franc-Menget<br><br>**Herbert Smith Freehills LLP**<br>66, avenue Marceau<br>75008 Paris, France |

10. **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 12 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of France:

The services that Herbert Smith provided to Rio Tinto, or was engaged to provide to Rio Tinto regarding potential claims by Rio Tinto against BSGR, Steinmetz, and/or the Government of Guinea related to Rio Tinto's loss of rights to Simandou (the "Services"), including the scope and timing of its engagement, and its findings and conclusions.

11. **Documents or other property to be inspected (Article 3,g)**

It is requested that Herbert Smith be required to produce the specified documents described herein [-- unless such documents are privileged --] as are believed to exist in its power, possession, or control. Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

    a. The engagement letters and disengagement letters between Herbert Smith and Rio Tinto related to Herbert Smith's provision of the Services.

    b. The bills and invoices (including the time sheets or records of activities performed by Herbert Smith) made in connection with the Services.

    c. The records of payment by Rio Tinto to Herbert Smith in connection with the Services.

    d. The communications between Herbert Smith and Rio Tinto concerning the Services, including the transmittal of any report or update or draft complaint or pleading, and any attachments or enclosures thereto.

  e. The reports and memoranda prepared for Rio Tinto by Herbert Smith in connection with the Services, and the drafts thereof.

  f. The communications between Herbert Smith and third parties concerning the Services.

  g. The Documents concerning Simandou, Guinea, BSGR, Steinmetz, and/or Vale reviewed, received, or prepared in connection with the Services.

**12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation before a French court.

**13. Special methods or procedure to be followed (Articles 3,i and 9)**

13.1 Pursuant to Article 9 of the Convention, it is requested that the Witness be placed under oath or solemn affirmation in accordance with whatever procedure French law provides for in these matters and in particular Article 211 of the French New Code of Civil Procedure before answering the oral questions and cross-questions.

13.2 In accordance with Article 740 of the French Civil Procedure Code, the Requesting Court requests that the legal representatives of the parties be authorized by the French magistrate presiding over the deposition to put questions to the Witness concerning the topics listed above. The legal representatives of the parties be permitted to conduct the examination of the witness in France on the subjects identified. The questions would be asked either in French or in English and translated to the Witness into French by a certified interpreter. The Witness would answer the questions in French and the certified interpreter would then translate the answers into English.

13.3     The Requesting Court believes that the procedure of having these attorneys participate in the taking of the testimony is appropriate and necessary. These attorneys are familiar with the relevant events and transactions in this complex matter. Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible. If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4     The Requesting Court respectfully requests that the representatives of Vale be allotted a total of five hours for the examination of the Witnesses. Counsel for Vale will consult with each Witness' legal representatives in order to determine a mutually convenient date to conduct the examination on or before November 30, 2015, as approved by you.

13.5     The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim in both French and English and that the Witness sign the verbatim transcript. The verbatim transcript of the Witness' responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.

13.6     In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court respectfully requests that the examination be executed in compliance with American proceedings rules. The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30. In accordance with F.R.C.P. 30(b)(l),

attorneys for all parties must be provided notice of the examination and an opportunity to be present. The party seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to the case of the time and place of the examination. Pursuant to F.R.C.P. 30(b)(3), it is requested that the testimony of each witness be recorded by both stenographic and video means. When a party or parties desire that testimony be recorded by stenographic and video means, they are obligated under U.S. law to provide for the presence of the stenographer (court reporter) and videographer and to bear the costs associated with their work. The Applicants would bear the costs of the recordings as well as the costs associated with providing a certified interpreter. The Witness would be entitled to be represented by an attorney present during the examination.

13.7    The Requesting Court also respectfully requests that you cause the testimony of the Witness and all of the documents produced at her examination as a result of the Letter of Request to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jean-Yves Garaud of Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.8    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of the Republic of France.

13.9    The appearance of each Witness for his or her testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear. However, the

Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14. **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[2]**

    Jean-Yves Garaud
    Cleary Gottlieb Steen & Hamilton LLP
    12, rue de Tilsitt
    75008 Paris

15. **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

    None.

16. **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

    The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or France, or would disclose a privileged communication.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

    The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of each Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by Vale. The payment of any such fees and costs is without

---

[2] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by Vale to the jurisdiction of the courts of the Republic of France, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicant to accept service of any proceedings in the Republic of France.

prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                            Sept 9, 2015

SIGNATURE AND SEAL OF
THE REQUESTING AUTHORITY

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

27