**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

September 15, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   **Rio Tinto v. Vale, et al., Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)**

Dear Judge Peck:

We write in response to Vale's September 10, 2015 letter (Dkt. No. 341), and Your Honor's memo endorsement of that letter (Dkt. No. 345) entered the same day before Rio Tinto had an opportunity to respond. Not only did Vale jump the gun in moving the Court,[1] but it also presented the Court with misstatements of law and fact in support of its request. Rio Tinto respectfully requests therefore that the Court reconsider and modify its endorsement as outlined below (*see infra* at 5) in light of this submission. At a minimum, Rio Tinto requests that this letter, although not considered by the Court before it so-ordered Vale's request, be made part of the record for review.

As the Court knows, Rio Tinto performed a factual investigation, which consisted, in part, of the various investigator reports that were long ago produced to Vale. Separate and apart from this factual investigation, Rio Tinto also engaged outside counsel to evaluate legal claims against Vale and its co-conspirators after the conspiracy came to light in April 2010.[2] Rio Tinto

---

[1] Vale prematurely raised these issues with the Court as they were the subject of ongoing discussions between the parties. Vale omits that it made its request on the Friday before the Labor Day holiday weekend and Rio Tinto simply had not yet had a chance to respond because it was conferring with its UK counsel. Just two business days after making the request, Vale burdened the Court with its letter before even seeing Rio Tinto's response.

[2] As the Court also knows, Rio Tinto evaluated potential, non-RICO claims against BSGR alone in 2009. That legal work was separate and apart from the legal review of the activities of Vale and the RICO conspiracy at issue in this case, although, to be clear, is equally subject to attorney-client privilege and work product protection.

ultimately and timely brought suit thereafter in April 2014, within four years of the earliest date it could be said to have been on notice of its RICO injury (the theft and misuse of its information) and three years from its separate RICO injury after the Defendants' extensive campaign of bribery and threats against Rio Tinto's remaining mining rights to Simandou Blocks 3 and 4 left Rio Tinto with no alternative but to relinquish its claims to Blocks 1 and 2 as part of a settlement with the Guinean Government in April 2011.

That background and distinction between Rio Tinto's factual investigation and its evaluation of potential legal claims against Vale and its co-conspirators is important because Vale improperly conflates the two and implies that Rio Tinto has broadly disclaimed privilege over both. That is a mischaracterization of law and fact. The factual materials – and only the factual materials – from these investigators is all Rio Tinto has disclaimed privilege over. That is clear from the context in which Rio Tinto's disclaimer arose, specifically letters of request that sought, with respect to each investigative firm, "the scope and timing of its engagement, who it interviewed, what documents it reviewed, its findings and conclusions." Dkt. No. 341, at 1–2, 5. Rio Tinto had and continues to have no privilege objection to that scope of production and questioning. Indeed, heading into the UK examinations, Rio Tinto, consistent with its position all along, has no present intention of raising any privilege objections as to documents that have been produced or will be produced by either Rio Tinto or the witnesses relating to their factual investigation.

But there is serious concern that Vale intends to impermissibly walk into Rio Tinto's legal evaluation in violation of the letters of request that this Court transmitted to the UK High Court of Justice. Indeed, Vale's September 10 letter reveals that it intends to exceed the scope of what this Court requested in its letters of request and what the UK High Court of Justice ordered in its sealed orders. Vale knows full well that the UK Examinations are limited to, with respect to each investigative firm, "the scope and timing of its engagement, who it interviewed, what documents it reviewed, its findings and conclusions." Dkt. No. 341, at 1–2, 5. Yet in its September 10 letter to Your Honor, Vale impermissibly tacked onto that list "and its communications with Rio Tinto (and its lawyers) regarding the same" as if that had been requested by this Court and ordered by the UK High Court of Justice. *Id.* Needless to say, it has not, and Vale's belated attempt to sneak it into its letter as an improper attempt to alter what this Court and the UK High Court of Justice have ordered should be rejected.

