CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

September 16, 2015

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:  *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      On behalf of Defendant Vale, we write to in response to Plaintiff Rio Tinto's September 15, 2015 letter (Dk. 346) requesting reconsideration of the Court's September 11, 2015 Order (Dk. 345) regarding the upcoming UK Examinations pursuant to Your Honor's Letters of Request.

      The standards for reconsideration under local Rule 6.3 are well-settled, and Rio Tinto does not satisfy them. *See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB), 2014 WL 5809604, at *1 (S.D.N.Y. Nov. 6, 2014) ("A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for re-litigating issues already decided by the Court." (citations and quotation marks omitted)).

      Far from satisfying these standards, Rio Tinto's letter is a thinly disguised effort to walk back from the repeated representations it has made to this Court, and that its investigators made to the English High Court, that they were "not retained for purposes of litigation," did not have their investigative work directed by Rio Tinto or its counsel, and that Rio Tinto "*has asserted no*

Hon. Andrew J. Peck, p. 2

*privilege or protection that would prevent the investigators from talking about their prior work for Rio Tinto*." *See* Vale's September 10, 2015 letter at 2 (Dkt. 341). It was precisely these unequivocal representations that the Court relied upon for "Rio Tinto's disclaimer of privilege" in its September 10 Order. Rio Tinto could not have been clearer on this point.

Rio Tinto's suggestion, in the face of these clear representations, that its "disclaimer of privilege" did not include communications by it or its counsel with the investigators is baseless. The Court correctly understood Rio Tinto's representations – indeed, the very documents produced by Rio Tinto (which were in Rio Tinto's files) were communications with Rio Tinto and its lawyers. Rio Tinto cannot selectively disclose some communications and not disclose others. In resisting discovery, Rio Tinto has argued that while it must show conduct that was "diligent as an investigation" and therefore must "turn[] over the facts of that investigation" (Nov. 3, 2014 Tr. 44:9-17), the *only* documents relevant to that issue are those showing "what they [the investigators] actually told Rio Tinto" and that "[w]hat investigators hypothetically may have known but did not report to Rio Tinto . . . is irrelevant." (Dk. 318 at 6.) Vale disagrees the relevance is so limited, but regardless Rio Tinto cannot be heard to argue that what it previously argued were the *most* relevant communications – and those on which it relied for relief for its equitable tolling claim and expressly disclaimed to be privileged – are now somehow shielded from discovery.

Consistent with this, the subject matter of the examination of each witness is that witness's "investigation . . . *including* the scope and timing of its engagement, who it interviewed, what documents it reviewed, its findings and conclusions," *e.g.* Schedule B of the Sealed Order re: Africa Risk Consulting (emphasis supplied), and it is questions "related to" that subject matter that the High Court Orders permit, *id.* ¶ 7(F). The investigators' communications with Rio Tinto regarding their investigations are evidently within the scope of this subject matter, which is why the documents covered by each Letter of Request specifically include "the documents shared with Rio Tinto in connection with the Reports" of each investigator. *See, e.g.*, Sealed Order re: Africa Risk Consulting, Schedule A(e) (as amended by June 29, 2015 Sealed Order) (requiring production of "[c]orrespondence between You [ARC] and Rio Tinto concerning Your work done up to and following the Reports, correspondence relating to queries raised by Rio Tinto and documents provided to them (whether or not at their request) relevant to the work done or to be done"). Since the purpose of these examinations is to find out not only what the investigators did, but what they communicated to Rio Tinto about their work, the limitation that Rio Tinto would now seek to read into the scope of their examinations would significantly undermine the usefulness in obtaining evidence regarding what Rio Tinto knew, when it knew it, and what it did (or didn't do) with that information (including what further inquiries it made or declined to make), which is at the heart of its claim of equitable tolling and fraudulent concealment.

That, unfortunately, seems to be what Rio Tinto is trying to accomplish by this meritless re-argument motion. A great deal of time and expense have already been invested in preparing for the examinations of these witnesses, and Rio Tinto should not be permitted to disrupt them by asserting privilege objections regarding its communications with the investigators about their work.

