14-2947(L)
*Madison 92nd Street Associates v. Courtyard Management Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 15th day of September, two thousand fifteen.

Present:      ROBERT A. KATZMANN,
                         *Chief Judge*,
              PETER W. HALL,
              RAYMOND J. LOHIER, JR.,
                         *Circuit Judges.*

_____

MADISON 92ND STREET ASSOCIATES, LLC,

    *Plaintiff-Appellant*,

    - v -                                                                  Nos. 14-2947-cv (Lead)
                                                                                  14-2954-cv (Con)

COURTYARD MANAGEMENT CORPORATION, MARRIOTT
INTERNATIONAL, INC., HOST HOTELS & RESORTS, INC.,
DIAMONDROCK HOSPITALITY CO., THE NEW YORK HOTEL
AND MOTEL TRADES COUNCIL, AFL-CIO,

    *Defendants-Appellees*.

_____

For Plaintiff-Appellant:

        SEAN F. O'SHEA (Michael E. Petrella, *on the brief*), O'Shea
        Partners LLP, New York, New York.

1

For Appellees *Courtyard Management Corporation*, *Marriott International, Inc.*:

>CHRISTOPHER P. HALL (Stephen P. Davidson, *on the brief*), DLA Piper LLP, New York, New York.

For Appellee *Host Hotels & Resorts, Inc.*:

>RICHARD M. GOLDSTEIN (Kevin J. Perra, Jordan B. Leader, Boris Zeldin, *on the brief*), Proskauer Rose LLP, New York, New York.

For Appellee *DiamondRock Hospitality Co.*:

>JAMES P. ULWICK (Jean E. Lewis, *on the brief*), Kramon & Graham, P.A., Baltimore, Maryland; Jeffrey Schreiber, Meister Seelig & Fein LLP, New York, New York.

For Appellee *The New York Hotel and Motel Trades Council, AFL-CIO*:

>BARRY N. SALTZMAN (Danya Ahmed, *on the brief*), Pitta & Giblin LLP, New York, New York

Appeal from the United States District Court for the Southern District of New York (McMahon, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the order of the district court is **AFFIRMED**. The appellant, Madison 92nd Street Associates, LLC ("Madison"), appeals from the district court's July 28, 2014 order dismissing its complaint for failure to state a claim. Madison's complaint asserts that the defendants, Courtyard Management Corporation ("Courtyard"), Marriott International, Inc. ("Marriott"), The New York Hotel and Motel Trades Council AFL-CIO ("the Union"), Host Hotels & Resorts, Inc., and DiamondRock Hospital Co., struck a corrupt bargain to unionize Madison's hotel ("the Hotel") in exchange for safeguarding other Marriott hotels from unionization. We assume the parties' familiarity with the relevant facts, the procedural history of the case, and the issues presented for review.

We begin with Madison's RICO claims, which the district court dismissed as untimely. The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (per curiam). "The first step in the statute of limitations analysis is to determine when [plaintiffs] sustained the alleged injury for which they seek redress." *Id.* at 59. The second step is to determine when they discovered or should have discovered that injury. The four-year statute of limitations period begins at that point. *Id.*; *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 524 (S.D.N.Y. 2007) ("The first step in the statute of limitations analysis is to determine when Plaintiff sustained the alleged injuries for which it seeks redress.").

Under this two-step framework, Madison's RICO claims are untimely. First, Madison alleges that it was injured by the unionization of the Hotel workforce and the resultant higher labor costs. Accordingly, Madison's injury took place, at the latest, when it started paying higher labor costs in "late 2006-early 2007." Appellant's Br. 51. Second, Madison received actual notice of this injury no later than 2007 when "Courtyard finally admitted . . . that the Hotel had secretly been made a union shop." J.A. 64. At the latest then, Madison's claim accrued in 2007 and expired four years later, in 2011. Because Madison did not assert its RICO claims until January 2013, these claims are untimely.

Madison resists this conclusion on three grounds, none of them persuasive. First, Madison contends that its claims should be equitably tolled because the defendants concealed the alleged conspiracy. "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully

3

concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) the plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999) (internal quotation marks omitted). Here, the district court denied equitable tolling because, among other reasons, Madison failed to exercise due diligence in uncovering the alleged racketeering. We review this determination only for abuse of discretion, *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003), and find none here. As the district court pointed out, Madison repeatedly learned information that conflicted with its purported understanding about how Courtyard and Marriott were going to operate the Hotel. Among other things, Madison learned (1) in 2003, that Marriott was a signatory of the card-check agreement, J.A. 84; (2) in 2005, that the Hotel would "become union[ized] 'at some point . . . rather soon after hotel opening,'" J.A. 205; (3) in 2007, that the Hotel had actually unionized, J.A. 64; and (4) in 2006 and 2007, that headcount was well above the levels predicted by Marriott and Courtyard, J.A. 69. Despite these "storm warnings," *see, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 412 (2d Cir. 2008), Madison never seriously investigated its potential claims beyond simply admonishing Courtyard and Marriott to keep headcount down and labor costs low. Because Madison did not exercise adequate due diligence, the district court did not abuse its discretion by declining to equitably toll Madison's claims.[1]

---

[1] The closest that Madison comes to adequately pleading due diligence is its allegation that on April 2, 2009, it sent Courtyard an email "requesting copies of all side letters, agreements or understandings between Marriott and the Union relating to the Hotel." J.A. 84. Even assuming that Madison's email requesting more information constitutes due diligence, that diligence would not render Madison's RICO claims timely. Madison sent the email on April 2, 2009, and learned of the entire "secret agreement" six months later in October 2009 when it subpoenaed the Union. At most, then, Madison's claims could be tolled for the six months between April 2009 and October 2009. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling requires a party to pass

