**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
**mikelyle@quinnemanuel.com**

September 18, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:     **Rio Tinto v. Vale, et al., Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)**

Dear Judge Peck:

On behalf of Plaintiff Rio Tinto, we write to raise an issue with respect to Vale's privilege log, the final, revised version of which is due September 28.  We write separately from the joint letter and in advance of the September 24 conference, seeking an order now so that Vale has adequate time to serve a revised log on September 28.  Specifically, we request that the Court order Vale to revise its log to include individual document entries for documents that fall within discrete subject areas that are central to Rio Tinto's claims and Vale's defenses, and that, as of now, have only been logged in broad categories that obscure the information necessary to evaluate the privilege asserted.

*Both Vale and Rio Tinto Agreed to Provide Additional Detail to Initial Privilege Logs, but only Rio Tinto has Lived up to that Agreement.*  Last March, Vale and Rio Tinto expressly agreed that they could, after reviewing each other's categorical privilege logs, ask for revisions in the form of document-by-document entries concerning certain categories of withheld documents.  *See* Ex. 1 (3/27/15 Reents email to Lyttle) (agreeing that a party may seek more granular detail "sufficient to allow for a fair evaluation of the claim of privilege" with respect to particular categories of privileged documents).  For example, Vale asked earlier this year that Rio Tinto revise its *entire* categorical privilege log for its BHP Production to provide more granularity.  Rio Tinto abided that request (at great expense), and further confirmed at that time that Vale would reciprocate and adhere to the same standard demanded of Rio Tinto when Vale eventually produced its own log.  Vale pledged its commitment:  "We can confirm that we will adhere to the same legal standards in our privilege logs we have asked Rio Tinto to adhere to."  *See* Ex. 2 (4/13/15 Reents email to Kaplan).  Yet, Vale has now backtracked.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Following the exchange of initial privilege logs on July 30, 2015, both Vale and Rio Tinto asked each other to make revisions to their logs - specifically, to provide revised, document-by-document entries for certain categories of withheld information.  Vale asked that Rio Tinto individually log documents that fell within its "investigation" categories.  Likewise, Rio Tinto asked that Vale individually log documents that fell within its due diligence, joint venture negotiations, and communications with the Government of Guinea categories.  The requests were commensurate in scope and the burdens the same.  But only Rio Tinto followed through, serving a revised, supplemental log on September 11, 2015 with just under *2,000* individual entries.  In stark contrast, Vale only revised its descriptions for *two* documents.[1]  Vale has not lived up to its side of the bargain, and, as a result, Rio Tinto is without basic factual information that it is entitled to know under the Federal Rules about Vale's purportedly privileged documents.

***Vale's Log Obscures Even Basic Facts About Vale's Claim of Privilege Over its Due Diligence into BSGR.***  Vale has represented to the Court that it conducted "standard FCPA diligence" and received various "reps, warranties, personal certifications and the like that [BSGR and Steinmetz] had engaged in no such [illegal] activity," and "[t]hat's why Vale entered into the joint venture."  Dkt. No. 38, (6/9/14 Hr'g Tr.) at 8:16-21.  Vale also has represented that it was not until "years later" that it learned of any illegal conduct, when it was discovered by the Government of Guinea.  *Id.*

Vale's limited production to date, however, supports Rio Tinto's allegations and contradicts Vale's representations.  The Amended Complaint alleges that one purpose of the BSGR/Vale joint venture was to provide the Defendants' illicit partnership with a façade of legitimacy that they used to continue concealing their conspiracy for years.  *See* Am. Compl. ¶¶ 15, 108-109.  For example, the Ernst & Young ("E&Y") due diligence documents we have seen so far show that from the earliest days of the joint venture, the defendants were using it to help conceal their RICO conspiracy.  Indeed, when E&Y reported to Vale that its diligence in connection with the joint venture showed that BSGR posed a high risk of bribery and corruption, Vale insisted that E&Y alter its report to remove that conclusion.  This evidence shows that Vale was actively covering up BSGR's corruption in aid of the conspiracy as alleged in the Amended Complaint.  *Id.*  Rio Tinto is entitled to see if E&Y's ongoing diligence for the joint venture into at least late May 2010 included similar reports of corruption, bribery or other misdeeds by BSGR that Vale also sought to cover up.

