**quinn emanuel** trial lawyers | washington, dc

777 Sixth Street NW, 11th Floor, Washington, District of Columbia 20001-3706 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8166**

WRITER'S INTERNET ADDRESS
mikelyle@quinnemanuel.com

September 28, 2015

Hon. Andrew J. Peck
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

**Re:   Rio Tinto v. Vale, et al., Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)**

Dear Judge Peck:

As Your Honor requested at the September 24 conference, we write on behalf of Rio Tinto to apprise the Court on Rio Tinto's efforts to resolve the outstanding discovery disputes between Rio Tinto and Vale relating to various reports and communications that are being withheld as privileged.

The day after the last conference, Rio Tinto phoned Vale to propose a compromise for production under Rule 502(d). Rio Tinto proposed that Vale produce materials under Rule 502(d) related to the Nardello Report and Ernst & Young's ("E&Y") due diligence concerning Simandou that have been withheld as privileged. In exchange, Rio Tinto offered to produce communications with its professional investigators that have been withheld for privilege. Rio Tinto explained that its offer of compromise did not include communications with Messrs. Landau and Fujihara because they were not professional investigators, but rather consulting experts[1] whose facts and opinions are protected under Rule 26(b)(4)(D).[2] Since Messrs. Landau

---

[1] Messrs. Landau and Fujihara were retained by outside counsel under separate engagement letters to advise and educate outside counsel on operations, business practices, and industry standards for mining companies in Brazil in connection with rendering legal advice to Rio Tinto regarding a potential legal action against Vale, BSGR and Steinmetz.

[2] Work performed by consulting experts, especially those hired by outside litigation counsel, is plainly shielded from discovery in this jurisdiction, pursuant to Fed. R. Civ. P. 26(b)(4)(D), the *Kovel* doctrine, and a long line of cases. *William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 361 (S.D.N.Y. 2009) (Peck, J.) (recognizing that under Fed. R. Civ. P. 26(b)(4)(D) work product protection extends to "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."); *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123 (S.D.N.Y. 2014) ("Rule 26(b)(4)(D) protects disclosure of 'facts known or opinions held' by consulting experts."). Indeed, under Rule 26 and related case law, Rio Tinto was not even
(footnote continued)

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

and Fujihara are consulting experts, and not professional investigators, Rio Tinto believed its offer of compromise was consistent with what the Court envisioned at the hearing, 9/24/15 Hr'g Tr. 9:1-12 (the scope of the agreement should encompass "[the Nardello] report on the Vale side . . . and all the EY stuff on the Vale side and all the communications with the investigators on the Rio Tinto side."), and what Vale had accepted, *id*. at 9:13 ("We would accept that."). Vale's counsel took Rio Tinto's offer under advisement and promised a response.

By email yesterday, Vale rejected Rio Tinto's offer and attempted to *limit* its own 502(d) production while simultaneously *expanding* Rio Tinto's 502(d) production. M. Karlan Email to E. Lyttle (9/27/2015) (attached as Ex. A). As the Court can see in Vale's email, Vale wanted to limit its production to final reports only—*i.e.*, the final Nardello Report and the final E&Y reports. And Vale proposed to still withhold as privileged drafts of the reports and relevant communications about them.[3] Rio Tinto believed these limitations were inconsistent with Your Honor's vision in framing the parties' exchange of purportedly privileged material to include, *e.g.*, "all the EY stuff on the Vale side." *See* 9/24/15 Hr'g Tr. 9:5; *id*. at 20:7 (in response to Rio Tinto's request for communications with E&Y through May 30, 2010, the Court explaining to Rio Tinto's counsel that "You are getting EY documents" under any Rule 502(d) agreement).

At the same time, Vale's response sought to *expand* Rio Tinto's 502(d) production by adding four more professional investigative firms[4] and the consulting experts. Rio Tinto is amenable to adding the four extra investigative firms because it believes them to be within the spirit of the deal Your Honor envisioned and communicated this to Vale on a call today. And Rio Tinto offered today to include the communications with Messrs. Landau and Fujihara *prior* to their retention by Weil Gotshal. But Rio Tinto cannot agree to produce communications with Messrs. Landau and Fujihara *after* their engagement by Weil Gotshal for the reasons discussed above. Vale points to the Court's statements at the last hearing that these consulting experts hired by outside counsel are the "same" as professional investigators Rio Tinto hired for its factual investigation. But right after Your Honor made that statement, and following indications from Rio Tinto's counsel that they are not the same, Your Honor instructed the parties to reach agreement given the press of time and the large number of issues before the Court. 9/25/14 Hr'g

---

required to identify Messrs. Landau and Fujihara in this matter, but did so in an effort to be as transparent as possible. *See Williams*, 300 F.R.D. at 122 (the "identity of a non-testifying expert is protected from disclosure under Rule 26(b)(4)"). Just as Rio Tinto is not permitted (nor is it asking) for discovery into Vale's consulting experts, Vale is not permitted to obtain that discovery.

