**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
MICHAEL R. LAZERWITZ
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY

MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO

JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K. GRANNIS
DANIEL M. BINDER
MEYER H. FEDIDA
JOHN V. HARRISON
CAROLINE F. HAYDAY
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

Writer's Direct Dial: +1 (212) 225-2550
E-Mail: lliman@cgsh.com

September 29, 2015

VIA ECF

Hon. Andrew J. Peck, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

      We write on behalf of Defendant Vale S.A. ("Vale"), in response to Plaintiff Rio Tinto's September 28, 2015 Letter. (Dk. 374.)

      That letter reports, in essence, that Rio Tinto is unwilling to make the 502(d) exchange of materials suggested by Your Honor at the September 24 conference.

      <u>As to the documents requested from Rio Tinto</u>, in the meet-and-confer and again in its letter to Your Honor, Rio Tinto relates that it is unwilling to produce pursuant to 502(d) the documents shared with its third-party consultants after those consultants were retained by counsel. It is precisely those documents, however, that were the subject of the Joint Letter to Your Honor (Dk. 364 at 12), that Your Honor suggested to Rio Tinto it should produce pursuant to 502(d) in exchange for the requested Vale documents prepared by its consultants (E&Y, Nardello) who were also retained by counsel, and that Rio Tinto said it would recommend producing in lieu of having Your Honor rule on the privilege issue. Indeed, Rio Tinto attempted to make the very same argument with respect to these documents that it made in its letter of yesterday and Your Honor rejected it. Counsel for Rio Tinto argued: "These documents [regarding the consultants] are a different set and a completely different" ; "Your Honor responded: "That isn't the question. The idea is you're each going to get a non-waiver so we can get by all of this." (Sept. 24, 2015 Tr. 10:24-11:3.)

Hon. Andrew J. Peck, p. 2

The logic of Your Honor's suggestion applies equally – if not more so – to the consultant documents as to the requested documents in Vale's possession with respect to its consultants. At the conference, Your Honor suggested that, as to third party privilege, "[e]verybody is trying to have it all different ways from Sunday" – i.e., Rio Tinto was arguing that its consultants were covered by a privilege while at the same time arguing that Vale's consultants were not, and vice versa. (Sept. 24, 2015 Tr. 7:21-22.) Your Honor sensibly suggested a trade: each side produce the disputed third-party communications to the other, subject to a 502(d) order preserving everyone's rights. (*Id.* at 9:1-12.) Vale immediately said it would agree. (*Id.* at 9:13.) Rio Tinto said it needed to think about it but would "recommend" the compromise to its client. (*Id.* at 9:23, 10:4.) As it turns out, Rio Tinto is not prepared to compromise, but would prefer to continue "taking up the court's time on conflicting arguments." (*Id.* at 9:11-12.) Its letter is a thinly-veiled attempt to reargue.

As to the documents requested from Vale, Vale will produce "all versions of the report at issue including drafts, E&Y prepared for Vale pursuant to its April 27, 2010 engagement letter," and "[a]ll versions of other reports, including drafts, E&Y prepared for Vale concerning Simandou that reference BSGR bribery, corruption, or other misconduct" – i.e., exactly what was requested and what it said it would do in court. (Dk. 364 at 28.)[1] Vale will also produce all versions of what became the Nardello report – i.e., everything requested in the Joint Letter and more.

In its most recent letter to the Court, Rio Tinto tacks on a new request, unrelated to the third-party privilege dispute raised at the conference, for all correspondence about the EY report – including *internal* Vale correspondence. This was not the subject of the Joint Letter, Vale has not had the opportunity to consider it, and Rio Tinto has not offered to produce its own internal communications concerning its investigation, including those with internal counsel. Vale is willing to consider that trade as well, but the entry of an order with respect to the documents raised in the Joint Letter should not be further delayed and should not await discussion of that reciprocal trade. Indeed, it is not clear it is one Rio Tinto is willing to consider reciprocally.

Because Rio Tinto has attempted to reargue the privilege with respect to the consultant documents, Vale offers a two-paragraph response in Attachment A to this letter. The Court need not consider that attachment if it does not consider Rio Tinto's re-argument.

Vale therefore requests that the Court deny Rio Tinto's request and so-order the exchange Vale proposed (set out below, and attached to Rio Tinto's letter as Exhibit C, Dk. 374-3), which Vale believes is consistent with Your Honor's suggestion. In the alternative, Vale requests that the Court conclude that the requested consultant and investigator documents in the possession of Rio Tinto are not privileged and order their production.

