

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Jeffrey D. Rotenberg
jeffrey.rotenberg@dlapiper.com
T  212.335.4556
F  917.778.8556

November 16, 2015

BY ECF

The Hon. Andrew J. Peck
United States Magistrate Judge, S.D.N.Y.
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:   *Rio Tinto v. Vale, et al.*, No. 14 Civ. 03042 (RMB) (AJP) (S.D.N.Y.)

Dear Judge Peck:

We write on behalf of non-party DLA Piper LLP (US) ("DLA US"), non-party DLA Piper UK LLP ("DLA UK"), and non-party DLA Piper France LLP ("DLA France" and together with DLA US, and DLA UK, "DLA Piper") in response to Defendant Mahmoud Thiam's request to file a motion to compel compliance with Mr. Thiam's subpoena to DLA Piper, dated May 22, 2015 (the "Subpoena," annexed hereto). *See* ECF No. 398, Joint Submission, at 25-26.[1]

## 1. The Government of Guinea's Retention of DLA Piper in Europe

The government of Guinea sought to thoroughly review and investigate the Simandou concession in light of developing allegations of bribery and corruption. Guinea engaged DLA Piper UK in 2011 to support the nation's existing law enforcement capabilities given the anticipated breadth of any investigation. Guinea particularly sought DLA Piper's assistance in navigating the international aspects of the investigation, including engaging in fact-finding outside Guinea and liaising on behalf of Guinea with foreign governments with potential interest in matters relating to the Simandou concession.

## 2. Mr. Thiam's Subpoena for DLA Piper's Guinea Materials

The Subpoena is abusive on its face, unabashedly seeking virtually all documents in DLA Piper's possession from 2005 through April 2014 relating to the Simandou concession. Mr. Thiam makes no effort to seek documents potentially relevant to the instant litigation, and his requests evince disregard for the function DLA Piper has performed for Guinea, of which Mr. Thiam is well-aware. Among other categories of materials, Mr. Thiam requests communications between DLA Piper and the President of Guinea himself. (Subpoena, Request No. 9.) Mr. Thiam further seeks to uncover intergovernmental communications, presumably to

---

[1] Mr. Thiam has similarly challenged Veracity Worldwide's ("Veracity") position with respect to a parallel subpoena in this litigation. DLA Piper retained Veracity's investigatory services in connection with its own retention by Guinea. The arguments expressed on behalf of DLA Piper are applicable to Veracity as well.



The Hon. Andrew J. Peck
November 16, 2015
Page Two

gain otherwise unavailable and highly improper access to the criminal investigatory processes of sovereign states. (*Id.*, Request No. 7). Mr. Thiam also asks DLA Piper to provide support for so-called "allegations" he claims are included in a non-public report DLA Piper sent to its client, the government of Guinea. (*Id.*, Request Nos. 12-15).[2]

### 3. Mr. Thiam's Waiver of Any Objection to DLA Piper's Responses

Mr. Thiam served the Subpoena on DLA Piper on or about June 4, 2015. We issued responses and objections on July 2, 2015, per agreement with Mr. Thiam (the "Responses"). Between July 10, 2015, and July 22, 2015, we exchanged a series of communications with Mr. Thiam's counsel concerning DLA Piper's position on its obligations under the Subpoena. In our communication of July 22, 2015, we confirmed for Mr. Thiam's counsel that "Guinea's . . . sovereignty shields DLA from the discovery [being sought] and [that] DLA [will not] produce documents or otherwise make a substantive response to the subpoena, whether by document production or privilege log." (Email from N. Kronley, DLA Piper, to N. Kumaraswami, Sullivan & Worcester LLP, at ¶ 1 (July 22, 2015 12:49 pm).) We offered to meet and confer further, and to assist Mr. Thiam in seeking documents directly from Guinea through proper channels. (*Id.*)

While discovery proceeded apace in this litigation, Mr. Thiam did not respond to our email of July 22, 2015, or otherwise follow-up on the Subpoena.[3] On November 4, 2015 – after over 100 days of silence – Mr. Thiam reemerged, asserting for the first time his position that DLA Piper is not entitled to immunity, and claiming that irrespective of DLA Piper's immunity from the Subpoena it is required to log documents shielded from discovery. Mr. Thiam has indisputably failed to comply with Your Honor's rules, which require Mr. Thiam to bring discovery disputes to the Court's attention "promptly." Individual Practices of Mag. Judge Andrew J. Peck § 4.A. (May 5, 2015). Mr. Thiam disappeared for over 100 days without explanation before clarifying his position with DLA Piper on its assertion of immunity and now raising this issue with the Court. Exacerbating Mr. Thiam's non-compliance is our understanding that document discovery actually came to a close (on August 28, 2015), while Mr. Thiam sat silent. *See* ECF No. 161, Scheduling Order (Jan. 15, 2015). Under these circumstances, we respectfully submit that Mr. Thaim has waived any objections to DLA Piper's Responses and should not be permitted to file a motion to compel.

