USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

RIO TINTO PLC,                                           :

                      Plaintiff,         :

            -against-                    :

VALE S.A., BENJAMIN STEINMETZ,          :
BSG RESOURCES LIMITED,                       :
BSG RESOURCES (GUINEA) LTD.,              :
BSGR GUINEA LTD. BVI,                            :
BSG RESOURCES GUINÉE SARL,               :
FREDERIC CILINS, MAMADIE TOURÉ,        :
and MAHMOUD THIAM,                             :

                  Defendants.        :

-------------------------------------------------------------X

14 Civ. 3042 (RMB) (AJP)

**DECISION & ORDER**

## I.       Background

On August 15, 2014, Rio Tinto plc ("Plaintiff" or "Rio Tinto") filed an Amended

Complaint ("Complaint") against Vale S.A. ("Vale"), Benjamin Steinmetz ("Steinmetz"),

BSG Resources Limited and related entities ("BSGR"), Mahmoud Thiam ("Thiam"),

Frederic Cilins ("Cilins"), and Mamadie Touré ("Touré"). [1]  Rio Tinto, a leading

---

[1] The Complaint identifies BSG Limited Resources as "wholly-owned by The Beny Steinmetz Group," and two entities as subsidiaries of BSG Limited Resources, namely, VBG-Vale BSGR Guernsey ("VBG Guernsey") and VBG-Vale BSGR Guinea ("BSGR Guinea"). (Compl. ¶¶ 21(a)-(c)). According to Plaintiff "[t]here is no distinguishing between BSG Resources Limited, VBG Guernsey, and VBG-Vale BSGR Guinea." (Compl. ¶ 21(d)).

On January 7, 2015, the Clerk of the Court entered a certificate of default against Cilins for failure to appear or otherwise respond to Plaintiff's claims following service of Plaintiff's original complaint and its amended complaint. Rio Tinto PLC v. Vale S.A., No. 14 Civ. 3042 (RMB) (Jan. 7, 2015) (ECF 153). Cilins is described as "a citizen of France and is an agent and/or employee of Steinmetz and BSGR." (Compl. ¶ 22). On March 10, 2014, Cilins entered a guilty plea in the Southern District of New York to one count of obstruction of a criminal investigation in violation of 18 U.S.C. § 1510. On July 29, 2014, Cilins was sentenced to 24 months imprisonment followed by three years of supervised release. (Id.).

multinational mining company, alleges that Vale, its principal competitor, entered into a

conspiracy with Steinmetz and BSGR to misappropriate Rio Tinto's mining rights in the

Simandou region of southeast Guinea. (Am. Compl., filed Aug. 15, 2014 ("Compl.") ¶¶ 1, 3).

According to the Complaint, Vale "secretly join[ed] forces with BSGR to form an

enterprise, defraud Rio Tinto, and steal the rights to Blocks 1 and 2 of the Simandou

Concession," in violation of the Racketeer Influence and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1962, and conspired to violate RICO, 18 U.S.C. § 1962(d). (Id. ¶¶ 83,

201). Plaintiff alleges that "the RICO Enterprise [wa]s born . . . [when] a meeting between

Vale and BSGR occurred in December 2008 . . . [and] Steinmetz, BSGR, and Vale formed

an agreement to work together – in conjunction with the other Defendants and co-

conspirators – to steal Rio Tinto's mining rights at Simandou." (Id. ¶¶ 86, 87). Plaintiff also

asserts New York State common law claims of fraud, conspiracy to commit fraud, aiding and

abetting fraud, and fraudulent inducement. (Id. pp. 59-65).

   On February 6, 2015, Vale, Steinmetz, BSGR, and Thiam (collectively, "Defendants")

moved jointly to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

("F.R.C.P.") 12(b)(6), arguing, among other things, that (1) Plaintiff's RICO claims are time

barred; (2) the four-year statute of limitations is not tolled as to any Defendant; and (3)

Plaintiff has failed to plead a "pattern of racketeering activity." (See Mem. of Law in Supp.

---

On October 23, 2015, the Clerk of the Court entered a certificate of default against Touré for failure to appear or otherwise respond to Plaintiff's claims following service of Plaintiff's original complaint and its amended complaint. Rio Tinto PLC v. Vale S.A., No. 14 Civ. 3042 (RMB) (Oct. 23, 2015) (ECF 389). Touré is described as "the fourth wife of former Guinean President General Lansana Conte" and "a cooperating witness in the ongoing criminal investigation into Simandou conducted by the United States Attorney's Office for the Southern District of New York and the U.S. Department of Justice." (Compl. ¶ 23).

of Defs.' Mot. to Dismiss Pl.'s Am. Compl., dated February 6, 2015 ("Defs.' Mem."), at 3-4,

13).[2]  Specifically, Defendants contend that the RICO injury alleged by Plaintiff in its

Complaint is the loss or theft of Rio Tinto's mining rights to Simandou Blocks 1 and 2 which

occurred on or about December 9, 2008. (Def.'s Mem. at 3).  "That loss was known to Rio

no later than December 9, 2008, when 'the Guinean Government sent a letter to Rio Tinto

indicating that it was rescinding Rio Tinto's rights to Simandou Blocks 1 and 2.'"  (Id.)

(quoting Compl. ¶ 92).[3]  Defendants also point out that on December 11, 2008, **"it was**

**publicly announced that the Guinean Government was awarding exploration licenses**

**for those same blocks [1 and 2] to [Defendant] BSGR Guinea."**  (Id. at 4) (quoting

Compl. ¶ 92) ("December 11, 2008 Public Announcement") (emphasis added).  Defendants,

accordingly, contend that Rio Tinto's RICO claims "accrued no later than December 2008,

and expired in December 2012, more than 16 months **before** Rio filed its original complaint

in April 2014."  (Id. at 4) (emphasis added).  In other words, according to Defendants, Rio

---

[2] On September 3, 2014, Vale filed a motion to dismiss Plaintiff's Complaint, arguing, among other things, that Rio Tinto's claims against Vale should have been brought in England. See Rio Tinto PLC v. Vale S.A., No. 14 Civ. 3042 (RMB), 2014 WL 7191250, at *1 (S.D.N.Y. Dec. 17, 2014).  The Court denied Vale's motion, holding that "Clause 20 [of the September 2, 2008 confidentiality agreement between Rio Tinto and Vale] is permissive and [did] not require dismissal of Rio Tinto's litigation against Vale in New York," and also that "the Southern District of New York is a convenient forum."  Id. at 7, 12.

