The Sedona Conference Working Group Series



# The Sedona Conference Cooperation Proclamation

Cited in Rio Tinto PLC v. Vale SA
14Civ3042 Decided 3/2/15
Archived on 3/10/15
This document is protected by copyright.
Further reproduction is prohibited without permission.

*Dialogue Designed to Move the Law
Forward in a Reasoned and Just Way*



# The Sedona Conference Cooperation Proclamation

Reprints
The Sedona Conference hereby expressly grants any interested party royalty-free reprint rights to this specific document.

**wgs**

Copyright 2008
The Sedona Conference
All Rights Reserved.
Visit www.thesedonaconference.org

# *The Sedona Conference Cooperation Proclamation*

*The Sedona Conference launches a coordinated effort to promote cooperation by all parties to the discovery process to achieve the goal of a "just, speedy, and inexpensive determination of every action."*

The costs associated with adversarial conduct in pre-trial discovery have become a serious burden to the American judicial system. This burden rises significantly in discovery of electronically stored information ("ESI"). In addition to rising monetary costs, courts have seen escalating motion practice, overreaching, obstruction, and extensive, but unproductive discovery disputes – in some cases precluding adjudication on the merits altogether – when parties treat the discovery process in an adversarial manner. Neither law nor logic compels these outcomes.

With this Proclamation, The Sedona Conference launches a national drive to promote open and forthright information sharing, dialogue (internal and external), training, and the development of practical tools to facilitate cooperative, collaborative, transparent discovery. This Proclamation challenges the bar to achieve these goals and refocus litigation toward the substantive resolution of legal disputes.

## Cooperation in Discovery is Consistent with Zealous Advocacy

Lawyers have twin duties of loyalty: While they are retained to be zealous advocates for their clients, they bear a professional obligation to conduct discovery in a diligent and candid manner. Their combined duty is to strive in the best interests of their clients to achieve the best results at a reasonable cost, with integrity and candor as officers of the court. Cooperation does not conflict with the advancement of their clients' interests - it enhances it. Only when lawyers confuse advocacy with adversarial conduct are these twin duties in conflict.

Lawyers preparing cases for trial need to focus on the full cost of their efforts – temporal, monetary, and human. Indeed, all stakeholders in the system – judges, lawyers, clients, and the general public – have an interest in establishing a culture of cooperation in the discovery process. Over-contentious discovery is a cost that has outstripped any advantage in the face of ESI and the data deluge. It is not in anyone's interest to waste resources on unnecessary disputes, and the legal system is strained by "gamesmanship" or "hiding the ball," to no practical effect.

Effort to change the culture of discovery from adversarial conduct to cooperation is not utopian.[1] It is, instead, an exercise in economy and logic. Establishing a culture of cooperation will channel valuable advocacy skills toward interpreting the facts and arguing the appropriate application of law.

---

1   Gartner RAS Core Research Note G00148170, *Cost of eDiscovery Threatens to Skew Justice System,* 1D# G00148170, (April 20, 2007), at http:// www.h5technologies.com/pdf/gartner0607.pdf . (While noting that "several . . . disagreed with the suggestion [to collaborate in the discovery process] . . . calling it 'utopian'", one of the "take-away's" from the program identified in the Gartner Report was to "[s]trive for a collaborative environment when it comes to eDiscovery, seeking to cooperate with adversaries as effectively as possible to share the value and reduce costs.").



# *The Sedona Conference Cooperation Proclamation*

### Cooperative Discovery is Required by the Rules of Civil Procedure

When the first uniform civil procedure rules allowing discovery were adopted in the late 1930s, "discovery" was understood as an essentially cooperative, rule-based, party-driven process, designed to exchange relevant information. The goal was to avoid gamesmanship and surprise at trial. Over time, discovery has evolved into a complicated, lengthy procedure requiring tremendous expenditures of client funds, along with legal and judicial resources. These costs often overshadow efforts to resolve the matter itself. The 2006 amendments to the Federal Rules specifically focused on discovery of "electronically stored information" and emphasized early communication and cooperation in an effort to streamline information exchange, and avoid costly unproductive disputes.

