# EXHIBIT C

1

E7T3RIOC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   RIO TINTO PLC,

4                   Plaintiff,

5            v.                          14 CV 3042 (RMB)

6   VALE, S.A., et al,

7                   Defendants.

8   ------------------------------x
                                        New York, N.Y.
9                                       July 29, 2014
                                        2:00 p.m.
10
    Before:
11
                        HON. ANDREW J. PECK,
12
                                        Magistrate Judge
13
                           APPEARANCES
14
    QUINN EMANUEL
15        Attorneys for Plaintiff
    MICHAEL J. LYLE, ESQ.
16  ERIC C. LYTTLE, ESQ.

17  CLEARY GOTTLIEB STEEN & HAMILTON LLP
          Attorneys for Defendant Vale
18  LEWIS J. LIMAN, ESQ.
    JONATHAN I. BLACKMAN, ESQ.
19
    MISHCON de REYA
20        Attorneys for Defendant BSG/Steinmetz
    ELIZABETH ROTENBERG-SCHWARTZ, ESQ.
21  VINCENT FILARDO, ESQ.

22  SULLIVAN & WORCESTER
          Attorneys for Defendant Thiam
23  PAUL E. SUMMIT, ESQ.

24  SHER TREMONTE
          Attorneys for Defendants BSG Resources (Guinea)
25  MICHAEL TREMONTE, ESQ.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

2

E7T3RIOC

1          THE COURT:  Nothing was on the ECF system, at least as

2     of last night.  So why don't you tell me what you all

3     accomplished with Judge Berman yesterday.

4          MR. LYLE:  Good afternoon, your Honor.  Michael Lyle

5     on behalf of the plaintiffs.

6          Yesterday we appeared before Judge Berman and the

7     defendants have been granted leave to file -- first, we are

8     going to amend our complaint, we have been granted which we

9     will do consistent with the Court's order.  Defendants are

10    going to thereafter file motions for forum non conveniens.  And

11    there will be briefing on that stretching into September.

12    That's what transpired yesterday in front of Judge Berman.

13         THE COURT:  Do I assume from that, that discovery is

14    going forward while all of that is going on?

15         MR. LYLE:  Yes, your Honor.  The plaintiffs have for

16    your Honor the transcript, if you'd like to see what transpired

17    yesterday on that topic.

18         THE COURT:  Please.

19         MR. LYLE:  In the correspondence that the defendants

20    had submitted to Judge Berman on July 17, we responded on the

21    24th.  They sought again a stay of discovery.  At the close of

22    the hearing yesterday, Judge Berman stated on page 14 of the

23    transcript, which we've provided to you, he stated that "You

24    can discuss whatever you would like with Judge Peck.  Just so

25    it is clear, I have not imposed a stay of discovery in the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

E7T3RIOC

1     case."  And he goes on, "Indeed, I was looking at the case

2     management plan, not that I think you'll finish within the

3     discovery by the date that is set there, but there is no stay

4     from me."  Then whatever they want to bring before your Honor

5     with respect to discovery, they're free to do so.

6            We do understand, your Honor, that, based on our

7     discussions yesterday following the hearing with all of the

8     defendants, that they intend yet again to ask you for a stay of

9     discovery in this case.  If the Court is inclined to disrupt

10    what Judge Berman has already done, they're proposing a

11    briefing schedule.

12           But given what your Honor has already stated in your

13    last ruling which was the third attempt, to -- I'm sorry, the

14    second attempt by the defendants to stay discovery, if you

15    adhere to your reasoning in that opinion, we can dispense with

16    the time and the waste of judicial resources in briefing that

17    issue.

18           We believe discovery should proceed.  We have come

19    very close to an agreement with respect to a protective order.

20    There are a few outstanding issues.  We have an ESI order

21    virtually complete.  There may be a couple of matters we need

22    to come to your Honor for, for assistance, but we want to take

23    one more crack at it.  We think we made progress yesterday

24    afternoon.

25           Following that, we're prepared and ready to begin

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

E7T3RIOC

1     producing documents and receiving documents from the various

2     parties.  As the Court understands from the last time we were

3     before you, there is litigation between some of the defendants,

4     so presumably they're already gathering information in that

5     endeavor.

6             Given all of that and what Judge Berman has stated, we

7     would like to proceed as soon as we get agreement we think by

8     the middle of next week with respect to the final details of

9     any of the protective order issues or the ESI issues.

10            THE COURT:  Mr. Liman.

11            MR. LIMAN:  Your Honor, if I might.  Let me update you

12    on developments and then we can discuss our proposal of where

13    we go from here.

14            I think there are four principal developments.  First,

15    with respect to discovery, as your Honor asked, discovery is

16    proceeding.  As was represented to the Court would happen, the

17    parties served their initial disclosures.  All of the principal

18    parties have now served their initial disclosures.  And I'm

19    informed that the remaining party who has appeared is going to

20    be filing their initial disclosures today.

