# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                            :
RIO TINTO PLC,                                              :
                                                            :
                        Plaintiff,                          :        Case No. 14-cv-3042 (RMB)(AJP)
                                                            :
            - v -                                           :        **<u>ORAL ARGUMENT REQUESTED</u>**
                                                            :
VALE, S.A., et al.,                                         :
                                                            :
                        Defendants.                         :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# DEFENDANT MAHMOUD THIAM'S OBJECTIONS
## <u>TO MAGISTRATE JUDGE ANDREW J. PECK'S FEBRUARY 1, 2016 ORDER</u>

Paul E. Summit
Andrew T. Solomon
Caitlin C. Fahey
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
psummit@sandw.com
asolomon@sandw.com
cfahey@sandw.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

FACTUAL BACKGROUND .........................................................................................................2

LEGAL STANDARD ....................................................................................................................5

ARGUMENT

The Order Granting Vale's Request is Clearly Erroneous and Contrary to Law ...........................6

    A.  The Order Violates Due Process ........................................................................................6

    B.  Vale is Not Entitled to a Modification of the Protective Order .........................................7

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*AT&T Corp. v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005) ................................................................... 7, 9

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*,
  287 F.R.D. 130 (E.D.N.Y. 2012) ............................................................ 8, 9

*Fielding v. Tollaksen*,
  510 F.3d 175 (2d Cir. 2007) .................................................................... 5

*In re Ethylene Propylene Diene Monomer Antitrust Litig.*,
  255 F.R.D. 308 (D. Conn. 2009) ............................................................. 9

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
  247 F.R.D. 1 (D.D.C. 2005) .................................................................... 9

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................... 6

*Merchs. Bank v. Vescio*,
  222 B.R. 236 (D. Vt. 1998) ..................................................................... 9

*Mutinsky v. Town of Clarkstown*,
  No. 14-cv-7803 (NSR) (PED),
  2015 U.S. Dist. LEXIS 168240 (S.D.N.Y. Dec. 16, 2015) ............................ 5, 6

*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) .................................................................... 7

*Soberal-Perez v. Heckler*,
  717 F.2d 36 (2d Cir. 1983) ..................................................................... 6

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
  900 F.2d 522 (2d Cir. 1990) .................................................................... 5


Statutes

28 U.S.C. § 636 .................................................................................... 5

Fed. R. Civ. P. 72(a) ............................................................................. 5

## INTRODUCTION

Defendant Mahmoud Thiam ("Thiam") objects to Magistrate Judge Andrew J. Peck's February 1, 2016 order (the "Order"),[1] granting defendant Vale S.A.'s ("Vale") letter application (the "Application")  to use over 3,000 pages of Thiam's confidential documents, produced in this action under the protection of a rigorous and elaborately negotiated protective order (the "Protective Order"), in Vale's separate proceeding before the London Court of International Arbitration ("LCIA") against BSG Resources Limited ("BSGR"), *Vale S.A. vs. BSG Resources Limited,* LCIA Arb. No. 142683 (the "Arbitration").  Thiam is not a party to the Arbitration.

Thiam objects on the grounds that (1) the Magistrate Judge issued his one-sentence Order ex parte, without giving Thiam an opportunity to respond, in violation of Thiam's due process rights; and (2) Vale failed to even approach the demanding standards in this Circuit for modification of the Protective Order.

Vale's justification is that these documents are supposedly "███████████" to the Arbitration.  Summit Decl., Ex. B at 1.[2]  But that does not make a compelling case, even if it were successfully established.  Vale brought its suit against BSGR in the LCIA.  The LCIA's discovery rules are restrictive; they are not coterminous with the Federal Rules of Civil Procedure.  Nor has the Tribunal in the Arbitration issued a request to this Court to assist it in discovery.  Having agreed to the LCIA's ground rules, Vale can hardly make the case that it must obtain from this Court that which it agreed it would not otherwise have for its case against BSGR.

---

[1] A true copy of the Order is attached as Exhibit A to the accompanying Declaration of Paul E. Summit dated February 16, 2016 (the "Summit Decl.").

[2] Although we do not believe that there is anything "confidential" in the Application that requires it to be "████████████," to avoid an unnecessary dispute with Vale, we have omitted the Application from and have made redactions (as necessary) to our objection papers filed via ECF.  The courtesy copies of our objection papers to chambers will include the Application and will be unredacted.

## FACTUAL BACKGROUND

At the start of discovery in this action, the parties engaged in an exhaustive process to negotiate the Protective Order.  Ultimately, the parties were unable to agree on language for certain sections of the Protective Order and the Magistrate Judge had to make rulings on those disputes.  One of those disputes involved the use of Protected Material in other proceedings.  At a July 29, 2014 status conference, Vale disagreed with the Magistrate Judge's statement that discovery in this action would be used in other litigations.  *See* Summit Decl., Ex. C at page 10, lines 10-12 ("With respect to the latter point, that the discovery will end up being usable somewhere else.  We respectfully disagree.").  Vale subsequently has changed its tune and now seeks to use Thiam's documents in the Arbitration.  For its own part, however, Vale attached confidentiality designations to the vast majority of the documents it produced in this action, presumably, in part, to ensure that BSGR could not use them in the Arbitration.[3]

This action was dismissed by this Court on November 20, 2015.  Pursuant to Section XII of the Protective Order, all persons are required to return or destroy all Protected Material[4] produced in the action within 90 days of Final Disposition of the matter.  In accordance with this provision, on January 4, 2016, Thiam, through counsel, requested that all parties return or destroy his Protected Material by February 18, 2016. Summit Decl., Ex. F.  Vale, however, refused to comply.  Summit Decl., Ex. G.  Instead, on January 25, 2016, Vale sought permission

---

[3] We cannot say for certain that every document Vale produced in this action had a confidentiality designation because Vale failed to consistently provide us with the appropriate metadata per the parties' ESI Protocol.  Of the 29,994 documents that Vale produced, we know that 67 percent of them had confidentiality designations.  As to the other 33 percent, 70 documents were in the public domain; the remaining documents had no metadata for confidentiality.  However, a sampling of the remaining documents reveals that at least some of them have confidentiality designations.

[4] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Protective Order, attached to the Summit Decl. as Exhibit D.

from Thiam to use over 3,000 pages of Thiam's Protected Material in the Arbitration to which

Thiam is not a party.  Summit Decl., Ex. B.

The Protected Material consists of, among other things, over 2,000 pages of confidential

bank records from the bank accounts of Thiam, his wife, and his business, Thiam & Co., LLC

("Thiam & Co.").  These records were not produced by Thiam in this action; rather, they were

obtained by Rio Tinto via third party subpoena to Thiam's banks.  Rio Tinto issued the

subpoenas as part of the resolution of a discovery dispute between Rio Tinto and Thiam.  Rio

Tinto's subpoenas to Thiam's banks were overbroad with respect to the information sought and

the date range requested.  For example, Rio Tinto's subpoena to UBS Financial Services

requested, for the time period January 1, 2009 through December 31, 2013,[5] the following

information:

> All Documents, including but not limited to account statements,
> wire transfer records and receipts, withdrawal receipts or records,
> deposit receipts or records, signature cards, cancelled checks, loan
> applications, loan disbursement documents, collateral agreements,
> tax withholding statements, trading records, safe deposit box rental
> information (including logs of dates and times of entries to the
> box), and copies of cashier's checks, money orders, or traveler's
> checks purchased, concerning the Accounts maintained by You
> that could be accessed by, or were within the control of, Mahmoud
> Thiam, any of his family members, or any business entities
> associated with Mr. Thiam….

Summit Decl., Ex. E.

To resolve the discovery dispute and in reliance on the Protective Order, Thiam did not

object to the overbreadth of the subpoenas.  However, given that the bank records contained a

massive amount of Thiam's personal, financial information that had absolutely no bearing on any

issue in the action, pursuant to the Protective Order, Thiam designated these records as

---

[5] Although the time period requested was only through December 31, 2013, some banks produced Thiam's financial records for 2014 and 2015.

"HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."[6]  Vale now seeks to use Thiam's

subpoenaed records in the Arbitration, including productions from the following banks:

     1.     <u>Citibank</u>:  Vale seeks to use Citibank's entire production, including account statements from Thiam & Co. (a non party in both this action and the Arbitration) from June 2011 through January 2014; withdrawal, deposits, checks and wires for Thiam & Co. from April 2011 through April 2014; account statements from Thiam and his wife's joint account from April 2011 through January 2014; and withdrawal, deposits, checks and wires for the joint account from June 2011 through December 2013;

     2.     <u>HSBC</u>: Vale seeks to use HSBC's entire production (except for 1 page), including internal bank communications regarding Mr. Thiam and his deposit account and bank statements from June 2010 through August 2010;

     3.     <u>JP Morgan Chase</u>:  Vale seeks to use JP Morgan Chase's entire production, including Thiam and his wife's joint home equity loan statements from January 2009 through April 2012 and Thiam and his wife's joint checking and savings accounts statements from December 2008 through June 2010; and

     4.     <u>UBS Financial Services</u>:  Vale seeks to use almost the entirety of UBS Financial Services' production (all but two documents), including Thiam's account statements from his company sponsored stock plan/investment account at UBS from October 2011 through August 2015; Thiam and his wife's joint investment account statements from January 2009 through December 2009 and Thiam's retirement account for January 2009.

The other documents that Vale seeks to use in the Arbitration are (1) communications

between Thiam and BSGR, which Vale should seek from BSGR, the opposing party in the

Arbitration; and (2) Thiam's private e-mail communications, which, but for Rio Tinto's frivolous

lawsuit and Vale's refusal to comply with the Protective Order, Vale would not have in its

possession.  Pursuant to the Protective Order, Thiam designated all of these records as

"CONFIDENTIAL," with the exception of one document, which he designated as "HIGHLY

CONFIDENTIAL – ATTORNEY'S EYES ONLY."

---

[6] Vale's contention that the banks it has contacted have "███████████████████████████████████████████████████████" is irrelevant. Summit Decl., Ex. B at 2, n. 1. The banks did not designate the documents "HIGHLY CONFIDENTIALITY – ATTORNEY'S EYES ONLY"; Thiam did. The banks are indifferent as to Thiam's privacy interests.

At no time during the action did Vale raise any objection to Thiam's confidentiality designations. Nor did Vale request Thiam's permission to use the material in the Arbitration. Indeed, Vale did not seek Thiam's consent to modify the Protective Order as to the 3,000 pages of documents until after this Court dismissed the instant case and the time for appeal had run. Only then, with the safety of knowing that the U.S. case was over, did Vale approach Thiam.

In response, Thiam refused to authorize the use of his private, confidential documents in an international proceeding to which Thiam is not a party.[7] Summit Decl., Ex. F.

On February 1, 2016, Vale sought permission from the Magistrate Judge to use the documents in the Arbitration. The Application was faxed to the Magistrate Judge's chambers. Counsel for Thiam received a copy of the Application via e-mail at 12:28 p.m. At 4:35 p.m., just four hours later, the Magistrate Judge granted Vale's request without reviewing the subject documents, without explanation, and without giving Thiam an opportunity to respond.

## LEGAL STANDARD

Fed. R. Civ. P. 72(a) provides that a district judge must "modify or set aside any part of [a nondispositive order] that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636; *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "An order is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Mutinsky v. Town of Clarkstown*, 2015 U.S. Dist. LEXIS 168240, at *3 (S.D.N.Y. Dec. 16, 2015)(quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "An order is contrary to

---

[7] Thiam submitted a witness statement in the Arbitration and produced certain documents responsive to Vale's document requests to BSGR. These documents were produced pursuant to a request from BSGR to Thiam. He has, however, refused to produce any documents (to BSGR or Vale) in the Arbitration which contain private, confidential information.

law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."

*Mutinsky*, 2015 U.S. Dist. LEXIS 168240, at *3 (internal citations omitted).

## ARGUMENT

**The Order Granting Vale's Request is Clearly Erroneous and Contrary to Law.**

### A.     The Order Violates Due Process

"[T]he fundamental tenets of due process require adequate notice to ensure that all parties have a meaningful opportunity to be heard." *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. N.Y. 1983)(citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Here, the Magistrate Judge signed the Order within hours of Vale's request without giving Thiam the opportunity to be heard on the issue. No scheduling order was issued; no deadline was set for Thiam's response; there was no emergency; the request was simply granted four hours after it was made by letter with no explanation and without any review of the subject documents.

As Vale notes in the Application,[8] the Protective Order contemplates that court intervention may be required to resolve parties' disputes regarding confidentiality designations and provides that such disputes shall be resolved by motion practice, which inherently gives a Designating Party the right to respond and defend its confidentiality designations. Summit Decl., Ex. D, Section V, ¶ 3 ("The Challenging Party *shall file and serve a motion to remove the confidentiality [designation]* ...." ).[9] The Magistrate Judge's failure to afford Thiam his due process rights and allow Thiam to respond to the Application is clearly erroneous and contrary to law. Thus, the Order must be reversed.

---

[8] Summit Decl, Ex. B at 7, n. 4.

