# EXHIBIT D



Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

T 212 660 3000
F 212 660 3001
www.sandw.com

March 7, 2016

By ECF

The Honorable Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, NY 10007-1312

Re:   *Rio Tinto v. Vale et al.*, Civil Action No. 14-cv-03042 (RMB)(AJP)

Dear Judge Peck:

This firm represents defendant Mahmoud Thiam ("Thiam") in the referenced action (the "Action"). We write pursuant to Your Honor's March 2, 2016 Order directing the parties to address the questions raised in paragraphs 2 and 3 of Judge Berman's March 2, 2016 Order, which are separately identified below as Issues 1 to 3.

**Issue 1**.   *"[I]n light of the Court's November 20, 2015 Decision & Order dismissing the above-captioned matter and directing the Clerk of the Court to close the case – whether [] the Decision & Order terminated the June 12, 2014 Order of Referral to Judge Peck"?*

Yes. The November 20, 2015 Decision & Order closed the case, and thus marked the end to any proceedings that could be deemed "pre-trial." The Order of Referral was limited to general *pretrial* matters only—consistent with its statutory underpinning, 28 U.S.C. § 636(b)(1)(a)(authorizing referrals to a magistrate judge for "any pretrial matter"). As a result, when the District Court dismissed the case, its authorization to the Magistrate Judge also terminated.[1]  *See generally Estate of Conners by Meredith v. O'Connor*, 6 F3d 656 (9th Cir. 1993).

**Issue 2.**   *"[I]n light of the Court's November 20, 2015 Decision & Order…whether[] the Court retained jurisdiction to consider Vale's February 1, 2016 letter application, which seeks to modify the Protective Order, signed by Judge Peck and entered on August 12, 2014, pursuant to Section XI,1 thereof"?*

No. Section XI, ¶ 1 provides that "nothing in this order abridges the right of any Party to seek its modification or relief from any provisions by the Court in the future." That language is not an affirmative retention of jurisdiction. Other provisions of the Protective Order do express post-disposition obligations, specifically, Section III (requiring the parties to abide by

---

[1] It follows then, respectfully, that Your Honor lacked authority to issue the February 1, 2016 Order granting Vale's application and Your Honor's February 19, 2016 memo endorsement.

BOSTON   LONDON   NEW YORK   WASHINGTON, DC

Hon. Andrew J. Peck
United States Magistrate Judge
March 7, 2016
Page 2

confidentiality requirements "even after Final Disposition") and Section XII (requiring the parties to return or destroy Protected Materials within "90 days after the Final Disposition").

Rule 26(c) of the Federal Rules of Civil Procedure does not refer to modification of a protective order. Case law, however, recognizes that a court has inherent authority to enforce or modify those provisions while they remain in effect. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987). But this is not an unlimited grant of jurisdiction. Modification is *only* appropriate if there are changed circumstances or some compelling need. *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979).

The modification sought by Vale would be an abuse of discretion. Vale does not seek to enforce or modify the Protective Order to accommodate a change of circumstance or to serve a "compelling need"; it seeks to rewrite the deal and to nullify the Protective Order's "basic principles" based on circumstances that existed—and the good cause shown—at the time the parties had negotiated and Your Honor granted the Protective Order. Specifically, the parties agreed and Your Honor ordered—on good cause shown—that "[a] Receiving Party *may not use Protected Material in connection with any other case*" (Protective Order**,** Section VI, ¶ 1) and that Protected Material exchanged in discovery would be destroyed or returned to the producing party (Protective Order, Section XII).

The cases that Vale cites actually support Thiam. For example, in *In re"Agent Orange" Prod. Liab. Litig.,* the court expressly retained its power to order documents released and directed all discovery be filed with the court. 821 F.2d at 147. The Second Circuit's rationale was that the documents at issue were of "enormous public interest." *Id.* at 149. No public interest exists here, and there is nothing in the District Court's order dismissing the case that remotely suggested that it was retaining jurisdiction to assist Vale with discovery before a foreign arbitral tribunal.

*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004), is also cited by Vale, but also undercuts its case. *Gambale* makes clear that a court's post-judgment jurisdiction over a protective order is not unlimited, but exists only to enforce its continuing obligations or to modify in the case of a "compelling need" or in the event of an "extraordinary circumstance." The issue there involved the unsealing of "judicial documents" on file with the court, not documents that were merely exchanged by the parties in discovery.