If Vale tries to stray into Rio Tinto's legal evaluation, Rio Tinto has the right to assert privilege and preserve its objections. To be sure, there are a handful of post-April 2010 communications between Rio Tinto's lawyers and its investigators after Vale's conspiracy was uncovered concerning Rio Tinto's evaluation of a possible lawsuit against Vale and its co-conspirators. These communications are undoubtedly protected by attorney-client privilege and the work product doctrine (in addition to being completely outside the relevant time period for equitable tolling – *i.e.*, they post-date April 2010 and Rio Tinto filed within four years of anything it learned after April 2010). *See In re Grand Jury Subpoena Dated Mar. 20, 2013,* No. 13-MC-189, 2014 WL 2998527, at *8 (S.D.N.Y. July 2, 2014) ("Private investigators also fit within this category of necessary aides to the provision of legal services."); *see generally United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *see also See Gucci Am., Inc. v. Guess?, Inc.*,

2

271 F.R.D. 58, 71 (S.D.N.Y. 2010) ("[C]ourts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys" (collecting cases)); *id.* at 74 ("[Work product] doctrine has been held to protect work performed by those 'enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparation for litigation.'" (quoting *Costabile v. Westchester, New York,* 254 F.R.D. 160, 164 (S.D.N.Y. 2008)). By no means is Rio Tinto suggesting that it will raise objections to Vale's questions that concern factual information. Rio Tinto must, however, have the right to interpose objections to Vale's questions that venture beyond the ordered scope of the Letters of Request and into Rio Tinto's privileged legal evaluation.[3]

Rio Tinto's concerns over Vale's apparent intentions to abuse the scope of its Letters of Request are particularly acute with respect to Messrs. Brown and Leighton (who works with Mr. Brown). As Rio Tinto has advised both the Court and Vale, Quinn Emanuel subsequently engaged Mr. Brown for work in connection *with this litigation*. Dkt. No. 318. That work is entirely unrelated to any of Mr. Brown's prior work for Rio Tinto concerning Simandou and is unquestionably protected. In the event that Vale's questions divert into Mr. Brown's work for Quinn Emanuel, Rio Tinto must have the right to raise the appropriate objections at that time.[4] Again there is serious concern Vale might attempt to go beyond the scope of the Letters of Request, since Vale already has sought documents from Messrs. Brown and Leighton even though its Letters of Request called only for testimony, not documents. Also regarding Mr. Brown, Vale already has Rio Tinto's engagement letter with BTG (where Mr. Brown worked during the relevant time). Rio Tinto is looking for an engagement letter with GardaWorld (where Mr. Brown formerly worked).[5]

Vale also attempted to use its September 10 letter as an improper effort to expand the scope of discovery into Rio Tinto's investigation beyond the agreed-upon custodians. *See* Dkt. No. 341, at 2 (requesting an order that production be made "regardless of custodian"). Rio Tinto understands this to mean that Rio Tinto will produce responsive documents regarding the

---

[3] Consistent with UK law, if Vale wishes further clarity on this, it may share its questions with Rio Tinto in advance of the depositions.

[4] For these same reasons, Rio Tinto has objected to Vale's request to "informally" interview Messrs. Brown and Leighton without Rio Tinto being present. Vale's promise not to delve into privileged information does nothing to prevent Messrs. Brown and Leighton from inadvertently disclosing it. Nor, based on the track record detailed above, is it clear that Vale will not exceed the scope of what it is entitled to under its Letters of Request or the restrictions the UK court placed on the information it could seek from the investigators. This is especially true since Rio Tinto understands that neither Messrs. Brown nor Leighton are represented by counsel. Vale sought the presence of a special master to oversee the UK examinations – it should not now attempt to circumvent that process, especially without counsel for Rio Tinto or the witnesses present.

[5] As Rio Tinto has previously explained, Dangate Consulting, where Mr. Brown currently works, has a standing procurement agreement in place with Rio Tinto. Neither Dangate nor Mr. Brown, however, have done any work for Rio Tinto since 2013, and no work under that procurement agreement related to Simandou. The engagement letter with Dangate therefore is neither relevant nor responsive.

3

investigation from any of the agreed-upon custodians, which Rio Tinto already has done.  To the extent Vale means *all* custodians in the *whole* company, that would be patently improper and unreasonable on its face, especially when it is clear that the custodians Rio Tinto collected from were the right ones.  *See, e.g.*, *Stinson v. City of New York*, No. 10-cv-4228, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015) (ordering number of custodians to be searched to be limited to a reasonable number of relevant individuals); *Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency,* 877 F. Supp. 2d 87, 112–13 (S.D.N.Y. 2012) (accord).  It is also unfair and unreasonable in light of the fact that Vale has produced from only 16 custodians because it failed to retain documents from 8 of them (while Rio Tinto already is producing from 27 custodians), and this Court's reluctance to add replacement custodians to remedy that situation after Vale waited four months to tell Rio Tinto or the Court it had no documents from them.