Hon. Andrew J. Peck, p. 3

For the same reason, there is no basis for Rio Tinto to limit the section of this Court's order regarding the production of its or its counsel's communications with the investigative firms about this work.  As set forth above, Rio Tinto's disclaimer of privilege applies to these communications, which are specifically required to be produced by the High Court's Sealed Order.  Just as Vale is permitted to examine the investigators on these communications because Rio Tinto has disclaimed any privilege regarding them, Rio Tinto is not entitled to belatedly retract that disclaimer and withhold documents on the basis of privilege.  Equally, Rio Tinto has no basis at this late hour for limiting that production to the custodians for its general document production.  The Court's orders have been clear – Rio Tinto has been obligated to produce the investigator documents from wherever they might reside.  *See, e.g.*, Jan 13, 2015 Tr. 52:18-19 ("Let's expedite the production of those reports.  Presumably, your client knows where to find those very quickly."); June 1, 2015 Tr. 47:1-5 ("Produce *whatever you have* that you haven't produced with respect to the investigators" (emphasis added)); June 22, 2015 Tr. 11:1 (ordering production of investigator invoices kept "on a separate server," without regard to predictive coding deadline); *see also* Dk. 285 (Vale letter noting that "the Court ordered Rio Tinto to produce all investigative documents – regardless whether they were generated from predictive coding" of custodial documents); Dk. 286 (Rio Tinto response that Vale raised a "non-issue" because "Rio Tinto *already* has agreed" to Vale's request).  Those rulings have derived logically from the facts that (1) at the time the list of custodians was agreed upon, Rio Tinto was withholding the identities of the persons at Rio Tinto who communicated with the investigators on the invalid basis of attorney-client privilege (an objection the Court later overruled); and (2) unlike with respect to the other document requests which reached a broad group of custodians, the request with respect to investigator documents was directed to the limited and discrete group of Rio Tinto employees who communicated with the investigators and to the firm files of Rio Tinto.  Rio Tinto knows who those persons are, the documents will be both in hard copy and in electronic form, and there is no grounds for not producing all of them.  Indeed, Vale understands that Rio Tinto has logged those communications for purposes of its privilege log.

We emphasize that we have no intention of asking questions about the substance of *post-complaint* communications between Rio Tinto and Messrs. Brown and Leighton (or with any other investigator),[1] even though it is not clear that the latter has even been retained by Rio Tinto for post-complaint work (nor, indeed, from Rio Tinto's letter, is it clear that Mr. Brown has been retained for post-complaint work on this action – *compare* Rio Tinto letter at 3 ("Quinn Emmanuel subsequently engaged Mr. Brown for work in connection *with this litigation*") (emphasis in the original) *with id*. n. 5 ("Neither Dangate nor Mr. Brown have done any work for Rio Tinto since 2013").  But the utility of the examinations and the premise on which the Letters of Request were issued in the first place would be substantially undermined if Rio Tinto were permitted to impede the witnesses from giving evidence regarding their communications with Rio Tinto about the very investigations that are the subject matter of the Letters of Request.  Rio

---

[1] We would of course be entitled to ask *whether* any such communications occurred, which is not privileged, and could be relevant to issues of witness hostility or bias if, for instance, Rio Tinto met with them to discuss their evidence, which it has refused to permit us to do in the cases of Messrs. Brown and Leighton.  Likewise, given the confusion in the record, we would be entitled to ask them or the other witnesses *whether* they are currently doing work for Rio Tinto.  In that connection, Vale is entitled, as the Court ordered, to see the engagement letters for any such current work, if they exist.

Hon. Andrew J. Peck, p. 4

Tinto's effort to revisit this less than two weeks before the examinations will be conducted in London should be summarily rejected.[2]

                                                Respectfully submitted,

                                                <u>/s/ Lewis J. Liman</u>

                                                Lewis J. Liman

cc:    All counsel of record

---

[2] Rio Tinto suggests that its disclaimer of privilege somehow does not extend to communications made after April 30, 2010, but before the filing of its complaint. Again, Rio Tinto has shown no basis for this arbitrary limitation. From the time of its very first ruling on the subject in December 2014, this Court has rejected Rio Tinto's argument, and ordered the production of investigative materials that post-date April 30, 2010, which many of them do. *See* Dec. 9, 2014 Tr. 26 (ordering discovery of Rio Tinto's investigation "throughout the entire time period, with primary emphasis in terms of priority on 2008 to April of 2010, but I'm not cutting it off there."). Similarly, the High Court's Sealed Order contains no such time limitation, but on the contrary, permits examinations of the witnesses regarding all aspects of their investigation, and specifically requires production of correspondence with Rio Tinto "done up to and following the Reports."