Second, Madison asserts that it suffered multiple injuries as a result of the defendants' scheme, each of which yielded a separately actionable RICO claim. But two of the "separate" injuries alleged by Madison—the foreclosure on the Hotel by GE Capital and its subsequent sale at auction—are not "new and independent injur[ies]," as would be required to restart the limitations clock. *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). Instead, they are, as Madison expressly admits, *see* Appellant's Br. 51, direct consequences of the Hotel's high labor costs, which Madison asserts as its primary RICO injury and concedes first accrued in 2006 and 2007. By contrast, Madison's other asserted injury—alerting the Hotel workers in advance of layoffs so that they could claim benefits—may be "new and independent," but it is not an actionable injury. For one, Madison has never alleged that the workers' disability claims were fraudulent or otherwise illegitimate. If the Hotel owed workers the benefits under the relevant labor laws or agreements, then Madison did not suffer an injury when the workers claimed those benefits—instead, it was simply paying benefits that it was already obligated to pay. For another, even if Madison had alleged that these claims were fraudulent, the defendants' conduct would not be the proximate cause of Madison's harm. *See Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atl. Corp.*, 305 F.3d 89, 100 (2d Cir. 2002), *rev'd and remanded on other grounds*, 540 U.S. 398 (2004) ("[A] plaintiff must establish that the defendant's conduct was a proximate cause of its injury in order to have standing to bring a RICO action."). Instead, the fraudulent disability claims—made by employees who Madison has never included in the alleged RICO conspiracy— would be independent illegal acts that cut off the chain of causation. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 n.5 (2d Cir. 2006) ("[I]t is usually easier for intervenors to break the

---

with reasonable diligence *through the period it seeks to have tolled*." (emphasis added)). Madison's RICO claims, however, are more than six months untimely.

5

chain of causation in RICO than it is at common law." (alterations omitted)). Accordingly, Madison cannot make its claims timely by asserting multiple separate RICO injuries.

Finally, Madison asserts that its RICO claims relate back to its original state court complaint, first filed on September 4, 2009. At the outset, Madison has forfeited its relation-back argument because it did not raise the argument until its reply brief. *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."). But even if we were to consider the issue, Madison's RICO claims do not relate back. Because Madison's amendment of its complaint added new parties, including Marriott and the Union, the amended complaint must satisfy Fed. R. Civ. P. 15(c)(1)(C), which requires, among other things, that the "additional defendant must have been omitted from the original complaint by mistake." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001). To satisfy this requirement, the new defendant must either have known "or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). Here, however, the new defendants could not have known that they were the proper defendants in the initial state court action, which asserted garden-variety claims for hotel mismanagement and fraud. The Union, for instance, could not have reasonably believed that Madison intended to assert claims for "Breach of the Management Agreement" or "Breach of Fiduciary Duty" against them, rather than against Courtyard, when the Union had no contract with or fiduciary duty to Madison. *See* J.A. 223, 229. Accordingly, because the new defendants could not have known that they were the proper defendants in the initial state court action but for a mistake, Madison's later RICO claims do not relate back to its initial state court complaint, and are untimely.

Turning to Madison's antitrust claim, Madison asserts that the defendants have violated both the per se rule and the rule of reason. *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95–96 (2d Cir. 1998). As to Madison's per se theory, the district court correctly rejected Madison's claim because the alleged agreement between the defendants was at most a vertical agreement between buyers and sellers at different levels of the market, rather than a horizontal agreement between competitors. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) ("Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints."). Vertical agreements are usually inappropriate for per se treatment, and instead are "generally judged under the 'rule of reason, which requires a weighing of the relevant circumstances of a case to decide whether a restrictive practice constitutes an unreasonable restraint on competition.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)). This is particularly true here, where the scheme alleged by Madison is not a garden-variety price-fixing conspiracy but is instead an unusual agreement to manipulate a portion of the New York City hotel labor market. Madison cites no cases involving similar facts, counseling against application of the per se rule, which is "appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007) (citation omitted).

Madison's antitrust claim also fails under the rule of reason. "[R]ule of reason analysis . . . seeks to determine if the alleged restraint is unreasonable because its anticompetitive effects

7

outweigh its procompetitive effects." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (internal quotation marks omitted). The first step in evaluating a rule of reason claim is to ask whether the complaint "allege[s] a plausible relevant market in which competition will be impaired." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011). "The relevant market must be defined 'as all products reasonably interchangeable by consumers for the same purposes, because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level.'" *Id.* (quoting Geneva Pharm Tech. Corp. v. Barr Labs Inc., 386 F.3d 485, 496 (2d Cir. 2004)). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (alteration and internal quotation marks omitted).

Here, the complaint defined the relevant market as "[l]abor services provided by non-managerial Hotel employees working or seeking work in Marriott-managed hotels . . . in New York City." J.A. 112. Because this alleged market is limited to labor at Marriott-managed hotels, however, it cannot plausibly be said to "encompass all interchangeable substitute products." *Chapman*, 546 F.3d at 238. If other, non-Marriott-managed hotels in New York City suddenly doubled the wages they paid to their employees, it is beyond doubt that Marriott hotels would have to increase their wages to retain any employees. Thus, although normally "market definition is a deeply fact-intensive inquiry" that is inappropriate for resolution on a motion to dismiss, *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001), here, Madison's attempt to

carve up the New York City hotel labor market into an artificially small "Marriott-only" submarket is sufficiently "implausible," *id.* at 204, to render dismissal appropriate at the pleading stage.

We have considered Madison's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

        FOR THE COURT:
        CATHERINE O'HAGAN WOLFE, CLERK