Moreover, E&Y's conclusion could not possibly have come as a surprise to Vale, who by the fall of 2008 was well aware of BSGR and Steinmetz's reputation for bribery and corruption.  Rio Tinto told Vale as much during the parties joint venture negotiations, *see* Dkt No. 83 at ¶ 78, and Vale itself had reports by October 2008 that BSGR was acting improperly in trying to gain

---

[1]  Rio Tinto will spare the Court from all the back and forth between the parties leading up to Rio Tinto's service of its supplemental log.  But Rio Tinto was surprised (if not purposely misled) when Vale did not provide a supplemental log on September 11, despite Rio Tinto's confirmatory email from September 8 that "[Rio Tinto] understand[s] that Vale has agreed to individually log its diligence-related documents so that Rio Tinto can fairly evaluate both the privilege claim and the broader waiver," to  which Vale never responded.

rights at Simandou.  That impropriety was later substantiated in December 2008 when Vale's in-country manager reported to Vale's Eduardo Ledsham, the Vale head of exploration who played an integral role in the BSGR joint venture negotiations (and a key custodian whose documents have been destroyed), that Steinmetz was seen flying into Guinea with bags and envelopes likely containing cash.  It is absolutely critical that Rio Tinto be permitted to explore to what extent this knowledge was shared either within Vale or with its advisors during the due diligence process, and Vale should not be permitted to hide such key facts behind a vague categorical description.

Rio Tinto has these few documents, but nothing more.  Vale is doing all it can to not have to produce any more, including documents about why, when or how this change was made.  Instead, Vale claims these documents are privileged and has lumped them together with a slew of documents in its categorical privilege log, obscuring them behind the vague categorical descriptions such as documents involving "legal advice" regarding "legal due diligence for Project Hills," "negotiations with BSGR over joint venture," "analysis of Guinean Mining Code and Simandou mining rights," "communications with the Government of Guinea concerning Simandou," and "joint venture structure and interpretation of joint venture agreements."  *See* Vale's Initial Privilege Log at 3, 4, 6, 7, 8, 9.[2]  These ambiguous categories encompass almost 1,600 documents spanning almost five years, from September 29, 2009 through April 30, 2014.[3]  Indeed, Vale's current privilege log makes no mention of bribery, corruption, FCPA, or any other topics that the diligence clearly explored.  Thus, a non-privileged, purely factual discussion illustrating knowledge that Rio Tinto's Simandou mining rights were obtained through means of bribery and corruption by BSGR could be masked by any of these categorical descriptions.  This leaves Rio Tinto completely unable to identify which documents are relevant to Vale's due diligence on BSGR, let alone why those documents are privileged.

Importantly, there is good reason to think these due diligence documents may not be privileged at all.  *Vector Capital Corp. v. Ness Techs., Inc.*, 2014 WL 171160, at *2 (S.D.N.Y. Jan. 9, 2014) (emphasis added) ("[The] fact-acquisition process in the course of a business transaction is no more protected by privilege when conducted by an attorney than if conducted by an accountant, engineer or head of a business unit. *The factual information presented is not privileged merely by the use of an attorney as a conduit for the information.*" (emphasis added)); *Federal Housing Fin. Agency v. UBS Am. Inc.*, 2013 WL 1700923, at *2 (S.D.N.Y. Apr. 16, 2013).  Even if E&Y worked alongside Clifford Chance, emails produced by Vale show that E&Y's work was overseen directly by Vale—not its lawyers at Clifford Chance.  Yet Vale's privilege log leaves no way to evaluate even threshold questions like whether a Clifford Chance lawyer (or any lawyer at all) is the author or recipient of *every* purportedly privileged communication with E&Y or other communications regarding Vale's due diligence on the log, or whether an attorney is absent from particular communications, or merely copied (which does not always mean a communication is privileged).

---

[2]   Vale's initial privilege log is marked "CONFIDENTIAL" and therefore Rio Tinto cannot file it as an exhibit on ECF.

[3]   Vale curiously logged an unknown number of documents "as legal due diligence" for a time period spanning eighteen months after the transaction itself occurred (through October 2011).

Additionally, these same documents suggest that Vale's good faith defense is an after-the-fact contrivance.  This is significant because even if Vale's claim that it had no contact with BSGR until 2009 were true (it is not, as Vale's own document production, *inter alia*, demonstrates), these materials show that Vale knew full well it was entering a criminal conspiracy and is therefore liable for all crimes committed in furtherance of the conspiracy, irrespective of when they occurred.  *See, e.g.*, *United States v. Bengis*, 783 F.3d 407, 413 (2d Cir. 2015) ("In general, one who joins an existing conspiracy takes it as it is, and is therefore held accountable for the prior conduct of co-conspirators.") (citation and quotation marks removed).  What Vale knew and when is thus critical to rebutting its fabricated good faith defense, and Vale cannot conceal these materials by cloaking them in vague categorical privilege log descriptions.