[3] Rio Tinto will not burden the Court with further briefing on why Vale should not be permitted to shield draft reports and external communications with its investigators and due-diligence advisors. *See* Dkt. Nos. 256, 268 (Nardello); Dkt. Nos. 364 (E&Y) (incorporated herein by reference). These documents are plainly relevant and stand to inform, *inter alia*, how Vale itself had a hand in drafting and scrubbing final reports so as to give the veneer that Vale knew nothing about BSGR's illegal activities before entering into the Vale-BSGR joint venture.

[4] Vale's proposal added Executive Research Associates, BTG, Kroll and Africa Risk Consulting in addition to Livingstone and Aeneas that were discussed at the September 24 hearing. Because Rio Tinto already has produced hundreds of documents totalling thousands of pages of communications with the investigators, including documents with attorney on them because they are factual in nature, Rio Tinto is not currently withholding any communications with these four firms as privileged. But to the extent privileged documents involved in this agreement are located at a later date, Rio Tinto would produce them under this agreement.

Tr. 8:22-9:12. Your Honor simply did not have an opportunity at the hearing to review the engagement letters or dig deeper into the issues with Messrs. Landau or Fujihara.

The parties met and conferred again late this afternoon, at which time Rio Tinto agreed to (1) include the communications with Messrs. Landau and Fujihara *prior* to their retention by Weil Gotshal, (2) add the four extra investigative firms Vale wants, and (3) further narrow what it was asking Vale to produce (specifically to exclude E&Y-related communications that were not addressed to, sent by, or copied to a Clifford Chance attorney). M. Bonanno Email to M. Karlan (9/28/15) (attached as Ex. B).

Vale's counterproposal, received just before this letter was filed, is flawed in two material respects. *See* M. Karlan Email to M. Bonanno (9/28/15) (attached as Ex. C). *First*, it imposes improper temporal and substantive restrictions on the E&Y-related materials that would deny Rio Tinto the bulk of E&Y-related production this Court envisioned and Rio Tinto needs as part of any Rule 502(d) deal. Temporally, Vale's proposal restricts the date range to between April 27, 2010 and May 31, 2010. But we know that Vale was working with E&Y *before* April 27, 2010 and that E&Y's initial projects prompted additional work by E&Y's Fraud Investigation Team under the April 27 engagement letter. *See* VALE-RT_00146534. And substantively, even though Rio Tinto already has agreed to narrow its request for E&Y-related communications, Vale's proposal now seeks to broadly carve out internal communications within Vale about E&Y's reports relating to bribery. The harm from Vale's approach is not speculative: Rio Tinto understands that Vale is withholding as privileged internal communications within Vale about the E&Y bribery reports, even if they do not have attorneys on them, because it considers the entirety of E&Y's work as privileged. Because Vale has not yet produced its privilege log with individual entries that the Court has ordered it to provide, Rio Tinto is unable to assess the scope of this issue. But it seems safe to assume that Vale's proposal does not give Rio Tinto "all the EY stuff on the Vale side." 9/24/15 Hr'g Tr. 9:5. *Second*, Vale is still seeking communications with the consulting experts unquestionably protected by Rule 26(b)(4)(D).

For the Court's convenience, Rio Tinto has set out below the specifics of Rio Tinto's latest proposal, and respectfully requests that the Court order the parties to comply with its terms. Pursuant to Fed. R. Civ. P. 502(d) the parties shall produce from the agreed-upon custodians:

*Vale*

1. All versions of the report, including drafts, E&Y prepared for Vale pursuant to its April 27, 2010 engagement letter, which explicitly called for E&Y to "report back" on issues concerning BSGR bribery or corruption, *see* VALE-RT_00024658, at -660.

2. All versions of other reports, including drafts, E&Y prepared for Vale concerning Simandou that relate to BSGR bribery, corruption, or other misconduct.

3. All communications concerning the E&Y reports referenced above in #1 that were not addressed to, sent by, or copied to a Clifford Chance attorney.

3

4. The April 30, 2010 report prepared by Nardello & Co.

*Rio Tinto*

1. All communications between Rio Tinto or its counsel and the following investigators up to April 30, 2014:

   a. Executive Research Associates
   b. Aeneas
   c. BTG
   d. Africa Risk Consulting
   e. Livingstone
   f. Kroll

2. All communications with Messrs. Landau and Fujihara before the dates upon which they were engaged by Weil Gotshal as consulting experts, October 6, 2010 and October 14, 2010 respectively, but no communications after those dates.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle

4