\*\*\*

---

[1] Rio Tinto also raised a separate issue as to the time period of its diligence-related document requests to Vale, but that was not a privilege dispute and Your Honor did not reach it. (Dk. 364 at 29; Sept. 24, 2015 Tr. 11.)

Hon. Andrew J. Peck, p. 3

Pursuant to Fed. R. Evid. 502(d), the parties shall produce:

*Vale*

1. All versions of the report, including drafts, E&Y prepared for Vale pursuant to its April 27, 2010 engagement letter, *see* VALE-RT_00024658.

2. All versions of other reports, including drafts, E&Y prepared for Vale concerning Simandou that relate to BSGR bribery, corruption, or other misconduct.

3. All communications between Vale and EY, dated between the April 27, 2010 engagement letter and May 31, 2010,[2] concerning the E&Y reports referenced above in #1 that were not addressed to, sent by, or copied to Clifford Chance.[3]

4. The April 30, 2010 report prepared by Nardello & Co.

*Rio Tinto*

1. All communications between or among Rio Tinto or its counsel and any of its investigators in relation to Simandou, including but not limited to Executive Research Associates, Aeneas, BTG, Africa Risk Consulting, Livingstone, and Kroll.

2. All communications between or among Rio Tinto or its counsel and Rio Tinto's consultants Landau & Fujihara, regardless of date.

                                                        Respectfully submitted,

                                                        /s/ Lewis J. Liman
                                                        Lewis J. Liman

cc:     All counsel of record (via ECF)

---

[2] This is the time period following the April 27, 2010 engagement during which EY performed its work pursuant to that engagement.

[3] As set out in Plaintiff's letter, Rio Tinto does not seek communications with Clifford Chance (Dk. 374 at 3) (limiting request to documents "that were not addressed to, sent by, or copied to a Clifford Chance attorney.").)

Hon. Andrew J. Peck, p. 4

## **ATTACHMENT A**

Rio Tinto's assertion that communications between its counsel and the third-party consultants in 2010 are "plainly shielded from discovery" (Dk. 374 at 1) is mistaken. Each of these communications was shared with a "government relations" consultant (Mr. Landau) and, in some cases, a second "natural resources advisor" (Mr. Fujihara). (Dk. 364 at 14.) Rio Tinto has offered no support that either third party provided legal advice or was retained for the purpose of assisting with providing legal advice, and thus there is no basis for any exception to third-party waiver of attorney-client privilege. *See, e.g., Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2014 WL 7238354, at *4 (S.D.N.Y. Dec. 19, 2014) (third-party marketing firm broke privilege because firm did not serve interpretive function necessary to providing legal advice and was not a functional employee). Even if the consultants were retained in connection with Rio Tinto's decision whether to bring a lawsuit, a consultant's "advice in determining the benefits of taking legal action" is not privileged. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013).

Rio Tinto's work product argument is equally meritless and, indeed, contradicted by its own pleading. It affirmatively alleges that at the time of these communications, in 2010, it did not anticipate litigation: "Rio Tinto did not know of or discover . . . the unlawful conduct and resulting injury alleged herein that underlies the RICO claims . . . until after . . . April 2013." (Am. Compl. ¶ 143.) Even if it did consider the possibility of legal action, and even if its communications with the consultants concerned whether, strategically it should pursue a legal strategy, that would not cloak them in the work product protection simply because Rio Tinto brought a lawsuit four years later. "[I]t is not enough to show merely that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather, the materials must result from the conduct of investigative or analytical tasks to *aid counsel in preparing for litigation*"; "'the purpose of the rule is to provide a zone of privacy for strategizing about *the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally*.'" *Egiazaryan*, 290 F.R.D. at 435 (emphasis added) (citations omitted). Correspondence concerning "efforts to lobby" the government, "gathering facts about [the client's] situation," "a proposed public relations strategy," or "efforts to bolster [the client's] image" are not protected. *Id.* at 436. Indeed, no paragraph of the Complaint or Amended Complaint has anything to do with "the ways of Brazilian mining companies" about which the consultants were supposedly experts (Dk. 364 at 14). The advice was plainly not "because of" this litigation (filed four years later), even if it may have been provided in connection with Rio Tinto's consideration of strategic options (including litigation), which are not privileged.