---

[2] We are unaware of the public release or even limited disclosure of any report or any draft report prepared by DLA Piper for Guinea. To the extent Mr. Thiam possesses such a report in any form, we have substantial concerns regarding the manner in which it was obtained.

[3] In correspondence leading up to our July 22, 2015, email, Mr. Thiam set an August 4, 2015, deadline for compliance. We understandably did not comply with that deadline in light of our position on DLA Piper's obligations under the Subpoena, and Mr. Thaim never sought to enforce that deadline.



The Hon. Andrew J. Peck
November 16, 2015
Page Three

The timing of Mr. Thiam's reemergence, only after the argument on the Defendants' motion to dismiss, heightens our longstanding concerns regarding the motivations behind the Subpoena. On the face of the Subpoena, it is apparent that Mr. Thiam, for himself, or more likely for others, is looking to obtain documents and information for possible use in proceedings pending abroad (where BSGR has brought a multi-billion dollar arbitration against Guinea alleging that the Government wrongfully cancelled BSGR's rights in Simandou) and to provide insight into criminal investigations reportedly being conducted in multiple jurisdictions, including the United States, Switzerland and Guinea. In other words, we suspect that the Subpoena is principally intended to achieve an end-run around discovery limitations in foreign proceedings, as well as to improperly invade and interfere with, among other things, sovereign law enforcement and criminal justice activities, and Guinea's conducting of its foreign affairs.

### 4. DLA Piper is Immune from the Subpoena

Mr. Thiam's procedural failures aside, DLA Piper should not be compelled to make any further response to the Subpoena, as immunity attaches to DLA Piper. As explained above, Guinea engaged DLA Piper to supplement its own government agencies, which are not designed or equipped to handle investigatory and other work of the breadth and magnitude demanded by issues around the Simandou concession. This is precisely the situation where courts extend immunity to non-governmental actors. *See, e.g., Moriah v. Bank of China, Ltd.*, No. 12 Civ. 01594 (SAS), -- F. Supp. 3d --, 2015 WL 631381 (S.D.N.Y. Feb. 13, 2015) (granting conduct-based immunity from deposition subpoena to outside advisor to government of Israel); *see Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (recognizing "courts have extended derivative immunity to private contractors, 'particularly in light of the government's unquestioned need to delegate governmental functions'" (citation omitted)). To deny immunity to DLA Piper would preclude sovereigns from outsourcing certain essential functions they may be unable to perform themselves, without risking the waiver of protections and privileges long-afforded by and between sovereign nations.

In closing, Mr. Thiam's focus on privilege log requirements that may exist where sovereigns are parties (and therefore not immune) to litigation is irrelevant here. *See Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014) (summary order). Mr. Thiam appears to misunderstand what immunity confers on its recipient. DLA Piper's immunity from the Subpoena means DLA Piper is not obligated to prepare and provide any privilege log.

We thank the Court for its consideration of DLA Piper's position with respect to the Subpoena. We anticipate attending the status conference on November 17, 2015, and will be available to answer any questions Your Honor may have at that time. DLA Piper's appearance



The Hon. Andrew J. Peck
November 16, 2015
Page Four

in this litigation for the limited purpose of objecting to the Subpoena is not intended to be and should not be construed as a waiver of any rights, privileges, immunities, and protections afforded to the government of Guinea, and DLA Piper by the laws of the United States, United Kingdom, France and Guinea, or any other sovereign nation, as well as by any international organization, norm, understanding, agreement, treaty or convention.

        Sincerely,

        **DLA Piper LLP (US)**

        Jeffrey D. Rotenberg
        Partner

Enclosure

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | | |
|---|---|---|
| RIO TINTO PLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 14-cv-3042 (RMB)(MHD) |
| VALE S.A., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     DLA Piper, 1251 Avenue of the Americas, New York, NY 10020

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Sullivan & Worcester LLP<br>1633 Broadway<br>New York, NY 10019 | Date and Time:<br>06/25/2015 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/22/15

CLERK OF COURT

_____                OR           _____
*Signature of Clerk or Deputy Clerk*                                       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Mahmoud Thiam
_____, who issues or requests this subpoena, are:

Nita Kumaraswami, Sullivan & Worcester, One Post Office Square, Boston, MA 02109 nkumaraswami@sandw.com 212 660 3000

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 14-cv-3042 (RMB)(MHD)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____ on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND RULES OF INSTRUCTION

As used herein, the following terms shall have the meanings indicated below:

1. Except as otherwise expressly indicated, as used in these Requests:

    a. "Any," "all," and "each" shall be construed as encompassing any and all.

    b. "BSGR" includes BSG Resources Limited, BSG Resoures Guinée SARL aka BSG Resources (Guinea) SARL, and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, partners, employees, agents, attorneys, accountants, and representatives of any of the entities listed above, and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above, including Benjamin Steinmetz.

    c. "Communication" means all verbal and written means of transmission or exchange of information, including but not limited to statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings and meetings.

    d. "Concern," "evidence," "refer," "relate to," "concerning," "evidencing," "referring," or "relating to" any given subject means all Documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, or refer or relate, directly or indirectly, in any way, to the subject matter identified.

1

e. "DLA Piper," "You" or "Your" includes DLA Piper Global Law Firm, and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, partners, employees, agents, attorneys, accountants, and representatives of any of the entities listed above, and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above, including Scott Horton, Esq.

f. "DLA Piper Report" means the report issued by DLA Piper on or about December 20, 2011 concerning BSGR's mining concessions in Guinea.

g. "Document" means any handwritten, printed, computer-produced, typed, photographed, phone or tape-recorded graphic matter, however otherwise produced and includes, without limitation, all communications, reports, correspondence, telegrams, memoranda, summaries of records, personal conversations or interviews, diaries, records, accounts, facsimile files, contracts, notes, marginal notations, photographs, ledgers or other records of original entry, bank statements, checks (front and back), drafts of any of the foregoing, bank deposit slips, newspaper reports and all other recordings or writings of whatever nature. The term "document" shall include originals (or copies if originals are not available) and non-identical copies (whether different from the original because of any handwritten notes or underlining or otherwise) and any translations of any document.

    A Document includes all attachments, whether by staple, clip, rubber band, or binding, and all appended or embedded links or files.

h.  "George Soros" refers to George Soros and any employee, agent, representative, or consultant of George Soros.

i.  "Including" means "including but not limited to" and "including without limitation."

j.  "Relating to" means constituting, pertaining to, making reference to, comprising, evidencing, alluding to, responding to, connection with, commeting on, with respect to, about, regarding, resulting from, embodying, explaining, supporting, contradicting, discussing, showing, describing, reflecting, analyzing, setting forth, in respect of, having a relationship to, or in any way being factually, legally, or logically connected to, in whole or in part, the stated subject matter.

k.  "Rio Tinto" includes Plaintiff Rio Tinto plc and Simfer S.A., as well as any officer, director, employee, partner, corporate parent, subsidiary, or affiliate of any of the foregoing.

l.  "Rio Tinto Concession" refers to the mining concession awarded to Rio Tinto in Decree No. 2006/041/PRG/SGG on March 30, 2006 by the Government of Guinea, and includes what is known as Blocks 1, 2, 3, and/or 4.

m.  "Simandou" refers to the Simandou Range in the Nzérékoré Region of southeastern Guinea, and includes the Rio Tinto Concession.

n.  "Simandou Blocks 1 and 2" refers to the Northern half of the Simandou Range in the Nzérékoré Region of southeastern Guinea, east and southeast of Kerouane, of which Rio Tinto was ordered to relinquish in 2008.

o.  "Thiam" means Defendant Mahmoud Thiam and any employee, agent, representative, consultant or other person acting on his behalf.

p.  "Vale" means Defendant Vale, S.A. and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, employees, agents, attorneys, accountants, and representatives of any of the entities listed above, and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above.

q.  "Veracity Worldwide" includes Veracity Worldwide, and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, partners, employees, agents, attorneys, accountants, and representatives of any of the entities listed above, and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above, including Stephen Fox.

2. Unless otherwise indicated, the relevant time period for purposes of these Requests is January 1, 2005 to April 30, 2014.

3. If any document within the scope of these Requests was, but is no longer, in your possession, custody or control, or is no longer in existence, state whether each such document: (a) is missing or lost; (b) has been destroyed; (c) was transferred voluntarily or involuntarily to others, and, if so, to whom; or (d) was otherwise disposed of. In each such instance, your written response hereto should describe in detail the circumstances surrounding the authorization for, and the approximate date of, such disposition, and any documents concerning such disposition shall be produced.

4. Each document furnished in response to these Requests is to be produced as it is kept in the usual course of business or shall be organized and labeled to correspond with the numbered Request to which it is responsive.

5. If no documents exist relative to a particular Request, identify by number in the response to this demand the specific Request relative to which no documents exist.

6. Electronically stored information ("ESI") should be produced in its native format with all metadata preserved and intact, or pursuant to an agreement with Thiam on the form of production of ESI.

7. If you object to any of these document requests, state in writing with specificity the grounds of your objection. Any such objection must comply must comply with Fed. R. Civ. P. 45. If you object to a particular portion of any document request, you shall respond to any other portions of such document request as to which there is no objection and state with specificity the grounds of the objection.

8. If any portion of a document is considered responsive to any Request, the Request shall be construed as requesting production of the entire document.

5

9. Except when express reference is made to another paragraph, each paragraph herein should be construed independently and not by reference to any other paragraph herein for purpose of limitation.

10. Documents should be produced on a rolling basis as they become available.

11. Pursuant to Fed. R. Civ. P. 45, you must produce entire documents including attachments, enclosures, cover letters, memoranda, and appendices. Documents not otherwise responsive to this request are to be produced if such Documents are attached to, or enclosed with, any Document that is responsive. Examples of such Documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, or similar Documents. in the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments.

12. The singular includes the plural and vice versa, except as the context may otherwise require; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation".

## **REQUESTS FOR PRODUCTION**

**Request No. 1:**

All Documents and Communications concerning Your instructions, including, but not limited to, who instructed you and when, in relation to Your investigation and drafting of the DLA Piper Report as it pertains to the validity of any entity's rights to Simandou Blocks 1 and 2 during 2008 through 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 2:**

All Documents and Communications concerning payment for legal and investigative services relating to the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto, and the DLA Piper Report.

**Request No. 3:**

All Documents and Communications concerning Your views, opinions, analyses, and conclusions regarding the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 4:**

All Documents and Communications concerning individuals and entities contacted, consulted, and/or interviewed to garner information about the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto, prior to issuing the DLA Piper Report.

**Request No. 5:**

All Documents and Communications exchanged between You and any source concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto, prior to issuing the DLA Piper Report.

**Request No. 6:**

All Documents and Communications exchanged between You and (i) Stephen Fox and/or (ii) Veracity Worldwide concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 7:**

All Documents and Communications exchanged between You and any governmental entity, including, but not limited to, the Government of Guinea (and the Technical and Inquiry Committees), the United Kingdom's Serious Fraud Office, the U.S.'s Department of Justice, Securities and Exchange Commission, or Internal Revenue Service, France, and Switzerland regarding BSGR's Simandou mining concession.

**Request No. 8:**

All Documents and Communications exchanged between You and George Soros concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 9:**

All Documents and Communications exchanged between You and Alpha Condé concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

8

**Request No. 10:**

All Documents and Communications exchanged between You and Rio Tinto concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 11:**

All Documents and Communications exchanged between You and any media outlet, including, but not limited to, (i) Tom Burgis, (ii) Helen Thomas and/or (iii) Misha Glenny of *The Financial Times*, concerning the validity of any entity's rights to Simandou Blocks 1 and 2 between 2008 and 2014, including, but not limited to, BSGR and Rio Tinto.

**Request No. 12:**

All Documents and Communications that form the bases for Your allegation in the DLA Report that Mahmoud Thiam received gifts and/or monetary benefits in connection with the development of mining rights while Guinean Minister of Mines.

**Request No. 13:**

All Documents and Communications that form the bases for Your allegation in the DLA Report that Mahmoud Thiam distributed gifts and/or monetary benefits, directly or indirectly, to Guinean government officials in connection with the development of mining rights while Guinean Minister of Mines.

**Request No. 14:**

All Documents and Communications that form the bases for Your allegation in the DLA Report that BSGR had used "acts of corruption for the purpose of influencing the procedures for acquiring rights to Simandou, by offering 'commissions' and 'pecuniary benefits' in an irregular

and abusive fashion to Guinean officials able to influence decisions on the distribution of mining rights."

**Request No. 15:**

All Documents and Communications that form the bases for Your allegation in the DLA Report that BSGR made payment of gifts and monetary benefits.

**Request No. 16:**

All non-privileged Documents and Communications concerning BSGR's rights to Simandou Blocks 1 and 2.

Dated: New York, New York
May 22, 2015

SULLIVAN & WORCESTER LLP

By: _____
Paul E. Summit
Nita N. Kumaraswami
1633 Broadway
New York, New York 10019
(212) 660-3000

*Attorneys for Mahmoud Thiam*

10