[3] The December 9, 2008 letter is addressed to the President and General Manager of Simfer S.A., a subsidiary of Rio Tinto, and it is from the former Minister of Mines, Dr. Louncény Nabe. See Letter, dated Dec. 9, 2008 ("December 9, 2008 Letter") at 1.  It bears the official letterhead of the Government of Guinea and the Guinean Ministry of Mines and Geology.  (Id.).  The December 9, 2008 Letter states that "[g]iven the lack of satisfactory results regarding the specific relinquishment issue, the council [of ministers] instructed the Ministry of Mines and Geology to apply the provisions of the Mining Code **and to require a relinquishment of 50% of your current surface**," i.e., Blocks 1 and 2 of the Simandou Concession.  (Id.) (emphasis added).

3

Tinto's original complaint was filed more than one year **after** the statute of limitations had run.

Defendants also argue that Plaintiff cannot rely upon tolling of the statute of limitations because, among other things, "a plaintiff who is not reasonably diligent may not assert fraudulent concealment." (Id. at 4, 13). According to Defendants, "Rio affirmatively admits that it only exercised due diligence in pursuing discovery of the claims . . . [after] April 30, 2010." (Id. at 7). Since Plaintiff suffered injury on December 9, 2008, Defendants contend that "for more than 16 months after its injury (until April 30, 2010), [Plaintiff] conducted no investigation at all." (Id. at 13). Defendants say that "this lack of diligence is fatal." (Id.).

Defendants also argue that Plaintiff has failed adequately to plead a pattern of racketeering activity because Plaintiff has not shown that the "racketeering predicates []
amount to or pose a threat of continued criminal activity." (Defs.' Mem. at 14). This "'continuity' requirement [] must be established by alleging either an 'open-ended' scheme .
. . or a 'close[d]-ended' scheme," and "Rio has failed to plead either." (Id.)[4]

On March 6, 2015, Plaintiff opposed Defendants' motion to dismiss, arguing, among other things, that (1) "Defendants pattern of racketeering activity caused at least two independent injuries to Rio Tinto, and **both** occurred after 2008 [presumably on April 30, 2010 and in April 2011]"; (2) Rio Tinto's RICO claims were filed within four years of the 2010 and 2011 (alleged) injuries and are, therefore, timely; and (3) the Amended Complaint establishes both closed-ended and open-ended continuity. (See Mem. of Law in Opp. to

---

[4] "'Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989).

4

Defs.' Mot. to Dismiss, dated March 6, 2015 ("Pl.'s Opp'n") at 1, 14). Specifically, Plaintiff

appears to argue that it did not suffer injury on December 9, 2008, as Defendants contend,

but rather it suffered injury on "April 30, 2010, when Vale publicly announced its joint

venture with BSGR," after having allegedly "pilfer[ed] Rio Tinto's valuable information

through a series of predicate acts committed in 2009". (Pl.'s Opp'n at 1). Plaintiff also

contends that it suffered a "separate and independent" injury in April 2011, "when

Defendants' extensive campaign of bribery and threats to Rio Tinto's remaining mining

rights to Simandou Blocks 3 and 4 left Rio Tinto with no alternative but to relinquish its

claims to Blocks 1 and 2 as part of a settlement with the Guinean Government." (Id. at 2)

("2011 Settlement Agreement").[5] Plaintiff contends, in the alternative, that "[e]ven

assuming arguendo that Rio Tinto had notice of its injury prior to April 30, 2010,

Defendants' statute of limitations defense fails because their fraudulent concealment and

other wrongful conduct tolled the accrual of Rio Tinto's cause of action." (Id. at 8).

On March 20, 2015, Defendants filed a reply. (See Reply Mem. of Law in Supp. of

Defs.' Mot. to Dismiss Pl.'s Am. Compl., dated March 20, 2015 ("Defs.' Reply")). Helpful

oral argument was held on October 27, 2015. (See Hearing Transcript, dated Oct. 27, 2015

("Oct. 27 Hr'g Tr.")).

---

[5] On April 22, 2011, the Guinean Government entered into the Settlement Agreement with Rio
Tinto and its subsidiary, Simfer S.A., in which Plaintiff "accept[ed], for the purposes of this
Settlement Agreement, the reduction [i.e. elimination of Simandou Blocks 1 and 2], pursuant to
the wishes of the State." (See April 2011 Settlement Agreement at 4).

**For the reasons stated below, Defendants' motion to dismiss is granted (with prejudice).[6]**

For purposes of this motion, the allegations of the Complaint are taken as true. See Slayton v. Am. Express Co., 604 F.3d 758, 766 (2d Cir. 2010). The Court also incorporates by reference the background set forth in Rio Tinto PLC v. Vale S.A., No. 14 Civ. 3042 (RMB), 2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014).[7]

## II.     Legal Standard

"In RICO cases, we have applied a discovery accrual rule, under which the [four year] limitations period begins to run 'when the plaintiff discovers or should have discovered the RICO injury.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013) (citing In re Merrill Lynch Ltd. Partnerships Litigation, 154 F.3d 56, 60 (2d Cir. 1998) (per curiam). "The RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 328 F. App'x 695, 697 (2d Cir. 2009) (citing Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 427 (2d Cir. 2008)).

---

[6] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected. The Court is not here ruling upon the alternate merits of either parties' claims.**

On February 6, 2015, Defendants Steinmetz and BSGR separately moved to dismiss the Complaint pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction. (Defs.' Mem. at 1). Because the Court grants Defendants' F.R.C.P. 12(b)(6) motion, it need not evaluate claims under 12(b)(2). See, e.g., Siino v. Bd. of Trustees of New York City Teachers' Ret. Sys., No. 08 Civ. 4529, 2009 WL 166557, at *1 (S.D.N.Y. Jan. 16, 2009) aff'd, 374 F. App'x 221 (2d Cir. 2010).

[7] See supra n.2.

"Equitable tolling arguments are only successful 'if the fraudulent concealment succeeds in depriving plaintiffs of notice; otherwise every fraudulent concealment claim would result in tolling." Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011) aff'd sub nom. Koch v. Christie's Int'l PLC, 699 F.3d 141 (2d Cir. 2012). "The key inquiry is not whether the plaintiff had all the information available to him, but whether plaintiff knew enough to sue." Id. (citing Ruso v. Morrison, 695 F. Supp. 2d 33, 47 (S.D.N.Y.2010)).

"[A] plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity . . . or a 'closed-ended' pattern of racketeering activity." GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995). "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). "[A]n inherently terminable scheme does not imply a threat of continued racketeering activity." Id. at 244; see also GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995) ("It defies logic to suggest that a threat of continued looting activity exists when . . . there is nothing left to loot.").

"In adjudicating a motion to dismiss, a court may consider only the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated by reference, and documents on which the complaint heavily relies." Singh v. Wells, 445 F. App'x 373, 375 (2d Cir.2011).

"It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues solely raised in their briefs." Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005). "The complaint cannot, of course, be amended by the briefs in opposition to a motion to dismiss." In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).

7

### III.    Analysis

### (1)    Plaintiff's RICO Claim is Untimely

Defendants argue, as noted, that the Complaint establishes that Plaintiff's RICO claim is time barred because it was filed more than four years after Plaintiff's injury occurred. (Defs.' Mem. at 3). That is, Defendants contend that Plaintiff was injured on December 9, 2008, "when the Guinean Government sent a letter to Rio Tinto indicating that it was rescinding Rio Tinto's rights to Simandou Blocks 1 and 2." (Id.; see also Dec. 9, 2008 Letter at 1). And, just a few days later, on December 11, 2008, "when it was publically announced that the Guinean Government was awarding [Blocks 1 and 2] to BSGR." (Id. at 4).

While acknowledging that the RICO enterprise's "ultimate target" was Rio Tinto's mining concessions in Simandou, (Compl. ¶ 1), and that Defendant's sought to "obtain money and rights to Blocks 1 and 2 of Simandou," (Id. ¶ 195), and while conceding that the Guinean Government rescinded Plaintiff's rights to Blocks 1 and 2 on December 9, 2008 and publicly acknowledged awarding exploration licenses to Blocks 1 and 2 to Defendant BSGR on December 11, 2008, Plaintiff nonetheless contends that "the Minister of Mines and the President of Guinea still needed to affirm the validity of and ratify the [misappropriated] licenses. To actually achieve confirmation of BSGR Guinea's license, the conspiracy still had more work to do." (Compl. ¶ 95). According to the Complaint, such confirmation (ratification) was not achieved until June 26, 2009. (Id. ¶ 100). On that date, Defendant Thiam, as the Guinean Minister of Mines, sent a letter to Rio Tinto's Chairman and Chief Executive Officer, Tom Albanese, on behalf of the Guinean Government, that "made the

initial December 2008 award of Simandou Blocks 1 and 2 to BSGR official." (Id.).[8] **The**

**Complaint appears clearly to acknowledge that as of June 2009 Defendants had**

**"successfully, and illegally, obtained half of Rio Rinto's Simandou Concession."** (Id. ¶

14).[9]

In its Opposition Brief, on the other hand, Plaintiff argues that "[t]he first time that Rio

Tinto could possibly have discovered this injury was April 30, 2010, when Vale publicly

announced its joint venture with BSGR. Prior to then, Rio Tinto could not have known that

Vale and BSGR/Steinmetz were in cahoots and that it had been duped into giving its

---

[8] The June 26, 2009 letter to Rio Tinto is on the letterhead of the Government of Guinea and the Guinean Ministry of Mines and Geology and was sent by (former) Minister of Mines Thiam. (See Letter, dated June 26, 2009 ("June 26, 2009 Letter")). The June 26, 2009 Letter states that "we [the Ministry of Mines] proceeded to a careful examination of the exploitation permits and the relinquishment of Blocks 1 and 2 imposed in 2008 by a former Government. This examination supports us in maintaining the decision. We believe it complies with Guinean laws in the mining exploitation code and with international best practices . . . . We have, therefore, declared the decision legitimate, final and irrevocable. We have officially communicated this decision to Rio Tinto in writing and our President confirmed it in a number of public statements." (Id. at 1-2).

[9] Even assuming, arguendo, that June 26, 2009 were the date of Plaintiff's injury, the outcome here is the same. Whether the date of injury is December 2008 or June 2009, it falls outside of the four year statute of limitations for RICO claims. See In re Merrill Lynch, 154 F.3d at 58 (citing Agency Holding Corp. v. Malley–Duff & Assoc., Inc., 483 U.S. 143, 156 (1987)).

The following colloquy between the Court and Plaintiff's counsel, Michael J. Lyle, during the October 27, 2015 motion hearing is instructive:

> [Court]:      You call it the "result" of defendants' scheme in June 2009 . . . . You said, the result of defendants' scheme was a June 2009 official statement from Thiam on behalf of the government of Guinea that confirmed the mining rights for Simandou blocks 1 and 2 previously held by Rio Tinto were now BSGR and Steinmetz's.

> [Lyle]:        Yes, your Honor.

Oct. 27 Hr'g Tr. at 16:8-17:12.

confidential information to Vale." (Pl.'s Opp'n at 1). Plaintiff contends that its RICO claim is timely because it was filed within four years of April 30, 2010. (Id.).

### Date of Injury

"The first step in the statute of limitations analysis is to determine when the [Plaintiff] sustained the alleged injury for which they seek redress." In re Merrill Lynch, 154 F.3d at 59. "[A]n injury occurs for statute of limitations purposes only when the damages have become definite and provable, rather than conjectural." See 131 Main St. Associates v. Manko, 897 F. Supp. 1507, 1515 (S.D.N.Y. 1995).

The Court finds that the Complaint establishes unequivocally that Plaintiff sustained its RICO injury on December 9, 2008, when the Guinean Government notified Rio Tinto in writing that Rio Tinto's mining rights to Simandou Blocks 1 and 2 had been rescinded. See 131 Main St. Associates, 897 F. Supp. at 1515; see also December 9, 2008 Letter. Plaintiff had sustained a "definite" and provable" injury by December 11, 2008, when the Guinean Government publicly announced that it was awarding Simandou Blocks 1 and 2 to Defendant BSGR. See December 11, 2008 Public Announcement. The Court finds that Plaintiff, on December 9, 2008 (and December 11, 2008), "knew or ha[d] reason to know of the injury that is the basis of the action . . . [and] the injury was not in any sense speculative." See Long Island Lighting Co. v. Imo Indus. Inc., 6 F.3d 876, 887 (2d Cir. 1993).

The Court is not persuaded by Plaintiff's argument presented in its Opposition Brief that Rio Tinto did **not** suffer its injury on December 9, 2008 when it lost its rights to Blocks 1 and 2 of the Simandou Concession; or on December 11, 2008 when the Guinean Government publicly announced that Blocks 1 and 2 had been awarded to Defendant BSGR; or on June 26, 2009 when the Guinean Government confirmed the rescission of Plaintiff's rights as

10

"final and irrevocable." Nor is the Court persuaded that Plaintiff first suffered injury on April 30, 2010, "when Vale publicly announced its joint venture with BSGR." (Pl.'s Opp'n at 1). During an October 27, 2015 hearing, Plaintiff's counsel acknowledged the following:

> [Court]:    I'm having trouble separating the rights to [Simandou Blocks] 1 and 2 to just stealing your [Rio Tinto's] information. Is the RICO conspiracy just that they stole information from you?
>
> [Lyle]:    No, that they stole information and used it to keep us from **retaking our rights** to Blocks 1 and 2 of Simandou.
>
> [Court]:    That's odd, a little bit odd to me. It would seem to me that you were concerned about them taking it in the first place, not retaking it . . . . [I]n fact, in your Complaint you said, among other things, [] this is a case about theft . . . of Rio Tinto's valuable mining rights.
>
> [Lyle]:    Yes.
>
> [Court]:    And logically that's what one would think. You had rights to [Blocks] one and two. You lost them, and that's what's brought this all about . . . . Isn't that really what you're saying, they took [Blocks] 1 and 2 from us?
>
> [Lyle]:    They took [Blocks] 1 and 2 from us, yes.
>
> [Court]:    That's the real gravamen of your injury, right?
>
> [Lyle]:    That is one aspect of our injury.

Oct. 27 Hr'g Tr. at 6:15-7:22 (emphasis added).

The Complaint unambiguously presents any "information theft" as tangential to misappropriation of Plaintiff's mining rights. (See, e.g., Compl. ¶¶ 10, 54, 87, 90). Indeed, in an earlier proceeding in this case, the Court held that "the gravamen of Rio Tinto's claims against Vale is an alleged conspiracy unlawfully to deprive Rio Tinto of its rights to the Simandou Concession [Blocks 1 and 2] . . . . While Vale's alleged use of Rio's confidential information may have breached the terms of the Confidentiality Deed, such overlap is

incidental to the pursuit of Rio Tinto's fraud and RICO claims."  See Rio Tinto PLC, 2014 WL 7191250, at *11.

During oral argument on December 1, 2014, Plaintiff's counsel appeared to acknowledge that Rio Tinto's claims were based squarely upon the alleged theft of Simandou Blocks 1 and 2, and not upon alleged information theft:

> [Lyle]:    What our litigation is about are the rights to the mine that were stolen as part of the RICO conspiracy by Vale and Mamadie Toure . . . . Those rights are a function of government action by the government of Guinea . . . where government officials were bribed . . . by the defendants to take the rights that had been conferred to Rio Tinto and convert them to none. **Our allegations do not stem from technical geological information in the confidentiality deed but rather the RICO conspiracy that we alleged extensively in our complaint that springs out of the conduct**.

Hearing Transcript, dated Dec. 1, 2014 ("Dec. 1 Hr'g Tr."), at 26:3-17 (emphasis added).

**Discovery of Injury**

Following a determination of the date of injury, the court will then determine when Plaintiff discovered or should have discovered the injury and begin the four-year statute of limitations period at that point.  In re Merrill Lynch, 154 F.3d at 59; see also Frankel v. Cole, 313 F. App'x 418, 419-20 (2d Cir. 2009) (citing Rotella v. Wood, 528 U.S. 549, 554 (2000)).[10]

---

[10] "[C]ourts can 'readily resolve the issue' of inquiry notice as a matter of law on a motion to dismiss—as has been done in 'a vast number of cases' in this circuit—where 'the facts needed for determination of when a reasonable [Plaintiff] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'"  Vikas Goel & Rainforest Trading Ltd. v. Am. Digital Univ., Inc., No. 14-CV-1895 (KBF), 2015 WL 5037002, at *11 (S.D.N.Y. Aug. 26, 2015) (citing Staehr, 547 F.3d at 412).

The Court concludes from the face of the Complaint that Plaintiff knew or should have known of its injury in December 2008. Sufficient facts existed to suggest to "a plaintiff of normal intelligence" that wrongdoing was probable, not merely possible, on December 9, 2008 from the December 9, 2008 Letter. [11] See Marshall v. Milberg LLP, No. 08 Civ. 6950, 2009 WL 5177975, at * 3 (S.D.N.Y. Dec. 23, 2009) (quoting Shah v. Meeker, 435 F.3d 24, 249 (2d Cir. 2006)).

In the Complaint, Plaintiff reveals that it was aware as early as November 2008 that Defendants Steinmetz and BSGR (and BSGR's subsidiaries) were "specifically targeting Rio Tinto's Simandou Concession," "BSGR Guinea had obtained written assurances from the Minister of Mines . . . that the Government would withdraw Rio Tinto's Simandou Concession," and that "efforts to misappropriate Rio Tinto's Simandou Concession included bribery and other acts of political corruption." (Id. ¶¶ 78, 80, 82). By the time Plaintiff received the December 9, 2008 Letter from the Guinean Government rescinding Plaintiff's rights to Simandou Blocks 1 and 2 (and, two days later, the official announcement that Blocks 1 and 2 had been awarded to Defendant BSGR), Rio Tinto had clear and unmistakable "storm warnings." See World Wrestling Entertainment, 328 F. App'x at 697. Because Plaintiff was on notice of its injury by December 9, 2008, more than five years and four months before its April 30, 2014 original complaint was filed, Plaintiff's claim is outside of the four-year civil RICO statute of limitations and is, therefore, time-barred. See In re Merrill Lynch, 154 F.3d at 58.

---

[11] And, as noted, Plaintiff was on notice of injury ("knew or should have known") by December 11, 2008 from the Guinean Government's Public Announcement, and, in any case, no later than June 26, 2009 from the June 26, 2009 Letter.

Plaintiff's argument that "Rio Tinto did not and could not have had even an inkling that it had suffered an injury until April 30, 2010, the day BSGR and Vale announced their joint venture," is not persuasive. (Pls.' Opp'n at 6). **"The statute of limitations begins to run on the date that the plaintiff learned of his or her injury, not on the date that the plaintiff learned that his or her injury may have resulted from racketeering activity."** Woods v. Mercier, No. 11 Civ. 6502, 2012 WL 3925852, at *3 (W.D.N.Y. Sept. 7, 2012) (emphasis added); see also Koch, 699 F.3d at 151 ("The RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date."); In re Merrill, 154 F.3d at 60 (same); World Wrestling, 328 F. App'x at 697 (same). "[I]t is not necessary for a plaintiff to understand every permutation of his or her injury, rather the plaintiff simply needs to have a 'hint' or 'suspicion' of the injury and its cause to be put on inquiry notice." Thompson v. Metro. Life Ins. Co., 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001); see also Vikas Goel, 2015 WL 5037002, at *11 ("The law does not require [Plaintiff] to have understood all the nuance of the racketeering scheme for inquiry notice to trigger . . . and storm warnings sufficient to put a party on inquiry notice need not detail the entire fraud."); Cancer Found., Inc. v. Cerberus Capital Mgmt., LP, 559 F.3d 671, 674 (7th Cir. 2009) ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim.").[12]

---

[12] In its Opposition Brief, Plaintiff argues for the first time that a "second injury" occurred in April 2011 "when Defendants' extensive campaign of bribery and threats to Rio Tinto's remaining mining rights to Simandou Blocks 3 and 4 left Rio Tinto with no alternative but to relinquish its claims to Blocks 1 and 2 as part of a settlement with the Guinean Government." (Pl,'s Opp'n at 2; see also supra n.5 ("April 2011 Settlement Agreement")). Plaintiff contends unpersuasively that "[h]aving to forego any further challenge as a result of Defendants' concerted and unlawful attacks was a separate and independent injury to Rio Tinto." (Id.).

**(2)      Tolling is Not Appropriate**

Plaintiff states that "[e]ven assuming <u>arguendo</u> that Rio Tinto had notice of its injury

prior to April 30, 2010, Defendants' statute of limitations defense fails because their

fraudulent concealment and other wrongful conduct tolled the accrual of Rio Tinto's cause of

action." (Pl.'s Opp'n at 8). Defendants' conduct, according to Plaintiff, "concealed any

trace of the fraud that Defendants carried out during Vale's negotiations with Rio Tinto; the

illicit partnership between Vale, BSGR, and the rest of the RICO Enterprise; the way the

Enterprise used Rio Tinto's Simandou research to secure Rio Tinto's rights to Blocks 1 and

2; and the rest of the facts that make up Rio Tinto's cause of action." (<u>Id.</u> at 9-10).

Defendants counter that Plaintiff has not made a case for tolling because, among other

reasons, Plaintiff "did *nothing* to investigate a claim against the defendants for over 14

months [from December 2008] until 'April 30, 2010.'" (Defs.' Mem. at 7) (emphasis in

original).

---

In response, Defendants correctly point out that "[t]he Amended Complaint does not even
mention the April 2011 settlement with Guinea, much less allege that it caused Rio harm or
was the result of a pattern of racketeering." (Def.'s Reply at 1). And, Defendants say that
"anything [Plaintiff] lost by agreeing to accept Guinea's [April 2011 Settlement Agreement]
and release it from any claims based on that loss concerns precisely the same property that
Rio lost in 2008 and is thus derivative, and not new and independent, of that loss." (<u>Id.</u> at 2).

The Court finds that "[i]t is long-standing precedent in this circuit that parties cannot amend
their pleadings through issues raised solely in their briefs." <u>Fadem</u>, 352 F. Supp. 2d at 516.
In addition, "[c]ourts have refused to extend the life span of a RICO plaintiff's injuries when
they merely involve subsequent costs associated with the initial injury." <u>World Wrestling
Entm't, Inc. v. Jakks Pac., Inc.</u>, 530 F. Supp. 2d 486, 527 (S.D.N.Y. 2007) <u>aff'd</u>, 328 F.
App'x 695 (2d Cir. 2009); <u>see also</u> <u>In re Merrill Lynch</u>, 154 F.3d at 59-60; <u>Nat'l Grp. for
Commc'ns & Computers Ltd. v. Lucent Techs. Inc.</u>, 420 F. Supp. 2d 253, 266 (S.D.N.Y.
2006); <u>Pharr v. Evergreen Gardens, Inc.</u>, No. 03 Civ. 5520, 2004 WL 42262, at *2 (S.D.N.Y.
Jan. 7, 2004).

"The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." Rotella, 528 U.S. at 561; see also National Group for Communications and Computers Ltd. v. Lucent Technologies Inc., 420 F.Supp.2d 253, 264 (S.D.N.Y. 2006). The statute of limitations for RICO claims may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: 1) the plaintiff exercised due diligence in pursuing discovery of the claim during the period plaintiff seeks to have tolled; 2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; **and** 3) the defendants wrongfully concealed material facts relating to their wrongdoing. See Huckabone, 2014 WL 4146844, at *3 (citing 131 Main St. Assocs. v. Manko, 54 Fed. Appx. 507, 512 (2d Cir. 2002)). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). "A plaintiff attempting to apply fraudulent concealment must plead each of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure." Koch, 785 F. Supp. 2d at 116.

### Rio Tinto Failed to Exercise Due Diligence

The Court finds that Plaintiff has failed to demonstrate that it exercised due diligence in pursuing discovery of its claim during the period it seeks to have tolled, i.e., from December 9, 2008 to April 30, 2010. See Nat'l Grp., 420 F. Supp. 2d at 267. According to the Complaint, "[i]n April 30, 2010, Rio Tinto was genuinely shocked that Vale and BSGR were doing business together. **Upon learning** of Vale's involvement with Blocks 1 and 2 of Simandou, Rio Tinto exercised due diligence in pursuing discovery of the claims asserted herein." (Compl. ¶ 146) (emphasis added). As Defendants correctly point out, the Complaint "effectively admits [Plaintiff] did not conduct due diligence continuously from

when it knew it was injured [i.e., December 2008] and '*throughout* the period to be equitably tolled.'" (Def.'s Reply at 7) (emphasis in original). "[D]ue diligence [is required] by plaintiff *throughout* the period to be equitably tolled." Nat'l Grp., 420 F. Supp. 2d at 268 (emphasis in original). "A plaintiff who is not reasonably diligent may not assert fraudulent concealment." World Wrestling, 530 F. Supp. 2d at 529; see also In re Merrill Lynch, 154 F.3d at 60.

The Court notes that Plaintiff, in its Opposition Brief, belatedly contends that "in 2009 . . . Rio Tinto also engaged its global security division and hired two expert investigative firms as part of its diligence." (Pl.'s Opp'n Br. at 11). However, even this conclusory allegation is absent from the Complaint which fails to "plead each of the[] elements [of fraudulent concealment] with particularity." Koch, 785 F. Supp. 2d at 116. And, as noted supra p. 7, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." Fadem, 352 F. Supp. 2d at 516.

### Discovery of Plaintiff's Claim

The Court also finds that Defendants' alleged concealment did not prevent Rio Tinto from discovering the nature of its claim. See Huckabone, 2014 WL 4146844, at *3. With respect to Steinmetz, BSGR, and Thiam, Plaintiff knew or had inquiry notice of its injury on December 9, 2008 when the Guinean Government rescinded Rio Tinto's rights to Simandou Blocks 1 and 2, and on December 11, 2008 when it was publicly announced by the Guinean Government that the Blocks had been awarded to Defendant BSGR. See supra pp. 10-11. Certainly, by June 26, 2009, when the Guinean Government stated that the December 2008

rescission and transfer of Blocks 1 and 2 to Defendant BSGR were "final and irrevocable," Plaintiff had discovered its injury and the nature of its claim.[13] Id.

And, Plaintiff has not made an adequate showing that Vale's "conduct concealed any trace of the fraud that Defendants carried out." (Pl.'s Opp'n Br. at 9-10). Plaintiff's conclusory claim that "Vale lied about its true intentions during negotiations with Rio Tinto and kept secret its scheme to use the fruits of its fraud to convince the Government of Guinea to grant Blocks 1 and 2 to the RICO Enterprise," (Id. at 10), is insufficient to satisfy the particularity requirements of Rule 9(b). See Prudential Ins. Co. of Am. v. Hilton Hotels Corp., No. 95 Civ. 5575 (KMW), 1996 WL 340002, at *10 (S.D.N.Y. June 19, 1996) (Allegation that defendant "intentionally or recklessly misrepresented that it intended to negotiate the agreement set forth . . . in good faith and with all due diligence . . . falls far short of Rule 9(b)'s particularity requirement. Absent is any indication of which specific individual made the alleged false representations [and] the precise nature of the alleged representations."). And, "even assuming that [defendant] or its agent wrongfully concealed information . . . Plaintiff has not plausibly alleged how these actions actually prevented [its] discovery of [defendant's] role in [its] injury." Koch, 785 F. Supp. 2d at 117.

"Plaintiffs cannot take advantage of the equitable tolling provision because they knew the nature of their claim within the statutory period." Vikas Goel, 2015 WL 5037002, at *13; see

---

[13] Plaintiff was aware – or certainly on notice – by December 9, 2008 and December 11, 2008 and certainly by June 26, 2009, that Steinmetz, BSGR, and Thiam may have conspired with the Guinean Government to obtain Rio Tinto's mining rights to Simandou Blocks 1 and 2. Plaintiff said as much in their Complaint, which acknowledges: (1) that "BSGR's reputation for corruption and bribery [was] well known among those active in the mining industry," (Compl. ¶ 6); and (2) "those active in the Guinean mining industry . . . were well aware of allegations of BSGR's reputation for corruption and bribery since it began conducting business in the country," (Id. ¶ 78).

also Koch, 785 F. Supp. 2d at 117 (quoting Statistical Phone Philly v. NYMEX Corp., 116 F.

Supp. 2d 468, 483 (S.D.N.Y. 2000)) ("Equitable tolling arguments are only successful 'if the

fraudulent concealment succeeds in depriving plaintiffs of notice; otherwise every fraudulent

concealment claim would result in tolling.").

### Alleged Wrongful Concealment of Material Facts

"[E]ven when a plaintiff pleads active concealment by the defendant, the plaintiff must still

demonstrate that he exercised due diligence in trying to discover the fraud." In re Merrill Lynch

Ltd. Partnerships Litig., 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997) aff'd, 154 F.3d 56 (2d Cir.

1998) (citing Klehr v. A.O. Smith Corp., 117 S. Ct. 1984, 1993 (1997)).  Having found that

Plaintiff failed to exercise due diligence throughout the period to be equitably tolled and that

Defendants' alleged concealment did not prevent Plaintiff's discovery of the nature of its

claim, see supra pp. 16-18, the Court need not determine whether Plaintiff adequately pled

active concealment by the Defendants.  See, e.g., World Wrestling, 530 F. Supp. 2d at 529;

Koch, 699 F.3d at 157; Madison 92nd St. Associates, LLC v. Courtyard Mgmt. Corp., No. 13

Civ. 291, 2014 WL 3728591, at *14 (S.D.N.Y. July 28, 2014) aff'd, No. 14-2947-Civ., 2015 WL

5332093 (2d Cir. Sept. 15, 2015).

### (3)    No Open-Ended or Closed-Ended Continuity

Defendants argue, in the alternative, that even if Plaintiff's RICO claims were not time-

barred, Plaintiff has failed to plead a pattern of racketeering activity.  (Defs.' Mem. at 13-

14).  Specifically, Defendants contend that "[t]o plead the required pattern of racketeering

activity, a plaintiff . . . must show that the racketeering predicates . . . amount to or pose a

threat of continued criminal activity."  (Id.).  Defendants' argue that "the 'continuity'

19

requirement must be established by alleging either an 'open-ended' scheme, in which the

predicate acts are part of the defendants' regular way of conducting business, or a 'close[d]-

ended' scheme, consisting of a series of related predicates extending over a substantial period

of time." (Id.). Defendants contend that "Rio has failed to plead either." (Id.). Plaintiff

acknowledges that "the continuity requirement can be proved by 'close[d]-ended' or 'open-

ended' continuity," but argues that "the Amended Complaint establishes both." (Pl.'s Opp'n

at 14).

"To satisfy open-ended continuity, the plaintiff need not show that the predicates

extended over a substantial period of time but must show that there was a threat of

continuing criminal activity beyond the period during which the predicate acts were

performed." Cofacredit, 187 F. 3d at 242. Where "the scheme alleged by Plaintiff was

inherently terminable . . . there can be no argument supporting any claim of open ended

continuity." Watral v. Silvernails Farms, LLC., 177 F. Supp. 2d 141, 151 (E.D.N.Y. 2002)

aff'd sub nom. Watral v. Silvernails Farm LLC., 51 App'x 62 (2d Cir. 2002). "To satisfy

closed-ended continuity, the plaintiff must prove a series of related predicates extending over

a substantial period of time." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178,

184 (2d Cir. 2008). "Predicate acts extending over a few weeks or months ... do not satisfy

this requirement." Cofacredit, 187 F.3d at 242. The Second Circuit has "never held a period

of less than two years to constitute a 'substantial period of time.'" Spool, 520 F.3d at 184

(quoting Cofacredit, 187 F.3d at 242).

### No Open-Ended Continuity

With respect to open-ended continuity, Defendants argue that Plaintiff's pleading fails

because the Complaint alleges that the purpose of Defendants' fraudulent scheme was

accomplished when Rio Tinto was deprived of Simandou Blocks 1 and 2 in December 2008. (Def.'s Mem. at 14-15). Plaintiff counters that the open-ended continuity "does not cease simply because activity has ceased," and that "a threat of continuity inhered in the alleged racketeering activity." (Pl.'s Opp'n at 15). According to Plaintiff, "[t]he RICO Enterprise did not cease because it achieved its goal; it ceased because it was caught." (Id.).

The Complaint acknowledges that the RICO "enterprise's ultimate target was Rio Tinto's mining concessions in the Simandou region of southeast Guinea," (Compl. ¶ 1), i.e., that "Defendants' violations of state and federal law . . . was intended to obtain money and rights to Blocks 1 and 2 of Simandou." (Id. ¶ 195). Defendants' goal was achieved on December 9, 2008, when the Guinean Government sent a letter to Rio Tinto stating that it was rescinding Rio Tinto's rights to Simandou Blocks 1 and 2, and on December 11, 2008, when it was publicly announced that the Guinean Government was awarding exploration licenses for those same blocks to Defendant BSGR. (Compl. ¶ 92).[14]

The Court finds that the alleged RICO scheme was not only "inherently terminable," but, in fact, was terminated on December 8, 2008. See Watral, 117 F. Supp. 2d at 151. Plaintiff cannot plead open-ended continuity because there is "no threat of continuity where [the] alleged purpose of [a] fraudulent scheme was essentially accomplished," Passini v. Falke-Gruppe, 745 F. Supp. 991, 993 (S.D.N.Y. 1990); see also GICC Capital, 67 F.3d at 466 ("It defies logic to suggest that a threat of continued looting activity exists when . . . there is

---

[14] And, unquestionably, Defendants' goal was achieved no later than June 26, 2009, when "the Guinean Government made the initial December 2008 award of Simandou Blocks 1 and 2 to BSGR official." (Compl. ¶¶ 92, 100; see supra pp. 10-11).

nothing left to loot."); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004).

Plaintiff's argument that "Defendants' goal was not merely obtaining Simandou [Blocks 1 and 2] but thwarting Rio Tinto's efforts to reclaim [Blocks 1 and 2] and profitably mining and earning income from it," is not persuasive. (Pl.'s Opp'n at 14). "To say that [a defendant's] continuing control . . . constituted ongoing criminal activity would allow plaintiffs to turn every finite scheme . . . into an enterprise simply by characterizing the defendant's subsequent enjoyment of the proceeds of the scheme as continuous criminal activity." Bingham v. Zolt, 683 F. Supp. 965, 970 (S.D.N.Y. 1988). Plaintiff does not help its cause by arguing that Defendants "fraudulently concealed their illegal activities for a number of years," (Compl. ¶ 169), because "efforts by a defendant to cover up the underlying conduct are inadequate to satisfy the continuity requirement of the RICO statute." See Ray Larsen Associates, Inc. v. Nikko Am., Inc., No. 89 CIV. 2809 (BSJ), 1996 WL 442799, at *7 n.8 (S.D.N.Y. Aug. 6, 1996); see also World Wrestling, 530 F. Supp. 2d at 512.

### No Closed-Ended Continuity

With respect to closed-ended continuity, Defendants contend that "[a]ccording to the Amended Complaint, the alleged RICO enterprise did not exist until sometime in December 2008, and had achieved its goal of obtaining Rio's rights to Blocks 1 and 2 by December 11, 2008." (Id. at 16). Defendants also point out that it is rare that alleged RICO conduct persisting for less than two years establishes closed-ended continuity. (Id.). Plaintiff counters that "[t]he Amended Complaint alleges numerous predicate acts occurring between 2009 and 2013, all with the common goal of obtaining **and retaining** Rio Tinto's rights in

22

Simandou by any means necessary, and then strong-arming Rio Tinto into dropping an effort
to challenge that theft." (Id. at 14) (emphasis added).

The Complaint alleges that the RICO Enterprise was born at a meeting between Vale and
BSGR in December 2008 where Steinmetz, BSGR, and Vale formed an agreement to work
together – presumably in conjunction with the other Defendants and co-conspirators – to
"steal Rio Tinto's mining rights at Simandou." (Compl. ¶¶ 86, 87). Construing the
Complaint's allegations in the light most favorable to Plaintiff, the latest date by which the
Defendants achieved their goal was December 9, 2008 and December 11, 2008, when the
Guinean Government rescinded Rio Tinto's rights to Simandou Blocks 1 and 2 and assigned
those rights to BSGR, respectively.[15] Defendants' alleged RICO scheme lasted
approximately two weeks (or, at most, 7 months) which does not constitute a "substantial
period of time" sufficient to satisfy closed-ended continuity. Spool, 520 F.3d at 184; see also
GICC, 67 F.3d AT 467 ("[T]he Supreme Court made clear that closed-ended continuity can
only be shown through conduct occurring over a *substantial* period of time.") (emphasis in
original); DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001) ("[T]his Court has never held
a period of less than two years to constitute a 'substantial period of time.'").

The Court recognizes that "although continuity is 'primarily a temporal concept, other
factors such as the number and variety of predicate acts, the number of both participants and
victims, and the presence of separate schemes are also relevant in determining whether
closed-ended continuity exists.'" First Capital, 385 F.3d at 181. But, "it will be rare that

---

[15] And, the date of injury could be no later than June 26, 2009, when Defendant Thiam, as the
Minister of Mines, sent a "letter on behalf of the Guinean Government [that] made the initial
December 2008 award of Simandou Blocks 1 and 2 to BSGR official." (Compl. ¶ 100; see supra
pp. 10-11).

conduct persisting for a shorter period of time [than two years] establishes closed-ended continuity, particularly where [as here] the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy." Spool, 520 F.3d at 184 (internal citations omitted).  Rio Tinto has alleged that a "handful" of participants (three principal Defendants and a total of eight named Defendants) engaged in a single scheme to misappropriate Rio Tinto's mining rights to the Simandou Concession.  (Compl. ¶ 9).  "[N]one of the (other) indicia of closed-ended continuity— i.e. a large number and variety of predicate acts, a large number of either participants or victims, and the presence of separate schemes—is present in this case."  Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (Berman, J.); see also Watral, 177 F. Supp. 2d at 150 (Where "the scheme described in the Complaint was aimed at a single victim and involved the carrying out of a single plan.").

### Claim of RICO Conspiracy Fails

"Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 must fail if the substantive claims are themselves deficient."  Allen v. New World Coffee, Inc., No. 00 Civ. 2610 (AGS), 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002).  The dismissal of Plaintiff's underlying RICO claim "leaves the conspiracy cause of action without a leg to stand on."  Allen, 2002 WL 432685, at *6; see also Mehrkar v. Schulmann No. 99 Civ. 10974 (DC), 2001 WL 79901, at *6 (S.D.N.Y. Jan. 30, 2001) ("Because plaintiff's other RICO claims fail, the allegations in the amended complaint cannot set forth a conspiracy to commit such violations under § 1962(d))."); Denny v. Ford Motor

24

Co., 959 F. Supp. 2d 262, 274 (N.D.N.Y. 2013) ("Because plaintiffs' substantive RICO

claims are untimely, their conspiracy to violate RICO claim must fail as a matter of law.").

**State Claims Dismissed**

"Where federal claims in an action premised on federal question jurisdiction are

dismissed before trial . . . the state claims should be dismissed as well." Woodward v.

Morgenthau, 740 F. Supp. 2d 433, 440 (S.D.N.Y. 2010) (citing Castellano v. Board of

Trustees, 937 F.2d 752, 758 (2d Cir.1991)).  The Court declines to exercise supplemental

jurisdiction and Plaintiff's state law claims are dismissed without prejudice.  See Allen, 2002

WL 432685, at *6.

**IV.     Conclusion & Order**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss the Amended

Complaint [#178].  Plaintiff's Federal claims are dismissed with prejudice.[16]  Plaintiff's state

law claims are dismissed without prejudice.

The Clerk of the Court is respectfully requested to close the case.

Dated: New York, New York
      November 20, 2015

_RICHARD M. BERMAN, U.S.D.J._

**RICHARD M. BERMAN, U.S.D.J.**

---

[16] See Hearing Transcript, dated July 28, 2014 ("July 28 Hr'g Tr.").