Discovery rules frequently compel parties to meet and confer regarding data preservation, form of production, and assertions of privilege. Beyond this, parties wishing to litigate discovery disputes must certify their efforts to resolve their difficulties in good faith.

Courts see these rules as a mandate for counsel to act cooperatively.[2] Methods to accomplish this cooperation may include:

1. Utilizing internal ESI discovery "point persons" to assist counsel in preparing requests and responses;

2. Exchanging information on relevant data sources, including those not being searched, or scheduling early disclosures on the topic of Electronically Stored Information;

3. Jointly developing automated search and retrieval methodologies to cull relevant information;

4. Promoting early identification of form or forms of production;

5. Developing case-long discovery budgets based on proportionality principles; and

6. Considering court-appointed experts, volunteer mediators, or formal ADR programs to resolve discovery disputes.

### The Road to Cooperation

It is unrealistic to expect a *sua sponte* outbreak of pre-trial discovery cooperation. Lawyers frequently treat discovery conferences as perfunctory obligations. They may fail to recognize or act on opportunities to make discovery easier, less costly, and more productive. New lawyers may not yet have developed cooperative advocacy skills, and senior lawyers may cling to a long-held "hide the ball" mentality. Lawyers who recognize the value of resources such as ADR and special masters may nevertheless overlook their application to discovery. And, there remain obstreperous counsel with no interest in cooperation, leaving even the best- intentioned to wonder if "playing fair" is worth it.

---

2   *See*, e.g., *Board of Regents of University of Nebraska v BASF Corp.* No. 4:04-CV-3356, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable. [citations omitted]. If counsel fail in this responsibility—willfully or not—these principles of an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution.").



# *The Sedona Conference Cooperation Proclamation*

This "Cooperation Proclamation" calls for a paradigm shift for the discovery process; success will not be instant. The Sedona Conference views this as a three-part process to be undertaken by The Sedona Conference Working Group on Electronic Document Retention and Production (WG1):

> Part I: Awareness - Promoting awareness of the need and advantages of cooperation, coupled with a call to action. This process has been initiated by The Sedona Conference Cooperation Proclamation.

> Part II: Commitment - Developing a detailed understanding and full articulation of the issues and changes needed to obtain cooperative fact-finding. This will take the form of a "Case for Cooperation" which will reflect viewpoints of all legal system stakeholders. It will incorporate disciplines outside the law, aiming to understand the separate and sometimes conflicting interests and motivations of judges, mediators and arbitrators, plaintiff and defense counsel, individual and corporate clients, technical consultants and litigation support providers, and the public at large.

> Part III: Tools - Developing and distributing practical "toolkits" to train and support lawyers, judges, other professionals, and students in techniques of discovery cooperation, collaboration, and transparency. Components will include training programs tailored to each stakeholder; a clearinghouse of practical resources, including form agreements, case management orders, discovery protocols, etc.; court-annexed e-discovery ADR with qualified counselors and mediators, available to assist parties of limited means; guides for judges faced with motions for sanctions; law school programs to train students in the technical, legal, and cooperative aspects of e-discovery; and programs to assist individuals and businesses with basic e-record management, in an effort to avoid discovery problems altogether.

## Conclusion

It is time to build upon modern Rules amendments, state and federal, which address e-discovery. Using this springboard, the legal profession can engage in a comprehensive effort to promote pre-trial discovery cooperation. Our "officer of the court" duties demand no less. This project is not utopian; rather, it is a tailored effort to effectuate the mandate of court rules calling for a "just, speedy, and inexpensive determination of every action" and the fundamental ethical principles governing our profession.

Cited in Rio Tinto PLC v Vale SA 14Cv3042. Decided 3/2/15
Archived on 3/10/15
This document is protected by copyright.
Further reproduction is prohibited without permission.