21            Second, we have exchanged markups of the ESI protocol

22    and of the draft protective order.  We exchanged markups last

23    week.  We scheduled a meet and confer that was to take place

24    yesterday afternoon, we scheduled that before the conference of

25    yesterday, took place yesterday, and was able to meet and

5

E7T3RIOC

```
1    confer in person, and we narrowed the issues with respect to

2    the ESI protocol and with respect to the protective order.

3           Second, we learned yesterday for the first time that

4    the complaint that we're now dealing with will not be the

5    operative complaint to this case.  We don't know what the

6    operative complaint would look like.  The plaintiffs

7    represented they wanted until August 29 to amend their

8    complaint.  Judge Berman did not give them until August 29.  He

9    required the amended complaint to be filed on August 15.

10   Plaintiffs represented that they were still investigating their

11   case, and that the amendments would be substantive.

12          The third point to note is that there are three

13   additional defendants who have apparently been served in this

14   case but who have not yet appeared.  Those are defendants

15   Cilins, Noy and Toure.

16          Then I think most significant is that the Court, after

17   hearing, receiving the various premotion letters, granted the

18   defendants' request to file on an expedited basis a motion to

19   dismiss on grounds of our forum selection clause on the grounds

20   of the Gilbert forum selections categories.

21          We had initially suggested to the Court that we would

22   file our papers in two weeks from yesterday.  The Court granted

23   the plaintiff's motion to amend the complaint, and therefore

24   decided to put our motion two weeks after the filing of the

25   amended complaint.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

E7T3RIOC

1          THE COURT:  That's no later than August 29, if they

2     take until their last day.

3          MR. LIMAN:  Well, because of the intervention of Labor

4     Day, the Court originally set September 1.  We pointed out that

5     was Labor Day.  And we do it on September 2.  The Court

6     graciously granted us until September 3rd.  That is now

7     scheduled for motion papers to be filed on September 3rd.  Rio

8     Tinto's opposition two weeks later, and our reply one week

9     after that which would be September 24.

10          The Court made clear that it was prepared to consider

11     the motion expeditiously.  It is a substantial motion.  We

12     believe it is a meritorious motion, we pointed out to the

13     Court, would decide this whole case and make any further motion

14     papers irrelevant.

15          We did at the end of the conference yesterday raise

16     with the Court the issue of a stay of discovery.  The Court

17     made clear, as counsel's pointed out, that Judge Berman was not

18     prepared to enter a stay himself.  I then raised with the Court

19     whether the Court would permit us -- Judge Berman said he was

20     not prepared really to entertain a motion for a stay.  I then

21     asked the Court, this is I believe on page 12 of the

22     transcript.  Page 12, line 19, that what we would ask the Court

23     for is leave to make a motion in front of Judge Peck if it is

24     appropriate.  And I said let me lay it out.  The Court then

25     said a motion as to discovery?  I confirmed as to discovery.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

E7T3RIOC

1    And the Court said if he will take it, it is up to him.  I'm

2    not going to direct it.  You can go back to him, tell him what

3    has happened, bring him the transcript from today, argue

4    whatever you want to argue, and plaintiff will argue what they

5    want to argue.

6            Then, I raised the point that the reason why I wanted

7    to raise it is that there have been extensive document requests

8    addressed to the parties.  I believe a stay would be

9    appropriate.

10           THE COURT:  I can read faster than you can talk.  So

11    I've read all of it.  "All" meaning, so you know, 12 through

12    14.

13           MR. LIMAN:  I think the upshot is the Court did not

14    prejudge the issues with respect to whether a stay is

15    appropriate.  We met and conferred yesterday with the

16    plaintiffs with respect to a schedule on a motion to stay

17    discovery.  The proposal that we agreed on was that if the

18    Court would receive it, we would submit our motion this Friday,

19    August 1.  The opposition would be filed next Friday, August 8.

20    And the reply would be filed August 12.

21           THE COURT:  Let me think this through out loud with

22    all of you.  And I recognize everything is circular.  But we

23    don't yet have the new complaint.  So you're going to be making

24    this argument based on a motion to dismiss on a complaint that

25    we don't yet have.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

E7T3RIOC

1          It may make more sense, although I recognize that with

2     discovery ongoing, kicking it down the road 30 or 60 days is a

3     problem, but I'm not sure that I'm going to be in any better

4     position to stay discovery on August 13 than I was previously,

5     other than it looks like you convinced Judge Berman to give me

6     the discretion to rule on the issue, and then for either side

7     that's not happy, or both sides, to go to Judge Berman so he

8     can re-review what he previously decided.  I'm not sure this

9     makes sense.

10          MR. LIMAN:  Let me address the chicken and the egg

11     issue because we thought about it.  And I think the answer from

12     our perspective is that we now have extensive document

13     requests, the document request of Vale that is 50 requests

14     covering a period of 10 years, equivalent request to the other

15     corporate defendants.

16          Now, one might say, you know, are those requests

17     appropriate.  It is hard for us to imagine how we're going to

18     respond to those requests themselves, because we don't have a

19     complaint that says whether the request is relevant or not to a

20     well-pled allegation.  But, the thrust of our motion will be

21     with respect to I guess two points.  First, the thrust of our

22     motion is with respect to the extent of the discovery that's

23     being requested.

24          THE COURT:  Are you going to be in a position to give

25     me information which is, a request could be incredibly

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

1    overbroad on its face, but if the answer is we don't have any

2    documents or the answer is it is a very broad request but when

3    push comes to shove, in the good old paper days, the answer

4    could be we went to the central file room, and we have a nice

5    neat file, yes, it is 1,000 pages long, but it is all there.

6             MR. LIMAN:  Your Honor, I don't think any of these

7    requests, speaking for Vale, none of these requests would lead

8    to the latter answer.

9             THE COURT:  Nothing ever leads to it being that easy.

10   Probably never did then.  Certainly doesn't now.

11            Let's put it this way.  Then we can re-talk the timing

12   of the motion.  If all you're going to tell me is this is over

13   many years and many requests and, therefore, presumptively it

14   is broad and expensive, that doesn't do me any good.  What does

15   me good, and it may be premature for you all to do this, is to

16   say to review this, and I know you're working on the ESI

17   protocol as well, we have 500 custodians with 200 terabytes

18   each of data, and our vendor tells us even if we use deduping

19   and technology assistive review and the most comprehensive

20   cost-effective search techniques, it is still going to cost us

21   a billion dollars, that's one answer.  One of we don't know

22   where this stuff is or we don't know yet, it is early, is not

23   overly helpful.

24            MR. LIMAN:  Your Honor --

25            THE COURT:  Particularly if it is likely, as there was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

E7T3RIOC

1    some reference in the few pages I've skimmed of the transcript,

2    that some of the same material is going to be relevant in the

3    other litigations, either that are ongoing between two of the

4    defendants, or that even your, in essence, forum non conveniens

5    or contractual argument works, that you would still be subject

6    to that material being discoverable in Brazil or wherever else

7    you all think the case is supposed to be.

8          MR. LIMAN:  Your Honor, I can address the latter

9    point.  With respect to the former point, I would like to

10   confer.  With respect to the latter point, that the discovery

11   will end up being usable somewhere else.  We respectfully

12   disagree.  And we can lay this out in our papers.  But

13   obviously, the standards under Rule 34 are dramatically

14   different than the standards for disclosure under U.K. law.  If

15   we're right on our motion, then what the parties contracted for

16   was U.K.

17         THE COURT:  You may also want to consider, and it may

18   only have to do with a cost shifting, is 28 U.S. Code I think

19   it is 1782 if I'm not being dyslexic, which is if you've got a

20   U.K. litigation and under U.K. disclosure rules, which are

21   different than ours, but to a certain extent come out to the

22   same place.

23         In addition, one could use, and I'm always surprised

24   more lawyers don't use it, not that I'm looking for more

25   business for our courts, but the 28 U.S. Code discovery in aid

E7T3RIOC

1   of a foreign proceeding.

2        MR. LIMAN:  Your Honor, actually the interesting thing

3   about this case, is that now initial disclosures have been

4   served, it appears that there is not a single document that

5   resides in the United States.  Rio has served their initial

6   disclosures, they've said all of their documents are either in

7   London, Guernsey or South Africa.  Vale's documents are in

8   Brazil.  BSGR has served their initial disclosures.  None of

9   the documents they have are in the United States.

10        And actually, that's sort of highlights a principal

11   point with respect to discovery.  When we met and conferred

12   yesterday, one of the issues that the plaintiff raised was the

13   protective order would need to take into account the issues of

14   U.K. privacy law because their documents are subject to U.K.

15   privacy law which is more restrictive.  We actually disagree we

16   should be bound by their --

17        THE COURT:  I'm less sympathetic to the plaintiff on

18   that than I might be to a defendant.  You brought the case.  If

19   U.K. or E.U. or anyone else's privacy laws create a problem, I

20   will go through the full Supreme Court Societe Aerospatiale

21   rubric and all of that.

22        But certainly, and again none of these are orders,

23   they're thinking out loud to help you through all of this and

24   help me through this.  But my inclination would be if you've

25   got U.K. privacy problems, I'm willing to work with you.  But,

E7T3RIOC

1    you want to be in this court.  It is more important for the

2    plaintiff to resolve that than it would be for a defendant

3    whose documents may be subject to Brazil or someone else's

4    privacy laws.  It is not something you have to answer right

5    now.  All right.

6           Well, certainly, I can't stop you from making the

7    motion.  Until I decide it, discovery goes on.

8           MR. LIMAN:  Your Honor, if I could make a suggestion

9    with respect to scheduling.  We don't know yet what the

10   operative complaint is going to say.  We don't know whether the

11   plaintiffs are going to stand by their discovery requests.  It

12   is odd in my experience that you serve discovery requests

13   relating to a prior complaint.  It puts the defendants in a

14   position where you can't respond, we wouldn't be able to

15   respond.

16          My suggestion is the following, and I haven't

17   conferred with our co-defendants with respect to this.  But

18   that on August 15, when the amended complaint is filed, the

19   plaintiffs can tell us or, on or before then, can tell us

20   whether they're going to elect to stick behind their existing

21   interrogatories and existing document requests.

22          There is some prejudice to us with respect to that.

23   We would be letting them withdraw their existing

24   interrogatories, even though it counts against the number, but

25   we haven't done anything with respect to those interrogatories.

                                                                            13
        E7T3RIOC

1       That would happen on the 15th.  We would be, within that time

2       period, also preparing our motion based upon forum non

3       conveniens.

4            My suggestion would be that some time shortly after

5       August 15, at that time we file our motion for a stay of

6       discovery.  We'll know what the complaint looks like, we'll be

7       in a position to advise your Honor with respect to the forum

8       non conveniens.  We will be able to make our case or not make

9       it with respect to the document requests, depending on whether

10      they stand behind the existing document requests.

11           THE COURT:  Let me ask you one last question then I'll

12      hear from any of your co-defendants who want to zig and zag, if

13      they do, and then I'll hear from Mr. Lyle.

14           Do you need any discovery in connection with the forum

15      non conveniens motion?

16           MR. LIMAN:  We don't, and the Second Circuit has made

17      it very clear that the forum non conveniens motions are

18      ordinarily considered just on the basis of affidavits.  We will

19      have an expert affidavit establishing why this case doesn't

20      belong in this court.

21           Let me explain why.  It is a U.K. contract.  So the

22      question of the scope of the forum selection clause is a

23      question of U.K. law.  Judge Berman has given us permission to

24      submit letter briefs and attaching the affidavit.

25           THE COURT:  Okay.

                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

E7T3RIOC

1          MR. LIMAN:  If I could just confer for a moment with

2     my colleague.  I've got nothing further.

3          MR. FILARDO:  Good afternoon, your Honor.  Vincent

4     Filardo.  We represent the BSG Resources Limited and Benjamin

5     Steinmetz.  If I could be heard from my position behind counsel

6     table.

7          THE COURT:  Go ahead.

8          MR. FILARDO:  We are joining in the motion to dismiss

9     pursuant to forum non conveniens.  We have different grounds.

10    We're not proceeding on the contractual ground.  The so-called

11    exclusive forum selection ground.  We are proceeding under the

12    general balance factors test.

13         I raised an issue before Judge Berman yesterday which

14    I think precipitated the conversation we had with respect to a

15    stay of discovery, and that would be it would be allowed to be

16    brought to your Honor's attention and that your Honor would be

17    allowed to consider it fully.

18         That issue was that the fact that discovery is

19    currently ongoing, but yet, there are foreign defendants here

20    that the Court has not found personal jurisdiction over yet,

21    creates an issue as to whether or not it is appropriate to

22    proceed with discovery under the Federal Rules of Evidence.

23         The issue specifically is, if broad based merits

24    discovery which has been served by plaintiffs, under the

25    federal rules which have been served, document requests and

E7T3RIOC

1    interrogatories, that it is not appropriate to proceed under

2    the federal rules, but instead under the Hague.

3         THE COURT:  The Supreme Court has already more or less

4    decided that.  I think your question is, is there personal

5    jurisdiction or not.  But if we're talking merits discovery,

6    again, under Aerospatiale, the Supreme Court said the Court has

7    discretion whether to go Hague or federal rules.

8         MR. FILARDO:  I believe it said that with respect to

9    limited jurisdictional discovery, the District Court would have

10    discretion to apply either -- because at that point in time the

11    Court would have the party --

12         THE COURT:  It's been a while since I read the case,

13    but my recollection is it is not limited to jurisdictional

14    discovery.

15         MR. FILARDO:  I can direct your Honor to an opinion

16    from this court on it that derives --

17         THE COURT:  This court meaning me?

18         MR. FILARDO:  This court meaning the Southern District

19    of New York.  Phillip Morris 2004 WL 1348987 (S.D.N.Y. June 15,

20    2004); as well as In Re Automotive Refinishing Paint.  That's

21    in the Third Circuit, 358 F.3d 288 (3d Cir. 2004); and In Re

22    Vitamins Antitrust Litigation.  That's out of the District of

23    D.C.  120 F. Supp. 2d 45 (D.D.C. 2000).

24         Your Honor, the issue that was decided there was that

25    since defendants had subjected themselves for the limited

E7T3RIOC

1   purpose of jurisdiction, for the court to determine personal

2   jurisdiction, that it should abide by the discretion of the

3   court for that determination.  And therefore, limited

4   jurisdictional discovery would be allowed, again at the

5   discretion of the court, as to whether or not proceed under the

6   Hague or under the federal rules.

7          THE COURT:  All right.  Let me cut to the chase.

8   Whether it is Hague or federal rules impacts on timing, but if

9   you're moving to stay, what are you moving to stay?  Because

10  obviously, if you're going to seek leave from Judge Berman to

11  make a motion to dismiss for lack of personal jurisdiction, you

12  have to subject yourself at least to some form of discovery.

13  And I would certainly expect you to talk about that with the

14  plaintiffs before asking me to rule as to what they want, if

15  anything, what they need, if anything, and whether you're able

16  to reach agreement on how that is going to occur.  As opposed

17  to a motion to stay discovery.

18         MR. FILARDO:  We actually discussed that a little bit

19  yesterday, your Honor.  We had an opportunity to meet and

20  confer.  The issue that came up is plaintiffs asked us, well,

21  would you object to limited jurisdictional discovery.  Of

22  course they haven't asked for that yet.  They're still seeking

23  broad based merits discovery.  But, the cases in the Second

24  Circuit and the cases in the Southern District also say that if

25  a prima facie case for personal jurisdiction has not been made

E7T3RIOC

1    on the pleadings, plaintiffs aren't even entitled to that

2    limited jurisdictional discovery.  That has been our position

3    from day one here.  We have --

4            THE COURT:  Did you raise that with Judge Berman?

5            MR. FILARDO:  We raised the issue generally about

6    whether or not it would be the Hague or the federal rules.  He

7    acknowledged that he understood the issue.  But then again

8    directed that down to your Honor.

9            THE COURT:  You seem to be saying, and again, you put

10   the cart before the horse in terms of the amended complaint

11   that's coming.  If your position is they're not entitled to any

12   discovery, and you should make the motion on that basis.  And

13   frankly, if the Court decides otherwise, you're out of luck.

14   Or you're going to make the argument that they're not entitled

15   to jurisdiction, but even if they are, they've now had it in

16   some form and you still win.

17           I certainly do not want to have to decide or have

18   Judge Berman decide the personal jurisdiction issue twice.

19           MR. FILARDO:  Agreed, your Honor.  I think what I'm

20   alerting the Court to is if discovery is going to go forward,

21   in the form that it has been served, we are objecting to that

22   form.

23           THE COURT:  That I understand.  That you don't want

24   merits discovery until it is decided if you are in the case.

25           MR. FILARDO:  Therefore, we may be before your Honor

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

18

E7T3RIOC

1    on some kind of motion.

2            THE COURT:  Any of the other defendants have anything

3    to add before I go back to Mr. Lyle?

4            MR. LYLE:  Thank you, your Honor.  Just to follow up

5    on the discussion you were just having with counsel for

6    Steinmetz, the Court is quite right.  In connection with your

7    Aerospatiale decision, which is 482 U.S. 522.

8            In addition, your Honor, in connection with that, the

9    Second Circuit has followed that in the Lind opinion which is

10   706 F.3d 92.  More recently, Judge Torres in the Southern

11   District of New York has issued an opinion at 2013 WL 5308028.

12           All of those cases stand for the proposition that the

13   federal rules are the preferred -- are the default, and that

14   the Hague, which is a much, as the Court knows, much slower

15   cumbersome process for discovery, there is a balancing test

16   that has to be applied in connection.  But the federal rules is

17   the default position always.

18           We are happy, your Honor, we have not yet had any of

19   the defendants with respect to any of our document requests or

20   interrogatories, because their answers aren't due yet, but we

21   have not had any of them raise with us any specifics with

22   respect to a single one of our requests.  What is wrong with

23   our requests, why is it too broad, why is it too burdensome.

24   We're more than prepared to engage in that dialogue.

25           THE COURT:  You do seem to be working well in certain

E7T3RIOC

```
 1    respects.  And not to be a pessimist, I don't think that the
 2    issue of how broad is too broad is likely to be resolved while
 3    the forum non conveniens and other quasi-jurisdictional issues
 4    are outstanding.
 5          What can you tell me about what you're going to do
 6    with the amended complaint about asserting jurisdiction, etc.?
 7    Do you need discovery to defeat the personal jurisdiction
 8    motion?
 9          MR. LYLE:  We believe we will need discovery to defeat
10    the personal jurisdiction motion.  And interestingly though,
11    many of the allegations with respect to personal jurisdiction,
12    the conduct also provides the basis for liability.  Because
13    we're not talking about a situation where a defendant, for
14    example, has a home in New York.  We're talking about conduct
15    that gave rise to the liability.  So, a lot of merits and
16    jurisdiction --
17          THE COURT:  If the conduct took place abroad --
18          MR. LYLE:  Well, in our complaint, your Honor, there
19    is conduct alleged here in New York and in the United States.
20          THE COURT:  By Mr. Filardo's clients?
21          MR. LYLE:  By defendants in this case and under
22    Mr. Filardo's client's direction and control.  Other defendants
23    in the case acting under the direction and control of
24    Mr. Filardo's client.
25          THE COURT:  Do you have proof of the under direction
```

20

E7T3RIOC

1    and control?

2         MR. LYLE:  Yes.

3         THE COURT:  Are the merits and jurisdiction going to

4    be intertwined so much that under the standard sort of

5    traditional tests, they don't have a home, they don't have a

6    bank account, they don't have an office, etc., under all those

7    you two can stipulate that is correct, and then you're going to

8    say but somebody or other acted in New York as part of this

9    conspiracy.  And on information and belief, that somebody was

10   under the direction and control of Mr. Filardo's client, and so

11   that we're never going to resolve jurisdiction without

12   resolving the merits.

13        MR. LYLE:  We think that we can craft and come to an

14   agreement with Mr. Filardo in terms of what the jurisdictional

15   components of that would be.  I simply point out some of that

16   will be merits based related.  It just inherently will be the

17   case, given the allegations.

18        THE COURT:  I understand that.  But it strikes me that

19   at least as to Mr. Filardo's clients, it makes sense to focus

20   on jurisdictional discovery as opposed to pure merits

21   discovery, recognizing there will be some overlap.  So that has

22   to go forward regardless.

23        Remind me, your clients are U.K. or Brazil?

24        MR. FILARDO:  Guernsey, Channel Islands, for BSGR, and

25   Mr. Steinmetz is actually Switzerland, resident of Switzerland

E7T3RIOC

1    and of Israel.

2            THE COURT:  All right.  Well, you all work it out.

3    I'm telling you right now, I know that there are blocking

4    statutes, and our friends in Switzerland are certainly in bank

5    secrecy pretty strong.  As to whatever else might be needed, I

6    don't know.  But, I'm going to expect a level of cooperation

7    from your clients in making whatever has to happen, whether

8    it's proof federal rules or whether it's without prejudice, as

9    long as you're able to reach a compromise with the plaintiff.

10   Without prejudice to your argument that it should be the Hague

11   or it must be the Hague.  You're still willing to do discovery,

12   quote unquote, informally, whatever.  I expect you all to work

13   it out.

14           So, what else do you want to tell me, Mr. Lyle?

15           MR. LYLE:  With respect to the amended complaint, your

16   Honor inquired.  Our allegations, the amendments that we are

17   going to make will clarify, expand on various of our claims,

18   and provide more specificity based on additional information

19   that we've received.

20           The gravamen of our complaint, though, will be no new

21   counts.  The defendants will have had -- and based on the

22   current state of the complaint, have more than enough of an

23   understanding of the allegations against them.  And our

24   discovery requests themselves to have meaningful discovery,

25   even while we're preparing our amended complaint.

22

E7T3RIOC

1          THE COURT:  So I think I hear you saying that

2     everything you've already asked will still be relevant under

3     the amended complaint.  Is that what you're saying?

4          MR. LYLE:  Yes.

5          THE COURT:  All right.

6          MR. LYLE:  Again, your Honor, we will have a meet and

7     confer and dialogue.  As you pointed out, we've had success

8     working things out.  We may be able to come to some accord.  We

9     haven't had any dialogue on that.  We're prepared to do that

10    with each of the defendants as we work through the various

11    motions that they've elected to pursue.

12          THE COURT:  Okay.

13          MR. FILARDO:  Your Honor, just let me say, I don't

14    mean to overstate my client's position.  But, the allegations

15    with respect to jurisdiction are completely -- currently in the

16    complaint, completely unsufficient under the CPLR, under the

17    jurisdiction provisions of RICO.

18          THE COURT:  As we talked about with the amended

19    complaint, I'm going to do the same thing with your

20    jurisdictional argument.  If you're willing to live or die once

21    you see the amended complaint on the ground that, based on the

22    complaint, and the standard with respect to a motion to dismiss

23    for lack of personal jurisdiction based on the complaint with

24    no discovery, you win.  And if you lose that, you're in, we can

25    go that route.

23

E7T3RIOC

1          If you want the belt and suspenders approach, I'm not

2     going to decide or have Judge Berman decide the motion twice.

3     So, if you want to make a two-point motion after some

4     jurisdictional discovery that says point one the Court

5     shouldn't even consider the jurisdictional discovery because on

6     the face of the complaint, the allegations are insufficient.

7     You win, plaintiff loses.  But point two, in the event the

8     Court rules against us on point one, we've now had

9     jurisdictional discovery, we have no contact with the U.S.  The

10    argument that our agent did something is wholly unsupported and

11    speculative.  Whatever.

12          You don't get to do it twice in two different motions.

13    So talk to your client, make that decision.  My inclination is

14    to let Mr. Liman who deferred to Mr. Filardo say something, and

15    then I will rule unless Mr. Lyle has a counter response.

16          MR. FILARDO:  Thank you, your Honor.

17          MR. LIMAN:  I was going to address two points.  First,

18    to try to answer your Honor's question about when we would like

19    to make our motion and then to address the question of

20    discovery responses and the time we need.

21          With respect to when we would like to make our motion.

22    Our druthers had been to make it by end of this week.  We hear

23    what your Honor says that we don't have the amended complaint.

24          THE COURT:  Although you now know it is going to add

25    facts but not necessarily delete anything.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

1           MR. LIMAN:  Not necessarily.  But I don't think we've

2    heard the full entirety.  We frankly don't know whether those

3    facts that are added will change the discovery requests or

4    change our responses to the discovery requests.  It is hard to

5    put us in a position of, and maybe I should address that first.

6    It is hard to put us in a position of serving responses to

7    discovery, then to have an amended complaint filed, and making

8    all of that work illusory.

9           THE COURT:  Next point.

10          MR. LIMAN:  So, our suggestion would be that we be

11    given some period of time after the filing of the amended

12    complaint to respond to the discovery requests.  Our request

13    would be we would have 30 days after the filing of the amended

14    complaint, so file our responses to the discovery requests if

15    they stick by those discovery requests.  If they withdraw them,

16    then whatever the time comes.

17          With respect to the motion for a protective order to

18    stay discovery.  We're talking about only a limited period of

19    probably about a month.  Because the motion will be fully

20    submitted by September 24.  The judge has made clear he doesn't

21    like to entertain argument.  And nobody's requested argument.

22          THE COURT:  We often promise fast rulings, and at the

23    Article III level criminal trials, and at any level, the number

24    of people who request, this is an emergency and we need it

25    fast --

E7T3RIOC

```
 1              MR. LIMAN:  Understood, your Honor.  This was a motion
 2      that the judge accepted on an accelerated basis.  Prior to any
 3      response to the complaint, after all, issue is not going to be
 4      joined until after the judge decides the motion of forum non
 5      conveniens.
 6              THE COURT:  I got you.
 7              MR. LIMAN:  We would suggest September 3 for the
 8      motion for a protective order to stay discovery for that
 9      limited time period.
10              THE COURT:  Mr. Lyle, any last word?  Anything new you
11      have to say?
12              MR. LYLE:  I have nothing new, your Honor, other than
13      to point out we will not be withdrawing our discovery requests
14      as much as Mr. Liman wants us to say that.  We will not.
15              THE COURT:  I understand that.  When were they served,
16      by the way?
17              MR. LYLE:  They were deemed served by your Honor at
18      our last hearing.
19              THE COURT:  July 10.  Okay.  The time to respond to
20      the requests, to the extent they're not modified, and I know it
21      is going to keep you busy, you want August 29 or September 3?
22      How much do you want to kill your associates' Labor Day
23      weekend, Mr. Liman, and other defense counsel?
24              MR. LIMAN:  I think September 3, your Honor.  I will
25      say for the record that it will be destroying my Labor Day
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

E7T3RIOC

1    weekend as well.

2            THE COURT:  Okay.  Well, misery loves company.  I'm

3    sure your associates will be happy to hear you will be in the

4    trenches with them.

5            All right.  So the formal response is deferred until

6    September 3.  However, I would like you, between August -- and

7    "like" is a polite form of court order -- to have a start of

8    discussions with plaintiff's counsel between now and that date

9    to see, and perhaps the fact that I'm not staying discovery but

10   that you're moving for it, there may be an incentive on both

11   sides to be more reasonable with all of this hanging over their

12   head, although I also understand that the fact there may be a

13   motion to stay granted may incentivize defendants to do as

14   little as possible, and I'm hoping it won't.

15           So, work as hard as you can with plaintiff's counsel

16   to see if discovery goes forward or when discovery goes forward

17   what you can agree you will be doing, what you can't agree,

18   what you're willing to agree will go forward regardless,

19   because it will have to happen somewhere.  Whatever else it may

20   be, and also there often is a misunderstanding about the scope

21   of a request of the old form of all documents about the sale of

22   widgets.  Defendant, do you really want the packing invoices,

23   the shipping labels, no, I just want to know how many widgets

24   you sold.  Dialogue is always good.

25           But the formal response will be due September 3.  And

27

E7T3RIOC

1    in connection with that, I suggest you incorporate into your

2    responses the gist of the December 2015

3    likely-to-then-be-effective rules, meaning you say this is

4    overbroad, etc., or we object to this, but, here's what we can

5    do, here's what we think is reasonable, etc., etc.

6          And that will also be helpful to me in connection with

7    any motion to stay that is based on burden.  Because if

8    plaintiff drops certain requests or modifies them to reduce

9    your burden, there may not be as much of a burden.

10         As to Mr. Filardo's clients, I think it is pretty

11   clear that you're going to have to do a separate set to him of

12   jurisdictional related discovery requests.

13         How soon can you get it out?  Hopefully so the

14   response time will be approximately the same.

15         MR. LYLE:  Seven days, your Honor?

16         THE COURT:  I'm sorry.

17         MR. LYLE:  We can get it out in seven days.

18         THE COURT:  Next Tuesday.  That would technically mean

19   your response is due later than September 3, but let's leave it

20   as September 3.  I've shortened you from 30 days to 27 or

21   something.  All right?

22         MR. FILARDO:  Okay.

23         THE COURT:  At that point, maybe the thing to do is

24   bring you in on the 4th or 5th of September, see where we are

25   with a motion for a stay to come quickly thereafter.

                                                                      28
E7T3RIOC

1            How about Monday, September 8, to give you all time to

2       actually further meet and confer between the 3rd and the

3       conference.  And do you prefer 2 o'clock or 9:30 since that day

4       at the moment is open?

5            MR. LIMAN:  I think we would prefer the morning, your

6       Honor, but we can do either time.

7            MR. LYLE:  We're coming from out of town.  What day is

8       that?

9            THE COURT:  Monday, September 8.  You probably want

10      2 o'clock.

11           MR. LYLE:  It would be very much appreciated.

12           THE COURT:  September 8 at 2 p.m.  If we ever get to

13      the point in conferences where the lifting is not as heavy,

14      shall we say, you certainly should request the ability to

15      appear telephonically and have a local person sitting here just

16      in case.  But, I don't mean to make you schlep up if it is

17      going to be a 10-minute conference on status.  We're now almost

18      at the hour mark, so it was certainly worth your traveling for

19      a conference like this.

20           MR. LYLE:  Thank you, your Honor.

21           THE COURT:  That also means by the time you make the

22      motion to stay, I will have seen at least one if not both

23      briefs on the motion going to Judge Berman on the forum non

24      motion to dismiss, which I think will make it easier to decide

25      what to do.  And I do want you to complete the ESI protocol and

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E7T3RIOC

```
 1    the protective order between now and then, and probably submit
 2    it as soon as you either reached agreement or reached agreement
 3    on what you can reach agreement on, with impasse paragraphs.
 4            I would suggest you just send me one version with
 5    everything you've agreed upon as indicated, and where you
 6    disagree, a plaintiff version and a defendant version, one
 7    right after the other with then a separate cover letter,
 8    preferably joint, separately if necessary, as to why I should
 9    cross out the other guy's paragraph and leave yours in.
10            If there are multiple defense views and they don't all
11    get harmonized, then there would be plaintiff and then
12    defendant one and then defendant two versions as such.
13            How soon do you think you will have that wrapped up so
14    it doesn't just hang around until September 3?
15            MR. LIMAN:  I think plaintiff's counsel represented
16    that we could get it done this week.  I think this week might
17    be a little bit tight in terms of conferring with our
18    respective clients -- you said next week?
19            THE COURT:  Do you want to submit it to me by
20    Thursday, August 7?
21            MR. LIMAN:  The following Monday, your Honor.
22            THE COURT:  August 11 it is.  That will be the ESI
23    protocol and the protective order.  And it is, without
24    prejudice, assume it is for discovery going forward.  And then
25    obviously, if that is impacted by either of the defendants'
```

E7T3RIOC

1    stay motions, we'll deal with it.  But don't argue about that

2    in terms of the ESI protocol itself and presumably it won't

3    affect the protective order either.

4         Frankly, I have almost never heard an argument about a

5    protective order that's worth the hourly rate you all are

6    charging.  It is either a single tier or double tier or some

7    various thereof.  So I am sure you're going to work that out.

8         Anything else we should be doing?

9         MR. LIMAN:  Not from the defense's standpoint.

10        MR. FILARDO:  Nothing else, your Honor.

11        MR. LYLE:  Nothing further for the plaintiff.

12        THE COURT:  Usual drill.  The transcript contains my

13   orders and triggers any objections.  That is to say this

14   conference triggers your 14 days for objections, regardless of

15   when you get the transcript.  You're obviously all used to

16   buying transcripts, since you already have Judge Berman's

17   transcript from yesterday.  But, for the record I'm requiring

18   both sides to order the transcript here 50/50.  Plaintiff on

19   the one hand, multi-defendants on the other.  And you're all

20   rich enough, you can figure out how you'll split it from the

21   defendants' side of it, alternating or fractionizing or

22   whatever.  Hopefully nobody will raise a problem with that.

23        Thank you.  Enjoy as much of the rest of the summer as

24   you can.

25                          o0o

                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300