[9] Unless otherwise indicated, all emphasis is supplied.

### B.      Vale is Not Entitled to a Modification of the Protective Order

Under Second Circuit precedent, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001).  "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'"  *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979).[10]

In this action, the Protective Order sets forth certain "Basic Principles," including that:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or Non-Party in connection with this Litigation only for prosecuting, defending, or attempting to settle this Litigation between the Parties.  A Receiving Party *may not use Protected Material in connection with any other case*….

Summit Decl., Ex. D, Section VI, ¶ 1.

The Protective Order further provides that "[w]hen the Litigation has been terminated, a Receiving Party *must comply with the provisions of Section XII below*." *Id.* Section XII requires that "all Parties, Counsel and any other persons who have received Protected Material in this action" must return or destroy such Protected Material within 90 days after Final Disposition. *Id.*, Section XII, ¶ 1.

Thiam produced documents and (to resolve a discovery dispute) allowed Rio Tinto to obtain a wealth of private, confidential information via third party subpoenas (the majority of which were irrelevant to the New York action) in reliance upon the guarantee that such

---

[10] Remarkably, these seminal Second Circuit cases were not cited by Cleary Gottlieb in its letter of February 1, 2016 to the Magistrate Judge.  Thus, no one had brought these cases to his attention when he ruled later on the same day.

documents would be protected by the terms of the Protective Order, including that they would not be used in connection with any other matter.[11]

The Magistrate Judge's decision is clearly erroneous and contrary to law because Vale has not demonstrated that it has a "compelling need" to use Thiam's Protected Material in the Arbitration. It simply seeks an end run around the LCIA's discovery rules. Under the LCIA discovery rules, Vale has no right to Thiam's Protected Material. Indeed, but for Rio Tinto's frivolous lawsuit and Vale's refusal to comply with its obligations under the Protective Order (to return or destroy Thiam's Protected Material by February 18, 2016), Thiam's Protected Material would not even be in Vale's possession.

Vale admits that the Tribunal is powerless to compel Thiam to produce his private, confidential information in the Arbitration. This is due to one simple but important fact – Thiam is not a party to the Arbitration. Summit Decl., Ex. B at 4. (As Vale said in its Application, "█████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████."). Dissatisfied with the Tribunal's lack of power over Thiam, Vale impermissibly sought to use the power of the United States courts to grant it access to information to which it is not entitled in an international proceeding.

The cases Vale cites in support of its position are inapposite. In *Charter Oak Fire Insurance Company*, plaintiff sought to modify the protective order to allow documents to be used in other cases based on similar facts and circumstances *against the same defendant*. The court agreed to the modification, noting that the defendant could not "rely on the Protective Order as a means of protecting discovery *that would otherwise be discoverable in the related*

---

[11] As the only individual defendant not allied with a major company in the action, which involved multi-million dollar companies on either side, Thiam was forced at multiple junctures to make pragmatic decisions on discovery issues in order to save on legal expenses.

actions." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y.

2012).  Similarly, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,

plaintiffs in a Canadian class action suit sought to use documents in the Canadian suit against a

defendant in that litigation that were produced by that defendant in a U.S. litigation *against the

same defendant*.  255 F.R.D. 308 (D. Conn. 2009); *see also Merchant Banks v. Vescio*, 222 B.R.

236 (D. Vt. 1998)(intervenors seeking to use documents in a related litigation against the same

defendant); and *Infineon Techs, N.V. v. Green Power Techs., Ltd*, 247 F.R.D. 1 (D.D.C.

2005)(defendant seeking to use documents in related litigation against the same plaintiff in

Germany).

Indeed, *all* the cases Vale cites in support of its argument that "good cause" exists to

modify the Protective Order involve the use of documents produced in one litigation in a

separate litigation to which the producing party is also a *party*.  Here, Thiam is not a party to the

Arbitration.  He is a fact witness.  Thus, the protective order cannot be modified to give Vale

access to documents it would not be entitled to in the Arbitration.  *See In re Ethylene Propylene*,

255 F.R.D. at 324 ("if the intervenor is seeking to circumvent limitations on its ability to conduct

discovery in its own case or *to gain access to materials it would otherwise have no right to

access, a court should refuse to modify the protective order*."); *see also AT&T Corp. v. Sprint

Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting 8 Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure Civil 2d § 2044.1 (2d ed. 1994) ("If the limitation on discovery

in the collateral litigation would be substantially subverted by allowing access to discovery

material under a protective order, the court should be inclined to deny modification.")).

Moreover, any confidentiality protections afforded by the Arbitration are irrelevant.  Vale

is simply trying to take advantage of Rio Tinto's frivolous lawsuit against Thiam to obtain

information that it would not otherwise be entitled to in the Arbitration. Similarly, the fact that

Thiam has submitted a witness statement and agreed to produce certain documents in the

Arbitration is irrelevant. Any discovery issues need to be resolved by the Tribunal in that

proceeding, not the federal courts of the United States.

Thus, the Magistrate Judge's decision is clearly erroneous and contrary to law and should

be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Order and deny Vale's request to

modify the Protective Order to enable it to use Thiam's Protected Materials in the Arbitration.


Dated:  New York, New York
       February 16, 2016

Respectfully submitted,

By: /s/Paul E. Summit
    Paul E. Summit
    Andrew T. Solomon
    Caitlin C. Fahey
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
psummit@sandw.com
asolomon@sandw.com
cfahey@sandw.com

*Attorneys for defendant Mahmoud Thiam*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                       :

RIO TINTO PLC,                         :
                                         :
                  Plaintiff,          :
                                         : Case No. 14-cv-3042 (RMB)(AJP)
         - v -                        :
                                         :
VALE, S.A., et al.,                 :
                                         :
                  Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECLARATION OF PAUL E. SUMMIT IN
SUPPORT OF MAHMOUD THIAM'S OBJECTION TO
MAGISTRATE JUDGE ANDREW J. PECK'S FEBRUARY 1, 2016 ORDER**

PAUL E. SUMMIT, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a partner at the law firm of Sullivan & Worcester LLP, counsel to defendant
Mahmoud Thiam ("Thiam"), and an attorney admitted to practice in the Southern District of
New York.

2. I submit this Declaration in support of Thiam's objection to Magistrate Judge Andrew
J. Peck's February 1, 2016 Order (the "Order") permitting Vale, S.A. ("Vale") the use of certain
documents produced by Thiam and his banks in this litigation, and protected by the protective
order filed in this case, in Vale's separate proceeding before the London Court of International
Arbitration against BSG Resources Limited, *Vale S.A., vs. BSG Resources Limited*, LCIA Arb.
No. 142683.  I am fully familiar with the facts of this case.

3. Attached as Exhibit A is a true and correct copy of the Order, which filed in this case
as ECF Doc. No. 416.

4. Attached as Exhibit B is a true and correct copy of defendant Vale's letter application
to the Court dated February 1, 2016.

5.     Attached as Exhibit C is a true and correct copy of the transcript of the July 29, 2014 hearing before Magistrate Judge Peck.

6.     Attached as Exhibit D is a true and correct copy of the Stipulated Protective Order filed in this case on August 12, 2014 as ECF Doc. No. 81.

7.     Attached as Exhibit E is a true and correct copy of plaintiff Rio Tinto's September 3, 2015 subpoena to UBS Financial Services Inc.

8.     Attached as Exhibit F is a true and correct copy of a letter I sent to Jonathan Blackman, Esq. of Cleary Gottlieb Steen & Hamilton LLP, dated January 26, 2016.

9.     Attached as Exhibit G is a true and correct copy of a letter I sent to Jonathan Blackman, Esq. of Cleary Gottlieb Steen & Hamilton LLP, dated January 28, 2016.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       February 16, 2016

                                                    /s/ Paul E. Summit
                                                    Paul E. Summit

- 2 -

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RIO TINTO PLC,

                       :         14 Civ. 3042 (RMB)(AJP)

            Plaintiff,

                       :

       -against-                 ORDER

                       :

VALE S.A., et al.                 :

           Defendants.        :

                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Vale's letter application (2/1/16 letter) to be permitted to use certain documents produced by Mr. Thiam (Appendix A to the 2/1/16 letter) in the LCIA arbitration is <u>GRANTED</u>.

           SO ORDERED.

Dated:       New York, New York
              February 1, 2016

                                                    _____
                                                 **Andrew J. Peck**
                                                 United States Magistrate Judge

Copies **by ECF** to:    All Counsel
                              Judge Berman

# EXHIBIT B

# <u>Confidential Exhibit</u>
# Filed Separately Under Seal

# EXHIBIT C

                                                              1

        E7T3RIOC

   1    UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
   2    ------------------------------x

   3    RIO TINTO PLC,

   4                   Plaintiff,

   5           v.                         14 CV 3042 (RMB)

   6    VALE, S.A., et al,

   7                   Defendants.

   8    ------------------------------x
                                          New York, N.Y.
   9                                      July 29, 2014
                                          2:00 p.m.
  10
        Before:
  11
                       HON. ANDREW J. PECK,
  12
                                          Magistrate Judge
  13
                             APPEARANCES
  14
        QUINN EMANUEL
  15        Attorneys for Plaintiff
        MICHAEL J. LYLE, ESQ.
  16    ERIC C. LYTTLE, ESQ.

  17    CLEARY GOTTLIEB STEEN & HAMILTON LLP
            Attorneys for Defendant Vale
  18    LEWIS J. LIMAN, ESQ.
        JONATHAN I. BLACKMAN, ESQ.
  19
        MISHCON de REYA
  20        Attorneys for Defendant BSG/Steinmetz
        ELIZABETH ROTENBERG-SCHWARTZ, ESQ.
  21    VINCENT FILARDO, ESQ.

  22    SULLIVAN & WORCESTER
            Attorneys for Defendant Thiam
  23    PAUL E. SUMMIT, ESQ.

  24    SHER TREMONTE
            Attorneys for Defendants BSG Resources (Guinea)
  25    MICHAEL TREMONTE, ESQ.


                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

E7T3RIOC

1              THE COURT:  Nothing was on the ECF system, at least as

2       of last night.  So why don't you tell me what you all

3       accomplished with Judge Berman yesterday.

4              MR. LYLE:  Good afternoon, your Honor.  Michael Lyle

5       on behalf of the plaintiffs.

6              Yesterday we appeared before Judge Berman and the

7       defendants have been granted leave to file -- first, we are

8       going to amend our complaint, we have been granted which we

9       will do consistent with the Court's order.  Defendants are

10      going to thereafter file motions for forum non conveniens.  And

11      there will be briefing on that stretching into September.

12      That's what transpired yesterday in front of Judge Berman.

13             THE COURT:  Do I assume from that, that discovery is

14      going forward while all of that is going on?

15             MR. LYLE:  Yes, your Honor.  The plaintiffs have for

16      your Honor the transcript, if you'd like to see what transpired

17      yesterday on that topic.

18             THE COURT:  Please.

19             MR. LYLE:  In the correspondence that the defendants

20      had submitted to Judge Berman on July 17, we responded on the

21      24th.  They sought again a stay of discovery.  At the close of

22      the hearing yesterday, Judge Berman stated on page 14 of the

23      transcript, which we've provided to you, he stated that "You

24      can discuss whatever you would like with Judge Peck.  Just so

25      it is clear, I have not imposed a stay of discovery in the

3

E7T3RIOC

1    case."  And he goes on, "Indeed, I was looking at the case

2    management plan, not that I think you'll finish within the

3    discovery by the date that is set there, but there is no stay

4    from me."  Then whatever they want to bring before your Honor

5    with respect to discovery, they're free to do so.

6           We do understand, your Honor, that, based on our

7    discussions yesterday following the hearing with all of the

8    defendants, that they intend yet again to ask you for a stay of

9    discovery in this case.  If the Court is inclined to disrupt

10   what Judge Berman has already done, they're proposing a

11   briefing schedule.

12          But given what your Honor has already stated in your

13   last ruling which was the third attempt, to -- I'm sorry, the

14   second attempt by the defendants to stay discovery, if you

15   adhere to your reasoning in that opinion, we can dispense with

16   the time and the waste of judicial resources in briefing that

17   issue.

18          We believe discovery should proceed.  We have come

19   very close to an agreement with respect to a protective order.

20   There are a few outstanding issues.  We have an ESI order

21   virtually complete.  There may be a couple of matters we need

22   to come to your Honor for, for assistance, but we want to take

23   one more crack at it.  We think we made progress yesterday

24   afternoon.

25          Following that, we're prepared and ready to begin

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:14-cv-03042-RMB-AJB   Document 437-3   Filed 03/17/16   Page 25 of 95
Case 1:14-cv-03042-RMB   Document 422-3   Filed 02/16/16   Page 9 of 32

4

E7T3RIOC

1   producing documents and receiving documents from the various

2   parties.  As the Court understands from the last time we were

3   before you, there is litigation between some of the defendants,

4   so presumably they're already gathering information in that

5   endeavor.

6           Given all of that and what Judge Berman has stated, we

7   would like to proceed as soon as we get agreement we think by

8   the middle of next week with respect to the final details of

9   any of the protective order issues or the ESI issues.

10          THE COURT:  Mr. Liman.

11          MR. LIMAN:  Your Honor, if I might.  Let me update you

12  on developments and then we can discuss our proposal of where

13  we go from here.

14          I think there are four principal developments.  First,

15  with respect to discovery, as your Honor asked, discovery is

16  proceeding.  As was represented to the Court would happen, the

17  parties served their initial disclosures.  All of the principal

18  parties have now served their initial disclosures.  And I'm

19  informed that the remaining party who has appeared is going to

20  be filing their initial disclosures today.

21          Second, we have exchanged markups of the ESI protocol

22  and of the draft protective order.  We exchanged markups last

23  week.  We scheduled a meet and confer that was to take place

24  yesterday afternoon, we scheduled that before the conference of

25  yesterday, took place yesterday, and was able to meet and

5

E7T3RIOC

1    confer in person, and we narrowed the issues with respect to

2    the ESI protocol and with respect to the protective order.

3           Second, we learned yesterday for the first time that

4    the complaint that we're now dealing with will not be the

5    operative complaint to this case.  We don't know what the

6    operative complaint would look like.  The plaintiffs

7    represented they wanted until August 29 to amend their

8    complaint.  Judge Berman did not give them until August 29.  He

9    required the amended complaint to be filed on August 15.

10   Plaintiffs represented that they were still investigating their

11   case, and that the amendments would be substantive.

12          The third point to note is that there are three

13   additional defendants who have apparently been served in this

14   case but who have not yet appeared.  Those are defendants

15   Cilins, Noy and Toure.

16          Then I think most significant is that the Court, after

17   hearing, receiving the various premotion letters, granted the

18   defendants' request to file on an expedited basis a motion to

19   dismiss on grounds of our forum selection clause on the grounds

20   of the Gilbert forum selections categories.

21          We had initially suggested to the Court that we would

22   file our papers in two weeks from yesterday.  The Court granted

23   the plaintiff's motion to amend the complaint, and therefore

24   decided to put our motion two weeks after the filing of the

25   amended complaint.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

E7T3RIOC

1          THE COURT:  That's no later than August 29, if they

2     take until their last day.

3          MR. LIMAN:  Well, because of the intervention of Labor

4     Day, the Court originally set September 1.  We pointed out that

5     was Labor Day.  And we do it on September 2.  The Court

6     graciously granted us until September 3rd.  That is now

7     scheduled for motion papers to be filed on September 3rd.  Rio

8     Tinto's opposition two weeks later, and our reply one week

9     after that which would be September 24.

10          The Court made clear that it was prepared to consider

11    the motion expeditiously.  It is a substantial motion.  We

12    believe it is a meritorious motion, we pointed out to the

13    Court, would decide this whole case and make any further motion

14    papers irrelevant.

15          We did at the end of the conference yesterday raise

16    with the Court the issue of a stay of discovery.  The Court

17    made clear, as counsel's pointed out, that Judge Berman was not

18    prepared to enter a stay himself.  I then raised with the Court

19    whether the Court would permit us -- Judge Berman said he was

20    not prepared really to entertain a motion for a stay.  I then

21    asked the Court, this is I believe on page 12 of the

22    transcript.  Page 12, line 19, that what we would ask the Court

23    for is leave to make a motion in front of Judge Peck if it is

24    appropriate.  And I said let me lay it out.  The Court then

25    said a motion as to discovery?  I confirmed as to discovery.

7

E7T3RIOC

1   And the Court said if he will take it, it is up to him.  I'm

2   not going to direct it.  You can go back to him, tell him what

3   has happened, bring him the transcript from today, argue

4   whatever you want to argue, and plaintiff will argue what they

5   want to argue.

6           Then, I raised the point that the reason why I wanted

7   to raise it is that there have been extensive document requests

8   addressed to the parties.  I believe a stay would be

9   appropriate.

10          THE COURT:  I can read faster than you can talk.  So

11  I've read all of it.  "All" meaning, so you know, 12 through

12  14.

13          MR. LIMAN:  I think the upshot is the Court did not

14  prejudge the issues with respect to whether a stay is

15  appropriate.  We met and conferred yesterday with the

16  plaintiffs with respect to a schedule on a motion to stay

17  discovery.  The proposal that we agreed on was that if the

18  Court would receive it, we would submit our motion this Friday,

19  August 1.  The opposition would be filed next Friday, August 8.

20  And the reply would be filed August 12.

21          THE COURT:  Let me think this through out loud with

22  all of you.  And I recognize everything is circular.  But we

23  don't yet have the new complaint.  So you're going to be making

24  this argument based on a motion to dismiss on a complaint that

25  we don't yet have.

8

E7T3RIOC

1          It may make more sense, although I recognize that with

2      discovery ongoing, kicking it down the road 30 or 60 days is a

3      problem, but I'm not sure that I'm going to be in any better

4      position to stay discovery on August 13 than I was previously,

5      other than it looks like you convinced Judge Berman to give me

6      the discretion to rule on the issue, and then for either side

7      that's not happy, or both sides, to go to Judge Berman so he

8      can re-review what he previously decided.  I'm not sure this

9      makes sense.

10          MR. LIMAN:  Let me address the chicken and the egg

11      issue because we thought about it.  And I think the answer from

12      our perspective is that we now have extensive document

13      requests, the document request of Vale that is 50 requests

14      covering a period of 10 years, equivalent request to the other

15      corporate defendants.

16          Now, one might say, you know, are those requests

17      appropriate.  It is hard for us to imagine how we're going to

18      respond to those requests themselves, because we don't have a

19      complaint that says whether the request is relevant or not to a

20      well-pled allegation.  But, the thrust of our motion will be

21      with respect to I guess two points.  First, the thrust of our

22      motion is with respect to the extent of the discovery that's

23      being requested.

24          THE COURT:  Are you going to be in a position to give

25      me information which is, a request could be incredibly

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

E7T3RIOC

 1    overbroad on its face, but if the answer is we don't have any

 2    documents or the answer is it is a very broad request but when

 3    push comes to shove, in the good old paper days, the answer

 4    could be we went to the central file room, and we have a nice

 5    neat file, yes, it is 1,000 pages long, but it is all there.

 6        MR. LIMAN:  Your Honor, I don't think any of these

 7    requests, speaking for Vale, none of these requests would lead

 8    to the latter answer.

 9        THE COURT:  Nothing ever leads to it being that easy.

10    Probably never did then.  Certainly doesn't now.

11        Let's put it this way.  Then we can re-talk the timing

12    of the motion.  If all you're going to tell me is this is over

13    many years and many requests and, therefore, presumptively it

14    is broad and expensive, that doesn't do me any good.  What does

15    me good, and it may be premature for you all to do this, is to

16    say to review this, and I know you're working on the ESI

17    protocol as well, we have 500 custodians with 200 terabytes

18    each of data, and our vendor tells us even if we use deduping

19    and technology assistive review and the most comprehensive

20    cost-effective search techniques, it is still going to cost us

21    a billion dollars, that's one answer.  One of we don't know

22    where this stuff is or we don't know yet, it is early, is not

23    overly helpful.

24        MR. LIMAN:  Your Honor --

25        THE COURT:  Particularly if it is likely, as there was

10

E7T3RIOC

1    some reference in the few pages I've skimmed of the transcript,

2    that some of the same material is going to be relevant in the

3    other litigations, either that are ongoing between two of the

4    defendants, or that even your, in essence, forum non conveniens

5    or contractual argument works, that you would still be subject

6    to that material being discoverable in Brazil or wherever else

7    you all think the case is supposed to be.

8          MR. LIMAN:  Your Honor, I can address the latter

9    point.  With respect to the former point, I would like to

10   confer.  With respect to the latter point, that the discovery

11   will end up being usable somewhere else.  We respectfully

12   disagree.  And we can lay this out in our papers.  But

13   obviously, the standards under Rule 34 are dramatically

14   different than the standards for disclosure under U.K. law.  If

15   we're right on our motion, then what the parties contracted for

16   was U.K.

17         THE COURT:  You may also want to consider, and it may

18   only have to do with a cost shifting, is 28 U.S. Code I think

19   it is 1782 if I'm not being dyslexic, which is if you've got a

20   U.K. litigation and under U.K. disclosure rules, which are

21   different than ours, but to a certain extent come out to the

22   same place.

23         In addition, one could use, and I'm always surprised

24   more lawyers don't use it, not that I'm looking for more

25   business for our courts, but the 28 U.S. Code discovery in aid

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

1    of a foreign proceeding.

2         MR. LIMAN:  Your Honor, actually the interesting thing

3    about this case, is that now initial disclosures have been

4    served, it appears that there is not a single document that

5    resides in the United States.  Rio has served their initial

6    disclosures, they've said all of their documents are either in

7    London, Guernsey or South Africa.  Vale's documents are in

8    Brazil.  BSGR has served their initial disclosures.  None of

9    the documents they have are in the United States.

10        And actually, that's sort of highlights a principal

11   point with respect to discovery.  When we met and conferred

12   yesterday, one of the issues that the plaintiff raised was the

13   protective order would need to take into account the issues of

14   U.K. privacy law because their documents are subject to U.K.

15   privacy law which is more restrictive.  We actually disagree we

16   should be bound by their --

17        THE COURT:  I'm less sympathetic to the plaintiff on

18   that than I might be to a defendant.  You brought the case.  If

19   U.K. or E.U. or anyone else's privacy laws create a problem, I

20   will go through the full Supreme Court Societe Aerospatiale

21   rubric and all of that.

22        But certainly, and again none of these are orders,

23   they're thinking out loud to help you through all of this and

24   help me through this.  But my inclination would be if you've

25   got U.K. privacy problems, I'm willing to work with you.  But,

12

E7T3RIOC

1   you want to be in this court.  It is more important for the

2   plaintiff to resolve that than it would be for a defendant

3   whose documents may be subject to Brazil or someone else's

4   privacy laws.  It is not something you have to answer right

5   now.  All right.

6        Well, certainly, I can't stop you from making the

7   motion.  Until I decide it, discovery goes on.

8        MR. LIMAN:  Your Honor, if I could make a suggestion

9   with respect to scheduling.  We don't know yet what the

10   operative complaint is going to say.  We don't know whether the

11   plaintiffs are going to stand by their discovery requests.  It

12   is odd in my experience that you serve discovery requests

13   relating to a prior complaint.  It puts the defendants in a

14   position where you can't respond, we wouldn't be able to

15   respond.

16        My suggestion is the following, and I haven't

17   conferred with our co-defendants with respect to this.  But

18   that on August 15, when the amended complaint is filed, the

19   plaintiffs can tell us or, on or before then, can tell us

20   whether they're going to elect to stick behind their existing

21   interrogatories and existing document requests.

22        There is some prejudice to us with respect to that.

23   We would be letting them withdraw their existing

24   interrogatories, even though it counts against the number, but

25   we haven't done anything with respect to those interrogatories.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

1    That would happen on the 15th.  We would be, within that time

2    period, also preparing our motion based upon forum non

3    conveniens.

4          My suggestion would be that some time shortly after

5    August 15, at that time we file our motion for a stay of

6    discovery.  We'll know what the complaint looks like, we'll be

7    in a position to advise your Honor with respect to the forum

8    non conveniens.  We will be able to make our case or not make

9    it with respect to the document requests, depending on whether

10   they stand behind the existing document requests.

11         THE COURT:  Let me ask you one last question then I'll

12   hear from any of your co-defendants who want to zig and zag, if

13   they do, and then I'll hear from Mr. Lyle.

14         Do you need any discovery in connection with the forum

15   non conveniens motion?

16         MR. LIMAN:  We don't, and the Second Circuit has made

17   it very clear that the forum non conveniens motions are

18   ordinarily considered just on the basis of affidavits.  We will

19   have an expert affidavit establishing why this case doesn't

20   belong in this court.

21         Let me explain why.  It is a U.K. contract.  So the

22   question of the scope of the forum selection clause is a

23   question of U.K. law.  Judge Berman has given us permission to

24   submit letter briefs and attaching the affidavit.

25         THE COURT:  Okay.

14

E7T3RIOC

1          MR. LIMAN:  If I could just confer for a moment with

2    my colleague.  I've got nothing further.

3          MR. FILARDO:  Good afternoon, your Honor.  Vincent

4    Filardo.  We represent the BSG Resources Limited and Benjamin

5    Steinmetz.  If I could be heard from my position behind counsel

6    table.

7          THE COURT:  Go ahead.

8          MR. FILARDO:  We are joining in the motion to dismiss

9    pursuant to forum non conveniens.  We have different grounds.

10   We're not proceeding on the contractual ground.  The so-called

11   exclusive forum selection ground.  We are proceeding under the

12   general balance factors test.

13         I raised an issue before Judge Berman yesterday which

14   I think precipitated the conversation we had with respect to a

15   stay of discovery, and that would be it would be allowed to be

16   brought to your Honor's attention and that your Honor would be

17   allowed to consider it fully.

18         That issue was that the fact that discovery is

19   currently ongoing, but yet, there are foreign defendants here

20   that the Court has not found personal jurisdiction over yet,

21   creates an issue as to whether or not it is appropriate to

22   proceed with discovery under the Federal Rules of Evidence.

23         The issue specifically is, if broad based merits

24   discovery which has been served by plaintiffs, under the

25   federal rules which have been served, document requests and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

1    interrogatories, that it is not appropriate to proceed under

2    the federal rules, but instead under the Hague.

3           THE COURT:  The Supreme Court has already more or less

4    decided that.  I think your question is, is there personal

5    jurisdiction or not.  But if we're talking merits discovery,

6    again, under Aerospatiale, the Supreme Court said the Court has

7    discretion whether to go Hague or federal rules.

8           MR. FILARDO:  I believe it said that with respect to

9    limited jurisdictional discovery, the District Court would have

10   discretion to apply either -- because at that point in time the

11   Court would have the party --

12          THE COURT:  It's been a while since I read the case,

13   but my recollection is it is not limited to jurisdictional

14   discovery.

15          MR. FILARDO:  I can direct your Honor to an opinion

16   from this court on it that derives --

17          THE COURT:  This court meaning me?

18          MR. FILARDO:  This court meaning the Southern District

19   of New York.  Phillip Morris 2004 WL 1348987 (S.D.N.Y. June 15,

20   2004); as well as In Re Automotive Refinishing Paint.  That's

21   in the Third Circuit, 358 F.3d 288 (3d Cir. 2004); and In Re

22   Vitamins Antitrust Litigation.  That's out of the District of

23   D.C.  120 F. Supp. 2d 45 (D.D.C. 2000).

24          Your Honor, the issue that was decided there was that

25   since defendants had subjected themselves for the limited

E7T3RIOC

1    purpose of jurisdiction, for the court to determine personal

2    jurisdiction, that it should abide by the discretion of the

3    court for that determination.  And therefore, limited

4    jurisdictional discovery would be allowed, again at the

5    discretion of the court, as to whether or not proceed under the

6    Hague or under the federal rules.

7          THE COURT:  All right.  Let me cut to the chase.

8    Whether it is Hague or federal rules impacts on timing, but if

9    you're moving to stay, what are you moving to stay?  Because

10   obviously, if you're going to seek leave from Judge Berman to

11   make a motion to dismiss for lack of personal jurisdiction, you

12   have to subject yourself at least to some form of discovery.

13   And I would certainly expect you to talk about that with the

14   plaintiffs before asking me to rule as to what they want, if

15   anything, what they need, if anything, and whether you're able

16   to reach agreement on how that is going to occur.  As opposed

17   to a motion to stay discovery.

18         MR. FILARDO:  We actually discussed that a little bit

19   yesterday, your Honor.  We had an opportunity to meet and

20   confer.  The issue that came up is plaintiffs asked us, well,

21   would you object to limited jurisdictional discovery.  Of

22   course they haven't asked for that yet.  They're still seeking

23   broad based merits discovery.  But, the cases in the Second

24   Circuit and the cases in the Southern District also say that if

25   a prima facie case for personal jurisdiction has not been made

E7T3RIOC

1   on the pleadings, plaintiffs aren't even entitled to that

2   limited jurisdictional discovery.  That has been our position

3   from day one here.  We have --

4        THE COURT:  Did you raise that with Judge Berman?

5        MR. FILARDO:  We raised the issue generally about

6   whether or not it would be the Hague or the federal rules.  He

7   acknowledged that he understood the issue.  But then again

8   directed that down to your Honor.

9        THE COURT:  You seem to be saying, and again, you put

10  the cart before the horse in terms of the amended complaint

11  that's coming.  If your position is they're not entitled to any

12  discovery, and you should make the motion on that basis.  And

13  frankly, if the Court decides otherwise, you're out of luck.

14  Or you're going to make the argument that they're not entitled

15  to jurisdiction, but even if they are, they've now had it in

16  some form and you still win.

17        I certainly do not want to have to decide or have

18  Judge Berman decide the personal jurisdiction issue twice.

19        MR. FILARDO:  Agreed, your Honor.  I think what I'm

20  alerting the Court to is if discovery is going to go forward,

21  in the form that it has been served, we are objecting to that

22  form.

23        THE COURT:  That I understand.  That you don't want

24  merits discovery until it is decided if you are in the case.

25        MR. FILARDO:  Therefore, we may be before your Honor

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

E7T3RIOC

1    on some kind of motion.

2         THE COURT:  Any of the other defendants have anything

3    to add before I go back to Mr. Lyle?

4         MR. LYLE:  Thank you, your Honor.  Just to follow up

5    on the discussion you were just having with counsel for

6    Steinmetz, the Court is quite right.  In connection with your

7    Aerospatiale decision, which is 482 U.S. 522.

8         In addition, your Honor, in connection with that, the

9    Second Circuit has followed that in the Lind opinion which is

10   706 F.3d 92.  More recently, Judge Torres in the Southern

11   District of New York has issued an opinion at 2013 WL 5308028.

12        All of those cases stand for the proposition that the

13   federal rules are the preferred -- are the default, and that

14   the Hague, which is a much, as the Court knows, much slower

15   cumbersome process for discovery, there is a balancing test

16   that has to be applied in connection.  But the federal rules is

17   the default position always.

18        We are happy, your Honor, we have not yet had any of

19   the defendants with respect to any of our document requests or

20   interrogatories, because their answers aren't due yet, but we

21   have not had any of them raise with us any specifics with

22   respect to a single one of our requests.  What is wrong with

23   our requests, why is it too broad, why is it too burdensome.

24   We're more than prepared to engage in that dialogue.

25        THE COURT:  You do seem to be working well in certain

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E7T3RIOC

```
 1    respects.  And not to be a pessimist, I don't think that the
 2    issue of how broad is too broad is likely to be resolved while
 3    the forum non conveniens and other quasi-jurisdictional issues
 4    are outstanding.
 5            What can you tell me about what you're going to do
 6    with the amended complaint about asserting jurisdiction, etc.?
 7    Do you need discovery to defeat the personal jurisdiction
 8    motion?
 9            MR. LYLE:  We believe we will need discovery to defeat
10    the personal jurisdiction motion.  And interestingly though,
11    many of the allegations with respect to personal jurisdiction,
12    the conduct also provides the basis for liability.  Because
13    we're not talking about a situation where a defendant, for
14    example, has a home in New York.  We're talking about conduct
15    that gave rise to the liability.  So, a lot of merits and
16    jurisdiction --
17            THE COURT:  If the conduct took place abroad --
18            MR. LYLE:  Well, in our complaint, your Honor, there
19    is conduct alleged here in New York and in the United States.
20            THE COURT:  By Mr. Filardo's clients?
21            MR. LYLE:  By defendants in this case and under
22    Mr. Filardo's client's direction and control.  Other defendants
23    in the case acting under the direction and control of
24    Mr. Filardo's client.
25            THE COURT:  Do you have proof of the under direction
```

E7T3RIOC

1    and control?

2         MR. LYLE:  Yes.

3         THE COURT:  Are the merits and jurisdiction going to

4    be intertwined so much that under the standard sort of

5    traditional tests, they don't have a home, they don't have a

6    bank account, they don't have an office, etc., under all those

7    you two can stipulate that is correct, and then you're going to

8    say but somebody or other acted in New York as part of this

9    conspiracy.  And on information and belief, that somebody was

10   under the direction and control of Mr. Filardo's client, and so

11   that we're never going to resolve jurisdiction without

12   resolving the merits.

13        MR. LYLE:  We think that we can craft and come to an

14   agreement with Mr. Filardo in terms of what the jurisdictional

15   components of that would be.  I simply point out some of that

16   will be merits based related.  It just inherently will be the

17   case, given the allegations.

18        THE COURT:  I understand that.  But it strikes me that

19   at least as to Mr. Filardo's clients, it makes sense to focus

20   on jurisdictional discovery as opposed to pure merits

21   discovery, recognizing there will be some overlap.  So that has

22   to go forward regardless.

23        Remind me, your clients are U.K. or Brazil?

24        MR. FILARDO:  Guernsey, Channel Islands, for BSGR, and

25   Mr. Steinmetz is actually Switzerland, resident of Switzerland

E7T3RIOC

1    and of Israel.

2          THE COURT:  All right.  Well, you all work it out.

3    I'm telling you right now, I know that there are blocking

4    statutes, and our friends in Switzerland are certainly in bank

5    secrecy pretty strong.  As to whatever else might be needed, I

6    don't know.  But, I'm going to expect a level of cooperation

7    from your clients in making whatever has to happen, whether

8    it's proof federal rules or whether it's without prejudice, as

9    long as you're able to reach a compromise with the plaintiff.

10   Without prejudice to your argument that it should be the Hague

11   or it must be the Hague.  You're still willing to do discovery,

12   quote unquote, informally, whatever.  I expect you all to work

13   it out.

14          So, what else do you want to tell me, Mr. Lyle?

15          MR. LYLE:  With respect to the amended complaint, your

16   Honor inquired.  Our allegations, the amendments that we are

17   going to make will clarify, expand on various of our claims,

18   and provide more specificity based on additional information

19   that we've received.

20          The gravamen of our complaint, though, will be no new

21   counts.  The defendants will have had -- and based on the

22   current state of the complaint, have more than enough of an

23   understanding of the allegations against them.  And our

24   discovery requests themselves to have meaningful discovery,

25   even while we're preparing our amended complaint.

Case 1:14-cv-03042-RMB-AJP   Document 483-3   Filed 08/17/16   Page 43 of 95
Case 1:14-cv-03042-RMB   Document 422-3   Filed 02/26/16   Page 29 of 32

22

E7T3RIOC

1          THE COURT:  So I think I hear you saying that

2    everything you've already asked will still be relevant under

3    the amended complaint.  Is that what you're saying?

4          MR. LYLE:  Yes.

5          THE COURT:  All right.

6          MR. LYLE:  Again, your Honor, we will have a meet and

7    confer and dialogue.  As you pointed out, we've had success

8    working things out.  We may be able to come to some accord.  We

9    haven't had any dialogue on that.  We're prepared to do that

10   with each of the defendants as we work through the various

11   motions that they've elected to pursue.

12         THE COURT:  Okay.

13         MR. FILARDO:  Your Honor, just let me say, I don't

14   mean to overstate my client's position.  But, the allegations

15   with respect to jurisdiction are completely -- currently in the

16   complaint, completely unsufficient under the CPLR, under the

17   jurisdiction provisions of RICO.

18         THE COURT:  As we talked about with the amended

19   complaint, I'm going to do the same thing with your

20   jurisdictional argument.  If you're willing to live or die once

21   you see the amended complaint on the ground that, based on the

22   complaint, and the standard with respect to a motion to dismiss

23   for lack of personal jurisdiction based on the complaint with

24   no discovery, you win.  And if you lose that, you're in, we can

25   go that route.

E7T3RIOC

1           If you want the belt and suspenders approach, I'm not

2     going to decide or have Judge Berman decide the motion twice.

3     So, if you want to make a two-point motion after some

4     jurisdictional discovery that says point one the Court

5     shouldn't even consider the jurisdictional discovery because on

6     the face of the complaint, the allegations are insufficient.

7     You win, plaintiff loses.  But point two, in the event the

8     Court rules against us on point one, we've now had

9     jurisdictional discovery, we have no contact with the U.S.  The

10    argument that our agent did something is wholly unsupported and

11    speculative.  Whatever.

12          You don't get to do it twice in two different motions.

13    So talk to your client, make that decision.  My inclination is

14    to let Mr. Liman who deferred to Mr. Filardo say something, and

15    then I will rule unless Mr. Lyle has a counter response.

16          MR. FILARDO:  Thank you, your Honor.

17          MR. LIMAN:  I was going to address two points.  First,

18    to try to answer your Honor's question about when we would like

19    to make our motion and then to address the question of

20    discovery responses and the time we need.

21          With respect to when we would like to make our motion.

22    Our druthers had been to make it by end of this week.  We hear

23    what your Honor says that we don't have the amended complaint.

24          THE COURT:  Although you now know it is going to add

25    facts but not necessarily delete anything.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

E7T3RIOC

1           MR. LIMAN:  Not necessarily.  But I don't think we've

2    heard the full entirety.  We frankly don't know whether those

3    facts that are added will change the discovery requests or

4    change our responses to the discovery requests.  It is hard to

5    put us in a position of, and maybe I should address that first.

6    It is hard to put us in a position of serving responses to

7    discovery, then to have an amended complaint filed, and making

8    all of that work illusory.

9           THE COURT:  Next point.

10          MR. LIMAN:  So, our suggestion would be that we be

11   given some period of time after the filing of the amended

12   complaint to respond to the discovery requests.  Our request

13   would be we would have 30 days after the filing of the amended

14   complaint, so file our responses to the discovery requests if

15   they stick by those discovery requests.  If they withdraw them,

16   then whatever the time comes.

17          With respect to the motion for a protective order to

18   stay discovery.  We're talking about only a limited period of

19   probably about a month.  Because the motion will be fully

20   submitted by September 24.  The judge has made clear he doesn't

21   like to entertain argument.  And nobody's requested argument.

22          THE COURT:  We often promise fast rulings, and at the

23   Article III level criminal trials, and at any level, the number

24   of people who request, this is an emergency and we need it

25   fast --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:14-cv-02042-RMB-AJP   Document 233-3   Filed 02/18/16   Page 46 of 95
Case 1:14-cv-03042-RMB   Document 228-3   Filed 02/08/16   Page 206 of 82

                                                                    25
    E7T3RIOC

 1              MR. LIMAN:  Understood, your Honor.  This was a motion

 2      that the judge accepted on an accelerated basis.  Prior to any

 3      response to the complaint, after all, issue is not going to be

 4      joined until after the judge decides the motion of forum non

 5      conveniens.

 6              THE COURT:  I got you.

 7              MR. LIMAN:  We would suggest September 3 for the

 8      motion for a protective order to stay discovery for that

 9      limited time period.

10              THE COURT:  Mr. Lyle, any last word?  Anything new you

11      have to say?

12              MR. LYLE:  I have nothing new, your Honor, other than

13      to point out we will not be withdrawing our discovery requests

14      as much as Mr. Liman wants us to say that.  We will not.

15              THE COURT:  I understand that.  When were they served,

16      by the way?

17              MR. LYLE:  They were deemed served by your Honor at

18      our last hearing.

19              THE COURT:  July 10.  Okay.  The time to respond to

20      the requests, to the extent they're not modified, and I know it

21      is going to keep you busy, you want August 29 or September 3?

22      How much do you want to kill your associates' Labor Day

23      weekend, Mr. Liman, and other defense counsel?

24              MR. LIMAN:  I think September 3, your Honor.  I will

25      say for the record that it will be destroying my Labor Day

                        SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

26

E7T3RIOC

1    weekend as well.

2            THE COURT:  Okay.  Well, misery loves company.  I'm

3    sure your associates will be happy to hear you will be in the

4    trenches with them.

5            All right.  So the formal response is deferred until

6    September 3.  However, I would like you, between August -- and

7    "like" is a polite form of court order -- to have a start of

8    discussions with plaintiff's counsel between now and that date

9    to see, and perhaps the fact that I'm not staying discovery but

10   that you're moving for it, there may be an incentive on both

11   sides to be more reasonable with all of this hanging over their

12   head, although I also understand that the fact there may be a

13   motion to stay granted may incentivize defendants to do as

14   little as possible, and I'm hoping it won't.

15           So, work as hard as you can with plaintiff's counsel

16   to see if discovery goes forward or when discovery goes forward

17   what you can agree you will be doing, what you can't agree,

18   what you're willing to agree will go forward regardless,

19   because it will have to happen somewhere.  Whatever else it may

20   be, and also there often is a misunderstanding about the scope

21   of a request of the old form of all documents about the sale of

22   widgets.  Defendant, do you really want the packing invoices,

23   the shipping labels, no, I just want to know how many widgets

24   you sold.  Dialogue is always good.

25           But the formal response will be due September 3.  And

E7T3RIOC

1     in connection with that, I suggest you incorporate into your

2     responses the gist of the December 2015

3     likely-to-then-be-effective rules, meaning you say this is

4     overbroad, etc., or we object to this, but, here's what we can

5     do, here's what we think is reasonable, etc., etc.

6           And that will also be helpful to me in connection with

7     any motion to stay that is based on burden.  Because if

8     plaintiff drops certain requests or modifies them to reduce

9     your burden, there may not be as much of a burden.

10          As to Mr. Filardo's clients, I think it is pretty

11    clear that you're going to have to do a separate set to him of

12    jurisdictional related discovery requests.

13          How soon can you get it out?  Hopefully so the

14    response time will be approximately the same.

15          MR. LYLE:  Seven days, your Honor?

16          THE COURT:  I'm sorry.

17          MR. LYLE:  We can get it out in seven days.

18          THE COURT:  Next Tuesday.  That would technically mean

19    your response is due later than September 3, but let's leave it

20    as September 3.  I've shortened you from 30 days to 27 or

21    something.  All right?

22          MR. FILARDO:  Okay.

23          THE COURT:  At that point, maybe the thing to do is

24    bring you in on the 4th or 5th of September, see where we are

25    with a motion for a stay to come quickly thereafter.

E7T3RIOC

1          How about Monday, September 8, to give you all time to

2    actually further meet and confer between the 3rd and the

3    conference.  And do you prefer 2 o'clock or 9:30 since that day

4    at the moment is open?

5          MR. LIMAN:  I think we would prefer the morning, your

6    Honor, but we can do either time.

7          MR. LYLE:  We're coming from out of town.  What day is

8    that?

9          THE COURT:  Monday, September 8.  You probably want

10   2 o'clock.

11         MR. LYLE:  It would be very much appreciated.

12         THE COURT:  September 8 at 2 p.m.  If we ever get to

13   the point in conferences where the lifting is not as heavy,

14   shall we say, you certainly should request the ability to

15   appear telephonically and have a local person sitting here just

16   in case.  But, I don't mean to make you schlep up if it is

17   going to be a 10-minute conference on status.  We're now almost

18   at the hour mark, so it was certainly worth your traveling for

19   a conference like this.

20         MR. LYLE:  Thank you, your Honor.

21         THE COURT:  That also means by the time you make the

22   motion to stay, I will have seen at least one if not both

23   briefs on the motion going to Judge Berman on the forum non

24   motion to dismiss, which I think will make it easier to decide

25   what to do.  And I do want you to complete the ESI protocol and

E7T3RIOC

```
 1    the protective order between now and then, and probably submit

 2    it as soon as you either reached agreement or reached agreement

 3    on what you can reach agreement on, with impasse paragraphs.

 4            I would suggest you just send me one version with

 5    everything you've agreed upon as indicated, and where you

 6    disagree, a plaintiff version and a defendant version, one

 7    right after the other with then a separate cover letter,

 8    preferably joint, separately if necessary, as to why I should

 9    cross out the other guy's paragraph and leave yours in.

10            If there are multiple defense views and they don't all

11    get harmonized, then there would be plaintiff and then

12    defendant one and then defendant two versions as such.

13            How soon do you think you will have that wrapped up so

14    it doesn't just hang around until September 3?

15            MR. LIMAN:  I think plaintiff's counsel represented

16    that we could get it done this week.  I think this week might

17    be a little bit tight in terms of conferring with our

18    respective clients -- you said next week?

19            THE COURT:  Do you want to submit it to me by

20    Thursday, August 7?

21            MR. LIMAN:  The following Monday, your Honor.

22            THE COURT:  August 11 it is.  That will be the ESI

23    protocol and the protective order.  And it is, without

24    prejudice, assume it is for discovery going forward.  And then

25    obviously, if that is impacted by either of the defendants'
```

                                                                        30

E7T3RIOC

 1    stay motions, we'll deal with it.  But don't argue about that

 2    in terms of the ESI protocol itself and presumably it won't

 3    affect the protective order either.

 4            Frankly, I have almost never heard an argument about a

 5    protective order that's worth the hourly rate you all are

 6    charging.  It is either a single tier or double tier or some

 7    various thereof.  So I am sure you're going to work that out.

 8            Anything else we should be doing?

 9            MR. LIMAN:  Not from the defense's standpoint.

10            MR. FILARDO:  Nothing else, your Honor.

11            MR. LYLE:  Nothing further for the plaintiff.

12            THE COURT:  Usual drill.  The transcript contains my

13    orders and triggers any objections.  That is to say this

14    conference triggers your 14 days for objections, regardless of

15    when you get the transcript.  You're obviously all used to

16    buying transcripts, since you already have Judge Berman's

17    transcript from yesterday.  But, for the record I'm requiring

18    both sides to order the transcript here 50/50.  Plaintiff on

19    the one hand, multi-defendants on the other.  And you're all

20    rich enough, you can figure out how you'll split it from the

21    defendants' side of it, alternating or fractionizing or

22    whatever.  Hopefully nobody will raise a problem with that.

23            Thank you.  Enjoy as much of the rest of the summer as

24    you can.

25                              o0o


                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 8/12/14

| | |
|---|---|
| Rio Tinto plc, | |
| Plaintiff, | Civil Action No. 14-cv-3042 (RMB) |
| v. | [~~PROPOSED~~] STIPULATED PROTECTIVE ORDER |
| Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSGR Guinea Ltd. BVI, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR Guinea, Frederic Cilins, Michael Noy, Avraham Lev Ran, Mamadie Touré, and Mahmoud Thiam, | |
| Defendants. | |

WHEREAS, Rio Tinto plc ("Plaintiff") and Vale S.A., Benjamin Steinmetz, BSG Resources Limited, BSG Resources (Guinea) Ltd. aka BSG Resources Guinée Ltd, BSG Resources Guinée SARL aka BSG Resources (Guinea) SARL aka VBG-Vale BSGR Guinea, and Mahmoud Thiam (collectively, the "Defendants"), recognize that disclosure and discovery activity are likely to involve production of information that the disclosing party deems to be confidential or highly confidential, as defined below;

WHEREAS, the Parties wish to facilitate discovery while protecting confidential or highly confidential information, as defined below, in accordance with applicable law;

WHEREAS, the Parties wish to facilitate discovery while preventing the waiver of applicable privileges or protections, and privacy rights, (including those of non-parties) due to inadvertent disclosure of privileged information;

WHEREAS, the parties acknowledge that this Stipulated Protective Order does not confer blanket protections on all disclosures or responses to discovery, and that the protection it affords

from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles;

WHEREAS, the court retains discretion whether to afford confidential treatment to any confidential document or information contained in any confidential document submitted to the court in connection with any motion, application, or proceeding that may result in an order and/or decision by the court; and

WHEREAS, the Parties, having conferred through their respective counsel, stipulated and agreed to the following terms of a protective order and hereby stipulate to and petition the court to enter the following Stipulated Protective Order;

ACCORDINGLY, IT IS HEREBY ORDERED that: Pursuant to Federal Rule of Civil Procedure 26(c), good cause exists for the entry of this Stipulated Protective Order (the "Order").

## I. DEFINITIONS

1. "Challenging Party," as used in this Order, means a Party that challenges the designation of information or items under this Order.

2. The term "CONFIDENTIAL," as used in this Order, means "trade secret or other confidential research, development, or commercial information," as those terms are construed within the meaning of Federal Rule of Civil Procedure 26(c)(i)(G), and includes information which the disclosing Party believes in good faith contains, constitutes or reveals confidential design, engineering, business or development information, confidential commercial information, non-public financial information, trade secrets, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), information implicating an individual's legitimate expectation of privacy, or other information of a confidential, proprietary, private or personal nature.

2

3.    "Counsel (without qualifier)," as used in this Order, means outside Counsel of Record and House Counsel (as well as their support staff).

4.    "Designating Party," as used in this Order, means a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

5.    "Designated House Counsel," as used in this Order, means three (3) in-house counsel, employed by the Receiving Party, who have significant responsibility for this matter, identified as follows: For Plaintiff: Debra Valentine, Phil Edmands, Nicholas Sceales; For Defendant Vale S.A.: Clovis Torres, Katherine Spyrides, Adriana Bastos; For Defendant Benjamin Steinmetz: [TBD]; For Defendant BSG Resources: [TBD]; For Defendant VBG: [TBD].

6.    "Disclosure or Discovery Material," as used in this Order, means all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

7.    "Expert," as used in this Order, means a person with specialized knowledge or experience in a matter pertinent to the Litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee, contractor, or agent of a Party or a current employee of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee, contractor, or agent of a Party. For the purposes of this provision only, any person who has served or anticipates serving a Party or a Party's competitor only as an expert or a consultant in litigation matters shall not be considered an employee, contractor, or agent of a Party or a Party's competitor.

3

8.      "Final Disposition," as used in this Order, means the later of (1) dismissal of all claims and defenses in this action, with prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

9.      The term "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," as used in this Order, means extremely sensitive "CONFIDENTIAL" information disclosure of which to another Party or Non-Party would create a substantial risk of serious harm (including, but not limited to, trade secrets, financial data, personal information, or competitively-sensitive information about future business plans and strategies) that could not be avoided by less restrictive means.

10.     "House Counsel," as used in this Order, means In-house counsel for the Parties or their respective corporate parents or subsidiaries.

11.     "Litigation" means the case captioned *Rio Tinto plc v. Vale S.A., et al.*, Civil Action No. 14-cv-3042 (RMB)(S.D.N.Y.).

12.     "Non-Party," as used in this Order, means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

13.     "Outside Counsel of Record," as used in this Order, means attorneys (and their support staffs) who are neither employees of a party to this action nor House Counsel, but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

14.     "Party or Parties," as used in this Order, means any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4

15. "Producing Party," as used in this Order, means a Party or Non-Party that produces Disclosure or Discovery Material in this action.

16. "Professional Vendors," as used in this Order, means persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

17. "Protected Material," as used in this Order, means any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

18. "Receiving Party," as used in this Order, means a Party that receives Disclosure or Discovery Material from a Producing Party.

## II. SCOPE

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, communications, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party created by this Order. Any use of Protected Material at trial shall be governed by a separate agreement or order.

III. **DURATION**

        Even after Final Disposition of this Litigation, see Section XII, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

IV. **DESIGNATING PROTECTED MATERIAL**

        1.    Exercise of Restraint and Care in Designating Material for Protection. Any Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

        If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

        2.    Manner and Timing of Designations. Except as otherwise provided in this Order (*see*, *e.g.*, second Paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

        Designation in conformity with this Order requires:

        a)    For information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

    b)  <u>For testimony given in deposition or in other pretrial or trial proceedings</u>, the Designating Party must indicate on the record before the close of the deposition, hearing, or other proceeding, or else in writing within 14 days thereafter, whether it intends to designate some portion of the testimony as protected. Where a party has indicated that it will be designating any portion of the testimony as protected, the Designating Party shall have ~~sixty (60)~~ 30 days after receipt of the final transcript to review and identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. During such ~~sixty (60)~~ 30 day time period, the entire deposition transcript, including any exhibits, shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." The Designating Party shall serve upon opposing counsel a letter containing a list of pages (including line numbers as appropriate) marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If no designation is made within ~~sixty (60)~~ 30 days after receipt of the transcript, or such other period if the time to designate is modified either by agreement of the Parties or by Court order, the transcript shall be considered not to contain any Protected Material.

    If all or part of a videotaped deposition is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," the DVD, CD, or thumb drive, plus any container, shall be so labeled. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a ~~60~~ 30-day period for designation shall be treated during that period as if it had been designated "HIGHLY

7

CONFIDENTIAL – ATTORNEYS' EYES ONLY " in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

c)     For information produced in some form other than documentary and for any other tangible items, the Producing Party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party shall identify the protected portion(s) and specify the level of protection being asserted. This provision does not apply to CDs, DVDs, thumb drives, hard drives or other storage media on which document productions are transmitted. For such storage media, paragraph (a) of this section above shall govern and each page of documents stored on the media shall be separately marked.

3.     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this Order.

## V.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

1.     Timing of Challenges. Any Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by not mounting a challenge promptly after the original designation is disclosed.

2.      Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing with particularity the basis for each challenge. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within ~~14~~ 7 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

3.      Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party shall file and serve a motion to remove the confidentiality within 14 days of either completion of the meet and confer process or the Challenging Party establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner. Each such motion must be accompanied by a declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. During the challenge process, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

## VI.   ACCESS TO AND USE OF PROTECTED MATERIAL

1.      ~~[PLAINTIFF'S PROPOSED LANGUAGE]~~ Basic Principles. A Receiving Party may use Protected Material that ~~is disclosed~~ or produced by another Party or Non-Party in connection with this ~~Litigation~~ only for prosecuting, defending, ~~or attempting to settle~~  this

9

Litigation between the Parties. A Receiving Party may not use Protected Material in connection with any other case, or in bringing, prosecuting, defending or attempting to settle any other litigation or claims involving Non-Parties. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Litigation has been terminated, a Receiving Party must comply with the provisions of Section XII below.

1.    [~~DEFENDANTS' PROPOSED LANGUAGE~~] Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or Non-Party in connection with this Litigation only for prosecuting, defending, or attempting to settle   this Litigation between the Parties. A Receiving Party may not use Protected Material in connection with any other case, or in bringing, prosecuting, defending or attempting to settle any other litigation or claims involving Non-Parties, provided nothing in this Order shall prevent any Party from using information derived from any Protected Material in any other matter including in the prosecution defense or attempt to settle any other matter. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Litigation has been terminated, a Receiving Party must comply with the provisions of Section XII below.

*[handwritten: Every effort must be made to protect the confidentiality of the Protected Material.]*

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited only to the persons authorized under this Order and promptly notify Outside Counsel for the Producing Party of any accidental or unauthorized access to any Protected Material in accordance with Section VIII.

2.    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

a)      the officers, directors, and employees of a Party to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

b)      House Counsel of a Party to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

c)      A Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record;

d)      Other lawyers to whom it is reasonably necessary to disclose the information for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

e)      Experts of a Party (1) to whom disclosure is reasonably necessary for the purposes of prosecuting, defending, or attempting to settle this Litigation, and (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

f)      the court and its personnel;

g)      court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for the purposes of prosecuting, defending, or attempting to settle this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

h)      the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

i)      Non-Party witnesses in the action to whom disclosure is reasonably necessary for the purposes of prosecuting, defending, or attempting to settle this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by

11

the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

3.   [~~PLAINTIFF'S   PROPOSED   LANGUAGE~~]  Disclosure  of  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to those persons identified above in Section VI, paragraphs 2(c) through (2)(h) and the three (3) Designated House Counsel identified in Section I, paragraph 4. *Counsel shall meet & confer re disclosing specific info. to in-house founder employees.*

3.   [DEFENDANTS'   PROPOSED   LANGUAGE]  Disclosure  of  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to those persons identified above in Section VI, paragraphs 2(c) through (2)(i) and the three (3) Designated House Counsel identified in Section I, paragraph 4.

## VII.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena, Civil Investigative Demand ("CID"), or a court order that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," that Party must:

1.   Promptly and in no event more than ten (10) ~~business~~ days after receiving the subpoena, CID, or order notify in writing the Designating Party.  Such notification shall include a copy of the subpoena, CID, or court order;

2.    Promptly notify in writing the party who caused the subpoena, CID, or order to issue that some or all of the material covered by the subpoena, CID, or order is subject to this Order. Such notification shall include a copy of this Order; and

If the Designating Party timely seeks a protective order, the Party served with the subpoena, CID, or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a determination by a court with appropriate jurisdiction of the subpoena, CID, or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

## VIII.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION

In the event that a party seeks discovery from a Non-Party in this action, the Non-Party may invoke the terms of this Order with respect to any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material provided to the Parties by so advising all Parties to this action in writing.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

## IX.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) use its best efforts to retrieve all unauthorized copies of the Protected Material, (b) provide the person or persons to whom unauthorized disclosures were made with a copy of this

13

Order, and (c) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A. Compliance with the foregoing shall not prevent a Party or Non-Party from seeking further relief from the Court.

X.     **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

1.     Nothing in this Order shall preclude any Party from asserting the attorney-client, work product, or any other applicable privilege as to any document or information. The Parties agree that, pursuant to Fed. R. Evid. 502(d) and the Rule 502(d) Order entered in this action (Dkt. No. 61), a Party's disclosure or production of any documents or information in this proceeding shall not, for the purposes of this proceeding or in any other federal or state proceeding, constitute a waiver by that Party of any privilege or protection applicable to those documents, including the attorney-client privilege, work product protection and any other privilege or protection recognized by law, provided the Producing Party asserts the privilege or protection in writing promptly after learning of the disclosure or production of the privileged or protected document or information.

2.     Upon written notice of a claim of disclosure or production is provided, the Receiving Party shall (a) refrain from any further examination or disclosure of the produced material, (b) promptly return or destroy the produced material as well as any copies thereof (including summaries or excerpts) and certify in writing to that fact, and (c) not use the produced material for any purpose unless or until further order by the Court.

3.     Notwithstanding the foregoing, the Receiving Party may, after conferring with opposing counsel in a good faith effort to resolve any dispute regarding the Designating Party's assertion of privilege or protection, contest the Designating Party's claim of privilege or protection with the Court and seek an order compelling production of the material. Nothing herein shall

prevent the Receiving Party from challenging the privileged status of any produced documents in the event the Parties cannot resolve a claim of privilege or protection without court intervention.

4.      The Parties may retain one copy of the produced material solely for use as an exhibit to such motion to the Court. In the event any produced material is used as an exhibit to such motion to the Court, the Parties agree to seek in camera review of the Exhibit and file any such motion to the Court under seal.



## XI.    **MISCELLANEOUS**

1.      Right to Further Relief. Nothing in this Order abridges the right of any Party to seek its modification or relief from any of its provisions by the Court in the future.

2.      Right to Assert Other Objections and Reservation of Rights. By stipulating to the entry of this Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by this Order. By stipulating to the entry of this Order Defendants do not waive and expressly reserve all rights to object to the Court's jurisdiction over them in this Litigation.

3.      Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with all applicable Federal and Local Rules and Procedures. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Challenging Party's motion to remove the confidentiality designation is granted by the Court, then the Receiving Party may file the Protected Material in the public record unless otherwise instructed by the court.

## XII.    **FINAL DISPOSITION**

*1.* Within 90 days after the Final Disposition of this action, all Parties, Counsel and any other

persons who have received Protected Material in this action shall return such information to counsel

for the Party that disclosed or produced such information, or alternatively may destroy the Protected

Material and certify its destruction. The Parties' attorneys may retain their attorney work product,

and outside counsel for each Party may retain a complete and unredacted set of pleadings and papers

filed with the Court or served on the other Parties.  This Protective Order shall continue to be

binding after the conclusion of this Litigation as set forth in Section III.

William A. Burck
Eric C. Lyttle
Michael J. Lyle
Stephen M. Hauss
QUINN EMMANUEL URQUHART &
    SULLIVAN, LLP
777 6th Street NW, 11th floor
Washington, DC 20001
williamburck@quinnemanuel.com
ericlyttle@quinnemanuel.com
mikelyle@quinnemanuel.com
stephenhauss@quinnemanuel.com

*Counsel for Plaintiff Rio Tinto plc.*

*2.* Sealed records which have been filed with the Clerk shall
be removed by the party submitting them (1) within ninety
(90) days after a final decision is rendered if no appeal is
taken, or (2) if an appeal is taken, within thirty (30) days
after final disposition of the appeal. Parties failing to
comply with this order shall be notified by the Clerk that,
should they fail to remove the sealed records within thirty
(30) days, the Clerk may dispose of them.

BY ECF

SO ORDERED:

8/12/14

Hon. Andrew Jay Peck
United States Magistrate Judge

Copy to Pl. And Counsel
Top Burns

Jonathan I. Blackman
Lewis J. Liman
Boaz S. Morag
Joaquin P. Terceno, III
Matthew M. Karlan
Esti T. Tambay
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
jblackman@cgsh.com
lliman@cgsh.com
bmorag@cgsh.com
jterceno@cgsh.com
mkarlan@cgsh.com
etambay@cgsh.com

*Counsel for Defendant Vale, S.A.*

Paul E. Summit
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
psurnmit@sandw.com

Karen E. Abravanel
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, NY 10019
kabravanel@sandw.com

*Counsel for Defendant Mahmoud Thiam*

Martin J. Auerbach, Esq.
LAW OFFICES OF MARTIN J. AUERBACH, ESQ.
1185 A venue of the Americas, 31st Floor
New York, NY 10036
auerbach@mjaesq.com

*Counsel for Defendants BSG Resources (Guinea)*
*Ltd. aka BSG Resources Guinee Ltd, and BSG*
*Resources Guinee SARL aka BSG Resources*
*(Guinea) SARL aka VBG-Vale BSGR Guinea*

Robert Gold
Vincent Filardo, Jr.
Elizabeth M. Rotenberg-Schwartz
Kavitha S. Sivashanker
750 Seventh Avenue, 26th Floor
New York, New York 10019
Tel: (212) 612-3270
Fax: (212) 612-3297
robert.gold@mishcon.com
vincent.filardo@mishcon.com
elizabeth.rotenberg-schwartz@mishcon.com
kavitha.sivashanker@mishcon.com

*Attorneys for Defendants Benjamin Steinmetz*
*and BSG Resources Limited*

18

## EXHIBIT A

   I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled *Rio Tinto plc v. Vale S.A., et al.*, Action No, 14-cv-3042 (RMB), have been designated as confidential.  I have been informed that any such documents or information labeled "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" are confidential by Order of the Court.

   I hereby agree that I will not disclose any information contained in such documents to any other person.  I further agree not to use any confidential information in connection with any other case, or in bringing, prosecuting, defending or attempting to settle any other litigation or claims.

Executed on the _____ day of _____, 20____.


_____

# EXHIBIT E

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | | |
|---|---|---|
| Rio Tinto plc | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  14-cv-3042 |
| Vale S.A., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: 
UBS Financial Services Inc.
1285 Avenue of the Americas, New York, NY 10019

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A.

| Place: Quinn Emanuel Urquhart & Sullivan LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010 | Date and Time:<br>10/05/2015 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   09/03/2015

CLERK OF COURT

OR

_____          *Eb    /MDB*
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Rio Tinto plc
_____ , who issues or requests this subpoena, are:

Eric Lyttle, ericlyttle@quinnemanuel.com, 202-538-8162, Quinn Emanuel Urquhart & Sullivan LLP, 777 6th St. NW, 11th Floor, Washington, D.C. 20001

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  14-cv-3042

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## DEFINITIONS AND RULES OF CONSTRUCTION

As used herein, the following terms shall have the meanings indicated below:

1.      "Accounts" shall be construed to include all open or closed financial accounts of any kind, including but not limited to, checking accounts, savings accounts, certificates of deposit, money market accounts, brokerage accounts, investment accounts, retirement accounts, safe deposit boxes, financing arrangements, and other negotiable instruments.

2.      "Any," "all," and "each" shall be construed as encompassing any and all.

3.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4.      "Concerning" means relating to, referring to, describing, evincing, or constituting.

5.      "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).   A draft or non-identical copy is a separate document within the meaning of this term.

6.      "Including" means "including but not limited to" and "including without limitation."

7.      "UBS," "You" or "Your" shall mean UBS Financial Services Inc., including all current and former parents, subsidiaries, partners, agents, representatives, attorneys, or anyone acting with or on behalf of any of the foregoing.

8.      "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

1

9.      "Relating to" means constituting, pertaining to, making reference to, comprising, evidencing, alluding to, responding to, connected with, commenting on, with respect to, about, regarding, resulting from, embodying, explaining, supporting, contradicting, discussing, showing, describing, reflecting, analyzing, setting forth, in respect of, having a relationship to, or in any way being factually, legally, or logically connected to, in whole or in part, the stated subject matter.

## INSTRUCTIONS

1.      Unless otherwise indicated, the documents requested in this Notice include all documents in your possession, custody, or control.  Without limiting the meaning of the terms "possession, custody, or control" as used in the preceding sentence, a document is in your possession, custody, or control if you have actual possession or custody of the document, or the right to obtain the document or a copy thereof upon demand from one or more of your employees, representatives, agents, independent contractors, consultants, attorneys, accountants, auditors, or any other Person or public or private entity that has actual physical possession.

2.      Unless otherwise stated in a specific request, these requests seek responsive information and documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, relating to, or in effect between January 1, 2009 and December 31, 2013.

3.      If you object to any of these document requests, state in writing with specificity the grounds of your objection.  Any such objection must comply with Fed. R. Civ. P. 45.  If you object to a particular portion of any document request, you shall respond to any other portions of such document request as to which there is no objection and state with specificity the grounds of the objection.

2

4. If you withhold any Communication, Document or part thereof that is responsive to any of these document requests on grounds of attorney-client privilege, attorney work-product doctrine or any other privilege, doctrine or basis whatsoever, state in writing with specificity:

     a. the date of the Document or Communication;

     b. the type, title and subject matter of the Document or Communication sufficient to assess whether the assertion of privilege is valid;

     c. the name of the Person or Persons who prepared or signed the Document or engaged in the Communication;

     d. the names and positions of any recipients of the Document or Communication;

     e. each Person now in possession of the original or a copy of the Document or Communication;

     f. the particular privilege, doctrine, or other basis for withholding the Document or Communication; and

     g. the grounds for applying such privilege, doctrine or other basis to the Document or Communication withheld.

5. With respect to the documents produced, you shall produce them as they are kept in the usual course of business.

6. Electronically stored information ("ESI") should be produced in its native format with all metadata preserved and intact, or pursuant to an agreement with Rio Tinto on the form of production of ESI.

7. Documents shall be produced on a rolling basis as they become available.

8. Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

9. File folders with tabs or labels, or directories of files identifying documents, must be produced intact with such documents.

10.     Pursuant to Fed. R. Civ. P. 45, you must produce entire documents including attachments, enclosures, cover letters, memoranda, and appendices. Documents not otherwise responsive to this request are to be produced if such Documents are attached to, or enclosed with, any Document that is responsive. Examples of such Documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, or similar Documents. In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments.

11.     A document with handwritten, typewritten or other recorded notes, editing marks, or other revisions is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy or copies of any document if there is no actual original.

12.     The singular includes the plural and vice versa, except as the context may otherwise require; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation."

13.     If You cannot respond fully to a document request after exercising due diligence to secure the information requested, or do not have information responsive to any part of a document request, you must so state and describe in full your efforts to obtain the information requested, and respond to the document request to the fullest extent possible.  If a qualified response to a document request must be given, you shall respond to the document request as directly and fully as possible and state fully the reason that such qualification is necessary.

14.     If Your response to a particular request is a statement that you lack the ability to comply with that request, you must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody, or control, in which case the name and address of any Person or entity known or believed by you to have possession, custody, or control of that information or category of information must be identified.

15.     If the identity of documents responding to a document request is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in your possession, but is known or believed to be in the possession of another Person, then identify that Person and state the basis of your belief or knowledge that the requested information is in such Person's possession.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1.**

All Communications between You and any government entity concerning Mahmoud Thiam.

**REQUEST NO. 2.**

All Documents, including but not limited to account statements, wire transfer records and receipts, withdrawal receipts or records, deposit receipts or records, signature cards, cancelled checks, loan applications, loan disbursement documents, collateral agreements, tax withholding statements, trading records, safe deposit box rental information (including logs of dates and times of entries to the box), and copies of cashier's checks, money orders, or traveler's checks purchased, concerning the Accounts maintained by You that could be accessed by, or were within the control of, Mahmoud Thiam, any of his family members, or any business entities associated with Mr. Thiam, including but not limited to the account bearing the identification number AE90260 MT.[1]

---

[1]  Mahmoud Thiam, a named defendant in the above-captioned action, has designated this account number "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the protective order in the underlying case.

5

Dated:      Washington, D.C.                    QUINN EMANUEL URQUHART
            September 3, 2015                    & SULLIVAN, LLP

                                                _E. L. / MDB_____

                                                William A. Burck
                                                Michael J. Lyle
                                                Eric C. Lyttle
                                                Stephen M. Hauss
                                                777 6th Street, NW, 11th Floor
                                                Washington, D.C. 20001
                                                Telephone: (202) 538-8000
                                                Facsimile: (202) 538-8100
                                                williamburck@quinnemanuel.com
                                                mikelyle@quinnemanuel.com
                                                ericlyttle@quinnemanuel.com
                                                stephenhauss@quinnemanuel.com

                                                *Attorneys for Rio Tinto plc*

6

# EXHIBIT F



Sullivan & Worcester LLP     T 212 660 3000
1633 Broadway               F 212 660 3001
New York, NY 10019          www.sandw.com

January 26, 2016

**VIA EMAIL**

Jonathan Blackman, Esq.
Cleary Gottlieb Steen & Hamilton LLP
City Place House
56 Basinghall Street
London EC2V 5EH
020-7614-2200

      Re:  <u>Rio Tinto PLC v. Vale S.A. et al., C.A. No. 14-3042 (RMB) (AJP) (S.D.N.Y.)</u>

Dear Jonathan:

      This responds to Joaquin Terceno's e-mail of January 20, 2016 and your letter of January 25, 2016 (copies attached) regarding (1) Vale's refusal to return or destroy Mr. Thiam's Protected Material as required by the Protective Order in the above-captioned matter (the "New York Litigation"); and (2) Vale's request to use Mr. Thiam's Protected Material in Vale's arbitration against BSG Resources Limited ("BSGR") in the London Court of International Arbitration (the "LCIA Arbitration").

      First, as to Vale's refusal to return or destroy Mr. Thiam's Protected Material, your reading of the Protective Order is untenable. Judge Berman declined to exercise supplemental jurisdiction over Rio Tinto's state claims, but dismissed all claims over which he did have jurisdiction with prejudice. Thus, there has been a Final Disposition (as defined in the Protective Order). Moreover, Rio Tinto did not appeal Judge Berman's Decision and Order of November 20, 2015, thus fulfilling the second alternate prong of Final Disposition (completion and exhaustion of all appeals). Mr. Terceno's email alludes to unspecified public statements by Rio Tinto that it is "considering" pursuing the state law claims. Mr. Terceno asserts that such claims, if ever brought, would have "no merit." Is it truly Vale's contention that it can lawfully hold Mr. Thiam's Protected Material so long as it wishes, while Rio Tinto (supposedly) "considers" bringing frivolous claims?

      Vale must return or destroy Mr. Thiam's Protected Material by February 18, 2016.

      Second, we reject Vale's request to use Mr. Thiam's Protected Material in the LCIA Arbitration. As you know, Mr. Thiam has declined to produce documents in the LCIA Arbitration that pertain to "private, confidential information." Letter from Paul E. Summit to James Libson, Esq. (Mishcon de Reya LLP) of November 17, 2015. Of the 3,091 pages of documents that Vale has requested permission to use, over 2,225 pages consist of private bank records from the accounts of Mr. Thiam, his wife, and his business. Mr. Thiam is not a party to

Jonathan Blackman, Esq.
January 26, 2016
Page 2

the LCIA Arbitration.  Vale now has his Protected Material in its possession for one reason only: its refusal to comply with the terms of the Protective Order in the New York Litigation.

Vale has no right to use the requested documents in the LCIA Arbitration and Mr. Thiam will not allow any exception to their designation as Protected Material under the Protective Order.

Please do not hesitate to call if you wish to discuss these matters.

Very truly yours,

Paul Summit /ccf

Paul E. Summit

Attachments

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK

WASHINGTON, DC

PARIS

BRUSSELS

FRANKFURT

COLOGNE

MOSCOW

CITY PLACE HOUSE
55 BASINGHALL STREET
LONDON EC2V 5EH
020-7614-2200

FACSIMILE 020-7600-1698
WWW.CLEARYGOTTLIEB.COM

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

Writer's Direct Dial: +1 (212) 225-2490
E-Mail: jblackman@cgsh.com

January 25, 2016

BY EMAIL

Paul Summit
Sullivan & Worcester LLP
1 Post Office Square
Boston, MA 02109

Re:  Rio Tinto PLC v. Vale S.A. et al., C.A. No. 14-3042 (RMB) (AJP)
(S.D.N.Y.)

Dear Paul:

We write concerning documents produced in this action, before it was dismissed by Judge Berman, by your client Mahmoud Thiam, or related to bank accounts of Mr. Thiam and affiliated persons.

As you know, Vale S.A. ("Vale") is the claimant in a confidential arbitration against BSG Resources Limited ("BSGR") in the London Court of International Arbitration, *Vale S.A. vs. BSG Resources Limited* (LCIA Arb. No. 142683) (the "Arbitration"). Mr. Thiam has voluntarily provided a witness statement on behalf of BSGR in that Arbitration.

Several of the documents produced in this action by Mr. Thiam, or by banks relating to accounts held by himself, his wife, or a company he owns, as specified in the attached Appendix I (the "Documents"), are directly relevant to the Arbitration, particularly as Mr. Thiam is now a witness there. Accordingly, Vale requests that you allow a limited exception to the Documents' designation as Protected Material under ¶ XII of the Protective Order in this action,[1] solely to allow Vale to use the Documents in the Arbitration. Any of the Documents used in the Arbitration will be kept confidential and will enjoy the substantial protections afforded by the LCIA rules and the confidentiality order in place in that proceeding, which strictly requires the parties to keep all documents in the Arbitration confidential and precludes them from using the

---

[1] Stipulated Protective Order at 16 (Nov. 12, 2014), ECF No. 81.

CLEARY GOTTLIEB STEEN & HAMILTON LLP IS A LIMITED LIABILITY PARTNERSHIP REGISTERED IN ENGLAND AND WALES NUMBER OC310280
IT IS AUTHORISED AND REGULATED BY THE SOLICITORS REGULATION AUTHORITY. A LIST OF THE MEMBERS AND THEIR PROFESSIONAL
QUALIFICATIONS IS OPEN TO INSPECTION AT THE REGISTERED OFFICE, CITY PLACE HOUSE, 55 BASINGHALL STREET, LONDON EC2V 5EH.
CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Paul Summit, p. 2

documents for any purpose other than the Arbitration.  In short, the only use that would be made of the Documents is in a strictly confidential, non-public arbitration proceeding between Vale and BSGR.

As you know, Mr. Thiam has in fact already agreed to allow the production of certain documents in the Arbitration by BSGR in response to document requests made by Vale to BSGR, with the understanding that they are afforded the same confidential status in the Arbitration as in this action.  Letter from Paul Summit to James Libson, Mischon de Reya LLP (November 17, 2015) (referring to Vale Request No. 69 in the Arbitration).  We are simply asking that Mr. Thiam consent to the limited use of the Documents in Appendix I, all of which we as Vale's counsel already have, for use in the Arbitration as well, and to amend the Protective Order in this action accordingly.  This will entail no burden or prejudice to Mr. Thiam, who has voluntarily chosen to take part as a witness in the Arbitration, and who has already produced the Documents in question, or whose banks have produced such Documents.  In the latter case, we understand that the banks will have no objection to their use in the Arbitration with Mr. Thiam's consent.

We again stress that the LCIA arbitration is a confidential proceeding.  Given your client's past indication that he would be willing to produce documents for use in the Arbitration subject to the same confidentiality restrictions imposed in this action, we assume Mr. Thiam will have no objection.  Given the impending deadline for Vale's Reply in the Arbitration, however, and in order to allow time for an application to Judge Peck in the event that Mr. Thiam does not consent, Vale requests that you respond to this letter by close of business on January 27, 2016.

Yours sincerely,

Jonathan I. Blackman

**APPENDIX I**

| | |
|---|---|
| MT000951 | MT017704-MT017706 |
| MT001240-MT001241 | MT017713-MT017716 |
| MT001586-MT001590 | MT017815-MT017817 |
| MT001595-MT001596 | MT017834 |
| MT001605-MT001606 | MT019540-MT019541 |
| MT001607-MT001608 | MT019970 |
| MT005538-MT005561 | MT020041-MT020042 |
| MT005846-MT005847 | MT020047 |
| MT005932-MT005936 | RT_CB_0000001-RT_CB_0000004 |
| MT007190 | RT_CB_0000005-RT_CB_0000010 |
| MT007191-MT007193 | RT_CB_0000011-RT_CB_0000131 |
| MT007678-MT007681 | RT_CB_0000132-RT_CB_0000186 |
| MT010496-MT010498 | RT_CB_0000187-RT_CB_0000456 |
| MT011254 | RT_CB_0000459-RT_CB_0000839 |
| MT011299-MT011301 | RT_CB_0000840-RT_CB_0001465 |
| MT012383-MT012385 | RT_HSBC_00000001-RT_HSBC_00000124 |
| MT012392 | RT_HSBC_00000125-RT_HSBC_00000133 |
| MT012546 | RT_HSBC_00000134-RT_HSBC_00000142 |
| MT012549-MT012551 | RT_HSBC_00000147-RT_HSBC_00000170 |
| MT013043-MT013044 | RT_HSBC_00000173-RT_HSBC_00000211 |
| MT013048-MT013049 | RT_HSBC_00000212-RT_HSBC_00000215 |
| MT013050 | RT_JPMC_0000001-RT_JPMC_0000122 |
| MT013084-MT013087 | RT_JPMC_0000123-RT_JPMC_0000387 |
| MT013386-MT013389 | RT_JPMC_0000388-RT_JPMC_0000703 |
| MT013527-MT013528 | RT_JPMC_0000704-RT_JPMC_0000707 |
| MT013881 | RT_UBSFS_00000001-RT_UBSFS_00000024 |
| MT014213-MT014216 | RT_UBSFS_00000025-RT_UBSFS_00000120 |
| MT014980 | RT_UBSFS_00000121-RT_UBSFS_00000216 |
| MT014983 | RT_UBSFS_00000217-RT_UBSFS_00000312 |
| MT015029-MT015032 | RT_UBSFS_00000313-RT_UBSFS_00000376 |
| MT015045-MT015047 | RT_UBSFS_00000377-RT_UBSFS_00000408 |
| MT015110-MT015111 | RT_UBSFS_00000409-RT_UBSFS_00000472 |
| MT015233 | RT_UBSFS_00000473-RT_UBSFS_00000478 |
| MT015464-MT015465 | RT_UBSFS_00000479-RT_UBSFS_00000482 |
| MT015466-MT015467 | RT_UBSFS_00000689-RT_UBSFS_00000768 |
| MT015805 | RT_UBSFS_00000769-RT_UBSFS_00000771 |
| MT016877-MT016879 | RT_UBSFS_00000772-RT_UBSFS_00000782 |
| MT016880-MT016882 | RT_UBSFS_00000783-RT_UBSFS_00000786 |
| MT016883 | TC001271 |
| MT017452-MT017453 | |
| MT017459-MT017461 | |
| MT017699 | |
| MT017700-MT017701 | |

Andrade, Noemi

| | |
|---|---|
| **From:** | Terceno, Joaquin <jterceno@cgsh.com> |
| **Sent:** | Wednesday, January 20, 2016 1:36 PM |
| **To:** | Fahey, Caitlin C.; Summit, Paul E.; Solomon, Andrew T. |
| **Cc:** | Karlan, Matthew M.; Blackman, Jonathan I; Liman, Lewis J.; Morag, Boaz S.; Tambay, Esti; Reents, Scott; Ellis, KC |
| **Subject:** | RE: Rio Tinto v. Vale, et al. - Thiam Protected Material |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel,

We write on behalf of Vale in response to your email of January 4, 2016 requesting the return or destruction of documents produced by Defendant Mahmoud Thiam or by certain third parties in the *Rio Tinto v Vale et al* litigation (the "Rio Tinto Action"). Section XII of the Stipulated Protective Order in the Rio Tinto Action provides for the return or destruction of documents within 90 days of the "Final Disposition" of the action, which is defined in Section I as "the later of (1) dismissal of all claims and defenses in this action, with prejudice; or (2) final judgment after the completion and exhaustion of all appeals, rehearings," etc. No Final Disposition has occurred in the Rio Tinto Action under these provisions, because Judge Berman dismissed Rio Tinto's state law claims *without* prejudice. While Rio Tinto's state law claims against Vale have no merit, the possibility that Rio Tinto might nonetheless seek to pursue them, which it has publicly stated it was considering, means there has been no "Final Disposition" yet. Thus, your request is premature, and Vale will not comply with it.

In any event, as you may be aware, a request is currently pending before the Tribunal in the *Vale v. BSGR* LCIA arbitration related to BSGR's requirement to use its best efforts to seek production of many of the documents that are the subject of your request, for Vale's use in the arbitration. Until that request is resolved, which may include Vale's seeking relief from the Stipulated Protective Order for this limited purpose from Judge Peck, Vale respectfully declines your request to return or destroy the documents in question.

Regards,

Jack

_____

Joaquin Terceño
Cleary Gottlieb Steen & Hamilton LLP
Assistant: ebritton@cgsh.com
One Liberty Plaza, New York NY 10006
t: 1 212 225 2258 | f: +1 212 225 3999
www.clearygottlieb.com | jterceno@cgsh.com

---

**From:** Fahey, Caitlin C. [mailto:cfahey@sandw.com]
**Sent:** Monday, January 04, 2016 11:32 AM
**To:** 'Daniel Koffmann'; Scott Lerner; Karlan, Matthew M.; 'Vincent.Filardo@Mishcon.com'; Meghan McCaffrey; 'Shauneida.Depeiza@Mishcon.com'; 'Elizabeth.Rotenberg-Schwartz@Mishcon.com'; 'Peter.D'Agostino@Mishcon.com'; Summit, Paul E.; auerbach@mjaesq.com; 'Tim.McCarthy@Mishcon.com'; 'Mark.Lee@Mishcon.com'; Eric Lyttle; Jaime Kaplan; Keith Forst; Mike Bonanno; Mike Lyle; Selina MacLaren; Stephen Hauss; William Burck; 'mtremonte@shertremonte.com'; 'appelman@mjaesq.com'; Blackman, Jonathan I.; Liman, Lewis J.; Morag, Boaz S.; Terceno, Joaquin; Tambay, Esti; Reents, Scott; Solomon, Andrew T.; Ellis, KC
**Subject:** Rio Tinto v. Vale, et al. - Thiam Protected Material

Counsel:

Pursuant to Section XII of the attached Protective Order (Dkt No. 81), Defendant Thiam requests that by February 18, 2016 all "Parties, Counsel and other persons who have received Protective Material" produced by Thiam in this action either (1) return such information to Thiam's counsel; or (2) destroy the Protected Material and certify its destruction.

Please note that Protected Material produced by Thiam in this action includes Thiam's productions of documents from third-parties Thiam & Co., LLC and Natural Resource Governance Institute (NRGI).

In addition, Thiam requests that by February 18, 2016 all "Parties, Counsel and other persons who have received [Thiam or Thiam & Co., LLC's] Protective Material" that was obtained (and produced) by Rio Tinto via subpoenas to: (a) Citibank; (b) HSBC; (c) JP Morgan; and (d) UBS either (1) return such information to Thiam's counsel; or (2) destroy the Protected Material and certify its destruction.

Thank you.

Kind regards,

Caitlin


**Caitlin C. Fahey**
**Attorney at Law**

**Sullivan & Worcester LLP**
1633 Broadway • New York, NY 10019

T  212 660 3038
F  212 660 3001
cfahey@sandw.com
www.sandw.com
in  LinkedIn Profile


This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

# EXHIBIT G



SULLIVAN & WORCESTER

Sullivan & Worcester LLP        T 212 660 3000
1633 Broadway                   F 212 660 3001
New York, NY 10019              www.sandw.com

January 28, 2016


**VIA EMAIL**

Jonathan Blackman, Esq.
Cleary Gottlieb Steen & Hamilton LLP
City Place House
56 Basinghall Street
London EC2V 5EH
020-7614-2200

      Re: <u>Rio Tinto PLC v. Vale S.A. et al., C.A. No. 14-3042 (RMB) (AJP) (S.D.N.Y.)</u>

Dear Jonathan:

      This responds to your letter of January 27, 2016 (copy attached).

      As to Vale's return or destruction of Mr. Thiam's Protected Material, we will agree as an accommodation to extend the deadline for return or destruction to May 20, 2016 (the last day that Rio Tinto has to commence an action in state court). Note, however, that the Protective Order would not authorize use of the Protected Materials in any state court proceeding in the (unlikely) event that Rio Tinto were to commence such a proceeding, and our extension of the date of return or destruction does not imply consent to use of the Protected Materials in a state proceeding.

      Mr. Thiam does not agree to allow Vale to use his Protected Material in its arbitration against BSGR in London (the "LCIA Arbitration"). One of the "basic principles" of the Protective Order is that:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or Non-Party in connection with this Litigation only for prosecuting, defending, or attempting to settle this Litigation between the Parties. A Receiving Party may not use Protected Material in connection with any other case….

Protective Order Section VI, ¶ 1.

      It is obviously "logical" that Mr. Thiam, as a defendant in an action in the United States, would comply with his document production obligations under the Federal Rules of Civil Procedure; but would not make his private, confidential information available in an international proceeding to which he is not a party. The supposed "stringent confidentiality protections" (whatever they may be) of the LCIA Arbitration are irrelevant. Vale's conduct with regard to the Protected Material is strictly governed by the Protective Order.

BOSTON   LONDON   NEW YORK   WASHINGTON, DC

Jonathan Blackman, Esq.
January 28, 2016
Page 2


We remain available for a call should you wish to discuss this.

Very truly yours,

Paul Summit

Paul E. Summit

Attachment

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

<table>
<tr>
<td>

NEW YORK

WASHINGTON, DC

PARIS

BRUSSELS

FRANKFURT

COLOGNE

MOSCOW

</td>
<td>

CITY PLACE HOUSE
55 BASINGHALL STREET
LONDON EC2V 5EH
020·7614·2200

FACSIMILE 020-7600·1698
WWW.CLEARYGOTTLIEB.COM

</td>
<td>

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

</td>
</tr>
</table>

Writer's Direct Dial: +1 (212) 225-2490
E-Mail: jblackman@cgsh.com

January 27, 2016

<u>BY EMAIL</u>

Paul Summit
Sullivan & Worcester LLP
1 Post Office Square
Boston, MA 02109

Re: <u>Rio Tinto PLC v. Vale S.A. et al., C.A. No. 14-3042 (RMB) (AJP)
(S.D.N.Y.)</u>

Dear Paul:

I am writing to respond briefly to your letter of January 26, 2016. As to the first point, we obviously disagree on the interpretation of the Protective Order. The Protective Order refers to the dismissal of all claims "with prejudice"; Judge Berman did not dismiss the purported state law claims with prejudice, and under CPLR 205(a), Rio Tinto potentially has six months from the date of Judge Berman's decision to commence an action on those claims in New York state court, which Sue Prevezer told Master Leslie in the U.K. proceedings that Rio Tinto was considering doing. Both of our clients obviously would prefer to avoid another round in state court, but until the deadline for Rio Tinto to commence such action passes, it would be irresponsible simply to discard the results of the discovery taken in this federal action before its dismissal – and the Protective Order does not require that we do so.

As to our request to use the documents that Mr. Thiam designated at confidential, for the limited purpose of the LCIA arbitration, I can only say that it is Mr. Thiam who chose to involve himself in that arbitration by submitting an extensive witness statement that refers to matters directly implicated by his "private, confidential [financial] information". There is no logical reason why, having produced this information in the U.S. lawsuit, Mr. Thiam should not agree to its use in the arbitration, under what are even more stringent confidentiality protections (where, *e.g.*, unlike in a U.S. lawsuit, there is no possibility of its ever being used in open court

CLEARY GOTTLIEB STEEN & HAMILTON LLP IS A LIMITED LIABILITY PARTNERSHIP REGISTERED IN ENGLAND AND WALES NUMBER OC310280
IT IS AUTHORISED AND REGULATED BY THE SOLICITORS REGULATION AUTHORITY  A LIST OF THE MEMBERS AND THEIR PROFESSIONAL
QUALIFICATIONS IS OPEN TO INSPECTION AT THE REGISTERED OFFICE, CITY PLACE HOUSE, 55 BASINGHALL STREET, LONDON EC2V 5EH
CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Paul Summit, p. 2

in a trial).

        Let me know if you think any compromise is possible on this issue; otherwise, we will ask Judge Peck for a limited modification of the Stipulated Protective Order for this purpose.

        Yours sincerely,

        Jonathan I. Blackman