In summary, while a district court certainly has inherent authority to modify or enforce a protective order post-judgment, that grant of jurisdiction is not plenary or unlimited.

Hon. Andrew J. Peck
United States Magistrate Judge
March 7, 2016
Page 3

**Issue 3.** *"If jurisdiction is found to continue beyond dismissal of the matter on November 20, 2015, the Court respectfully requests that Judge Peck rule upon the merits of the parties' motions with authorities."* [2]

Following this Court's February 1, 2016 Order, the parties' motions were submitted to Judge Berman. We attach Thiam's papers, *i.e.*, the Objections to Magistrate Judge Andrew J. Peck's February 1, 2016 Order (Dkt. No. 421)("Thiam's Objections"). We write here to respond briefly to Vale's arguments in its February 22, 2016 letter to Judge Berman (Dkt. No. 427).

The basic standard is this: "Once a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982)(denying modification of confidentiality order to reveal terms of settlement).

*Thiam Reasonably Relied on the Protective Order*

Courts in this circuit have applied a balancing test to determine whether a party has reasonably relied on a protective order based on the following four factors: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *In re September 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009). Here, all of the factors favor Thiam.

1. Although the Protective Order is broad, the materials at issue fall squarely within the specific definitions of "confidential" as agreed by the parties and ordered by the Court. Specifically, the parties agreed (and the court ordered) that (1) materials such as "confidential commercial information," "non-public financial information," and "information impacting an individual's legitimate expectation of privacy" shall be deemed "confidential" (Protective Order, Section I, ¶ 2); and (2) extremely sensitive "confidential" information such as "financial data" and "personal information" were deemed "highly confidential – attorneys' eyes only." (Protective Order Section I, ¶ 9).

2. The language of the Protective Order strongly favors Thiam's reliance. The order specifically provides that "Protected Material," including material with the lowest designation of "confidential," would not be used in other proceedings. *Nielsen Co. (US), LLC v. Success Sys.*, 112 F. Supp. 3d 83, 121 (S.D.N.Y. 2015)(fact that protective order required documents to be destroyed after termination of the litigation suggests parties "*could reasonably expect that any information produced subject to the Protective Order would ordinarily not be used in other matters*").

---

[2] We assume that the District Court's referral to this Court here is under 28 U.S.C. § 636(b)(1)(C)(3), permitting a magistrate judge to be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(1)(C)(3).

Hon. Andrew J. Peck
United States Magistrate Judge
March 7, 2016
Page 4

3.  As shown on the face of the Protective Order, the Court certainly engaged in a significant level of inquiry before granting the Order, marking it and ruling on several issues of dispute, including the very section Vale seeks to nullify here (*See* Protective Order Section VI).

4.  Thiam relied on the express provision prohibiting Protected Material from being used in other proceedings. This reliance was reasonable because at the time the Protective Order was negotiated and entered *all* parties knew that other proceedings were on-going, including the Arbitration.

Thus, absent a "compelling need" or "extraordinary circumstances," the Protective Order cannot be modified.

*Vale Cites No Compelling Need or Changed Circumstances*

Vale's purpose in seeking Thiam's Protected Material is an "important factor when considering a request to modify." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 2010 U.S. Dist. LEXIS 19510, at *27 (S.D.N.Y. Mar. 2, 2010)(holding use of documents in pending foreign litigations was not "compelling need that justifies modification" of confidentiality order). In its February 22, 2016 letter to Judge Berman, Vale claims that Thiam's non party status in the Arbitration is irrelevant. Not so. The case Vale relies on supports Thiam's position. In *United States CFTC v. Parnon Energy, Inc.*, 593 Fed. Appx. 32 (2d Cir. 2014), when the third party produced documents to CFTC as part of a nationwide investigation, it was told that they "would be subject to 'routine uses,' including use in litigation and disclosure in response to a subpoena." *Id.* at 37. By contrast, when Thiam's documents were produced, they were protected by the Protective Order, which restricts the use of the documents to the Action only.

*Vale Seeks an End Run Around the LCIA Discovery Rules*

Vale claims that it is not circumventing the LCIA discovery rules because it is "not seeking discovery[; i]t has possession of the documents at issue...." Vale's Letter to Judge Berman, February 22, 2016 at 2. This is flawed circular reasoning. Vale's position is: we obtained documents (subject to the rigorous protections of the Protective Order benefiting Thiam and restricting Vale); now that we have the documents, all those protections somehow are irrelevant *because we have them*.

Moreover, the only reason that Vale currently possesses Thiam's documents is because *Vale has violated Section XII of the Protective Order*. That provision required Vale to return or destroy the discovery documents that Thiam marked as "Confidential" or "Highly Confidential." The deadline was February 18, 2016, which has not been stayed or modified by any court order. In other words, Vale is seeking to capitalize on its own misconduct.

Vale has the full panoply of its rights in the Arbitration. It is free to argue whatever it deems justified in connection with Thiam's witness statement in the LCIA arbitration. It is not,

Hon. Andrew J. Peck
United States Magistrate Judge
March 7, 2016
Page 5

however, entitled to circumvent LCIA discovery rules by using Thiam's Protected Material, which is not relevant to Vale's attempts to impeach Thiam and which *it did not even request in the Arbitration*.[3]

Conclusion

This Court found "good cause" for entering a protective order that had two principle features: first, that confidential information exchanged by the parties would be used for this Action only, and, second, that upon Final Disposition, the parties would return or destroy materials marked "confidential." Moreover, at the time of the Protective Order, this Court and Vale knew that the LCIA Arbitration was pending. Vale subscribed to those provisions, recognizing the risk that discovery documents received from others might be useful in the Arbitration, but understanding that it would also stand to benefit as to its own documents. Having entered into that agreement, which the Court endorsed as having met the requirements of Rule 23(c), and benefitting from it, Vale now wants to back out. But nothing has changed and it is too late.

Thus, for the foregoing reasons and the reasons set forth in Thiam's Objections, Vale's request for a modification of the Protective Order must be denied.

Respectfully submitted,

/s/ Paul E. Summit
Paul E. Summit

Attachments

cc: All counsel of record (via ECF)

---

[3] The vast majority of Thiam's Protected Material that Vale seeks to use is not responsive to Vale's requests in the Arbitration regarding Thiam. Vale's requests in the Arbitration seek a myriad of financial information regarding Thiam from 1994 to 2010, including his 2005-2008 tax returns; his salary at Merrill Lynch (1994-2004) and UBS (2004-January 2009); and alleged payments from BSGR to Thiam (while Thiam was Minister of Mines from 2009-2010). Yet Vale now seeks to use Thiam's, his wife's, and his business' bank records from an almost entirely different period, 2008 through 2015. Can Vale seriously argue that it is entitled to use Protected Material produced in this Action that it did not ask for in the Arbitration? Vale also seeks to use private e-mail communications between Thiam and BSGR after Thiam's tenure as Minister of Mines. These communications are not relevant to any of Vale's requests regarding Thiam and BSGR (which seek records of air travel reimbursement or other payments Thiam allegedly received from BSGR while Thiam was Minister of Mines). Vale also seeks to use Thiam's private e-mail communications regarding the property located at 771 Duell Road in Dutchess County. But Vale's requests in the Arbitration regarding the property are limited to specific documents referenced in Thiam's witness statement. To the extent that those categories of documents were produced here, Thiam also produced them in the arbitration.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------- X
                                             :
RIO TINTO PLC,                               :
                                             :
                    Plaintiff,               :    Case No. 14-cv-3042 (RMB)(AJP)
                                             :
          - v -                              :    **ORAL ARGUMENT REQUESTED**
                                             :
VALE, S.A., et al.,                          :
                                             :
                    Defendants.              :
                                             :
-------------------------------------------- X

# DEFENDANT MAHMOUD THIAM'S OBJECTIONS
# TO MAGISTRATE JUDGE ANDREW J. PECK'S FEBRUARY 1, 2016 ORDER

Paul E. Summit
Andrew T. Solomon
Caitlin C. Fahey
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
psummit@sandw.com
asolomon@sandw.com
cfahey@sandw.com

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL STANDARD ............................................................................................................5

ARGUMENT

The Order Granting Vale's Request is Clearly Erroneous and Contrary to Law ............................6

    A.  The Order Violates Due Process .................................................................................6

    B.  Vale is Not Entitled to a Modification of the Protective Order ...........................................7

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*AT&T Corp. v. Sprint Corp.*,
 407 F.3d 560 (2d Cir. 2005) ................................................................................. 7, 9

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*,
 287 F.R.D. 130 (E.D.N.Y. 2012) .......................................................................... 8, 9

*Fielding v. Tollaksen*,
 510 F.3d 175 (2d Cir. 2007) ..................................................................................... 5

*In re Ethylene Propylene Diene Monomer Antitrust Litig.*,
 255 F.R.D. 308 (D. Conn. 2009) ............................................................................... 9

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
 247 F.R.D. 1 (D.D.C. 2005) ...................................................................................... 9

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) .................................................................................................. 6

*Merchs. Bank v. Vescio*,
 222 B.R. 236 (D. Vt. 1998) ....................................................................................... 9

*Mutinsky v. Town of Clarkstown*,
 No. 14-cv-7803 (NSR) (PED),
 2015 U.S. Dist. LEXIS 168240 (S.D.N.Y. Dec. 16, 2015) ................................... 5, 6

*SEC v. TheStreet.com*,
 273 F.3d 222 (2d Cir. 2001) ..................................................................................... 7

*Soberal-Perez v. Heckler*,
 717 F.2d 36 (2d Cir. 1983) ....................................................................................... 6

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
 900 F.2d 522 (2d Cir. 1990) ..................................................................................... 5

Statutes

28 U.S.C. § 636 ............................................................................................................ 5

Fed. R. Civ. P. 72(a) .................................................................................................... 5

# INTRODUCTION

Defendant Mahmoud Thiam ("Thiam") objects to Magistrate Judge Andrew J. Peck's February 1, 2016 order (the "Order"),[1] granting defendant Vale S.A.'s ("Vale") letter application (the "Application") to use over 3,000 pages of Thiam's confidential documents, produced in this action under the protection of a rigorous and elaborately negotiated protective order (the "Protective Order"), in Vale's separate proceeding before the London Court of International Arbitration ("LCIA") against BSG Resources Limited ("BSGR"), *Vale S.A. vs. BSG Resources Limited,* LCIA Arb. No. 142683 (the "Arbitration"). Thiam is not a party to the Arbitration.

Thiam objects on the grounds that (1) the Magistrate Judge issued his one-sentence Order ex parte, without giving Thiam an opportunity to respond, in violation of Thiam's due process rights; and (2) Vale failed to even approach the demanding standards in this Circuit for modification of the Protective Order.

Vale's justification is that these documents are supposedly "▆▆▆▆▆▆▆" to the Arbitration. Summit Decl., Ex. B at 1.[2] But that does not make a compelling case, even if it were successfully established. Vale brought its suit against BSGR in the LCIA. The LCIA's discovery rules are restrictive; they are not coterminous with the Federal Rules of Civil Procedure. Nor has the Tribunal in the Arbitration issued a request to this Court to assist it in discovery. Having agreed to the LCIA's ground rules, Vale can hardly make the case that it must obtain from this Court that which it agreed it would not otherwise have for its case against BSGR.

---

[1] A true copy of the Order is attached as Exhibit A to the accompanying Declaration of Paul E. Summit dated February 16, 2016 (the "Summit Decl.").

[2] Although we do not believe that there is anything "confidential" in the Application that requires it to be "▆▆▆▆▆▆▆," to avoid an unnecessary dispute with Vale, we have omitted the Application from and have made redactions (as necessary) to our objection papers filed via ECF. The courtesy copies of our objection papers to chambers will include the Application and will be unredacted.

## FACTUAL BACKGROUND

At the start of discovery in this action, the parties engaged in an exhaustive process to negotiate the Protective Order. Ultimately, the parties were unable to agree on language for certain sections of the Protective Order and the Magistrate Judge had to make rulings on those disputes. One of those disputes involved the use of Protected Material in other proceedings. At a July 29, 2014 status conference, Vale disagreed with the Magistrate Judge's statement that discovery in this action would be used in other litigations. *See* Summit Decl., Ex. C at page 10, lines 10-12 ("With respect to the latter point, that the discovery will end up being usable somewhere else. We respectfully disagree."). Vale subsequently has changed its tune and now seeks to use Thiam's documents in the Arbitration. For its own part, however, Vale attached confidentiality designations to the vast majority of the documents it produced in this action, presumably, in part, to ensure that BSGR could not use them in the Arbitration.[3]

This action was dismissed by this Court on November 20, 2015. Pursuant to Section XII of the Protective Order, all persons are required to return or destroy all Protected Material[4] produced in the action within 90 days of Final Disposition of the matter. In accordance with this provision, on January 4, 2016, Thiam, through counsel, requested that all parties return or destroy his Protected Material by February 18, 2016. Summit Decl., Ex. F. Vale, however, refused to comply. Summit Decl., Ex. G. Instead, on January 25, 2016, Vale sought permission

---

[3] We cannot say for certain that every document Vale produced in this action had a confidentiality designation because Vale failed to consistently provide us with the appropriate metadata per the parties' ESI Protocol. Of the 29,994 documents that Vale produced, we know that 67 percent of them had confidentiality designations. As to the other 33 percent, 70 documents were in the public domain; the remaining documents had no metadata for confidentiality. However, a sampling of the remaining documents reveals that at least some of them have confidentiality designations.

[4] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Protective Order, attached to the Summit Decl. as Exhibit D.

2

from Thiam to use over 3,000 pages of Thiam's Protected Material in the Arbitration to which Thiam is not a party. Summit Decl., Ex. B.

The Protected Material consists of, among other things, over 2,000 pages of confidential bank records from the bank accounts of Thiam, his wife, and his business, Thiam & Co., LLC ("Thiam & Co."). These records were not produced by Thiam in this action; rather, they were obtained by Rio Tinto via third party subpoena to Thiam's banks. Rio Tinto issued the subpoenas as part of the resolution of a discovery dispute between Rio Tinto and Thiam. Rio Tinto's subpoenas to Thiam's banks were overbroad with respect to the information sought and the date range requested. For example, Rio Tinto's subpoena to UBS Financial Services requested, for the time period January 1, 2009 through December 31, 2013,[5] the following information:

> All Documents, including but not limited to account statements, wire transfer records and receipts, withdrawal receipts or records, deposit receipts or records, signature cards, cancelled checks, loan applications, loan disbursement documents, collateral agreements, tax withholding statements, trading records, safe deposit box rental information (including logs of dates and times of entries to the box), and copies of cashier's checks, money orders, or traveler's checks purchased, concerning the Accounts maintained by You that could be accessed by, or were within the control of, Mahmoud Thiam, any of his family members, or any business entities associated with Mr. Thiam….

Summit Decl., Ex. E.

To resolve the discovery dispute and in reliance on the Protective Order, Thiam did not object to the overbreadth of the subpoenas. However, given that the bank records contained a massive amount of Thiam's personal, financial information that had absolutely no bearing on any issue in the action, pursuant to the Protective Order, Thiam designated these records as

---

[5] Although the time period requested was only through December 31, 2013, some banks produced Thiam's financial records for 2014 and 2015.

3

"HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."[6] Vale now seeks to use Thiam's subpoenaed records in the Arbitration, including productions from the following banks:

1. <u>Citibank</u>: Vale seeks to use Citibank's entire production, including account statements from Thiam & Co. (a non party in both this action and the Arbitration) from June 2011 through January 2014; withdrawal, deposits, checks and wires for Thiam & Co. from April 2011 through April 2014; account statements from Thiam and his wife's joint account from April 2011 through January 2014; and withdrawal, deposits, checks and wires for the joint account from June 2011 through December 2013;

2. <u>HSBC</u>: Vale seeks to use HSBC's entire production (except for 1 page), including internal bank communications regarding Mr. Thiam and his deposit account and bank statements from June 2010 through August 2010;

3. <u>JP Morgan Chase</u>: Vale seeks to use JP Morgan Chase's entire production, including Thiam and his wife's joint home equity loan statements from January 2009 through April 2012 and Thiam and his wife's joint checking and savings accounts statements from December 2008 through June 2010; and

4. <u>UBS Financial Services</u>: Vale seeks to use almost the entirety of UBS Financial Services' production (all but two documents), including Thiam's account statements from his company sponsored stock plan/investment account at UBS from October 2011 through August 2015; Thiam and his wife's joint investment account statements from January 2009 through December 2009 and Thiam's retirement account for January 2009.

The other documents that Vale seeks to use in the Arbitration are (1) communications between Thiam and BSGR, which Vale should seek from BSGR, the opposing party in the Arbitration; and (2) Thiam's private e-mail communications, which, but for Rio Tinto's frivolous lawsuit and Vale's refusal to comply with the Protective Order, Vale would not have in its possession. Pursuant to the Protective Order, Thiam designated all of these records as "CONFIDENTIAL," with the exception of one document, which he designated as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."

---

[6] Vale's contention that the banks it has contacted have " ███████████████████████████████████████████████ " is irrelevant. Summit Decl., Ex. B at 2, n. 1. The banks did not designate the documents "HIGHLY CONFIDENTIALITY – ATTORNEY'S EYES ONLY"; Thiam did. The banks are indifferent as to Thiam's privacy interests.

4

At no time during the action did Vale raise any objection to Thiam's confidentiality designations. Nor did Vale request Thiam's permission to use the material in the Arbitration. Indeed, Vale did not seek Thiam's consent to modify the Protective Order as to the 3,000 pages of documents until after this Court dismissed the instant case and the time for appeal had run. Only then, with the safety of knowing that the U.S. case was over, did Vale approach Thiam.

In response, Thiam refused to authorize the use of his private, confidential documents in an international proceeding to which Thiam is not a party.[7] Summit Decl., Ex. F.

On February 1, 2016, Vale sought permission from the Magistrate Judge to use the documents in the Arbitration. The Application was faxed to the Magistrate Judge's chambers. Counsel for Thiam received a copy of the Application via e-mail at 12:28 p.m. At 4:35 p.m., just four hours later, the Magistrate Judge granted Vale's request without reviewing the subject documents, without explanation, and without giving Thiam an opportunity to respond.

**LEGAL STANDARD**

Fed. R. Civ. P. 72(a) provides that a district judge must "modify or set aside any part of [a nondispositive order] that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636; *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "An order is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Mutinsky v. Town of Clarkstown*, 2015 U.S. Dist. LEXIS 168240, at *3 (S.D.N.Y. Dec. 16, 2015)(quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "An order is contrary to

---

[7] Thiam submitted a witness statement in the Arbitration and produced certain documents responsive to Vale's document requests to BSGR. These documents were produced pursuant to a request from BSGR to Thiam. He has, however, refused to produce any documents (to BSGR or Vale) in the Arbitration which contain private, confidential information.

5

law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Mutinsky*, 2015 U.S. Dist. LEXIS 168240, at *3 (internal citations omitted).

## ARGUMENT

**The Order Granting Vale's Request is Clearly Erroneous and Contrary to Law.**

### A. The Order Violates Due Process

"[T]he fundamental tenets of due process require adequate notice to ensure that all parties have a meaningful opportunity to be heard." *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. N.Y. 1983)(citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Here, the Magistrate Judge signed the Order within hours of Vale's request without giving Thiam the opportunity to be heard on the issue. No scheduling order was issued; no deadline was set for Thiam's response; there was no emergency; the request was simply granted four hours after it was made by letter with no explanation and without any review of the subject documents.

As Vale notes in the Application,[8] the Protective Order contemplates that court intervention may be required to resolve parties' disputes regarding confidentiality designations and provides that such disputes shall be resolved by motion practice, which inherently gives a Designating Party the right to respond and defend its confidentiality designations. Summit Decl., Ex. D, Section V, ¶ 3 ("The Challenging Party *shall file and serve a motion to remove the confidentiality [designation]*…." ).[9] The Magistrate Judge's failure to afford Thiam his due process rights and allow Thiam to respond to the Application is clearly erroneous and contrary to law. Thus, the Order must be reversed.

---

[8] Summit Decl, Ex. B at 7, n. 4.

[9] Unless otherwise indicated, all emphasis is supplied.

6

### B. Vale is Not Entitled to a Modification of the Protective Order

Under Second Circuit precedent, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001). "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979).[10]

In this action, the Protective Order sets forth certain "Basic Principles," including that:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or Non-Party in connection with this Litigation only for prosecuting, defending, or attempting to settle this Litigation between the Parties. A Receiving Party *may not use Protected Material in connection with any other case*....

Summit Decl., Ex. D, Section VI, ¶ 1.

The Protective Order further provides that "[w]hen the Litigation has been terminated, a Receiving Party *must comply with the provisions of Section XII below*." *Id.* Section XII requires that "all Parties, Counsel and any other persons who have received Protected Material in this action" must return or destroy such Protected Material within 90 days after Final Disposition. *Id.*, Section XII, ¶ 1.

Thiam produced documents and (to resolve a discovery dispute) allowed Rio Tinto to obtain a wealth of private, confidential information via third party subpoenas (the majority of which were irrelevant to the New York action) in reliance upon the guarantee that such

---

[10] Remarkably, these seminal Second Circuit cases were not cited by Cleary Gottlieb in its letter of February 1, 2016 to the Magistrate Judge. Thus, no one had brought these cases to his attention when he ruled later on the same day.

7

documents would be protected by the terms of the Protective Order, including that they would not be used in connection with any other matter.[11]

The Magistrate Judge's decision is clearly erroneous and contrary to law because Vale has not demonstrated that it has a "compelling need" to use Thiam's Protected Material in the Arbitration. It simply seeks an end run around the LCIA's discovery rules. Under the LCIA discovery rules, Vale has no right to Thiam's Protected Material. Indeed, but for Rio Tinto's frivolous lawsuit and Vale's refusal to comply with its obligations under the Protective Order (to return or destroy Thiam's Protected Material by February 18, 2016), Thiam's Protected Material would not even be in Vale's possession.

Vale admits that the Tribunal is powerless to compel Thiam to produce his private, confidential information in the Arbitration. This is due to one simple but important fact – Thiam is not a party to the Arbitration. Summit Decl., Ex. B at 4. (As Vale said in its Application, "███████████████████████████████████████████████████████████."). Dissatisfied with the Tribunal's lack of power over Thiam, Vale impermissibly sought to use the power of the United States courts to grant it access to information to which it is not entitled in an international proceeding.

The cases Vale cites in support of its position are inapposite. In *Charter Oak Fire Insurance Company*, plaintiff sought to modify the protective order to allow documents to be used in other cases based on similar facts and circumstances *against the same defendant*. The court agreed to the modification, noting that the defendant could not "rely on the Protective Order as a means of protecting discovery *that would otherwise be discoverable in the related*

---

[11] As the only individual defendant not allied with a major company in the action, which involved multi-million dollar companies on either side, Thiam was forced at multiple junctures to make pragmatic decisions on discovery issues in order to save on legal expenses.

8

*actions.*" *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012). Similarly, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, plaintiffs in a Canadian class action suit sought to use documents in the Canadian suit against a defendant in that litigation that were produced by that defendant in a U.S. litigation *against the same defendant.* 255 F.R.D. 308 (D. Conn. 2009); *see also Merchant Banks v. Vescio*, 222 B.R. 236 (D. Vt. 1998)(intervenors seeking to use documents in a related litigation against the same defendant); and *Infineon Techs, N.V. v. Green Power Techs., Ltd*, 247 F.R.D. 1 (D.D.C. 2005)(defendant seeking to use documents in related litigation against the same plaintiff in Germany).

Indeed, *all* the cases Vale cites in support of its argument that "good cause" exists to modify the Protective Order involve the use of documents produced in one litigation in a separate litigation to which the producing party is also a *party*. Here, Thiam is not a party to the Arbitration. He is a fact witness. Thus, the protective order cannot be modified to give Vale access to documents it would not be entitled to in the Arbitration. *See In re Ethylene Propylene*, 255 F.R.D. at 324 ("if the intervenor is seeking to circumvent limitations on its ability to conduct discovery in its own case or *to gain access to materials it would otherwise have no right to access, a court should refuse to modify the protective order.*"); *see also AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 2044.1 (2d ed. 1994) ("If the limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification.")).

Moreover, any confidentiality protections afforded by the Arbitration are irrelevant. Vale is simply trying to take advantage of Rio Tinto's frivolous lawsuit against Thiam to obtain

9

information that it would not otherwise be entitled to in the Arbitration. Similarly, the fact that Thiam has submitted a witness statement and agreed to produce certain documents in the Arbitration is irrelevant. Any discovery issues need to be resolved by the Tribunal in that proceeding, not the federal courts of the United States.

Thus, the Magistrate Judge's decision is clearly erroneous and contrary to law and should be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Order and deny Vale's request to modify the Protective Order to enable it to use Thiam's Protected Materials in the Arbitration.

Dated:  New York, New York
       February 16, 2016

Respectfully submitted,

By: /s/Paul E. Summit
    Paul E. Summit
    Andrew T. Solomon
    Caitlin C. Fahey
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
psummit@sandw.com
asolomon@sandw.com
cfahey@sandw.com

*Attorneys for defendant Mahmoud Thiam*

10