The remaining points in Vale's letter are based on similar distortions of fact and law.  As Vale well knows, Rio Tinto understood that *both* Vale and Rio Tinto were in the process of individually logging certain categories of privileged information, including Rio Tinto's investigation-related materials and Vale's due diligence-related materials.[6]  The parties have exchanged initial categorical privilege logs, and Rio Tinto provided supplemental information with respect to certain agreed-upon categories on September 11 (including documents related to any investigators that are privileged).  Final privilege logs are due September 28.  Rio Tinto made an additional production of documents that rolled off the initial log on September 11, and will produce any other documents rolling off the final log by September 28.  As this Court knows, Vale has for months now had what Rio Tinto believes to be the core factual materials from Rio Tinto's investigation:  the actual investigator reports.  This quality control process of re-reviewing the materials initially flagged for privilege by contract reviewers and re-categorizing them, rolling them off or applying redactions where appropriate is standard practice in any case and here ensures nothing was withheld on the initial privilege log that should have been produced.[7]

Finally, mindful of this Court's admonition not to argue the merits, Rio Tinto will simply say that Vale's statute of limitations arguments continue to mischaracterize both the RICO injuries Rio Tinto claims and the time period in which equitable tolling, if any, is even relevant.  And, in continuing to advance its meritless at-issue waiver claims, Vale fails to address binding

---

[6] Both Rio Tinto and Vale had issues with each other's initial privilege logs. Vale's initial privilege log, for example, included documents that are not privileged on their face, documents that were improperly withheld based on a common-interest privilege, categories of documents spanning up to eight years, and categorical descriptions that fail to offer any additional information to justify a claim of privilege.  As a result, the parties reached an accommodation under which both sides would individually log certain categories of documents and provided updated logs on September 11.  Vale has now reneged on that deal, an issue Rio Tinto will address with Your Honor under separate cover.

[7] In light of Your Honor's more recent guidance on privilege-related issues, Rio Tinto determined that a significant number of documents were eligible for redaction and rolled them off the log. Notably, the non-privileged portions of the vast majority of these documents already had been produced in substantially similar form.

Second Circuit precedent in *In re County of Erie*, 546 F.3d 222 (2d Cir. 2008) and continues to rely on cases *Erie* has overruled. Likewise, Vale continues to misrepresent the English court's decisions on the investigators, which held that, for some but not all of them, Rio Tinto had the right to ask for source-related information (which it did) but the investigators had an equal right to turn down Rio Tinto's request (which they did).

*****

      Vale has indicated it intends to go beyond the scope of what this Court and the UK court permitted. If Vale tries to do that, Rio Tinto needs the ability to assert a privilege objection as to a handful of post-April 2010 communications with its lawyers. A blanket, *ex ante*, prohibition on Rio Tinto's ability to assert privilege objections is neither necessary nor appropriate. Therefore, for the reasons outlined above, Rio Tinto respectfully requests that the Court modify its endorsement as follows or make this letter part of the record for further review:

      (1) ~~Ruling that~~ Rio Tinto has no privilege with respect to any question or testimony regarding the **factual** investigation and resulting reports produced by each respective firm (as enumerated in the Sealed Orders), including, in the case of each firm, "the scope and timing of its engagement, who it interviewed, what documents it reviewed, its findings and conclusions," ~~or to questions or testimony regarding communications with Rio Tinto (including its agents) and/or Rio Tinto's counsel regarding the same~~. **Rio Tinto may, however, raise privilege objections to Vale's questions that venture beyond the ordered scope of the Letters of Request and into Rio Tinto's privileged legal evaluation.**

      (2) ~~Ordering~~ Rio Tinto ~~to~~ **will** produce all **non-privileged** communications between Rio Tinto (or its counsel) and each of the firms and witnesses subject to the Sealed Orders that is responsive to Vale's document requests to Rio Tinto ~~(regardless of custodian), without withholding or redacting any such document on the basis of any purported privilege or protection from disclosure~~, and ~~to~~ do so no later than September 18, 2015.

      (3) ~~Ordering~~ Rio Tinto **will** ~~to~~ produce any operative engagement letter or agreement between Rio Tinto and Mr. Nigel Brown (a witness for the UK Examinations with whom Rio Tinto now admits to having a current engagement) or Mr. Alec Leighton (whom Rio Tinto says it has not retained, but who it acknowledges is Mr. Brown's associate) **that relates to the investigation and resulting reports as enumerated in the Sealed Orders**.

Respectfully submitted,

/s/ Michael Lyle
Michael Lyle