***Other Categories Require Additional Detail.***  There are two other categories of documents on Vale's log for which Rio Tinto requires additional detail:  documents involving "legal advice" regarding "negotiations with Government of Liberia regarding Liberian transport solution" and "negotiations with Rio Tinto Simandou operations."  *See* Vale's Initial Privilege Log at 11.  These two categories encompass almost 600 documents spanning over four years, from before the joint venture was announced (March 2010) through the filing of Rio Tinto's complaint (April 30, 2014).  The timing of the documents categorized as "negotiations with Rio Tinto Simandou operations" is particularly troubling given that Rio Tinto and Vale were not even in negotiations regarding Simandou in the Spring of 2010, potentially raising the very real risk that Vale is hiding documents on its categorical privilege log relating to its sharing of Rio Tinto's confidential Simandou information with BSGR or alternatively, seeking advice from its advisors about the same during the diligence process.  To be clear, Rio Tinto is not seeking a document-by-document log of all documents within these two categories, but rather only a subset.[4]  Rio Tinto needs more information about these documents in connection with its claims that Vale utilized Rio Tinto's proprietary data to steal Rio Tinto's mining rights.  *See, e.g.*, Am. Compl. ¶¶ 160-161.  To the extent these categories discuss Rio Tinto's proprietary information obtained via the data room and Vale's plans to use that information in furtherance of the conspiracy, Vale should not be permitted to obscure this factual information through obtuse categorical descriptions.  Vale's privilege log on these topics leaves Rio Tinto to guess how lawyers were involved in advising on Vale's use of Rio Tinto's information.[5]

---

[4]  For the Liberian transport solution, Rio Tinto is seeking granular detail for documents pre-dating the joint venture announcement, and for the Rio Tinto Simandou operations, Rio Tinto is seeking more details on documents dated through October 30, 2012 (when the Guinean Government announced its investigation into Vale-BSGR), when Vale could not possibly have had a common interest privilege with VBG and/or BSGR.

[5]  To be clear, this case is about Vale's use of Rio Tinto's information in furtherance of the conspiracy, not just its initial theft of that information.  Vale's use of Rio Tinto's information to advance the conspiracy led to a separate RICO injury when Defendants' extensive campaign of bribery and threats against Rio Tinto's remaining mining rights to Simandou Blocks 3 and 4 left Rio Tinto with no alternative but to relinquish its claims to Blocks 1 and 2 as part of a settlement with the Guinean Government in April 2011, and continued up through April 2014, when the Government of Guinea decided to strip VBG of its mining rights.

Accordingly, Rio Tinto seeks an order requiring Vale to provide a document-by-document description of the following sets of documents when it serves its final privilege log on September 28, 2015:

- Documents relating to due diligence of BSGR/Project Hills or negotiations with BSGR over joint venture (including but not limited to Index Nos. 510-522, 537-559, 1599-1788, 1877-2242, 2337-2849).

- Documents concerning legal advice regarding the joint venture structure and interpretation of joint venture agreements dated January 1, 2010 or later (including but not limited to any document dated January 1, 2010 or later within Index Nos. 1779-1876).

- Documents concerning legal advice regarding any analysis of Guinean Mining Code and Simandou mining rights or communications with Government of Guinea concerning Simandou, that predate October 30, 2012 (including but not limited to any documents that pre-date October 30, 2012 within Index Nos. 819-881 and 882-1273).

- Documents related to legal advice regarding negotiations with the Government of Liberia regarding the Liberian transport solution that pre-date the April 30, 2010 Joint Venture announcement with BSGR (including but not limited to any documents that pre-date April 30, 2010 within Index Nos. 3120-3629).

- Documents concerning legal advice regarding  negotiations with Rio Tinto or Rio Tinto's Simandou operations that pre-date October 30, 2012 (including but not limited to any documents that pre-date October 30, 2012 within Index Nos. 3634-3718).

To the extent that Vale withheld any documents as privileged that fall into these categories after it served its initial privilege log, those documents should be individually logged as well.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle